**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES,<br><br>      v.<br><br>YANPING WANG,<br><br>              Defendant. | No. 23 Cr. 118 (AT) |

**MEMORANDUM IN OPPOSITION TO**
**GOVERNMENT'S MOTION TO DISQUALIFY COUNSEL**

Emil Bove
Chiesa Shahinian & Giantomasi PC
11 Times Square, 34th Floor
New York, NY 10036
(212) 324 7265
ebove@csglaw.com

*Attorney for Yanping Wang*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ...................................................................................................... 3

    I.      PRIOR GOVERNMENT SERVICE ................................................. 3

    II.    THE TIN MATTER ........................................................................... 3

    III.   THE CFU PROSECUTION ............................................................. 4

APPLICABLE LAW ................................................................................................ 5

    I.      SIXTH AMENDMENT RIGHT TO CHOICE OF COUNSEL ........... 5

    II.    DISQUALIFICATION MOTIONS AND *CURCIO* PROCEEDINGS ................................................................................. 5

    III.   18 U.S.C. § 207 ................................................................................. 6

    IV.   NEW YORK ETHICAL RULES ....................................................... 6

    V.    THE *EVANS* TEST .......................................................................... 7

DISCUSSION .......................................................................................................... 8

    I.      SECTION 207(a) AND RULE 1.11(a) DO NOT APPLY ................... 8

         A.     This Is Not The Same "Matter" ............................................. 8

         B.     There Was Not "Personal And Substantial" Participation ........................ 10

    II.    THE *EVANS* TEST DOES NOT REQUIRE DISQUALIFICATION .................. 14

         A.     The Matters Are Not Substantially Related ............................. 15

         B.     The Heavily Redacted *Huawei* Disqualification Is Not Persuasive ................. 18

         C.     The Prosecutors Have Not Established Access To Relevant Privileged Information ................. 19

    III.   THE POTENTIAL CONFLICTS ARE WAIVABLE ......................... 21

         A.     The TIN Matter ..................................................................... 23

         B.     Mei Guo ................................................................................ 26

CONCLUSION ........................................................................................................ 28

## PRELIMINARY STATEMENT

"Unrelated."  That is how the prosecutors described the "TIN Matter" that is the centerpiece of their disqualification motion in a March 2023 letter to the Court.  Months later, the prosecutors seek to establish that the TIN Matter is "substantially related" to this case.  So much so, they now say, that I must be disqualified from representing Ms. Wang—notwithstanding their prior representation to the Court and, more importantly, the Sixth Amendment.

The prosecutors bear a heavy burden on this motion.  An unsworn brief relying on vague phrases like ▮▮▮▮▮▮ "ensuing months" (twice), "[a]s a general practice," and "likely signifies" does not meet it.  (Gov't Mem. at 5, 7, 21).  Ambiguous hedging like "may offer evidence" and "knowledge of, or access to" (twice) does not suffice.  (*Id.* at 5, 8, 11, 22).  Not long after the underlying CFU investigation commenced, I—along with everyone in the world who had access to the *Wall Street Journal*—was "at least aware of" the investigation that gave rise to this case.  (Gov't Mem. at 8; *see also* Ex. A).  That is not a basis for disqualification.

My representation of Ms. Wang is also consistent with the ethics rules cited by the prosecutors: N.Y. Rule 1.11(a) and 18 U.S.C. § 207(a).  These rules only prohibit successive representations by former government attorneys in the same "matter."  The TIN Matter is not the same "matter" as this case.  These rules, including the two-year prohibition in § 207(a)(2), do not apply.

The prosecutors are therefore left to rely principally on civil cases applying inapposite ethics rules without the Sixth Amendment.  These authorities require the prosecutors to establish that the issues involved in the TIN Matter and this case are "identical," or "essentially the same."  As far as I know, the "unrelated" TIN Matter focused on one investigative step.  Counterintelligence agents from the FBI executed searches in approximately October 2019. ▮▮▮▮

1

███████████████████████████████████████████████████████████████████████████ That

makes sense.  The investigation that led to this case was separate.  The prosecutors concede that it

"arose independently from and was conducted independently of the TIN Matter."  (Gov't Mem. at

23).  The investigation was run in a different unit, CFU.  It was conducted by different prosecutors

and agents.  It focused on separate crimes.  Therefore, consistent with their earlier representations,

the prosecutors have not established that this case is "substantially related" to the TIN Matter.

The motion should be denied for the additional reason that the prosecutors have not

established that my participation in the TIN Matter was substantial.  This motion confronts a

unique fact pattern.  Although I was nominally a TIN supervisor at the time, I did not review or

authorize the 2019 warrants in the TIN Matter because I was participating in a separate trial.  I

have no recollection of seeing the warrants or any other documents relating to the case, at any

point.  It appears that the prosecutors' evidence of my participation in the TIN Matter amounts to

three emails and approximately two lines of unsworn text, redacted and submitted *ex parte*,

summarizing conversations.  I have not been permitted to review those materials in order to

respond to this motion, but I trust that the Court will scrutinize them carefully.

At bottom, the Sixth Amendment right is entitled to much more respect than the prosecutors

have assigned it.  The fact that the representation is consistent with applicable ethics rules strongly

suggests that my participation in the case would not call into question the integrity of these

proceedings.  While the prosecutors raise the specter of a *Strickland* claim, which would require a

showing of prejudice, an erroneous violation of Ms. Wang's Sixth Amendment right would require

automatic reversal. Often with the support of the government, defendants in this District are

routinely permitted to waive potential conflicts arising from successive representations.  The

prosecutors have not explained why the confidential information allegedly at issue here is entitled

2

to enhanced protections beyond that afforded to the confidences of private former clients.  The

disqualification motion should be denied, and the Court should hold a *Curcio* hearing.

## BACKGROUND

### I.        Prior Government Service

I was an Assistant United States Attorney at the U.S. Attorney's Office for the Southern

District of New York between approximately October 1, 2012 and approximately December 30,

2021.  (Aug. 7, 2023 Declaration of Emil Bove ("Bove Decl.") ¶ 2).

On September 19, 2019, I was named one of two Co-Chiefs of the Office's Terrorism and

International Narcotics Unit ("TIN"), which the Office now refers to as NSIN.  (Bove Decl. ¶ 3).

A second Co-Chief of TIN was named on the same day.  (*Id.*).  At the time of the announcement,

I was spending substantially all of my time preparing for a trial in *United States v. Hernandez*, No.

15 Cr. 379 (S.D.N.Y.), which began on October 2, 2019.  (*Id.* ¶ 4).  I was effectively absent from

TIN in light of my focus on trial preparation, and I remained absent during the *Hernandez* trial.

(*Id.*).  The *Hernandez* trial concluded on October 18, 2019.  (*Id.*).

### II.       The TIN Matter

Before I became a supervisor, Ho Wan Kwok communicated periodically with an FBI

agent between April 2018 and May 2019.  (Gov't Mem. at 2).  I played no role in those interactions.

(Bove Decl. ¶ 5).

████████████████████████████████████████████████████ (the "TIN

Matter").  (Gov't Mem. at 2-3).  I did not participate in the TIN Matter in any way prior to the

conclusion of the *Hernandez* trial.  (Bove Decl. ¶ 4).  For example, I did not review, edit, or

authorize the applications for search warrants that were executed in or about October 2019.  (*See*

Bove Decl. ¶¶ 7-8).

I do not think that I saw the warrant applications at any point after I "returned to [my] full-time responsibilities supervising TIN" in late-October 2019. (Gov't Mem. at 4; Bove Decl. ¶¶ 7-8). To the extent the prosecutors or FBI maintained a case file—classified or otherwise—I do not recall accessing it. (Bove Decl. ¶ 6). Although I was generally aware that the FBI was reviewing the contents of materials it had seized pursuant to the 2019 warrants, I do not recall discussing the specific contents of any particular seized item, and I have no recollection of any other investigative steps being taken in the TIN Matter. (*Id.* ¶ 9). Although it seems plausible to me that I discussed the TIN Matter with one or both of the assigned line AUSAs, I do not recall the substance of those conversations, which suggests to me that they were sporadic and limited. (*Id.* ¶ 11).

**III.     The CFU Prosecution**

The separate CFU investigation that gave rise to the charges in this case began "in or around May 2020," around the time that GTV Media Group, Inc. ("GTV") was created. (Gov't Mem. at 7). On July 8, 2020, the *Wall Street Journal* published a story titled "FBI Probes Chinese Exile, Including Work With Former Trump Aide Steve Bannon." (Ex. A). The article appears to relate to the CFU investigation; it named Mr. Kwok and co-defendant Kin Ming Je, but not Ms. Wang. The *Wall Street Journal* published a related article on August 19, 2020. (Ex. B).

On March 15, 2023, Ms. Wang and Mr. Kwok were arrested and detained. In a bail submission relating to Mr. Kwok on the same day, the prosecutors argued that, "in October 2019, in connection with an unrelated investigation of Kwok" – *i.e.*, the TIN Matter – "the FBI executed a search warrant on Kwok's New York City penthouse." (Dkt. No. 7 at 20).

In a March 15 press release, the Office touted the arrest of Mr. Kwok and the charges against Mr. Je, but did not mention Ms. Wang's arrest. (Ex. C). Understandably, the press release did not reference TIN or the TIN Matter. Instead, the Office accurately attributed the case to CFU. (*Id.*).

## APPLICABLE LAW

### I.        Sixth Amendment Right To Choice Of Counsel

The Sixth Amendment right to choice of counsel "commands" that "a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel [s]he believes to be best." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 146 (2006).  This is the "the root meaning of the constitutional guarantee," *id.* at 147-48, and it "matters profoundly" to defendants such as Ms. Wang, *Kaley v. United States*, 571 U.S. 320, 337 (2014).  So much so that an erroneous deprivation of a defendant's Sixth Amendment right to choice of counsel is a "structural error," which is not subject to harmless-error analysis.  *Gonzalez-Lopez*, 548 U.S. at 150.

### II.       Disqualification Motions And *Curcio* Proceedings

"Disqualification motions . . . place a *heavy burden* on the *moving party* to demonstrate that disqualification is appropriate." *United States v. Schulte*, No. 17 Cr. 548, 2020 WL 534508, at *4 (S.D.N.Y. Feb. 3, 2020).  Your Honor has previously described the relevant standard: "Motions to disqualify are generally not favored, and, because they are often tactically motivated and tend to derail the efficient progress of litigation, parties moving for disqualification carry a heavy burden and must satisfy a high standard of proof." *United States v. Shea*, No. 20 Cr. 412 (AT), 2022 WL 4298704, at *6 (S.D.N.Y. Sept. 19, 2022) (cleaned up).

"Where the right to counsel of choice conflicts with the right to an attorney of undivided loyalty, the choice as to which right is to take precedence must generally be left to the defendant and not be dictated by the government." *United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003). There is a "very narrow category of cases" in which attorney conflicts are unwaivable.  *Id.* at 126. The exceedingly limited scope of this category is "illustrated" by *United States v. Fulton*, 5 F.3d 605 (2d Cir. 1993), where a government witness implicated "the defendant's trial counsel in related heroin importation." *Perez*, 325 F.3d at 126-27 (cleaned up).

### III.        18 U.S.C. § 207

Section 207(a)(1) prohibits former government attorneys from being adverse to the government in a "particular matter," in which the attorney "participated personally and substantially," and "which involved a specific party or specific parties at the time of such participation." 18 U.S.C. § 207(a)(1). Section 207(a)(2) addresses "two-year restrictions concerning particular matters under official responsibility." *Id.* § 207(a)(2). The provision is also limited to "a particular matter." *Id.*

### IV.        New York Ethical Rules

Although "not every violation of a disciplinary rule will necessarily lead to disqualification," there is no dispute that New York's ethical rules are relevant to the prosecutor's motion. *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005).

New York's Rule 1.9 sets forth duties that lawyers owe to former private clients. The limitations in Rule 1.9 that restrict an attorney's ability to engage in successive representations apply to "the same or a *substantially related matter*." Rule 1.9(a), (b) (emphasis added). When an attorney's prior public service is at issue, however, Rule 1.9 applies only "to the extent required by Rule 1.11." Cmt. 1, Rule 1.9.

Rule 1.11(a) is narrower. Similar to § 207(a), the Rule prohibits former government attorneys from representing a private client in the *same* "matter" in which the lawyer previously "participated personally and substantially" as a government attorney. Rule 1.11(a)(1) incorporates Rule 1.9(c), only. Rule 1.9(c) restricts the use and disclosure of a prior client's confidential information; it does not prohibit successive representations.

6

## V.    The *Evans* Test

Relying on references in Rule 1.9 and its predecessors to a "substantially related matter"—which are inapposite—federal courts in this Circuit have developed a "'substantial relationship' test" for use in disqualification motions based on successive-representation issues in civil cases. *See Government of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978).  Based on *Evans v. Artek Systems Corp.*, 715 F.2d 788 (2d Cir. 1983), the prosecutors refer to this as the "*Evans* Test." (*See* Gov't Mem. at 13).  The test requires the movant to establish three elements:

> (1) the moving party is a former client of the adverse party's counsel;
>
> (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and
>
> (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Evans*, 715 F.2d at 791.

Even in a civil case, the Court of Appeals has instructed that "we must be solicitous of a client's right freely to choose his counsel." *Cook Indus.*, 569 F.2d at 739.  This admonition and other considerations "have resulted in honing the 'substantial relationship' test in this Circuit in practical application to granting disqualification only upon a showing that the relationship between issues in the prior and present cases is patently clear." *Id.* at 739-40 (cleaned up).  Disqualification is appropriate "only when the issues involved have been identical or essentially the same." *Id.* at 740.  "The fact that both matters share a common area of law . . . or that the cases involve . . . the same agency are not a sufficient basis upon which to find substantial relationship." *McBean v. City of New York*, No. 02 Civ. 5426, 2003 WL 21277115, at *4 (S.D.N.Y. June 3, 2003) (interpreting predecessor to Rule 1.11).

## DISCUSSION

The government has previously argued to Your Honor that "[d]isqualifying counsel is a drastic measure that is generally disfavored in this Circuit," that "[g]eneralized allegations of misconduct and mere claims of impropriety are wholly inadequate," and that "disqualification is usually only appropriate when there is an actual risk of prejudice." (Dkt. No. 277 at 28, *Shea*, No. 20 Cr. 412 (AT) (S.D.N.Y. Sept. 7, 2022)). Because those assertions are accurate, and because the prosecutors have not met that burden, the Court should deny the motion and give Ms. Wang an opportunity to waive potential conflicts at a *Curcio* proceeding.

### I.        Section 207(a) And Rule 1.11(a) Do Not Apply

#### A.       This Is Not The Same "Matter"

My representation of Ms. Wang in this case does not violate § 207(a) or Rule 1.11(a) because the TIN Matter and this case are not the same "matter." The prosecutors conceded in March 2023 that the TIN Matter was "unrelated," and they now acknowledge that this case "arose independently from and was conducted independently of the TIN Matter." (Dkt. No. 7 at 20; Gov't Mem. at 23). Accordingly, the representation does not implicate these authorities.

Although Rule 1.9(a) and 1.9(b) pertain to former-client conflicts "in the same or a substantially related matter," these provisions do not apply. *See* Cmt. 1, Rule 1.9. ("Current and former government lawyers must comply with this Rule to the extent required by Rule 1.11."). In contrast, § 207(a) and Rule 11.1(a) are limited to representations in the same "matter." *See In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 05 Civ. 1720, 2006 WL 6846702, at *6 (E.D.N.Y. Aug. 7, 2006) ("[W]hereas private attorneys may not appear against a former client in the same or a substantially related matter in which the attorney played *any* role, the rule concerning former government attorneys only precludes subsequent representation in a

8

matter that is the same as one in which the attorney participated 'personally and substantially' while in the government's employ.").[1]

The comparatively restricted scope of Rule 1.11(a) is intentional. The "substantially related" phrase has been excised from Rule 1.11 in order to "represent[] a balancing of interests." Cmt. 4, Rule 1.11. "[T]he rules governing lawyers presently or formerly employed by a government agency should not be so restrictive as to inhibit transfer of employment to and from the government. . . . A former government lawyer is therefore disqualified only from *particular matters* in which the lawyer participated personally and substantially." *Id.* (emphasis added). This is not such a matter.

For similar reasons, § 207(a) does not apply. *See United States v. Medico Indus. Inc.*, 784 F.2d 840, 843 (7th Cir. 1986) ("The parties, facts, and subject matter must coincide to trigger the prohibition of § 207(a)."). In support of their argument that this case is part of a "two-year ban," the prosecutors quote the definition of "official responsibility" for purposes of § 207(a)(2). (*See* Gov't Mem. at 26 (citing 18 U.S.C. § 202(b)). While the TIN Matter meets that definition, this case does not because I never supervised it. Accordingly, the two-year restriction of § 207(a)(2) is not implicated.

The prosecutors' argument regarding the application of § 207(a) is based on an additional fundamental misconception about the scope of the statute. Seizing on the phrase "involved a specific party," 18 U.S.C. § 207(a)(1)(C), they argue that the TIN Matter and this case are the "same 'matter'" because Mr. Kwok was a "specific party" in both. (Gov't Mem. at 25). The

---

[1] *Accord* Restatement (Third) of the Law Governing Lawyers § 133 cmt. e (2000) (explaining that rule governing former government attorneys "is narrower than that governing former-client conflicts of interest").

prosecutors cite no authority for this expansive interpretation of the statute, which would eviscerate the plain meaning of the term "particular matter."  Because none exists.  The modifying phrase "involved a specific party" further limits the statute's application by excluding "[m]atters of general applicably"—which are "not covered"—such as "[l]egislation or rulemaking of general applicability and the formulation of general policies."  5 C.F.R. § 2641.201(h)(2).[2]  To the extent any of this is susceptible to a contrary interpretation, the government itself has noted that "the rule of lenity requires that any remaining ambiguity in [Section 207] be construed so as to narrow, not broaden, the statute's prohibitions."  25 U.S. Op. Off. Legal Counsel 120, 2001 WL 36209373, at *5 (June 20, 2001).  For all of these reasons, neither Rule 1.11(a) nor § 207(a) prohibit my representation of Ms. Wang.

## B.      There Was Not "Personal and Substantial" Participation

Section 207(a) is also limited to matters in which a former government attorney "participated personally and substantially."  The prosecutors emphasize that I was "aware" of the investigation in the CFU unit, which I never supervised, that led to the charges in this case.  (Gov't Mem. at 6, 8, 23).  So was the *Wall Street Journal*.  (Exs. A, B).  "An employee does not participate in a matter merely because he had knowledge of its existence . . . ."  5 C.F.R. § 2641.201(i)(1). Thus, my general awareness of the separate investigation hardly requires disqualification.

---

[2] "Example 4" to § 2641.201(h)(2) further illustrates the point: "An employee in the legislative affairs office of the Department of Homeland Security (DHS) drafted official comments submitted to Congress with respect to a pending immigration reform bill. After leaving the Government, he contacts DHS on behalf of a private organization seeking to influence the Administration to insist on certain amendments to the bill. This is not prohibited. Generally, legislation is not a particular matter involving specific parties. However, if the same employee had participated as a DHS employee in formulating the agency's position on proposed private relief legislation granting citizenship to a specific individual, this matter would involve specific parties, and the employee would be prohibited from later making representational contacts in connection with this matter."

Nor, contrary to the prosecutors' assertions, does a government employee "participate in a matter merely . . . because it was pending under his official responsibility."   5 C.F.R. § 2641.201(i)(1).  I played no role in the October 2019 searches that constituted the central, and perhaps the only, investigative step that was taken in the TIN Matter (*see* Bove Decl. ¶¶ 7-9).  *See Medico Indus. Inc.*, 784 F.2d at 843 ("[I]f the matter was just within his job description, but he did not work on it himself, the officer would be free to represent a private party after leaving the government.").  The term "substantially . . . requires more than official responsibility, knowledge, perfunctory involvement, or involvement on an administrative or peripheral issue."  5 C.F.R. § 2641.201(i)(3).  "[S]ubstantial participation is substantive in nature and directly affects the merits of the prior case."  *Arroyo v. City of Buffalo*, No. 15 Civ. 753A, 2017 WL 3085835, at *12 (W.D.N.Y. July 20, 2017) (cleaned up).  That did not happen here.

In an unsworn brief, the prosecutors rely on the fact that I "was not recused from the TIN Matter" to speculate that I was "briefed, consulted, and provided advice regarding the case." (Gov't Mem. at 5).  Their conclusion does not follow from that premise.  The prosecutors contend that I "had knowledge of, or access to, classified information" relating to the TIN Matter because that "is typical with TIN investigations."   (*Id.*).  The "or access to" hedge is telling, and I respectfully disagree with the contention.  (*See* Bove Decl. ¶ 6).

Setting aside these vague assertions, the prosecutors' proffer regarding my participation in the TIN Matter is limited to three emails and approximately two lines of redacted text—submitted to the Court *ex parte*—summarizing conversations I am said to have had with line AUSAs at times and regarding topics that were not disclosed to me in connection with this motion (Gov't Mem. at 5-6).  *See United States v. Fisher*, No. 17 Cr. 73, 2021 WL 4227019, at *4 (D. Nev. Sept. 16, 2021) ("The lack of specific recollections of [former government attorney's] involvement in the matter

11

while with the USAO, together with the lapse of time, lends support to finding that [the attorney's] involvement in the . . . matter was simply not substantial."). The prosecutors bear the burden of demonstrating that disqualification is appropriate, and their motion is hardly a compelling showing. *See United States v. Haggard*, No. 08 Cr. 327, 2009 WL 5207263, at *3 (S.D. Ala. Dec. 29, 2009) (denying disqualification motion based on § 207 where, "[a]side from these assertions in its brief, the Government has not produced an iota of evidence in support of its assertions"); *United States v. Obendorf*, No. 15 Cr. 254, 2016 WL 1595347, at *4 (D. Id. Apr. 20, 2016) (denying disqualification motion based on § 207 where former government attorney "had only two conversations about the Obendorf matter at the USAO and was not actively involved in investigating or litigating the case").

I do not recall these communications. (Bove Decl. ¶¶ 10-12).[3] It appears that in the first email, in October 2019, I performed the administrative task of requesting a case-tracking number. The prosecutors speculate about what the email "likely signifies." (Gov't Mem. at 5). Absent more, their conjecture is insufficient. *See Fisher*, 2021 WL 4227019, at *3 (rejecting government's "explanation of what the [asset forfeiture team] does generally by virtue of its standard operating procedure").

The second and third emails are from July 1 and 8, 2020. My recollection is that one of the line AUSAs transferred to a different unit at the Office at some point, and that remote work necessitated by the COVID-19 pandemic beginning in approximately March 2020 restricted my

---

[3] It is not clear to me which "Co-Chief" is being referenced when the prosecutors assert that a TIN supervisor "became conflicted from aspects of the TIN Matter." (Gov't Mem. at 7). I do not recall being notified of such a conflict. (Bove Decl. ¶ 13). Although the prosecutors assert that I "continued receiving updates" about the TIN Matter "[i]n the ensuing months," they have not disclosed a specific timeframe to me. (Gov't Mem. at 7).

ability to communicate with members of TIN regarding classified information or "sensitiv[e]" aspects of any investigation.  (Gov't Mem. at 5; Bove Decl. ¶ 10).  The summary of the July 1, 2020 email suggests, in essence, that a press inquiry was forwarded to me and my Co-Chief, and I responded.  (Gov't Mem. at 6).  Approximately eight days later, FBI agents sent me and my Co-Chief a link to an article.  (*Id.*).  I do not recall the email, and the prosecutors have not suggested that I did anything with it.  (*Id.*).  Rather, my Co-Chief forwarded it to one of the TIN AUSAs.  (*Id.*).

On the same day as the email, the *Wall Street Journal* published an article that appears to relate to the CFU investigation.  (*See* Ex. A).  The article discussed topics within the scope of the CFU investigation, including Mr. Kwok and co-defendant William Je, but not Ms. Wang.  The following month, the *Journal* published a second article that also appears to relate to the CFU investigation.  (*See* Ex. B).  These articles demonstrate that there was a significant amount of information about the CFU investigation in the public domain shortly after the investigation was initiated, but they do not support the argument that I was "personally and substantially involved" in the TIN Matter.

This is a far cry from the quantity and quality of the evidence of participation in the cases cited by the prosecutors.  In *United States v. James*, the prosecutors proceeded "with affidavits." 708 F.2d 40, 42 (2d Cir. 1983); *see also United States v. Miller*, f, 1199-1200 (3d Cir. 1980) (describing multiple "affidavit[s]" submitted in connection with disqualification motion);[4] *Schulte*,

---

[4] *Miller* is distinguishable for the additional reasons that (1) the trial judge found that the former government attorney had responsibility for the investigation that led to the case in question, and (2) the disqualification decision was based in part on a state-law advisory opinion that is no longer good law in New Jersey and inconsistent with N.Y. Rule 1.11(a) and 18 U.S.C. § 207(a). *See* 624 F.2d at 1200 (citing *In re Advisory Opinion on Professional Ethics No. 361*, 390 A.2d 118 (N.J. 1978)); *see also State v. Hudson*, 128 A.3d 739, 746-47 (App. Div. 2015) (describing "sea change").  The Ninth Circuit has declined to follow *Miller* based on "grave doubts" about the

2020 WL 534508, at *1 ("Manufactured hypothetical violations of different professional responsibility rules, without foundation in fact or law, do not meet the *heavy burden* required to demonstrate that disqualification is appropriate").  Here, the prosecutors rely on "discussions." (Gov't Mem. at 5 n.4).  And the cases the prosecutors cite relating to former government attorneys involved more direct participation than the prosecutors have established:

- *United States v. Philip Morris, Inc.*, 312 F. Supp. 2d 27, 38, 42 (D.D.C. 2004): former government attorney provided "extensive and extended legal representation to the FDA," including "work[ing] a total of 382 hours on the FDA Litigation."

- *United States v. Smith*, 995 F.2d 662, 676 (7th Cir. 1993): former government attorney "signed an immunity agreement for one of the government's major witnesses in this case."

- *United States v. Brothers*, 856 F. Supp. 370, 373 (M.D. Tenn. 1992): former government attorney "prepared the affidavit and search warrant from written reports, charts, and oral information given to him by the agents," and the fruits of the search were to be used against his client.

- *United States v. Ostrer*, 597 F.2d 337, 339 (2d Cir. 1979): former government attorney "personally prosecuted two of [three cooperating witnesses against the current client], Barresi and Geller, and called the third, Brown, as a witness at Geller's trial."

The prosecutors have not demonstrated that I participated "personally and substantially" in the TIN Matter, and Rule 1.11(a)  and § 207(a) do not apply because the TIN Matter was distinct and "unrelated" to this case.

## II.        The *Evans* Test Does Not Require Disqualification

Once the motion is stripped of meritless arguments regarding Rule 1.11(a)  and § 207(a), the prosecutors are left with the burden of demonstrating that disqualification is appropriate based solely on the *Evans* test, which was developed in civil cases involving private litigants with no Sixth Amendment rights.  *See United States v. Castellano*, 610 F. Supp. 1137, 1147 (S.D.N.Y.

---

analysis in the opinion.  *United States v. Washington*, 797 F.2d 1461, 1466 (9th Cir. 1986).

1985) (rejecting "the government's reliance on the standard for disqualification enunciated in civil cases").  In criminal cases, prosecutors have "'an affirmative obligation to respect and preserve the accused's choice to seek this assistance,'" and "[t]he government must 'honor' this right." *United States v. Stein*, 541 F.3d 130, 154 (2d Cir. 2008) (quoting *Maine v. Moulton*, 474 U.S. 159, 170-71 (1985)).  The prosecutors must be held to a "principle of non-interference"—because "the right to counsel in an adversarial legal system would mean little if defense counsel could be controlled by the government or vetoed without good reason"—and "the government violates the Sixth Amendment when it intrudes on the attorney-client relationship." *Id.* at 154.

Thus, when courts look to *Evans* and its progeny in criminal cases, the three elements are applied stringently. *See United States v. Armaza*, 280 F. Supp. 2d 174, 183 (S.D.N.Y. 2003) ("The substantial relationship test is strictly applied to avoid depriving clients of their chosen counsel . . . .").  The disqualification motion is unable to withstand such scrutiny.

## A.     The Matters Are Not Substantially Related

The "substantially related" element of the *Evans* test requires the prosecutors to establish that issues involved are "identical," or "essentially the same." *Cook Indus.*, 569 F.2d at 740; *see also United States v. Rastelli*, No. 87 Civ. 2974, 1989 WL 5273, at *1 (E.D.N.Y. Jan. 23, 1989) ("The movant can meet this 'substantial relationship' requirement only by demonstrating that the issues involved in the past and present representations are 'identical' or 'essentially the same.'" (quoting *Cook Indus.*, 569 F.2d at 740)); *CQS ABS Master Fund Ltd. v. MBIA Inc.*, No. 12 Civ. 6840, 2013 WL 3270322, at *12 (S.D.N.Y. June 24, 2013) ("The threshold of similarity is quite high: a relationship between issues is 'substantial' only if it is 'patently clear' and the issues are 'identical' or 'essentially the same.'").  The prosecutors "cannot meet this burden by putting forth mere speculation or arguing in favor of the mere appearance of impropriety." *Shea*, 2022 WL 4298704, at *6

"[I]n all the reported cases where counsel was disqualified, the former government attorney had some involvement with the investigation of the underlying prosecution." *United States v. Escobar-Orejuela*, 910 F. Supp. 92, 100 (E.D.N.Y. 1995); *see also, e.g.*, *United States v. Uzzi*, 549 F. Supp. 979, 982 (S.D.N.Y. 1982) (reasoning that "this prosecution arose directly out of that investigation"). That is not the case here. As with Rule 1.11(a) and § 207(a), the analysis must begin with the prosecutors' March 2023 representation to the Court that the matters are "unrelated." *See Schulte*, 2020 WL 534508, at *5 (applying "particularly strict scrutiny because of defense counsel's shifting narratives" in disqualification motion). That is true.

The TIN Matter started earlier, in a different unit, with different AUSAs and agents, and it related to different alleged conduct and different target offenses. ███████████

████████████████████████████████████

████████████████████ (*See generally* Aug. 7, 2023 Sealed Declaration of Alex Lipman). This is not surprising, as GTV did not even exist at the time. Thus, the matters are not substantially related because "the legal theories and facts are not the same." *Ferncliff Cemetery Association v. Town of Greenburgh, New York*, No. 18 Civ. 6411, 2019 WL 6878560, at *5 (S.D.N.Y. Dec. 17, 2019); *see also In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2006 WL 6846702, at *14 ("Where such material factual differences exist, the similarity of allegations, subject matter, defendants, or legal theory is an insufficient basis on which to conclude that two matters are the same.").

The Court should reject the prosecutors' effort to expand the scope of the TIN Matter to include Mr. Kwok's earlier interactions with the FBI. (*See* Gov't Mem. at 2). I did not participate in those interactions. (Bove Decl. ¶ 5). ████████████████████████

████████████████████████████████████

16

██████████████████████████   (*See* Gov't Mem. at 3).   ████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████   (*Id.*).

Mr. Kwok's alleged status as "the *focus* of the TIN Matter," if true, is not a sufficient basis to disqualify me from representing Ms. Wang.  (Gov't Mem. at 20).  For example, in one of the cases cited by the prosecutors, the court reasoned: "That the matters were '[Hurricane] Sandy-related,' however, does not make them substantially related."  *Giambrone v. Meritplan Ins. Co.*, 117 F. Supp. 3d 259, 274 (E.D.N.Y. 2015).  Thus, such general overlap does not require disqualification.  Nor does the relationship between Mr. Kwok and Ms. Wang, which was not central to the TIN Matter as far as I know.  Commonalities relating to the background relationship between the defendants are not sufficient to require disqualification.  (*See* Dkt. No. 289 at 28, *New York, et al., v. Deutsche Telekom AG, et al.*, No. 19 Civ. 5434 (S.D.N.Y. Nov. 26, 2019) (finding no substantial relationship between antitrust matters "even if there surely will be some things in common or that can be deemed related")).

The limited temporal overlap does not suffice.  While the Superseding Indictment alleges that the conspiracy charged in Count One began in 2018, the bases for that allegation appear to be limited to:  (1) Mr. Kwok's founding of the Rule of Law Foundation and the Rule of Law Society (Dkt. No. 19 ¶ 6(b)); and (2) Ms. Wang's opening of bank accounts (Dkt. No. 1 ¶¶ 11(a)-(b)).  The prosecutors have not alleged that any illicit transactions in furtherance of the charged schemes occurred prior to the summer of 2020.

In sum, "[t]he gravamen of this case is completely different."  *Doe 1 v. JPMorgan Chase Bank, N.A.*, No. 22 Civ. 10019, 2023 WL 3383724, at *2 (S.D.N.Y. May 11, 2023).  A rule "that

17

would disqualify a former government attorney from participating in any litigation that had any factual overlap with a matter on which the attorney had worked while in government service . . . is inconsistent with both settled law and the sound policy of avoiding undue disincentives to public service." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2006 WL 6846702, at *16. Because that is not the law, the prosecutors have not established the requisite substantial relationship.

### B. The Heavily Redacted *Huawei* Disqualification Is Not Persuasive

The prosecutors note that a court disqualified a former government attorney ("Attorney-1") in *United States v. Huawei Technologies Co., Ltd., et al.*, No. 18 Cr. 457 (E.D.N.Y.). (Gov't Mem. at 23). Indeed, the prosecutors lifted language from their EDNY colleagues' filing in ways that only serve to illustrate that their position in this case is much weaker:

| *Huawei* (EDNY) | *Wang* (SDNY) |
|---|---|
| Attorney-1 "is in possession of information he learned as DAG that relates to his representation of his current clients but that he cannot reveal, let alone use, in that representation." (Ex. D at 22 (emphasis added)). | "Bove may be in possession of information he learned when he supervised the TIN Matter, including classified information that he cannot reveal, let alone use, in this representation." (Gov't Mem. at 27 (emphasis added)). |
| "[B]ecause of the classified nature of the conflict, [Attorney-1] cannot provide his clients with more than the most cursory description of the conflict—that he knows something related to his current representation of Huawei that he cannot share or use— because he is not authorized to share any more information with his clients." (Ex. D at 22 (emphasis added)). | "[B]ecause Bove may be also aware of classified information, Bove cannot provide Wang with more than the most cursory description of the conflict—that he knows something related to his current representation of Wang that he cannot share or use—because he is not permitted to do so." (Gov't Mem. at 27 (emphasis added)). |

Presuming that the *Huawei* team did not share classified and sealed information with the Office, the prosecutors have no basis to compare this case to that one. The filings are heavily redacted, and it is nearly impossible to discern from the public record what facts led the court to conclude that disqualification was appropriate. However, the *Huawei* decision suggests that

18

Attorney-1 was involved in "the single act of approving or participation in a critical step." *Huawei Tech. Co. Ltd.*, 2020 WL 903007, at *6 (cleaned up).  In contrast, the only critical step I am aware of in the TIN Matter involved the execution of the October 2019 search warrants, which I did not review, approve, or authorize.  (*See* Bove Decl. ¶¶ 7-9).

### C.      The Prosecutors Have Not Established Access To Relevant Privileged Information

For the same reasons that the prosecutors have not established that I participated "personally and substantially" in the TIN Matter, *see* Part I.B, *supra*, they have not demonstrated that I had access to privileged information that warrants disqualification.

> Naked claims of a breach of confidential relations, or the attorney's receipt of confidential information, in a prior representation are not sufficient alone; the moving party must allege the type and nature of the confidences that were exchanged in the prior litigation that should subsequently disqualify the attorney in the latter representation.

32 Am. Jur. 2d Federal Courts § 160.  It bears repeating, the prosecutors have proffered two lines of redacted text in an unsworn brief and three emails.  Two of the emails related to media coverage of the CFU investigation.

I do not recall any of these communications.  (Bove Decl. ¶¶ 11-12).  The prosecutors contend that my recollection is "irrelevant."  (Gov't Mem. at 24).  To the contrary, "it is a factor that indicates even less reason for concern."  (Dkt. No. 289 at 28, *Deutsche Telekom*, No. 19 Civ. 5434 (S.D.N.Y. Nov. 26, 2019)); *see also Haggard*, 2009 WL 5207263, at *3 (denying disqualification motion based in part on attorney affidavit stating he "ha[d] no recollection of participating in any review, evaluation or recommendations regarding Defendant").  I do not recall ever seeing the 2019 warrant materials.  (Bove Decl. ¶¶ 7-8).  But any attorney representing Ms. Wang will see them in connection with this case because the prosecutors have produced them.  (Gov't Mem. at 21 n.12).  "Information that has been disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying."  Cmt. 3, Rule 1.9.

Perhaps recognizing the paucity of their showing, the prosecutors repeatedly urge the Court to ignore their "heavy burden" and "high standard of proof," *Shea*, 2022 WL 4298704, at *6, by applying an irrebuttable presumption that I accessed relevant privileged information. (Gov't Mem. at 15-16). The Court should reject the invitation to error because it reflects an improper disregard for Ms. Wang's constitutional rights.

The prosecutors cite only two district court cases that support their position: *Uzzi* and *Huawei*.[5] In addition to the differences identified above in Part II.B, the cases are distinguishable for important reasons not applicable to this motion. In *Uzzi*, disqualification of a former government attorney was sought in a "prosecution [that] arose directly out of that investigation." 549 F. Supp. at 982. In *Huawei*, although the court applied the presumption, the prosecutors "identified specific confidential information from [Attorney-1's] prior representation that [Attorney-1] had and can use to the detriment of his former client." (Ex. D at 21). To the extent a court could ever properly presume away an element of the test prosecutors must meet to overcome a defendant's Sixth Amendment right to choice of counsel, both of those considerations must be present. Presumptive access to relevant confidential information is more reasonable where it is established that the former government attorney participated in the same investigation that led to the charges against the current client. Moreover, as appears to have happened in *Huawei*, the prosecutors should be required to offer more than *ipse dixit* to justify disqualification when lesser measures—such as waiver—are available. They have not done so here, and the disqualification should be denied.

---

[5] The prosecutors also cite *United States v. Smith*, but the court noted in that case that the "presumption is rebuttable." 995 F.2d at 676. Similar to *Uzzi*, and as noted above, *Smith* is also a case where the former government attorney directly participated in the same investigation that gave rise to the charges.

### III.        The Potential Conflicts Are Waivable

The severe approach of disqualification is not warranted because Ms. Wang can waive the potential conflicts identified by the prosecutors following *Curcio* proceedings.  As discussed below in Part III.A, it is not uncommon for defendants to waive potential conflicts implicating an attorney's duties of loyalty and confidentiality to a prior client, despite the fact that the attorney must honor the prior client's confidences when discussing the potential conflict with the current client.  In this regard, the government's confidential information is not entitled to special treatment.

The prosecutors suggest that accepting a waiver would be imprudent because Ms. Wang could subsequently challenge these proceedings on that basis.  We have no objection to *Curcio* proceedings that require Ms. Wang to give up the right to bring such challenges, which is standard practice in this District.  We are mindful that those waivers are enforceable.  *See, e.g.*, *Baldeo v. United States*, No. 13 Cr. 125, 2018 WL 1116570, at \*9 (S.D.N.Y. Feb. 26, 2018) ("Such a valid waiver of right to conflict-free counsel cannot be defeated simply because the conflict subsequently affects counsel's performance." (cleaned up)).

Moreover, even if it could reasonably be said that a *Curcio* proceeding would give rise to unwarranted appellate risk—and I submit that it cannot—so too would disqualification, in violation of Ms. Wang's Sixth Amendment right, on the basis of the record here.  *See United States v. Perrone*, No. 05 Cr. 774,  2007 WL 1575248, at \*10 (S.D.N.Y. May 29, 2007) ("And though the government asserts that, should he be convicted, [defendant] will have a ripe ineffective assistance of counsel claim . . . , they fail to note that he will also have a ripe claim for denial of chosen counsel should the Court disqualify his attorneys." (cleaned up)).  Whereas the potential legal challenges identified by the prosecutors would likely require a demonstration of prejudice by Ms. Wang should she elect to bring them at some point in the future, a meritorious challenge to the deprivation of her Sixth Amendment right to choice of counsel would require automatic

21

reversal. *See Gonzalez-Lopez*, 548 U.S. at 150 ("We have little trouble concluding that erroneous deprivation of the right to counsel of choice, with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as structural error."); *United States v. Liszewski*, No. 06 Cr. 130, 2006 WL 2376382, at *10 (E.D.N.Y. Aug. 16, 2006) ("I must err on the side of non-disqualification, both because [defendant] has a constitutional right to counsel of his choice, and because to do otherwise would be to risk automatic reversal of any conviction that might ensue.").[6]

Finally, I am mindful of the Court's separate gatekeeping function, under *Curcio* and more generally, with respect to the integrity of these proceedings. I respectfully submit that my role in the separate TIN Matter does not call that integrity into question. As the Ninth Circuit has observed:

> It is easy to express vague concerns about public confidence in the integrity of the judicial process. It is quite a different matter to demonstrate that public confidence will in fact be undermined if criminal defendants are permitted to retain lawyers who worked for the government in the field of law implicated by an indictment. We are unwilling to sacrifice a defendant's Sixth Amendment right to counsel of his choice on such an unsubstantiated premise. Indeed, for all we as judges know in a vacuum, the public very well may have greater confidence in the integrity of the judicial process assured that a criminal defendant's right to counsel of his choice will not be lightly denied.

*United States v. Washington*, 797 F.2d 1461, 1466 (9th Cir. 1986). Respecting Ms. Wang's choice of counsel, upon a knowing and intelligent waiver of potential conflicts, would be consistent with the discretion that the Court exercised in *United States v. Zuckerman*, where Your Honor accepted a defendant's *Curcio* waiver despite the fact that the defendant's current attorneys were "potential witnesses" against him and "could potentially be compelled to testify against [him] at trial or in a

---

[6] *Liszewski* serves as an example of the appropriate balancing of the Sixth Amendment right on a disqualification motion, and illustrates that the prosecutors have it backwards when they cite a civil decision for the proposition that "'any doubt is to be resolved in favor of disqualification.'" (Gov't Mem. at 12 (quoting *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975))).

related hearing." (Dkt. No. 21 at 8-9, No. 16 Cr. 194 (S.D.N.Y. June 23, 2016)). The risks that the Court accepted in that situation in order to honor the defendant's Sixth Amendment right were myriad. *See also, e.g.*, *Perez*, 325 F.3d at 128 ("We also reject the contention that [counsel] had an unwaivable conflict of interest because he was a potential witness for the government at trial."). For the reasons set forth below, the potential conflicts at issue in this case do not rise to that level and are therefore waivable.

### A.     The TIN Matter

The prosecutors' argument that disqualification is necessary to "avoid trial taint" ignores the Office's longstanding practice of supporting defendants' knowing and voluntary waivers of potential conflicts faced by their attorneys that implicate duties of loyalty and confidentiality to former clients. (*See* Gov't Mem. at 26-27).

The prosecutors suggest that Ms. Wang cannot be advised of the risks associated with the potential conflict because I "may be also aware of classified information." (Gov't Mem. at 27). I dispute that I am aware of classified information as a result of the TIN Matter, and the prosecutors have not established otherwise. (*See* Bove Decl. ¶ 6). Even if their speculation is to be indulged, the ethics rules cited by the prosecutors do not attribute special status to classified information. I am well aware that I may not disclose confidential government information, and I take that obligation seriously. But *Curcio* proceedings do not require an attorney to disclose a former client's confidences to the current client, whether or not that former client is the government.

Rather, the defendant must be instructed regarding the "dangers" of the potential conflict:

At such a hearing, the trial court (1) advises the defendant of his right to representation by an attorney who has no conflict of interest, (2) instructs the defendant as to the dangers arising from particular conflicts, (3) permits the defendant to confer with his chosen counsel, (4) encourages the defendant to seek advice from independent counsel, (5) allows a reasonable time for the defendant to make a decision, and (6) determines, preferably by means of questions that are likely to be answered in narrative form, whether the defendant

23

understands the risk of representation by his present counsel and freely chooses to run them.

*Jenkins*, 325 F.3d at 119.  The fact that a defendant "did not know the exact nature" of the confidential information at issue "does not render his waiver invalid."  *United States v. Basciano*, No. 03 Cr. 929, 2008 WL 794945, at *8 (E.D.N.Y. Mar. 24, 2008).

Defendants are routinely permitted to waive potential conflicts involving situations where the defendant's attorney cannot disclose the confidences of a former client.  To address any risks associated with that circumstance, prosecutors and courts make clear to the defendant in *Curcio* proceedings that the attorney possesses information s/he cannot share.  By way of example, in 2021, prosecutors argued to Your Honor that a potential conflict was waivable where a defendant's attorney had previously represented a co-defendant.  They proposed the following *Curcio* questions:

- "Do you understand that [your attorney] may have learned information from [former client] that he <u>may be unable to share with you or use to defend you</u>, in light of the duty of confidence he owes to [former client], even if the information would be helpful to you?"

- "Do you understand that the restrictions on [your attorney's] ability to represent you may adversely affect his representation of you in this case <u>in ways that we have not yet discussed</u>? Do you understand that the greatest danger is the inability to foresee all the conflicts that may arise?"

Dkt. No. 777 at 6, *United States v. Liu*, No. 15 Cr. 616 (S.D.N.Y. Feb. 2, 2021) (emphases added).

Similarly, Judge Castel recently accepted a defendant's waiver where the attorney had previously represented two cooperating witnesses.  The prosecutors' proposed *Curcio* questions included the following:

- Are you aware that [your attorney] may have information from CW-1 and/or CW-2 that may be helpful in defending you, but that <u>she is absolutely prohibited from using that information to defend you</u> because of the attorney-client privilege?

- Do you understand that, should CW-1 testify against you, [your attorney] <u>may not use any information to cross-examine CW-1</u>, even if [your attorney] believes that such cross-

24

examination would be helpful to you? Do you understand that, similarly, should CW-2 testify against you, [your attorney] may not use any information to cross-examine CW-2, even if [your attorney] believes that such cross-examination would be helpful to you?

Dkt. No. 517-1 at 2, *United States v. Hernandez*, No. 15 Cr. 379 (S.D.N.Y. Feb. 10, 2023) (emphases added).

Consistent with the sorts of questions proposed by prosecutors in *Liu* and *Hernandez*, Ms. Wang does not need access to confidential government information to validly waive any potential conflict. No case the prosecutors cite suggests that I would be required to violate my duty of loyalty relating to the TIN Matter, in a "cursory" fashion or otherwise, in order for Ms. Wang enter a waiver knowingly and intelligently. (Gov't Mem. at 27). In *United States v. Pappa*, defense counsel insisted that disqualification was necessary because they faced "severe" conflicts. 37 F. App'x 551, 554 (2d Cir. 2002). The opposite is true here. I believe the potential conflict is waivable, I have discussed with Ms. Wang the "nature" of the conflict and the associated "danger[s]," and I need not disclose confidences in order to do so effectively.

In *United States v. Schwarz*, the court concluded that the conflict was unwaivable where an attorney faced ethical and "substantial" financial incentives to curry favor with another current client to the detriment of the defendant. 283 F.3d 76, 96 (2d Cir. 2002). The court "assume[d]" that "the distinct possibility existed that, at each point the conflict was felt, [the attorney] would sacrifice [the defendant's] interests for those of the [other current client]." *Id.* at 96. Here, unlike the concurrent-representation conflict in *Schwarz*, the prosecutors do not appear to be suggesting that the potential conflict is unwaivable because of its pervasive nature. (*See* Gov't Mem. at 27 ("The conflict could arguably be resolved by obtaining a knowing and intelligent waiver of any potential conflict from Wang.")). Rather, they appear to argue that Ms. Wang cannot be adequately

25

advised by the Court and counsel regarding the implications of the conflict so that she can make her own decision.

Given that position, the citation to *Armedo-Sarmiento* was an odd choice. (Gov't Mem. at 27). The case makes clear that Ms. Wang can be advised of the "nature of the conflict" without disclosing the government's confidences. 524 F.2d at 593. There, the Circuit reversed a trial court's disqualification of an attorney who had "represented three individuals whom the Government planned to use as witnesses," where two of the witnesses "were unwilling to waive their attorney-client privileges." 524 F.2d 591, 592 (2d Cir. 1975).[7] Thus, the attorney could not discuss with the defendant confidential information relating to two clients, and he could not use those clients' confidences when cross-examining them at the defendant's trial. Finding that civil cases that "do not involve the crucial factor of the criminal defendant's Sixth Amendment rights" were "not controlling in the present case," the Court of Appeals remanded the case to allow the defendant to waive the conflicts. *Id.* at 593-94. *Armedo-Sarmiento* therefore supports Ms. Wang's request for a *Curcio* hearing.

### B.     Mei Guo

The potential conflict arising from my colleagues' representation of Mei Guo in other proceedings is waivable and does not support the disqualification motion. My firm's representation of Ms. Guo predated my arrival by at least approximately a year. (Bove Decl. ¶ 14). When I arrived at the firm in January 2022, I was asked to assist in the matter. (*Id.*). I consulted

---

[7] Because *Armedo-Sarmiento* makes clear that a *Curcio* waiver is permissible notwithstanding the former clients' lack of consent, the reasoning in *Huawei* to the contrary is not persuasive. *See Huawei*, 2020 WL 903007, at *6.

the then-Associate United States Attorney, and he asked me not to participate. (*See* Gov't Mem. at 8-9). I did what he asked. (Bove Decl. ¶ 14).

In approximately June 2023, I was asked to participate in the representation of Ms. Wang in these proceedings. (Bove Decl. ¶ 15). In response to the request, I reviewed the significant volume of public filings in this case, which were not available to me in January 2022 and included the March 15, 2023 letter in which the prosecutors described the TIN Matter as "unrelated." (*See id.*). Prior to accepting the engagement, I also reviewed relevant ethics rules, consulted CSG Law's general counsel and other colleagues, and discussed the potential conflicts with Ms. Wang (without disclosing confidential government information). (*Id.*).

My decision to comply with the Office's request relating to Ms. Guo is neither binding nor persuasive authority for purposes of the prosecutors' disqualification motion relating to Ms. Wang. I made that decision for two reasons. First, my firm's representation of Ms. Guo related to civil matters, and she had no Sixth Amendment right to choice of counsel. Second, there were no public filings at the time, and I was not in a position to make an independent assessment of the potential conflict. In any event, the potential conflict is waivable. *See, e.g.*, *United States v. Akhavan*, No. 20 Cr. 188, 2020 WL 2836825, at *2 (S.D.N.Y. June 1, 2020).

## CONCLUSION

For the foregoing reasons, the disqualification motion should be denied, and the Court should hold a *Curcio* hearing to give Ms. Wang an opportunity to make a knowing and intelligent waiver of the potential conflicts presented.

Dated: New York, New York
       August 7, 2023

Respectfully submitted,

/s/ Emil Bove
Emil Bove
Chiesa Shahinian & Giantomasi PC
11 Times Square, 34th Floor
New York, NY 10036
(212) 324 7265
ebove@csglaw.com

*Attorney for Yanping Wang*

Cc:    Counsel of Record
       (Via ECF)

28