UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

YANPING WANG, a/k/a "Yvette,"

Defendant.

S1 23 Cr. 118 (AT)

**DECLARATION**

I, Elizabeth Hanft, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York (the "Office").

2. From approximately November 2017 to approximately January 2020, I was assigned to the Office's Terrorism and International Narcotics ("TIN") Unit, which is currently known as the Office's National Security and International Narcotics Unit. I am presently the Co-Chief of the Office's General Crimes Unit.

3. While in TIN, I, along with AUSA Kimberly Ravener, was assigned to an investigation involving Ho Wan Kwok, a/k/a "Miles Guo" ("Guo"), which began in or about September 2019 (the "TIN Matter").

4. On September 19, 2019, Emil Bove ("Bove") and Shawn Crowley ("Crowley") were appointed Co-Chiefs of TIN and, in that capacity, were my direct supervisors. As TIN Co-Chiefs, Bove and Crowley were responsible for overseeing all matters in TIN, unless they were specifically recused.

5. ███████████████████████████████████████
███████████████████████████████████████

1

███████████████████████████████████████████

███████████████████████████████████████

6.	From approximately mid-September 2019 through October 4, 2019, AUSA Ravener and I drafted the search warrant affidavits and warrants (the "Warrants"). I believe that Crowley and/or another supervisor reviewed the Warrants before they were submitted to the court.

7.	The FBI recovered over a hundred devices and a significantly large volume of data as a result of the Warrants.

8.	Bove was on trial for periods in September and October 2019. After Bove's trial ended in approximately mid-October 2019, Bove and Crowley supervised the TIN Matter. It was my general practice to update supervisors concerning my cases, which would include the TIN Matter. As is common in the Office, those updates were often oral. It was the practice of Crowley and Bove to join their Co-Chief into calls and/or meetings about cases they supervised.

9.	After the Warrants were executed, the TIN Matter remained active. Over the next several months, AUSA Ravener's and my work on the TIN Matter, along with the work of the FBI agents, focused on analyzing the electronic devices that were seized during the execution of the Warrants. ███████████████████████████████████████████████████████████████████████████████████████. In the weeks after the Warrants were executed, and throughout my involvement in the TIN Matter, the FBI agents and analysts provided periodic updates to me and/or AUSA Ravener on the review of search warrant materials or other significant events in the investigation.[1]

---

[1] During the execution of the Warrants, and until approximately December 2019, I was frequently working at an offsite location on another case without regular access to my office email and cellphone. Accordingly, I had fewer conversations with supervisors than was typical for me during this period. When I was out of the Office, AUSA Ravener assumed most of the responsibilities concerning the TIN Matter.

10. Aside from my practice of generally updating supervisors concerning my cases, I specifically recall at least one telephone conversation about the TIN Matter that included Bove, Crowley, and AUSA Ravener. During that call, AUSA Ravener and I explained that there were some suggestions that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Accordingly, Crowley informed us that she was recused from the TIN Matter, and we should consult only with Bove going forward. I do not recall if Bove was on the line at the time and we continued the conversation with him after Crowley disconnected, or if we terminated the call with Crowley and then called Bove to discuss the issue. Nonetheless, AUSA Ravener and I informed Bove of the following regarding the TIN Matter: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ We asked for Bove's advice on how to contend with these issues, including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. I recall that Bove provided me and AUSA Ravener with guidance on these topics, but I do not presently recall what that guidance was.

11. On or about July 25, 2023, the AUSAs handling the CFU Matter contacted me regarding Bove's supervision of the TIN Matter. The AUSAs later asked me to search my emails

3

for communications with Bove regarding the TIN Matter, which I did to the extent I was able. Based on that review, I located emails, including the following:

      a.      On October 21, 2019, AUSA Ravener sent me an email concerning a teleconference ("T/C") she had with one of the FBI case agents on the TIN Matter. In that email, AUSA Ravener updated me on the topics she discussed with the agent. (I understand that this email is marked as Government Exhibit G.) In that email, AUSA Ravener also informed me that she "spoke to Emil about the status of the [TIN] matter and next steps." Based on my review of this email, I believe this email indicates that, following the execution of the search warrants, Bove was updated on the TIN Matter and provided advice and guidance to me and AUSA Ravener concerning how to proceed in this investigation.

      b.      On October 31, 2019, Bove sent an email to me and AUSA Ravener titled "Guo," requesting the internal case tracking number for the TIN Matter. (I understand that this email was attached to the Government's Motion as Exhibit A.) Based on my experience in the Office, I am aware that, at that time, the TIN Co-Chiefs drafted monthly updates regarding certain TIN cases for the Office's management. As a general practice, chiefs in the Office request information on the status of certain cases—including, for example, significant events or new developments—to assist in their drafting of such updates, which updates include an internal case tracking number for each case. Based on my familiarity with the Office's practice of monthly updates and my review of this email, I believe that Bove requested the TIN Matter internal tracking number for the purpose of drafting such a monthly update regarding the TIN Matter.

      c.      On January 20, 2022, I received an email from the then-Associate U.S. Attorney, John McEnany. (I understand that this email was attached to the Government's Motion as Exhibit D.) I recall that Bove—who had left the Office by this time—had inquired with

4

McEnany whether it would present a conflict for Bove to represent Mei Guo, who is Guo's daughter. On that day, I spoke with McEnany, provided him with information about the TIN Matter, and confirmed that Bove had supervised the TIN Matter. Thereafter, McEnany advised me and AUSA Ravener that he had spoken with Bove and that Bove had agreed not to represent Mei Guo on the case.

12. In approximately January 2020, I was assigned to another unit in the Office and left the TIN unit. Thereafter, although I continued to work on the TIN Matter, my work on the TIN Matter was much more limited. I believe Bove continued to supervise the TIN Matter until he left the Office in December 2021.

13. Other than what is set forth herein, I do not at this time have a specific recollection of oral conversations with Bove about the TIN Matter.

14. I declare under penalty of perjury that the information contained in this declaration is true and correct.

Dated: New York, New York
       August 18, 2023

>                                    Respectfully submitted,
>
>                                    *[signature: EHanft]*
>                                    Elizabeth Hanft
>                                    Assistant United States Attorney
>                                    Southern District of New York