# Exhibit 8

Case 22-05032 Doc 118 Filed 12/15/22 Entered 12/15/22 09:35 Page 1 of 243
Case 1:23-cv-00118-KAD Document 30-8 Filed 12/16/23 Page 2 of 8

771

```
                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF CONNECTICUT
                          BRIDGEPORT DIVISION


                                        .
IN RE:                                  . Chapter 11
                                        .
HO WAN KWOK,                            . CASE NO.: 22-50073 (JAM)
                                        .
              Debtors.                  .
. . . . . . . . . . . . . . . . .
PACIFIC ALLIANCE ASIA                   .
OPPORTUNITY FUND L.P.,                  . Adv. Pro. No.: 22-05032
                                        .
              Plaintiff,                .
     v.                                 .
                                        .
HO WAN KWOK,                            .
                                        . Bridgeport, Connecticut
              Defendants.               . December 12, 2022
. . . . . . . . . . . . . . . . .
```

TRANSCRIPT OF MONTION FOR PRELIMINARY INJUNCTION
**BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE**

**(DAY 4)**

<u>APPEARANCES</u>:

For the Plaintiffs:      PETER FRIEDMAN, ESQ.
                         DAVID HARBACH, ESQ.
                         STUART SARNOFF, ESQ.
                         DANIEL CANTOR, ESQ.
                         O'Melveny & Myers, LLP
                         Times Square Tower
                         7 Times Square
                         New York, New York 10036

Transcription Company:   Reliable
                         1007 N. Orange Street
                         Wilmington, Delaware 19801
                         (302)654-8080
                         Email: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

Case 22-05032 1:23-cr-10118-FDS Doc 101 Filed 12/15/22 Document 60-2 Entered Filed 12/15/22 20:09:25 Page Page 78 of 243

848

```
 1                MR. FRIEDMAN:  Thank you, Your Honor.
 2                THE COURT:  Overrule your objection.  Continue,
 3    counsel.
 4    BY MR. WACHEN:
 5         Q.   So --
 6                THE COURT:  I don't know if there -- I think you
 7    answered that question?
 8                MR. WACHEN:  Did --
 9                THE WITNESS:  Thank you.
10                MR. WACHEN:  -- did you finish your answer?
11                THE COURT:  Yeah, I think that -- that answer,
12    you're done, you should ask another question.
13                MR. WACHEN:  Okay.  Yeah.  Thank you, Your Honor.
14    BY MR. WACHEN:
15         Q.   And what was your response to having received that
16    email with a proposed agreement?
17         A.    We decided to -- that we were -- we were sitting
18    and listening.  And if -- you know, and we would comply with
19    the agreement, and we were going to sit and listen, even
20    though there were numerous red flags.
21         Q.   And the meeting was on the 17th of November,
22    right?
23         A.   Correct, November 17th.
24         Q.   And who was at the meeting?
25         A.   So the was me, Aaron Mitchell, Nicholas Bassett,
```

Case 22-50321-JTD Doc 1011 Filed 12/15/22 Entered 12/15/22 09:35 Page 4 of 8
Case 1:23-cr-00118-AT Document 60-2 Filed 12/30/23 Page 79 of 243

849

1   the Trustee, my client Mr. Kwok, and a translator.
2        Q.   Where was it?
3        A.   It was at Brown Rudnick.
4        Q.   In New York City, right?
5        A.   In New York City, I'm sorry.
6        Q.   Did you take notes during the meeting?
7        A.   I did.
8        Q.   Do you still have those notes?
9        A.   I do.
10       Q.   And how did the meeting proceed?
11            MR. BASSETT:  Your Honor, I'm going to object
12  to -- as we objected --
13            THE COURT:  We can't hear you, Mr. Bassett.
14            MR. BASSETT:  I apologize.  For the record, Your
15  Honor, Nick Bassett from Paul Hastings, on behalf of the
16  trustee.  I'm going to raise the same objection that I raised
17  last week, when counsel attempted to inquire into the
18  substance of the meeting that occurred on the 17th.
19            Not only has counsel established that it took
20  place for the purpose of having settlement discussions, but
21  counsel has now acknowledged that he and everyone else in
22  attendance signed an NDA agreeing not to disclose the content
23  of the meeting.  I think it's entirely inappropriate for them
24  to disregard that all together, and to use it for a purpose
25  that suits their position in this matter.

1  Mr. Despins say at the meeting, and he's getting a narrative
2  response and is presumably is going to describe the entire
3  meeting, I don't see how that could possibly be consistent
4  with the ruling Your Honor just gave.
5        MR. WACHEN:  Well --
6        THE COURT:  Mr. Wachen, you need to ask the
7  question about -- maybe the way to ask it is to say, Mr.
8  Despins testified that he said X, is that what you heard Mr.
9  Despins say?
10       MR. WACHEN:  Well, unfortunately, Your Honor, I
11  don't have Mr. Despins testimony in front --
12       THE COURT:  I understand, but you've got notes,
13  you know what -- you asked the questions, you know what --
14  you know what he said.  In general you know what he said.
15       MR. WACHEN:  I know what he said in general, yes.
16  Okay.
17  BY MR. WACHEN:
18       Q.   Did Mr. Despins mention Al Capone at the meeting?
19       A.   He did.
20       Q.   And what did he say about Al Capone?
21       A.   He said was that -- he asked my -- Mr. Kwok if he
22  knew who Al Capone was, the gangster.  And he said, you know,
23  he went to jail for tax evasion.  And there was a series of
24  statements that that led to by the Trustee.  The first, with
25  respect to the whole implied tax issue, was to state that he

863

1   knows that there's this theory -- the -- he, meaning the
2   Trustee -- knows that there's this theory that the friends
3   and supporters of Mr. Kwok are supporting him financially.
4   And then, he said, I hope that they, or you, have declared
5   that in the United States.
6          He then proceeded to say that you, Miles, are --
7   have stated proudly that you have earned $500,000 of
8   consulting fees from one of these companies.  And again, he
9   said, you know, I assume that you've paid income tax or
10  you've declared that.  He immediately made the point that I
11  speak to the IRS and the SEC on a weekly basis, and you
12  better settle because soon it's going to be too late.
13          And so, that, among other statements that were
14  made by the Trustee -- we were perceiving that as, you know,
15  the threatening, intimidating behavior on his part.
16      Q.  Did he -- did he say at some point at the meeting,
17  pay me $250 million?
18      A.  Yes, he said, pay me $250 million.  Just to -- in
19  terms of the proposal, he described the proposal as -- to
20  Miles, you know, you keep the UBS claim, you keep the
21  share --
22          THE COURT:  Hold on, stop.  I said I didn't want
23  to hear about the terms and conditions of a settlement, so I
24  don't want to hear that.  That's not where we're going.
25          MR. WACHEN:  Okay, Your Honor.

1  Q. And what was -- what was your reaction to his
2  request to pay him $250 million? Without -- without going
3  into the terms of a proposal?
4  A. Livid. I was very upset, distraught.
5  Q. And why was that?
6  A. It deviated greatly from what was -- what I
7  believed a global settlement that was nearly imminent the day
8  before.
9  Q. And do you know how Mr. Kwok perceived that
10 statement by Mr. Despins, pay me $250 million?
11      MR. BASSETT: Objection. Calls for speculation.
12 Calls for hearsay.
13      THE COURT: Sustained.
14 BY MR. WACHEN:
15 Q. At some point, did you respond to Mr. Despins in
16 his -- in his statement, pay me $250 million?
17 A. Yes, I did. There was two phases. There was one
18 in the presence of everyone, and then there was a separate,
19 where I came back into the conference room, after showing my
20 client, and the translator, and Attorney Mitchell out and had
21 a response. So --
22 Q. Let's take them one at a time.
23 A. Okay.
24 Q. So what did you say in the room when everybody was
25 there?

1        A.   So my immediate response was -- I actually
2   responded to the threat that the Trustee was going to lock
3   Mr. Kwok out of his apartment.  That was the first response I
4   had, which came right after the $250 million demand.  And I
5   told him that that was illegal, he couldn't do that.  And he
6   said he was going to do it.
7             But then, I accused him of -- I said it was
8   outrageous, there was no legitimate basis for it, you know,
9   and at some point, I said that it was extortion.  I either
10  said that with everybody or separately after I had shown out
11  those other individuals and confronted Nick and Luc.
12       Q.   Okay.  So at some point the other -- Mr. Kwok, the
13  translator, Mr. Mitchell left?
14       A.   Right.  I showed them out at the door, and I
15  decided to go back and confront Attorney Bassett and the
16  Trustee.
17       Q.   And what -- what did you say at that point?
18       A.   So I -- as I said, again, it was a lot of -- I
19  mean, I was very upset because again, I thought we were there
20  after months and months, and he was blowing it all up.  And
21  at one point I said that Miles -- and when I said Miles, I'm
22  referring to his -- the support that he gets.  I said, Miles
23  is never going to pay the $250 million, and the Trustee said,
24  he will when he's about to go to jail.
25       Q.   And you stated that you thought that this was