**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

        *Plaintiff,*

    v.

HO WAN KWOK,

        *Defendant.*

<u>**FILED PARTIALLY UNDER SEAL**</u>

Case No. 1:23-CR-118-1 (AT)

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT'S MOTION TO COMPEL DISCOVERY

Sidhardha Kamaraju
Matthew S. Barkan
Daniel J. Pohlman
John M. Kilgard
Clare P. Tilton
PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100
skamaraju@pryorcashman.com
mbarkan@pryorcashman.com
dpohlman@pryorcashman.com
jkilgard@pryorcashman.com
ctilton@pryorcashman.com

*Attorneys for Defendant Ho Wan Kwok*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ..................................................................................... 1

RELEVANT BACKGROUND ........................................................................................ 4

    I.   The Bankruptcy & the Trustee's Control over Mr. Kwok's Privilege ......................... 4

    II.  The Indictment ................................................................................................... 5

    III. The Trustee's Cooperation with the Government ........................................... 6

    IV. The Joint Investigation between the Government and the SEC ................................. 10

    V.  The *Brady* Material ........................................................................................ 12

    VI. The Requested Discovery ............................................................................... 12

ARGUMENT ................................................................................................................. 13

    I.   Applicable Law ................................................................................................. 13

    II.  Discussion ......................................................................................................... 16

        A. The Government Should Be Ordered to Produce its Communications with the Trustee and His Agents .................................................................................. 16

        B. The Court Should Direct the Government to Produce its Communications with the SEC ...................................................................................................... 20

CONCLUSION ............................................................................................................... 22

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Brady v. Maryland,*
  373 U.S. 83 (1963) ................................................................................ *passim*

*Giglio v. U.S.,*
  405 U.S. 150 (1972) ...............................................................14, 15, 16, 17, 20

*Kyles v. Whitley*,
  514 U.S. 419 (1995) .................................................................................14

*Nat'l City Trading Corp. v. United States,*
  635 F.2d 1020 (2d Cir. 1980) ....................................................................19

*United States v. Coppa,*
  267 F.3d 132 (2d Cir. 2001) ......................................................................14

*United States v. Gel-Spice,*
  773 F.2d 427 (2d Cir. 1985) ......................................................................15

*United States v. Gupta,*
  848 F. Supp. 2d 491 (S.D.N.Y. 2012) ...............................................15, 19, 20

*United States v. Hamilton*,
  730 F. Supp. 1272 (S.D.N.Y. 1990) ...........................................................16

*United States v. Hunley,*
  476 F. App'x 897 (2d Cir. 2012) ................................................................17

*United States v. Martinez*,
  844 F. Supp. 975 (S.D.N.Y. 1994) .............................................................14

*United States v. Martoma,*
  990 F. Supp. 2d 458 (S.D.N.Y. 2014) ....................................................15, 20

*United States v. Patel*,
  No. 16-CR-798 (KBF), 2017 WL 3394607 (S.D.N.Y. Aug. 8, 2017) ...................18

*United States v. Rhodes*,
  No. 18 Cr. 887 (JMF), 2019 WL 3162221 (S.D.N.Y July 16, 2019) ..............15, 20

*United States v. Soriano*,
  401 F. Supp. 3d 396 (E.D.N.Y. 2019) .........................................................17

*United States v. Stein,*
    488 F. Supp. 2d 350 (S.D.N.Y. 2007) ............................................................13, 22

*United States v. Stevens,*
    985 F.2d 1175 (2d Cir. 1993) .................................................................................14

*United States v. Teyibo,*
    877 F. Supp. 846 (S.D.N.Y. 1995) .........................................................................20

*United States v. Zanfordino,*
    833 F. Supp. 429 (S.D.N.Y. 1993) .........................................................................14

## Statutes

Fed. R. Bankr. P. 2004 ..............................................................................................4, 9, 18

Fed. R. Crim. P. 16 ....................................................................................................1, 13, 21

Fed. R. Crim. P. 16(a)(1) ..........................................................................................13

Fed. R. Crim. P. 16(a)(1)(E)(i) ................................................................................14

Defendant Ho Wan Kwok respectfully submits this memorandum of law in support of his motion, pursuant to Federal Rule of Criminal Procedure 16, for an order compelling production of all communications[1] and documents exchanged between the government and (i) the Chapter 11 trustee (the "Trustee") appointed to oversee the bankruptcy proceedings *In re Ho Wan Kwok, et al.*, Case No. 22-50073(JAM) (Bankr. D. Conn.) (Jointly Administered) and related cases (collectively, the "Bankruptcy Cases") and his agents; and (ii) the Securities and Exchange Commission (the "SEC") concerning the subject matter of the superseding indictment filed in this matter (the "Indictment").

## PRELIMINARY STATEMENT

Mr. Kwok—whom the government has charged erroneously with participating in a massive fraud—has had to defend his constitutional rights on two fronts: within this prosecution itself, and from incursions prompted by the Trustee overseeing Mr. Kwok's Bankruptcy Cases. What is now clear is that those fronts are not distinct, but coordinated: the government that wrongly seeks to prosecute Mr. Kwok, and the Trustee who cavalierly seeks to bring assets under his control regardless of the impact on this case, are working together. That coordination is not a matter of Mr. Kwok's surmise. Rather, it has been demonstrated in public filings and testimony by the Trustee, and includes not only a two-way sharing of information but a plan to dispose of a key piece of evidence at the center of this case prematurely.

As detailed in Mr. Kwok's pending motion to stay the Bankruptcy Cases (Dkt. No. 131) (the "Stay Motion"), the cooperation between the government and the Trustee threatens Mr. Kwok's constitutional rights in this proceeding in very specific ways.

---

[1] The communications requested in this motion include all records reflecting communications, including notes of oral communications.

*First*, as the government well knows, many of the allegations against Mr. Kwok in the Indictment focus on the purchase of a property in Mahwah, New Jersey (the "Mahwah Facility") using membership fees paid by subscribers to the company G|CLUBS.  While the government alleges (wrongly) that Mr. Kwok used the Mahwah Facility as a personal residence, Mr. Kwok will demonstrate at trial that the property was purchased for the benefit of G|CLUBS and its members and in furtherance of its mission to combat the Chinese Communist Party and secure a democratic future for the Chinese people.  Despite the crucial nature of this evidence, however, the government has elected to help the Trustee seize the Mahwah Facility by supplying him with evidence from the FBI's searches and by agreeing to fast-track the sale of that property before any conviction in this case and at the expense of the purported victims in this proceeding.  This attempted spoliation of evidence violates Mr. Kwok's constitutional rights to exculpatory evidence. Accordingly, Mr. Kwok should have an opportunity to investigate the extent of the government's participation in that violation by reviewing the government's communications with the Trustee and his agents.

*Second*, through the Bankruptcy Cases, the Trustee has gained access to privileged material from Mr. Kwok's prior attorneys, even in violation of the procedures set forth by the Bankruptcy Court.  The Trustee also has shared information with the government, including his purported "analysis" related to the ownership of the Mahwah Facility.  Mr. Kwok has not been provided with this analysis, and thus has no way of knowing if it was based on privileged information to which the government should not have access.  Indeed, absent reviewing the communications between the Trustee and the Government (of which there apparently have been many), Mr. Kwok has no way of knowing if the Trustee has provided privileged material to the government in other contexts. If those communications show that the Trustee has fed privileged information to the government

(even if the government was unaware that it was privileged), then Mr. Kwok would be entitled, at a minimum, to move to suppress those privileged communications, as well as for any other relief that may be appropriate.  For this reason too, Mr. Kwok is entitled to review the government's communications with the Trustee and his agents.

The government's improper coordination does not appear limited to the Trustee—the government also apparently coordinated with the SEC in conducting its investigation.  Public filings and discovery in this matter demonstrate, for example, that the government relied on support from the SEC in conducting its investigation, including, but not limited to, relying on financial analysis conducted by the SEC to support no less than *twelve* search warrants procured by the government.  Moreover, the SEC has supplied the government with considerable information, which the government has produced in discovery to the defense.  To evaluate the extent to which the government has coordinated with the SEC and to secure any evidence favorable to the defense, Mr. Kwok is entitled to review the government's communications with the SEC about this matter.

Mr. Kwok's instant request for the government's communications with the Trustee and the SEC are not part of some routine "joint investigation" discovery demand (although Mr. Kwok may well be entitled to discovery from the files of the Trustee and the SEC as a result).  Rather, in this case, the government's actions with respect to the Trustee and the SEC threaten Mr. Kwok's constitutional right to a fair trial, including his rights to exculpatory evidence and the protections of the attorney-client and Fifth Amendment privileges.  While Mr. Kwok has moved to stay the Bankruptcy Cases to prevent future harm to these important rights, the discovery requested herein is necessary to determine the extent of past violations and the government's participation in (and reliance on) those violations.  Accordingly, Mr. Kwok respectfully requests that the Court direct

the government to produce to Mr. Kwok all communications and documents exchanged between the government and (i) the Trustee and his agents (ii) the SEC concerning the subject matter of the Indictment.

## RELEVANT BACKGROUND

### I.     The Bankruptcy & the Trustee's Control over Mr. Kwok's Privilege

On February 15, 2022, Mr. Kwok filed for chapter 11 bankruptcy protection (the "Kwok Chapter 11 Case") in the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court").  Approximately five months later, on or about July 8, 2022, the Bankruptcy Court approved the appointment of Luc A. Despins, Esq. as the Trustee in the Kwok Chapter 11 Case.  The Kwok filing was followed by Genever Holdings Corporation filing for bankruptcy protection on October 11, 2022, and Genever Holdings LLC filing for bankruptcy protection on October 12, 2022.  These three bankruptcy cases were subsequently consolidated into the Bankruptcy Cases.  (*See generally* Stay Mot. at 5-7.)

On August 22, 2022, the Trustee filed a motion seeking an order "confirming" that he controlled certain legal privileges formerly held by Mr. Kwok, and directing that Mr. Kwok and others not withhold information on the basis of "any such privileges or attempt to assert any such privileges."  (*See* Stay Mot. at 12.)  That motion followed on the heels of the Trustee's prior receipt of authority from the Bankruptcy Court to serve subpoenas on "the Debtor and numerous law firms and other professional advisors who represented him" pursuant to Fed. R. Bankr. P. 2004 ("Rule 2004").  (*Id*.)  In response, Mr. Kwok invoked attorney-client privilege, work product protection, and other privileges and protections.  (*Id*.)

On September 14, 2022, the Bankruptcy Court issued an order (the "Privilege Order"), on consent, providing that the Trustee had "exclusive control" of "any attorney-client privilege or

work product protection" concerning (among other things) any assets that are or were held by Mr. Kwok or any other individual or entity that the Trustee was investigating. (*See* Kamaraju Stay Decl. Ex. 12 at 1.)[2]  This Privilege Order was not unlimited; it acknowledged that Mr. Kwok retained privilege relating to unrelated issues, "such as unrelated criminal allegations" or Mr. Kwok's asylum application. (*Id.* at 3.)  To the extent that Mr. Kwok's counsel believed that "particular documents or information … could result in personal harm to [Mr. Kwok] if disclosed to the Trustee," Mr. Kwok was required to log such documents on a privilege log and Mr. Kwok and the Trustee were both empowered to file motions clarifying who controlled the privilege over any disputed communications. (*Id.* at 4.)

The Privilege Order's acknowledgement of Mr. Kwok's inviolable privilege with respect to criminal matters was not, however, followed in practice.  Numerous individuals who were served with subpoenas by the Trustee—including former counsel for Mr. Kwok—did not provide Mr. Kwok's bankruptcy counsel any opportunity to review productions for privilege or self-incrimination issues.  Further, the Trustee has indicated that he may contest Mr. Kwok's invocation of his privileges even with respect to proceedings that directly touch on the criminal allegations in this matter, including, for example, an adversary proceeding concerning the ownership of the Mahwah Facility. (*See* Stay Mot. at 13-14.)

## II.    **The Indictment**

On or about March 6, 2023, a grand jury sitting in this District returned a sealed indictment (the "Original Indictment") against Mr. Kwok and co-defendant Kin Ming Je. (Dkt. No. 2.)  On March 29, 2023, the government filed the Indictment charging Mr. Kwok, Kin Ming Je, and

---

[2] References to the "Kamaraju Stay Decl." refer to the Declaration of Sidhardha Kamaraju dated August 30, 2023 and filed in support of the Stay Motion (Dkt. No. 130).

Yanping Wang (together, the "Defendants") with, among other offenses, securities fraud, wire fraud, and money laundering.  The Indictment alleges Mr. Kwok was the leader of a scheme in which the Defendants defrauded investors through a series of allegedly fictitious businesses and investment opportunities for Defendants' personal enrichment.  (Ind. ¶¶ 1-2, 4.)  The (incorrect) allegations of Defendants' purported misappropriation of funds are central to the Indictment.  (*See, e.g.*, *id.* ¶¶ 4, 16(a)-(e), 23.)  With respect to Mr. Kwok, the government alleges, among other things, that he used fraudulently obtained funds from G|CLUBS members to purchase, renovate, and decorate the Mahwah Facility[3] for his and his family's personal use.  (Ind. ¶¶ 4, 16(b), 16(c).)

## III.    **The Trustee's Cooperation with the Government**

In his Stay Motion, Mr. Kwok explained how the actions of the Trustee and the Bankruptcy Court have imperiled Mr. Kwok's constitutional rights and disrupted the sanctity of this criminal proceeding.  Mr. Kwok has now learned of additional, ongoing coordination between the prosecutors in this action and the Trustee in connection with an adversary proceeding commenced by the Trustee, *Despins v. Taurus Fund LLC, et al.*, Adv. Proc. No. 23-05017(JAM) (Bankr. D. Conn.) (the "Mahwah Proceeding").

As one example, the Trustee attached to the Complaint in the Mahwah Proceeding certain photographs taken by FBI agents, which the Trustee has admitted were provided to him by a member of the team prosecuting Mr. Kwok.  (*See* Kamaraju Stay Decl. Ex. 10 (Aug. 14, 2023 H'ring Tr.).)  Specifically, the Trustee's attorney admitted that he called one of the Assistant U.S. Attorneys leading the prosecution "to get pictures of what the FBI had found at the mansion when

---

[3] In his motion to stay the Bankruptcy Cases, counsel for Mr. Kwok inadvertently suggested that the government's allegations with respect to the Mahwah Facility pertained to GTV investor funds, rather than G|CLUBS membership fees.  (Stay Mot. at 3, 20.)

they executed their search warrant, and [the AUSA] provided numerous pictures."[4]  (*Id.* at 85:2-25.)  But the coordination was not limited to the provision of these photographs.

The true extent of the government's cooperation with the Trustee concerning the Mahwah Facility was revealed on August 14, 2023, when the Trustee filed a motion for approval of a settlement agreement (the "Settlement Agreement") between the Trustee and the government (signed by the prosecution team) that purported to adjudicate certain rights between the Trustee and the government with respect to the Mahwah Facility.  (*See* Kamaraju Stay Decl. Ex. 5 (Motion for Approval of Settlement Agreement ("Settlement Mot.")).)   According to the motion and accompanying Settlement Agreement:

- There have been discussions between the government and the Trustee regarding "potentially complex issues raised both in [the Mahwah] Proceeding and in the government's ongoing criminal case."  (*Id.* ¶ 1.)

- "The Trustee and the government are aligned both on the need to obtain control of and liquidate the Debtor's assets as quickly and efficiently as possible."  (*Id.* ¶ 6.)

- The Trustee "advised the Government that he had concluded, after extensive analysis, that, among other things, the [Mahwah Facility] is equitably owned by [Mr. Kwok] and, therefore, is property of [Mr. Kwok's] chapter 11 estate."  (*Id.* ¶ 12.)

- The Trustee and the government agreed to negotiate how to apportion the proceeds from any sale of the Mahwah Facility, except that certain administrative costs— *including the Trustee's counsel's attorney's fees* – would be paid first out of those proceeds.  (*Id.* at Settlement Agreement ¶¶  6, 14(b).)

- The government agreed to "[e]xecute promptly any documents which may be required to convey clear title for the Trustee's sale of the Facility.  (*Id.* at Settlement Agreement at 23.)

In a hearing regarding the Settlement Agreement, the Trustee further elaborated on the extensive cooperation between the government and himself.  The Trustee admitted that he was not

---

[4] Among the pictures the government provided was one of Mr. Kwok with his wife and two children, which the Trustee publicly filed with his complaint in the Mahwah Proceeding.

aware of the Mahwah Facility until the Original Indictment in this case was unsealed. (Barkan Decl.[5] Ex. 1 (Aug. 29, 2023 H'ring Tr.) at 20:7-12.)  After learning about the Mahwah Facility through the indictment, the Trustee promptly sought to "work with [the government] as cooperatively as possible." (*Id.* at 20:23-21:2.)  As the Trustee explained, working with the government was imperative because the government had "all sorts of tools that [the Trustee] do[esn't] have," and so the Trustee did not want to be at "cross purposes" with the government concerning the Mahwah Facility. (*See id.* at 21:3-11.)

The Trustee additionally noted that there were extensive procedural advantages *to the government* in allowing the Trustee to seek accelerated turnover of the Mahwah Facility. Specifically, as the Trustee noted, "the Department of Justice, their tools are sort of limited in the pre-conviction phase in the sense that they cannot obtain title to this property now or do much with it before there's a conviction." (*Id.* at 20:13-16.)  By contrast "if the [Bankruptcy] Court rules in [the Trustee's] favor, [he can] sell this asset to liquidate it for the benefit of holders of allowed claims." (*Id.* at 21:14-16.)  Moreover, the Trustee himself acknowledged that this sort of cooperation was unusual, "because there's a lot of cases on this where Chapter 11 trustee or Chapter 7 trustees are battling against the DOJ over issues like that as to who has first dibs on an asset." (*Id.* at 21:21-24.)

Here, the Trustee and government cooperated to allow the Trustee to proceed against the Mahwah Facility immediately, rather than having the government proceed with forfeiture following a conviction.  Under the terms of their Settlement Agreement, the Trustee's legal expenses will be paid "off the top" of any proceeds from the Mahwah Facility, ensuring that the

---

[5] References to the "Barkan Decl." refer to the Declaration of Matthew S. Barkan dated September 20, 2023 and filed in support of this motion.

Trustee and his lawyers would be paid should they prevail in the Mahwah Proceeding, before any of the alleged creditors in that case or the purported victims in this proceeding.  (*See id.* at 22:16-23:2.)  The distribution of the remaining proceeds between the Trustee and the government will be determined at a later date.  (*Id.*)

As a result of the Trustee's actions, with the government's assistance, the Trustee obtained a preliminary injunction granting him control over the Mahwah Facility and restricting access to the property.  (*See* Mahwah Proceeding Dkt. No. 47.)  More recently, the Trustee has secured a modification of that preliminary injunction to prevent pro-democracy Chinese dissidents from using the property pending resolution of an insurance-related issue.  (*See* Mahwah Proceeding Dkt. No. 58.)

Mahwah aside, other examples of government-Trustee cooperation abound.  In a fee application filed in the Bankruptcy Cases on August 4, 2023, (*see* Barkan Decl. Ex. 2), the Trustee reported that his attorneys:

- attended "meetings with U.S. DOJ personnel," (*id.* ¶ 58);

- "[c]ommunicat[ed] with the U.S. DOJ regarding [Mr. Kwok]'s criminal proceedings and the assets seized in connection with his arrest," (*id.* ¶ 72);

- "attended various hearings related to [Mr. Kwok]'s criminal proceedings," (*id.* ¶ 76); and

- produced documents obtained through the Trustee's Rule 2004 investigation (which investigation also sought and obtained Mr. Kwok's privileged material) to the DOJ in response to a subpoena.  (*Id.* ¶ 78.)

The fee application also included billing reports showing that many of these activities occurred even before the government filed the Indictment on March 29, 2023.  (*See id.* at 135 (March 14, 2023 calls with DOJ regarding "seizure"), 136 (March 16, 2023 call with DOJ regarding "briefing

on case and next steps"), 138 (March 18, 2023 call with DOJ regarding "our next steps and forfeiture issues").)

Taken together with the coordination described in hearings relating to the Mahwah Proceeding, the Trustee's statements portray ongoing and in-depth coordination with the government's prosecution of Mr. Kwok, entitling Mr. Kwok to the government's documents and communications concerning that cooperation.

**IV.**   <u>**The Joint Investigation between the Government and the SEC**</u>

Before and after this action was commenced, the government and the SEC acted in concert and pursued a joint investigation into Mr. Kwok. █████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████   ████████████████████████████

█████████████████

   █   ████████████████████████████████████████████████

███████████████████████████

   █   ████████████████████████████████████████████████

████████████████████████████████████████████████████████████



The coordination continued in the SEC's and government's charging of their respective cases. The SEC filed its civil action alleging securities-law violations mirroring those in the criminal action on March 15, 2023, the same day the government unsealed its indictment. *Compare* Complaint, *SEC v. Ho Wan Kwok, et al.*, No. 23-cv-2200-PGG (S.D.N.Y.) (Mar. 15, 2023) (Dkt. No. 1) *with* Original Indictment (Dkt. No. 2) (unsealed Mar. 15, 2023). Also on March 15, 2023, the government and the SEC each issued a press release announcing the charges. *See* U.S. S.E.C., *SEC Charges Exiled Chinese Businessman Miles Guo and his Financial Advisor William Je in $850 Million Fraud* (Mar. 15, 2023), https://www.sec.gov/litigation/litreleases/lr-25668; U.S. Dep't of Just., *Ho Wan Kwok, a/k/a/ "Miles Guo," Arrested for Orchestrating Over $1 Billion Dollar Fraud Conspiracy* (Mar. 15, 2023), https://www.justice.gov/usao-sdny/pr/ho-wan-kwok-aka-miles-guo-arrested-orchestrating-over-1-billion-dollar-fraud-conspiracy. The

press releases show that the government and SEC both worked with the FBI in their investigations of Mr. Kwok.  And the press releases show that the government and SEC also worked together: in its press release, the government "thanked the U.S. Securities and Exchange Commission . . . for its assistance and cooperation in this investigation"; and in the SEC's press release, it stated that it "appreciates the assistance of the U.S. Attorney's Office for the Southern District of New York."

## V.      The *Brady* Material

In addition to the cooperation revealed in the search warrant affidavits, discovery in this proceeding has indicated that the SEC continues to provide information to the government. According to the government's own production letters to date, the SEC has provided the government with more than *100,000 documents* in connection with this matter.  ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

## VI.     The Requested Discovery

On Thursday, August 17, 2023, Mr. Kwok asked the government to produce its communications with the Trustee.  (Barkan Decl. Ex. 15.)  Email discussion followed without the government taking a position as to the production.  On August 28, 2023, Mr. Kwok expanded his request to include communications with the SEC, and requested that the government respond

within one week as to its position on the requested materials.  (*Id.*)  The government did not respond to Mr. Kwok's request, and has yet to respond.

## ARGUMENT

To prepare his defense, Mr. Kwok now comes before the Court and respectfully requests an order compelling the production of all communications and documents exchanged between the government and (i) the Trustee and his agents and (ii) the SEC concerning the subject matter of the Indictment (together, the "Requested Discovery").  The Requested Discovery is critical for Mr. Kwok to defend against the allegations in the Indictment.  He must learn the extent to which the government's cooperation with the Trustee implicates his constitutional rights, and understand the degree of cooperation between and among the government, the SEC and the Trustee, so he can properly consider and prepare potential suppression and/or spoliation motions, seek additional material evidence from these bodies, and ensure that the government fully complies with its *Brady* obligations.

## I.   Applicable Law

Pursuant to Federal Rule of Criminal Procedure 16(a)(1), "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and . . . the item is material to preparing the defense."  The "materiality standard [of Rule 16] normally is not a heavy burden; rather, evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal."  *United States v. Stein*, 488 F. Supp. 2d 350, 356-57 (S.D.N.Y. 2007) (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)).

Evidence is material "if it could be used to counter the government's case or to bolster a defense." *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993). "The Government should interpret the language of Rule 16 broadly to ensure fairness to the defendant." *United States v. Martinez*, 844 F. Supp. 975, 982 (S.D.N.Y. 1994). "A narrow view of Rule 16(a)[1][E][i] is inappropriate; failure to provide reasonably available material that might be helpful to the defense and which does not pose any risks to witnesses or to ongoing investigation is contrary to requirements of due process and to the purposes of the Confrontation Clause." *United States v. Zanfordino*, 833 F. Supp. 429, 432 (S.D.N.Y. 1993).

In addition, the government also has a legal and ethical obligation to identify all material that might aid the defense under *Brady v. Maryland*, 373 U.S. 83 (1963). "The basic rule of *Brady* is that the [g]overnment has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment." *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) (citing *Brady*, 373 U.S. at 87). This broad duty covers not only exculpatory material, but also information that could be used to impeach a key government witness. *See Coppa*, 267 F.3d at 135 (citing *Giglio v. United* States, 405 U.S. 150, 154 (1972)). In determining whether evidence is material under *Brady*, a court's analysis "turns on the cumulative effect of all such evidence suppressed by the government." *Kyles v. Whitley*, 514 U.S. 419, 421 (1995) (citing *United States v. Bagley*, 473 U.S. 667, 675 & n.7 (1985)). Thus, the government has the responsibility to "gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached." *Id.* at 437. This duty extends to learning about "any favorable evidence known to the others acting on the government's behalf in the case." *Id.*

The government's obligation to produce *Brady* evidence in the possession of another government agency turns on whether the government engaged in a joint investigation with that

other agency.  *United States v. Martoma*, 990 F. Supp. 2d 458, 460 (S.D.N.Y. 2014) ("the USAO's

obligation to produce *Brady* and *Giglio* material that is in the sole possession of the SEC turns on

whether the [government] and the SEC were engaged in a joint investigation of Martoma").  The

joint-investigation inquiry is necessarily a fact-intensive one that focuses on the degree of

cooperation between the two agencies.  *See id.* at 461.  To evaluate such claims, courts in this

circuit have directed the government to provide additional information about the degree of

coordination.  *See id.* at 460 (noting that the court ordered the parties, including the prosecutors to

supply affidavits concerning the degree of coordination); *United States v. Rhodes*, No. 18 Cr. 887

(JMF), 2019 WL 3162221, at *4 (S.D.N.Y July 16, 2019) (directing the government to produce an

affidavit concerning degree of cooperation with the SEC and attaching substantive

communications for *in camera* review); *United States v. Gel-Spice Co.*, 773 F.2d 427, 435 (2d Cir.

1985) (noting that court considered information provided by government *in camera* to determine

whether defendant had made "substantial preliminary showing" of bad faith necessary to obtain

discovery of coordination between prosecutors and Food and Drug Administration).[7]

Government suppression of *Brady* material can support specific relief, including the

dismissal of the indictment, *see United States v. Nejad*, No. 18 Cr. 224 (AJN) (S.D.N.Y.) (Dkt.

No. 362) (July 17, 2020) (vacating jury verdict and dismissing indictment with prejudice following

*Brady* violations), or an adverse jury instruction, *see, e.g.*, *United States v. Schulte*, No. 17 Cr. 548

(PAC) (S.D.N.Y.) (Dkt. No. 345) (Mar. 3, 2020) (giving adverse jury instruction when government

failed to turn over report prepared by another government agency before trial).

---

[7] Mr. Kwok notes that many courts have considered whether a joint investigation existed
between the government and another agency without any reference to *Gel-Spice* or the
requirement for a preliminary showing of bad faith discussed therein.  *See, e.g.*, *Martoma*, 990 F.
Supp. 2d at 460; *Gupta,* 848 F. Supp. 2d at 494-95.

## II.   <u>Discussion</u>

### A.   **The Government Should Be Ordered to Produce its Communications with the Trustee and His Agents**

As detailed here and in Mr. Kwok's Stay Motion, the Trustee and the government have been coordinating in a manner that directly threatens Mr. Kwok's constitutional rights and which demonstrates the need for Mr. Kwok to have access to the government's communications with the Trustee.

*First*, the Settlement Agreement between the Trustee and the government concerning the Mahwah Facility threatens Mr. Kwok's right to present a defense and to obtain exculpatory evidence.  The Mahwah Facility features heavily in the Indictment, which alleges that Mr. Kwok purchased the property through the use of multiple entities, (Ind. ¶ 16(b)), for use by himself and his family, (*id.* ¶ 4), and that he inappropriately used proceeds of crime to pay for "extravagant renovations" to this same property (*id.* ¶ 16(c)).  The Indictment makes direct reference to the "various furniture and decorative items" at the Mahwah Facility.  (*Id.*)  To defend these allegations, Mr. Kwok intends to prove that the Mahwah Facility was not a private home for Mr. Kwok and his family, but rather a covert headquarters for use by the Chinese pro-democracy dissident movement to which Mr. Kwok and other G|CLUBS members belong.  To mount this defense, access to the Mahwah Facility by Mr. Kwok's counsel and the existing state of the Mahwah Facility must be maintained.  By entering into the Settlement Agreement and facilitating an accelerated sale of the Mahwah Facility, the government and the Trustee are working together to destroy this critical evidence, in violation of Mr. Kwok's constitutional rights.  *See Brady,* 373 U.S. at 87; *Giglio,* 405 U.S. at 154; *see also United States v. Hamilton,* 730 F. Supp. 1272, 1276 (S.D.N.Y. 1990) ("compulsory process and due process rights are both implicated where actions of the government prevent a defendant from obtaining material and favorable evidence."); *United*

16

*States v. Soriano*, 401 F. Supp. 3d 396, 405 (E.D.N.Y. 2019) (dismissing indictment where agents destroyed evidence favorable to defendant).

The government's spoliation of evidence can serve as the basis for a defense motion where, as here, "(1) the government... act[s] in bad faith in destroying the evidence; (2) the evidence ... possesses an exculpatory value that was apparent before it was destroyed; and (3) the defendant is unable to obtain comparable evidence by other reasonably available means." *United States v. Hunley*, 476 F. App'x 897, 899 (2d Cir. 2012).  "[I]f the government destroys evidence when it has notice of its potentially exculpatory value and the destruction is not inadvertent, negligent or pursuant to standard procedure, then the government acts in bad faith." *Soriano*, 401 F.Supp.3d at 402.

In this case, there is no dispute that the government has been coordinating with the Trustee to dispose of the Mahwah Facility before trial.  Publicly available documents demonstrate that the government and the Trustee have exchanged documents and communicated extensively concerning the allegations in the Indictment, including by the Trustee's provision of his "extensive analysis" of the ownership of the Mahwah Facility to the government, the government's providing of alleged crime scene photographs to the Trustee, and the Trustee and government's discussions regarding the disposition of the Mahwah Facility.  (*See*, *e.g.*, Kamaraju Stay Decl. Ex. 5 (Settlement Motion) ¶ 12; *id.* Ex. 10 (Aug. 14, 2023 H'ring Tr.) at 85:2-25; Barkan Decl. Ex. 1 (Aug. 29, 2023 H'ring Tr.) at 20:7-21:24.)  This cooperation has now culminated in the so-called Settlement Agreement that—in the Trustee's own words—allows the Trustee to liquidate that property before the government obtains any conviction in this case. (*Id.* at 21:14-16.)  Given the government's allegations about the Mahwah Facility, however, evidence showing how the property was configured and used prior to Mr. Kwok's arrest and how it continues to be used—

17

barring the Trustee's interference—in service to the Chinese pro-democracy dissident movement constitutes exculpatory evidence that Mr. Kwok is entitled to present to the jury.  But, by enabling the Trustee's pursuit of the Mahwah Facility and by entering into the Settlement Agreement, the government is participating in the destruction of this valuable evidence.  As part of, and in support of, his spoliation and *Brady* arguments, Mr. Kwok is entitled to the communications between the Trustee and the government about the Mahwah Facility.[8]

*Second*, it is clear that the Trustee has possession of and is seeking additional material that is subject to Mr. Kwok's privileges.  It is equally clear that the Trustee has shared information with the government that directly relates to this prosecution and that may well include Mr. Kwok's privileged information.  For example, the Trustee shared his purported "extensive analysis" that the Mahwah Facility belonged to Mr. Kwok, and produced Rule 2004 discovery materials to the government pursuant to a subpoena.  Mr. Kwok, however, has no way to know whether that purported analysis included any of his privileged information.  Nor can he know whether the Trustee has, on other occasions, produced privileged information to the government.  The only way for Mr. Kwok to discover whether, and to what extent, his privilege has been invaded in this matter is through the Trustee's correspondence with the government.

"Indisputably, when the Government obtains access to a defendant's [records], the Government is not entitled to rely on privileged materials contained therein."  *United States v. Patel*, No. 16-CR-798 (KBF), 2017 WL 3394607, at *6 (S.D.N.Y. Aug. 8, 2017).  In this case, if

---

[8] Moreover, the communications between the government and the Trustee could indicate that the government only provided select information to the Trustee, informing the Trustee about evidence the government deemed helpful (*e.g.*, the photographs provided by the prosecution that the Trustee attached the complaint in the Mahwah Proceeding), while withholding evidence the government deemed unhelpful, which would inherently constitute exculpatory evidence that must be produced under *Brady*.

the Trustee has been passing privileged information to the government (even if the government is unaware that the documents were privileged), then the government's use of that information unfairly prejudices Mr. Kwok's defense and allows the government improper access to evidence that it should not be permitted to use. In those cases, the proper remedy is, at a minimum, suppression of the privileged information. *Nat'l City Trading Corp. v. United States*, 635 F.2d 1020, 1026 (2d Cir. 1980) (suppression is the proper remedy where prosecutors inappropriately come into possession of privileged information). In support of such a suppression motion, Mr. Kwok is entitled to learn what potentially privileged information has already been provided by the Trustee to the government (and what potentially privileged information, if any, the government has solicited from the Trustee).

*Third*, without the production of the government's communications with the Trustee, Mr. Kwok cannot fully investigate whether the Trustee is acting as a *de facto* member of the prosecution team. The statements from the Trustee to date indicate that there is coordination in strategy, and robust information sharing between the Trustee and the government, in both directions, to the detriment of Mr. Kwok's rights. Beyond presenting serious due process concerns, such coordination would entitle Mr. Kwok to discovery from the Trustee. *See, e.g.*, *United States v. Gupta*, 848 F. Supp. 2d 491, 494 (S.D.N.Y. 2012).

In this case, it is also clear that this coordination has created more than simply the possibility that there may be some helpful information in the Trustee's file that should be disclosed to the defense. Rather, the coordination has now created a situation where, through the Trustee and government's coordinated action, exculpatory evidence is at risk and backdoor access to Mr. Kwok's privileged information now exists, in violation of his constitutional rights. These factors more than support the Court requiring the government to produce its communications with

the Trustee, so that Mr. Kwok can seek whatever remedy is appropriate, including, but not limited to, a joint-investigation motion.[9]  Accordingly, the Court should direct the government to produce its communications with the Trustee and his agents to Mr. Kwok.

### B.   The Court Should Direct the Government to Produce its Communications with the SEC

Courts in this district have held that where the government and the SEC conduct a joint investigation, the government's obligations under *Brady* and *Giglio* extend to material held by the SEC.  *See, e.g.*, *Martoma*, 990 F. Supp. 2d at 460 (communications between government and SEC supported finding of joint investigation and obligation to search SEC records); *Gupta*, 848 F. Supp. 2d at 494 (S.D.N.Y. 2012) (coordinated activities between government and SEC supported finding of joint investigation and obligation to search SEC records).  As Judge Rakoff noted in *Gupta*, while it makes "perfect sense" that the government and SEC would carry out a joint investigation, it makes "no sense at all" to permit these agencies "to disclaim such cooperation to avoid their respective discovery obligations."  *Gupta*, 848 F. Supp. 2d at 492.

In this case, there is already substantial evidence of coordination between the SEC and the government, including, but not limited to:

- ██████████████████████████████████████████████
██████████████

---

[9] In some cases, such as *Rhodes*, *supra*, the court directed the government to produce such information to the court for *in camera* review.  2019 WL 3162221, at *2.  In other cases, however, the defense has had access to that information directly.  *See, e.g.*, *Martoma*, 990 F. Supp. 2d at 460; *United States v. Teyibo*, 877 F. Supp. 846, 854 (S.D.N.Y. 1995) (conducting hearing about, among other things, "alleged contact between the United States Attorney's Office and the SEC").  Mr. Kwok respectfully submits that here, where there can be no dispute as to the fact of coordination and that coordination directly impacts both Mr. Kwok's rights under *Brady* and due process, and his attorney-client privilege, the proper course is for Mr. Kwok to receive this information directly, so that he can evaluate these issues for himself, rather than burdening the Court in the first instance.

- the coordination of the timing of the filing of the criminal charges in this proceeding and the SEC's civil complaint against Mr. Kwok (*see supra* p. 10); and

- the SEC producing information to the government, some of which has now been produced as Rule 16 discovery in this case (*see supra* p. 12).

The communications between the SEC and the government will not only shed light on these aspects of their cooperation, they will reveal other examples of cooperation further demonstrating that the SEC and the government have engaged in a joint investigation here and what information was shared between them as part of their joint investigation.



Accordingly, Mr. Kwok respectfully submits that the government should be directed to produce its communications with the SEC concerning the subject matter of the Indictment.

## CONCLUSION

For the foregoing reasons, Mr. Kwok respectfully requests that the Court enter an order requiring the government to produce the Requested Discovery.


Dated: New York, New York
September 20, 2023

PRYOR CASHMAN LLP

By: _____

Sidhardha Kamaraju
Matthew S. Barkan
Daniel J. Pohlman
John M. Kilgard
Clare P. Tilton

7 Times Square
New York, NY 10036
(212) 421-4100
skamaraju@pryorcashman.com
mbarkan@pryorcashman.com
dpohlman@pryorcashman.com
jkilgard@pryorcashman.com
ctilton@pryorcashman.com

*Attorneys for Defendant Ho Wan Kwok*