**<u>Exhibit 4</u>**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

JUNWU GONG,

                    Plaintiff,

         -v-

STUART M. SARNOFF, O'MELVENY & MYERS
LLP, CARL M. STANTON, CITY OF NEW YORK,
OFFICER JOHN DOE 1, OFFICER JOHN DOE 2,
OFFICER JOHN DOE 3, OFFICER LAUREN A.
DUFFY,

                   Defendants.

---------------------------------------------------------------- X

              23-cv-343 (LJL)

          OPINION AND ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/22/2023

LEWIS J. LIMAN, United States District Judge:

      Defendants Stuart M. Sarnoff ("Sarnoff") and O'Melveny & Myers LLP ("O'Melveny"

and, together with Sarnoff, the "Moving Defendants") move, pursuant to Federal Rule of Civil

Procedure 11, for an order granting them sanctions against Plaintiff's counsel, Yongbing Zhang

and Richard Freeth, and enjoining Plaintiff Junwu Gong ("Gong" or "Plaintiff") and his counsel

and those in active concert with them from filing other similar suits without leave of court. Dkt.

No. 36. The motion is granted in part and denied in part.

## BACKGROUND

      The Court assumes familiarity with the prior proceedings in this matter. The following

facts are taken from the parties' submissions in connection with the motion for sanctions and the

Court resolves factual disputes as necessary for the disposition of the motion. *See Chemiakin v.

Yefimov*, 932 F.2d 124, 130 (2d Cir. 1991) (suggesting that on Rule 11 motions courts should act

as fact finders and an evidentiary hearing is required when there are disputed facts).

## I.     The Allegations of the Complaint

Plaintiff initiated this action by complaint filed on January 18, 2023 (the "Complaint").[1]
Dkt. No. 2.  Plaintiff is a foreign-born, ethnic Chinese U.S. Permanent Resident who has, on
numerous occasions, joined with other ethnic Chinese individuals to protest against the Chinese
Communist Party ("CCP").  *Id*. ¶¶ 15, 36–37.  He alleges that he has been subjected to an
ongoing campaign of harassment by agents of the CCP.  *Id*. ¶ 70.  O'Melveny is a Delaware-
registered limited liability partnership, which conducts business as a law firm and regularly
transacts business in the State of New York.  *Id*. ¶ 50.  Defendant Sarnoff is a lawyer at
O'Melveny, *id*. ¶ 45, and is a resident of the State of New York, *id*. ¶ 49.

The Complaint alleged that Moving Defendants violated the Foreign Agents Registration
Act, 22 U.S.C. § 611(c)(1) ("FARA"), by acting as unregistered agents or representatives of the
People's Republic of China ("PRC").  *Id.* ¶¶ 173–79.  It also alleges that Moving Defendants
violated and conspired to violate Plaintiff's constitutional rights under the First, Fourth, and
Fourteenth Amendments to the United States Constitution, enforceable through 42 U.S.C. §§
1983 and 1985(3).  *Id.* ¶¶ 126–55.

The Complaint's allegations grow out of a series of events from November 22, 2022 to
December 20, 2022.  On November 22, 2022, Plaintiff participated in what he claims were
peaceful protests at the offices of O'Melveny in New York, because of what he alleges to be
O'Melveny's relationship with the CCP.  O'Melveny is alleged to have at least three offices in
the PRC and to conduct work in the PRC that is "extremely lucrative."  *Id.* ¶¶ 42–43.  In 2013, it
represented a China-based genomic research and sequencing company, BGI, in the first ever

---

[1] The complaint was initially filed on January 13, 2023 but was rejected for a filing error.  *See*
Dkt. No. 1.

acquisition of a United States publicly traded company by a Chinese acquiror. *Id.* ¶¶ 25–26.[2]
Beginning on December 2, 2022, Plaintiff participated in regular protests at a location believed
to be near Sarnoff's home in New York City. *Id.* ¶ 68. Sarnoff is an O'Melveny lawyer, who is
allegedly "conspicuous[ly]" involved in the firm's China practice. *Id.* ¶ 45. On the morning of
December 20, 2022, Plaintiff again joined protests at a location believed to be near Sarnoff's
home. *Id.* ¶ 71.

Plaintiff alleged that he and other protesters were harassed at these protests by another
Defendant, Carl M. Stanton ("Stanton"); the only identifying information provided about him in
the Complaint is that he is alleged to be a resident of New York City and New York State. *Id.*
¶ 51. The Complaint focused on events that occurred on December 20, 2022, during which
Plaintiff was hit by an automobile driven by Stanton. *Id.* ¶ 96. Officers of the New York Police
Department ("NYPD") (one of whom is personally named in the Complaint) failed to file a
police report after Plaintiff summoned them to the scene. *See id.* ¶¶ 101–08. Later, after
Plaintiff had begun feeling ill and "went into shock" at a nearby restaurant, the protesters called
an ambulance to assist Plaintiff but NYPD officers obstructed Plaintiff's efforts to get medical
attention. *Id.* ¶¶ 112–19.

---

[2] In 2020, two BGI entities were allegedly added to the Entity List of the United States
Department of Commerce's Bureau of Industry and Security for "conducting genetic analyses
used to further the repression of Uyghurs and other Muslim minorities in the Xinjiang Uyghur
Autonomous Region," *id.* ¶ 27; in January 2021, Reuters allegedly reported that BGI has worked
with the PRC's military on efforts to enhance soldiers' strength and other projects, *id.* ¶ 28; in
July 2021, Reuters allegedly reported that BGI developed a prenatal test with the assistance of
the People's Liberation Army which is also used for genetic data collection, including to "single
out Tibetan and Uyghur minorities to find links between their genes and their characteristics," *id.*
¶ 29; and, in October 2022, the United States Department of Defense allegedly added a BGI
subsidiary to its list of Chinese military companies operating in the United States, *id.* ¶ 30.

The Complaint contained few, if any, allegations regarding the conduct of Moving Defendants and no allegations that tied Moving Defendants to any state action. It alleged that the December 20 protest occurred at a location believed to be near Sarnoff's residence. *Id.* ¶¶ 71–72. However, it does not allege that Sarnoff did anything during the protest or that he was even present in his residence at the time.[3] The Complaint also alleged that, during a prior protest outside O'Melveny's offices in New York City, Stanton was observed "on several instances" taking pictures from inside the property where the protesters and members of the public were not permitted and using a swipe card to enter through the security entrance. *Id.* ¶¶ 76–77. Plaintiff alleged, upon information and belief, that Stanton is not an officer of the NYPD, *id.* ¶ 82, although the Complaint alleged that Stanton represented that he was "with" the police or had some kind of connection with the NYPD, *id.* ¶¶ 80–81. Further, there are no allegations that O'Melveny, much less Sarnoff, have any relationship with Stanton, and there are no allegations that O'Melveny or Sarnoff had any involvement with the conduct of Stanton, the NYPD, or any state actor on December 20. It was Plaintiff, not O'Melveny, Sarnoff, or Stanton, according to the Complaint, who called the NYPD after he was hit by Stanton's car and the protesters who called the ambulance. *Id.* ¶¶ 85, 88, 114.

The Complaint did allege that Moving Defendants had a connection to the CCP. Plaintiff asserted that "O'Melveny is beholden to the CCP, and as such performs whatever acts are requested by the CCP—including acts within the United States that would require registration as foreign agents with the US Government," *id.* ¶ 47, and that the CCP's unregistered agents in the United States "are now believed to be Defendant Sarnoff, Defendant O'Melveny and Defendant

---

[3] The Complaint does not even allege that, as a matter of fact, the protest occurred near Sarnoff's residence.

Stanton," *id.* ¶ 64.  The only factual allegations made to support these claims were that O'Melveny and Sarnoff performed legal work on behalf of a Chinese company, *id.* ¶¶ 25–26, and that O'Melveny has offices in the PRC from which it conducts "lucrative" business with a "potentially significant impact on the country," *id.* ¶¶ 42–43.  There are no factual allegations to support that Stanton has any connection to the PRC or CCP.

## II.  Procedural History Relevant to the Rule 11 Motion

On March 23, 2023, Moving Defendants filed a motion to dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  Dkt. No. 19.  In their memorandum of law in support of the motion, Moving Defendants argued that Plaintiff failed to allege any conduct by either of them directed toward Plaintiff, Dkt. No. 20 at 1–2, and that the FARA claim was "just as meritless" because "[c]ourt after court has held that there is no private right of action under FARA," Plaintiff had not alleged any injury traceable to Moving Defendant's conduct, and Plaintiff did not allege facts that would require FARA registration, *id.* at 2–3.

On March 28, 2023, Moving Defendants filed their motion for sanctions, along with a supporting memorandum of law and a declaration.  Dkt. Nos. 26–28.  Moving Defendants, however, withdrew the motion on March 29, 2023, because they had not complied "with the requirements of Federal Rule of Civil Procedure 11(c)(2)" that the motion cannot be filed until after the party against whom the motion is made has been given an opportunity to withdraw the offending claim or papers.  Dkt. No. 29.

On April 14, 2023, the Court held an initial pretrial conference.  Dkt. No. 34.  At the conference, the Court inquired whether Plaintiff's counsel had any additional factual "allegations against either Mr. Sarnoff or O'Melveny that would suggest that they acted in collusion with the police department."  *Id.* at 4.  Counsel responded that his allegations were based on supposition:

"[T]he firm and the individual defendants were not pleased with being the target of these protests," and "it would make sense that . . . the defendants in their position would send someone to . . . observe, get information." *Id.* at 7. Counsel admitted that he did not know or have factual allegations regarding Stanton's "mandate." *Id.*. He also admitted that he did not know whether Stanton hit Plaintiff "accidentally or on purpose." *Id.* at 8. As to the police, counsel claimed that the conduct of the officers was "peculiar," because the officers refused to file a report. *Id.* Plaintiff's counsel nonetheless claimed that there was factual information that counsel had that was responsive to a number of issues raised in Moving Defendant's motion to dismiss. *Id.* at 13–14. As a result, the Court stayed discovery pending a decision on the motion to dismiss and gave Plaintiff leave to file an amended complaint by April 21, 2023. *Id.* at 15–16. The Court also warned Plaintiff's counsel: "while I have not looked at the Rule 11 motion, I have looked at your complaint. And you should give it a second look because the motion does appear to be quite strong. And I will take the Rule 11 motion that is going to be filed very seriously." *Id.* at 16–17.

On April 26, 2023, Plaintiff filed the first amended complaint ("Amended Complaint").[4] The Amended Complaint contains eleven new paragraphs quoting a report of the Heritage Foundation regarding the threat posed to the United States by the PRC and citing a news article regarding the arrest in New York of two alleged operatives for the PRC. Dkt. No. 43 ¶¶ 11–21. It also includes an allegation that O'Melveny has "on several occasions yet discovered by Plaintiff," represented Chinese entities alleged to have tortured Chinese individuals or to have aided and abetted or ratified the same, *id.* ¶ 34, that "O'Melveny and Sarnoff have, with other counsel, been part of the CCP team charged with destroying the life of Ho Wan Kwok (aka Miles

---

[4] Plaintiff filed the Amended Complaint on April 21, 2023, but it was rejected for a filing error. *See* Dkt. No. 41; Clerk's Entry (Apr. 24, 2023). The parties agreed to an extension of time to May 1, 2023 for Plaintiff to file an amended complaint, which the Court granted. Dkt. No. 44.

Guo) and use whatever means necessary to have him returned to China for either additional jail and torture or execution," *id.* ¶ 55(f), and that the law firm represented a company named BYD America Corporation in *Jun Zhao v. BYD America Corp.*, in the United States District Court for the Central District of California, *id*. ¶ 35.[5]  In all other respects the Amended Complaint is identical to the Complaint.  It does not add any factual allegations with respect to the events of December 2020.  It levels the same allegations that Moving Defendants participated in civil rights violations and a violation of FARA, *see id.* ¶¶ 140–80, 187–93, without any additional factual allegations supporting either set of claims.

On July 17, 2023, the Court issued an Opinion and Order granting Moving Defendants' motion to dismiss the Amended Complaint against them with prejudice.  Dkt. No. 57.  The Court concluded that Plaintiff failed to allege facts to support any of the theories under which Moving Defendants could be held liable under Section 1983 for any of the injuries he alleged he suffered. *Id.* at 13.  The Court also concluded that Plaintiff had failed to plead any facts to support a conspiracy claim under Section 1985(3), including a failure to plead an agreement.  *Id.* at 20–21. Finally, the Court concluded that Plaintiff did not plead facts to establish standing for his FARA claim.  *Id.* at 21.  The Court, however, retained jurisdiction to address Defendants' motion under Federal Rule of Civil Procedure 11.  *Id.* at 24.

On April 20, 2023, before the Amended Complaint was dismissed, Moving Defendants refiled the Rule 11 motion for sanctions, memorandum of law, and declaration, along with a declaration attesting to their compliance with Rule 11(c)(2).  Dkt. No. 36–39.  Plaintiff filed his

---

[5] The Amended Complaint also refers to O'Melveny's work on two Hong Kong initial public offerings and a takeover of a biotech company, *id.* ¶ 56, and it attaches a blog post allegedly written by a former O'Melveny attorney accusing the firm of "monetizing" the relationships its partners have with the United States government, Dkt. No. 43-7.

memorandum in opposition to the motion on May 4, 2023, Dkt. No. 45.  On May 17, 2023,

Moving Defendants filed their reply memorandum of law.[6]  Dkt. No. 51.  On July 27, 2023, the

Court issued an order scheduling oral argument on the motion for sanctions and indicated that

any party that desired to present evidence at the hearing should submit a letter to the Court on or

before August 7, 2023, indicating what evidence, if any, it wished to present and that, in the

absence of any additional evidence, the Court would decide the motion based on the evidence

submitted in connection with the Rule 11 moving and opposition papers.  Dkt. No. 63.  Moving

Defendants submitted a letter on August 7, 2023, indicating that they would not submit

additional evidence.[7]  Dkt. No. 66.  That same day, Plaintiff filed a letter indicating that he would

submit evidence at oral argument and that he would testify.  Dkt. No. 67.  The Court held oral

argument and the evidentiary hearing on August 16, 2023.  *See* Minute Entry (Aug. 16, 2023).

Plaintiff failed to appear at the Evidentiary Hearing.  Plaintiff's counsel, Richard Freeth, offered

a copy of his 2021 tax return, which was received without objection.

---

[6] Moving Defendants filed their motion for sanctions on April 20, 2023, Dkt. No. 36, after the
Court granted Plaintiff leave to file an amended complaint, *see* Dkt. No. 34 at 16, but before
Plaintiff actually filed his Amended Complaint, *see* Dkt. No. 43.  On July 7, 2023, the Court
directed the parties to file letter briefs addressed to the question whether Moving Defendants'
Rule 11 motion is properly before this Court or whether the Rule 11 motion had to be re-served
on Plaintiff's counsel upon the filing of Plaintiff's Amended Complaint.  Dkt. No. 54.  Each
party filed a letter brief addressed to that issue on July 13, 2023.  *See* Dkt. Nos. 55–56.
[7] Though the Court is not required to hold an evidentiary hearing if there are no disputes of
material fact, *see Chemiakin*, 932 F.2d at 130 ("Although appellants attempt to engraft onto Rule
11 a requirement that an evidentiary hearing be held prior to the imposition of sanctions, there is
no such requirement, absent disputed facts or issues of credibility."); *see also* Fed. R. Civ. P. 11
Advisory Committee's Note to 1993 Amendment ("The court must to the extent possible limit
the scope of sanction proceedings to the record."), the Court provided both parties with an
opportunity to present additional evidence given the nature of the hearing and its reliance on
facts outside the record.

III.    **Rule 11 Evidence**

Moving Defendants argue that this lawsuit "is merely one in a series of abusive, harassing tactics undertaken at the behest of Miles Kwok (also known as Wengui Guo and Ho Wan Kwok)" against O'Melveny and Sarnoff arising from the assistance Moving Defendants provided their client, investment fund Pacific Alliance Asia Opportunity Fund L.P. ("PAX"), in a lawsuit against Kwok in New York State court.  PAX obtained a $116.4 million judgment against Kwok and the state court-imposed contempt sanctions of $134 million against Kwok. Dkt. Nos. 38-9, 38-10.

On April 18, 2017, PAX sued Kwok in New York State court for breaching a $30 million loan agreement.  Dkt. No. 38-11 ("State Court Complaint").[8]  PAX was represented by O'Melveny and Sarnoff.  The State Court Complaint alleged that Kwok owed approximately $88 million including contractual interest.  *Id.* at ECF p. 4.  After nearly four years of litigation, Justice Barry Ostrager of the New York Supreme Court issued a judgment in favor of PAX and against Kwok in the amount of $116,402,019.57, on February 3, 2021.  Dkt. No. 38-9.  One year later, on February 9, 2022, Justice Ostrager, in a decision and order, imposed contempt sanctions on Kwok, ordering Kwok to pay $134 million—$500,000 per day for 268 days in contempt fines—to be paid in five business days or the court would "exercise its full authority under New York Judiciary Law § 753." Dkt. No. 38-10.[9]  Justice Ostrager's opinion was scathing.  He found that, in order to avoid PAX's judgment, Kwok had "park[ed] his substantial personal assets with a series of corporations, trusted confidants, and family members" and "secreted his

---

[8] The Court can take "judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'"  *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) (citation omitted).

[9] New York Judiciary Law gives the state court the power "to punish, by fine or imprisonment, or either" a contempt of court.  N.Y. Jud. Law § 753.

assets in a maze of corporate entities and with family members." *Id.* at 1. After addressing Kwok's violation of court orders with respect to his yacht, the Lady May, Justice Ostrager concluded: "The machinations associated with the shell game Kwok has orchestrated with respect to the Lady May are of a piece with every other evasive and contemptuous act Kwok has taken during the five years this litigation has been pending, which is why there are 1,180 docket entries in this case." *Id.* at 8.

On February 15, 2022, on the eve of the contempt order's five-day deadline, Kwok filed for personal bankruptcy in the District of Connecticut under Chapter 11 of the Bankruptcy Code. Dkt. No. 38-15; *see also* Dkt. No. 45 at 9. In that proceeding, Kwok listed O'Melveny's client, PAX, as his largest creditor, to whom he owed approximately $254 million. Dkt. No. 38-15 at ECF p. 10; Dkt. No. 38-16. On or about July 7, 2022, upon application of the United States Trustee, Dkt. No. 38-17, and over Kwok's objection, the United States Bankruptcy Court in Connecticut (the "Bankruptcy Court") appointed a trustee, Luc Despins from Paul Hastings LLC, to administer Kwok's estate, *see* Dkt. No. 38-18; *see also* Dkt. No. 45 ¶ 38.[10] On August 10, 2022, the Bankruptcy Court entered an order, upon the application of Despins, confirming that Despins held all economic and governance rights, for the benefit of the bankruptcy estate, with respect to all entities owned or controlled by Kwok. Dkt. No. 38-19. On August 16, 2022, the Court granted the Trustee's Rule 2004 motion to serve subpoenas on various legal and financial advisors to Kwok. Dkt. No. 38-20. That same day, the Court granted the Trustee's Rule 2004

---

[10] On June 30, 2022, the United States Trustee Program ("USTP") applied to appoint Joe Whitley as the Chapter 11 Trustee, Dkt. No. 45 at 9, and then withdrew the application for the appointment of Whitley, Dkt. No. 45-15. Plaintiff asserts that the bankruptcy court "repeatedly stat[es] its concerns about the violation of the removal process outlined in the Bankruptcy Code" citing the notice of appointment, Dkt. No. 45-14, and withdrawal of the appointment application, Dkt. No. 45-15, for support, but neither exhibit contains the "concerns" referenced by Plaintiff.

motion to serve subpoenas on various entities and individuals affiliated with Kwok.  Dkt. No. 38-21.

On November 22, 2022, PAX (represented by Moving Defendants) filed an application for a temporary restraining order ("TRO") and preliminary injunction in the Bankruptcy Court, seeking to restrain and enjoin Kwok and all persons in active concert or participation with him from (1) posting false and harassing online materials about Despins, PAX's or PAG's officers or employees, counsel to the Trustee or PAX, and of any respective relatives; (2) publishing online the home addresses and other personal information of those individuals; and (3) encouraging, inciting, suggesting, or directly or indirectly funding protests at the home or office of any of those individuals (including former spouses).  Dkt. No. 38-30 at 1–2.  The Bankruptcy Court held an expedited hearing the next day and, on that same day, entered the TRO granting PAX the full relief requested.  *See id.* at 6.[11]  The TRO extended to all "other persons who are in active concert or participation with [Kwok] . . . upon receipt of actual notice by personal service or otherwise."  *Id.* at 7.

Beginning on December 5, 2022, the Bankruptcy Court held a four-day evidentiary hearing on PAX's motion for a preliminary injunction.  *See* Dkt. No. 38-37 (transcript of the hearing for the motion for preliminary injunction).  On January 13, 2023, the Bankruptcy Court

---

[11] Moving Defendants repeatedly point to the Bankruptcy Court's findings of fact of its preliminary injunction decision throughout their briefing for the factual propositions contained therein.  *See, e.g.*, Dkt. No. 37 at 2, 6, 7, 8.  However, the Court is not able to take judicial notice of these findings, other than for the fact that they exist.  *See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (noting that the district court erred when it took judicial notice of orders of a bankruptcy court "to establish facts asserted therein" because "[f]acts adjudicated in a prior case do not meet either test of indisputability contained in Rule 201(b): they are not usually common knowledge, nor are they derived from an unimpeachable source").  The Court thus limits itself to the direct evidence that Moving Defendants submitted with their motion papers.

issued a preliminary injunction, among other things, "enjoining [Kwok] from protesting, picketing, parading, or displaying or distributing harassing material, at any time, within two hundred feet (200 ft.) of the homes [or residences, or the offices or workplaces, or entrance thereof] of relatives (including former spouses) of . . . counsel to . . . PAX" during certain time periods.  Dkt. No. 38-3 at 3–4.  The Bankruptcy Court noted that "harassing materials" include those that describe O'Melveny lawyers as "Communists, agents of the Chinese Communist Party, extortionists, anti-Semites, racists, supporters of genocide, or otherwise make[] similarly disparaging allegations regarding such parties' actions or beliefs."  *Id*. at 5.  The preliminary injunction also extends to those in active concert with Kwok upon actual notice of the order.  *Id*. at 7.

Moving Defendants present additional evidence of the harassment against them and the connection between this harassment and New Federal State of China (the "NFSC"), and by association, Kwok—and they present evidence that this activity did not dissipate upon the Bankruptcy Court's issuance of the TRO or the preliminary injunction.  The NFSC is closely associated with Kwok, who founded the organization.  *See* Dkt. No. 38-5; Dkt. No. 38-22 at ECF p. 5.  NFSC, according to a report published on GNews and seemingly authored by the news arm of NFSC, NFSC News, engaged in protests against Paul Hastings, O'Melveny, and lawyers for both firms for 80 days as of February 7, 2023.[12]  Dkt. No. 38-38 at ECF p. 4.  The article reported that the "NFSC . . . protests will continue for another 100 days after completing 90

---

[12] Plaintiff admits in his Complaint that he attended these protests and suggests that he did so in connection with involvement in NFSC.  As Plaintiff pleads, on November 22, 2022, "the Plaintiff joined in peaceful protests at the office of Defendant O'Melveny," Dkt. No. 2 ¶ 67, and "commencing on December 2, 2022, the Plaintiff with a number of other people, joined in regular peaceful protests at a location believed to be in proximity to the home of Defendant Sarnoff," *id.* ¶ 68.

days." *Id.* at ECF p. 5.  According to Moving Defendants, "[t]he protests . . . continued in violation of the preliminary injunction, culminating in a February 12, 2023, incident in which Kwok's followers assaulted one of Mr. Sarnoff's neighbors."  Dkt. No. 37 at 10.  Moving Defendants attached a security incident report signed by a reporting officer that reported on the alleged assault.  *See* Dkt. No. 38-39.

Moving Defendants also submit videos of protests in front of Sarnoff's home.  *See, e.g.*, Dkt. No. 38-32.  Another video shows protesters with images of O'Melveny lawyers, including Sarnoff, juxtaposed next to slogans including "Supporters of Genocide" and "CCP's favorite lawyers."  *See* Dkt. No. 33 at 5:20–5:50.  And a video posted by GNews shows protesters outside of Sarnoff's home showing placards with a picture of Sarnoff juxtaposed next to hammers and sickles and the phrase "Chinese Communist Party's Running Dog."  *See* Dkt. No. 38-34.  This language is identical to language used on the NFSC account on Gettr, a social media website, which, on December 4, 2022, posted that Sarnoff was "a running dog paid for and owned by CCP to persecute Chinese dissidents."  Dkt. No. 38-29.  Finally, on November 29, 2022, NFSC supporters sent emails to 100 O'Melveny employees, calling out Sarnoff by name and "express[ing] deep disturbance at O'Melveny partners . . . [for] attempts to persecute some of the world's loudest whistleblowers attempting to take down the Chinese Communist Party."  Dkt. No. 38-35.

Moving Defendants also present evidence of a relationship between Gong's counsel and Kwok.  Yongbing Zhang, who signed the Complaint but not the Amended Complaint, *compare* Dkt. No. 2 at ECF p. 25, *with* Dkt. No. 43 at ECF p. 29, appears in numerous photos of NFSC-led protests circulating on social media, including a post on NFSC's Gettr account from November 20, 2022 showing Zhang picketing at the house of Despins' ex-wife in Westchester

County, New York, and holding a sign calling the trustee an "A-List Scumbag." Dkt. No. 38-24 ¶ 32. Zhang also appeared in photos with Kwok from June 4, 2022 at the NFSC Second Anniversary party. Dkt. No. 38-25.

Finally, within days of the TRO, the lawyers who filed this lawsuit on behalf of Plaintiff filed three other near-identical lawsuits, targeting those who either were affiliated with PAX or represented PAX or who assisted the Bankruptcy Court. *See* Dkt. Nos. 38-40–38-42. On November 28, 2022, Zhang and Richard Freeth filed a lawsuit in this District against Paul Hastings and Chapter 11 Trustee Despins on behalf of a purported Chinese-born U.S. resident. *See* Dkt. No. 38-40 ¶ 2 (Complaint in *An et al. v. Despins et al.*, No. 22-cv-10062 (VEC) (S.D.N.Y.)). That complaint alleges that Paul Hastings and Despins "operated covertly as unregistered agents of" either or both of the PRC or the CCP, *id.*, and makes nearly identical allegations of a FARA violation to those made here, *see, e.g.*, *id.* ¶ 39. On November 28, 2022, Zhang and Freeth filed a lawsuit on behalf of the same plaintiffs against Weijan Shan, the chairman of PAX's managing member, Pacific Alliance Group, and Shan's son, Bo Leilei Shan. *See* Dkt. No. 38-41 (Complaint in *An et al. v. Shan et al.*, No. 22-cv-10060 (ALC) (S.D.N.Y)). The plaintiffs there allege that Weijan Shan and Bo Leilei Shan also acted "as unregistered agents of either or both" of the PRC or the CCP. *Id.* ¶ 29. The principal allegation against Weijan Shan was that he was photographed with United States Senator Diane Feinstein, who it is alleged "has supported communist causes and more recently was revealed to have a CCP spy serving as her Senate office manager" and received "significant revenue from companies in China." *Id.* ¶ 72.[13] The allegation against the son related to FARA follows principally from the

---

[13] The allegations about Senator Feinstein are sourced from a website called "Discover the Networks." Dkt. No. 41 ¶ 72.

fact that he is Shan's son. *Id.* ¶ 79. Finally, on March 17, 2023, Zhang and Freeth (along with a third lawyer, Brian R. Della Rocca), filed a lawsuit in the District of Maryland against Weijan Shan and several other defendants, including the University of Maryland. Dkt. No. 38-42 (Complaint in *Wyatt et al. v. Univ. of Md.*, No. 23-cv-742 (JKB) (D. Md.)). The complaint contains identical FARA allegations against Weijan Shan. *Id.* ¶¶ 118–25. It also contains civil rights claims similar to the ones here, alleging violations of 42 U.S.C. § 1983 pursuant to the First, Fourth, and Fourteenth Amendments, *id.* ¶¶ 83–90; *id.* ¶¶ 101–10, and violations of 42 U.S.C. § 1985(3), *id.* ¶¶ 91–100. Plaintiffs allege that they were protesting at the University of Maryland where Weijan Shan's daughter is a doctoral student to inform other students about the "Shan family's CCP background and their influence at U.S. public schools," *id.* ¶ 26, when they "started experiencing some unexpected restrictions from Defendants" and "were instructed to discontinue holding signs, distributing flyers and conducting livestreaming online," *id.* ¶ 39. They also allege that, after the Bankruptcy Court issued its order and their permit was revoked, they were threatened with arrest if they continued protests at the University Commons. *Id.* ¶¶ 47, 55.

The Honorable Judge Valerie E. Caproni dismissed the complaint in *An et al. v. Despins et al.*, No. 22-cv-10062, without prejudice and sanctioned counsel and plaintiffs in that action under Rule 11. *See id.* Dkt. No. 29; *see also An v. Despins*, 2023 WL 4931832 (S.D.N.Y. Aug. 2, 2023). A motion to dismiss and motion for sanctions remains pending in *An et al. v. Shan et al.*, No. 22-cv-10060 (ALC) (S.D.N.Y.). *See id.* Dkt. Nos. 22, 31. Finally, in *Wyatt et al. v. University of Maryland*, No. 23-cv-742 (JKB) (D. Md.), the Honorable Chief Judge James K. Bredar dismissed Counts I, II, III, and V against defendants the University of Maryland, Darryll Pines, Joel Dewyer, and Bruce Perry with prejudice for lack of jurisdiction, *id.* Dkt. No. 29, and

dismissed the case against the remaining defendants without prejudice for failure to serve under Federal Rule of Civil Procedure 4(m), *id.* Dkt. No. 34.

## LEGAL STANDARD

Rule 11 requires an attorney to certify that (1) a pleading or motion "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;" (2) "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;" and (3) "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b). "The text of Rule 11 makes only 'attorney[s]' and 'unrepresented part[ies]' subject to Rule 11(b)'s strictures, which means that only those individuals can violate it." *Int'l Techs. Mktg., Inc. v. Cognyte Techs. Israel Ltd.*, 2022 WL 11280876, at *11 (S.D.N.Y. Oct. 19, 2022). However, Rule 11(c)(5) presents the only limitation on a court's ability to impose sanctions on represented parties: A court is prohibited from imposing monetary sanctions on a represented party for making frivolous legal arguments in violation of Rule 11(b)(2). Fed. R. Civ. P. 11(c)(5); *see also* Fed. R. Civ. P. 11(c)(1) ("[T]he court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."). "[T]here is no question that once a court finds that Rule 11(b) has been violated by an attorney or unrepresented party, sanctions may be awarded against any 'attorney, law firm, *or party* that violated the rule or is responsible for the violation.'" *Int'l Techs. Mktg., Inc.*, 2022 WL 11280876, at *12 (emphasis in original) (quoting Fed. R. Civ. P. 11(c)(5)).

Rule 11(c), in turn, permits a court to impose "appropriate sanctions" for violations of Rule 11(b). Fed. R. Civ. P. 11(c)(1). Sanctions imposed under Rule 11(c)

> must be limited to what suffices to deter repetition of the conduct or comparable
> conduct by others similarly situated. The sanction may include nonmonetary
> directives; an order to pay a penalty into court; or, if imposed on motion and
> warranted for effective deterrence, an order directing payment to the movant of part
> or all of the reasonable attorney's fees and other expenses directly resulting from
> the violation.

Fed. R. Civ. P. 11(c)(4). "When a court determines that Rule 11 sanctions are appropriate, it 'has significant discretion in determining what sanctions, if any, should be imposed for a violation.'" *E. Gluck Corp. v. Rothenhaus*, 2008 WL 2944624, at *3 (S.D.N.Y. July 31, 2008) (quoting Fed. R. Civ. P. 11(b)–(c), Advisory Committee Notes to 1993 Amendment).

"[T]he standard for triggering [sanctions] under Rule 11 is objective unreasonableness," *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000), and is "not based on the subjective beliefs of the person making the statement," *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012); *see also In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 265–66 (S.D.N.Y. 2010). Thus, an attorney files a pleading or motion in violation of Rule 11 if it is "frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith." *Wechsler v. Hunt Health Sys., Ltd.*, 216 F. Supp. 2d 347, 356 (S.D.N.Y. 2002); *see also Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 167 (2d Cir. 1999).

## DISCUSSION

## I.     Defendants Have Satisfied the Safe-Harbor Provision

The threshold question presented by Moving Defendants' motion is whether they have satisfied the 21-day safe-harbor period of Federal Rule of Civil Procedure 11. Rule 11 provides that a motion for sanctions "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service." Fed. R. Civ. P. 11(c)(2). Therefore, if, during this twenty-one day "safe-harbor"

period, the adversary "withdraw[s] or appropriately correct[s]" the alleged violation, the

adversary is insulated from Rule 11 liability for the offending filing. *Id*. If a Rule 11 motion is

directed to a new filing, the moving party must re-notice the violation and give the alleged

transgressor an additional twenty-one days to withdraw or correct. *See Lawrence v. Richman

Grp. of CT LLC*, 620 F.3d 153, 158 (2d Cir. 2010) (per curiam) ("[W]e conclude that where, as

here, a defective complaint is dismissed and a party is granted leave to replead, the filing of an

amended pleading resets the clock for compliance with the safe harbor requirements of Rule

11(c)(2) before a party aggrieved by the new filing can present a sanctions motion based on that

pleading to the district court.").

Moving Defendants have satisfied the 21-day safe-harbor provision and need not have re-

noticed their motion after Plaintiff filed the Amended Complaint. Moving Defendants served

their motion and supporting papers on Plaintiff on March 29, 2023. Dkt. No. 39 ¶ 2. That

motion identified "the source of authority for the sanctions being considered; and . . . the specific

conduct or omission for which the sanctions are being considered so that the subject of the

sanctions motion can prepare a defense," as required by the principles of due process. *See Star

Mark Mgmt., Inc.*, 682 F.3d at 175. The papers challenged the Complaint as violating Rule 11

and specifically identified that the action was initiated to harass Moving Defendants and that

neither the FARA claim nor the civil rights claims were supported by fact or by law or a well-

founded argument for the extension of existing law. *See generally* Dkt. No. 37. Specifically,

Moving Defendants charged that the civil rights and FARA allegations against them "consist[ed]

entirely of unadorned conclusions without any supporting factual matter," *id.* at 12, that FARA

"provides no private right of action, and there is no avenue for inferring one" or basis upon

which Plaintiff would have standing, *id.* at 2, and that the FARA allegations were factually

"incoherent," *id.* at 21.  On April 20, 2023, twenty-one days after Plaintiff was served with the Rule 11 papers, Moving Defendants filed the sanctions motion.  *See* Dkt. No. 39.

The motion was not mooted by Plaintiff's filing of the Amended Complaint.  Plaintiff received leave to file the Amended Complaint on April 14, 2023, *see* Dkt. No. 34 at 16, and filed the Amended Complaint on April 26, 2023, *see* Dkt. No. 43.  Although the Amended Complaint added new and unrelated allegations to the original Complaint that is the subject of this motion, it did not "withdraw" the challenged pleading or otherwise "appropriately correc[t]" it.  Fed. R. Civ. P. 11(c)(2).  The purpose of the safe-harbor requirement is to provide "an opportunity to correct or withdraw the defective filing" and to "reduce, if not eliminate, the unnecessary expenditure of judicial time and adversary resource."  *Lawrence*, 620 F.3d at 158.  A pleading, including a complaint, is "withdrawn" either when it is dismissed, *see Hockley by Hockley v. Shan Enters. Ltd. P'ship*, 19 F. Supp. 2d 235, 241 (D.N.J. 1998) ("Since [third-party plaintiff] withdrew its position [in its third party complaint] when it voluntarily dismissed its claims, it is not subject to Rule 11 sanctions."); *Brown v. Pierce Mfg., Inc.*, 169 F.R.D. 118, 119 (E.D. Wis. 1996) (holding that Rule 11 sanctions cannot be imposed when plaintiff moved to dismiss deficient complaint within twenty-one days of being served with defendant's Rule 11 motion); 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1337.2 (4th ed., Apr. 2023 Update) ("[A] motion for sanctions will be rejected if the party subject to sanctions files for voluntary dismissal within the twenty-one day safe harbor period, because voluntary dismissal effectively constitutes a withdrawal of the offending paper for purposes of the safe harbor provision."), or when an amended pleading is filed that no longer asserts that claim, *see Team Obsolete Ltd. V. A.H.R.M.A. Ltd.*, 216 F.R.D. 29, 43 (E.D.N.Y. 2003) (holding that plaintiff "effectively withdr[ew]" sanctionable claims by dropping certain claims and certain defendants);

2 *Moore's Federal Practice* § 11.22(1)(b) ("Filing a motion for leave to amend a pleading *to eliminate challenged claims* constitutes effective withdrawal of those claims." (emphasis added)).

Plaintiff did not "withdraw" the challenged Complaint. Plaintiff continued to assert the same allegedly frivolous and harassing allegations and claims in the Amended Complaint as in the challenged Complaint. He reiterated his claims. Plaintiff also did not "appropriately correc[t]" the challenged Complaint. A pleading is "appropriately corrected" when the issues underlying a challenged claim or pleading are addressed. *See, e.g.*, *Rates Tech. Inc. v. Mediatrix Telecom, Inc.*, 2007 WL 1987787, at *4 (E.D.N.Y. June 29, 2007) (concluding that the relevant issue before the court was not whether the plaintiff sought leave to amend within the twenty-one-day safe harbor period but rather "whether the proposed First Amended Complaint corrects the alleged deficiencies in the original Complaint"). Moving Defendants did not seek sanctions on the basis that the Complaint lacked sufficient allegations of O'Melveny's and Sarnoff's legal work on behalf of Chinese entities or sufficient allegations of the threats that the PRC poses to United States interests, which were the topics addressed by the allegations added to the Amended Complaint. *See* Dkt. No. 43 ¶¶ 11–21, 35, 55. Moving Defendants sought sanctions because the Complaint itself was initiated to harass Moving Defendants, the FARA claim was legally and factually frivolous, and the Section 1983 and 1985(3) claims against Moving Defendants lacked any allegations that Moving Defendants were associated with the conduct of the NYPD on December 20, 2022. The Amended Complaint did not address any of those issues. Its very filing—and its failure to address the deficiencies of the Complaint—compounded the claimed injury to Moving Defendants. A party cannot escape Rule 11 sanctions by adding new

allegations or claims but at the same time still "insisting upon a position after it is no longer tenable." Fed. R. Civ. P. 11(b)–(c), Advisory Committee Notes to the 1993 Amendment.[14]

It follows further that Moving Defendants were not required to re-notice the defects in Plaintiff's pleading after Plaintiff filed the Amended Complaint or to give Plaintiff an additional twenty-one days to withdraw or correct its allegedly sanctionable claims. The twenty-one-day safe harbor time period has meaning. The longer a frivolous and harassing complaint remains outstanding the greater the harm. The twenty-one days corresponds with the time period under Rule 12(a)(1) to prepare and file an answer to a complaint, *see* Fed. R. Civ. P. 12(a)(1), and the time period under Rule 15(a)(1) to amend a pleading as of right, *see* Fed. R. Civ. P. 15(a)(1). If, within the time period the framers of the Federal Rules believed was sufficient to file a responsive or amended pleading, the offending party fails to correct a pleading whose defects have been identified to him, the offending party is not entitled to relief from a Rule 11 sanction. The damage has been done and remains.

Moving Defendants *would* have been required to re-notice Plaintiff if Moving Defendants sought sanctions based upon the Amended Complaint. A single Rule 11 motion does not function as an evergreen deposit serving as notice that whatever filings or papers follow are sanctionable without need of notice or an opportunity to be heard. The motion for sanctions is conduct specific; it "must describe the specific conduct that allegedly violates Rule 11(b)." Fed.

---

[14] The court in *Sacerdote v. Cammack Larhette Advisors, LLC*, 2022 WL 2078012, at *9 (S.D.N.Y. June 8, 2022), stated that "because Rule 11 is aimed at addressing particular defective or frivolous *documents*, a Rule 11 motion aimed at an initial complaint must be re-noticed upon the filing of an amended complaint." (emphasis in original) (citation and alteration omitted)). That language, however, is dicta in a case where the court held that the defendants never provided adequate notice as against the initial complaint and that, even if it had, its Rule 11 motion would have been meritless. *Id.* at *9–10. There is no reason to believe that the court would have reached the same result had proper notice been provided and the plaintiff—in the face of a Rule 11 motion—doubled down on its sanctionable conduct.

R. Civ. P. 11(c)(2).  But, here, Defendants do not seek sanctions based on the Amended

Complaint; they seek to sanction the Complaint.[15]  Dkt. No. 38; Dkt. No. 56 at 3.  Therefore, the

filing of an amended complaint did not "reset the clock," *Lawrence*, 620 F.3d at 158, and

Moving Defendants' notice served on Plaintiff's two attorneys on March 29 and March 30, 2023

satisfies the dictates of Rule 11, *see* Dkt. No. 39.

## II.  Plaintiff's FARA Claim Was Frivolous

The Court has no difficulty concluding that Plaintiff's FARA claim is frivolous.  "An

argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if, under an

'objective standard of reasonableness' . . . it is 'clear . . . that there is no chance of success and

no reasonable argument to extend, modify or reverse the law as it stands.'"  *Galonsky v.

Williams*, 1997 WL 759445, at *3 (S.D.N.Y. Dec. 10, 1997) (quoting *Caisse Nationale de Credit

Agricole–CNCA v. Valcorp, Inc*., 28 F.3d 259, 264 (2d Cir.1995)).  Although "Rule 11 provides

room for litigants to make 'nonfrivolous argument[s] for extending, modifying, or reversing

existing law,'" *Doe v. 239 Park Ave. S. Assocs., LLC*, 2022 WL 4592713, at *4 (S.D.N.Y.

Sept. 30, 2022) (quoting Fed. R. Civ. P. 11(b)(2)), the Rule is violated "where it is patently clear

that a claim has absolutely no chance of success under the existing precedents, and where no

reasonable argument can be advanced to extend, modify or reverse the law as it stands," *Eastway

Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985), *superseded on other

grounds by rule*.  The standard is objective.  It is not a defense that the offending party acted with

---

[15] For this reason, *Lawrence v. Richman Group of CT LLC*, 620 F.3d 153, is distinguishable.
There, the district court imposed sanctions on the plaintiff for filing a second amended complaint
based on a Rule 11 motion noticed and filed with respect to the first amended complaint.  *See id.*
at 157 (noting that "the sanctioned conduct was the filing of the second amended complaint" and
that the panel was only reviewing the "safe harbor argument as it pertains to the filing of the
second amended complaint," not the first amended complaint, which was properly noticed).
Here, Moving Defendants seek sanctions with respect to the Complaint, not the Amended
Complaint, and the Rule 11 motion is properly noticed with respect to that document.

a pure heart but an empty head.  *See* Fed. R. Civ. P. 11(b)–(c), Advisory Committee Notes to the

1993 Amendment.  "[T]he extent to which a litigant has researched the issues and found support

for its theories even in minority opinions, in law review articles, or through consultation with

other attorneys" is taken into account in determining whether Rule 11 has been violated.  *Id.*

      Plaintiff's FARA claim here lacked any chance of success and was objectively frivolous.

Plaintiff admitted that there is no "explicit 'private right of action' provision in the FARA

statute," Dkt. No. 2 ¶ 178, and he relied on the notion that the court should imply that Congress

intended to create such a right of action.  But every court to have considered the issue, in this

Circuit and elsewhere, has held that no private right of action can be implied in FARA.  *See, e.g.*,

*Dvoinik v. Rolff*, 2023 WL 3276398, at *5 (M.D. Fla. May 5, 2023) ("Nothing in the statutory

scheme suggests an intent to create a private cause of action for FARA violations."); *Henry v.*

*Washington*, 2022 WL 9491957, at *2 (W.D. Wash. Sept. 16, 2022), *report and recommendation*

*adopted*, 2022 WL 9372175 (W.D. Wash. Oct. 14, 2022) ("[T]here is no private cause of action

provided for in the act such that Plaintiff could sue for a violation of it."); *Bey v. Epstein*, 2021

WL 8155603, at *9 (D. Conn. Aug. 6, 2021) ("[A] private right of action cannot be inferred from

FARA."); *Weican Meng v. Xinhuanet Co*., 2017 WL 3175609, at *5 (S.D.N.Y. July 24, 2017)

(holding that FARA does not contain a private right of action); *Comm. for a Free Namibia v. S.*

*W. Afr. People's Org.*, 554 F. Supp. 722, 725 (D.D.C. 1982).

      Plaintiff's assertion that the Court was free to imply that Congress intended to fashion a

private right of action because "the statute is silent on the creation of a private right of action,"

Dkt. No. 45 at 14 ¶ 66, only highlights counsel's abject failure to do any research into the basis

of his claim before he filed it.  The Supreme Court has been clear since at least its decision forty-

four years ago in *Touche Ross & Co. v. Redington*, 442 U.S. 560, 571 (1979), where the Court

held that where Congress is silent as to its intent to create a private cause of action and there is

no basis to find one in the structure of the statute or in the legislative history, the courts are not

free simply to imply one. *See also Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1, 25 (1977)

(examining "legislative history to discern the congressional purpose underlying the specific

statutory prohibition" to determine "whether the creation by judicial interpretation of the implied

cause of action . . . is necessary to effectuate Congress' goals").  Indeed, twenty years ago, the

Court held that a court cannot imply a private right of action unless the federal law, on its face,

"manifests an intent 'to create not just a private right but also a private remedy.'"  *Gonzaga*

*Univ. v. Doe*, 536 U.S. 273, 284 (2002) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286

(2001)); *see also Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429, 432 (2d Cir. 2002) ("A court . . .

cannot ordinarily conclude that Congress intended to create a right of action when none was

explicitly provided.").  "[T]he Supreme Court has come to view the implication of private

remedies in regulatory statutes with increasing disfavor."  *Republic of Iraq v. ABB AG*, 768 F.3d

145, 170 (2d Cir. 2014) (quoting *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 286

F.3d 613, 618 (2d Cir. 2002)).  The Supreme Court has "clarified in a series of cases that, when

deciding whether to recognize an implied cause of action, the 'determinative' question is one of

statutory intent."  *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017) (quoting *Sandoval*, 532 U.S. at

286).  Congress must have "'unambiguously conferred' 'individual rights upon a class of

beneficiaries' to which the plaintiff belongs."  *Health & Hosp. Corp. v. Talevski*, 143 S. Ct.

1444, 1457 (2023) (quoting *Gonzaga Univ.*, 536 U.S. at 285–86).  Thus, "implied rights of action

are disfavored."  *Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120, 128 (2d Cir. 2020)

(declining to find a private right of action under the Rehabilitation Act against executive

agencies).  Since *Ziglar*, the Second Circuit has only found an implied right of action in one case,

and then only after determining that "[t]he text . . . unambiguously evinces Congressional intent to authorize a private action" and the statute "also identifies a 'class of persons'" who benefit from the availability of the right of action. *Oxford Univ. Bank v. Lansuppe Feeder, LLC*, 933 F.3d 99, 105 (2d Cir. 2019).

Neither in his Complaint, nor in his opposition to the motion to dismiss, nor in his opposition to the Rule 11 motion, has Plaintiff identified any reason to believe that FARA would be an exception to the numerous regulatory statutes as to which the courts have held no private right of action exists. FARA was originally enacted "[t]o protect the national defense, internal security, and foreign relations of the United States by requiring public disclosure by persons engaging in propaganda activities for or on behalf of foreign governments, foreign political parties, and other foreign principals." *Meese v. Keene*, 481 U.S. 465, 469 (1987) (quoting Amendment to Foreign Agents Registration Act, Pub. L. No. 77-532, 56 Stat. 248, 248–49 (Apr. 29, 1942)). To that end, FARA requires a foreign agent as defined therein to file required documents with the Attorney General, 22 U.S.C. § 612(a), and it gives "the Attorney General [the authority to] make an application to the appropriate United States district court for an order enjoining such [violating] acts," 22 U.S.C. § 618(f). Moreover, Section 618(e) "criminalize[s] the failure to satisfy the requirements of . . . sections 612(a) and 612(b) [(*i.e.*, the failure to register)]." *United States v. McGoff*, 831 F.2d 1071, 1078 (D.C. Cir. 1987). All of these rights of enforcement attach to the Attorney General, not private parties. And "[P]laintiff cannot point to any language in the statute or its legislative history which suggests that Congress intended to establish a cause of action in any entity other than the federal government." *Comm. for a Free Namibia*, 554 F. Supp. at 725.

25

The best that Plaintiff has been able to muster is to state that (1) "only District Courts have, as of yet, opined on the issue, and there has been no appellate or Supreme Court ruling," Dkt. No. 2 ¶ 178, and (2) "there has been a lack of enforcement action—resulting in the violation of constitutional rights, and a blatant disregard of the rule of law," *id*. ¶ 179.  It is not necessary, however, for the Second Circuit or the Supreme Court to have explicitly rejected an argument for a district court to have the authority to conclude that the argument is frivolous.  The number of issues that reach the appellate courts, much less the Supreme Court, is limited.  Those courts do not have the resources to address every frivolous issue.  Thus, that a claim has not previously been rejected by a circuit court does not alone give the plaintiff the license to make the claim, any more than the fact that an issue that previously has been addressed and rejected by a circuit court necessarily precludes a subsequent plaintiff from raising it.  At all times, the critical question is not whether the circuit courts or Supreme Court has spoken directly on a particular issue—the question is whether the claim is "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(b)(2).  If the claim is warranted by existing law or a nonfrivolous argument for the extension, modification, or reversal of existing law, a party can make that claim without violating Rule 11(b)(2).  If it is not so warranted, the pleading is sanctionable.

Plaintiff's suggestion that he is entitled to enforce FARA because the United States government has not adequately done so fares no better; Plaintiff does not gain the right to step into the shoes of the United States Attorney General merely because he disagrees with his or her enforcement decisions.  Plaintiff "did not come forward at any point with any authority or coherent explanation as to why he has" a private right of action, and the claim was "thus objectively frivolous."  *Thompson v. Steinberg*, 2021 WL 3914079, at *7 (S.D.N.Y. Sept. 1,

2021), *aff'd*, 2023 WL 353359 (2d Cir. Jan. 23, 2023); *see also Biocad JSC v. F. Hoffman-La Roche Ltd.*, 2022 WL 268102, at *5 (S.D.N.Y. 2022) (imposing sanctions because "several courts . . . have previously" ruled against the legal argument, and yet plaintiff "did not cite a single case" explaining why the legal argument is still viable).

Moreover, even if the Court somehow found that FARA conferred a right of action on any private party, Plaintiff never articulated a basis upon which he could have asserted a FARA claim. As the Court concluded in its opinion dismissing Plaintiff's FARA claim in the Amended Complaint, Plaintiff did "not allege any harm associated with his allegation of Defendants' violation of" FARA and did not allege that any potential harm was "traceable to Defendants' failure to register under FARA or how a declaratory judgment compelling registration would redress his alleged injury." *Gong v. Sarnoff*, 2023 WL 4561800, at *11 (S.D.N.Y. July 17, 2023). The same conclusion applies with equal force to the Complaint.

Finally, Plaintiff's allegations lacked evidentiary support and there was no basis to believe that they would have evidentiary support. Plaintiff alleged that "O'Melveny is beholden to the CCP, and as such performs whatever acts are requested by the CCP—including acts within the United States that would require registration as foreign agents with the US Government." Dkt. No. 2 ¶ 47. Plaintiff further alleged that the CCP's unregistered agents in the United States "are now believed to be Defendant Sarnoff, Defendant O'Melveny and Defendant Stanton." *Id.* ¶ 64. However, the only factual allegations made to support these claims with respect to Moving Defendants are that they have performed legal work on behalf of a Chinese company, *id.* ¶¶ 25–26, and that O'Melveny has offices in the PRC from which it conducts "lucrative" business with a "potentially significant impact on the country," *id.* ¶¶ 42–43. However, FARA exempts from registration (1) "[a]ny person engaging or agreeing to engage only . . . in private and nonpolitical

activities in furtherance of the bona fide trade or commerce of such foreign principal," 22 U.S.C.
§ 613(d), and (2) "[a]ny person qualified to practice law, insofar as he engages or agrees to
engage in the legal representation of a disclosed foreign principal before any court of law or any
agency of the Government of the United State," *id.* § 613(g).  Further, "agent of a foreign
principal" is defined only to apply to activities performed by agents "within the United States."
*Id.* § 611(c).  There is no allegation of fact that O'Melveny or Sarnoff took any actions that
would fall within the ambit of FARA and not be reached by one of FARA's exemptions.

## III.    Plaintiff Initiated this Action with an Improper Purpose

Federal Rule of Civil Procedure 11 permits a court to impose sanctions when a pleading
has been filed "for any improper purpose, such as to harass, cause unnecessary delay, or
needlessly increase the cost of litigation."  Fed. R. Civ. P. 11(b)(1); *see also Fox v. Boucher*,
794 F.2d 34, 37–38 (2d Cir. 1986) (Federal Rule of Civil Procedure 11 "permits the imposition
of sanctions when an attorney signs a pleading that is interposed for an improper purpose without
reasonable inquiry or without grounds justifying the argument advanced.").  "There is a clear line
between zealous advocacy and abuse of the legal system that an attorney may not cross."
*Galonsky v. Williams*, 1997 WL 759445, at *1 (S.D.N.Y. Dec. 10, 1997) (citing *Baffa v.
Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 57 (2d Cir. 2000)).  But "[a] party should
not be penalized for or deterred from seeking and obtaining warranted judicial relief merely
because one of his multiple purposes in seeking that relief may have been improper."  *Sussman v.
Bank of Isr.*, 56 F.3d 450, 459 (2d Cir. 1995); *see also In re Firestar Diamond, Inc.*, 634 B.R.
265, 308 (Bankr. S.D.N.Y. 2021) ("While the 'improper purpose' and 'frivolousness' inquiries
are separate and distinct, they often overlap, and courts have found that a complaint is not filed
for an improper purpose if it is nonfrivolous.").  However, "[a] court may infer an improper
purpose if, in light of Plaintiffs' conduct during and outside of litigation, a complaint is so

baseless as to suggest that there is an ulterior motive behind the lawsuit." *An*, 2023 WL 4931832, at *6.

The Court also has no difficulty finding that Plaintiff here initiated this action for an improper purpose. The Complaint's allegations and claims against Moving Defendants are legally frivolous and factually flawed. Plaintiff's FARA claim is devoid of all factual and legal basis and is independently sanctionable. *See supra* Section II. Plaintiff's Sections 1983 and 1985 claims are similarly without merit.[16] Plaintiff alleged he was injured when he was hit by Stanton's car, Dkt. No. 2 ¶ 96, that no police report was filed, *id.* ¶ 108, and that the NYPD obstructed his ability to get medical attention, *id.* ¶¶ 112–19. However, Plaintiff never asserted any facts to support that Moving Defendants had any involvement in the events of December 20, 2022, exercised state authority, or acted in concert with the police. Nor did he assert any basis to believe that such evidence exists. *See Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998) (Rule 11 "explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed."). There was no reason to believe that either of Moving Defendants had any involvement in the offending conduct. The Complaint contains no non-conclusory allegations that either Moving Defendant was present at the scene when the offending conduct occurred or that Stanton or the NYPD was acting at the direction of the Moving Defendants.

In fact, when asked what his basis to believe that "Sarnoff and O'Melveny actually did collude with the police" during the initial pretrial conference, counsel for Plaintiff, Richard

---

[16] In its Opinion and Order on Moving Defendants' motion to dismiss Plaintiff's Amended Complaint, the Court dismissed with prejudice Plaintiff's 42 U.S.C. §§ 1983 and 1985(3) claims, which were supported by substantively identical allegations to those asserted in the Complaint, pursuant to Rule 12(b)(6) for failure to state a claim.

Freeth, responded with speculation and conjecture. *See Craig v. City of New York*, 2022 WL

2238451, at *6, *12 (E.D.N.Y. June 22, 2022) (complaint is sanctionable when it rests "on

conjecture and speculation"); *see also Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649,

661 (S.D.N.Y. 1996) ("The total lack of substance [of a complaint] gives rise to the inference

that the action was filed for improper purposes."). Counsel stated that he "would imagine" that

Moving Defendants had a connection with Stanton and that "it would make sense that, you

know, the defendants [Sarnoff and O'Melveny] in their position would send someone to, at least,

observe, get information." Dkt. No. 34 at 6–7. Imagination is guess work; it does not permit one

to sue a party for violation of a law enforceable by criminal penalties. The Complaint is

similarly devoid of allegations regarding Stanton's connection with the police; though it alleges

that Stanton "indicated that he worked with or had some kind of connection [with the] NYPD," it

concludes "[u]pon information and belief, [that] Defendant Stanton is not an officer with the

NYPD." Dkt. No. 2 ¶¶ 80, 82. Moreover, pressed for clarification about what the state action in

this case was, Freeth suggested that "it seems strange[,] [s]eems very, you know, suspect to me"

that when Plaintiff fell "down in the street after making contact with a vehicle," the police didn't

"do anything." Dkt. No. 34 at 8–9. In response to a question from the Court about whether

"discovery would help [Plaintiff] sustain this complaint," Plaintiff's counsel responded, "Well,

maybe it would, and maybe it would turn out to be that there isn't anything to support [the

Complaint]. I don't know." Dkt. No. 34 at 9.

There is every reason to believe, and the Court finds, that the Complaint was filed not to

redress any injury Plaintiff suffered on December 20, 2022, or to obtain judicial relief, but to

harass Moving Defendants because of their representation of a client in litigation against Kwok

and to deter others from doing the same. Plaintiff and his counsel Zhang are affiliated with

Kwok and sympathetic to him and his interests.  *See supra* pp. 12–14.  Plaintiff experienced his alleged injury at a protest outside Sarnoff's house.  *See* Dkt. No. 2 ¶ 71.  He previously attended protests outside O'Melveny's office.  *Id.* ¶ 67.  The Court rejects the notion that Plaintiff attended those protests solely or even primarily because of Moving Defendants' representation of Chinese clients or offices in China.  Numerous other law firms represent Chinese clients in litigation in the United States and have (or until recently had) offices in China.  The protests singled out Moving Defendants and they singled out Moving Defendants after they had assisted a client in litigation against Kwok.  The inference is inescapable that Plaintiff attended the protests because of the assistance that Moving Defendants provided their client against Kwok and to deter and prevent Moving Defendants from continuing to do so.

The conclusion that the lawsuit was filed to harass Moving Defendants, to punish them for their representation of PAX, and to deter others from also representing clients with interests that are opposed to Kwok's is further reinforced by the language of Plaintiff's brief in opposition to the motion for sanctions.  Plaintiff argues that Moving Defendants' accusations are "dismissive" because they "suggest that Plaintiff is simply an empty-headed follower of Mr. Kwok."  Dkt. No. 45 ¶ 13.  Nowhere in his opposition brief does he dispute that he is a follower of Kwok or make anything other than the most superficial and conclusory argument that the lawsuit was filed for reasons other than to harass Moving Defendants for their involvement in the PAX litigation and Bankruptcy Court litigation.[17]  In fact, he spends 31 paragraphs of his opposition devoted to the argument Kwok has been unfairly targeted by the CCP and the United

---

[17] Plaintiff argues that he "has initiated this matter because his Constitutional rights have been violated [and] he feels threatened by the CCP, and its agents, facilitators and/or co-conspirators." *Id.* ¶ 52.  However, that argument as against Moving Defendants is belied, as described in detail above, by the frivolousness of the claims brought against them.

States government, that the PAX litigation and bankruptcy proceedings were part of some broader conspiracy against Kwok, and that the CCP has "weaponize[ed]" the "U.S. Courts to target Mr. Kwok." *Id.* ¶¶ 15–46.

And if there is any doubt of the harassing purpose of this lawsuit, the history of lawsuits Zhang and Freeth have filed in this Court and elsewhere against PAX, persons associated with PAX, PAX's counsel, and those assisting the Bankruptcy Court settles that doubt. "Although a party should not be sanctioned for 'greater litigiousness' alone, a court may infer improper purpose where multiplicative filings are coupled with 'objectively unreasonable statements.'" *LCS Grp., LLC v. Shire LLC*, 2019 WL 1234848, at *14 (S.D.N.Y. Mar. 8, 2019) , *judgment aff'd, appeal dismissed in part sub nom. LCS Grp., LLC v. Shire Dev. LLC*, 2022 WL 1217961 (2d Cir. Apr. 26, 2022) (quoting *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 393 (2d Cir. 2003)); *see also* Fed. R. Civ. P. 11(b)–(c), Advisory Committee Notes to 1993 Amendment (noting that "whether *the person*"—and not specifically "the litigant"—"has engaged in similar conduct in other litigation . . . may in a particular case be [a] proper consideration[]" in determining whether and what kind of sanctions to impose). Plaintiff's counsel has engaged in repeated frivolous litigation in this Court and the District of Maryland. *See supra* pp. 14–16. These cases are unmistakably directed at parties and lawyers, who are either involved in Kwok's bankruptcy or in the PAX litigation. They contain similar allegations and similarly frivolous claims. The inescapable conclusion is that Zhang and Freeth are targeting those with interests opposed to Kwok's with the aim of chilling what they perceive as advocacy against him. The plaintiffs in the actions brought by Zhang and Freeth could have pursued relief from any number of individuals and entities engaged in similar activity in the PRC and for PRC companies for allegedly violating the registration requirements of FARA, but they did not. They only went

after individuals and entities who were involved in the Kwok bankruptcy or the PAX action. Although not dispositive here, this conclusion adds force to the Court's finding that sanctions are necessary and should be applied against Plaintiff's counsel. *See Billewicz v. Town of Fair Haven*, 2022 WL 4115966, at *13 (D. Vt. Aug. 11, 2022), *aff'd*, 2023 WL 3961437 (2d Cir. June 13, 2023) ("This repeated litigation suggests a pattern of abusive litigation and gives rise to an inference of improper motives.").

Lastly, the inference that the litigation was not filed to obtain judicial relief but to harass PAX's lawyers because they are PAX's lawyers is reinforced by the failure of Plaintiff and his counsel to pursue—before the Court prompted counsel to do so—the persons Plaintiff alleges to be those who inflicted harm against him by violating his constitutional rights: the NYPD and its officers. Plaintiff's Complaint was accepted for filing on January 18, 2023, *see* Dkt. No. 2, and Plaintiff requested that summonses be issued as to Moving Defendants and Stanton approximately a month later on February 23, 2023, *see* Dkt. Nos. 5–7. Plaintiff did not then, or within the requisite 90 days, serve or attempt to serve the City of New York or any of the officers allegedly involved in the December 20 incident—who he alleges were the principal wrongdoers. He served the summonses and Complaint on Moving Defendants and Stanton alone on March 20, 2023. Dkt. No. 18. Indeed, it was not until over four months later that Plaintiff served the state actors named as defendants in this case, *see* Dkt. Nos. 59, 64, and even then, only after the Court alerted Plaintiff to the defect and ordered Plaintiff to show cause why the case should not be dismissed pursuant to Federal Rule of Civil Procedure 4(m) for failure to serve the City of New York and the named police officer—Lauren A. Duffy—*see* Dkt. No. 58. There is every reason to believe that had the Court not issued the Order to Show Cause the City of New York would *never* have been served. And there is thus every reason to believe that Plaintiff did not

file this lawsuit as a result of some grievance he had with the City of New York as a result of the conduct of the NYPD or to obtain relief from an injury he alleges he suffered as a result of conduct by the NYPD. The inference is inescapable that he filed the lawsuit to harass and deter O'Melveny and Sarnoff for their conduct on behalf of a client who opposed Kwok's interests and not because of any injury Plaintiff suffered on December 20, 2020.

## IV.     Sanctions Award

Rule 11 permits a court to "impose an appropriate sanction" if it finds the Rule 11(b) has been violated "after notice and a reasonable opportunity to respond." "A sanction imposed under [Rule 11] must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Still, "[u]nder Rule 11, a District Court retains broad discretion to fashion an appropriate sanction based on the facts and circumstances of a particular case." *Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764, at *15 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 F. App'x 535 (2d Cir. 2009); *see also Lawrence v. Wilder Richman Sec. Corp.*, 417 F. App'x 11, 15 (2d Cir. 2010) ("[A] district court has 'broad discretion' to 'tailor[ ] appropriate and reasonable sanctions under [R]ule 11,' including an award of attorney's fees where warranted." (internal citations omitted) (quoting *O'Malley v. N.Y.C. Transit Auth.*, 896 F.2d 704, 709 (2d Cir. 1990))).

A court considering sanctions must be sensitive to the concern that it is not chilling legitimate advocacy. There is nothing inherently wrong in pursuing those persons believed to be supporters of the PRC based on legitimate legal arguments or arguments based on a well-founded belief in the reversal of existing law. But Plaintiff here, and his attorneys, are not seeking to use the legal system to vindicate rights; they are seeking to use the legal system to chill legal advocacy and to harass Moving Defendants because of their association with a

particular client. It is this behavior, coupled with the frivolousness of Plaintiff's FARA claim, that merits sanctions.

Moving Defendants request that the Court require that Zhang and Freeth "pay all attorneys' fees and costs that Defendants Mr. Sarnoff and O'Melveny have incurred in defending against this action."[18] Dkt. No. 37. The Court finds that an award of attorneys' fees and costs for defending this action—but not for bringing the Moving Defendants' motion under Rule 11—is no greater than what is necessary to "deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). These costs and attorneys' fees are to be borne by Freeth, Zhang, and Plaintiff. *See An v. Despins*, 2023 WL 4931832, at *8 (concluding that sanctions should be imposed on plaintiff's counsel for "issue[s] over which counsel exercise[d] principal responsibility," like ensuring that the complaints filed met a minimum merit threshold and pled adequate facts to establish subject matter jurisdiction" (alterations in original) (quoting *United Republic Ins. Co., in Receivership v. Chase Manhattan Bank*, 315 F.3d 168, 171 (2d Cir. 2003))). Moving Defendants are directed to file an application for fees and costs within fourteen days of the date of this Order.

Freeth has pleaded that he lacks the ability to pay Moving Defendants' attorneys' fees and costs. It is appropriate to consider ability to pay at this stage. *See* Fed. R. Civ. P. 11(c)(4) ("A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."); *see also* Fed. R. Civ. P. 11(b)–(c),

---

[18] Although Zhang has not made an appearance in this action, he, along with Freeth, signed the Complaint and thus "certifie[d] [to the Court] to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstance." Fed. R. Civ. P. 11(b). Rule 11(c) permits a court to sanction "any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. C. P. 11(c)(1). It does not limit a court's ability to sanction attorneys to those who have made an appearance in a case. The Court finds that Zhang, alongside Freeth, is responsible for the violations of Rule 11 detailed in this Opinion and Order.

Advisory Committee Notes to 1993 Amendment (noting that "what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants . . . may in a particular case be proper considerations" in determining whether and what kind of sanctions to impose); *Star Mark Mgmt., Inc.*, 682 F.3d at 179 (noting that a "district court[ has] broad discretion to lower a sanctions award based on inability to pay"); *Oliveri v. Thompson*, 803 F.2d 1265, 1281 (2d Cir. 1986) ("[G]iven the underlying purpose of sanctions—to punish deviations from proper standards of conduct with a view toward encouraging future compliance and deterring further violations—it lies well within the district court's discretion to temper the amount to be awarded against an offending attorney by a balancing consideration of his ability to pay.").  Accordingly, within seven days of the date that the application for fees and costs is submitted, Plaintiff and his counsel may submit any information they desire the Court to consider in apportioning (or not apportioning) the fee award.[19]

Additionally, Zhang and Freeth are directed to pay the Court a fine of $2,500 each for the burden that litigating the Complaint placed on the Court and its personnel and to deter the two from filing such frivolous and harassing litigation in the future.  *See* Fed. R. Civ. P. 11(b)–(c), Advisory Committee Notes to 1993 Amendment (noting that the "court has available a variety of possible sanctions to impose for violations, such as . . . ordering a fine payable to the court").  Such payments shall be made to the Clerk of Court of the Southern District of New York within fourteen days of the date of this Opinion and Order and proof of payment shall be filed on the docket.

---

[19] Moving Defendants may request leave to submit a reply brief, if necessary, within two business days of any response by Plaintiff.

Moving Defendants also seek an order "enjoining Plaintiff, Plaintiff's counsel, and those in active concert with them from filing other similar suits without leave of court." Dkt. No. 37. "If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system." *Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005) (internal quotation marks and citation omitted). Factors that a court should consider "in restricting a litigant's future access to courts" include:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005) (quoting *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)). "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Newman v. Jewish Agency for Isr.*, 2017 WL 6628616, at *6 (S.D.N.Y. Dec. 28, 2017), *aff'd sub nom. Eliahu v. Jewish Agency for Isr.*, 919 F.3d 709 (2d Cir. 2019) (quoting *Safir*, 792 F.2d at 24).

The Court finds that an anti-suit injunction is not appropriate or necessary based on the current record. Although the Court has found that Plaintiff filed this suit to harass Moving Defendants and that he and his counsel did not have an objective good faith expectation of prevailing in this suit, Moving Defendants point to no other lawsuits that Plaintiff has filed for harassing purposes nor have they pointed to a real risk that Plaintiff himself will continue to file such harassing lawsuits if not enjoined. As to Plaintiff's counsel, while they appear to have engaged in repeated frivolous and harassing litigation over the course of several lawsuits, they have not, to the Court's knowledge, filed other actions since sanctions have been awarded

against them in the case currently before the Honorable Valerie E. Caproni, *see An et al. v. Despins et al.*, No. 22-cv-10062 (VEC) (S.D.N.Y.). Moving Defendants themselves concede that they are not seeking referral to any disciplinary committee that would have the authority to restrict Moving Defendants' practice of law and the Court sees no such basis to do so on the present record. That counsel proceeded in the face of accusations that they violated Rule 11 (prior to any judicial finding that they did so) is an insufficient basis to impose any restrictions on the ability of counsel to file cases on behalf of their future clients.

During Oral Argument, Moving Defendants requested that the Court order Plaintiff to strike the allegations against them from the Amended Complaint and, if he elects to pursue his claims against the other defendants, that he file an amended complaint before doing so. Plaintiff's counsel did not object to this request. Moving Defendants are directed to identify in their memorandum in support of attorneys' fees and costs the paragraphs that should be stricken from the Complaint and the Amended Complaint. Plaintiff may respond two weeks thereafter. *See* Fed. R. Civ. P. 11(b)–(c), Advisory Committee Notes to 1993 Amendment ("The court has available a variety of possible sanctions to impose for violations, such as striking the offending paper.").

Finally, the Court will require Plaintiff, Zhang, and Freeth to file a copy of this Opinion and Order in all future actions opened by them for a period of one year from the date of this Opinion and Order.

## CONCLUSION

The motion for sanctions is GRANTED IN PART and DENIED IN PART.  Moving Defendants are directed to submit an application for reasonable costs and attorneys' fees by no later than fourteen days from the date of this Opinion and Order.  If Zhang, Freeth, and Plaintiff wish to offer evidence not already received by the Court, they are directed to do so alongside any objections to Moving Defendants' application for reasonable attorneys' fees and costs within seven days of the filing of such application.

The Clerk of Court is respectfully directed to close Dkt. No. 36.


SO ORDERED.


Dated: August 22, 2023
       New York, New York

_____
          LEWIS J. LIMAN
       United States District Judge