**<u>Exhibit 7</u>**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) | Case No. 22-50073 (JAM) |
| HO WAN KWOK, *et al.*, | ) | (Jointly Administered) |
|  | ) |  |
| Debtors. | ) | Re: ECF Nos. 1453 and 1649 |

## <u>APPEARANCES</u>

Luc A. Despins (argued)
Avram E. Luft
G. Alexander Bongartz
Douglass Barron
Paul Hastings LLP
200 Park Avenue
New York, NY 10166

   and

Nicholas A. Bassett (argued)
Paul Hastings LLP
2050 M Street NW
Washington, D.C. 20036

Douglass S. Skalka
Patrick R. Linsey
Neubert, Pepe & Montieth
195 Church Street, 13th Floor
New Haven, CT 06510

*Counsel for Movant and Cross-Respondent Mr. Luc A. Despins, Chapter 11 Trustee for the Estate of Mr. Ho Wan Kwok*

Stephen R. Cook
Brown Rudnick LLP
2211 Michelson Drive, 7th Floor
Irvine, California 92612

   and

Stephen A. Best (argued)
Brown Rudnick LLP
601 13th Street, NW, Suite 600
Washington, DC 20005

   and

Eric Henzy (argued)
James M. Moriarty
Zeisler & Zeisler, P.C.
10 Middle Street
Bridgeport, CT 06604

William Baldiga (argued)
Brown Rudnick LLP
Seven Times Square
New York, NY 10036

*Counsel for Respondent and Cross-Movant Mr. Ho Wan Kwok, Debtor[1]*

**MEMORANDUM OF DECISION AND ORDER
HOLDING INDIVIDUAL DEBTOR IN CONTEMPT OF COURT AND
DENYING MOTION FOR STAY OF ORDER COMPELLING PRODUCTION**

Julie A. Manning, United States Bankruptcy Judge

## I.  INTRODUCTION

Before the Court are the Motion for Order to Show Cause Why Debtor Should Not Be

Held in Contempt of Court (the "Contempt Motion"), (ECF No. 1453[2]), filed by Mr. Luc A.

Despins, in his capacity as Chapter 11 trustee (the "Trustee") for the bankruptcy estate (the

"Estate") of Mr. Ho Wan Kwok (the "Individual Debtor"), and the Motion for a Limited Stay of

Order Granting in Part Motion to Compel Compliance (the "Stay Motion," and together with the

Contempt Motion, each a "Cross-Motion" and, collectively, the "Cross-Motions"), (ECF No.

1649), filed by the Individual Debtor.  The Trustee seeks to hold the Individual Debtor in civil

contempt of court for failure to comply with the Order Granting in Part Motion to Compel

Compliance (the "Order Compelling Production").  (ECF No. 1353.)  The Individual Debtor

cross-moves to stay the Order Compelling Production in light of the criminal action *United*

*States v. Kwok*, Case No. 23 Cr. 118 (AT) (S.D.N.Y.) (the "Criminal Action") pending in the

United States District Court for the Southern District of New York (the "Criminal Court").  For

---

[1]  The attorneys at Brown Rudnick LLP have withdrawn their appearances since these matters
were argued.  (ECF No. 2034.)

[2]  Various pleadings and orders discussed in this memorandum of decision were omnibus in
nature.  For the sake of clarity and coherence, the titles of pleadings and orders have been set
forth only insofar as they concern the parties before the Court on the instant matters.

the reasons stated below, the Court holds the Individual Debtor in civil contempt of court and denies the Stay Motion.

## II. BACKGROUND

The Individual Debtor filed a voluntary Chapter 11 petition in this Court on February 15, 2022.  (ECF No. 1.)  The Individual Debtor's case is jointly administered with two affiliated corporate Chapter 11 cases.  (ECF Nos. 970 and 1141.)  For the reasons set forth therein, on June 15, 2022, the Court entered a memorandum of decision and order appointing a Chapter 11 trustee.  (ECF No. 465.)  *In re Kwok*, 640 B.R. 514 (Bankr. D. Conn. 2022).  On July 8, 2022, Mr. Despins was appointed as the Trustee.  (ECF No. 523.)

On July 28, 2022, the Trustee filed the Motion for 2004 Examination of the [Individual] Debtor, (ECF No. 636), which motion the Court granted, (ECF No. 757), on August 16, 2022. On August 19, 2022, the Individual Debtor was served with the Rule 2004 subpoena.  (*See, e.g.*, ECF No. 1650 ¶ 7.)  On October 28, 2022, the Trustee filed a Motion for Order Compelling Individual Debtor to Comply with Rule 2004 Subpoena (the "Motion to Compel").  (ECF No. 1046.)  On November 14, 2022, the Individual Debtor filed an objection to the Motion to Compel.  (ECF No. 1090.)  On November 30, 2022, a hearing was held on the Motion to Compel.  The Court took the Motion to Compel under advisement.  On January 20, 2023,[3] the Court entered the Order Compelling Production.  (ECF No. 1353.)

---

[3]  Between November 16, 2022, and January 13, 2023, the Court was engaged with matters in an adversary proceeding related to these Chapter 11 cases styled *Pac. All. Asia Opportunity Fund v. Kwok (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 22-05032 (JAM) (Bankr D. Conn. Jan. 13, 2023) (hereinafter the "Social Media/Protest Adversary").  Pursuant to Fed. R. Civ. P. 65(b)(3), the Court was required to address the matters in that adversary proceeding "at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character."

3

On February 7, 2023, the Individual Debtor filed a declaration in response to the Order Compelling Production (the "Declaration"). (ECF No. 1444 Ex. A.) In the Declaration, the Individual Debtor stated under penalty of perjury that he invoked his "rights under the 5th Amendment to the United States Constitution, including under the act of production doctrine[,] with respect to the Subpoena dated August 17, 2022, in its entirety, including all requests for documents and information set forth therein." (*Id.* Ex. A.) On February 10, 2023, the Trustee filed the Contempt Motion, arguing that (i) the Individual Debtor needed to show cause why his invocation of the Fifth Amendment was proper and why he should not be held in contempt of court; (ii) even if the Individual Debtor's invocation was proper, he needed to assert it in response to each request for documents and information; and (iii) the Declaration did not comply with the Order Compelling Production because it did not detail the efforts undergone to search for documents and information responsive to the subpoenas. (ECF No. 1453.) On March 7, 2023, a hearing was held on the Contempt Motion. At the conclusion of the hearing, the Court set a briefing schedule on the issues raised by the Contempt Motion.

On March 15, 2023, at the start of an evidentiary hearing in a related adversary proceeding, the Individual Debtor's counsel informed the Court that an indictment against the Individual Debtor had been unsealed in the Criminal Action and the Federal Bureau of Investigation (the "FBI") had arrested the Individual Debtor earlier that morning. On March 22, 2023, the Court granted the Individual Debtor's motion for an extension of time to respond to the Contempt Motion. (ECF No. 1585.)

On April 10, 2023, the Individual Debtor filed an objection to the Contempt Motion. (ECF No. 1650.) The Individual Debtor's objection argues that he has complied with the Order Compelling Production because he has properly invoked his Fifth Amendment right against self-

incrimination.  (*Id.*)  Contemporaneously, the Individual Debtor, through his counsel in the Criminal Action appearing in these Chapter 11 cases as his special (criminal) counsel, filed the Stay Motion.  (ECF No. 1649.)  The Stay Motion argues that to preserve the Individual Debtor's Fifth Amendment right against self-incrimination, this Court must stay the Order Compelling Production pending resolution of the Criminal Action.  (*Id.*)  On April 14, 2023, the Trustee filed a reply to the objection to the Contempt Motion.  (ECF No. 1670.)  On April 19, 2023, the Trustee filed an objection to the Stay Motion.  (ECF No. 1680.)

On April 20, 2023, a hearing was held on the Cross-Motions.  At the conclusion of argument, the Trustee and the Individual Debtor seemingly reached a consensual resolution of the Cross-Motions.  However, on April 24, 2023, the parties filed competing proposed orders. (ECF Nos. 1698, 1699.)  On April 27, 2023, a Status Conference on the Cross-Motions was held to discuss the competing orders.  The parties agreed to proceed consensually where they could agree, but expressed disagreement as to the terms of the previous agreement.  On May 1, 2023, the Court entered a consent order requiring the Individual Debtor to make individual invocations of his Fifth Amendment right to each of two-hundred two (202) questions posed by the Trustee. (ECF No. 1740.)  Also on that date, the Individual Debtor filed a supplemental pleading in support of his interpretation of the April 20th agreement.  (ECF No. 1737.)

On May 2, 2023, a second hearing was held on the Cross-Motions resulting in an impasse as to the terms of the April 20th agreement.  The Trustee argued that the parties had agreed the Individual Debtor would file a motion in the Criminal Action seeking permission to share the prosecution's production to him with the Trustee, provided the Trustee complied with protective orders and other confidentiality orders and use restrictions issued in the Criminal Action.  The Individual Debtor argued that the parties had agreed that the Individual Debtor would seek,

potentially by motion, to have the prosecution agree to produce documents simultaneously to the Individual Debtor and the Trustee, provided the Trustee complied with protective orders and other confidentiality orders and use restrictions issued in the Criminal Action.  Citing the impasse, the Court concluded it had to rule on the Cross-Motions.  However, the Individual Debtor's bankruptcy counsel asked the Court to wait before ruling on the Cross-Motions to allow the Individual Debtor time to appreciate the nature of the prosecution's production to him in the Criminal Action.

Given the serious nature of the issues involved, the Court waited.  On June 13, 2023, a final hearing was held on the Cross-Motions.  The Court inquired whether the parties had made any progress toward a consensual resolution of the Cross-Motions.  The parties reported that the Individual Debtor had prepared a supplemental declaration (the "Supplemental Declaration"), wherein he invoked the Fifth Amendment on an individuated basis to each of the Trustee's questions.  (*See Despins ex rel. Kwok v. HCHK Techs., Inc. (In re Kwok)*, Case No. 22-50073, Adv. P. No. 23-05013 (Bankr. D. Conn. June 8, 2023), ECF No. 1 Ex. 1.)  Beyond the Supplemental Declaration, however, the parties reported that the impasse remained and asked the Court to rule on the Cross-Motions.  The Court took the Cross-Motions under advisement.

The Cross-Motions are ripe for decision.

## III.  JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).  This Court has authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984.  The instant proceedings are statutorily core proceedings.  28 U.S.C. § 157(b)(2)(A).  The Court concludes its exercise of

jurisdiction is not precluded by Constitutional concerns. *Cf. Stern v. Marshall*, 564 U.S. 462, 487–99 (2011). Moreover, the Trustee and the Individual Debtor have impliedly consented to this Court entering a final order on the Cross-Motions by filing dispositive motions without contesting this Court's authority to enter a final order. *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 686 (2015) (holding that parties may consent to entry of a final order by bankruptcy courts notwithstanding the holding in *Stern*); *True Traditions, LC v. Wu*, 552 B.R. 826, 838 (N.D. Cal. 2015) (holding that implied consent is given by filing a dispositive motion).

Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## IV. DISCUSSION[4]

The Cross-Motions present serious issues. The Trustee seeks to hold the Individual Debtor in contempt for failure to comply with the Order Compelling Production. The Individual Debtor argues that the invocation of his Fifth Amendment right against self-incrimination is compliance and must be protected by a stay of the Order Compelling Production. For the reasons stated below, the Court concludes that the Fifth Amendment right against self-incrimination does not apply under the specific facts and circumstances before the Court. Therefore, the Court holds the Individual Debtor in contempt of court and denies the Stay Motion.

### A. Is the Individual Debtor in civil contempt of court?

The Court first considers whether the Individual Debtor is in contempt of court for failure to comply with the Order Compelling Production. This Court has the power to hold parties in contempt of court under 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9020. *Taggart v. Lorenzen ex*

---

[4] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, which is made applicable to contested matters by Rule 9014(c).

*rel. Brown*, 139 S. Ct. 1795, 1801 (2019); *PHH Mortg. Corp. v. Sensenich ex rel. Gravel (In re Gravel)*, 6 F.4th 503, 512 (2d Cir. 2021); *Mar. Asbestosis Legal Clinic v. LTV Steel Co. (In re Chauteaugay Corp.)*, 920 F.2d 183, 187 (2d. Cir. 1990).  Federal Rules of Civil Procedure 37(b)(1) and 37(b)(2)(A)(vii), made applicable by D. Conn. L. Civ. R. 37 and D. Conn. Bankr. L.R. 1001-1(a)(1) and 2004-1(a), provide further authority to hold parties in contempt of an order compelling production of discovery materials.

Contempt may be sought to "'coerce the defendant into compliance'" with a court order or to "'compensate the complainant for losses'" resulting from noncompliance with a court order.  *Taggart*, 139 S. Ct. at 1801 (citing *United States v. United Mine Workers*, 330 U.S. 258, 303–04 (1947)).  A finding of civil contempt requires that "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner."  *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995).  The contemnor must also (4) have notice of the relevant order.  *Gravel*, 6 F.4th at 512.

### 1. Is the Order Compelling Compliance clear and unambiguous?

An order is clear and unambiguous where "'there is [no] *fair ground of doubt* as to the wrongfulness of the defendant's conduct.'"  *Taggart*, 139 S. Ct. at 1801 (citing *Cal. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609 (1885)).  A court generally applies an objective standard – a "party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable."  *Taggart*, 139 S. Ct. at 1802 (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("The absence of wilfulness [sic] does not relieve from civil contempt.")).  Nevertheless, a party's bad faith may justify "placing 'the burden of any uncertainty in the decree . . . on [the] shoulders' of the party

who violated the court order," and "a party's good faith, even where it does not bar civil

contempt, may help to determine an appropriate sanction." *Taggart*, 139 S. Ct. at 1802 (citing

*McComb*, 336 U.S. at 192–93 and *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S.

787, 801 (1987)).

The Order Compelling production states, in pertinent part, the following:

> **ORDERED:** The Objection is **OVERRULED** as it relates to discovery requests directed to the [Individual] Debtor except as to the requests that seek documents dated earlier than June 1, 2014, and to the requests that seek the [Individual] Debtor's passport(s), to which extent the Objection is **SUSTAINED**, without prejudice to the Trustee to seek documents dated earlier than June 1, 2014, and the [Individual] Debtor's passport(s) at a later date as the investigation proceeds upon cause shown. The [Individual] Debtor shall, by 5:00 p.m. on January 31, 2023, search for and produce to the Trustee:

>> (i) documents responsive to the Trustee's requests dated June 1, 2014, or later, unless a particular request specifies a different time period that does not begin before June 1, 2014;

>> (ii) documents responsive to the Trustee's requests as to both assets he acknowledges he owns and assets allegedly belonging to persons or entities other than the [Individual] Debtor, including without limitation his family members and associated entities; and

>> (iii) documents responsive to the Trustee's requests that are within his custody, possession, or control, including without limitation documents in the files of his current or former counsel and other agents and advisors, unless such documents have already been produced by his current or former counsel and other agents and advisors but without consideration of any potential future production by his current or former counsel and other agents and advisors;

and it is further

> **ORDERED:** The [Individual] Debtor shall, by 5:00 p.m. on February 7, 2023, file on the docket of this case a sworn declaration describing in detail the document collection, search, and review actions taken by him and his counsel in response to the subpoena, including without limitation a detailed description of the processes that he and his counsel performed to:

>> (i) identify all of the [Individual] Debtor's electronic devices; all online document repositories to which he has access; all social media, email, and other accounts associated with electronic documents; all bank accounts and related

account statements; and all other potential sources of responsive hard copy and electronic documents that may exist; and

(ii) search the foregoing sources for responsive documents, including without limitation for documents responsive to the requests related to expenses or money transfers, to assets or financial or business transactions or records related to the [Individual] Debtor's family or associated entities, and to business interests associated with the [Individual] Debtor . . .

(ECF No. 1353.)  The Individual Debtor did not raise any argument in pleadings or during oral argument that there is "a fair ground of doubt" as to the meaning of the Order Compelling Production.[5]  The Court concludes the Order Compelling Production is clear and unambiguous as it relates to the Individual Debtor.[6]

## 2. Did the Individual Debtor comply with the Order Compelling Production?

Regarding the second element, the Trustee must prove by clear and convincing evidence that the Individual Debtor has not complied with the Order Compelling Production.  *King*, 65 F.3d at 1058.  The Trustee argues that because (i) the Individual Debtor has failed to produce documents or records and (ii) the Individual Debtor has failed to file a declaration identifying potential sources of documents or records as well as the efforts undertaken to search those sources, the Individual Debtor has not complied with the Order Compelling Production.

In response, the Individual Debtor makes two arguments.  First, the Individual Debtor argues that it is impossible for him to comply because he is presently being detained pending trial without the possibility of pre-trial release.  Second, the Individual Debtor argues that the

---

[5] The Individual Debtor argues that there is a fair ground of doubt as to whether the Individual Debtor could invoke his Fifth Amendment right against self-incrimination in response to the Order Compelling Production.  The Court considers this argument below in the discussion of whether the Individual Debtor has diligently attempted to comply with the Order Compelling Production.

[6] The Court has previously held that the Order Compelling Production is clear and unambiguous as to other parties.  (*See* ECF No. 1537.)

"act of production" doctrine permits him to invoke his Fifth Amendment right against self-incrimination in response to requests for the production of documents and records.  On this basis, the Individual Debtor asserts that he has complied with the Order Compelling Production.

### i.  Is it impossible for the Individual Debtor to comply?

While the Individual Debtor is correct that "[a] long recognized defense to a civil contempt citation is the cited individual's inability to comply with the court's order," *United States v. Wendy*, 575 F.2d 1025, 1030 (2d Cir. 1978), and that the proper time to assess impossibility of compliance is at the time of issuing the ruling on contempt, *United States v. Rylander*, 460 U.S. 752, 757 (1983), the Court concludes compliance remains possible for the Individual Debtor.  While it is true that the prosecution has seized documents and records of the Individual Debtor in connection with the Criminal Action, the Individual Debtor has not established that (a) all of his documents and records have been seized and (b) he has no additional copies of the seized records.  Moreover, based on the statements of his counsel, the Court understands the prosecution's production to the Individual Debtor in the Criminal Action should begin soon – if it has not already.  While it is (i) likely that the Trustee would have to become a signatory to and comply with confidentiality requirements and use restrictions in the Criminal Action and (ii) possible that production to the Trustee may be opposed by the prosecution or not allowed by the Criminal Court, it is not impossible for the Individual Debtor to petition the Criminal Court to allow production to the Trustee.  Although, the Individual Debtor is presently detained pending trial, his attorneys are not.  The Individual Debtor may produce documents through his attorneys and/or other agents.  Therefore, it is not impossible for the Individual Debtor to comply with the Order Compelling Production.

### ii. Has the Individual Debtor properly invoked the Fifth Amendment?

### a. Does the act of production doctrine apply?

The Individual Debtor's argument that he has complied with the Order Compelling

Production relies on the "act of production" doctrine.  In *Fisher v. United States*, which held that

the act of production at issue in that case was not protected by the Fifth Amendment, the United

States Supreme Court nevertheless held that

> The act of producing evidence in response to a subpoena nevertheless has communicative
> aspects of its own, wholly aside from the contents of the papers produced.  Compliance
> with the subpoena tacitly concedes the existence of the papers demanded and their
> possession or control by the taxpayer.  It also would indicate the taxpayer's belief that the
> papers are those described in the subpoena.

425 U.S. 391, 410 (1976); *see United States v. Hubbell*, 530 U.S. 27, 36–37 (2000).  In *Fisher*,

the Supreme Court held the test to determine if the act of production could be protected by the

Fifth Amendment is whether the "tacit averments" involved in the act of production are both

"testimonial" and "incriminating" under prevailing Fifth Amendment jurisprudence.  425 U.S. at

410–11.  In particular, the Supreme Court expressed concern regarding tacit averments as to: (i)

the existence of the documents or records; (ii) the producing party's possession or control over

the documents or records; and (iii) the producing party's belief that the documents and records

were those requested by the subpoena.  *Id.*  The act of production doctrine does not protect the

testimonial and incriminating contents of documents – it only protects testimonial and

incriminating *production*.  *Id.*; *Hubbell*, 530 U.S. at 40–41.

Under binding precedent of the United States Court of Appeals for the Second Circuit,

the act of production *may* entail testimonial tacit averments "(1) 'if the existence and location of

the subpoenaed papers are unknown to the government'; or (2) where production would

'implicitly authenticate' the documents."  *United States v. Doe (In re Grand Jury Subpoena)*, 1

F.3d 87, 93 (2d Cir. 1993) (hereinafter "*Grand Jury 1993*") (citing *United States v. Fox*, 721 F.2d 32, 36 (2d Cir.1983)). If the Trustee can show (1) the existence and location; and (2) the authenticity of the documents is a "foregone" conclusion or already established by other evidence, then the production is not protected by the Fifth Amendment. *Grand Jury 1993*, 1 F.3d at 93. Moreover, even if the tacit averments involved in production are testimonial under *Fox*, the Individual Debtor must also establish that revealing the existence, location, or authenticity of the documents or records is incriminating. *See Hoffman v. United States*, 341 U.S. 479, 486–87 (1951); *Fox*, 721 F.2d at 40; *In re Schick*, 215 B.R. 4, 9 (Bankr. S.D.N.Y. 1997); *cf. Martin-Trigona v. Belford (In re Martin-Trigona)*, 732 F.2d 170, 176 (2d Cir. 1984).

The Individual Debtor's burden to establish that the act of production is testimonial and incriminating is less than a normal burden of proof: "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman*, 341 U.S. at 486–87. In determining whether the Individual Debtor may invoke the Fifth Amendment, the Court must use its "personal perception of the peculiarities of the case" as much as factual support submitted by the Individual Debtor. *Id.* at 487. The act of production is incriminating if it could be "a link in the chain of evidence" used to prosecute the Individual Debtor. *Id.* at 486.

The Individual Debtor argues that producing documents and records under compulsion of the Order Compelling Production would be testimonial because the production could be construed as a tacit averment that he beneficially owns and/or controls various entities and assets and that he has authority over various persons. Such tacit averments, the Individual Debtor argues, would be incriminating because the present Criminal Action and an alleged investigation

13

into bankruptcy crimes involve allegations about the Individual Debtor's beneficial ownership
and control of entities and/or assets and the Individual Debtor's authority and/or control over
certain individuals.

The Trustee raises numerous objections to the Individual Debtor's argument. The
Trustee's primary objection is that the "required records" doctrine applies and is an exception to
the act of production doctrine. In support of this argument, the Trustee asserts that the Individual
Debtor, as a debtor in bankruptcy, cannot properly invoke the Fifth Amendment to avoid
production of documents and records relating to his financial affairs, assets, and liabilities as
required by the Bankruptcy Code – whether or not the act of production is testimonial and
incriminating. The Trustee's required records argument involving the Individual Debtor's duties
in his bankruptcy case will be addressed below. The Court will first address the Trustee's
various objections as to whether the Individual Debtor has met his burden of proof to show that
compliance with the Order Compelling Production would be both testimonial and incriminating.

### The Supplemental Declaration

The Individual Debtor and the Trustee have reached a resolution regarding one of the
Trustee's objections. Before the Contempt Motion was filed and the hearings on it were held,
the Individual Debtor's Declaration made a blanket assertion of his Fifth Amendment right
against self-incrimination. The Trustee argued that this was improper because (a) such a blanket
assertion did not evidence that the Individual Debtor had properly considered each of the
Trustee's requests before invoking the Fifth Amendment; and (b) these Chapter 11 cases are civil
proceedings, meaning that the Individual Debtor's invocation of the Fifth Amendment may,
under proper circumstances, be admitted as evidence. However, the Individual Debtor has since
provided the Supplemental Declaration pursuant to a consent order, wherein he answers each

question posed by the Trustee on an individual basis and asserts his Fifth Amendment right in response to each of the two-hundred two (202) questions. Although the Individual Debtor has now properly invoked his Fifth Amendment right to the Trustee's specific questions, issues related to the production of documents remain.

### Pre-indictment invocation of the Fifth Amendment

One of the Trustee's remaining objections to the Individual Debtor's proof of compliance with the Order Compelling Production is unpersuasive. The Trustee argues that the Individual Debtor was in contempt before the unsealing of the indictment against him and cannot now invoke the Fifth Amendment in light of the Criminal Action to avoid being held in contempt. However, the Individual Debtor is correct that the Fifth Amendment may be invoked prior to the commencement of a criminal action. *See United States v. Miranti*, 253 F.2d 135, 139 (2d Cir. 1958) (allowing a witness to invoke the Fifth Amendment where there was only a slight *possibility* of prosecution). Just as the Individual Debtor could assert his Fifth Amendment right during the evidentiary hearing in December 2022 and during his March 2023 deposition, he could do so in February 2023 so long as he had "reasonable cause to apprehend danger from a direct answer" and his Fifth Amendment right was otherwise applicable. *Hoffman*, 341 U.S. at 486.

### Documents in possession of the prosecution

A second argument of the Trustee also fails. The Trustee argues that there is no harm to the Individual Debtor because the prosecution is already in possession of his documents and records. The Trustee is correct insofar as the existence and location of these documents is known and, hence, the first prong of the *Fox* test fails. *Grand Jury 1993*, 1 F.3d at 93. Nevertheless, whether the act of producing the Individual Debtor's documents and records

15

already in the possession of the prosecution would result in authenticating those documents and records remains an issue. *Id.* The Individual Debtor is concerned that his act of production would authenticate the documents. The Court has not seen these documents and records. Nor has the Trustee. The Court recognizes the Trustee is in a difficult position because he is not a party to the Criminal Action. Nevertheless, the Trustee has not shown that it would be a foregone conclusion that the documents and records are authentic. Therefore, under the second prong of the *Fox* test, the tacit averment as to the authenticity of the documents and records in the possession of the prosecution may be testimonial. *Id.*

Moreover, because the documents and records seized by the prosecution may be used in the Criminal Action to prosecute the Individual Debtor, the Court finds the Individual Debtor's argument that his implicit authentication of those documents and records could be "a link in the chain of evidence" used to prosecute him is persuasive. *Hoffman*, 341 U.S. at 486. Therefore, unless the Trustee can show that it would be a foregone conclusion that the documents and records are authentic, the act of production doctrine applies to the documents held by the prosecution, unless an exception to the doctrine applies.

### *Documents not in the possession of the prosecution*

The Individual Debtor argues that the entire universe of documents and records the Order Compelling Production compels him to produce have been seized by the prosecution. The Court does not agree and, therefore, continues its discussion. As the Trustee contends, the blanket assertion that the Individual Debtor has no documents or records in his possession, custody, or control because he is now incarcerated is not convincing. The FBI apparently seized many documents, records, and electronic devices at the Individual Debtor's residences despite previous representations that the Individual Debtor maintained almost no documents, records, and devices.

Similarly, the Trustee is correct that there is no evidentiary basis to support the contention that there are no records within the Individual Debtor's possession, custody, or control that are not already among the documents and records seized by the prosecution. Given past descriptions of the efforts – or, as the case may be, the lack thereof – conducted by the Individual Debtor's counsel, the Individual Debtor has not established that a reasonably diligent search occurred. (*See* Order Compelling Production ¶ 9.) For both of these reasons, the Court concludes that the Individual Debtor has not established that all potentially responsive documents and records have been seized by the prosecution.

As to documents and records that were not seized by the prosecution, the Trustee has not shown that the location, existence, or authenticity of these documents is a foregone conclusion. Therefore, if the Individual Debtor establishes that they are incriminating, the act of production doctrine would apply. *Fox*, 721 F.2d at 36. The Trustee argues that the Individual Debtor has not met his burden to establish that the requested documents and records are incriminating. The Trustee is correct that even with the Supplemental Declaration, the Individual Debtor has not established that each requested production would be incriminating.

Nevertheless, the Court is mindful of the lessened burden the Individual Debtor must meet. The Court is also mindful that it must rely on its own perception of the facts and circumstances of these Chapter 11 cases and related adversary proceedings. *Hoffman*, 341 U.S. at 486–87. Moreover, as the Individual Debtor's counsel notes, "[t]he privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Id.* at 486. However, the Court's "personal perception of the peculiarities of the case" includes the observation that the Individual Debtor

17

has obstructed lawful inquiry into his assets, liabilities, and financial affairs in addition to his

avowed desire to avoid self-incrimination. *Id.* at 487. (*See, e.g.*, Social Media/Protest

Adversary, ECF No. 133.)

The indictment in the Criminal Action is not alone sufficient for the Individual Debtor to

meet his burden with respect to the documents and records that the prosecution has *not* seized.

The indictment alleges fraud going back to approximately 2018, whereas many of the assets of

interest to the Trustee thus far – that certain yacht, the Lady May; the apartment at the Sherry-

Netherland Hotel; the Ace Decade Holdings Limited cause of action – were allegedly acquired

prior to 2018. While some of these assets, *e.g.*, the Lady May, are discussed in the indictment,

the Court cannot, with its "personal perception of the peculiarities of the case" and the Individual

Debtor's scant evidentiary showing, hold that the Individual Debtor has sufficiently supported

his blanket assertion of the Fifth Amendment on the basis of the Criminal Action. *Id.* at 487.

The Individual Debtor has not established that all of his assets, liabilities, and financial affairs

relate to the alleged fraud or may somehow present a "link in the chain of evidence" regarding

the alleged fraud. *Id.* at 486.

In support of his argument that he has complied with the Order Compelling Production,

the Individual Debtor also presented a subpoena directed at the Trustee relating to an alleged

investigation into potential bankruptcy crimes committed in these Chapter 11 cases. (ECF No.

1719, at *80:20–81:8.) As noted above, it does not matter if prosecution due to this investigation

is likely when determining if production of the documents is incriminating. *Miranti*, 253 F.2d at

139.

Title 18 of the United States Code, sections 152, 156, 157, 1519, and 3284 set forth

crimes related to the concealment of assets in a bankruptcy case. Sections 152, 156, 157, and

1519 require knowing, intentional, or fraudulent acts.  Section 3284 requires "concealment."
The tacit averments that the Individual Debtor has possession or control over documents or
records responsive to the Rule 2004 subpoena and that such documents or records are authentic
are not themselves incriminating because they do not establish that the Individual Debtor
knowingly, intentionally, or fraudulently withheld assets – or documents and records pertaining
to assets – from the Estate.  Debtors routinely mistakenly overlook assets and liabilities and
amend their statements and schedules and/or update their disclosures.

Nevertheless, the Court must consider whether such tacit averments are a "link in the
chain of evidence" regarding a potential prosecution of the Individual Debtor for concealment of
his assets from the Trustee, this Court, and his creditors.  *Hoffman*, 341 U.S. at 486.  The Trustee
alleges that the Individual Debtor has a multitude of business interests and should have
commensurate documents and records.  While the Individual Debtor denies these allegations, it
is the Court's "personal perception of the peculiarities of the case," on the basis of prior findings
of this and other courts, that the Individual Debtor has at least *some* business interests beyond
those he presently admits.  *See Pac. All. Asia Opportunity Fund, L.P. v. Kwok Ho Wan*, Index
No. 652077/2017 (N.Y. Sup. Ct. Feb. 9, 2022), NYCEF No. 1181; *E. Profit Corp. Ltd. v.
Strategic Vision US LLC*, Case No. 18-cv-2185 (LJL), 2021 WL 2554631, at *1 (S.D.N.Y. June
22, 2021).  (*See* ECF No. 1110; *HK Int'l Funds Invs. (USA) Ltd., LLC v. Despins ex rel. Kwok
(In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 22-05003 (JAM) (Bankr. D. Conn. May
18, 2023), ECF Nos. 177, 221; Social Media/Protest Adversary, ECF No. 133 ¶ 7.)  The Court
perceives that the Individual Debtor's production may be similarly expansive to the production at
issue in *Hubbell*.  *See* 530 U.S. at 40–43.  Even though *Hubbell* was a case involving immunity
granted to a party where the scope of the production was known and the burden had shifted to the

prosecution, it *may* be similarly necessary for the Individual Debtor "to make extensive use of 'the contents of his own mind' in identifying the hundreds of documents responsive to the requests in the subpoena" and essentially create a map of his assets, liabilities, and business interests. *See id.* at 43. Regarding the alleged investigation into bankruptcy crimes, such a map may aid in discovery of evidence of knowledge, intent, or fraud. Using its perception of the specific facts and circumstances of these Chapter 11 cases and related adversary proceedings, the Court finds that such admissions could be links in the chain of evidence because they could have a "derivative use." *See id.* at 41–43.

### *The Individual Debtor's production is testimonial and incriminating*

For the above reasons, the Court concludes that production in compliance with the Order Compelling Production would be testimonial and incriminating both with regards to the documents in the possession of the prosecution and the documents that have not been seized by the prosecution. *See Fisher*, 425 U.S. at 410–11. The Court notes, however, that the evidentiary record to date is not strong. If in the future the Trustee can (i) show that the location, existence, and authenticity of any document is a foregone conclusion; (ii) establish with regard to any document or category of documents that the Individual Debtor has not met his burden; or (iii) establish that he already has a map of the Individual Debtor's assets, liabilities, and business interests with respect to any documents or category of documents, this finding may be revisited upon a proper motion.

### b. Does the 'required records' exception apply?

Although the act of production doctrine applies, that does not end the Court's analysis or necessarily determine the result of the Contempt Motion. As noted above, the Trustee's primary argument is that the required records doctrine applies on the specific facts and circumstances

before the Court and presents an exception to the act of production doctrine. The Trustee

therefore argues that it does not matter whether the act of production doctrine would allow the

Individual Debtor to properly invoke his Fifth Amendment right against self-incrimination in

response to the Order Compelling Production because the required records exception applies in

this case.

In support of his argument, the Trustee relies on *Baltimore City Department of Social*

*Services v. Bouknight*, 493 U.S. 549 (1990). In *Bouknight*, the Supreme Court restated and

reaffirmed the existence of the required records doctrine post-*Fisher*. 493 U.S. at 555–59.

Under the required records doctrine, "the Fifth Amendment privilege may not be invoked to

resist compliance with a regulatory regime constructed to effect the State's public purposes

unrelated to the enforcement of its criminal laws." *Id.* at 556; *see Grosso v. United States*, 390

U.S. 62, 67–68 (1968) (articulating factors to consider regarding required records doctrine);

*Shapiro v. United* States, 335 U.S. 1, 32 (1948) (originating the required records doctrine).

The Individual Debtor asserts *Bouknight* does not describe an exception to the act of

production doctrine set forth in *Fisher* and that the required records doctrine does not provide for

the compelled testimonial and incriminating production of documents and records. The

Individual Debtor's assertion contradicts the clear text of *Bouknight* which states:

> The possibility that a production order will compel testimonial assertions that may prove
> incriminating does not, in all contexts, justify invoking the privilege to resist production.
> Even assuming that this limited testimonial assertion is sufficiently incriminating and
> "sufficiently testimonial for purposes of the privilege," Bouknight may not invoke the
> privilege to resist the production order because she has assumed custodial duties related
> to production and because production is required as part of a noncriminal regulatory
> regime.

*Bouknight*, 493 U.S. at 555–56 (discussing *Fisher*) (internal citations omitted). In addition to the

Supreme Court, the Second Circuit has also clearly rejected the Individual Debtor's assertion:

> "[T]he required records doctrine is an exception to the Fifth Amendment privilege.  As
> such, it necessarily overrides the privilege in instances in which the privilege would
> otherwise apply.  *Fisher* was not concerned with required records and nothing in its
> analysis could be construed as weakening the required records exception."

*United States v. Doe (In re Grand Jury Subpoena)*, 741 F.3d 339, 346 (2d Cir. 2013) (hereinafter

"*Grand Jury 2013*") (quoting *Doe v. United States (In re Doe)*, 711 F.2d 1187, 1192–93 (2d Cir.

1983)).  Indeed, the Second Circuit has emphatically stated "[t]his Court has twice explicitly

rejected the idea that the required records exception has been abrogated by the act of production

doctrine." *Grand Jury 2013*, 741 F.3d at 346.  This binding Supreme Court and Second Circuit

precedent makes clear that the required records doctrine is an exception to the act of production

doctrine.[7]  Therefore, if the required records exception applies in this case, the Individual Debtor

has failed to comply with the Order Compelling Production regardless of the conclusion that

such production would be testimonial and incriminating.

In determining whether the required records doctrine applies, the Second Circuit turns to

the *Grosso* factors.  *Grand Jury 2013*, 741 F.3d at 345.  In *Grosso*, the Supreme Court applied

the following factors: "[F]irst, the purposes of the United States' inquiry must be essentially

regulatory; second, information is to be obtained by requiring the preservation of records of a

kind which the regulated party has customarily kept; and third, the records themselves must have

assumed 'public aspects' which render them at least analogous to public documents."  390 U.S.

---

[7]  The Individual Debtor observes that one of the cases cited by the Trustee, *In re Ross*, 156 B.R.
272, 279 (Bankr. D. Idaho 1993), both found the production of the requested documents to be
insufficiently testimonial and found that the required records doctrine applied.  From this
observation, the Individual Debtor concluded that the latter holding required the former.  The
Court concludes otherwise.  The court in *Ross*, like many courts – particularly lower courts
subject to review, advanced multiple bases for its conclusion that the debtor in that case could
not properly invoke the Fifth Amendment.  156 B.R. at 281 ("Fifth, *even if the act of production
involved here was both testimonial and incriminating*, the nature of chapter 7 as a regulatory
regime directed toward society as a whole, and not toward inherently suspect criminal classes,
renders the act of production outside the protection of the Fifth Amendment.") (emphasis added).

at 67–68.  Here, the Trustee is seeking documents and records that the Order Compelling Production holds relate to "the acts, conduct, or property or to the liabilities and financial condition of the [Individual Debtor], or to any matter which may affect the administration of the [Estate]."  Fed. R. Bankr. P. 2004(b).  Hence, the Individual Debtor is obligated to produce the documents and records the Trustee seeks under sections 521(a)(3) and (a)(4).  Therefore, the issue is whether the documents and records the Individual Debtor is obligated to produce under sections 521(a)(3) and (a)(4) are required records under the *Grosso* test.

### *What is the purpose of Bankruptcy Code sections 521(a)(3) and 521(a)(4)?*

In determining whether the first factor supports application of the required records doctrine, a court must consider whether the relevant "legislation is not 'directed at the public at large' and concerns 'an area permeated with criminal statutes.'" *Grand Jury 2013*, 741 F.3d at 347 (citing *Albertson v. Subversive Activities Control Bd.*, 382 U.S. 70, 79 (1965)); *see Marchetti v. United States*, 390 U.S. 39, 57 (1968); *Haynes v. United States*, 390 U.S. 85, 99 (1968).  A court must make this determination as to the specific statutory sections at issue, rather than in reference to the entire surrounding statutory context.  *Grand Jury 2013*, 741 F.3d at 348 (citing *California v. Byers*, 402 U.S. 424, 430 (1971)).

Section 521 of the Bankruptcy Code is titled "Debtor's duties."  Sections 521(a)(3) and 521(a)(4) provide, respectively, that, where a bankruptcy trustee is serving in the case, as here, a debtor must cooperate with the trustee in the performance of the trustee's duties and must surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate.

Section 109 of the Bankruptcy Code allows individuals or entities to file for bankruptcy under Chapters 7, 11, 11 Subchapter V, 12, or 13.  In proceedings under Chapters 7, 12, and 13

as well as Chapter 11 Subchapter V, a bankruptcy trustee is automatically appointed upon the commencement of the case. 11 U.S.C. §§ 701, 702, 1183, 1202, 1302. Chapter 7 and Chapter 13 cases are the most common among the general public and always involve a bankruptcy trustee to whom the debtor owes obligations under sections 521(a)(3) and (a)(4).

While in a Chapter 11 case the appointment of a bankruptcy trustee is an extraordinary remedy, *see* 11 U.S.C. § 1112, the effect of this extraordinary relief is that a dispossessed Chapter 11 debtor has the same obligations under sections 521(a)(3) and 521(a)(4) as a Chapter 7 or Chapter 13 debtor. By operation of law, upon filing a Chapter 11 case a debtor is automatically deemed to be a debtor-in-possession and assumes the role of a bankruptcy trustee. 11 U.S.C. § 1107(a). However, a debtor in a Chapter 11 case may be 'dispossessed' of the estate through appointment of a bankruptcy trustee "for cause," provided it is in the best interest of the creditors and the estate. 11 U.S.C. § 1112(b)(1).

Chapter 11 is distinct because it is designed for debtors with complex business interests, assets, and liabilities, such as large corporations and high net worth individuals. *See* H.R. Rep. No. 95-595, at 220 (1977). As such, Chapter 11 is guided by three basic presumptions: (i) debtors with substantial business interests and operations have more value as a continuing economic entity than divided up and liquidated, (ii) debtors with complex financial affairs, assets, and liabilities are better equipped than an appointed trustee to manage their own affairs for the benefit of creditors, and (iii) allowing debtors with substantial business interests and operations to reorganize preserves the interests of debtors, owners, employees, etc. in addition to the interests of creditors. *See id.* Ultimately, however, Chapter 11 is properly used wherever its specific provisions maximize the distribution to creditors. *See Toibb v. Radloff*, 501 U.S. 157, 163–64 (1991). Many of the enumerated examples of "cause" to appoint a bankruptcy trustee –

or dismiss the case or convert the case to a proceeding under Chapter 7 – involve the rebuttal of

the presumptions listed above or the debtor-in-possession's failure to comply with its obligations

to manage the estate for the benefit of creditors.  11 U.S.C. § 1112(b)(4); *see* 7 COLLIER ON

BANKRUPTCY ¶¶ 1112.04[6][b]–[k] (16th ed. 2023).

       When one is appointed, the bankruptcy trustee is the representative of the debtor's estate.

11 U.S.C. § 323.  The purpose of sections 521(a)(3) and (a)(4) is to enable the bankruptcy trustee

to administer the debtor's bankruptcy estate in accordance with the bankruptcy trustee's duties.

*See* 11 U.S.C. §§ 704, 1106, 1116, 1183, 1202, 1302; 4 COLLIER ON BANKRUPTCY ¶¶ 521.15[5],

521.16.  The administration of the bankruptcy estate requires the debtor's disclosure, surrender,

and cooperation with the trustee because a case in bankruptcy is an all-encompassing action

intended to equitably and finally resolve, adjust, or reorganize myriad debtor-creditor

relationships.  *See, e.g.*, 11 U.S.C. §§ 704(a)(5) ("The trustee shall . . . examine proofs of claims

and object to the allowance of any claim that is improper . . . ."), 704(a)(7) ("The trustee shall . . .

furnish such information concerning the estate and the estate's administration as is requested by

a party in interest . . ."), 704(a)(8) ("The trustee shall . . . file with the court, with the United

States trustee, and with any governmental unit charged with responsibility for collection or

determination of any tax arising out of such operations, periodic reports and summaries of the

operation of such business . . . ."), 1106(a)(3) ("A trustee shall . . . investigate the acts, conduct,

assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and

the desirability of the continuance of such business, and other matters relevant to the case or to

the formulation of a plan . . . ."); 7 COLLIER ON BANKRUPTCY ¶ 1116.01 ("The trustee's

investigation and reporting duties provide a mechanism for full disclosure of the debtor's state of

affairs so as to enable parties in interest to protect their rights and obtain the successful

reorganization of the debtor.").

A debtor's failure to fulfill its obligations to (i) cooperate with the trustee, (ii) disclose

financial affairs, assets, and liabilities, and (iii) surrender property of the bankruptcy estate and

records relating thereto severely impedes a trustee's ability to administer the estate.  *See United

States v. Stone*, 282 F. 547, 553 (2d Cir. 1960) ("[T]he very purpose of the statement of affairs is

to give dependable information without need of going further.") (upholding conviction in

criminal action prosecuting debtor for bankruptcy crimes related to failure to properly disclose

loan information on statement of financial affairs in proceeding under former Bankruptcy Act).

This failure causes expense and delay to the estate's creditors which are cognizable injuries.  *See

Andrews v. McCarron (In re Vincent Andrews Mgmt. Corp.)*, 414 B.R. 1, 7 (D. Conn. 2009).

Furthermore, the broad and extraordinary nature of much of the relief provided by the

Bankruptcy Code is premised upon proper disclosure and notice.  *See, e.g.*, 11 U.S.C. §

1125(a)(1) (defining adequate information for the disclosure statement that must be served

before plan solicitation may commence); *Till v. SCS Credit Corp.*, 541 U.S. 465, 475 n. 12

(2004) (finding that the "Bankruptcy Code's extensive disclosure requirements reduce the risk

that the debtor has significant undisclosed obligations," undergirding a court's "authority to

modify the number, timing, or amount of the installment payments from those set forth in the

debtor's original contract"); *In re Motors Liquidation Co.*, 829 F.3d 135, 158–61 (2d Cir. 2016)

(holding that failure to properly serve undisclosed known creditors with a sale motion rendered a

sale order unenforceable against the creditors).  A trustee, as the bankruptcy estate's

representative, is the party tasked with; in the first instance, seeking much of this relief for: (i)

the benefit of the estate, *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352

(1985); and (ii) the debtor who may receive, upon exiting the gauntlet, a "fresh start," *see Grogan v. Garner*, 498 U.S. 279, 286 (1991).

The Court concludes that sections 521(a)(3) and (a)(4) are targeted at the general public. Bankruptcy trustees are automatically appointed in a wide range of cases. The duty to disclose and surrender property and records to the trustee is essential to the fundamental and required administrative duties of the trustee and the exercise of the trustee's powers under the bankruptcy code.

The remaining issue is whether sections 521(a)(3) and (a)(4) are concerned with an area "permeated with criminal statutes." *Albertson*, 382 U.S. at 79. Title 18, sections 151 *et sequitur*, 1519, and 3284 of the United States Code criminalize certain actions taken in relation to proceedings under the Bankruptcy Code. Among these "bankruptcy crimes" are several related to the concealment of assets of the bankruptcy estate to protect them from distribution to the estate's creditors. The issue before the Court is not, however, whether certain failures to fulfill a debtor's duty under sections 521(a)(3) and (4) leave a debtor vulnerable to criminal prosecution, but rather whether sections 521(a)(3) and (4) are "directed at a 'selective group inherently suspect of criminal activities.'" *Marchetti*, 390 U.S. at 57.

In *Grosso* and *Marchetti*, the problem was not the criminal laws enforcing the statutory requirement to file tax returns, which are akin to the bankruptcy crimes enumerated above. *Grosso*, 390 U.S. at 64–65; *see Marchetti*, 390 U.S. at 57. Rather, in both cases the Supreme Court determined that the requirement to file a federal wagering tax return squarely targeted conduct already criminalized by state law, namely gambling. *Grosso*, 390 U.S. at 64–65; *Marchetti*, 390 U.S. at 57. At issue in *Albertson* was the requirement that members of the Communist Party of America personally register with the Subversive Activities Control Board.

382 U.S. at 77–78. Affiliation with the Communist Party was criminalized at the time. *Id.* In *Haynes*, the issue was a requirement that persons who obtained firearms *other than in the normal course* – which the Supreme Court observed would be mostly persons acquiring firearms illegally – register their firearms. 390 U.S. at 95–97.

The facts before the Supreme Court in *Grosso*, *Marchetti*, *Albertson*, and *Haynes* are each dissimilar to the instant facts. First, all of those cases involved the creation of a new record rather than the production of existing documents and records. *Haynes*, 390 U.S. at 95–97; *Grosso*, 390 U.S. at 64–65; *Marchetti*, 390 U.S. at 57; *Albertson*, 382 U.S. at 77–78. More importantly, the routine administration of a bankruptcy case does not as a matter of course implicate criminal activity. The administration of the estate is intended to be separate from issues of criminal liability. *Compare* 11 U.S.C. §§ 323 (the trustee is the party to sue and be sued on behalf of the estate with regards to civil litigation), 362(a)(1) (generally, civil actions against the debtor or the estate are stayed by the filing of a voluntary bankruptcy petition) *with* 11 U.S.C. § 362(b)(1) (criminal actions against the debtor are not stayed by the commencement of a case under Title 11). Debtors are generally not exposed to criminal liability for the disclosures they are required to make in their bankruptcy cases. The intent of disclosure requirements in bankruptcy proceedings is to lay bare *civil liability* to allow for the equitable and final resolution of all claims against the debtor. *See Byers*, 402 U.S. at 430–31 (finding that, while the California Vehicle Code involved some criminal statutes, "it was not intended to facilitate criminal convictions but to promote the satisfaction of civil liabilities arising from automobile accidents" and holding that the required records exception applied).

Therefore, the purpose of sections 521(a)(3) and (a)(4) is "essentially regulatory," which supports the applicability of the required records exception to the production of documents by

the Individual Debtor compelled by the Order Compelling Production.  *Grosso*, 390 U.S. at 67–68.

### *Are the purported required records customarily kept?*

As to the second factor, whether the purportedly required records are customarily kept, the Trustee is seeking, *e.g.*, financial and banking records, money transfer records, records relating to the Individual Debtor's business interests, etc.  As the Second Circuit observed with respect to foreign bank account information, common sense dictates that persons and entities retain basic financial transaction and account information in order to manage their affairs and access their accounts.  *Grand Jury 2013*, 741 F.3d at 350 (citing *M.H. v. United States (In re Grand Jury Investigation)*, 648 F.3d 1067, 1076 (9th Cir. 2011)).  The Court finds this is especially true regarding individuals and entities with complex financial affairs, assets, and liabilities.  Pointedly, the Second Circuit went on to say that although "some individuals engaged in wrongdoing are advised not to keep even this basic information[,] . . . [w]e decline to look at the custom of only the miscreants . . .."  *Grand Jury 2013*, 741 F.3d at 350.  Therefore, the Court concludes that the records required by sections 521(a)(3) and (a)(4) are "customarily kept."  *Grosso*, 390 U.S. at 67–68.

### *Did the purported required records assume 'public aspects?'*

As to the third factor, whether the purportedly required records have assumed 'public aspects,' the question is whether the overall regulatory context of section 521(a)(3) and (a)(4) – requires the particular records be kept.  *Grand Jury 2013*, 741 F.3d at 351–52.

The Bankruptcy Code requires disclosure both at the outset of a case and as a case proceeds.  Section 521(a)(1) requires any debtor – including the Individual Debtor – to file a list of creditors, statement of financial affairs, and schedules of, *inter alia*, the debtor's assets,

liabilities, income, and expenses.  *See* 4 COLLIER ON BANKRUPTCY ¶¶ 521.06[3][a] ("The

schedule is a statement of *all* property, both *real* and personal, within the broad definition of

property of the estate under section 541(a), which includes 'all legal or equitable interests of the

debtor in property as of the commencement of the case.'"), 521.06[3][b] ("The scheduling of

interests in property, both real and personal, is a very important duty."), 521.09 ("The purpose of

the requirement of filing a statement of financial affairs is to furnish the trustee and creditors

with detailed information about the debtor's financial condition, thereby saving the expense and

long and protracted examination for the purpose of soliciting information.").  Section 341

requires any debtor to submit to an examination conducted by a trustee, in which its creditors

may participate.  *See* 3 COLLIER ON BANKRUPTCY ¶ 341.01.

Regarding Chapter 11 in particular, section 1107 provides that while a Chapter 11 debtor

is a debtor-in-possession, such a debtor, as a fiduciary of the bankruptcy estate, would have

many of the same disclosure obligations of a trustee discussed above, including reporting

requirements.  *See* 7 COLLIER ON BANKRUPTCY ¶¶ 1107.02[3]–[4].  A debtor's failure to properly

disclose financial affairs, assets, and liabilities in a Disclosure Statement required to be filed in

connection with a Chapter 11 Plan would prevent confirmation of that plan.  11 U.S.C. § 1125;

*see* 7 COLLIER ON BANKRUPTCY ¶¶ 1125.02 ("Disclosure is the pivotal concept in reorganization

practice under the Bankruptcy Code.") (citing H.R. Rep. No. 95-595, at 226–31 (1977)),

1125.02[2].  Failures to make appropriate disclosures can and do constitute cause to convert a

Chapter 11 reorganization case to a Chapter 7 liquidation case, dismiss the Chapter 11

bankruptcy case, or appoint a Chapter 11 trustee.  11 U.S.C. § 1112(b)(4)(f); *see* 7 COLLIER ON

BANKRUPTCY ¶ 1112.04[6][f].

Much like the mother in *Bouknight*, the Individual Debtor assumed these obligations upon voluntarily commencing his Chapter 11 case, submitting himself to the *in personam* jurisdiction of this Court, and submitting all of his legal and equitable interests in property – "wherever located and by whomever held" – to the *in rem* jurisdiction of this Court. 11 U.S.C. § 541(a)(1); *Bouknight*, 493 U.S. at 559 ("Bouknight submitted to the routine operation of the regulatory system and agreed to hold Maurice in a manner consonant with the State's regulatory interests and subject to inspection by BCDSS."). Moreover, as in *Bouknight*, where the mother was required to produce her child to the Baltimore City Department of Social Services upon cause shown, the Bankruptcy Code requires the Individual Debtor to produce documents and records relating to property of the estate to the Trustee, because cause was shown to appoint a trustee. 11 U.S.C. §§ 521(a)(4), 1112; *Bouknight*, 493 U.S. at 555–56. Because the Individual Debtor voluntarily filed his Chapter 11 case and became a debtor-in-possession, he assumed a bankruptcy trustee's duties to manage the Estate for the benefit of its creditors. 11 U.S.C. § 1107(a). The Individual Debtor was a custodian of the Estate and its books and records while a debtor-in-possession. *See Bouknight*, 493 U.S. at 555–56. Although his status as a debtor-in-possession ended upon the appointment of the Trustee, his resultant obligation to provide information to the Trustee did not.

The Court concludes that the records required to be produced by the Individual Debtor pursuant to sections 521(a)(3) and (a)(4) have assumed "public aspects" because the Individual Debtor's case is a voluntary Chapter 11 case and because the specific facts and circumstances of these Chapter 11 cases and related adversary proceedings support this conclusion. *See Bouknight*, 493 U.S. at 555–56; *Grosso*, 390 U.S. at 67–68.

### The 'required records' exception applies

All three factors of the *Grosso* test support the applicability of the required records exception to the Fifth Amendment right against self-incrimination under the specific facts and circumstances before the Court. 390 U.S. at 67–68; *see Bouknight*, 493 U.S. at 555–56; *Grand Jury 2013*, 741 F.3d at 345; *Ross*, 156 B.R. at 279–81; *In re Fairbanks*, 135 B.R. 717, 730–33 (Bankr. D.N.H. 1991).

Application of the required records exception is also supported by Supreme Court precedent relating to the former Bankruptcy Act. *In re Harris*, 221 U.S. 274 (1911) (holding Fifth Amendment did not protect a debtor from producing its books and records to the receiver in bankruptcy). *Bouknight*, in upholding the required records exception post-*Fisher*, cited *Harris* approvingly as an example of the required records doctrine, confirming the continuing vitality of *Harris* today despite the evolution of Fifth Amendment jurisprudence since *Harris* was decided. *Bouknight*, 439 U.S. at 556–57; *see Fisher*, 425 U.S. 411–13 (discussing *Harris* without calling into question its holding); *see also Cohen v. de la Cruz*, 523 U.S. 213, 221 (1998) (holding that precedent under the Bankruptcy Act is not displaced unless there is a clear indication that Congress intended to do so); *Ross*, 156 B.R. at 279; 3 COLLIER ON BANKRUPTCY ¶ 344.03[4] ("[I]t is doubtful that a debtor, as opposed to other witnesses, may successfully refuse to turn over the property, books and records that every debtor under the Code is required to surrender to the trustee on the basis that this 'act of production' might itself tend to incriminate."); *but see Butcher v. Bailey*, 753 F.2d 465, 468 (6th Cir. 1985) (holding, pre-*Bouknight* and in an *involuntary* Chapter 7 case rather than a voluntary Chapter 11 case, that *Harris* was no longer good law after *Fisher* and section 521 did not require the production of documents to which the act of production doctrine applied).

32

The Individual Debtor objects that, nevertheless, *Harris* and the required records exception do not reach Rule 2004 subpoenas under *McCarthy v. Arndstein*.  266 U.S. 34 (1924).  However, the Supreme Court in *Arndstein* distinguished its prior opinion in *Harris* on the basis that *Harris* concerned the surrender of documents and records and *Arndstein* concerned the issue of compelled *testimony*.  266 U.S. at 41–42.  The Trustee is not objecting to the Individual Debtor answering interrogatories or questions during deposition or in-court testimony by invoking the Fifth Amendment.  Instead, the Trustee is objecting to the Individual Debtor invoking the Fifth Amendment in response to requests for the production of documents and records.  Therefore, *Arndstein* is inapposite.

The Court concludes that, both under an analysis of the *Grosso* factors and by application of Supreme Court precedent under the Bankruptcy Act, the required records exception applies.

### iii.  The Individual Debtor did not comply with the Order Compelling Production

For all of the above reasons, the Court concludes that (i) it is not impossible for the Individual Debtor to comply with the Order Compelling Production and (ii) under the required records exception, the Individual Debtor may not properly invoke his Fifth Amendment right against self-incrimination in response to the Order Compelling Production.  Therefore, the Trustee has established by clear and convincing evidence that the Individual Debtor has not complied with the Order Compelling Production.

### 3.  Did the Individual Debtor diligently attempt to comply with the Order Compelling Production?

The Trustee must also establish that the Individual Debtor did not diligently attempt to comply in a reasonable manner with the Order Compelling Production.  *King*, 65 F.3d at 1058.  The Trustee argues that the Individual Debtor has made no attempt to comply with the Order Compelling Production.  In response, the Individual Debtor argues that there is a fair ground of

doubt as to whether the Individual Debtor could properly assert his Fifth Amendment right against self-incrimination and that the Declaration and Supplemental Declaration represent his good faith efforts to comply with the Order Compelling Production.

The Individual Debtor's operative mistake is a mistake of law – not fact.  Namely, the Individual Debtor has mistakenly concluded that the required records exception to the act of production doctrine does not apply and that he may invoke the Fifth Amendment in response to the Order Compelling Production.  For the reasons stated above, whether producing each document or record would factually be testimonial and incriminating does not affect the outcome.

Generally, absent a requirement of willfulness or intention, mistake of law is not a defense to civil liability.  *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 583–85 (2010).  As noted above, "[t]he absence of wilfulness [sic] does not relieve from civil contempt."  *McComb*, 336 U.S. at 191.  Therefore, the Court concludes that the Individual Debtor's mistake of law is not a defense to civil contempt.  *Cf. Yellin v. United States*, 374 U.S. 109, 123 (1963) (holding mistake of law was no defense to contempt of Congress); *United States v. Remini*, 967 U.S. 754, 758 (2d Cir. 1992) (holding mistake of law was no defense to criminal contempt of court).  This conclusion accords with the Supreme Court's observation in *Taggert* that "a party's good faith, *even where it does not bar civil contempt*, may help to determine an appropriate sanction."  139 S. Ct. at 1802 (emphasis added).  Therefore, the Trustee has established that the Individual Debtor did not diligently attempt to comply with the Order Compelling Production.

### 4. Did the Individual Debtor have notice of the Order Compelling Production?

The final element of civil contempt is notice of the relevant order. *Gravel*, 6 F.4th at 512. The Declaration admits the Individual Debtor had notice of the Order Compelling Production. (ECF No. 1444 Ex. A.) This element of civil contempt has been established.

### 5. The Individual Debtor is in civil contempt of court

All four elements having been established, the Contempt Motion is granted. The Court holds the Individual Debtor in civil contempt of court for failure to comply with the Order Compelling Production. As set forth in the decretal paragraphs below, the Individual Debtor will be afforded the opportunity to purge himself of contempt. In light of the serious nature of the circumstances facing the Individual Debtor and the good faith shown in answering the Trustee's two-hundred two (202) questions in his Supplemental Declaration, the Court will provide the Individual Debtor with ample time to purge himself of contempt. *Taggert*, 139 S. Ct. at 1802. However, if the Individual Debtor does not purge himself of contempt, the Trustee may request appropriate sanctions.

The Individual Debtor's counsel are reminded that "[c]ounsel have an obligation, as officers of the court, to assist in the discovery process by making diligent, good-faith responses to legitimate discovery requests." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1486 (5th Cir. 1990). To that end, the Individual Debtor's counsel are further reminded that this Court has already found that "counsel to the [Individual Debtor and others] has not established that they were sufficiently diligent under the circumstances." (Order Compelling Production ¶ 9.) The Individual Debtor was ordered to comply with the Order Compelling Production at or before 5:00 p.m. on January 31, 2023, but did not do so. "[N]either

[counsel] nor [a party has] a unilateral right to decide whether or when to comply with discovery demands." *535 Broadway Assocs. v. Com. Corp. of Am.*, 159 B.R. 403, 405 (S.D.N.Y. 1993).

The Individual Debtor and his counsel are to take reasonable and diligent steps, whether or not this Court has articulated those steps directly, to bring the Individual Debtor into compliance with the Order Compelling Production. As the Individual Debtor's counsel has stated on the record, reasonable steps include filing a motion in the Criminal Court seeking to allow production to the Trustee of documents and records produced to the Individual Debtor by the prosecution which are responsive to the Rule 2004 subpoena, subject to the Trustee abiding by whatever conditions the Criminal Court may impose. In seeking to purge himself of contempt, the Individual Debtor would be acting under compulsion of the Order Compelling Production and, therefore, not waiving any Fifth Amendment right by moving in the Criminal Court to produce to the Trustee. *See Bouknight*, 493 U.S. at 561–62. In considering any sanctions motion, the Court will consider the diligence with which the Individual Debtor seeks relief in the Criminal Court.

### B.  Should the Order Compelling Production be stayed?

Having ruled on the Contempt Motion, the Court turns to the Stay Motion. The Individual Debtor argues that the Order Compelling Production must be stayed pending the end of the Criminal Action in order to preserve the Individual Debtor's Fifth Amendment right against self-incrimination. In response, the Trustee argues that there is no basis to impose a stay of the Order Compelling Production and that such a stay would substantially injure the Trustee.

The Court first notes that while the Stay Motion was filed by the Individual Debtor and seems to only concern the Individual Debtor, the attached proposed order would stay the Order Compelling Production entirely, including the decretal paragraphs relevant to the Individual

Debtor's daughter, Ms. Mei Guo, and the Individual Debtor's adjudged corporate *alter ego*, HK International Funds Investments (USA) Limited, LLC.  To the extent that the Stay Motion seeks relief as to these additional parties, the Court denies the Stay Motion.

Turning to the merits, the Court must determine whether to stay the Order Compelling Production within its sound discretion.  *Kashi v. Grastos*, 790 F.2d 1050, 1057 (2d Cir. 1986).  There is no strict requirement that a court stay civil proceedings due to pending criminal proceedings.  *United States v. Kordel*, 397 U.S. 1 (1970); *Kashi*, 790 F.2d at 1057.  In considering whether to stay civil proceedings in light of criminal proceedings, courts consider, *inter alia*:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995).

The Court first considers the private interests of the Estate in proceeding expeditiously weighed against the prejudice to the Estate caused by delay.  There is substantial prejudice to the Estate and the Individual Debtor's creditors in staying the Order Compelling Production.  As discussed above, a debtor's disclosure of his financial affairs, assets, and liabilities is fundamental in bankruptcy proceedings.  The Estate continues to incur enormous expense and delay because the Individual Debtor has not cooperated with and has instead obstructed the Trustee's investigation.  Pursuant to section 521, the Trustee should have had all documents and records relating to the Individual Debtor's financial affairs, assets, liabilities, businesses, etc. immediately following his appointment more than a year ago.  Instead, the Trustee has had to

identify other appropriate subpoena targets, issue countless subpoenas, and engage in ceaseless

motion practice.  While the Trustee's efforts have substantially benefitted the Estate, the Estate

has also borne a heavy cost on account of these efforts.

Moreover, these heavy costs are incurred in the context of a bankruptcy proceeding.  It is

likely that there already is not enough money to satisfy the claims of creditors, and creditors are

losing the time value of their ultimate recovery due to the ongoing, incomplete investigation into

the Individual Debtor's affairs.  11 U.S.C. §§ 726(a)(5), 1129(a)(7)(A)(ii).  Furthermore,

Congress has determined that the ultimate goal of a Chapter 11 case – confirmation of a plan –

must occur within a specified timeframe.  *See* 11 U.S.C. §§ 1106(a)(5), 1121(a), 1121(d).  Delay

in confirmation of a plan, which must provide for the ultimate realization of creditor's claims,

results in substantial injury to creditors and the Estate.  *See Andrews*, 414 B.R. at 7.  The Trustee

should not be forced to operate without the Individual Debtor's required cooperation and

disclosures.  *See Stone*, 282 F.2d at 553.

The Court next considers the private interests and burden on the Individual Debtor.

There is no cognizable interest in delaying or obstructing these lawful bankruptcy proceedings.

There is also no cognizable burden on the Individual Debtor to comply with the Order

Compelling Production.  For the reasons stated above, he cannot properly invoke his Fifth

Amendment right against self-incrimination.  Moreover, in upholding the required records

exception post-*Fisher*, the Supreme Court in *Bouknight* noted that

> The State's regulatory requirement in the usual case may neither compel incriminating
> testimony nor aid a criminal prosecution, but the Fifth Amendment protections are not
> thereby necessarily unavailable to the person who complies with the regulatory
> requirement after invoking the privilege and subsequently faces prosecution.

493 U.S. at 561–62; *but see Johnson v. United States*, 228 U.S. 457 (1913) (holding, pre-*Fisher*,

that books and records produced under *Harris* could be used in a criminal proceeding).

38

Next the Court considers the status of the pending criminal inquiries and the interest of the Criminal Court.  There are two pending criminal inquiries to consider: the Criminal Action and the alleged investigation into bankruptcy crimes.  The Individual Debtor has been indicted in the Criminal Action.  There has been no evidence submitted to the Court that he has been indicted regarding any investigation into bankruptcy crimes.  These Chapter 11 cases and related adversary proceedings do overlap with the Criminal Action –  (a) many of the Individual Debtor's creditors are also his alleged victims in the Criminal Action, (b) some of the Individual Debtor's purported assets were alleged to have been bought with proceeds of the fraud alleged in the Criminal Action, and (c) some of the Individual Debtor's purported affiliates and corporate *alter egos* are alleged to be involved in the fraud alleged in the Criminal Action – but at the same time, there are incongruities – (d) there are creditors in these Chapter 11 cases that are not alleged fraud victims, (e) there are purported assets of the Estate that were purchased prior to the alleged fraud, and (f) there are purported affiliates and *alter egos* of the Individual Debtor *not* alleged to be involved in the fraud.  However, any issue implicated by any investigation into bankruptcy crimes are directly related to these Chapter 11 cases.

The Court concludes this Order does not substantially interfere with the Criminal Court's interest in the orderly administration of the Criminal Action.  The Individual Debtor raises the specter that requiring the Individual Debtor to produce documents to the Trustee would damage the prosecution's case against him and cause litigation about evidence in the Criminal Court. This argument is unpersuasive.  The Individual Debtor producing documents and records under compulsion in these proceedings does not change the reality that the prosecution apparently already possesses voluminous evidence.  While, as the Individual Debtor argues, the prosecution *may* not be allowed to use the Individual Debtor's production to the Trustee as evidence of the

Individual Debtor's control over or the authenticity of documents and records already in the prosecution's possession, the Individual Debtor's argument describes the *status quo*. Moreover, the Criminal Court will review and determine any motion to produce to the Trustee documents and records from the prosecution's production to the Individual Debtor.

Regarding any investigation into bankruptcy crimes, because (a) there is no evidence that the Individual Debtor has been indicted and (b) there is no evidence that there are proceedings in relation to it in any court, the Court concludes that the interests of any such investigation should be given less weight. As stated above, the Bankruptcy Code does not exist for the purpose of creating bankruptcy crimes. It exists for the purpose of equitably and finally resolving, adjusting, and reorganizing the assets, liabilities, and financial affairs of a debtor for the benefit of all creditors and, ultimately, the debtor itself. It is not proper to hobble the Trustee's investigation into the affairs, assets, and liabilities of the Individual Debtor for the benefit of some speculative prosecution of the Individual Debtor for bankruptcy crimes. Bankruptcy crimes are an enforcement mechanism to promote proper disclosure in bankruptcy proceedings. If the Individual Debtor complies with the Order Compelling Production, he would remedy the harm the bankruptcy crimes exist to prevent, while also allowing these Chapter 11 cases to be administered appropriately.

Finally, the Court concludes that the public's interest in "the expeditious administration of bankruptcy cases is impaired by obstructing a trustee's efforts to collect, liquidate and distribute assets to creditors of the estate." *In re MGL Corp.*, 262 B.R. 324, 330 (Bankr. E.D. Pa. 2001). The public has an interest in a well-functioning bankruptcy system. It benefits the economy, debtors, and creditors. Obstruction of that process and efforts at dilation of that process are not in the public interest. Moreover, as set forth above, the production of documents

and records by the Individual Debtor in accordance with the Order Compelling Production does not offend the Fifth Amendment.

Having considered the equities, the Court concludes within its sound discretion that a stay of the Order Compelling Production is not warranted.  Accordingly, the Stay Motion is denied.

### C.  Should monetary sanctions enter for discovery abuse?

Finally, Fed. R. Civ. P. 37(b)(2)(C), made applicable by D. Conn. L. Civ. R. 37 and D. Conn. Bankr. L.R. 1001-1(a)(1) and 2004-1(a), provides

> (C) *Payment of Expenses.*  Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Under the specific facts and circumstances, the Court concludes an award of expenses is not warranted at this time.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court (A) holds the Individual Debtor in civil contempt of Court for failure to comply with the Order Compelling Production, and (B) denies the Stay Motion and declines in its sound discretion to stay the Order Compelling Production pending the resolution of the Criminal Action.  Accordingly, it is hereby

**ORDERED:**  The Court holds Mr. Ho Wan Kwok (the "Individual Debtor") in civil contempt of court for failure to comply with the Order Granting in Part Motion to Compel Compliance (the "Order Compelling Production"), ECF No. 1353; and it is further

**ORDERED:**  Should the Individual Debtor fail to purge himself of contempt by failing to bring himself into full compliance with the Order Compelling Production on or before September 29, 2023, Mr. Luc A. Despins, in his capacity as Chapter 11 trustee (the "Trustee")

for the bankruptcy estate (the "Estate") of the Individual Debtor, may move for whatever sanctions are appropriate; and it is further

      **ORDERED:**  The Motion for a Limited Stay of Order Granting in Part Motion to Compel Compliance (the "Stay Motion"), ECF No. 1649, is **DENIED**.

      Dated at Bridgeport, Connecticut this 26th day of July, 2023.

*Julie A. Manning*
United States Bankruptcy Judge
District of Connecticut