**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff,* | |
| v. | Case No. 1:23-CR-118-1 (AT) |
| HO WAN KWOK, | |
| *Defendant.* | |

**DEFENDANT'S REPLY IN RESPONSE TO THE TRUSTEE'S, UCC'S AND SHERRY'S OPPOSITION AND IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO STAY**

Sidhardha Kamaraju
Matthew S. Barkan
Daniel J. Pohlman
John M. Kilgard
Clare P. Tilton
PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100
skamaraju@pryorcashman.com
mbarkan@pryorcashman.com
dpohlman@pryorcashman.com
jkilgard@pryorcashman.com
ctilton@pryorcashman.com

*Attorneys for Defendant Ho Wan Kwok*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ...................................................................................................................... 3

    I.   This Court Has Jurisdiction to Decide the Stay Motion ................................. 3

    II.  The Court Should Stay the Bankruptcy Cases ............................................. 9

         A. The Issues in the Two Proceedings Plainly Overlap ............................. 10

         B. The Balance of Hardships Militates Strongly in Favor of a Stay .......... 12

CONCLUSION .................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Baldwin-United Corp.*,
    770 F.2d 328 (2d Cir. 1985)...............................................................................3, 8

*In re Baldwin-United Corp. Litig.*,
    765 F.2d 343 (2d Cir. 1985).............................................................................. *passim*

*Fed. Trade Comm'n v. 4 Star Resoultion, LLC*,
    No. 15-cv-112S, 2016 WL 4138229 (W.D.N.Y. Aug. 4, 2016)................................3

*In re Lehal Realty Assocs.*,
    101 F.3d 272 (2d Cir. 1996)..................................................................................7

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
    676 F.3d 83 (2d Cir. 2012)..........................................................................9, 10, 12

*Nat'l City Trading Corp. v. United States*,
    635 F.2d 1020 (2d Cir. 1980).................................................................................18

*Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*,
    754 F. Supp. 2d 616 (S.D.N.Y. 2010).....................................................................13

*S.E.C. v. Credit Bancorp, Ltd.*,
    93 F. Supp. 2d 475 (S.D.N.Y. 2000).................................................................. *passim*

*SEC v. Downe*,
    No. 92 CIV. 4092 (PKL), 1993 WL 22126 (S.D.N.Y. Jan. 26, 1993) ....................12

*SEC v. Oakford Corp.*,
    181 F.R.D. 269 (S.D.N.Y. 1998) ...........................................................................13

*SEC v. One or More Unknown Purchasers of Sec. of Glob. Indus., Ltd.*,
    No. 11 CIV. 6500 RA, 2012 WL 5505738 (S.D.N.Y. Nov. 9, 2012).......................12

*SEC v. Shkreli*,
    No. 15CV7175KAMRML, 2016 WL 1122029 (E.D.N.Y. Mar. 22, 2016) .................12

*Turkiye Halk Bankasi A.S. v. United States*,
    598 U.S. 264 (2023).........................................................................................4, 5

*United States v. Allen*,
    864 F.3d 63 (2d Cir. 2017)....................................................................................15

*United States v. FINRA*,
    607 F. Supp. 2d 391 (E.D.N.Y. 2009) ....................................................................3

*United States v. Gerace*,
    No. 21-2419, 2023 WL 3243477 (2d Cir. May 4, 2023) ....................................3, 4, 8

*United States v. LaRouche Campaign*,
    682 F. Supp. 627 (D. Mass. 1987) ........................................................................6

**Statutes**

18 U.S.C. § 3231 ............................................................................................................4

28 U.S.C. § 1334 ............................................................................................................4

28 U.S.C. § 1651 ................................................................................................. *passim*

28 U.S.C. § 1651(a) ........................................................................................................3

28 U.S.C. § 2283 ............................................................................................................5

Defendant Ho Wan Kwok respectfully submits this reply memorandum in further support of his Motion to Stay (Dkt. Nos. 129-31) (the "Stay Motion") and in response to the Oppositions of the Chapter 11 Trustee (Dkt. No. 145) (the "Trustee" and "Trustee Opp." respectively), the Official Committee of Unsecured Creditors (Dkt. No. 147) (the "UCC" and "UCC Opp." respectively) and the Sherry-Netherland, Inc. (Dkt. No. 149) ("Sherry" and the "Sherry Opp." respectively, and collectively with the Trustee the UCC and their oppositions, the "Opposing Parties" and the "Oppositions" respectively).[1]

## PRELIMINARY STATEMENT

The concessions in the Trustee's opposition prove his overreach in the Bankruptcy Cases.[2] Having now been called to account in this Court, where the impact of his actions is acutely felt, the Trustee now backtracks to try to convince the Court that its broader intervention is not necessary. Thus, the Trustee now states that he is no longer seeking the discovery called for in the Contempt Order, despite litigating for months over the issue in the Bankruptcy Court, costing the estate thousands of dollars' worth of attorneys' fees. The Trustee now also agrees that defense counsel should be able to freely access the Mahwah Facility before trial, despite telling the Bankruptcy Court that he was, with the assistance of the government, seeking to effectuate pre-conviction forfeiture of the property that would deprive Mr. Kwok of powerful *Brady* evidence. Finally, the Trustee now says that he will not share privileged information with the government, while taking the contradictory position in the Bankruptcy Cases that he can *waive* the protection over privileged communications for use in those proceedings. The Trustee's promises are hollow

---

[1] Mr. Kwok is responding separately to the letter opposition filed by the government (Dkt. No. 148).

[2] Capitalized terms not otherwise defined have the meanings ascribed to them in Mr. Kwok's Memorandum of Law in Support of his Motion to Stay (Dkt. No. 131) (the "Br.").

and insufficient.  They fail to alleviate the threat to Mr. Kwok's constitutional rights and the integrity of these proceedings.

In truth, a stay of the Bankruptcy Cases is necessary to adequately protect Mr. Kwok's rights.  The Opposing Parties claim otherwise, but their arguments are meritless.  First, the Opposing Parties argue that this Court is powerless to stay the Bankruptcy Cases.  That contention fails in the face of Second Circuit authority to the contrary cited by Mr. Kwok in his opening brief, and even authority relied on by the Opposing Parties.  Indeed, even the Bankruptcy Court has indicated that it will defer in the first instance to this Court.  Second, the Opposing Parties' contention that the Bankruptcy Cases and this proceeding do not overlap, or that the equities favor allowing the Bankruptcy Cases to proceed, ignores the law, the facts, and common sense.

Much of the Opposing Parties' arguments in opposition rest on the false premise that the Bankruptcy Cases and this proceeding do not overlap.  That contention is unconvincing, however, given that the Trustee is currently seeking to label, as Mr. Kwok's, a property that the government simultaneously claims is the basis of his guilt.  Indeed, if the two actions did not overlap, there would be no reason for the government to have shared evidence with the Trustee to help him seize the Mahwah Facility, or for the Trustee to seek all the discovery in this case for use in the Bankruptcy Cases.  Moreover, with respect to the equities, one need not diminish the bankruptcy process to recognize that any potential economic harm to creditors is easily outweighed by violations of Mr. Kwok's constitutional rights—indeed, that is why civil proceedings are routinely stayed in favor of related criminal proceedings (and why the government intervened to stay the pending SEC action).

Finally, the Trustee's concessions in response to Mr. Kwok's motion are an inadequate substitute for a stay, or even for Mr. Kwok's requested alternate relief.  For all these reasons, the Court should grant Mr. Kwok's motion and stay the Bankruptcy Cases.

## ARGUMENT

### I.     This Court Has Jurisdiction to Decide the Stay Motion

The Opposing Parties contend that this Court lacks the authority to stay the Bankruptcy Cases.  Their position fails under the black letter law that Mr. Kwok cited in his opening brief. (*See* Br. at 14-17.)  Courts in this Circuit have repeatedly confirmed that the All Writs Act permits a federal court to "enjoin actions in other jurisdictions that would undermine its 'ability to reach and resolve the merits of the federal suit before it.'"  *Fed. Trade Comm'n v. 4 Star Resoultion, LLC*, No. 15-cv-112S, 2016 WL 4138229, at *2 (W.D.N.Y. Aug. 4, 2016) (quoting *In re Baldwin-United Corp.*, 770 F.2d 328, 338-39 (2d Cir. 1985)).  This power extends to staying other court actions.  *See United States v. Gerace*, No. 21-2419, 2023 WL 3243477, at *2 (2d Cir. May 4, 2023) (affirming stay of state court action involving witnesses in federal criminal action); *S.E.C. v. Credit Bancorp, Ltd.*, 93 F. Supp. 2d 475 (S.D.N.Y. 2000) (staying competing federal action in Eastern District of Kentucky).  This Court's inherent authority to stay other actions is particularly germane when exercised in service of protecting the integrity of a criminal proceeding.  "A district court unquestionably has the authority under the All Writs Act, 28 U.S.C. § 1651(a), to enjoin proceedings that threaten to interfere with its jurisdiction over a pending criminal case."  *United States v. FINRA*, 607 F. Supp. 2d 391, 393 (E.D.N.Y. 2009).

Unable to contend with this case law, the Opposing Parties essentially argue that bankruptcy proceedings are somehow special, and thus uniquely beyond the scope of the Court's inherent authority.  Their arguments in support of this novel theory are meritless.

3

*First*, the Opposing Parties contend that because 28 U.S.C. § 1334 gives federal district courts the "original" and "exclusive" jurisdiction over bankruptcy cases, this Court lacks the authority to stay the Bankruptcy Cases.  (Trustee Opp. at 11-15; UCC Opp. at 3-7; Sherry Opp. at 1.)  This misapprehends both Section 1334 and the Court's authority.  Section 1334 is a grant of subject matter jurisdiction to federal district courts generally with respect to bankruptcy proceedings, the same way that 18 U.S.C. § 3231 is a grant of subject matter jurisdiction to federal district courts generally with respect to federal criminal proceedings.  *See Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 268-69 (2023) (discussing Section 3231's grant of subject matter jurisdiction to federal courts for offenses against laws of United States).  The Opposing Parties provide no support for their position that Section 1334 grants such absolute authority over all matters touching on a bankruptcy case so as to preclude this Court from protecting a criminal defendant's Constitutional rights.  Moreover, the government unquestionably has the authority to seize personal property that otherwise may be considered property of a bankruptcy estate (such as a criminal defendant's cellphones or documentary records) as well as to seek forfeiture of assets that may be the subject to overlapping claims in a bankruptcy proceeding (plainly illustrated here by the Settlement Agreement over the Mahwah Facility).

Further, the fact that another court has been granted subject matter jurisdiction over an action does not mean that this Court cannot issue a writ to protect *its* jurisdiction. Indeed, if the Opposing Parties were correct (and they are not), a federal court could not enjoin, for example, a state court proceeding involving state law claims, *but see Gerace*, 2023 WL 3243477, at *2 (staying state court defamation action), or another federal proceeding predicated on federal question or diversity jurisdiction, *but see Credit Bancorp, Ltd.*, 93 F. Supp. 2d at 475 (S.D.N.Y. 2000) (staying competing federal action).  This, however, is not the law.

4

*Second*, the Opposing Parties' claimed primacy of the Bankruptcy Cases is squarely at odds with the language of the All Writs Act and the Opposing Parties' own case law.  The All Writs Act, in clear and decisive language, permits federal district courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651.  The Act contains no carve-out to or limitations on this authority for bankruptcy proceedings.  *See Turkiye Halk Bankasi A.S.*, 598 U.S. at 269 ("We decline to graft an atextual limitation onto § 3231's broad jurisdictional grant over 'all offenses' simply because several unrelated provisions in the U.S. Code happen to expressly reference foreign states and instrumentalities.").  And Congress certainly knows how to limit this authority if it wished to do so—for example, it carved out injunctions against state law proceedings in the Anti-Injunction Act. *See* 28 U.S.C. § 2283 (federal courts may not stay state court proceedings "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect of effectuate its judgments").  This lack of an express carve-out is powerful evidence that the All Writs Act does not, as the Opposing Parties would have it, exclude bankruptcy proceedings.  *See Turkiye Halk Bankasi A.S.*, 598 U.S. at 274 ("If Halkbank were correct that the FSIA immunizes foreign states and their instrumentalities from criminal prosecution, the subject undoubtedly would have surfaced somewhere in the Act's text.").

Indeed, *In re Baldwin-United Corp. Litig.*, 765 F.2d 343 (2d Cir. 1985), one of the Opposing Parties' supposed cornerstone cases, makes unequivocally clear that the Court has the power to stay a bankruptcy.  In *Baldwin*, the question was which court—the bankruptcy court or the district court—should determine whether the bankruptcy automatic stay applied to a third-party complaint against the debtor filed in a different district court.  765 F.2d at 345.  Contrary to the Opposing Parties' position here, the Second Circuit in *Baldwin* confirmed that *both* courts had the

authority to make this determination, noting specifically that the district court "has power to issue all writs in aid of *its* jurisdiction." *Id.* at 348 (citing the All Writs Act) (emphasis in original). Thus under binding circuit precedent and the clear language of the All Writs Act, it is settled that this Court has authority to grant the requested stay.

*Third*, the Opposing Parties' other case law fails to support the dramatic encroachment on this Court's authority that they now urge. To support their argument that this Court lacks jurisdiction to protect Mr. Kwok's rights and stay the Bankruptcy Cases, the Opposing Parties rely heavily on *United States v. LaRouche Campaign*, 682 F. Supp. 627 (D. Mass. 1987) and *SEC v. Credit Bancorp, Ltd.*, 93 F. Supp. 2d 475 (S.D.N.Y. 2000). (*See* Trustee Opp. at 12-15.) Neither case is persuasive on this point.

In *LaRouche*, the district court in Massachusetts declined to stay a bankruptcy proceeding pending resolution of a criminal proceeding, adopting the view that "an order enjoining a civil proceeding before another district court in another jurisdiction, if not beyond the jurisdiction of this court, would be at least an inappropriate exercise of [the court's] authority." 682 F. Supp. at 628. But the judge in that case, which has never been subsequently cited, specifically stated that he was basing his decision on defendants' "fail[ure] to direct [him] to any authority supporting their contentions that [he] has such authority and should exercise it in this instance." *Id.* The *LaRouche* court also pointed out that the defendants had made "no showing" why a stay would be warranted. *Id.* at 629. Plainly, *LaRouche* is an inapposite outlier—an out-of-circuit case that does not address the All Writs Act or any of the cases from this Circuit which squarely grant a district court the authority to stay a bankruptcy case, including the Second Circuit's binding holding in *In re Baldwin*. Nor did *LaRouche* involve the grave interference that the Bankruptcy Cases pose to Mr. Kwok's constitutional rights and this criminal proceeding.

In *Credit Bancorp*, another case upon which the Opposing Parties heavily rely, a receiver in an enforcement action brought by the SEC in the Southern District of New York moved under the All Writs Act to stay a competing action in the Eastern District of Kentucky (just as Mr. Kwok asks this Court to stay a competing action in the Bankruptcy Court). 93 F. Supp. 2d at 475. The court granted the motion, finding that the Kentucky action would interfere with the court's exercise of its jurisdiction. *Id.* at 477-78. The Trustee's contention that the *Credit Bancorp* court's authority to stay the Kentucky action derived from its bankruptcy-like appointment of a receiver and creation of a receivership estate is incorrect. While the court considered this in its analysis, it made clear that its power to stay the Kentucky action derived from its "inherent power . . . [to] enjoin actions in other jurisdictions that would undermine its ability to reach and resolve the merits of the dispute before it." 93 F. Supp. 2d at 476 (internal quotation omitted). This Court has the same power to defend its jurisdiction.

*Fourth*, the Opposing Parties' reliance on the so-called *Barton* doctrine and purported general court practice is equally misplaced. (*See* Trustee Opp. at 13 n.21, 15 n.24.) The *Barton* doctrine prohibits suits against a bankruptcy trustee without leave of the trustee's appointing court. Mr. Kwok is not attempting to sue the trustee through the Stay Motion, and this doctrine is therefore inapplicable. *See In re Lehal Realty Assocs.*, 101 F.3d 272, 276 (2d Cir. 1996) (*Barton* doctrine protects trustees and receivers by "requiring leave of the appointing court before *a suit* may go forward in another court against the trustee" (emphasis added)). Moreover, the Opposing Parties contention that there is a "general (*i.e.*, not necessarily specific to bankruptcy) rule" that motions to stay litigation must be filed in the court where the litigation is pending fails for two reasons. Initially, it ignores that Mr. Kwok did request stays of the Contempt Order and the Rule 2004 discovery from the Bankruptcy Court but was rebuffed. (Br. at 8-9.) Equally importantly,

however, the Opposing Parties' "general . . . rule" is no such thing—if it were, then the All Writs Act would be a nullity and the numerous courts that enjoined other proceedings could not have done so.  *See, e.g., In re Baldwin United Corp.*, 770 F.2d at 338-89 (affirming order enjoining competing state court actions); *Gerace*, 2023 WL 3243477, at *2 (affirming stay of state court action); *Credit Bancorp, Ltd.*, 93 F. Supp. 2d at 475 (staying competing federal action in Eastern District of Kentucky).

Moreover, while the Opposing Parties chastise Mr. Kwok for purportedly trying to avoid the Bankruptcy Court, they ignore the Bankruptcy Court's own views on the matter.  In particular, prior to filing his opposition, the Trustee filed an "emergency" motion seeking to enjoin Mr. Kwok from proceeding with his Stay Motion and contending, as it does here, that the Bankruptcy Court had "exclusive jurisdiction over the administration of the [Bankruptcy Cases] and over property of the estate," that the Stay Motion violated the automatic stay, and that Mr. Kwok was required to first seek relief before the Bankruptcy Court before seeking relief from this Court.  (Kamaraju R. Decl.[3] Ex. 1 at 6-7.)

Not only did the Bankruptcy Court not oblige his request for an "expedited" adjudication, the Trustee, *at an unrelated hearing where Mr. Kwok's counsel was not present*, raised his "emergency" motion again, and stated that he was "duty bound to inquire about the status" of the motion given the Trustee's September 21 deadline to file his opposition in this Court, which the Trustee stated he "obviously . . . would want to avoid . . . ."  (Kamaraju R. Decl. Ex. 2 (Sept. 12, 2023 H'ring Tr.) 29:16-21.)  The Bankruptcy Court, however, noted that while the Trustee "may feel that [he] would rather have this court address the issue," the Bankruptcy Court was "going to

---

[3] References to the "Kamaraju R. Decl." refer to the accompanying Reply Declaration of Sidhardha Kamaraju dated October 5, 2023.

wait to see what the district court does. . . I don't know that the bankruptcy court has any authority, and I haven't been able to find any, that would allow a bankruptcy court to tell a party in a criminal proceeding that they can't seek some form of relief from the court in that criminal proceeding." (*Id.* 30:9-15.)  In response, the Trustee argued that "[the Stay Motion] is an attempt to control property of the estate" and raised that "the two-year statute of limitations is coming up in February." (*Id.* 32:5-13.)  The Bankruptcy Court was unmoved, simply noting "[w]ell, you're going to have to move to extend that statute of limitations."  (*Id.*)  In other words, contrary to the Opposing Parties' various contentions, the Bankruptcy Court has already made it crystal clear that it is within this Court's inherent authority and jurisdiction to address Mr. Kwok's arguments.

For all these reasons, Mr. Kwok respectfully submits that the Court should hold that it has the ability to protect its own proceedings and the grant My. Kwok's Stay Motion.

## II.     The Court Should Stay the Bankruptcy Cases

The Court not only has the authority to issue the requested stay, it should issue a stay here. Initially, the Trustee claims that Mr. Kwok ignores the stay factors set forth in *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 99 (2d Cir. 2012).  Far from it—Mr. Kwok not only addressed those factors in his opening brief, but also described how those factors were met in this case, and even aligned with the government's application of those same factors in its successful request to stay the related SEC proceeding.  (Br. at 25-28.)  While the government has curiously (and undoubtedly tactically) elected to stay silent with respect to Mr. Kwok's stay request, it is undeniable that Mr. Kwok's application of these factors mirrors the government's application, and it should be granted for the same reasons.  The Opposing Parties' arguments to the contrary do nothing to change that.

The Opposing Parties focus principally on two of the *Louis Vuitton* factors—the overlap between the two proceedings and the balance of the equities.[4]  Neither of these factors, however, support their position—indeed, they cut in exactly the opposite direction.

### A.     The Issues in the Two Proceedings Plainly Overlap

Much of the Opposing Parties' analysis of the *Louis Vuitton* factors rests on their absurd claim that "there is only limited overlap between the Trustee's efforts to identify and recover property of the estate and these criminal proceedings."  (Trustee Opp. at 18.)  That claim cannot withstand even the slightest scrutiny, particularly when measured against the Trustee's and the government's own statements and admitted cooperation.

For example, the Trustee claims that he is "acting solely to fulfill his fiduciary obligations to the bankruptcy estates and their creditors," and that to fulfill these obligations, he has to "demonstrat[e] that **certain companies nominally owned by the Debtor's family members or business associates are, in reality, *alter egos* of the Debtor and/or that their assets are equitably owned by the Debtor**."  (*Id.* at 19 (emphasis added).)  At the same time, the government alleges that as part of the schemes charged in the Indictment, Mr. Kwok and the other defendant operated "through a **series of complex fraudulent and fictitious businesses and investment opportunities that connected dozens of interrelated entities**."   (Indictment ¶ 1 (emphasis added).); and that as part of the schemes, the defendants, among other things, purchased property "**for [the Defendants'] and their families' benefit**" (*id.* ¶ 4 (emphasis added)), including a "50,000-square foot mansion in New Jersey" (the Mahwah Facility) (*id.*) and a "$37 million luxury yacht (*id.*).  Thus, the Trustee and the government both assert (incorrectly) and will seek to prove

---

[4] The fact that the Opposing Parties do not seriously contest the other *Louis Vuitton* factors shows that they weigh in favor of a stay.

(unsuccessfully) that certain property owned by others is, in reality, controlled by Mr. Kwok.  The overlap is obvious and plain.

Far from being hypothetical, the overlap was made very real by the Trustee and the government's transparent coordination with respect to the Mahwah Facility.  As the Mahwah Adversary Complaint and the Indictment make clear, both the Trustee and the government view the Mahwah Facility as central to their respective proceedings.  (*See* Br. at 9-12, 20-22.)  Indeed, the issue of the Mahwah Facility's ownership is so obviously central to both that the Trustee and the government felt compelled to enter into the Settlement Agreement to, in the Trustee's words, implement "the game plan here, based on other cases where the DOJ has sought and obtained forfeiture of assets . . . for the Chapter 11 Trustee to wear two hats, Chapter 11 Trustee and forfeiture receiver," so that "it all comes back to [the Bankruptcy Court] for distribution." (Kamaraju R. Decl. Ex. 3 (Aug. 29, 2023 H'ring Tr.) 24:10-15.)  Such coordination would make no sense if, as the Opposing Parties now self-servingly claim, the Bankruptcy Cases and this proceeding were unrelated.

The Trustee's claim that no overlap exists here appears even more non-sensical in light of the free flow of information between the Trustee and the government.  If the two proceedings were really so distinct, the Trustee would have no need to request, and the government to agree to provide, evidence from an FBI search to help the Trustee seize the Mahwah Facility.  Similarly, even though he now tries to run from it, the fact is that the Trustee—over the course of multiple hearings and rounds of briefing—consistently demanded that Mr. Kwok turn over the discovery from this case for use in the Bankruptcy Cases, even though doing so would violate Mr. Kwok's constitutional rights in this case, plainly demonstrating the overlap in the cases.  Given all this, it

is specious for the Opposing Parties to claim that there is only little overlap between the two proceedings.

Finally, the Trustee's contention that there is limited overlap between this case and the Bankruptcy Cases because they seek different relief is without merit. The *Louis Vuitton* analysis of overlap does not pertain to the identity of the relief sought, but rather the similarities between the issues to be litigated. *See Louis Vuitton*, 676 F.3d at 101 (noting that there was a clear overlap of issues between civil and criminal proceeding but affirming denial on other grounds). Indeed, the related SEC proceeding also sought monetary recovery, rather than criminal penalties, but that was no obstacle to staying that case under the *Louis Vuitton* factors. Indeed, such stays are routine when there are parallel SEC and criminal proceedings, despite the different relief sought. *See, e.g.*, *SEC v. Shkreli,* No. 15CV7175KAMRML, 2016 WL 1122029, at *1 (E.D.N.Y. Mar. 22, 2016); *SEC v. One or More Unknown Purchasers of Sec. of Glob. Indus., Ltd.*, No. 11 CIV. 6500 RA, 2012 WL 5505738, at *2 (S.D.N.Y. Nov. 9, 2012); *SEC v. Downe*, No. 92 CIV. 4092 (PKL), 1993 WL 22126, at *1 (S.D.N.Y. Jan. 26, 1993).

### B. The Balance of Hardships Militates Strongly in Favor of a Stay

It is precisely because of the deep and pervasive overlap between the Bankruptcy Cases and this proceeding that the Bankruptcy Cases present such a significant threat to Mr. Kwok's constitutional rights. The Opposing Parties claim that the equities cut against a stay because such a stay would "substantially delay . . . the resolution of thousands of claims" and would permit Mr. Kwok to dissipate assets. (Trustee Opp. at 19). Bankruptcy proceedings are certainly important, but, at bottom, they are about economic remuneration, like any civil proceeding.[5] As a result, to

---

[5] The Trustee attempts to smear Mr. Kwok by contending that one of his purported creditors is a victim of sexual assault at his hands. Mr. Kwok vehemently denies this allegation and stands ready to defend himself. But regardless, the gravamen of even this creditor's claim in the Bankruptcy Cases is financial.

the extent there is any prejudice to the creditors, it is one of delay that can ultimately be addressed through the payment of money, *i.e.*, is not irreparable.  *See, e.g.*, *Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616, 621 (S.D.N.Y. 2010) ("Monetary loss is insufficient" to establish irreparable harm.).  Indeed, even with respect to the Trustee's unfounded claim that Mr. Kwok could dissipate assets with the benefit of the stay, if the Trustee did ever locate such dissipation by Mr. Kwok (which he has not and will not), he has well-established remedies that allow him to set those transfers aside and recoup the property or money.

On the other hand, the prejudice to Mr. Kwok stemming from the impairment of his ability to defend himself fully and fairly against criminal charges is irreparable.  Those criminal charges carry the potential for decades of imprisonment, which is a harm that cannot be made whole by a wire transfer or check.[6]  *See SEC v. Oakford Corp.,* 181 F.R.D. 269, 270 (S.D.N.Y. 1998) (noting that "the effect of . . . parallel proceedings is to place the defendant in the jaws of a pincers").  That is why parallel regulatory proceedings—which themselves involve allegations of financial harms to victims and the potential for the dissipation of funds that would be used for victim recovery— are nevertheless regularly stayed in favor of parallel criminal proceedings, as the related SEC case was stayed here.

Indeed, it is the irreparable nature of the injury Mr. Kwok will suffer that differentiates this case from the Second Circuit's ultimate ruling in *In re Baldwin*, discussed *supra*, which is one of the cases on which the Opposing Parties heavily rely.  In *Baldwin*, a third-party plaintiff

---

[6] The Trustee additionally argues that he is at risk of the applicable statute of limitations lapsing. (Trustee Opp. at 21.)  This argument was heard and rejected by the Bankruptcy Court, which simply noted "you're going to have to move to extend that statute of limitations."  (Kamaraju R. Decl. Ex. 2 (Sept. 12, 2023 Tr.) 32:14-15.) Moreover, this argument ignores that the Trustee can pursue tolling agreements and may pursue other claims, such as state law claims, with longer limitations periods.

commenced an action against a debtor, and sought to restrain the debtor from invoking the bankruptcy stay in response to its litigation. *In re Baldwin*, 765 F.2d at 346. Thus, at issue in *Baldwin* were competing claims for monetary relief against the same entity, pending in both the district court and the bankruptcy court. *Id.* Here, Mr. Kwok's stay request is based on the threat to his constitutional right to defend himself and to secure evidence in support of that defense, which is of a different order of magnitude than whether a party can recover funds from a debtor outside of bankruptcy proceedings.

The Opposing Parties try to make much of *In re Baldwin's* discussion about the claimant's litigation tactics and their impact on the balance of equities there, and seek to inaccurately analogize those tactics to Mr. Kwok's motion practice. That strained analogy does not hold water. Mr. Kwok filed for bankruptcy in February 2022, more than a year before he was indicted. He then sought to protect his constitutional rights through the Bankruptcy Court, objecting to discovery on Fifth Amendment grounds, for example, and seeking limited stays from that court as appropriate. It was only after Mr. Kwok learned that *the government* was now working with the Trustee to prejudice his constitutional rights in this proceeding that Mr. Kwok turned to this Court—the one tasked with administering his criminal prosecution—for relief. Far from playing games, Mr. Kwok is simply trying to ensure that he gets the fair trial to which he is entitled.

Likely cognizant that the prejudice to creditors upon which the Opposing Parties rely is significantly outweighed by the threat to Mr. Kwok's constitutional rights, the Opposing Parties try to minimize those threats through other spurious arguments and illusory concessions. None of them support denying Mr. Kwok's request for a stay.

*First*, the Opposing Parties contend Mr. Kwok will not suffer any harm from the Contempt Order because the Trustee is foregoing discovery under that order and, in any event, Mr. Kwok

allegedly had a full and fair opportunity to litigate those claims before the Bankruptcy Court and lost.  As an initial matter, the Trustee claims that he is "not presently pursuing these documents" and that he will advise the Bankruptcy Court of the same.  (Trustee Opp. at 23 (emphasis removed).) Yet the Trustee did not communicate his abandonment of this claim to Mr. Kwok until he filed his opposition, and indeed, in the two weeks since he has filed that opposition, he has still not taken any step in the Bankruptcy Cases to withdraw his request for that discovery or alert the Bankruptcy Court to his about-face.  Moreover, even now, the Trustee says that he is not "*presently*" seeking this discovery, meaning that he is reserving the right to seek it in the future.  This sort of conditional and temporary promise by the Trustee—a promise upon which he has failed to act—provides no real protection of any kind to Mr. Kwok.  Thus, the irreparable harm he faces is still extant.

Regarding the Opposing Parties' contention that Mr. Kwok was never prejudiced by the Contempt Order because he had an opportunity to litigate the issue in the Bankruptcy Cases,[7] the Bankruptcy Court erred in holding that an archaic exception to the act of production privilege, which has never been applied in this manner and which would swallow up the privilege if applied in that manner, overcame Mr. Kwok's Fifth Amendment rights.  (*Id.* at 32.).  Of course, failure to protect a criminal defendant's Fifth Amendment rights certainly causes them prejudice.  *See United States v. Allen,* 864 F.3d 63, 98 (2d Cir. 2017) (reversing conviction and dismissing indictment on the basis of Fifth Amendment prejudice).

---

[7] Ironically, while the Trustee urges faithful adherence to this part of the Bankruptcy Court's ruling, he continues to urge that Mr. Kwok "would not be authenticating" documents by producing them, and that, as a result, his Fifth Amendment rights are not violated.  (Trustee Opp. at 23.)  The Trustee, however, had a "fair and full opportunity" to litigate that argument before the Bankruptcy Court, and lost when that court held that Mr. Kwok's production of the records would be an "implicit authentication" of them.  (Kwok Bankruptcy Case Dkt. No. 2035 at 16 (quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951)).)

Finally, while the Trustee asserts that Mr. Kwok's filing of the Stay Motion shows gamesmanship, it is the Trustee that is engaged in dubious tactics. The Trustee makes much of the purported economic harm to the creditors of the estate. But it was the Trustee who spent thousands of dollars litigating fiercely to obtain the discovery in this proceeding from Mr. Kwok, engaging in numerous rounds of briefing, and participating in at least three separate hearings on the matter, only to turn around and abandon his claim to it the minute his conduct was placed under this Court's microscope. Likewise, the same Trustee that now claims to control Mr. Kwok's legal privileges also threatened to report him to regulatory agencies unless Mr. Kwok agreed to pay more in settlement.[8] Given that conduct, there is every reason to believe that the Trustee, who wields considerable power over Mr. Kwok's privileges, will likely abuse that control again in the future, even to the abrogation of Mr. Kwok's Fifth Amendment rights.

*Second*, the Trustee asserts that Mr. Kwok's concerns about spoliation of evidence and loss of access to the Mahwah Facility are a "red herring" which was "concocted" purely for "strategic reasons" (Trustee Opp. at 26). The Trustee is right in a sense—Mr. Kwok's arguments with respect to the Mahwah Facility are part of a strategy. But the strategy that the Trustee has unearthed is an entirely appropriate one—to preserve important *Brady* evidence. (*See* Mr. Kwok's Reply to Government's Opposition Letter, filed contemporaneously herewith, at 5-6 (explaining why the Mahwah Facility constitutes *Brady* evidence).)

Moreover, the Trustee's claim that Mr. Kwok will not be prejudiced because the Trustee must still prevail in the Mahwah Proceeding is irrelevant. Initially, Mr. Kwok does not own the property and thus is not a party to that adversary proceeding. But even more so, it is apparent that the Trustee and the government's aim is to dispose of the Mahwah Facility *pre-conviction*. (*See,*

---

[8] In his opposition, the Trustee did not deny that he made these threats.

*e.g.*, Br. at 11 (quoting motion for approval of Settlement Agreement's statement that "[t]he Trustee and the government are aligned both on the need to obtain control of and liquidate the Debtor's assets as quickly and efficiently as possible.").)  Indeed, the Trustee noted expressly that the government's "tools [with respect to the Mahwah Facility] are sort of limited in the pre-conviction phase, and that "[g]iven that the trial is . . . not going to start until April . . . the DOJ and we were aware of what was going there and we're really concerned about this very valuable asset being left in limbo for lack of a better term."  (Kamaraju R. Decl. Ex. 3 (Aug. 29, 2023 H'ring Tr.) 20:17-22.)   In other words, the entire purpose of the Trustee and the government's coordination is to sidestep the limitations on the government's "pre-conviction" authority to "control and liquidate" the Mahwah Facility "as quickly and efficiently as possible[,]" *i.e.*, before the start of the April 2023 trial.  Hence, Mr. Kwok's prejudice concerns are valid and immediate. [9]

Finally, the concept that Mr. Kwok's counsel can continue to visit the Mahwah Facility only pursuant to an order from this Court is untenable and fraught, as explained in more detail in Mr. Kwok's reply to the government's opposition.  (*See* Mr. Kwok's Reply to Government's Opposition Letter at 8.)

*Third*, the Trustee contends that, because "the subpoenas do not seek privileged materials unrelated to the Investigation Topics," Mr. Kwok will not suffer any prejudice.  (Trustee Opp. at

---

[9] Further, the Trustee's claims that Mr. Kwok's concerns are "concocted" ignores the record to date.  The Indictment and the government's discovery focus on, among others, three pieces of property: the Sherry-Netherlands Residence, a Yacht, and the Mahwah Facility.  The first of those properties, the Sherry-Netherlands Residence, was seized by the Trustee and destroyed by a fire that broke out inexplicably during the FBI's search of the apartment.  The second, the Yacht, has been seized and sold by the Trustee.  Now, the Trustee and the government are coordinating to dispose of the Mahwah Facility pre-conviction.  Whether intentional or not, the fact is that evidence at the heart of the criminal charges in this case is being put outside of Mr. Kwok's reach, and effectively disappearing, at an alarming rate.

29.)  Again, the Trustee's argument is as glib as it is wrong.  As detailed above, the Trustee's "Investigation Topics" include areas that are at the heart of this prosecution, including, for example, who owns the Mahwah Facility.  And the Trustee's contention that he will "comply with the terms of the Privileges Order," (*id.* at 25), is of little solace, because that order only gives Mr. Kwok control as to "***unrelated***" criminal allegations (emphasis supplied by the Trustee).  (*Id.*)  Thus, the Trustee may seek to waive privilege over communications that could be of great interest to the government, even though they should be shielded from discovery.

As a result, if the Trustee's position is credited, he will be able to subpoena and use privileged material that is directly relevant to this case.  It is that prospect—in particular, that the Trustee can seek to waive the protection over and use privileged communications—that directly threatens Mr. Kwok's constitutional rights.[10]  Under the framework currently in place in the Bankruptcy Cases, the Trustee can subpoena material that is privileged and relevant to the criminal case (because it concerns one of the overlapping "Investigation Topics"), seek to waive the privilege over those communications, and then put them in a public filing accessible to the government.  That scenario—which would not even involve the government soliciting any information—would have the direct impact of arming the government with evidence to which it is not entitled.  *See Nat'l City Trading Corp. v. United States*, 635 F.2d 1020, 1026 (2d Cir. 1980) (where prosecutors inappropriately come into possession of privileged information, that information should be suppressed).

---

[10] Likewise inimical to Mr. Kwok's constitutional rights is the government's cryptic claim that it will not seek privileged communications absent Mr. Kwok's or the "appropriate holder's" consent.  This "holder" language creates an improper loophole that Mr. Kwok more fully addresses in his reply to the government.

This threat is not hypothetical or stale.  On September 19, after Mr. Kwok filed his Stay Motion, the Bankruptcy Court granted the Trustee's request for a sixth round of Rule 2004 subpoenas.  Those subpoenas included, among others, one targeted at Victor Cerda, Esq., one of Mr. Kwok's long-time attorneys who assists with his immigration and criminal defense matters. In light of the position taken in the Trustee's Opposition, and which again demonstrates the obvious overlap between the Bankruptcy Cases and this criminal proceeding, it is clear that the Trustee believes that he has the right and ability to waive privilege as to any issue related to his investigation, including the advice of counsel on related criminal matters.  This poses the risk of serious prejudice to Mr. Kwok, prejudice which can only be stopped if the Bankruptcy Cases are stayed pending final resolution of Mr. Kwok's criminal case.

## **CONCLUSION**

For the reasons set forth above, the Stay Motion should be considered by this Court and should be granted.  To the extent this Court is not inclined to grant the stay that Mr. Kwok seeks, Mr. Kwok respectfully requests the alternative relief set forth in the Stay Motion, and/or whatever further relief is just and proper under the circumstances.

Dated: New York, New York
      October 5, 2023

                      PRYOR CASHMAN LLP

                      By: _____
                              Sidhardha Kamaraju
                              Matthew S. Barkan
                              Daniel J. Pohlman
                              John M. Kilgard
                              Clare P. Tilton

                              7 Times Square
                              New York, NY 10036
                              (212) 421-4100
                              skamaraju@pryorcashman.com
                              mbarkan@pryorcashman.com
                              dpohlman@pryorcashman.com
                              jkilgard@pryorcashman.com
                              ctilton@pryorcashman.com

                              *Attorneys for Defendant Ho Wan Kwok*