

## PRYOR CASHMAN LLP

New York | Los Angeles | Miami

7 Times Square, New York, NY 10036-6569   Tel: 212-421-4100   Fax: 212-326-0806          pryorcashman.com

**Sidhardha Kamaraju**

Direct Tel: 212-326-0895
Direct Fax: 212-326-0806
skamaraju@pryorcashman.com

October 5, 2023

**VIA ECF & EMAIL – FILED PARTIALLY UNDER SEAL**

Hon. Analisa Torres
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:     *United States v. Kwok et al.*, Case No. 1:23-cr-00118 (AT)

Dear Judge Torres:

We represent Defendant Ho Wan Kwok ("Mr. Kwok") in the above-captioned matter. We respectfully submit this reply in further support of Mr. Kwok's motion to stay the Bankruptcy Cases and For Alternative Relief (ECF Nos. 129-31) (the "Stay Motion") and to respond to the government's September 21, 2023 opposition letter (ECF No. 148) ("Gov. Opp.").[1]   The arguments advanced by the government in its opposition should be rejected for a number of reasons.   *First*, the government's position requires the Court to impermissibly credit the government's allegations of the alleged fraud pre-trial to deny him exculpatory evidence that goes to the heart of these proceedings and does so on the basis of unwarranted and unsupported allegations that seek inappropriately to turn protected political speech into purported obstructive conduct.   *Second*, the government concedes that it agreed to turn the Mahwah Facility over to the Trustee to effectuate a pre-conviction forfeiture, and the government's explanation that it did so because the value of the property "could" be diminished otherwise is not grounded in the facts or the law.   *Third*, the government's contention that Mr. Kwok's rights are protected because he can petition this Court for access ignores that, in the past, those court-ordered visits have been chaperoned by representatives of the very Trustee that demonstrably is feeding information to the government.   *Fourth*, the government's apparent concession that it will no longer seek or obtain Mr. Kwok's privileged information from the Trustee is illusory because it explicitly leaves open the potential for the government to continue to solicit and receive Mr. Kwok's privileged information, should the Trustee consent.

---

[1] Unless otherwise specified, capitalized terms have the same meaning as in the Stay Motion.  Cites to "Br. _" are to Mr. Kwok's moving brief in support of the Stay Motion (ECF No. 131).



Hon. Analisa Torres
October 5, 2023
Page 2

As Mr. Kwok set forth in his opening brief, the Bankruptcy Cases present a continuing threat to his constitutional rights and the integrity of these proceedings. Accordingly, a stay of the Bankruptcy Cases is appropriate under the prevailing case law, as detailed in the Stay Motion and in Mr. Kwok's separate reply brief in further support of the Stay Motion, which responds to the Trustees' and Creditors' Committee's oppositions.

Should the Court decline to stay the Bankruptcy Cases, we respectfully submit that the Court should enter an order (i) preserving the status quo at the Mahwah Facility and Mr. Kwok's counsel's right to free and unchaperoned access to the property; and (ii) precluding the government from soliciting or receiving privileged information from the Trustee. That is the bare minimum necessary to mitigate (albeit not eliminate) the harm to Mr. Kwok's rights.

## <u>Argument</u>

The government shrugs off Mr. Kwok's *Brady* claims, arguing that whatever concerns he and this Court may have are alleviated by the Bankruptcy Court's carve-out to its Mahwah Order, permitting Mr. Kwok to apply to this Court for one-off access to the Mahwah Facility with "potential safeguards." (Gov. Opp. at 5 (citing Trustee Br. at 29).) The government is wrong. Its position (i) misapprehends the law concerning the nature of the exculpatory evidence; (ii) creates an untenable and improper situation where Mr. Kwok is required to petition the Court on notice to the government for chaperoned access to the Mahwah Facility; and (iii) wrongly and illogically maligns Mr. Kwok's fellow dissidents. The Court should reject the government's cynical arguments.

**I.** **<u>The Government's Non-Position on Mr. Kwok's Request to Stay the Bankruptcy Cases Contradicts Its Prior Request to Stay the SEC Action and Highlights its Coordination with the Trustee</u>**

The government states, in a single sentence without explanation, that it takes no position on Mr. Kwok's request to stay the Bankruptcy Cases. (Gov. Opp. at 1.) The government's silence and non-position on Mr. Kwok's stay request is telling, given the government's own motion to stay the related SEC proceeding against Mr. Kwok, among others. (*See* Br. at 25-27.) After all, the same factors militate staying *both* proceedings: (i) there is substantial overlap between the Bankruptcy Cases and this proceeding; (ii) the Bankruptcy Cases threaten Mr. Kwok's Fifth Amendment rights, just as the SEC proceeding would have; (iii) just as with the SEC proceeding, the prejudice to Mr. Kwok outweighs the prejudice caused by temporarily staying the Bankruptcy Cases; and (iv) the public has the same interest in having a fair criminal process, and that interest is equally threatened by allowing either the SEC proceeding or the Bankruptcy Cases to proceed at the same time as this criminal matter. (*Id.*)

The government's non-position with respect to the Bankruptcy Cases is not only inconsistent with its prior conduct, but also evidences its tactical coordination with the Trustee.



Hon. Analisa Torres
October 5, 2023
Page 3

While the Trustee opposes the stay of the Bankruptcy Cases, he consents to the alternative relief sought by Mr. Kwok.  For its part, the government takes no position on the stay, but opposes Mr. Kwok's alternate relief.  Taking these reciprocal positions allows the government to camouflage its true objective: facilitating an improper pre-conviction forfeiture of the Mahwah Facility by the Trustee, something the government correctly admits it is unauthorized to do itself.  *See infra* pp. 6-7.  The Court should reject this ruse and grant the requested relief.

## II.     The Government's Arguments with Respect to the Mahwah Facility Are Meritless

The Court must reject the government's argument with respect to the Mahwah Facility because its arguments are unsupported and Mr. Kwok's constitutional right to access it and the evidence it represents outweighs any countervailing considerations.

### A.  The Government's Allegations of "Obstruction" at the Mahwah Facility Are Absurd and Evidence Its Inappropriate Overreach in the Bankruptcy Cases

The government claims that it was necessary for it to facilitate the Trustee's effective seizure of the Mahwah Facility because members of the Chinese pro-democracy movement in which Mr. Kwok participates, the New Federal State of China (the "NFSC"), have used and continue to use the facility in a manner that amounts to illegal obstruction of justice. (*See* Gov. Opp. at 4.)  Among the alleged obstructive acts the government cites are that members of the NFSC are (i) recording pro-democracy broadcasts at the Mahwah Facility, (ii) holding pro-democracy events and rallies there and (iii) placing G|CLUBS placards near rooms around the property.  (*Id.* at 2-4.)  That the government would describe these actions as obstruction is startling, deeply flawed both legally and factually, and only further proof of its inappropriate overreach with respect to the Bankruptcy Cases.

First, the government's obstruction argument turns on discrediting the NFSC itself, describing it as a "purported" political movement in its opposition. (Gov. Opp. at 2; *see also* Ind. ¶ 6(b) (referring to Mr. Kwok's "purported campaign against the Chinese Communist Party").) Indeed, without a shred of evidence, the government refers to the NFSC, G|CLUBS, and the individuals associated with the NFSC (who, ironically, *are the very same pool of alleged victims that Mr. Kwok purportedly defrauded*), as components of a "conspiracy" or "enterprise" that are helping to cover up Mr. Kwok's alleged fraud.[2]  Yet the government's attacks on the NFSC are

---

2 *Compare, e.g.*, Gov. Opp. at 2 (referring to "Mr. Kwok and his conspirators"), *id.* at 3 ("[I]ndividuals in the NFSC are associated with entities that are part of Kwok's fraud enterprise."); id. ("[A]fter Kwok's arrest, Kwok's followers and agents have sought to perpetuate Kwok's criminal enterprise. . . ."); *id.* (referring to "the defendants' associates occupying the Mahwah [Facility]"); *id.* at 3 n.1 ("[M]embers of the NFSC and the defendants' enterprise began inhabiting and broadcasting" from the Mahwah Facility"); *id.* at 5 (referring to "the property that defendants



PRYOR CASHMAN LLP

Hon. Analisa Torres
October 5, 2023
Page 4

not only unfounded but also undercut by the government's own *Brady* disclosures and its public statements in other cases.[3]

The NFSC is not a "purported" political movement—it is a real movement comprised of tens of thousands of pro-democracy dissidents around the world who advocate for a democratic government in China. NFSC's mission is to "oppose the Chinese Communist Party on every front. We organize protests, assist CCP dissidents, and share our knowledge about the CCP with the rest of the world. We are one of the biggest adversaries of the Chinese Communist Party." *See* https://nfscofficial.com/our-mission/.

Moreover, the movement's goals have been endorsed by U.S. officials, including sitting congresspeople and prominent members of the business community. But perhaps the strongest evidence of the credibility of the movement is its targeting by the CCP. On April 9, 2023, the U.S. Attorney's Office for the Eastern District of New York unsealed a criminal complaint captioned *United States v. Bai Yunpeng et al.*, 23-MJ-0334 (E.D.N.Y.) (ECF No. 2) (the "*Bai* Complaint"). The *Bai* Complaint exhaustively details the extensive efforts by the Chinese state security apparatus to harass and delegitimize specific members of the Chinese pro-democracy movement, including "Victim-1," who is "a critic of the CCP who fled the PRC and presently resides in New York City" and is a "primary focus of the [PRC's agents'] harassment scheme." (*Bai* Complaint ¶ 89).

Second, the NFSC's supposedly obstructive activities are themselves in fact entirely benign and protected by the First Amendment. Specifically, the government contends that supporters of the NFSC use the Mahwah Facility as their "base of operations," including to create "videos and broadcasts" containing pro-democracy messaging (*id.* at 2-3 & 3 n.1). In light of the allegations in the *Bai* Complaint, it is hardly surprising that the NFSC would need a "base of operations" to generate its own content, given that part of the CCP's campaign against Mr. Kwok and the movement are to "pressur[e] U.S. social media companies to remove Victim-1 and U.S.-based associates of Victim-1 from social media platforms" (*Bai* Complaint ¶ 89), and to "forcibly

_____

and their associates have been using as an instrument to obstruct justice.")), *with* Ind. ¶16 (referring to "funds victims had paid GCLUBS for 'memberships.'").

[3] The claim that members of the NFSC worked at businesses associated with the alleged fraud is particularly rich,



Hon. Analisa Torres
October 5, 2023
Page 5

repatriate," *i.e.* kidnap, Mr. Kwok and return him to China, (*id.* ¶ 90).  Indeed, as the government well knows, NFSC members (including, but not limited to, Mr. Kwok) created broadcasts prior to Mr. Kwok's arrest, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Finally, while the government claims that these NFSC members are acting in concert with Mr. Kwok to stage a narrative that supports his defense, it does not offer a *shred of evidence* in support of that contention.  What the government does state, however, is that the Mahwah Facility was purchased *not by Mr. Kwok or his family* but with funds provided by G|CLUBS (Gov. Opp. at 2), which was a membership club intended for Mr. Kwok's "comrades," *i.e.*, fellow movement members (Ind. ¶ 14(f)(ii)). [4]

The government also alleges that NFSC members are inappropriately holding pro-democracy events and decorating the property with G|CLUBS signs.  But such political activism is core conduct protected by the First Amendment, and the government offers no basis other than its say-so to call into question the authenticity of that speech.  As just one example, on June 4, 2023 (the 34th anniversary of the CCP's Tiananmen Square massacre), the NFSC celebrated the third anniversary of its founding in a widely publicized event at the Mahwah Facility. Multiple public figures appeared at the event, including several sitting congresspeople, congressional candidates, a former U.S. ambassador, a former U.S. military colonel who served as Director for Cybersecurity Policy, Strategy, and International Affairs in the Office of the Secretary of Defense, and a sitting mayor.  This event occurred nearly two months after Mr. Kwok's very public arrest pursuant to an Indictment that highlighted the Mahwah Facility's purported connection to the alleged fraud.  Nevertheless, these public figures—including *sitting congressmen*—attended the event and even spoke in support of the NFSC's goals, presumably with knowledge of Mr. Kwok's arrest. While the government has not (and cannot) assert that these public officials are also part of some conspiracy to obstruct justice by supporting a false narrative on behalf of Mr. Kwok, that is necessarily the implication of the spurious position the government advances—that furthering the goals of the NFSC at the Mahwah Facility after Mr. Kwok's arrest should now be considered obstruction, rather than political activism.

Third, the government's contention that these acts amount to obstruction is self-evidently wrong as a matter of law.  The government does not contend, for example, that the NFSC members

---

[4] The government claims that Mr. Kwok, in the Stay Motion, asserted that the Mahwah Facility was purchased in furtherance of GTV, and not G|CLUBS.  (Gov. Opp. at 4 n.3.)  The government is wrong—Mr. Kwok did not say that the Mahwah Facility was purchased to further GTV, but simply that the Mahwah Facility's purchase was consistent with the mission of GTV. That mission—to bring democracy to China—is shared by G|CLUBS. Moreover, the government knows that the day before the government filed its opposition to the Stay Motion, Mr. Kwok clarified in his motion to compel the government's communications with the Trustee and the SEC that that government's Mahwah allegations pertained to G|CLUBS membership fees.  (*See* ECF No. 143 at 6 n.6.)



Hon. Analisa Torres
October 5, 2023
Page 6

are shredding incriminating documents or threatening witnesses at the Mahwah Facility, nor damaging the structure itself. Rather, the government argues that the NFSC's current speech and political activities are feigned in order to fit what the government believes will be the defense narrative. Of course, the government is free to seek to argue as much at trial, if it wishes. Just as Mr. Kwok is free to argue that NFSC members continue in this political activism because they are "fiercely loyal" to their movement and the hope of a free China. Ultimately, that is a question of fact within the province of the jury. Accepting the government's position in its opposition, however, requires the Court to accept the government's as-yet-unproven view of the facts and improperly presume Mr. Kwok is a fraudster who needs a cover story, in violation of the presumption of innocence, and would harm Mr. Kwok's right to present a complete defense, by denying Mr. Kwok access to favorable evidence. The Court should therefore reject the government's invitation to conclude that Mr. Kwok is guilty until proven innocent in resolving this motion. *See United States v. Williams*, 205 F.3d 23, 29 (2d Cir. 2000) (defendant's right to establish a defense includes "the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.") (quoting *Taylor v. Illinois*, 484 U.S. 400, 409 (1988)); *see also United States v. Friedman*, 909 F.2d 705, 709 (2d Cir.1990) (reversing conviction where prosecutor's summation "invited [the jury] to conclude that everyone the Government accuses is guilty, that justice is done only when a conviction is obtained . . .").

**B. The Government's Explanation for Why It Permitted the Trustee to Seize the Mahwah Facility Is Meritless and Illogical**

The government cites the risk of diminished value of the Mahwah Facility as the *sole* reason for why it shared photographs of the Mahwah Facility with, and entered into a settlement agreement with, the Trustee concerning the Mahwah Facility. (*E.g.*, Gov. Opp. at 3 ("Given that the defendants' associates were using the Mahwah Mansion . . . and that their occupation of the Mahwah Mansion could dissipate the property's value, on July 6, 2023, the Government provided the Trustee 12 photographs . . ."); *id.* ("On July 13, 2023, the Government executed a proposed settlement with the Trustee that would permit the Trustee to secure the value of the Mahwah Mansion . . .").

As an initial matter, the government *concedes* that because it could not forfeit the Mahwah Facility before a jury found Mr. Kwok guilty, it decided to help the Trustee, who is not bound by such a requirement. (*Id.*) Whatever the merits of that approach may be in a typical case, it is patently inappropriate here, when the use of the property that the government is so cavalierly surrendering to the Trustee is at the heart of this prosecution. The government, presumably, would not help a bankruptcy trustee seize, pre-trial, a firearm that is at issue in a felon-in-possession case, or a cell phone that is at the center of an alleged narcotics conspiracy. Indeed, the government has seized many cell phones alleged to belong to Mr. Kwok in connection with this proceeding, but is presumably not turning these over to the Trustee as part of the "debtor's estate." The government should not be permitted to use the bankruptcy process to put a thumb on the scale before trial by



Hon. Analisa Torres
October 5, 2023
Page 7

helping dispose of a property that is at the heart of this case and thereby suppress *Brady* evidence.

Moreover, the government's rationale for doing so—that the property "could" diminish in value due to the NFSC's members' actions—makes no sense.[5]  The government offers no proof that the use of the property in the prior months has diminished its value, nor does the government explain why the NFSC and G|CLUBS members' continued use of the property would do so.  The government also fails to quantify what the purported reduction in value would be.

In contrast to these unsupported allegations of diminishment, the government has ensured a million-dollar diminishment of its own.  Specifically, the so-called "Settlement Agreement" calls for the Trustee's counsel—who has already collected more than $14 million in fees—to recoup up to $1 million dollars in additional fees out of the proceeds of any sale of the Mahwah Facility before any alleged creditor or alleged victim in this case will recover a dime.  (*See In re Ho Wan Kwok*, No. 22-50073 (JAM) (Bankr. D. Conn.), ECF No. 2083 at p.22 of 65.)   In other words, the government, through its actions, has now effectively excised a million dollars from the potential sale value of the property and ensured that it will not pass to the purported individuals and entities in whose interest the government and Trustee claim to be acting.  Whatever harm the government believes would be caused to the value of the property by allowing the NFSC to continue to use its "base of operations," it surely cannot exceed a million dollars.  Certainly, the government presents no such facts to the Court.

According to the government's math, it is better to turn the Mahwah Facility over to the Trustee, and that money over to the Trustee's counsel, than allow this Court to preserve the evidence, protect Mr. Kwok's right to conduct a meaningful defense, conduct an orderly criminal trial and then include that property in any potential restitution.  Simply put, that makes no logical, legal, or constitutional sense.  If the government was truly concerned about "preserving" the value of the Mahwah Facility, it could have moved for interlocutory sale pursuant to  Federal Rule of Criminal Procedure 32.2.  *See, e.g.*, *United States v. Bankman-Fried*, No. 22 Cr. 673 (LAK) (S.D.N.Y.), ECF No. 242 at 2 (interlocutory sales order finding that "interlocutory sale of the Robinhood Shares is necessary in order to prevent the deterioration of its value during the criminal case and any subsequent ancillary forfeiture proceedings[.]").[6]   Instead of doing so, the government and the Trustee slapped *both* case captions on the cover of their Settlement Agreement

---

[5] Note the government's careful word choice. It does not contend that the NFSC's use of the Mahwah Facility "has" or "will" impair the property's value.  (*See* Gov. Opp. at 3 ("Given that the defendants' associates were using the Mahwah [Facility] . . . and that their occupation of [it] could dissipate the property's value . . .").)

[6] Of course, if the government adhered to this process with respect to the Mahwah Facility, Mr. Kwok would have had the opportunity to raise his *Brady* concerns at that time.  Instead, the Government agreed to hand the Mahwah Facility over to the Trustee for disposition in the Bankruptcy Cases, forcing Mr. Kwok to raise his *Brady* concerns via his Stay Motion.



Hon. Analisa Torres
October 5, 2023
Page 8

and filed it *only* in the Bankruptcy Court. The government's effort to misuse the bankruptcy process and circumvent this Court should not be tolerated.

### C. The Mahwah Order Is Insufficient to Protect Mr. Kwok's Rights

Contrary to the government's assertion, the Mahwah Order's provision that allows "any other person expressly authorized by the United States District Court for the Southern District for New York or this Court to access the Mahwah Mansion"[7] does not protect Mr. Kwok's constitutional rights.

The Trustee and government's position requires that any defense visits to the Mahwah Facility be conducted with "potential safeguards." (Gov. Opp. at 5.) This means that, like the procedure with respect to the Sherry Netherlands Residence, the government apparently expects defense counsel to conduct any visits under the watchful eye of the Trustee's representative. But even setting aside the obvious logistical concerns of requiring the defense to alert the Court and government whenever defense counsel wishes to visit an *alleged crime scene*, this procedure does not pass constitutional muster given the risk of privileged information circling back to the government. This concern is not theoretical. After Mr. Kwok filed his Stay Motion, the Trustee conducted a "walkthrough" of the Mahwah Facility, during which the Trustee took several photographs. Then, in turn, the government subpoenaed the Trustee, who produced those very photographs to the government, so the government could try to use them to argue against Mr. Kwok's Stay Motion. Requiring that defense visits to the Mahwah Facility be chaperoned by the Trustee is tantamount to condoning a government spy in the defense camp, and should be rejected. *Cf. United States v. Dien*, 609 F.2d 1038, 1043 (2d Cir. 1979) (a Sixth Amendment violation occurs when "privileged information had been passed to the government or that the government had intentionally invaded the attorney client relationship, and resulting prejudice").

### III. The Government's Concession Does Not Address the Threat to Mr. Kwok's Attorney Client Privilege

The government claims that it has mooted Mr. Kwok's alternate relief with respect to his attorney-client privilege by assuring the Court that it will not solicit or receive privileged materials "absent agreement from Kwok's counsel *(or the appropriate holder)* …" (Gov. Opp. at 2 (emphasis added).) The government's deliberate inclusion of the foregoing italicized language is noteworthy; it creates a loophole large enough to swallow the government's purported concession. As discussed in Mr. Kwok's Stay Motion, the Bankruptcy Court's Privilege Order makes the Trustee the "appropriate holder" of many of Mr. Kwok's privileged communications. The government's apparent concession is thus meaningless, leaving it free to continue to solicit and receive Mr. Kwok's privileged communications from the Trustee. As a result, a total stay remains necessary. At the very least, the Court should respectfully enter an order (i) preserving the status

---

[7] *Despins v. Taurus Fund LLC et al.*, No. 23-05017 (Bankr. D. Conn.), ECF No. 47 at 23.



Hon. Analisa Torres
October 5, 2023
Page 9

quo at the Mahwah Facility and Mr. Kwok's counsel's right to free and unchaperoned access to the property; and (ii) precluding the government from soliciting or receiving privileged information from the Trustee.

## Conclusion

For the reasons above, Mr. Kwok respectfully requests that the Court stay the Bankruptcy Cases. Should the Court be disinclined to stay the Bankruptcy Cases, Mr. Kwok respectfully requests that the Court grant the alternative relief to which the government and the Trustee have not already agreed in their oppositions. In particular, Mr. Kwok submits that he has demonstrated the import of the Mahwah Facility to his defense in this criminal case, and that (1) his defense team should retain unfettered and unchaperoned access to the Mahwah Facility to prepare his defense; (2) the government and the Trustee be precluded from taking any further actions to facilitate the sale or other disposition of the Mahwah Facility, thereby preserving the status quo pending the outcome of this case; and (3) the government be ordered to neither solicit nor receive any of Mr. Kwok's privileged information from the Trustee.

Respectfully submitted,

Sidhardha Kamaraju
Matthew Barkan
Daniel Pohlman
John Kilgard
Clare Tilton
Sabrina Shroff

cc:      All Counsel of Record (via ECF)