**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

               *Plaintiff,*

    v.

HO WAN KWOK,

               *Defendant.*

**FILED PARTIALLY UNDER SEAL**

Case No. 1:23-CR-118-1 (AT)

**DEFENDANT'S REPLY IN FURTHER**
**SUPPORT OF HIS MOTION TO COMPEL**

Sidhardha Kamaraju
Matthew S. Barkan
Daniel J. Pohlman
John M. Kilgard
Clare P. Tilton
PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100
skamaraju@pryorcashman.com
mbarkan@pryorcashman.com
dpohlman@pryorcashman.com
jkilgard@pryorcashman.com
ctilton@pryorcashman.com

*Attorneys for Defendant Ho Wan Kwok*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... iv

PRELIMINARY STATEMENT .................................................................................... 1

ARGUMENT ................................................................................................................ 3

   I.   THE GOVERNMENT SHOULD BE COMPELLED TO PRODUCE ITS
       COMMUNICATIONS WITH THE TRUSTEE AND HIS AGENTS .............................. 4

       A.  Mr. Kwok is Entitled to the Requested Discovery Because the Government's
           Communications with the Trustee Will Rebut the Government's Allegations of
           Obstruction of Justice Against the NFSC ................................................................. 4

       B.  Mr. Kwok is Entitled to the Requested Discovery Because the Government's
           Communications with the Trustee Could Demonstrate Spoliation of *Brady*
           Evidence .................................................................................................................... 5

       C.  Mr. Kwok s Entitled to the Requested Discovery Because the Government's
           Communications with the Trustee May Show Whether Mr. Kwok's Privileged
           Information Has Been Shared with the Government ................................................. 8

       D.  Mr. Kwok is Entitled to the Requested Discovery Because the Government's
           Communications with the Trustee Are Likely to Show They Have Engaged in a
           Joint Investigation ................................................................................................... 8

       E.  Mr. Kwok is Entitled to the Requested Discovery to Support Constitutional
           Challenges to the Government's Coordination with the Trustee .......................... 11

  II.  THE COURT SHOULD COMPEL THE GOVERNMENT TO PRODUCE ITS
       COMMUNICATIONS WITH THE SEC ...................................................................... 14

       A.  Mr. Kwok is Entitled to the Requested Discovery Because the Government's
           Communications with the SEC Will Rebut the Allegations in the Indictment ...... 14

       B.  Mr. Kwok is Entitled to the Requested Discovery to Determine Whether He May
           Bring a Joint Investigation Motion ...................................................................... 15

  III.  CONCLUSION .......................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Application to Take Testimony in Crim. Case Outside Dist.*,
102 F.R.D. 521 (E.D.N.Y. 1984) ............................................................................7

*Brady v. Maryland*,
373 U.S. 83 (1963) .................................................................................................3

*SEC v. Shkreli*,
No. 15-cv-7175 (KAM), 2016 WL 1122029 (E.D.N.Y. Mar. 22, 2016)..............16

*United States v. Armstrong*,
517 U.S. 456 (1996) .............................................................................................11

*United States v. Barcelo*,
628 F. App'x 36 (2d Cir. 2015) ...........................................................................17

*United States v. Gupta*,
848 F. Supp. 2d 491 (S.D.N.Y. 2012).............................................................. *passim*

*United States v. Martoma*,
990 F. Supp. 2d 458 (S.D.N.Y. 2014)..............................................10, 11, 17, 18

*United States v. Meregildo*,
920 F. Supp. 2d 434 (S.D.N.Y. 2013)..................................................................17

*United States v. Patel*,
No. 16-cr-798 (KBF), 2017 WL 3394607 (S.D.N.Y. Aug. 8, 2017)......................8

*United States v. Prado*,
933 F.3d 121 (2d Cir. 2019)...................................................................................6

*United States v. Rhodes*,
No. 18-cr-887 (JMF), 2019 WL 3162221 (S.D.N.Y. July 16, 2019) ..............11, 17

*United States v. Soriano*,
401 F. Supp. 3d 396 (E.D.N.Y. 2019) ..............................................................6, 12

*United States v. Stein*,
488 F. Supp. 2d 350 (S.D.N.Y. 2007)..........................................................5, 10, 15

*United States v. Stevens*,
985 F.2d 1175 (2d Cir. 1993)...........................................................................9, 14

*United States v. Stewart*,
    433 F.3d 273 (2d Cir. 2006)..................................................................................................17

**Statutes and Rules**

Fed. R. Crim. P. 16(a)(1)(E)(i) ...............................................................................................3

Defendant Ho Wan Kwok respectfully submits this reply memorandum in further support of his Motion to Compel Discovery (Dkt. Nos. 141-43) (the "Motion to Compel") and in response to the government's Memorandum of Law in Opposition to Motion to Compel (Dkt. No. 160) (the "Opposition").

## PRELIMINARY STATEMENT

By his motion, Mr. Kwok seeks to compel the production of the government's communications with the Trustee and the SEC.  Those materials, which are obviously in the government's possession and can be readily produced, are relevant to this matter not just because they likely will show evidence of a joint investigation (which could lead to the motion the government appears to be fighting prematurely), but more specifically in this case because these communications will demonstrate the extent of the government's knowing participation in the spoliation of *Brady* evidence (the Mahwah Facility)[1] and its receipt of information that is covered by Mr. Kwok's attorney-client and Fifth Amendment privileges.

In its opposition, the government mischaracterizes Mr. Kwok's request as seeking to have the government search the files of the Trustee and the SEC on the basis that the government is engaged in a joint investigation with those entities and argues from there.  That is a red herring intended to deflect attention from the focused discovery Mr. Kwok truly seeks.  The government also contends that its coordination with the Trustee and the SEC is entirely ordinary and not made in bad faith.  As an initial matter, courts have directed the production of this type of discovery even in the absence of bad faith.  But even if a showing of bad faith was somehow required, the Trustee's and the government's public statements on this matter supply it.  The government does not (and

---

[1] Unless otherwise stated, all defined terms herein have the same meaning as in Mr. Kwok's opening brief supporting this motion.  (Dkt. No. 143.)

cannot) seriously dispute that the Mahwah Facility is at the heart of the Indictment, and that evidence showing the property is used for the benefit of Mr. Kwok's fellow movement members would be *Brady*, because that use would help rebut the government's fraud claims. Rather than preserve the Mahwah Facility, the government has worked with the Chapter 11 Trustee to seize the property and liquidate it prematurely. Indeed, both the government and the Trustee admit that the entire purpose of their "Settlement Agreement" is for the Trustee to be able to act as "forfeiture receiver" and quickly liquidate the property before Mr. Kwok is tried by a jury. The government attempts to justify its stratagem by claiming Mr. Kwok's fellow movement members are obstructing justice by engaging in the very political speech from the Mahwah Facility that the property was always intended to support, but this justification fails. While the government may take that position at trial if it chooses, it should not be allowed to make that position a *fait accompli* by expelling Mr. Kwok's fellow movement members and selling the Mahwah Facility, thereby destroying the very contrary evidence that will best rebut the government's position.

With respect to the SEC, the government's Opposition also misses the point. Mr. Kwok is not asking the government to search the SEC's files. All Mr. Kwok seeks by his motion are the communications the government had with the SEC – communications already in the *government's* possession. Hence, no SEC files need be searched to provide Mr. Kwok with the relief he seeks.

Those communications between government and SEC are relevant to two material issues: (i) whether there was a joint investigation, and (ii) whether the SEC communicated to the government that it too had *Brady* evidence ███████████████████████████████ ████████████████████████████████████████████. In this regard, while the evidence already available to Mr. Kwok and the Court ██████████ ████████████████████████████████████████████

███, shows the type of coordination that supports a joint investigation finding, the government is wrong when it avers that the Court must make such a finding now to grant the instant motion. All that is required is relevance to the defense's case, which has been shown here.

The government elected to coordinate its investigation, to charge Mr. Kwok with serious crimes, and to help the Trustee seize and liquidate a key piece of evidence in this prosecution and communicate with the SEC. These choices by the government have weighty consequences for Mr. Kwok's constitutional rights, and Mr. Kwok and the Court are entitled to the background for the government's decisions. For all these reasons, and those set forth in Mr. Kwok's moving papers, the Court should grant the Motion to Compel, order the government to produce the requested discovery, and grant Mr. Kwok such other relief as the Court deems just.

## ARGUMENT

Mr. Kwok seeks production of the government's communications with the Trustee and the SEC pursuant to Rule 16(a)(1)(E)(i) and *Brady v. Maryland*, 373 U.S. 83 (1963). As the government concedes, Mr. Kwok is entitled to communications between the government and the Trustee to the extent those communications contain information that could be used to rebut the allegations in the Indictment. (*See* Opp. Br. at 12 (citing *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993) (evidence is material "if it could be used to counter the government's case or to bolster a defense"); *see also* Kwok Br. at 13 (citing *United States v. Stein*, 488 F. Supp. 2d 350, 356-57, 60 (S.D.N.Y. 2007) (recognizing that the Rule 16 standard "normally is not a heavy burden," and that materials are discoverable if they are "within the government's possession, custody or control" and "there is a strong indication that it will play an important role in uncovering admissible evidence")).)

I.    **THE GOVERNMENT SHOULD BE COMPELLED TO PRODUCE ITS COMMUNICATIONS WITH THE TRUSTEE AND HIS AGENTS**

The government's communications with the Trustee are discoverable for at least each of the following five independent reasons.

A.    **Mr. Kwok is Entitled to the Requested Discovery Because the Government's Communications with the Trustee Will Rebut the Government's Allegations of Obstruction of Justice Against the NFSC**

A central issue in this case is the purpose of the Mahwah Facility—the government contends the property was purchased for Mr. Kwok's benefit, while Mr. Kwok responds that the property was purchased for use by his fellow movement members.  Thus, evidence that shows that members of the NFSC are using the property for purposes of the movement undercuts the government's case and supports Mr. Kwok's defense.  For example, that the NFSC held a three-year anniversary ceremony to commemorate the founding of the organization at the Mahwah Facility, a ceremony attended not just by NFSC members, but also sitting U.S. congresspersons, strongly supports Mr. Kwok's position.  (*See* Def.'s Reply in Support of Mot. to Stay Bankr. Cases, Dkt. No. 152 at 3-6.)

The government apparently recognizes the value of this evidence because it seeks to tarnish the NFSC's use of the Mahwah Facility as obstruction of justice.  Remarkably, in making this serious accusation against the NFSC, the government does not point to any obstruction – *e.g.*, shredding incriminating documents, or threatening witnesses at the Mahwah Facility, or damaging the structure itself.  Rather, the government claims that the NFSC members are obstructing justice by exercising their First Amendment rights and arguing for a free China.  The government's attempt to diminish core protected political speech as obstructive is not only stunning, it demonstrates why the Court should grant the instant motion.

The government is free to argue to the jury that free speech equals obstruction of justice, but Mr. Kwok is equally entitled to rebut the government's novel position at trial. In this regard, the government's communications with the Trustee are directly relevant to the questions of when the government first learned that supporters were using the property (presumably before entering into Settlement Agreement in July 2023), whether the government claimed upon first learning of their use that the NFSC was engaging in obstruction of justice, and why the government chose to defer to the Trustee and allow the spoliation of evidence via a sale of the Mahwah Facility, instead of using any of the other tools at its disposal to address the purported NFSC obstruction. These questions, and the communications Mr. Kwok seeks that will supply the answers, all undercut the government's claim of obstruction. *See, e.g., Stein*, 488 F. Supp. 2d at 357 (evidence "is material if it could be used to counter the government's case or to bolster a defense") (quoting *Stevens*, 985 F.2d at 1180).

### B. Mr. Kwok is Entitled to the Requested Discovery Because the Government's Communications with the Trustee Could Demonstrate Spoliation of *Brady* Evidence

Information is discoverable when it can be used to support a defense or a defense motion. (*See* Kwok Br. at 13-14.) The configuration and use of the Mahwah Facility is powerful exculpatory evidence for Mr. Kwok because they demonstrate that the property was not a personal residence, but a secure gathering place for members of a political movement that have been targeted by one of the world's most powerful nations through, among other things, attempted kidnappings, improper detention, and illegal surveillance through the retention of private investigators and the creation of secret police stations. (*See* Def.'s Reply in Support of Mot. to Stay Bankr. Cases, Dkt. No. 152 at 4-5.) So too is the NFSC's continued use of the property in service of these goals—Mr. Kwok is entitled to present to the jury that even though he has been

arrested, the movement continues to use the property for dissident purposes, just as was always intended.

Rather than the NFSC, it is the government that has "tampered" with this evidence by turning it over to the Trustee and preventing the NFSC from continuing to use it for their political advocacy.  The government's spoliation of evidence can serve as the basis for a defense motion where "(1) the government . . . act[s] in bad faith in destroying the evidence; (2) the evidence . . . possesses an exculpatory value that was apparent before it was destroyed; and (3) the defendant is unable to obtain comparable evidence by other reasonably available means."  (Kwok Br. at 17 (quoting *United States v. Hunley*, 476 F. App'x 897, 899 (2d Cir. 2012)).)  "[I]f the government destroys evidence when it has notice of its potentially exculpatory value and the destruction is not inadvertent, negligent or pursuant to standard procedure, then the government acts in bad faith." *United States v. Soriano*, 401 F. Supp. 3d 396, 402 (E.D.N.Y. 2019).  The government's communications with the Trustee will help demonstrate that the government was acting in "bad faith" in ceding this critical piece of evidence to the Trustee.

Rather than simply produce these communications and quiet any concern, the government contends there has not been any spoliation because the government has produced photographs of the property and defense counsel can take an escorted trip to the property.  (Opp. Br. at 20 & n.1.) That contention is unconvincing.  To begin, photographs are no substitute for the Mahwah Facility. *Cf. United States v. Prado*, 933 F.3d 121, (2d Cir. 2019) (dismissing indictment in MDLEA prosecution where Coast Guard failed to preserve vessel, even though government had produced photographs and videos of the vessel).  This is particularly true where, as here, the defense should not have to rely on photographs the government's agents elected to take.  Plainly, the government

did not choose their photographs with Mr. Kwok's defenses in mind, and the government's agents are not (and should not be) privy to counsel's defense strategy.

Moreover, as the defense's preparation continues, the defense may feel it important for the jury to view the property themselves, which would obviously be impossible if the Trustee has liquidated the property, or altered it in preparation for a sale. *See In re Application to Take Testimony in Crim. Case Outside Dist.*, 102 F.R.D. 521, 524 (E.D.N.Y. 1984) ("It is not uncommon for a judge to provide for a view with the jury observing the scene.").

The government's suggestion that Mr. Kwok's counsel should simply schedule a site visit means that (i) defense counsel has to alert the government and burden the Court any time they need to visit the property (a process that will only grow more burdensome as trial approaches), and (ii) defense counsel must visit the site with a representative of the Trustee chaperoning them. A Trustee chaperone impinges on the confidentiality and privileged nature of the defense team's choice of what to do and view during a visit, risks the privilege of the internal communications among defense counsel during the visit, and creates the potential for that privileged information – what defense counsel did and said – to be transmitted back to the government.[2]  (*See* Def.'s Reply in Support of Mot. to Stay Bankr. Cases, Dkt. No. 152 at 8.)  Finally, a site visit does nothing to address the harm caused by the government's and Trustee's coordinated interference with the NFSC's continued use of the Mahwah Facility, which, as described above, supports Mr. Kwok's

---

[2] The government states that it is willing to confer with Mr. Kwok's counsel to prevent this type of spill from happening.  (Opp. Br. at 20 n.1.)  It is unclear, however, what the government can even do to prevent a spill.  The Trustee now controls the Mahwah Facility so, absent a court order, it is the Trustee, not the government, who would decide whether to permit unchaperoned visits. Further, while the government can make whatever representations it wants about its own actions, the government cannot apparently control the Trustee's actions.  The Trustee has already repeatedly demonstrated his willingness to run to the government, including by threatening to report Mr. Kwok to the authorities if he did not pay more to settle the bankruptcy, (*see* Def.'s Mot. to Stay Bank. Cases, Dkt. No. 131 at 6) and, more recently by notifying the government about the details of Mr. Kwok's September 2023 "walkthrough."

defense.  Mr. Kwok should not have to sacrifice his access to such a central piece of evidence in exchange for inferior alternatives that neither address nor prevent the harm to Mr. Kwok's defense.

### C. Mr. Kwok is Entitled to the Requested Discovery Because the Government's Communications with the Trustee May Show Whether Mr. Kwok's Privileged Information Has Been Shared with the Government

The government is not entitled to rely on a defendant's privileged information.  *See, e.g., United States v. Patel*, No. 16-cr-798 (KBF), 2017 WL 3394607, at *6 (S.D.N.Y. Aug. 8, 2017) ("Indisputably, when the Government obtains access to a defendant's [records], the Government is not entitled to rely on privileged materials contained therein.").  It is also clear that (1) the Trustee has possession, and is seeking more, of Mr. Kwok's privileged material, including material privileged under the Fifth Amendment, and (2) the government has in the past subpoenaed, and the Trustee provided, records the Trustee obtained through his Rule 2004 investigation.  (*See* Kwok Br. at 4-5, 9, 18.)  The government does not deny either of these facts, but instead argues that it has neither solicited nor received any privileged information.  (Opp. Br. at 24 (citing Government's Opposition Letter to Stay Motion, Dkt. No. 148 at 2).)

Respectfully, this determination is not for the government to make, but for Mr. Kwok (and the Court) to make once Mr. Kwok has had an opportunity to review the precise information transmitted from the Trustee to the government.  Even if the government does not *believe* it has received any privileged information, the government may not recognize that certain information is privileged – for example, information subject to the common-interest privilege.  Moreover, given that the Trustee has claimed the ability to waive Mr. Kwok's privilege, it is also possible that the Trustee has provided information to the government that would be privileged, but for that purported waiver.

**D.      Mr. Kwok is Entitled to the Requested Discovery Because the Government's Communications with the Trustee Are Likely to Show They Have Engaged in a Joint Investigation**

The government opposes the instant motion by asserting that Mr. Kwok has purportedly failed to demonstrate that the Trustee is part of a "joint investigation" with the government, or a member of the "prosecution team."  (Opp. Br. at 24-25.).  This puts the cart before the horse, as Mr. Kwok does not seek such a determination at this time.[3]  That said, the details of the cooperation Mr. Kwok has already proffered—including the Settlement Agreement; the government's provision of photographs to the Trustee; the Trustee's provision of its Mahwah analysis to the government; the government's assistance to the Trustee to obtain an injunction to prevent pro-democracy Chinese dissidents from using the Mahwah Facility; and the other coordinated efforts between the government and the Trustee (*see* Kwok Br. at 6-9; Kamaraju Stay Decl. Exs. 5, 10; Barkan Decl. Ex. 1)—provides Mr. Kwok with a basis for exploring that cooperation further to determine whether a "joint investigation" motion is warranted.  *See Stevens*, 985 F.2d at 1180 (evidence must be disclosed "if it could be used to counter the government's case or to bolster a defense").  These communications and coordinated activities, which suggest not only joint fact gathering but also joint destruction of key *Brady* evidence, warrant further discovery to determine

---

[3] Indeed, the government acknowledges that it is intentionally responding to an argument that Mr. Kwok has not yet made.  (*See* Opp. Br. at 25 ("To be clear, Kwok does not actually claim that the Trustee is part of the prosecution team.").)  Mr. Kwok reserves the right to bring a future motion alleging that the government effectively carried out a joint investigation with the Trustee, given the extraordinary and prejudicial coordination between the government and Trustee concerning the disposition of key exculpatory evidence (*see* Kwok Br. at 19-20). Such a motion, if successful, would then require the government to search the Trustee's files as well.  *See United States v. Gupta,* 848 F. Supp. 2d 491, 494 (S.D.N.Y. 2012) (prosecutor's duty to review materials extends to materials in possession of entities with which it conducts a "joint investigation").

9

whether the government and Trustee carried out a joint investigation into the use and ownership of the Mahwah Facility.

In its belated Murray Declaration (Dkt. No. 160-1), the government identifies a few instances where the Trustee and the government did not cooperate.  These instances, however, do not obscure the many instances of deep actual cooperation between the government and Trustee.  Nor do these instances justify the government's refusal to provide *Brady* material to the defense.  Thus, it is immaterial to Mr. Kwok's motion, for example, that the Trustee "played no role in the Government's charging decisions," "was not involved in presenting the Kwok Investigation to the grand jury," "did not participate in the execution of search warrants" and "has not accompanied the Government to Court," to identify a few examples of the purported non-cooperation stressed by the government.  (*See* Opp. Br. at 24; Dkt. No. 160-1 ¶ 3.)  While those instances may further evidence a joint investigation in certain circumstances, the joint investigation determination "must be evaluated in light of the disclosures being requested." *Gupta*, 848 F. Supp. 2d at 494.  Moreover, "[f]or *Brady* purposes, it is enough that the agencies are engaged in joint fact-gathering, even if they are making separate investigatory or charging decisions, because the purpose of *Brady* is to apprise the defendant of exculpatory evidence obtained during the fact-gathering that might not otherwise be available to the defendant." *Id.*

Moreover, the Trustee's extensive provision of information to the government may reveal an arrangement which, even if not a "joint investigation," still imposes upon the government the duty to produce to Mr. Kwok materials that are in the Trustee's possession, custody, and control. *See Stein*, 488 F. Supp. 2d at 363 (agreement giving government right to obtain files from accounting firm obliged government to search those files for Rule 16 and *Brady* material).  For all these reasons, the Court should respectfully compel the government to produce its communications

with the Trustee, so Mr. Kwok may determine whether the arrangements between the government and Trustee entitle Mr. Kwok to further discovery. *See Gupta*, 848 F. Supp. 2d at 494 (obligation to search for *Brady* material extends to agencies engaged in "joint fact-gathering" with government); *United States v. Martoma*, 990 F. Supp. 2d 458, 461 (S.D.N.Y. 2014) (same).

### E.   Mr. Kwok is Entitled to the Requested Discovery to Support Constitutional Challenges to the Government's Coordination with the Trustee

The government makes conflicting claims regarding what showing Mr. Kwok must make to justify discovery of information that may support a defense motion challenging the government's violation of Mr. Kwok's constitutional rights. The government first suggests that the proper standard is set forth in *United States v. Armstrong*, 517 U.S. 456, 468-69 (1996), which requires a defendant to offer "some evidence tending to show the existence of the essential elements of the defense." (Opp. Br. at 13.) Later, the government relies on *United States v. Rhodes*, No. 18-cr-887 (JMF), 2019 WL 3162221, at *4 (S.D.N.Y. July 16, 2019), to suggest Mr. Kwok must first make a "substantial preliminary showing of bad faith." (Opp. Br. at 19.) In either case, Mr. Kwok has offered more than enough evidence to show his entitlement to discovery to challenge the government's destruction of evidence and violation of his Fifth Amendment privileges.

As an initial matter, no substantial preliminary showing of bad faith is needed. Courts have required production of information about the government's cooperation with another entity without a showing of bad faith. For example, in *United States v. Martoma*, 990 F. Supp. 2d 458, 460 (S.D.N.Y. 2014), the court directed the parties to submit affidavits addressing the coordination between the government and the SEC to provide it with sufficient information to make a joint investigation determination. And in *Rhodes*, the court required a showing of bad faith only *after* it first ordered the government to submit an affidavit "detailing, with specificity, the nature and

extent of any and all communications between the SEC and those involved in the criminal investigation" and attaching "copies of any such substantive communications." 2019 WL 3162221, at *4.

The Court should follow these decisions because, irrespective of whether the prosecutors acted in bad faith, Mr. Kwok is still harmed by the destruction of *Brady* material and/or the invasion of his privilege. Precluding Mr. Kwok from investigating the matter by requiring him to first show bad faith makes no sense where Mr. Kwok has plainly demonstrated an ongoing *Brady* violation.

In any event, if evidence of bad faith is required, then the government's own statements demonstrate it. The government claims that it entered into the Settlement Agreement because it believed that the NFSC supporters could diminish the property's value. Thus, the government knew that the NFSC supporters were using the property at least as early as July 2023, when they entered into the Settlement Agreement, and presumably before that, since the agreement had to be negotiated first. It is also obvious that the NFSC members' use of the Mahwah Facility for their political activism—which is the very thing that Mr. Kwok argues—undercuts the government's allegation that the property was purchased for the benefit of Mr. Kwok and his family. But rather than pursue its theory that this activity is somehow obstructive through the usual means, such as a criminal investigation followed by, if appropriate, criminal charges, or by raising the issue with this Court (where Mr. Kwok would have had an opportunity to respond), the government entered into the Settlement Agreement with no notice to the defendants, defense counsel, or the Court. Such conduct is bad faith. *See generally, Soriano*, 401 F. Supp. 3d at 402 ("[I]f the government destroys evidence when it has notice of its potentially exculpatory value and the destruction is not inadvertent, negligent or pursuant to standard procedure, then the government acts in bad faith.").

The government twists itself into knots protesting that there is nothing unusual about its cooperation with the Trustee regarding the Mahwah Facility.[4]  The government is wrong.  In this regard, *none* of the cases cited by the government as "precedent" for the Settlement Agreement involve the pre-conviction disposition of a key piece of physical evidence.  For example, *In re Maresca*, No. 20-11483 (KHK), Dkt. 244 (E.D. Va. Bankr. Sept. 9, 2021), concerned a motion for approval of a settlement agreement involving the "only significant asset of" the estate.  While *Maresca* was pre-conviction, the government in that case was seeking civil forfeiture of the asset, which does not require a criminal conviction.  There also was no indication in that case that the asset at issue was a key piece of physical evidence in a pending criminal trial.  Nor does the government's extensive discussion of the coordination between the government and the trustee in the *Madoff* case (Opp. Br. at 22-23) offer any precedent for the disposition of *physical exculpatory evidence*.  The other cases relied on by the government are similarly inapposite.  *See United States v. Merrill*, No. 14-40028 (TSH), Dkt. 367 (D. Mass. July 11, 2017) (post-conviction restitution order involving monetary assets of bankruptcy estate); *In re Rothstein*, No. 09-34791 (RBR), Dkt. 5704 (S.D. Fla. Bankr. July 14, 2014) (post-conviction motion for settlement agreement resolving competing claims to assets of estate); *In re Goldberg*, No. 09-23370 (ASD), Dkt. 424 (D. Conn. Bankr. May 31, 2011) (post-conviction motion to approve settlement); *United States v. Brandau*, No. 99-8215 (DMM), Dkt. 734 (S.D. Fla. Apr. 25, 2000) (post-conviction agreement to coordinate restitution); *United States v. Dreier*, No. 09-cr-85 (JSR), Dkt. 141 (S.D.N.Y. Feb. 5, 2010)

---

[4] *See, e.g.*, Opp. Br. at 21 ("absolutely nothing unusual" about the government working with the Trustee regarding forfeitable assets), 24 (interactions between government and Trustee are "unexceptional"), 25 (coordinating between government and Trustee "unexceptional and unproblematic"), 25 (government's interactions with Trustee are "routine and unexceptional").

(coordination order between parties in criminal, civil and bankruptcy proceedings concerning competing claims to funds).[5]

## II.    THE COURT SHOULD COMPEL THE GOVERNMENT TO PRODUCE ITS COMMUNICATIONS WITH THE SEC

### A.    Mr. Kwok is Entitled to the Requested Discovery Because the Government's Communications with the SEC Will Rebut the Allegations in the Indictment

The government's communications with the SEC regarding the subject matter of the Indictment are material because these communications are likely to contain information that could rebut the allegations in the Indictment.  *See Stevens*, 985 F.2d at 1180 (evidence is material "if it could be used to counter the government's case or to bolster a defense"); *see also* Kwok Br. at 21-22.  Among other things, the SEC has likely conveyed to the government information regarding whether the purported victims of the alleged fraud were actually misled or deceived. ████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████   (*See id.*)[6]

---

[5] The order in *Dreier* is distinguishable because it did not involve the disposition of physical evidence.  It is also notable that, in that case, Judge Rakoff emphasized that the judges presiding over the various proceedings held a joint hearing at which "all affected parties were invited to attend and following which the judges received further written submissions."  *Dreier*, Dkt. No. 141 at 2.  Here, although the Settlement Agreement bears a caption for both this criminal proceeding and the Bankruptcy Cases, the government never brought the agreement to this Court's attention or offered Mr. Kwok's criminal counsel an opportunity to object.

[6] The belief that the SEC may have conveyed information to the government about purported "victims" is also grounded in a mandamus action commenced by GTV investors against the SEC seeking an order requiring the SEC to promptly return their funds.  *See Yue Zhou, et al. v. SEC*, No. 21-cv-10600, Dkt. No. 1 (S.D.N.Y. Dec. 10, 2021).  In their complaint, of which this Court may take judicial notice, the investors stated that they "at no time sought SEC intervention or protection with respect to their investment in GTV" and that they "wished to keep their investment in GTV at the time the SEC began its investigation, and but for the SEC's interference, would have maintained their investment in GTV."  *Id.* ¶ 22.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

**B.      Mr. Kwok is Entitled to the Requested Discovery to Determine Whether He May Bring a Joint Investigation Motion**

Mr. Kwok is entitled to the government's communications with the SEC because they may confirm the existence of a joint investigation.  *See Stein*, 488 F. Supp. 2d at 356-57 (evidence is discoverable if "there is a strong indication that it will play an important role in uncovering admissible evidence[]"); *Gupta*, 848 F. Supp. 2d at 494 (duty to review materials extends to materials in possession of all entities conducting "joint investigation").  In his moving brief, Mr. Kwok provided ample evidence of the existence of a joint investigation, ███████████ ██████████████████████████████████████████████, the coordination of filing respective criminal and civil charges, and the SEC's provision of other information to the government, ████████████████████████████████ ████████████████████████████████████.  (*See* Kwok Br. at 10-12; Barkan Decl. Exs. 3-14.)  Because the coordination presently known to Mr. Kwok strongly suggests a joint investigation, the requested discovery should be permitted to uncover additional evidence of coordination.

In response, the government relies on the same Murray Declaration to which it cited in opposition to producing its communications with the Trustee.  But just as it did with the "Trustee" portion of its affidavit, the government strains to emphasize areas in which it allegedly did *not* cooperate with the SEC, rather than provide details to the Court and Mr. Kwok concerning the areas in which Mr. Kwok demonstrated there was cooperation.  For example, the government provides no explanation in its affidavit for why ████████████████████████████████████ ████████████████, or the nature and extent of the government's coordination with the SEC on bringing their respective charges.

The Murray Declaration is fatally deficient in other ways.  *First*, it states that neither the SEC nor the government played any role in the charging decisions or strategy of the other agency. (Murray Decl. ¶¶ 2(a)-(b).)  But the timing of a complaint or indictment is clearly a "charging decision" related to prosecutorial "strategy," and in this case the government and the SEC brought their charges on the same date.  While the government cited one case, *SEC v. Shkreli*, No. 15-cv-7175 (KAM), 2016 WL 1122029, at *7 n.6 (E.D.N.Y. Mar. 22, 2016), to suggest that bringing charges on the same date is "routine" (*see* Opp. Br. at 15), that case involved a motion to stay a parallel SEC proceeding pending a related criminal proceeding, not a consideration of the existence of a joint investigation.  Moreover, "[f]or *Brady* purposes, it is enough that the agencies are engaged in joint fact-gathering, *even if they are making separate investigatory or charging decisions*, because the purpose of *Brady* is to apprise the defendant of exculpatory evidence obtained during the fact-gathering that might not otherwise be available to the defendant." *Gupta*, 848 F. Supp. 2d at 494.

*Second*, many of the statements in the government's declaration obscure more than they reveal.  The government claims that the "SEC did not participate in the execution of search

warrants" (Murray Decl. ¶ 2(g)), but ignores that the ████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████ (*See* Kwok Br. at 10-11; Barkan Decl. Exs. 3-14.)  The government

similarly claims that "the SEC did not obtain materials produced to the government pursuant to

grand jury subpoenas" (Murray Decl. ¶ 2(h)), but that is unsurprising since the government

promptly moved, without SEC opposition, to stay the SEC proceeding pending resolution of this

criminal proceeding.

     *Finally*, the government's Murray Declaration reveals *for the first time* that the government

and the SEC conducted joint witness interviews, although the declaration omits how many joint

interviews were conducted.  Conducting joint witness interviews is a key factor considered by

courts in determining the existence of a joint investigation.  *See, e.g.*, *Martoma,* 990 F. Supp. 2d

at 461-62 (joint investigation occurred where SEC and government "jointly conducted twenty

interviews of twelve witnesses"); *Gupta,* 848 F. Supp. 2d at 493-96 (joint investigation occurred

where SEC and government conducted 44 joint interviews).  Thus the government's declaration

actually bolsters the conclusion that the government conducted a joint investigation with the SEC.

     The government also contends the coordination Mr. Kwok identifies, ████████████

████████████████████████████████████████████, is "routine."  (Opp. Br. at 15-16.)  But the

cases the government cites involve the provision of information by cooperating witnesses and

experts, not by a government agency conducting an investigation into the same allegations, which

agency stands to benefit from the evidence uncovered.  *Cf. United States v. Meregildo*, 920 F.

Supp. 2d 434, 443-44 (S.D.N.Y. 2013) (cooperating witness not part of prosecution team); *United

States v. Barcelo*, 628 F. App'x 36, 38-39 (2d Cir. 2015) (same); *United States v. Stewart*, 433

F.3d 273, 298 (2d Cir. 2006) (expert witness not part of prosecution team).  Similarly, the

government's extensive discussion of *Rhodes* misses the mark because Mr. Kwok does not rely on *Rhodes* to justify his discovery of the government's communications with the SEC. (*See* Opp. Br. at 16-17; Kwok Br. at 20-22.)  But given the deficiencies in the Murray Declaration, *Rhodes*, as well as *Martoma*, suggest that, at a minimum, the government should be directed to supplement its Declaration with detailed descriptions of the ways in which the government did and did not coordinate with the SEC.  *See Rhodes*, 2019 WL 3162221, at *2 (noting order requiring government, after submission of initial, deficient affidavit, to submit supplemental affidavit "detailing, with specificity, the nature and extent of any and all communication between the SEC and those involved in the criminal investigation" and attaching copies of such communication for *in camera* review); *Martoma*, 990 F. Supp. 2d at 460 (court directed the parties to submit affidavits to provide court sufficient information to determine existence of joint investigation).

## CONCLUSION

For the foregoing reasons, and those set forth in its moving papers, Mr. Kwok respectfully requests that the Court (A) grant his Motion to Compel; (B) enter an order requiring the government to produce all communications and documents exchanged between the government and (i) the Trustee and his agents, and (ii) the SEC, concerning the subject matter of the Indictment; and (C) for such other and further relief as the Court deems just and proper.

Dated: New York, New York
       November 2, 2023

PRYOR CASHMAN LLP

By: _____

Sidhardha Kamaraju
Matthew S. Barkan
Daniel J. Pohlman
John M. Kilgard
Clare P. Tilton

7 Times Square
New York, NY 10036
(212) 421-4100
skamaraju@pryorcashman.com
mbarkan@pryorcashman.com
dpohlman@pryorcashman.com
jkilgard@pryorcashman.com
ctilton@pryorcashman.com

*Attorneys for Defendant Ho Wan Kwok*