## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA,**
　　　　　　**Complainant**

　　　　　**-v-**

**HO WAN KWOK,**
　　　a/k/a "Miles Guo,"
　　　a/k/a "Miles Kwok,"
　　　a/k/a "Guo Wengui,"
　　　a/k/a "Brother Seven,"
　　　a/k/a "The Principal,"

**KIN MING JE,**
　　　a/k/a "William Je," and

**YANPING WANG,**
　　　a/k/a "Yvette,"

　　　　　　**Defendants.,**

Criminal No.:　23 Cr. 118 (AT)

**REPLY TO BANKRUPTCY TRUSTEE OF THIRD PARTY CUSTOMERS OF THE HIMALAYA EXCHANGE ON THEIR MOTION FOR RETURN OF PROPERTY SEIZED BY COMPLAINANT**

## REPLY TO BANKRUPTCY TRUSTEE OF THIRD PARTY CUSTOMERS OF THE HIMALAYA EXCHANGE ON THEIR MOTION FOR RETURNOF PROPERTY SEIZED BY COMPLAINANT

　　　　Customers of the Himalaya Exchange, by and through undersigned counsel, Bradford L. Geyer, Esq., whose investments in the Exchange have been seized as actions ancillary to the core criminal prosecution in this case, have filed a Motion for Intervention in support of their Motion for the Return of Property Seized by the Complainant, United States of America.

　　　　Counsel's clients filed a Motion for Return of Property, and the U.S. Department of Justice ("DOJ") filed a response opposing the procedural method of these Himalaya Exchange depositors challenging the forfeiture (ECF 186).  Counsel's clients filed a Reply to the DOJ (ECF 198) and Supplement (ECF 207-209).

1

Meanwhile, the Chapter 11 Trustee Luc Despins, by counsel from the law firm of Paul Hastings also filed a response of his own (ECF 202).  Counsel's clients file a brief Reply to the Trustee.

## I.    INTRODUCTION

The case at bar before the Court is a criminal prosecution by the Government against the named Defendants.  However, as an ancillary side matter the Government has also seized various funds and property from various entities or people for related but varying reasons, alleging in forfeiture proceedings that such are the instrumentalities or proceeds of the crimes being prosecuted.

Therefore, the forfeiture proceedings and the Intervenors' objections thereto are a separate matter from the core criminal prosecutions but have been included within the main criminal case, arising out of it.  This forces us into some difficult procedures.

Initially, the 3,539 Customers of the Himalaya Exchange represented by the undersigned counsel (there being other customers as well not currently counsel's clients) are confronted with the ungainly and awkward context in which the U.S. Department of Justice has combined a criminal prosecution of **HO WAN KWOK, KIN MING JE, and YANPING WANG,** apparently under various other alias names, with the forfeiture of funds from various people and entities in a "seize first, investigate later" approach.

It would have been less cumbersome for everyone if the DOJ had separated the criminal prosecution in one case from the forfeiture proceedings in another.  Better still, it would have been better if the DOJ had completed the prosecution of Kwok, Je, and Wang to find out if they

actually committed any crimes at all which might justify some or all of the asserted forfeitures.

Counsel's 3,539 clients who are Himalaya Exchange customers are faced with intervening in a criminal case through no choice of their own.   The matters should have been addressed separately in separate cases and probably should be severed now.  But that was not the decision of the Himalaya customers.

II.     **ARGUMENT**

A.     **HIMALAYA EXCHANGE IS NOT PART OF THE CHAPTER 11 BANKRUPTCY ESTATE**

Long before undersigned counsel's awareness of these matters or involvement, it appears that the Chapter 11 petition in bankruptcy was filed in the U.S. Bankruptcy Court for the District of Connecticut ***by Kwok*** as the Bankrupt Debtor seeking protection from the bankruptcy courts.

However, to the best of counsel's understanding and knowledge, the Petitioner (Bankrupt, Debtor) did not name the Himalaya Exchange of the British Virgin Islands – an independent country since 1850, following colonial occupation of the British Empire, as an asset or a going concern to be administered under Kwok's Chapter 11.

The Objection or Notice by the Trustee Luc Despins, by counsel, states that:

> As the Court will recall, the Court previously found, in connection with its order granting a preliminary injunction against the Debtor and certain related parties, that Himalaya Exchange and various other affiliated Himalaya entities are "all under the leadership of the Debtor"[3] and "business vehicles for the Debtor."[4]

However, except for the reality that "leadership" is a meaningless term in the law, this is clear error and is not possible.   The "Debtor" here is HAN WO KWOK.

The U.S. Department of Justice and the Grand Jury it convened have formally found that:

In Paragraph 11 of the indictment (which we assume the DOJ wrote for the Grand Jury to sign), the Grand Jury found:

> **"… Kwok held no formal position or title at the Himalaya Exchange."**

This raises the head-scratcher of what "leadership" means in a bankruptcy context.  Furthermore, the Grand Jury found in paragraph 11 of the indictment that the Himalaya Exchange was

> **"founded and operated through various entities he [Je] owned, which were based abroad."**

Thus, this Court has mistakenly or by being given bad information assigned "leadership" (whatever that is in the law) to Kwok whom the Grand Jury has found to have no role in the Himalaya Exchange, when the Grand Jury has found that the Himalaya Exchange is controlled by "various entities… which were based abroad" operated by Je.

Now, we don't know what various entities the Grand Jury identified, but in normal usage of English it would indicate more than a handful of entities.  If the Himalaya Exchange were operated by a fair number of "various entities" abroad, that means that no one entity had dominance over the operations of the Himalaya Exchange.  No one of these "various entities" could dictate operations of the Exchange.  At least we have been offered nothing but inkblot tests inviting us to imagine things that have not been stated.

**B.    CONFUSION OF ROLES**

A Chapter 11 bankruptcy, of course, like a personal Chapter 13 bankruptcy, is aimed at sustaining and continuing the affected business or businesses with the hope that the business(es) will emerge from bankruptcy having paid off all or most debts to the extent possible.  Therefore, it would be mistake to view these matters in terms of Kwok hiding assets from his creditors

when a successful Chapter 11 process would be aimed at eventually paying all of those creditors back to the maximum extent achievable.[1]

This is often pursued by the businesses continuing to operate.  If the businesses cannot continue to operate than most likely a Chapter 7 bankruptcy would be appropriate or might emerge as the only viable alternative after an attempted Chapter 11 Reorganization

On Kwok's petition, Luc Despins was appointed by the Bankruptcy Court as the Chapter 11 Trustee.  That Court entrusted Despins with the qualifications, capabilities, and diligence to administer the bankruptcy and what looked from the start like a fairly complex one at that.

Everyone is entitled to consult an attorney.  But despite billing $21 million submitted to the Bankruptcy Court, is he not qualified to be Trustee?  Is the law firm of Paul Hastings actually the Trustee?  Having noted this, counsel will address all further business directly to Luc Despins, which of course he can review with attorneys.  Although he seems to be represented by counsel, Despins is also designated by statute as the authorized representative of the bankruptcy estate. The Trustee has greater responsibilities to act in his own name than the average person.

 The Bankruptcy Court determined that "The Trustee is an experienced bankruptcy professional."  at Case 22-05003 Doc 247 Filed 06/26/23.

Therefore, why should anyone be contacting the Trustee through the law firm of Paul Hastings?  Why can't the Trustee administer the Chapter 11 without having the law firm do all of the Trustee's work?  Counsel's clients are being bled dry first by the Trustee and then again by the Trustee's lawyers?  And the Trustee has the effrontery to cast aspersions on the Himalaya Exchange and its customers.

---

[1]        https://www.uscourts.gov/services-forms/bankruptcy/bankruptcy-basics/chapter-11-bankruptcy-basics

Counsel concludes that all parties should be dealing with the officially-appointed Trustee directly and keeping legal fees for advice to the Trustee to a minimum.

### C.      IDENTITY OF THE HIMALAYA EXCHANGE

Counsel for Luc Despins notes that he is not aware of an entity known as the Himalaya Exchange.   The Himalaya Exchange--which both the DOJ and Trustee seems to have ignored – has no connection  with United States jurisdiction  and no one can be a member (investor, depositor) who is a U.S. person, U.S. resident, or anyone acting on behalf of any U.S. person or resident.  This crucial fact may have been overlooked because the Trustee has not realized that there is a Himalaya Exchange has nothing to do with Kwok's Chapter 11.

However, the Trustee has spent at least $21 million in legal fees and costs conducting investigations.  It is inconceivable for him to suggest that he made no inquiries as to the Himalaya Exchange, including basics such as (a) what the Grand Jury found, (b) the home jurisdiction, and (c) the governing documents which are on the Exchange's website.

### D.      TRUSTEE SEEKS TO CONVERT CHAPTER 11

This circumstance in itself is questionable and clearly shows this set of events and objections have only arisen because his plan to try and act as a receiver and administer the funds is now being challenged. This of note being a different role to that of a chapter 11 trustee. It is very apparent that there are ongoing discussions with the trustee and the DOJ and indeed he references that he wishes to approach the DOJ at the bankruptcy hearing in August 2003 (Exhibit I Docket 198-12) to act as the receiver to administer the Funds. This makes no sense as if he could prove it to be belonging to the Chapter 11 estate then he would not need to act in any capacity as a receiver or refer to that before the Bankruptcy Judge. It is apparent that he knows

that this does not come within the Chapter 11 otherwise there would be no reference to him trying to speak to the DOJ to act as a receiver for the administration of these funds. He has no authority to simply step in and suggest he should undertake a role which has nothing to do with him. He's further not the appropriate person to be undertaking that role and there could be a clear conflict of interest as has occurred here where he now has changed tact in a very a short space of time highly correlated to the filing of this action and is now suggesting that this money belongs to Kwok and not only is it possibly part of the chapter 11 case but that this action somehow interferes with the administration of the chapter 11. This the conduct has been seen before by the trustee where he accepted the $37 million  loan given to the boat company as a security for the boat and a court order was made to that effect and made no suggestion that this money was part of the Chapter 11 estate. As soon as the boat was returned he changed his stance and made an application that boat company was part of the Chapter 11 estate and therefore the money loaned to it belonged to the estate. He then proceeded to claim that $11 million in legal fees should first be settled out of the money loaned by the exchange. These issues are highlighted because the course of conduct raises significant concerns regarding the safeguarding of customer funds. His shifting stance doesn't appear to stem from any new findings but rather resembles a recurring strategy. The examples provided serve to underscore these growing concerns.

The Trustee could not in any view act in both the capacity as a trustee and a receiver of these funds. The receiver should not be in the position of the Trustee and must be impartial in assessing the claims on actual evidence and administering the return of the funds.

He has not addressed this point as it does not favor him and this is a serious concern and a conflict of interest on any given view of him attempting to act in a capacity as both. His conduct so far is not that of an impartial receiver as he seems to claim everything under the

chapter 11 estate without any evidence in support whilst incurring substantial legal fees. This cannot simply be ignored.

With the Mawah Mansion even where the DoJ as part of their case says that the house was allegedly bought from Gclub members fees, yet somehow he stipulates that the proceeds of an unproven fraud amount to money belonging to the alleged defendant and his estate should be awarded the proceeds of a crime to administer. If the DoJ case is correct then those Gclub member funds belong to those victims and on any view do not belong to Kwok, whether as an individual, as a Debtor-Petitioner, or officer of any entity.  The Trustee is now attempting to do that with this customer money. It would be wholly unjust for the Court to allow this conduct to continue to affect the Himalaya customer funds.

Please note that questions or concerns about how things will be managed do not change the fact the funds belong to the Himalaya Exchange customers, either as their deposits and/or as the operating funds necessary to make the Exchange continue operation.

One question is whether the DOJ is up to the task of routinely handling restitution of victim's losses back to those victims and we are hopeful this answer will be in the resounding affirmative in the very near future.

### E.    DEFENDANTS ROBBED THEMSELES?

The Trustee, like the DOJ, are of the opinion that Kwok, Je, and Wang defrauded people. But whom?   If the customers of the Himalaya Exchange are not genuine investors, then where did the money come from?  Whom did the Defendants defraud if there are not close to 10,000 members / investors in the Himalaya Exchange, of which counsel represents 3,859 (and growing)?

The DOJ and Trustee would seem to be thinking that Kwok, Je, and Wang defrauded

themselves out of up to $609 million.  If the customers of the Exchange were really just Kwok,

Je, and Wang, then whom did they defraud?  And if nobody, what are the grounds for seizure?

Even more perplexingly, the money has not disappeared—its all intact.

**F.     THE RESERVE FUNDS OF THE HIMALAYA EXCHANGE ARE NOT PART OF THE CHAPTER 11 ESTATE NOR DO THEY HAVE ANY RELATION TO ANY TRANSACTION ALLOWING FORFEITURE**

Luc Despins, by counsel several times avers that the reserve funds of the Himalaya

Exchange "***may***" be part of the Chapter 11 estate.  This is a tacit admission that there has been as

of yet no evidentiary showing or ruling by the U.S. Bankruptcy Court for the District of

Connecticut concerning the funds of the Himalaya Exchange.

After $21 million invoiced for the Trustee's work, with more invoices mentioned coming,

and all of the resources of the Federal Government, there is no decision or basis for treating the

funds as being under the administration of the Chapter 11 Trustee.

The Trustee asserts that the Bankruptcy Court must be given the opportunity to rule on

whether alleged customer funds are the property of the Chapter 11 estate.  Well, of course, that is

true, but it comes quite late.  It is unfortunate that this is split between a DOJ investigation and a

Chapter 11 Bankruptcy.  Even worse that we don't officially know yet if the Defendants are

actually guilty of anything, at this stage in this case.  But we do have at least $21 million worth

of work by the Trustee with more invoices in the pipeline and the entire resources of the Federal

Government.  And yet, there is no evidence that the Himalaya Exchange reserve funds are

directly or indirectly the property of the Bankrupt Kwok.

The Bankruptcy Court has an opportunity that it has not availed itself of.  If there is no

decision that the Himalaya Exchange funds constitute property of Kwok, how long do the

innocent victims have to wait?  The undersigned counsel's clients have suffered actual, real-

world, sometimes life-changing harm.  When is this opportunity to decide going to be employed?

Counsel's clients invested funds intended for house purchases, children's college education, retirement, etc.  The money seized by the DOJ is not just a number, but real people's lives.

The reserve fund should not be plundered for other purposes.

Recall that the Chapter 11 case was opened by the Petition of Kwok.  The indictment here in this case states about two times emphatically that Kwok has no title or role in the Himalaya Exchange.  Therefore, based on the indictment we as of yet have no basis for seeing that the Himalaya Exchange's money is part of Kwok's Petition under Chapter 11.   At most, the indictment claims that Je – not Kwok – set up the Exchange but also that the Exchange is operated by other foreign businesses outside of the United States, over which the United States of America has no legal jurisdiction.

### G.    THE RESERVE FUNDS ARE HELD IN TRUST FOR DEPOSITORS

The reserve funds that have been seized by the DOJ are held in trust for the Exchange's customers / depositors / investors.  Therefore, the funds are an asset secured as collateral for the Exchange Customers.  These funds are not on the same terms as just funds in an unsecured bank account.  The reserve fund is held in trust by the Himalaya Exchange customers for the benefit of those customers.  They are not owned free and clear by anyone else.

The Trustee argues that funds deposited with a bank are the property of the bank.  But they are not.  First, they are held in trust to the depositors and the bank – which often has "trust" in its name – is a fiduciary holding the funds for another.  True, the fractional (less than 100%) reserve system in U.S. banks requires the bank to juggle funds and seek to satisfy all of its needs.

But funds received from depositors are owned by the depositors particularly when those funds are held in trust at a 100% reserve rate until redeemed.  Indeed, in any prosecution and even this one the bank balance shown in Kwok's depositor accounts in banks would be claimed by DOJ to be actual wealth of Kwok.  The full amount deposited will be treated by DOJ as Kwok's property, even if secured in the bank by less than 100% reserves.

Moreover, if a bank were to fail or struggle, the Government would intervene and manage the bank and funds held for the benefit of depositors first and foremost.

Similarly, a landlord of an apartment complex cannot take security deposits from 300 tenants and go on a world cruise with the security deposits.  The deposits belong to the tenants, subject to conditions that they do not damage the apartment, clean it, etc., etc.

### H.   GENUINE VS. CONTRIVED HIMALAYA EXCHANGE CUSTOMERS

The Trustee, like the DOJ, clearly wants to tackle the entire Himalaya Exchange on the speculation that maybe some of the accounts are actually Kwok, Je, and/or Wang.  But that is irrelevant even if it might be true.  The genuine investors should not be pillaged on the mere possibility that in setting up the Exchange its architects held a few digital coins for themselves.

The suggestions of the Trustee amount to the inference that this court is not capable of doing the necessary checks involved--returning the funds back to the victims. This Court is the correct Court to administer these Funds—particularly in light of security and safety concerns-- and it is fully competent to undertake that task. In the course of that task if any funds appear to be in the name of Kwok then those funds no doubt will be isolated and the Trustee can make a claim.

The suggestion of claiming Chapter 11 on the entire customer funds, even those traced to Je or Wang, has no legal basis and the Trustee has no jurisdiction as a trustee to interfere or

instigate an injunction or make any claims at this stage.  For the court to allow interference from

a trustee on these grounds is wholly unjust and further adds substantial legal cost for them to

defend this now in addition in the Bankruptcy Court. The Trustee's suggested course is merely

depleting funds, loss of customer assets and depreciation in value of the assets as indicated in the

last motion. The trustee or the DOJ have failed to both address that these funds are linked to a

stable coin and the effect of that reserve being depleted or lost affects the ability of the customers

to sell their trading coin and retrieve any funds back. The Trustee has not addressed the point in

relation to the catastrophic losses that will occur if these funds are nor restored or how he even

contemplates minimizing that occurrence.

Rather, the criminal proceeding and the Chapter 11 Trustee would, at most, investigate

Kwok, and not destroy the entire Exchange.  Again, if the only people who invested in the

Himalaya Exchange were Kwok, Je, and/or Yang, then whom did they defraud?  Only

themselves? As can be seen from the forensic report the accounts are real people, genuine

investors, and innocent third parties.  The Government must preserve the accounts and property

of innocent, third parties.

The Trustee references the belief that the victims and creditors of Kwok have made

investments in the Himalaya exchange. This still does not bring it within the Chapter 11 as the

exchange is not owned by Mr. Kwok.

As can be seen from the recently served forensic review of the customers, see Exhibit F,

that are represented that they are clearly real, they have been properly vetted and have ID and are

real persons. This report being conducted by independent lawyers and forensic accountants, who

have no affiliation to Counsel and or the exchange clearly show an independent review of the

exchange database with a bank statements and  financial records that these customers are real

and have proper Exchange accounts and balances. These are not unnamed customers they are identified by their Himalaya account number HID for real safety concerns. The knife picture being a compelling piece of evidence now before the Court, trustee and DoJ. Although neither the trustee or DoJ comment on this but simply ignore it and carry on their repetitive non evidential stance of throwing unwarranted accusations.

In relation to the suggestion that Kwok has used thousands of customers worldwide to park his assets there is simply no evidence to show this occurred. The DOJ are in full possession of the banking evidence from the exchange's bank accounts. These clearly show these customers and many others depositing funds from their own accounts into the exchange and redeeming their money. It is inconceivable that this trustee is suggesting this stance in an effort to suddenly claim these under the Chapter 11. The DOJ needs to be held accountable for allowing or at the very least not responding and failing to correct this inference. This is not even part of the indictment case and if all the money does belong to Kwok then where is the fraud which is the whole basis of the indictment? Both the DOJ and the trustee seem to think that they can throw out these meritless assertions and that no one will notice that there is no actual evidence to support these claims. The Customer action has received from the exchange a compelling independent report by reputable forensic independent accountants overseen by independent lawyers verifying the centricity of this claim. This is actual evidence the court should take into account and not the assertions and analogies drawn by the trustee who is not even compassionate or ashamed in carrying out this course of conduct.

I. **MISAPPROPRIATION OF CUSTOMER FUNDS**

There is also a real risk that other creditors will obtain the funds of these customers. There are clear indications of that intention by the trustee in an August 2003 hearing (Exhibit I Docket 198-12). Heavy referencing to deciding who will be able to claim and who is a victim being left to this trustee who has already indicated serious prejudicial and defamatory comments by way of reference to the injunction and that somehow without any evidence whatsoever that these customers who are outside the United States have some connection to this historic conduct. These customers took no action direct or indirect against this Trustee for him to make these assertions and suggestions that properly instigated legal proceedings somehow is akin to the harassment outlined in the historic events which led to the injunction. In making these comments and applying this repeated commentary to innocent customers where there is no evidence of any harassment clearly shows a biased individual who is prepared to lodge unwarranted accusations to divert attention away from the proper legal basis upon which these claims have been made.

The justice being suggested by both the DOJ and the trustee amounts to unwarranted seizures, passage of a substantial time period prior to any return of funds, depletion of funds and claims being made by the trustee to further delay and have their funds given to others, not to mention imposition of exorbitant fees. Exchange customers should in no way be mixed with creditors of the Chapter 11 estate as they do not fall within this category and it would be wholly unfair and unjust to take money away from clearly identifiable victims' accounts and give that money to a creditor who has no right of claim. Further there is a concern that this creditor has serious links to China as does the trustee. The court may think these submissions are harsh however these people face that reality and this simply cannot be brushed under the carpet and ignored that there are connections with both the creditor and the trustee to China.

### J.        TRUSTEE'S FINDINGS ARE NOT DECISIONS OF A COURT

Luc Despins presents several of his beliefs, decisions, or conclusions as though they carry the weight of official court determinations and concrete evidence supporting those claims. While a Trustee indeed possesses distinct responsibilities that necessitate sound business judgments, it doesn't justify presenting all assertions based merely on speculation and past events concerning others. Such an approach seems designed to divert attention from the genuine issues and the legitimate legal reasons for intervention. None of the statements provided offer compelling evidence or logical justification. The Trustee's obligations, as defined by the statute, differ significantly from those of a mere observer. However, when these actions impact third-party rights or have a decisive influence on contested matters, the Trustee's beliefs and actions must be presented with genuine integrity and a solid foundation, which appears to be lacking in this instance.

### K.        JUDICIAL SYSTEM RUNS ON PROOF, NOT STORIES OR GUESSES

Luc Despins also recites that judges previously found that Kwok had hidden assets from creditors.  That would require actual facts showing where Kwok hid those assets.  If as Despins argues Kwok can be proven to have hidden assets, that would require facts showing where those assets were hidden.  Or at least some chain of transactions constituting proof.  There is no hidden asset scenario in the customer motion. It is clear from the recent forensic review there is nothing of the sort. Therefore, these anecdotes are not relevant if those incidents do not show any substantial funds going from Kwok to the Himalaya Exchange.  The DoJ have the banking evidence from the Himalaya Exchange bank accounts for months along with supporting compliance information and it has not raised any evidence of this kind.

15

Therefore, if there is evidence that Kwok hid assets in other places – but no evidence of it being through the he Exchange – this does not help the Trustee's position.

Ownership of the reserve funds must turn on facts, not suspicion.

Furthermore, if like 10,000 other people, Kwok, had invested some of their own funds in Himalaya crypto-currency, on the same terms as thousands of other people, then this Court will establish that in the process of identifying which victims are due their money, those suspected funds if any would be held by the DoJ and the Trustee can then come in and claim that account if one exists. If one was to take the analogy of the Trustee, then no customers exist and thousands around the world are acting on the instruction of Kwok and all of their money from their own accounts somehow all belongs to Kwok and the chapter 11 estate. This is far from plausible on any given view.   If the Exchange grew, their own investment in it might become more valuable. That could be true even with no personal control or influence over the Exchange.  It is clear here that there are thousands of other customers and it is their investment that the trustee is trying to assert belongs to Kwok. This is categorically legalizing theft under the guise of a exercising his powers as a trustee. There is not even a remote link between the seized funds and Kwok and we will tie the source  inextricably to my innocent exchange customers. One who is optimistic about Tesla Motors might share or even promote her vision for why it will grow even if she has no control or management role of any kind.

**L.    <u>OTHER ANECDOTES ARE ONLY SPECULATION</u>**

Similarly, the Trustee raises suspicion that people might have sympathy for or support for Kwok.  But that in itself tells us nothing.  They would be very likely outraged by believing that the inspiration for several businesses they were interested in was being treated unfairly.  It is a very bad idea to show up at an official's home to protest, but for someone to show up at a

demonstration does not require that they had ever had any contact with Kwok before.  People can be motivated purely by what they perceive to be injustice with no personal relationship at all. And a protest can be their first involvement. To use this as a plausible legal basis for denying victims their money back not only has no proper logic let alone any proper legal basis, it's a fallacious argument.

### M.   KWOK HAS NO CONTROL OVER HIMALAYA EXCHANGE

The Trustee brushes aside the reality that neither this Court, the DOJ, nor the Bankruptcy Court has any jurisdiction over the Himalaya Exchange, which is a company in the British Virgin Islands.  The indictment claims that Kwok has no control over the Exchange.  It claims that Je has some leadership role through non-U.S. parent businesses.

The Trustee responds that the Chapter 11 Trustee has authority:

> "Pursuant to section 541 of the Bankruptcy Code, property of a chapter 11 estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case" "wherever located and by whomever held." 11 U.S.C. § 541(a)(1) (emphasis added)."

Yes, but that is exactly the question.  That is not an answer to the question.

Again, the DOJ's indictment avers that Kwok has no title or role or control over the Himalaya Exchange.  The Trustee tacitly admits that there has been no ruling to the contrary.

The indictment asserts that the Himalaya Exchange is operated by non-U.S. foreign companies or entities.  The Exchange has no offices or activities in the United States.  Its membership agreements and governing documents forbid any U.S. person or resident or their agent from participating in the Exchange.  This would include Kwok.

If we ***speculate*** that the Himalaya Exchange were holding (say) a hypothetical $300,000 of cryptocurrency for Kwok in his own individual trading account, of course Kwok's personal

investment in the Exchange like any other customer would be Kwok's funds and might be subject to this case in forfeiture or distribution to creditors in the Chapter 11.

However, Kwok would be forbidden by the governing documents of the Exchange from being a member (investor) or trading any coins or holding any coins there.  The Exchange was specifically designed to not allow any contact with the United States or U.S. investors.  Thus if Kwok is a U.S. resident, his membership in the Exchange would violate its terms.

The question is what about the other 9,997 investors in the Himalaya Exchange's crypto-currency?  Does Kwok have any "legal or equitable interests?"  So far, all facts point to no.  One would imagine that the DOJ would have figured that out before presenting the draft of the indictment to the Grand Jury for its signature.  We should already know.

## III.    CONCLUSION

Customers of the Himalaya Exchange should be allowed to proceed with their Motion for Return of Property including what evidentiary showings and hearings both sides may need to present.

Any allegations against Kwok should not be levied against innocent victims and it is very clear from these trusty submissions he is trying to suggest every angle he can in order to persuade the court that there is some insincerity in this genuine application. The proper course is for this court to hear and see the actual evidence that these customers are real and it is their own money and their own assets that are at stake. The customers deserve to have their evidence presented under this Court's supervision in a secure manner, without meritless and baseless interference from a trustee who has not an ounce of empathy for victims in this case.

Dated:  December 26, 2023                    RESPECTFULLY SUBMITTED

/s/ Jamie Scher
Jamie Scher
NY 2488435
Myer and Scher LLP
377B South Oyster Bay Road
Plainview, NY 118013
Jamie@myerandscher.com
(516) 713-0655

/s/ Brad Geyer
Bradford L. Geyer, PHV pending
NJ 022751991
Suite 141 Route 130 S., Suite 303
Cinnaminson, NJ 08077
Brad@FormerFedsGroup.Com
(856) 607-5708

**CERTIFICATE OF SERVICE**

I hereby certify that on December 26, 2023, a true and accurate copy of the forgoing was electronically filed and served through the ECF system of the U.S. District Court for the Southern District of New York.

/s/ <u>Brad Geyer</u>
Bradford L. Geyer, PHV pending
NJ 022751991
Suite 141 Route 130 S., 303
Cinnaminson, NJ 08077
Brad@FormerFedsGroup.