# Exhibit A

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## BRIDGEPORT DIVISION

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| HO WAN KWOK, | : | Case No. 22-50073 (JAM) |
|  | : |  |
| Debtor. | : |  |
|  | : |  |

**THE INDIVIDUAL DEBTOR'S OBJECTION TO MOTION FOR ORDER AUTHORIZING (A) CHAPTER 11 TRUSTEE TO USE POTENTIALLY PRIVILEGED DOCUMENTS IN BOMBARDIER ADVERSARY PROCEEDING ON A SEALED BASIS WITHOUT WAIVER OF PRIVILEGE OR, ALTERNATIVELY, (B) LIMITED WAIVER OF TRUSTEE PRIVILEGE AS TO SUBJECT MATTER OF BOMBARDIER AND BOMBARDIER PROCEEDS**

The individual debtor, Ho Wan Kwok (the "Individual Debtor"), by and through his undersigned counsel, Zeisler & Zeisler, P.C., respectfully submits his Objection to the Chapter 11 Trustee's (the "Trustee") Motion for Order Authorizing, (A) Chapter 11 Trustee to Use Potentially Privileged Documents in Bombardier Adversary Proceeding on a Sealed Basis Without Waiver of Privilege or, Alternatively, (B) Limited Waiver of Trustee Privilege as to Subject Matter of Bombardier and Bombardier Proceeds (the "Privilege Waiver Motion"), and in support thereof respectfully states:

## I.  PRELIMINARY STATEMENT

1. The Individual Debtor opposes the Privilege Waiver Motion to protect his rights in the criminal action pending against him in the United States District Court for the Southern District of New York captioned *USA v. Kwok*, 1:23CR118 (the "Criminal Action"), and more particularly to prevent the United States Attorney's Office from obtaining and using against him attorney-client privileged communications that it would not be able to obtain absent the privilege waiver sought by the Trustee.

2.  The Trustee is fully aware that the Individual Debtor opposes the Trustee's waiver of privilege because the Individual Debtor is gravely concerned about the effects such a waiver would have in the pending Criminal Action. Indeed, the Trustee's counsel was told as much on multiple occasions while counsel engaged in discussions to try to arrive at a resolution of the present dispute, and the potential for the Trustee to waive attorney-client privilege is a primary focus of the Individual Debtor's Motion for an Order and Writ Staying Bankruptcy Cases which is pending in the Criminal Action. (*See* Criminal Action Doc. No. 131, at 23-25, filed in this case by the Trustee at Doc. No. 2158). Despite this knowledge, the Trustee still goes to great lengths to disparage the Individual Debtor and his motives for refusing to consent to a privilege waiver while he is incarcerated and fighting to regain his liberty.

3.  During the discussions between counsel regarding the Trustee's requested privilege waiver, the Individual Debtor's counsel invited the Trustee's counsel to provide authority permitting this Court to enter an enforceable order that would allow the Trustee, as the holder of the attorney-client privilege, to provide the documents at issue in this motion to the defendant's counsel in *Despins v. Guo*, Adv. Pro. No. 23-05008 (JAM) (the "Whitecroft Adversary"), as he would be required to do in order to affirmatively use them, and then affirmatively use those same documents to prove his claims in the Whitecroft Adversary, all without waiving any applicable privilege as to the documents.

4.  The Individual Debtor's counsel only asked the Trustee's counsel to provide such authority because the Trustee's counsel had suggested that a consensual order of the type now sought via the Privilege Waiver Motion could allow for the Trustee's affirmative use of attorney-client privileged communications while preserving privilege, and the Individual Debtor's counsel wanted to satisfy themselves that what the Trustee's counsel was suggesting was possible. The

2

Trustee's counsel never provided the requested authority, and the Individual Debtor's counsel has likewise been unable to locate any such authority because the voluntary disclosure of privileged information, which is what the Trustee as the privilege holder seeks to do, constitutes a privilege waiver.

5. In the alternative, and again completely ignoring the Individual Debtor's stated legitimate concerns about the impact of a privilege waiver in the Criminal Case, the Trustee asks this Court to waive the attorney-client privilege, but fails to undertake the necessary analysis balancing the Trustee's needs for the documents at issue against the harm to the Individual Debtor of a waiver of the attorney-client privilege.

6. The Trustee fails to conduct the requisite balancing test because he knows that the scales tip decidedly in favor of the Individual Debtor and the denial of the requested privilege waiver.

7. The Trustee misleadingly identifies and attaches to the Privilege Waiver Motion a much broader set of documents then are truly at issue because some of the documents are duplicative of one another, and with others the Individual Debtor does not even contend there is any attorney-client or other privilege to protect. The Trustee also fails to articulate why the handful of documents at issue are vital to proving his claims in the Whitecroft Adversary and why he cannot do so without them in light of the information he has obtained in the Whitecroft Adversary from third-parties, and through the more than 220 2004 Examinations this Court has authorized, many of which have presumedly been conducted. Indeed, the information for which the Trustee seeks to waive the attorney-client privilege via the Privilege Waiver Motion was obtained via Rule 2004 Examinations, not as part of the discovery process in the Whitecroft Adversary. Surely the Trustee has obtained nonprivileged information as part of his investigation that could be used to

3

support his claims in lieu of the documents at issue. The fact that the Truste may want to waive privilege rather than utilize other evidence should not be a sufficient reason to waive privilege. Indeed, under the present circumstance a privilege waiver should be permitted only as a last resort, not for convenience.

8.     Lastly, the Trustee's half-hearted and indirect argument that because the Individual Debtor and Ms. Guo are represented by the same counsel the Individual Debtor's attorney-client privilege has somehow been waived as to Ms. Guo is unsupported, unsupportable, and must be rejected.

## II.     BACKGROUND

### A.     The Privileges Order

9.     On February 15, 2022 the Individual Debtor filed his voluntary petition for relief under Chapter 11 of the Bankruptcy Code, and on July 8, 2022, this Court entered its Order Granting Appointment Of Chapter 11 Trustee (Doc. No. 523), granting the appointment of the Trustee as Chapter 11 trustee in this case.

10.    On July 28, 2022, within weeks of his appointment, the Trustee filed the first three of what would become numerous motions to conduct Rule 2004 examinations. The first three motions included the motion to conduct a Rule 2004 examination of the Individual Debtor (Doc. No. 636) and motion to conduct Rule 2004 examinations of "various legal and financial advisors to the [Individual] Debtor" (the "Professionals 2004 Motion") (Doc. No. 637). The Professionals 2004 Motion sought leave to obtain documents and testimony from twelve different law firms or attorneys who had potentially provided legal services to the Individual Debtor (Doc. No. 637, at Exhibit B).

11.    On August 22, 2022, the Trustee filed his Motion . . . For Entry of Order (A)

4

Providing That Control of Any Attorney-Client Privilege, Work Product Protection, and Other Privileges Related to Rule 2004 Subpoenaed Documents Passed to the Trustee Upon Appointment, [and] (B) Directing that [the Individual] Debtor and Other Examinees not Withhold Documents on Account of Such Privileges, . . . (the "2004 Exam Privileges Motion" (Doc. No. 777)). The Individual Debtor opposed the 2004 Exam Privileges Motion. The dispute was resolved on September 14, 2022 via the entry of a Consent Order Regarding Control of Attorney-Client Privilege and Work Product Protection Related to Rule 2004 Subpoenaed Documents and Information (the "Privileges Order" (Doc. No. 856)).

12. The Privileges Order provides that the Trustee controls the Individual Debtor's attorney-client privilege and/or work-product protection with respect to specifically enumerated topics defined in the Privileges Order as the Investigation Topics, and further provides that with respect to the Investigation Topics:

> Neither the Debtor nor his counsel (based on instructions from the Debtor or any person acting on behalf of the Debtor), nor any other examinee, is entitled to withhold any of the documents and information requested in the attachments to the Rule 2004 subpoenas on the basis of any Trustee Privileges concerning the Investigation Topics.

(Privileges Order, at ¶¶2-3). Thus, the intent of the Privileges Order was to allow the Trustee to conduct his investigation, and in particular via the use of Rule 2004, without concern that documents or information would be withheld on the basis of the Individual Debtor's attorney-client privilege and/or on the basis of attorney work product.

13. The Privileges Order reserves to the Individual Debtor the right to assert privilege over "legal matters unrelated to the Investigation Topics, such as unrelated criminal allegations or the Debtor's asylum application . . .". (Privileges Order, at ¶4).

14. The Privileges Order does not permit the Trustee to waive the attorney-client privilege or work product protection:

5

> . . . provided, however, the Trustee shall not be entitled to waive any Trustee Privilege (for example, by disclosing privileged documents or information in open court or on any public docket or by sharing such documents or information with a third party) absent the Debtor's written consent or further order of the Court, . . .

(Privileges Order, at ¶5).

15. On the morning of March 15, 2023, a twelve count indictment was unsealed in the United States District Court for the Southern District of New York charging the Individual Debtor with various federal crimes. The Individual Debtor was arrested by federal law enforcement authorities on March 15, 2023. On March 29, 2023, a superseding indictment was filed in the Criminal Case. (Criminal Case, Doc. No. 19). The Individual Debtor remains in custody awaiting trial which is currently scheduled for April 2024. Thus, from the Individual Debtor's perspective, the world in which the Privileges Order entered bears no resemblance to the world today, and it is the state of the world today that drives the Individual Debtor's position vis-à-vis the Trustee's effort to waive attorney-client privilege.

### B. The Whitecroft Adversary

16. The Trustee Commenced the Whitecroft Adversary on May 16, 2023, seeking to recover, *inter alia*, the proceeds of a purported post-petition sale of alleged estate property, a Bombardier aircraft.[1] Mei Guo ("Ms. Guo") is the only named defendant in the Whitecroft Adversary.

17. On or about July 31, 2023, the Trustee served written discovery requests, interrogatories, requests for admission, and requests for the production of documents, on Ms. Guo in the Whitecroft Adversary (the "Trustee Discovery). Ms. Guo responded to the Trustee Discovery on or about August 30, 2023, and invoked her Fifth Amendment rights against self-

---

[1] The Trustee seeks other relief in the Whitecroft Adversary but the documents at issue relate only to the Bombardier aircraft.

6

incrimination in response to each request in the Trustee Discovery. The Trustee did not move to compel or otherwise seek leave of Court related to Ms. Guo's invocation of her Fifth Amendment Rights in response to the Trustee Discovery.

18. Ms. Guo was deposed in the Whitecroft Adversary on November 1, 2023, and invoked her Fifth Amendment rights against self-incrimination in response to a number of the questions posed. The Trustee did not move to compel or otherwise seek leave of Court related to Ms. Guo's invocation of her Fifth Amendment Rights in response to questions posed to her during her deposition.

19. Ms. Guo served discovery on the Trustee in the Whitecroft Adversary, including requests for the production of documents.

20. To date and based on the Bates stamps applied to documents by the Trustee, the Trustee has produced 8896 pages of documents to Ms. Guo in response to her requests for production, a subset of the more than 49,000 documents the Trustee's counsel represented that search terms run against document productions obtained by the Trustee pursuant to Rule 2004 had captured for further review by the Trustee's counsel in connection with Ms. Guo's discovery requests. (*See* October 9-12, 2023, email chain between, among others, the Trustee's counsel and the Individual Debtor's counsel, at October 9, 2023, 9:49 pm email. A copy of the email chain is attached hereto as Exhibit A).

21. In connection with his search for documents responsive to Ms. Guo's requests for production the Trustee identified potentially privileged responsive documents and asked the Individual Debtor's counsel to consent to the production of those documents to Ms. Guo without undertaking any review. (*See generally id*).

22. The Individual Debtor's counsel informed the Trustee's counsel that the Individual

7

Debtor had not agreed to waive privilege and stated that the same process used to review privileged documents prior to production in *Despins v. Greenwich Land, LLC, et al.* Adv. Pro. No. 5:23ap05005, should be used in the Whitecroft Adversary so that an informed decision regarding privilege could be made and any disputes could be limited. (*Id.*, at October 10, 2023, 4:40 pm email and responses thereto).[2]

23. The Trustee thereafter agreed to proceed in the same manner utilized in the Greenwich Land adversary proceeding and provided to the Individual Debtor's counsel 246 documents to review to determine the scope and substance of the waiver the Trustee was seeking, and to determine whether the Individual Debtor viewed each of the provided documents as privileged.[3]

24. Of the 246 documents provided for review, the Individual Debtor's counsel identified a total of 131 that the Individual Debtor viewed as privileged and objected to being produced, disclosed, or used for any purpose. The Individual Debtor further identified five (5) documents that included privileged information and his counsel returned to the Trustee redacted versions of those documents identifying those areas deemed to contain privileged information.[4]

---

[2] In the Greenwich Land adversary proceeding the Trustee's counsel requested the Individual Debtor's consent to produce potentially privileged documents to the defendants. The Individual Debtor's counsel requested to review the documents before providing the Individual Debtor's position on the request for consent. The documents were provided to the Individual Debtor's counsel, reviewed, and the Individual Debtor identified the documents which he did not believe were subject to privilege, which could be immediately produced, and those that were subject to privilege and for which the Individual Debtor would not consent to production. The process utilized in the Greenwich Land adversary appeared to work well and did not result in any dispute presented to the Court. Thus, the Individual Debtor's counsel requested that the same process be used in the Whitecroft Adversary.

[3] It appears that the Trustee is treating every document obtained from a law firm or lawyer that may have previously represented the Individual Debtor as privileged. Thus, part of the Individual Debtor's Counsel's review included analyzing whether a document was even subject to attorney-client privilege.

[4] One of the documents the Individual Debtor's counsel returned to the Trustee in redacted form is included as an Exhibit to the Privilege Waiver Motion, Exhibit J, without the redaction which

8

25. The individual Debtor did not consider the other 101 documents privileged and did not object to their production, disclosure, or use. To the best of counsel's knowledge as of the filing of this Objection the Trustee's counsel has neither produced the documents identified as non-privileged to Ms. Guo's counsel nor provided a privilege log of the documents that the Individual Debtor identified as privileged but which the Trustee does not seek to affirmatively use and are therefore not at issue in the Privilege Waiver Motion.

26. Of the 136 documents that the Individual Debtor identified as privileged and to which he would not consent to a waiver only six (6) appear to be at issue as the remining 10, the Privilege Waiver Motion attaches 16 exhibits, do not appear to have been provide to the Individual Debtor's counsel for review based on the lack of the Bates stamp prefix "MGAP" which was affixed to the documents provided for review

### C. The Documents at Issue

27. The Privilege Waiver Motion includes as Exhibits A-P the documents for which the Trustee seeks to waive privilege. The Individual Debtor does not contend that the following documents are subject to attorney-client privilege: Exhibits C, G, O, and P (Exhibit G, O, and P do not include the MGAP Bates prefix, and the Individual Debtor has not located Exhibit C in the documents provided by the Trustee's counsel for review).

28. The Individual Debtor does not contend that the following portions of Exhibits attached to the Privilege Waiver Motion are privileged:

- Exhibit F, all pages save for pages 137-140 (the Individual Debtor does contend that pages 137-140 contain privileged information);

---

gives the impression that the Individual Debtor is asserting that communications between non-lawyers are privileged, he is not.

9

- Exhibit J, all pages save for the first email in the chain at Bates stamp MGAP06178 from Ms. Wong to Mr. Shulman, and others, the email at Bates Stamp MGAP06198 from Mr. Shulman to Ms. Wong and others, and the email at Bates stamped pages MGAP06201-6203 between Ms. Wong and Messrs. Shulman and Barnett.

- Exhibit M, the email at Bates stamp WC-KWOK-BANKR 0004783 is claimed as privileged, while the email at Bates stamp WC-KWOK-BANKR 0004784-85 is not claimed as privileged.

29.   Certain of the documents attached as Exhibits to the Privilege Waiver Motion are duplicative of one another. Exhibit B consists of an email chain containing three emails, Exhibit D is one of the emails contained in the Exhibit B chain and Exhibit E consists of two of the emails contained in the Exhibit B chain. Thus, Exhibits B, D and E are effectively one document. Likewise, Exhibit I is an email chain consisting of four emails, three of which are included within the documents that constitute Exhibit H.[5]

30.   Based on the foregoing there is a very limited set of unique documents at issue on the Privilege Waiver Motion: Exhibits A, B (which includes D and E), F (pages 137-140 of the transcript only), H, I (only the first email in the chain is unique), J (only pages Bates stamped MGAP06178, MGAP06198, and MGAP 6201-6203 are at issue), K, L, M (only the email at WC-KWOK-BANKR 0004783 is at issue), and Exhibit N.

### III.   ARGUMENT

**A. The Trustee Provides No Authority That the Order He Seeks Will be Enforceable and not Simply Result in a Privilege Waiver**

31.   The Trustee asks this Court to enter an order permitting the Trustee, as the privilege

---

[5] Exhibit H is a composite exhibit that appears to be the entire contents of a law firm's file on a particular subject.

holder, to affirmatively utilize the documents at issue in the Privilege Waiver Motion to prove his claims in the Whitecroft Adversary, and to disclose them to Ms. Guo, the defendant in that adversary proceeding as he would have to do to utilize them, all without waiving privilege as to those documents.

32. The Trustee cites no authority that such an order would be enforceable and would preclude a third-party from obtaining the documents at issue because no such authority appears to exist. Indeed, the Trustee's affirmative use of the documents would constitute a privilege waiver regardless of the entry of the requested order.

33. The Trustee requested that the Individual Debtor agree to such an order and he refused to do so absent authority that the order would be enforceable against third-parties; the Trustee has not provided any such authority, either to the Individual Debtor or the Court in the Privilege Waiver Motion, and the Individual Debtor has not located any such authority.

34. The authority located by the Individual Debtor is to the contrary: the affirmative use of privileged information by the privilege holder, in this case the Trustee, constitutes a privilege waiver, and not just in the particular action in which the privileged materials are utilized. *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 445-46 (S.D.N.Y., 2011) ("Where a party voluntarily discloses privileged documents to an adversary in one proceeding, it cannot withhold the same documents on the basis of privilege in a subsequent proceeding, even if the subsequent proceeding involves a different adversary.") (citing cases). *See also In re Parmalat Sec. Litig.*, No. 04 MD 1653 (LAK) (HBP), 2006 U.S. Dist. LEXIS 88629, *28 (S.D.N.Y., Dec. 1, 2006) (noting that "voluntary or even inadvertent disclosure [of privileged communications] may result [in] a waiver of privilege" whereas compelled disclosure does not result in a waiver) (citations omitted); *Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3d 585, 598 (S.D.N.Y. 2015) ("with some exceptions,

11

the attorney-client privilege is automatically waived when a privileged communication is disclosed to a third party or litigation adversary.") (citing cases); *Speedfit LLC v. Woodway USA Inc.*, Case No. CV 17-768, 2019 U.S. Dist. LEXIS 56559, *13 (E.D.N.Y., March 28, 2019) (noting that the attorney-client privilege is not absolute and may be waived).

35. The intentional waiver of the attorney-client privilege by the Trustee of a handful of documents on a particular subject also creates the risk of a broader subject matter waiver. *Speedfit LLC*, 2019 U.S. Dist. LEXIS 56559, at *13 ("Subject matter waiver is a type of implied waiver 'which allows the attacking party to reach all privileged conversations regarding a particular subject once one privileged conversation on that topic disclosed,' and is grounded in 'fairness considerations at work in the context of litigations.'") (*quoting Falise v. Am. Tobacco Co.* 193 F.R.D. 73, 84 (E.D.N.Y. 2000). *See also*, Fed. R. Evid. 502(a) ("When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together.").

36. Because the Individual Debtor has grave concerns about the enforceability of the Order requested by the Trustee, and the concomitant ability of prosecutors to obtain at least the documents used by the Trustee that are otherwise privileged, and potentially much more if there is subsequently deemed to be a subject matter waiver, the Individual Debtor Objects to the entry of the Order requested by the Trustee.

B. **The Trustee Should not be Permitted to Waive Privilege**

37. In the alternative to the requested Order permitting him to affirmatively use

12

documents without waiving privilege, the Trustee asks the Court to enter an order permitting him to waive privilege as to the handful of documents at issue.

38. The Trustee cites several cases where a bankruptcy trustee was permitted to waive a debtor's attorney-client privilege, but the Trustee performs no analysis under the prevailing balancing test. That analysis leads to the inescapable conclusion that privilege should not be waived.

39. The majority of courts that have addressed the issue of a bankruptcy trustee's authority to waive a debtor's pre-petition attorney-client privilege have utilized a balancing test. *See Moore v. Eason (In re Bazemore)*, 216 B.R. 1020, 1023-24 (Bankr. S.D. Ga. 1998) ("The filing of bankruptcy by an individual debtor requires a determination as to whether anyone else controls the privilege. The inquiry requires balancing the interests of a full and frank discussion in the attorney-client relationship and the harm to the debtor upon a disclosure with the trustee's duty to maximize the value of the debtor's estate and represent the interests of the estate"). *See also*, *Ramette v. Bame (In re Bame)* 251 B.R. 367, 377 (D. Minn. 2000) (finding, based on the weight of authority, the balancing approach to be the applicable test in determining whether a bankruptcy trustee may waive a debtor's prepetition privilege); *Whatley v. Meyer Wilson Co., LPA (In re Chandar)*, Case No. 11-37360-B-7, Adv. No. 17-2057, 2017 Bankr. LEXIS 3903, at *2-3 (Bankr. E.D. Cal. Nov. 13, 2017) (collecting cases); *In re Still*, 444 B.R. 520, 522 (Bankr. E.D. Pa. 2010) ("The trend of the cases is toward a balancing approach.").

40. In applying the balancing test courts determine whether "on balance the trustee's duties to maximize the value of the estate outweigh the policies underlying the attorney-client privilege and the harm to the debtor of disclosure." *Ramette (In re Bame)* 215 B.R. 367, at 377 (citations omitted). *See also*, *Degirolamo v. Daily & Haskins (In re Wittmer)*, Case No. 08-61618,

13

2011 Bankr. LEXIS 4727, at *7 (Bankr. N.D. Ohio, Nov. 30, 2011) ("This [balancing] approach blends the argument that a trustee cannot waive the attorney-client privilege because of the potential for personal harm to the debtor and impediment of the attorney-client communication with the argument that a trustee can waive the attorney-client privilege if there is no adverse effect on the debtor.") (*citing In re Miller* 247 B.R. 704, 710 (Bankr. N.D. Ohio 2000)).

41. In this case the adverse effect of a privilege waiver to the Individual Debtor is substantial because he has been charged in a superseding indictment with multiple violations of federal criminal law, and the allegations of the superseding indictment mirror certain of the allegations of the Whitecroft Adversary complaint. (Compare Whitecroft Adversary complaint, at ¶¶13-19 accusing the Individual Debtor of using numerous shell companies to keep assets from creditors, with superseding indictment at ¶¶1-3, including at ¶3 ("To conceal the illegal source of the funds [the Individual Debtor and his alleged co-defendants] transferred, and directed the transfer of, money into and through more than approximately 500 accounts held in the names of at least 80 different entities or individuals, . . ."). Certain of the documents for which the Trustee seeks to waive privilege, Exhibits A, B (and D and E as subsets of B), and F, relate to purported contemplated asset transfers during the time period at issue within the superseding indictment, *i.e.*, "[f]rom at least in or about 2018 through at least in or about March 2023". (Superseding indictment, at ¶1).

42. Based on a review of the docket of the Criminal Case the prosecutors in that case have not sought leave to obtain any of the Individual Debtor's privileged communications. Of course, if the Trustee waives the privilege the prosecutor's would be entitled to obtain all of the documents to which the waiver applies, including any subsequent subject matter waiver that the Court may find. The potential for criminal liability is a factor that courts look to when conducting

14

the balancing test to determine whether privilege should be waived, and the potential for prosecutors to obtain access to documents that they would not otherwise be able to access should weigh even more heavily in refusing to permit waiver. *See Ramette (In re Bame)* 215 B.R. 367, at 377 ("As to other questions, however, especially those going to activities giving rise to potential criminal prosecution, the balance would probably tip in favor of sustaining assertion of the privilege, in which case the trustee would have the opportunity to raise the crime-fraud exception to the privilege.").

43. On the other side of the scale, the Trustee has not identified any harm that would befall the estate if the Court refuses to permit the requested privilege waiver. Indeed, the only stated reason for seeking the privilege waiver is to use a handful of documents affirmatively in the Whitecroft Adversary, but as the Trustee states in the Privilege Waiver Motion he likely does not even need these few documents to prevail because Ms. Guo has not defended against the Trustee's allegations. (Privilege Waiver Motion, at ¶48 ("Thus, Ms. Guo has failed to substantiate any basis to oppose the Trustee's claims in the Bombardier Adversary Proceeding")).

44. The Privilege Waiver Motion also ignores the non-privileged information that the Trustee relies upon in support of his complaint, all as referenced therein and attached as exhibits thereto[6], as well as the substantive deposition testimony of Ms. Guo secured in January 2023, which was reaffirmed during her November 1, 2023 deposition in the Whitecroft Adversary, the substantial non-privileged information that the Trustee has obtained in connection with his sweeping investigation, and publicly available information such as that referenced at paragraph 20

---

[6] The Trustee attached one or more of the documents at issue in the Privilege Waiver Motion as an exhibit to the Whitecroft Adversary complaint without asking the Individual Debtor's counsel for consent or seeking leave of Court. Obviously, the Trustee's unilateral use of documents in violation of the Privileges Order does not constitute a waiver of the Individual Debtor's right to demand compliance with that order.

15

of the Privilege Waiver Motion.

45. As previously noted, in response to Ms. Guo's requests for production in the Whitecroft Adversary, many of which requests sought information concerning the Trustee's allegations regarding ownership of the Bombardier aircraft, the Trustee produced nearly 9,000 pages of documents. Moreover, the Trustee continues to seek information in support of his claims, having received documents in response to a subpoena from JetLaw, LLC within the last week, and thereafter issuing two additional subpoenas for documents and depositions. In addition, the Trustee will certainly seek adverse inferences against Ms. Guo based on her invocation of her Fifth Amendment rights and the Individual Debtor's invocation of his Fifth Amendment rights during a March 2, 2023 deposition at which he was questioned regarding matters at issue in the Whitecroft Adversary even though it had yet to be filed and the deposition related to the claim and counterclaims asserted in *HK International Funds Investments (USA) Ltd. v. Despins*, Adv. Pro. No. 22-05003. (*See* Whitecroft Complaint, at ¶¶26, 29, 42, 44(a)-(f), 49, 64, and 72).

46. Based on the (i) massive volume of non-privileged information the Trustee has accrued, (ii) lack of any showing that the inability to use the handful of documents the Trustee seeks to use via the Privilege Waiver Motion will negate his ability to successfully prove his claims, and (iii) harm that will befall the Individual Debtor if privilege is waived, the Privilege Waiver Motion should be denied.

### C. Ms. Guo's Counsel's Knowledge of Certain Facts Does not Constitute a Privilege Waiver

47. The fact that Ms. Guo and the Individual Debtor are represented by the same counsel does not work a waiver of the Individual Debtor's attorney-client privilege or vice-versa simply because counsel has knowledge of privileged information and the Trustee cites no authority for his implied position that it does—the fact that the Trustee does not come right out and say that

16

he is arguing that Zeisler & Zeisler's representation of the Individual Debtor in the main bankruptcy case and Ms. Guo in the Whitecroft Adversary results in a waiver of the Individual Debtor's attorney-client privilege speaks volumes about the Trustee's own view of his argument.

48. The cases cited by the Trustee do not support his implied waiver argument, and are utterly inapposite. *Helmedach v. Comm'r of Corr.,* 329 Conn. 726, 737 (2018) addresses the issue of notifying a criminal defendant client of a plea offer and whether the failure to do so in a timely manner constitutes ineffective assistance of counsel. *Uchechukwu Egbujo v. Jackson Lewis, P.C.*, 2022 U.S. Dist LEXIS 177041, 2022 WL 4585688, *7 (D. Conn., Sept. 29, 2022) involves a defamation claim and whether a law firm's publication to its own client of the findings of its investigation conducted on behalf of the client constitutes publication to a third-party for purposes of satisfying the publication element of a defamation claim, it does not. Lastly, *Rai v. WB Imico Lexington Fee, LLC*, 802 F.3d 353 (2015) involves an interpretation of the Interstate Land Sales Full Disclosure Act, and whether providing a required document to counsel satisfies the act's disclosure provisions, it does.

49. The Trustee also contends that the Individual Debtor and Ms. Guo are seeking to use the attorney-client privilege as a sword and a shield. The sword and shield problem arises where one party seeks to use its privileged communications affirmatively without disclosing them. *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) ("In other words, a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party.") (citations omitted). As between the Trustee, the Individual Debtor, and Ms. Guo the only party that is seeking to affirmatively use privileged information is the Trustee. Thus, the only one who could even potentially have a sword and shield problem is the Trustee (the Individual Debtor is

17

not a party to the Whitecroft Adversary and is not seeking to use privileged communications for any purpose, he is simply seeking to have privileged communications remain privileged; Ms. Guo is not seeking to use privileged communications for any purpose and could not because she has no right or ability to use them).

WHEREFORE, for all of the foregoing reasons the Privilege Waiver Motion should be denied.

Dated at Bridgeport, Connecticut on this 13th day of December, 2023.

THE DEBTOR,
HO WAN KWOK

*/s/ James M. Moriarty*
Eric Henzy (ct12849)
James M. Moriarty
10 Middle Street, 15th Floor
Bridgeport, Connecticut 06604
Telephone: (203) 368-4234
Facsimile: (203) 368-5487
Email: ehenzy@zeislaw.com
          Jmoriarty@zeislaw.com

18

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| HO WAN KWOK, | : | Case No. 22-50073 (JAM) |
| | : | |
| Debtor. | : | |
| | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of December, 2023, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ James M. Moriarty
James M. Moriarty (ct21876)