| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>UNITED STATES OF AMERICA,<br><br>              -against-<br><br>HO WAN KWOK,<br><br>                              Defendant. | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: <u>2/21/2024</u><br><br>23 Cr. 118-1 (AT)<br><br>**<u>ORDER</u>** |

ANALISA TORRES, District Judge:

Defendant, Ho Wan Kwok, moves to compel the Government to produce evidence about "the Chinese Communist Party's (the 'CCP') targeting" of him and his associates, as well as evidence concerning "the credibility of [his] movement, the New Federal State of China." Def. Mem. at 1, ECF No. 172; *see* Def. Mot., ECF No. 170. For the following reasons, the motion is GRANTED in part and DENIED in part.

**BACKGROUND**

Kwok and two co-defendants, William Je and Yanping Wang, are charged with operating a scheme to defraud thousands of investors of more than $1 billion, laundering the proceeds through foreign and domestic entities, and misappropriating the funds for their own use. The second superseding indictment ("S2") charges Kwok with wire fraud, securities fraud, and unlawful monetary transactions, as well as conspiring to commit racketeering offenses, wire and bank fraud, money laundering, and securities fraud. It describes Kwok as an "exiled Chinese businessman" who "amass[ed] followers who were aligned with his purported campaign against the [CCP] and who were also inclined to believe Kwok's statements regarding investment and money-making opportunities." S2 ¶ 9, ECF No. 215. The indictment alleges that four such "opportunities" comprised the alleged fraud scheme: (1) the "GTV Private Placement," an unregistered stock offering in Kwok's "citizen journalism" company; (2) the "Farm Loans Program," which solicited funds that

Defendants promised would be convertible to GTV stock; (3) "G|CLUBS," a "high-end membership program"; and (4) the 'Himalaya Exchange," a cryptocurrency offering. *Id.* ¶¶ 16–19.  It also alleges that Kwok, Je, and Wang transferred money through "more than approximately 500 accounts held in the names of at least 80 different entities or individuals." *Id.* ¶ 4.  And, it alleges that Kwok used the fraud proceeds to "promote the Kwok Enterprise," a group of "interrelated and overlapping entities" including Kwok's nonprofit, the New Federal State of China (the "NFSC"). *Id.* ¶¶ 3–4.  Kwok claims that he established the NFSC in June 2020 to "oppose the CCP and work[] in support of establishing democracy in China." Def. Mem. at 6.

On September 29, 2023, Kwok's counsel sent a discovery request to the Government seeking, among other things, the information that is the subject of this motion.  ECF No. 171-6.  Kwok states that he is "one of the most—if not the most—pursued targets of the CCP's Operation Fox Hunt," a state-run "campaign of intimidation, harassment, and violence designed to suppress dissidents." Def. Mem. at 1.  Whether he is "a true political dissident" or a "fraudster," he argues, "will be a key disputed issue of fact at trial." *Id.* at 17–18.  To that end, Kwok seeks evidence "related to the CCP's targeting of [him], his family, his co-defendants, and the corporate entities relevant to the Indictment," *id.* at 17, as well as "any intelligence assessments regarding the NFSC or documents reflecting the targeting of the NFSC or its members by the Government of China," ECF No. 171-6 at 4.  He also seeks records concerning the recently unsealed complaint in *United States v. Bai*, 23 Mag. 334 (E.D.N.Y.), which ███████████████████████████████████████████████. Def. Mem. at 4.

Kwok further requests a recording of an August 26, 2018 meeting between himself ███ ███. *Id.* at 27–28.  And, he asks that the Government "identify any other U.S. government agency that the Government knows possesses the aforementioned information." *Id.*

2

The Government responded to Kwok's discovery request on October 17, 2023, "directing the defense to certain of the requested information and asking the defense to articulate how, if at all, [the] other categories of requested information [are] relevant to this case." Gov. Opp. at 6, ECF No. 205; *see* ECF No. 171-7. Having been unable to reach a resolution, Kwok now asks the Court for an order compelling the Government to produce nine categories of evidence:

| Request Number[1] | Request |
|---|---|
| 2 | Records concerning the allegations in the *Bai* complaint, including the underlying evidence of targeting of ▮▮▮▮▮▮▮▮ |
| 3 | Records concerning the Government of China's targeting of Kwok as part of Operation Fox Hunt, including ▮▮▮▮▮▮▮▮ (iii) the payment of bribes to U.S. citizens to solicit U.S. government officials to extradite Kwok to China; and (iv) any cyberattacks on any property used or owned by Kwok or his family |
| 4 | Records concerning the targeting of Kwok's family by the Chinese government, including as part of Operation Fox Hunt |
| 5 | Records concerning the targeting of any of the alleged victims of the schemes described in the Indictment by the Chinese government, including as part of Operation Fox Hunt |
| 6 | Records concerning the NFSC, including any intelligence assessments concerning the NFSC or records reflecting the targeting of the NFSC or its members by the Chinese government, including as part of Operation Fox Hunt |
| 7 | Records concerning the targeting of Kwok's co-defendants by the Chinese government, including as part of Operation Fox Hunt |
| 8 | Records concerning the targeting of the corporate entities relevant to the Indictment, including GTV, Saraca Media, G|CLUBS, G|Fashion, and the Himalaya Exchange, by the Chinese government, including as part of Operation Fox Hunt |
| 19 | Any statements from purported "victims" concerning the NFSC |

ECF No. 171-6; *see* Def. Mem. at 12.

---

[1] This numbering corresponds to the numbers Kwok used in his September 29, 2023 discovery requests. *See* ECF No. 171-6.

**LEGAL STANDARD**

Under Rule 16 of the Federal Rules of Criminal Procedure, the Government must produce, at the request of the defense, items "within the [its] possession, custody, or control" that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). An item is "material to preparing the defense" under Rule 16 "if it could be used to counter the [G]overnment's case or to bolster a defense." *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993). The materiality standard "normally is not a heavy burden . . . as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Stein*, 488 F. Supp. 2d 350, 356–57 (S.D.N.Y. 2007) (citation omitted). The Court must consider "the logical relationship between the information and the issues in the case," and "the importance of the information in light of the evidence as a whole." *Stevens*, 985 F.2d at 1180. "There must be some indication that the pretrial disclosure of the disputed evidence would . . . enable[] the defendant significantly to alter the quantum of proof in his favor." *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991) (citation omitted). "A defendant bears the burden to make a prima facie showing that information sought is material." *United States v. Alexandre*, No. 22 Cr. 326, 2023 WL 416405, at *9 (S.D.N.Y. Jan. 26, 2023) (quotation marks and citation omitted).

Kwok is charged with twelve offenses, the central charge of which is wire fraud. *See* Gov. Opp. at 1 ("This is a fraud case."); *see generally* S2. The elements of wire fraud are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of wires to further the scheme. *United States v. Jabar*, 19 F.4th 66, 76 (2d Cir. 2021) (citation omitted).

"Essential to a scheme to defraud is fraudulent intent," *id.* (citation omitted), which requires the defendant to "either intend to harm their victim or contemplate that their victim may be harmed."

4

*United States v. Gatto*, 986 F.3d 104, 113 (2d Cir. 2021). Intent "may be inferred from the scheme itself if the necessary result of the actor's scheme is to injure others." *Id.* (cleaned up). The Government may also prove intent "through circumstantial evidence, including by showing that [the] defendant made misrepresentations to the victim(s) with knowledge that the statements were false." *Jabar*, 19 F.4th at 76 (internal quotation marks and citation omitted). "A defendant's knowledge may be established through . . . acts that exhibit a consciousness of guilt." *United States v. Serrano*, 224 F. Supp. 3d 248, 254 (S.D.N.Y. 2016) (citation omitted).

On the other hand, "an honest belief in the truth of the representations made by a defendant is a good defense, however inaccurate the statement may turn out to be." *United States v. Hamilton*, 3 F. App'x 7, 10 (2d Cir. 2001) (summary order) (cleaned up). "[T]he objective reasonableness of a claimed belief may be probative of whether the defendant held the belief in good faith." *United States v. Weber*, 843 F. App'x 364, 367 (2d Cir. 2021) (summary order); *cf. United States v. Onumonu*, 967 F.2d 782, 786–87 (2d Cir. 1992).

## DISCUSSION

I. <u>Evidence of CCP Targeting</u>

    A. Requests 2, 3, 4, and 8

Kwok requests an order compelling the Government to disclose "evidence related to the CCP's targeting of [] Kwok, his family, his co-defendants, and the corporate entities relevant to the [i]ndictment." Def. Mem. at 17; *see id.* at 12 (requests 2, 3, 4, and 8). He argues that the evidence is relevant because it both "rebuts the government's attacks on [his] and the NFSC's bona fides as a pro-democracy dissident movement" and "helps explain the conduct in the [i]ndictment." *Id.* at 15.

As an initial matter, the Government contends that its Rule 16 duty is "limited to materials in possession of the prosecution," and does not obligate it to conduct a "government-wide search for

documents." Gov. Opp. at 12–13. The Government is correct. As the Court explained in its order on Kwok's first motion to compel discovery, the Government would only be required to search another agency's files for discoverable materials if the prosecution and the agency engaged in a "joint investigation." ECF No. 204 at 14. The Government denies that it is engaged in a joint investigation with another agency, and Kwok has made no showing that it is. *Id.* The Government's duty to search for materials discoverable under Rule 16 is, therefore, limited to the materials within its possession.

The question remains whether Kwok is entitled to materials within the prosecution's possession showing that he, his family, his co-defendants, or the corporate entities relevant to the indictment have been targeted by the CCP. The Court holds that he is.

The indictment alleges that Kwok and his co-defendants exploited his followers "to enrich themselves, their family members, and their co-conspirators, and to fund Kwok's extravagant lifestyle," including purchasing a "50,000-square-foot mansion in New Jersey for Kwok and his family." S2 ¶¶ 2, 5; *see also* Gov. Opp. at 20 (arguing that Kwok purchased, renovated, and furnished the property "for the benefit of the defendant and his family"). At trial, Kwok intends to prove that his purchase of the New Jersey property was not for his own enrichment or enjoyment, but to provide "a secure meeting place for [G|CLUBS] members" to conduct anti-CCP business "out of public view." Def. Mem. at 21. Evidence showing that Kwok's fears of CCP targeting are objectively legitimate "could be used to counter the [G]overnment's case or to bolster [his] defense." *Stevens*, 985 F.2d at 1180. As Kwok argues, this evidence provides an alternative, nonculpable explanation for the heightened "secrecy and security" around the New Jersey property. Def. Mem. at 21. And, it could support Kwok's argument that he believed in good faith that purchasing the

property was an appropriate and nonfraudulent use of G|CLUBS dues—a defense to the fraud charges. *See* Def. Reply at 7, ECF No. 213; *Weber*, 843 F. App'x at 367.

Evidence showing that Kwok and his associates were targets of the CCP could also bolster his defenses against the GTV Private Placement-related fraud charges. The indictment cites a video posted on social media in which Kwok states that GTV has "a market value of 2 billion US dollars." S2 ¶ 17(d). Kwok intends to prove that he believed, in good faith, that GTV could capitalize on the demand for "pro-democracy messaging" that could "break through the Great Firewall of China, which currently prevents Chinese citizens from accessing numerous social media and news websites." Def. Mem. at 19–20. Evidence that the Chinese government has taken measures to suppress Kwok's access to online platforms could support his argument that such a market niche existed, justifying his valuation. *Id.* at 20; *see Weber*, 843 F. App'x at 367.

Further, evidence of CCP targeting provides an alternative explanation for Kwok's use of multiple cellphones and bank accounts, which Kwok claims the Government will use to prove "consciousness of guilt." Def. Mem. at 9–10. Instead, Kwok intends to prove that he took these measures not "for the purposes of evading U.S. authorities, but [as] a necessary by-product of [O]peration Fox Hunt"—to avoid the Chinese government's efforts to interfere with his accounts or hack his phones. *Id.* at 22–23.

Whether Kwok's explanations ultimately hold water is, of course, a question for the jury. At this stage, the Court finds that Requests 2, 3, 4, and 8 pass the relatively low bar of materiality, entitling Kwok to responsive production under Rule 16.[2]

---

[2] In so holding, the Court does not address whether the Government is required to disclose any of the requested evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). To the extent that the Government's pending Classified Information Procedures Act ("CIPA") Section 4 motion also implicates this evidence, the Court shall determine whether any evidence should be withheld or substituted.

B.     Requests 5 and 19

In Request 5 and 19, Kwok asks that the Government produce "[r]ecords concerning the targeting of any of the alleged victims of the schemes described in the Indictment by the Chinese government" and "[a]ny statements from purported 'victims' concerning the NFSC." Def. Mem. at 12. Kwok argues that these records are relevant given the "possibility that at least some of the [G]overnment's purported 'victims' in this case have been coerced by the CCP into making false claims to U.S. authorities." *Id.* at 25.

As the Government contends, however, this argument suggests that Kwok would use the records to impeach the victims, should they testify at trial. "Impeachment material ordinarily need not be disclosed until the witness is called to testify at trial." *United States v. Davis*, No. 06 Cr. 911, 2009 WL 637164, at *14 (S.D.N.Y. Mar. 11, 2009). And, "[t]he Government is under no obligation . . . to produce prior statements of its witnesses until after each has testified on direct examination." *United States v. Morgan*, 690 F. Supp. 2d 274, 285 (S.D.N.Y. 2010). Kwok's requests for victim-related statements and evidence are, therefore, premature.

To the extent that Kwok is arguing more broadly that the CCP's alleged coercion of victims demonstrates the legitimacy of his movement, "he has access to numerous witnesses and materials in service" of that claim. Gov. Opp. at 16 n.2.

Kwok's motion to compel is, therefore, denied as to Requests 5 and 19.

C.     Request 6

In Request 6, Kwok asks that the Government produce "[r]ecords concerning the NFSC, including any intelligence assessments concerning the NFSC or records reflecting the targeting of the NFSC or its members by the Chinese government, including as part of Operation Fox Hunt." Def. Mem. at 12. For the reasons set forth above, this request is granted in part and denied in part. The

Government shall produce "records reflecting targeting of the NFSC," an entity relevant to the indictment, "by the Chinese government." But, at this juncture it need not produce information regarding the targeting of the NFSC's "members" other than Kwok, his family, and his co-defendants. And, the Government need only produce "intelligence assessments" insofar as they are relevant to Kwok's claim that the NFSC has been targeted by the Chinese government.[3]

II.     August 26, 2018 Recording

Kwok also asks that the Government disclose a recording of an August 26, 2018 meeting between himself and ▇▇▇▇▇. The Government produced to Kwok a version of the recording, with approximately five minutes redacted, on December 22, 2023. By letter dated February 5, 2024, Kwok requests the full, unredacted recording.

The Court has reviewed a transcript of the redacted five minutes *in camera* and holds that the portion of the recording is neither relevant nor material to preparing Kwok's defense. *See* Fed. R. Civ. P. 16(a)(1)(B)(i), (a)(1)(E). Accordingly, Kwok is not entitled to the redacted portions of the recording, and his request is denied.

III.    Other Government Agencies

Finally, Kwok requests that the Government "identify any other U.S. government agency that the Government knows possesses the aforementioned information." Def. Mem. at 28. Kwok cites no legal support for this broad request, and the Court has identified none. Accordingly, this request is denied.

---

[3] To the extent that any of these intelligence assessments are classified, the Court shall determine whether they should be withheld or substituted pursuant to CIPA Section 4. *See* 18 U.S.C. app. 3 § 4.

## CONCLUSION

Kwok's motion to compel is GRANTED as to Requests 2, 3, 4, and 8; DENIED as to Requests 5 and 19; and GRANTED in part and DENIED in part as to Request 6. His request to compel the Government to produce an unredacted recording of the August 26, 2018 interaction is DENIED. His request that the Government identify other agencies possessing the aforementioned information is also DENIED. The Court shall address the Government's CIPA Section 4 motion by separate ex parte order.

SO ORDERED.

Dated: February 21, 2024
       New York, New York

_____
ANALISA TORRES
United States District Judge