**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

                    *Plaintiff,*

        v.

HO WAN KWOK,

                    *Defendant.*

Case No. 1:23-CR-118-1 (AT)

---

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT**

Sidhardha Kamaraju
E. Scott Schirick
Matthew S. Barkan
Daniel J. Pohlman
John M. Kilgard
Clare P. Tilton
PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100
skamaraju@pryorcashman.com
sschirick@pryorcashman.com
mbarkan@pryorcashman.com
dpohlman@pryorcashman.com
jkilgard@pryorcashman.com
ctilton@pryorcashman.com

Sabrina P. Shroff
80 Broad Street, 19th Floor
New York, NY 10004
(646) 763-1490

*Attorneys for Defendant Ho Wan Kwok*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ........................................................................................................................ 4

    I.   THE RICO COUNT (COUNT ONE) SHOULD BE
        DISMISSED FOR FAILURE TO STATE AN OFFENSE ......................................... 4

        A.  The Government's Attempts To Hide Behind the Statutory Language and Brush
            Aside Civil Authority Are Unavailing ...................................................................... 4

        B.  The Indictment Fails To Allege that the Object of the Agreement Was To
            Conduct an "Enterprise" Through a "Pattern of Racketeering Activity" ............... 7

            1.  The Indictment Fails To Allege an Agreement To Commit "Racketeering
                Activity" Because the Predicate Acts Do Not Violate the Specified Statutes ... 8

            2.  The Indictment Fails To Allege a "Pattern of Racketeering Activity" with the
                Requisite Continuity ...................................................................................... 8

                a.  The Indictment Fails To Allege Closed-Ended Continuity ........................ 9

                b.  The Indictment Fails To Allege Open-Ended Continuity ......................... 11

    II.  COUNTS EIGHT AND TEN SHOULD BE DISMISSED BECAUSE THEY
        FAIL TO ALLEGE THAT THE PURPORTED SCHEME TO DEFRAUD WAS
        "IN CONNECTION" WITH A SECURITIES TRANSACTION .............................. 13

        A.  The Government Continues Its Shifting Allegations ............................................. 13

        B.  The Farm Loans Program Did Not Have the Requisite "Connection With" a
            Securities Transaction ......................................................................................... 16

        C.  Count Ten Should Be Dismissed Because the G|CLUBS Membership Purchases
            Do Not Have the Requisite "Connection With" a Securities Transaction ............ 20

    III. COUNTS FIVE THROUGH ELEVEN FAIL TO ALLEGE MATERIAL
        MISREPRESENTATIONS OR OMISSIONS OR SCHEME LIABILITY ............... 22

        A.  The GTV Counts (Counts Five and Six) Should Be Dismissed for Failing To
            Allege a Material Misrepresentation or Omission ............................................... 22

B.  The Farm Loans Counts (Counts Seven and Eight) Should Be Dismissed for Failing To Allege a Knowing Material Misrepresentation or Omission ...............25

C.  The G|CLUBS Counts (Counts Nine and Ten) Should Be Dismissed for Failing To Allege a Material Misrepresentation or Omission...........................................27

D.  The Himalaya Exchange Count (Count Eleven) Should Be Dismissed for Failing To Allege a Material Misrepresentation or Omission...........................................29

E.  To the Extent They Alleged So-Called "Scheme Liability," Counts Six, Eight and Ten Should Be Dismissed Because They Fail To Allege Deceptive Conduct Aside from an Alleged Misrepresentation .......................................................................30

IV. COUNTS TWO THROUGH FOUR AND TWELVE SHOULD BE DISMISSED...30

A.  The Indictment Fails To Allege Bank Fraud or False Statements to Financial Institutions........................................................................................................30

1.  The Indictment Fails To Allege Conspiracy To Commit Bank Fraud as a Matter of Law .............................................................................................30

2.  The Indictment Fails to Allege Conspiracy To Provide False Statements to Banks as a Matter of Law ..............................................................................32

B.  The Government Does Not Oppose Mr. Kwok's Argument that Counts Three and Twelve Should Be Dismissed Because the Predicate Offenses Fail....................33

C.  Count Twelve Merges with the Predicate Offense, and Should Be Dismissed .....33

CONCLUSION......................................................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boyle v. United States*,
    556 U.S. 938 (2009)..................................................................................................7

*City of Pontiac Policemen's and Firemen's Ret. Sys. v. UBS AG*,
    757 F.3d 173 (2d Cir. 2014).....................................................................................24

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
    187 F.3d 229 (2d Cir. 1999)..........................................................................6, 11, 12

*Conte v. Newsday, Inc.*,
    703 F. Supp. 2d 126 (E.D.N.Y. 2010) .....................................................................7

*In re Eastman Kodak Co. Sec. Litig.*,
    632 F. Supp. 3d 169 (W.D.N.Y. 2022) ...................................................................28

*Efron v. Embassy Suites (Puerto Rico), Inc.*,
    223 F.3d 12 (1st Cir. 2000).....................................................................................11

*First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc.*,
    219 F. Supp. 2d 576 (S.D.N.Y. 2002)..............................................10, 23, 28, 33

*GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*,
    67 F.3d 463 (2d Cir. 1995).............................................................................9, 11, 13

*Grace Int'l Assembly of God v. Festa*,
    797 F. App'x 603 (2d Cir. 2019) .............................................................................9

*Gross v. Waywell*,
    628 F. Supp. 2d 475 (S.D.N.Y. 2009)....................................................................11

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989)..............................................................................................9, 13

*Halperin v. eBanker USA.com, Inc.*,
    295 F.3d 352 (2d Cir. 2002)....................................................................................23

*IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)....................................................................................25

*In the Matter of Web Works Marketing.com, Inc. et al.*,
    S.E.C. Release No. 7703 (July 21, 1999).........................................................20, 21

*Janus Capital Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011)............................................................................26, 27, 30

*Kalimantano GmbH v. Motion in Time, Inc.*,
    939 F. Supp. 2d 392 (S.D.N.Y. 2013)................................................................10

*Lasker v. New York State Elec. & Gas Corp.*,
    85 F.3d 55 (2d Cir. 1996)....................................................................................25

*Leocal v. Ashcroft*,
    543 U.S. 1 (2004)............................................................................................7, 27

*Loughrin v. United States*,
    573 U.S. 351 (2014)............................................................................................31

*Merrill Lynch Pierce, Fenner & Smith Inc., v. Dabit*,
    547 U.S. 71 (2006)........................................................................................16, 22

*Press v. Chem. Inv. Servs. Corp.*,
    166 F.3d 529 (2d Cir. 1999)..................................................................13, 17, 21

*Prousalis v. United States*,
    692 F. App'x 675 (2d Cir. 2017) .......................................................................26

*Reves v. Ernst & Young*,
    494 U.S. 56 (1990)..............................................................................................19

*Russell v. United States*,
    369 U.S. 749 (1962)......................................................................................14, 15

*S.E.C. v. Collector's Coffee, Inc.*,
    No. 19 Civ. 4355 (VM), 2023 WL 6453709 (S.D.N.Y. Oct. 4, 2023) ...................23

*S.E.C. v. Rosenthal*,
    650 F.3d 156 (2d Cir. 2011)..............................................................................21

*S.E.C. v. Rio Tinto plc*,
    No. 17 Civ. 7994 (AT), 2019 WL 1244933 (S.D.N.Y. Mar. 18, 2019) ..........25, 30

*Shaw v. United States*,
    580 U.S. 63 (2016)..............................................................................................31

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008)..............................................................................11

*United Housing Found., Inc. v. Forman*,
    421 U.S. 837 (1975)............................................................................................20

*United States v. Aleynikov,*
  737 F. Supp. 2d 173 (S.D.N.Y. 2010) ................................................................5

*United States v. Arrington,*
  941 F.3d 24 (2d Cir. 2019) ...........................................................................6, 8

*United States v. Aulicino,*
  44 F.3d 1102 (2d Cir. 1995) ............................................................................12

*United States v. Autuori,*
  212 F.3d 105 (2d Cir. 2000) ............................................................................28

*United States v. Benjamin,*
  No. 21 Cr. 706 (JPO), 2022 WL 17417038 (S.D.N.Y. Dec. 5, 2022) ................4, 20

*United States v. Bongiorno,*
  No. 05 Cr. 390 (SHS), 2006 WL 1140864 (S.D.N.Y. May 1, 2006) ....................29

*United States v. Cain,*
  671 F.3d 271 (2d Cir. 2012) .....................................................................6, 9, 11

*United States v. Calderon,*
  944 F.3d 72 (2d Cir. 2019) ..............................................................................23

*United States v. Charnay,*
  537 F.2d 341 (9th Cir. 1976) ...........................................................................27

*United States v. Connolly,*
  24 F.4th 821 (2d. Cir. 2022) ............................................................................29

*United States v. Cook,*
  573 F.2d 281 (5th Cir. 1978) ...........................................................................27

*United States v. Davidoff,*
  845 F.2d 1151 (2d Cir. 1988) .............................................................................5

*United States v. Finnerty,*
  533 F.3d 143 (2d. Cir. 2008) ............................................................................30

*United States v. General Dynamics Corp.,*
  644 F. Supp. 1497 (C.D. Cal. 1986) ................................................................24

*United States v. Giovannelli,*
  No. 01 Cr. 749 (JSR), 2004 WL 48869 (S.D.N.Y. Jan. 9, 2004) ...........................8

*United States v. Gleason,*
  616 F.2d 2 (2d. Cir. 1979) ...............................................................................27

*United States v. Gramins,*
   No. 21-5, 2022 WL 6853273 (2d Cir. Oct. 12, 2022)...........................................22

*United States v. Heicklen,*
   858 F. Supp. 2d 256 (S.D.N.Y. 2012)...................................................................5

*United States v. Juwa,*
   508 F.3d 694 (2d Cir. 2007)...............................................................................15

*United States v. Koenig,*
   388 F. Supp. 670 (S.D.N.Y. 1974) ......................................................................27

*United States v. Krown,*
   675 F.2d 46 (2d Cir. 1982)..................................................................................32

*United States v. Liberto,*
   No. 19 Cr. 0600 (RDB), 2020 WL 5994959 (D. Md. Oct. 9, 2020)....................24

*United States v. Metaxas,*
   449 F. Supp. 3d 24 (E.D.N.Y. 2020) ...................................................................31

*United States v. O'Hagan,*
   521 U.S. 642 (1997).....................................................................................18, 19

*United States v. Rodriguez,*
   140 F.3d 163 (2d Cir. 1998)................................................................................31

*United States v. Ruffin,*
   613 F.2d 408 (2d Cir. 1979)................................................................................27

*United States v. Szur,*
   289 F.3d 200 (2d Cir. 2002)................................................................................34

*United States v. Walsh,*
   194 F.3d 37 (2d. Cir. 1999)................................................................................14

*United States v. Wey,*
   No. 15 Cr. 611 (AJN), 2017 WL 237651 (S.D.N.Y. Jan. 18, 2017)....................15

*United States v. White,*
   No. 19 Cr. 3313 (L), 2021 WL 3355166 (2d. Cir. Aug. 3, 2021)..........................7

*United States v. Zahavi,*
   No. 12 Cr. 288 (JPO), 2012 WL 5288743 (S.D.N.Y. Oct. 26, 2012)..................32

*Williams v United States,*
   458 U.S. 279 (1982)............................................................................................32

**Statutes**

Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b)................... *passim*

18 U.S.C. § 1014............................................................................................................32, 33

18 U.S.C. § 1344........................................................................................................30, 31, 32

18 U.S.C. § 1504.................................................................................................................5

18 U.S.C. § 1956................................................................................................................33

18 U.S.C. § 1961.................................................................................................................8

18 U.S.C. § 1962.................................................................................................................8

## PRELIMINARY STATEMENT

The government's opposition reveals a simple truth—its latest Indictment is at war with common sense, the law, and the government's own allegations. Mr. Kwok's motion has laid bare these flaws, and those flaws warrant dismissal of the Indictment as a matter of law.

*First*, the government tries to hide from scrutiny of its allegations by intoning that each count in the Indictment purportedly tracks the relevant statute, and therefore all other analysis must await a jury. The government's rote recitation of this law does not, however, limit the Court's review. Rather, because the allegations in the Indictment go *beyond* merely parroting the statute and include detailed factual allegations that *undercut* criminal liability, the Court should consider those allegations and find that, as a matter of law, not fact, they doom the Indictment.

*Second*, even when the government's opposition does try to descend to the particulars about its RICO count (Count One), it fails to meaningfully rebut Mr. Kwok's arguments. In responding to Mr. Kwok's argument that the RICO count is flawed because it fails to properly allege the elements of such a count, the government responds in its opposition that it was only required to track the language of §1962(c), and that it need not demonstrate a pattern of racketeering activity or any predicate act. The government misses, however, that while it need only allege an agreement, that agreement must be to commit a substantive RICO violation—in this case, the government's 48 pages of allegations shows that the object of the purported "enterprise" was to engage in a pro-democracy political movement, not a "pattern of racketeering activity." Thus, even if the government has tracked the statutory requirements of an agreement, it has not alleged a sufficient one as a matter of law.

*Third*, the government's response to Mr. Kwok's argument that the Farm Loans and G|CLUBS securities fraud counts were not "in connection with the purchase or sale of a security"

underscores that the Indictment is impermissibly muddled.  After now nearly four years of investigation, three indictments, and 50 pages of opposition briefing, the government still cannot or will not answer this central question—with respect to these counts, what is the security that Mr. Kwok allegedly defrauded investors to transact in?  Rather than squarely meet that question, the government vacillates between asserting GTV on the one hand, and that the Farm Loans or G|CLUBS memberships on the other, are the relevant securities.  The government's stubborn refusal to speak clearly on this point means that the Indictment is unconstitutionally vague and does not serve the charging instrument's necessary purpose of apprising Mr. Kwok of the nature of the charge against him and permitting double jeopardy to attach.  Moreover, even when the government does land on an alleged security, its allegations fail to establish that the fraud that Mr. Kwok purportedly engaged in had any actual connection to a purchase or sale of securities in GTV, the Farm Loans, or G|CLUBS.

*Fourth*, in response to Mr. Kwok's argument that the alleged fraud counts fail as a matter of law because the Indictment fails to allege actionable and material misstatements with respect to GTV, the Farm Loans, G|CLUBS, or the Himalaya Exchange, the government offers only red herrings.  With respect to GTV, the government argues that Mr. Kwok is pursuing a "pseudo-summary judgment motion" by pointing the Court to other aspects of the PPM, and that even if the Court were to consider those additional portions of the PPM, they would only go to reliance, which is not an element of criminal fraud.  Initially, the government's claim that the Court should not consider the other portions of the PPM is particularly rich—the government is relying on the document for its charges, there is no dispute as to the language upon which Mr. Kwok relies, and courts in such situations have looked to such language in considering the adequacy of an indictment.  Moreover, the government incorrectly argues that this language goes only to reliance,

when, in reality it goes to the existence of a misrepresentation at all, and even if one existed, whether the misrepresentation is too speculative to be material as a matter of law (which is an element of criminal fraud).

As for the Farm Loans, the government claims that it is not required to show that Mr. Kwok personally made any misrepresentations because the Supreme Court ruling requiring such a showing for a 10b-5 claim only applies in civil cases and not to criminal cases, particularly where aiding and abetting liability is alleged.  The Court, however, cannot, as a constitutional matter read the same regulation narrowly for purposes of a civil case, and then turn around an adopt a broader reading when it comes to a criminal prosecution.  And the presence of an aiding and abetting allegation does not save the Farm Loans count because the Indictment must still allege a primary violation, and, for the reasons set forth in Mr. Kwok's opening brief, the Indictment does not.  With respect to G|CLUBS, the government utterly fails to respond to Mr. Kwok's contention that for there to be a material omission with respect to the intended uses of the G|CLUBS funds, there must first be a duty to disclose that information, and the government has identified no such duty.  Finally, the government does not even substantively address Mr. Kwok's arguments for dismissal of the Himalaya Exchange wire fraud count, namely that the government cannot turn obviously true statements into misrepresentations simply by baldly claiming that they are false.

*Fifth*, the government offers little opposition to Mr. Kwok's motion to dismiss the money laundering and bank fraud counts.  The government concedes that the money laundering counts must fail if—as Mr. Kwok has demonstrated—the underlying alleged fraud counts serving as the "specified unlawful activity" also fail.  Moreover, the government's response to Mr. Kwok's merger argument with respect to Count Twelve ignores the government's own case law and allegations, which describe the purported money laundering transaction as a necessary and integral

part of the scheme.  Finally, while the government strains to find some misrepresentation to a bank, the truth of the matter is that all that Indictment alleges is deposits of alleged fraud *proceeds* into bank accounts, which does not qualify as bank fraud as a matter of law, even under the government's interpretation of the relevant statute.

For these reasons and the reasons set forth in Mr. Kwok's moving brief, Mr. Kwok respectfully submits that the Court should dismiss the Indictment as a matter of law.

## **ARGUMENT**

### I.    **THE RICO COUNT (COUNT ONE) SHOULD BE DISMISSED FOR FAILURE TO STATE AN OFFENSE**

As the Court recently noted in its order compelling the production of certain Fox Hunt materials, the "central charge [in this case] is wire fraud," (Dkt. No. 243 at 4), and even the government itself has repeated its mantra that "this is a fraud case," (Dkt. No. 205 at 1). Nevertheless, the government has improperly sought to convert this "fraud case" into a RICO case by trying to graft on an ill-conceived racketeering theory.  The opposition does nothing to salvage the government's obvious overreach in invoking RICO, and the Court should dismiss Count One.

### A.    **The Government's Attempts To Hide Behind the Statutory Language and Brush Aside Civil Authority Are Unavailing**

As an initial matter, the government relies heavily on its well-worn contention that an Indictment need only track the statutory language of the charged offense to be sufficient.  (*E.g.*, Opp. at 1, 9, 14 n.2, 23, 31, 37, 42 n.12.)  Whatever strength that proposition has in a typical case, in this case, where the government has elected to go far beyond the statutory language and make factual allegations that undercut its legal theory, the Court can and should consider those allegations in dismissing Count One. *See*, *e.g.*, *United States v. Benjamin*, No. 21 Cr. 706 (JPO), 2022 WL 17417038, at *16 (S.D.N.Y. Dec. 5, 2022) ("[w]hile the government is certainly correct that an indictment need not divulge the bulk of its evidence, the Court is permitted to consider

whether the facts, as alleged on the face of the indictment, satisfy the statutory definition of a crime"); *United States v. Aleynikov*, 737 F. Supp. 2d 173, 176-77 (S.D.N.Y. 2010) ("Dismissal is required where the conduct alleged in the indictment as a factual basis for the offense is not actually prohibited by the language of the statute."). Such scrutiny is particularly important with respect to RICO conspiracy charges, because "[w]ith the wide latitude accorded the prosecution to frame a charge that a defendant has 'conspired' to promote the affairs of an 'enterprise' through a 'pattern of racketeering activity' comes an obligation to particularize the nature of the charge to a degree that might not be necessary in the prosecution of crimes of more limited scope." *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988). Put simply, the government cannot allege a sweeping RICO conspiracy, include 48 pages of factual allegations in support of that purported conspiracy, and then, when challenged as to the legal sufficiency of those allegations, turn around and ask the Court to ignore them and defer to its rote statutory allegations.

Nor, as the government contends, is Mr. Kwok's argument an attempt to dispute the government's factual allegations. Nowhere in his motion to dismiss the RICO count does Mr. Kwok cite to any fact outside of the allegations of the Indictment. (*See* Mot. at 10-19.) Instead, Mr. Kwok's argument is that, even taking all of the Indictment's allegations as true as the Court must on a motion to dismiss, the government's allegations not only fail to make out the charged offenses, but, in fact, affirmatively undercut the government's legal theory. *See*, *e.g.*, *United States v. Heicklen*, 858 F. Supp. 2d 256, 276 (S.D.N.Y. 2012) (dismissing indictment because even though indictment was sufficiently specific, its factual allegations "fail[] to state all of the elements of the offense described in 18 U.S.C. § 1504 and must be dismissed as legally insufficient"). If the government had wanted to rely on a barebones statutory indictment, then it could have done

so—but having chosen to actually assert facts, it cannot now seek to hide them from the Court's scrutiny.

The government also offers a second red herring, contending that Mr. Kwok is improperly seeking to impose civil pleading requirements on the Indictment.  In particular, the government claims that it need not allege that Mr. Kwok actually "committed any predicate acts," engaged in a "pattern of racketeering activity" or that "an enterprise was established."  (Opp. at 12-15, 17-18, 20-21.)  As the government begrudgingly concedes, however, to establish a RICO conspiracy it must show that a conspirator intended "to further an endeavor which, if completed, *would satisfy all the elements of a substantive RICO offense*."  (Opp. at 13 (quoting *United States v. Cain*, 671 F.3d 271, 291 (2d Cir. 2012) (emphasis added)); *see also United States v. Arrington*, 941 F.3d 24, 36 (2d Cir. 2019) ("[T]he conspiracy provision of RICO proscribes an agreement to conduct or to participate in the conduct of an enterprise's affairs through a pattern of racketeering activity.").  In other words, the government must allege (i) an agreement between two or more people (ii) to do something that would constitute a "pattern of racketeering activity."

That is precisely what Mr. Kwok is attacking through his motion—the facts *alleged by the government* do not show that the object of the so-called RICO conspiracy constitute such a pattern.  Thus, contrary to the government's claim, Mr. Kwok is not contending that the government must allege that he personally engaged in a predicate, but rather that, even if he did allegedly agree to conduct the purported mysterious "Kwok Enterprise" through the alleged GTV, Farm Loans, G|CLUBS, and Himalaya Exchange schemes, those schemes would not constitute a "pattern of racketeering activity" as a matter of law.  That is what the civil authority that Mr. Kwok cites goes to—not the pleading standards that the government must satisfy, but what is substantively required for the government to sufficiently allege a "pattern of racketeering activity."  *See Cofacredit, S.A.*

*v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 245 (2d Cir. 1999) (reversing RICO conspiracy judgment where evidence failed to show commission of, or agreement to commit, predicate acts sufficient to establish pattern of racketeering activity); *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 134-39 (E.D.N.Y. 2010) (dismissing RICO claims for failure to allege predicate acts and continuity).  Put more bluntly, these courts—which include the Second Circuit—have construed the RICO statute to, for example, impose limits on what can constitute a predicate act or what is required to satisfy continuity.  While the government may bristle at what those courts held, the Court cannot, as a constitutional matter, now adopt a broader construction of the RICO statute simply to permit the government's prosecution.  *Cf. Leocal v. Ashcroft*, 543 U.S. 1, 11–12, n.8 (2004) (if a statute has criminal applications, "the rule of lenity applies" to the Court's interpretation of the statute "[b]ecause we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context").

### B.    The Indictment Fails To Allege that the Object of the Agreement Was To Conduct an "Enterprise" Through a "Pattern of Racketeering Activity"

Once the government's atmospheric (and incorrect) arguments are properly brushed aside, the government's remaining substantive contentions require only a minimal response.[1]

---

[1] Among the government's meritless arguments in opposition is its contention that the Indictment is not required to allege a specific enterprise.  (Opp. at 20-21.)  Regardless, the government must allege that Mr. Kwok agreed to conduct an "enterprise," *see United States v. White*, No. 19 Cr. 3313 (L), 2021 WL 3355166, at *2 (2d. Cir. Aug. 3, 2021) (RICO conspiracy requires establishing that defendants "agreed that an enterprise would be established," in which members of the association-in-fact "worked together for a common purpose"); this, in turn, would require that constituent parts of the purported enterprise are related, *see Boyle v. United States*, 556 U.S. 938, 946 (2009) (association-in-fact enterprise requires "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity").  Over its 48 pages of factual allegations, the Indictment does little more than name drop a long string of companies that purportedly comprised the "Kwok Enterprise," failing entirely to detail any kind of relationship between them.  For this reason too, Count One should be dismissed.

1.    **The Indictment Fails To Allege an Agreement To Commit "Racketeering Activity" Because the Predicate Acts Do Not Violate the Specified Statutes**

To establish a RICO conspiracy to violate Section 1962(c), the government must allege at least two predicate acts of "racketeering activity" as defined in Section 1961(1). *See United States v. Giovannelli*, No. 01 Cr. 749 (JSR), 2004 WL 48869, at *3 (S.D.N.Y. Jan. 9, 2004) (to satisfy racketeering activity requirement, "the indictment must specify at least two racketeering acts within a 10-year period"). In its opposition, the government does not dispute that the alleged "criminal objective" of the RICO conspiracy consists of the same conduct underlying Counts Two through Twelve of the Indictment, *i.e.*, allegations of wire fraud, securities fraud, bank fraud and money laundering in connection with GTV, G|CLUBS, the Farm Loans Program and the Himalaya Exchange. But even if the Court accepts for purposes of this motion that Mr. Kwok agreed to engage in the underlying conduct alleged in connection with those entities, the RICO count still could not survive because that conduct does not actually constitute securities fraud, wire fraud, bank fraud, or money laundering. (*See* Mot. at 19-58.) In other words, even if Mr. Kwok agreed to do these things, they would not be predicate acts, and thus, he would not have agreed to engage in a "pattern of racketeering activity." *Arrington*, 941 F.3d at 36 ("[t]he conspiracy provision of [RICO] 'proscribes an agreement to conduct or to participate in the conduct of an enterprise's affairs through a pattern of racketeering activity'"). Accordingly, the RICO count must be dismissed.

2.    **The Indictment Fails To Allege a "Pattern of Racketeering Activity" with the Requisite Continuity**

Even if the alleged predicate acts violated the specified statutes, which they do not, the RICO count is defective for the independent reason that it fails to allege that the object of the conspiracy was to commit the requisite "pattern" of racketeering activity. An indictment charging

RICO conspiracy must allege that "the conspirators reached a meeting of the minds as to the operation of the affairs of the enterprise *through a pattern of racketeering conduct*." *Cain*, 671 F.3d at 285 (emphasis in original).[2] A "pattern" requires both "relatedness" and "continuity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Despite its irrelevant protestations that it need not prove that such a pattern actually occurred, (Opp. at 12-15), the government ultimately acknowledges that an indictment alleging a RICO conspiracy must "specify predicate acts that evidence continuity and relatedness." (Opp. at 18 (quoting *United States v. Raniere*, 384 F. Supp. 3d 282, 301 (E.D.N.Y. 2019)). The Indictment fails to allege either closed- or open-ended continuity and should be dismissed.

### a.  The Indictment Fails To Allege Closed-Ended Continuity

As set forth in Mr. Kwok's opening brief, the Second Circuit requires predicate acts extending over at least two years to satisfy closed-ended continuity. *Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603, 605 (2d Cir. 2019). Time periods in which there are no allegations of a predicate act are excluded from the continuity calculation. *See GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 467 (2d Cir. 1995) (excluding non-criminal conduct from temporal analysis of continuity and finding pattern lasting "at most" eleven months). The government wrongly claims that Mr. Kwok "acknowledges" that the Indictment alleges a five-year period, but ignores this limitation entirely (Opp. at 19-20)—the opposition does not even attempt to muster a predicate act between the first two years of the alleged period of the conspiracy, and thus concedes this point.

---

[2] In fact, in *Cain*, the Second Circuit observed that the failure to so instruct the jury not only tainted the defendants' convictions with respect to the substantive RICO count but also "infected the jury's deliberations with regard to the conspiracy count as well." 671 F.3d at 285.

Even limiting the Indictment to the period during which predicate acts are alleged to have occurred, however, the Indictment barely manages to allege the requisite two-year period, beginning in April 2020 (the GTV Private Placement) (Ind., ¶ 16), and ending in April 2022 (when the Himalaya Exchange purportedly loaned money to secure a yacht) (*id.*, ¶ 19(g).)  And even this limited time period fails to allege closed-ended continuity because the predicate acts within that period are not continuous, consisting instead of allegations of sporadic misconduct.  In particular, while the government cites to generalized statements about "years-long" activity, its more specific factual allegations actually show that the purported misrepresentations and laundering transactions were all clustered around specific events separated by considerable chunks of time.  Such a dispersed sequence of alleged misconduct fails to allege close-ended continuity.  *See First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc.*, 219 F. Supp. 2d 576, 587 (S.D.N.Y. 2002) (rejecting closed-ended continuity because "chronology of events suggests sporadic bursts of activity at key points in time . . . rather than sustained and continuous criminal activity over the whole time period").

In its opposition, the government claims that the Indictment nevertheless establishes closed-ended continuity because the Indictment alleges a number of "factors" that weigh in favor of such a finding, including the presence of a variety of predicate acts, a significant number of schemes, a large number of participants, and a large number of victims.  (Opp. at 20 (citing *GICC Cap.*, 67 F.3d at 467 (2d Cir. 1995).)  To the contrary, these "factors" in the context of the Indictment's allegations weigh *against* a finding of continuity:

- *First*, there is not a variety of predicate acts because all of the alleged predicate acts sound in fraud, as even the money laundering and unlawful monetary transactions counts are tied to the Indictment's fraud allegations.  (*See* Ind., ¶¶ 33-35 (money laundering charges concern fraud charges alleged in Counts Five to Eleven), 56 (unlawful monetary transaction charge concerns fraud charges alleged in Counts Five and Six).)  *See Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 413

(S.D.N.Y. 2013) (courts in this Circuit applying the multifactor continuity test look with disfavor on, *inter alia*, "allegations of RICO violations involving solely mail and wire fraud or little other variety in the predicate acts"); *Gross v. Waywell*, 628 F. Supp. 2d 475, 493 (S.D.N.Y. 2009) ("RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." (quoting *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000)).

- *Second*, although the government attempts to throw Mr. Kwok's words back at him, the government's own Indictment alleges that the purported fraud schemes are part of a single course of conduct, not distinct schemes—Count Four, for example, alleges a single conspiracy to engage in the alleged GTV, Farm Loans, and G|CLUBS Schemes, as well as bank fraud.  (*See id*. ¶¶ 36-40).

- *Third*, even accepting that there is a significant number of alleged victims, those victims come from a confined group—according to the Indictment, the alleged schemes were all targeted at Mr. Kwok's fellow members of his pro-democracy movement.  (*See id.*, ¶ 9(b) (Mr. Kwok used "nonprofit organizations to amass followers who were aligned with his purported campaign against the [CCP]" and provided false and misleading information "to defraud [his] followers and other victims").  *See Efron,* 223 F.3d 18 (noting that "the fact that a defendant has been involved in only one scheme with a singular objective and a closed group of targeted victims" supports conclusion that there is no continuity).

- *Fourth*, while the government claims that there are a significant number of participants in the criminal conduct, in reality, the Indictment alleges only four co-conspirators: Mr. Kwok, Ms. Wang, Mr. Je, and "CC-1." Where "the activities alleged involved only a handful of participants," the allegations do not support closed-ended continuity.  *GICC Cap.*, 67 F.3d at 468.

Accordingly, the Indictment fails to establish closed-ended continuity.

### b.  The Indictment Fails To Allege Open-Ended Continuity

To establish open-ended continuity, the government must show that "there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit, S.A.,* 187 F.3d at 242.  Such a threat may be presumed when an enterprise's business is primarily or inherently unlawful, like the sorts of organized crime rackets that the RICO statute was intended to combat.  *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008); *see Cain*, 671 F.3d at 288 ("[W]e have recognized that where 'the enterprise is an entity whose business is racketeering activity, an act performed in furtherance of that business

automatically carries with it the threat of continued racketeering activity.'") (citation omitted).  In stark contrast, where, as here, the alleged enterprise "primarily conducts a legitimate business, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Cofacredit, S.A.*, 187 F.3d at 243.

The government does not address these requirements because it cannot—at most the Indictment alleges that there are purported incidents of fraud and money laundering surrounding legitimate businesses, which fails to show either (i) that they were engaged in inherently unlawful activity, *see United States v. Aulicino*, 44 F.3d 1102, 1111 (2d Cir. 1995) ("[i]n cases concerning alleged racketeering activity in furtherance of endeavors that are not inherently unlawful, such as frauds in the sale of property, the courts generally have found no threat of continuing criminal activity arising from conduct that extended over even longer periods"); or (ii) that these purported criminal acts were the businesses' "regular way of operating," *see Cofacredit, S.A.*, 187 F.3d at 244 ("[w]hile the Windsor Defendants did commit mail and wire fraud against Société Générale and Cofacrédit for nearly one year from early 1988 to November 1988, there is insufficient evidence to support a finding that these crimes were a regular means by which the Windsor Defendants conducted their plumbing supply business").

Instead of grappling with these deficiencies in its Indictment, the government points to a single aspect of the alleged criminal endeavor that it claims support open-ended continuity:  that the defendants were allegedly "involved in multiple criminal schemes," which is "highly relevant to the inquiry into the continuity of the defendant's racketeering activity."  (Opp. at 19 (quoting *Nw. Bell Tel. Co.*, 492 U.S. at 241).)  But as the Supreme Court went on to say in adopting a "less inflexible approach," Congress did not intend that continuity could be shown "only by proof of

multiple schemes," and in fact went on to emphasize that the concept of a "scheme" "appears nowhere in the language or legislative history of the [RICO] Act." *Nw. Bell Tell. Co.*, 492 U.S. at 241. Here, the alleged predicate acts related to discrete periods with respect to each of the four alleged "schemes"—the initial funding of GTV, the beginning of the Farm Loans Program, the start of G|CLUBS and the launch of the Himalaya Exchange. (*See* Ind., ¶¶ 16-19.) Applying the Supreme Court's "less inflexible approach," these singular events are not likely to recur in the future, and thus, do not establish a threat of continuing criminal activity, and cannot support an inference of open-ended continuity. *See GICC Cap.*, 67 F.3d at 466 (noting that inherently terminable activities do not suggest threat of continuity).

## II. COUNTS EIGHT AND TEN SHOULD BE DISMISSED BECAUSE THEY FAIL TO ALLEGE THAT THE PURPORTED SCHEME TO DEFRAUD WAS "IN CONNECTION" WITH A SECURITIES TRANSACTION

As Mr. Kwok set forth in his opening brief, to sustain a securities fraud count, the Indictment must allege material misstatements made "in connection with the purchase or sale" of securities. In many securities fraud cases, it is readily apparent what security is at issue and what the connection is to the fraud. But here, given the government's persistent and repeated refusal to simply say what it means even in its opposition, Mr. Kwok and the Court are left to guess at these core issues because (i) the government will not simply pick a theory and (ii) the Farm Loans and G|CLUBS memberships are plainly not securities. For these reasons, Counts Eight and Ten should be dismissed.

### A. The Government Continues Its Shifting Allegations

To satisfy the "in connection with" prong of a securities fraud count, the government must show that the alleged fraudulent conduct "somehow induced the purchaser to purchase the security at issue." *Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 537 (2d Cir. 1999). The Farm Loans and G|CLUBS securities fraud counts fail even the most basic of these requirements: they fail to

identify the "security at issue."  The government has now had four chances to address this simple question—three indictments and its opposition brief—but somehow continues to muddle the question.

The statutory allegations in the Indictment make no mention at all of GTV, but instead claim that Mr. Kwok committed securities fraud by marketing "the Farm Loans Program" (*see* Ind., ¶ 48) and "G|CLUBS" (*see id*., ¶ 52) through deception.  When challenged, however, the government appears to allege that GTV equity is the "security at issue." (Opp. at 25 ("the defendants used the Farm Loan Program to solicit additional investment in GTV stock"); *id*. at 31 (discussing Ind. ¶ 18(f), and awards of "stock in KWOK-affiliated entities, such as GTV.").)  But then, out of the other side of its mouth, the government asserts that whether the Farm Loans *themselves* are securities "is a mixed question of law and fact" (Opp. at 29), and that a "reasonable investor may well have chosen not to purchase G|CLUBS memberships" had they known of the Mahwah Facility.  The government's waffling leaves open the possibility that the government's theory is that the Farm Loans and G|CLUBS—and not GTV stock—are the securities underlying Counts Eight and Ten.  Mr. Kwok's confusion at the government's allegations is understandable given that the government itself appears to be unsure as to what security lies at the heart of its securities fraud counts.

In a criminal prosecution, confusion, however, is not constitutionally permissible.  As set forth in Mr. Kwok's moving papers, the government's lack of specificity with respect to Counts Eight and Ten violates due process and precludes Mr. Kwok from pleading an acquittal or conviction in bar of a subsequent indictment, warranting dismissal.  *See United States v. Walsh*, 194 F.3d 37, 44 (2d. Cir. 1999); *see also Russell v. United States*, 369 U.S. 749, 764 (1962).  While the government attempts to limit the applicability of *Russell* by noting that it arose "out of the

McCarthy-era hearings on 'un-American Activities,'" (Opp. at 26 n.7), *Russell* itself invokes an "elementary principle of criminal pleading" dating back centuries:  an indictment must "'descend to particulars'" and must be "framed to apprise the defendant 'with reasonable certainty of the nature of the accusation against him.'"  *Russell*, 369 U.S. at 765 (quoting *United States v. Cruikshank*, 92 U.S. 542, 558 (1875) and *United States v. Simmons*, 96 U.S. 360, 362 (1877), respectively).

The government's glib attempt to distinguish *Russell* (offered only in a footnote), relies primarily on *United States v. Wey*, No. 15 Cr. 611 (AJN), 2017 WL 237651, at *5 (S.D.N.Y. Jan. 18, 2017), where Judge Nathan rejected an attempt to read *Russell* as requiring an indictment to "specify how each essential element is met."  *Id.*  But the flaw in the Indictment is not that it contains an insufficient level of detail.  Rather, the flaw is that this detail is so muddled that it fails to identify the relevant security in two of the Indictment's three securities fraud counts.  Faced with the Indictment's inconsistency, the government stubbornly refuses to choose a theory, and instead attempts to place Mr. Kwok in a double-bind.  Mr. Kwok is entitled to notice as to which purported security his alleged misrepresentations were made "in connection with."

The government's choose-your-own adventure approach to identifying the "security at issue" creates a very real constitutional defect in this prosecution.  As the government's own authority notes, one of the key requirements of an indictment is that it "allows [the defendant] to prepare his defense" and that it "protect[s] him from double jeopardy."  *United States v. Juwa*, 508 F.3d 694, 701 (2d Cir. 2007) (citations omitted).  The government's stubborn refusal to clarify its theory over the numerous chances it has been given implicates both of these issues.  As an initial matter, while the government claims that the issue of whether the Farm Loans or G|CLUBS memberships can be deferred until trial, that approach imposes a real cost on Mr. Kwok, who

would have to expend resources preparing to challenge whether either instruments, both instruments, or none of these instruments satisfy the statutory definition of a "security." With just a few months before trial, that is not a cost Mr. Kwok should bear just so the government can play coy. Furthermore, and of acute concern, is that the government's shifting approach fails to "protect [Mr. Kwok] from double jeopardy" because it means that the jury's verdict will provide no finality for him. For example, if Mr. Kwok is acquitted of the Farm Loans or G|CLUBS securities fraud counts, how will he or the Court know whether that acquittal bars a re-prosecution of him for securities fraud in connection with the Farm Loans, G|CLUBS, or GTV? Whatever tactical advantage the government apparently perceives from preserving its menu of available "securit[ies] at issue," that advantage must give way to the constitutional imperative of fair notice.

Given that the Indictment is hopelessly confused on this core issue, Counts Eight and Ten should be dismissed.

**B.    The Farm Loans Program Did Not Have the Requisite "Connection With" a Securities Transaction**

Assuming for the moment that the government's theory is that GTV shares are the relevant security underlying Count Eight, Mr. Kwok's statements about the Farm Loan Program were not made "in connection with a purchase or sale" of GTV shares as a matter of law. *See Merrill Lynch Pierce, Fenner & Smith Inc., v. Dabit*, 547 U.S. 71, 85 (2006). At bottom, the government argues that the "purpose" of the Farm Loans was to "solicit[] further investments" in GTV stock because Mr. Kwok represented that a Farm Loan lender would also be "giv[en] GTV equity." (Opp. at 28 (citing Ind., ¶ 17).) But none of this addresses Mr. Kwok's central point on the motion to dismiss: the government does not identify any transactions in GTV stock on the Farm Loans count that meet the statute's requirements.

Section 10(b) requires a nexus between the alleged deception and a securities transaction. That is what distinguishes securities fraud from generic fraud—the additional element that the deception or false statements "somehow induc[ed] the purchaser to purchase the security at issue." *Press*, 166 F.3d at 537. But the Indictment does not (and cannot) identify any sale or purchase of GTV stock that was induced via the Farm Loans Program because all that the Indictment alleges is that Farm Loans participants would receive free GTV stock in some indeterminate amount at some unspecified time. A "free" grant of stock can definitionally never be a sale or purchase of a security because there is no consideration exchanged—no one is giving anything over for the GTV stock.

Specific factual allegations in the Indictment underscore the absence of a relevant securities transaction in Count Eight. According to the Indictment, by the time the Farm Loan Program began, the GTV Private Placement had *already been completed.* (*See* Ind., ¶ 17(a) (no allegation that GTV stock was offered for sale after June 2020).) The government unconvincingly tries to waive away the implications of this by arguing that the GTV Private Placement was "the first, but not the last, unregistered offering of GTV stock." (Opp. at 25.) But this is mere argument— despite more than three years of investigation since the original GTV private placement, nowhere does the Indictment make any allegations of a subsequent GTV stock offering. (*See* Ind., ¶ 17(c) (discussing "equity" but not discussing the purchase or sale of GTV stock).) Therefore, even if taken as true, the Indictment's allegations do not make out criminal securities fraud. *See Press*, 166 F.3d at 537 (to satisfy "in connection" prong, scheme to defraud had to "somehow induc[e] the purchaser to purchase the security at issue").

Likewise, the government's attempt to point to vague statements Mr. Kwok allegedly made *after* GTV's private placement cannot salvage Count Eight. The government argues that the

Indictment satisfies the "in connection with" requirement because Mr. Kwok represented that participants in the Farm Loan Programs could "ask for stocks" or that they would obtain "equity" through some unspecified means in the future.  (Opp. at 25.)  But these ambiguous post-securities sale statements were not made in connection with a "purchase or sale" of GTV stock, and the government does not allege that Mr. Kwok's statement resulted in any later securities transactions. Indeed, the Indictment's express allegations are that the issuance of GTV stock took place "[b]etween approximately April 20, 2020 and June 2, 2020."  (Opp. at 4.)  Mr. Kwok's alleged statements concerning the Farm Loans occurred over one month later, "[o]n or about July 22, 2020." (Ind. ¶ 17(c).)

Faced with the fact that Mr. Kwok's alleged misstatements cannot be connected to any purchase, sale, or conversion of any security, and can only instead be connected to the Farm Loans themselves, the government argues that the Indictment alleges that Mr. Kwok "promised [that] such a conversion would occur."  (Opp. at 26, n.7 (internal quotations omitted).)  Assuming *arguendo* that Mr. Kwok made a "promise" that at some future point in time the lenders would receive GTV stock, the lenders would not be engaging in a "purchase or sale" of the GTV stock because they would have already loaned their money to the Farms in exchange for interest.  Thus, the consideration for a Farm Loan would be the loan proceeds in return for a specific promise of repaying the loan with interest.  Thus, given that no such purchase, sale, or conversion of GTV stock ever occurred, no statement made by Mr. Kwok could "induce" investors to take any action in connection with such stock.  *See United States v. O'Hagan*, 521 U.S. 642, 656 (1997) (crediting government's position that use of fraudulent loan proceeds to later purchase securities did not

satisfy "in connection with" requirement because the proceeds had intrinsic value such that the fraud "was complete as soon as the money was obtained") (emphasis added).[3]

The government's fallback argument—that the Farm Loans themselves may be securities—fares no better.  As noted in Mr. Kwok's Motion (and as utterly ignored by the government), the Indictment fails to allege that the Farm Loans operated as securities, as opposed to routine commercial loans.  *Reves v. Ernst & Young*, 494 U.S. 56, 66 (1990) (noting that where notes "advance some other commercial or consumer purpose" beyond the profit the note is expected to generate, it is unlikely to be a security).  The government's failure here is not factual, but rather is an inherent legal flaw in the Indictment.  Whatever boilerplate the government relies on to support its position, the government chose to make factual allegations about the Farm Loans that demonstrate that they were not securities but rather routine commercial loans—a short term note to lend money to a business in exchange for a promise to repay the loan with interest, secured by the business's assets.  *See*, *e.g.*, *Reves*, 494 U.S. at 65 (stating that "the short-term note secured by a lien on a small business or some of its assets" is not a security).  Count Eight thus cannot be salvaged on that basis.

---

[3] In fact, in defending Count Twelve, the money laundering count based on the GTV private placement, the government argues explicitly that the fraud was complete as soon as the purported victims wired their money to Saraca.  (Opp. at 49-50.)  If that is the government's position, then it must also hold true for the Farm Loans and G|CLUBS securities counts.  The fraud was complete as soon as the alleged victims sent in the loan proceeds or membership purchase price.  At that point in time, there were no securities transactions even allegedly scheduled to occur.  That would thus place this case squarely in the rubric of the hypothetical that the *O'Hagan* court stated would not satisfy the "in connection with" requirement.  *See pp.* 33-34, *infra*.

**C.    Count Ten Should Be Dismissed Because the G|CLUBS Membership Purchases Do Not Have the Requisite "Connection With" a Securities Transaction**

The government similarly fails to defend Count Ten, which alleges that Mr. Kwok committed securities fraud by making misstatements regarding G|CLUBS memberships. Like Count Eight, the facts supporting Count Ten of the Indictment do not include misstatements made "in connection with" the "purchase or sale" of any securities. Count Ten must be dismissed as a result: club memberships that offer services and other consumptive goods are simply not securities under Section 10(b). (*See* Mot. at 26 n.10 (collecting cases).).

The government asserts that Count Ten adequately alleges that there were material misrepresentations made in connection with the purchase or sale of a security because G|CLUBS members were allegedly fraudulently induced to pay membership fees not for any tangible membership benefits, but rather "as an additional means for investors to obtain stock." (Opp. at 30.) But even assuming there was an offer of free stock, the government ignores *United Housing Found., Inc. v. Forman*, 421 U.S. 837 (1975), cited by Mr. Kwok in his opening brief, which dictates that such a transaction would not be a "securities" transaction, because the consumptive element outweighs the profit motivation. As a result, the purchase of a membership, even with a free stock offer, cannot constitute a securities transaction.

Indeed, prosecuting Mr. Kwok for his vague statements that G|CLUBS members would receive an "allot[ment]" in some "Kwok-affiliated entities" would constitute a "novel construction of a criminal statute," in violation of Mr. Kwok's due process rights. *United States v. Benjamin*, 2022 WL 17417038, at *13. The government only addresses this weighty concern in a footnote, stating that the "SEC has long held that Section 10(b) and Rule 10b-5" apply to promises of free stocks. In in support of this proposition, the government cites to a single administrative proceeding that was not litigated to judgment. (Opp. at 31 n.9.) (citing *In the Matter of Web Works*

*Marketing.com, Inc. et al.*, S.E.C. Release No. 7703 (July 21, 1999) ("*Web Works*").)  But as the government is acutely aware, the S.E.C. is not the arbiter of criminal law, and what the S.E.C. "holds" cannot trump the plain language of the statute or applicable precedent.[4]  Yet even the non-controlling authority cited by the government makes Mr. Kwok's point: in *Web Works*, subscribers to a consumptive product—a long-distance telephone plan—were given *25 shares* of free stock in the provider's company.  *See Web Works*, at *1-2.  But in that case, one could evaluate the investment motive because there—unlike here—*the number of free shares was specified*.  Here, in stark contrast, the Indictment fails to allege that Mr. Kwok quantified free shares G|CLUBS' members would receive or specified when members might receive this free GTV stock "kicker." It was therefore impossible for G|CLUBS' members to evaluate the investment potential of such a vague promise.  For that reason, the Indictment's allegations concerning the future grant of free GTV stock were not only immaterial as a matter of law to G|CLUBS members' decisions whether to purchase memberships, but also but lack the requisite connection to the purchase or sale of a security, requiring dismissal of Count Ten.  *See Press*, 166 F.3d at 537 (to satisfy "in connection" prong, scheme to defraud had to "somehow induc[e] the purchaser to purchase the security at issue").

Finally, the government's fallback position with respect to Count Ten fails for the same reason as the government's fallback with respect to Count Eight:  as alleged in Count Ten, Mr. Kwok "promoted and marketed G|CLUBS to obtain money from victims through false

---

[4] The S.E.C.'s determination in *Web Works* is even less entitled to deference because it came in the context of a neither admit-nor-deny enforcement proceeding, as opposed to through the rule-making process.  *See S.E.C. v. Rosenthal*, 650 F.3d 156, 160 (2d Cir. 2011) ("Although in some circumstances an agency's interpretation of a statute that it administers is entitled to substantial deference under *Chevron* . . ., the *Chevron* framework is inapplicable where, as here, the agency's interpretation is presented in the course of litigation and has not been 'articulated before in a rule or regulation.'")

statements and misrepresentations, including regarding . . . the purpose and use of victims' money[.]"  (Ind., ¶ 52.)  However, memberships in a social club are not securities as a matter of law.  (Mot. at 27-20.)  Accordingly, even if the government ultimately takes the position that the G|CLUBS memberships themselves are the security underpinning Count Ten (as opposed to shares in GTV), that position, too, is legally untenable, and Count Ten must be dismissed.  *See Dabit*, 547 U.S. at 85 (alleged fraud must at least "coincide with a securities transaction").

## III.    COUNTS FIVE THROUGH ELEVEN FAIL TO ALLEGE MATERIAL MISREPRESENTATIONS OR OMISSIONS OR SCHEME LIABILITY

As it does elsewhere, the government seeks to portray Mr. Kwok's motion to dismiss Counts Five through Eleven by insisting—wrongly—that Mr. Kwok is making evidence-based challenges to those counts which should be reserved for a jury and that as long as the Indictment "tracks the statute," Mr. Kwok's motion should be denied.  (Opp. at 33, 37.)  In fact, Mr. Kwok is accepting as true, but challenging the sufficiency of, the allegations of these counts:  the government has failed to sufficiently allege that Mr. Kwok made a material misrepresentation or engaged in a scheme to defraud, which is a critical element of wire fraud and securities fraud.  *See United States v. Gramins*, No. 21-5, 2022 WL 6853273, at *2 (2d Cir. Oct. 12, 2022) ("[M]ateriality is an element of both securities fraud and wire fraud."), *cert denied*, 143 S. Ct. 2637 (2023); *see also supra* pp. 16-21.

### A.    The GTV Counts (Counts Five and Six) Should Be Dismissed for Failing To Allege a Material Misrepresentation or Omission

In his opening brief, Mr. Kwok argued that the government had failed to articulate an actionable material misrepresentation with respect to the GTV Private Placement.  In response, the government principally focuses on the PPM's statement that GTV "plan[ned] to use the proceeds from a private placement to expand and strengthen [GTV's] business" and argues that it is a

misrepresentation because some portion of the proceeds was allegedly used for other purposes by GTV's parent.  (Opp. at 38.)  The government is wrong on several fronts.

*First*, as Mr. Kwok noted in his opening brief, other parts of the PPM made clear to GTV investors that there any potential uses of the funds described were merely "illustrative" and that GTV's parent company, Saraca, could "exert significant pressure" over the use of the private placement funds.  GTV investors were fully apprised that the private placement funds may be used in other ways, even in ways that could benefit Saraca.

The government's contentions that Mr. Kwok's argument goes to reliance, which is not an element of criminal securities fraud, or that Mr. Kwok is attempting to make a "pseudo motion for summary judgment," are unavailing.  Initially, Mr. Kwok is not arguing that the GTV investors could not rely on the PPM's statements about the contemplated use of the funds because other parts of the PPM disclaimed such reliance.[5]  Rather, he contends that those other statements in the PPM qualify the language upon which the government relies, thus rendering that language accurate and immaterial.  *See Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 360 (2d Cir. 2002) (finding alleged misstatement to be immaterial in light of the fact that investors were informed of substantial risks associated with investment); *United States v. Calderon*, 944 F.3d 72, 86 (2d Cir. 2019) (to be material, an alleged misrepresentation must "actually matter in a meaningful way to a rational decisionmaker").  Moreover, the government's contention that the Court should not consider Mr. Kwok's cited portions of the PPM on a motion to dismiss is an odd one—in essence, the government is arguing that the Court should shut its eyes to undisputed language in the very

---

[5] The government's cited case, *S.E.C. v. Collector's Coffee, Inc.*, No. 19 Civ. 4355 (VM), 2023 WL 6453709, at *19 (S.D.N.Y. Oct. 4, 2023), is thus irrelevant, because it does not hold that disclaimers relate exclusively to reliance and not materiality.  Rather, in that case, the defendant argued that the statements in question "should not be relied upon when assessing investment risk" based upon the disclaimers in the PPM.  *Id.*

document that the government claims is fraudulent so that the government can present an ultimately legally insufficient count to the jury.  Courts, however, have rejected such pointless exercises.  *See*, *e.g.*, *United States v. General Dynamics Corp.*, 644 F. Supp. 1497, 1500 (C.D. Cal. 1986) (considering contract on motion to dismiss indictment because "[i]f [the terms of a contract] make it clear that the indictment should not proceed, it would be a travesty if the Defendants were forced to engage in a lengthy trial with the inevitable result that the Court would then dismiss the indictment once the Contract came into evidence"), *rev'd on other grounds in* 828 F.2d 1356 (9th Cir. 1987); *United States v. Liberto*, No. 19 Cr. 0600 (RDB), 2020 WL 5994959, at *7 (D. Md. Oct. 9, 2020) (courts may consider the terms of a contract that is "the very subject of the indictment").

*Second*, even if the Court were to focus myopically on the government's isolated statement from the PPM, then Counts Five and Six still should not survive because the PPM's statement as to the "plan[ned]" use of funds to "expand and strengthen the business" is precisely the kind of statement that courts in this Circuit have long held are aspirational or "puffery" and thus immaterial for purposes of the securities laws.  The government wrongly claims that Mr. Kwok's argument again attempts to import reliance into the criminal context.  Mr. Kwok is doing no such thing— the fact that a statement is generalized or aspirational *goes to its materiality*.  *See City of Pontiac Policemen's and Firemen's Ret. Sys. v. UBS AG*, 757 F.3d 173, 183 (2d Cir. 2014) (explaining that "it is well-established that general statements about reputation, integrity, and compliance with ethical norms are inactionable 'puffery,' meaning that they are 'too general to cause a reasonable investor to rely upon them,'" which is "particularly true where, as here, the statements are explicitly aspirational, *with qualifiers such as 'aims to,' 'wants to,' and 'should,'*" and that this "generality . . . prevents them from rising to the *level of materiality required to form the basis for*

*assessing a potential investment*") (emphasis added); *see also Lasker v. New York State Elec. & Gas Corp.*, 85 F.3d 55, 59 (2d Cir. 1996) (stating that a company's statement that, among other things, its "business strategies would lead to continued prosperity" was "puffery" that was immaterial and thus not actionable); *IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009) (statement that company would "continue to reposition and strengthen [its] franchises with a focus on financial discipline" was not material).[6]  Because the Indictment's alleged misstatements concerning the GTV Private Placement are immaterial as a matter of law, these counts should be dismissed.

**B.      The Farm Loans Counts (Counts Seven and Eight) Should Be Dismissed for Failing To Allege a Knowing Material Misrepresentation or Omission**

In his Opening Brief, Mr. Kwok explained why deficiencies in three alleged misstatements with respect to the Farm Loans required dismissal.  In its opposition, the government focuses only on the alleged misstatement that funds raised through the loan program would be used for the Farms' "working capital," but were instead misappropriated (*id.*, ¶¶ 17(e)-(f)).  Of course, Mr. Kwok cannot face criminal liability for purported misstatements he is not alleged to have made, and the government does not allege that Mr. Kwok was even aware of that statement, much less that he had seen or signed any document containing it.  (Mot. at 43); *see S.E.C. v. Rio Tinto plc*, No. 17 Civ. 7994 (AT), 2019 WL 1244933, at *13 (S.D.N.Y. Mar. 18, 2019); *ECA, Loc. 134 IBEW*, 553 F.3d at 198 ("The requisite state of mind in a section 10(b) and Rule 10b-5 action is an intent

---

[6] As with the RICO Count, the government urges the Court to ignore civil cases Mr. Kwok cites in support of his argument on the securities fraud counts.  (Opp. at 38 n.10.).  For the same reasons however, the Court should consider this civil authority not because it imposes civil pleading burdens, but because it analyzes the substantive materiality requirement for securities fraud under the very statute upon which the government bases its securities fraud counts.  (*See supra* pp. 4-7).  Because what is material under the federal securities laws does not vary based on whether a case is criminal or civil, the Court should decline the government's invitation.

'to deceive, manipulate, or defraud.'")

The Government's sole response is that *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011), a Supreme Court case relied upon by *Rio Tinto*, exclusively concerns a private right of action and is inapplicable to a criminal case where the government has also pleaded aiding-and-abetting. (Opp. at 39.) However, while the government claims that "the Second Circuit has recognized the limitations on 'maker' liability articulated in *Janus* and its progeny are inapplicable in criminal cases" (*id.*), the Second Circuit expressly declined to address the issue, *see Prousalis v. United States*, 692 F. App'x 675, 676 (2d Cir. 2017) ("The government argues, inter alia, that *Janus* is not applicable in criminal cases. We need not address this issue."). Indeed, in *Prousalis*, the Second Circuit had no need to reach the issue because the defendant in that case allocuted to aiding and abetting securities fraud, thus obviating the need for the court to consider whether the defendant could have been guilty under a primary liability theory even though they were not alleged to have made any of the relevant misrepresentations. *See* 692 F. App'x at 676.

Moreover, disregarding the Supreme Court's holding in *Janus* because this is a criminal prosecution rather than a civil case would turn the law on its head. In *Janus*, the Court was interpreting Rule 10b-5, *see* 564 U.S. at 142, which is the same regulation that the government alleges Mr. Kwok violated and for which he should be punished criminally. The Court specifically limited the reach of that rule to those who "make" the statement, *i.e.*, those with "ultimate authority over the statement." *Id*. Adopting that limitation with respect to Rule 10b-5 in private civil cases but not in criminal cases would violate the well-worn principle that, pursuant to the rule of lenity, "[courts] must interpret the statute consistently, whether [they] encounter its application in a

criminal or noncriminal context." *Leocal*, 543 U.S. at 11–12, n. 8 (2004).[7]

Finally, the fact that the government has alleged an aiding-and-abetting theory here does not change the result. "[A] defendant charged with aiding and abetting the commission of a crime by another cannot be convicted in the absence of proof that the crime was actually committed." *United States v. Ruffin*, 613 F.2d 408, 412 (2d Cir. 1979). Where, as here, the primary Section 10(b) count fails because it lacks an actionable misrepresentation and fails to satisfy the "in connection with" element, *see supra* pp. 16-22, then a claim for allegedly aiding and abetting such a purported violation likewise fails as a matter of law.[8] Counts Seven and Eight should be dismissed.

### C.    The G|CLUBS Counts (Counts Nine and Ten) Should Be Dismissed for Failing To Allege a Material Misrepresentation or Omission

In his Opening Brief, Mr. Kwok argued that the G|CLUBS counts should be dismissed for several reasons, including that the Indictment fails to allege an actionable misrepresentation or omission about the manner in which G|CLUBS would use the proceeds from the sales of memberships. In response, the government simply parrots the Indictment's generalized allegation that Mr. Kwok made misleading statements about how the funds would be used and then baldly pronounces this allegation "sufficient" to sustain these counts. (Opp. at 40.) But as with the other counts, where the government goes beyond these vague allegations and points to specific

---

[7] Indeed, not surprisingly, criminal actions under the Exchange Act often apply principles previously established in civil actions. *See, e.g., United States v. Gleason*, 616 F.2d 2, 28 (2d. Cir. 1979) (applying civil precedent on the meaning of materiality); *United States v. Cook*, 573 F.2d 281, 283 (5th Cir. 1978) (applying civil precedent on extraterritoriality); *United States v. Charnay*, 537 F.2d 341, 348–49 (9th Cir. 1976) (applying civil precedent as to what constitutes manipulation); *United States v. Koenig*, 388 F. Supp. 670, 701, 715 (S.D.N.Y. 1974) (applying civil precedent on the meaning of materiality and Rule 10b-5's "in connection" with requirement).

[8] The government asserts that even if *Janus* applies, it has pointed to statements allegedly made by Mr. Kwok. (Opp. at 39, n.11.) But the government merely cites to the very same allegations that Mr. Kwok challenged in his motion as immaterial as a matter of law and which the government otherwise fails to address. (*See* Mot. at 40-43.)

statements, the Court should scrutinize those statements. *See supra* pp. 4-7, 17, 21-22. And once the Court does so, it will become quickly apparent that none of the actual statements Mr. Kwok is alleged to have made pertain to the use of proceeds from the G|CLUBS membership sales.

In the absence of such a statement, the government cannot proceed on a securities fraud count related to G|CLUBS concerning the use of these proceeds. But even if the government could proceed on an omissions theory, that would still fail because the Indictment does not allege any duty on Mr. Kwok's part to disclose any information about the use of the G|CLUBS memberships proceeds. *See United States v. Autuori,* 212 F.3d 105, 118 (2d Cir. 2000) (government must allege a duty to disclose); *see also In re Eastman Kodak Co. Sec. Litig.*, 632 F. Supp. 3d 169, 187 (W.D.N.Y. 2022), *appeal withdrawn sub. nom. Les Investissements Kiz. Inc. v. Eastman Kodak Co.*, No. 22-2788, 2023 WL 3149527 (2d Cir. Jan. 26, 2023) (dismissing § 10(b) claim based on alleged material omission where "Plaintiffs have not viably pled that Defendants contravened an affirmative legal disclosure obligation, nor that Defendants omitted information necessary to prevent the statements at issue from being misleading"). In the absence of any such duty, the government cannot sustain—as a matter of law—any type of fraud count, whether securities or wire fraud.

The government's only explanation for why Mr. Kwok was obligated to disclose how *profits* from the business would be used is the government's insistence that a reasonable individual would have considered it important in deciding whether to purchase a membership. (Opp. at 41 (citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976) and *Basic Inc. v. Levinson*, 485 U.S. 224, 23-32 (1988)).) This allegation is problematic for several reasons. *First*, the government's contention only highlights the trouble with its whack-a-mole approach to defining the relevant security for the G|CLUBS and Farm Loans securities fraud counts—on the one hand

the government relies on GTV as the relevant security, but then, when necessary to cover the Indictment's deficiencies, the government claims that the G|CLUBS memberships are the relevant securities. *Second*, as argued in Mr. Kwok's opening brief, the G|CLUBS memberships are simply not securities. (*See* Mot. at 25-29; *see also supra*, pp. 20-22.) *Third*, even if an investor would have considered that information important, the Indictment still fails to allege a statement about the use of the G|CLUBS membership proceeds, and the "plain language" of the securities laws "makes it clear that liability for an omission pursuant to subsection (b) requires a statement to have been made" in the first place. *United States v. Bongiorno*, No. 05 Cr. 390 (SHS), 2006 WL 1140864, at *8 (S.D.N.Y. May 1, 2006). *Fourth*, whatever merit the government's contention has with respect to the G|CLUBS securities fraud count, it does not save the G|CLUBS wire fraud count, which does not seek to (wrongly) characterize the G|CLUBS membership purchasers as investors. Counts Nine and Ten should be dismissed.

### D.    The Himalaya Exchange Count (Count Eleven) Should Be Dismissed for Failing To Allege a Material Misrepresentation or Omission

The two sentences offered by the government to salvage the Indictment's count relating to the Himalaya Exchange (Count Eleven), try to sidestep the core of Mr. Kwok's argument—that even if taken as true, the Indictment faults Mr. Kwok (i) for statements that are true even accepting the Indictment's own allegations and (ii) where the alleged discrepancies in fact are too minor to be material. The government is of course free to ignore Mr. Kwok's arguments, but it cannot supply facts to the Court showing that 2 + 2 = 4, and then claim that Mr. Kwok lied by not saying that in fact the right answer is 5. Absent material *misleading* conduct there can be no wire fraud, and thus, Count Eleven should be dismissed as a matter of law. *See United States v. Connolly*, 24 F.4th 821, 843 (2d. Cir. 2022) (government's failure to show "false or misleading [conduct] means it failed to prove conduct that was within the scope of the statute prohibiting wire fraud schemes");

*see also United States v. Finnerty*, 533 F.3d 143, 148-49 (2d. Cir. 2008) (no securities fraud when government did not show that defendant had communicated anything misleading to his alleged victims and government merely "undertook to prove no more than garden variety conversion").

     **E.**     **To the Extent They Alleged So-Called "Scheme Liability," Counts Six, Eight and Ten Should Be Dismissed Because They Fail To Allege Deceptive Conduct Aside from an Alleged Misrepresentation**

As detailed in Mr. Kwok's moving brief, in the Second Circuit, scheme liability cannot lie where its sole basis is an alleged misstatement or omission.  (Mot. at 55-56 (*citing, e.g., Rio Tinto, plc*, 2019 WL 1244933, at *15 (S.D.N.Y. Mar. 18, 2019).  In each of Counts Six, Eight and Ten, the only alleged deceptive conduct other than the claimed misrepresentations is the purported "misappropriation" of funds.  But these funds were only "misappropriated" in light of the government's (false) claim that the purported victims were misled by Mr. Kwok's and others' alleged misrepresentations into sending the funds to GTV, the Farms, or G|CLUBS.  As such, these alleged misrepresentations cannot support scheme liability.  (Mot. at 55-56.)  The government's principal response, that like *Janus*, *Rio Tinto* is inapplicable in the criminal context, fails because Rule 10b-5 must be interpreted uniformly in civil and criminal contexts pursuant to the rule of lenity.  *See supra* pp. 4-7; Opp. at 43.

**IV.**     **COUNTS TWO THROUGH FOUR AND TWELVE SHOULD BE DISMISSED**

     **A.**     **The Indictment Fails To Allege Bank Fraud or False Statements to Financial Institutions**

          **1.**     **The Indictment Fails To Allege Conspiracy To Commit Bank Fraud as a Matter of Law**

The government attempts to evade Mr. Kwok's motion to dismiss the bank fraud count by arguing that he cites an outdated legal standard for Section 1344, but the Indictment fares no better under the cases the government cites.  The law is clear that Section 1344 requires either that a false statement is made directly to a financial institution (18 U.S.C. § 1344(1)) or that a false statement

is conveyed to a financial institution in order to obtain money or property under its control (18 U.S.C. § 1344(2)).[9]  *See Loughrin v. United States*, 573 U.S. 351, 365 (2014) (a valid legal transfer to a bank, even if procured by fraud, fails to satisfy either provision of Section 1344, as "the defendant's false statement [must be] the mechanism naturally inducing a bank . . . to part with its money"); *Shaw v. United States*, 580 U.S. 63, 67 (2016) (Section 1344 applies where "the defendant misled the bank in order to obtain those funds").

The factual circumstances in *Loughrin* and *Shaw* underscore the deficiency of the government's bank fraud allegations against Mr. Kwok.  In *Loughrin*, the petitioner "executed a scheme to convert altered or forged checks into cash" by using them to purchase goods, which he then returned for cash.  573 U.S. at 364 (noting the altered or forged check was the fraudulent means of obtaining bank money).  The *Loughrin* Court contrasted this with a case where a fraudster sells a counterfeit designer handbag in exchange for a good check, which he deposits with a bank; this conduct does not fall within Section 1344 as no false statement has been conveyed to the bank. *Id*. at 361, 264.  Likewise, in *Shaw*, the petitioner's misrepresentation was directed to the bank: he used a bank customer's bank account number "in a scheme to transfer funds from that account to accounts at other institutions from which Shaw was able to obtain [those] funds."  580 U.S. at 63.

Here, assuming the government's factual allegations to be true for purposes of this motion, Mr. Kwok's alleged conduct—procuring funds through fraud, which were then deposited into bank accounts—is analogous to depositing funds from the sale of the counterfeit handbag, not forging checks or manipulating bank account numbers.  (*See* Opp. at 45 (citing Ind. ¶¶ 4 (alleging the

---

[9] The cases Mr. Kwok cited in his motion are not outdated.  *See, e.g., United States v. Metaxas*, 449 F. Supp. 3d 24, 29 (E.D.N.Y. 2020) (recognizing that *United States v. Rodriguez*, 140 F.3d 163, 164-65 (2d Cir. 1998), is "instructive").

transfer of allegedly fraudulently obtained funds between accounts), 5 (same).)  Accordingly, the Section 1344 charge should be dismissed.

2.    **The Indictment Fails To Allege Conspiracy To Provide False Statements to Banks as a Matter of Law**

Section 1014 applies to false statements made in order to secure monies from a federally-secured financial institution, *i.e.*, in the form of an "advance, discount, purchase, purchase agreement, repurchase agreement, commitment, loan, or insurance agreement or application for insurance or a guarantee."  18 U.S.C. § 1014; *Williams v United States*, 458 U.S. 279, 289 (1982) (noting the statute is "designed primarily to apply to borrowers from Federal agencies or federally chartered organizations").  The government's primary argument in opposition is that out-of-circuit opinions interpret the statute differently, but it concedes (as it must) that binding Second Circuit law limits Section 1014 to cases involving "an advance or loan or other credit transaction listed in the statute."  Opp. at 46-47; *United States v. Krown*, 675 F.2d 46, 51 (2d Cir. 1982).  Indeed, while the government tries to argue that *Krown* has somehow been discredited, it fails to note that courts in this Circuit have recognized its impact even after *Williams*.  Opp. at 46-47; *see also, e.g.*, *United States v. Zahavi*, No. 12 Cr. 288 (JPO), 2012 WL 5288743, at *4 (S.D.N.Y. Oct. 26, 2012) (recognizing *Krown's* holding that "the language of [§ 1014], limiting it to the specified credit transactions, must be given effect").

The Indictment includes no allegations that the defendants provided false reports to any financial institution in connection with procuring an advance or loan or any related transaction, which the government does not dispute (as it cannot).  (*See, e.g.,* Ind., ¶ 40(b) (alleging that

Ms. Wang transferred a greater amount than the intended balance *into* a particular bank account.)  The Section 1014 charge should be dismissed.[10]

### B.    The Government Does Not Oppose Mr. Kwok's Argument that Counts Three and Twelve Should Be Dismissed Because the Predicate Offenses Fail

The government essentially concedes two points from Mr. Kwok's opening brief that warrant dismissal of Counts Three and Twelve.   *First*, the government does not contest Mr. Kwok's argument that if the underlying fraud counts that serve as "specified unlawful activity" for purposes of the money laundering counts fail, then the money laundering counts also fail. Because, as Mr. Kwok argued in his opening brief, the alleged fraud counts are insufficient as a matter of law, the Court should also dismiss Counts Three and Twelve.  *Second*, the government concedes that, despite purporting to specify a conspiracy to violate 18 U.S.C. § 1956(a)(1)(A)(i) in Count Three, (*see* Ind., ¶ 32), "the Government is not proceeding on the theory that an object of the money laundering conspiracy was a violation of 18 U.S.C. § 1956(a)(1)(A)(i), which pertains to domestic promotional money laundering."  (Opp. at 51 n.17.)  Accordingly, even if the alleged fraud counts survive, the Court should dismiss that portion of Count Three that purports to allege a conspiracy to violation Section 1956(a)(1)(A)(i) for failure to state an offense.

### C.    Count Twelve Merges with the Predicate Offense, and Should Be Dismissed

Count Twelve should be dismissed for the additional reason that it merges with the predicate securities and wire fraud counts.  The government grounds its response in the Second

---

[10] The government argues that its Count Two and Four conspiracy charges should survive even if the substantive crimes are insufficiently pled because they "do not depend on co-conspirators carrying out any substantive offense."  (Opp. at 47 n.14.)  The government misunderstands Mr. Kwok's argument.  He is not disputing that an agreement to commit a crime is a separate offense.  But the object of the agreement must still be unlawful.  If the object alleged by the government is not criminal, then conspiracy to engage in such conduct likewise cannot be illegal. The government fails to address that argument.

Circuit's decision in *United States v. Szur*, 289 F.3d 200 (2d Cir. 2002), and claims that the purported fraud was complete once the GTV investors wired the funds to the Saraca bank accounts, not once the $100 million transfer was made to Fund-1. (Opp. at 47-50.) *Szur*, however, states that, when determining if there is a merger issue, "the central inquiry is one of distinctness, not timing." 289 F.3d at 214. In *Szur*, the underlying misrepresentations concerned the payment and size of commissions paid to the defendants; the transfers were then moving those proceeds to other bank accounts to collect their "compensation." *See id*. at 209. Thus, the misrepresentations in *Szur* were not dependent on the laundering transactions at issue and were thus distinct. In this case, however, the relevant representation is about the use of the money and the reason why that representation is allegedly false is because the money was used to make the investment in Fund-1. Indeed, in defending its scheme liability theory, the government acknowledges the relatedness of the transfer and the purported fraud by describing the alleged GTV scheme as specifically involving the transfer of $100 million to Fund-1. (Opp. at 42-43 n.12 (arguing that the Indictment sufficient alleged scheme liability because of its allegations that the defendants transferred, *inter alia*, from the GTV private placement).) Thus, this case does not present the same "distinctness" as in *Szur*, and Count Twelve should be dismissed.[11]

---

[11] Indeed, even if the government does pursue additional theories of guilt in the GTV securities fraud count, the fact that it is pursuing scheme liability in that count necessarily means that there is an impermissible overlap between that count and Count Twelve. Put simply, the government cannot have it both ways—it cannot on the one hand allege that Mr. Kwok is guilty of securities fraud under "scheme liability" based on the $100 million transfer for purposes of Count Six, but then turn around and argue that the $100 million transfer is distinct from the scheme for purposes of Count Twelve.

## **CONCLUSION**

For the foregoing reasons and for those stated in his opening brief, Mr. Kwok respectfully

requests that the Court dismiss the Indictment in its entirety.

Dated: New York, New York
        February 28, 2024

PRYOR CASHMAN LLP


By: _____
    Sidhardha Kamaraju
    E. Scott Schirick
    Matthew S. Barkan
    Daniel J. Pohlman
    John M. Kilgard
    Clare P. Tilton

    7 Times Square
    New York, NY 10036
    (212) 421-4100
    skamaraju@pryorcashman.com
    sschirick@pryorcashman.com
    mbarkan@pryorcashman.com
    dpohlman@pryorcashman.com
    jkilgard@pryorcashman.com
    ctilton@pryorcashman.com

    Sabrina P. Shroff
    80 Broad Street, 19th Floor
    New York, NY 10004
    (646) 763-1490

    *Attorneys for Defendant Ho Wan Kwok*