```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03/22/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA,

-against-

HO WAN KWOK,

                     Defendant.

23 Cr. 118-1 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Defendant, Ho Wan Kwok, renews his motion to stay several Chapter 11 bankruptcy proceedings and moves for reconsideration of the Court's December 21, 2023 order (the "Stay Order"), ECF No. 204, denying his initial request for such relief. ECF No. 218; *see* Kwok Second Stay Mem., ECF No. 219. For the reasons stated below, Kwok's motions are DENIED.

## BACKGROUND[1]

On February 15, 2022, Kwok filed for Chapter 11 bankruptcy in the Bankruptcy Court for the District of Connecticut. *In re Ho Wan Kwok*, Case No. 22-50073 (Bankr. D. Conn.), ECF No. 1.[2] On July 8, 2022, the Bankruptcy Court appointed Luc A. Despins as the bankruptcy trustee (the "Trustee"). Bankr. ECF No. 523. On October 14, 2022, the Bankruptcy Court consolidated the case with the Chapter 11 bankruptcy proceedings of two corporate affiliates controlled by Kwok, Genever Holdings Corporation and Genever Holdings LLC. Bankr. ECF No. 970.

On March 29, 2023, a grand jury sitting in the Southern District of New York indicted Kwok on charges of wire fraud, securities fraud, money laundering, and unlawful monetary transactions, as well as conspiracy to commit wire fraud, securities and bank fraud, and money

---

[1] The Court presumes familiarity with the history of the case as described in the Stay Order at 1–4.

[2] Citations to this Bankruptcy Court docket are styled Bankr. ECF No. #.

laundering.[3]  ECF No. 19.  The superseding indictment charged Kwok and two co-defendants with defrauding thousands of victims out of over $1 billion through a series of fraudulent businesses and investment opportunities, and using the proceeds to enrich themselves and others. *Id*. ¶¶ 1–3.

On August 30, 2023, Kwok moved to stay the bankruptcy cases, arguing that the overlap between the bankruptcy proceedings and the criminal matter required a stay of the former to protect his constitutional rights.  ECF No. 129; *see* Kwok First Stay Mem., ECF No. 131.  Kwok contended that the ongoing bankruptcy proceedings threatened his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), provided the Government with "access to information that it would not otherwise be able to view," and allowed his attorney-client privilege to "be used as a sword against him."  Kwok First Stay Mem. at 21, 23.

By order dated December 21, 2023, the Court denied Kwok's motion, finding "insufficient overlap between the bankruptcy and criminal cases": the bankruptcy proceedings seek "to identify properties to compensate Kwok's creditors," while the criminal case concerns "questions of criminal liability" and distinct legal issues such as "Kwok's intent and the materiality of his conduct."  Stay Order at 7–9.  The Court also weighed "the parties' interests and the potential prejudice of allowing the cases to proceed in tandem" and found that Kwok failed to satisfy his burden of showing "undue prejudice" or "interference with his constitutional rights."  *Id.* at 9, 11 (quoting *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97–98 (2d Cir. 2012)).[4]

---

[3] Kwok was originally indicted on March 6, 2023, ECF No. 2, and the indictment was unsealed on March 15, 2023, ECF No. 3.  The March 29, 2023 superseding indictment added charges against Yanping Wang.

[4] The Court also denied Kwok's request for alternative relief on the grounds that his requests were moot or unfounded.  Stay Order at 12–13.

On January 3, 2024, the Government filed the second superseding indictment. S2, ECF No. 215. The second superseding indictment charges Kwok and his two co-defendants with an additional count of conspiring to commit racketeering offenses (the "RICO conspiracy charge"). *Id.* ¶¶ 1–8. The Government alleges that Kwok, his co-defendants, their co-conspirators, and "[t]he interrelated and overlapping entities that form the Kwok Enterprise" constitute a "criminal organization . . . engaged in criminal activity . . . whose members functioned as a continuing unit" for the common purposes of enriching themselves, obtaining the money and property of victims, and concealing and laundering the proceeds, among other aims. *Id.* ¶¶ 3(a)–(b), 7. The Government also alleges that Kwok's claim of bankruptcy is "based on years-long efforts to obscure the funds used and controlled by [him]." *Id.* ¶ 20.

The following day, on January 4, 2024, Kwok moved for reconsideration of the Stay Order and renewed his motion to stay the bankruptcy proceedings. *See* ECF Nos. 218–220.

## DISCUSSION

I. <u>Legal Standards</u>

    A. Motion to Stay Bankruptcy Proceedings

To invoke the "extraordinary remedy" of staying a civil case pending the conclusion of a related criminal proceeding, a defendant bears the burden of demonstrating "undue prejudice" or "interference with his constitutional rights." *Louis Vuitton*, 676 F.3d at 97–98 (internal quotation marks and citation omitted). Courts in this Circuit consider the following six factors in making that determination:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

3

*Citibank, N.A. v. Super Sayin' Publ'g, LLC*, 86 F. Supp. 3d 244, 246–47 (S.D.N.Y. 2015) (citation omitted). These factors "are not mechanical devices for churning out correct results." *Louis Vuitton*, 676 F.3d at 99. Rather, they are a "rough guide" for the "district court's studied judgment as to whether the civil action should be stayed based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." *Id.*

"[T]he Constitution rarely, if ever, *requires* such a stay." *Id.* at 98 (emphasis in original).[5] That said, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* at 96 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).

      B.    Motion for Reconsideration

Local Criminal Rule 49.1(d) provides that a party may file "[a] motion for reconsideration . . . within fourteen (14) days after the Court's determination of the original motion. A memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked shall accompany the motion."

"Reconsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *United States v. Baldeo*, No. 13 Cr. 125, 2015 WL 252414, at *1 (S.D.N.Y. Jan. 20, 2015), *aff'd*, 615 F. App'x 26 (2d Cir. 2015) (internal quotation marks and citation omitted). "[A] motion for reconsideration 'is not a vehicle for relitigating old issues, presenting the case under new theories

---

[5] For a defendant facing parallel civil and criminal proceedings, the Constitution does not afford him an "absolute right not to be forced" to choose between "being prejudiced in the civil litigation, if the defendant asserts his or her Fifth Amendment privilege, or from being prejudiced in the criminal litigation if he or she waives that privilege in the civil litigation." *Louis Vuitton*, 676 F.3d at 97–98 (citation omitted).

or otherwise taking a second bite at the apple.'" *United States v. Lisi*, No. 15 Cr. 457, 2020 WL 1331955, at *2 (S.D.N.Y. Mar. 23, 2020) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)) (cleaned up). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *United States v. Goldberg*, No. 12 Cr. 864, 2021 WL 2444548, at *1 (S.D.N.Y. June 15, 2021) (citation omitted).

A motion for reconsideration is "properly granted only if there is a showing of: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) a need to correct a clear error or prevent manifest injustice." *Id.* (citation omitted).

II.   Analysis

As an initial matter, the parties previously disputed and briefed whether the Court has jurisdiction to stay bankruptcy proceedings pending in another district court. *See* Trustee First Stay Opp. at 11–15, ECF No. 145; Kwok First Stay Reply at 3–9, ECF No. 150. The Court again shall not reach the jurisdictional question because Kwok has failed to make the necessary showing of prejudice to justify this extraordinary remedy.

In his current motion, Kwok argues that the Court's determination of insufficient overlap between the criminal and bankruptcy proceedings was erroneous given the "near perfect identity of factual issues." Kwok Second Stay Mem. at 10–11. He contends that three recent developments bolster this point: (1) the return of the second superseding indictment, *id.* at 11–12; (2) the Trustee's "attempts to claw the seized [Himalaya] Exchange funds," *id.*; *see* Kwok Second Stay Reply at 6, ECF No. 235; and (3) the "Trustee's attempt to use [his] privileged material" in an adversary bankruptcy proceeding involving a private jet, Kwok Second Stay Reply at 4, 9.

A.      Overlap Between the Criminal and Bankruptcy Proceedings

As the Court previously noted, "the most important factor" in evaluating a stay request is "the degree to which the civil issues overlap with the criminal issues." Stay Order at 7 (quoting *In re 650 Fifth Ave.*, No. 08 Civ. 10934, 2011 WL 3586169, at *3 (S.D.N.Y. Aug. 12, 2011) (cleaned up)).

Kwok claims that the Government's new RICO conspiracy charge involving "twelve entities against which the Trustee has commenced adversary proceedings" and the new factual allegation that Kwok's bankruptcy claim "was based on years-long efforts to obscure the [fraudulently obtained] funds" demonstrate the "nearly perfect overlap" between the criminal and bankruptcy proceedings. Kwok Second Stay Mem. at 1, 8, 12 (internal quotation marks and citation omitted).

The Court again finds that although some overlap between the proceedings exists, it is insufficient to warrant the extraordinary measure of staying the bankruptcy proceedings. *See United States v. Banco Cafetero Int'l*, 107 F.R.D. 361, 365 (S.D.N.Y. 1985) (requiring a "stronger connection" between the criminal and civil cases to justify a stay). The twelve entities Kwok cites as part of the new RICO conspiracy charge and subject to adversary bankruptcy proceedings are among over forty entities named as part of the "Kwok Enterprise." S2 ¶ 3(a). Kwok does not claim that "entities for which the government alleges specific conduct"[6] are currently subject to adversary proceedings in bankruptcy court. Kwok Second Stay Mem. at 9. Additionally, S2's lone mention of Kwok's bankruptcy does not substantively implicate the Trustee's work or the Bankruptcy Court's adjudications. S2 ¶ 20. Rather, it is mentioned in the

---

[6] "[S]uch as GTV Media Group, Inc., G Club Operations LLC, G Club International Limited, the Himalaya Exchange, and the Himalaya Alliance." Kwok Second Stay Mem. at 9.

context of providing examples of Kwok's alleged means of concealing funds within the "Kwok Enterprise." *Id.* Neither of these additions moves the needle.

Kwok further argues that the Trustee's attempt to "funnel" the seized Himalaya Exchange funds through the bankruptcy estate highlights the cases' overlap because "the issue of [] Kwok's control over the Exchange and its assets is central [] to [both] the Trustee's efforts and the government's . . . prosecution." Kwok Second Stay Mem. at 13–14. But, the Trustee's goal—distinguishable from the Government's—is identifying estate assets to compensate creditors. He is entitled to "preserve his rights" to argue, at an appropriate time, that the Himalaya Exchange funds are rightfully part of the bankruptcy estate. Trustee Second Stay Opp. at 7, ECF No. 234. Regardless, as the Court held earlier this month, forfeiture proceedings pursuant to 21 U.S.C. § 853 are the exclusive forum for asserting third-party, post-indictment claims to the seized Himalaya Exchange funds. *See* ECF No. 247 at 3–5.

Despite Kwok's contentions to the contrary, the Court's previous finding of insufficient overlap was not based on the differing standards of proof employed in criminal and bankruptcy proceedings. Rather, the Court found—and reaffirms—that the criminal case "concerns alleged conduct by Kwok that is not at issue in the bankruptcy proceedings." Stay Order at 8. For example, "Kwok's intent and the materiality of his conduct . . . are unique to the criminal proceeding." *Id.* Similarly, the criminal case may touch on the Chinese Communist Party's alleged targeting of Kwok and his associates, and the credibility of his movement, the New Federal State of China—issues far afield from the bankruptcy proceedings. *See* ECF No. 243 (partially granting Kwok's motion for discovery on these topics). And, whether Kwok, his co-defendants, and his associates conspired to establish a criminal enterprise under the RICO statute is a matter exclusive to the criminal case. The limited overlap between the bankruptcy and criminal proceedings weighs against a stay.

7

B.    Weighing the Parties and the Public's Interests

The Court also considers the parties' interests and the potential prejudice of allowing the cases to proceed in tandem. At play are the Trustee's interest in proceeding expeditiously, the potential prejudice caused by a delay in the bankruptcy proceedings, the private interests of and burden on Kwok, and the interests of the judiciary and the public. *See Citibank, N.A.*, 86 F. Supp. 3d at 246–47.

Regarding the Trustee's interest and the potential prejudice which may be caused by a stay, halting the bankruptcy proceedings would delay "the resolution of thousands of claims and any distribution from [Kwok and the related entities'] assets." Trustee First Stay Opp. at 19. Creditors, "who have already been waiting years to obtain recoveries on their claims," would be forced to wait even longer. Trustee Second Stay Opp. at 10. As noted in the Stay Order, "Kwok's associates have already undertaken efforts to move or take control of potential estate assets. . . . A stay could open the door to further asset transfers, dissipating the estate and reducing the possibility that creditors will be made whole." Stay Order at 10 (quotation marks and citation omitted).

As for the potential burdens on Kwok, he first argues that the Trustee's interest in the seized Himalaya Exchange funds prejudices him because—should he be convicted and the Exchange funds already disbursed via the bankruptcy estate—the overall funds available to fulfill his restitution obligations would be reduced. Kwok Second Stay Reply at 6. This concern is premature. As stated, seized property listed in the indictment as subject to forfeiture will be adjudicated in the statutorily prescribed forfeiture proceedings following any conviction.

Kwok next argues that the Trustee's recent motion to waive Kwok's attorney-client privilege in an adversary proceeding concerning a private jet owned by Kwok's daughter risks exposing protected material to the Government. Kwok Second Stay Reply at 9; Trustee Second

8

Stay Opp. at 3. A trustee is vested with control over a debtor's attorney-client privilege. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 354 (1985). Further, "Kwok and the Trustee agreed that the Trustee would not waive the attorney-client privilege without Kwok's consent or an order of the Bankruptcy Court." Stay Order at 11. The Trustee has done just that by seeking the Bankruptcy Court's authorization to use certain potentially privileged documents "under seal, without effecting a privilege waiver" or, alternatively, "to permit the Trustee to effect a limited waiver" with respect to only "matters related to the private jet." Trustee Second Stay Opp. at 9.[7] The Constitution does not afford Kwok an "absolute right not to be forced" to choose between being "prejudiced in the civil" proceedings—proceedings that he initiated—or "prejudiced in [his] criminal" case. *Louis Vuitton*, 676 F.3d at 97–98 (citation omitted). Moreover, based on the posture of the private jet proceedings, his claim of prejudice is premature.

Finally, when this matter was previously briefed, the Government represented that it "has neither solicited nor received Kwok's potentially privileged information or records from the Trustee[,] does not presently intend to do so, and will not do so absent agreement from Kwok's counsel (or the appropriate holder) or an order of this Court finding that such materials are not privileged and/or subject to the crime-fraud exception." ECF No. 148 at 2. Kwok provides no evidence that the Government's intentions have changed.

Weighing these factors, as well as the judiciary's interest in maintaining a functioning and efficient court system, the Court concludes that Kwok has not satisfied his burden of

---

[7] The Trustee has since filed for summary judgment in that proceeding without relying on any arguably privileged documents and will only pursue the motion if summary judgment is denied. Trustee Second Stay Opp. at 10.

showing "undue prejudice" or "interference with his constitutional rights." *Louis Vuitton*, 676 F.3d at 97–98.

## CONCLUSION

For the foregoing reasons, Kwok's renewed motion to stay the bankruptcy proceedings is DENIED. Likewise, he has failed to make the requisite showing for reconsideration of the Court's Stay Order. Kwok's motion for reconsideration is, therefore, also DENIED. The Clerk of Court is directed to terminate the motion at ECF No. 218.

SO ORDERED.

Dated: March 22, 2024
New York, New York

_____
ANALISA TORRES
United States District Judge