UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.

HO WAN KWOK,
    a/k/a "Miles Guo,"
    a/k/a "Miles Kwok,"
    a/k/a "Guo Wengui,"
    a/k/a "Brother Seven,"
    a/k/a "The Principal,"
    a/k/a "Boss," and

YANPING WANG
    a/k/a "Yvette,"
    a/k/a "Y,"

                Defendants.

**S2 23 Cr. 118 (AT)**


# THE GOVERNMENT'S MOTIONS TO EXCLUDE THE TESTIMONY OF THE DEFENDANT'S EXPERT WITNESSES


DAMIAN WILLIAMS
United States Attorney
Southern District of New York


Micah F. Fergenson
Ryan B. Finkel
Justin Horton
Juliana N. Murray
Assistant United States Attorneys
    - *Of Counsel* -

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 1

LEGAL STANDARD......................................................................................................... 4

ARGUMENT .................................................................................................................... 6

    I.   The Court Should Exclude the Testimony of Maggie Sklar ................................. 6

         A.     Ms. Sklar's Disclosure Fails to Comply with the Notice Requirements of Rule 16 ................................................................................................. 6

         B.     The Substance of Ms. Sklar's Testimony Should be Excluded Under the Rules of Evidence and Applicable Caselaw ................................................ 9

    II.  The Court Should Exclude the Testimony of Paul Doran ................................. 11

         A.     Mr. Doran's Disclosure Fails to Comply with the Notice Requirements of Rule 16 ................................................................................................. 11

         B.     Mr. Doran's Testimony Should be Excluded Under Rule 403 ............................ 12

    III. The Court Should Exclude the Testimony of Thomas Bishop ......................... 14

         A.     Mr. Bishop's Disclosure Fails to Comply with the Notice Requirements of Rule 16 ................................................................................................. 14

         B.     Mr. Bishop Is Not Qualified As an Expert in Political Movements and Their Expenses ....................................................................................... 15

    IV. The Court Should Exclude the Testimony of Raymond Dragon ..................................... 16

         A.     Mr. Dragon's Testimony About a Report Commissioned by GTV's Litigation Counsel During the SEC Investigation Is Improper Under Rule 403.................. 17

         B.     The Disclosures Regarding Mr. Dragon's Other Opinions Are Inadequate ........ 18

    V.  In the Alternative, the Court Should Conduct a *Daubert* Hearing .................................. 20

CONCLUSION................................................................................................................. 21

## INTRODUCTION

Defendant Ho Wan Kwok has noticed his intention to call four expert witnesses at trial. The defendant's proposed experts and accompanying disclosures suffer from an array of deficiencies that warrant preclusion of all four witnesses. For some, the disclosures fail at the most basic level to set forth the opinions of the expert; and most fail to provide a basis for the opinions, as required by Federal Rule of Criminal Procedure 16. Where the defendant does disclose the expert's opinions, the opinions are inappropriate subjects for expert testimony, lack a reliable methodology or basis in facts and data, or are irrelevant, unfairly prejudicial, and confusing to the jury. Among other things, the proposed experts would offer legal conclusions that invade the purview of the Court and the jury, or serve no other purpose than to provide an expert patina to inadmissible hearsay testimony about the defendant's supposed lack of criminal knowledge or intent. The Court should exercise its gatekeeping authority and preclude such impermissible expert testimony.

## BACKGROUND

On January 3, 2024, a grand jury returned Superseding Indictment S2 23 Cr. 118 (AT), ECF No. 215 ("Indictment"). That Indictment charged the defendants with a series of fraud and money laundering offenses for their acts in defrauding more than 1,000 victims out of more than $1 billion. The Indictment also charged the defendants with conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") by conspiring to establish, and operate, an enterprise in furtherance of several fraud and money laundering crimes. The charges arise out of the defendant's fraudulent misappropriation of millions of dollars of funds sent by investors in the Kwok Enterprise, and the defendants' related false and misleading statements to those victim investors, all made so that they could obtain and keep the victim money. The defendants then used

millions of dollars in stolen funds for a variety of purposes, including, among other things, to make a high-risk, $100 million dollar bet via a hedge fund investment for the ultimate benefit of Kwok's son; to make payments for Kwok's yacht and for a private jet; to purchase, renovate, and furnish a 50,000-square-foot mansion in Mahwah, New Jersey (the "Mahwah Mansion") for approximately $40 million for the benefit of Kwok and his family; to purchase a $4 million Ferrari for Kwok's son; to finance a $37 million "loan" relating to Kwok's yacht; and generally to enrich themselves. Trial on these charges is scheduled to begin on May 20, 2024.

Consistent with this Court's scheduling order, on April 1, 2024, Kwok provided his initial expert notice, identifying four witnesses that the defendant may call as experts. Those witnesses are: (1) Maggie Sklar; (2) Paul Doran; (3) Thomas Bishop; and (4) Raymond Dragon.[1] According to Kwok's notice, if permitted by the Court, the witnesses would opine on the following topics:

- Ms. Sklar would opine "on the topics of cryptocurrency, blockchain, and cryptocurrency exchange issues." Ex. A at 13. In particular, she would testify about "what a cryptocurrency is," and would opine "on cryptocurrency exchanges, including general operations, and trading mechanisms," "what stablecoins are and how they support cryptocurrency," how the activity and workings of the Himalaya Exchange "are consistent with her opinions" generally regarding cryptocurrency, and "that transacting in cryptocurrency is acceptable when both parties agree to the usage of cryptocurrency in the transaction including redemptions, and opine on documents indicating the actual use of HDO to purchase goods." *Id*. at 13-14.

- Mr. Doran would provide background information on the Chinese Communist Party ("CCP") and "tactics and practices of the government of the People's Republic of China to

---

[1] The expert notice of Maggie Sklar is Exhibit A; the notice of Paul Doran is Exhibit B; the notice of Thomas Bishop is Exhibit C; and the notice of Raymond Dragon is Exhibit D.

target political dissidents," including "the goals and the steps Operation Fox Hun[t] and Sky Net take to achieve their goals" and "how other countries have addressed the targeting of dissidents by the CCP and the prosecutions that have taken place in other countries". Ex. A at 19-22. Kwok's notice for Mr. Doran cites "his extensive professional experience with security threats posed by the PRC and the CCP" as a primary basis for his opinions.

- Mr. Bishop would testify about his analysis of the flow of funds "between 2015 and May 2020" among the bank accounts held by some (undefined) subset of the Kwok Enterprise entities and "from entities that he understands are associated with Mr. Kwok's family's wealth," including the use of funds for what Mr. Bishop has categorized as "Personal Expenses," "Political Movement Expenses," or "Uncharacterized [or, variously "Uncategorized"] Expenses", and would summarize customer redemptions paid to Himalaya Exchange customers from a particular bank account at FV Bank. Ex. A at 29-30. The notice for Mr. Bishop does not clearly identify which entities Mr. Bishop examined in the course of his analysis, beyond providing what appears to be a non-exhaustive list of several of the Kwok-controlled entities; it does not indicate what Mr. Bishop would rely on to associate certain entities with Kwok's "family wealth;" and it does not explain what methodology Mr. Bishop employed to categorize expenses as "Personal Expenses," "Political Movement Expenses," or "Uncharacterized [or, variously "Uncategorized"] Expenses" for purposes of his analysis. *See* Ex. A at 30.

- Mr. Dragon would opine about the valuation of GTV Media Group, Inc., including, in particular, the valuation contained in a report prepared by Alvarez and Marsal Valuation Services, LLC, dated December 15, 2020. According to the notice, Mr. Dragon's opinion would be based on, among other things, his "understanding of relevant valuation and appraisal issues" and "materials relating to Project Fox Hunt." Ex A at 4.

## LEGAL STANDARD

"An expert may be permitted to testify if he or she 'is qualified, reliable, and helpful.'" *United States v. Kaufman*, No. 19 Cr. 504 (LAK), 2021 WL 4084523, at *18 (S.D.N.Y. Sept. 8, 2021) (citing *United States v. Gatto*, 986 F.3d 104, 117 (2d Cir. 2021), and Fed. R. Evid. 702). "The inquiry is 'guided' by Federal Rule of Evidence 702," *id.*, which provides that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education" may offer an opinion if "the expert's scientific, technical, or other specified knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," and the testimony is the product of reliable facts and methods that the expert has "reliably applied" to the case. Fed. R. Evid. 702. Districts courts play a "gatekeeping role" to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993).

The first requirement—that the "expert's scientific, technical, or other specified knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"—serves a dual purpose. First, "[i]n requiring that expert testimony be directed to 'scientific, technical, or specialized' knowledge," the requirement "ensures that expert witnesses will not testify about lay matters" that are properly left for the jury, such as "facts or opinions stated by other potential witnesses" or "interpretations of conduct or views as to the motivation of parties." *In re Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004). Second, even testimony that is properly based on scientific, technical, or specified knowledge must "'fit' . . . the facts of the case." *City of Provid., R.I. v. Bats Glob. Mkts.*, No. 14 Civ. 2811 (JMF), 2022 WL 902402, at *8 (S.D.N.Y. Mar. 28, 2022). This requires the expert testimony to stay in bounds: the testimony must be directly pertinent to an issue that the jury has to resolve, but it must not "usurp[] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying

4

that law to the facts before it." *United States v. Lumpkin*, 192 F.3d 28, 290 (2d Cir. 1999); *accord Rezulin Prods.*, 309 F. Supp. 2d at 541.

Rule 702 also requires that the proffered expert testimony "is the product of reliable principles and methods" that are "reliably applied . . . to the facts of the case." Fed. R. Evid. 702. In *Daubert*, the Supreme Court set out a list of non-exclusive factors that the trial court may consider in determining whether an expert's reasoning or methodology is reliable: (1) whether the theory or technique used by the expert can be, or has been, tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) the known or potential rate of error of the method used; (4) whether there are standards controlling the technique's operation; and (5) whether the theory or method has been generally accepted within the relevant scientific community. *Daubert*, 509 U.S. at 593-94. The Court is not required "to admit opinion evidence that is connected to [the facts] only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos v. National Railroad Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) (citations omitted).

Expert testimony may also be excluded under Federal Rules of Evidence 402 and 403 if it is irrelevant or its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Rule 403 has a "uniquely important role . . . in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberation." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005).

Finally, Federal Rule of Criminal Procedure 16(b)(1)(C) was recently amended to require the defendant, for each expert witness, to provide "a complete statement of all opinions that the

defendant will elicit from the witness," along with "the bases and reasons for them." Fed. R. Crim. P. 16(b)(1)(C)(iii). While this "does not require a verbatim recitation of the testimony the expert will give at trial," it requires more than the "written summary" previously required under the Rules. Fed. R. Crim. P. 16 Adv. Comm. Notes, 2022 Amendment. Even before Rule 16(b)(1)(C) was amended in 2022, the advisory notes to the Rule recognized that the purpose of this requirement is "to provide the opponent with a fair opportunity to test the merits of the expert's testimony through focused cross-examination" and "to permit more complete pretrial preparation," Rule 16 Adv. Comm. Notes, 1993 Amendment, and this Court observed that "[m]erely identifying the general topics about which the expert will testify is insufficient; rather, the summary must reveal the expert's actual opinions." *Kaufman*, 2021 WL 4084523, at *19 (collecting cases); *see also United States v. Valle*, No. 12 Cr. 847 (PGG), 2013 WL 440687, at *5 (S.D.N.Y. Feb. 2, 2013) (same). "If a defendant fails to provide disclosures in accordance with Rule 16(b)(1)(C), the district court may exclude the expert's testimony at trial." *Kaufman*, 2021 WL 4084523, at *19; *see also United States v. Mahaffy*, No. 05 Cr. 613 (ILG), 2007 WL 1213738, at *2 (E.D.N.Y. Apr. 24, 2007) (same).

## ARGUMENT

### I.    The Court Should Exclude the Testimony of Maggie Sklar

#### A.  Ms. Sklar's Disclosure Fails to Comply with the Notice Requirements of Rule 16

The defendant's expert notice for Maggie Sklar falls far short of the requirements of Rule 16(b)(1)(C) because the notice does not state the anticipated opinions of the witness nor the reasons for those opinions. Rather, the notice merely identifies general topics of testimony, which is insufficient under the Rule. *Kaufman*, 2021 WL 4084523, at *19.

Ms. Sklar's notice contains nothing more than topics about which she is to testify and provides no explanation, at all, about what her opinions are (if any). To start, Ms. Sklar offers that

she will testify as to "what a cryptocurrency is" but her notice does not indicate an answer to that question—namely, her view of what constitutes a cryptocurrency.  Next, Ms. Sklar offers broad topics of testimony: "Cryptocurrency and Blockchain," "Cryptocurrency Exchanges," "Stablecoins," "Wallet Operation," "Cryptocurrency Custody and Custodians," "Operation of Himalaya Exchange," and "Use Case of HDO."  (Ex. A at 2-3.)  As to each of those, Ms. Sklar merely states she "may opine" as to those topics without specifying what her opinions are, let alone providing any information about how she reached those opinions.

Within the "Cryptocurrency and Blockchain" topic, Ms. Sklar states she "may also opine on the characteristics of HDO and HCN as cryptocurrencies." (Ex. A at 2.)  But again, her notice contains no information about what Ms. Sklar's opinions are about HDO and HCN—nor is there even any indication about what "characteristics" of HDO and HCN Ms. Sklar considered.  As to "Cryptocurrency Exchanges," Ms. Sklar states that she "may opine on cryptocurrency exchanges, including general operations, and trading mechanisms," without explaining (in any manner) what opinions she will offer about general operations or trading mechanisms.   Ms. Sklar also ambiguously refers to testimony regarding "differences in use cases" between centralized and decentralized exchanges.  Lacking is any indication about what the "use cases" are, how those cases were consider, or even what Ms. Skalr's opinion is about the "use cases."

Similar problems are replete in the other broad topics of testimony Ms. Sklar seeks to offer. *E.g.,* Ex. A at 3 ("opine on what stablecoins are" without stating an opinion); *id.* ("may opine on cryptocurrency wallet operation" without stating an opinion); *id.* ("may opine on what cryptocurrency custody and custodians are" without stating an opinion); *id.* ("may opine on the activity and workings of the Exchange" without stating an opinion).  The last general topic "Use Case of HDO" implies that Ms. Sklar analyzed HDO, *id.* ("opine on documents indicating the

actual use of HDO to purchase goods") but the disclosure is opaque regarding what analysis was performed on HDO to understand it as a "use case." *Id.*

Given the lack of any detail about what Ms. Sklar's opinions are, and the fact that the defendant has provided no information about how Ms. Sklar reached those opinions, the notice of her purportedly expert testimony is plainly insufficient. There is no indication about what analysis Ms. Sklar performed, how those analyses were considered, the inputs to those analyses, nor why those analyses support Ms. Sklar's opinions. The notice even elides identification of documents and materials Ms. Sklar analyzed, making it impossible to test any opinions she might offer. It, at most, unhelpfully refers to generalized groups of materials without specificity. *See Id.* at 3 ("records related to the Himalaya Exchange's custodial arrangements and capabilities, document related to work performed on behalf of the Himalaya Exchange, . . . publicly available materials"). That Ms. Sklar identifies only HDO/HCN whitepapers and the Superseding Indictment does not salvage the deficiencies in the notice of her purported expert testimony.

This notice would not even pass muster under the prior version of Rule 16, and certainly fails to meet the requirement under the amended Rule that the defendant specify the expert's opinions and bases for them. These deficiencies are prejudicial because they make it impossible for the Government to challenge Ms. Sklar's reasoning in a *Daubert* motion and to adequately prepare for her examination at trial. The Government respectfully submits that the deficiencies warrant exclusion of Ms. Sklar's testimony, *see* Fed. R. Crim. P. 16(d)(2)(C), but at a minimum, the defense should not be permitted to frustrate the Court's gatekeeping function under *Daubert* by resting on the barebones notice it has provided.

**B. The Substance of Ms. Sklar's Testimony Should be Excluded Under the Rules of Evidence and Applicable Caselaw**

    1. <u>Legal Opinions are Improper</u>

Although Ms. Sklar's deficient notice makes it difficult to discern what her opinions are, it appears that Kwok may be seeking to introduce testimony from Ms. Sklar for improper purposes. Ms. Sklar does not purport to be technically proficient in computer science, cryptography, distributed systems, quantitative finance, or any other discipline relevant to the expert analysis she is seeking to offer. Indeed, Ms. Sklar is an attorney. Her experience is "advis[ing] . . . clients primarily on cryptocurrency matters." *Id.* at 2. Sklar's resume indicates that she has a "comprehensive background in law, financial markets, and regulatory policy. . . . a nuanced understanding of regulatory dynamics . . . [and] continues to be at the forefront of shaping the regulatory framework in the dynamic field of law and finance." (*Id.*)

Given Ms. Sklar's legal background, and the vague disclosure suggesting that HDO "is acceptable" and, similarly, that cryptocurrency regulatory policy is not rigorous, it appears that Ms. Sklar's testimony may be offered to provide opinions regarding certain laws and regulations. It is improper to offer an expert to testify about the legal framework that applies to cryptocurrencies. *Bilzerian*, 926 F.2d at 1294 ("[A]n expert's testimony on issues of law is inadmissible"). If the jury requires instructions on regulation of cryptocurrencies, it is the responsibility of the Court to provide instructions appropriately tailored to the facts of the case.

    2. <u>Sklar's Testimony Appears to Be a Vehicle to Circumvent Hearsay Rules</u>

Next, Ms. Sklar has not set forth any reliable methodology for opining on "the activity and workings of the [Himalya] Exchange." It appears Ms. Sklar has not run any studies and has based her conclusions on "her review" of unspecified "documents produced." (Ex. A at 3.) This suggests that her testimony may be nothing more than a mouthpiece to set forth the contents of documents

the defense wishes to put before the jury, which may otherwise be inadmissible.[2]  *See United States v. Dukagjini*, 326 F.3d 45, 59 (2d Cir. 2003) (an expert witness may not "circumvent rules prohibiting hearsay" by "relying on … conversations with non-testifying witnesses" (citing Fed. R. Evid. 801(c) and 703)); *United States v. Mejia*, 545 F.3d 179, 197 (2d. Cir. 2008) ("The expert may not, however, simply transmit hearsay to the jury…. Otherwise, the expert is 'simply repeating hearsay evidence without applying any expertise whatsoever.'").

### 3.  Sklar's Testimony is Prohibited by Rule 704

Ms. Sklar's testimony suffers from another defect if she will opine that the Himalaya Exchange conduct was consistent with purported industry standards and practices.  *See* Ex. A at 2 ("Ms. Sklar may opine on the typical practices given the lack of comprehensive regulation of cryptocurrency exchanges.").  The focus of this case is how the defendants' conduct measured up against the law that applies to the charged offenses. Comparing the defendants' conduct to undefined industry practices is a "waste of time and thus is totally irrelevant." *United States v. White*, No. 02 Cr. 1111 (KTD), 2003 WL 721567, at *7 (S.D.N.Y. Feb. 28, 2003).  What is more, it will convey the expert's improper opinion that the defendants lacked criminal intent if they generally acted consistently with broader industry practices.  *See Rezulin Prods.*, 309 F. Supp. 2d at 541 n.23 (improper for expert to substitute her "judgment for the jury's").  In a criminal case, Rule 704(b) precludes opinions "about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged." Fed. R. Evid. 704(b).  And, like Ms. Sklar's testimony that HDO is "acceptable" and its industry lightly regulated, any testimony that

---

[2] For example, if Ms. Sklar has analyzed emails between Himalaya Exchange personnel those documents are likely impermissible hearsay.  *See* Fed. R. Evid. 801(d)(2)(E) (co-conspirators' statements only admissible when "offered against an opposing party").  Of course, given the insufficient expert notice provided to the Government, it is impossible to tell what documents Ms. Sklar has reviewed.

the Himalaya Exchange conduct comported with industry practice once again involves opining that the defendant's conduct was lawful.

## II.  The Court Should Exclude the Testimony of Paul Doran

Paul Doran's testimony should be excluded for two reasons.  First, the defendant's expert notice for Mr. Doran falls far short of the requirements of Rule 16(b)(1)(C).  The notice does not state the anticipated opinions of the witness, nor the bases for those opinions.  Rather, the notice merely identifies general topics of testimony, which is insufficient under the Rule. *Kaufman*, 2021 WL 4084523, at \*19.  Second, Mr. Doran's proposed testimony should be excluded under Rule 403 because rather than aiding the trier of fact, such testimony risks confusing the issues before the jury.

### A.  Mr. Doran's Disclosure Fails to Comply with the Notice Requirements of Rule 16

Mr. Doran's expert disclosure is plainly inadequate. The disclosure merely sets forth *28* summary topics on which he may offer testimony.  Each is a general subject, broadly related to China, and not in any way tailored to address issues related to the defendants in this case.  For example, the topics of Mr. Doran's anticipated testimony include:

- "the nature of corruption in the PRC government,"

- "the victims of the CCP and the CCP's repressive tactics,"

- "the broad toolkit the CCP employs and the CCP's ultimate goal – controlling all forms of opposition to the CCP and its goals,"

- "China's transnational tactics including Operation Fox Hunt, and Sky Net," and

- "how other countries have addressed the targeting of dissidents by the CCP and the prosecutions that have taken place in other countries."

This type of notice would be insufficient under the prior Rule 16, and it is clearly inadequate under the amended rule.  Merely listing broad categories of topics about which a

proposed expert is expected to testify does not suffice under the Rule, because the Government has no ability to assess the opinions Mr. Doran will offer—none are actually stated—nor the bases for those opinions.  To take just one such example from Mr. Doran's expert notice, the notice claims that Mr. Doran will opine on "how other countries have addressed the targeting of dissidents by the CCP and the prosecutions that have taken place in other countries,."  However, the disclosure does not even state which countries Mr. Doran will discuss, nor which prosecutions he will testify about, much less what *opinions* Mr. Doran will offer about those countries and prosecutions and the *bases* for those opinions.

The defense's expert notice fails to set forth any sort of opinion regarding the relevance of Mr. Doran's anticipated testimony to the charged offenses in this case—that is, the charges of conspiracy to commit racketeering, wire fraud, securities fraud, and money laundering.  And whatever testimony Mr. Doran might seek to provide, it is almost certainly improper for him to instruct the jurors on what inferences they may draw from the evidence.  *See In re Rezulin Prods. Liability Litig.*, 309 F. Supp. at 541 (expert witness may "not testify about lay matters" that are properly left for the jury, such as "facts or opinions stated by other potential witnesses" or "interpretations of conduct or views as to the motivation of parties.").  On the basis of Mr. Doran's plainly inadequate disclosure alone, the Court should exclude Mr. Doran's proposed testimony.

**B.  Mr. Doran's Testimony Should be Excluded Under Rule 403**

For the reasons set forth in the Government's motions in limine (*see* Gov't Mots. *in Limine* 47-49), the Court should also exclude Mr. Doran's testimony under Rule 403.  To the extent there is any relevance of Operation Fox Hunt to this case about deceiving investors and misappropriating investor funds, it is only possibly relevant as to the effect of Fox Hunt on the defendants' state of mind.  But Mr. Doran's expert testimony cannot opine on that topic at all.  Experts are not permitted to testify "concerning the motive, intent, and state of mind" of people or entities. *Rezulin*

*Prods.*, 309 F. Supp. 2d at 545. Such testimony is inadmissible for two reasons. First, "[b]ecause science has not yet invented a way to read minds, 'inferences about the intent or motive of parties or others lie outside the bounds of expert testimony.'" *AU New Haven, LLC v. YKK Corp.*, No. 15 Civ. 3411 (GHW), 2019 WL 1254763, at *13 (S.D.N.Y. Mar. 19, 2019) (quoting *Rezulin Prods.*, 309 F. Supp. 2d at 547); *accord In re Fosamax Prods. Liability Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (opinions about "intent, motives, or state of mind . . . have no basis in any relevant body of knowledge or expertise"); *Deutsch v. Novartis Pharms. Corp.*, 768 F. Supp. 2d 420, 442-43 (E.D.N.Y. 2011) (same). "Instead, juries must answer questions of intent with the lay tools that they always have: examination of testimony and documents, and assessment of credibility." *AU New Haven*, 2019 WL 1254763, at *14. Second, and relatedly, expert testimony about a defendant's motive, intent, or state of mind is prohibited under Rules 702 and 704 because it "does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." *Rezulin Prods.*, 309 F. Supp. 2d at 541 n.23; *see* Fed. R. Evid. 702 (requiring that the testimony "will help the trier of fact to understand evidence or determine a fact in issue); Fed. R. Evid. 704(b) (prohibiting an expert in a criminal case from stating "an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense"). "Expert testimony concerning a defendant's mental state poses a uniquely heightened danger of intruding on the jury's function." *United States v. DiDomenico*, 985 F.2d 1159, 1164 (2d Cir. 1993). Accordingly, a defendant may not make an "effort to tell the jury the defendant's intentions through the mouth[] of" an expert witness. *United States v. Rahman*, 189 F.3d 88, 138 (2d Cir. 1999); *see also GST Telecom. Inc. v. Irwin*, 192 F.R.D. 109, 111 (S.D.N.Y. 2000).

What remains of Mr. Doran's testimony is broad swaths of general topics about Operation Fox Hunt that have no connection to this case whatsoever.[3]  Mr. Doran's testimony would thus constitute a massive sideshow, waste time, and confuse and distract the jury from the issues in the case.  The risks of Mr. Doran's testimony are particularly acute because his testimony may veer into sensational and inflammatory topics relating to the actions of the Chinese government—given his patently insufficiently disclosure, it is impossible to tell with any certainty what his actual "opinions" would be—that could not only confuse and distract the jury, but be used as an effort by the defense to suggest to the jury improper bases for their verdict, such as sympathy for the defendants.  These significant risks substantially outweigh the negligible value of Mr. Doran's testimony and call for its exclusion.

Accordingly, the Court should exclude Mr. Doran's testimony for insufficient disclosure, and pursuant to Rule 403.

## III.    The Court Should Exclude the Testimony of Thomas Bishop

The Court should exclude Mr. Bishop's testimony.  As an initial matter, the defense's disclosure is inadequate under the newly amended Rule 16 expert disclosure requirements.  In any event, Mr. Bishop is not qualified as an expert in political movements or their expenses.

### A.  Mr. Bishop's Disclosure Fails to Comply with the Notice Requirements of Rule 16

The defendant's expert notice for Thomas Bishop falls far short of the requirements of Rule 16(b)(1)(C) because the notices do not state the anticipated opinions of the witness or the reasons

---

[3] The closest that Mr. Doran comes to, *possibly*, referencing anything to do with this case is his proposed testimony regarding "particular dissidents whom the CCP considers to be particularly dangerous to its goals and how the CCP targets them."  Ex. B at 20-22.  But because Mr. Doran should not be permitted to offer expert testimony about the defendants' states of mind, his supposed "opinions" about Fox Hunt should be excluded in their entirety.  *Rezulin Prods.*, 309 F. Supp. 2d at 545 (experts may not testify about persons' "motive, intent, and state of mind").

for those opinions. Rather, the notice merely identifies general topics of testimony, which is insufficient under the Rule. *Kaufman*, 2021 WL 4084523, at *19.

> The disclosure of Mr. Bishop describes that Mr. Bishop will offer testimony regarding:
>
> "[a]n overview of forensic accounting practices, and the process typically used to evaluate the banking transactions of target entities."
>
> "his analysis that between 2015 and May 2020, the Operating Entities' bank accounts . . . received substantial deposits, including from entities that he understands are associated with Mr. Kwok's family wealth" and testimony "regarding the nature of the Operating Entities' bank accounts during the same time period";
>
> "how that pattern" of inflows into the accounts and payments out of those accounts "continued between June 2020 and 2023";
>
> that, based on his analysis, the "aggregate proceeds from sources other than the Farm Loans Programs exceeded the Operating Entities' aggregate expenditures on Personal Expenses and Uncategorized Expenses;" and
>
> "that the Himalaya Exchange paid in excess of fifty million dollars of customer redemptions through the Himalaya Exchange's account at FV Bank."

Ex. C at 3-4. That notice is plainly insufficient. It does not state what bank accounts Mr. Bishop has analyzed, which expenses he has categorized as "Personal Expenses," which expenses he has categorized as "Political Movement Expenses," or which expenses he has categorized as "Uncategorized Expenses." Most importantly, the disclosure entirely omits the *methodology* that Mr. Bishop has used to determine what constitutes a "Political Movement Expense" (whatever that term means) and what expenses should remain "Uncategorized." The defendant's summary of the topics on which Mr. Bishop would testify certainly fails to meet the requirement under the amended Rule that the defendant specify the expert's opinions and bases for them. Kwok's notice does not provide the Government with sufficient information to evaluate Mr. Bishop's anticipated testimony or opinions, and therefore is facially inadequate.

**B. Mr. Bishop Is Not Qualified As an Expert in Political Movements and Their Expenses**

The above failures in Mr. Bishop's disclosure highlight a broader deficiency in his testimony: Mr. Bishop is not qualified to offer expert testimony about political movements or their expenses. The disclosure does not explain, or even suggest, how Mr. Bishop is qualified as an expert in "political movements" and their expenses, or whether the methodology Mr. Bishop will employ to determine such expenses is reliable and generally accepted in the field. *See* Fed. R. Evid. 702 (expert testimony must be based on "expert's scientific, technical, or other specialized knowledge," be the "the product of reliable principle principles and methods," and reflect "a reliable application of [those] principles and methods."). Mr. Bishop appears to have no experience that would qualify him an expert in "political movements." The Government is aware of no "specialized knowledge" involving "principles and methods" that would render permissible the opinion of an expert witness regarding what constitutes a "political movement" expense, and the defense disclosure identifies none. Instead, Mr. Bishop's testimony is an impermissible attempt to clothe the defense's arguments about spending of investor funds in the guise of an "expert" opinion. That is improper. Thus Mr. Bishop's testimony about "Political Movement Expenses" should also be excluded on the ground that he is not an expert on political movements or their expenses.

Accordingly, Mr. Bishop's testimony should be excluded for failure to comply with Rule 16 and because he is not an expert in political movements or their expenses.

## IV. The Court Should Exclude the Testimony of Raymond Dragon

Kwok intends for Raymond Dragon, the Director of Business and Intellectual Property Valuation at Anchin Litigation, Forensic and Valuation Services, to opine principally on a report that was prepared at the request of GTV's former counsel at Cahill Gordon in December 2020, in connection with the SEC's investigation of GTV. As explained below, this proposed testimony is improper and should be excluded. According to Kwok's disclosure, Mr. Dragon has not prepared

his own expert report about the valuation of GTV, but instead "reviewed and evaluated conclusions and opinions regarding the valuation of [GTV] including the valuation contained in a report prepared by Alvarez and Marsal Valuation Services, LLC, dated December 15, 2020" (the "A&M Report"). Ex. D at 2.  Mr. Dragon will therefore "discuss his analysis *of the A&M Report*."  Ex. D at 2; *id.* at 3 ("Mr. Dragon will testify that the A&M Report presented reasonable valuation ranges . . . .").  In addition to the A&M report, Mr. Dragon also reviewed "related materials submitted to the SEC on behalf of GTV."  Ex. D at 3.  And while Mr. Dragon reviewed other materials as well, vaguely and inconsistently described in the disclosure,[4] the purpose of that review was simply to inform, in turn, his review of the A&M Report.  Ex. D at 3 ("On the basis of this information, Mr. Dragon evaluated the A&M Report . . . .").  To the extent Mr. Dragon will offer opinions about matters besides the A&M Report, Kwok's disclosure is woefully inadequate and these "opinions" should be excluded on that ground as well.  Accordingly, Mr. Dragon's testimony should be excluded in its entirety.

### A. Mr. Dragon's Testimony About a Report Commissioned by GTV's Litigation Counsel During the SEC Investigation Is Improper Under Rule 403

Mr. Dragon's proposed testimony about the A&M Report is improper and should be excluded under Rule 403.  As an initial matter, the A&M Report was not prepared by Mr. Dragon, and it is unclear what independent analysis Mr. Dragon has performed or what his testimony would consist of aside from parroting back the conclusions of a report he did not author and he had no role in preparing.  Moreover, having Mr. Dragon testify about *another* expert's previously

---

[4] As one notable example, in the initial description of what Mr. Dragon reviewed, the defense includes "materials relating to Project Fox Hunt" (Ex. D at 2) —without providing any basis in the subsequent disclosure as to how Fox Hunt could possibly inform any of Mr. Dragon's opinions about valuing early stage companies—but in a subsequent description of these materials, there is no mention of materials relating to Fox Hunt (Ex. D at 3).

prepared report risks confusing the jury, as the A&M Report was not prepared at the time of Kwok's statements during the GTV Private Placement about the value of GTV and as such could not have been relied on by Kwok in making those statements. Instead, the A&M Report was prepared months later, *in response to the SEC's investigation of the GTV Private Placement*, and was commissioned by GTV's retained counsel in the SEC investigation. Kwok's disclosure fails to explain why the accuracy of this after-the-fact report prepared at the request of GTV's litigation counsel and submitted in connection with anticipated litigation is so material to the case that *this report* should be the subject of testimony by *another* valuation expert who reviewed the report. Nor could it. Expert testimony opining on the accuracy of a specific report prepared for GTV's former counsel's interactions with the SEC during the SEC's investigation is not probative of whether Kwok was making knowingly false statements months earlier. And using Mr. Dragon to present and endorse a report commissioned by GTV's former litigation counsel would "simply transmit hearsay to the jury," *Mejia*, 545 F.3d at 197, while disabling the Government from cross-examining the actual authors of the underlying A&M Report on their bias. Mr. Dragon's proposed testimony about a report previously commissioned by GTV's lawyers poses a substantial risk of confusing the jury and raising tangential issues about the interactions of private counsel with the SEC during the course of an ongoing fraud investigation. It should thus be excluded under Rule 403.

**B. The Disclosures Regarding Mr. Dragon's Other Opinions Are Inadequate**

Finally, to the extent that the disclosure for Mr. Dragon indicates he will offer opinions beyond opining on the specific A&M Report, the disclosure is woefully inadequate. With respect to Mr. Dragon's opinion that "a valuation for GTV of $2 billion dollars was reasonable based upon information available in 2020," Ex. D at 3, this summary opinion fails to identify what that "information available in 2020" was or what methodology Mr. Dragon is employing in making

that determination.  The proposed testimony also includes "an overview of valuation practices, and the processes typically used to evaluate the valuation of target entities," *id.* at 2—without identifying which "valuation practices" or typical processes will be discussed, or what any such "practice" or "process" actually entails.  The disclosure states that Mr. Dragon will testify "regarding the valuation of early stage companies, including social companies and the valuation of pre-revenue and pre-operation companies," *id.*—without providing any further detail about what he will say about such valuation, the bases for his opinions, and whether those opinions are reliable.  The disclosure further states that Mr. Dragon will testify "regarding the GTV private placement transaction," *id.*—leaving the Government in the dark as to the basic topic(s) of Mr. Dragon's proposed testimony, not to mention Mr. Dragon's opinions (and their bases) on that topic (or topics).  The disclosure also states that Mr. Dragon *may* testify "regarding various drivers for the valuation of GTV, including its market potential given the difficulties competing services may face," *id.* at 3—without even identifying a single such "driver," without even identifying a single such "difficulty" competitors "may" face, and without even identifying a single such competitor.  Thus, to the extent Mr. Dragon's proposed testimony reaches topics beyond a specific report previously commissioned by a defense lawyer, the disclosure plainly fails to meet the requirement under the amended Rule that the defendant provide "a complete statement of all opinions that the defendant will elicit from the witness," along with "the bases and reasons for them."  Fed. R. Crim. P. 16(b)(1)(C)(iii).

Accordingly, Mr. Dragon's testimony should be excluded under Rule 403, and for failure to comply with Rule 16(b)(1)(C).

### V.  In the Alternative, the Court Should Conduct a *Daubert* Hearing

If the Court does not grant the Government's motion to preclude the testimony of Mr. Dragon, Ms. Sklar, Mr. Doran, and Mr. Bishop on the papers, the Government respectfully requests that the Court conduct a *Daubert* hearing to evaluate the experts' qualifications, their methodology, and the relevance and reliability of their proposed expert testimony. These individuals' opinions (as reflected in Kwok's notice) are replete with cursory and vague conclusions that do not necessarily focus on the defendants or the specific conduct at issue in this case, and those conclusions alone raise significant questions regarding the relevance and reliability of the proposed testimony, as well as the reliability of their methods. A *Daubert* hearing would therefore be appropriate before any of this confusing and prejudicial evidence is presented to the jury, especially in areas where courts have recognized that the potential for prejudice is particularly high.  *See Daubert*, 509 U.S. at 595 (explaining that "the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses" because "[e]xpert evidence can be both powerful and quite misleading").

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that the Court should exclude the testimony of (1) Maggie Sklar; (2) Paul Doran; (3) Thomas Bishop; and (4) Raymond Dragon.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York


By: /s/
    Micah F. Fergenson
    Ryan B. Finkel
    Justin Horton
    Juliana N. Murray
    Assistant United States Attorneys
    (212) 637-2190 / 6612 / 2276 / 2314


Dated: April 9, 2024
      New York, New York