# EXHIBIT C

## LOAN AGREEMENT

Borrower:     __Phoenix Farm (Maywind Trading LLC)__

Lender:     ▇▇▇▇▇▇▇▇▇▇

Lender's Phoenix Farm Code:     ▇▇▇▇▇▇▇▇▇▇

This Loan Agreement dated ▇▇▇▇▇▇ is made between the Borrower and the Lender in which the Lender agrees to grant a loan to the Borrower on the following terms and conditions. The Lender understands and agrees to take all the commercial, market and if any, regulatory risk in relation to granting or extending the loan herein to the Borrower.

1. Terms

   (a) Use of Proceeds:     The loan proceeds advanced under this Agreement is for the general working capital purposes of the Borrower.

   (b) Loan Amount:     United States Dollar in the amount of ▇▇▇▇▇▇, which is the actual and net dollar amount credited into the Borrower's designated account pursuant to the Loan Advance.

   (c) Interest Rate:     3% per annum on the Loan Amount payable in full on the Final Maturity Date

   (d) Final Maturity Date:     36 months from the Effective Date.

   (e) Repayment:     The total Loan Amount and accrued interest from the Loan Amount will be repaid in a lump sum on the Final Maturity Date. The Borrower will have the option to make repayment in one of the two followings:

       (i) By cash in United States dollar in the total amount of Loan Amount plus accrued interest, or
       (ii) By transferring ownership of the Borrower's Assets of a value determined by the Borrower and is acceptable by the Lender, that is equivalent to the total Loan Amount and accrued interest to the Lender.

   (f) Extension Right:     Borrower has the right but not the obligation at any time before the Final Maturity Date to extend the Final Maturity Date for 24 months. Upon the Borrower serving a written loan extension notice to the Lender, the Final Maturity Date will be amended accordingly to the new date.

Lender Initials ▇▇▇

1

(g) Loan Advance: The Loan Amount will be advanced to the Borrower in a lump sum in a whole number by bank transfer into the Borrower's or other designated account as instructed by the Borrower.

The loan proceeds must be advanced by either the Lender or the designated individual or entity by the Lender. Otherwise, the Borrower shall have the right to unilaterally terminate this Agreement.

The Lender shall have no right to unilaterally terminate this Agreement after it becomes effective.

(h) Effective Date: This Agreement shall be effective on the date the full Loan Amount proceeds has reached the Borrower's designated account in free and clear fund. The Effective Date and the Final Maturity Date will be declared by the Borrower to the Lender in writing once the Loan Advance proceeds are free and clear in the designated account. This Agreement shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs and expenses or until such time as the parties may agree in writing to terminate this Agreement.

(i) Pledge of Assets: To secure the prompt and complete repayment of the Loan, Borrower hereby pledges to the Lender and grants to the Lender, a security interest in all of such Borrower's right, title and interest in the Borrower's assets, including its fixed assets, current assets and any assets pledged to the Borrower (the "Assets") for an amount equal to the total indebtedness owed to the Lender.

(j) Perfection of Pledge Interest:
Borrower agrees (i) to deliver to the Lender, or the Lender's nominee, all certificates, instruments or other documents evidencing any of the Assets that are pledged to the Lender at the end of the Final Maturity Date, and (ii) to take such other steps as the Lender may from time to time reasonably request to perfect the Lender's security interest in the Assets pledged to the Lender under the applicable law.

(k) Prepayment: The Borrower can, by giving at least 30-day written notice to the Lender, make prepayment of the loan at any time before the Final Maturity Date without paying any penalty or premium.

Lender Initials ▮

2

2. Representations and Warranties by Lender. Lender represents and warrants to Borrower, as of the date of this Agreement, as of the date of any renewal, extension, or modification of any Loan, and at all times any indebtedness exists:

(a) Lender is sufficiently experienced in financial and business matters to be capable of utilizing such information to evaluate the merits and risks of this loan and make an informed decision relating thereto. Lender is in a financial position to hold the Loan for a period longer than the Final Maturity Date and is able to bear the economic risk and withstand a complete loss of the Loan.

(b) No litigation, claim, investigation, administration proceeding against Lender is pending. If any, that have been disclosed to and acknowledged by Borrower in writing.

3. Representations and Warranties by Borrower: Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of any renewal, extension, or modification of any Loan, and at all times any indebtedness exists:

(a) ___Phoenix Farm (Maywind Trading LLC)___ is a company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Arizona, duly authorized to transact business. Borrower will notify Lender prior to any change in its name or office location, and do all things necessary to preserve and keep in full force and effect its existence, rights and privileges, and shall comply with all requirements, rules, ordinances, statuses, orders and decrees of any government or quasi-governmental authority or court that is applicable.

(b) Borrower's execution, delivery, and performance of this Agreement has been duly authorized by all necessary action by Borrower and will not conflict with, result in a violation of, or constitute a default under any provision of (i) Borrower's Operating Agreement or (ii) any law, government regulation, court decree, or order applicable to Borrower.

(c) No litigation, claim, investigation, administration proceeding against Borrower is pending. If any, that have been disclosed to and acknowledged by Lender in writing.

4. Affirmative Covenants. Borrower covenants and agrees with Lender that, as long as this Agreement remains in effect, Borrower will:

(a) Notice of Claims and Litigation. Promptly inform Lender in writing of all existing and all threatened litigation, claims, investigations, and administrative proceedings affecting Borrower which could materially affect the financial condition of Borrower.

(b) Loan Proceeds. Use all loan proceeds strictly in accordance with the Use of Proceeds.

Lender Initials ▮▮▮▮

3

(c) Performance. Perform and comply, in a timely manner with all terms, conditions, and provisions set forth in this Agreement. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

(d) Assets. The Borrower will with its best effort ensure that the value of its assets is at all times sufficient to cover the indebtedness owed to the Lender.

5. Negative Covenants. Borrower covenants and agrees with Lender that, as long as this Agreement remains in effect, Borrower will not, without the prior consent of Lender:

(a) Continuity of Operations. Cease operations, liquidate, merge, transfer, acquire, consolidate with any other entity.

(b) Agreements. Enter into agreement containing any provisions which could be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

(c) Liens. Sell, transfer, assign, lease, or encumber the Assets to any party except the Lender. For the avoidance of doubt, the Borrower is permitted to pledge the Assets to other lenders of the similar nature provided that the value of the Borrower's assets are at all times sufficient to cover all the indebtedness owed by all the lenders.

6. Default. Default will occur if payment in full is not made immediately when due. If Default shall occur, and, at Lender's option, all indebtedness shall become due and payable. In addition, Lender shall have all the rights and remedies available at the applicable laws. All of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently.

7. Notices. All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given upon the earlier of actual receipt or (a) personal delivery to the party to be notified, (b) when sent, if sent by electronic mail or facsimile during normal business hours of the recipient, and if not sent during normal business hours, then on the recipient's next business day, (c) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one (1) business day after deposit with a nationally recognized overnight courier, freight prepaid, specifying next business day delivery, with written verification of receipt. All communications shall be sent to the respective parties at their address as set forth in this Agreement or such address as subsequently modified by written notice.

8. Indemnity. Lender agrees to indemnify and hold harmless Borrower, and each of its employees, directors, agents and attorneys, from and against any and all loss, liability, claims, damages and expense (including any expense reasonably incurred in investigating, preparing or defending against any litigation commenced or threatened or any claim whatsoever) related to any misrepresentation or breach of warranty or breach of agreement by the Lender contained herein or in any other documents furnished by the Lender to the Borrower in connection with this Agreement.

4

Lender Initials ▮

9. Amendment. This Agreement constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement and supersedes each course of conduct previously pursued or acquiesced in, and each oral agreement and representation previously made by the parties with respect thereto, whether or not relied or acted upon. No alteration or amendment to this Agreement shall be effective unless given in writing and signed by the parties sought to be changed or bound by the alteration or amendment.

10. Assignment. Lender shall not assign its rights under this Agreement or any interest therein, without the prior written consent of the Borrower.

11. Agreement Binding on Borrower's and Lender's Successors. The representations, warranties, covenants and agreements in this Agreement shall be binding on the Lender's and the Borrower's successors, assigns, heirs and legal representatives and shall inure to the benefit of the respective successor and assigns of the Borrower and Lender.

12. Dispute Resolution. The parties hereby submit to any federal or state courts, located in the State of Arizona, under the jurisdiction to the State of Arizona and agree that all litigation under or relating to this Agreement shall be conducted in such courts.

13. Governing Law. This Agreement shall be construed in all respects in accordance with and governed by the laws of the State of Arizona.

14. Delays or Omissions. No delay or omission to exercise any right, power or remedy accruing to any party under this Agreement, upon any breach or default of any other party under this Agreement, shall impair any such right, power or remedy of such non-breaching or non- defaulting party nor shall it be construed to be a waiver of any such breach or default, or an acquiescence therein, or of or in any similar breach or default thereafter occurring; nor shall any waiver of any single breach or default be deemed a waiver of any other breach or default theretofore or thereafter occurring. Any waiver, permit, consent or approval of any kind or character on the part of any party or any breach or default under this Agreement, or any waiver on the part of any party of any provisions or conditions of this Agreement, must be in writing and shall be effective only to the extent specifically set forth in such writing. All remedies, either under this Agreement or by the applicable law or otherwise afforded to any party, shall be cumulative and not alternative.

15. The invalidity or unenforceability of any provision hereof shall in no way affect the validity or enforceability of any other provisions and the document in its entirety.

16. DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless otherwise specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles and in effect on the date of this Agreement.

"Agreement" or "Loan Agreement" means this agreement signed herewith, and this Loan Agreement may be amended or modified from time to time.

5

Lender Initials _███

"Borrower" means ___Phoenix Farm (Maywind Trading LLC)___

"Default" means the Default set forth in this Agreement in the section titled "Default".

"Final Maturity Date" means the date on which all the indebtedness of the loan become due and immediately be repaid.

"Indebtedness" means the indebtedness including all principal and interest together with all other indebtedness and cost and expenses for which Borrower is responsible under this Agreement.

"Lender" means the entity or person set forth in this Agreement in the section titled "Lender"

"Loan" means any and all loans from Lender to Borrower whether now or hereafter existing, and however evidenced.

"Assets" means all the Borrower's assets, including its fixed assets, current assets and any assets pledged to the Borrower.

Lender Initials ▮    6

Signature Page

**Lender:**

███████████████
Name (Print)

███████████████
Signature

█████
Date




**Borrower:**

Phoenix Farm (Maywind Trading LLC)
Name (Print)

_____
Title

_____
Signature

_____
Date

Lender Initials ███████

7

## Appendix A: Lender's information



Lender Initials ▮

8