

New York | Los Angeles | Miami

7 Times Square, New York, NY 10036-6569 Tel: 212-421-4100 Fax: 212-326-0806 pryorcashman.com

**Sidhardha Kamaraju**

Direct Tel: 212-326-0895
Direct Fax: 212-326-0806
skamaraju@pryorcashman.com

April 14, 2024

**VIA ECF, EMAIL, AND UNDER SEAL**

Hon. Analisa Torres
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

**Re: *United States v. Kwok et al.*, Case No. 1:23-cr-00118 (AT)**

Dear Judge Torres:

We write in response to the April 10, 2024 letter (the "USAO-SDNY Letter") and the letter motion to quash (the "USAO-EDNY Motion") (jointly, the "DOJ Submissions"), submitted by the United States Attorney's Offices for the Southern and Eastern Districts of New York.

The DOJ Submissions oppose Mr. Kwok's motion for a Rule 17 Subpoena directed to the USAO-EDNY calling for material from the case *United States v. Bai*, 23 Mag. 334 (E.D.N.Y.) ("*Bai*"). On February 21, 2024, this Court determined the *Bai* material is relevant and discoverable here because it supports nonfraudulent explanations for the conduct charged in the Superseding Indictment. *See* 2/21/24 Fox Hunt Order (Dkt. 243). Accordingly, the Court should direct the USAO-SDNY to produce the *Bai* material as Rule 16 discovery or direct the USAO-EDNY to produce the *Bai* material pursuant to the Rule 17 Subpoena. What the Court should not do is accept the DOJ's invitation to commit error by denying Mr. Kwok access to material the Court already has found relevant and helpful to his defense. *See, e.g., United States v. Murray*, 736 F.3d 652, 659 (2d Cir. 2013) (reversing conviction where defendant was not allowed to "offer evidence rebutting the government's new contention" which "denied him a fair opportunity to present a defense and a fair trial"); *United States v. Jones*, 381 F.3d 114, 121 (2d Cir. 2004) (stressing that a court's "primary obligation is to ensure that [the defendant] receives a fair trial"). The Court should order the immediate production of the *Bai* material.

**BACKGROUND**

As the Court knows, Mr. Kwok was charged on March 15, 2023, and detained ever since.





On April 17, 2023, the USAO-EDNY unsealed the criminal complaint in *Bai*, which describes a years' long campaign by the Chinese Communist Party (the "CCP") [REDACTED] by (i) forcing him from traditional social media platforms; (ii) kidnapping him; and (iii) corruptly causing his extradition back to China. In investigating *Bai*, the USAO-EDNY worked with the FBI's New York field office (the "FBI-NY"). In a June 26, 2023 *Brady* disclosure letter, [REDACTED] (**Exhibit 1** at 1.) The USAO-SDNY noted that it was making this disclosure pursuant to *Brady* and "the Government's other disclosure obligations, and in an abundance of caution." (*Id.*)

This firm appeared as Mr. Kwok's counsel in mid-July 2023. On September 29, 2023, Mr. Kwok's counsel requested discovery from the USAO-SDNY concerning the CCP's targeting of Mr. Kwok, his family, fellow movement members, and certain relevant corporate entities (the "Fox Hunt Material"), including material from the *Bai* case file. On November 17, 2023, because the USAO-SDNY refused to produce these documents, Mr. Kwok moved to compel its production, including the *Bai* material. In moving to compel, Mr. Kwok explained that the USAO-SDNY was obligated to search for and produce the *Bai* material, because the same investigating agency—FBI-NY—investigated both this case and *Bai*. (*See* Dkt. 213 at 18). The USAO-SDNY opposed Mr. Kwok's motion, contending that the Fox Hunt Material, including the *Bai* material, was not relevant, and also not in the possession of the "prosecution team" because the case was being prosecuted by the USAO-EDNY. (*See* Dkt. 201).

On February 21, 2024, the Court granted Mr. Kwok's motion in part (the "Fox Hunt Order"). In particular, the Court found that the CCP's targeting of Mr. Kwok, his family, and related corporate entities was relevant to several aspects of the defense, but limited the USAO-SDNY's search to material in the "prosecution's possession" and not "another agency's files." (Fox Hunt Order at 6.) While the Court did not expressly address the issue of whether USAO-SDNY should search the FBI-NY's files for *Bai* material, the Fox Hunt Order made clear that the Court considered the *Bai* material to be relevant to supporting Mr. Kwok's defense at trial and combatting the government's so-called "consciousness of guilt" evidence. For example, the *Bai* material supported Mr. Kwok's beliefs as to the value of GTV; and the need for a secure meeting location to conduct anti-CCP business and to combat. (*Id.* at 6-7).[1] Moreover, the Court made clear its view that whether "Kwok's explanations ultimately hold water is, of course, a question for the jury." (*Id.* at 7).

---

[1] In this regard, Request No. 2 in Mr. Kwok's motion to compel called for "[r]ecords concerning the allegations in the *Bai* complaint, including the underlying evidence of targeting of Kwok and his followers." Motion to Compel at 3. In granting in part Mr. Kwok's motion to compel, the Court held that "[a]t this stage, Requests 2, 3, 4 and 8 pass the relatively low bar of materiality, entitling Mr. Kwok to responsive production under Rule 16." Fox Hunt Order at 7.





The USAO-SDNY began dribbling out some material responsive to the Court's Order over the next two months, but, as of the filing of this letter, has still not completed its production. Even this partial production reveals that, while the USAO-SDNY has reviewed files from other FBI-NY squads involved in investigations concerning the targeting of Mr. Kwok by the CCP, it has studiously and deliberately avoided producing materials from the *Bai* case file, a case file that also sits at the FBI-NY. (**Exhibit 2**, April 4, 2024 Letter, at 9.)

To conclusively determine, and perhaps resolve, any continued dispute as to the *Bai* materials, Mr. Kwok's counsel sought to confirm with the USAO-SDNY the parameters of its search. The USAO-SDNY, however, refused to engage on the issue. Indeed, the prosecutors declined to substantively respond to a direct question as to whether they were searching the FBI-NY files, simply intoning the deliberately obscure and unhelpful response that they "understand [their] obligations and are diligently complying with them." (*See* Ex. 2 at 4-5).

With trial fast approaching and the government refusing to answer Mr. Kwok's most basic questions about its intentions, Mr. Kwok's counsel became concerned that USAO-SDNY would simply not search these files, continue to dribble out other materials, and leave Mr. Kwok with insufficient time to seek the *Bai* material elsewhere. To cut through this improper gamesmanship, Mr. Kwok submitted his Rule 17 Subpoena and Motion to the Court on March 5, 2024. In his motion, Mr. Kwok argued that issuance of the subpoena was necessary to the extent that USAO-SDNY was not obligated to "search the files of other prosecutors' offices for this information" and that USAO-SDNY may not have the *Bai* material in its own possession. (Rule 17 Mot. at 17-18.) Mr. Kwok did ***not*** state that he believed the Court's Fox Hunt Order relieved USAO-SDNY of its obligation to search FBI-NY's records for the *Bai* material.

On April 3, 2024, the Court reserved judgment on the Rule 17 Motion, first directing Mr. Kwok to "serve the USAO-EDNY subpoena on USAO-EDNY and the Government, along with the portions of the memorandum and supporting documents that pertain to the USAO-EDNY subpoena" by April 5, 2024. *See* Rule 17 Order (filed under seal). The Court also directed the USAO-EDNY and the Government to respond by April 10, 2024. *Id.* As directed by the Rule 17 Order, Mr. Kwok served the Rule 17 Motion and USAO-EDNY Subpoena on USAO-EDNY and USAO-SDNY, on April 3 and April 4 respectively.[2]

On April 4, 2024, because of the government's continued recalcitrance regarding the *Bai* materials, Mr. Kwok applied to the Court for an order directing the USAO-SDNY to (i) produce all of the material responsive to the Fox Hunt Order by April 10, 2024; and (ii) confirm whether

[2] Upon receipt of the Rule 17 Motion on April 4, 2024, USAO-SDNY requested a copy of the sealed Rule 17 Order from the defense. Defense counsel responded that it could not provide a copy because the Court had filed the Rule 17 Order under seal.





or not it was searching the *Bai* case file for responsive material. (*See* Ex. 2 at 15). On April 10, the Court directed the USAO-SDNY to complete its responsive production by that day and denied Mr. Kwok's request to have the USAO-SDNY disclose information about its searches as premature. (Dkt. 275 at 4). After the USAO-SDNY had completed its production, the Court stated that the parties "may confer about any perceived omissions." (*Id.*). The Court did not make any finding with respect to the parties' respective positions with respect to the scope of the "prosecution team."

The Court's deadline of April 10 has come and gone and the government has not completed its production as Ordered.[3] Further, although it will not say it squarely to the defense or even the Court, the USAO-SDNY has not, and has no intention of making a serious and complete production of the *Bai* case file. In this regard, the USAO-SDNY states that its single remaining production (which it will only make after the Court's deadline) concerns ██████ ████████████████████████ *See* USAO-SDNY Letter at 3 n. 2. Finally, the USAO-SDNY also claims—wrongly—that the Court had rejected Mr. Kwok's prosecution team arguments with respect to *Bai*, when in fact, all the Court did was table that discussion. *Id.* at 3.

It is now clear beyond all cavil that the parties have a ripe dispute regarding the *Bai* materials which will not be resolved without Court intervention. The Court should resolve that dispute by ordering the government to produce the *Bai* material to Mr. Kwok or direct the USAO-EDNY to produce the *Bai* material.

## ARGUMENT

There is no question that the government is seeking to deny Mr. Kwok evidence to which the Court has already determined he is entitled. *See* DOJ Submissions. That would be a perverse result, given that the already has held that these materials are discoverable under Rule 16. The instant question for the Court is thus a simple and narrow one: will Mr. Kwok obtain the *Bai* material through Rule 16 from USAO-SDNY, or will he obtain it through Rule 17 from USAO-EDNY? Either way, Mr. Kwok is entitled to it, trial is rapidly approaching, and the Court should put an end to the government's gamesmanship with respect to this critical material.

### I. If the USAO-SDNY Is Correct That the *Bai* Materials Are Not Covered by Rule 16, Then Mr. Kwok Is Entitled to Proceed Under Rule 17

In its Rule 17 Order the Court recognized that the "USAO-EDNY requests are identical to those Kwok previously served on the Government and which the Court held in the Order

[3] The USAO-SDNY has offered no explanation for why it has not abided by, or even requested an extension of, the Court's deadline, but instead has simply ignored it.





material and, therefore, discoverable . . . ". Rule 17 Order at 7.[4] Thus, the Court already has recognized, both in Rule 17 Order and its Fox Hunt Order, that the *Bai* materials are relevant and discoverable under Rule 16. The Court's concern was focused on the fact that the USAO-SDNY's obligations were "limited to items within its possession" and that, because the Rule 17 Subpoena sought "additional records from another division of the Department of Justice[,]" the Court was required to consider whether the Rule 17 Subpoena was an "improper attempt to circumvent Rule 16 and the [Fox Hunt] Order, or a permissible means of obtaining discoverable evidence." Rule 17 Order at 7. Notably, in the DOJ Submissions, neither USAO-SDNY nor USAO-EDNY assert that the Rule 17 Subpoena is an end-run around Rule 16 or the Fox Hunt Order.

In its USAO-SDNY Letter, the USAO-SDNY tries to cast some doubt where whether the *Bai* materials are within its possession. However, if those materials—which the Court has already determined are properly discoverable under Rule 16—are not in USAO-SDNY's possession, then the Rule 17 Subpoena does not overstep Rule 16 because, by definition, Mr. Kwok is not circumventing Rule 16 discovery by seeking those same *Bai* materials from USAO-EDNY.

The only remaining question therefore with respect to any alleged specter of improper circumvention of Rule 16 is whether the *Bai* material is in USAO-SDNY's possession and subject to USAO-SDNY's Rule 16 obligations, such that it should be produced by USAO-SDNY. *See*, *e.g.*, *United States v. Stein*, 488 F. Supp. 2d 350, 369–70 (S.D.N.Y. 2007) (analyzing whether records were in the government's possession and thus should be produced as Rule 16 material or be subject to a Rule 17 subpoena). The USAO-SDNY, of course, knows the answer to this question. If the answer is "yes," then the materials should be produced pursuant to the USAO-SDNY's discovery obligations under Rule 16. If the answer is ""no," then the materials are not in USAO-SDNY's possession and then there is no bar to Mr. Kwok's pursuit of them from the USAO-EDNY under Rule 17. *See Bowman Dairy Co. v. United States*, 341 U.S. 214, 219 (1951) ("[i]t would be strange indeed if the defendant discovered some evidence by the use of Rule 16 which the Government was not going to introduce and yet could not require its production by Rule 17(c)"). Indeed, any other rule would mean that "the government could prevent defendants from obtaining material by choosing not to obtain it for itself." *United States v. Tucker*, 249 F.R.D. 58, 65 (S.D.N.Y. 2008), as amended (Feb. 20, 2008). "This perverse result

[4] The Court noted one exception with respect to Request 4 in the Rule 17 Subpoena, which the Court only granted in part in the Fox Hunt Order. (*See* Rule 17 Order at 7 & n.4). The failure to narrow Request 4 in according with the Fox Hunt Order was an oversight, and Mr. Kwok will narrow the scope of this Request to match precisely what the Court found discoverable in the Fox Hunt Order. Furthermore, as discussed in more detail below, Mr. Kwok will also agree to narrow other requests to address some of the concerns raised by USAO-EDNY in its motion to quash.





cannot be intended by the Federal Rules of Criminal Procedure." *Id*.

The USAO-SDNY's claim that the *Bai* materials are not subject to its Rule 16 obligations is a dubious one. It is axiomatic that a prosecutor possesses material that is in the hands of the "prosecution team." *See United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998). From the USAO-SDNY's productions, it is apparent that the USAO-SDNY views as part of its "prosecution team" those FBI squads involved in other investigations focused on the targeting of Mr. Kwok and his associates. (*See* Ex. 2 at 8). While the government refuses to explain why, it also appears that the USAO-SDNY is carving out the *Bai* squad—even though it is part of the same FBI office and indeed same division within that office as the other FBI squads that are part of the purported "prosecution team."—because the *Bai* agents conducted their investigation with USAO-EDNY. This artificial distinction ignores, however, that (i) the "prosecution team" includes the investigating agents, which at a bare minimum includes the FBI agents who investigated this case, *see Avellino*, 136 F.3d at 255; and (ii) the materials subject to disclosure include records to which that the prosecution team has access, *see United States v. Giffen*, 379 F. Supp. 2d 337, 343 (S.D.N.Y. 2004) (stating that, under Rule 16, documents "that the Government has reviewed *or has access to* must be provided to aid a defendant in preparing his defense") (emphasis added). The USAO-SDNY has never claimed that the FBI agents who investigated this case (or the other FBI agents who the prosecutors have now deemed to be part of the "prosecution team") do not have access to the *Bai* material. In fact, quite the opposite is true. Based on publicly available information released by USAO-SDNY, the FBI maintains a central database where it houses intercepted telephone and text communications. *See United States v. Saipov*, 17 Cr. 722 (VSB), Dkt. No. 350 at 2 (attached as **Exhibit 3**). FBI agents and linguists can, and do, search that database for intercepted communications from other investigations. (*See id*. at 3 (noting that FBI case agents searched the database for communications from a "separate terrorism investigation")). There is no reason to believe—and certainly none proffered—why the fraud agents involved in investigating this case could not do the same and search and produce documents with respect to the *Bai* case from this central database.

The USAO-SDNY's tortured line-drawing between FBI squads that sit mere feet or floors away from each other is an illusion and appears to be a bespoke distinction adopted by the government specifically to frustrate discovery in this case. The Court could resolve the instant motion simply by confirming that the USAO-SDNY is obligated to search the *Bai* case file at FBI-NY for responsive materials. But even assuming, *arguendo*, that the Court accepts USAO-SDNY's theory of artificial squad distinctions, then Mr. Kwok should be permitted to seek the same discovery from USAO-EDNY via that Rule 17 Subpoena. Preventing Mr. Kwok from obtaining these critical exculpatory materials from either source would create precisely the "perverse result" that "cannot be intended by the Federal Rules of Criminal Procedure." *Tucker*, 249 F.R.D. at 65. The USAO-SDNY should not be allowed to "prevent [Mr. Kwok] from obtaining [helpful] materials by choosing not to obtain it for itself." *Id.*





PRYOR CASHMAN LLP

## II. The Rule 17 Subpoena Complies with the *Nixon* Standard

The Rule 17 Subpoena complies with the *Nixon* standard. Mr. Kwok addressed this standard and its factors at length in his Rule 17 Motion and incorporates that discussion herein by reference. Only new points concerning the *Nixon* standard raised in the DOJ Submissions are responded to below.

### A. The Court Already Has Found the *Bai* Material Relevant Here, Satisfying *Nixon*'s Relevancy Requirement

USAO-EDNY contends Mr. Kwok has not complied with DOJ regulations ("*Touhy* Regulations") authorized by *United States ex rel Touhy v. Ragen*, 340 U.S. 462 (1951) because Mr. Kwok allegedly failed to submit a written demand explaining the relevance of the records sought. (USAO-EDNY Motion at 2.) Frankly, this contention makes no sense. The relevant regulation requires only that "[w]hen information other than oral testimony is sought by a demand, the responsible U.S. Attorney shall request a summary of the information sought and its relevance to the proceeding." 28 C.F.R. § 16.22(d). Further, pursuant to the Court's Rule 17 Order, Mr. Kwok served the Rule 17 Subpoena on the USAO-EDNY together with the Rule 17 Motion. The Rule 17 Motion explains in detail "the relevance of the records sought." As a result, Mr. Kwok has complied with the *Touhy* Regulations.

In any event, the relevance of the *Bai* materials cannot be disputed at this point, given the Court's Fox Hunt Order. The *Bai* complaint describes evidence concerning, among other things, the following topics that the Court has already determined to be relevant:

- [redacted]
- [redacted]

As detailed in the Rule 17 Motion, the requests in the Rule 17 Subpoena seek information concerning these topics, thus unquestionably satisfying *Nixon's* relevance requirement. (Rule 17 Mot. at 14-15).

### B. The Rule 17 Subpoena Is Sufficiently Specific and in Any Event, Mr. Kwok Will Agree to Narrow the Rule 17 Subpoena to Address USAO-EDNY's Purported Concerns

Mr. Kwok described how the Rule 17 Subpoena satisfies *Nixon's* specificity requirement at pages 15-16 of the Rule 17 Motion. USAO-EDNY does not address any of these arguments in





its motion, but rather advances an argument that the subpoena is "unreasonably oppressive" in the guise of a *Nixon* specificity argument. The USAO-EDNY's purported concerns are overstated, but in any event, Mr. Kwok will agree to narrow his subpoena to mitigate them.

*First*, with respect to Request One, USAO-EDNY contends the request is overly broad because it seeks all evidence "concerning the allegations in the *Bai* complaint, including the underlying evidence of targeting Kwok and his followers." (USAO-EDNY Motion at 3). The USAO-EDNY's argument that the investigation was a "multi-year" long investigation that culminated in charges against 34 individuals certainly speaks to the scale of the CCP operation that was targeting Mr. Kwok. But it misses the point—while other "victims" were discussed in the *Bai* complaint, Mr. Kwok is "Victim-1," and the ultimate purpose of the conspiracy alleged in *Bai* was to neutralize Mr. Kwok Nevertheless, Mr. Kwok will agree to limit Request One to evidence specifically concerning the targeting of Mr. Kwok, his co-defendants, his family, and the relevant corporate entities in the Superseding Indictment. That should thus spare USAO-EDNY the burden of collecting and producing information related to other CCP victims or general background on Operation Fox Hunt.

*Second*, with respect to Requests Two and Three, the USAO-EDNY claims that the requests are overly broad because the office has brought "numerous cases in which the Chinese government or its representatives have targeted dissidents located in the United States." The request, however, is not about all targeting of Chinese dissidents, but rather about targeting of Mr. Kwok and his family through particular means. To the extent, the USAO-EDNY believes that to respond to such a request it has to search numerous case files, Mr. Kwok will agree to alleviate any such burden by just seeking production of responsive material from the *Bai* case file.

USAO-EDNY also contends that Mr. Kwok failed to identify specific documents. Mr. Kwok, however, is not clairvoyant, and has no way of knowing what responsive documents exist in the *Bai* case file – it should be enough that he has identified the specific case from which materials are sought. Requiring more from Mr. Kwok would be unfair and effectively impossible; it would effectively neuter his (or any other defendant's) ability to obtain critical evidence in support of his defense through a Rule 17 Subpoena. This is not the law. *See United States v. Rajaratnam*, 753 F. Supp. 2d 317, 321 n.1 (S.D.N.Y. 2011) ("requiring the defendant to specify precisely the documents he wants without knowing what they are" would "render[] Rule 17 a nullity"); *United States v. Weisberg*, No. 18 Cr. 347 (NGG), 2011 WL 1327689, *7 (E.D.N.Y. Apr. 5, 2011) (a defendant "need not have prior knowledge of specific documents to meet the specificity requirement of Rule 17(c)").

*Third*, with respect to all the Requests, the USAO-EDNY objects that the Rule 17 Subpoena seeks grand jury material protected by Federal Rule of Criminal Procedure 6(e), and that Mr. Kwok must file a petition in the United States District Court for the Eastern District of





New York. Resolving this issue does not require quashing the Subpoena. Rather, as with any privileged information, USAO-EDNY can simply withhold/redact this information, while produce the rest of the responsive information not subject to Rule 6(e). Mr. Kwok can then – if he believes it necessary – submit a petition to the EDNY Court under the applicable procedure, which includes, among other things, the potential that the EDNY Court will transfer the petition to this Court. *See* Fed. R. Crim. P. 6(e)(3)(G). That process ensures that Rule 6(e) material will be protected in accordance with the Federal Rules of Criminal Procedure, while also providing Mr. Kwok access to records vital to his defense.

**C. The Requested Material is Admissible**

The USAO-EDNY does not challenge the Rule 17 Subpoena on admissibility grounds (presumably because it itself intends to introduce this evidence in the event it arrests one of the *Bai* defendants). The USAO-SDNY, however, reprises an argument it raised in opposition to Mr. Kwok's Fox Hunt motion to compel and repeats in its motions in *limine*—namely, that Mr. Kwok cannot admit any evidence of CCP targeting of him beyond his own testimony and "evidence upon which Kwok based his beliefs." (USAO-SDNY Ltr. at 3). As an initial matter, the Court essentially rejected this argument already, when it held that Mr. Kwok was entitled to production of documents concerning the CCP targeting of Mr. Kwok over the same objection. But regardless, the USAO-SDNY's contention that Mr. Kwok cannot admit, as state of mind evidence, extrinsic evidence of which he was not aware, has been squarely rejected by the Second Circuit.

Mr. Kwok is entitled to admit independent, objective evidence showing that his beliefs are objectively reasonable because such evidence demonstrates that he truly holds those beliefs. *See, e.g., United States v. Weber*, 843 F. App'x 364, 367 (2d Cir. 2021) ("While a defendant's good-faith reason need not be objectively reasonable, the objective reasonableness of a claimed belief may be probative of whether the defendant held the belief in good faith."). In *United States v. Onumonu,* for example, the Second Circuit expressly found that the defendant was entitled to introduce expert testimony about methods of smuggling diamonds from Africa to support the defendant's asserted belief that he was smuggling diamonds rather than narcotics. 967 F.2d 782, 787 (2d Cir. 1992). Similarly, in *United States v. Rittweger*, the Second Circuit examined whether a witness's statements constituted *Brady* material where the statements supported the defendant's belief that he was the sole signatory on certain accounts, including the witness's opinion that the defendant's belief was genuine and that the witness had been instructed by another to withhold contrary information from the defendant. 524 F.3d 171, 181 (2d Cir. 2008). Of course, the defendant could not have known, for example, that his other purported co-conspirators had discussed deceiving him—if he had, that would have defeated the entire purpose of the deception. Nevertheless, the Second Circuit found that the witness statement was exculpatory and should have been disclosed. *Id.*; *see also United States v. Philips*, No. 22-CR-138 (LJL), 2023 WL 6620146, *4 (S.D.N.Y. Oct. 10, 2023) ("And while the





Government is correct that Defendant could not have known with absolute certainty what the USD/ZAR exchange rate would be in advance, evidence that corroborates the reasonableness of the legitimate investment thesis Defendant has proffered for his trades makes it more probable that he traded on that basis.") (cleaned up). The same is true here—Mr. Kwok is entitled to admit extrinsic evidence to show that his good faith belief is reasonable. Accordingly, the Rule 17 Subpoena satisfies *Nixon's* admissibility requirement.

**III. The Rule 17 Motion Was Not Made in Bad Faith**

The USAO-SDNY also contends—incredibly—that *Mr. Kwok* is acting in bad faith by issuing the Rule 17 Subpoena. It is deeply problematic that the prosecutors view defense counsel satisfying their constitutional obligations on behalf of their clients as bad faith. *Cf. Strickland v. Washington*, 466 U.S. 668, 691 (1984) (holding that "counsel has a duty to make reasonable investigations"). The USAO-SDNY's accusation of bad faith should be summarily rejected by the Court. If anything, the Court should put an end to the USAO-SDNY's continued efforts to dodging its obligations with respect to this critical evidence. *See United States v. Nejad*, 521 F. Supp. 3d 438, 450 (S.D.N.Y. 2021) ("It is imperative that prosecutors fulfill their constitutional and ethical obligations with the same zeal with which they pursue convictions—not reluctantly, not only after prodding, and not with measured half-truths.").

In advancing its meritless accusation, the USAO-SDNY makes three claims that distort the record, Mr. Kwok's word, and the Court's orders.

*First*, USAO-SDNY claims that Mr. Kwok is not acting in good faith because he waited to issue the Rule 17 Subpoena until a "six-to-eight week trial and significant pre-trial deadlines were already looming." (USAO-SDNY Letter at 2.) Mr. Kwok filed the Rule 17 Motion on March 5, more than two months before trial and more than a month before any pre-trial filings were due. The USAO-SDNY does not assert how much in advance of a trial defense counsel is permitted to serve a Rule 17 subpoena without it being "an effort to burden the Government," (*see id.* at 3), but surely defense counsel should be permitted to issue subpoenas months before trial without being accused of bad faith by the prosecution. Further, the Rule 17 Subpoena was necessitated in the first place by the government's own gamesmanship and refusal to cooperate in discovery to turn this material over even though it has long been aware of its significance.

In particular, while the USAO-SDNY claims "bad faith" because Mr. Kwok was aware of the *Bai* complaint since it was filed in April 2023, the same is true of USAO-SDNY. Indeed, by no later than June 26, 2023, the USAO-SDNY was aware that *Bai* was relevant to a potential defense, because the USAO-SDNY disclosed, pursuant to its *Brady* obligations, that Mr. Kwok [redacted] By September of that year, the defense requested additional discovery concerning the CCP's targeting of Mr. Kwok, including the *Bai* material. Since then until today, the government has adopted various tactics to stall, delay, and frustrate production of that





material. That gamesmanship forced Mr. Kwok to file a motion to compel in November 2023, which the Court granted in part on February 21, 2024. In other words, the only reason why Mr. Kwok waited until March 2024 to seek issuance of the Rule 17 Subpoena is because, pursuant to Rule 16, he was trying to obtain this material from the USAO-SDNY first.

The USAO-SDNY's sandbagging complaints are particularly rich given its own track record with respect to discovery. Even setting *Bai* aside, FBI squads that the USAO-SDNY now apparently considers part of the prosecution team—such as the agents in the TIN Investigation—had information concerning the CCP's targeting of Mr. Kwok. The prosecutors knew of that investigation—and the fact that it included targeting of Mr. Kwok—because they specifically referenced a search warrant that discussed it in support of their motion to disqualify Emil Bove, Ms. Wang's prior counsel. (Dkt. 120). They still failed to promptly produce obvious information about the CCP's targeting of Mr. Kwok from that file—including [REDACTED] —until recent weeks, including up until two days ago. Even after belatedly producing it, the USAO-SDNY buried it by not marking it with a Bates stamp it *specially* created to track materials produced pursuant to the Fox Hunt Order and obscuring this obviously critical material amongst the larger production dumped on the defense in the past few weeks. Indeed, despite representing to defense counsel at the time of the Superseding Indictment in January 2024 that discovery was substantially complete, the USAO-SDNY has produced hundreds of thousands of documents in Rule 16 discovery since *just March 2024*, including materials that the USAO-SDNY has had in its possession for months, but chose not to produce until now. Given the USAO-SDNY's own discovery practices and history, it should be extremely careful before adopting "pre-trial burden" as a measure of bad faith. In any event, the Court should reject the government's ill-judged accusations. The Rule 17 Subpoena was not issued in bad faith and plainly seeks relevant documents important to Mr. Kwok's defense.

*Second*, USAO-SDNY claims that Mr. Kwok's bad faith is demonstrated by purported inconsistent positions between his Rule 17 Motion and his April 4 Letter. There is no inconsistency, however, in Mr. Kwok's position. In his Rule 17 Motion, Mr. Kwok stated that the materials sought by the Rule 17 Subpoena were "outside the parameters of what USAO-SDNY must search for." (Rule 17 Mot. at 2). That statement is true, because the Rule 17 Subpoena is *directed to another U.S. Attorney's Office* which Mr. Kwok has never claimed is part of the prosecution team. That is completely distinct from, and entirely consistent with, Mr. Kwok's position in the April 4 Letter where Mr. Kwok argues that USAO-SDNY is required to search for this information *in the files of the FBI-NY* because the *Bai* squad should be construed as part of the prosecution team, and thus within the USAO-SDNY's possession under settled law.

Mr. Kwok has been clear and vocal about his position with respect to the *Bai* material at FBI-NY, and nothing in his Rule 17 Motion is inconsistent with that position. Mr. Kwok's





conduct has been entirely in good faith. The Court has held that the *Bai* material is relevant to Mr. Kwok's defense. Accordingly, he is attempting to obtain those materials from either one of the two sources where those relevant material exists.

By contrast, the USAO-SDNY has been far from transparent about its own positions with respect to these materials.[5] Its refusal to clearly state whether it was even searching the FBI's files in any way, or for this material specifically, has needless delayed adjudication of this issue and pressed both the defense and the Court into the unfortunate position of having to resolve an issue about critical evidence just a few weeks before trial is slated to commence. Even accepting for the moment that this is no mere tactic, and the USAO-SDNY is genuinely confused and hesitant to adopt or disclose a firm position on the matter, this is no reason to allow the government to skirt its discovery obligations. "Trust in the fair administration of justice requires that prosecutors will resolve doubtful questions in favor of disclosure." *United States v. Nejad*, 521 F.Supp.3d 438, 446 (S.D.N.Y. 2021) (cleaned up); *see also United States v. Perryman*, 23 Cr. 117 (S.D.N.Y) Dkt. No. 95, attached as **Exhibit 4**.

*Third*, the USAO-SDNY argues that Mr. Kwok engaged in bad faith because he did not inform the USAO-SDNY that the Court had reserved judgement on the Rule 17 Subpoena. It is unclear precisely what the USAO-SDNY's complaint is—Mr. Kwok did exactly what he was directed to by the Court: serve the USAO-SDNY and USAO-EDNY with the Rule 17 Motion and related subpoena and inform them that the Court had directed them to respond by a certain date. In fact, the USAO-SDNY's allegation makes no sense. If the Court already had decided the motion and ruled on Rule 17 Subpoena, why would Mr. Kwok be serving the motion on USAO-SDNY and notifying them of the Court's deadline for the USAO-SDNY's response to it? Plainly, the government was being given an opportunity to respond to the motion. If the government was confused it could have cleared up that purported confusion by querying the Court, or responding in the alternative in its response. Instead, the USAO-SDNY chose to demand a copy of the Court's Order from Mr. Kwok's counsel, even though Mr. Kwok was not permitted to disclose or share the Order while it was under seal.

The USAO-SDNY's outrage is manufactured and meritless. Certainly, it provides no basis to withhold from production relevant information material to Mr. Kwok's defense.

---

[5] It is particularly ironic for the government – a party that has steadfastly refused to declare a position on the matter – to try to criticize Mr. Kwok for taking a clear and consistent position, namely, that the government must produce material relevant to his defense under either Rule 16 or Rule 17 of the Federal Rules of Criminal Procedure.





**CONCLUSION**

Mr. Kwok has a right at trial to present evidence to rebut the USAO-SDNY's allegations and, however much the government protests, the Court has already *explicitly* found that the *Bai* material is such evidence. Permitting the government to successfully play games and deny Mr. Kwok access to this critical evidence amounts to reversible error. *See Murray*, 736 F.3d at 659; *Jones*, 381 F.3d at 121. Instead, the Court must either direct the USAO-SDNY or the USAO-EDNY to immediately produce the *Bai* material to Mr. Kwok.

Respectfully submitted,

Sidhardha Kamaraju
E. Scott Schirick
Matthew S. Barkan
Daniel J. Pohlman
John M. Kilgard
Clare P. Tilton

Sabrina P. Shroff

*Attorneys for Defendant Ho Wan Kwok*