

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

April 15, 2024

**VIA ECF AND EMAIL**
The Honorable Analisa Torres
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re:    *United States v. Kwok, et al.*, S2 23 Cr. 118 (AT)

Dear Judge Torres:

      The Government respectfully writes in response to Kwok's April 14, 2024 letter. As set forth below, the Government has diligently complied with its discovery obligations in this matter, including making voluminous productions responsive to this Court's February 21, 2024 order granting, in part, Kwok's motion to compel (the "Order").[1] Moreover, the Court should deny the extraordinary relief sought by the defendant in his request to compel the Government to search FBI files unconnected to the prosecution team that investigated and charged the instant criminal case.

      *First*, to the extent the investigation into the charges in this case led the Government to acquire Rule 16 materials responsive to Order, those materials were produced to the defendant, including before the Court's Order was issued. At present, the Government's production of Rule 16 discovery gathered in this investigation is complete.[2] The Government will, of course, continue to produce any materials newly acquired in the course of its ongoing investigation.

      *Second*, 

---

[1] On February 21, 2024, this Court granted in part and denied in part Kwok's motion to compel certain discovery. As relevant here, the Court ordered the Government to produce records "within the prosecution's possession showing that [Kwok], his family, his co-defendants, or the corporate entities relevant to the indictment have been targeted by the CCP." (Dkt. 243, at 6.) The Order was clear that "[t]he Government's duty to search for materials discoverable under Rule 16 is [ ] limited to the materials within its possession." (Dkt. 243, at 6.) The Government has complied with that Order.

[2] As discussed in greater detail below, productions responsive to the Court's Order are ongoing, but near complete.



The reality of these productions fly in the face of the defendant's complaint that the Government "dribble[d] out" materials responsive to the Court's Order, *see* April 14, 2024 Letter at 3. Rather, the Government has undertaken a good faith, intensive effort to collect, review, and produce the substantial volume of materials in its possession that are responsive to the Court's Order.

*Third*, Kwok's complaint about the Bates number prefix "USAOCO" and the associated claim that the Government has hidden certain items in voluminous discovery are puzzling. The Government assigned that Bates prefix for its own tracking purposes, so it could easily identify materials that it produced that were derived from the ███████████████████ None of the materials obtained from other sources were produced with this prefix. More importantly, Kwok's claim that the Government "buried" recordings that the defense requested, which do not relate in any way to the ███████████████ is disingenuous. While those recordings were stamped with a standard Bates number prefix, the Government's cover letter specifically identified those recordings as "Recordings Requested by the Defense," listing the associated Bates numbers, and the recordings themselves were produced inside a folder named "Recordings Requested by the Defense." The Government has, at every stage, complied with its discovery obligations in good faith and made efforts to ensure discovery was produced to defense counsel promptly and in as organized a manner as possible. The production of these recordings, contrary to Kwok's assertions, is no exception.

*Fourth*, and most importantly, the Court should deny the extraordinary relief sought by the defendant in his request to require the Government to search the files of the FBI for the *Bai* materials, without regard to the fact that they are not in the possession of the prosecution team.

The Government has been clear from the outset that the materials underlying the *Bai* prosecution are not in its possession. In his letter to the Court, the defendant argues to the contrary, writing that "although it will not say it squarely to the defense or even the Court, the USAO-SDNY has not, and has no intention of making a serious and complete production of the *Bai* case file." April 14, 2024 Letter at 4. But the defendant has known for almost six months that the Government does not possess the *Bai* materials and would not be producing them. Indeed, on October 17, 2023, the Government advised Kwok, in a written letter, of exactly that:

> [W]e have provided materials we have received from prosecutors in the [EDNY] regarding the *Bai* case. The other materials and information derived from the *Bai* case that you requested are not in our possession.

Dkt. 171 (Kwok's Nov. 17, 2023 Motion to Compel), Ex. J (Oct. 17, 2023 Gov't Letter).[3]

The core of Kwok's claim, then, appears to be an assertion that because the case that led to the charges before this Court was investigated by one squad of the FBI, the Government must somehow be deemed to be in constructive possession of all materials that might be responsive to the Court's Order, related to any other case investigated by the FBI, including *Bai*. Notably, while Kwok's letter urges the Court to direct the Government to search the files of the FBI's New York Field Office ("NYFO"), the *Bai* case was, in fact, investigated by the Washington, D.C. office of the FBI.[4] Simply put, Kwok is wrong as a matter of law, not to mention common sense, that the entirety of the materials and information possessed by the NYFO of the FBI—or, for that matter, the Washington D.C. office of the FBI—is within the possession of the prosecution team responsible for this case. FBI's "New York Field Office is composed of over 2,000 agents, support staff, and task force members. It is the largest field office in terms of staff."[5] Imposing discovery obligations over, and imputing to knowledge of, such a vast array of individuals would impose exactly the kind of unworkable burden on the justice system that the prosecution team doctrine was designed to prevent. *See United States v. Hunter*, 32 F.4th 22, 37 (2d Cir. 2022) ("Limiting disclosure obligations to the 'prosecution team' prudently prevents a prosecutor from needing to search the 'whole-of-government' for possibly material information in myriad cases and controversies before the courts. Such an obligation would clearly be an unworkable encumbrance on the system of justice."). Indeed, to capture the *Bai* materials, even this vast extension of the

---

[3] The defendant's letter misstates the timing of certain developments in one other relevant respect. Specifically, Kwok suggests he sought the Rule 17 subpoena to EDNY because he received unsatisfactory answers to questions posed to the Government. *See* April 14, 2024 Letter at 3 ("With trial fast approaching and the government refusing to answer Mr. Kwok's most basic questions about its intentions, Mr. Kwok's counsel became concerned that USAO-SDNY would simply not search these files, continue to dribble out other materials, and leave Mr. Kwok with insufficient time to seek the Bai material elsewhere. To cut through this improper gamesmanship, Mr. Kwok submitted his Rule 17 Subpoena and Motion to the Court on March 5, 2024."). The defendant's recitation may sound compelling, but it is not what actually happened. Kwok first posed his questions to the Government on March 20—over two weeks *after* he had already filed with this Court (*ex parte* and under seal) his application for a Rule 17 subpoena to EDNY.

[4] The EDNY prosecutors have recently informed the undersigned of this fact. While the defendant's instant request concerns the *Bai* case, the EDNY prosecutors also noted ███████ ███████ Kwok's request is limited to materials related to the *Bai* case. However, any request that might relate to the production of materials from ███████ would fail for the same reasons set forth herein.

[5] https://www.fbi.gov/history/field-office-histories/newyork.

concept of the "prosecution team" would be insufficient, and Kwok's already unprecedented theory would need to be expanded even further to reach FBI's Washington Field Office, where the *Bai* case was investigated, and thus the undersigned's discovery obligations would cover the entirety of the FBI and its roughly 35,000 employees.[6] The impracticality of that alone is basis to reject Kwok's position.

While Kwok may argue that his request is limited to an order directing the Government to review just the *Bai* file, and not the entirety of the FBI's files, he has made no effort to demonstrate that the FBI agents who investigated the *Bai* case are, specifically, part of the prosecution team. Thus, if taken to its natural conclusion, the defendant's argument would require searching not just the *Bai* files but all FBI files that might have any materials responsive to the Court's Order. Indeed, Kwok cites the existence of an FBI-wide database to support his position. *See* April 14, 2024 Letter at 6 (suggesting that this investigation's case agents should be obligated to search and review the FBI's "central database"). If the existence of a central database alone were sufficient to render the entirety of the FBI part of any investigation's "prosecution team," then *every* case investigated by an FBI agent—no matter which particular FBI agent or agents actually conducted the investigation—would carry with it stultifying obligations to conduct a vast, paralyzing search through myriad case files derived from thousands of investigations conducted by the entirety of the FBI's 35,000 employees in field offices across the country. That is not the law, for good reason.

In any event, well-settled case law as to the application of prosecution team doctrine also makes clear that the entirety of the FBI's NYFO—not to mention the Washington Field Office—is not part of the prosecution team on this case. "Whether someone is part of the prosecution team depends on the level of interaction between the prosecutor and the agency or individual." *United States v. Meregildo*, 920 F. Supp. 2d 434, 440–42 (S.D.N.Y. 2013), *aff'd sub nom. United States v. Pierce*, 785 F.3d 832 (2d Cir. 2015). While "[t]here is no clear test to determine when an individual is a member of the prosecution team," *id.*, "it is clear that '[i]nteracting with the prosecution team, without more, does not make someone a team member.'" *United States v. Ingarfield*, No. 20 Cr. 146 (RA), 2023 WL 3123002, at *3 (S.D.N.Y. Apr. 27, 2023) (quoting *Meregildo* 920 F. Supp. 2d at 441). Rather, "[i]ndividuals who perform investigative duties or make strategic decisions about the prosecution of the case are considered members of the prosecution team, as are police officers and federal agents who submit to the direction of the prosecutor and participate in the investigation." *United States v. Barcelo*, 628 F. App'x 36, 38 (2d Cir. 2015). The entirety of the NYFO did not investigate, strategize, or submit to the undersigned's direction regarding this one case—and *none* of the *Bai* FBI agents did. *See, e.g.*, *United States v. Locascio*, 6 F.3d 924, 949 (2d Cir. 1993) (holding that reports made by FBI agents in the course of investigations apparently unrelated to the defendants' prosecutions should not be imputed); *United States v. Volpe*, 42 F. Supp. 2d 204, 221 (E.D.N.Y. 1999) (construing "government" narrowly and refusing under Rule 16 to require the prosecution to turn over material in possession of different prosecution team within same U.S. Attorney's office); *see also United States v. Morgan*, 302 F.R.D. 300, 304 (S.D.N.Y. 2014) ("the prosecution team does not include federal agents, prosecutors, or parole officers who are not involved in the investigation. And, even when

---

[6] https://www.fbi.gov/about/faqs.

agents are involved in the investigation, they are not always so integral to the prosecution team that imputation is proper" (quotation omitted)).

Accordingly, the Court should reject Kwok's impractical and unprecedented effort to expand the prosecution team. *See United States v. Alexandre*, No. 22 CR. 326 (JPC), 2023 WL 416405, at *13 (S.D.N.Y. Jan. 26, 2023) (noting "[t]he concern of the Second Circuit . . . that a 'monolithic view' of government would 'condemn the prosecution of criminal cases to a state of paralysis' applies with equal force in the Rule 16 context." (quotation omitted). To the extent that Kwok's motion seeks to require the undersigned, and the FBI agents assigned to this matter, to search the *Bai* case file, or any other materials not in their possession, it should be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: /s/
Micah F. Fergenson
Ryan B. Finkel
Justin Horton
Juliana N. Murray
Assistant United States Attorneys
(212) 637-2190 / 6612 / 2276 / 2314