**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> HO WAN KWOK, <br><br> *Defendant.* | Case No. 1:23-CR-118-1 (AT) |

### DEFENDANT HO WAN KOWK'S OPPOSITION TO THE GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY

Sidhardha Kamaraju
E. Scott Schirick
Matthew S. Barkan
Daniel J. Pohlman
John M. Kilgard
Clare P. Tilton
PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100
skamaraju@pryorcashman.com
sschirick@pryorcashman.com
mbarkan@pryorcashman.com
dpohlman@pryorcashman.com
jkilgard@pryorcashman.com
ctilton@pryorcashman.com

Sabrina P. Shroff
80 Broad Street, 19th Floor
New York, NY 10004
(646) 763-1490
sabrinashroff@gmail.com

*Attorneys for Defendant Ho Wan Kwok*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... iv

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT ...........................................................................................................3

    I.  MR. KWOK'S EXPERT DISCLOSURES COMPLY WITH RULE 16'S NOTICE REQUIREMENTS.................................................................................3

        A.  Mr. Kwok's Expert Disclosures Provide Sufficient Notice....................................3

        B.  In Any Event, Preclusion Is Not an Appropriate Remedy for Any Rule 16 Deficiency Asserted by the Government Here ........................................4

    II.  THE JURY SHOULD HEAR AND CONSIDER MR. DRAGON'S PROPOSED TESTIMONY .............................................................................6

        A.  Federal Rule of Criminal Procedure 16's "Notice" Provisions Do Not Prevent Mr. Dragon's Expert Testimony Because the Government Has Sufficient Notice of His Opinions and Qualifications in This Matter .......................................7

        B.  Mr. Dragon's Testimony is Relevant and Admissible.............................................8

    III.  THE JURY SHOULD HEAR AND CONSIDER MS. SKLAR'S PROPOSED TESTIMONY ...........................................................................11

        A.  Federal Rule of Criminal Procedure 16's "Notice" Provisions Do Not Prevent Ms. Sklar's Expert Testimony Because the Government Has Sufficient Notice of Her Opinions and Qualifications in This Matter.........................................11

        B.  Ms. Sklar's Testimony Is Relevant and Admissible.............................................13

    IV.  THE JURY SHOULD HEAR AND CONSIDER MR. BISHOP'S TESTIMONY ....14

        A.  Federal Rule of Criminal Procedure 16's "Notice" Provisions Do Not Prevent Mr. Bishop's Expert Testimony Because the Government Has Sufficient Notice of His Opinions and Qualifications in This Matter.........................................15

        B.  Mr. Bishop's Testimony is Relevant and Admissible ...........................................15

    V.  THE JURY SHOULD HEAR AND CONSIDER MR. DORAN'S TESTIMONY ....17

A.   Federal Rule of Criminal Procedure 16's "Notice" Provisions Do Not Prevent Mr. Doran's Expert Testimony Because the Government Has Sufficient Notice of His Opinions and Qualifications in This Matter...........................................................17

B.   Federal Rule of Evidence 403 Does Not Prevent Mr. Doran's Expert Testimony 19

CONCLUSION.....................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Chen-Oster v. Goldman, Sachs & Co.*,
    114 F. Supp. 3d 110 (S.D.N.Y. 2015)......................................................................................19

*Daubert v, Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)..........................................................................................6, 13, 17, 19

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)........................................................................................................19

*Marvel Characters, Inc. v. Kirby*,
    726 F.3d 119 (2d Cir. 2013)...........................................................................................14

*Nimely v. City of New York*,
    414 F.3d 381 (2d Cir. 2005)...........................................................................................19

*United States v. Adeniji*,
    31 F.3d 58 (2d Cir. 1994)..................................................................................................4

*United States v. Bankman-Fried*,
    No. 22 Cr. 673 (LAK) (S.D.N.Y.) ....................................................................................3

*United States v. Cruz*,
    363 F.3d 187 (2d Cir. 2004)........................................................................................3, 17

*United States v. Cruz*,
    No. 21 Cr. 0502 (PMH), 2022 WL 17586274 (S.D.N.Y. Dec. 12, 2022) .............................18

*United States v. Hwang*,
    No. 22 Cr. 240 (AKH) (S.D.N.Y.) ....................................................................................4

*United States v. McMahon, et al.*,
    No. 21 Cr. 265 (PKC) (S.D.N.Y.)...................................................................................22

*United State v. McMahon*, No. 21 Cr. 265 (PKC), 2024 WL 896838
    (E.D.N.Y. Mar. 1, 2024)................................................................................................22

*United States v. Mulder*,
    273 F.3d 91 (2d Cir. 2001)..........................................................................................9, 14

*United States v. Nektalov*,
    No. S203 Cr. 828 (PKL), 2004 WL 1469487 (S.D.N.Y. June 30, 2004) .............................21

*See, e.g., United States v. Ortiz*, 112 F.3d 506,
  1997 WL 225108 (Table) (2d Cir. May 5, 1997) ..................................................16

*United States v. Phillips*,
  No. 22 Cr. 138 (LJL), 2023 WL 6620146 (S.D.N.Y. Oct. 10, 2023) ........................................9

*United States v. Phillips*,
  No. 22 Cr. 138 (LJL) (S.D.N.Y.) ..................................................4

*United States v. Ray*,
  583 F. Supp. 3d 518 (S.D.N.Y. 2022)..................................................6, 13

*United States v. Rittweger*,
  524 F.3d 171 (2d Cir. 2008)..................................................8

*United States v. Weber*,
  843 F. App'x 364 (2d Cir. 2021) ..................................................8, 9

**Statutes and Rules**

Fed. R. Crim. P. 16 .................................................. *passim*

Fed. R. Evid. 403 .................................................. *passim*

Fed. R. Evid. 702 ..................................................17, 19, 21

## PRELIMINARY STATEMENT

In its continued effort to force a one-sided trial in which Mr. Kwok is denied a meaningful opportunity to defend himself, the government seeks to exclude each of Mr. Kwok's experts. The government's motion (Dtk. No. 272, the "Govt. Expert Mot.") to exclude expert testimony, however, is based on an incorrectly broad reading of the expert disclosure requirements and an impermissibly cramped view of what is relevant at trial. None of the government's grounds for excluding Mr. Kwok's proposed expert testimony have any merit, and the Court should deny the government's motion.

Mr. Kwok's experts each target specific allegations in the Indictment, and offer critical evidence undercutting those allegations. Specifically, Mr. Kwok has noticed four experts. *First*, Mr. Kwok intends to call Raymond Dragon, a valuation expert who will testify that using accepted standard valuation methodology, it was reasonable to value GTV at $2 billion, as Mr. Kwok did. Such testimony directly undercuts the government's claim that Mr. Kwok's valuation was a fraudulent misrepresentation, rather than a good faith expression of an opinion. *Second*, Mr. Kwok intends to call Maggie Sklar, an expert on cryptocurrencies and virtual currency exchanges, who will testify about the manner in which cryptocurrencies, the block chain, and virtual currency exchanges typically operate. That testimony will squarely undermine the government's allegation that H-Coin and H-Dollar are not true cryptocurrencies. *Third*, Mr. Kwok intends to call Thomas Bishop, an expert in forensic accounting who will testify about patterns of financial transactions related to the companies that were purportedly involved in the alleged Farm Loans scheme. That testimony will attack the government's claim that funds from the Farm Loans program can be traced to payments made for personal expenses for Mr. Kwok and his family. *Fourth*, Mr. Kwok intends to call Paul Doran, an expert on the Chinese Communist Party (the "CCP") and the tactics

it employs to silence its political enemies.  That testimony helps to contradict a number of the government's allegations, including that: Mr. Kwok purportedly intentionally overvalued GTV, the Mahwah Facility was purchased for Mr. Kwok's personal benefit, Mr. Kwok was not a true dissident, Mr. Kwok needed money and thus had a motive to commit the fraud, Mr. Kwok used multiple cellphones to avoid detection by U.S. law enforcement, and Mr. Kwok used multiple corporate entities and bank accounts to launder fraud proceeds.

Accordingly, there can be no doubt about the relevance of Mr. Kwok's proposed expert testimony.  The government's primary argument with respect to Mr. Kwok's experts are that their disclosures supposedly do not provide sufficient notice.  The government ignores, however, that the level of detail in Mr. Kwok's expert disclosures mirrors the level of specificity found in recent government expert disclosures—the government can hardly be heard to complain about notice when it adopts the same approach with respect to its own disclosures.  Indeed, there is no basis for the government's gripes here because Mr. Kwok's expert disclosures provide all of the information required under Rule 16.  Moreover, the government makes feeble arguments about the relevance of Mr. Kwok's proposed expert testimony, or the supposed prejudice that would result from it, but Mr. Kwok's expert testimony is directly and highly probative of critical issues that the jury will have to decide.  The government's motion is nothing more than an attempt to keep admissible expert testimony that damages its case from the jury, and it should be denied.

## <u>ARGUMENT</u>

### I.    MR. KWOK'S EXPERT DISCLOSURES COMPLY WITH RULE 16'S NOTICE REQUIREMENTS

#### A.    Mr. Kwok's Expert Disclosures Provide Sufficient Notice

For each of Mr. Kwok's proposed experts, the government complains that the expert disclosures are insufficient under Fed. R. Crim. P. Rule 16(b)(1)(C). Rule 16 requires that, for each expert witness, a defendant provide:

> . . . a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief; the bases and reasons for them; the witness's qualifications, including a list of publications authored in the previous 10 years; and a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

Fed. R. Crim. P. R. 16(b)(1)(C)(iii). The purpose of the rule is to "provide the opponent with a fair opportunity to test the merits of the expert's testimony through focused cross-examination." *United States v. Cruz*, 363 F.3d 187, 196 n.2 (2d Cir. 2004).

Mr. Kwok will address the sufficiency of each of his experts' notices in more detail below. But as a general matter, perhaps the best support for their sufficiency is that they mirror expert notices disclosed *by the government* in recent cases. For example, in the its recent case against Samuel Bankman-Fried, the government provided a four-page disclosure for expert Prof. Peter Easton, whose opinions were put forth by general subject matter, and where the materials relied on were not identified by Bates number, but rather by broad category, such as "bank account records and the general ledger files [and] database records." *United States v. Bankman-Fried*, No. 22 Cr. 673 (LAK) (S.D.N.Y.), Dkt. 235-1, Barkan Decl., Ex. K.[1]

---

[1] References to the "Barkan Decl." refer to the accompanying Declaration of Matthew S. Barkan dated April 17, 2024.

Similarly, in *United States v. Hwang*, No. 22 Cr. 240 (AKH) (S.D.N.Y.) the government's expert disclosures simply identified broad areas of proposed testimony such as "the differences between equity securities and securities based swaps," Dkt. 106-2, Barkan Decl., Ex. L at 5, and "how securities exchanges, such as NASDAQ and NYSE, function." *Id.* at 6.

In *United States v. Phillips*, No. 22 Cr. 138 (LJL) (S.D.N.Y.), the government's disclosures were as short as two pages, and did nothing more than identify incredibly broad areas of testimony, such as "[the expert] will explain basic political information about the Republic of South Africa," Dkt. 43-2, Barkan Decl., Ex. M at 4; "[t]he foreign-exchange market is a capital market in which people exchange one currency for another currency," *id.* at 17; and "different methods of placing orders allocate risk differently between the parties in the transaction." *Id.* at 30.

Having provided such notices itself, the government cannot properly or successfully contend that this form of notice violates Rule 16, and its motion to preclude on that basis should be rejected by the Court.

> **B.      In Any Event, Preclusion Is Not an Appropriate Remedy for Any Rule 16 Deficiency Asserted by the Government Here**

Even assuming, purely for the sake of argument, that the government did have a reasonable complaint about the level of notice in Mr. Kwok's expert disclosures, its proposed remedy—preclusion of those experts—is unwarranted and inappropriate.

The Court has substantial discretion in determining a remedy for a Rule 16 violation. *See* Fed. R. Crim. P. 16(d)(2). But any such relief should be narrowly tailored, with the key question for the Court being whether the "nondisclosure results in substantial prejudice" to the other party. *United States v. Adeniji*, 31 F.3d 58, 64 (2d Cir. 1994). Here, the government has not, and cannot, articulate any such "substantial prejudice" to it. Accordingly, no relief should be imposed.

Further, excluding an expert—the government's proposed sanction—is not an appropriate

sanction where the government has all it needs to prepare a cross-examination or retain a rebuttal expert. In this regard, Rule 16 expressly provides that the parties may supplement and correct their disclosures, *see* Fed. R. Crim. P. 16(b)(C)(vi). The purported inadequacies raised by the government in its motion, even if credited, can readily be cured by additional disclosure. Thus, at most, the Court should require that the Mr. Kwok's expert disclosures be supplemented. This is particularly true here, given that Mr. Kwok's proposed experts each reserved the right to supplement his/her disclosure, and given the government's continuing production of Fox Hunt and other Rule 16 materials. (*See* Gov't Expert Mot., Exs. A-D, Dkt. Nos. 272-1–272-4.) Any effort to go beyond supplementation and preclude Mr. Kwok's experts should be summarily rejected by the Court.

Preclusion under Rule 16 is truly a last resort. In *United States v. Asainov*, 19 Cr. 00402 (NGG)(SJB) (E.D.N.Y. Jan. 18, 2023), Dkt. No. 125, for example, the government failed even to disclose that it intended to call a "sniper" expert until 13 days before the start of trial (19 days because of a six-day trial delay of trial for other reasons). *Id.* at 3-5. The defendant moved to exclude the newly disclosed expert, because the government's late disclosure prevented him from being able to "procure his own expert to vet the Government's sniper-related testimony on short notice." *Id.* at 4-5. Judge Garaufis declined to preclude the expert. Rather, the Court held that, while the notice was untimely, the total of 19 days available before trial "gave [the defendant] sufficient time to do this [procure an expert], and in turn, avoid prejudice resulting from the Government's untimely disclosure." *Id.* at 5.

Rather than preclusion, supplementation is the preferred method. In *United States v. Kaufman*—the only case cited by the government regarding Rule 16 notice (Govt. Expert Mot. at 6, 11, 15)—the Court gave the defendant two separate opportunities to supplement the Rule 16

disclosure of his expert (and held a *Daubert* hearing) before excluding that expert's testimony from trial. No. 19 Cr. 504 (LAK), 2021 U.S. Dist. LEXIS 170367, at *41-42 (S.D.N.Y. Sept. 8, 2021). Similarly, in *United States v. Ray*, the Court declined to order any relief, holding that the government gave "adequate notice" of an expert "for the most part" when considering the original disclosure, a supplemental disclosure, and an oral proffer made by the government during argument on the motion to preclude the expert. No. Cr. 110 (LJL), 2022 U.S. Dist. LEXIS 5531, at *15 (S.D.N.Y. Jan. 11, 2022).

Finally, *United States v. Mahaffy* stands in direct contrast to the modest circumstances at hand. In *Mahaffy*, the drastic remedy of preclusion was imposed, but only because the defendant did not make *any* disclosure regarding his proposed expert's testimony "until the day the trial commenced." *See* No. 05 Cr. 613 (S-3) (ILG), 2007 WL 1213738, at *3 (E.D.N.Y. Apr. 24, 2007). The court also noted that the proposed testimony was "entirely cumulative of testimony that has already been offered by a variety of witnesses over the past five weeks of trial." *Id.* The government identifies no case where a court has wholesale excluded expert testimony based solely on an allegedly insufficient disclosure, and the Court should not do so here.[2]

## II.   THE JURY SHOULD HEAR AND CONSIDER MR. DRAGON'S PROPOSED TESTIMONY

Mr. Kwok intends to call Raymond Dragon, the Director of Business and Intellectual Property Valuation at Anchin Litigation, Forensic and Valuation Services, to opine on the valuation of GTV—a topic the government has placed squarely at issue by alleging that Mr. Kwok, on or about August 2, 2020, falsely stated that GTV had a market value of $2 billion. (Indictment

---

[2] While the defense expert disclosures are sufficient under Rule 16, should the Court find otherwise in some regard, it should give Mr. Kwok an opportunity to supplement them. Supplementation would cause no prejudice to the government, and expert disclosures are routinely supplemented or amended in the lead-up to trial.

¶ 40(e).)  In preparing to opine on the value of GTV, Mr. Dragon reviewed various materials, "including the valuation contained in a report prepared by Alvarez and Marsal Valuation Services, LLC dated December 15, 2020 (the 'A&M Report')."

### A. Federal Rule of Criminal Procedure 16's "Notice" Provisions Do Not Prevent Mr. Dragon's Expert Testimony Because the Government Has Sufficient Notice of His Opinions and Qualifications in This Matter

As with Mr. Kwok's other proposed experts, the government seeks to exclude portions of Mr. Dragon's proposed testimony on procedural grounds, alleging that "to the extent Mr. Dragon will offer opinions about matters besides the A&M Report, [the] disclosure is woefully inadequate." (Govt. Expert Mot. at 17.)  The government is wrong; Mr. Dragon's proposed testimony is more than adequately described in Mr. Kwok's disclosure.  Mr. Kwok's disclosure notes that Mr. Dragon will testify regarding not only the A&M Report, but also, "valuation practices, and the processes typically used to evaluate the valuation of target entities," "the valuation of early stage companies, including . . . the valuation of pre-revenue and pre-operation companies," "the GTV private placement transaction," and the "various drivers for the valuation of GTV, including its market potential given the difficulties competing services may face."  (Govt. Expert Mot., Ex. D, at 2-3.)  Most importantly, Mr. Dragon will testify "that a valuation for GTV of $2 billion dollars was reasonable based upon information available in 2020."  (*Id.*)

Mr. Dragon's disclosure lists the specific entities he assessed, and states he assessed those entities—and performed a valuation analysis of GTV—using both discounted cash flow and market multiple methodologies.  (Govt. Expert Mot. at 3.)  Lastly, Mr. Dragon made clear that his analysis was based on "materials submitted to the SEC on behalf of GTV" among other sources. (*Id.* at 3)  Plainly, the government has been provided a statement of the opinions that Mr. Kwok will elicit from Mr. Dragon, Mr. Dragon's bases and reasons for those opinions, and Mr. Dragon's

qualifications and testifying history.  That is all that is required by Rule 16, and the government's motion on this ground should be denied.

### B.  Mr. Dragon's Testimony is Relevant and Admissible

The government additionally seeks to exclude Mr. Dragon's testimony because, based on the government's self-serving read, Mr. Dragon's areas of opinions derive largely from the A&M Report, which the government contends must be excluded under Federal Rule of Evidence Rule 403.  Specifically, the government asserts that "[because] the A&M Report was not prepared at the time of [Mr.] Kwok's statements during the GTV Private Placement … [it] could not have been relied on by Kwok in making those statements."  (Govt. Expert Mot. at 18.)  As an initial matter, the government's argument is temporally confused, because the alleged misstatement concerning GTV's valuation *also occurred after the GTV Private Placement*.  Thus, it is unclear what the government's point is.  Nevertheless, Mr. Dragon's use of the A&M Report—a valuation prepared close in time to the alleged misstatement—as a starting point for his valuation analysis is neither novel nor unusual.

Moreover, the government ignores that Mr. Kwok is entitled to admit independent, objective evidence showing that his beliefs are objectively reasonable because such evidence helps demonstrate that he truly holds those beliefs.  *See, e.g., United States v. Weber*, 843 F. App'x 364, 367 (2d Cir. 2021) ("While a defendant's good-faith reason need not be objectively reasonable, the objective reasonableness of a claimed belief may be probative of whether the defendant held the belief in good faith.").  That includes evidence of which a defendant is not even aware at the time of the alleged misstatement, such as the A&M Report.  *See United States v. Rittweger*, 524 F.3d 171, 181 (2d Cir. 2008) (finding that defendant was entitled to introduce evidence that

supported his belief that he was the sole signatory on certain accounts, including evidence about which he was unaware).

It also includes the introduction of expert testimony. In *United States v. Onumonu,* the Second Circuit expressly found that the defendant was entitled to introduce expert testimony about methods of smuggling diamonds from Africa to support the defendant's asserted belief that he was smuggling diamonds rather than narcotics. 967 F.2d 782, 787 (2d Cir. 1992); *see also United States v. Phillips*, No. 22 Cr. 138 (LJL), 2023 WL 6620146, at *4 (S.D.N.Y. Oct. 10, 2023) ("And while the Government is correct that Defendant could not have known with absolute certainty what the USD/ZAR exchange rate would be in advance, evidence that corroborates the reasonableness of the legitimate investment thesis Defendant has proffered for his trades makes it more probable that he traded on that basis.") (cleaned up). The same is true here. Mr. Kwok is entitled to argue that he valued GTV at $2 billion in good faith, and he is allowed to introduce expert testimony through Mr. Dragon that shows his belief was objectively reasonable. *See Onumonu*, 967 F.2d at 787; *see also Weber*, 843 F. App'x at 367.

The government next argues that testimony by Mr. Dragon would "simply transmit hearsay to the jury." (Govt. Expert Mot. at 18.) As an initial matter, "expert witnesses can testify to opinions based on hearsay or other inadmissible evidence if experts in the field reasonably rely on such evidence in forming their opinions." *United States v. Mulder*, 273 F.3d 91, 102 (2d Cir. 2001). The government does not and cannot contest the valuation experts "reasonably rely" on valuation reports and cash flow information about companies in trying to arrive at a value for the company. As a result, the government's hearsay objection to Mr. Dragon's testimony is entirely specious.

Moreover, Mr. Dragon would not be simply reading the A&M Report, or offering it, on its own, for the statements contained in the report. Instead, as specified in Mr. Dragon's disclosure,

he will testify regarding (i) his own analysis of the comparator companies identified in the A&M Report, (ii) his consideration of the valuation methods used in that report, (iii) his own view of GTV's market potential and, (iv) his own independent opinion that "a valuation of GTV of $2 billion dollars was reasonable based upon information available in 2020." There is no hearsay in those opinions—Mr. Dragon is simply relaying that based on his expertise, standard valuation methodologies would substantiate Mr. Kwok's opinion that a $2 billion valuation for GTV at the relevant time was reasonable, which would thus be evidence that Mr. Kwok was rendering a good faith opinion.

The government offers no explanation why it believes Mr. Dragon must blind himself and actively avoid considering a valuation analysis performed by a reputable firm within months of Mr. Kwok's alleged misstatement. Similarly groundless is the government's assertion that the A&M Report is irrelevant because it was prepared in the context of an SEC investigation. Mr. Dragon's disclosure makes no reference to the SEC investigation beyond that he considered the materials submitted to the SEC in connection with the A&M Report—*i.e.*, its factual support. And Mr. Dragon offers no opinion regarding the SEC investigation (and would have no reason to offer such an opinion), thus mooting the government's assertion that Mr. Dragon's testimony would "pose[] a substantial risk of confusing the jury." (Govt. Expert Mot. at 18.)

Finally, the government's contention that Mr. Dragon failed to adequately disclose other areas of testimony, including his proposed testimony on "valuation practices, and the processes typically used to evaluate the valuation of target entities" is undercut by the plain language of the disclosure. (*Id.* at 19.) Assuredly it would be proper—and useful—for Mr. Dragon to explain to the jury how valuation analyses are performed to assist the jury's understanding of his testimony, and to provide proper context for his testimony regarding the specific valuation methods used by

Alvarez & Marsal in authoring the A&M Report.  (*See* Govt. Expert Mot., Ex. D, at 2-3.)  In fact, if Mr. Dragon did not explain the valuation practices and analyses that he was using to support his view as to the reasonableness of Mr. Kwok's GTV valuation, then the government would likely have attacked such testimony as without foundation or basis in a reasonable methodology.  The Court should permit the jury to consider Mr. Dragon's testimony.

### III.   THE JURY SHOULD HEAR AND CONSIDER MS. SKLAR'S PROPOSED TESTIMONY

As set forth in Mr. Kwok's disclosure, Maggie Sklar is the former Senior Counsel and Policy Advisor to Chairman J. Christopher Giancarlo of the U.S. Commodity Futures Trading Commission.  Mr. Kwok intends to call her to opine on cryptocurrency, blockchain technology, and cryptocurrency exchange issues, including specifically the Himalaya Exchange, and the two tokens at issue in this case, the Himalaya Dollar ("HDO") and Himalaya Coin ("HCN").  This testimony directly relates to one of the allegedly fraudulent schemes charged in the Indictment, and to a specific disputed issue of fact repeatedly identified by the government:  namely, whether HCN and HDO were "real cryptocurrencies" capable of being "recorded on a 'blockchain.'"  (Ind., ¶ 19(e).)

#### A.   Federal Rule of Criminal Procedure 16's "Notice" Provisions Do Not Prevent Ms. Sklar's Expert Testimony Because the Government Has Sufficient Notice of Her Opinions and Qualifications in This Matter

The government mistakenly contends that Ms. Sklar's disclosure "contains nothing more than topics about which she is to testify and provides no explanation, at all, about what her opinions are (if any)."  (Govt. Expert Mot. at 6.)  To the contrary, the disclosure notes that Ms. Sklar may "opine on the characteristics of HDO and HCN as cryptocurrencies;" "what stablecoins are and how they support cryptocurrency and exchange transactions," how cryptocurrency wallets work; the specific workings of the Himalaya Exchange; and the "actual use of HDO to purchase goods."

(Govt. Expert Mot., Ex. A, at 2-3.)  Such topics clearly provide notice that Ms. Sklar's testimony will support that HDO and HCN are in fact "real" cryptocurrencies.

The government's related contention—that it lacks notice of how Ms. Sklar reached any conclusions regarding HDO and HCN as cryptocurrencies—is equally baseless.  As disclosed, Ms. Sklar reviewed: the whitepapers for HDO and HCN; "records related to the Himalaya Exchange's custodial arrangements and capabilities[; and other] documents related to work performed on behalf of the Himalaya Exchange."  (Govt. Expert Mot., Ex. A, at 3.)  Ms. Sklar additionally notes that she reviewed "documents indicating the actual use of HDO to purchase goods."  (*Id.*)  Based upon Ms. Sklar's analysis of these records, the disclosure specifically states that she is prepared to "opine on the characteristics of HDO and HCN **as cryptocurrencies**."  (*Id.* at 2.)  That is a relevant issue because the government mistakenly and confusingly argues that HCN and HDO are not real cryptocurrencies based on some rather basic errors about cryptocurrencies and virtual currency exchanges.  Thus, the subject area of Ms. Sklar's planned testimony—the characteristics of HDO and HCN as cryptocurrencies—is a product of the government's misunderstandings, not any lack of specificity on the part of Ms. Sklar.[3]

Similarly, the government's complaint that the disclosure does not provide a description of the "analysis . . . performed" misconstrues Ms. Sklar's proposed testimony and the basis for it. (Govt. Expert Mot. at 8.)  Ms. Sklar is not offered as a scientific expert; rather, Ms. Sklar, a former regulator with more than a decade of experience analyzing cryptocurrencies and cryptocurrency trading, will provide helpful background on cryptocurrencies and cryptocurrency exchanges and

---

[3] Indeed, nowhere in the government's expert disclosure does the government's proposed expert, Prof. Amin Shams, specify what "characteristics" of cryptocurrencies are determinative of whether a token is "real" or not.  Thus, the government's own disclosure and expert fail the government's contrived test.

explain why, based on her review of the record, it is reasonable to conclude that HDO and HCN are, in fact, cryptocurrencies.  Other judges in this judicial district have permitted expert testimony on exactly these issues.  For example, in *United States v. Chastain*, the cryptocurrency expert was permitted to provide "general testimony about the technologies and steps that [the defendant] used (and did not use) in the transactions at issue; whether or to what extent these technologies and steps do (or do not) conceal one's identity and conduct; and common practices with respect to such technologies (such as the use of multiple cryptocurrency 'wallets' and 'wallet addresses')".  No. 22 Cr. 305 (JMF), 2023 WL 2966643, at *9 (S.D.N.Y. Apr. 17, 2023).  No mathematical or scientific analysis is required for such testimony.  *See*, *e.g.*, *United States v. Ray*, 583 F. Supp. 3d 518, 533 (S.D.N.Y. 2022) ("[n]ot every expert admissible under *Daubert* need rely on a method that conforms with 'the exactness of hard science methodologies'").  Ms. Sklar's depth of relevant experience, and her review of relevant material, provide more than sufficient support for her proposed expert testimony.

### B.  Ms. Sklar's Testimony Is Relevant and Admissible

The government's arguments for excluding specific portions of Ms. Sklar's proposed testimony fare no better.  The government contends that Ms. Sklar is, somehow, being offered to opine on questions of law.  (*Compare* Govt. Expert Mot., Ex. A, *with* Govt. Expert Mot. at 9.)  She is not.  Ms. Sklar will opine on the typical practices of a cryptocurrency exchange.  While some of those practices have developed in light of a "lack of comprehensive regulation of cryptocurrency exchanges" (Govt. Expert Mot., Ex. A, at 2), that fact does not turn Ms. Sklar into a "law" expert— she continues to be an expert in the cryptocurrency industry who will testify about ways in which transactions often operate in that industry.  Likewise, Ms. Sklar will not be opining on "whether the defendant did or did not have a mental state."  (Govt. Expert Mot. at 10.)  As shown by her

disclosure, Ms. Sklar will be offering expert testimony related to questions of fact, not law. While that opinion may be used as proof of Mr. Kwok's good faith belief with respect to the statements he made about HDO and HCN, *see Onumonu*, 967 F.2d at 787, it is still not testimony *about* Mr. Kwok's state of mind.

Nor will Ms. Sklar impermissibly opine on the basis of hearsay.  As explained above, Ms. Sklar is entitled to rely on hearsay.  *See Mulder*, 273 F.3d at 102; *see also Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013).  But moreover, none of the topics on which Ms. Sklar is offered as an expert will require her to simply "relay hearsay to the jury."  Rather, Ms. Sklar will (1) provide helpful background on the cryptocurrency industry and relevant cryptocurrency practices and (2) provide her analysis of key records produced in this case.  Contrary to the government's assertions, such information is *directly* relevant in this case, in light of the government's position that HCN and HDO are not "real cryptocurrencies" because, for example, they did not have significant on-chain activity or traded through "credits."  (Ind., ¶ 18.)

## IV.    THE JURY SHOULD HEAR AND CONSIDER MR. BISHOP'S TESTIMONY

Mr. Kwok intends to call Mr. Bishop, a former Special Agent in the IRS's Criminal Investigative Division and Certified Fraud Examiner, regarding certain flows of funds during the period of 2014 through 2023, including, specifically, flows of funds related to the Farm Loan Program—one of the four purportedly fraudulent schemes at the heart of the Indictment.[4]

---

[4] Mr. Bishop's disclosure also notes that he is prepared to offer testimony regarding an assessment of redemption activity reflected in bank records of the Himalaya Exchange, as confirmed by additional independent analysis.  The government does not appear to challenge this testimony.

**A. Federal Rule of Criminal Procedure 16's "Notice" Provisions Do Not Prevent Mr. Bishop's Expert Testimony Because the Government Has Sufficient Notice of His Opinions and Qualifications in This Matter**

Mr. Bishop's Rule 16 disclosure is more than adequate, providing a list of the entities his analysis focused on (the "Operating Entities"), and explaining his process in accessing and categorizing outflows from the Operating Entities into the categories of Personal Expenses, Political Movement Expenses, and Uncategorized Expenses.

Misunderstanding certain language in Mr. Bishop's disclosure, the government contends that the disclosure "entirely omits the *methodology* that Mr. Bishop has used to determine what constitutes a 'Political Movement Expense'" and further, argues that Mr. Bishop's testimony should be excluded as an expert in political movements or their expenses.  (Govt. Expert Mot. at 15-16.)  But Mr. Bishop is not being offered as an expert in political movement expenses.  Mr. Bishop is testifying as an expert forensic accountant, and the proper methodology in question— that is the specific application of his expertise—is in the application of commonly used accounting and fraud analysis exercises, not assessing "political movements."  The government, of course, is always free to cross-examine him about how he applied his expertise and accounting principles to determine what constitutes a "political movement" expense.  But when it comes to a matter of expertise, the government cannot seriously contend that a former senior IRS officer who was once responsible for conducting, among other things, transnational tax investigations, lacks relevant expertise in the analysis and classification of business and personal expenses.

**B. Mr. Bishop's Testimony is Relevant and Admissible**

Taken to its natural conclusion, the government's argument—that Mr. Bishop can only offer accounting opinions limited to specific *types* of enterprises—ultimately would preclude any

expert testimony from accountants in this matter.[5]  Regardless, Mr. Bishop is being offered as an expert because, based on his experience with the IRS and as a Certified Fraud Examiner, he is prepared to render opinions regarding the Operating Entities, including the pattern of transactions present across the accounts over time, the nature and quantum of relevant inflows, and the nature and quantum of relevant outflows.  (Govt. Expert Mot., Ex. C, at 1-2.)  Testimony about patterns of financial transactions and the implications of those patterns is no different than testimony routinely offered by the government through purported money laundering experts.  *See, e.g., United States v. Ortiz*, 112 F.3d 506, 1997 WL 225108 (Table), at *16-17 (2d Cir. May 5, 1997) (upholding admission of expert testimony of IRS agent about patterns common in money laundering transactions).  Given that this testimony goes beyond merely providing a summary of the relevant bank records, it is the proper province of expert opinion testimony.

Mr. Bishop's testimony is also directly responsive to the government's allegations concerning the Farm Loans program.  The Indictment charges Mr. Kwok with misappropriating loan proceeds for the benefit of him and his family.  To prove that allegation, the government apparently intends to call Paul Hinton to trace certain fund flows.  Mr. Bishop will respond to Mr. Hinton's testimony, and illustrate for the jury how the patterns of those fund flows undercuts the government's argument that the Farm Loans monies went to Mr. Kwok and/or his family.  Such testimony is highly relevant—indeed, in its other motions in *limine*, the government has described this purported misappropriation as a core piece of its proof on the Farm Loans counts.  (*See* Dkt. No. 273, Govt. MIL, at 44 (discussing alleged misappropriation of Farm Loan proceeds).)

---

[5] The government's position seems to be motivated not by any serious concern it can raise with Mr. Bishop or his proposed testimony, but rather by an attempt to avoid calling its proffered accountant, Mr. Paul Hinton, as an expert.

**V.      THE JURY SHOULD HEAR AND CONSIDER MR. DORAN'S TESTIMONY**

The government contends that Mr. Doran's testimony should be excluded from trial because (i) his expert notice "falls far short of the requirements of Rule 16(1)(C); and (ii) his proposed testimony "risks confusing the issues before the jury" in violation of Fed. R. Evid. 403. (Govt. Expert Mot. at 11.)  The government is twice wrong, and its motion should be denied.  The jury should be permitted to hear and consider the expert testimony of Mr. Doran—which the government concedes is proper expert testimony under Fed. R. Evid. 702 and *Daubert v, Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)—as part of determining Mr. Kwok's guilt or innocence of the charges against him.

**A.      Federal Rule of Criminal Procedure 16's "Notice" Provisions Do Not Prevent Mr. Doran's Expert Testimony Because the Government Has Sufficient Notice of His Opinions and Qualifications in This Matter**

Federal Rule of Criminal Procedure 16 is a "notice" provision that ensures neither party practices trial by ambush.  *See* Notes of Advisory Committee on Rules—2022 Amendment of Rule 16 (stating that Rule 16 was amended to "ensure that parties receive adequate information about the content of the witness's testimony and potential impeachment").  All that is required under Rule 16 is that disclosure be made "sufficiently before trial to provide a fair opportunity" for the receiving party to meet the disclosing party's evidence.  *See* Fed. R. Crim. P. 16(a)(1)(G)(ii); *see also Cruz*, 363 F.3d at 196 n.2 (noting the purpose of Rule 16 is to "provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination").  The government has had fair notice of Mr. Doran's opinions and qualifications since April 1, 2024. *See* Govt. Expert Mot., Ex. B, Dkt. No. 272-2.

The April 1, 2024 Doran disclosure provides the government with (i) a statement of Mr. Doran's opinions; (ii) a disclosure of the materials and bases relied upon by him in reaching those

opinions; and (iii) a copy of his CV.[6]  Given this, and the uncontestable fact that the government has known for many months that Mr. Kwok intended to present evidence regarding Operation Fox Hunt and other CCP influence operations as part of his defense at trial, the government has suffered no surprise or ambush at trial. Indeed, the government does not even claim that it has been ambushed. Under such circumstances, Rule 16 is an improper basis for excluding Mr. Doran's testimony from trial. *See United States v. Cruz*, No. 21 Cr. 0502 (PMH), 2022 WL 17586274, *4 n.3 (S.D.N.Y. Dec. 12, 2022) (listing cases where expert notice approximately four weeks before trial was found to be timely).

The government contends that the opinions provided in the Doran disclosure is not sufficiently "tailored to address issues related to the defendants in this case."  Govt. Expert Mot. at 11.  The government is wrong.  The 28 topics identified in the Doran disclosure give fair notice that Mr. Doran will be testifying about how the CCP and its various organs (*e.g.*, Ministry of State Security (MSS), Ministry of Public Security (MPS) and others) are tasked with the repression of dissidents overseas generally, and perforce Mr. Kwok in particular. *See* Doran Disclosure at 1-4. Thus, regarding Operation Fox Hunt and Operation Skynet, Mr. Doran will be discussing its objectives; the roles and responsibilities of the relevant PRC government entities; how and why its targets are chosen; and the steps and methods taken to achieve the goals of those operations; the effect of these operations on their victims. *See id.* at topics 7, 11, 12, 13, 17, 18, 23, 25, 26, 28. Simply put: sufficient notice has been provided; there is no "ambush" here.

---

[6] In his disclosure, Mr. Doran included no "list of other cases in which the witness has testified in the past four years" in the Doran disclosure (Fed. R. Crim. P. 16(b)(C)(iii)), because he has provided none.

For all these reasons, the Court should find that the government has sufficient notice of Mr. Doran's anticipated testimony, and its motion to preclude Mr. Doran on this ground should be denied.

B.   **Federal Rule of Evidence 403 Does Not Prevent Mr. Doran's Expert Testimony**

Courts are to adhere to a "liberal standard of admissibility for expert opinions." *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005), beginning with "a presumption that expert evidence is admissible," *Chen-Oster v. Goldman, Sachs & Co.*, 114 F. Supp. 3d 110, 115 (S.D.N.Y. 2015) (citing *Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir. 1995)). While the Court functions as a "gatekeeper," it is not a fact finder, and is not tasked with deciding whether an expert is right or wrong. *Daubert*, 509 U.S. at 596-597; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). The Court merely ensures that any expert testimony proffered "both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.

Here, there is no question that Mr. Doran's proffered testimony is relevant and reliable, readily meeting the *Daubert* standard as memorialized in Fed. R. Evid. 702. As to relevancy, the Court already has found that CCP interference and harassment of dissidents, including Mr. Kwok, is relevant to this case. (*See* Dkt. No. 243, Order on Motion to Compel, (the "Fox Hunt Order") (holding that the CCP's targeting of Mr. Kwok, his family, and related corporate entities was relevant to several aspects of his defense). As to reliability, all that is required is that an expert's testimony has "a reliable basis in the knowledge and experience of the relevant discipline." *Kumho Tire Co.*, 526 U.S. at 149. With over 20 years of experience as a security and intelligence professional, Mr. Doran qualifies as an expert regarding CCP influence campaigns against Chinese dissidents located abroad. (*See* Gov't Expert Mot., Ex. B, at Ex. A, Doran CV) Unsurprisingly, given all this, the government does not seek to exclude Mr. Doran's testimony under Rule 702,

voluntarily conceding its relevancy and reliability.

The government does mistakenly contend that Mr. Doran's testimony should be excluded under Rule 403.  (*See* Govt. Expert Mot. at 12-14; Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). In making this argument, the government invents, and then wastes much ink knocking down, two "straw men"—*viz*, that Mr. Doran will be opining on "the effect of Fox Hunt on the defendants' state of mind" and/or that he will be try to "instruct the jurors on what inferences they may draw from the evidence." (Govt. Expert. Mot. at 12.) Mr. Doran's testimony will do none of that, as the government surely knows.

In its Fox Hunt Order, the Court made clear that the Chinese government's multi-pronged, incessant, and sometimes deadly harassment of dissidents supports Mr. Kwok's defense at trial and rebuts the government's allegations, including its so-called "consciousness of guilt" evidence. Among other things, it helps explain and provide an objective basis for Mr. Kwok's belief as to the value and importance of GTV; explains Mr. Kwok's use of multiple phones and identities when traveling; and explains the need for a secure meeting location like the Mahwah facility to conduct anti-CCP business. (*See* Fox Hunt Order at 6-7.) Expert testimony that demonstrates the reasonableness of Mr. Kwok's good faith belief is admissible. *See Onumonu*, 967 F.2d at 787 (defendant should have been allowed to introduce expert testimony about methods of smuggling diamonds from Africa to support the defendant's asserted belief that he was smuggling diamonds rather than narcotics). In other words, if the government is permitted, for example, to posit to the jury that Mr. Kwok's use of burner phone is evidence of his guilt, Mr. Kwok is equally permitted to use Mr. Doran to posit to the jury using burner phones is not evidence of guilt, but rather a

sensible precaution when being targeted by all the might and machinery of the Chinese government. Contrary to the government's straw men, none of this proposed testimony will "instruct" the jury or bind their hands. Nor will Mr. Doran be opining as to whether Mr. Kwok did, or did not have, the requisite "mental state or condition" to commit securities fraud.  Govt. Expert Mot. at 13 (citing Fed. R. Evid. 704(b)).

As the Court already has observed, whether or not "Kwok's explanations ultimately hold water is, of course, a question for the jury."  (Fox Hunt Order at 7.)  In weighing that question, however, the jury should be permitted to hear and consider Mr. Doran's relevant and reliable expert testimony on the matter.  *See* Fed. R. Evid. 702 (expert testimony admissible if it "will help the trier of fact to understand evidence or determine a fact in issue").

Finally, Rule 403 is a balancing test.  Evidence may only be precluded under if its relevancy and probative value is "substantially outweighed" by a danger of "unfair" prejudice, confusion, or waste of time.  Fed. R. Evid. 403.  Here, of course, the CCP's attacks upon Mr. Kwok are extremely relevant, which means that the government must demonstrate a concomitantly high amount of prejudice for it to be said to be so unfair that the jury must be kept from considering it.  The government has failed to meet its heavy burden.

A New York jury will not be surprised to learn that the CCP is a repressive dictatorship, or let that fact improperly affect its ultimate merits decision. And to the minimal extent the material can be characterized as "sensational," that is the result of the CCP's improper actions, not Mr. Doran's testimony. Likewise, the testimony of an expert on the CCP and Operation Fox Hunt is more likely to assist that juries understanding of the issue than confuse it.  At bottom, Mr. Doran's testimony concerns the tactics and practices of a transnational criminal organization (even according to the DOJ), which is a topic the government regularly offers expert testimony about.

*See United States v. Nektalov*, No. S203 Cr. 828 (PKL), 2004 WL 1469487, at \*2 (S.D.N.Y. June 30, 2004) ("The Second Circuit has routinely upheld the admission of expert testimony offered by the government to explain the workings of criminal transactions and enterprises—such as narcotics trafficking, organized crime, and money laundering—that, without explanation, would be esoteric or otherwise beyond the understanding of the average juror.").  Indeed, the Department of Justice has itself successfully sought to introduce testimony concerning Operation Fox Hunt during a criminal trial.  *See United States v. McMahon, et al.,* No. 21 Cr. 265 (PKC) (E.D.N.Y.), Dkt. 231, Barkan Decl., Ex. N; *United State v. McMahon*, No. 21 Cr. 265 (PKC), 2024 WL 896838, at \*1-2 (E.D.N.Y. Mar. 1, 2024) (during trial, the government offered testimony of Andrew Wedeman, "a political science professor who . . . explained the structure of the Chinese government, the Chinese Communist Party, and China's campaign to repatriate its citizens living abroad who the government believes have committed criminal offenses, called operation Fox Hunt." (internal quotation omitted)).  It is no less appropriate for the defense to do so when the Court has already determined Operation Fox Hunt to be relevant to the defense

For all these reasons, the government's motion to preclude Mr. Doran's relevant and reliable expert testimony on Rule 403 grounds should be denied.

## CONCLUSION

For the foregoing reasons, Mr. Kwok respectfully submits that the Court should deny the

government's motion in *limine* to exclude the testimony of Mr. Kwok's expert witnesses.

Dated: New York, New York
      April 17, 2024

          PRYOR CASHMAN LLP

By: _____
    Sidhardha Kamaraju
    E. Scott Schirick
    Matthew S. Barkan
    Daniel J. Pohlman
    John M. Kilgard
    Clare P. Tilton

    7 Times Square
    New York, NY 10036
    (212) 421-4100
    skamaraju@pryorcashman.com
    sschirick@pryorcashman.com
    mbarkan@pryorcashman.com
    dpohlman@pryorcashman.com
    jkilgard@pryorcashman.com
    ctilton@pryorcashman.com

    Sabrina P. Shroff
    80 Broad Street, 19th Floor
    New York, NY 10004
    (646) 763-1490
    sabrinashroff@gmail.com

    *Attorneys for Defendant Ho Wan Kwok*