**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

               *Plaintiff,*

    v.

HO WAN KWOK,

               *Defendant.*

---

<u>**Submitted Partially Under Seal**</u>

Case No. 1:23-CR-118-1 (AT)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
***EX PARTE* MOTION FOR EARLY RETURN OF RULE 17 SUBPOENAS**

Sidhardha Kamaraju
E. Scott Schirick
Matthew S. Barkan
Daniel J. Pohlman
John M. Kilgard
Clare P. Tilton
PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100
skamaraju@pryorcashman.com
sschirick@pryorcashman.com
mbarkan@pryorcashman.com
dpohlman@pryorcashman.com
jkilgard@pryorcashman.com
ctilton@pryorcashman.com

Sabrina P. Shroff
80 Broad Street, 19th Floor
New York, NY 10004
(646) 763-1490

*Attorneys for Defendant Ho Wan Kwok*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT .................................................................................1

RELEVANT BACKGROUND ...................................................................................3

I.   Operation Fox Hunt & the Targeting of Mr. Kwok and his Political Movement .........3

II.  ███████████████████████████████ ....................................................5

III. The Indictment ....................................................................................................9

IV. The *Brady* and Rule 16 Material ......................................................................10

V.  The Fox Hunt Order ...........................................................................................10

VI. The ███ Subpoenas ..........................................................................................11

ARGUMENT ..........................................................................................................13

I.   THE COURT SHOULD DIRECT PRE-TRIAL RETURN OF THE ███
     SUBPOENAS ...................................................................................................13

     A.  Applicable Law ...........................................................................................13

     B.  The ███ Subpoenas Satisfy the *Nixon* Factors ...........................................14

         1.  The Materials Sought in the ███ Subpoenas Are Relevant ........................14

         2.  The ███ Subpoenas Satisfy Rule 17's Specificity Requirement ...................15

         3.  Mr. Kwok Satisfies *Nixon's* Admissibility Requirement ...........................16

         4.  Mr. Kwok Requires the Requested Materials Ahead of Trial and Cannot
             Obtain the Requested Materials Through Other Means ................................17

███████████████████████████████████████ ...............................................18

CONCLUSION ........................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brady v. Maryland*,
 373 U.S. 83 (1963)............................................................................................10

*United States v. Beckford*,
 964 F. Supp. 1010 (E.D. Va. 1997) ..............................................................19, 20

*United States v. Florack*,
 838 F. Supp. 77 (W.D.N.Y. 1993)....................................................................18

*United States v. Holihan*,
 248 F. Supp. 2d 179 (W.D.N.Y. 2003) ............................................................15

*United States v. Nixon*,
 418 U.S. 683 (1974)................................................................................*passim*

*United States v. Rajaratnam*,
 753 F. Supp. 2d 317 (S.D.N.Y. 2011).............................................................16

*United States v. Reyes*,
 162 F.R.D. 468 (S.D.N.Y. 1995) .....................................................................19

*United States v. Weisberg*,
 No. 18 Cr. 347 (NGG)(RML), 2011 WL 1327689 (E.D.N.Y. Apr. 5, 2011)..........16

*United States v. Weissman*,
 No. 01 Cr. 529 (BSJ), 2002 WL 1467845 (S.D.N.Y. Jul. 8, 2002) ........................19

*United States v. Wey*,
 252 F. Supp. 3d 237 (S.D.N.Y. 2017).........................................................16, 18

*United States v. Yudong Zhu*,
 No. 13 Cr. 761 (VM), 2014 WL 5366107 (S.D.N.Y. Oct. 14, 2014)....................15

**Statutes**

Fed. R. Crim. P. 16 ........................................................................................10, 17

Fed. R. Crim P. 17 ........................................................................................*passim*

Fed. R. Evid. 401 ..........................................................................................14, 17

Fed. R. Evid. 402 ..........................................................................................16, 17

**Other Authorities**

Jack Nicas, *et al.*, *Censorhip, Surveillance and Profits: A Hard Bargain for Apple in China*, N.Y. Times (updated June 17, 2021), https://www.nytimes.com/2021/05/17/technology/apple-china-censorship-data.html..................................................................................................................5

Defendant Ho Wan Kwok respectfully submits this memorandum of law in support of his motion, pursuant to Federal Rule of Criminal Procedure 17(c)(1), for an order directing early return of the subpoenas ███████████████████████████████████████████████████ ████████████████████████████████████████████.

## PRELIMINARY STATEMENT

As the Court is aware, Mr. Kwok is one of the principal targets of a Chinese Communist Party ("CCP")-directed international campaign of intimidation and harassment against political dissidents known as "Operation Fox Hunt." That campaign has involved, among other things, Chinese government attempts to kidnap Mr. Kwok while he resided in the U.S.; CCP-directed efforts to corruptly influence the U.S. government to extradite Mr. Kwok back to China and to pressure Mr. Kwok's supporters to report him for fraud and disavow their support for him by use of threats; and CCP-led influence efforts to censor him on U.S. social media platforms. Mr. Kwok's targeting by this state-sponsored criminal "operation" is not speculation—it has in fact been the subject of multiple investigations and prosecutions by various branches of the Department of Justice (the "DOJ"), █████████████████████████████████████████████ █████████████████████████████████████████████. On February 21, 2024, the Court ruled that aspects of this targeting were (i) relevant to defenses that Mr. Kwok may seek to assert at trial, and (ii) that the U.S. Attorney's Office pursuing the instant charges ("USAO-SDNY") must produce records about Operation Fox Hunt from the prosecution team's files, but was not obligated to search and produce similar information from other U.S. government agencies. (Order (Dkt. No. 243) (the "Fox Hunt Order").)

The instant motion, which seeks early-return subpoenas to USAO-EDNY ███████████ █████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████ is in response to the Court's Fox Hunt Order.  In

particular, the ████ Subpoenas seek material that the Court has already determined to be relevant

to the charged offenses, but which is outside the parameters of what USAO-SDNY must search

for and produce.   The ████ Subpoenas thus easily satisfy the *Nixon* standard.

*First*, the materials sought are undoubtedly relevant.  The ████ Subpoenas seek evidence

concerning a publicly reported illegal conspiracy to harass and intimidate Mr. Kwok ███████

████████████.  As the Court recognized in the Fox Hunt Order ruling on Mr. Kwok's

Motion to Compel Discovery of information related to Operation Fox Hunt (Dkt. No. 172) (the

"Fox Hunt Motion"), evidence concerning the CCP's efforts to force Mr. Kwok and the other

members of his movement off of social media and to intimidate and forcefully capture Mr. Kwok

or to cause him to be detained and returned to China help to substantiate Mr. Kwok's belief about

the value of GTV and the need for a secure space like the Mahwah Facility, which rebuts the

government's accusation that Mr. Kwok purchased the property for himself.  Such evidence also

rebuts the government's purported consciousness-of-guilt evidence because it shows an innocent

explanation for why Mr. Kwok and his fellow movement members needed multiple cell phones

and bank accounts—they were not seeking to evade detection by U.S. law enforcement, but rather

the CCP.  The evidence obtained by USAO-EDNY ████████████████████████

██████████████ is thus as relevant to Mr. Kwok's defenses in this proceeding as it was to

the criminal charges pursued by USAO-EDNY ████████████.

*Second*, the ████ Subpoenas are sufficiently specific under *Nixon*.  This is not an instance

in which Mr. Kwok or the Court need guess whether relevant evidence exists at USAO-EDNY

████████████.  Rather, those offices have set forth in public filings detailed descriptions of the

documents and intelligence upon which its charges relied, including records from electronic communications and witness interviews. Moreover, given that the ██ Subpoenas call for evidence obtained only in connection with the investigations that led to those charges, USAO-EDNY ██████ should have no trouble identifying and collecting the relevant documents, and the individuals should be able easily to identify documents responsive to the subpoenas' tailored requests. In short, the ██ Subpoenas are appropriately specific under *Nixon*.

*Third*, the ██ Subpoenas seek admissible evidence. In order to bring criminal charges, which were announced publicly with much fanfare, USAO-EDNY ██████ had to collect evidence that could be used in federal court to prove those charges. ████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████

For these reasons and those set forth below, the Court should enter an order directing the production of all documents requested in the ██ Subpoenas within fourteen (14) days of service thereof.

## **RELEVANT BACKGROUND**

### I.    **Operation Fox Hunt & the Targeting of Mr. Kwok and his Political Movement**

A more comprehensive description of Operation Fox Hunt and its targeting of Mr. Kwok and his political movement, the New Federal State of China (the "NFSC"),[1] is set forth the Fox

---

[1] While the NFSC was not officially launched until June 2020, the term "NFSC" as used herein and in the Subpoena refers both to the NFSC specifically as of its official founding as well as to Mr. Kwok's Chinese pro-democracy dissident movement generally, regardless of timeframe, that existed prior thereto. *See* https://nfscofficial.com/timeline-nfsc/.

Hunt Motion, which is incorporated herein. For purposes of this motion, the relevant background—which is drawn principally from USAO-EDNY's own filings—is summarized below.

As the Court is aware, for nearly ten years, the CCP has pursued an international campaign dubbed "Operation Fox Hunt" through which it harasses and seeks to discredit anti-CCP Chinese political dissidents. Since its inception, Mr. Kwok has been and remains one of the foremost targets of that campaign and has been pursued relentlessly by the CCP. The CCP's efforts have included varied illegal attempts to repatriate Mr. Kwok to China including, among other things, illegally detaining Mr. Kwok's family to try to coerce him to return, attempting to kidnap him, and corruptly influencing high-level government officials and wealthy, politically connected individuals in a bid to force Mr. Kwok's extradition. █████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████ (Complaint and Affidavit in Support of Application for Arrest Warrants ¶ 90, *United States v. Bai, et al.*, 23 Mag. 0334 (SJB) (E.D.N.Y.) (Dkt. No. 2) (annexed as Barkan Decl. Ex. H).) Despite these machinations, Mr. Kwok has continued to advance his pro-democracy agenda, including by helping to found the NFSC, and has attracted hundreds of thousands of like-minded followers on social media.

Unable to coerce Mr. Kwok's return to China, the CCP has sought to silence Mr. Kwok, including by cutting off his access to social media. Given Mr. Kwok's large social media following, it is hardly surprising that the CCP has focused its efforts on disrupting his ability to communicate through this medium. As noted above, and as detailed in the *Bai* complaint, the CCP established a special group of operatives that, beginning in 2017, ███████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ (Barkan Decl. Ex. H ¶ 89 (emphasis added).)

Moreover, in 2018, the CCP also pressured Apple to remove a social media app associated with Mr. Kwok from the Apple Store.  *See* Jack Nicas, *et al.*, *Censorhip, Surveillance and Profits: A Hard Bargain for Apple in China*, N.Y. Times (updated June 17, 2021), https://www.nytimes.com/2021/05/17/technology/apple-china-censorship-data.html.

The CCP's harassment campaign has also included ████████████████████ ████████████ and the filing of false lawsuits and regulatory complaints against Mr. Kwok. Specifically, an FBI report dated February 13, 2018 and produced by the government █████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████ Moreover, the CCP's efforts have included trying to turn Mr. Kwok's own fellow movement members into false witnesses against him.  For example, counsel's investigation has discovered that Chinese police have forced some GTV investors into filing false claims with the SEC, FBI, and U.S. financial institutions, including, in one case, coercing an investor into doing so through abduction.

**II.** ████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████







███████████████████████████████████████████████

███████████████████████ █ ████████████████████████

███████████████████████████████████████████████

██████████████████████

### III.  **The Indictment**

On January 3, 2024, the government filed a Superseding Indictment (Dkt. No. 215) (the "Indictment") charging Mr. Kwok, Kin Ming Je, and Yanping Wang (together, the "Defendants") with, *inter alia*, RICO violations, securities fraud, wire fraud, and money laundering.  The Indictment alleges Mr. Kwok was the leader of a scheme in which the Defendants defrauded investors through a series of allegedly fictitious businesses and investment opportunities, including GTV, for Defendants' personal enrichment.  (*See* Ind. ¶¶ 1-3.)

In particular, the Indictment alleges fraud in connection with four business ventures related to the NFSC.  The Indictment alleges that money was misappropriated from GTV private placement funds to make an investment in a hedge fund on behalf of Saraca, GTV's majority owner.  (Ind. ¶ 16(h).)  The Indictment also claims that Mr. Kwok enticed NFSC members into participating in the Farm Loans program and into buying G|CLUBS memberships by falsely inflating GTV's value.  (*Id.* ¶¶ 17(d), 18(f).)  The government also asserts in the Indictment that Mr. Kwok and his fellow movement members are not genuine dissidents.  For example, the Indictment refers to Mr. Kwok as the founder of a "purported campaign against the [CCP]" and alleges that he "claim[ed] to advance a movement against the [CCP]."  (Ind. ¶¶ 9(a)-(b).)  Likewise, the Indictment describes the Rule of Law Foundation and the Rule of Law Society—non-profit

---

█ ████████████████████████████████

█ ██████████████████████████████████

organizations which Mr. Kwok also helped found to support the pro-democracy movement—as "purported non-profits" through which Mr. Kwok attracted supporters for his "purported" dissident campaign.  (*Id.* ¶ 9(b).)

## IV.    The *Brady* and Rule 16 Material

Among the staggering amount of data turned over to the defense, including over a *million* documents and terabytes-worth of raw data, the government has identified a limited quantity of exculpatory and material information pursuant to its obligations in *Brady v. Maryland*, 373 U.S. 83 (1963), and Rule 16 of the Federal Rules of Criminal Procedures.  In a *Brady* disclosure letter dated June 26, 2023, the government disclosed ███████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████  ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████

## V.    The Fox Hunt Order

On February 21, 2024, the Court entered the Fox Hunt Order, which directed the USAO-SDNY to search for and produce information concerning, among other things, Operation Fox Hunt's targeting of Mr. Kwok, his family, his co-defendants, and the corporate entities relevant to the charged offenses in the prosecution team's custody.  (Fox Hunt Order at 5-7.)  In granting this discovery, the Court found explicitly that this discovery was relevant because:

- "Evidence showing that Kwok's fears of CCP targeting are objectively legitimate could be used to counter the Government's case or to bolster his defense" by "provid[ing] an alternative, nonculpable explanation for the heightened secrecy and security around the New Jersey property" and "support[ing] Kwok's argument that he believed in good faith that purchasing the property was an appropriate and

nonfraudulent use of G|CLUBS dues—a defense to the fraud charges." (Fox Hunt Order at 6-7 (cleaned up).)

- "Evidence showing that Kwok and his associates were targets of the CCP could also bolster his defenses against the GTV Private Placement-related fraud charges," including because "[e]vidence that the Chinese government has taken measures to suppress Kwok's access to online platforms could support his argument that such a market niche existed, justifying his valuation." (*Id.* at 7.)

- "[E]vidence of CCP targeting provides an alternative explanation for Kwok's use of multiple cellphones and bank accounts," specifically, that Mr. Kwok "took these measures not for the purposes of evading U.S. authorities, but as a necessary by-product of Operation Fox Hunt—to avoid the Chinese government's efforts to interfere with his accounts or hack his phones." (*Id.* (cleaned up).)

In addition, the Court also directed the USAO-SDNY to search for any records, including intelligence assessments, concerning the targeting of the NFSC and Mr. Kwok, his family and his co-defendants by the Chinese government. (*Id.* at 9.)

## VI.   The ▆▆▆ Subpoenas

The ▆▆▆ Subpoenas seek documents related to the PRC's attempts to intimidate Mr. Kwok, his family and fellow movement members ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. The subpoena to the USAO-EDNY (the "EDNY Subpoena") seeks the same materials that the Court ordered the government to produce in its Fox Hunt Order, as follows:

| Request No. | Request[12] |
|---|---|
| 1 | Records concerning the allegations in the *Bai* complaint, including the underlying evidence of targeting of ▆▆▆▆▆▆▆▆▆ |

---

[12] The requests set forth in the subpoena to the EDNY are identical to the requests that the Court ordered the government to comply with in its Fox Hunt Order with the exception of Request No. 4, which has been modified to reflect the Court's limitation on the corresponding request to the government. (*See* Fox Hunt Order at 8-9 ("[A]t this juncture [the Government] need not produce information regarding the targeting of the NFSC's 'members' other than Kwok, his family, and his co-defendants.").)

| Request No. | Request[12] |
|---|---|
| 2 | Records concerning the Government of China's targeting of Kwok as part of Operation Fox Hunt, including ███████████████████████████████ ███████████████████████████████ ███████████████████ (iii) the payment of bribes to U.S. citizens to solicit U.S. government officials to extradite Kwok to China; and (iv) any cyberattacks on any property used or owned by Kwok or his family. |
| 3 | Records concerning the targeting of Kwok's family by the Chinese government, including as part of Operation Fox Hunt. |
| 4 | Records concerning the NFSC, including any intelligence assessments concerning the NFSC or records reflecting the targeting of the NFSC or Mr. Kwok, his family and his co-defendants by the Chinese government, including as part of Operation Fox Hunt. |
| 5 | Records concerning the targeting of the corporate entities relevant to the Indictment, including GTV, Saraca Media, G|CLUBS, G|Fashion, and the Himalaya Exchange, by the Chinese government, including as part of Operation Fox Hunt. |





**ARGUMENT**

## I. THE COURT SHOULD DIRECT PRE-TRIAL RETURN OF THE ███ SUBPOENAS

### A.    Applicable Law

Rule 17 of the Federal Rules of Criminal Procedure provides for the production of "books, papers, documents, data, or other objects" pursuant to a subpoena and authorizes a Court to "direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." Fed. R. Crim. P. 17(c)(1). A Rule 17 subpoena may be quashed only where it is "unreasonable or oppressive," "but not otherwise." *United States v. Nixon*, 418 U.S. 683, 698 (1974).

The *Nixon* court set forth three requirements that the subpoena proponent must satisfy: relevance, admissibility and specificity. *Nixon*, 418 U.S. at 700. A movant seeking to compel a third party to produce evidence pursuant to a Rule 17 subpoena must demonstrate (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *Id*. at 699-700 (citing *United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y. 1952)).

Mr. Kwok respectfully submits that the ███ Subpoenas satisfy this standard, and requests that the Court direct the pre-trial production and inspection of the subpoenaed material.

**B.    The ███ Subpoenas Satisfy the *Nixon* Factors**

As set forth below, the materials sought in the Subpoenas are directly relevant to Mr. Kwok's defense; they are sufficiently specific so as not to cause the subpoenaed parties undue burden in searching for and producing responsive materials, and Mr. Kwok has established that the materials sought will be admissible at trial. *Nixon*, 418 U.S. at 699-700.

**1.    The Materials Sought in the ███ Subpoenas Are Relevant**

*Nixon*'s relevance requirement is not onerous. Evidence is "relevant" if it tends to "make a fact more or less probable," and "the fact is of consequence in determining the action." Fed. R. Evid. 401. As the Court found in the Fox Hunt Order, Mr. Kwok is entitled to evidence to dispute the government's allegations of fraud, to present to the jury nonfraudulent explanations for the conduct charged in the Indictment and to challenge the government's specious claim that Mr. Kwok and the NFSC are not part of a *bona fide* pro-democracy Chinese dissident movement. The evidence sought in the ███ Subpoenas is directly relevant to those purposes. ██████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

The ███ Subpoenas exclusively seek documents and communications specifically related to the

plot to extradite Mr. Kwok, which the Court already has concluded is relevant. (*See* Fox Hunt Order at 6-7.)[13]

## 2.    The ▮▮ Subpoenas Satisfy Rule 17's Specificity Requirement

Each of the Requests in the ▮▮ Subpoenas are sufficiently narrow and focused on a bounded group of records likely to contain helpful documents, such that they satisfy the specificity requirement. *See United States v. Yudong Zhu*, No. 13 Cr. 761 (VM), 2014 WL 5366107, at *6 (S.D.N.Y. Oct. 14, 2014) (request sufficiently specific where it seeks a specific type of document over a limited time period). Mirroring the requests granted by the Court in the Fox Hunt Order, the five requests in the EDNY Subpoena seek records concerning the targeting of Mr. Kwok, his family, his co-defendants, and certain of the corporate entities relevant to the indictment—by the Chinese government as part a specific intimidation campaign prosecuted by USAO-EDNY— Operation Fox Hunt. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Given their specificity and narrowness, the Requests satisfy *Nixon*'s specificity requirement and ensure that the subpoenaed parties will not face any undue burden in complying with the Subpoenas. *See id.* at *6 (request sufficiently specific where it sought communications between two entities concerning a particular individual and where "there is no indication" that "the production of [the] documents" identified "would require [the subpoena recipient] to allocate significant resources in order to comply"); *United States v. Holihan*, 248 F. Supp. 2d 179, 188

---

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(W.D.N.Y. 2003) (subpoena was "sufficiently specified" since the recipient could "easily" locate the evidence).  With respect to USAO-EDNY ██████████, these agencies presumably already have much, if not all, of this evidence segregated in case files.  ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████

     To be sure, Mr. Kwok is not required to point to the existence of specific documents to meet Rule 17's specificity requirement.  *See United States v. Rajaratnam*, 753 F. Supp. 2d 317, 321 n.1 (S.D.N.Y. 2011) ("requiring the defendant to specify precisely the documents he wants without knowing what they are" would "render[] Rule 17 a nullity"); *United States v. Weisberg*, No. 18 Cr. 347 (NGG)(RML), 2011 WL 1327689, at *7 (E.D.N.Y. Apr. 5, 2011) (a defendant "need not have prior knowledge of specific documents to meet the specificity requirement of Rule 17(c).").  But in this case, the existence of the specific documents Mr. Kwok seeks is not speculative—the records have been described in public filings by the DOJ ████████████

██████.  Thus, while Mr. Kwok cannot identify, and is not required to identify, every responsive document in the files of the subpoena recipients, the ████ Subpoenas are "sufficiently narrowly focused on a group of records likely to contain helpful documents," *Weisberg*, 2011 WL 1327689, at *7, and both he and the Court can be assured that such documents exist.

### 3.    Mr. Kwok Satisfies *Nixon's* Admissibility Requirement

     All relevant evidence is presumptively admissible.  *See* Fed. R. Evid. 402.  Accordingly, where Mr. Kwok has demonstrated the relevance of the evidence sought in the ████ Subpoenas (*see supra*, pp. 10-11, 14), the presumption of admissibility should attach and satisfy Rule 17's admissibility requirement.  *See, e.g.*, *United States v. Wey*, 252 F. Supp. 3d 237, 254 (S.D.N.Y. 2017) ("The Court has no difficulty concluding that evidence potentially suggesting that Nasdaq

had actual knowledge that Wey was facilitating satisfaction of listing standards in this manner

could be 'of consequence' to a determination as to whether Wey engaged in deceptive conduct and

thus whether he may be guilty of, for example, securities fraud. It would thus be admissible" under

Federal Rule of Evidence 401 and 402).

But in any event, the types of records that the ███ Subpoenas seek are routinely admitted

in court.[14]  For example, the records pursuant to the ███ Subpoenas seek the same kinds of

evidence that the USAO-EDNY ███████ relied on to charge ████████████

███████████ its case ███████████.  Presumably none of the recipients of the ███

Subpoenas could reasonably challenge the admissibility of that evidence.  Accordingly, the *Nixon*

admissibility standard is met as well.

### 4.    Mr. Kwok Requires the Requested Materials Ahead of Trial and Cannot Obtain the Requested Materials Through Other Means

The materials sought in the ███ Subpoenas are not "otherwise procurable reasonably in

advance of trial by [Mr. Kwok's] exercise of due diligence," and Mr. Kwok cannot "properly

prepare for trial without such production and inspection in advance of trial." *Nixon*, 418 U.S. at

699.  Mr. Kwok has attempted to obtain many of these materials from the USAO-SDNY, but as

the Court found in the Fox Hunt Order, the USAO-SDNY is not required to search the files of

other prosecutor's offices for these information.  As a result, to obtain, for example, the evidence

from the *Bai* complaint that showed the CCP tried to force an American social media company to

de-platform Mr. Kwok and his fellow movement members, Mr. Kwok can only go to the

investigative unit that gathered that evidence, *i.e.*, USAO-EDNY.  ███████████

---

[14] Moreover, each of the Subpoenas explicitly exclude any internal work product created by the prosecutors or agents who worked on the relevant investigations, consistent with Fed. R. Crim. P. 16(a)(2).

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ Moreover,

issuing these subpoenas is a critical avenue to obtaining this relevant evidence that is material to

the defense because there is no guarantee that the USAO-SDNY possesses any of this evidence in

its own files.  Thus, absent issuance of the ████ Subpoenas, Mr. Kwok may be denied access to

evidence that the Court has already determined supports his defense in multiple ways.

Advance production of the materials sought in the Subpoenas will provide the parties time

to negotiate and litigate any issues related to the requests, as well as give Mr. Kwok adequate time

to review the records that will be produced, to conduct any follow up investigation, and to expedite

the trial itself.  Indeed, the government has estimated that trial may take nearly two months, and

given that duration, directing early return of the Subpoenas would expedite the trial by permitting

the parties to review the subpoenaed materials and make appropriate motions *in limine before* trial

begins and a jury has been empaneled.  *See Nixon*, 418 U.S. at 698-99 (Rule 17's "chief innovation

was to *expedite the trial* by providing a time and place *before trial* for the inspection of subpoenaed

materials") (emphases added) (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220

(1951)); *see also Wey*, 252 F. Supp. 3d at 243, 255 (ordering third party to produce materials

responsive to subpoena by May 31, 2017 where trial was set to begin in October 2017).

██ ██████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████



███████████████████████████████

████████████████████████████

## **CONCLUSION**

For the foregoing reasons and the reasons, Mr. Kwok respectfully requests that the Court (1) enter an order directing the production of all documents requested in the ███ Subpoenas within fourteen (14) days of service thereof and (2) grant Mr. Kwok such other and further relief as this Court deems just and proper.

Dated: New York, New York
         March 5, 2024

                              PRYOR CASHMAN LLP


                              By: _____
                                  Sidhardha Kamaraju
                                  E. Scott Schirick
                                  Matthew S. Barkan
                                  Daniel J. Pohlman
                                  John M. Kilgard
                                  Clare P. Tilton

                                  7 Times Square
                                  New York, NY 10036
                                  (212) 421-4100
                                  skamaraju@pryorcashman.com
                                  sschirick@pryorcashman.com
                                  mbarkan@pryorcashman.com
                                  dpohlman@pryorcashman.com
                                  jkilgard@pryorcashman.com
                                  ctilton@pryorcashman.com

                                  Sabrina P. Shroff
                                  80 Broad Street, 19th Floor
                                  New York, NY 10004
                                  (646) 763-1490

                                  *Attorneys for Defendant Ho Wan Kwok*