

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

April 9, 2024

**BY EMAIL – SEALED FILING REQUESTED**
The Honorable Analisa Torres
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007-1312

  Re: *United States v. Kwok, et al.*, S2 23 Cr. 118 (AT)

Dear Judge Torres:

  The Government respectfully submits this letter containing a motion in limine seeking an anonymous and semi-sequestered (that is, escorted by the U.S. Marshals into and out of the courthouse) jury during the trial, in light of the safety and obstruction considerations discussed below. In order to avoid the risk of tainting the jury pool with respect to these applications, the Government respectfully requests that this letter and any related order be maintained under seal until after the trial.

**I. The Court Should Implement Jury-Related Protective Measures**

  **A. Applicable Law**

  A trial judge bears "the responsibility of providing for the protection of the jurors, witnesses, and counsel," and is afforded broad discretion in carrying out that responsibility. *United States v. Barnes*, 604 F.2d 121, 137 (2d Cir. 1979). The law thus "permit[s] the trial judge appropriate leeway to assure that the trial he is to conduct will be conducted fairly and impartially, with a minimum of intrusion into the lives of the prospective jurors." *Id.* at 142.

  The Second Circuit has long recognized that anonymous juries and full or partial sequestration can be necessary and appropriate to ensure an impartial jury and otherwise protect the integrity of a trial. *See, e.g.*, *United States v. Pica*, 692 F.3d 79, 81 (2d Cir. 2012); *United States v. Vario*, 943 F.2d 236, 239 (2d Cir. 1991); *Barnes*, 604 F.2d at 133-43. "A district court may order the empaneling of an anonymous jury 'upon (a) concluding that there is strong reason to believe the jury needs protection, and (b) taking reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected.'" *United States v. Kadir*, 718 F.3d 115, 120 (2d Cir. 2013) (quoting *Pica*, 692 F.2d at 88).

  In assessing whether there is strong reason to believe the jury needs protection, the district court may consider a range of factors, including whether the case has drawn extensive pretrial publicity that presents a risk of jury interference or involves allegations of dangerous or obstructive conduct that could put jurors' safety at risk. *See, e.g.*, *United States v. Paccione*, 949 F.2d 1183,

Page 2

1193 (2d Cir. 1991) (finding anonymity and semi-sequestration appropriate where the "case had been front-page news" and "the trial could be expected to be the subject of extensive publicity, exposing the jurors to inappropriate contacts that could compromise the trial"); *Vario*, 943 F.2d at 240 (observing that "[p]re-trial publicity may militate in favor of an anonymous jury because it can enhance the possibility that jurors' names would become public and thus expose them to intimidation by defendants' friends or enemies, or harassment by the public") (internal quotations and citations omitted)); *Barnes*, 604 F.2d at 141 ("in a case that generated as much pretrial publicity as this one did and in which allegations of dangerous and unscrupulous conduct abounded," anonymous and sequestered jury was appropriate); *United States v. Scala*, 405 F. Supp. 2d 450, 452-53 (S.D.N.Y. 2005) (considering the possibility that jurors, "absent anonymity, would fear reprisals").

If a district court determines that an anonymous jury is appropriate, "the court must take 'reasonable precautions to minimize any prejudicial effects on the defendant and to ensure protection of his fundamental rights.'" *Kadir*, 718 F.3d at 120 (quoting *United States v. Thai*, 29 F.3d 785, 801 (2d Cir. 1994)). "This can be done by giving the jurors a plausible and nonprejudicial reason for not disclosing their identities and the court's conduct of a voir dire designed to uncover bias." *Id.* (omitting internal quotations marks and citations). So long as these precautions are taken, "the use of an anonymous jury does not infringe a defendant's constitutional rights." *United States v. Aulicino*, 44 F.3d 1102, 1116 (2d Cir. 1995).

Within these parameters, "the trial court is accorded broad discretion to determine whether to empanel an anonymous jury." *United States v. Wong*, 40 F.3d 1347, 1376 (2d Cir. 1994).

**B. Discussion**

Application of these standards here weigh in favor of implementing protective measures for the jury. An anonymous jury—wherein counsel and the defendants know the jurors' identities, but jurors are referred to by number in open court—is appropriate. So too is semi-sequestration—in which jurors meet at a location outside the courthouse and are escorted into court by the U.S. Marshals Service. The Court should exercise its discretion to implement these limited protective measures to secure jurors' safety and avoid obstructive conduct by the defendants' followers.

*First*, there is no doubt that the charges in this case are serious, involving a transnational racketeering conspiracy in which Kwok has manipulated and defrauded thousands of followers out of more than a billion dollars, and used his organization to harass and threaten those who dare to criticize or oppose him. *See United States v. Kelly*, No. 19 Cr. 286 (AMD), 2020 WL 8482693, at *2 (E.D.N.Y. Oct. 8, 2020) ("[T]he defendant has both the incentive and the means to influence jurors. He is charged with leading a criminal enterprise that paid out large sums over the past two decades to bribe witnesses and cover up his misconduct, and he faces a significant prison term if convicted. It is also clear that he has supporters who are willing and able to commit crimes and exert influence on his behalf . . . ." (citations omitted)); *Ashburn*, 2014 WL 5800280, at *11 ("a defendant with former leadership status in a criminal organization has the standing and potential ability to influence and exercise control over its members to a more significant extent") (internal quotations and citations omitted); *United States v. Herron,* 2 F. Supp. 3d 391, 397 (E.D.N.Y. 2014), *aff'd*, 762 F. App'x 25 (2d Cir. 2019) (despite the defendant's pretrial detention, his "alleged role as the leader of a criminal enterprise enables him to corrupt the judicial process through his associates, and . . . some followers may feel compelled to act on his behalf even without any

direction from [the] [d]efendant"); *United States v. Napout*, 963 F.3d 163, 188–90 (2d Cir. 2020) (affirming the use of an anonymous and semi-sequestered in a high-profile international fraud case involving corruption at FIFA, in which the defendants were charged with honest services fraud). Nor is it the case jury-protective measures are somehow inappropriate in a case principally charging fraud offenses. *See, e.g.*, *Napout*, 963 F.3d at 188–90.

*Second*, and importantly, Kwok has engaged in extensive obstructive conduct. *See United States v. Blackshear*, 313 F. App'x 338, 343 (2d Cir. 2008) (summary order) (affirming decision to empanel anonymous jury where defendant had "consistently attempted to obstruct justice," including by "intimidating witnesses," even where "none of [defendant's] prior incidents involved jurors"). The Court is well aware of the dangers posed by Kwok's obstructive conduct and the general contempt he and his organization have shown for court orders. *See* Dkt 51 (order detaining Kwok); Dkt. 255 (March 31, 2024 Government Letter) at 8-11 (describing the defendants' obstructive conduct, including intimidation, harassment, and in some cases physical harm to critics and opponents). The serious concerns of obstruction, intimidation, and harassment addressed in the Government's March 13, 2024 letter as to potential victim witnesses also apply to jurors, who are likely to confront a mob of the defendants' loyal followers upon entering and leaving the courthouse.[1]

*Third*, this case has garnered substantial media attention in New York City, nationally, and internationally, in part due to Kwok's relationships with prominent U.S. political figures. *See Kadir*, 718 F.3d at 121 (2d Cir. 2013) ("extensive media coverage" is a "significant" factor in the decision to empanel an anonymous jury); *Wong*, 40 F.3d at 1377 ("The prospect of publicity militates in favor of jury anonymity to prevent exposure of the jurors to intimidation or harassment."); *Vario*, 943 F.2d at 240 ("Pre-trial publicity may militate in favor of an anonymous jury."). Notably, in addition to significant reporting and coverage by traditional media, this case will almost certainly be "reported on" by Kwok's own media entities, such as GETTR and G News, which he uses as his own personal propaganda machines.

Indeed, even months after Kwok's arrest, Kwok's media channels have continued to broadcast dangerous threats amid propaganda and misinformation. For example, on October 14, 2023, the current leader of the defendants' organization, Qidong Xia, has publicly expressed his intention to exact reprisals on individuals who "have hurt the Whistleblower Movement, the New Federal State of China ['NFSC']." As shown in the English translation of the video screenshotted below, one week after the October 7, 2023 Hamas terrorist attack on Israel, Qidong compared the NFSC's determination to exact revenge against its critics to that of Israel, and stated the NFSC would "liquidate" those individuals—if not now, then eventually.

---

[1] The defendants' organization is almost certain to protest around the courthouse. In addition to various individual critics and their families, the organization has protested the Securities and Exchange Commission and several law firms.



**Qidong**: Just like those fake and deceitful thieves, even though they are having fun today, they will definitely be liquidated [exposed and criticized] in the future.

**Nicole**: Hmm.

**Qidong**: Don't say that the local law, the nation [legal department], um…may not be able to find them, the New Federal State of China will definitely not forgive them in the future.

**Nicole**: Hmm.

**Qidong**: Just the same like Israel, as long as you have bullied Israel, as long as you have touched, or as long as you carried out terrorist attacks on Israel, the Israeli government will never let it go.

**Nicole**: Hmm.

**Qidong**: The New Federal State of China will do the same. As long as you have hurt the Whistleblower Movement, the New Federal State of China, and our comrades in the past or today, even if you are not liquidated today, you will definitely be liquidated in the future. Even after the Chinese Communist Party is destroyed, we will definitely find these fake and deceitful thieves to settle accounts. Hmm.

**Nicole**: Hmm.

Absent protective measures from the Court, these types of threats and obstructive conduct pose serious risk to the safety of jurors (in addition to victim witnesses) and threaten the integrity of this criminal trial. *See, e.g.*, *Kelly*, 2020 WL 8482693, at *2 n.4 ("[T]he prevalence of social

media poses a special threat to the jurors' safety and impartiality, especially in light of posts seeking to intimidate, threaten and denigrate individuals perceived to be cooperating with the government's investigation or potential witnesses at trial.") (quotations omitted).

Accordingly, the Court should order an anonymous and semi-sequestered jury. Because the defendants and counsel will have the jurors' names, the impact on the defendants' rights of an anonymous jury is negligible. Similarly, semi-sequestration is nothing more than an orderly and safe way for the jury to navigate what are likely to be a number of protestors. And by providing a benign explanation for the employment of these procedures, as courts do in such circumstances, this Court can neuter any potential prejudice to the defendants from these limited and reasonable measures taken to protect the jury and preserve the integrity of the trial.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: /s/
Micah F. Fergenson
Ryan B. Finkel
Justin Horton
Juliana N. Murray
Assistant United States Attorneys
(212) 637-2190 / 6612 / 2276 / 2314

Cc: Defense Counsel (via email)