

7 Times Square, New York, NY 10036-6569   Tel: 212-421-4100   Fax: 212-326-0806         pryorcashman.com

**Sidhardha Kamaraju**

Direct Tel: 212-326-0895
Direct Fax: 212-326-0806
skamaraju@pryorcashman.com

May 8, 2024

<u>**VIA ECF**</u>

Hon. Analisa Torres
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

    Re:    <u>*United States v. Guo et al.*, Case No. 1:23-cr-00118 (AT)</u>

Dear Judge Torres:

    We write in response to the government's May 7, 2024 letter in further support of its misguided effort to introduce into evidence privileged conversations in which Witness-1 provided legal advice in connection with the GTV private placement. (Dkt. 331 ("May 7 Letter").) The government's submission provides more detail about the scope of Witness-1's testimony and advances a new basis for why that testimony is not subject to Mr. Guo's attorney-client privilege. The government should be precluded from introducing Witness-1's testimony with respect to the GTV private placement for each of the following reasons.

    *First*, the government's submission focuses on the wrong attorney-client relationship. It also mischaracterizes Mr. Guo's position. Mr. Guo's contention is not that he is within GTV's privilege. Rather, his point is that he separately has an attorney-client relationship with Witness-1, which he has not waived, and that his communications with Witness-1 pertaining to legal advice are thus privileged. Moreover, the government's contention that Mr. Guo's privilege does not apply because the topic of the advice was the GTV private placement is unavailing. Mr. Guo obviously had a personal interest in how the GTV private placement was conducted and his role in the offering. Indeed, that is the entire basis of the government's GTV-related charges against him. Thus, the privilege that the government must pierce is not GTV's now allegedly defunct privilege, but Mr. Guo's existing one.

    *Second*, Witness-1's proffered testimony is inadmissible hearsay. The government now states that it intends to introduce testimony that William Je, on a call with Yvette Wang and Witness-1 (but on which the government concedes Mr. Guo did not participate), allegedly "suggested" a "plan" to pool money from "unaccredited investors" for investment into GTV. (*Id.* at 3.) Witness-1 then consulted with an unidentified securities lawyer about Mr. Je's alleged

PRYOR CASHMAN LLP

May 8, 2024
Page 2

pooling plan (conversations that, ironically, the government treated as privileged). Witness-1 then allegedly had two further conversations in which he discussed the outside legal advice he received: one conversation with only Mr. Je and Ms. Wang (what the government calls "GTV Conversation-1") and a subsequent conversation with Je, Wang and Mr. Guo (what the government refers to as "GTV Conversation-2"). (*Id.*) During each of these two conversations, Witness-1 allegedly "communicated his understanding of what was permissible and impermissible, in the course of the upcoming fundraising." (*Id.*)

Witness-1 may not testify as to what the outside securities lawyer told him: that testimony is classic hearsay because the government clearly intends to introduce that testimony for the truth of the matter asserted, *i.e.*, that the outside securities lawyer provided legal advice about the alleged pooling plan. That legal advice of the outside securities lawyer relayed by Witness-1 is only relevant if the advice is correct—in other words, if it is offered for the truth of the SEC regulations concerning accredited investors. It is axiomatic, however, that an out-of-court statement cannot be admitted for the truth absent a hearsay exception, and the government cites to none.[1]

*Third*, even if the government could overcome the hearsay issue, Witness-1 should not be permitted to convey in the guise of lay testimony what in fact is expert opinion (of someone else) concerning complex SEC regulations, which is a classic area of expert testimony. *See*, *e.g.*, *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (describing testimony about SEC regulations as expert testimony). Here, Witness-1 is not being offered as a legal expert—he is being offered as a lay fact witness—and he therefore cannot offer expert opinions. *See United States v. Cabrera*, 13 F.4th 140, 150 (2d Cir. 2021) (vacating conviction and remanding for new trial where DEA agent testifying as lay witness improperly relied on his "specialized knowledge" to opine that the manner in which defendant operated vehicle meant defendant was an experienced drug dealer). The government should not be permitted to smuggle before the jury expert testimony through a lay witness, even if that witness happens to be a lawyer.

*Fourth*, the crime-fraud exception does not apply. The government spends pages arguing that Witness-1 may testify as to GTV Conversations 1 & 2 pursuant to the crime-fraud exception. (May 7 Letter at 6-8.) The government asserts that "there is probable cause that Guo and his co-conspirators' discussion with Witness-1 regarding the GTV Private Placement was 'intended in some way to facilitate . . . the criminal activity,' that is, the defrauding of investors in GTV." (*Id.* at 7.) What the government's limited proffer actually shows, however, is that Je consulted with Witness-1 about a potential course of action, which is the nature of every request for legal advice. The government offers no proof that the question "*itself* was in furtherance of the crime or fraud." *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995) (emphasis in the original). Indeed, the government does not identify how Je's statement would cause Witness-1 to do anything that

---

[1] Indeed, if Witness-1's relaying of the requirements of these regulations was incorrect, then it should be excluded under Rule 403, because that will certainly confuse the jury as to what the relevant standard is.

PRYOR CASHMAN LLP

May 8, 2024
Page 3

actually facilitated the fraud itself. Rather, the most that the government can say is that Mr. Je sought Witness-1's legal advice, Witness-1 purportedly relayed his understanding of these regulations to Mr. Guo, Mr. Je, and Ms. Wang, and that they allegedly ignored it. Thus, Witness-1's testimony is actually being offered as supposed proof of the crime. "[T]he crime-fraud exception does not apply simply because privileged communications would provide an adversary with evidence of a crime or fraud." *Id*. "If it did, the privilege would be virtually worthless because a client could not freely give, or an attorney request, evidence that might support a finding of culpability." *Id*.

      Finally, Mr. Guo has no objection to the Court reviewing details of Witness-1's testimony to assess its admissibility. But the government's request that the Court conduct that review *in camera* makes no sense. *In camera* review is appropriate to protect privileged material from being disclosed to parties who may not be entitled to see it. In this case, the privilege either belongs to GTV—which, the government claims, has no valid remaining privilege—or to Mr. Guo, who obviously should be allowed to see his own privileged material. As a result, if there are additional details about Witness-1's testimony that the government believes would aid the Court's review and which it has not produced as §3500 material already, then the government should also supply that to Mr. Guo, so he can similarly assess those details in light of the privilege issues at play.

      Respectfully submitted,

_____
PRYOR CASHMAN LLP
Sidhardha Kamaraju
Matthew S. Barkan
Daniel J. Pohlman
John M. Kilgard
Clare P. Tilton

Sabrina P. Shroff

*Attorneys for Defendant Miles Guo*

cc: Counsel of Record