

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

May 13, 2024

**VIA ECF**
The Honorable Analisa Torres
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re:    *United States v. Guo*, S3 23 Cr. 118 (AT)

Dear Judge Torres:

The Government respectfully submits this letter in response to the defendant's May 10, 2024 letter. For the following reasons, the Court should preclude the defendant from advancing arguments or evidence concerning a "presence of counsel" defense. The presence of counsel is irrelevant and any argument to the contrary would mislead the jury and confuse the issues. *See* Fed. R. Evid. 401, 403.

### A. Procedural Background

In December 2023, the Government sent a letter to the defense requesting that the defendant provide notice of any advice-of-counsel defense he may seek to offer at trial. Despite repeated efforts to meet and confer on this issue, the defendant declined to provide notice of any such defense. On March 31, 2024, the Government sought relief and requested that the Court require the defendant to provide notice of an advice-of-counsel defense. (Dkt. 255.) The Government argued notice was appropriate here to ensure an efficient trial, and was particularly important in this case, where Guo claimed to be represented by, or to have had privileged communications with, at least 39 different law firms (some with numerous individual attorneys).

On April 10, 2024, this Court ordered that by May 10, 2024, Guo was to provide notice of an advice-of-counsel defense that "identif[ied] the specific attorneys involved, the advice those attorneys provided, and any discovery concerning the advice-of-counsel defense that Defendants will rely upon at trial." (Dkt. 275, at 3.) The Court explained that "[f]ailure to provide notice and appropriate discovery may preclude reliance on an advice-of-counsel defense." (*Id.*)

On May 10, 2024, the defendant filed a letter stating that Guo "does not intend to assert an advice-of-counsel defense." (Dkt. 333.) However, the defendant asserted that he is "entitled to present evidence to the jury that he was aware that lawyers were involved in various transactions without asserting a formal advice-of-counsel." (*Id.*) The defendant neither specified the transactions in which counsel was involved, nor the identity of those counsel. In support of this "awareness of counsel" defense, the defendant submitted a document *ex parte* to the Court.

### B.   Applicable Law

Because conversations with counsel can reveal an absence of good faith or advice of counsel, "the attorney-client privilege cannot at once be used as a shield and a sword." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). Thus, to assess whether a defendant truly acted in good faith, it becomes necessary to understand his communications with his attorney: did he fully and honestly lay out all the facts; did the attorney provide him information that would leave him to believe he was not acting lawfully; did he in good faith and honestly follow counsels' advice? For that reason, once a defendant raises an advice-of-counsel defense, "any communications or evidence defendants intend to use to establish the defense are subject to disclosure," as are "otherwise-privileged communications that defendants do not intend to use at trial, but that are relevant to proving or undermining the advice-of-counsel defense." *United States v. Crowder*, 325 F. Supp. 3d 131, 138 (D.D.C. 2018).

Where the defendant has not put forward a formal defense of reliance on advice of counsel, courts have appropriately limited the admission of evidence about the involvement of attorneys on relevance grounds and pursuant to Rule 403. The decision in *S.E.C. v. Tourre*, 950 F. Supp. 2d 666 (S.D.N.Y. 2013), illustrates the limited relevance of evidence of attorney involvement, absent a showing of each of the elements of an advice of counsel defense. In that case, which was brought by the SEC against a Goldman Sachs employee alleged to have violated securities laws in the offer and sale of a synthetic collateralized debt obligation, the defendant disclaimed any advice-of-counsel defense, but sought to introduce evidence that in-house counsel had reviewed various documents, reviewed disclosure language, was copied on communications, and in some instances assisted in drafting documents. *Id.* at 682-83. The court, however, held that Federal Rules of Evidence 401 and 403 precluded evidence of and references to counsel, explaining:

> A lay jury could easily believe that the fact that a lawyer is present at a meeting means that he or she must have implicitly or explicitly "blessed" the legality of all aspects of a transaction. Likewise, the fact that lawyers saw and commented on disclosure language could be understood as "blessing" the sufficiency of that disclosure. This misunderstanding would give the defendant all of the essential benefits of an advice of counsel defense without having to bear the burden of proving any of the elements of the defense.

*Id.*

Accordingly, in *Tourre*, the court precluded as irrelevant and prejudicial: (1) evidence used solely to show lawyers attended or set up meetings; (2) evidence that lawyers approved of certain documents or disclosures; and (3) the placing, by the defendant, of undue focus on the fact that a lawyer was present at meetings or reviewed documents or disclosures. *Id.* at 685. Although the defendant was allowed to present evidence of the attendees of meetings and to include professional descriptions for those participants, defense counsel in *Tourre* was precluded from mentioning the presence of lawyers in their opening statements or arguments. *Id.*

### C. A Presence of Counsel Defense Should Be Precluded

The defendant should not be permitted to circumvent the substantive and notice requirements of an advice of counsel defense by relying instead on evidence of the "presence of counsel" as indicative of his good faith or lack of criminal intent. Properly understood, the defendant's May 10 letter seeks to reap the benefits of the "presence" of attorneys—by arguing that counsel's proximity to the defendant's conduct connotes the defendant's good faith—without absorbing the costs: whether the defendant "honestly and in good faith" sought counsel's advice, whether his attorneys were fully informed of the relevant facts, and whether the defendant acted in accord with his attorney's advice. *See United States v. Shea*, No. 20 Cr. 412-4 (AT), 2022 WL 1443918, at *7 (S.D.N.Y. May 6, 2022). Absent an understanding of the nature of counsel's involvement in Guo's affairs, "the mere presence of [Guo's] counsel is not probative of anything. It does not establish what was said between client and counsel. And, where there is not evidence that all relevant information was disclosed to counsel and that counsel's ensuing advice was followed, it cannot establish the defendant's good-faith reliance on the advice of counsel." Tr. at 15, *United States v. Gillier*, No. 11 Cr. 409 (PAE) (S.D.N.Y. July 5, 2022) (Ex. A) (precluding presence of counsel defense); *see also United States v. Gillier*, No. 11 Cr. 409 (PAE) Dkt. 103 (Ex. B) (S.D.N.Y. July 5, 2022) (denying reconsideration of presence of counsel defense).

Judge Rakoff recognized the risk of a presence of counsel defense in *United States v. Petit*, No. 19 Cr. 850 (JSR), noting that defense counsel "has been quite good in avoiding" raising presence of counsel and accountant issues, but that if they raise such issues in summation "I will probably interrupt right then and there and say 'There is no defense of counsel here, there is no auditor advice defense.'" Likewise, in *SEC v. Stoker*, No. 11 Civ. 7388 (JSR) (S.D.N.Y. 2012), the district court took exception to defense counsel's effort to highlight, through questioning, that attorneys had reviewed certain offering materials that the SEC charged were materially misleading. Specifically, the court recognized that "absent evidence that counsel knew either the information that Mr. Stoker allegedly kept secret, from outsiders, or knew the information that the SEC claims were distorted misrepresentations, the role of counsel in any of this [was] *totally irrelevant.*" *Stoker*, Dkt. No. 100, July 23, 2012 Trial Tr. at 895-96 (emphasis added). The court further recognized that questioning about the role of attorneys invited "all the danger of the jury misunderstanding the alleged purpose" of the testimony. *Id.* at 981. Ultimately the court gave a supplemental limiting instruction to the jury that attorneys' "signing off" on something may or may not be relevant, depending on whether counsel actually received the relevant information. *Id.* at 969; *see also SEC v. Lek Securities Corp.*, 17 Civ. 1789 (DLC), 2019 WL 5703944, at *4 (S.D.N.Y. Nov. 5, 2019) ("References to counsel's communications are not relevant in the absence of an advice-of-counsel defense and should be excluded as well pursuant to Rule 403.").

To be sure, some courts have allowed defendants to offer limited evidence of lawyers' involvement in allegedly inculpatory decisions or conversations to support an argument that the defendant lacked intent to defraud. *See, e.g., United States v. Tagliaferri*, No. 13 Cr. 115 (RA) (S.D.N.Y. June 26, 2014), Trial Tr. at 84-85 (Ex. C) ("the defendant may argue that attorneys who drafted or reviewed documents related to the charged transactions did not inform him of the illegality … and that the defendant took comfort in the attorney silence"). Importantly, however, even those courts that permit such evidence have required extensive pretrial disclosures and have carefully policed references to counsel in testimony and argument to ensure that the defendant does not unfairly hide behind the attorney-client privilege or attempt to mount a disguised reliance argument, given the concerns of relevance and prejudice. *See id.* (noting that the defendant needed

to produce documents to the government, particularly in light of his untimely waiver decision); *United States v. Hild,* No. 19 Cr. 602 (RA) (S.D.N.Y. Apr. 15, 2021), Trial Tr. at 215 (Ex. D) (noting risk that presence of counsel arguments in the absence of a waiver risks "misleading the jury" by suggesting that "counsel was there for the entirety of the time looking at the relevant issue which suggests that they gave their blessing without knowing what information they provided").

The out-of-district authorities cited by the defendant are not to the contrary. In *Howard v. SEC*, the court reviewed the imposition of an SEC order following an administrative proceeding, not a jury trial. 376 F.3d 1136, 1138, 1141 (D.C. Cir. 2004). While the court found that certain evidence of counsel's involvement in transactions was relevant to Howard's intent, the specific attorneys involved, the counsel rendered, and the nature of Howard's reliance all appear to have been known to the SEC. *Id*. at 1147-48. The same is not true here—the Government does not know whether attorneys approved or disapproved of any of Guo's conduct, or even *what* conduct attorneys were involved in; rather, Guo wants to point to the presence of attorneys in general as evidence of good faith, without disclosing which attorneys were involved in which transactions or operations, whether attorneys approved of Guo's actions or whether Guo acted in contravention of his counsel's advice. Moreover, because *Howard* involved an administrative proceeding, and not a jury trial, that court did not grapple with the question of whether the introduction of evidence of counsel's involvement would confuse or mislead a factfinder, *id.* at 1141, 1147-48, which was a driving force behind the decision in *Tourre*, 950 F. Supp. 2d at 682-83. Similarly, the court in *SEC v. Present* permitted limited evidence about attorneys' involvement *after* the privilege holder waived privilege over six years of communications concerning "disclosure, advertising, and marketing" and "compliance with rules and regulations of the [SEC]." *See SEC v. Present*, No. 14 Civ. 14692 (LTS), 2017 U.S. Dist. LEXIS 120351, at *3 (D. Mass. July 31, 2017). The *Present* court limited the defendant's ability to introduce evidence that attorneys were consulted to a single transaction concerning the marketing of a particular company investment offering and, even then, recognized that an appropriate jury instruction might be required to "prevent undue prejudice and guide the jurors' consideration of this and all other evidence." *Id.*

A defendant cannot use the presence of attorneys as both "a shield and a sword." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991); *United States v. Schulte*, No. S2 17 Cr. 548 (PAC), 2020 WL 133620, at *5 (S.D.N.Y. Jan. 13, 2020) ("Underlying any determination that a privilege should be forfeited is the notion of unfairness that results when a party attempts to use the attorney client privilege as both a sword and a shield" (quotation and citation omitted)). The defendant's May 10 letter not only attempts an end run around the requirements of an advice of counsel defense, it also, through an *ex parte* submission, appears to attempt to conceal the very information about the presence of counsel upon which the defendant intends to rely.

In this case, there is a pronounced concern that, absent an opportunity to understand the full scope of an attorney's interaction with the defendant, arguments that lawyers participated in some way in the defendant's actions will mislead and confuse the jury. This is because Guo actively conspired with certain attorneys, while other attorneys operated as unwitting agents of Guo's criminal enterprise. By way of example:

- With respect to G|CLUBS, in response to interrogatories in an arbitration, several attorneys knowingly and intentionally concealed co-defendant Yvette Wang's role at G|CLUBS, as well as relevant financial transactions, from the arbitration panel in an effort to further the goals of the conspiracy.

- Guo and his co-conspirators directed that approximately $46 million of fraud proceeds be transferred to an attorney's escrow account to conceal that the source of those funds was fraud. These funds were then used to purchase and furnish the Mahwah Mansion.

- Another attorney was used by the G Enterprise to pay invoices for the extravagant renovation of the Mahwah Mansion for the benefit of Guo's family. This attorney was retained by an entity controlled by Guo's security guard, who tasked this attorney with how to spend funds traceable to G|CLUBS victims. Had this attorney been fully informed that the funds they used were fraud proceeds, that attorney would not have facilitated payments for the Mahwah Mansion.

- Guo's co-defendant and chief of staff, Wang—while in custody, following her arrest in this case—used her prior counsel to convey her request that a co-conspirator retrieve bank checks consisting of millions of dollars of G|CLUBS funds, *i.e.*, fraud proceeds, that were in a P.O. Box in New York City.

- After Guo's arrest, an attorney who had worked with Guo for years lied to a bankruptcy court judge to help conceal Guo's connection to several entities in the G Enterprise. That attorney falsely claimed to the bankruptcy court that Guo has no "business dealings." As that attorney well knew, Guo has many business dealings—indeed, the Government has recordings of that attorney discussing Guo's business dealings with co-conspirators.

Guo's conduct occurred over a period of approximately six years, involved nearly three dozen attorneys, and hundreds of separate transactions. The defendant should not be permitted to inject irrelevant and confusing evidence regarding the involvement of those numerous attorneys because the presence of counsel on documents, or counsel's participation in communications, or involvement in transactions, would be irrelevant, prejudicial, and misleading, as the jury would *not* know (due to Guo's insufficient notice and failure to waive privilege, under the guise of his decision not to advance a formal advice of counsel defense) whether Guo followed lawful advice, shunned lawful advice, or concealed facts from his counsel to use them as unwitting tools in his Enterprise—all of which Guo has done.

Indeed, the Court is currently considering whether an attorney's advice ("Witness-1") in connection with the GTV Private Placement is protected by privilege (the Government does not believe that it is). At issue is that Witness-1 participated in a conversation with co-defendants Je and Wang, during which Je suggested pooling unaccredited investor funds from the GTV Private Placement. Witness-1 sought and received outside legal advice on that topic. Witness-1 then communicated his understanding of what was legally permissible, and impermissible, regarding the upcoming private placement. Thereafter, Wang directed Witness-1 to resign from GTV. As relevant here, Guo asserts that the advice he received from Witness-1 is inadmissible. Guo's argument underscores the problem of his purported "presence-of-counsel" defense. If Witness-1 instructed Guo how to act lawfully, and Guo declined to follow that lawful advice, it would be evidence of Guo's willfulness to violate the law. Assuming that is the circumstance, shielding the content of Witness-1's legal advice *and* relying on Witness-1's presence to suggest Guo acted

lawfully would misrepresent the facts to the jury.

### D. Conclusion

Ultimately, the defendant should not be permitted to circumvent the formal notice and substantive requirements of an advice of counsel defense by relying on the mere "presence of counsel," particularly absent notice of the details of such a defense. The defendant should be precluded from asserting a presence of counsel of defense at trial.[1]

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: __/s/_____
Micah F. Fergenson
Ryan B. Finkel
Justin Horton
Juliana N. Murray
Assistant United States Attorneys
(212) 637-2190 / 6612 / 2276 / 2314

---

[1] To the extent that the defendant implies that the presence of counsel is indicative of good faith, an appropriate limiting instruction should be given to protect against jury confusion.