O5E5guoC

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,              New York, N.Y.

4            v.                            23 Cr. 118 (AT)

5   MILES GUO,

6            Defendant.

7   ------------------------------x

8                                         May 14, 2024
                                          2:10 p.m.
9

10  Before:

11                    HON. ANALISA TORRES,

12                                         U.S. District Judge

13

14                    APPEARANCES

15  DAMIAN WILLIAMS
         United States Attorney for the
16       Southern District of New York
    BY:  RYAN B. FINKEL
17       JULIANA MURRAY
         MICAH FERGENSON
18       JUSTIN HORTON
         Assistant United States Attorneys
19

20  PRYOR CASHMAN, LLP
         Attorneys for Defendant
    BY:  SIDHARDHA KAMARAJU
21  BY:  MATTHEW S. BARKAN
              -and-
22  ALSTON & BIRD, LLP
    BY:  E. SCOTT SCHIRICK
23           -and-
    SABRINA P. SHROFF

24

25  ALSO PRESENT:  VICTOR CHANG, Mandarin Interpreter
                   SHI FENG, Mandarin interpreter
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

O5E5guoC

| | |
|---|---|
| 1 | (Case called) |
| 2 | THE COURT:  Would you make your appearances, please. |
| 3 | MR. FINKEL:  Good afternoon, your Honor.  Ryan Finkel, |
| 4 | Juliana Murray, Micah Fergenson, Justin Horton for the |
| 5 | government, joined by Isabel Loftus, a paralegal in our office. |
| 6 | MR. KAMARAJU:  Good afternoon, your Honor.  Sid |
| 7 | Kamaraju, Sabrina Shroff, Scott Schirick and Matthew Barkan on |
| 8 | behalf of Mr. Guo, who is seated at the back table, and we are |
| 9 | joined by our paralegal Ruben Montilla. |
| 10 | THE COURT:  Please be seated.  I understand that I |
| 11 | must first arraign the defendant on the S 3 superseding |
| 12 | indictment; is that correct? |
| 13 | MR. FINKEL:  Yes, your Honor. |
| 14 | THE COURT:  So, Mr. Guo, do you have a copy of the |
| 15 | superseding indictment? |
| 16 | THE DEFENDANT:  Yes. |
| 17 | THE COURT:  Was that document translated for you? |
| 18 | THE DEFENDANT:  Yeah. |
| 19 | MR. KAMARAJU:  Your Honor, we went over the document |
| 20 | with a translator with Mr. Guo as well. |
| 21 | THE COURT:  Do you want me to read it to you here in |
| 22 | public or do you waive its public reading? |
| 23 | THE DEFENDANT:  Not needed, your Honor. |
| 24 | THE COURT:  How do you plead; guilty or not guilty? |
| 25 | THE DEFENDANT:  Not guilty. |

O5E5guoC

1          THE COURT:  You may be seated.

2          Would the interpreters please identify themselves?

3          INTERPRETER:  Victor Chang, your Honor.

4          INTERPRETER:  Good afternoon, your Honor.  My name is

5    Shi Feng.

6          THE COURT:  And Mr. Guo, you understand what the

7    interpreters are saying; is that correct?

8          THE DEFENDANT:  Yes.  I hear all right.

9          THE COURT:  Yesterday the defendant submitted a letter

10   raising three issues.  First, he argues that the testimony of

11   one of the government's witnesses, whom I will call Witness-A,

12   is inadmissible.  Witness-A intends to testify that after

13   Mr. Guo was arrested, one of his attorneys asked Witness-A to

14   execute a "false affidavit" in the bankruptcy court.  Witness-A

15   believes that the attorney is "acting as the underground

16   messenger" between Mr. Guo and his associates.

17        In my May 2nd motion *in limine* order I denied the

18   government's motion to admit evidence of Mr. Guo using an

19   attorney to "ferry messages" to others, finding that the

20   evidence was not sufficiently probative to overcome the

21   prejudicial effect of revealing Mr. Guo's detention.  I also

22   noted that the communications between Mr. Guo and his lawyer

23   might be privileged.

24        The government states that it will not elicit that

25   Mr. Guo was detained at the time, nor that the attorney

O5E5guoC

1    was"ferrying messages to and from" MDC.

2             I reject defendant's argument that this testimony

3    would necessarily require the revelation of Mr. Guo's detention

4    and I do not find that the conversation between the attorney

5    and Witness-A, a third-party, implicates the attorney-client

6    privilege.

7             The defendant also objects to Witness-A's proposed

8    testimony that "the business ventures at issue in the

9    indictment are scams," which he argues goes to the ultimate

10   legal issue at trial.  But, under Federal Rules of Evidence 701

11   and 704, a lay witness, like Witness-A "may testify in the form

12   of an opinion, even one that goes to an ultimate issue to be

13   decided by the trier of fact, if the testimony is helpful to

14   clear understanding of the witness' testimony of the

15   determination of a fact in issue." *Cameron v. City of New*

16   *York*, 598 F.3d 50, 62 (2d Cir. 2010).  Moreover, this testimony

17   is admissible as proof of Witness-A's impressions which were

18   derived from their direct participation in the conspiracy.

19   *United States v. Hill*, 644 F. Supp. 3d 751 (S.D.N.Y. 2022).

20            The defendant's motion to preclude Witness-A's

21   testimony in its entirety is, therefore, denied.

22            Second, the defendant asks to adjourn trial on Fridays

23   so that he can have more time to review discovery with his

24   counsel.  The defendant will have the opportunity to confer

25   with his attorneys after we adjourn each day at 2:45 p.m.

O5E5guoC

1    Court will be in session on Fridays and the defendant's request

2    is denied.  The defendant also asks that the government provide

3    the defense notice, by 9:00 a.m. each Wednesday, of the

4    witnesses the government intends to call the following week,

5    and in what order.  The government has offered to disclose its

6    witnesses by the Saturday morning before they will be called,

7    which is acceptable to the Court, therefore the defendant's

8    request is denied.

9         Finally, the defendant asks that his counsel be

10   permitted to bring him lunch during the trial.  The application

11   is denied.

12        I have received a letter from the government dated

13   yesterday, seeking to preclude Mr. Guo from invoking a

14   "presence of counsel" defense.  Mr. Guo has stated that he does

15   not intend formally to seek an advice of counsel defense but

16   "reserves the right to present evidence of testimony regarding

17   his awareness that legal counsel is involved in certain

18   transactions."

19        I agree with the government that this evidence may be

20   irrelevant and risks confusing the jury.  If Mr. Guo had

21   asserted the advice of counsel defense he would have been

22   required to disclose his communications with his attorney to

23   determine if he fully and honestly laid out all the facts and

24   if he followed his attorney's advice.  *United States v. Scully*,

25   877 F.3d 464, 476 (2d Cir. 2017).  Having chosen to not assert

O5E5guoC

1   such a defense, Mr. Guo cannot now use the presence of

2   attorneys as both a shield and a sword.  Accordingly, I will

3   follow the approach utilized by Judge Katherine Forrest in

4   *S.E.C. v. Tourre*, 950 F.Supp.2d 666, 684-85 (S.D.N.Y. 2013).

5   That is, counsel for the defense "will not be precluded

6   altogether from saying the words 'counsel,' 'lawyer,' or

7   'attorney,'" but will also not "be permitted to zero in on the

8   presence or involvement of lawyers for the sake of highlighting

9   their presence or involvement" Id. at 685.  In their opening

10  statements, defense counsel will not be permitted to refer to

11  the involvement of lawyers in any transactions.  The Court will

12  preclude evidence that solely shows that lawyers attended or

13  set up meetings which is irrelevant and the Court will give a

14  limiting instruction if Mr. Guo refers to the presence or

15  involvement of lawyers.

16          I am now going to discuss how voir dire is going to

17  work.  As the parties are aware, the jury in this case will be

18  anonymous to the public, their identities will only be known to

19  the Court and the parties.  I take the privacy and security of

20  the jury extremely seriously and expect the parties to do the

21  same.  You are to carefully safeguard their information from

22  anyone who is not a member of the attorney team including after

23  the close of the case.  I will now go over how voir dire will

24  operate with an anonymous jury.

25          My law clerk will now provide you with the seating

O5E5guoC

1    charts.

2          The jury department will generate a list which

3    includes the names of each of the jurors with numbers indicated

4    in the left-most column, placing the potential jurors in a

5    randomized order numbered from 1 to 200.

6          One moment.

7          (Court and law clerk confer)

8          THE COURT:  My law clerk is going to give you an

9    example of what this list will look like, will show it to you.

10          Each juror will have a card with their number which

11    corresponds to their place in the randomized list.  The first

12    100 potential jurors, meaning those who, after randomization,

13    are the first 100 names on the jury list, will be brought up to

14    the courtroom to start the voir dire.  After my law clerk

15    swears them in, they will be ushered, one by one, to their

16    seats in accordance with their number.  Juror no. 1 will sit in

17    seat no. 1; juror no. 2 will sit in seat no. 2; and so on.  My

18    law clerks will privately confirm that the potential juror's

19    name, seat number, and jury card number all match up.

20          Any questions about that?

21          MR. FINKEL:  Not from the government.

22          MR. KAMARAJU:  No, your Honor.

23          THE COURT:  The parties are reminded that they are

24    forbidden from sharing the jury list containing the potential

25    jurors' identities.  Likewise, you are forbidden from sharing

O5E5guoC

1    the ultimate list of jurors and alternates.  Side bars will be

2    on the record.  The parties are instructed to refer to jurors

3    by their juror number.  For example, "Juror no. 1," in side

4    bars and at all times in open court.  I am now going to go over

5    the seating chart.

6            To start with the first sheet of the seating chart,

7    the 18 boxes represent the 18 seats in the jury box.  Seat

8    no. 1, where juror no. 1 will be sitting, is the left most seat

9    in the front row.  The middle row contains, from left to right,

10   seats 7 through 12.  No. 13 is the back left seat, and 18 is

11   the back right seat.

12           Any questions?

13           MR. FINKEL:  No, your Honor.

14           MR. KAMARAJU:  No, your Honor.

15           THE COURT:  Turning to the second sheet.  This chart

16   represents the first two rows of the gallery and includes the

17   benches on both sides of the aisle.  From my vantage point from

18   my music stand, seat 19 is the left-most seat in the first row.

19   The first row is the row closest to the jury box and counsel

20   tables.  Six people will sit on that bench.  Then, after the

21   aisle, are seats 25 through 32.  Eight people will sit on that

22   bench.  The right-most seat in the first row of the gallery

23   from my vantage point from my music stand, is seat 32.  The

24   second row contains seats 33 through 46.  The next page

25   contains the third and fourth rows in which jurors 47 through

O5E5guoC

1    74 will be seated.  Finally, the last page contains the fifth

2    and sixth row, the rows closest to the door, jurors 75 through

3    100 will be seated in these rows.

4              Any questions?

5              MR. FINKEL:  No, your Honor.

6              MR. KAMARAJU:  No, your Honor.

7              THE COURT:  I will first do general voir dire

8    questions with all 100 seated jurors and then shift to asking

9    individual questions to the first 50 jurors.  For this case we

10    will sit 12 jurors and six alternates.

11              For the 12 jurors the government has six peremptory

12    challenges and the defendant has 10.  For the alternates, each

13    side will have three additional peremptory challenges.

14              So, I am going to describe the peremptory strikes

15    process that we will be utilizing in this trial which is likely

16    different from any that you have used before.  We will start

17    first with the defense, and the defense can strike as many in

18    that first group of 12 that they wish to strike, and so they

19    could use all of their strikes or just a few or none.  Then we

20    would go to the prosecution and the same applies.  You can use

21    any number of strikes that you want.  You will be going back

22    and forth until all of the defendant's strikes are used up, and

23    the same process we will use for the alternates.

24              Are there any questions?

25              MR. FINKEL:  No, your Honor.

O5E5guoC

1          MR. KAMARAJU:  No, your Honor.

2          THE COURT:  So just to be clear, neither party may go

3    backwards, you can only go forwards in terms of using the

4    peremptory strikes.  I am going to issue written orders on the

5    remaining motions *in limine*, mainly the *Daubert* and Witness 1

6    issues.  I plan to do that shortly.

7          By tomorrow, May 15, each side should provide the

8    Court with a list of attorneys and paralegals who will be

9    involved in the trial, a list of potential witnesses and other

10   individuals whose names may be mentioned, a list of businesses

11   or entities that may be mentioned during the trial, and a list

12   of locations involved in the trial.  I will read those lists to

13   the venire during voir dire.  Also, by tomorrow, please e-mail

14   my chambers to set up a time for an AV walk-through and

15   technology test so that when we start the trial there are no

16   open tech issues, we hope.

17         The marshals have asked me to ask Mr. Guo to submit

18   his clothing request as soon as possible.

19         Please also submit your wi-fi and electronic device

20   requests by Friday, May 17.  I have arranged for defense

21   counsel to use the jury room in my usual courtroom, courtroom

22   15D, as a war room over the course of the trial.  Defense

23   counsel should coordinate access to the room with my chambers

24   and keep it tidy.  My law clerks will not stay late into the

25   evening so that counsel can keep working in the war room.

O5E5guoC

1    Counsel should generally expect to return to their offices to

2    work following proceedings for the day.

3              Are there any applications?

4              MR. FINKEL:  Not from the government.

5              MR. KAMARAJU:  No, your Honor.

6              THE COURT:  All right, then.  So that brings our

7    conference to a close and we are adjourned until trial.

8                              o0o

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25