

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

May 23, 2024

**VIA ECF**
The Honorable Analisa Torres
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007-1312

**Re: *United States v. Guo*, S3 23 Cr. 118 (AT)**

Dear Judge Torres:

The Government respectfully writes with respect to potential improper arguments during the defense opening and throughout the trial based on comments made by the defense to the media on the eve of trial. For the reasons explained below, the Court should preclude the defense from opening or otherwise offering argument that (a) the defendant created his criminal enterprise to avoid being kidnapped or killed, or that (b) the defendant's having been a victim of certain conduct on one occasion "is a sign" that he is not a perpetrator of entirely different illegal conduct on other occasions.

**A. Background**

On the morning that jury selection began, articles were published in the Wall Street Journal ("WSJ") and the New York Times ("NYT") that set forward defense narratives that would be improper argument at trial. *See* Ex. A ("WSJ Article"); Ex. B ("NYT Article"). The WSJ Article—which was, notably, headlined "Political Dissident or $1 Billion Fraudster? A Chinese Tycoon Heads to Trial"—provided in relevant part:

> On its face a fraud trial, the case is also among a handful of federal prosecutions now winding their way through New York courts that promise to detail how China has sought to exercise legal power within the U.S., or what the government calls transnational repression.
>
> While the other prosecutions target suspected Chinese agents and alleged managers of a Chinese police outpost in New York, Guo's defense is expected to argue that his actions were efforts to evade that kind of Chinese pressure. The government's challenge will be to prove that the defendant turned Chinese coercion into a fundraising gimmick.
>
> [ . . . ]

> Guo is expected to claim that what the government called a "criminal organization" that laundered money through 500 bank accounts in 80 names was instead a structure designed to frustrate a Chinese government campaign to stifle, *kidnap or kill him* in the U.S.

Ex. A at 3-4 (emphasis added).[1]

An article in the NYT, headlined "Fraud Trial Begins for Chinese Billionaire Who Allied Himself With America's Right," outlined a similar theory of the defense and quoted defense counsel:

> Mr. Guo's defense team, which includes Sidhardha Kamaraju, a former federal prosecutor in Manhattan, . . . plan to show that Mr. Guo was a target of the Chinese government, which mounted a lobbying campaign during the Trump administration to repatriate him.
>
> The campaign he endured "is a sign that he would never victimize anybody," Mr. Kamaraju said in an interview.

Ex. B at 3.

**B. Discussion**

The defenses articulated by defense counsel in the NYT, and laid out in narrative form in the WSJ Article, are impermissible and should be precluded at trial.

*First*, any argument that the defendant created his criminal enterprise as "a structure designed to frustrate a Chinese government campaign to stifle, *kidnap or kill* him in the U.S." is improper and should be precluded. Ex. A at 4 (emphasis added). That type of argument is nothing but an improper attempt to smuggle in a defense or duress or justification—defenses that the defendant had previously disclaimed and which the Court has already ordered may not be set forth

[1] During jury selection, one of the jurors stated that he reads the WSJ and had read an article related to the case, which may have been the one in that morning's paper:

> THE COURT: And what knowledge do you have about this case?
>
> JUROR: So I likely read it in *The Wall Street Journal* that -- so the knowledge I have is that he was or had a strong relationship with Steve Bannon. I think his ultimate goal was to take down the communist regime in China. And that he defrauded, I believe it was, a billion dollars or so from investors or was, you know, alleged to have defrauded about a billion dollars from investors. And that, you know, Steve Bannon has a close relationship with Trump, so it was all in the -- I guess *The Wall Street Journal* and the papers that I read.

(Trial Tr. 123). This framing of the defendant's "ultimate goal" aligns with the theory of the defense set forth in the WSJ Article.

at this trial. Indeed, in its May 2, 2024 ruling granting the Government's motion *in limine* on this topic, the Court ruled:

> The Government moves to preclude Defendants from arguing, or introducing evidence to suggest, that "their actions were justified or necessary as a result of targeting by the CCP . . . or that they operated under duress." Gov. Mem. At 56. Defendants state that they do not intend to raise duress or justification defenses. See Guo Mem. At 63 ("[Guo] has not argued in any pleading or paper that this [targeting] evidence supports a defense of duress or justification"); Wang Mem. At 40 ("Wang does not intend to rely on any argument that . . . the alleged fraud was somehow the result of duress or necessity."). The Government's motion is, therefore, GRANTED, and Defendants shall not raise these defenses at trial. As explained above, however, the Court will not preclude Defendants at this juncture from introducing evidence of CCP targeting for other permissible purposes.

Dkt. 319 at 14-15. The defendant should be precluded from arguing that somehow all of his criminal acts were undertaken to avoid being "kidnap[ped] or kill[ed]." That argument is an impermissible defense of duress or justification, and it would not go to the "permissible purposes" that the Court has recognized. The "permissible purposes" are rebutting what the defense claims is "consciousness of guilt" evidence, such as explaining (1) why the defendant used many electronic devices, (2) why the defendant's organization used many bank accounts and his name was not on them, and (3) why the mansion the defendant bought for himself and his family using G|CLUBS victim funds was kept "secret" from his followers and from G|CLUBS employees. *See* Dkt. 319 at 14 (independent evidence of CCP targeting permitted to "elevate[ ] Defendants' alternative narrative beyond mere paranoia"); Dkt. 243 (Mot. To Compel Order) at 6-7 (setting out these bases for its decision on why CCP targeting evidence is relevant and helpful to the defense). The Government understands the Court's ruling on those points and is not seeking reconsideration of them here. The Government only asks that the Court enforce the line it has drawn. Evidence of CCP targeting is *not* a justification for committing the criminal acts with which the defendant is charged, *nor* is it a basis for any kind of duress defense, as this Court has already ruled.[2] Dkt. 319 at 14-15. The defense narrative set forth in the media suggest that may well be what the defense intends, impermissibly, to argue to the jury. The Court should expressly preclude any such argument, and specifically direct the defense not to reference it in their opening statement.[3]

---

[2] Indeed, it is not a defense to charges at all; that is, the jury could conclude that the defendant used many cellphones and bank accounts because of the CCP, and kept his mansion secret because of the CCP, and still convict him of every count in the Indictment.

[3] In order to establish a claim of duress that constitutes a legal excuse for criminal conduct, a defendant must show that "(a) 'at the time the conduct occurred,' he was subject to actual or threatened force, (b) the force or threat was of such nature as to induce a well-founded fear of impending death or serious bodily harm, and (c) there was no reasonable opportunity to escape from the force or threat other than by engaging in the otherwise unlawful activity." *United States* v. *Stevens*, 985 F.2d 1175, 1181 (2d Cir. 1993) (citing *United States* v. *Mitchell*, 725 F.2d at 837). Evidence of a defendant's "generalized fear" does not satisfy the requirement of a well-founded fear of impending death or serious bodily harm; there must have been a threat that was specific and prospects of harm that were immediate. *See United States* v. *Esposito*, 834 F.2d 272,

*Second*, the Court should preclude the defense from arguing that the defendant having been a victim of certain conduct by others on one occasion "is a sign" that he is not a perpetrator of entirely different illegal conduct on other occasions—the latter being the conduct and the occasions that are actually the subject of the charges for which the defendant is standing trial. The defense's apparent argument—as evidenced by the NYT Article—is improper. For one, the claim relies on improper propensity reasoning (albeit strained reasoning at that). That is, the defendant is arguing that because he was a victim of some other crimes, he cannot be the perpetrator of different crimes. That is not only illogical, but improper under the Rules of Evidence, which generally view propensity evidence with great skepticism. *See* Fed. R. Evid. 404. While Rule 404 allows a defendant to put a "pertinent trait" at issue, being a victim of specific illegal acts is not a character trait. Sadly, any person—with any trait or combination of traits—can be a victim of a crime. Being a victim of a crime relates to specific historical facts and does not shed light on whether someone is good or bad, or "what sort of person [a defendant] really is." Fed. R. Evid. 404, Committee Notes to 2006 Amendment (internal quotation marks omitted). There is thus simply no logical connection between the specific historical acts which resulted in the defendant being a victim of CCP targeting (via hacking, repatriation efforts, and other targeting efforts) and whether he participated in a scheme to defraud investors by lying to them and then spending investor money on himself and his family. Argument that the defendant's prior victimization means he did not victimize others is akin to introducing so-called "prior good act" evidence, and "[i]t is well established that a defendant 'may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions.'" Dkt. 319 at 16 (quoting *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990)). Accordingly, any argument suggesting that Guo being a victim of one crime indicates (or "is a sign") he is innocent of an entirely different crime should be excluded under Rule 403 as creating a substantial risk of misleading the jury and confusing the issues. Moreover, there is a substantial risk that the purpose of such argument would be to curry sympathy from the jury or invite jury nullification. *See, e.g.*, *United States v. Edwards*, 101 F.3d 17, 20 (2d Cir. 1996) (approving district court's decision to prohibit any argument in support of jury nullification).

*Third*, consistent with the Court's ruling that the defense may not argue "that the prosecution team is 'improperly linked to the CCP or in any way malicious,'" the defense may not in any way suggest that any aspect of this prosecution is a result of malign CCP influence, lobbying, or corruption. Dkt. 319 at 13. There is no basis for the defense to put forward such an

---

276 (2d Cir. 1987); *United States* v. *Lorenzo*, 52 Fed. App'x 553, 554 (2d Cir. 2002) (summary order); *see also United States* v. *Paul*, 110 F.3d 869, 871 (2d Cir. 1997) ("The availability of the duress defense in this case turns on the point in time as to which the defendant faced imminent danger and lacked an opportunity to avoid the danger except by committing an unlawful act.") Moreover, "where there is reasonable opportunity to escape the threatened harm, the defendant must take reasonable steps to avail himself of that opportunity, whether by flight or by seeking the intervention of the appropriate authorities." *United States* v. *Bakhtiari*, 913 F.2d 1053, 1058 (2d Cir. 1990) (citation omitted); *see also Caban*, 173 F.3d at 94 (defendant was properly barred from asserting a duress defense where "[h]e had several opportunities to end his involvement in the conspiracy and warn the police, but he did not do so"); *United States* v. *Alicea*, 837 F.2d 103, 105-06 (2d Cir. 1988).

argument. Doing so would be inaccurate, mislead the jury, and confuse the issues. Properly understood, such an improper argument is nothing more than an attack on the validity of this case. *See United States v. Knox*, 687 F. App'x 51, 54 (2d Cir. 2017) (finding it appropriate to instruct the jury that "the government is not on trial").

To be clear, the Government is not contesting that certain evidence of CCP targeting is admissible pursuant to the Court's rulings. But that evidence is only admissible for certain purposes recognized by the Court, as described above. For the first time, in discussions with media on the opening of jury selection, the defense appears to have showed its hand that it intends to offer this evidence for plainly impermissible purposes and in support of improper arguments. The Court should expressly preclude any such argument at this trial, including in the defendant's opening statement.

## I. Conclusion

For the reasons outlined above, the Court should preclude the defense from opening or otherwise offering argument that (a) the defendant created his criminal enterprise to avoid being kidnapped or killed, or that (b) the defendant having been a victim of certain conduct on one occasion "is a sign" that he is not a perpetrator of entirely different illegal conduct on other occasions.[4]

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: /s/
Micah F. Fergenson
Ryan B. Finkel
Justin Horton
Juliana N. Murray
Assistant United States Attorneys
(212) 637-2190 / 6612 / 2276 / 2314

[4] In light of defense counsel's comments to the media, and the media coverage on the eve of jury selection, the Government also respectfully requests that the Court instruct the jury, once it is empaneled, not to read any coverage of this case in the press and remind defense counsel of their obligations pursuant to S.D.N.Y. Local Criminal Rule 23.1 (Free Press-Fair Trial Directives).