

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

May 30, 2024

**VIA Email & ECF**
The Honorable Analisa Torres
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007-1312

      **Re:**    ***United States v. Guo*, S3 23 Cr. 118 (AT)**

Dear Judge Torres:

      The Government writes respectfully concerning the testimony of Steele Schottenheimer, a managing director of Hayman Capital Management, L.P. ("Hayman"), about the potential uses and capacities of a Hayman financial product with which Ms. Schottenheimer has personal familiarity; specifically, the Hayman Hong Kong Opportunities Fund ("HHKOF"), which is an investment that pays off if the value of the Hong Kong Dollar significantly decreases.

      The defense has objected to the Government's attempt to elicit Ms. Schottenheimer's understanding, based on her personal perception, as to whether an investment in the HHKOF itself would have a negative impact on the Chinese Communist Party ("CCP"). For the reasons explained below, such testimony is admissible. As Ms. Schottenheimer explained during her direct testimony today, Ms. Schottenheimer is the managing director of investor relations for Hayman Capital, where she has worked for approximately 18 years. In that capacity, she interacts with potential investors and markets financial products to them—including, as relevant here, the HHKOF. Further, Ms. Schottenheimer has personal experience marketing and observing the performance *of the HHKOF*, which Hayman has offered since approximately 2017. The Government proffers that it can elicit that, since the HHKOF investment was made available, Ms. Schottenheimer has neither observed the Chinese economy collapse, nor that the CCP has fallen.[1] Further, Ms. Schottenheimer has personal knowledge of the size of the HHKOF, which pales in comparison to the trillion-dollar Chinese economy.

      "The Federal Rules of Evidence allow the admission of fact testimony so long as the witness has personal knowledge, while opinion testimony can be presented by either a lay or expert witness." *United States v. Cuti*, 720 F.3d 453, 457-58 (2d Cir. 2013). "[T]he distinction between statements of fact and opinion is, at best, one of degree." *Id.* (*quoting Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 168 (1988)); *see id.* (acknowledging "essential truth" of "Judge Posner's

---

[1] Given the colloquy at the end of the trial day, and the defendant's intent to seek to argue Guo's belief as to the impact of investment on the Chinese economy, the Government assumes there is no issue as to relevance.

observation that '[a]ll knowledge is inferential, and the combined effect of [Federal] Rules [of Evidence] 602 and 701 is to recognize this epistemological verity but at the same time to prevent the piling of inference upon inference to the point where testimony ceases to be reliable'" (alterations in original) (quoting *United States v. Giovannetti*, 919 F.2d 1223, 1226 (7th Cir. 1990)). "[P]ersonal knowledge of a fact 'is not an absolute' to Rule 602's foundational requirement, which 'may consist of what the witness thinks he knows from personal perception.'" *Cuti*, 720 F.3d at 458-59 (quoting Fed. R. Evid. 602 advisory committee's note).

A lay witness's testimony "in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. A rational perception is one involving first-hand knowledge or observation. *See United States v. Rea*, 958 F.2d 1206, 1215 (2d Cir. 1992). A witness's testimony is not based on scientific, technical, or other specialized knowledge if it is "the product of 'reasoning processes familiar to the average person in every life.'" *United States v. Yannotti*, 541 F.3d 112, 126 (2d Cir. 2008) (quoting *United States v. Garcia*, 413 F.3d 201, 216-17 (2d Cir. 2005)).

To the extent it has not already done so, the Government will lay the proper foundation to establish that Ms. Schottenheimer's understanding of the HHKOF is based on her personal observations and experiences through her work at Hayman.  Thus, Rule 701(a) is satisfied.  As to 701(b), there should be no serious dispute that the opinion of Ms. Schottenheimer—the individual who marketed the HHKOF to what she understood was Kwok's family office—regarding the impact of the HHKOF investment on the broader economy is helpful to the jury.  That is especially the case if Guo is going to argue, as he has reserved the right to, that he believed the HHKOF would take down the CCP (which is factually untrue).

As for Rule 701(c), the Government will lay the foundation[2] that Ms. Schottenheimer's understanding is not based on "scientific, technical, or other specialized knowledge."  Despite arguments made today by defense counsel, Ms. Schottenheimer's testimony would merely convey information she obtained through her own personal experiences—including what is not controversial or complicated:  when an individual invests in a macroeconomic position, such as the HHKOF, that investment does *not* fight the CCP.  *See In re Tonopah Solar Energy, LLC*, 657 B.R. 393, 417–18 (D. Del. 2022) (proper lay opinion testimony by long-time corporate officer "about technical topics concerning the Plant's operations and ability to generate 400 GWh, the repair and remediation of the hot salt tank, and market rates for electricity).  Rather, an investment is a  bet on *how* the macroeconomic environment will perform.[3]  Ms. Schottenheimer's opinion, based on her personal perceptions about the HHKOF, is similar to an individual investing in an index fund—an individual can invest in the S&P 500, but doing so does not impact the macro economy.  Rather, such an investment is merely a bet regarding whether the S&P 500 will increase

_____

[2] If necessary, outside the presence of the jury.

[3] *See* https://www.investopedia.com/terms/g/global-macro-hedge-fund.asp ("Global macro hedge funds are market bets around economic events. Investors use financial instruments to create short or long positions based on the outcomes they predict as a result of their research. A market bet on an event can cover a wide variety of assets and instruments including options, futures, currencies, index funds, bonds, and commodities.")

in value.  Ms. Schottenheimer's opinion in this regard does *not* require specialized knowledge.  It is no more than conveying a widely accepted (and non-controversial) investing concept.  Indeed, Ms. Schottenheimer's opinion is also informed by her observations that, since the HHKOF was first marketed in approximately 2017, the CCP has not fallen.

In *United States v. Riggas,* the Second Circuit explained the distinction between acceptable Rule 701 testimony and expert testimony permitted under Rule 702.  The *Riggas* court upheld a district court's admission that introduction of lay witness testimony by Aldephia's former company accountant about the company's books, including effects of allegedly fraudulent debt reclassifications on company's relationship with other business entities, was proper.  490 F.3d 208, 224 (2d Cir. 2007).  This is because the testimony was based on the witness's observations during their twenty months as a company employee.  *Id*.  As explained by the Second Circuit, the testimony at issue was:

> about co-borrowing debt transferred from Adelphia's books to the ledgers of the RFEs. Brown had already testified that the purpose of the reclassifications was to mask the amount of money that the RFEs owed Adelphia. DiBella explained that these reclassifications involved (1) the reduction of debt in Adelphia's balance sheets; (2) a corresponding reduction in the amount owed to Adelphia by an RFE; and (3) the creation of a payable to the RFE from an Adelphia subsidiary. DiBella testified that Adelphia's net related-party receivable balance would have been $2.8 billion higher without the debt reclassifications, for a total of around $3.2 billion.

*Id*.  That testimony was *not* expert opinion testimony because it "result[ed] from a process of reasoning familiar in everyday life."  *Id*. (quoting Fed. R. Evid. 701).  Indeed, "[a] witness's specialized knowledge, or the fact that he was chosen to carry out an investigation because of this knowledge, does not render his testimony 'expert' as long as it was based on his investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise."  Id. at 224 (quotation marks and citations omitted).  Because the witness's testimony was "based upon his observations during his twenty months as an Adelphia employee," was helpful to the jury's understanding of a fact at issue, and was not based on specialized knowledge, even though the testimony concerned an explanation about "how the reclassifications affected the amount the RFEs owed Adelphia," the Second Circuit upheld its introduction at trial.  *Id*.

Ms. Schottenheimer's testimony is far closer to "reasoning processes familiar to the average person in everyday life" than what the Second Circuit permitted in *Riggas. United States v. Ferguson*, No. CRIM 3:06CR137 CFD, 2007 WL 4556625, at *1 (D. Conn. Dec. 20, 2007) (Droney, D.J.).  Ms. Schottenheimer's opinion is merely one that connotes the obvious concept that a financial investment in a currency option is not a means to promote political change in a foreign country.  The testimony is rooted in her own work at Hayman and her own observations about the CCP and the fact that the HHKOF has been an available investment product since 2017 and the CCP nonetheless persists.  Similarly, given that the overall size of the HHKOF dwarfs the size of the Chinese economy, common reasoning suggests that such a relatively small investment could not destroy the second-largest economy in the world.  The testimony is therefore permissible.  *See Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171, 180–82 (2d Cir. 2004) (holding that a specialized bank employee's opinions regarding complex international transactions were

permissible to the extent based on the employee's personal knowledge and "perceptions" arising from his work *at that bank*, and that such lay opinions were impermissible only when "rooted exclusively in his expertise in international banking"); *Ferguson*, 2007 WL 4556625, at *3 ("government's witnesses may provide their opinions as to whether information about AIG's loss reserves was significant to investors, provided that the government lays a proper foundation that the witnesses formed these opinions based upon personal knowledge"); *Disability Advocs., Inc. v. Paterson*, No. 03-CV-3209(NGG)(MDG), 2008 WL 5378365, at *14 (E.D.N.Y. Dec. 22, 2008) ("The Second Circuit has held that a witness's specialized knowledge does not preclude the witness from testifying under Rule 701, provided that the testimony was rooted in personal perception, regardless of whether the witness could have testified on other matters as an expert."); *Searles v. First Fortis Life Ins. Co.,* 98 F.Supp.2d 456, 461 (S.D.N.Y.2000) (noting that conclusions based on "a series of personal observations over time" may constitute personal knowledge).

Moreover, Ms. Schottenheimer has been personally involved in the marketing of HHKOF and other macro event-driven investments offered by Hayman. She should be permitted to testify that Hayman does not represent that investing in something like the HHKOF will help *bring about* the event that is being bet on, because that would be untrue, even for particularly large investments. Put another way, the investments are a bet on a predicted event, but it is not part of Hayman's marketing or strategy that the options Hayman buys—*i.e.*, the investments themselves, even when the investments are large—will help *cause* the predicted event itself. Ms. Schottenheimer knows this based on her extensive personal experience working at Hayman for years, and she should be permitted to provide this information, which is both true and helpful, to the jury.

The defense should not be permitted to shield the jury from a non-controversial and factually correct understanding of what the HHKOF is—*i.e.*, a way for investors to possibly make money (or hedge other investments against losses). Doing so would sow juror confusion. That is particularly the case because the witness is on the stand and can be cross-examined on her belief. *See Teen-Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399, 403 (3d Cir. 1980) (considering Rule 701 and noting "The modern trend favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination."); "); *see also United States v. Redd*, No. 06-60806, 2009 WL 348831, at *5 (5th Cir. Feb. 12, 2009) (quoting *Teen-Ed, Inc.* with approval).

Accordingly, the testimony is admissible.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:    /s/
    Micah F. Fergenson
    Ryan B. Finkel
    Justin Horton
    Juliana N. Murray
    Assistant United States Attorneys
    (212) 637-2190 / 6612 / 2276 / 2314