

**Sidhardha Kamaraju**

Direct Tel: 212-326-0895
Direct Fax: 212-326-0806
skamaraju@pryorcashman.com

May 30, 2024

**VIA ECF & EMAIL**

Hon. Analisa Torres
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:    *United States v. Guo*, Case No. 1:23-cr-00118-1 (AT)

Dear Judge Torres:

We write in response to the government's letter, filed earlier today, concerning the testimony of Steele Schottenheimer. The government invites error when it claims that it should be able to elicit testimony about "Ms. Schottenheimer's understanding, based on her personal perception, as to whether an investment in the HHKOF itself could have a negative impact on the Chinese Communist Party (the 'CCP')." (Govt. Ltr. at 1). While the government casts a narrower (and yet improper) net, the questions it posed before the jury were:

> Q: Ms. Schottenheimer, can investment in the Prodigious Series take down the CCP?
> A: No.
>
> Q: Can an investment in the Prodigious Series affect the Chinese economy?

Tr. 766:13-17. This testimony is inadmissible expert opinion testimony, which the government has not noticed. The government, having failed to retain an expert on this topic, now seeks to introduce this expert testimony as lay testimony. Because Federal Rule of Evidence 701 prohibits such evidence, this Court should not permit the government to elicit this testimony from Ms. Schottenheimer and her previous answer on the topic should be stricken.

The government's sole basis for admitting this testimony is Rule 701. Federal Rule of Evidence 701 limits lay witness opinion testimony to testimony that is:

(a) rationally based on the witness's perception;

PRYOR CASHMAN LLP

May 30, 2024
Page 2

>   (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
>   (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 701.

Fed. R. Evid. 701.

"[L]ay opinion must be the product of reasoning processes familiar to the average person in everyday life." *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005). Rule 701 thus "prevent[s] a party from conflating expert and lay opinion testimony thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth Rule 702 and the pre-trial disclosure requirements set forth in Fed. R. Crim. P. 16." *Id* at 215. "If the opinion rests in any way upon scientific, technical, or their specialized knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701." *Id*.

This circuit has repeatedly policed the line between unscientific lay-opinion testimony and specialized expert testimony governed by Rule 702. For example, in *United States v. Haynes*, the district court, over the defense's objection allowed a Customs and Border Protection Officer was permitted by the district court, over defense objection, to testify regarding a car's gas tank readings, where drugs had been secreted in said gas tank in an attempt to smuggle them into the United States. 729 F.3d 178, 183-184 (2d Cir. 2013). Specifically, in *Haynes*, the officer explained why the car's empty fuel light, which indicated that the gas tank was empty, would be on when there was gas in the car, due to the drugs secreted at the bottom of the gas tank. *Id*. at 184. In so doing, the officer testified "how the float on the outside of [a] gas tank worked and why [a] gas gauge would have registered zero to empty while . . . drugs were in the gas tank." *Id*. at 195. The Second Circuit held that the admission of this testimony was reversible error because in offering his testimony, the officer "did more than simply describe what he found in the gas tank and what he perceived" and thus crossed the threshold of permissible lay witness testimony under Fed. R. Evid. 701. *Id*. The Second Circuit held that this error, coupled with several others, required vacating the conviction. *Id.* at 197.

Similarly, in *United States v. Cabrera*, the district court permitted a DEA special agent—again over defense objection—to testify that based on the defendant's "excessive speeding, erratic lane changes, and U turns" the defendant was "experienced to know that he knows some law enforcement techniques and to deploy those countersurveillance techniques, to lose [officers] or lose the tail." 13 F.4th 140, 150 (2d Cir. 2021) (cleaned up). On review, the Second Circuit held that the district court abused its discretion in admitting this testimony, because the agent "drew upon his specialized knowledge and experience as a DEA detective." *Id*. As in *Haynes*, the Second Circuit vacated the defendant's conviction and remanded the case to the district court. *Id.* at 153.

And, in *Garcia*, the district court permitted a DEA case agent to testify regarding the alleged role that various defendants played in a purported criminal drug conspiracy. 413 F.3d at



May 30, 2024
Page 3

209. As in *Haynes* and *Cabrera*, the Second Circuit held that the admission of the testimony was error because the government had failed to demonstrate that the opinion was "informed by reasoning processes familiar to the average person in everyday life rather than by scientific, technical, or other specialized knowledge." *Id.* at 216.

Here, the testimony that the government seeks to elicit from Ms. Schottenheimer is far more complex than what the Second Circuit found to be the basis of error in *Haynes*, *Cabrera*, and *Garcia*. Here, the financial product involved is incredibly complicated on its own. The HHKOF involves a leveraged investment strategy focused on arbitrage between the Hong Kong Dollar and the U.S. Dollar.[1] But the government seeks to go one (or indeed several) steps further than testimony about the design of the investment product or the strategy behind it. Rather, the government seeks to ask Ms. Schottenheimer about her view as to the theoretical possibility that the strategy could topple the government of another nation and ruin or harm its economy. Even a cursory review of scholarly work on similar topics shows that this analysis is far beyond the "reasoning processes familiar to the average person in everyday life." *Garcia*, 413 F.3d at 215. For example, the modeling of investment on the Chinese economy has been the subject of complex academic and mathematical analysis. *See*, *e.g.* Shihong Zeng and Ya Zhou, *Foreign Direct Investment's Impact on China*, 18 INT'L J. ENVTL. RES. PUB. HEALTH 2021, 2839, at 6-9 (attached as Exhibit A). The impact that foreign exchange trading strategies can have on the greater market for the currencies involved has also been the subject of expert testimony in other criminal cases before this court. *See*, *e.g.*, Expert Disclosure of Professor Richard Lyons in *United States v. Phillips* (attached as Exhibit B).

Indeed, the government's own letter betrays the flaw in its reasoning. The government claims that Ms. Schottenheimer can testify based on her "personal experience marketing and observing the performance" of the HHKOF. (Govt. Ltr. at 1). But it goes on to say that this personal experience is based on her approximately 18 years as the managing director of investor relations for the Hayman Fund. The experience that Ms. Schottenheimer would rely on in offering this opinion is necessarily one that is not available to the "average person," who does not work at a hedge fund that offers a leveraged trading strategy intended to capitalize on the devaluation of the Hong Kong Dollar and the political relationship between Hong Kong and China.[2]

The government's attempt to analogize the testimony it seeks to elicit to that allowed in *United States v. Rigas*, 490 F.3d 208 (2d Cir. 224) is misplaced. In *Rigas*, an accountant with

---

[1] *See e.g.*, Exhibit GXHN26 at HAYMAN-SDNY-00000320 (noting that the investment was "[t]argeting notional exposure of approximately 200X each dollar invested").

[2] Indeed, it is doubtful that Ms. Schottenheimer even has the type of experience that the government claims to be relevant, given that it is Mr. Bass himself who "is primarily responsible for formulating and implementing the Fund's investment objectives and strategies related to global event-driven opportunities." (Ex. GXSM7 at 27.)



May 30, 2024
Page 4

personal knowledge of the books and records of the company at issue testified regarding the accounting impact of debt reclassifications that the prosecution had already established to be fraudulent. 490 F.3d at 224. The Second Circuit held that this testimony was permissible only "because it did not address what the appropriate accounting technique should have been but was instead simply offered to show what the amount of the debt would have been had the fraud not occurred." *United States. v. Cuti,*, 720 F.3d 453, 460 (2d Cir. 2013) (discussing *Rigas*, 490 F.3d at 225). In other words, *Rigas* did not involve the application of any true expertise, and instead was a matter of basic math applied to facts within the witness's factual knowledge. The testimony that the government seeks to elicit here, however, calls not only for knowledge of the HHKOF, but also for expertise in the Chinese economy and the political relationship between Hong Kong and China, as well as the wherewithal to conduct complex financial modeling and its impact (without explaining the other variables at play) on a complex national economy against that backdrop.

The government's citation to *Bank of China, New York Branch v. NBM LLC* 359 F.3d 171, 180-182 (2d Cir. 2004) to support its position is even more incorrect. In *Bank of China*, the Second Circuit reviewed whether it was error by the district court to permit a bank employee to testify that "(1) that certain transactions between defendants NBM and GEG did not comport with the business community's understanding of normal, true, trade transactions between a buyer and seller; (2) the concept of a 'trust receipt,' and how it works in the context of an international commercial transaction; and (3) that it is considered fraud when an importer presents a trust receipt to a bank to obtain a loan knowing that there are no real goods involved." *Id*. at 180. Like in this case, the proponent of the testimony tried to admit it based on the witness's "many years of experience in international banking and trade." *Id*. The Second Circuit found that the "**admission of [the] testimony pursuant to Rule 701 was error . . . the District Court abused its discretion to the extent it admitted the testimony based on Huang's experience and specialized knowledge in international banking**. Subsection (c) of Rule 701, which was amended in 2000, explicitly bars the admission of lay opinions that are "based on scientific technical, or other specialized knowledge within the scope of Rule 701."

To the extent the government seeks to elicit testimony that Ms. Schottenheimer can testify about whether she marketed the HHKOF as a tool to take down the CCP, then that testimony may be admissible. But that is not what the government is seeking to do. Rather the government is asking Ms. Schottenheimer to opine on whether, if the HHKOF strategy were successful, it would then bring about the demise of the CCP. If the average person cannot be said to have the necessary "reasoning processes" to comprehend the manner in which a fuel tank operates (*Haynes*), whether driving patterns are suspicious (*Cabrera*), or the roles that certain individuals play in a drug conspiracy (*Garcia*), than there is no plausible way that the average person can have the "reasoning processes" to arrive at an opinion about the complicated interplay between the devaluation of a foreign currency and the political and economic realities of a nation state.



May 30, 2024
Page 5

The government's line of questioning should be precluded.

          Respectfully submitted,

          _____
          Sidhardha Kamaraju
          Matthew S. Barkan
          PRYOR CASHMAN LLP
          7 Times Square
          New York, NY 10036
          (212) 421-4100
          skamaraju@pryorcashman.com
          mbarkan@pryorcashman.com

          Sabrina P. Shroff
          80 Broad Street, 19th Floor
          New York, NY 10004
          (646) 763-1490
          sabrinashroff@gmail.com

          E. Scott Schirick
          ALSTON & BIRD LLP
          90 Park Avenue
          New York, NY 10016
          (212) 210-9400
          scott.schirick@alston.com

          *Attorneys for Miles Guo*

cc:  All counsel (via ECF)