

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 4, 2024

**VIA ECF**
The Honorable Analisa Torres
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re:    *United States v. Guo*, S3 23 Cr. 118 (AT)

Dear Judge Torres:

      The Government writes respectfully to oppose the defendant's motion for reconsideration of the Court's order excluding the expert testimony of Thomas Bishop and limiting the expert testimony of Raymond Dragon and Paul Doran. *See* Dkt. 364 ("Reconsideration Mot."); Dkt. 338 ("Final *Daubert* Order"); *see also* Dkt. 305 ("First *Daubert* Order").

      As this Court has already held, motions seeking the "extraordinary remedy" of reconsideration are "not a vehicle for relitigating old issues." *United States v. Kwok*, No. 23 Cr. 118 (AT), 2024 WL 1250985, at *2 (S.D.N.Y. Mar. 22, 2024) (quoting *United States v. Baldeo*, No. 13 Cr. 125, 2015 WL 252414, at *1 (S.D.N.Y. Jan. 20, 2015)). While parties are prevented from using reconsideration to "tak[e] a second bite at the apple," *United States v. Lisi*, No. 15 Cr. 457, 2020 WL 1331955, at *2 (S.D.N.Y. Mar. 23, 2020), here the defendant comes back for a *third* attempt at obtaining a different ruling, after submitting two rounds of expert disclosures and receiving two orders from the Court. On April 24, the Court's First *Daubert* Order found that the defendant's initial expert disclosures bore "a level of detail insufficient even before the recent amendment to Rule 16." Dkt. 305 at 3. The Court permitted the defendant to try again, *see id.* at 5-6, and the defendant submitted four revised expert disclosures on April 29. After the parties submitted extensive briefing regarding the defendant's second set of expert disclosures, *see* Dkts. 322, 328, the Court issued a 19-page order granting in part and denying in part the Government's motions to exclude or limit the defendant's proposed expert testimony. *See* Final *Daubert* Order.

      Without any intervening change in the law, and citing no new facts, the defendant is left to seek reconsideration by characterizing the Court's order *permitting* testimony from three proposed defense experts as "clear error" and "manifestly unjust." *See* Reconsideration Mot. at 1, 3, 16, 17, 18; *see also Kwok*, 2024 WL 1250985, at *2 (explaining that reconsideration is "properly granted only if there is a showing of: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) a need to correct a clear error or prevent manifest injustice") (quoting *United States v. Goldberg*, No. 12 Cr. 864, 2021 WL 2444548, at *1 (S.D.N.Y. June 15, 2021)). The Final *Daubert* Order reviewed the extensive record and thoroughly explained the Court's basis for exercising its "ultimate 'gatekeeping role'" to set the boundaries of expert testimony at trial. Final

*Daubert* Order at 2 (quoting *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). There is no basis to reconsider the Court's two prior orders on this matter, and the defendant's motion should be denied.

I. **Procedural History**

On April 1, the parties mutually exchanged expert disclosures. Guo noticed the proposed testimony of Raymond Dragon on GTV's valuation, Maggie Sklar on cryptocurrencies, Thomas Bishop on flow of funds issues, and Paul Doran on the Chinese government's efforts to target opponents abroad. On April 9, the Government moved to exclude these witnesses on the basis that, among other things, Guo's notices were deficient. Dkt. 272. The Court agreed the notices were insufficient. Its April 24 order found that Guo's notices offered "a level of detail insufficient even before the recent amendment to Rule 16." Dkt. 305 (First *Daubert* Order) at 3. The Court exercised its discretion to permit Guo to supplement his disclosures, to bring them into compliance with Rule 16 and to "provide the Court with enough information to conduct a 'rigorous examination' . . . as required by its gatekeeping function under *Daubert*." *Id.* at 5 (cleaned up).

Guo submitted a second set of disclosures on April 29. On May 3, the Government supplemented its opposition and moved to exclude entirely the testimony of Thomas Bishop and Raymond Dragon and to exclude—or alternatively, limit—the testimony of Maggie Sklar and Paul Doran. Dkt. 322. On May 6, the defendant responded to the Government's supplemental *Daubert* motion, with nearly twenty pages of briefing in defense of the supplemented Dragon and Doran disclosures. Dkt. 328 ("Def. May 6 Br.") at 3-13, 27-34. On May 17, the Court issued the Final *Daubert* Order, granting in part and denying in part the Government's requested relief. The Final *Daubert* Order denied the Government's motion to exclude or limit Sklar's testimony, *id.* at 9,[1] granted in part and denied in part the Government's motion to limit Doran's testimony, *id.* at 11, granted in part and denied in part the Government's motion to exclude or limit Dragon's testimony, *id.* at 16, and granted the Government's motion to exclude the entirety of Bishop's testimony, *id.* at 13.

Following the Court's handing down the Final *Daubert* Order and before the start of trial, the parties completed extensive good-faith negotiations and reached a stipulation about Chinese-government targeting. Defense counsel understood that in negotiating this stipulation, the Government was seeking to streamline targeting-related evidence. What is more, the Government reasonably relied during these negotiations on the Final *Daubert* Order's limits on the scope of testimony by Doran, the defendant's primary targeting-related witness. At no time during the lengthy negotiations between the parties did the defense give any indication that it would seek reconsideration of the Court's order in an effort to expand the scope of Doran's testimony. The parties' stipulation was read into evidence by defense counsel on May 29, the same day that the defendant later filed the instant motion for reconsideration of, among other things, the Court's final ruling on Doran's testimony.

---

[1] The Court held that the Government may request a limiting instruction at the conclusion of Sklar's testimony "to clarify to the jury that 'compliance or consistency with industry standards or regulations does not mean the defendant[] lacked criminal intent." Final *Daubert* Order at 11, n.7 (quoting Gov. Mem. at 19-20).

The defendant's motion seeks reconsideration of the Court's order excluding Dragon's "testi[mony] as to the Income and Market Methods," Final *Daubert* Order at 17, and excluding "[p]ortions of Doran's testimony [that] stray too far afield and risk miring the jury in issues that do not bear on the case," *id.* at 12. Reconsideration Mot. at 1.

## II. Legal Standard

To move for reconsideration in a criminal case, a party must "set[] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." SDNY Local Criminal Rule 49.1(d). The rule on reconsideration "is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Dietrich v. Bauer*, 198 F.R.D. 397, 399 (S.D.N.Y. 2001) (interpreting substantially similar Local Civil Rule 6.3); *see also, e.g.*, *United States v. Sosa*, No. 14 Cr. 468 (AT), 2022 WL 1690833, at *2 (S.D.N.Y. May 26, 2022) ("When deciding motions for reconsideration in criminal matters, courts in this circuit resolve such motions according to the same principles that apply in the civil context" (internal quotation omitted)).

"Reconsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Baldeo*, No. 13 Cr. 125 (PAC), 2015 WL 252414, at *1 (S.D.N.Y. Jan. 20, 2015), *aff'd*, 615 F. App'x 26 (2d Cir. 2015) (internal quotation marks and citation omitted). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *United States v. Goldberg*, No. 12 Cr. 864 (LAP), 2021 WL 2444548, at *1 (S.D.N.Y. June 15, 2021) (citation omitted).

In seeking reconsideration, a party may neither "relitigat[e] old issues," *Baldeo*, 2015 WL 252414 at *1, nor "advance new facts, issues, or arguments not previously presented to the Court," *Nat'l Union Fire Ins. Co. of Pittsburgh v. Stroh Cos., Inc.*, 265 F.3d 97, 115 (2d Cir. 2001).

## III. Argument

### A. There Is No Basis to Reconsider the Court's Reasonable Limitations on Dragon's Testimony

After giving the defendant two opportunities to disclose the scope of Dragon's valuation opinions, the Court ultimately "agree[d] in large part" that Dragon's proposed testimony was "unreliable." Final *Daubert* Order at 16. The court found Dragon merely "provided broad reference to three different valuation approaches." *Id*. Only one—the Backsolve Method, which itself was absent from Dragon's first disclosure and was added in summary to his second disclosure—was "described in any detail—albeit by Guo's counsel, in a December 15, 2023 brief." *Id*. The Court then considered the exhibits and figures added to Dragon's corrective disclosure, and found that they "do not include any information about how Dragon used these inputs arrive at a valuation of GTV using either the Income Method or the Market Method." *Id.* at 17. Because the defendant's two disclosures lacked "any description of Dragon's methodology or conclusions" about two of his three proffered valuation methods, the Court ultimately ruled that "Dragon shall not testify to the Income Method or the Market Method" nor opine about "the validity of the A&M

Report" prepared by absent non-witnesses unavailable for cross-examination, using data from a different G Enterprise (GNews), at the request of GTV's counsel in 2020. *Id.*[2]

The defendant's motion for reconsideration merely offers new elaborations on old arguments, while criticizing the Court for "overlooking" arguments that were offered at length in the defendant's May 6 response to the Government's supplemental *Daubert* motion. Reconsideration Mot. at 3-14; *compare, e.g.*, Def. May 6 Br. 12-13 (emphasizing that "Mr. Dragon, in turn, took the additional steps of conducting an independent assessment" of the A&M Report's data and assumptions) *with* Reconsideration Mot. at 1 ("As noted in Mr. Dragon's Supplemental Disclosure, dated April 29, 2024, and as explained in Mr. Guo's Opposition (Dkt. No. 328), Mr. Dragon conducted multiple independent analyses related to the valuation of GTV"). The reconsideration motion then asserts that "the Court's preclusion of Mr. Dragon's testimony on the basis that he failed to conduct *his own analysis* constituted error." Reconsideration Mot. at 3 (emphasis added). The Court did not hold that Dragon's analysis was insufficiently independent, but that it was inadequately explained: the Final *Daubert* Order precluded his proposed testimony about two of his three asserted methodologies because his two disclosures "do not include any information about how Dragon used these inputs to arrive at a valuation of GTV using either the Income Method or Market Method." Final *Daubert* Order at 17.

As the Government urged in considering the defendant's second set of expert disclosures—and as the Court agreed—"[t]he defendant should not be permitted to supplement Mr. Dragon's disclosure once again, in a third attempt to fairly provide notice" to the Court and the Government. Dkt. 322 at 10. Rather than the Court "misunderstanding" the defendant's two prior proffers of Dragon's testimony, Reconsideration Mot. at 5, the Court properly evaluated their adequacy and issued two orders ultimately permitting Dragon to testify to the single valuation method reasonably explained in his two signed disclosures. That ruling was well within the Court's considerable *Daubert* gatekeeping discretion, and there is no basis for its reconsideration.

### B. There Is No Basis to Reconsider the Court's Reasonable Limitations on Doran's Testimony

In addressing the defendant's second expert disclosure for Doran, the Government did not seek to preclude Doran's testimony in its entirety. Indeed, the Government identified those parts of Doran's proffered testimony that "would be consistent" with the Court's several prior orders on the matter. *See* Dkt. 332 at 21. The Government did seek to preclude, however, the particular pieces of Doran's proposed opinions that were some combination of irrelevant, more prejudicial or confusing than probative, or which impermissibly repeated hearsay beyond Doran's knowledge or expertise. *See id.* at 22.

The Court's Final *Daubert* Order found that "[p]ortions of Doran's testimony stray too far afield and risk miring the jury in issues that do not bear on this case," citing Rules 401 through 403 and precluding testimony about "the Five Poisons," "extra-legal Chinese police stations," Chinese recruitment of local nationals to serve as "agents of influence," and actions by foreign

---

[2] The Final *Daubert* Order also precluded Dragon from testifying "as to the validity of the A&M Report," *id.* at 18, "as to any quantitative 'impact of the [CCP] censorship on the company's value,'" *id.* (quoting Dkt. 328 at 9), and from offering his "proposed testimony on SPACs," *id.* The defendant's motion does not seek reconsideration of these rulings.

governments unrelated to this case. *Id.* at 12. Citing authority, the Court also precluded "Doran's proposed testimony about the charges the DOJ has brought against people targeting Guo," because "Doran does not set forth any opinions as to Operation Fox Hunt's relationship to Guo and recites statements from the DOJ charging documents without applying expertise to them." *Id.* at 13. Nonetheless, the Court *permitted* Doran to offer a range of opinions about CCP targeting.

Dissatisfied with this result—and after entering into evidence a stipulation negotiated against the backdrop of the Final *Daubert* Order, and without notice to the Government at any time in the course of those negotiations that a motion for reconsideration was contemplated—the defendant casts the Court's pretrial ruling as "clear error."[3] Reconsideration Mot. at 16. The purportedly fatal legal flaw in the Court's Final *Daubert* Order is that it "exclude[d] testimony by Mr. Doran beyond that which even the government requested." *Id.* at 17; *see also id.* at 18 (identifying an additional part of the Final *Daubert* Order as "manifestly unjust" because "the government did not seek to exclude" the related testimony).

Nothing about the Court's ruling—which *denied in part* the Government's requested relief—was erroneous, much less "clear error" amounting to an abuse of discretion as intimated by the defendant's filing. For one thing, the Final *Daubert* Order *did not* exceed the scope of the Government's requested relief.[4] In fact, the Court *denied* some of the Government's requests, permitting two areas of testimony that the Government sought to preclude as impermissibly reliant on hearsay. *See* Final *Daubert* Order at 13 (permitting testimony about "the FBI Director's comments on Operation Fox Hunt" and "the DOJ and FBI's operations 'against Chinese police and intelligence agents conducting Fox Hunt operations in the U[nited] S[tates]'"). Even if the Court's decision had exceeded the Government's request to preclude—and, as set forth above, it did not—the Court need not limit its rulings to the relief requested by the Government. Indeed, the Court may even "raise *Daubert* concerns *sua sponte*" to fulfill its "special obligation" to police the boundaries of expert testimony. *ROMAG Fasteners, Inc. v. Fossil, Inc.*, No. 10 Cv. 1827 (JBA), 2014 WL 1246554, at *2 (D. Conn. Mar. 24, 2014).

---

[3] Indeed, the stipulation contains information about targeting of Guo in connection with Fox Hunt.

[4] As just one example, the defendant parses the words of the Government's supplemental opposition to argue that it did not seek exclusion of Doran's proposed testimony about "secret, extra-legal Chinese police stations." Reconsideration Mot. at 17 (citing Dkt. 332, Gov't Supp. Oppn. at 23). But the Government's brief clearly included that topic on a list of "irrelevant, yet detailed, digressions," *see id.*, and excluded it entirely from the preceding section identifying those portions of Doran's proposed testimony to which he should be limited, *see id.* at 22.

The Court's limitations on Doran's opinions, imposed only after the Court gave the defendant a second opportunity to argue for wider-reaching testimony, fall well within its "broad discretion to carry out this gatekeeping function," *In re Pfizer Inc. Secs. Litig.*, 819 F.3d 642, 658 (2d Cir. 2016), and should not be revisited for a third time during trial.[5]

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: __/s/_____
Micah F. Fergenson
Ryan B. Finkel
Justin Horton
Juliana N. Murray
Assistant United States Attorneys
(212) 637-2190 / 6612 / 2276 / 2314

---

[5] The Final *Daubert* Order excluded the entirety of Thomas Bishop's proposed expert testimony. *Id.* at 13-15. In a footnote, the defendant asserts that he "still intends to call [Bishop] in an expert capacity" to testify about the Himalaya Exchange—purportedly because "[t]he government did not seek to preclude" this part of Bishop's testimony. Reconsideration Mot. at 1 n.1. Not so. The Government "move[d] to exclude the testimony of Mr. Bishop," full stop, and the Court granted that relief in full. *See* Final *Daubert* Order at 15. The defendant may be able to call Bishop "as a summary witness to summarize certain bank records that are already in evidence," Reconsideration Mot. at 1 n.1, but he may not testify as an expert or offer opinions. Consistent with its ruling, and applicable law, the Court should strictly limit Bishop to non-expert testimony and police against prejudicial forays into opinions that the law does not permit. *See, e.g.*, *United States v. Blakstad*, No. 21-2859, 2023 WL 2668477, at *2-3 (2d Cir. Mar. 29, 2023) (summary order) (explaining that summary financial witness, unlike expert, must exercise "no discretion" and "merely appl[y] the methodology selected" by the offering party without "endorsing" it).