

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 12, 2024

**VIA Email & ECF**
The Honorable Analisa Torres
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007

      Re:    *United States v. Guo*, S3 23 Cr. 118 (AT)

Dear Judge Torres:

      The Government writes in advance of the anticipated testimony later this week of Sam Roberts, the Head of Financial Intelligence at BitGo, a digital-asset services company. Between approximately 2021 and 2023, BitGo provided certain services to the Himalaya Exchange (the "Exchange"), a purported "cryptocurrency ecosystem" and a key part of the G Enterprise associated with the charged racketeering conspiracy. Mr. Roberts is expected to testify about his participation in BitGo's reviews of its business relationship with the Himalaya Exchange, including facts that he learned about the Exchange's operations and its two purported digital assets—Himalaya Coin ("HCN") and Himalaya Dollar ("HDO")—and how that information was relevant to BitGo's relationship with the Exchange.

      As background, BitGo is a regulated provider of custody, borrowing and lending, and core infrastructure services to the cryptocurrency and digital-asset industry. The Himalaya Exchange contracted with BitGo for various cryptocurrency-related services. (Notably, the Himalaya Exchange never used a significant part of the BitGo cryptocurrency-related services that it paid for.) In its ordinary course of business, BitGo conducted preliminary due diligence on the Himalaya Exchange and its two purported cryptocurrencies, HCN and HDO. BitGo was satisfied by what it learned about the Himalaya Exchange in this preliminary 2021 inquiry. When BitGo later received a subpoena about the Exchange and its purported cryptocurrencies, the company conducted a second and more searching review of the Exchange, HDO, and HCN to determine whether BitGo would continue its business relationship with the Exchange. Mr. Roberts personally participated in BitGo's reviews of the Himalaya Exchange, HCN, and HDO. In furtherance of BitGo's review, Mr. Roberts communicated directly with the Himalaya Exchange's representatives—co-conspirators and agents of the defendant and the G Enterprise—over email and on videoconferences. Mr. Roberts evaluated information provided by the Himalaya Exchange and from public sources to develop an informed view as to whether BitGo should maintain any relationship with the Exchange and its purported digital assets. Mr. Roberts recommended, and BitGo determined, that the company should terminate its relationship with the Exchange, HCN, and HDO.

By letter dated June 10, the defense asked the Government to confirm that Mr. Roberts, a lay witness, would not testify "as to (i) whether HCN and/or HDO are cryptocurrencies; (ii) HCN and HDO's designs and/or functions; or (iii) the design and/or function of the Himalaya Exchange." *See* Ex. A ("Def. Letter") at 1. Mr. Roberts is expected to testify as to his role as a financial crime and anti-money-laundering investigator at BitGo and the facts he learned by participating in BitGo's contemporaneous reviews (in 2021 and 2022-23) of the Himalaya Exchange and its purported cryptocurrencies. Those reviews consisted of gathering information about "the design and/or function of the Himalaya Exchange" and "HCN and HDO's designs and/or functions." Def. Letter at 1. At the time of the 2022-2023 review, the Exchange was a BitGo customer, with its purported digital assets largely stored in a BitGo wallet. Thus, the information BitGo, and Mr. Roberts, gathered as to the design and function of the Exchange, HCN, and HDO was material to BitGo's decision whether to continue to permit the Exchange to use its services in connection with HCN and HDO. Mr. Roberts's testimony on those subjects is fact testimony based on his "personal knowledge" gleaned in the course of his work at BitGo and, specifically, his reviews of the Exchange. *See* Fed. R. Evid. 611. Mr. Roberts will not be asked to opine about after-the-fact developments; his testimony will be limited to the facts he learned, the recommendations he made based on those facts, and BitGo's ultimate decision to terminate its relationship with the Exchange, HCN, and HDO. To the extent Mr. Roberts's testimony includes opinions that he developed during and in furtherance of BitGo's reviews of the Exchange and its tokens during and before 2023, that is permissible lay opinion testimony. Fed. R. Evid. 701.

Courts in this District consistently permit employees of banks and similar institutions to testify as fact witnesses about contemporaneous account reviews and customer investigations. For example, in *Assured Guaranty Municipal Corp. v. Flagstar Bank, FSB*, several employees testified as fact witnesses about how the plaintiff bond insurer conducted due diligence on relevant transactions. 920 F. Supp. 2d 475, 483-84 (S.D.N.Y. 2013). A businessperson testified that the bond insurer "engaged in the due diligence process in order to be able to predict and plan for expected losses on the two transactions," and about "the key data points about each loan" that the bond insurer identified and analyzed. *Id.* at 483. The bond insurer's chief surveillance officer—a position similar in substance to Mr. Roberts's role at BitGo—testified as a fact witness about how the insurer viewed the information it learned about its counterparty and their sophisticated financial products. *See id.* at 484 (describing fact testimony that bond insurer "would not have insured the securitizations had it not received the representations and warranties" and explaining why information about counterparty's products was "material"). Similarly, in *In re Worldcom Securities Litigation*, Judge Cote permitted a bank employee "who was in charge of due diligence" to testify as a fact witness "as to the due diligence that he performed on behalf of [the bank]." *In re WorldCom, Inc. Secs. Litig.*, No. 02 Cv. 3288 (DLC), 2005 WL 375315, at *4 (S.D.N.Y. Feb. 17, 2005); *see also Weiss v. Nat'l Westminster Bank, PLC*, 993 F.3d 144, 155 (2d Cir. 2021) (describing fact testimony from "managers of its customer-relations, fraud-prevention, and anti-money-laundering groups stating that the Bank was aware of [a third party's] '*alleged*' links to Hamas"). Like the witnesses in these cases, Mr. Roberts's testimony is expected to consist of facts and observations developed through real-time due diligence and business decisions made in reliance on those facts and observations.

Mr. Roberts's duties as a participant in BitGo's investigations included developing opinions and making recommendations based on the information he learned about the design and operations of the Himalaya Exchange and its two purported tokens. To the extent the Court views Mr. Roberts's anticipated testimony as lay opinion testimony, it is permissible under Rule 701.

Mr. Roberts's testimony about his real-time reviews of the Exchange and its purported digital assets is "based on [his] perception," Fed. R. Evid. 701(a); *see also United States v. Rigas*, 490 F.3d 208, 223 (2d Cir. 2007) (permitting accountant's lay testimony about company's debt-reclassification practices and "the effects of the disputed reclassifications . . . based upon his *observations* during his twenty months as [an] employee"). Mr. Roberts's anticipated testimony would also satisfy Rule 701(b)'s requirement that lay opinions be useful to the trier of fact, as testimony about information that "analyst[s] [were] interested in, and why . . . is helpful to the jury and has been admitted in securities fraud trials." *United States v. Tomasetta*, No. 10 Cr. 1205 (PAC), 2012 WL 1080293, at *3 (S.D.N.Y. Mar. 30, 2012) (collecting cases). Moreover, the fact that Mr. Roberts "has specialized knowledge, or that he carried out [an] investigation because of that knowledge, does not preclude him from testifying pursuant to Rule 701, so long as the testimony was based on the investigation and reflected his investigatory findings and conclusions." *Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171, 181 (2d Cir. 2004); *see also* Fed. R. Evid. 701, advisory committee's note (Lay opinion testimony "is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business."). Like the bank investigator's testimony in *Bank of China*, Mr. Roberts's anticipated testimony will be "grounded in the investigation he undertook in his role as a [BitGo] employee" and will therefore be admissible "because it [will be] based on his *perceptions*." *Bank of China*, 395 F.3d at 181 (emphasis in original).[1]

---

[1] Permitting Mr. Roberts's testimony would also be consistent with this Court's May 31 ruling concerning the scope of a Hayman Capital employee's testimony under Rules 611 and 701. *See* May 31 Trial Tr. at 781-83. Mr. Roberts would not be asked "to speculate" about anything or to testify about anything "that goes beyond [his] work at [BitGo]," *id.* at 782-83. Indeed, Mr. Roberts will not be asked about any opinions he holds *today*. Rather, the Government intends to elicit testimony about the facts that Mr. Roberts learned during BitGo's historical reviews of the Himalaya Exchange, HCN, and HDO, and how those facts were relevant *at that time* to BitGo's business determination whether to continue its commercial relationship with the Exchange and its purported cryptocurrencies.

Accordingly, the Court should permit Mr. Roberts to testify about the information he learned about the Himalaya Exchange, HCN, and HDO—and the facts of how that information was relevant to BitGo—as fact testimony, lay opinion testimony, or both. *See, e.g.*, *Tomasetta*, 2012 WL 1080293, at *2-3 (permitting securities analysts to testify about "what [they] do," their "focus on the semi-conductor industry," the information collected in their analyses, "whether the analysts looked for specific trends or growth," and how that information affected their recommendations, "as either relevant fact testimony or lay witness testimony that satisfies Fed. R. Evid. 701").

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:   /s/                              
Micah F. Fergenson
Ryan B. Finkel
Justin Horton
Juliana N. Murray
Assistant United States Attorneys
(212) 637-2190 / 6612 / 2276 / 2314