# ALSTON & BIRD

90 Park Avenue
New York, NY 10016
212-210-9400 | Fax: 212-210-9444

E. Scott Schirick                Direct Dial: 212-905-9032                Email: scott.schirick@alston.com

June 12, 2024

*Via ECF*

The Honorable Analisa Torres
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re:    *United States v. Guo*, S3 23 Cr. 118 (AT)

Dear Judge Torres:

    We write in response to the government's letter ("Govt Ltr."), filed earlier today, concerning the testimony of Samuel Roberts, and the government's proposal to elicit testimony from Mr. Roberts as to his personal views of the nature of H-Coin ("HCN"), H-Dollar ("HDO"), and the Himalaya Exchange. While certain of Mr. Roberts' anticipated testimony about factual information he gathered may be admissible, the government evidently intends to go further and elicit opinions that Mr. Roberts formed about (i) whether HCN and HDO are cryptocurrencies and (ii) whether the Himalaya Exchange is a cryptocurrency exchange. As with the government's earlier witness, Steele Schottenheimer, the government thus seeks to smuggle in expert testimony through a fact witness. That is particularly apparent given the fact that both the government and the defense each have noticed an expert witness, under Federal Rule of Evidence 702, to testify at trial about precisely the same issues.

    By way of background, Mr. Roberts is a financial crime and anti-money-laundering investigator for Bitgo, a digital-asset services company that provided digital asset wallet services to the Himalaya Exchange. According to the government, Mr. Roberts will testify that he participated in an internal Bitgo investigation after receiving a grand jury subpoena, and that he "evaluated information provided by the Himalaya Exchange and from public sources to develop an informed view as to whether BitGo should maintain any relationship with the Exchange and its purported digital assets." (Govt Ltr. at 1). The government goes on to say that Mr. Roberts will testify about information he gathered concerning the "design and/or function of the Himalaya Exchange" and "HCN and HDO's designs and/or its functions." (*See id.* at 2, quoting Govt Ex. A). The government notes that Mr. Roberts

Alston & Bird LLP                                                                                                                              www.alston.com

Atlanta | Beijing | Brussels | Charlotte | Dallas | Fort Worth | London | Los Angeles | New York | Raleigh | San Francisco | Silicon Valley | Washington, D.C.

testimony may include lay opinion testimony "that he developed during and in furtherance of BitGo's reviews of the Exchange and its tokens during and before 2023." (*See id.* at 2).

Mr. Roberts has not been noticed as an expert witness. On June 8, 2024, the government indicated that it anticipated calling Mr. Roberts this week (and in fact, it appears that he will testify tomorrow). After reviewing Mr. Roberts' 3500 material, in which he offers opinions about HCN and HDO's status as cryptocurrencies, on June 10, 2024, the defense sought confirmation from the government that it would not elicit impermissible expert opinions from Mr. Roberts as to "(i) whether HCN and/or HDO are cryptocurrencies; (ii) HCN and HDO's designs and/or functions; or (iii) the design and/or function of the Himalaya Exchange." (Gov't Ltr., Ex. A). On June 11 at approximately 10:30 pm, the government responded that it intended to file a letter with the Court on the issue, which it filed earlier today. Prior to filing the letter, defense counsel and the government conferred about the scope of Mr. Roberts' anticipated testimony, but were unable to reach agreement.

As an initial matter, the reasons for Bitgo's decision to terminate its relationship with the Exchange have no relevance to the issues at trial—Bitgo's decision-making process has no bearing on the underlying question of whether the Exchange is a true cryptocurrency exchange and HCN and HDO are true cryptocurrencies. Moreover, to the extent that Mr. Roberts will testify to information he gleaned from "public sources" about the Exchange, HCN, or HDO, that testimony would be nothing more than an improper attempt to relay hearsay to the jury. But even assuming that Mr. Roberts can offer admissible testimony about facts that he gathered during the course of his investigation, to the extent that the government intends to elicit testimony from Mr. Roberts that his recommendation to terminate the relationship with the Exchange was based on his opinion/conclusion as whether HCN and HDO are cryptocurrencies or the Exchange is a cryptocurrency exchange, that would veer into impermissible lay opinion testimony under Rule 701.

Federal Rule of Evidence 701 limits lay witness opinion testimony to testimony that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical or other specialized knowledge within the scope of Rule 701.

Fed. R. Evid. 701.

"[L]ay opinion must be the product of reasoning processes familiar to the average person in everyday life." *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005). Rule 701 thus "prevent[s] a party from conflating expert and lay opinion testimony thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth Rule 702 and the pre-trial disclosure requirements set forth in Fed. R. Crim. P. 16." *Id* at 215. "If the opinion rests in any way upon scientific, technical,

or their specialized knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701." *Id*.

In this case, the government describes Mr. Roberts as a "financial crime and anti-money laundering investigator at BitGo." (Govt. Ltr. at 2). It is thus clear that, to the extent he offers an opinion about the nature of HCN, HDO, or the Exchange, he would be doing so based on his experience as such an investigator. The Second Circuit has repeatedly held, however, that testimony based on experience gleaned as an investigator constitutes specialized knowledge that properly fits within Rule 702, not 701.

For example, in *United States v. Haynes*, the district court allowed a Customs and Border Protection Officer to testify regarding a car's gas tank readings, where drugs had been secreted in said gas tank in an attempt to smuggle them into the United States. 729 F.3d 178, 183-184 (2d Cir. 2013). Specifically, in *Haynes*, the officer explained why the car's empty fuel light, which indicated that the gas tank was empty, would be on when there was gas in the car, due to the drugs secreted at the bottom of the gas tank. *Id*. at 184. In so doing, the officer testified "how the float on the outside of [a] gas tank worked and why [a] gas gauge would have registered zero to empty while . . . drugs were in the gas tank." *Id*. at 195. The Second Circuit held that the admission of this testimony was reversible error because in offering his testimony, the officer "did more than simply describe what he found in the gas tank and what he perceived" and thus crossed the threshold of permissible lay witness testimony under Fed. R. Evid. 701. *Id*. The Second Circuit held that this error, coupled with several others, required vacating the conviction. *Id.* at 197.

Similarly, in *United States v. Cabrera*, the district court permitted a DEA special agent to testify that based on the defendant's "excessive speeding, erratic lane changes, and U turns" the defendant was "experienced [enough] to know that . . . some law enforcement techniques and to deploy those countersurveillance techniques, to lose [officers] or lose the tail." 13 F.4th 140, 150 (2d Cir. 2021) (cleaned up). On review, the Second Circuit held that the district court abused its discretion in admitting this testimony, because the agent "drew upon his specialized knowledge and experience as a DEA detective." *Id*. As in *Haynes*, the Second Circuit vacated the defendant's conviction and remanded the case to the district court. *Id.* at 153.

Finally, in *Garcia*, the district court permitted a DEA case agent to testify regarding the alleged role that various defendants played in a purported criminal drug conspiracy. 413 F.3d at 209. As in *Haynes* and *Cabrera*, the Second Circuit held that the admission of the testimony was error because the government had failed to demonstrate that the opinion was "informed by reasoning processes familiar to the average person in everyday life rather than by scientific, technical, or other specialized knowledge." *Id.* at 216.

The same is true of Mr. Roberts' proposed testimony. In opining as to whether the design of HCN, HDO, and the Exchange rendered them proper cryptocurrencies or a cryptocurrency exchange, Mr. Roberts will necessarily draw on his experience as a "financial crime and anti-money laundering investigator." That is specialized knowledge that is not "informed by reasoning processes familiar to the average person in everyday life rather than by scientific, technical, or other specialized knowledge." *Garcia*, 413 F.3d at 216. Indeed, both parties—with the Court's approval—are calling expert witnesses, Prof. Amin Shams and Maggie Sklar, to testify about precisely those questions: whether are

HCN and HDO proper cryptocurrencies, and whether the Exchange a centralized cryptocurrency exchange. (Dkt. 338 at 4, 10-)(noting that Professor Shams "will opine that 'HCN and HDO have many features that are not consistent with typical cryptocurrencies'" and that Ms. Sklar will opine that "the Himalaya Exchange operated as a centralized exchange").

The government's cases do not hold otherwise. For example, *Assured Guaranty Municipal Corp. v. Flagstar Bank* is a breach of contract action in which there was a question about the materiality of certain loan loss representations. 920 F. Supp. 2d 475, 483-84 (S.D.N.Y. 2013). Several fact witnesses testified about the due diligence process engaged in by the plaintiff and the facts gathered as part of that process. *See id*. The fact witnesses, however, did not testify as to opinions they reached based on that due diligence process. In fact, the witnesses who testified about whether the loans at issue comported with the guidelines set forth in the due diligence procedures were *expert* witnesses, not fact witnesses. *See id*. at 487 ("Assured's mortgage origination and underwriting *expert*, Rebecca Walzak, reviewed the loan files for the 800 loans in Dr. Lipshutz's random sample in order "to determine if the loans in these securities complied with the representations and warranties" in the Transaction Documents.") (emphasis added).

Similarly, *United States v. Rigas* involved fact testimony regarding the accounting impact of debt reclassification. 490 F.3d at 22. The Second Circuit has thus noted that the testimony in *Rigas* did not run afoul of Rule 701 because "it did not address what the appropriate accounting technique should have been but was instead simply offered to show what the amount of the debt would have been had the fraud not occurred." *United States v. Cuti*, 720 F. 3d 453, 460 (2d Cir. 2013) (discussing *Rigas*). Put simply, *Rigas* involved math, not opinion.

Moreover, the government's continued citation to *Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171, 180-182 (2d Cir. 2004) is unavailing. Again, as noted in our May 30 letter concerning Ms. Schottenheimer, the Second Circuit found in *Bank of China* that the trial court committed error and "abused its discretion to the extent it admitted the testimony based on Huang's experience and specialized knowledge in international banking." *Id*. at 180. The government's gloss on the case does not alter the import of that holding. Mr. Roberts may—if relevant at all, which is far from clear—testify about factual conclusions he reached based on his investigation. But translating those factual conclusions into opinions about whether, for example, HCN and HDO are real cryptocurrencies necessarily requires specialized knowledge based on his experience as an investigator in the cryptocurrency space. If it did not, then the government would have had no need to notice Prof. Shams.

The government similarly elides key portions of Judge Cote's decision *In re WorldCom Securities Litigation*. There, in response to a challenge by plaintiff to proposed lay opinion testimony on "due diligence … corporate disclosure practices, financial analysis" and more, Judge Cote denied the challenge without prejudice, instead allowing the plaintiff the "right to conduct during the trial a voir dire of any witness it believes is unqualified to give expert testimony." No 2 Civ. 3288 (DLC), 2005 WL 375315, at *4 (S.D.N.Y. Feb. 17, 2005). In so doing, Judge Cote noted that the defense had "fulfilled the requirement [of] an intention to call these witnesses as expert[s]." *Id*. No such notice was provided here. Further, the portion of *In re WorldCom* quoted by the government does not

relate to lay opinion testimony, but rather is limited to fact testimony of a single witness regarding his personal knowledge of the due diligence that was conducted. *Id*.

Further still, in the only case offered by the government where challenged lay opinion testimony was permitted, *United States v. Tomasetta*, the court sharply curtailed such testimony, recognizing that it ran the risk of "invad[ing] the province of the jury," limiting the testimony to what the witness "read in … disclosures, heard from [the company], asked about or otherwise learned about [the company]." No. 10 Cr. 1205 (PAC), 2012 WL 1080293 at *4 (S.D.N.Y. March 30, 2012). The witness was expressly not permitted to testify regarding "any generalized or specific knowledge" of the industries or technologies in question. *Id*. That, however, is precisely what Mr. Roberts appears to be proffered to do—comment, based on his experience in the cryptocurrency industry, about whether these tokens are real cryptocurrencies as a basis for then explaining Bitgo's decision. That would be impermissible under *Tomasetta*.

Accordingly, the government should be precluded from eliciting opinion testimony from Mr. Roberts concerning (i) whether HCN and HDO are cryptocurrencies; (ii) whether the Himalaya Exchange is a cryptocurrency exchange; and (iii) the design/functions of HDN, HDO or the Himalaya Exchange.

Respectfully submitted,

**ALSTON & BIRD**

By: _____
E. Scott Schirick

cc:     Counsel of record (via ECF)