

PRYOR CASHMAN LLP

New York | Los Angeles | Miami

7 Times Square, New York, NY 10036-6569   Tel: 212-421-4100   Fax: 212-326-0806          pryorcashman.com

**Sidhardha Kamaraju**

Direct Tel: 212-326-0895
Direct Fax: 212-326-0806
skamaraju@pryorcashman.com

June 29, 2024

**VIA ECF & EMAIL**

Hon. Analisa Torres
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

      **Re:**    ***United States v. Guo*, Case No. 1:23-cr-00118-1 (AT)**

Dear Judge Torres:

      We write in response to the government's letter brief (the "Gov. Br."), submitted yesterday, concerning the admission of purported co-conspirator and agent statements.  For the reasons stated below, the statements proffered by the government are inadmissible.

      The government's application is a misguided attempt to stitch together two distinct hearsay exceptions—one for co-conspirators, and one for agents—into a single exception that absolves the government of having to satisfy the requirements of either.  Put simply, the government's improper construction would allow it to enjoy the benefits of the co-conspirator exception without demonstrating that the particular declarant is a member of any conspiracy, as well as the agent exception without establishing that the declarant is an agent of Mr. Guo's.  This is not the law. The government's novel construction should be rejected because it is nothing more than a seductively simple invitation to reversible error.  *See, e.g., Hill v. Spiegel, Inc.,* 708 F.2d 233, 237 (6th Cir. 1983) (finding reversible error where district court admitted employee statements under Rule 801(d)(2)(D) without requisite factual record); *see also, United States v. Bruno*, 383 F.3d 65 (2d Cir. 2004) (vacating conviction on the basis of admission of hearsay evidence); *United States v. Doyle*, 130 F.3d 523, 547 (2d Cir. 1997) (finding trial court's novel interpretation of hearsay rules to be an abuse of discretion).

      The government should be held to the standard set forth in the Federal Rules of Evidence for either of the potentially applicable hearsay exceptions.  When measured against the proper legal standards, the government's threadbare allegations and *ipse dixit* argument are woefully deficient for the government to meet its burden of proving that either hearsay exception applies. Throughout, the government fails to substantiate that the individuals or entities in question (other



June 29, 2024
Page 2

than Ms. Wang) participated in any conspiracy with Mr. Kwok.  And, as to agents, contrary to the requirements of Rule 801(d)(2)(E), many of the individuals have no direct nexus to Mr. Kwok, and instead are merely employees of entities that the government alleges are, at some (unsubstantiated) level, associated with Mr. Kwok.

## I.    Background

On April 9, 2024, the government filed a motion in *limine* to seek to admit certain statements by alleged co-conspirators of Mr. Guo's.  On May 2, 2024, the Court permitted the government to admit those statements conditionally, subject to a later showing that the declarants qualified as co-conspirators or agents of Mr. Guo's under *United States v. Geaney*, 417 F.2d 1116 (2d. Cir. 1969), and related caselaw.  On June 27, 2024, the government sought to move orally to make this showing, claiming that more than 20 individuals qualified as co-conspirators or agents of Mr. Guo's.  After hearing from defense counsel, the Court directed the government to make a written motion.

Yesterday, the government filed its written motion.  As an initial matter, the government's written motion does not include all of the declarants that the government cited at oral argument.  Notably, the government either does not reference at all, or fails to make any factual showing with respect to the following individuals: (a) Mr. Guo's daughter, Mei Guo, (b) Stephen Bannon, (c) Haitham Khaled, (d) attorney Victor Cerda, (e) Ms. Wang's former attorney Alex Lipman, (f) movement member Fay Fay, (g) Laoban Zhang, and (h) unnamed Himalaya Exchange employees.  To the extent that the government is either not seeking to admit statements by these individuals as co-conspirator or agent statements, or simply has omitted the necessary evidentiary support from its motion, statements by these individuals should be stricken from the record.

The declarants that the government does reference in its motion—which include multiple lawyers—have been grouped by the government into the following categories:

| Government Category | Declarant |
|---|---|
| **"Inner Circle"** | Yvette Wang, William Je, Mileson Guo, and Haoran He |
| **GTV/Golden Springs Employees** | Max Krasner |
| **G\|CLUBS Employees** | G\|CLUBS CEO Limarie Reyes, G\|CLUBS Controller Alex Hadjicharalambous, and G\|CLUBS lawyer, Ana Izquierdo (collectively, the "G\|CLUBS Employees"). |



June 29, 2024
Page 3

| Government Category | Declarant |
|---|---|
| **Hamilton and Himalaya Exchange Employees** | Himalaya Exchange COO Marios Mamzeris, Himalaya Exchange attorney Priya Patel, and Hamilton executive David Fallon (collectively, the "Exchange Employees") |
| **Agents of Taurus** | Dara Lawall, Aaron Mitchell, Scott Barnett, Gladys Chow, and Sean Jing |
| **Farm Members** | Xia Qidong, Sara Wei, David Dai, and Zhang Yongbing |

## II.    Argument

### A.    Applicable Law

#### (i)    Applicable Law – Co-Conspirators

For the statement of a purported co-conspirator to be admitted under Fed. R. Evid. 801(d)(2)(E), the government must establish, and this Court should find, (1) that there was a conspiracy, (2) that its members included the declarant and the party against whom the statement is offered, and (3) that the statement was made both (a) during the course of and (b) in furtherance of the conspiracy.  *United States v. Tracy*, 12 F.3d 1186, 1196 (2d Cir. 1993) (citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)); see also *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999).  Further, "while the hearsay statement itself may be considered in establishing the existence of the conspiracy, there must be some independent corroborating evidence of the defendant's participation in the conspiracy." *Gigante*, 166 F.3d at 82.  Where proper foundation is not laid, a Court may, in its discretion, instruct the jury to disregard any such statements that were offered subject to connection.  *See United States v. Saneaux*, 365 F. Supp. 2d 488, 493 (S.D.N.Y. 2005).

#### (ii)    Applicable Law – Agents

As this Court has previously noted, "Federal Rule of Evidence 801(d)(2)(D) cannot be applied in the abstract.  Admissibility ultimately must turn on the characteristics of the particular items of evidence and the purposes for which they are offered."  (Dkt. No. 319 at 5, quoting *United States v. Bankman-Fried*, No. 22 Cr. 673, 2023 WL 6283509, at *3 (S.D.N.Y. Sept. 26, 2023)).  Under Fed. R. Evid. 801(d)(2)(D), the agency hearsay exception is only met where the statement is made "by the *party's* agent or servant concerning a matter within the scope of the agency." *United States v. Rioux*, 97 F.3d 648, 660 (2d Cir. 1996) (emphasis added).  In *Rioux*, the Second Circuit noted that, for an agency relationship to exist, the declarant must be "directly responsible" to the defendant, who in turn "directed the company's operations and made all the final decisions." *Id*. (citing *Zaken v. Boerer,* 964 F.2d 1319, 1322-23 (2d Cir. 1992)).  Further, in *Rioux* the court



held that the government had satisfied the requirements of Fed. R. Evid. 801(d)(2)(D) because it "proved" that the agents in question "(1) were hand-picked by the [defendant]; (2) served at his pleasure; and (3) received their instructions through [the defendant] himself or [an employee who served in a position the defendant himself created]." *Id.* It did so not only on the basis of testimony, but after being presented with documentary evidence in support.  *Id.*  The Second Circuit has subsequently continued to require such proof of direct agency relationships.  *See*, *e.g. United States v. Lauersen*, 348 F.3d 329, 340 (2d Cir. 2003).

Moreover, the nature of the agency relationship also bears on the showing that the government has to make.  For example, *Rioux* dealt with the employer-employee relationship.  On the other hand, when it comes to introducing statements from attorneys, the Second Circuit has stated that "[t]he formal relationship of the lawyer as agent and the client as principal by itself will rarely suffice to show this since, while clients authorize their attorneys to act on their behalf, considerable delegation is normally involved and such delegation tends to drain the evidentiary value from such statements," and that, as a result, "[s]ome participatory role of the client must be evident, either directly or inferentially as when the argument is a direct assertion of fact which in all probability had to have been confirmed by the defendant."  *United States v. McKeon*, 738 F.2d 26, 33 (2d Cir. 1984).

Mr. Guo is not aware of any case law—and the government has not cited any—where courts have considered what satisfies the agency test in the context of volunteer organizations.

**B.    Discussion**

**(i)    The Government's Novel Legal Theory Should Be Rejected**

Through its motion, the government has tried to knit together the co-conspirator hearsay exception and the agent hearsay exception into one, to create a new exception for "agents of the conspiracy" writ large.  Specifically, for many of the declarants in its letter, the government's argument collapses to this: (i) the government alleges that certain corporate entities are co-conspirators with Mr. Guo because they are controlled by his alleged co-conspirators; (ii) a corporation has to act through its employees, *i.e.*, its agents; and (iii) the declarant was an employee of a corporate co-conspirator, and therefore becomes a so-called "agent of the conspiracy."  The trouble for the government, however, is that the actual Federal Rules of Evidence do not create such an exception, and "it would be a major step judicially to forge a new, hybrid exception to the hearsay rule by combining . . . two distinct varieties of admissible hearsay simply to correct the Government's failing."  *Doyle*, 130 F.3d at 547  (holding that the trial court abused its discretion in admitting documents that sat at the intersection of business and government records but were not supported by adequate foundation).

The Federal Rules of Evidence provide two separate pathways for the introduction of out-of-court statements against a party.  One may either (1) establish that the declarant was engaged in a conspiracy with the defendant, (under Fed. R. Evid. 801(d)(2)(E)), or (2) that the declarant



June 29, 2024
Page 5

was an agent of the defendant (under Fed. R. Evid. 801(d)(2)(D). As described above, each exception comes with its own requirements. With respect to co-conspirator statements, the government has to establish not only that a conspiracy exists, but also that the declarant is a member of that conspiracy. On the other hand, the agent requirement does not focus on the declarant's relationship to the conspiracy, but rather, to the defendant. Accordingly, the Second Circuit has articulated different evidentiary showings that the government must make to satisfy its burden under either exception.

The government's novel contention is an end-run around the Second Circuit's evidentiary requirements. The government claims that it can instead simply show that an employee is an agent of a co-conspirator, and that, thus, the employee's statement comes into evidence. But doing so does not actually satisfy the requirements for either. Specifically, establishing that an employee is an agent of an alleged corporate co-conspirator does not show, as *Rioux* requires for the agency exception, that the declarant is "directly responsible" to the defendant, who in turn "directed the company's operations and made all the final decisions." 97 F.3d at 660. At the same time, showing that a corporate employer is purportedly in a conspiracy with Mr. Guo does not establish that the corporation's employee—*i.e.*, the declarant—is part of a conspiracy with Mr. Guo, which is what is required. *See Tracy*, 12 F.3d at 1196.

None of the authority cited by the government supports permitting it to simply sidestep the legal requirements of the evidentiary exceptions in favor of its own novel construction. For example, in *United States v. Rogers*, 118 F.3d 466, 478 (6th Cir. 1997), the court did use the phrase "agents of the conspiracy" without any discussion of the term, but ultimately concluded that it was error to admit the proffered statements against the defendant. Similarly, in *Saneaux*, the court did note that the co-conspirator exception was based on agency principles, but that is because the co-conspirator themselves are presumed to be an agent of the defendant. 365 F. Supp. 2d 488, 493 (S.D.N.Y. 2005). And, in fact, in *Saneaux*, the court found that the statements should not be admitted. *See id.*

Finally, the government's reliance on *Miltland Raleigh-Durham v. Myers*, 807 F. Supp. 1025, 1054 (S.D.N.Y. 1992) demonstrates the trouble with the government's position. There, the court decided without analysis that statements made by employees of a co-conspirator would be admitted as "statements by an agent of a co-conspirator." *Id*. As an initial matter, the court did not consider the distinction that Mr. Guo is highlighting here. But even if the court did, that analysis would still be irrelevant here, because *Myers* is a civil case, where there are no Confrontation Clause concerns. Thus, the potential harm from creating a new hearsay exception for "agents of a conspiracy" are mitigated in a civil proceeding—even if erroneous as matter of statutory construction, the injury is not of a constitutional level. In a criminal case, however, where the Confrontation Clause does apply, the application of a novel hearsay exception requires a specific showing that the statement is "supported by a showing of particularized guarantees of trustworthiness," a showing the government has not undertaken here. *Idaho v. Wright*, 497 U.S. 805, 816 (1990). That is precisely why the Second Circuit has cautioned against finding new



June 29, 2024
Page 6

hearsay exceptions to "correct the Government's failing to offer a witness who could present the foundation necessary for the admission of the documents under [the relevant hearsay exception.]" *Doyle*, 130 F.3d at 547.

To absurdity of the government's position is apparent on even a cursory review. Under the government's logic, any time a defendant allegedly conspires with an employee at a company, that defendant opens himself up to admission of statements by all of that company's employees, regardless of whether those employees have any knowledge or involvement in the conspiracy or connection to the defendant.[1] Thus, for example, if a defendant was charged with honest services fraud for paying bribes to a company's employee, than simply by claiming that the company was a co-conspirator because its employee was, then the government could sweep in any statements from that company's employees simply because they were the company's agents. There would be no distinction between employees who were knowingly participating in the fraud or on behalf of the defendant, and thus whose statements may be fairly held against him, or employees who were simply and unwittingly doing their jobs. Such a dramatic expansion of the hearsay rules should not be accomplished through judicial decision, and particularly not in a criminal case.

### (ii)    The Government's Failure of Proof

#### 1.    G|CLUBS Employees

The government seeks to admit statements made by G|CLUBS CEO Limarie Reyes, G|CLUBS controller Alex Hadjicharalambous, and G|CLUBS lawyer, Ana Izquierdo. In support, the government argues that (1) G|CLUBS was "controlled by Guo's conspirators, principally Wang and He" (2) that the "G|CLUBS entities … are corporate co-conspirators" and that, as a result, the "G|CLUBS employees are agents of the conspiracy that Guo led." Gov. Br. at 5. Even assuming that the government established these facts by a preponderance of evidence (it has not), those facts would not satisfy the requirements of either Rule 801(d)(2)(D) or Rule 801(d)(2)(E).

For the G|CLUBS Employees to be co-conspirators, they needed to join Mr. Guo in an alleged conspiracy—each must have been themselves a member of the conspiracy. The government does not (and cannot) argue that it has established the requisite state of mind for any of the G|CLUBS Employees. For example, with respect to Ms. Reyes, she testified that she did not believe that anything she had done while working at G|CLUBS violated the law. (*See* Tr. 2987:6-10 ("Q. And when you were at G|CLUBS, did you believe it was a legitimate business? A. Yes. Q. Did you believe you were committing any crimes? A. No.") Accordingly, the only

---

[1] Indeed, the government's reliance on the corporation-employee relationship to invoke the co-conspirator exception would seem to also run afoul of the principle in this Circuit that, particularly with respect to an alleged RICO violation, a corporation cannot conspire with its own employees. *See*, *e.g.*, *Boneta v. Rolex Watch USA, Inc.*, 232 F. Supp. 3d 354, 359 (S.D.N.Y. 2017) (in RICO case, holding "[a] corporation cannot conspire with itself or with its own employees or agents").



record evidence is that she could not have been part of any conspiracy with Mr. Guo. The same is true with Mr. Hadjicharalambous and Ms. Izquierdo—the government has pointed to acts that they undertook, but the government does not proffer any evidence that either person knew that they were involved in an illegal agreement or agreed to join a purported conspiracy.

Nor does the government establish that the G|CLUBS Employees were agents of Mr. Guo. The government has adduced no evidence that these employees directly reported to Mr. Guo, took instruction from Mr. Guo, or served in roles created by Mr. Guo, as required by relevant case law. Instead, the government argues it has established that the G|CLUBS Employees worked for a corporate conspirator, and that they reported to Ms. Wang. The government further argues that Ms. Wang is Mr. Guo's agent, and that, as a result, an agent of Ms. Wang's is an agent of Mr. Guo's. This daisy chain that the government seeks to construct fails under *Rioux*—there the Second Circuit noted that the agency relationship was proven when the government proved that the employees "(1) were hand-picked by [the defendant]; (2) served at his pleasure; and (3) received their instructions through [the defendant] himself or [an employee who served in a position the defendant created]." *See* 97 F.3d at 660. The government offers no such evidence to the Court. There is no evidence that Mr. Guo ever instructed any of the G|CLUBS employees—in fact, Ms. Reyes expressly disclaimed as much in her testimony. (Tr. 3175:24-3180:25). Moreover, Ms. Reyes and Mr. Khaled both agree that the ultimate beneficial owner of G|CLUBS is Mr. He, (Tr. 3270:2-3; 1982:25-1983:2; 2045:13-20)—and their testimony is corroborated by numerous documents. (*See, e.g.*, GXSW 2053, GXMSS87, GX3214). And even if the government were to argue that Ms. Wang was the conduit for these instructions, that would still fail under *Rioux*, because the government has no evidence as to how Ms. Wang came to hold her position in G|CLUBS, *i.e.*, whether "she served in a position [Mr. Guo] created." Simply put, the government has failed in its evidentiary showing on multiple grounds.

### 2.    Himalaya Exchange and Hamilton Employees

The government's motion with respect to Himalaya Exchange and Hamilton employees is equally far-fetched. Again, as an initial matter, the government has cited to no evidence that Mr. Guo owned any part of the Himalaya Exchange, or controlled it. The company's CEO, Jesse Brown, testified repeatedly that Mr. Je was in charge of the Exchange. (*See, e.g.*, Tr. 3634:14-3635:1; 3641:3-15; 3642:18-20; 3647:6-7; 3648:12-14; 3678:11-3679:2). In fact, Mr. Brown—the only Exchange or Hamilton employee to testify—testified that he never spoke to Mr. Guo. (Tr. 3695:3-7).

In fact, perhaps the only part of Mr. Brown's testimony that the government relies on to establish some semblance of control on Mr. Guo's part is his reference to an unnamed Himalaya Exchange employees that purportedly told him that Mr. Guo had decided the Exchange's launch date. (Govt. Br. at 6 (citing Tr. 3674:4-9)). But that testimony is itself inadmissible hearsay, and the government's motion now essentially concedes as much. In particular, the government twice argued—first at the initial sidebar about this testimony, and then again after defense counsel raised this testimony on June 27, 2024 (Tr. 3672:2-12; 4749:13-23)—that this testimony was admissible



June 29, 2024
Page 8

as co-conspirator and agent statements. Now, however, the government does not seem to press this piece of testimony in its most recent motion. That concession is a wise one, for there is no way that the government could credibly claim that it can establish that a particular Himalaya Exchange employee is one of Mr. Guo's agents or co-conspirators when the government *cannot even identify the employee*. Without such information, how could, for example, the government determine whether Mr. Brown heard of Mr. Guo's alleged setting of the launch date from an intern at the company—who presumably would have less knowledge about Mr. Guo's true role at the company and involvement in his affairs—or from a senior executive who interacted with Mr. Guo regularly? It simply cannot do so, and as a result, it cannot satisfy either of the relevant hearsay exception's requirements. Of course, having now conceded, in essence, that fact, there is no basis for the admission of this part of Mr. Brown's testimony, and it should be stricken.

Outside of that limited example, the government's argument as to the Exchange Employees (specifically Himalaya Exchange COO Marios Mamzeris, Himalaya Exchange attorney Priya Patel, and Hamilton executive David Fallon) mirrors its argument for G|CLUBS. The government argues that because the Exchange Employees were agents of alleged co-conspirator William Je, and/or because they were employees of alleged co-conspirator corporate entities, their statements can be admitted as against Mr. Guo for their truth. As above, the government's novel vicarious-squared approach fails under *Rioux* and should be rejected.

Nor can the government succeed by trying to claim that Mamzeris, Patel, or Fallon are co-conspirators. The government has not offered any evidence that Ms. Patel, for example, knew of any alleged plot, or knew of Mr. Guo's (non-existent) financial connection to the Himalaya Exchange. In fact, the government has not given the Court any evidence to demonstrate that Mr. Guo had any such financial interest in the Exchange that could undermine Ms. Patel's statement about Mr. Guo's connection to the Exchange, besides its own *ipse dixit* statements. Similarly, with respect to Mr. Mamzeris, the government argues that he somehow furthered the scheme by emailing BitGo about the Exchange's lack of cryptocurrency functions. (Gov. Br. at 6 (citing GXBR 212)). Transparency about that fact, would, however, seem to undercut rather than further the goals of the conspiracy, and thus would not be admissible under the co-conspirator statement. *See Saneaux*, 365 F. Supp. 2d at 493. Finally, the government does not point to any evidence with respect to Mr. Fallon's mental state, it just cites to actions that any corporate employee in his role would take. The government's showing lacks the interstitial connectivity required to proceed under the co-conspirator exception.

### 3. Agents of Taurus Fund

The government seeks to admit the statements of Dara Lawall, Aaron Mitchell, Scott Barnett, Gladys Chow, and Sean Jing under the agency exception. (Gov. Br. at 7). Again, the government's claim is off the mark for several reasons.

*First*, the government's proffered evidence in this regard turns on all of these individuals work on behalf of Taurus Fund related to the Mahwah property, not Mr. Guo. (Gov. Br. at 6,



June 29, 2024
Page 9

describing each as "agents of Taurus Fund"). And the government's evidence at trial showed that the Taurus Fund was controlled by Mr. Je, not Mr. Guo. For example, Ms. Buck testified about her contact with Ms. Patel in her capacity as counsel to Hamilton. (Tr. 3931:13-3932:4). Thus, in other words, the government's showing at best shows that these individuals were acting as agents of one of Mr. Guo's co-conspirators, not Mr. Guo. As described above, that showing is insufficient under either hearsay exception.

*Second*, to the extent the government protests that these individuals also had relationships with Mr. Guo, the government's argument still falls flat. Initially, two of the declarants in this category, Mr. Mitchell and Ms. Lawall are attorneys. As a result, the Court should conduct a more searching review of statements made in connection with their purported agency relationship with Mr. Guo because "[t]he formal relationship of the lawyer as agent and the client as principal by itself will rarely suffice to show this since, while clients authorize their attorneys to act on their behalf, considerable delegation is normally involved and such delegation tends to drain the evidentiary value from such statements," and, as a result, "[s]ome participatory role of the client must be evident, either directly or inferentially as when the argument is a direct assertion of fact which in all probability had to have been confirmed by the defendant." *McKeon*, 738 F.2d at 33. Here, the government has not demonstrated any "participatory role" in these attorneys' statements, such that they could be attributed to Mr. Guo under the agency exception. Moreover, with respect to Mr. Barnett, Ms. Chow, or Mr. Jing, the government does not to any evidence demonstrating the scope and nature of their purported agency relationships with Mr. Guo so as to allow the Court to determine whether any purported statements by these declarants squared with those relationships.

### 4.    Whistleblower Movement Members

The government seeks to admit the statements of Xia Qidong, Sara Wei, David Dai, and Zhang Yongbing under an agency theory. Specifically, the government argues that "[t]he trial makes clear that Guo controlled the Farms." Again, the government's argument is long on rhetoric and short on specifics. Specifically, with respect to each of the purported Farm members that the government puts forward:

*First*, with respect to Mr. Qidong, head of the MOS farm, David Dai, head of the UK Farm, and Sara Wei, head of the Phoenix Farm, the government relies heavily on testimony that Mr. Guo purportedly "chose" them, but does not say for what. Regardless, the government's evidence does not make clear what, if any, actual control Mr. Guo wielded over Farm Leaders. For example, Ya Li, a Farm leader herself, testified that she ignored Mr. Guo's direction on multiple occasions. (*See, e.g.,* Tr. 1626:13-25; 1736:22-1737:9). Similarly, Le Zhou's testimony showed that Mr. Dai—without Mr. Guo's knowledge apparently—took money for himself. (Tr. 385:3-386:21). And the testimony very clearly establishes that Mr. Guo and Ms. Wei had a falling out. (*See, e.g.*, Tr. 1244:3-1246-15). Given that Farm Leaders could disagree with, or even quit, their positions as Farm Leaders without the kinds of consequences, *e.g.,* having to lose a job or suffer physical



June 29, 2024
Page 10

harm, the government has not demonstrated any real control that Mr. Guo purportedly had over these individuals.

*Second*, as for Mr, Yongbing, the evidence shows that he is an attorney. Thus, to attribute his statements to Mr. Guo, the government must show some level of "[s]ome participatory role of the client must be evident, either directly or inferentially as when the argument is a direct assertion of fact which in all probability had to have been confirmed by the defendant." *McKeon*, 738 F.2d at 33. Beyond rank speculation, however, the government has not been able to tie any specific statement by Mr. Yongbing with any "participatory role" by Mr. Guo. As a result, the government has failed to satisfy its burden under the agent exception to the hearsay rules.

### 5.    GTV/Golden Springs Employee

Next, the government seeks to have statements made by Max Krasner, an accountant for Golden Spring and GTV, admitted for their truth. The government does so on the basis that Golden Spring "was made up of employees who acted as Guo's agents." (Gov. Br. at 5). Mr. Guo does not contest that Mr. Krasner was an employee of Golden Spring. But establishing that Mr. Krasner is an agent of Golden Springs does not carry the further point that Mr. Krasner is an agent of Mr. Guo's. For example, the government points to no evidence that Mr. Guo owns Golden Springs— if anything, the record evidence shows that it belongs to Mr. Guo's son Mileson. So, at best, the government can argue that Mr. Krasner is an agent of a co-conspirator, which, as described above, is insufficient as a matter of law. But even if the government tried to argue that Mr. Guo controlled Golden Springs, it still would not have made the requisite showing with respect to Mr. Krasner, because it has offered no evidence that, for example, Mr. Krasner was selected by Mr. Guo, took instructions from Mr. Guo, or served in a position that Mr. Guo created. *See Rioux*, 97 F.3d at 660. Without meeting these standards the government cannot establish that an agency relationship between Mr. Guo and Mr. Krasner, as opposed to merely establishing that Mr. Kranser fulfilled his role as an accountant at Golden Spring.

### 6.    The So-Called "Inner Circle

Finally, the government seeks to offer the statements of Yvette Wang, William Je, Mileson Guo, and Haoran He as co-conspirators. (Gov. Br. at 4). Given Ms. Wang's guilty plea to conspiracy related to the Hayman Capital investment, Mr. Guo will not challenge the government's position with respect to Ms. Wang.

However, as to the others, the government's proof is lacking because, while it points to conduct, it does not point to any evidence that establishes—even by a preponderance—that there was an agreement to engage in any type of criminal conspiracy. To be sure, the government has established that there are some ties between these men—it has established for example, that there is a commercial and social relationship between Mr. Je and Mr. Guo, that Mr. Guo and Mileson Guo are family, and that Mr. He and Mileson Guo have a social and commercial relationship. It has also tied certain of these men to commercial ventures at issue in this case. But the government



June 29, 2024
Page 11

has not adduced any evidence of a common plan or enterprise between them—for example, it has not pointed to a single communication between Mr. Guo and any of them that provides evidence of the alleged conspiracies. Nor does it have any witness testimony linking them. For example, as to William Je, the government offers Tr. 2792:22-2793:19—regarding the $37 million wire to provide a loan for a bond to secure the return of the Lady May yacht owned by Mei Guo—but failed to establish any communications with Miles Guo, or any joint effort beyond Mr. Je's desire that his "best friend" not be imprisoned. Further, as this Court has recognized in its proposed jury charge, mere presence at the scene of a crime, even coupled with knowledge that a crime is taking place, is not sufficient to establish a conspiracy. Nor is knowledge without participation sufficient to establish a conspiracy. (*See* Proposed Jury Charge dated June 18, 2024, at 39).

## III.    Conclusion

For the reasons set forth above, the evidence adduced by the government is plainly insufficient to support admission of any of the alleged co-conspirator or agent statements for their truth. As a result, all such statements should be stricken from the record, and an instruction should be given to the jury to disregard all testimony previously offered subject to connection. *See Saneaux*, 365 F. Supp. 2d at 493.

Respectfully submitted,

Sidhardha Kamaraju
Matthew S. Barkan
PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100
skamaraju@pryorcashman.com
mbarkan@pryorcashman.com

Sabrina P. Shroff
80 Broad Street, 19th Floor
New York, NY 10004
(646) 763-1490
sabrinashroff@gmail.com



June 29, 2024
Page 12

E. Scott Schirick
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
(212) 210-9400
scott.schirick@alston.com

*Attorneys for Miles Guo*

cc:  All counsel (via ECF)