

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 30, 2024

**VIA ECF**
The Honorable Analisa Torres
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007-1312

   Re: *United States v. Guo*, S3 23 Cr. 118 (AT)

Dear Judge Torres:

  The Government writes to preclude the introduction of certain improper and inadmissible evidence during the defense case in the above-captioned matter. Specifically: (i) the Court should preclude testimony from individual investors who claim not to be victims of the charged schemes; (ii) the Court should preclude the irrelevant and unduly prejudicial testimony of ▮▮▮▮ ("Defense Witness-1")[1]; (iii) the Court should preclude defense witness George Higginbotham from transmitting hearsay; (iv) the Court should preclude the defendant's experts from rendering any opinions regarding the testimony of other Government witnesses; and (v) the Court should exclude irrelevant evidence regarding redemptions paid by the Himalaya Exchange.

**I. "Non-Victim" Investor Witnesses Should Be Precluded**

  The Rule 26.2 materials Guo has produced to date suggest that Guo intends to call at least three investors in the G Enterprise investment projects who will testify that they do not believe they were defrauded. Given the thousands of investors in the Guo investments, and that many of those investors remain strong adherents to Guo's purported political movement, it is to be expected that not every investor has realized they were victimized by Guo. But the fact that certain individuals did not recognize—and some, even still to this day, *do* not recognize—that they were victims of a fraud is irrelevant and has no bearing on what the Government is required to prove at trial. For that reason, the probative value of any such testimony is nonexistent, while the risk of confusing the issues before the jury and unfairly prejudicing the Government is high. The testimony of these defense witnesses should thus be excluded.

  A. Applicable Law

  Under Federal Rule of Evidence 402, "[i]rrelevant evidence is not admissible" at trial, Fed. R. Evid. 402, and under Rule 403, a court may exclude even relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice,

---

[1] In an abundance of caution, the Government has anonymized the name of this witness.

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," Fed. R. Evid. 403; *see also United States v. Miller*, 626 F.3d 682, 689-90 (2d Cir. 2010). A defendant is entitled to present a defense only if it has a foundation in the evidence, *see United States v. Kwong*, 69 F.3d 663, 667-68 (2d Cir. 1995), and as long as it does not fail as a matter of law, *see United States v. Bakhtiari*, 913 F.2d 1053, 1057 (2d Cir. 1990). If the Court finds a defense insufficient as a matter of law, the Court is under no duty to allow the defendant to present the evidence, or advance the defense, before the jury. *See United States v. Paul*, 110 F.3d 869, 871 (2d Cir. 1997) (citing *United States v. Bailey*, 444 U.S. 394, 416-17 (1980)).

Courts uniformly "refuse to accept the notion that 'the legality of a defendant's conduct would depend on his fortuitous choice of a gullible victim.'" *United States v. Burke*, 445 F. App'x 395, 397 (2d Cir. 2011) (quoting *United States v. Benson*, 548 F.2d 42, 46 (2d Cir. 1977); *United States v. Sun–Diamond Growers of California*, 138 F.3d 961, 971 (D.C. Cir. 1998) ("[W]hen an individual is swindled, the offender does not escape mail or wire fraud liability just because the victim was unwary, or even gullible." (internal quotation marks omitted)). As the Second Circuit wrote in *United States v. Thomas*, "[a]s we have already held, the victim's gullibility . . . is not relevant to the inquiry as to whether the defendants were properly convicted. . . . If we held otherwise, we would be inviting con men to prey on people of below-average judgment or intelligence, who are anyway the biggest targets of such criminals and hence the people most needful of the law's protection." *United States v. Thomas*, 377 F.3d 232, 243–44 (2d Cir. 2004); *see also*, *e.g.*, *United States v. Nekritin*, No. 10 Cr. 491 (KAM), 2011 WL 2462744, at *7 (E.D.N.Y. June 17, 2011) ("[i]t is well settled that a fraud victim's negligence in failing to discover the fraudulent scheme is not a defense to a defendant's criminal conduct. Thus, any evidence that a fraud victim was negligent or gullible is not relevant to the defendant's guilt or innocence for the charged fraud").

B. Argument

The Government is not required to prove that every single investor in the defendant's investment projects was defrauded, nor that each of those investors has subsequently concluded that they were victims of a fraud. Thus, the introduction of evidence that certain individual investors in the defendant's "opportunities" do not, today, consider themselves to have been defrauded is irrelevant. *See United States v. Washington*, No. 21-CR-603 (VEC), 2023 WL 6219203, at *9 (S.D.N.Y. Sept. 22, 2023) (precluding in wire fraud and health care fraud trial the defense from introducing that the victim health care plan "took no position on whether it was a 'victim' of the charged conduct . . . [because it] has no relevance to any issue of consequence and is, therefore, not admissible." (citing Fed. R. Evid. 401)). Accordingly, the testimony of defense witnesses called to testify that they do not believe themselves to be victims or that they were not defrauded should be precluded for several reasons.

*First*, the Government is not under any obligation to prove the existence of even a single victim in order to obtain a guilty verdict. *Bankman-Fried*, 680 F. Supp. 3d at 308 ("[T]he [wire fraud] offense is complete where . . . there is an immediate intent to misapply and defraud." (quotation marks and citation omitted)).

*Second*, any such testimony would necessarily be focused on the sophistication and capacities of these particular individual investors. Dkt. 318 at 17 ("The Second Circuit "routinely

has rejected a gullible victim defense for wire-fraud charges." (quoting *United States v. Adelekan*, 567 F. Supp. 3d 459, 470 (S.D.N.Y. 2021) (collecting cases)); *United States v. Litvak*, 889 F.3d 56, 65 (2d Cir. 2018) (explaining "reasonable investor" is an objective standard). Placing those issues before the jury, and suggesting that the fact that the defendant may not have defrauded every investor—or, at least, that certain investors do not believe themselves to have been defrauded—would substantially confuse the issues to be decided by the jury and unfairly prejudice the Government for the sake of allowing testimony on a legally irrelevant point. As the Court is aware, the Government's position is that the defense's cross examination of witnesses with respect to, for example, the research and diligence they performed on their investments was improper under Second Circuit law. (Tr. 4573 ("Did you do any research into his wealth?" (which question was sustained)); Tr. 4578 ("Did you read the bankruptcy petition that [Guo] signed?"); Tr. 4631 ("Did you ask anybody on the exchange to see proof of the gold reserve?"(which question was sustained)); *id.* ("Did you read [the white paper]"?); *see Thomas*, 377 F.3d at 243–44 (collecting cases).

*Third*, the defendant may not offer the testimony of these witnesses in an attempt to counter the testimony of the several victims who testified in the Government's case. As an initial matter, the proper mechanism to counter the testimony of the Government's witnesses is cross-examination, which in this case has been not only extremely lengthy and freewheeling but vigorous. The defense cannot seek to counter the fact that the defendant defrauded *some* victims by pointing to the testimony of *other* victims who subjectively believe they were not defrauded. That is irrelevant and improper for the reasons given above, as well as for the fact that such argument would be akin to offering "other good act" evidence—which is likewise irrelevant and improper in a criminal trial. *See* Dkt. 319, at 16 ("It is well established that a defendant 'may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions.'" (quoting *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990))); *United States v. Boykoff*, 67 F App'x 15, 20-21 (2d Cir. 2003) ("[E]vidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant."). More to the point, that certain victims feel they have not been defrauded has no bearing on whether *Guo intended* to commit fraud. *See United States v. Clover Perez*, No. 09 Cr. 1153, No. 49, 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (refusing to allow defendant accused of preparing false immigration applications to introduce evidence that she had accurately advised certain clients about their eligibility for immigration benefits, or that she had prepared certain truthful and accurate applications, and *citing United States v. Walker*, 191 F.3d at 336 (2d Cir. 1999)).

The Court should preclude the testimony of these defense witnesses or, at a minimum, order that the defense provide a proffer of relevance as to the proposed testimony of these witnesses, so that the Government and the Court may assess whether any aspect of the proposed testimony is permissible.

II.     **Defense Witness-1's Testimony Should Be Significantly Limited**

A. Background

On April 9, 2024, the Government moved to exclude evidence that, according to the defense, the "Chinese police have forced some GTV investors into filing false claims with the SEC, FBI, and U.S. financial institutions." (Dkt. 273 at 57, quoting Guo *Ex Parte* Mem. of Law in Support of Mot. for Subpoena to USAO-EDNY.) Guo opposed, arguing that he is entitled to

"cross-examine the *government's* purported victim-witnesses on this basis," a point that the Government did not (and does not) dispute. (Dkt. 287 at 77 (emphasis added).) Guo also claimed that he should be able to present evidence that critics "were working at the behest of the CCP to bring down his movement." (*Id.*) On May 2, 2024, the Court denied the Government's motion, explaining that "[t]he Government d[id] not identify specific evidence on the subject that it expects Defendants to introduce, and the Court cannot evaluate relevance in the abstract." (Dkt. 319 at 15.)

In the same order, the Court made two additional rulings. *First*, the Court granted the Government's unopposed motion to preclude the defense from "imply[ing] that the SEC or the Government are responsible for the victims' financial losses, or that the failure of GTV and the Himalaya Exchange was the fault of the SEC or the Government, because such argument has a substantial danger of confusing the issues and misleading the jury." (Dkt. 319 at 18.) *Second*, the Court granted the Government's motion "to preclude Defendants from arguing that the prosecution team is 'improperly linked to the CCP or in any way malicious.'" (Dkt. 319 at 13.) While co-defendant Yvette Wang did not oppose the motion, the Court noted that it was "less clear whether Guo" made such a "concession." (*Id.*) Nevertheless, the Court granted the motion since "neither Guo nor Wang have a raised a malicious or selective prosecution argument," and since, in any event, such an argument must be made "before the Court—not the jury—because it raises an issue that is independent of the question of the defendants' guilt or innocence." (*Id.* (internal quotation marks omitted).)

Following the Court's rulings, on May 13, 2024, Guo provided the Government certain Rule 26.2 materials. Included in those materials were notes from an interview with Defense Witness-1. Defense Witness-1's 26.2 material indicates that he claims to have invested $180,000 in GTV in May 2020 while he was in China. Defense Witness-1 also claims that on October 23, 2022, while in China, he was arrested by the Chinese police and interrogated about GTV. Defense Witness-1 asserts that the Chinese police communicated with him via WeChat a few days later and requested more information regarding GTV. According to the 26.2 materials, Defense Witness-1 apparently believes, although the reasons are not entirely clear, that the Chinese authorities "wanted to use a fraud case to bring down Guo Wengui." (Ex. A at 4.)[2] Defense Witness-1 then came to the United States. In the United States, he invested additional money into G|CLUBS, and Defense Witness-1 believes he has not lost the money he invested in GTV, because his "profits were frozen by the Securities and Exchange Commission," and because Defense Witness-1 was provided H Coin in lieu of those profits. (Ex. A at 5.)[3]

---

[2] In an abundance of caution, the Government has provided Exhibit A under seal. The Government will file Exhibit A on the docket absent a request from the defense to maintain it sealed.

[3] In light of the Court's May 2 ruling, which denied the Government's motion because the Government did not provide specific information about which evidence it was seeking to exclude—which information was not then available, but now is—the Government does not construe this motion as one for reconsideration. But even if so construed, the Defense Witness-1 Rule 26.2 material is "new evidence" permitting reconsideration of the Court's prior ruling. (*See* Dkt. 380 at 1 (granting in part Guo's motion for reconsideration) (quoting *United States v. Goldberg*, No. 12 Cr. 864, 2021 WL 2444548, at *1 (S.D.N.Y. June 15, 2021) (citation omitted)).)

B. <u>Defense Witness-1's Testimony Regarding Contact with the Chinese Police While in China, and His Blaming the SEC for His "Frozen" Profits, Is Improper</u>

*First*, whatever contact Defense Witness-1 had with the Chinese Police while he was in China is entirely irrelevant to the ultimate question of whether Guo intended to commit fraud. Guo's misstatements regarding the GTV private placement well predate Defense Witness-1's claimed contact regarding GTV with the Chinese Police. Guo should not be permitted to shoehorn evidence of Defense Witness-1's contact with the Chinese police into this trial in an effort to imply that the CCP may have influenced those Guo solicited, including, potentially, the Government's victim-witnesses. The defense was free to cross-examine Government victim-witnesses about any contact with the Chinese Government and, with only one exception, they did not. (Trial Tr. 1761:14–1763:5 (Ya Li Cross-Examination).) Guo cannot now use Defense Witness-1's experience to imply that the Government's victim-witnesses may have been similarly contacted by the CCP.

*Second*, even if the Court concludes that the Chinese government's contact with Defense Witness-1 has some relevance to the objective legitimacy of Guo's fears of CCP involvement, any tangential relevance is far outweighed by the substantial prejudice it presents. Guo should not be able to use Defense Witness-1's contact with the Chinese police *while Defense Witness-1 was in China* to suggest that the Government's victim-witnesses, all of whom invested *while in the United States*, or any aspect of the Government's lawful investigation, are tainted by the Chinese government. To the extent that Guo seeks this testimony to demonstrate Guo's fears of CCP targeting were objectively reasonable, that has been addressed through the parties' stipulation. *See* Dkt. 380 n. 13 ("the parties have negotiated and introduced a stipulation describing in detail the CCP's efforts to discredit, harass, and repatriate Guo. *E.g.,* Trial Tr. at 402:9–405:11 (quoting DX Stip. 0001). Rule 403 grants district courts 'broad discretion to exclude even relevant evidence . . . if it would be needlessly cumulative,' which the Court finds to be the case here."). Thus, not only is this Chinese government contact with Defense Witness-1 cumulative of other evidence, introducing it creates undue prejudice by improperly suggesting that the Government's witnesses, and the Government's lawful investigation, may have been tainted by the CCP. Fed. R. Evid. 403.[4]

*Third*, Defense Witness-1's 26.2 material implies that Guo seeks to make a broader, and even more inappropriately prejudicial, point—that Chinese authorities "wanted to use a fraud case to bring down Guo Wengui." (Ex. A at 4.) That component of Defense Witness-1's testimony serves no purpose other than to suggest that *this U.S. prosecution* is influenced by the Chinese government—there is no basis for such an argument. Indeed, in a previous ruling, this Court granted the Government's motion to preclude the defendants from "arguing that the prosecution team is 'improperly linked to the CCP or in any way malicious.'" (*See* Dkt. 319 at 13.) Accordingly, the defense should not be permitted to elicit this testimony from Defense Witness-1.

---

[4] Nor is this a proper use of extrinsic evidence to impeach the Government's witnesses. *United States v. Surdow*, 121 F. App'x 898, 900 (2d Cir. 2005) ("a court may reasonably expect that, to ensure the orderly conduct of a trial, an impeaching party that does not itself intend to confront a witness with the particulars of a purportedly inconsistent statement will, at the very least, "inform[ ] the court and opposing counsel, *at the time the witness testifies,* of the intention to introduce" impeaching extrinsic evidence so that appropriate steps may be taken to "keep the witness available to be called to explain the statement.").

*Fourth*, Defense Witness-1's belief that "[his] profits were frozen by the Securities and Exchange Commission" is not admissible under the Court's prior ruling. (Dkt. 319 at 18.) That ruling, which Guo did not oppose, precludes the defense from suggesting that the SEC's legitimate efforts to restrain Guo's unregistered securities offering, and to return money to victims, was improper. Defense Witness-1 should not be permitted to offer testimony that in any way blames victims' losses on the SEC or serves to undermine the SEC's legitimate and lawful civil enforcement efforts—especially because Guo's entities, Saraca and GTV Media, voluntarily agreed to the restraint of assets invested in GTV. (Ex. B (GXSTIP19).)

    C. <u>Defense Exhibits Associated with Defense Witness-1 That Suggest Malign CCP Influence on Victims Should Also be Precluded</u>

On June 29, 2024, at 4:45 p.m., Guo provided the Government approximately 30 exhibits that Guo may introduce through Defense Witness-1's testimony. (DX_60693 – DX_60723.) Those materials include:

    i. documents related to Defense Witness-1's purported purchase of GTV shares in the GTV private placement (DX60693, DX60694, DX60696, DX60697);

    ii. materials regarding retention, and firing, of an attorney to sue GTV (DX60700, DX60699, DX60698, 6075);

    iii. filings from a civil suit, *[Defense Witness-1] et al., v. GTV Media Group, Saraca Media Ground, and Wengui Guo*, including a complaint and documents related to this suit claiming Defense Witness-1 did not seek to dismiss the case (DX60719, DX60695);

    iv. complaints purportedly made by Defense Witness-1 to the FBI and the New York Attorney General's Office ("NYAG"), which were produced in Mandarin and accompanied by unverified translations (DX60706-10, DX60721-23);

    v. chats between Defense Witness-1 and Guo and between Defense Witness-1 and individuals whom Defense Witness-1 asks to relay messages to Guo, which were produced in Mandarin and accompanied by unverified translations (DX60701-03);

    vi. complaints emailed by Defense Witness-1 to the NYTimes and Wall Street Journal, which were produced in Mandarin and accompanied by unverified translations (DX60715-18); and

    vii. what appears to be a journal of Defense Witness-1's interactions with Chinese police, again produced in Mandarin along unverified translations (DX60711-12).[5]

---

[5] Earlier today, the Government requested that the defense explain what this document is but has not yet received a response.

In response to inquiries from the Government, today the defense confirmed that it had not previously produced these 30 exhibits among the defendant's Rule 16 material.

1. DX_60693 – DX_60723 Are Untimely

To start, as noted above, these 30 exhibits were not produced by the defendant with his Rule 16 material. This Court was clear that the "defendant must [ ] permit the Government to inspect any document or record that the defendant 'intends to use . . . in the defendant's case-in-chief at trial.'" (Dkt. 275, at 2 (quoting Fed. R. Crim. P. 16(b)(1)(A)); *see also id.* n.1 ("if a defendant seeks to present affirmative (non-impeachment) evidence through a government witness during the government's case in chief, the defendant's presentation of evidence during such an examination should be treated as part of the defendant's 'case-in-chief' for purposes of the defendant's disclosure obligations under Rule 16." (quotation and citation omitted).)) The defendant's failure to meet the Court's deadline—indeed, he produced these exhibits just two days before the defense case is scheduled to begin—is itself reason to preclude them. *See, e.g., United States v. Weiss*, 930 F.2d 185, 199 (2d Cir. 1991) (affirming preclusion of evidence defendant had failed to produce and explaining that permitting defendant to use documents the prosecution had not timely seen "would have given the defense an unfair advantage"); *United States v. Ortega*, No. 22 Cr. 91 (RA), Doc. 93, at 2 ("Should Defendant fail to produce material subject to his disclosure obligations under Rule 16, he will be precluded from using such evidence during his case-in-chief.").

On June 30, 2024, Guo's counsel confirmed that "[t]he defense [first] provided these documents when it decided to use them in its case-in-chief." (Email from C. Tilton, dated June 30, 2024.)[6] Notably, the defense's email does not state when the defense came into possession of these exhibits. the defense has clearly been aware of this witness, and in possession of at least certain of these materials, for some time given that the defense has had those materials translated . In addition, some of the 30 exhibits contain Mandarin language and purported translations, which the Government has not been able to verify in the approximately 30 hours since it received the exhibits on Saturday. The exhibits should be precluded on this basis alone. *United States v. Jasper*, No. 00 Cr. 825 (PKL), 2003 WL 223212, at *4 (S.D.N.Y. Jan. 21, 2003) (explaining that "[a]llowing [the] defendant to defer the provision of such discovery until a final determination regarding whether or not [to] put an expert witness on the stand would seem to frustrate" the goal of allowing the Government a fair opportunity to prepare).

---

[6] These exhibits were provided in redacted form, concealing from the Government the witness's banking information, personally identifiable information, and content that appears to be substantive. While the Government has redacted the personally identifiable information of victims in exhibits, such information was otherwise available to defense counsel in the Government's Rule 16 production. Further, while the Government is required to protect victim information from the G Enterprise, the Government and the FBI are well equipped to safeguard any sensitive information in the defense exhibits. To the extent the defense believes such safeguarding is necessary, it should produce unredacted materials to the Government and designate those materials as confidential under the protective order. The Government has requested but has not yet received from the defense unredacted copies of these materials.

### 2. DX_60693 – DX_60723 Contain Inadmissible Hearsay, Are Irrelevant, and Risk Confusing the Jury

Next, and regardless of whether they were timely produced, the majority of these 30 exhibits appear to include impermissible hearsay: they are out-of-court statements of Defense Witness-1 (and potentially Guo). They should be excluded on this basis, too. Materials regarding Defense Witness-1's involvement in a civil case, his claimed complaints to the NYAG and FBI, his messages with Guo, and his apparent journal of contact with the Chinese police are all plainly his out of court statements offered for their truth. To the extent the defense believes these statements are admissible for a non-hearsay purpose, Guo bears the burden to articulate one, and he has not done so.[7]

In any event, even if they had been timely produced and are not hearsay, these exhibits should be precluded because they are irrelevant and risk confusing the jury. Certain of the exhibits purport to be documentary proof that the CCP apparently coerced Defense Witness-1 into filing complaints against GTV with the FBI and the NYAG. The admission of such exhibits has no other purpose than to undermine the Government's victim-witnesses (and the Government's investigation) through extrinsic evidence. As explained above that is improper. Evidence of the CCP targeting Guo is relevant only insofar as it demonstrates that "[Guo's] fears of CCP targeting were objectively legitimate—even if [he] were not aware of the specific pieces of evidence—[by] giv[ing] credence to certain nonculpable explanations of [Guo's] actions. Put simply, a jury could find that the targeting evidence elevates [Guo's] alternative narrative beyond mere paranoia." (Dkt. No. 365 at 15 (quoting Dkt. 319 at 14).) Complaints about fraud to the FBI NYAG do not justify why Guo used multiple cellphones (an argument the Government has *not* made to suggest he is guilty of the charged offenses) or in any way legitimize his decision to spend $100 million of victim funds on high-risk hedge fund for himself. Moreover, targeting evidence cannot be used to impugn the Government's investigation or in any way suggest that this prosecution is the result of CCP manipulation. To the extent the Court permits the admission of such exhibits, and any related testimony, it should be accompanied by a clear instruction that the Government's case is not tainted by the CCP.

Certain of the Defense Witness-1 exhibits also appear designed to inject irrelevant political issues into this trial. For example, DX 60712 is an undated set of notes that does not clearly identify an author; though it appears, on its face, to be Defense Witness-1's notes of interactions with the Chinese government. (*See* DX 60712 (attached hereto as Ex. C).) A portion of DX 60712 is excerpted below:

---

[7] Guo cannot credibly claim these documents (nearly all of which, absent the communications with him directly, he does not appear to have received) speak to his state of mind. Rule 803 provides a limited hearsay exception for "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed . . . ." Fed. R. Evid. 803(3). Thus, in order to be admissible under Rule 803(3), a statement must be (a) an expression of, and (b) contemporaneous with, the declarant's *then-existing* state of mind. Nor could Guo rely on them being admitted for Defense Witness-1's state of mind. There are two reasons for this. First, Defense Witness-1's state of mind is not relevant. Second, even if it were, these documents do not reveal Defense Witness-1's feelings; instead, they reveal what Defense Witness-1 (apparently) claims he was pressured by the CCP to do.

> The Sixth Time
>
> Time: 1/14/2021           14:30 – 17:25
>
> Location: Shanghai Automobile City Ruili Hotel     Room 1718
>
> Participants: State Security C, State Security D, State Security F, State Security G
>
> Synopsis:
>
> 1. They said: You know, the Senate is now impeaching Trump. He could not even help himself. Biden would go into the office. The new government would be taking care of Guo Wengui and his gang very soon. So now we must pick up the momentum and act. So it was to get the investment money back quickly. You need to be more proactive. It was your money. We were all just helping you.

Just this portion of DX 60712 introduces numerous issues that are well beyond the scope of the charges in this case; they simultaneously suggest that U.S. political figures are relevant to Guo's prospects in this trial and appear to blame Guo's *victims* for not being "more proactive" in getting their investment money back. These issues are not relevant to the questions properly before the jury. Indeed, exhibits like DX 60712 make clear that the defense is attempting to distract from the pertinent issues before the jury by injecting irrelevant, confusing, and, in some cases, inflammatory evidence into the trial record.

These 30 exhibits, and testimony related to them, should be precluded for all the reasons stated above.

## III.    George Higginbotham's Testimony

Guo also seeks to call George Higginbotham to elicit testimony about a conspiracy Higginbotham joined to seek to persuade the Trump Administration to repatriate Guo to China in 2017. The Government does not dispute the relevance of Higginbotham's testimony in this motion but notes that its relevance is limited by the parties' agreement to facts in a stipulation which has already been read aloud to the jury at least four times during the course of this trial.[8] *See* Dkt. 380, n. 13; *see also, e.g.*, Trial Tr. 402-05, 730-31, 2497-98, 4164-65. However, as set forth below, the Government does seek to cabin certain testimony by Higginbotham. Specifically, Higginbotham should not be permitted to testify regarding statements made in furtherance of the conspiracy of which he was a part—specifically, the conspiracy to act as an unregistered foreign agent. This is because the co-conspirator exemption to the hearsay rule is available only to an *opposing* party. Fed. R. Evid. 801. Higginbotham, Broidy, Davis, Michel, and their foreign co-conspirators are not parties opposing Guo in this criminal case brought by the United States of America.

---

[8] Specifically, the parties have stipulated that "[b]etween May 2017 and January 2018, at least four individuals, including George Higginbotham, Elliot Broidy, Nickie Lum Davis, and Prakazrel Michel, never disclosed that they were actually acting on behalf of foreign actors, including the PRC government, to lobby officials in the Trump administration in an effort to cause Mr. Guo's extradition to China. Higginbotham, Broidy, Davis, and Michel were each convicted of violating U.S. law regarding their lobbying efforts. The efforts of these individuals were not successful, and Mr. Guo was never extradited at the request of the PRC government." (DXSTIP 1).

Accordingly, statements made in furtherance of the conspiracy to which Higginbotham pleaded guilty should be excluded. Nor can these statements be offered for their effect on a listener, because the only listener whose state of mind is relevant to Higginbotham's testimony is Guo—and Guo did not hear the statements.

### IV. Defense Experts Cannot Render Opinions About Government Witness Testimony

The defense has produced Rule 26.2 materials for Maggie Sklar, Guo's cryptocurrency expert, indicating that Sklar reviewed the testimony of Government witnesses Jesse Brown and Sam Roberts. The defense should be precluded from using Sklar to opine about Government witnesses' testimony. The Second Circuit has been clear that "witness *A* may not offer an opinion as to relevant facts based on *A*'s assessment of the trustworthiness or accuracy of witness *B* where *B*'s credibility is an issue to be determined by the trier of fact." *United States v. Scop*, 846 F.2d 135, 142 (2d Cir.), *on reh'g*, 856 F.2d 5 (2d Cir. 1988). Accordingly, "expert witnesses may not offer opinions on relevant events based on their personal assessment of the credibility of another witness's testimony." *Id.*; *see also United States v. Ray*, No. 20 Cr. 110 (LJL), 2022 WL 101911, at *12 (S.D.N.Y. Jan. 11, 2022) ("expert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702") (quoting *Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005)). Of course, Sklar may testify about topics that overlap with those about which Brown and Roberts testified, assuming those topics fall within the scope of her disclosure, but she should not be permitted to opine on that testimony.

### V. Summary Evidence Concerning Purported Redemptions by the Himalaya Exchange Is Irrelevant

It appears that Guo intends to use a summary witness, Tom Bishop, to summarize bank records that Guo claims indicate that the Himalaya Exchange provided redemptions to certain customers from November 2021 through June 2022. (DXZ02 (Ex. D).) Whether the Himalaya Exchange processed redemptions, however, is not a defense to the charges in this case; any testimony that it did permit such redemptions is therefore irrelevant. This is because, as the Court previously ruled, "[w]ire fraud 'does not require that [the defendant] intended to permanently deprive the victim's money or property.'" (Dkt. 319 at 18-19 (citing *United States v. Males*, 459 F.3d 154, 159 (2d Cir. 2006) (cleaned up); *United States v. Bankman-Fried*, 680 F. Supp. 3d 289, 308 (S.D.N.Y. 2023) (quotations omitted).) For similar reasons, the Court largely granted the Government's motion precluding the defendant from arguing that "that the [defendants] intended to return or repay victims' funds." (Dkt. 319 at 18.) The Court only permitted Guo to "introduce evidence on the narrow factual issue of whether the Farm Loans and the $37 million Himalaya Exchange loan were fictitious." (*Id.* at 19.) Redemptions processed by the Himalaya Exchange do not fall into that narrow exception to the Court's ruling. Accordingly, testimony showing that the Himalaya Exchange processed redemptions is irrelevant. Permitting its introduction would waste time and serve only to confuse the jury by suggesting that repayment undermines the Government's proof, when it does no such thing. Fed. R. Evid. 403.[9]

---

[9] To the extent that the defense claims redemptions demonstrate that the Himalaya Exchange was a legitimate entity, that too is irrelevant. Fraud does not require the operation of an illegitimate entity. Nor does the RICO statute. Indeed, the RICO statute's title itself demonstrates that its

## VI. Conclusion

While Guo is entitled to a defense, he is not entitled to circumvent the Federal Rules of Evidence and applicable law.  Nor may his defense imply that the Government is required to prove additional facts regarding the charged offenses, beyond the elements—or in any way suggest this prosecution is the result of some malign CCP plot.  The Court should grant the Government's motions to ensure that the defense case complies with the Rules of Evidence, serves to advance proper purposes, does not confuse the jury, and does not waste time.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: /s/
Micah F. Fergenson
Ryan B. Finkel
Justin Horton
Juliana N. Murray
Assistant United States Attorneys
(212) 637-2190 / 6612 / 2276 / 2314

---

applicability extends to entities and enterprises that have legitimate aspects.  Title 18, United States Code Chapter 96 ("RACKETEER *INFLUENCED* AND CORRUPT ORGANIZATIONS (emphasis added)."); *see United States v. Turkette,* 452 U.S. 576, 586 (1981) (RICO statute "include[s] both legitimate and illegitimate enterprises").