

**Sidhardha Kamaraju**

Direct Tel: 212-326-0895
Direct Fax: 212-326-0806
skamaraju@pryorcashman.com

July 1, 2024

**VIA EMAIL & ECF**

Hon. Analisa Torres
United States District Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

  Re: <u>*United States v. Guo*, Case No. 1:23-cr-00118 (AT)</u>

Dear Judge Torres:

  We write in response to the government's letter, dated June 30, 3024, (the "Govt. Ltr."), in which the government seeks to preclude or limit defense witness testimony. The Court has now reminded the government on multiple occasions that Mr. Guo is entitled to mount a defense. *See, e.g.*, Tr. at 1634:14-15 ( "Here's my ruling. Mr. Guo needs the opportunity to assert a defense"); 2702:6-7 ("They're entitled to a defense. I'm going to let it in."). The government's latest letter shows that it has not yet received the message. For the reasons set forth below, Mr. Guo respectfully submits that the Court should deny the government's motion in its entirety.

  *First*, the government argues that Mr. Guo should not be permitted to elicit from defense witnesses testimony about whether they believe they were defrauded by Mr. Guo, because, according to the government, such testimony would be irrelevant. The government is wrong. Such testimony is not relevant because it addresses the gullibility of the government's witnesses, but rather because it goes to the materiality of the alleged misrepresentations upon which the government relies, as well as the sophistication and type of investor at issue. As the Court has confirmed in its jury charge, the materiality of an alleged misrepresentation is an element that the government must prove in order to prevail on its fraud charges. As the Second Circuit noted in *United States v. Litvak*, the defense is entitled to introduce evidence that the alleged misrepresentations that the government asserts would not be material to a reasonable investor. *See* 808 F.3d 160, 182-83 (2d Cir. 2015). And as the Court noted in its order concerning the government's motions in *limine*, "[i]ndeed, the 'reasonable investor' is an objective standard and may vary "with the nature of the traders involved in the particular market." Dkt. No. 319 at 17 (quoting *United States v. Litvak*, 889 F.3d 56, 65 (2d Cir. 2018). The same is true here – if Mr. Guo's



July 1, 2024
Page 2

defense witnesses testify that they heard the alleged misrepresentations upon which the government relies, but did not view them as important in their investment decisions, then that is evidence that the jury should consider in assessing materiality. *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 185 (2d Cir. 2014) ("while importance is undoubtedly a necessary element of materiality, importance and materiality are not synonymous."). Put more bluntly, if the government was permitted to elicit testimony that its victim witnesses viewed the commercial ventures as frauds and that they viewed Mr. Guo's statements as important, then the defense should be allowed to counter that narrative with its own witnesses who say the opposite. Absent such evidence, Mr. Guo will be "left with little opportunity to present his non-materiality defense." *Litvak*, 808 F.3d at 184 (vacating conviction where district court precluded defense expert testimony on the issue of materiality).

*Second*, the government seeks to preclude testimony from Defense Witness-1 that he was coerced by agents of the Chinese Communist Party into filing complaints against Mr. Guo. The government tries to argue that introduction of such evidence would be impermissible extrinsic evidence offered to undermine the credibility of the government's own alleged victim witnesses. The government is wrong again on two fronts. Defense Witness-1's testimony offers the jury a factual basis to conclude that among the CCP's tactics to target Mr. Guo includes filing specific false complaints with regulators and courts about the very subject matter of this case. That is relevant to this case in two ways, as Mr. Guo previously explained in his opposition to the government's motion in *limine*.

Evidence that supports that any of the government's witnesses are acting at the behest of or out of fear of the Chinese Communist Party is not an issue of credibility, but of bias. And as the Court already found in denying the government's previous motion to preclude such evidence, "[t]he law is well settled in this Circuit, as in others, that bias of a witness is not a collateral issue and extrinsic evidence is admissible to prove that a witness has a motive to testify falsely." *United States v. Guo*, No. 23 CR. 118 (AT), 2024 WL 1939221, at *7 (S.D.N.Y. May 2, 2024) (quoting *United States v. Harvey*, 547 F.2d 720, 722 (2d Cir. 1976)). Given that all of the government's alleged victim witnesses testified about their continued connections to China and their persistent fear of the CCP, Mr. Guo is certainly permitted to argue that these alleged victims are doing so out of a bias towards the CCP, and to proffer evidence showing that such a possibility is "beyond mere paranoia." Dkt. No. 319 at 14.

Moreover, the government has repeatedly elicited evidence and suggested that Mr. Guo falsely branded former supporters who accused him and the movement of fraud as "Chinese spies." The defense is entitled to argue that Mr. Guo's actions in that regard, and his denunciation of such persons, were based on his good faith belief that those individuals were, in fact, acting as agents of the Chinese Communist Party. And the Court has already determined that Mr. Guo is entitled to introduce evidence to show that his beliefs about such targeting are objectively legitimate, including evidence about which Mr. Guo could not be aware at the time he made his statements. Dkt. No. 319 at 14. Defense Witness-1's testimony that the Chinese Communist Party forced them



July 1, 2024
Page 3

to file such false complaints bolsters the reasonableness of Mr. Guo's belief, and thus is admissible under the Court's prior rulings.

Finally, the government argues that Defense Witness-1's testimony on this subject should be precluded because it will introduce the specter that the prosecutors in this case are acting at the direction of the Chinese Communist Party. For the umpteenth time, the defense reiterates that it does not intend to argue to the jury that the prosecution team in this case or the U.S. Attorney's Office in general are acting as agents of a foreign power. But that is entirely different from arguing that the Chinese Communist Party is seeking to silence Mr. Guo through a number of different methods, including by forcing investors to complain falsely to U.S. courts and regulators about Mr. Guo's conduct. Defense Witness-1's testimony goes squarely to this latter point, and does not at all touch on the prosecutors' motivations for bringing this case. Nor will the defense seek to elicit from Defense Witness-1, as it previously confirmed, that the SEC is responsible for any alleged losses. The government's argument is a red herring and should be rejected as such.

*Third*, the government contends that defense exhibits that were produced to the government on June 29, 2024 should be precluded because they were not included in the defense's initial Rule 16 production. As the Court held, Mr. Guo is required to disclose to the government materials that it plans to use in its case-in-chief. In line with that deadline, while preparing Defense Witness-1 as the close of the government's case approached, defense counsel made the decision to seek to use certain exhibits as part of Defense Witness-1's testimony. Those exhibits include, for example, the complaint filed in this courthouse against Mr. Guo without the consent of Defense Witness-1 and complaints filed by Defense Witness-1 with regulators and media outlets under duress. Once the defense determined that it may seek to use those exhibits as part of its case-in-chief, it disclosed them to the government, consistent with the Court's ruling.

None of the government's authority supports preclusion based on an alleged Rule 16 violation. For example, the government cites *United States v. Weiss*, but in that case, the defense produced discovery after the government had rested its case and thus did not have an opportunity to call witnesses that could have explained the documents. 930 F.2d 185, 199 (2d Cir. 1991). That is not the case here—the government has time, if it desires, to investigate these documents and make whatever trial decisions it wishes. In fact, the government's complaint about the timing of this disclosure is particularly ironic, given that it was the government that produced numerous devices used by Mr. Je shortly before the trial, and produced approximately 17,000 documents to defense during trial and just a day before the relevant government witness was scheduled to testify. In that case, the parties resolved the issue themselves, by agreeing simply to delay the witness's cross if necessary by a single day. For the government to now complain about receiving 30 documents multiple days before a witness may testify is particularly rich.

The same is true of the government's claim that it has only had "30 hours" to verify the translations of some of the documents produced. Earlier in this case, the government produced a translation to the defense in the late afternoon the day before the government intended to use it.



July 1, 2024
Page 4

When the defense objected to not having time to review or verify the translation, the Court noted that the defense needed to be more nimble and to bring in additional resources if necessary to be able to verify translations on a short timeline. Tr. at 1126-1134. The defense has done so. For the government now to argue as a basis for exclusion the fact that it cannot verify translations of a small set of documents over the course of several days flies in the face of Court's admonition, and should not be credited.

Moreover, the government's claim that Defense Witness's complaints to courts, regulators, or media outlets are hearsay turns the witness's proposed testimony on its head. The point is not that Defense Witness-1 believed that his complaints were true – it is the exact opposite, he believed that his complaints were not true, but was coerced into making them. Thus, the documents show that Defense Witness-1 did in fact make such complaints, which corroborates Defense Witness-1's testimony. But at no point would it even make sense for Mr. Guo to argue that a complaint filed by Defense Witness-1 against him was true. In fact, the government has repeatedly stated that it is introducing statements not for their truth, but their falsity, and as a result, the proffered statements were not hearsay. Again, the government's hearsay objections miss the mark.[1]

Finally, the government asks that the Court issue an instruction to the jury that its case is not tainted by the CCP if it admits these documents. The government has repeatedly sought mid-trial instructions to the jury on the grounds that the government is concerned that the jury was confused by certain pieces of evidence, and the Court has repeatedly refused to do so because, among other reasons, the defense reaffirmed that it did not intend to make the argument about which the government was concerned. The same is true here—the defense has repeatedly stated that it does not intend to argue that the prosecution team is being guided by the CCP. Accordingly, the same result should obtain – no instruction is required. Indeed, the government seeks to go further and have the Court instruct the jury that "the Government's case is not tainted by the CCP." (Govt. Ltr. at 8). But whether, for example, Ms. Li is testifying at the direction of or out of fear of the CCP is a question of what weight, if any, to give to her testimony. The government's requested jury instruction seeks to have the Court put an impermissible finger on the scale, and should be rejected as such.[2]

---

[1] The government highlights one document—a set of notes marked as DX_60712—as particularly problematic. Had the government consulted with defense counsel about this exhibit prior to filing its motion, then defense counsel could have advised the government that it does not seek to admit that exhibit, but may use it to refresh recollection, and nevertheless produced it to the government out of an abundance of caution.

[2] Ironically, it was the government that injected the concept of the DOJ being a tool of the Chinese Communist Party when it introduced evidence of signs at protests claiming that to be the case, and eliciting testimony about the signs. *See, e.g.*, GXVI194, tr. at 1498:9-17. The government did not ask the Court for any instruction to clear up any purported confusion the jury may have at that time.

PRYOR CASHMAN LLP

July 1, 2024
Page 5

*Fourth*, the government objects that George Higgenbotham should not be permitted to testify to out-of-court statements made by his co-conspirators to act as an agent of an unregistered foreign agent. The government does not identify which statements in Mr. Higgenbotham's testimony it objects to (even though it has a transcript of his prior trial testimony which largely mirrors what he will testify to at this trial), but even in its abstract form, the government's argument sweeps too broadly. Contrary to the government's apparent position, not every out-of-court statement is hearsay—rather, the statement must be offered for the truth. Mr. Higgenbotham's testimony is not offered to prove the truth of the underlying statement. For example, if Mr. Higgenbotham were to testify to directions given to him by a Chinese state official, those statements are not hearsay. *See United States v. Dawkins*, 999 F.3d 767, 789 (2d Cir. 2021) (finding error when the trial court concluded that proffered testimony from a defense witness that overheard a third party say "do not accept money from these people" was hearsay, when it was in fact "an order, i.e., an imperative rather than a declarative statement, and it was offered not for its truth, but for the fact that it was said."); *see also United States v. Bellomo,* 176 F.3d 580, 586 (2d. Cir. 1999) ("Statements offered as evidence of commands . . . rather than for the truth of the matter asserted therein, are not hearsay."). Indeed, even if the defense elicited from Mr. Higgenbotham that another co-conspirator instructed him that a Chinese state official wanted Mr. Higgenbotham to undertake certain actions, then that statement is not being offered for the truth about the Chinese state official, but rather for its impact on Mr. Higgenbotham, and as an explanation for why he took certain actions, another non-hearsay purpose. *United States v. Detrich,* 865 F.2d 17, 20 (2d Cir. 1988) ("No statement is inherently hearsay. Whether or not a statement is hearsay depends upon what use the offeror intends the fact-finder to make of it."); United States v. Gotti, 457 F.Supp.2d 395, 397 (S.D.N.Y. 2006) ("[I]t is well established ... that statements offered for their effect on the listener are non-hearsay.")(internal quotations and citations omitted)). Asking the Court to issue a blanket ruling that Mr. Higgenbotham cannot testify to any out-of-court statements ignores the Court's frequent statement that it cannot decide evidentiary questions in the abstract.[3]

---

[3] Although irrelevant, at this stage, the government's argument about the co-conspirator objection actually outlines how absurd its position in its *Geaney* motion is. At the time of the relevant conduct, Mr. Higgenbotham was an employee of the Department of Justice. Thus, under the government's distorted transitive property of co-conspirator and agent statements, the Department of Justice would be one of Mr. Higgenbotham's co-conspirators, along with, for example, Mr. Broidy. The Department of Justice is a party to this prosecution, and its statements and its agents/co-conspirators' statements could be admitted against it. *See*, *e.g.*, *United States v. Connolly*, S16 Cr. 370, 2018 WL 2411760, at *13 (S.D.N.Y. May 15, 2018) (admitting statements made by FDIC against government as a party admission in criminal prosecution); *United States v. GAF Corp.*, 928 F.2d 1253, 1260 (2d Cir. 1991) (affirming admission of bill of particulars against the government as a party admission in criminal prosecution). And that is true even though Mr. Higgenbotham is not a party to the alleged conspiracy in this prosecution. *See United States v. Maldonado-Rivera*, 922 F.2d 934, 962 (2d Cir. 1990) (co-conspirator exception



July 1, 2024
Page 6

*Fifth*, the government seeks to preclude defense experts from commenting on the credibility of government witnesses. The government did not consult with the defense prior to making this argument, but to be clear, the defense does not intend to elicit such testimony.

---

"requires proof that both the declarant and the party against whom a declaration is offered be members of the same conspiracy, [but] it does not require that the conspiracy be one charged in the indictment").



July 1, 2024
Page 7

      *Sixth*, the government now seeks to preclude Tom Bishop from presenting summary evidence concerning redemptions from the Himalaya Exchange as irrelevant. As an initial matter, the government's request is nothing more than a belated request to have the Court reconsider its ruling in which it permitted such testimony. Dkt. 380 at 17. As such it should be rejected on that ground alone. But moreover, the Superseding Indictment specifically alleges that redemptions were allowed only at the discretion of the Himalaya Exchange. *See*, *e.g.*, Superseding Ind. ¶¶ 19(f)(i), (ii). Evidence that the Exchange exercised its discretion to permit tens of millions of dollars in redemptions is inconsistent with the government's theory that the Exchange was intended as a way to secure fraud proceeds – put simply, if the entity was a fraud for Mr. Guo's benefit, then why would it give money back, particularly when it did not have to? Moreover, while the government is correct that the RICO statute applies to both legitimate and illegitimate entities, the government's burden changes based on what type of entity is at issue. More specifically, "where the enterprise primarily conducts a legitimate business, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 243 (2d Cir. 1999). Accordingly, Mr. Bishop should be permitted to offer summary testimony about the redemptions at the Himalaya Exchange.

Respectfully submitted,

_____
Sidhardha Kamaraju
Matthew S. Barkan
PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 421-4100
skamaraju@pryorcashman.com
mbarkan@pryorcashman.com

Sabrina P. Shroff
80 Broad Street, 19th Floor
New York, NY 10004
(646) 763-1490
sabrinashroff@gmail.com



July 1, 2024
Page 8

                    E. Scott Schirick
                    ALSTON & BIRD LLP
                    90 Park Avenue
                    New York, NY 10016
                    (212) 210-9400
                    scott.schirick@alston.com

                    *Attorneys for Miles Guo*

Enclosures
Cc: Counsel of Record

PRYOR CASHMAN LLP