| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>UNITED STATES OF AMERICA,<br><br>-against-<br><br>MILES GUO,<br><br>                            Defendant. | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: _07/01/2024_<br><br>23 Cr. 118 (AT)<br><br>**ORDER** |

ANALISA TORRES, District Judge:

The Government moves to admit certain statements of alleged coconspirators of Defendant, Miles Guo, for their truth pursuant to Federal Rule of Evidence 801(d)(2)(E). Gov Mem., ECF No. 382; *see* Ex. A, ECF No. 382-1 (list of statements); Guo Opp., ECF No. 383; Gov. Reply, ECF No. 384. As the Court explained in its ruling on the Government's first motion *in limine*, the Court may admit coconspirator statements during trial "'on a conditional basis, subject to the later submission of the necessary evidence' to establish that the coconspirator exception is applicable." ECF No. 319 at 4 (quoting *United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993)). Specifically, the Government must demonstrate by a preponderance of the evidence that "a conspiracy existed, that the [D]efendant and [the] declarant[s] were members, and that the statements were made during the course of and in furtherance of the conspiracy" (the "*Geaney* prerequisites"). *Tracy*, 12 F.3d at 1199 (citing *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969)). This order addresses whether the Government has made the requisite showing.[1] Because the Court finds that it has, the coconspirator statements identified in Exhibit A are admitted.

---

[1] Although the Circuit has "never required a district court to make particularized rulings or conduct separable analyses with respect to each coconspirator, much less each coconspirator statement," the Court does so here in an abundance of caution. *United States v. Coplan*, 703 F.3d 46, 83 (2d Cir. 2012).

## BACKGROUND

The Government alleges that, from 2018 to March 2023, Guo operated a scheme to defraud thousands of investors of more than $1 billion, laundering the proceeds through foreign and domestic entities, and misappropriating the funds for his own use. S3 ¶ 1, ECF No. 307. The indictment states that Guo and his coconspirators "took advantage of [his] prolific online presence and hundreds of thousands of online followers to solicit investments in various entities and programs by promising outsized financial returns and other benefits." *Id.* ¶ 2. In fact, it alleges, these entities were "instrumentalities that Guo [] created and used to perpetuate [his] fraud, . . . exploit [his] followers," and "strengthen the G Enterprise"—the collection of "interrelated and overlapping entities" that Guo used to carry out his schemes. *Id.* ¶¶ 2, 3(a).

As relevant here, Count One of the indictment charges Guo with Racketeer Influenced and Corrupt Organizations ("RICO") Act conspiracy in violation of 18 U.S.C. § 1962(c) and (d), predicated on acts indictable under several federal statutes.[2] *Id.* ¶¶ 1–26. Count Two charges Guo with conspiracy to commit wire fraud and bank fraud, in violation of 18 U.S.C. § 1349. *Id.* ¶¶ 27–30. Count Three alleges that Guo conspired to launder the proceeds of the GTV Private Placement, Farm Loan Program, G|CLUBS, and Himalaya Exchange schemes, in violation of 18 U.S.C. § 1956(h). *Id.* ¶¶ 31–35. And, Count Four charges him with conspiracy to commit securities fraud and to provide false statements to a financial institution, in violation of 18 U.S.C. § 371. *Id.* ¶¶ 36–40.

Over the past five weeks of testimony, the Government has put forth substantial evidence of these conspiracies. For example, the Government has offered testimony from multiple victims

---

[2] Namely, 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1344 (financial institution fraud); 18 U.S.C. § 1956 (laundering of monetary instruments); 18 U.S.C. § 1957 (monetary transactions in property derived from specified unlawful activity); and 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. § 240.10b–5 (securities fraud). S3 ¶ 24.

who, at Guo's urging, invested in GTV, bought G|CLUBS memberships, invested in the Farm Loans, and bought Himalaya Exchange tokens. *See, e.g.*, Tr. at 1318:4–1538:8 (testimony of Ya Li); *id.* at 2373:22–2431:8, 2502:1–2506:4 (testimony of Minran Wu); *id.* at 4463:10–4509:23 (testimony of Wei Chen). The Government has traced the use of these victim funds to show that they were used to purchase a Ferrari, a Bugatti, and the Crocker-Darlington Mansion in Mahwah, New Jersey, among other things, and to invest in a high-risk hedge fund. *E.g.*, *id.* at 938:1–954:17 (testimony of Kimberly Espinoza); *id.* at 3436:12–3459:9 (testimony of Jocelyn Reyes); *id.* at 1789:3–1814:9 (testimony of Lonny Souza); *id.* at 3873:19–3934:17 (testimony of Amy Buck). The Government has also demonstrated that members of the conspiracies took steps to hide Guo's involvement in and control over the bank accounts that held the funds. *Id.* at 1989:15–1999:7, 2070:2–25, 2071:3–9 (testimony of Haitham Khaled); *see id.* at 1317:2–10, 1338:13–16, 1409:15–1410:5, 1513:1–19 (testimony of Ya Li regarding Guo's control over the funds).

## LEGAL STANDARD

"Federal Rule of Evidence 801 provides that a statement is not hearsay if it is both offered against a party and is 'made by the party's coconspirator during and in furtherance of the conspiracy.'" *United States v. Coplan*, 703 F.3d 46, 82 (2d Cir. 2012) (quoting Fed. R. Evid. 801(d)(2)(E)). To admit hearsay testimony under the Rule, the Court must find "(a) that there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy." *United States v. Alameh*, 341 F.3d 167, 176 (2d Cir. 2003) (citation omitted). "These are preliminary facts for the district court to determine under a 'preponderance of the evidence' standard." *Id.* (citing *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987)). The

3

trial court "must view the evidence as a whole, rather than consider the individual pieces in isolation," *United States v. Cicale*, 691 F.2d 95, 103 (2d Cir. 1982) (citing *Geaney*, 417 F.2d at 1121), and must consider "the contents of the alleged coconspirator's statement itself." *United States v. Swinton*, No. 23-6118, 2024 WL 1564487, at *2 (2d Cir. Apr. 11, 2024) (cleaned up). "There must, however, also 'be some independent corroborating evidence of the defendant's participation in the conspiracy.'" *Id.* (quoting *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999)).

The first and second requirements—the existence of a conspiracy involving the declarant and the defendant—are met where "the evidence is sufficient to establish, by a preponderance of the evidence, that the alleged coconspirators entered into a joint enterprise with consciousness of its general nature and extent." *United States v. James*, 712 F.3d 79, 106 (2d Cir. 2013) (cleaned up). The Circuit has noted that "once a conspiracy has been proved to exist, the evidence needed to link [a] defendant with it (for purposes of a *Geaney* finding) need not be overwhelming." *Cicale*, 691 F.2d at 103 (cleaned up). Rather, "all that is required to meet the *Geaney* threshold is 'a showing of a likelihood of an illicit association between the declarant and the defendant.'" *Id.* (quoting *United States v. Alvarez-Porras*, 643 F.2d 54, 57 (2d Cir. 1981)). There is no requirement that the person to whom the statement is made also be a member of the conspiracy. *James*, 712 F.3d at 106. Nor is there a requirement that the coconspirator declarant be identified by name. *United States v. Boothe*, 994 F.2d 63, 69 (2d Cir. 1993).

Third, a statement is "in furtherance of" a conspiracy if it is "designed to promote or facilitate achievement of the goals of that conspiracy." *United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994). The furtherance can be overt: for example, if the statement "prompt[s] the listener to respond in a way that facilitates the carrying out of criminal activity." *United States v.*

*Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1199 (2d Cir. 1989) (citation omitted). Or it may be subtler: for example, a statement can further a conspiracy by "providing information or reassurance to a coconspirator, seeking assistance from a coconspirator, or by communicating with a person who is not a member of the conspiracy in a way that is designed to help the coconspirators to achieve the conspiracy's goals." *Rivera*, 22 F.3d at 436. A statement may also be in furtherance if "it informs a conspirator of the identity and activities of coconspirators, or if it informs a coconspirator as to the progress or status of the conspiracy." *United States v. Davis*, 687 F. App'x 75, 78 (2d Cir. 2017) (cleaned up) (citing *United States v. Rastelli*, 870 F.2d 822, 837 (2d Cir. 1989), and *United States v. Desena*, 260 F.3d 150, 158 (2d Cir. 2001)).

## DISCUSSION

As a preliminary matter, the scope of this order is limited to whether the Government has "succeed[ed] in persuading the [C]ourt that the conditionally admitted *coconspirator* statements were made during and in furtherance of a conspiracy of which both the declarant and the defendant were members." *Tracy*, 12 F.3d at 1199 (emphasis added). The *Geaney* protocol is not an opportunity for the parties to relitigate other hearsay objections that were resolved on the record during trial, including whether certain declarants were agents of the Defendant. *See* Fed. R. Evid. 801(d)(2)(D). To the extent that the Government's motion and Guo's objections are addressed to other hearsay exclusions and exceptions, they are not properly raised at this time.[3]

---

[3] Accordingly, the Court does not address statements that it has already admitted under non-Rule 801(d)(2)(E) theories of admissibility; specifically, statements by David Fallon, Dara Lawall, Aaron Mitchell, Scott Barnett, Gladys Chow, Sean Jing, Ilona Musial, Kevin [Last Name Unknown], Max Krasner, and an unnamed Himalaya Exchange employee. *See* Ex. A; Gov. Mem. at 5–7; Gov. Reply at 3–4 n.3. Many of these statements were introduced without objection. *E.g.*, Tr. at 3078:16–17 (email from Krasner regarding Lamborghini); *id.* at 3682:6–23 (statement from Fallon regarding Hummingbot). Others were admitted under the agency exception. *E.g.*, *id.* at 3876:13-17, 3877:3–3880:1 (statement from Lawall and sidebar permitting testimony); *id.* at 3562:1–11, 3890:12–25 (introducing evidence that Barnett was the head of security for Guo and his family and sent invoices on their behalf); *id.* at 2929:2–2930:11, 2936:10–24, 4285:6–22 (introducing evidence over defense objection based on Chow's agency relationship with Guo).

5

The Government moves to admit the statements identified in Exhibit A for their truth pursuant to Rule 801(d)(2)(E).

I. Yvette Wang

The Government identifies six statements by Yvette Wang that it seeks to admit for their truth. Ex. A at 2–3. Guo does "not challenge the [G]overnment's position with respect to [] Wang" in light of her guilty plea to conspiracy to commit wire fraud and money laundering. Guo Opp. at 10; *see* ECF No. 325; Dkt. Entry 05/03/2024. The Court finds by a preponderance of the evidence that these conspiracies existed, that Wang and Guo were members, and that the statements identified by the Government were in furtherance of the conspiracies. Wang's statements are, therefore, admitted.

II. William Je

Next, the Government seeks to admit certain statements by William Je, an indicted coconspirator and the "head or chief investment officer of [Guo's] family office." Gov. Mem. at 3–4; Tr. at 763:1–10. The Government established by at least a preponderance of the evidence that Je was chiefly responsible for laundering the proceeds of the charged fraud schemes, implicating him as a coconspirator. To take just a few examples, Steele Schottenheimer, a Hayman Capital employee, testified that Je facilitated the $100 million investment in Hayman that underlies the money laundering conspiracy charge. *E.g.*, Tr. at 761:2–762:25. Jesse Brown, the nominal chief executive officer of the Himalaya Exchange, explained that Je—his boss—directed him to make a $37 million loan of Exchange funds for "a yacht . . . for Miles Guo's daughter." *Id.* at 3633:17–3635:1, 3642:18–24; 3701:22–3704:9; *see also id.* at 2769:1–5 (testimony of Bo Collins that Je was "in charge of the Himalaya Exchange"). And, Haitham Khaled testified that Guo, Wang, and Je all pressured him to move money from Crane into

6

G|CLUBS. *Id.* at 2238:1–20. The record is replete with evidence of Je's involvement in the charged conspiracies, amounting to more than a mere "commercial and social relationship." Guo Opp. at 10.

The Court further finds that the Je statements identified in Exhibit A—which concern the Himalaya Exchange yacht loan, the G|CLUBS funds held by Crane, and a lawsuit related to the Farm Loan Program—were made in furtherance of the relevant conspiracies. The statements are, therefore, admitted.

### III. Mileson Guo

Third, the Government seeks to admit several statements of Guo's son, Qiang "Mileson" Guo. Mileson's role within the alleged conspiracies was multifaceted. For example, Mileson directed the transfer of fraud proceeds and strategized how to launder the proceeds outside the United States. *See* GX411-T at 14–15 (conversation between Mileson, Guo, Khaled, and Ana Izquierdo regarding disposition of G|CLUBS membership dues); GX413A-T at 4 (Mileson telling Khaled that G|CLUBS funds should go "[a]nywhere out of U.S."). He served as the owner of Lamp Capital, which received and spent money obtained from the Farm Loan Program. Tr. at 1958:7–24, 2544:5–9, 4731:190–4733:17; GXZ26 at 8. And, Schottenheimer testified that Mileson was the purported ultimate beneficial owner of Saraca Media Group, the entity that made the $100 million Hayman Capital investment. Tr. at 808:17–809:16. The Court finds that the Government has met its burden to show by a preponderance of the evidence that Mileson was a member of several of the charged conspiracies. The Court further finds that statements identified by the Government—which address the disposition of funds held by Crane—were in furtherance of the conspiracies. *E.g.*, GX413A-T at 4. Accordingly, the Court finds that

Mileson's statements fall within the coconspirator hearsay exclusion and shall be admitted for their truth.

IV.     Farm Leaders

The Government further seeks to admit statements of several leaders of the Himalaya Farm Alliance: David Dai, Xia Qidong, Sara Wei, and Zhang Yongbing.

There is sufficient evidence to find that each of these individuals were members of the conspiracies related to the Farms. Dai was the leader of the Farm based in the United Kingdom. Tr. at 384:24–25. Xia served as the leader of the Mountain of Spices ("MOS") Farm and as the Alliance secretary. *Id*. at 1373:19–1347:8, 1387:10–18. Wei led the Phoenix Farm. *Id*. at 2500:18–19. And, Zhang was the "legal group leader" of the Mountain of Spices Farm and a member of the Iron Blood Group.[4] *Id*. at 2403:3–15.[5]

Guo selected each of these individuals to lead their respective Farms and in turn, they carried out his instructions in managing the Alliance. Tr. at 406:15–17, 2500:20–23. In their roles, the Farm leaders furthered the alleged G Enterprise conspiracies. Dai, for example, directed Le Zhou to open bank accounts to collect H Coin investments and instructed him "where to send the money." *Id*. at 263:9–266:9. Xia helped to execute Farm Loan and H Coin agreements with investors and directed Ya Li to delete incriminating content after Guo's arrest. *Id*. at 1501:14-24, 2395:1–2397:20, 2421:1–19. Wei facilitated investments in the GTV Private Placement through Voice of Guo. *Id*. at 204:6-205:5. And, Zhang directed Ya Li to sign a false

---

[4] The Iron Blood group consisted of the "core," "highest level" leaders of the Himalaya Alliance. Tr. at 1316:21–1317:10, 2403:24–2404: 1. Group members managed the Alliance, were selected by Guo, and followed his directives. *Id*. at 1316:21–1317:10, 1374:9–1375:23.

[5] Although Guo notes that Zhang is an attorney, Guo Opp. at 10, the Second Circuit has stated that there are no "special procedures to be followed, or balancings to be performed as a prerequisite to the evidentiary use of a defendant's counsel's out-of-court statements." *United States v. Arrington*, 867 F.2d 122, 128 (2d Cir. 1989).

affidavit and sue the trustee as part of Guo's bankruptcy proceedings, and threatened her when she refused to do so. *Id*. at 1522:7–1523:19.

Based on this evidence as well as other documents and testimony introduced at trial, the Court finds that the Government has met its burden on the *Geaney* prerequisites as to the Farm leaders' statements identified in Exhibit A.

V.     Alex Hadjicharalambous

The Government seeks to admit a statement of Alex Hadjicharalambous, who was "in charge of accounting [for G|CLUBS], specifically the reconciliation of member IDs with the money that comes in." Tr. at 2045:10–12. The Government has established by a preponderance of the evidence that Hadjicharalambous was a member of the G|CLUBS conspiracy with Guo. Hadjicharalambous was "an employee in the townhouse." *Id.* at 2038:1–2; *see id.* at 1926:7–15, 1935:9–17 (noting that multiple companies linked to Guo had offices in the townhouse). He helped G|CLUBS open bank accounts at the Bank of Princeton and Morgan Stanley, *id.* 2564:1–13, 2598:2–8, 3371:23–3372:8, and facilitated wire transfers on behalf of G|CLUBS, *id.* at 2071:21–2073:9; *see* GXC502. Specifically, he told Morgan Stanley that a series of wire transfers from G|CLUBS to Fiesta Properties Development, Ltd., was an internal loan for a real estate investment. Tr. at 3374:19–3379:6; *see id.* at 3382:11–3383:19, 3390:2–21. However, the money was actually used to purchase a Ferrari for Mileson. *Id.* at 3458:11–3459:9. Hadjicharalambous worked with Khaled to create responses to bank inquiries "in order not to jeopardize the relationship and account status," *id.* at 1985:8–18, specifically masking Guo's involvement in G|CLUBS, *see id.* at 1999:4–7. And, he participated in phone calls with Guo, Mileson, Khaled, and Wang, in which the participants—including Guo—attempted to figure out how to keep the money that investors had sent to G|CLUBS. *Id.* at 2038:1–2039:3.

9

The Government seeks to offer Hadjicharalambous' statement to Government witness Bo Collins, the chief executive officer of Mercantile Bank. In a conversation with Hadjicharalambous, Collins requested that G|CLUBS invest in Yieldesta, "an investment vehicle that [Mercantile Bank] launched that was based on algorithmic trading." *Id.* at 2764:13–16. Hadjicharalambous told Collins that, for G|CLUBS to invest, "a group that he called the management needed to come to a decision on it." *Id.* at 2765:18–21. Because Mercantile Bank was concerned about Guo's association with G|CLUBS, Hadjicharalambous' opaque statement about "the management" needing to approve the Yieldesta investment furthered the conspiracy's goals by signaling the need to get internal approval for the investment without specifying who actually made decisions on behalf of G|CLUBS. *Id.* at 2761:8–2762:12; *id.* at 2765:12–23; *see Rivera*, 22 F.3d at 436. G|CLUBS ultimately invested $3 million in Yieldesta. Tr. at 2764:19–23. Accordingly, the Government has demonstrated that Hadjicharalambous' statement was in furtherance of the conspiracy.

## CONCLUSION

For the reasons explained above, the Court finds that—with the exception of the statements identified in footnote 3, *supra*—the statements identified in Exhibit A were made by coconspirators of Guo during and in furtherance of the charged conspiracies. They are, therefore, admissible for their truth pursuant to Fed. R. Evid. 801(d)(2)(E).

SO ORDERED.

Dated: July 1, 2024
      New York, New York

_____
ANALISA TORRES
United States District Judge