

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 25, 2024

**VIA EMAIL**

Hon. Analisa Torres
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

> **Re:**   *United States v. Miles Guo*, S3 23 Cr. 118 (AT)

Dear Judge Torres:

The Government writes in response to the Court's June 18, 2024 request for the parties' comments on the Court's proposed jury charge. The Government has set forth below its proposed changes to the charge, outlining for each proposed change first, the relevant section and language of the charge as currently drafted; second, the Government's proposed change (in red); and third, citations to the law or the record in support of that change. The Government has also, as directed by the Court, respectfully set forth with of the proposed instructions designated to be given "If Applicable" in the draft charge should actually be included in the Court's final instructions.

### Proposed Revision 1

A. <u>Relevant Section</u>:  14. Summary of the Indictment

B. <u>Relevant Draft Language</u>: "The Defendant, Miles Guo, has been charged in an indictment." (pg. 15)

C. <u>Proposed Revision</u>: "The Defendant—Miles Guo, <span style="color:red">also known as Ho Wan Kwok, Guo Wengui, Brother Seven, The Principal, and Boss</span>—has been charged in an indictment."

D. <u>Authority/Comment</u>: Consistent with the parties' joint proposed request to charge, the Government proposes to include references to the defendant's aliases, as set forth in the operative indictment. These additional aliases have been used interchangeably with the defendant's name throughout the trial. *See e.g.*,  Tr. 421, 582, 4007 (referring to the defendant as Ho Wan Kwok); Tr. 220, 231, 420 (referring to the defendant as Guo Wengui); Tr. 182, 223, 1010, 1022 (referring to the defendant as Seventh Brother or Brother Seven); Tr. 426, 1918, 1921, 2013 (referring to the defendant as the Principal); Tr. 421, 430, 1918, 2978 (referring to the defendant as Boss).

**Proposed Revision 2**

A. <u>Relevant Section</u>:  14. Summary of the Indictment

B. <u>Relevant Draft Language</u>: "Counts Nine and Ten charge the Defendant with wire fraud and securities fraud in connection with the lifestyle membership company known as G|CLUBS."  (pg. 16)

C. <u>Proposed Revision</u>: "Counts Nine and Ten charge the Defendant with wire fraud and securities fraud in connection with the <span style="color:red">purported online membership club</span> known as G|CLUBS"

D. <u>Comment</u>: Because this section summarizes the indictment's allegations, the Government proposes tracking the language used in the indictment to describe G|CLUBS.

**Proposed Revision 3**

A. <u>Relevant Section</u>: 16. Elements of Counts Five, Seven, Nine, and Eleven: Wire Fraud

B. <u>Relevant Draft Language</u>: "And, Count Eleven alleges that the Defendant operated the Himalaya Exchange to fraudulently obtain money from individuals through false statements and misrepresentations, including, among other things, about how the funds raised would be used." (pg. 18)

C. <u>Proposed Revision</u>: "And, Count Eleven alleges that the Defendant operated the Himalaya Exchange to fraudulently obtain money from individuals through false statements and misrepresentations, including, among other things, about how <span style="color:red">money sent to the Himalaya Exchange, or spent on its credits,</span> would be used."

D. <u>Comment</u>: The proposed amendment clarifies that the alleged misrepresentations were about the use specifically of monies sent either directly to the Exchange or, as one victim testified, through an intermediary at the Farms to purchase the Exchange's purported cryptocurrency (*see* Tr. 1207).

**Proposed Revision 4**

A. <u>Relevant Section</u>: 16. Elements of Counts Five, Seven, Nine, and Eleven: Wire Fraud

B. <u>Relevant Draft Language</u>: "Count Nine alleges that the Defendant promoted and marketed G|CLUBS to fraudulently obtain money from individuals by making false statements and misrepresentations, including, among other things, about how their membership dues would be used" (pg. 18)

C. <u>Proposed Revision</u>: "And, Count Eleven alleges that the Defendant operated the Himalaya Exchange to fraudulently obtain money from individuals through false statements and misrepresentations, including, among other things, about how <span style="color:red">the money individuals sent to G|CLUBS</span> would be used."

D. <u>Comment</u>: The proposed amendment replaces "membership dues" with a neutral description of funds sent to G|CLUBS; the Government disputes that the funds were, in fact, "membership dues" and has introduced evidence to the contrary. *See* Tr. 1178-79 (victim witness's testimony that when she invested in G|CLUBS she was expecting to get "[a]lso GTV stock" in addition to benefits she never received).

**Proposed Revision 5**

A. <u>Relevant Section</u>: 16. Elements of Counts Five, Seven, Nine, and Eleven: Wire Fraud

B. <u>Relevant Draft Language</u>: "*Second*, that the Defendant knowingly, willfully, and with the intent to defraud, devised or participated in the scheme or artifice." (pg. 18)

C. <u>Proposed Revision</u>: "*Second*, that the defendant knowingly, ~~willfully,~~ and with the intent to defraud, devised or participated in the scheme or artifice."

D. <u>Comment</u>: Courts in the Second Circuit have expressly rejected the Sand instruction on willfulness in a wire fraud charge as a mistaken statement of law. In *United States v. Middendorf*, No. 18 Cr. 37 (JPO), 2019 WL 4254025, at *7 (S.D.N.Y. Sept. 9, 2019), Judge Oetken noted the "dearth of authority supporting the correctness of that instruction in the wire fraud context, particularly in light of the fact that 'willfulness' is not included in the wire fraud statute itself." *Id.* "The problem with the Sand instruction," Judge Oetken explained, "is that it arguably can be read as requiring that a defendant must *know the law and intend to violate it* in order to be found guilty of wire fraud." *Id.* But "[b]ecause mistake of law is not a defense to wire fraud," *id.* (citing, among other authorities, *United States v. Porcelli*, 865 F.2d 1352, 1358 (2d Cir. 1989) ("The specific intent required under the mail fraud statute is the intent to defraud, and not the intent to violate a statute.")), including willfulness in a wire-fraud charge "is an incorrect statement of the law." *Id.* More recently, Judge Azrack in the Eastern District of New York cited *Middendorf* in declining to include a willfulness instruction

in a wire-fraud charge. *See United States v. Novis*, No. 20 Cr. 335 (JMA), 2023 WL 4746541, at \*22 (E.D.N.Y. Jul. 24, 2023).

**Proposed Revision 6**

A. <u>Relevant Section</u>: 16. Elements of Counts Five, Seven, Nine, and Eleven: Wire Fraud

B. <u>Relevant Draft Language</u>: "The second element that the Government must prove beyond a reasonable doubt for the wire fraud counts is that the Defendant devised or participated in the scheme to defraud knowingly, willfully, and with the specific intent to defraud. I will now define these terms. . . . To act 'willfully' means to act voluntarily and purposely, with an intent to do something that the law forbids; that is to say, with bad purpose either to disobey or disregard the law. An act is done knowingly and willfully if it is done purposefully and deliberately with an intent to do something the law forbids." (pp. 20-21)

C. <u>Proposed Revision</u>: The second element that the Government must prove beyond a reasonable doubt for the wire fraud counts is that the Defendant devised or participated in the scheme to defraud knowingly, ~~willfully,~~ and with the specific intent to defraud. I will now define these terms. . . . ~~To act 'willfully' means to act voluntarily and purposely, with an intent to do something that the law forbids; that is to say, with bad purpose either to disobey or disregard the law.~~ An act is done knowingly ~~and willfully~~ if it is done purposefully and deliberately ~~with an intent to do something the law forbids~~."

D. <u>Comment</u>: As noted in Proposed Revision 5 above, willfulness is not an element of wire fraud. This proposed revision conforms the later section of the wire fraud instruction with the initial discussion of its elements.

**Proposed Revision 7**

A. <u>Relevant Section</u>: 16. Elements of Counts Five, Seven, Nine, and Eleven: Wire Fraud

B. <u>Relevant Draft Language</u>: "The first element of wire fraud that the Government must prove beyond a reasonable doubt is that there was a scheme or artifice to defraud, or to obtain money or property, by means of materially false or fraudulent pretenses, representations, or promises. A 'scheme or artifice' is just a plan to accomplish an objective. So, a 'scheme or artifice to defraud' is any plan to deprive another of money or property by means of false or fraudulent pretenses, representations or promises."

C. <u>Proposed Revision</u>: At the end of this paragraph, insert: "It is not necessary that a false or fraudulent pretense, representation, or promise be made prior to a victim's decision to part with money or property. Rather, if after having obtained money or property, the defendant devises or participates in a fraudulent scheme to keep that money or property by making a subsequent false or fraudulent representation as to a material fact, that is sufficient to establish the existence of a scheme to defraud."

D. <u>Comment</u>: This proposed addition tracks the authorities cited in this subsection of the draft charge, including *United States v. Schneider*, No. 02 Cr. 128 (DRH), 2002 WL 34348617 (E.D.N.Y. Oct. 23, 2002), and *United States v. Gole*, 158 F.3d 166, 168 (2d Cir. 1998). In *Schneider*, a case involving a mortgage-lending fraud, the Court instructed the jury that "[i]t is not necessary for the false or fraudulent representation or statement to have been made prior to a lender's decision to part with his money or property," and that "if a defendant . . . *later* devises, or participates, in a fraudulent scheme to deprive the alleged victim of his property *by keeping the money or property*, and in an effort to accomplish that goal he makes or causes to be made a subsequent false or fraudulent representation as to a material fact . . . that is sufficient to establish a scheme to defraud." 2022 WL 34348617 (emphases added). In *Gole*, the Second Circuit affirmed a mail-fraud conviction, noting that the defendant "misrepresented his income to keep money he would otherwise have been obligated to return." 158 F.3d at 167.

## **Proposed Revision 8**

A. <u>Relevant Section</u>: 16. Elements of Counts Five, Seven, Nine, and Eleven: Wire Fraud

B. <u>Relevant Draft Language</u>: "Now, science has not yet devised a manner of looking into a person's mind and knowing what that person is thinking. However, you have before you evidence of certain acts, conversations, and statements alleged to have been made by, with, or in the presence of the Defendant and others. The ultimate facts of knowledge and criminal intent may be established by words, conduct, and all the surrounding circumstances, as well as the rational or logical inferences that may be drawn from the words and conduct. The Defendant need not have participated in or had knowledge of **all** of the operations of the scheme in order to have acted with knowledge and intent. It is for you to determine whether the Government has established beyond a reasonable doubt such knowledge and intent on the part of the Defendant." (pg. 21)

C. <u>Proposed Revision</u>: After the paragraph above, insert this paragraph:

The Government does not need to prove that any intended victim was actually harmed, only that the defendant intended to harm the victim by obtaining money or property. Actual financial harm includes depriving someone of the real and immediate control over the use of assets. Thus, even if the defendant believed the money obtained by fraudulent means would one day be repaid and therefore believed that ultimately no harm would come to the owner of the funds, his intention eventually to repay is no defense. Additionally, it is not necessary for the Government to prove that the Defendant was motivated solely by improper considerations. The Government will have satisfied its burden of proof on this element if you find that the Defendant had an intent to wrongfully obtain funds of another, even if the Defendant also had other proper or neutral reasons for his actions. A defendant may have the required intent to defraud even if the defendant was motivated by other lawful purposes as well.

D. <u>Comment</u>: The proposed additional paragraph is anchored in authorities cited in the Court's draft charge. *See* pg. 22 (citing *United States v. Jabar*, 19 F.4th 66, 77 (2d Cir. 2021) ("Proof of actual injury to the victim is not required . . . ."); *United States v. Calderon*, 944 F.3d 72, 90 (2d Cir. 2019) ("A 'no ultimate harm' instruction advises the jury that where some immediate loss to the victim is contemplated by a defendant, the fact that the defendant believes (rightly or wrongly) that he will ultimately be able to work things out so that the victim suffers no loss is no excuse for the real and immediate loss contemplated to result from defendant's fraudulent conduct."); *United States v. Technodyne LLC*, 753 F.3d 368, 385 (2d Cir. 2013) ("It is commonplace that the law recognizes that there may be multiple motives for human behavior; thus, a specific intent need not be the actor's sole, or even primary, purpose.")). These instructions have particular salience here as the defense may argue that the defendant had "other proper or neutral reasons" for soliciting money from victims. Indeed, the defense has advanced such arguments through cross-examination (*see, e.g.*, Tr. 722 (asking victim witness, "Because ultimately, the goal of you sending the money to GTV was to support GTV's mission to break through the great firewall of China; correct?")) and may elicit testimony in the defense case that "the GTV investment is a long-term investment, it is still in process and therefore has not accrued benefits yet." *See* Exhibit A (Jianhu Yi, 26.2_001).

## **Proposed Revision 9**

A. <u>Relevant Section</u>: 16. Elements of Counts Five, Seven, Nine, and Eleven: Wire Fraud

B. <u>Relevant Draft Language</u>: "A 'wire' can be, for example, a phone call, email communication, text message, social media or website post, or a bank wire transfer. The wire must be an interstate wire—that is, it must pass between two or more states or a state and a foreign country. The use of the wire need not itself be a fraudulent representation. It must, however, further or assist in some way in carrying out the scheme." (pg. 23)

C. <u>Proposed Revision</u>: At the end of the second paragraph under "Third Element: Interstate Wires," insert the following:

A wire communication can also include a communication made after a victim's [an individual's] funds were obtained, if the communication was designed to lull that person into a false sense of security, to postpone his or her complaint to the authorities, or to keep the money obtained from the scheme.

D. <u>Comment</u>: This language—which was agreed upon in the parties' joint proposed request to charge, and adapted from the charge given in *United States v. Bankman-Fried*, No. 22 Cr. 673 (Trial Tr. 3161-62) (Nov. 2, 2023)—clarifies an important temporal feature of the interstate-wires element of substantive wire fraud. This clarification has particular relevance to the facts in evidence about, among other things, communications intended falsely to emphasize the ongoing safety of victims'

investments, to deter victims from complaining to authorities (including by publicly retaliating against those who did), and to retain money wrongfully obtained.

**Proposed Revision 10**

A. <u>Relevant Section</u>: 17. Elements of Counts Six, Eight, and Ten: Securities Fraud

B. <u>Relevant Draft Language</u>: "Finally, a scheme to defraud is 'in connection with' a security if you find that the conduct '**touched upon**' a purchase or sale of securities. It is not necessary for you to find that the Defendant actually purchased or sold securities. It is sufficient if the Defendant participated in a scheme that involved the purchase or sale of securities by another person or entity." (pg. 27)

C. <u>Proposed Revision</u>: At the end of the first paragraph in subsection 17(a)(iii) ("In Connection With"), insert the following:

It is not necessary that any actual securities be sold or delivered, so long as purported securities were offered as an inducement to transact. And promises that someone will receive stock in the future constitute a sufficient connection with a purchase or sale of securities.

D. <u>Comment</u>: This language is anchored in two of the authorities cited in this section of the Court's draft charge. In *SEC v. Lauer*, 52 F.3d 667, 670 (7th Cir. 1995) (Posner, J.), the court noted that in an enforcement action involving purported securities that "do not exist" "it is the representations made by the promoters, not their actual conduct, that determine whether an interest is an investment contract (or other security)." In *Pail v. Precise Imports Corp.*, No. 99 Civ. 1624 (DLC), 1999 WL 681384, at *3-4 (S.D.N.Y. Aug. 31, 1999), Judge Cote sustained a securities fraud claim anchored in allegations that the defendants induced the plaintiff to invent products for them by falsely promising to issue him stock. "The fact that no shares were ever issued to Pail does not defeat the claim," Judge Cote held, "because '[n]either the [Securities Exchange] Act nor Rule 10b–5 expresses any requirement that the stock actually have been issued.'" *Id.* at *4 n.2 (quoting *Sulkow v. Crosstown Apparel Inc.,* 807 F.2d 33, 36 (2d Cir.1986)).

**Proposed Revision 11**

A. <u>Relevant Section</u>: 17. Elements of Counts Six, Eight, and Ten: Securities Fraud

B. <u>Relevant Draft Language</u>: "Because an essential element of the crime charged is intent to deceive or intent to manipulate, good faith on the part of the Defendant **is a complete defense** to the charge of securities fraud. A defendant has no burden to establish a defense of good faith. It is the Government's burden to prove a lack of good faith by establishing, beyond a reasonable doubt, that the Defendant acted knowingly, willfully, and with intent to deceive or manipulate." (pg. 28)

C. <u>Proposed Revision</u>: At the end of the final paragraph of subsection 17(b) ("Second Element: Knowledge, Intent, and Willfulness"), insert the following:

<span style="color:red">In considering whether a defendant acted in good faith, however, you are instructed that a belief by the defendant, if such belief existed, that ultimately everything would work out so that no investors would lose any money does *not* necessarily constitute good faith.  No amount of honest belief on the part of a defendant that the scheme will ultimately make a profit for the investors will excuse fraudulent actions or false representations by him.</span>

D. <u>Comment</u>: This proposed amendment is similar to the one offered above in the wire fraud instruction, to clarify that a good-faith defense *excludes* defenses of intent to repay or belief in ultimate success.  It is drawn from the instruction given in *United States v. Bankman-Fried*, No. 22 Cr. 673 (Trial Tr. 3159) (Nov. 2, 2023).

**Proposed Revision 12**

A. <u>Relevant Section</u>: 25. Elements of Count One: Racketeering Conspiracy

B. <u>Relevant Draft Language</u>: "Finally, I will turn to the most complicated charge in the indictment. Count One charges the Defendant with conspiring to violate the federal racketeering statute, which is Section 1962(c) of Title 18 of the United States Code." (pg. 54)

C. <u>Proposed Revision</u>: "Finally, I will turn to <span style="color:red">Count One, which</span> charges the Defendant with conspiring to violate the federal racketeering statute, which is Section 1962(c) of Title 18 of the United States Code. <span style="color:red">The instructions for this charge have several steps, and I will walk through them one by one.</span>"

D. <u>Comment</u>: This proposed alternative language alerts the jury to the fact that Count One involves multi-faceted instructions without suggesting that any one charge is more difficult to reason through than the others.  The Government notes that the instruction as drafted appears to be modeled on that in *United States v. Mack & Ellison*, No. 18 Cr. 834 (S.D.N.Y. Oct. 1, 2019).  The Second Circuit considered the court's decision to give that instruction on appeal.  While the Second Circuit held that the giving of this instruction fell short of reversible error, the Court's opinion did not endorse the use of this language and found only that, after examining its full context, "we cannot say that the District Court's comment was *so* prejudicial or [constituted plain error]."  *United States v. Mack*, No. 20-788, No. 20-3881, 2022 WL 4391802, at *2 (2d Cir. Sept. 23, 2022) (summary order) (emphasis added).

**Proposed Revision 13**

A. <u>Relevant Section</u>: 25. Elements of Count One: Racketeering Conspiracy

B. <u>Relevant Draft Language</u>: "If you find that there was an agreement to conduct or participate in the conduct of a group of people characterized by (1) a common purpose,

(2) an ongoing formal or informal organization, and (3) personnel who function as a continuing unit, then you may find that a conspiracy to violate the RICO statute existed." (pg. 57)

C. <u>Proposed Revision</u>: "If you find that there was an agreement to conduct or participate in the conduct of a group of people characterized by (1) a common purpose, (2) an ongoing formal or informal organization, and (3) personnel who function as a continuing unit, <span style="color:red">during a substantial period within the time frame charged in the indictment,</span> then you may find that a conspiracy to violate the RICO statute existed."

D. <u>Comment</u>: The proposed additional language was agreed upon by the parties in the joint proposed request to charge, and it clarifies that the "continuing unit" finding can be made with respect to a "substantial period within" the charged period and need not extend to the entire length of that period.  See, for example, the jury instruction given by Judge Nathan in *United States v. Berry*, No. 20 Cr. 84 (S.D.N.Y. 2021) (Tr. 648) (referring to "core personnel who functioned as a continuing unit during a substantial period within the time frame charged in the indictment").

## **Proposed Revision 14**

A. <u>Relevant Section</u>: 25. Elements of Count One: Racketeering Conspiracy

B. <u>Relevant Draft Language</u>: "You must be unanimous as to which particular type of racketeering crimes, if any, the Defendant agreed would be committed."  (pg. 61)

C. <u>Proposed Revision</u>: "You must be unanimous as to which particular type of racketeering crimes, if any, the Defendant agreed would be committed, <span style="color:red">for example, wire fraud, securities fraud, bank fraud, money laundering, or any combination thereof</span>."

D. <u>Comment</u>: The amendment would make uniform the RICO conspiracy instruction's several references to this unanimity requirement, and clarify that the jury must agree on the *type* of predicate (*e.g.*, wire fraud), rather than its particular manifestation (*e.g.*, the GTV Private Placement scheme versus the Farm Loans scheme).  See, for example, the jury charge given by Judge Ramos in *United States v. Jones*, 21 Cr. 505 (S.D.N.Y. Oct. 12, 2023) (Tr. 910).

## **Proposed Revision 15**

A. <u>Relevant Section</u>: 25. Elements of Count One: Racketeering Conspiracy

B. <u>Relevant Draft Language</u>: "A substantial period of time is at least two years."  (pg. 62)

C. <u>Proposed Revision</u>: <span style="color:red">"While there is no rigid definition of such a 'substantial period,' it must be longer than a few weeks or months."</span>

D. <u>Comment</u>: The Second Circuit has clarified that there is no categorical rule that substantiality requires at least two years of activity. *See, e.g.*, *United States v. Veliz*, 623 F. App'x 538, 543 (2d Cir. 2015) (summary order) ("That we have not held a period of less than two years to be sufficient does not mean that such a period is insufficient as a matter of a law."). The proposed language above is anchored in Judge Leisure's discussion—based on Supreme Court precedent—of the substantiality requirement in a criminal RICO case: "What constitutes a 'substantial period of time' is a concept that by nature is incapable of a rigid definition, but predicate acts which extend only over a few weeks or months, and do not threaten future criminal conduct, do not satisfy the continuity requirement of RICO." *United States v. Muyet*, 994 F. Supp. 501, 509 (S.D.N.Y. 1998) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242 (1989)).

## **Proposed Revision 16**

A. <u>Relevant Section</u>: 25. Elements of Count One: Racketeering Conspiracy

B. <u>Relevant Draft Language</u>: "The Government is not required to prove that the Defendant agreed to commit two racketeering acts himself, or that he actually committed two such acts. **Instead, the Government must prove that Defendant agreed to participate in the enterprise with the intent that he or another member or members of the conspiracy would commit two or more racketeering acts, which I will describe.**" (pg. 60)

C. <u>Proposed Revision</u>: "The Government is not required to prove that the Defendant agreed to commit two racketeering acts himself, or that he actually committed two such acts. **Instead, the Government must prove that Defendant agreed to participate in the enterprise with the intent that he or another member or members of the conspiracy <span style="color:red">(or their agents)</span> would commit two or more racketeering acts, which I will describe.**" (pg. 60)

D. <u>Comment</u>: This proposed addition clarifies the basic principle that the defendant (or his co-conspirators) are responsible for the acts of their agents committed within the scope of their agency. It is consistent with Instruction 19(a)'s charge that "defendant commits an offense if he possessed the requisite criminal intent and *willfully caused someone else to engage in the actions necessary to commit the crimes*," and Instruction 21's charge that "when people enter into a conspiracy, each and every member becomes an agent for the other conspirators in carrying out the conspiracy."

## **Proposed Revision 17**

A. <u>Relevant Section</u>: [*Proposes an additional instruction.*]

B. <u>Relevant Draft Language</u>: N/A

C.  <u>Proposed Revision</u>: The Government requests that the Court add an instruction with the following language:  "The defendant has not raised a defense of duress, necessity, or justification.  These defenses require a defendant to *concede* that he committed the criminal acts charged in the indictment, while arguing that he was *justified* in doing so because he was under an imminent threat of harm and had no reasonable alternative to avoid that harm without committing the crimes in question.  These defenses are inapplicable in this case, and the defendant has not made them."

D.  <u>Comment</u>: The Government respectfully submits that this instruction is necessary in light of the defendant's arguments that his conduct can be explained by the actions of the Chinese Communist Party ("CCP").

Before trial, the Court granted the Government's motion *in limine* to preclude evidence of and argument regarding defenses of justification, necessity, or duress—including because the defendant, at that time, stated that he "has not argued in any pleading or paper that this [targeting] evidence supports a defense of duress or justification."  Dkt. 319 at 15 (quoting Guo Mem. at 63).

At trial, the defendant has offered evidence and made arguments—including through cross-examination—that suggest these defenses.  Indeed, defense counsel has read DX STIP-1—a stipulation about "Operation Fox Hunt" and CCP targeting activities—during the testimony of three victim-witnesses (*see* Tr. 402, 730, 2497) and during testimony about the defendant's personal bankruptcy proceedings (*see* Tr. 4164).  During cross-examination of local counsel to the bankruptcy trustee, defense counsel undertook a line of questioning that could be interpreted by the jury to suggest that the defendant's bankruptcy declaration—part and parcel of a "years-long efforts to obscure the funds used and controlled by GUO, which was a means and method of the G Enterprise," S3 Indictment ¶ 20—was justified or made necessary by CCP targeting.  *See* Tr. 4093 ("Of the several [personal bankruptcies] that you've been involved in over the years, have any of those people been the subject of plots by the Chinese Communist Party to return them to China?"); *id.* ("Have any [debtors in the witness's prior bankruptcy engagements] been the subject of a plot to kidnap that person and return them to China?. . . Have any of them been the subject of a plot to discredit them online? Let me rephrase that. Discredit them online specifically by the Chinese Communist Party? . . . Are you aware that Mr. Guo, all of those things happen to him?").

Consistent with its pretrial ruling, and to ensure the jury understands that no defenses of duress, justification, or necessity exist or are permissible in this case, the Government respectfully requests an instruction to this effect.  *See, e.g.*, *United States v. Smith-Pitterson*, No. 19 Cr. 468 (JSR) (S.D.N.Y. Oct. 28, 2019) ("The defendant has testified that some of his actions in this case were made in response to threats [*then describes those threats*]. The Government disputes the veracity of this testimony; but even if you find it truthful, it does not itself constitute a defense to any of the charges in this case. This is because, under the law, the defenses of 'duress' is only available in more extreme and immediate circumstances than were present here, and the defendant does not claim otherwise.").

**"If Applicable" Provisions**

The Government submits that the following instructions, designated in the draft charge as to be given "If Applicable," should, in fact, be included in the Court's final charge:

- Instructions 19(a) (Willful Causation) and 19(b) (Aiding and Abetting).
- Instruction 21 (Liability for Acts and Declarations of Co-Conspirators).
- Instruction IV (Conscious Avoidance).
- Instruction 31 (Non-Prosecution Agreement).
- Instruction 42 (Redaction of Evidentiary Items).

Instructions 26 and 27 (concerning the defendant's testimony or lack thereof) may be applicable, depending on the nature of the defense case.


Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: /s/ _____
Ryan B. Finkel / Juliana N. Murray
Micah F. Fergenson / Justin Horton
Assistant United States Attorneys
(212) 637-6612 / 2314 / 2190 / 2276


cc:     Counsel of record (by email)