

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

July 7, 2024

**VIA EMAIL**
Hon. Analisa Torres
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:   *United States v. Miles Guo*, S3 23 Cr. 118 (AT)

Dear Judge Torres:

The Government writes to propose four additions to the Court's draft jury charge in advance of the July 8 charge conference.

*First*, the Government requests an instruction adapted from the Court's May 2 order precluding Guo from arguing that the prosecution of this case is "improperly linked to the CCP or in any way malicious." Dkt. 319 at 13. The Court's order noted that while co-defendant Yanping Wang disclaimed any intention to argue "that the prosecutors are agents of the CCP," it was "less clear whether Guo makes the same concession." *Id.* Defense counsel has now, of course, made clear that it does not intend to argue that this prosecution is in any way tainted by the CCP. *See* Tr. 5117-5118. However, there is evidence in the record which might cause confusion on this issue for the jury. Specifically, Guo's defense case opened with a witness who testified, in response to leading questions, that he had been compelled by agents of the CCP to file fraud claims against Guo with certain United States authorities. *See* Tr. 5053-58. The defense's second witness—an expert—was asked "about the tactic of bringing false criminal accusations," Tr. 5116, before the Court directed counsel at sidebar "to clarify your question and then just insert 'Chinese law.'" Tr. 5117. Additionally, the defense's last witness will be George Higginbotham, who will testify about an illegal lobbying conspiracy to repatriate Guo at the behest of the Chinese government, which Higginbotham joined and participated in while Higginbotham was an employee of the U.S. Department of Justice. In light of these trial developments—and in view of the Court's May 2 order precluding argument that this prosecution has any connection to, or was influenced by, the CCP or any other foreign government or agency—the Government respectfully requests the addition of the red text below to draft Instruction 11 ("Government as a Party"):

> You are to perform the duty of finding the facts without bias or prejudice as to any party. You are to perform your final duty in an attitude of complete fairness and impartiality.
>
> The case is important to the Government, for the enforcement of United States criminal laws is a matter of prime concern to the community. Equally, it is important to the Defendant, who is charged with serious crimes.

This prosecution was lawfully brought by the United States of America, and the decision to bring this case was in no way influenced by the Chinese government or the Chinese Communist Party. The fact that the prosecution is brought in the name of the United States of America entitles the Government to no greater consideration than that accorded to any other party to a litigation. By the same token, it is entitled to no less consideration. The parties, whether the Government or an individual, stand as equals at the bar of justice.

*Second*, the Government requests language that would clarify that the Government must prove each and every *element* of the charged offenses—but need not prove each and every *allegation* in the Indictment. *See, e.g.*, *United States v. Bastian*, 770 F.3d 212, 221 (2d Cir. 2014) ("[W]e have never suggested that a 'to wit' clause binds the government to prove the exact facts specified in a criminal indictment."); *see also, e.g.*, 1 Sand, Modern Fed. Jury Instructions— Criminal § 19.01 ("A defendant is not entitled to a jury charge respecting every allegation in the indictment. 'Allegations not essential to prove the crime are mere surplusage and need not be proved or embodied in instructions to the jury.'" (quoting *United States v. Brown*, 604 F.2d 557, 560 (8th Cir. 1979))). To that end, the Government respectfully requests the additions in red text to Instruction 5 and Instruction 14:

**Draft Instruction 5 (Burden of Proof and Presumption of Innocence), pp. 7-8:**

The Defendant has pleaded not guilty to the charges in the indictment. The indictment itself is not evidence. It merely contains the charges that the Government must prove beyond a reasonable doubt. The Government is not required to prove each and every allegation in the Indictment. The Government is required to prove only the elements of the charges contained in the Indictment, which I will explain to you shortly.

**Draft Instruction 14 (Summary of the Indictment), pp. 15-16:**

The Defendant, Miles Guo, has been charged in an indictment. The indictment is a document containing the charges, or "counts" against the Defendant. It is not evidence or proof of the Defendant's guilt. You are directed to not consider or discuss how the indictment was obtained. Before you begin your deliberations, you will be provided with a copy of the indictment. Therefore, I will not read the entire indictment to you at this time. Instead, I will summarize in general terms the offenses charged. Then, I will explain in detail the "elements" of those offenses. The Government is not required to prove each and every allegation in the Indictment. The Government is required to prove only the elements of the charges contained in the Indictment. An element is an essential component of an offense. You must find that the Government has established all elements of an offense beyond a reasonable doubt to find the Defendant guilty of that offense.

*Third*, the Government requests an instruction—adapted from the charge delivered by Judge Kaplan in *United States v. Bankman-Fried*—that makes clear to the jury that Guo is not advancing any defense based on the advice or presence of counsel. Before trial, Guo disclaimed an advice-of-counsel defense but told the Court he "reserve[d] the right to present evidence or testimony regarding his awareness that legal counsel is involved in certain transactions." Dkt. 333 at 1. At the final pretrial conference, the Court ruled "that this evidence may be irrelevant and risks confusing the jury": "Having chosen to not assert such a defense, Mr. Guo cannot now use

the presence of attorneys as both a shield and a sword." Final Pretrial Conf. Tr. 5-6. And the Court stated that it would "give a limiting instruction if Mr. Guo refers to the presence or involvement of lawyers." *Id.* at 6. The defense elicited such testimony several times during trial. For example, defense counsel elicited from a Bank of Princeton witness that certain GCLUBS-related accounts were set up by, among other people, a lawyer—and asked the witness whether that lawyer "gave his true profession when he disclosed that he was a lawyer," and whether the bank verified whether that lawyer was in good standing with the relevant state bar. Tr. 2606. During Ya Li's testimony, defense counsel repeatedly zeroed in on the fact that several recipients of a certain email were lawyers. *Compare* Tr. 1716-18 (eliciting that one recipient was "Yvette Wang's lawyer," asking whether a second recipient was "also a lawyer," and asking whether a third recipient was "also a lawyer, right?," before asking the witness to read aloud the names of multiple law firms from other recipients' email domains) *with* Final Pretrial Conf. Tr. 6 (ruling that defense counsel "will also not 'be permitted to zero in on the presence or involvement of lawyers for the sake of highlighting their presence or involvement'" (quoting *SEC v. Tourre*, 950 F. Supp. 2d 666, 685 (S.D.N.Y. 2013)).

Accordingly, the Government respectfully requests the addition of the red text below to Draft Instructions 16(b) and 17(b):

**Draft Instruction 16(b) (Wire Fraud—Second Element: Knowledge and Intent to Defraud), p. 22:**

Because an essential element of the crime charged is intent to defraud, it follows that good faith on the part of a defendant is a complete defense to a charge of substantive wire fraud. A defendant acts in good faith when he honestly believed at the time that the representations he was making were true, even if they turned out to be inaccurate or false. The burden is on the Government to prove fraudulent intent and the consequent lack of good faith beyond a reasonable doubt. All of that said, you have heard evidence that Miles Guo and certain of the entities in this case had lawyers. A lawyer's involvement with an individual, entity, or transaction does not itself constitute a defense to any charge in this case. The defense has not claimed—and it cannot claim—that the defendant's allegedly unlawful conduct as charged in the wire-fraud counts was lawful because he engaged in such conduct in good-faith reliance on the advice of lawyers.

**Draft Instruction 17(b) (Securities Fraud—Second Element: Knowledge, Intent, and Willfulness), p. 28:**

Because an essential element of the crime charged is intent to deceive or intent to manipulate, good faith on the part of the Defendant is a complete defense to the charge of securities fraud. A defendant has no burden to establish a defense of good faith. It is the Government's burden to prove a lack of good faith by establishing, beyond a reasonable doubt, that the Defendant acted knowingly, willfully, and with intent to deceive or manipulate. As I told you earlier in connection with the wire fraud counts, lawyers' involvement with individuals, entities, or transactions does not itself constitute a defense. The defense has not claimed—and it cannot claim—that the defendant's allegedly unlawful

<span style="color:red">conduct as charged in the securities-fraud counts was lawful because he engaged in such conduct in good-faith reliance on the advice of lawyers.</span>[1]

*Fourth*, the Government requests an instruction clarifying that neither the offering or sending of refunds (or "redemptions"), nor the fact of the continuing operation of certain G Enterprise entities, is a defense to the fraud charges in the Indictment.

When the Court permitted a defense summary witness to testify this coming week about Himalaya Exchange funds transfers that the defense argues are actual redemptions of HDO Credits, the Court reiterated in its bench ruling that "the fact that the Himalaya Exchange permitted its customers to redeem H Dollar for currency is not a defense to fraud." Tr. 4766.

The Court also permitted limited testimony by a defense witness about his *current* ability to access a website and application associated with the Himalaya Exchange, while questioning its relevance. Tr. 5272-74 ("I don't understand why any of this is relevant, what is happening today. . . . So to the extent that the current video reflects 2022, then it is relevant. But I don't understand why the other stuff that happened last night is relevant. But let's show the videos and get it over with.").

The Government's June 25 letter in response to the Court's draft jury charge requested the addition of an actual-harm instruction—reprinted below in red text—that is commonly given in fraud cases in this District. *See* Govt's June 25 Ltr. at 5-6 (proposing additional language on page 21 of Court's draft jury charge including that a defendant's "intention eventually to repay is no defense") (citing *United States v. Bankman-Fried*, No. 22 Cr. 673 (LAK) (S.D.NY. 2023), Tr. 3160; *United States v. Avenatti*, No. 19 Cr. 374 (JMF) (S.D.N.Y. 2022), Tr. 1739).

The Government respectfully requests adding to its proposed actual-harm instruction (reprinted below from pp. 5-6 of the Government's June 25 letter) the underlined language below tracking (1) the Court's July 2 bench ruling that refunds or redemptions are not a defense to fraud and (2) the Court's statement at the July 3 sidebar about the irrelevance of the fact that any of the G Enterprise entities may continue to operate. This proposed addition would be for page 21 of the Court's draft jury charge.

<span style="color:red">The Government does not need to prove that any intended victim was actually harmed, only that the defendant intended to harm the victim by obtaining money or property. Actual financial harm includes depriving someone of the real and immediate control over the use of assets. Thus, even if the defendant believed the money obtained by fraudulent means would one day be repaid and therefore believed that ultimately no harm would come to the</span>

---

[1] The proposed additions are adapted from Judge Kaplan's advice-of-counsel instruction in *United States v. Bankman-Fried*, No. 22 Cr. 673 (S.D.N.Y. 2023) (Tr. 3160): "All of that said, you have heard evidence that FTX and Alameda had lawyers. A lawyer's involvement with an individual, entity—an individual or entity or transaction doesn't itself constitute a defense to any charge in this case. The defense has not claimed, and it cannot claim, that the defendant's allegedly unlawful conduct, assuming he committed any unlawful conduct, was lawful because he engaged in such conduct in good-faith reliance on the advice of a lawyer."

owner of the funds, his intention eventually to repay is no defense.  <u>Nor is it a defense that certain people were offered or received refunds.  Whether any of the companies involved continue to operate is also not a defense.</u>  Additionally, it is not necessary for the Government to prove that the Defendant was motivated solely by improper considerations.  The Government will have satisfied its burden of proof on this element if you find that the Defendant had an intent to wrongfully obtain funds of another, even if the Defendant also had other proper or neutral reasons for his actions.  A defendant may have the required intent to defraud even if the defendant was motivated by other lawful purposes as well.

        Respectfully submitted,

        DAMIAN WILLIAMS
        United States Attorney

By: /s/ _____
    Ryan B. Finkel / Juliana N. Murray
    Micah F. Fergenson / Justin Horton
    Assistant United States Attorneys
    (212) 637-6612 / 2314 / 2190 / 2276

cc:    Counsel of record (by email)