# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

MILES GUO,
    a/k/a "Ho Wan Kwok,"
    a/k/a "Miles Kwok,"
    a/k/a "Guo Wengui,"
    a/k/a "Brother Seven,"
    a/k/a "The Principal,"
    a/k/a "Boss," and

                Defendant.

**S3 23 Cr. 118 (AT)**

**<u>JURY CHARGE</u>**

**TABLE OF CONTENTS**

I.  Introductory Charges ................................................................ 5

    1.     Role of the Court................................................................ 5

    2.     Role of the Jury................................................................ 5

    3.     What Is and Is Not Evidence ................................................ 6

    4.     Rulings on Evidence and Objections ...................................... 7

    5.     Burden of Proof and Presumption of Innocence........................ 7

    6.     Reasonable Doubt .............................................................. 8

    7.     Direct and Circumstantial Evidence ...................................... 9

    8.     Credibility of Witnesses....................................................... 11

    9.     Credibility and Weight Distinguished .................................... 13

    10.    Interest in Outcome ............................................................ 13

    11.    Government as a Party ......................................................... 14

    12.    Sympathy: Oath as Juror ..................................................... 14

    13.    Punishment Not to Be Considered......................................... 15

    14.    Summary of the Indictment .................................................. 15

    15.    Conspiracy and Substantive Counts....................................... 16

II.  Substantive Counts ................................................................ 17

    16.    Elements of Counts Five, Seven, Nine and Eleven: Wire Fraud .......... 17

         a.    First Element: Scheme or Artifice to Defraud............................ 18

         b.    Second Element: Knowledge and Intent to Defraud .................... 20

         c.    Third Element: Interstate Wires ............................................ 23

    17.    Elements of Counts Six, Eight, and Ten: Securities Fraud.................. 24

         a.    First Element: Fraudulent Act .............................................. 25

             i.    Materiality................................................................ 26

|  | | ii.   "Security" .................................................................................. | 26 |
|  | | iii. "In Connection With" .................................................................. | 27 |
|  | b. | Second Element: Knowledge, Intent, and Willfulness .............................. | 28 |
|  | c. | Third Element: Instrumentality of Interstate Commerce............................ | 29 |
| 18. | | Count Twelve: Unlawful Monetary Transaction ..................................... | 29 |
|  | a. | First Element: Monetary Transaction ........................................................ | 30 |
|  | b. | Second Element: Criminally Derived Property ........................................... | 31 |
|  | c. | Third Element: Knowledge ........................................................................ | 32 |
|  | d. | Fourth Element: In the United States ......................................................... | 32 |
| 19. | | Other Theories of Guilt ............................................................................. | 32 |
|  | a. | Willful Causation (if applicable) ............................................................... | 33 |
|  | b. | Aiding and Abetting (if applicable) ........................................................... | 34 |
| III. Conspiracy Counts................................................................................................. | | | 35 |
| 20. | | Elements of Count One, Two, Three, and Four: Conspiracy ..................... | 35 |
|  | a. | First Element: Existence of a Conspiracy.................................................. | 36 |
|  | b. | Second Element: Participation................................................................... | 37 |
| 21. | | Liability for Acts and Declarations of Co-Conspirators (if applicable) ............. | 39 |
| 22. | | Count Two: Conspiracy to Commit Wire Fraud and Bank Fraud ....................... | 40 |
|  | a. | Objects of the Conspiracy......................................................................... | 41 |
|  | | i.   Wire Fraud ........................................................................... | 41 |
|  | | ii.  Bank Fraud ........................................................................... | 41 |
| 23. | | Count Three: Money Laundering Conspiracy ........................................... | 45 |
|  | a. | Object One: Domestic Concealment ......................................................... | 45 |
|  | | i.    First Element: Financial Transaction Involving Proceeds of Specified Unlawful Activity.................................................................. | 46 |
|  | | ii.   Second Element: Knowledge ................................................. | 48 |
|  | | iii. Third Element: Designed to Conceal or Disguise ........................... | 48 |
|  | b. | Object Two: International Concealment....................................................... | 49 |
|  | c. | Object Three: International Promotion........................................................ | 50 |
| 24. | | Elements of Count Four: Securities Fraud Conspiracy ........................... | 51 |

ii

a.   First & Second Elements: Existence of Conspiracy & Participation ..........52

b.   Third Element: Overt Act ....................................................................53

25.   Elements of Count One: Racketeering Conspiracy ...........................................54

a.   First Element: Racketeering Enterprise ..............................................55

b.   Second Element: Interstate or Foreign Commerce .............................57

c.   Third Element: Membership in the Conspiracy ..................................58

d.   Element Four: Pattern of Racketeering Activity ................................60

i.   Enterprise v. Pattern of Racketeering Activity ...................63

ii.   Predicate Acts ....................................................................64

26.   Multiple Conspiracies.........................................................................................

IV.   Conscious Avoidance (if applicable)..................................................................66

V.   Venue.................................................................................................................68

VI.   Final General Instructions.................................................................................69

26.   Defendant's Right Not to Testify (if applicable) .............................................. 69

27.   Defendant's Testimony (if applicable) ............................................................. 69

28.   Law Enforcement and Government Witnesses.................................................. 70

29.   Expert Witnesses............................................................................................. 70

30.   Accomplice/Cooperating Witness Testimony (if applicable)............................. 71

31.   Non-Prosecution Agreement (if applicable) .................................................... 72

32.   Immunized Witnesses (if applicable) ............................................................... 72

33.   Preparation of Witnesses ................................................................................ 74

34.   Uncalled Witnesses—Equally Available.......................................................... 74

35.   Stipulations of Fact ........................................................................................75

36.   Summary Exhibits........................................................................................... 75

37.   Use of Evidence Obtained Pursuant to a Search.............................................76

38.   Variance in Dates............................................................................................76

39.   Particular Investigative Techniques Not Required ..........................................76

iii

40.   Use of Audio and Video Recordings and Transcripts .......................................  77

41.   Foreign Language Translations.........................................................................  77

42.   Redaction of Evidentiary Items (if applicable)....................................................  78

43.   Persons Not on Trial .........................................................................................  78

44.   Similar Acts—Intent, Knowledge, Absence of Mistake....................................  78

45.   Improper Considerations and Implicit Bias ......................................................  79

46.   Large Sums of Money…………………………………………………………

47.   Settlement with the Securities and Exchange Commission (SEC)………………

VII. Deliberations of the Jury ............................................................................................  80

46.   Jury's Duty to Deliberate ................................................................................  80

47.   Jury's Right to See Exhibits, Have Testimony Read, and Ask Questions...........  81

48.   Unanimous Verdict ...........................................................................................  82

49.   Instructions to Alternate Jurors .........................................................................  82

50.   Lunch ................................................................................................................  83

51.   Smokers on the Jury..........................................................................................  83

VIII. Concluding Remarks..................................................................................................  84

iv

I.    **INTRODUCTORY CHARGES**

1.    **Role of the Court**

Members of the jury:

We are now approaching the most important part of this case, your deliberations. It has been obvious to me and to counsel that until now you have faithfully discharged your duty to listen carefully and to observe each witness who testified. I ask that you give me that same careful attention as I read these instructions. You have now heard all the evidence in the case as well as the final arguments of the lawyers. My duty at this point is to instruct you on the law. It is your duty as jurors to follow the law as I state it and to apply the law to the facts, as you find them, from the evidence presented.

On these legal matters, you must take the law as I give it to you. If an attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. Moreover, you should not single out any instruction as alone stating the law. Instead, you should consider my instructions as a whole when you retire to deliberate in the jury room.

You should not, any of you, be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be—or what it should be— it is your sworn duty to base your verdict upon the law as I give it to you.

2.    **Role of the Jury**

Your final role is to pass upon and decide the factual issues in this case. You, the members of the jury, are the sole and exclusive judges of the facts. You pass upon the weight of the evidence; you determine the credibility of the witnesses; you resolve such conflicts as there

5

may be in the testimony; and you draw whatever reasonable inferences you decide to draw from the facts as you have determined them.

I shall later discuss with you how to determine the credibility—or believability—of the witnesses.

In determining the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, and in their objections is not evidence. Nothing that I may have said during the trial or may say during these instructions constitutes evidence.

Questions asked by the attorneys—or even myself—are not, in and of themselves, evidence. Only questions coupled with answers are evidence. Therefore, you may not infer any fact from the mere asking of a question. Moreover, you may not consider any answer that I directed you to disregard or that I directed struck from the record.

**3.    What Is and Is Not Evidence**

The evidence in this case consists of the sworn testimony of the witnesses, on both direct and cross-examination; the exhibits received in evidence; and the stipulations of the parties.

By contrast, you may not consider exhibits that were marked for identification, or any other document you may have seen, but not received as evidence. Only those exhibits actually received may be considered as evidence.

Similarly, testimony that has been excluded, stricken, or that you have been instructed to disregard is not evidence and must be ignored. Some evidence has been received for limited purposes only. When I have given you a limiting instruction as to such evidence, you must follow that instruction and consider such evidence for only the limited purpose that I allowed.

6

Obviously, anything you may have seen or heard outside the courtroom is not evidence. Nothing I have said or done should be used by you to determine whether the Government has met its burden of proof. I have no view as to whether the Government has met its burden, and you should not infer that I do from anything that I have said or done.

4.    **Rulings on Evidence and Objections**

You should draw no inference or conclusion for or against any party by reason of lawyers making objections. Counsel have not only the right but the duty to make legal objections when they think that such objections are appropriate.

Also, do not draw any inference from any of my rulings. The rulings I have made during trial are not any indication of my views of what your decision should be as to whether or not the Defendant has been proven guilty beyond a reasonable doubt. You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or any party in the case, by reason of any comment, question, or instruction of mine.

5.    **Burden of Proof and Presumption of Innocence**

The Defendant has pleaded not guilty to the charges in the indictment. The indictment itself is not evidence. It merely contains the charges that the Government must prove beyond a reasonable doubt.

Because the Defendant has pleaded not guilty, the burden is on the prosecution to prove guilt beyond a reasonable doubt. This burden always remains with the Government and never shifts to the Defendant. Indeed, the law never imposes upon a criminal defendant the burden of proving his innocence or even the duty of calling any witnesses or producing any evidence at all.

The law presumes a defendant innocent of all charges against him. I, therefore, instruct you that you must presume the Defendant innocent throughout your deliberations until such time,

7

if ever, that you as a jury are unanimously satisfied that the Government has proven the Defendant's guilt beyond a reasonable doubt.

The Defendant began the trial with a clean slate. This presumption of innocence alone is sufficient to acquit unless you are unanimously convinced beyond a reasonable doubt of the Defendant's guilt, after careful and impartial consideration of all the evidence against him. If the Government fails to overcome the presumption of innocence and does not sustain its burden of proving guilt beyond a reasonable doubt with respect to the Defendant, you must find the Defendant not guilty.

The presumption of innocence was with the Defendant when the trial began and remains with him even now as I speak. It will continue into your deliberations unless and until you are convinced that the Government has proven the Defendant's guilt beyond a reasonable doubt.

In determining whether the Government has satisfied its burden of proving the Defendant's guilt beyond a reasonable doubt, you may consider all the evidence presented, whether by the Government or the defense. In doing so, remember that even though the Defendant may have introduced evidence, the burden of proof remains on the Government.

6. **Reasonable Doubt**

I have said that the Government must prove the Defendant's guilt beyond a reasonable doubt. The question then is: What is reasonable doubt? The words almost define themselves. It is doubt based upon reason and common sense. It is doubt that a reasonable person has after carefully weighing all of the evidence. It is doubt which would cause a reasonable person to hesitate to act in a matter of importance in his or her personal life. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs. A reasonable

8

doubt is not a whim. It is not a speculation or suspicion. It is not an excuse to avoid the performance of an unpleasant duty. And it is not sympathy.

In a criminal case, the burden is at all times on the Government to prove guilt beyond a reasonable doubt. The law does not require that the Government prove guilt beyond all possible doubt or to a mathematical certainty. On the other hand, it is not sufficient to prove that the Defendant is probably guilty. Proof of guilt beyond a reasonable doubt is proof that leaves you so firmly convinced of the Defendant's guilt that you have no reasonable doubt of the existence of any element of the crime or of the Defendant's identity as the person who committed the crime.

A reasonable doubt may arise from evidence or lack of evidence. If, after fair and impartial consideration of all the evidence, you are satisfied of the Defendant's guilt beyond a reasonable doubt as to the charge you are considering, you must find the Defendant guilty. On the other hand, if, after fair and impartial consideration of all the evidence, you have a reasonable doubt, you must find the Defendant not guilty of that charge.

**7.    Direct and Circumstantial Evidence**

There are two types of evidence which you may properly use in deciding whether the Defendant is guilty or not guilty of the charged crimes: direct and circumstantial evidence. Direct evidence is evidence that proves a disputed fact directly. For example, where a witness testifies to what he or she saw, heard, or observed, that is called direct evidence.

Circumstantial evidence, by contrast, is evidence that tends to prove a disputed fact by proof of other facts. To remind you of the example that I gave you at the beginning of the trial: suppose that when you came into the courthouse today the sun was shining and it was a nice day, but that the courtroom shades were drawn, and you could not look outside. Then later, as you

9

were sitting here, someone walked in with a dripping wet umbrella and, soon after, someone else walked in with a dripping wet raincoat. Now, on our assumed facts, you cannot look outside of the courtroom, and you cannot see whether or not it is raining. So, you have no direct evidence of that fact. But, on the combination of the facts about the umbrella and the raincoat, it would be reasonable for you to conclude that it had begun raining.

That is all there is to circumstantial evidence. Using your reason and experience, you infer from established facts the existence or the nonexistence of some other fact. Many material facts, such as a person's state of mind, are not easily proved by direct evidence. Usually, such facts are established by circumstantial evidence and the reasonable inferences you draw. Circumstantial evidence is of no less value than direct evidence; for, it is a general rule that the law makes no distinction between direct and circumstantial evidence, but simply requires that before convicting a defendant, the jury must be satisfied of the defendant's guilt beyond a reasonable doubt from all of the evidence in the case.

Now, whether the circumstantial evidence leads you inevitably to a particular inference is another matter. Let me give you another example. Let's say that one evening, you go into a subway station. It's a local stop, and it's not rush hour. You arrive at the platform, and you are surprised to find a large crowd of people waiting on the platform. You didn't expect there to be so many people, but there are lots of people waiting. Now, you might infer from this fact that there must not have been a train for quite some time. But is that an inference you must draw from the circumstantial evidence of a crowded subway platform?

It is certainly a weaker inference than the one about the umbrella and raincoat, because if you think more about it, maybe there are other, equally plausible explanations. Maybe there was a train just a minute ago that went out of service and they said, everybody off the train. Or

10

maybe it's 10:30 p.m., and you are waiting at the 50th Street stop of the No. 1 train, and a Broadway show has just let out. There is more than one plausible explanation. So, in this example, you wouldn't have as strong a basis for drawing any one particular inference.

**8.      Credibility of Witnesses**

It must be clear to you by now that counsel for the parties are asking you to draw very different conclusions about some of the factual issues in this case. An important part of that decision will involve making judgments about the testimony of the witnesses you have listened to and observed. In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you to decide the truth and the importance of each witness' testimony.

Your decision whether or not to believe a witness may depend on how that witness impressed you. Was the witness candid, frank, and forthright; or, did the witness seem to be evasive or suspect in some way? How did the way the witness testified on direct examination compare with how the witness testified on cross examination? Was the witness consistent or contradictory? Did the witness appear to know what he or she was talking about? Did the witness strike you as someone who was trying to report his or her knowledge accurately? What was the witness' demeanor like? These are examples of the kinds of common-sense questions you should ask yourselves in deciding whether a witness is or is not truthful.

In addition, you may consider whether a witness had any possible bias or relationship with a party, or any possible interest in the outcome of the case. Such a bias or relationship does not necessarily make the witness unworthy of belief. These are simply factors that you may consider. If a witness made statements in the past that are inconsistent with his or her testimony

11

during the trial concerning facts that are at issue, you may consider that fact in deciding how much of the testimony, if any, to believe.

In making this determination, you may consider whether the witness purposefully made a false statement, or whether it was an innocent mistake. You may also consider whether the inconsistency concerns an important fact or merely a small detail, as well as whether the witness had an explanation for the inconsistency and, if so, whether that explanation appealed to your common sense.

If you find that a witness has testified falsely as to any material fact, or if you find that a witness had previously been untruthful when testifying under oath or otherwise, you may reject that witness's testimony in its entirety, or you may accept only those parts that you believe to be truthful or that are corroborated by other independent evidence in the case.

You should also consider whether the witness had an opportunity to observe the events he or she testified about, and whether the witness' recollection of the facts stands up in light of the other evidence in the case. In other words, what you must try to do in deciding credibility is to size up a person just as you would in any important matter where you are trying to decide if a person is truthful, straightforward, and accurate in his or her recollection.

Now, a witness may be discredited or "impeached" by contradictory evidence, or by evidence that at some other time the witness had said or done something that is inconsistent with the witness's present testimony. The earlier inconsistent or contradictory statements are admissible only to discredit or impeach the credibility of a witness, not to establish the truth of earlier statements made somewhere else. You may also consider a witness' earlier silence or inaction that is inconsistent with his or her courtroom testimony to determine whether the witness is impeached. If you believe that any witness has been impeached and thus discredited,

then it is for you to give the testimony of that witness as much or as little weight, if any, as you think it deserves.

You are not required to accept testimony even though the testimony is uncontradicted and the witness' testimony is not challenged. You may reject it because of the witness's bearing or demeanor, or because of the apparent improbability of the testimony, or for other reasons sufficient for you to conclude that the testimony is not worthy of belief.

It is for you, the jury, and for you alone, not the lawyers, or the witnesses, or me as the judge, to decide the credibility of witnesses who appeared here and the weight that their testimony deserves.

**9.    Credibility and Weight Distinguished**

I have referred to the two separate decisions that the jury must make in evaluating witnesses: "credibility" and "weight." When you decide whether you believe what a witness says, you decide "credibility." When you decide how much to allow that evidence to affect your decision on any issue, you decide the "weight" to give to the testimony.

**10.    Interest in Outcome**

In evaluating the credibility of the witnesses, you should take into account any evidence that the witness who testified may benefit in some way from the outcome of this case. Such an interest in the outcome may create a motive to testify falsely and may sway the witness to testify in a way that advances his or her own interests. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony and accept it with great care.

13

This is not to suggest that a witness who has an interest in the outcome of a case will testify falsely. It is for you to decide to what extent, if at all, the witness's interest has affected or colored his or her testimony.

**11. Government as a Party**

You are to perform the duty of finding the facts without bias or prejudice as to any party. You are to perform your final duty in an attitude of complete fairness and impartiality.

The case is important to the Government, for the enforcement of criminal laws is a matter of prime concern to the community. Equally, it is important to the Defendant, who is charged with serious crimes.

The fact that the prosecution is brought in the name of the United States of America entitles the Government to no greater consideration than that accorded to any other party to a litigation. By the same token, it is entitled to no less consideration. The parties, whether the Government or an individual, stand as equals at the bar of justice.

**12. Sympathy: Oath as Juror**

Under your oath as jurors, you are not to be swayed by sympathy. You are to be guided solely by the evidence in this case, and the crucial question that you must ask yourselves as you sift through the evidence is: Has the Government proven the guilt of the Defendant beyond a reasonable doubt?

It is for you and you alone to decide whether the Government has proven that the Defendant is guilty of the crimes charged, solely on the basis of the evidence and subject to the law as I have instructed you. It must be clear to you that once you let fear, prejudice, bias, or sympathy, interfere with your thinking, there is a risk that you will not arrive at a true and just verdict.

14

If you have a reasonable doubt as to the Defendant's guilt, you should not hesitate to find the Defendant not guilty. But, on the other hand, if you find that the Government has met its burden of proving the Defendant's guilt beyond a reasonable doubt, you should not hesitate to find the Defendant guilty.

**11.    Punishment Not to Be Considered**

Under your oath as jurors, you cannot allow a consideration of possible punishment that may be imposed upon the Defendant, if convicted, to influence you in any way or to enter into your deliberations. The duty of imposing sentence is mine and mine alone. Your function is to weigh the evidence and to determine whether the Defendant is or is not guilty based on the evidence and the law. Therefore, I instruct you to not consider punishment or possible punishment during your deliberations.

**12.    Summary of the Indictment**

The Defendant, Miles Guo, has been charged in an indictment. The indictment is a document containing the charges, or "counts" against the Defendant. It is not evidence or proof of the Defendant's guilt. You are directed to not consider or discuss how the indictment was obtained. Before you begin your deliberations, you will be provided with a copy of the indictment. Therefore, I will not read the entire indictment to you at this time. Instead, I will summarize in general terms the offenses charged. Then, I will explain in detail the "elements" of those offenses. An element is an essential component of an offense. You must find that the Government has established all elements of an offense beyond a reasonable doubt to find the Defendant guilty of that offense.

The indictment contains twelve counts against the Defendant, each of which is alleged to have occurred between 2018 and March 2023. I will now briefly explain the counts somewhat out of order.

15

The indictment consists of twelve charges, or counts, against the Defendant. The
Government alleges that the Defendant operated four fraudulent investment schemes as part of a
criminal enterprise. The term "criminal enterprise" is also referred to as a "racketeering" or
"RICO" enterprise. Count One charges the Defendant with conspiracy to operate a criminal
enterprise. Counts Two, Three, and Four charge the Defendant with conspiracy to commit wire
fraud, bank fraud, securities fraud, and money laundering. Counts Five and Six charge the
Defendant with securities fraud and wire fraud in connection with a private stock offering for the
media company known as GTV. Counts Seven and Eight charge the Defendant with wire fraud
and securities fraud in connection with the Farm Loan Program. Counts Nine and Ten charge the
Defendant with wire fraud and securities fraud in connection with the lifestyle membership
company known as G|CLUBS. Count Eleven charges the Defendant with wire fraud in
connection with the Himalaya Exchange. Finally, Count Twelve charges the Defendant with
making a $100 million wire transfer using money derived from a crime.

In a moment, I will instruct you on each of these charges in more detail. As I said, the
indictment contains a total of twelve counts against the Defendant. Each count constitutes a
separate alleged crime. You must consider each count of the indictment separately, and you
must return a separate verdict on each count in which the Defendant is charged. Whether you
find the Defendant guilty or not guilty as to one offense should not affect your verdict as to any
other offense charged.

**15.    Conspiracy and Substantive Counts**

As I have just described, certain counts in the indictment are conspiracy counts, and
others are what are referred to as substantive counts. A conspiracy charge, generally speaking,
alleges that two or more persons agreed to commit a crime. The focus of a conspiracy count,

16

therefore, is on whether there was an unlawful agreement. So, even if a conspiracy fails and the crime is not actually committed, the conspiracy is still punishable as a crime.

A substantive charge, by contrast, is based on the actual commission of an offense. A substantive offense, therefore, may be committed by a single person, and it need not involve an agreement with anyone else.

If a defendant both agrees to commit a crime and then actually commits that crime, that defendant may be guilty of both the conspiracy and the substantive crime.

> [Adapted from Sand, et al., *Modern Federal Jury Instructions*, Instr. 19-2; Jury Charge of Hon. Sidney H. Stein in *United States v. Duncan*, et al., 18 Cr. 289 (SHS); Jury Charge of Hon. John M. Walker, Jr., *United States v. Helmsley*, 88 Cr. 219 (S.D.N.Y. 1989). *See also United States v. Labat*, 905 F.2d 18, 21 (2d Cir. 1990) ("Since the essence of conspiracy is the agreement and not the commission of the substantive offense that is its objective, the offense of conspiracy may be established even if the collaborators do not reach their goal.").]

## II.    SUBSTANTIVE COUNTS

### 16.    Elements of Counts Five, Seven, Nine and Eleven: Wire Fraud

Let me first turn to the substantive counts, which are listed as Counts Five through Twelve in the Indictment. Then I will address the conspiracy counts.

Counts Five, Seven, Nine and Eleven charge the Defendant with committing wire fraud in violation of Title 18, United States Code, Section 1343. Each wire fraud count relates to a separate alleged scheme. Count Five alleges that the Defendant conducted the GTV Private Placement to sell GTV stock and fraudulently obtain money from individuals by making false statements and misrepresentations, including, among other things, about how their money would be used. Count Seven alleges that the Defendant conducted the Farm Loan Program to fraudulently obtain money from individuals by making false statements and misrepresentations,

17

including, among other things, about how the Farm Loans participants' money would be used. Count Nine alleges that the Defendant promoted and marketed G|CLUBS to fraudulently obtain money from individuals by making false statements and misrepresentations, including, among other things, about how their membership dues would be used. And, Count Eleven alleges that the Defendant operated the Himalaya Exchange to fraudulently obtain money from individuals through false statements and misrepresentations, including, among other things, about how the funds raised would be used.

In order to find the Defendant guilty of wire fraud, the Government must prove the following three elements beyond a reasonable doubt:

*First*, that there existed a scheme or artifice to defraud, or to obtain money or property, by means of materially false or fraudulent pretenses, representations, or promises;

*Second*, that the Defendant knowingly, willfully, and with the intent to defraud, devised or participated in the scheme or artifice; and

*Third*, that an interstate or foreign wire communication was used in furtherance of the scheme or artifice.

I'll describe each of these elements in greater detail now.

[Adapted from Sand, *Modern Federal Jury Instructions*, Instr. 443; Jury Charge of Hon. Jesse Furman in *United States v. Avenatti*, 19 Cr. 374 (Feb. 1, 2022)]

a. First Element: Scheme or Artifice to Defraud

The first element of wire fraud that the Government must prove beyond a reasonable doubt is that there was a scheme or artifice to defraud, or to obtain money or property, by means of materially false or fraudulent pretenses, representations, or promises. A "scheme or artifice" is just a plan to accomplish a fraudulent objective. So, a "scheme or artifice to defraud" is any plan to

18

deprive another of money or property by means of false or fraudulent pretenses, representations
or promises.

A pretense, representation, or promise is false if it is untrue when made and was at the
time known to be untrue by the person making it. And, it is fraudulent if it was made with intent
to deceive. And, the intent to deceive must exist at the time the statement was made.[1] A
representation, statement, claim, or promise may also be false or fraudulent if it contains half-
truths or if it deliberately conceals material facts in a manner that makes what is said or
represented misleading or deceptive.

Fraud requires more than simply proof that a promise was made and then not fulfilled.
Failing to maintain a promise or to abide by a term in a contract or other document is not by
itself fraudulent. Instead, the government must prove beyond a reasonable doubt that the
defendant, at the time they made the statement or promise, *never intended* to honor. A
subsequent decision by a defendant not to abide by the terms of a promise, contract or
document, even on that is willful, cannot be the basis for a conviction.[2]

The false or fraudulent representation must relate to a material fact or matter. A material
fact is one which would be expected to be of concern to a reasonable and prudent person in
relying upon the representation or statement in making a decision. That means that, if you find
that a particular statement or representation was false, you must determine whether that
statement or representation was capable of influencing the decision that a in one that a

---

[1] Sand, Instr. 44-4.
[2] *U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 660 (2d Cir. 2016) ("[O]ur Court has
consistently applied this principle:  A breach of contract does not amount to mail fraud. Failure to comply with a
contractual obligation is only fraudulent when the promisor never intended to honor the contract.'" (quoting *United
States v. D'Amato*, 39 F.3d 1249, 1261 n. 8 (2d Cir. 1994)).
Sand, Instr. 44-4.

reasonable person ~~might~~ would have considered important.[3] The same principle applies to fraudulent half-truths or omissions, that is, failures to disclose facts.

The Government does not have to prove that any person actually relied on, or suffered damages, as a consequence of any fraudulent representation or concealment of facts.

Nor do you need to find that the Defendant profited from the fraud. It is enough that a false statement, half-truth, or omission, was made as part of a fraudulent scheme with the expectation that it would be relied on. You must concentrate on whether there was such a scheme, not on whether the scheme succeeded. Of course, proof that the scheme succeeded may be the most persuasive evidence of the existence of the scheme itself.

To establish a scheme to defraud, the Government must prove beyond a reasonable doubt that the ~~D~~defendant contemplated depriving another of money or property. It is not enough that some other person or company could have acquired money or property. ~~For the wire fraud claim,~~ ~~t~~To prove the scheme to defraud element, a defendant must have "contemplated actual harm would befall victims due to his deception."[4] A scheme to defraud need not be shown by direct evidence, but may be established by the circumstances and facts in the case.

In determining whether a scheme to defraud existed, it is irrelevant whether a victim might have discovered the fraud if he, she, or it had looked more closely or probed more

19

---

[3] Neder v. United States, 527 U.S. 1, 16 (1999) ("In general, a false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decision-making body to which it was addressed." (internal quotation marks, brackets, and citations omitted)).
[4] Sand, 44-4 and Percoco v. United States, 143 S. Ct. 1130 (2023); Ciminelli v. United States, 143 S. Ct. 1121 (2023). ~~Deletions are based on reptitivness and Countrywide.~~

extensively. A victim's negligence or gullibility in failing to discover a fraudulent scheme is not a defense to wire fraud.

A scheme to defraud need not be shown by direct evidence, but may be established by the circumstances and facts in the case.

If you find that the Government has sustained its burden of proof that a scheme to defraud, as charged, did exist, you should next consider the second element.

> [Adapted from the charges of the Honorable Lewis A. Kaplan in *United States v. Samuel Bankman-Fried*, No. 22 Cr. 673 (Nov. 2, 2023), the Honorable Edgardo Ramos in *United States v. Milton*, No. 21 Cr. 478 (Oct. 14, 2022), and the Honorable Jesse M. Furman in *United States v. Avenatti*, No. 19 Cr. 374 (Feb. 1, 2022); *see also Neder v. United States*, 527 U.S. 1, 16 (1999) ("In general, a false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decision-making body to which it was addressed." (internal quotation marks, brackets, and citations omitted)); *id.* 24-25 (the "common-law requirements of 'justifiable reliance' and 'damages' . . . plainly have no place in the federal fraud statutes"); *United States v. Males*, 459 F.3d 154, 157 (2d Cir. 2006).
>
> The proposed instruction about retaining money or property is also adapted from the charge of the Honorable Denis R. Hurley in *United States v. Schneider*, 02 Cr. 128, 2002 WL 34348617 (Oct. 23, 2002). *See also United States v. Gole*, 158 F.3d 166, 168 (2d Cir. 1998) (scheme to defraud where the defendant "intentionally misrepresented his income in order to retain pension overpayments").]

b. Second Element: Knowledge and Intent to Defraud

The second element that the Government must prove beyond a reasonable doubt for the wire fraud counts is that the Defendant devised or participated in the scheme to defraud knowingly, willfully, and with the specific intent to defraud. I will now define these terms.

To "devise" a scheme to defraud is to concoct or plan it. To "participate" in a scheme to defraud means to associate oneself with it, with the intent to making it succeed. Although a mere

onlooker is not a participant in a scheme to defraud, it is not necessary that a participant be someone who personally and visibly executes the scheme.

To act "knowingly" means to act voluntarily and deliberately, rather than mistakenly or inadvertently.

To act "willfully" means to act voluntarily and purposely, with an intent to do something that the law forbids; that is to say, with bad purpose either to disobey or disregard the law.

An act is done knowingly and willfully if it is done purposefully and deliberately with an intent to do something the law forbids. That is, the Defendant's act must have been the product of the Defendant's conscious determination rather than the product of a mistake, accident, mere negligence, or some other innocent reason.

To act with a "specific intent to defraud" requires that the Defendant engaged or participated in the fraudulent scheme with awareness of its fraudulent or deceptive character, with an intention to be involved in the scheme to defraud and to help it succeed, and with a purpose of obtaining money or property from another. Put differently, to find specific "intent to defraud" or "fraudulent intent," you must find that the ~~relevant d~~Defendant had the intent to cheat or steal money from others at the time the misrepresentation or false promise was made.[5]

Now, science has not yet devised a manner of looking into a person's mind and knowing what that person is thinking. However, you have before you evidence of certain acts, conversations, and statements alleged to have been made by, with, or in the presence of the Defendant and others. The ultimate facts of knowledge and the presence or absence of criminal intent ~~or the absence of such intent~~ may be established by words, conduct, and all the surrounding circumstances, as well as the rational or logical inferences that may be drawn from

[5] Adapted from Final Jury Charge of Hon. Robert Chatigny in *United States v. Shapiro*, No. 15-CR-00155 (RNC) (D. Conn. June 1, 2017) (Dkt. 462) (Trial Tr. at 2645:18-24).

the words and conduct. The Defendant need not have participated in or had knowledge of **all** of the operations of the scheme in order to have acted with knowledge and intent. It is for you to determine whether the Government has established beyond a reasonable doubt such knowledge and intent on the part of the Defendant.

21

Direct proof of knowledge and fraudulent intent is almost never available. **It would be a rare case** where it could be shown that a person wrote or stated that, as of a given time in the past, he committed an act with fraudulent intent. Such direct proof is not required. Instead, the ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, his words, conduct, and acts, and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them.

Because an essential element of the crime charged is intent to defraud, it follows that good faith on the part of a defendant is a complete defense to a charge of substantive wire fraud. A defendant acts in good faith when he honestly believed at the time that the representations he was making were true, even if they turned out to be inaccurate or false. The burden is on the Government to prove fraudulent intent and the consequent lack of good faith beyond a reasonable doubt.

If you find that the dDefendant was not a knowing and willful participant in the scheme or lacked the required "intent to defraud" at the time of the operative false statement or false promise, then you should find the relevant dDefendant not guilty. On the other hand, if you find that the Ggovernment has established beyond a reasonable doubt not only the first element, namely the existence of the scheme to defraud, but also this second element, that the Ddefendant was a knowing participant and acted with specific "intent to defraud," then you should proceed to the third element.[6]

[Adapted from the charges of the Honorable Lewis A. Kaplan in *United States v. Samuel Bankman-Fried*, No. 22 Cr. 673 (Nov. 2, 2023), the Honorable Edgardo Ramos in *United States v. Milton*, No. 21 Cr. 478 (Oct. 14, 2022), and the Honorable Jesse M. Furman in *United States v. Avenatti*, No. 19 Cr. 374 (Feb. 1, 2022); *see also United States v. Jabar*, 19 F.4th 66, 77 (2d Cir. 2021) ("Proof of actual injury to the

---

[6] Sand 44-5.

victim is not required . . . ."); *United States v. Calderon*, 944 F.3d 72, 90 (2d Cir. 2019) ("A 'no ultimate harm' instruction advises the jury that where some immediate loss to the victim is contemplated by a defendant, the fact that the defendant believes (rightly or wrongly) that he will ultimately be able to work things out so that the victim suffers no loss is no excuse for the real and immediate loss contemplated to result from defendant's fraudulent conduct."); *United States v. Technodyne LLC*, 753 F.3d 368, 385 (2d Cir. 2013) ("It is commonplace that the law recognizes that there may be multiple motives for human behavior; thus, a specific intent need not be the actor's sole, or even primary, purpose.")]

22

c. <u>Third Element: Interstate Wires</u>

The third and final element of substantive wire fraud is that an interstate wire was used in furtherance of the scheme to defraud or to obtain money or property by means of materially false or fraudulent pretenses, representations, or promises.

A "wire" can be, for example, a phone call, email communication, text message, social media or website post, or a bank wire transfer. The wire must be an interstate wire—that is, it must pass between two or more states or a state and a foreign country. The use of the wire need not itself be a fraudulent representation. It must, however, further or assist in some way in carrying out the scheme.

It is not necessary for the Defendant to have been directly or personally involved in a wire, as long as the wire was reasonably foreseeable in the execution of the scheme to defraud. In this regard, it is sufficient to establish this element of the crime if the evidence justifies a finding that the Defendant caused the wire to be used by others. The wire requirement can be satisfied even if the wire was used by the person being defrauded or some other party. When one does an act with knowledge that the use of a wire will follow in the ordinary course of business or where such use of a wire reasonably can be foreseen, even though not actually intended, then he causes a wire to be used. Thus, there is no requirement that the Defendant specifically authorize others to use a wire.

Only the **use** of a wire must be reasonably foreseeable, not its interstate or foreign component. Thus, if you find that the wire that occurred was reasonably foreseeable, then this element is satisfied even if it was not foreseeable that the wire would cross state or national lines.

[Adapted from the charges of the Honorable Lewis A. Kaplan in *United States v. Samuel Bankman-Fried*, No. 22 Cr. 673 (Nov. 2, 2023), the Honorable Edgardo Ramos in *United States v. Milton*, No. 21 Cr. 478 (Oct. 14, 2022), the Honorable Jesse M. Furman in

23

*United States v. Avenatti*, No. 19 Cr. 374 (Feb. 1, 2022), and the Honorable John G. Koeltl in *United States v. Dunseath*, No. 98 Cr. 493 (Apr. 14, 1999); *see also* Sand, *Modern Federal Jury Instructions*, Instr. 44-5; *United States v. Jergensen*, 797 F. App'x 4, 6 (2d Cir. 2019).]

**17.     Elements of Counts Six, Eight, and Ten: Securities Fraud**

Counts Six, Eight, and Ten of the indictment charge the Defendant with **securities fraud** in violation of Section 10(b) of the Securities Exchange Act and the related Rule 10b-5. In particular:

Count Six alleges that the Defendant conducted the GTV Private Placement to sell GTV stock and obtain money from victims through false statements and misrepresentations, including, among other things, about how the GTV investors' money would be used.

Count Eight alleges that the Defendant conducted the Farm Loan Program to obtain money from victims through false statements and misrepresentations, including, among other things, about how the Farm Loans participants' money would be used and that such loans would be convertible into GTV common stock.

Count Ten alleges that the Defendant promoted and marketed G|CLUBS to obtain money from victims through false representations and misrepresentations, including, among other things, about how the G|CLUBS members' money would be used and that their purchase of G|CLUBS memberships would entitle them to stock in Guo-affiliated entities.

To prove these charges, for each of the three securities fraud counts (GTV, the Farm Loans Program and G|CLUBS), the Government must prove each of the following three elements beyond a reasonable doubt:

*First*, that in connection with the purchase or sale of shares in GTV, G|Fashion, or some other purported security, the Defendant did any one or more of the following:

24

(1)     employed a device, scheme, or artifice to defraud,

(2)     made an untrue statement of a material fact or omitted a material fact which made

what was said, under the circumstances, misleading, or

(3)     engaged in an act, practice, or course of business that operated, or would operate,

as a fraud or deceit upon a purchaser or seller;

*Second*, that in doing so, the Defendant acted knowingly, willfully, and with the intent to

defraud; and

*Third*, that, in doing so, the Defendant used, or caused to be used, any instrumentality of

interstate commerce.

I will discuss each of these elements in greater detail now.

[Adapted from the charges of the Honorable Lewis A. Kaplan in
*United States v. Samuel Bankman-Fried*, No. 22 Cr. 673 (Nov. 2,
2023), the Honorable Denise L. Cote in *United States v. Perryman*,
No. 23 Cr. 117 (Mar. 4, 2024), and the Honorable Edgardo Ramos
in *United States v. Milton*, No. 21 Cr. 478 (Oct. 14, 2022); Sand,
*Modern Federal Jury Instructions*, Instr. 57-20; *see also United States
v. Litvak*, 808 F.3d 160, 178 (2d Cir. 2015) (noting that scienter for
securities fraud is "intent to deceive, manipulate or defraud" and
does not require an intent to harm); *United States v. Gleason*, 616
F.2d 2 (2d Cir. 1979).]

a.  First Element: Fraudulent Act

The first element of securities fraud is that, in connection with the purchase or sale of a

security, the Defendant did any one or more of the following:

(1)     employed a device, scheme, or artifice to defraud,

(2)     made an untrue statement of a material fact or omitted to state a material fact

which made what was said, under the circumstances, misleading, or

(3)     engaged in an act, practice, or course of business that operated, or would operate,

as a fraud or deceit upon a purchaser or seller.

25

It is not necessary for the Government to prove that the scheme involved all three types of unlawful conduct. Any one will be sufficient to satisfy this element of the offense. You must, however, be unanimous as to which type of unlawful conduct, if any, occurred. When we talked about the elements of wire fraud, I instructed you on what constitutes a scheme or artifice to defraud, and what constitutes a false or fraudulent statement (see pages XXX). You should apply those same instructions here. I will now tell you more about several definitions that are specific to the securities context.

    *i.   Materiality*

In the securities fraud context, a statement or omission may be "material" if a reasonable investor would have viewed the information as having **significantly altered the total mix of information then available**. Material facts include those which may affect the desire of investors to buy or sell a security. Material facts also include facts which, viewed objectively, might affect the value of a security. Expressions of corporate optimism and puffery are not material.[7]

**The Government does not need to establish that anyone actually relied on the misrepresentation**. The Government is also not required to prove that the scheme or artifice actually succeeded—that is, that anyone suffered any loss or that the Defendant realized any gain. It is the scheme that the law condemns. However, you may not assess materiality from the perspective of hindsight.[8] Nor is a misrepresentation material simply because it may have been "important" to an investor.[9]

    *ii.   "Security"*

---

[7] *Petrossi* Jury Charge Excerpt at 1131:20-21.

[8] *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 245 (2d Cir. 2016).

[9] *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 185 (2d Cir. 2014) ("while importance is undoubtedly a necessary element of materiality, importance and materiality are not synonymous."); *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162 (2d Cir. 2000)("it is not sufficient to allege that the investor might have considered the misrepresentation or omission important.")

There are two additional components to the first element of securities fraud. They are that the alleged fraudulent content—here with respect to GTV, the Farm Loans and G|CLUBS— was "in connection with" the purchase or sale of a "security."

The term "security" is defined in the statute that makes securities fraud a crime. It includes, among other things, any stock, investment contract, participation in any profit-sharing

26

agreement, or, in general, any instrumentality commonly known as a security. **It also includes any right to purchase any of the instruments I just named**. An "investment contract" means a contract, transaction, or scheme involving an investment of money in a common enterprise with the expectation that profits will be derived solely from the efforts of the promoter or a third party. For a transaction to ~~be~~ constitute a securities transaction, the government must prove beyond a reasonable doubt that a reasonable purchaser's motivation for participating in the transaction was solely to secure a profit or financial return.[10] By contrast, when the purchase is motivated by a desire to use or consume the item purchased, even in part, it is not a security for purposes of this count.[11]

In addition, the law presumes that an instrument called a note is a security. However, that presumption can be rebutted, because not all notes are securities. Whether a note qualifies as a security for purposes of federal law depends on the context in which it was issued. T~~For notes and other debt instruments, t~~he securities laws only apply if the note or debt instrument was part of or was issued in connection with an investment. Consumer notes – such as the note you signed if you took out a loan when you bought your car – or notes that are issued in the ordinary course of an ongoing business—are not securities. Only notes that are issued in connection with investments are securities.[12]

> *iii. "In Connection With"*

Finally, a scheme to defraud is "in connection with" a security if you find that the conduct "**touched upon**" a purchase or sale of securities. It is not necessary for you to find that the Defendant actually purchased or sold securities. It is sufficient if the Defendant participated in a scheme that involved the purchase or sale of securities by another person or entity.

---

[10] Adapted from SEC v. Life Partners, Inc., 87 F. 3d 536, 547 (D.C. Cir. 1996); Howey, 328 U.S. at 300.
[11] Adapted from Forman, 421 U.S. at 852-53.
[12] Adapted from the charge of the Hon. Colleen McMahon in United States v. Carton, 17 Cr. 680 (CM), Tr. 943-44; see also 15 U.S.C. § 78c(a)(10).

**Commented [PB1]:** The Defense would ask that this charge be included to the extent the government takes the view that Farm Loans or G Clubs memberships themselves are securities.

The Government need not prove that the Defendant agreed to **personally** make a misrepresentation or omit a material fact. It is sufficient if the Government establishes that the Defendant **intended to cause** the statement to be made or the fact to be omitted. Likewise, you need not find that the Defendant **actually participated** in any specific purchase or sale of a purported security if you find that the Defendant participated, or agreed to participate, in the fraudulent conduct that was in connection with a purchase or sale of securities.

However, this the "in connection with" element is not met simply because an alleged fraud happens to involve the sale of securities; it requires something more.[13]  The government must prove beyond a reasonable doubt both that the deceptive conduct coincided with particular securities sales, and that the deceptive conduct was material to the investors' decision to buy particular securities.  If the alleged deceptive conduct and did not coincide with the particular sale of the securities, were independent events, then the "in connection with" requirement is not satisfied.[14] In addition, if the defendant's alleged misrepresentations did not concern the value, nature, or investment characteristics of the securities, then this element the "in connection with" requirement is not satisfied.[15] Moreover, alleged misrepresentations that occurred after a

---

[13] See Alex. Brown & Sons Co. v. Marine Midland Banks, Inc., No. 96-cv-2549, 1997 WL 97837, at *6 (S.D.N.Y. Mar. 6, 1997) (dismissing claim brought by securities clearing broker against bank, where the broker alleged that the bank had misrepresented that funds were available to purchase the securities at issue); see also Chem. Bank, 726 F.2d at 943 (dismissing claim where securities were pledged as collateral in the transaction in which fraud was alleged to have occurred). Rather, the government must specifically demonstrate that the alleged fraud was connected to the purchase, sale, or offer of securities. Id.; see also Manufacturers Hanover Tr. Co. v. Smith Barney, Harris Upham & Co. Inc., 770 F. Supp. 176, 181 (S.D.N.Y. 1991) ("something more than a 'de minimis' relationship between the fraudulent scheme and the purchase or sale of securities is required").

[14] See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 85 (2006) (holding that the in-connection-with requirement is satisfied by proof that the alleged fraud "coincide[d] with a securities transaction[]").

[15]  See, e.g., Charles Schwab Corp. v. Bank of Am. Corp., 883 F.3d 68, 96 (2d Cir. 2018) ("A claim fails where the plaintiff does 'not allege that [a defendant] misled him concerning the value of the securities he sold or the consideration he received in return,'" and plaintiff "received exactly what it expected" in disputed securities transactions) (alteration in original) (quoting Saxe v. E.F. H Hutton & Co., 789 F.2d 105, 108 (2d Cir. 1986); Taylor v. Westor Cap. Grp., 943 F. Supp. 2d 397, 403 (S.D.N.Y. 2013) ("[C]ourts have drawn a line separating fraud claims that impact the fundamental valuation of the securities at issue, and the operation of securities markets, as distinguished from those that do not."); Manufacturers Hanover Tr. Co. v. Smith Barney, Harris Upham & Co. Inc., 770 F. Supp. 176, 181 (S.D.N.Y. 1991) ("Misrepresentations or omissions involved in a securities transaction but not pertaining to the securities themselves cannot form the basis of a violation of Section 10(b) or Rule 10b–5."); Prod. Res. Grp., L.L.C. v. Stonebridge Partners Equity Fund, L.P., 6 F. Supp. 2d 236, 240 (S.D.N.Y. 1998) (misrepresentations are not made "in connection with the purchase or sale of securities [when they do] not pertain to

securities sale cannot have "coincided with" such purchase or sale,[16] and therefore cannot have

been material to such sale.

> [Adapted from the charges of the Honorable Lewis A. Kaplan in *United States v. Samuel Bankman-Fried*, No. 22 Cr. 673 (Nov. 2, 2023); the Honorable Edgardo Ramos in *United States v. Milton*, No. 21 Cr. 478 (Oct. 14, 2022); and the Honorable Paul G. Gardephe in *United States v. Tuzman*, No. 15 Cr. 536 (Dec. 22, 2017); *see also* 15 U.S.C. § 78c(a)(10) ("The term 'security' means any . . . stock [and] any put, call, straddle, option, or privilege on any security . . .[and] any . . . warrant or right to subscribe to or purchase, any of the foregoing."); *SEC v. Lauer*, 52 F.3d 667, 670 (7th Cir. 1995) (Posner, J.) ("[I]t is the representations made by the promoters, not their actual conduct, that determine whether an interest is an investment contract (or other security)."); *In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 362 (S.D.N.Y. 2011) (surveying cases to conclude that the connection requirement is satisfied

---

the value, nature or investment characteristics of the securities in issue"); Abrash v. Fox, 805 F. Supp. 206, 208 (S.D.N.Y. 1992) ("[E]ven when there is a clear causal connection between the misrepresentations and the investment decision, there is no securities law violation unless the misrepresentations or omissions involved in a securities transaction pertain to the securities themselves."); Crummere v. Smith Barney, Harris Upham & Co., 624 F. Supp. 751, 755 (S.D.N.Y. 1985) ("The Second Circuit court has stated that the misrepresentation must relate to the securities alleged to satisfy the purchase and sale requirement, and not just to the transaction in its entirety.").

[16] *See Plumbers & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 104 (2d Cir. 2021) (holding that plaintiff cannot maintain securities fraud claim based exclusively on statements made after final purchase of securities)

"where the [victims] part with money intending that it be invested in securities, only to have the person to whom that money is entrusted steal it"); *Pail v. Precise Imports Corp.*, No. 99 Cv. 1624 (DLC), Fed. Sec. L. Rep. P 90,642, 1999 WL 681384, at *3-4 (S.D.N.Y. Aug. 31, 1999) (promise of future stock is sufficient connection to purchase or sale of securities).]

b. Second Element: Knowledge, Intent, and Willfulness

The second element of securities fraud that the Government must establish is that the Defendant acted knowingly, willfully, and with intent to defraud.

I defined these terms for you when we discussed the wire fraud charges (see pages XXX), so I will not discuss them at length here. Briefly:

"Knowingly" means to act voluntarily and deliberately, rather than mistakenly or inadvertently. To act "willfully" means to act voluntarily and with a wrongful purpose. "Intent to defraud" means to act knowingly and with intent to manipulate or deceive.

In order for you to find the Defendant guilty of securities fraud, the Government needs to prove that the Defendant acted with an intent to deceive, manipulate, or defraud. But, the Government **need not show** that the Defendant acted with an intent to cause harm.

False representations or statements of material fact do not amount to a fraud unless done with fraudulent intent. Because an essential element of the crime charged is intent to deceive or intent to manipulate, good faith on the part of the Defendant **is a complete defense** to the charge of securities fraud. ~~False representations or statements of material fact do not amount to a fraud unless done with fraudulent intent.~~ Therefore, however misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith. This includes ~~a d~~the Defendant's honest belief in the truth of the representations made by the ~~d~~Defendant.[17]

---

[17] Sand, Instruction 57-24.

A defendant has no burden to establish a defense of good faith. It is the Government's burden to prove a lack of good faith by establishing, beyond a reasonable doubt, that the Defendant acted knowingly, willfully, and with intent to deceive or manipulate.

[Adapted from the charges of the Honorable Lewis A. Kaplan in *United States v. Samuel Bankman-Fried*, No. 22 Cr. 673 (Nov. 2, 2023), the Honorable Edgardo Ramos in *United States v. Milton*, No. 21 Cr. 478 (Oct. 14, 2022), and the Honorable Jed S. Rakoff in *United States v. Petit*, No. 19 Cr. 850; Sand, *Modern Federal Jury Instructions*, Instr. 57-16; *see also United States v. Litvak*, 808 F.3d

28

160, 178 (2d Cir. 2015) (intent element for securities fraud is "intent to deceive, manipulate or defraud" not "intent to harm").]

c.   Third Element: Instrumentality of Interstate Commerce

The third and final element of securities fraud is that the Defendant knowingly used, or caused to be used, an instrumentality of interstate commerce in furtherance of the scheme to defraud.

This element may be established if the Government proves beyond a reasonable doubt that any means or instrumentality of interstate commerce or communication, including the mails, an interstate or international telephone call or email, or an interstate or international wire transaction, were used in furtherance of the scheme to defraud. **The Government need not prove that the Defendant was directly or personally involved in the use**. Instead, it is enough if the Defendant was an active participant in the scheme and took steps or engaged in conduct that he knew or could reasonably foresee would naturally and probably result in the use of an instrumentality of interstate or foreign commerce.

The use of an instrumentality of interstate or foreign commerce need not be central to the execution of the scheme or even incidental to it. All that is required is that the use bear some relation to the object of the scheme or fraudulent conduct.

[Adapted from the charge of the Honorable Edgardo Ramos in *United States v. Cole*, 19 Cr. 869, and the Honorable Ronnie Abrams in *United States v. Hild*, 19 Cr. 602, and Sand, *Modern Federal Jury Instructions*, Instrs. 57-20, 57-25. *See also United States v. Giordano*, 442 F.3d 30, 40 & n.11 (2d Cir. 2006) (defining "instrumentality of interstate commerce").]

**18.    Count Twelve: Unlawful Monetary Transaction**

Count Twelve charges the Defendant with engaging in a monetary transaction over $10,000 in property derived from specified unlawful activity—here, a transaction of

29

approximately $100 million derived from the GTV Private Placement to a private investment fund—in violation of Title 18, United States Code, Section 1957. For the Defendant to be found guilty of that charge, the Government must prove each of the following elements beyond a reasonable doubt:

*First*, that the Defendant knowingly engaged or attempted to engage in a monetary transaction in or affecting interstate commerce;

*Second*, that the monetary transaction involved criminally derived property of a value greater than $10,000;

*Third*, that the Defendant knew that the transaction involved proceeds of a criminal offense; and

*Fourth*, that the transaction took place in the United States.

> [Adapted from the Jury Charge in *United States v. Adelekan*, No. 19 Cr. 291 (LAP) (S.D.N.Y. Oct. 26, 2021) (Tr. 886); *see also* Sand, *Modern Federal Jury Instructions*, Instr. 50A-26.]

a. First Element: Monetary Transaction

The first element is that the Defendant knowingly agreed to engage in a monetary transaction in or affecting interstate commerce.

The term "monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument by, through, or to a financial institution. The term "interstate or foreign commerce" means commerce between any combination of states, territories or possessions of the United States, or between the United States and a foreign country.

You must find that the transaction affected interstate commerce in some way, **however minimal**. The effect on interstate commerce can be established in several ways, including but

30

not limited to that the source of the funds used in the transaction affected interstate commerce, or that the transaction itself involved an interstate transfer of funds.

Moreover, you must find that the Defendant knowingly engaged, or attempted to engage, in the monetary transaction. I remind you that "knowingly" means to act voluntarily and deliberately, rather than mistakenly or inadvertently. That is, the act of the Defendant must have been the product of his conscious objective rather than the product of force, mistake, accident, mere negligence, or some other innocent reason.

> [Adapted from the jury charges of the Honorable Loretta A. Preska in *United States v. Adelekan*, 19 Cr. 291 (LAP) (Oct. 26, 2021) and from Sand, *Modern Federal Jury Instructions*, Instr. 50A-27. There is no need to treat an effect on interstate commerce as a separate element because proof of an effect on interstate commerce is required by the definition of the term "monetary transaction." *See* Sand, *Modern Federal Jury Instructions*, Instr. 50A-26, Cmt.]

b. <u>Second Element: Criminally Derived Property</u>

The second element of this offense is that the monetary transaction involved criminally derived property having a value in excess of $10,000.

The term "criminally derived property" means any property constituting, or derived from, proceeds obtained from a criminal offense. The term "proceeds" means any property derived from, obtained, or retained, directly or indirectly, through a "specified unlawful activity." The statute defines which crimes can be a "specified unlawful activity." I instruct you that both wire fraud and securities fraud are specified unlawful activities. Specifically, the indictment alleges that the property at issue was derived from the wire fraud and securities fraud alleged in Counts Five and Six of the indictment, which concern the GTV Private Placement.

31

The Government is not required to prove that all of the property involved in the transaction was criminally derived property. However, the Government must prove that more than $10,000 of the property involved was criminally derived property.

> [Adapted from Sand, *Modern Federal Jury Instructions*, Instrs. 50A-28, 50A-30; adapted from the Jury Charge in *United States v. Adelekan*, No. 19 Cr. 291 (LAP) (S.D.N.Y. Oct. 26, 2021) (Tr. 887-88), and the Jury Charge of the Honorable Paul Engelmayer in *United States v. Gillier*, 11 Cr. 409 (S.D.N.Y.).]

c.  Third Element: Knowledge

The third element of the offense is that the Defendant engaged in the transaction knowing that the transaction involved proceeds of unlawful activity. However, the Government is not required to prove that the Defendant knew the <u>particular</u> offense from which the criminally derived property was derived.

> [Adapted from the jury charges of the Honorable J. Paul Oetken in *United States v. Mizrahi*, No. 22 Cr. 650; the Jury Charge in *United States v. Adelekan*, No. 19 Cr. 291 (LAP) (S.D.N.Y. Oct. 26, 2021) (Tr. 888-89); and Sand, *Modern Federal Jury Instructions*, Instr. 50A-29.]

d.  Fourth Element: In the United States

The fourth element of this offense is that the transaction took place in the United States.

> [Adapted from the Jury Charge in *United States v. Adelekan*, No. 19 Cr. 291 (LAP) (S.D.N.Y. Oct. 26, 2021) (Tr. 889); *see also* 3 *Modern Federal Jury Instructions-Criminal*, Instr. 50A-31.]

**19.  Other Theories of Guilt**

With respect to all of the substantive counts, that is, Counts Five through Twelve, the first theory on which the Defendant can be guilty of the substantive offenses is by committing them directly. I just provided those instructions to you. **There are also two theories on which the**

32

**Defendant can be guilty of the substantive offenses <u>indirectly</u>**—(1) by willfully causing another to commit the offense, or (2) by aiding and abetting the commission of the offense.

    a.  <u>Willful Causation (if applicable)</u>

First, I will talk about willful causation. Under Title 18, United States Code, Section 2, a defendant commits an offense if he possessed the requisite criminal intent and willfully caused someone else to engage in the actions necessary to commit the crimes.

Now, what does the term "willfully caused" mean? It does not mean that the Defendant himself needs to have physically committed the crimes or supervised or participated in the actual criminal conduct charged in the indictment.

The meaning of the term "willfully caused" can be found in the answers to the following questions:

*First*, did the Defendant have the mental state necessary to commit the substantive offense?

And *second*, did the Defendant intentionally cause **another person** to engage in the commission of the substantive offense?

If you are persuaded beyond a reasonable doubt that the answer to both of these questions is "yes," then the Defendant is guilty of the crime charged just as if he himself had actually committed it.

For example, if a defendant intentionally causes someone else to take a step in furtherance of a scheme to defraud, such as by transmitting money, that defendant is guilty if the Government proves beyond a reasonable doubt that he acted knowingly, willfully, and with the specific intent to defraud and satisfies the other elements of the substantive fraud count. **This is**

33

**so even if the individual that was caused to make the false statement, or undertake a step in furtherance of the scheme, had no criminal intent**.

> [Adapted from the charges of the Honorable Lewis A. Kaplan in *United States v. Samuel Bankman-Fried*, No. 22 Cr. 673 (Nov. 2, 2023); and the Honorable Lewis A. Kaplan in *United States v. Gatto*, No. 17 Cr. 686 (Oct. 1, 2018).]

   b.  Aiding and Abetting (if applicable)

Second, aiding and abetting. It is unlawful for a person to aid, abet, counsel, command, induce, or procure someone else to commit a criminal offense. A person who does that is just as guilty of the offense as someone who actually commits the offense.

In order to convict the Defendant as an aider and abettor, the Government must prove two elements beyond a reasonable doubt:

*First*, the Government must prove that a person other than the Defendant committed the crime charged; and

*Second*, the Government must prove that the Defendant willfully and knowingly associated himself in some way with the crime and that he willfully and knowingly engaged in some affirmative conduct or some overt act for the specific purpose of bringing about the crime.

The mere presence of the Defendant in a place where a crime is being committed, even with knowledge that a crime is being committed, is not enough to make him an aider and abettor. Nor is the Defendant's acquiescence in criminal conduct by others, even with guilty knowledge, enough to establish aiding and abetting. An aider and abettor must know that a crime is being committed and act in a way that is intended to bring about the success of the criminal venture.

> [Adapted from Sand, *Modern Federal Jury Instructions*, Instr. 11-2, and jury charges given by the Honorable Sidney H. Stein in *United States v. Duncan*, 18 Cr. 289 (SHS) (S.D.N.Y. May 6, 2019); and

34

the Honorable Colleen McMahon in *United States v. Cherico*, 08 Cr.
786 (CM) (S.D.N.Y. October 31, 2011).]

### III. CONSPIRACY COUNTS

**20.    Elements of Count One, Two, Three, and Four: Conspiracy**

Now that I have explained the indictment's substantive counts, I am going to explain its
conspiracy counts. Here, there are four conspiracy offenses charged. They are: in Count One, a
conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act, commonly referred
to as the "RICO Act"; in Count Two, a conspiracy to commit wire fraud and bank fraud; in Count
Three, a conspiracy to commit money laundering; and in Count Four, a conspiracy to commit
securities fraud. Because Counts One through Four charge conspiracy offenses, let me explain to
you what a conspiracy is. These instructions about conspiracy apply to all four counts.

A conspiracy is a kind of criminal partnership—a combination or agreement of two or
more persons to join together to accomplish some unlawful purpose. The crime of conspiracy to
violate a federal law **is an independent offense. It is separate and distinct from** the violation
of any specific federal laws, which I have referred to as "substantive crimes."

**If a conspiracy exists, even if it should fail in its purpose, it is still punishable as a
crime.** Indeed, you may find the Defendant guilty of conspiracy to commit an offense even if
the substantive crime which was the object of the conspiracy was not actually committed.
Congress has deemed it appropriate to make conspiracy, standing alone, a separate crime even if
the conspiracy is not successful.

In order for the Defendant to be guilty of conspiracy, the Government must prove
beyond a reasonable doubt the following two elements:

*First*, that the charged conspiracy existed; and

35

*Second*, that at some point during the conspiracy's existence, the Defendant knowingly and willfully joined the conspiracy.

Now let us separately consider the two elements.

    a.  <u>First Element: Existence of a Conspiracy</u>

Starting with the first element, what is a conspiracy? A conspiracy is an agreement or an understanding between two or more people to accomplish by concerted action one or more unlawful purposes. For example, the unlawful purpose alleged to be the object of the conspiracy charged in Count Two is to commit wire fraud, and the unlawful purpose alleged to be the object of the conspiracy charged in Count Three is to commit money laundering. I will give you instructions on each of these unlawful purposes—or objects—of the conspiracies later on.

The essence of the crime of conspiracy is the unlawful agreement of two or more people to commit a crime. The ultimate success of the conspiracy, or the actual commission of the crime that is the object of the conspiracy, is not required for a conspiracy to have existed. Rather, the Government is required to prove beyond a reasonable doubt only that two or more people came to an agreement to accomplish the unlawful object.

To prove the existence of a conspiracy, the Government **is not required to show that two or more people sat around a table and entered into an express or formal agreement, orally or in writing, stating that they had formed a conspiracy to commit a crime. Similarly, you need not find that the alleged co-conspirators stated (in words or writing) what the scheme was, its object or purpose, every precise detail of the scheme, or the means by which its object or purpose was to be accomplished**. What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people, to cooperate with each other to accomplish an unlawful act.

36

It is rare that a conspiracy can be proven by direct evidence of an explicit agreement. Rather, in determining whether there has been an unlawful agreement as alleged in the indictment, you may consider the actions and conduct of all the alleged co-conspirators that were meant to carry out the apparent criminal purpose. The old adage, "actions speak louder than words," applies here. Often, the only evidence that is available with respect to the existence of a conspiracy is that of disconnected acts and conduct on the part of the individual co-conspirators. **When taken all together and considered as a whole, however, these acts and conduct may warrant the inference that a conspiracy existed just as conclusively as more direct proof, such as evidence of an express agreement**.

Further, although the indictment alleges that the conspiracies began in or around 2018, and continued up to in or around March 2023, it is not essential that the Government prove that the conspiracy in question started and ended on those specific dates or that it existed throughout that entire period. Rather, it is sufficient to satisfy the first element if you find that the charged conspiracy was formed and that it **existed for any time within the charged period**.

b. Second Element: Participation

If you conclude that the Government has proven beyond a reasonable doubt that a charged conspiracy existed, then you must consider the second element: whether the Defendant participated in the conspiracy knowingly and willfully, with knowledge of its unlawful purpose or purposes, and in furtherance of its unlawful object or objects.

To act "knowingly" means to act voluntarily and deliberately rather than mistakenly or inadvertently. To act "willfully" means to act voluntarily and with a wrongful purpose. An act is done knowingly and willfully if it is done purposefully and deliberately with an intent to do something the law forbids. In other words, the Defendant's act must have been the product of

37

the Defendant's conscious determination rather than the product of a mistake, accident, mere negligence, or some other innocent reason.

**It is not necessary for the Government to show that the Defendant was fully informed as to all the details of the conspiracy in order for you to infer knowledge on his part**. Nor does the Defendant need to know the full extent of the conspiracy or all of its participants. **Indeed, it is not necessary that the Defendant knew more than one other member of the conspiracy**. It is also not necessary that the Defendant received any monetary benefit from participating in the conspiracy. It is enough if he participated in the conspiracy knowingly and willfully, as I have defined those terms. Although proof of a financial interest in the outcome of the scheme is not essential, if you find that the Defendant had such an interest, that is a factor you may properly consider in determining whether he was a member of the conspiracy.  If you find that the Defendant did not have a financial interest in the outcome of the scheme, that is also a factor you may properly consider in determining whether or not the Defendant was a member of the conspiracy.  Ultimately, the Defendant's participation in the conspiracy must be established by independent evidence of his own acts or statements.[18]

If you determine that the Defendant became a member of the conspiracy, the duration and extent of the Defendant's participation has no bearing on the issue of the Defendant's guilt. Some co-conspirators play major roles, while others play minor roles. **An equal role is not what the law requires. In fact, even a single act** may be sufficient to draw the Defendant within the ambit of the conspiracy if it meets the elements I have described. The Defendant also need not have joined the conspiracy at the outset. The Defendant may have joined it at any time—at the beginning, in the middle, or at the end—and the Defendant will still be held responsible for all that was done before he joined, as well as all that was done during the conspiracy's existence

---

[18] Sand Instr. § 19.6.

when the Defendant was a member. However, I want to caution you that mere association with a member of a conspiracy does not make a person a member of the conspiracy, even when that association is coupled with knowledge that the second person is

committing a crime. Mere presence at the scene of a crime, even coupled with knowledge that a crime is taking place, is not sufficient to support a conviction. In other words, knowledge without participation is not sufficient to satisfy the second element. What is necessary is that the Defendant participated in the conspiracy with knowledge of its unlawful purpose and with the intent to aid in the accomplishment of its unlawful object or objects.

In sum, if you find that the Defendant, with an understanding of the unlawful nature of the charged conspiracy, intentionally engaged, advised, or assisted in the conspiracy for the purpose of furthering the illegal undertaking, you should conclude that the Defendant became a knowing and willing participant in the unlawful agreement—that is to say, a conspirator.

**21.    Liability for Acts and Declarations of Co-Conspirators (if applicable)**

You will recall that I have admitted into evidence against the Defendant the acts and statements of others because these acts and statements were committed or made by people who, the Government alleges, were ~~also~~ co-conspirators of the Defendant.

The reason for allowing this evidence to be received against the Defendant has to do, in part, with the nature of the crime of conspiracy. As I have said, a conspiracy is often referred to as a partnership in crime: as in other types of partnerships, **when people enter into a conspiracy, each and every member becomes an agent for the other conspirators in carrying out the conspiracy**.

Therefore, the reasonably foreseeable declarations, statements, and omissions of any member of the conspiracy made in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be the acts of all of the members, and all of the members are responsible for such acts, declarations, statements, and omissions.

39

**If you find, beyond a reasonable doubt, that the Defendant was a member of a conspiracy charged in the indictment, then any acts done or statements made in furtherance of the conspiracy by a person also found by you to have been a member of the same conspiracy may be considered against the Defendant. This is so even if such acts were committed or such statements were made in the Defendant's absence, and/or without his knowledge.**

22.    **Count Two: Conspiracy to Commit Wire Fraud and Bank Fraud**

Because it will be easier to explain, I am going to go through the conspiracy counts out of order and start with Count Two, which charges the Defendant with conspiracy to commit wire fraud and bank fraud.

In order to prove the Defendant guilty of Count Two, the Government must establish the following two elements beyond a reasonable doubt:

*First*, that the conspiracy charged in Count Two of the indictment existed; that is, that there was an agreement or understanding between two or more people to commit wire fraud and bank fraud, and

*Second*, that the Defendant knowingly and willfully became a member of the conspiracy.

You should follow the instructions that I have previously provided to you about conspiracies in general (see pages XXX). However, the conspiracy charged in Count Two has a different object or criminal goal than the other conspiracy counts. Remember, the objects of a conspiracy are the illegal goals that the conspirators agree on. The objects of Count Two's conspiracy are wire fraud and bank fraud.

40

It is not necessary for the Government to prove that the Defendant conspired to commit both objects of the conspiracy. <u>You must, however, be unanimous as to the object or objects of the conspiracy, if any.</u>

[Adapted from the jury charges given by the Honorable Valerie E. Caproni in *United States v. Christopher Campos*, 16 Cr. 396 (VEC) (June 22, 2017) and the Honorable John F. Keenan in *United States v. Rasheen Jordan*, 03 CR 399 (JFK) (2004), and from Sand, *Modern Federal Jury Instructions*, Instr. 19-3; *see also United States v. Svoboda*, 347 F.3d 471, 476-77 (2d Cir. 2003) (discussing three elements of conspiracy), *US v. Khalupsky*, 5 F.4th 279, 297 (2d Cir. 2021)].

    a.  <u>Objects of the Conspiracy</u>

I will now describe these two illegal objects in greater detail.

    *i.*  *Wire Fraud*

I have already described the elements of wire fraud during my discussion of Counts Five, Seven, Nine, and Eleven, and you should apply that description here to the wire fraud object of the conspiracy charged in Count Two. In other words, to find the Defendant guilty of conspiracy to commit wire fraud, you must find that the unlawful purpose of the conspiracy was to commit wire fraud as previously defined (see pages XXX).

    *ii.*  *Bank Fraud*

I will now describe the elements of bank fraud. Bank fraud has the following three elements.

*First*, that there was <u>either</u> (1) a scheme to defraud a bank <u>or</u> (2) a scheme to obtain money owned by or under the custody or control of a bank by means of false or fraudulent pretenses, representations, or promises;

*Second*, that the Defendant executed or attempted to execute the scheme with <u>intent</u> to <u>either</u> (1) defraud the bank <u>or</u> (2) to obtain money or funds owned by or under the custody or control of a bank; and

41

*Third*, that at the time of the execution of the scheme, the bank involved had its deposits federally insured.

Now, I will explain each of the three elements of bank fraud in more detail.

The first element of bank fraud is that there was <u>either</u> a scheme to defraud a bank or a scheme to obtain money owned by or under the custody or control of a bank, by means of false or fraudulent pretenses, representations, or promises. This element requires proof of the existence of only one of these theories. That is, <u>either</u> that there existed a scheme to defraud a bank <u>or</u> a scheme to obtain property under the custody or control of a bank by means of fraudulent pretenses, representations, or promises. <u>The jury must be unanimous on which theory was proved beyond a reasonable doubt.</u>

In order to prove the first theory of bank fraud—that there was a scheme to defraud a bank—the Government must prove beyond a reasonable doubt that there was a pattern or course of conduct concerning a material matter designed to deceive a federally insured bank into releasing money or property.

I have already instructed you on the definition of "scheme to defraud" and you should apply those instructions here (see pages XXX). As with wire fraud, which I instructed you on earlier, a fraudulent representation must relate to a material fact or matter. This means that if you find a particular statement of fact to have been false, you must determine whether that statement was one that a reasonable person might have considered important in making his or her decision. The same principle applies to fraudulent half-truths or omissions of material facts.

In order to prove the second theory of bank fraud, the Government must prove beyond a reasonable doubt that there was a scheme to obtain money or property owned by or under the custody or control of a bank or credit union by means of false and fraudulent pretenses,

42

representations or promises. It is not necessary that the false or fraudulent pretenses, representations, or promises were made directly to the bank itself. It is sufficient if they were made to any person, so long as the false or fraudulent pretenses, representations or promises were the mechanism naturally inducing the bank (or custodian of bank property) to part with money in its control.

In considering this element of bank fraud, **it is unimportant whether a bank actually relied on a misrepresentation**. It is sufficient if the misrepresentation is one that is merely capable of influencing the bank's decision. Further, it is not necessary for the Government to prove that the financial institutions actually lost money or were deprived of property as a result of the scheme. **It also does not matter whether any of the banks involved might have discovered the fraud had the bank probed further. If you find that a scheme existed, it is irrelevant whether you believe that any of the banks involved were careless, gullible, or even negligent**.

The second element of bank fraud is about the Defendant's intent. There are two ways that this element can be met:

The first way is if the Defendant executed, attempted to execute, or participated in the scheme or artifice knowingly, willfully, and with the intent to defraud a bank or credit union. I've already provided you with the definitions of knowingly and willfully and you should apply those same definitions here (see pages XXX). To act with a "specific intent to defraud" requires that the Defendant intended, at least in part, to deceive one or more banks or credit unions. The Defendant need not intend to cause the banks or credit unions any financial loss.

The second way this element can be met is if the Defendant executed or attempted to execute the scheme knowingly and willfully and with the intent to obtain money or funds owned

43

or under the custody or control of the bank. **It is not necessary that the Defendant intended to defraud a bank. It is also not necessary that the Defendant intended to cause harm to the issuing bank or credit union (such as by causing them to lose money), or to anyone else.** This element requires that the Defendant engaged in, or participated in, the scheme with an understanding of its fraudulent or deceptive character and with an intention to help it succeed. **It is not required that the Defendant participated in or had knowledge of all the operations of the scheme.**

      The third element of bank fraud is that at least one of the financial institutions in question was federally insured at the time of the scheme. This simply means that the financial institution was a bank insured by the Federal Deposit Insurance Corporation (or FDIC) during the time frame alleged in the indictment. The Government need not show that the Defendant knew the identity of the particular financial institution or that the Defendant knew that the financial institution was federally insured to satisfy this third element.

> [Adapted from Sand, *Modern Federal Jury Instructions*, Instr. 4410, 44-11, 44-12, and the charges of the Hon. Jed S. Rakoff in *United States v. Weigand*, 29 Cr. 188 (Mar. 1, 2021), the Hon. Paul A. Engelmayer in *United States v. Teman*, 19 Cr. 696 (Jan. 21, 2020), and the Hon. P. Kevin Castel in *United States v. Stasiv*, 18 Cr. 259 (May 14, 2019). *See Neder v. United States*, 527 U.S. 1, 25 (1999) (holding that federal fraud statutes do not incorporate a reliance element); *United States v. Shapiro*, 29 F. App'x 33, 35 (2d Cir. 2002) ("[A]ctual reliance is not an element of bank fraud."); *United States v. Rodriguez*, 140 F.3d 163, 167 (2d Cir. 1998) ("A misrepresentation is material if it's capable of influencing the bank's actions."); *Loughrin v. United States*, 573 U.S. 351, 363 (2014) ("Section 1344(2)'s 'by means of' language is satisfied when, as here, the defendant's false statement is the mechanism naturally inducing a bank (or custodian of bank property) to part with money in its control.").]

23.    **Count Three: Money Laundering Conspiracy**

Count Three charges the Defendant with conspiracy to commit money laundering. In order to prove the Defendant guilty of Count Three, the Government must establish the following two elements beyond a reasonable doubt:

*First*, that the conspiracy charged in Count Three of the indictment existed; that is, that there was an agreement or understanding between two or more people to commit money laundering, and

*Second*, that the Defendant knowingly and willfully became a member of the conspiracy.

You should follow the instructions that I have previously provided to you about conspiracies in general (see pages XXX). However, the conspiracy charged in Count Three has a different object than the conspiracy charged in Count Two or the other conspiracy counts. The object of Count Three's conspiracy is money laundering.

The primary federal money laundering statute can be violated in several ways. Three such violations are alleged to be the objects of the money laundering conspiracy charged in Count Three: (1) domestic concealment money laundering, (2) international concealment money laundering, and (3) international promotion money laundering. Each of these money laundering violations has unique elements, which I will now explain.

> Adapted from the jury charge given by the Honorable Loretta A.
> Preska in *United States v. Adelekan*, No. 19 Cr. 291 (LAP)
> (S.D.N.Y. Oct. 26, 2021).

a. <u>Object One: Domestic Concealment</u>

*First*, it is a violation of the money laundering statute to engage in **domestic concealment**—that is, to participate in a domestic financial transaction that involves the proceeds of a specified unlawful activity, knowing that the transaction was designed to conceal

45

or disguise the nature, location, source, ownership or control of the proceeds of specified unlawful activity. This type of money laundering is known as "domestic concealment" money laundering.

There are three elements to **domestic concealment money laundering**:

*First*, that the Defendant conducted or attempted to conduct a financial transaction involving property constituting the proceeds of specified unlawful activity, specifically, wire fraud and securities fraud;

*Second*, that the Defendant knew that the property involved in the financial transaction was the proceeds of some form of unlawful activity; and

*Third*, that the Defendant knew that the transaction was designed in whole or in part either to conceal or disguise the nature, location, source, ownership or control of the proceeds of specified unlawful activity.

I will now explain each element of domestic concealment money laundering in greater detail.

      i.      *First Element: Financial Transaction Involving Proceeds of Specified Unlawful Activity*

The first element of domestic concealment money laundering is that the Defendant conducted a financial transaction involving property constituting the proceeds of specified unlawful activity, specifically, wire fraud and securities fraud.

The term "conducts" includes initiating, concluding, or participating in initiating or concluding a transaction.

The term "financial transaction" means (1) a transaction involving a financial institution that is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree, or (2) a transaction that in any way or degree affects interstate or foreign commerce and

46

involves the movement of funds by wire or other means, or involves one or more monetary

instruments. I instruct you that a federally insured bank constitutes a "financial institution."

A "transaction involving a financial institution" includes a deposit, withdrawal, transfer

between accounts, exchange of currency, loan, extension of credit, purchase or sale of any stock,

bond, certificate of deposit, or other monetary instrument, use of a safe deposit box, or any other

payment, transfer, or delivery by, through, or to a financial institution by whatever means.

The term "interstate or foreign commerce" means commerce between any combination of

states, territories, or possessions of the United States, or between the United States and a foreign

country. In determining whether someone is engaged in, or whether his activities affect, interstate

or foreign commerce, the involvement in interstate or foreign commerce can be minimal. Any

involvement at all will satisfy this element.

The term "monetary instrument" includes, among other things, coin or currency of the

United States or any other country, personal checks, traveler's checks, cashier's checks, bank

checks, money orders, and investment securities or negotiable instruments in bearer form or

otherwise in such form that title thereto passes upon delivery.

The term "proceeds" means any property derived, directly or indirectly, from some form

of unlawful activity, including the gross receipts of such activity. Proceeds can be any kind of

property, not just money.

I have already described the meaning of "specified unlawful activity." In this case, the

Government has alleged that the funds in question were the proceeds of wire fraud and securities

fraud—that is, the conduct alleged in Counts Five through Eleven that I have already described

to you. I instruct you that as a matter of law, wire fraud and securities fraud fall within the

definition of "specified unlawful activity."

47

However, it is for you to determine whether the funds here were in fact the proceeds of wire fraud and securities fraud. The Government does not need to prove **both** of these specified unlawful activities. It is sufficient if you find that the Government has proven beyond a reasonable doubt that the financial transaction involved the proceeds of wire fraud **or** the proceeds of securities fraud. But, you must agree unanimously as to which of these specified unlawful activities the Government has proven, and you must agree unanimously that a financial transaction involved the proceeds of that specified unlawful activity.

### ii.  Second Element: Knowledge

The second element of domestic concealment money laundering is that the Defendant knew that the property involved in the financial transaction was the proceeds of some form of unlawful activity, specifically activity that constitutes a felony under state, federal, or foreign law. Thus, to satisfy this element, the Government does not have to prove that the Defendant specifically knew that the property involved in the transaction represented the proceeds of wire fraud, securities fraud, or any other specific offense. The Government only has to prove that the Defendant knew it represented the proceeds of some illegal activity that was a felony. I instruct you as a matter of law that wire fraud and securities fraud are felonies under federal law.

### iii.  Third Element: Designed to Conceal or Disguise

The third element of domestic concealment money laundering the purpose of the transaction. Specifically, the Government must prove beyond a reasonable doubt that the Defendant acted with knowledge that the transaction was designed to conceal or disguise the proceeds' nature, location, source, ownership, or control. Thus, if the Defendant knew that a transaction was designed, at least in part, either to conceal or disguise the true nature, location, source, ownership or control of the property in question, this element is satisfied. However, if the

48

Defendant knew of the transaction, but did not know that it was designed, at least in part, either to conceal or disguise, this element has not been satisfied.

> [Adapted from Sand, *Modern Federal Jury Instructions*, Instrs. 50A-26, Instr. 50A-7, 50A-8, 50A-9; *United States* v. *Henry*, 325 F.3d 93, 103 (2d Cir. 2003).]

  b. <u>Object Two: International Concealment</u>

*Second*, it is a violation of the money laundering statute to engage in **international concealment**—that is, to participate in a **foreign** financial transaction that involves the proceeds of a specified unlawful activity, knowing that the transaction was designed to conceal or disguise the nature, location, source, ownership or control of the proceeds of specified unlawful activity.

There are three elements to **international concealment money laundering**:

*First*, that the Defendant knowingly transported, transmitted, or transferred a monetary instrument or funds from a place in the United States to or through a place outside the United States *or* to a place in the United States from or through a place outside the United States;

*Second*, that the Defendant did so with knowledge that the monetary instrument or funds involved represent the proceeds of some form of unlawful activity; and

*Third*, that the Defendant knew that the transportation, transmission, or transfer was designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity.

The second and third elements are the same as the second and third elements for **domestic** concealment money laundering, and you should follow the instructions I have previously provided as to those elements (see pages XXX). I will now describe the first element in greater detail.

The first element that the Government must prove beyond a reasonable doubt is that the Defendant transported, transmitted, or transferred, or attempted to transport, transmit, or transfer a monetary instrument or funds (1) from a place in the United States to or through a place outside the United States, or (2) to a place in the United States from or through a place outside the United States.

I have previously defined the term "monetary instrument," and you should use the same definition here (see pages XXX). The term "funds" refers to money or negotiable paper that can be converted into currency.

"Transport," "transmit," and "transfer" are not words that require a definition; you should give them their ordinary, everyday meaning. The Government need not prove that the Defendant **physically** carried funds or monetary instruments in order to prove that he is responsible for transferring, transporting, or transmitting. All that is required is proof that the Defendant **caused** the funds or monetary instrument to be transported, transferred, or transmitted by another person or entity.

> [Adapted from Sand *et al.*, *Modern Federal Jury Instructions*, Instr. 50A-16 – 19; *Cuellar v. United States*, 553 U.S. 550, 128 S. Ct. 1994, 170 L. Ed. 2d 942 (2008).]

    c.  <u>Object Three: International Promotion</u>

*Third*, it is a violation of the money laundering statute to engage in **international promotion**—that is, to participate in a foreign financial transaction with the intent to promote the carrying on of specified unlawful activity.

There are three elements to **international promotion money laundering**:

50

*First*, that the Defendant conducted (or attempted to conduct) a financial transaction involving property constituting the proceeds of specified unlawful activity, specifically, wire fraud and securities fraud;

*Second*, that the Defendant knew that the property involved in the financial transaction was the proceeds of some form of unlawful activity; and

*Third*, that the Defendant acted with the intent to promote the carrying on of specified unlawful activity.

I have already described the first and second elements to you, in connection with **domestic** concealment money laundering, and you should apply those same instructions here (see pages XXX).

The third element that the Government must prove beyond a reasonable doubt is that the Defendant acted with intent to promote the carrying on of specified unlawful activity, specifically, wire fraud and securities fraud.

To act intentionally means to act willfully, not by mistake or accident, with the deliberate purpose of promoting, facilitating, or assisting the carrying on of wire fraud and securities fraud. If you find that the Defendant acted with the intention or deliberate purpose of promoting, facilitating, or assisting in the carrying on of wire fraud and securities fraud, then the third element is satisfied.

[Adapted from Sand *et al.*, *Modern Federal Jury Instructions*, Instr. 50A-1-5.]

24.    **Elements of Count Four: Securities Fraud Conspiracy**

Count Four charges the Defendant with conspiracy to commit **securities fraud**. The indictment alleges that the Defendant conspired to commit securities fraud by agreeing "to fraudulently induce investors to participate in the GTV Private Placement, the Farm Loan

51

Program, and G|CLUBS by providing materially false and misleading information and representations in connection with purported shares of GTV common stock and purported companies affiliated with GTV."

In order to prove the Defendant guilty of Count Four, the Government must establish the following three elements beyond a reasonable doubt:

*First*, that the conspiracy charged in Count Four of the indictment existed; that is, that there was an agreement or understanding between two or more people to commit the crime of securities fraud;

*Second*, that the Defendant knowingly and willfully became a member of the conspiracy; and

*Third*, that one of the members of the conspiracy—**it does not have to be the Defendant**—knowingly committed at least one overt act for the purpose of furthering some object of the conspiracy.

a.  <u>First & Second Elements: Existence of Conspiracy & Participation</u>

The first two elements—that the conspiracy existed, and that the Defendant knowingly joined it—are the same as the first two elements for the wire fraud and bank fraud conspiracy alleged in Count Two and the money laundering conspiracy alleged in Count Three (see pages XXX). Accordingly, you should follow the instructions I have previously provided to you about conspiracies in general.

The conspiracy charged in Count Four has a different object or criminal goal from the conspiracies charged in Count Two or Three. The object of Count Four's conspiracy is to commit securities fraud. I have already described the elements of securities fraud and you should use that description here. In other words, to find the Defendant guilty of conspiracy to

52

commit securities fraud, you must find that the unlawful purpose of the conspiracy was to commit securities fraud as I previously explained (see pages XXX).

I will explain the third element—requiring an overt act—next.

> [Adapted from charge of the Hon. Jesse M. Furman in *United States v. Dambelly*, 16 Cr. 2 (S.D.N.Y.) and Sand, *Modern Federal Jury Instructions*, Instr. 19-3.]

   b. <u>Third Element: Overt Act</u>

The third element that the Government must prove beyond a reasonable doubt is that at least one overt act was committed in furtherance of the conspiracy by at least one of the co-conspirators—not necessarily the Defendant.

**An overt act is any act that is done to further an object of the conspiracy.** An overt act may be a criminal act or the crime that is the object of the conspiracy, but it need not be. It may even be a seemingly innocent act so long as it is a step in carrying out the conspiratorial scheme.

In simple language, the overt act element is a requirement that the agreement went beyond the mere discussion stage. The overt act requirement means that you must find that one of the co-conspirators took **some** action during the life of the conspiracy to further the conspiracy.

In order for the Government to satisfy the overt act requirement, it is not necessary for the Government to prove the overt acts alleged in the indictment. That is, you might find that overt acts were committed that were not alleged at all in the indictment. It is sufficient for the Government to show that the Defendant, or one of his alleged co-conspirators, knowingly committed **any** overt act in furtherance of the conspiracy during the life of the conspiracy.

53

You need not reach unanimous agreement on which particular overt act was committed in furtherance of the conspiracy; you just need to all agree that at least one overt act was so committed.

> [Adapted from charge of the Hon. Jesse M. Furman in *United States v. Dambelly*, 16 Cr. 2 (S.D.N.Y.) and Sand, *Modern Federal Jury Instructions*, Instrs. 19-7, 19-8.]

**25.    Elements of Count One: Racketeering Conspiracy**

Finally, I will turn to the most complicated charge in the indictment. Count One charges the Defendant with conspiring to violate the federal racketeering statute, which is Section 1962(c) of Title 18 of the United States Code. The statute is commonly referred to as "RICO," which stands for the "Racketeer Influenced and Corrupt Organizations Act."

Let me first note that the word "racketeering" may have implications in ordinary English. Do not infer anything from it. The word, as used in this statute, is a purely technical term that is defined specifically for this statute.

The RICO statute makes it a crime for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

Count One of the indictment charges the Defendant with participating in a racketeering conspiracy from in or about 2018 through in or about March 2023. In order to meet its burden of proving that the Defendant is guilty of the racketeering conspiracy charged in Count One, the Government must establish beyond a reasonable doubt each of the following elements:

54

*First*, that at or about the time charged in Count One, the conspiracy charged in the indictment existed, that is, that an agreement or understanding between two or more persons existed to conduct, or participate in the conduct of, a racketeering enterprise;

*Second*, that the racketeering enterprise or its activities would have affected, or in fact affected, interstate or foreign commerce;

*Third*, that the Defendant knowingly and intentionally joined the conspiracy; and

*Fourth*, that the Defendant knowingly and intentionally agreed with at least one other person that either he or a co-conspirator would participate, either directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as described in the indictment; that is, that either the Defendant or a co-conspirator would commit at least two acts of racketeering activity.

> [Adapted from the charge of the Honorable Edgardo Ramos in
> *United States v. Jones*, 21 Cr. 505 (S.D.N.Y. Oct. 12, 2023); the charge
> of the Honorable Sidney H. Stein in *United States v. Pabon*, 18 Cr. 319
> (S.D.N.Y. May 10, 2022); the charge of the Honorable Valerie A.
> Caproni in *United States v. Cortorreal*, No. 17 Cr. 438 (S.D.N.Y. Apr.
> 25, 2023); and the charge of the Honorable Paul A. Engelmayer in
> *United States v. Mack & Ellison*, 18 Cr. 834 (S.D.N.Y. Oct. 1, 2019).]

a. <u>First Element: Racketeering Enterprise</u>

The first element the Government must prove beyond a reasonable doubt is the existence of the conspiracy alleged in Count One of the indictment, that is, the agreement to conduct or participate in the conduct of a racketeering enterprise.

Before I define these technical terms, I remind you that it is not necessary that a conspiracy actually succeed in its purpose for you to conclude that it existed. Because the agreement to commit a racketeering offense is the essence of Count One, the Government need

55

only prove that if the conspiracy achieved its objective as contemplated, the enterprise would be established and that its members would participate in conducting the affairs of the enterprise through a pattern of racketeering activity. ~~Of course, proof that the objective of the conspiracy was accomplished,~~ **if you find it was,** ~~may be the most persuasive evidence of the existence of the conspiracy.~~

The "object" of a conspiracy is the illegal purpose the conspirators agree or hope to achieve. The object of the conspiracy charged in Count One is to violate the RICO statute, in other words, to conduct or participate in the conduct of the affairs of an enterprise through a pattern of racketeering activity.

What is an enterprise? Under the racketeering statute, an enterprise includes any legal entity such as a partnership, corporation, or association, or a group of individuals who are associated in fact, although not a legal entity. The enterprise does not need to have a particular name, or for that matter, have any name at all. Nor need it be registered or licensed as an enterprise. It does not have to be a commonly recognized legal entity, such as a corporation, a trade union, a partnership, or the like. But an enterprise could be a legal entity or a group of legal entities.

An enterprise may be a group of people informally associated together for a common purpose of engaging in a course of conduct. This group may be organized for a legitimate and lawful purpose, or it may be organized for an unlawful purpose. In addition to having a common purpose, **this group of people must have a core of personnel who function as a continuing unit**. Furthermore, the enterprise would continue to exist (or did continue to exist) in substantially similar form through the period charged, in this case from 2018 through March 2023. This does not mean that the membership must remain exactly identical, but the enterprise

56

must have a recognizable core that continues through a substantial period during the time frame charged in the indictment.

Count One of the indictment defines the charged conspiracy as an agreement to participate in the conduct of an organization referred to by the Government as the "G Enterprise." The term "G Enterprise" is simply a form of reference used by the Government in the indictment to describe the group of businesses and individuals who participated in the alleged racketeering conspiracy.

The Government is not required to prove each and every allegation about the G Enterprise. If you find that there was an agreement to conduct or participate in the conduct of a group of people characterized by (1) a common purpose to conduct a racketeering enterprise, (2) an ongoing formal or informal organization, and (3) personnel who function as a continuing unit, then you may find that a conspiracy to violate the RICO statute existed.

> [Adapted from the charge of the Honorable Edgardo Ramos in *United States v. Jones*, 21 Cr. 505 (S.D.N.Y. Oct. 12, 2023); the charge of the Honorable Sidney H. Stein in *United States v. Pabon*, 18 Cr. 319 (S.D.N.Y. May 10, 2022); the charge of the Honorable Valerie A. Caproni in *United States v. Cortorreal*, No. 17 Cr. 438 (S.D.N.Y. Apr. 25, 2023); and the charge of the Honorable Paul A. Engelmayer in *United States v. Mack & Ellison*, 18 Cr. 834 (S.D.N.Y. Oct. 1, 2019).]

b. <u>Second Element: Interstate or Foreign Commerce</u>

The second element that the Government must prove beyond a reasonable doubt is that the enterprise itself, or the racketeering activities of those associated with it, would have some effect on interstate or foreign commerce, or in fact had such an effect. This effect on interstate commerce could have occurred in any way and it need only have been minimal.

Interstate commerce includes the movement of goods, services, money, and individuals between states. It is not necessary for the Government to prove that any particular acts affected

57

interstate commerce or even that acts that the Defendant personally committed affected

interstate commerce. It need prove only that some act or acts of the enterprise—even perfectly

legal acts of the enterprise—had such an effect on interstate commerce. It is not necessary for

you to find that the Defendant knew the enterprise was engaged in interstate commerce. All that

is necessary is that you find beyond a reasonable doubt that the activities of the enterprise would

affect, or did affect, interstate or foreign commerce in some minimal way.

> [Adapted from the charges of the Honorable Colleen McMahon in *United States v. Mendoza*, No. 11 Cr. 974 (S.D.N.Y. 2013); and the Honorable William H. Pauley III in *United States v. Meregildo*, No. 11 Cr. 576 (S.D.N.Y. 2012).]

c. <u>Third Element: Membership in the Conspiracy</u>

The third element the Government must prove beyond a reasonable doubt is that, at some

point during the time period charged in the indictment, 2018 through March 2023, the Defendant

was a member of the charged conspiracy.

I have previously instructed you about participation in a conspiracy, and you should

follow those general instructions here (see pages XXX). You must determine not only whether

the Defendant participated in the conspiracy, but also whether he did so intentionally and

knowingly—that is, did he participate in the conspiracy with knowledge of its unlawful purpose

and with the specific intention of furthering the objective of that conspiracy?

As I've previously instructed you, a conspiracy is an agreement or partnership by two or

more persons to violate the law. The "object" of a conspiracy is the illegal purpose the

conspirators agree or hope to achieve. The object of the conspiracy charged in Count One is to

violate the RICO statute, in other words, to conduct or participate in the conduct of the affairs of

an enterprise through a pattern of racketeering activity.

58

A defendant may be convicted of a RICO conspiracy offense even if he did not personally participate in the operation or management of the enterprise when the evidence establishes that the defendant **knowingly agreed to facilitate** a scheme which, if completed, would constitute a RICO substantive violation.

Similarly, the Government need not prove that the Defendant agreed with every other member of the enterprise, knew all of the other members of the enterprise, or had full knowledge of all of the details of the enterprise. However, in proving this element, the Government must prove that the Defendant was **connected to the enterprise in some meaningful way**, and that the Defendant knew the general nature of the enterprise and knew that the enterprise existed beyond his individual role.

When considering if the Defendant joined the conspiracy, you may consider evidence, if any, that the Defendant agreed that a conspirator would intentionally perform acts, functions or duties which are necessary to, or helpful in, the operation of the enterprise, or that a conspirator had some part in directing the enterprise's affairs. However, the Government **need not prove that the Defendant would exercise significant control** over or within the enterprise, **or that he had a formal position** in the enterprise, **or that he had primary responsibility** for the enterprise's affairs. An enterprise is operated not just by upper management, but also by lower-rung participants in the enterprise who are under the direction of upper management or carry out upper management's orders.

I want to caution you, however, that the Defendant's mere presence at the scene of a~~n~~ crime does not, by itself, make him a member of the conspiracy. Similarly, mere association with one or more members of the conspiracy does not automatically make the Defendant a member. A person may know, or be friendly with, a criminal, without being a criminal himself.

59

Mere similarity of conduct or the fact that they may have assembled together and discussed common aims and interests does not necessarily establish membership in the conspiracy. **What is necessary is that the Defendant participated with knowledge of the unlawful objective of the conspiracy and with intent to aid in the accomplishment of that objective.**

Ultimately, the question is this: Has the Government proven beyond a reasonable doubt that **the Defendant joined the conspiracy and knowingly and intentionally participated in it with the awareness of its basic purpose and as something he wished to bring about**?

> [Adapted from the charge of the Honorable Edgardo Ramos in *United States v. Jones*, 21 Cr. 505 (S.D.N.Y. Oct. 12, 2023); and the charge of the Honorable Sidney H. Stein in *United States v. Pabon*, 18 Cr. 319 (S.D.N.Y. May 10, 2022).]

### d. Element Four: Pattern of Racketeering Activity

The fourth element that the Government must prove beyond a reasonable doubt is that the Defendant knowingly conspired or agreed to participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity. The focus of this element is on the Defendant's agreement to participate in the objective of the enterprise to engage in a pattern of racketeering activity, and not on the Defendant's agreement to commit the individual criminal acts. **The Government must prove that the Defendant agreed to participate in the enterprise with the intent that he or another member or members of the conspiracy would commit two or more racketeering acts, which I will describe.** The Government is not required to prove that the Defendant agreed to commit two racketeering acts himself, or that he actually committed two such acts. ~~Instead,~~ ~~the Government must prove that Defendant agreed to participate in the enterprise with the intent that he or another member or members of the conspiracy would commit two or more racketeering acts, which I will describe.~~

As I have told you, it is not necessary that a conspiracy actually succeed in its purpose for you to conclude that it existed. Because the agreement to commit a racketeering offense is the

60

essence of Count One, the Government need only prove that if the conspiracy achieved its objective as contemplated, the enterprise would be established, that its members would participate in conducting the affairs of the enterprise through a pattern of racketeering activity, and that those activities would affect interstate or foreign commerce.

**A pattern of racketeering activity requires at least two acts of racketeering, the last of which occurred within ten years after the commission of a prior act of racketeering.** These acts are referred to as "predicate acts" for the RICO conspiracy charge. To establish an agreement that the enterprise would engage in a "pattern of racketeering activity," as alleged in Count One of the indictment, the Government must prove three things beyond a reasonable doubt.

*First,* that the Defendant agreed that a conspirator, which could be the Defendant himself, would intentionally commit, or cause, or aid and abet the commission of, two or more of the racketeering acts of the types alleged in Count One of the indictment. <u>You must be unanimous as to which particular types of racketeering crimes, if any, the Defendant agreed would be committed</u>.

*Second*, that the racketeering acts have a "nexus" to the enterprise and the racketeering acts are "related" to one another. A racketeering act has a "nexus" to the enterprise if it has a meaningful connection to the enterprise. To be "related," the racketeering acts must have the same or similar purposes, results, participants, victim, or methods of commission, or be otherwise interrelated by distinguishing characteristics and not be merely isolated events. Two racketeering acts may be "related" even though they are dissimilar or not directly related to each other, provided that the racketeering acts are related to the same enterprise. For example, for both "nexus" and "relatedness" purposes, the requisite relationship between the RICO enterprise

61

and a predicate racketeering act may be established by evidence that a person was enabled to commit the racketeering act solely by virtue of his position in the enterprise or involvement in or control over its affairs, or by evidence that a person's position in the enterprise facilitated his commission of the racketeering act, or by evidence that the racketeering act benefitted the enterprise, or by evidence that the racketeering act was authorized by the enterprise, or by evidence the racketeering act promoted or furthered the purposes of the enterprise.

*Third*, to establish a pattern of racketeering activity, the Government must prove that the racketeering acts themselves <u>either</u> would have extended over a substantial period of time <u>or</u> they posed or would pose a **threat of continued criminal activity**.

A substantial period of time is at least two years. By contrast, a threat of continued criminal activity need not be proven by any mathematical formula or by any particular method of proof. Rather, it may be proven in a variety of ways. For example, the threat of continued unlawful activity may be established when the evidence shows that the racketeering acts are part of an enterprise that exists solely for criminal purposes or when the racketeering acts are shown to be the regular way of conducting the affairs of the enterprise, even where the enterprise also operates for legitimate, noncriminal purposes. Moreover, in determining whether the Government has proven the threat of continued unlawful activity, you are not limited to consideration of the specific racketeering acts that the Defendant and his co-conspirators are alleged to have committed; rather, in addition to considering such acts, you also may consider the nature of the enterprise, and other unlawful activities of the enterprise and its members viewed in their entirety, including both charged and uncharged unlawful activities.

For a conviction under Count One, the Government must prove that the Defendant intended to further an endeavor which, if completed, would have satisfied all the elements of a

substantive racketeering offense. The Government is not required to prove that the Defendant

personally committed or agreed to commit any act of racketeering, nor is it required to prove that

any acts of racketeering actually occurred. Rather, the Government must prove that the

Defendant agreed to participate in the enterprise with the knowledge and intent that at least one

member of the racketeering conspiracy, which could be the Defendant himself, would commit at

least two racketeering acts in the conduct of the affairs of the enterprise and that those acts would

constitute a pattern of racketeering activity as defined above.

> [Adapted from *United States v. Cain*, 671 F.3d 271, 284–85, 287– 288
> (2d Cir. 2012); *DeFalco v. Bernas*, 244 F.3d 286, 321 (2d Cir. 2001);
> the charge of the Honorable Edgardo Ramos in *United States v. Jones*,
> 21 Cr. 505 (S.D.N.Y. Oct. 12, 2023); the charge of the Honorable
> Sidney H. Stein in *United States v. Pabon*, 18 Cr. 319 (S.D.N.Y. May
> 10, 2022); the charge of the Honorable Valerie A. Caproni in *United
> States v. Cortorreal*, No. 17 Cr. 438 (S.D.N.Y. Apr. 25, 2023); and the
> charge of the Honorable Paul A. Engelmayer in *United States v. Mack
> & Ellison*, 18 Cr. 834 (S.D.N.Y. Oct. 1, 2019).]

 *i. Enterprise v. Pattern of Racketeering Activity*

**Let me make clear that an enterprise is not the same thing as the pattern of**

**racketeering activity**. To convict, the Government must prove that if the conspiracy achieved its

objective there would be an enterprise and that the enterprise's affairs would be conducted

through a pattern of racketeering activity. The enterprise in this case, ~~known as~~which the

Government has termed the G Enterprise, is alleged to be a group of individuals and businesses

who associated together for a common purpose of engaging in a course of conduct. A pattern of

racketeering activity, on the other hand, is a series of criminal acts.

 The **existence of the enterprise** is proven by evidence of an ongoing organization,

formal or informal, with a common purpose and by evidence that various core personnel of the

63

group functioned as a continuing unit. The **pattern of racketeering activity**, on the other hand, is proven by evidence of a minimum of two acts of racketeering that the participants in the enterprise agreed would be committed. The proof used to establish those separate elements may be the same or overlapping. For example, if you find that an ongoing enterprise existed, the existence of this enterprise may help establish that the separate racketeering acts were part of a "pattern" of continuing criminal activity. Nevertheless, **you should bear in mind that proof of an enterprise does not necessarily establish proof of a pattern of racketeering activity, and vice versa**.

Finally, although you need not decide whether the Defendant agreed to the commission of any particular racketeering act in order to convict him of the RICO conspiracy offense, you must be unanimous as to which type or types of predicate racketeering crimes the Defendant agreed would be committed. For example, wire fraud, securities fraud, bank fraud, money laundering, or any combination thereof.

> [Adapted from the charge of the Honorable Edgardo Ramos in
> *United States v. Jones*, 21 Cr. 505 (S.D.N.Y. Oct. 12, 2023).]

*ii. Predicate Acts*

The indictment alleges that the following categories of criminal violations were committed or were intended to be committed as part of the racketeering conspiracy charged in Count One:

(1) Acts involving wire fraud, in violation of federal law;

(2) Acts involving bank fraud, in violation of federal law;

(3) Acts involving the laundering of monetary instruments, also known as money laundering, in violation of federal law;

(4) Acts involving engaging in monetary transactions in property derived from specified unlawful activity, in violation of federal law; and

(5) Acts involving securities fraud, in violation of federal law.

The Government does not need to prove that the Defendant agreed that all of these types of racketeering crimes would be committed. As I have explained, the Government must prove that the Defendant agreed that at least two racketeering acts would be committed. Those acts may be within the same category of racketeering activity, such as two acts of wire fraud, or those acts may be within different categories of racketeering activity, such as one act of wire fraud and one act of money laundering.

I previously instructed you on violations of the wire fraud statute, in connection with Counts Five, Seven, Nine, and Eleven (see pages XXX). You should use those instructions in assessing whether "acts involving wire fraud, in violation of federal law" were committed or intended to be committed.

I previously instructed you on violations of the bank fraud statute, in connection with the bank fraud object of Count Two's conspiracy to commit wire fraud and bank fraud (see pages XXX). You should use those instructions in assessing whether "acts involving bank fraud, in violation of federal law" were committed or intended to be committed.

I previously instructed you on violations of the money laundering statute, in connection with the objects of the money laundering conspiracy alleged in Count Three (see pages XXX). You should use those instructions in assessing whether "acts involving the laundering of monetary instruments, also known as money laundering, in violation of federal law" were committed or intended to be committed.

65

I previously instructed you on violations of engaging in monetary transactions in property derived from specified unlawful activity, in connection with Count Twelve (see pages XXX). You should use those instructions in assessing whether "acts involving engaging in monetary transactions in property derived from specified unlawful activity" were committed or intended to be committed.

And, I also previously instructed you on violations of the securities fraud statute, in connection with Counts Six, Eight, and Ten (see pages XXX). You should use those instructions in assessing whether "acts involving securities fraud, in violation of federal law" were committed or intended to be committed.

26.    Multiple Conspiracies

The government has charged the existence of a single conspiracy in Count 1, Count 2, Count 3, and Count 4. For each of these counts, the government must prove the existence of a single conspiracy.

A single conspiracy exists when two or more people join together to further one common unlawful design or purpose. By way of contrast, multiple conspiracies exist when there are separate unlawful agreements to achieve distinct purposes, even if the conspiracies have similar goals or overlapping membership. Proof of several separate and independent conspiracies is not proof of the single conspiracy alleged in any one count. For each conspiracy count, the government must convince you, beyond a reasonable doubt, that the particular conspiracy charged in the that count existed and that the defendant you are considering was a member of that specific conspiracy, not some other conspiracy. Similarly, if you find that a particular defendant

was a member of another conspiracy, and not the one charged in the Count you are considering, you must acquit that defendant of that conspiracy charge.  Proof of several separate and independent conspiracies is not proof of any single conspiracy.[19]

IV.    CONSCIOUS AVOIDANCE

As I have explained, charges in the indictment require the Government to prove beyond a reasonable doubt that the Defendant acted knowingly. In determining whether the Defendant acted knowingly, you may consider whether the Defendant deliberately closed his eyes to what otherwise would have been obvious.

I would like to point out that the necessary knowledge on the part of the Defendant with respect to any particular charge cannot be established by showing that that he was careless, negligent, or foolish. However, one may not willfully and intentionally remain ignorant of a fact material and important to his conduct in order to escape the consequences of criminal law. The law calls this "conscious avoidance" or "willful blindness." In other words, the Government can prove either that the Defendant actually knew the objective of the conspiracy or that he consciously avoided knowledge of the object of the conspiracy.

Thus, if you find beyond a reasonable doubt that the Defendant was aware that there was a high probability that a crime was being committed, but that the Defendant deliberately and

66

---

[19] Sand, Instr. 19-5.

consciously avoided confirming this fact, such as by purposely closing his eyes to it or intentionally failing to investigate it, **then you may treat this deliberate avoidance of positive knowledge as the equivalent of knowledge**, unless you find that the Defendant actually believed that he was not engaged in such unlawful behavior. In other words, a defendant cannot avoid criminal responsibility for his own conduct by "deliberately closing his eyes," or remaining purposefully ignorant of facts which would confirm to him that he was engaged in unlawful conduct. Put another way, **a person cannot look at all sorts of things that make it obvious to any reasonable person what is going on and then claim in court that, because he deliberately avoided learning what was explicitly obvious, he did not know the incriminating fact.**

You must also keep in mind that there is an important difference between knowingly and intentionally participating in the conspiracy, on the one hand, and knowing the specific objective of the conspiracy, on the other. You may consider conscious avoidance in deciding whether the Defendant knew the objective of the conspiracy, that is, whether he reasonably believed that there was a high probability that a goal of the conspiracy was to commit the crime charged as object of the conspiracy and took deliberate and conscious action to avoid confirming that fact but participated in the conspiracy anyway. But, conscious avoidance cannot be used as a substitute for finding that the Defendant knowingly and intentionally joined the conspiracy in the first place. It is logically impossible for a defendant to intend and agree to join a conspiracy if he does not actually know it exists. However, if you find beyond a reasonable doubt that the Defendant knowingly chose to participate in such a joint undertaking, you may consider whether the Defendant took deliberate and conscious action to avoid confirming otherwise obvious facts about the purpose of that undertaking.

In sum, if you find beyond a reasonable doubt that the Defendant believed there was a high probability that a fact was so and that the Defendant took deliberate and conscious action to avoid learning the truth of that fact, you may find that he acted knowingly with respect to that fact. However, if you find that the Defendant actually believed the fact was not so, then you may not find that he acted knowingly with respect to that fact.

[Adapted from the jury charges given by the Honorable Loretta A. Preska in *United States v. Tanner et al.*, 17 Cr. 61 (S.D.N.Y. May 3, 2018); the Honorable P. Kevin Castel in *United States v. William Walters*, 16 Cr. 338 (S.D.N.Y. April 6, 2017); and Sand, *Modern Federal Jury Instructions*, Instr. 3A-2.]

**V.    <u>VENUE</u>**

With respect to each count in the indictment, the Government, in addition to proving the essential elements of that charge, must also prove that at least one act in furtherance of the charge occurred in the Southern District of New York. This is called establishing venue.

The Southern District of New York includes all of Manhattan and the Bronx, as well as Westchester, Rockland, Putnam, Dutchess, Orange, and Sullivan Counties.

The Government does not have to prove that a completed crime was committed within the Southern District of New York, or that the Defendant was ever in the Southern District of New York. It is sufficient to satisfy the venue requirement if any act in furtherance of the crime charged occurred in this District. The act itself need not be a criminal act. And, the act need not have been taken by the Defendant, so long as the act was part of the crime that you find the Defendant committed.

## VI.  FINAL GENERAL INSTRUCTIONS

**26.    Defendant's Right Not to Testify (if applicable)**

The Defendant did not testify in this case. Under our Constitution, a defendant has no obligation to testify or to present any evidence because it is the Government's burden to prove a defendant guilty beyond a reasonable doubt. That burden remains with the Government throughout the entire trial and never shifts to a defendant. A defendant is never required to prove that he is innocent.

You may not attach any significance to the fact that the Defendant did not testify. No adverse inference against him may be drawn by you because he did not take the witness stand. You may not hold this against him or consider it in any way in your deliberations in the jury room.

**27.    Defendant's Testimony (if applicable)**

The defendant in a criminal case never has any duty to testify or come forward with evidence. This is because the burden of proof beyond a reasonable doubt remains on the Government at all times, and the Defendant is presumed innocent.

In this case, the Defendant did testify and he was subject to cross-examination, like any other witness. The fact that he testified does not in any way remove or lessen the burden on the Government to prove the charges beyond a reasonable doubt.

You should examine and evaluate the Defendant's testimony just as you would the testimony of any witness with an interest in the outcome of this case. The Defendant's decision to testify does not in any way shift the burden of proof to him. The Defendant is never required to prove that he is innocent.

**28.    Theory of the Defense**

The defense will submit a theory of the defense charge for the Court's consideration upon the close of evidence.

29.    **Law Enforcement and Government Witnesses**

You have heard the testimony of some witnesses who are law enforcement officers and employees of the FBI. The fact that a witness works for the government or in law enforcement does not mean that the witness's testimony is, by virtue of the witness's position, deserving of more or less consideration, or greater or lesser weight, than that of any other witness. The testimony of such a witness should not be regarded as more or less truthful or accurate than that of any other witness simply based on the witness's employment. However it is perfectly appropriate for defense counsel to attempt to attack the credibility of such a witness on the ground that his or her testimony may be colored by a personal or professional interest in the outcome of the case. It is your decision, after reviewing all of the evidence, whether to accept the testimony of the law enforcement witness and to give that testimony whatever weight, if any, you find it deserves.

30.    **Expert Witnesses**

You have heard testimony from what we call an expert witness. An expert is a witness who, by education or experience, has acquired learning or experience in a specialized area of knowledge. Expert witnesses are permitted to express their opinions as to relevant matters in which they have special knowledge, skill, experience, and training, and to give their reasons for their opinions. Expert testimony is presented to you on the theory that someone who is experienced in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

Your role in judging credibility applies to experts as well as other witnesses. In weighing this opinion testimony, you may consider the witness' qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness' testimony. You may give the opinion testimony

whatever weight, if any, you find it deserves in light of all the evidence in this case. You should

not, however, accept opinion testimony merely because I allowed the witness to

70

testify concerning his or her opinion. Nor should you substitute it for your own reason, judgment, and common sense.

The determination of the facts in this case rests solely with you. As with the testimony of any other witness, you may decide to accept all, some, or none of the testimony of any expert witness. If you should decide that the opinion of an expert was not based on sufficient education or experience or on sufficient data, or if you should conclude that the trustworthiness or credibility of an expert is questionable for any reason, or if the opinion of the expert was outweighed in your judgment by other evidence in the case, then you might disregard the opinion of the expert entirely or in part. On the other hand, if you find the opinion of an expert is based on sufficient data, education and experience, and the other evidence does not give you reason to doubt his or her conclusions, you would be justified in placing reliance on his or her testimony.

**30.**    ~~Accomplice/Cooperating Witness Testimony~~

~~You have also heard from witness(es) who testified that they pleaded guilty to criminal charges. They each testified pursuant to an agreement to cooperate with the Government. The law allows the use of accomplice testimony. Indeed, it is the law in federal courts that the testimony of an accomplice may be enough in and of itself for conviction if the jury finds that the testimony establishes guilt beyond a reasonable doubt. It is also the case, however, that accomplice testimony is of such a nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe.~~

~~I have given you some general considerations on credibility and I will not repeat them all here. Nevertheless, let me say a few things that you might want to consider during your deliberations on the subject of accomplices. You should ask yourself whether the witness would benefit more by lying or by telling the truth. Was the witness' testimony made up in any way~~

~~71~~

because [he] believed or hoped that he would somehow receive favorable treatment by testifying falsely? Or did [he] believe that his interests would be best served by testifying truthfully? If you believe that the witness you are considering was motivated by hopes of personal gain, was the motivation one that would cause [him] to lie, or was it one that would cause [him] to tell the truth? Did this motivation color [his] testimony? Has the witness previously testified falsely or made false statements? Does the witness appear to have any bias against the Defendant? In sum, you should look at all of the evidence in deciding what credence and what weight, if any, to give to an accomplice witness.

[Adapted from the jury charges given by the Honorable Laura T. Swain in *United States v. Stewart*, 15 Cr. 287 (S.D.N.Y. Aug. 2, 2016).]

31.    **Non-Prosecution Agreement**

You have heard testimony from at least one witness who entered into a non-prosecution agreement with the Government arising out of facts that are at issue in this case. You are instructed that you are to draw no conclusions or inferences of any kind about the guilt of the Defendant from the fact that a witness entered into such an agreement, even involving similar conduct. The decision of that witness to enter into that agreement is a personal decision. Likewise, the Government's decision to enter into the agreement is a lawful exercise of its discretion. It may not be used by you in any way for or against the Defendant.

However, the testimony of a witness who has been promised that he or she will not be prosecuted should be examined by you with greater care than the testimony of an ordinary witness.  You should scrutinize it closely to determine whether or not it is colored in such a way as to place guilt upon the defendant in order to further the witness' own interests; for, such a witness, confronted with the realization that he can win his own freedom by helping to convict another, has a motive to falsify his testimony.

Such testimony should be received by you with suspicion and you may give it such weight, if any, as you believe it deserves.[20]

[Adapted from the charge of the Honorable Lewis A. Kaplan in
*United States v. Dumitru*, 18 Cr. 243 (S.D.N.Y. Nov. 6, 2018).]

---

[20] Sand Instr. 7-9.

**32.**    Immunized Witnesses (if applicable)

You have heard the testimony of certain witnesses who testified under a grant of

immunity from the Court. What this means is that the testimony of the witness may not be

used

72

against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the immunity order of the Court.

You are instructed that the Government is entitled to call, as a witness, a person who has been granted immunity by Court order and that you may convict the Defendant on the basis of such a witness's testimony alone, if you find that the testimony proves the Defendant guilty beyond a reasonable doubt.

However, the testimony of a witness who has been granted immunity should be examined with great care. You should scrutinize it closely to determine whether or not it is colored in such a way as to place guilt upon the Defendant in order to further the witness's own interests; for such a witness, confronted with the realization that he can win his own freedom by helping to convict another, has a motive to falsify his testimony.

If after a careful examination of the witness' testimony and demeanor on the witness stand, you are satisfied that the witness told the truth, you should accept it as credible and act upon it accordingly. It does not follow that merely because a person may have participated in criminal conduct, that [he] is incapable of giving truthful testimony. Further, it is of no concern of yours why a witness received court-ordered immunity. Your sole concern is whether a witness has given truthful testimony.

[Adapted from the charge of the Honorable William H. Pauley III, in *United States* v. *Dominguez*, S1 16 Cr. 108 (WHP) (S.D.N.Y. 2016); and Sand, *Modern Federal Jury Instructions*, Instr. 7-8; *see United States v. Gleason*, 616 F.2d 2, 15 (2d Cir. 1979) ("Where the court points out that testimony of certain types of witnesses may be suspect and should therefore be scrutinized and weighed with care, such as that of accomplices or coconspirators . . . it must also direct the jury's attention to the fact that it may well find these witnesses to be truthful, in whole or in part.") (citations omitted), and *United States v. Cheung Kin Ping*, 555 F.2d 1069, 1073 (2d Cir. 1977) (same).]

73

**33.    Preparation of Witnesses**

You have heard evidence that witnesses may have discussed the facts of the case with the defense lawyers or with Government lawyers before they appeared in court. Although you may consider that fact when you are evaluating a witness's credibility, there is nothing either unusual or inherently improper about a witness meeting with the defense lawyers or the Government lawyers before testifying so that the witness can be aware of the subjects he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them. Such consultation helps conserve your time and the Court's time. In fact, it would be unusual for a lawyer to call a witness without such consultation. The weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are within your discretion.

**34.    Uncalled Witnesses—Equally Available**

There are several people whose names you have heard during the course of the trial but who did not appear here to testify. I instruct you that each party had an equal opportunity, or lack of opportunity, to call any of these witnesses. Therefore, you should not draw any inferences or reach any conclusions as to what they would have said if they had been called to testify. Their absence should not affect your judgment.

You should, however, remember my instruction that the law does not impose on a defendant in a criminal case the burden or duty of calling any witness or producing any evidence. The burden remains with the Government to prove the Defendant guilty beyond a reasonable doubt.

74

35.     **Stipulations of Fact**

In this case you have heard evidence in the form of stipulations of fact. A stipulation of fact is information the parties agree to present to the jury as evidence without calling a witness to testify. The parties agree that the facts contained in the stipulations are true. You must accept those facts as true.

36.     **Summary Exhibits**

Some of the exhibits were submitted in the form of charts and summaries. For the charts and summaries that were admitted into evidence, you should consider them as you would any other evidence.

**There have been summary charts and exhibits that were shown to you but <u>not</u> admitted into evidence.** These exhibits are not themselves direct evidence. They are graphic representations or other ways of summarizing more voluminous information that was either described in the testimony of a witness or reflected in documents admitted into evidence. It is often easier and more convenient to utilize charts, tables, and summaries as opposed to placing all of the underlying documents in front of you. But it is up to you to decide whether the not-admitted summary exhibits fairly and correctly reflect the underlying testimony and documents they purport to summarize. To the extent that these summary exhibits conform to your understanding of the underlying evidence, you may accept them. To the extent they do not, you should set them aside and rely on the underlying evidence instead. But one way or the other, realize that the not-admitted summary exhibits are not in and of themselves direct evidence. They are merely intended to serve as aids in a party's presentation of the evidence.

75

**37.    Use of Evidence Obtained Pursuant to a Search**

You have heard testimony about evidence seized in connection with certain searches conducted by law enforcement officers. Evidence obtained from these searches may be properly considered by you. Such searches were lawful law enforcement actions.

Whether you approve or disapprove of how the evidence was obtained should not enter into your deliberations because I instruct you that use of the evidence is lawful. You must, therefore, regardless of your personal opinions, give this evidence full consideration along with all the other evidence in the case in determining whether the Government has proven the Defendant's guilt beyond a reasonable doubt.

**38.    Variance in Dates**

You will note that the indictment alleges that the charged crimes occurred in or about 2018 to March 2023. It does not matter if the evidence you heard at trial indicates that a particular act occurred on a different date. The law requires only a substantial similarity between the date alleged in the indictment and the date established by the evidence.

**39.    Particular Investigative Techniques Not Required**

You have heard reference in the arguments of counsel to the fact that certain investigative techniques were or were not used by law enforcement authorities. You may consider these facts in deciding whether the Government has met its burden of proof, because you should look to all of the evidence or lack of evidence in deciding whether the Defendant is guilty. However, there is no legal requirement that law enforcement agents investigate crimes in a particular way or that the Government prove its case through any particular means. The Government and its techniques are not on trial. Although you are to carefully consider the evidence presented, you

need not speculate as to why law enforcement used the techniques they did, or why they did not use other techniques.

Your concern is to determine whether or not, based on the evidence or lack of evidence, the guilt of the Defendant has been proven beyond a reasonable doubt.

**40.    Use of Audio and Video Recordings and Transcripts**

The Government has introduced evidence in the form of audio and video recordings.

Whether you approve or disapprove of the recording of these conversations may not enter into your deliberations. I instruct you that these recordings were made in a lawful manner, and that no one's rights were violated, and that the Government's use of this evidence is lawful, and it was properly admitted into evidence at this trial. You must, therefore, regardless of any personal opinions, give this evidence consideration along with all the other evidence in the case in determining whether the Government has proved the Defendant's guilt beyond a reasonable doubt.

If you wish to hear any of the recordings again, they will be made available to you during your deliberations.

**41.    Foreign Language Translations**

During the trial, you were given transcripts of recordings which were admitted into evidence. The transcripts were translations of foreign language recordings in [foreign language]. You were also shown translations of foreign language documents.

Although some of you may know [foreign language], it is important that all jurors consider the same evidence. Therefore, you must accept the English translations that are in evidence and disregard any different meaning.

77

42.    **Redaction of Evidentiary Items (if applicable)**

We have, among the exhibits received in evidence, some exhibits that are redacted. "Redacted" means that part of the document or recording was taken out. You are to concern yourself only with the part of the item that has been admitted into evidence. You should not speculate as to any reason why the other part of it has been redacted.

> [Adapted from the jury charges given by the Honorable Shira A. Scheindlin in *United States v. DiTomasso*, 14 Cr. 160 (S.D.N.Y. Mar. 7, 2016).]

43.    **Persons Not on Trial**

Some of the people who may have been involved in the events leading to this trial are not on trial. This does not matter. There is no requirement that all people jointly engaged in criminal activity be charged and prosecuted, or tried together, in the same proceeding.

You may not draw any inference, favorable or unfavorable, toward the Government or the Defendant from the fact that certain persons other than the Defendant were not named as defendants in the indictment. Nor may you speculate as to the reasons why other persons are not on trial. Those matters are wholly outside your concern and have no bearing on your function as jurors.

44.    ~~Similar Acts—Intent, Knowledge, Absence of Mistake~~

~~The Government has offered evidence tending to show that on a different occasion the Defendant engaged in conduct similar to the charges in the indictment.~~

~~In that connection, let me remind you that the Defendant is not on trial for committing acts not alleged in the indictment. Accordingly, you may not consider this evidence of the similar acts as a substitute for proof that the Defendant committed the crimes charged. Nor may you consider this evidence as proof that the Defendant has a criminal personality, bad character,~~

78

~~or propensity to commit crimes. The evidence of the other, similar acts was admitted for a much more limited purpose and you may consider it only for that limited purpose.~~

~~If you determine that the Defendant committed the acts charged in the indictment and the similar acts as well, then you may, but you need not draw an inference that in doing the acts charged in the indictment, the Defendant acted knowingly and intentionally and not because of some mistake, accident or other innocent reasons.~~

~~Evidence of similar acts may not be considered by you for any other purpose. Specifically, you may not use this evidence to conclude that because the Defendant committed the other act, he must also have committed the acts charged in the indictment. I want to emphasize to you now that you are only to return a verdict as to the charges contained in the indictment.~~

### 45.    Improper Considerations and Implicit Bias

Your verdict must be based solely upon the evidence developed at trial or the lack of evidence. In reaching your decision as to whether the Government sustained its burden of proof, it would be improper for you to consider any personal feelings, positive or negative, you may have about the Defendant's race, religion, national origin, sex, or age. The Defendant and the Government are both entitled to a trial free from prejudice, and our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

I'm also going to ask you and advise you to not decide the case based on implicit biases. Everyone, including me, has feelings or assumptions or perceptions or fears or even stereotypes and they're referred to as "implicit biases" and you might not even be aware of them. These hidden thoughts can impact what we see and hear, how we remember what we see and hear, and how we make important decisions. Because you are making important decisions in this case, I

79

strongly encourage you to evaluate the evidence carefully and to resist jumping to any conclusions based on personal likes or dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes or biases.

**46.**     Large Sums of Money

Some of the testimony and the exhibits in this trial were connected with large sums of money – but that fact alone has nothing to do with whether or not the Government has proven the elements of the charged offenses beyond a reasonable doubt. The fact that the charges in this case may have involved large sums of money does not mean that the Defendant is held to a greater standard of conduct than had the case involved smaller sums of money. The presumption of innocence applies to every defendant in every case equally without regard to the amount of money involved.[21]

**47.**     Settlement With the Securities and Exchange Commission

Some of the evidence in this trial concerned a civil settlement between Saraca Media Group, Incand the United States Securities and Exchange Commission.  As part of the settlement, the SEC agreed that Saraca was neither admitting or denying any allegations of wrongdoing.  You are instructed that you may not consider Saraca's settlement with the SEC as evidence of any criminal conduct in this case.[22]

## VII. DELIBERATIONS OF THE JURY

**46.**     **Jury's Duty to Deliberate**

Before you retire to deliberate, there are a few more areas I need to instruct you on. Your job is to decide whether the evidence establishes the guilt of the Defendant with respect to the crimes charged in the indictment beyond a reasonable doubt.

---

[21] *United States v. Ghavami*, No. 10-cr-1217 (KMW) (S.D.N.Y. Aug. 29, 2012), ECF No. 278.

[22] *See, e.g.*, *In re Foreign Exchange Benchmark Antitrust Litig.*, No. 13 Civ. 7789, 2022 WL 4087842, at *1 (S.D.N.Y. Sept. 6, 2022).

Deliberations must take place in the jury room with all jurors present. If any juror leaves the room, say for a bathroom break, all deliberations must stop, and may resume only when every juror is present.

In order to return a verdict, each juror must agree to such verdict. You have the duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if it can be done without giving up individual judgment.

As jurors, each one of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.

No juror should give up any honestly held conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

During the course of your deliberations, you as individuals, should not hesitate to reexamine your own views and change your opinion if convinced it is erroneous.

For those of you who took notes during the trial, remember that any notes that you took are to be used only to refresh your own memory during deliberations. They may not be used as

authority to persuade your fellow jurors as to what a witness did or did not say. Your notes are not superior to your or your fellow jurors' independent recollection. Those of you who did not take notes should not be influenced by the fact that another juror has taken notes—rather, you should rely on your own independent recollection of the evidence.

If there is any question as to what the testimony was or what my instructions to you were you should ask to have that portion of the testimony or the instructions read back to you.

Your notes and the notes of your fellow jurors are not a substitute for the official record or for the governing principles of law that I have set forth. The Court's transcript prevails over a juror's notes.

**47.    Jury's Right to See Exhibits, Have Testimony Read, and Ask Questions**

You will have in the jury room a laptop with the exhibits introduced into evidence should you wish to consult them. This laptop can connect to the large monitor in the jury room.

If, during the course of your deliberations, your recollection of any part of the testimony should fail or if you should find yourself in doubt concerning my instructions to you on the law, you have the option to return to the courtroom for the purpose of having such testimony or instructions read back to you. If you want any further explanation of the law as I have explained it to you, you may also request that from the Court. If there is any doubt or question about the meaning of any part of this charge, you should send me a note asking for clarification or for a further explanation. Your requests for exhibits or testimony—in fact any communications with the Court—should be made to me in writing, signed by your foreperson, and given to one of the Court Security Officers ("CSOs").

Your foreperson, Juror #1, should write out your request and give it to the Court Security Officer, who will deliver the note to me. Please write the note on one of the "jury note" sheets of paper and place it in an envelope for the Court Security Officer.

As soon as the attorneys, the Defendant, and court staff are assembled in the courtroom, you will be called back to the courtroom, and I will promptly respond to your request. During any read-back of testimony, keep in mind how the witness' demeanor appeared to you as you observed the witness testify.

In any event, do not tell me or anyone else how the jury stands on the issue of whether or not the Defendant is guilty until after a unanimous verdict is reached.

**48.     Unanimous Verdict**

In order to reach a verdict, all twelve members of the jury must agree. Whenever all your members are in agreement on a verdict, you must report your verdict to the Court. When you have reached a verdict, simply tell the Court Security Officer you have reached a verdict, but not what the verdict is, and you will be promptly called back into the courtroom to announce your verdict. We have prepared a verdict form for you to use in recording your decisions. After you have reached a verdict, the foreperson should fill in the verdict sheet, sign and date it, and then give a note to the CSO outside your door stating that you have reached a verdict. Do not specify what the verdict is in your note. Instead, the foreperson should retain the verdict sheet, and hand it to us in open court when you are all called in.

**49.     Instructions to Alternate Jurors**

Because the trial jury is about to retire to deliberate, I now charge and I emphasize that there must be no further communication or contact between the trial jury and the alternate jurors. The alternates are not to discuss this case with anyone including yourselves. Nor are you to read,

82

watch, or listen to anything from any source concerning anything touching on the subject matter of the case, nor are you to permit anyone to discuss the case with you or in your presence. Nor are you to form any opinion as to the factual issues in this case, nor are you to form or express any opinion as to the guilt or innocence of the Defendant, unless and until such time as you may be requested to participate in the trial jury's deliberations. The alternates may leave the courthouse. However, you still may be called upon to replace a juror. So, you must remain reachable by telephone, text, and email, and you must be able to return to the courthouse within one hour of being contacted by my staff.

### 50. Lunch

During your deliberations, lunch will be provided. You should not leave the jury room during deliberations unless you are instructed to do so.

### 51. Smokers on the Jury

Are there any smokers on this jury?

If you are a smoker, as I will not be in that jury room with you, should you desire a smoking break you must make that request to your jury foreperson. Should the foreperson declare a break, the Court Security Officer must be notified. During this break all deliberations must cease. As smoking is not permitted inside the building, the smokers will be escorted by the Court Security Officer outside the building to smoke. During this recess, the smokers outside the building cannot discuss this case, and the nonsmokers in the jury deliberation room cannot discuss this case. You may not resume your deliberations until all of you are back in the jury room. Do you all understand?

Do counsel wish to approach?

83

**VIII. <u>CONCLUDING REMARKS</u>**

Now, I am about to submit this case to you for your final determination.

As I have previously stated, the law and your oath require that you render a fair and impartial verdict without fear, favor, or sympathy.

Now, take this case and in the fulfillment of your oath and in accordance with the instructions of the Court render a true and impartial verdict.

84