O7CVGUOT

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
   UNITED STATES OF AMERICA,
3
            v.                          23 Cr. 118 (AT)
4
   MILES GUO,
5
                Defendant.              Trial
6  ------------------------------x
                                        New York, N.Y.
7                                       July 12, 2024
                                        9:25 a.m.
8
   Before:
9
10                    HON. ANALISA TORRES,

11                                      District Judge
                                         -and a Jury-
12
                         APPEARANCES
13
   DAMIAN WILLIAMS
14      United States Attorney for the
        Southern District of New York
15 BY:  MICAH F. FERGENSON
        RYAN B. FINKEL
16      JUSTIN HORTON
        JULIANA N. MURRAY
17      Assistant United States Attorneys

18 SABRINA P. SHROFF
        Attorney for Defendant
19
   PRYOR CASHMAN LLP
20      Attorneys for Defendant
   BY:  SIDHARDHA KAMARAJU
21      MATTHEW BARKAN
        JOHN KILGARD
22

23 ALSTON & BIRD LLP
        Attorneys for Defendant
24 BY:  E. SCOTT SCHIRICK

25

O7CVGUOT

1    Also Present:

2    Isabel Loftus, Paralegal Specialist, USAO
     Robert Stout, Special Agent, FBI
3    Jorge Salazar, Defense Paralegal
     Tuo Huang, Interpreter (Mandarin)
4    Shi Feng, Interpreter (Mandarin)
     Barbara Robertson, Interpreter (Mandarin)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

O7CVGUOT

1          (Trial resumed; jury not present)

2          THE COURT:  Good morning.

3          Please make your appearances.

4          MS. MURRAY:  Good morning, your Honor.

5          Juliana Murray, Ryan Finkel, and Justin Horton, on

6   behalf of the United States.

7          We're jointed by Paralegal Specialist Isabel Loftus

8   and Special Agent Robert Stout.

9          MR. KAMARAJU:  Good morning, your Honor.

10          Sidhardha Kamaraju, Sabrina Shroff, Scott Schirick,

11   and Matthew Barkan, on behalf of Mr. Guo.

12          And Mr. Guo is with us at counsel table.

13          THE COURT:  Please be seated.

14          I received a second note from the jurors at 9:19; it's

15   dated today's date.  It's signed by the foreperson.  I'm making

16   it Court Exhibit No. 2.

17          It states:  We, the jury, request the hard copies of

18   GX 79 we received in the black binders early in this trial.

19   Also, a hard copy of GX 417-T.

20          I'm sorry, GX Z-9 is the first item.

21          So GX Z-9 is one item.  But the transcript of GX

22   417-T, that has -- that's a binder that has other items in it.

23          And so my question is would you want me to send back

24   the whole binder or just GX 417-T?

25          MR. KAMARAJU:  I think we should send back what they

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

O7CVGUOT

1    ask for, your Honor.

2              MR. FINKEL:  Your Honor, these are transcripts they

3    have electronically; so sending them more of them in a hard

4    copy I think would just make things easier for the jury.  It

5    would be easier for the parties and your Honor's staff as well,

6    since they're already put together in a binder, which they've

7    already been provided.

8              So the government's view would be to just send back

9    both sets of the binders, the Z-9 binder, which I understand

10   your court staff has, and the 400 series binder, which includes

11   417-T.

12             THE COURT:  So the one that contains GX 417-T, also

13   contains GX 404-T, GX 405-T, GX 406-T, GX 408-T, GX 409-T, GX

14   411-T, and GX 412-T and GX 413A-T.

15             MR. FINKEL:  Your Honor, on further reflection,

16   hearing all those, if the Court's preference is to just send

17   back 417-T, it won't take us very long to print those off and

18   we can do that instead, just to avoid an issue, frankly.

19             THE COURT:  Understood.

20             Yes, it would be simple just to send back the GX

21   417-T.

22             MR. FINKEL:  Your Honor, we're going to print them

23   right now, bring them up, so we don't have to break apart the

24   binders, which would take more time actually, I think.  We'll

25   just print 417-T, bring them up.

O7CVGUOT

1          THE COURT:  All righty.  Go ahead.

2          MR. FINKEL:  We're doing that now.  It will take a few

3     minutes.

4          One other item, your Honor, that came to our attention

5     last night, if your Honor is ready for a different issue.

6          I don't know if this is really an issue, I guess it's

7     really more for the defense.  But in an abundance of caution, I

8     just wanted to raise it with your Honor and the Court -- with

9     your Honor and the defense.

10          Upon reviewing the transcript last night, during the

11     charge — this is at page 5787, and I have hard copies, if the

12     Court would like — when discussing the government's burden and

13     what is reasonable doubt, your Honor, according to the

14     transcript, said:  If you have reasonable doubt as to the

15     defendant's guilt, you should not hesitate to find the

16     defendant not guilty.  But on the other hand, if you find that

17     the defendant has met its burden of proving the defendant's

18     guilt beyond a reasonable doubt, you should not hesitate to

19     find the defendant guilty.

20          THE COURT:  So I specifically remember that

21     misstatement and then going back and saying "government."

22          Does the defense concede that that is what I said?

23          MR. KAMARAJU:  Yes, your Honor.  We're fine.

24          THE COURT:  Okay.

25          MR. FINKEL:  Thank you.

O7CVGUOT

1    THE COURT:  So I will ask that the transcript be

2    corrected.

3    MR. FINKEL:  Thank you, your Honor.

4    THE COURT:  So we still have the issue of the first

5    note.  My sense is that the second note is a clarification of

6    the first item requested in the first note.  Do you agree?

7    MR. KAMARAJU:  That was my impression, your Honor.

8    MR. FINKEL:  Government agrees.

9    THE COURT:  Okay.  So then the issue becomes then what

10   about this restatement of the limiting instruction?

11   MR. KAMARAJU:  I think we should ask them.  Because I

12   think there are a number of limiting instructions that your

13   Honor gave over the course of the trial.  I think some of them

14   were different, and I think they have different import.  So I

15   think we should just ask the jury to be clear as to what they

16   mean by it.

17   THE COURT:  Okay.  Let's have the jurors brought in.

18   (Jury present)

19   THE COURT:  Please be seated.

20   Good morning, jurors.

21   THE JURY:  Good morning.

22   THE COURT:  When we stopped yesterday, I read out loud

23   the note that I had received from you; it contained two

24   requests.  The first request was physical copies of

25   transcripts.  Then this morning at 9:19 a.m., I received a note

O7CVGUOT

```
 1    stating:  We, the jury, request the hard copies of GX Z-9 we
 2    received in the black binders early in this trial.  Also a hard
 3    copy of GX 417-T.
 4            Those, I believe, are the transcripts that you were
 5    referring to in the first note.  If I'm wrong, then you'll send
 6    me another note.
 7            With regard to the second request from yesterday,
 8    restatement of limiting instruction, I need more details about
 9    what it is that you're requesting because I don't entirely
10    understand the request.  I will need that in a note.
11            So you'll go back to the jury room.
12            (Jury not present)
13            THE COURT:  You maybe seated.
14            So I'll let you know when the second note of today
15    comes.
16            MR. KAMARAJU:  Thank you, your Honor.
17            (Recess pending verdict)
18            THE COURT:  Please be seated.
19            I received a third note from the jury at 10:49 a.m.
20    I'm making it Court Exhibit No. 3.  It's signed by the
21    foreperson.  It has today's date.
22            It states:  We, the jury, one of the jurors disclosed
23    they had Googled William Je this morning.
24            How would you like me to handle this?
25            MR. KAMARAJU:  Could we just have a moment, your
```

O7CVGUOT

1    Honor, to confer.

2            (Counsel conferred)

3            MS. SHROFF:  Your Honor, I apologize.

4            Could the Court reread the note, please?

5            THE COURT:  Sure.

6            MS. SHROFF:  Thank you.

7            THE COURT:  It states:  We, the jury, one of the

8    jurors disclosed they had Googled William Je this morning.

9            MS. SHROFF:  Thank you, your Honor.

10            (Counsel conferred)

11            THE COURT:  The most recent case that we've found on

12    replacing a juror for good cause because of juror misconduct is

13    *United States v. David Delva*, 858 F.3d 135.

14            MR. KAMARAJU:  Your Honor -- I'm sorry.  I wasn't sure

15    if you were done.

16            Ms. Shroff and I actually dealt with this in *U.S. v.*

17    *Schulte*.  And the way that we handled it there -- or Judge

18    Crotty handled it there was I believe the Court made an inquiry

19    of the foreperson as to what was the sort of disclosure, you

20    know, whether the person told any of the jurors what they found

21    on Google, and which juror it was, since we obviously don't

22    know strictly from the note.

23            So I think that be would the next step, would be to

24    have an inquiry on the record with the foreperson to see what

25    information the parties can get, obviously cautioning the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

O7CVGUOT

```
 1    foreperson not to disclose anything about deliberations that
 2    the jury is having.
 3              MR. FINKEL:  Can we have one moment to review the case
 4    and want to respond.
 5              MS. SHROFF:  Your Honor, the note says that the
 6    juror -- one juror informed that they had Googled William Je.
 7              THE COURT:  Correct.
 8              MS. SHROFF:  So it's unclear if there was any
 9    followup, right.
10              THE COURT:  Correct.
11              MS. SHROFF:  I just can't tell from the note how far
12    the taint into the jury venire -- I mean the jury -- the 12
13    jurors has gone.
14              May we just have a slight break so we can figure out
15    how --
16              MR. KAMARAJU:  I think we should ask the foreperson.
17              THE COURT:  I'm sorry?
18              MR. KAMARAJU:  Could we just have two minutes?
19              THE COURT:  A couple of minutes.
20              (Counsel conferred)
21              THE COURT:  Please be seated.
22              I'm going to hear first from the defense.
23              MR. KAMARAJU:  Your Honor, I think we would adhere to
24    our proposal that I think your Honor should question the
25    foreperson first to, one, identify which juror made this
```

O7CVGUOT

1    disclosure; and, two, understand what the extent of the

2    disclosure is.

3         During that inquiry I think your Honor, as naturally

4    would, should at the beginning caution the juror to not

5    disclose anything about the deliberations, and limit their

6    answers to specifically the disclosure about the Google.

7         And I would propose that inquiry should happen not in

8    the box, but in the robing room.

9         MR. FINKEL:  So, your Honor, obviously it's unclear

10   exactly what the information is.  They have the indictment,

11   right, which names William Je.  They've obviously heard about

12   him.  So if it's -- well, we don't necessarily oppose what

13   defense counsel has proposed.  We certainly agree that any

14   inquiry the Court -- seems to be another note?

15         THE COURT:  Yes.  If you'll just finish your sentence.

16         MR. FINKEL:  I was going to say, we agree the inquiry

17   should be limited.  We provided a case cite to your clerks and

18   to defense counsel, *U.S. v. Farhane,* 634 F.3d 127.  And it

19   describes about the court's broad discretion in how to handle

20   these sorts of issues.

21         And so largely this is within your Honor's discretion.

22   Certainly there does not seem to be any taint, based on the

23   content of the letter.  They seem to be very specific about it.

24         THE COURT:  So I've received another note from the

25   jury.  It's from 11:16 a.m.  I am making it Court Exhibit No.

O7CVGUOT

1    4.  It's dated today's date and signed by the foreperson.

2         It states:  We, the jury, per the last -- no, per last

3    note, we have stopped deliberations pending instruction.

4    Should we continue to pause or may we resume while you review?

5         So I'd like to call the foreperson into the robing

6    room, along with counsel.

7         MR. KAMARAJU:  Thank you, your Honor.

8         Your Honor?  Did you want Mr. Guo to be back there?

9         THE COURT:  Are you making that request?

10        MR. KAMARAJU:  No, your Honor, we weren't.  We

11   weren't.  The marshals just asked.  We're not making a request.

12        THE COURT:  Okay.

13        (In the robing room)

14        (Foreperson present)

15        THE COURT:  At 10:49, I received a note from the jury.

16   It says:  We, the jury, one of the jurors disclosed they had

17   Googled William Je this morning.  And it's signed by the

18   foreperson and dated today's date.  And I made it Court Exhibit

19   No. 3.  We have with us the foreperson of the jury, Juror No.

20   1.

21        I received another note at 11:16 a.m.; it is Court

22   Exhibit No. 4, also signed by the foreperson, dated today's

23   date.  It states:  We, the jury, per last note, we have stopped

24   deliberations pending instruction.  Should we continue to pause

25   or may we resume while you review?

O7CVGUOT

1             So first I want you to listen to my questions very,

2      very carefully and only answer what I'm asking.  Above all, I

3      don't want you to state anything about the deliberations; where

4      you stand, for example, as to whether or not the defendant is

5      guilty or not guilty.  You understand?

6             FOREPERSON:  Yes.

7             THE COURT:  All right.

8             My first question is which juror?

9             FOREPERSON:  No. 2.

10            THE COURT:  Okay.  And you say that he stated that he

11     had Googled William Je.

12            Did he state anything further, for example, about what

13     he had found out?

14            FOREPERSON:  No.

15            THE COURT:  Did he state anything beyond the fact that

16     he had Googled William Je?

17            FOREPERSON:  She stated why she did it, and that was

18     it.

19            THE COURT:  Was everyone -- were all the jurors in the

20     room at that time?

21            FOREPERSON:  Yes.

22            THE COURT:  And from your observation, do you think

23     that everyone heard that?  I know it's impossible for you to

24     say what someone else heard, but based on your observation?

25            FOREPERSON:  Yes.

O7CVGUOT

| | |
|---|---|
| 1 | THE COURT: Okay. I'm going to excuse you for now. I |
| 2 | don't want you to discuss what we have discussed. |
| 3 | FOREPERSON: Okay. |
| 4 | THE COURT: All righty. |
| 5 | (Foreperson not present) |
| 6 | MR. FINKEL: Your Honor, you should instruct the |
| 7 | foreperson to not continue deliberations while we continue |
| 8 | this. |
| 9 | THE COURT: I think that they have said they've |
| 10 | paused. |
| 11 | MS. SHROFF: Right. |
| 12 | THE COURT: So I propose bringing in No. 2 at this |
| 13 | time. |
| 14 | MR. FINKEL: Your Honor, to the extent I may, to the |
| 15 | extent your Honor feels it appropriate, obviously it's within |
| 16 | your Honor's discretion, I think one question for Juror No. |
| 17 | 2 -- back to it. |
| 18 | To the extent your Honor feels it appropriate to ask, |
| 19 | whatever Juror 2 may have seen, obviously could be any number |
| 20 | of things. The question is whether that juror can place |
| 21 | whatever they saw out of their mind and just focus on what is |
| 22 | evidence at the trial, just consistent, of course, with your |
| 23 | Honor's general instructions. The government thinks that would |
| 24 | be an appropriate inquiry at this point. |
| 25 | MS. SHROFF: No. |

O7CVGUOT

1          MR. KAMARAJU:  So obviously --

2          MS. SHROFF:  That's not the --

3          MR. KAMARAJU:  Sorry.

4          Obviously it will depend on what is said.  But there

5    is a more fundamental question of the juror disregarding the

6    Court's instruction not to Google or do any outside research,

7    which is independent from their ability to set aside -- sorry,

8    which is independent from their ability to set aside whatever

9    they found.  So I'm not proposing any course of action now, but

10   I am saying there are two distinct issues here that we're going

11   to have to deal with.

12         MS. SHROFF:  Actually, I think there are three, your

13   Honor.

14         THE COURT:  I see a third issue.

15         MS. SHROFF:  Right.

16         THE COURT:  A third issue is --

17         MS. SHROFF:  What she said to the jury about why she

18   Googled William Je.  That's the biggest question.

19         The question is how far the taint goes into the jury.

20   This should be very -- I'm sure the Court knows this.  The

21   first step is just to ask her what is it that she said to the

22   entire jury pool, and stop there.  Because I personally, given

23   her answer, would like to talk to an appeals lawyer before I

24   take the next -- I think the most important question isn't what

25   she did, the first question is what she said to the jury about

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

O7CVGUOT

1   what she did.  This isn't just about what -- that particular

2   juror.

3            MR. FINKEL:  I understand that.  Obviously we should

4   see what she says.  But the ordering is important here.  She

5   explained why she did something, not the result of what she had

6   done.

7            MS. SHROFF:  You don't know that.

8            MR. FINKEL:  Can I please finish, Ms. Shroff?

9            You're right, we don't.  We need to see what she says.

10   But please just please, thank you.

11            It would be different -- and we'll see what she says.

12   But it's obviously different if Juror No. 3 said, and

13   apparently did not -- Juror No. 2, excuse me, said — apparently

14   did not — I Googled it and, as a result of what I Googled, I

15   believe this.

16            She said, We were discussing something in here and

17   because of that I Googled something.  And it appears the rest

18   of the jury said, Stop.  And the jury did the right thing.  So

19   I think that's important.  And we'll see what she has to say

20   and the government will evaluate.

21            THE COURT:  If she said more than "I Googled William

22   Je," then there's the question of what impact did that have on

23   the 11 other jurors.

24            MR. FINKEL:  Absolutely, your Honor.

25            But if she said --

O7CVGUOT

1          THE COURT:  In other words, I don't see how I cannot

2     interview every single juror.

3          MS. SHROFF:  That's correct.

4          MR. FINKEL:  We have to see what, I think, she said

5     first.  That would be the government's proposal, your Honor.

6          For example, if she says, I saw that William Je was

7     charged in this case, they know that.  He's on the indictment.

8     So there would be no prejudice there.

9          So it depends what the information is.

10         THE COURT:  So there are two pieces:  What did she

11     see, what did she learn; and number two, what did she say.

12         MR. FINKEL:  The government agrees.  The government

13     agrees.

14         MS. SHROFF:  I just think the order is the opposite.

15     What she told the jury is more vital than what she saw or what

16     she comprehended.

17         The first question, the Court is correct, is what did

18     she say to the jury as to why she Googled William Je.  And then

19     I think every juror must be questioned.  I can't imagine that

20     that taint should not be explored.

21         THE COURT:  I don't think we should assume that he has

22     adequately characterized what happened.

23         MS. SHROFF:  Oh, that's true.

24         THE COURT:  I think I should first ask her whether she

25     made any statements concerning William Je.  I think that's

O7CVGUOT

1   where I have to start.

2           MR. FINKEL:  It would be about the Google Search

3   though.  Of course they are talking about --

4           THE COURT:  About the Google Search, yes.

5           MR. FINKEL:  Thank you, your Honor.

6           (Juror present).

7           THE COURT:  Hello.

8           JUROR:  Hi.

9           THE COURT:  You're Juror No. 2, right?

10          JUROR:  Yes.

11          THE COURT:  I want you to listen very, very carefully

12  to my questions, and only answer the question that I'm asking.

13          Understood?

14          JUROR:  Yes.

15          THE COURT:  Did you say this morning in the jury room

16  that you had Googled William Je?

17          JUROR:  Yes.

18          THE COURT:  Did you state what you had learned?  This

19  is a yes-or-no question.

20          FOREPERSON:  No.  I mean -- yes, yes.

21          THE COURT:  And what is it that you said?

22          FOREPERSON:  I just -- because the indictment

23  mentioned also William Je and, frankly, I just wanted to know

24  if there was also a case on William Je.  So what I told them

25  was that -- I said, Well, this case also involves William Je.

O7CVGUOT

1   So we are, you know -- it's because what we were -- there was

2   one person --

3          THE COURT:  Well, no, no, no.  I can't have you

4   discuss anything that was said by somebody else.

5          JUROR:  Okay.

6          THE COURT:  I am concerned about what you said to the

7   others.

8          JUROR:  I just told them that I had did -- that I

9   wanted to know if there was also a case against William Je.

10  And I said that I did Google his name, and that there -- you

11  know, there was also a case against him.  That's all I said.

12         THE COURT:  That's it?

13         JUROR:  That's it.

14         THE COURT:  That you Googled William Je; there was a

15  case against William Je.

16         JUROR:  Yes.

17         THE COURT:  Okay.  You may step out.

18         (Juror not present)

19         THE COURT:  Okay.  So I did not ask whether she could

20  put aside what she learned, because I wanted to first ask

21  whether you want me to ask any additional questions before I go

22  there.

23         MR. KAMARAJU:  I think it would be helpful to know

24  when she conducted this Google Search.

25         MS. SHROFF:  And when she told the jurors, just so

O7CVGUOT

1    that we have that clear on the record, if the Court wants.

2        But, your Honor, I think she mentioned before the last

3    two answers as to why she Googled William Je. So I wasn't

4    clear if she also shared that information with the jury as to

5    why she Googled him.

6        MR. FINKEL: So --

7        MS. SHROFF: Because we cut off the answer — rightly

8    so — but maybe there is a more precise or narrow way to ask why

9    she did it.

10       MR. FINKEL: The government has no objection to the

11   two questions, when she Googled it and what time she told the

12   jury approximately. I think those are fine.

13       The "why" question seems to go into their

14   deliberations. And I think your Honor appropriately cut her

15   off. The why seemed to be a response to something that was

16   happening in the jury room, that's my take on it. I obviously

17   don't know.

18       It also seems that what she learned is not anything

19   different than information that they have. Because they have

20   the indictment; they know William Je was charged.

21       THE COURT: So I did not get the impression that the

22   reason had to do with something going on in the jury room. It

23   seemed to me that it was her individual question about William

24   Je. She certainly didn't identify that this was part of their

25   discussion. And I do agree that the only question is when did

O7CVGUOT

1    she do the search and when did she tell the jurors.

2           Would you have her come back in.

3           MS. SHROFF:  Your Honor, would the Court consider

4    asking if the jurors deliberated between the first and the

5    second note?

6           MR. SCHIRICK:  In other words, is it clear that once

7    Juror No. 2 said what she said, that they paused deliberations

8    right away.

9           MS. SHROFF:  Because there was a slight lapse.

10          THE COURT:  Okay.

11          (Juror present)

12          THE COURT:  So, once again, I caution you to just

13   answer the question that I'm asking.

14          When did you do the Google Search?

15          JUROR:  This morning.

16          THE COURT:  What time?

17          JUROR:  Six in the morning, more or less.

18          THE COURT:  When did you tell the other jurors that

19   you did the Google Search?

20          JUROR:  Like half hour ago, 40 minutes ago.

21          THE COURT:  So right now it's 11:33.  You think that

22   you told them around 11?

23          JUROR:  I didn't look at the time, but it was right

24   when they sent you the note.

25          THE COURT:  And when you told them, did the jury

O7CVGUOT

1    continue deliberating or was there a stop at that point?

2            JUROR:  They stopped.

3            THE COURT:  Okay.  Thank you.  You can step out.

4            (Juror not present)

5            THE COURT:  So I think at this point the appropriate

6    question is whether she can set aside anything that she may

7    have learned about William Je.  Agreed?

8            MS. SHROFF:  No, your Honor.

9            MR. FINKEL:  Yes, your Honor.

10           MS. SHROFF:  I think the fact that she has broken one

11   of the rules imposed by the Court, and a rule that the juror is

12   supposed to follow, I think that that necessarily means that

13   she cannot continue as a juror.  I'm happy to take some time

14   and do the research, but I think a juror who breaks the Court's

15   rule -- and I believe that's what happened with *Schulte*.

16           MR. KAMARAJU:  That was Judge Crotty's ruling.

17           MS. SHROFF:  The moment somebody breaks a rule, I

18   don't think they can continue deliberating as part of the jury.

19           MR. FINKEL:  So, your Honor, we provided a case cite

20   to your staff and also to the defense, it's *U.S. v. Farhane,*

21   provides that the district court has broad discretion in how to

22   handle this matter.  I just read this case, so if I have a fact

23   wrong, please forgive me.

24           But I think what happened in that case was a juror

25   Googled a co-defendant or a co-conspirator and found out they

O7CVGUOT

1    had pled guilty, which was information that, as it turned out,

2    the defense had made a point of in their closing.  In other

3    words, it was information -- and again, forgive me if I have a

4    fact wrong, I'm sorry.  It was information that the jury knew;

5    so there was no harm, no prejudice, and the conviction was

6    upheld.

7            Given what we know, which is Juror No. 2 Googled

8    William Je and found out that he had been charged, and that

9    that information is known to them because the indictment was

10   sent back to them, which lists William Je, was sent back as

11   agreed by the parties, the jury stopped.  There was no further

12   deliberation.

13           I think the only remaining inquiry that would be

14   appropriate, this is the government's view, is to say to Juror

15   No. 2, Can you follow my directions, are you going to follow my

16   directions and put out of your mind, as your Honor suggested,

17   whatever you may have seen?  And if the Court is satisfied in

18   your Honor's discretion that Juror No. 2 can do those things,

19   the government's view is that the Court is on firm ground to

20   continue.

21           MS. SHROFF:  Your Honor, may I?

22           So *United States v. Farhane* was an Eastern District

23   terrorism case.  In that case, the co-defendant's guilty plea

24   was part and parcel of the record, as I recall it.

25           Here, William Je is being charged, was not front and

O7CVGUOT

1    center before the jury.

2            But put that issue aside.

3            So far the questions that have been posed to Juror No.

4    2 do not include what else she found out during a Google

5    search.  So far the record indicates what she shared with the

6    11 other jurors after she did the Google search.

7            So at the very least this Court would have to inquire

8    whether or not she read anything more about William Je, then

9    take the next step and inquire whether or not that would impact

10   her thought process, and then do the reassurance step that the

11   government suggests.

12           There is zero argument from the defense side that this

13   Court does not have wide discretion.  Of course it goes without

14   saying this is all within the Court's discretion, 100 percent.

15   How that discretion is exercised though is what we're talking

16   about.  And it would be the defense's position that the inquiry

17   has to be a minute step-by-step.  And a juror who disregards

18   direction and conversation is curtailed by the other jurors

19   would be a juror that should be replaced.

20           THE COURT:  But is that your application?  Is that the

21   application of the defense?

22           MS. SHROFF:  Actually, we haven't -- I'm just trying

23   to think through the steps.  I'm not really --

24           MR. KAMARAJU:  I think before we make that

25   application, your Honor, I think it does make sense for the

O7CVGUOT

1    Court to inquire as to what else she saw.

2              MS. SHROFF:  Or read.

3              MR. KAMARAJU:  Or read.

4              MS. SHROFF:  And frankly, I'd like to talk to an

5    appeals lawyer.

6              THE COURT:  Well, we don't have time for that.

7              MR. KAMARAJU:  I would propose, which I think the

8    government is on board with, I would propose starting with

9    that, is just asking her -- and I understand that if I'm going

10   to move to replace her anyway, maybe that is -- maybe that is a

11   pointless step.  But I think for the record purpose, at least,

12   it makes sense to get that information out.

13             MR. FINKEL:  Your Honor, just if I may make two

14   points.

15             One, no objection to the question of what, if

16   anything, else she learned, aside from the fact that he was

17   charged.  And two, just to note, *Farhane* is a Second Circuit

18   case, that's what I was referring to.  It was, I guess, in the

19   Eastern District, the trial court, but it's a Second Circuit

20   case.

21             THE COURT:  Would you have her brought in again.

22             (Juror present)

23             THE COURT:  So you said that when you Googled William

24   Je, you found out that he had been charged in this case?

25             JUROR:  Yes.

O7CVGUOT

1          THE COURT:  Did you find out additional information

2     about William Je?

3          JUROR:  No.

4          THE COURT:  There's nothing other than the fact that

5     he was charged that you learned from your Google Search?

6          JUROR:  No.

7          THE COURT:  In other words, yes, there was nothing

8     else?

9          JUROR:  Yes, there was nothing else.

10          THE COURT:  Okay.

11          So you know that jurors are not permitted to read,

12     watch, or listen to anything from any source concerning

13     anything having to do with this case; correct?

14          JUROR:  Yes.

15          THE COURT:  Going forward, will you be able to follow

16     that rule?

17          JUROR:  Yes.

18          THE COURT:  You feel 100 percent confident about that?

19          JUROR:  Yes.

20          THE COURT:  Okay.  You may step out.

21          (Juror not present)

22          THE COURT:  So is there an application that I replace

23     the juror?

24          MR. KAMARAJU:  Can I have 30 seconds?

25          THE COURT:  Okay.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

O7CVGUOT

```
1              (Counsel conferred)

2              MR. KAMARAJU:  Yes, your Honor, we move to replace the

3    juror.  I think the fact that she disregarded an instruction

4    that you'd given repeatedly at every day of trial is a

5    sufficient basis to dismiss her.

6              I think while the juror gave you an answer that she

7    would not do that, that's the same answer that she would have

8    given you during voir dire.  She's already now proven that she

9    cannot satisfy that obligation.  And I think -- well, it may be

10   credible is it seems highly -- it seems very difficult for me

11   to believe that when you Google William Je, that the only and

12   sole thing that comes up is the fact that he has been charged

13   in this case.  And so even if she didn't read another article,

14   we all know how Google works, the search results from potluck.

15             And so from the defense's perspective, a juror who's

16   now disregarding an instruction that the Court gives every day

17   repeatedly, is one that should be excused.  And the authority

18   for that, as I said before, is United States v. Schulte, among

19   other cases.

20             MS. SHROFF:  Also, your Honor, imagine if you run a

21   search, and even if you just read one article, right, would the

22   first sentence have to say "William Je is charged in a case,"

23   and you stop right after that.  It's very hard to sort of

24   fathom how her answer pans out in a Google search.  One could

25   run a Google search.  That's what I was concerned about in the
```

1    response.

2          MR. FINKEL:  Your Honor, the government opposes that

3    application, and believes you have broad discretion here to

4    deny it, and there are a few reasons why.

5          The first is you can judge — your Honor can judge —

6    that juror's credibility.  And what the juror told you is what

7    she said, she said happened.

8          And if you perform a Google search, as we all, I'm

9    sure, have, undoubtedly, that doesn't mean you click on an

10   article; it doesn't mean you read articles.  She said she

11   Googled it.  And it would be likely to Google William Je, yes.

12         And if, for example, the press release from our office

13   comes up as the first or second or third thing or news article

14   saying William Je was charged in this case, there is no

15   additional information that has been introduced into Juror No.

16   2's brain or certainly the jury overall's brain that is

17   anything unknown to them, because they know that William Je was

18   charged.  So do they know Yvette Wang was charged, because it's

19   on the indictment.  They have the charging instrument.  They

20   have the allegations that the government has made in the

21   indictment.  The fact that they -- they also have instructions

22   about why -- what to think about just one person being on trial

23   as opposed to other people being on trial.

24         Your Honor is best positioned — and the only person

25   who is positioned — to use your Honor's discretion, make a

O7CVGUOT

1    credibility assessment, and an assessment of this juror's

2    ability to follow directions.

3            The government's view is that she was candid with your

4    Honor; said she did it once this morning, learned information

5    that the jury already knows; the jury stopped right away; they

6    are ready to renew their deliberations, and we think we should

7    let them.

8            MR. KAMARAJU:  There is one point I would like to make

9    about that.

10           William Je is charged in an obstruction count.  That

11   does not appear in the indictment.  So we don't know what she

12   read, but certainly if the title of an article says "William Je

13   Charged in an Obstruction Count," that is information that she

14   would not have.  And the difficulty is I don't see how you can

15   ask for a question that doesn't get to that.

16           So I do think that there is potential for information

17   that could be out there that the juror does not know already,

18   and I'm not sure that there's an easy way for the Court to get

19   there that doesn't trip up.

20           THE COURT:  Which is the next alternate who's up?

21           THE LAW CLERK:  Alternate No. 2.

22           THE COURT:  Okay.  I think that it is appropriate that

23   she be substituted, and I am going to excuse her here.

24           We'll have to bring in Alternate No. 2.

25           Where is he coming from?

O7CVGUOT

1          THE LAW CLERK:  He's on his way.  He said he'll arrive

2     at around 12:30.

3          THE COURT:  My goodness.  Okay.

4          So if you'll have her brought back in.

5          MR. FINKEL:  Your Honor, it seems like your Honor has

6     made its decision and so I won't go any further, unless there's

7     one additional piece I can be heard on.

8          THE COURT:  You can talk.

9          MR. FINKEL:  If your Honor would do what defense

10    counsel suggested, to the extent this is still an open issue,

11    which is, ask whether she learned about anything other than the

12    fact that he was charged in this case, which is to say the

13    specifics of the obstruction count.  And for what it's worth,

14    the facts underlying that obstruction count are in the

15    indictment; they are described in the indictment, and also were

16    described at trial, Bo Collins testified about it.  It was

17    about him, William Je, trying to move money offshore when he

18    found out that the money was seized.

19         So those facts are in evidence.  They are known.  They

20    are known to the jury.  And it's certainly known to the jury

21    that he's a co-conspirator and was charged as a co-conspirator.

22    So that's the government's view.

23         The government wouldn't oppose -- and since we're

24    going to -- if we're really thinking about kicking her off and

25    starting anew, see any harm in asking that additional question

O7CVGUOT

1    anyway.  Maybe it will satisfy your Honor.

2              THE COURT:  But I did ask her whether she learned

3    anything in addition to the fact that he had been charged.

4              MR. FINKEL:  Right.  So that's my point, I guess,

5    really, is sort of in response to defense counsel.  There's no

6    information to suggest that she learned about the obstruction

7    count.

8              I don't mean to belabor this, your Honor.  If your

9    Honor has made a decision, you've made a decision; we can move

10   on.  I don't mean to intrude.  Obviously the government and I'm

11   sure all the parties don't want to have to start deliberations

12   anew; but if that's what your Honor has decided, that's fine.

13             THE COURT:  So just so you know, when I did the Google

14   search, the first thing that comes up is the Department of

15   Justice press release, and then is the SEC press release.

16   So -- and then, of course, there are other -- there are

17   other -- there's an FBI --

18             MR. KAMARAJU:  They do a lot of press, your Honor.

19             MR. FINKEL:  Which is all about this case, obviously.

20             But I understand your Honor's point.  And if your

21   Honor has decided to strike her, then the government

22   understands that and we'll continue.

23             THE COURT:  Okay.  So let's bring her back.

24             After I excuse her, I'm going to call the jurors in

25   just to remind them that they are not to deliberate any

 1    further.

 2              MR. KAMARAJU:  Yes, your Honor.

 3              (Juror present)

 4              THE COURT:  So I want to thank you for the weeks that

 5    you have put into this process, but I'm going to have to excuse

 6    you.

 7              JUROR:  Okay.

 8              THE COURT:  Thank you.

 9              JUROR:  Sorry.

10              (Juror not present)

11              THE COURT:  All right.  Let's go back.

12              MR. KAMARAJU:  Thank you, your Honor.

13              (In open court)

14              THE COURT:  Please have the jurors brought in.

15              (Jury present)

16              THE COURT:  Members of the jury, you must cease your

17    deliberations till I tell you that you can begin again.  I'm

18    hoping that I will be doing that shortly.

19              You may go back.

20              (Jury not present)

21              THE COURT:  You may be seated.

22              I want to know whether the attorneys would like me to

23    retrieve any of the items that have already been delivered to

24    the jury room?

25              MR. FINKEL:  The government doesn't believe that's

O7CVGUOT

1    appropriate.

2              MR. KAMARAJU:  I'm sorry, I didn't hear.

3              MR. FINKEL:  I said no.

4              MR. KAMARAJU:  I guess the only question would be

5    whether the juror who was just excused left any notes on any of

6    the documents; but other than that, we don't have an issue.

7              THE COURT:  I'm going to have my staff collect various

8    items and review them.  And then if there are no notes, would

9    you like me to have those items returned to the jury room?

10             MR. KAMARAJU:  That's fine with us, your Honor.

11             MR. FINKEL:  Yes.  I mean -- and with respect to, for

12    example, Z-9, the binders, I think they each have one, the

13    government has no objection to taking her binder and, to the

14    extent she wrote on someone else's binder, that's fine.  But

15    those materials that the other jurors have, I don't think that

16    they should be taken away from them, that's the government's

17    point.  That's all.

18             THE COURT:  I'm not sure if I'm following what you're

19    saying.

20             MR. FINKEL:  I'm sorry, your Honor.

21             So, for example, this morning the jury requested GX

22    Z-9, which is a binder.  They each had their own binder.  So

23    Juror No. 2's binder, it would make sense we can take it out of

24    the jury room, I understand.  The rest of the jurors' binders,

25    however, I think they should be allowed to keep.

O7CVGUOT

| | |
|---|---|
| 1 | THE COURT:  So that assumes that they are separated. |

1          THE COURT:  So that assumes that they are separated.

2    If they are, you know, if everyone has their materials at their

3    seat, that's fine.  I don't know if they are in a pile.  I just

4    don't know what state they are in.

5          MR. FINKEL:  Your Honor's point is well-taken.

6          THE COURT:  Okay.  All righty.

7          We'll let you know when the alternate arrives.

8          MR. FINKEL:  Thank you, your Honor.

9          (Recess)

10          THE COURT:  Please be seated.

11          I'm told that Alternate No. 2 has arrived.

12          The court security officer retrieved the GX Z-9 binder

13    and the GX 417-T exhibit, neither of which had any markings.

14    Also retrieved were Juror No. 2's two steno notebooks, as well

15    as her copy of the indictment and the jury charge.  I will

16    provide a fresh copy of the indictment and the jury charge to

17    the alternate who will be substituting, and will be returning

18    to that alternate the steno notebooks that he created.

19          I'm first going to ask the alternate to come out so

20    that I can question him as to whether he has followed my rules.

21          (Juror present)

22          THE COURT:  Please be seated.

23          You're Alternate No. 2.

24          JUROR:  Yes.

25          THE COURT:  You may recall that I have repeated

O7CVGUOT

1    certain rules throughout the trial.  One is that you are not to

2    discuss the case with the other jurors or with anyone else;

3    another is that you're not to permit anyone to discuss the case

4    in your presence.  Have you complied with those rules?

5              JUROR:  Yes, I have.

6              THE COURT:  In addition, I have instructed all of the

7    jurors to not read, watch, or listen to anything from any

8    source that touches on the subject matter of this trial, you

9    remember that?

10             JUROR:  Yes, I do.

11             THE COURT:  Have you complied with that?

12             JUROR:  Yes, I have.

13             THE COURT:  All righty.  I am going to be substituting

14   you in for Juror No. 2.  So you may move to the next seat over

15   and I'll have the jurors come in.

16             (Jury present)

17             THE COURT:  Please be seated.

18             Members of the jury, Alternate Juror No. 2 is now

19   Juror No. 2.  This means that you're going to have to wipe the

20   slate clean.  You are to disregard discussions that you

21   previously had with the original Juror No. 2, and recommence

22   anew, completely freshly.  So don't refer back to things that

23   were said when the prior Juror No. 2 was part of the jury.  You

24   must start from square one.  Everybody understand?

25             THE JURY:  Yes.

O7CVGUOT

1          THE COURT:  Okay.  Everybody says yes.

2          All right.  You may commence your deliberations.

3          (At 12:40 p.m., the jury retired to deliberate)

4          THE COURT:  Please be seated.

5          I will let you know if I hear from the jury.

6          Is there anything that you want to let me know?

7          MS. MURRAY:  Your Honor, I just wanted to inquire

8    whether the Court would be inclined to let the jury stay later

9    than 5 today if they would like to continue their

10   deliberations.

11         THE COURT:  Oh, yes.

12         MS. MURRAY:  Thank you.

13         THE COURT:  All righty.  I'll let you know.

14         (Recess pending verdict)

15         THE COURT:  Please be seated.

16         Please have the jurors brought out.

17         MR. KAMARAJU:  I just had a question, your Honor.

18         I was wondering if we're going to do what Judge Stein

19   did earlier in the *Menendez* case, and just say to the jurors or

20   send them a note that says something to the effect of, you

21   know, we plan to break as normal at 5 o'clock.  If you want to

22   stay later than that, send us a note or something like that.

23         THE COURT:  I'm going to tell them that directly.

24         MR. KAMARAJU:  Okay.

25         (Jury present)

O7CVGUOT

1          THE COURT:  You may be seated.

2          Members of the jury, I just wanted to let you know

3   that if you'd like, you're welcome to stay late this evening.

4   If that's what you'd like, you'll just send me a note to that

5   effect.

6          All righty.  If you need to ask me a question, of

7   course you'll have to send me a note.

8          But let me tell you that, of course, I would have

9   dinner brought in for you.

10          Okay.

11          (Jury not present)

12          THE COURT:  I'll let you know if I hear from them.

13          MS. MURRAY:  Thank you, your Honor.

14          (Recess pending verdict)

15          THE COURT:  Could we have the jurors brought in,

16   please.

17          (Jury present)

18          THE COURT:  Please be seated.

19          Members of the jury, I received your note at 3:45

20   p.m., which states:  We, the jury, unfortunately, the jury is

21   unable to stay past 5 p.m. for deliberations.  It's signed by

22   the foreperson and dated today's date.

23          So you've come to the end of your work for today.

24   You'll return on Monday to continue with your deliberations.

25   So all deliberations must cease starting now.  And when you

O7CVGUOT

1    return on Monday, you'll recommence.

2              So it's the same old rules as before:  Don't discuss

3    the case amongst yourselves or with anyone else.  Don't permit

4    anyone to discuss the case in your presence.  Don't read,

5    watch, or listen to anything from any source that touches upon

6    the subject matter of this case.

7              You will recommence deliberations when you're all in

8    the jury room and the foreperson says it is time to recommence.

9              So thank you, and see you back on Monday.

10             Have a good weekend.

11             (Jury not present)

12             THE COURT:  Please be seated.

13             Is there anything from the parties?

14             MR. KAMARAJU:  Not from the defense, your Honor.

15             MS. MURRAY:  I just wanted to confirm what time you

16    would like the parties to be here on Monday morning, your

17    Honor.

18             THE COURT:  So I see no need for you to come to the

19    courtroom at any particular time.  We'll let you know when we

20    get a note.

21             MR. KAMARAJU:  Thank you, your Honor.

22             MS. MURRAY:  Thank you, your Honor.

23             THE COURT:  Have a good weekend.

24             (Adjourned to July 15, 2024 at 9 a.m.)

25