

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

January 13, 2025

**BY EMAIL**
Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY

Re:   *United States v. Miles Guo*, S3 23 Cr. 188 (AT)

Dear Judge Torres:

The Government writes in response to the Court's January 6, 2025 email asking the Government "to opine, by January 13, 2025 . . . on Mr. Guo's financial eligibility for appointment of [Criminal Justice Act or "CJA"] counsel." To the extent Guo has submitted a CJA Form 23 financial affidavit in connection with his motion to substitute counsel, *see* Dkt. 483, that affidavit has not been disclosed to the Government. Accordingly, the Government is currently unable to take a position on Guo's eligibility for publicly funded counsel under the CJA. *Cf. United States v. Avenatti*, 550 F. Supp. 3d 36, 53 (S.D.N.Y. 2021) (noting that where Government lacks "knowledge of what is contained in the defendant's CJA form and accompanying affidavit," it is "unable to advise the Court on its view of the accuracy of that information, or whether efforts to recoup fees would be appropriate").[1]

Setting aside the defendant's financial eligibility for court-appointed counsel, for the reasons set forth below, the Government respectfully urges the Court to exercise its considerable discretion to resolve Guo's substitution of counsel motion in a manner that prioritizes no further sentencing delays. At this stage of this long-running criminal case, it is of paramount importance to the public and to the victims—who are entitled to timely restitution—that the defendant's sentencing proceed without further delay. Specifically, consistent with Second Circuit precedent, the Government respectfully requests that the Court deny the defendant's motion in full or in part and order that retained trial counsel remain engaged as either primary or standby sentencing counsel. In addition, if appropriate, the Court should require the defendant to periodically submit updated financial affidavits and order him to reimburse any public expenditures on his behalf that are later deemed to have been improper.

---

[1] If the Court deems it appropriate, the Government stands ready to review and respond to Guo's financial affidavit as well as any of the *ex parte* briefing concerning his request for substitution of counsel.

### A. Relevant Background

Guo was arrested on March 15, 2023. The Federal Defenders of New York represented him at the initial appearance, where the assistant federal defender noted that "Mr. Guo is not eligible for representation by the Federal Defenders' office," and it was expected that Guo's then-retained counsel, Josh Klein and Guy Petrillo, would represent him in this case. *See* Dkt. 14 at 4. On March 23, 2023, William Baldiga of the Brown Rudnick firm filed a notice of appearance as retained counsel. Dkt. 13; *see also* Dkts. 12, 16 (motion by other Brown Rudnick lawyers to appear *pro hac vice*).) On July 11, 2023, Sidhardha Kamaraju of the Pryor Cashman firm filed a notice of appearance as retained counsel. Dkt. 103; *see also* Dkts. 104-106 (additional Pryor Cashman attorneys' notices of appearance). Mr. Kamaraju filed a motion for substitution of counsel that same day. The Court granted it, relieving the Brown Rudnick attorneys from this case. Dkt. 108. On September 1, 2023, Sabrina P. Shroff, who is not a member of the Pryor Cashman firm, filed a notice of appearance as retained counsel and joined Guo's defense team. On November 27, 2023, E. Scott Schirick filed a notice of appearance as retained counsel and joined Guo's defense team. The Government understands that Ms. Shroff is also a member of the CJA Panel in this District.

On July 17, 2024, a jury convicted Guo of nine counts following a nearly eight-week trial. The Court set sentencing down for four months later on November 19, 2024. Guo first sought a sentencing adjournment on September 8, 2024, asking for a "one-time, 60-day extension." Dkt. 466. The Court granted a three-week adjournment instead, moving sentencing back to December 9, 2024. *Id.* Guo then sought a second sentencing delay on October 10, 2024. The Court agreed to move sentencing back to January 6, 2025, and ordered Guo to file his sentencing submission by December 16, 2024. Dkt. 472. Guo failed to file a sentencing submission. On December 20, 2024, the Court held a substitution-of-counsel hearing at which it heard *ex parte* from the defense and adjourned Guo's sentencing *sine die*. *See* Dkt. 483.

### B. Applicable Law

"The determination of whether or not the motion for substitution of counsel should be granted is within the discretion of the trial court." *Morris v. Slappy*, 461 U.S. 1, 13 (1983). A defendant's right to counsel of their choice "is not an absolute right," and "[a]bsent a conflict of interest, a defendant in a criminal case does not have the unfettered right to retain new counsel." *United States v. Brumer*, 528 F.3d 157, 160 (2d Cir. 2008). To determine whether to grant a motion to substitute counsel in a criminal case, "the court must consider the risks and problems associated with the delay, and whether substitutions would disrupt the proceedings and the administration of justice." *Id.* In view of these harms, "withdrawal of retained criminal counsel after a general notice of appearance has been entered is not viewed with favor by the courts." *United States v. Herbawi*, 913 F. Supp. 170, 171 (W.D.N.Y. 1996).

The harms from delayed proceedings become more acute as a criminal case reaches more advanced stages. The Government—and Guo's thousands of victims—have "a significant interest in the finality of the verdict and in getting [Guo] sentenced." *United States v. Sabir*, 628 F. Supp. 2d 414, 417 (S.D.N.Y. 2007). Courts therefore "must impose sentence without unnecessary

delay." Fed. R. Crim. Pro. 32(b)(1). There are meaningful "harms arising from delayed sentencing," including leaving "victim[s] in limbo concerning the consequences of conviction." *United States v. Ray*, 578 F.3d 184, 198 (2d Cir. 2009) (quoting Wright & Miller, 3 FEDERAL PRACTICE AND PROCEDURE § 521.1 (3d ed. 2004)). Among other entitlements, Guo's victims have a statutory "right to full and timely restitution"—a process that can only commence after imposition of sentence—and the "right to proceedings free from unreasonable delay." 18 U.S.C. § 3771(a)(6)-(7).

For these reasons, a court acts "well within its discretion in refusing to allow substitution of counsel on the eve of sentencing." *United States v. Barreras*, 494 F. App'x 115, 119 (2d Cir. 2012) (affirming denial of substitution motion filed where, like here, "[s]entencing had already been adjourned twice"); *see also, e.g.*, *United States v. Delva*, No. 12 Cr. 802 (KBF), 2015 WL 756919, at *1 (S.D.N.Y. Feb. 19, 2015) (denying substitution motion made a week before sentencing where "appointment of new counsel at this point would substantially and unnecessarily delay sentencing"); *United States v. Kopp*, No. 00 Cr. 189 (RJA), 2007 WL 1747165, at *3 (W.D.N.Y. June 18, 2007) (denying substitution motion as untimely where it was made "33 days before sentencing and after the PSR was prepared").

Denials of motions to change counsel are reviewed for abuse of discretion. *United States v. Simeonov*, 252 F.3d 238, 241 (2d Cir. 2001). Four factors are considered: the timeliness of the motion, the adequacy of the district court's inquiry into its purported basis, whether the attorney-client conflict "was so great that it resulted in a total lack of communication preventing an adequate defense," and whether the defendant "substantially and unjustifiably contributed to the breakdown in communication." *See, e.g.*, *United States v. Hsu*, 669 F.3d 112, 122-23 (2d Cir. 2012). District courts often consult these same factors to guide their resolution of substitution motions. *See, e.g.*, *United States v. Green*, No. 12 Cr. 193 (VLB), 2013 WL 6230091, at *2 (D. Conn. 2013).

The court may exercise its discretion to deny the substitution motion and require retained trial counsel to continue their representation to avoid a delay contrary to the interests of justice. *See, e.g.*, *United States v. Field*, No. 09 Cr. 581 (WHP), Dkt. 569 (S.D.N.Y. Oct. 2, 2012) (denying retained trial counsel's motion to withdraw for lack of payment and ordering counsel to remain engaged via CJA appointment); *United States v. Scarpa*, 691 F. Supp. 635, 636 (E.D.N.Y. 1988) (noting that Court had previously appointed a formerly retained counsel under the CJA rather than substitute counsel "to avoid the delay the appointment of new CJA counsel would inevitably cause given the complexity of the case and the voluminous discovery materials with which original counsel was already familiar").

### C. The Court Should Require Retained Trial Counsel to Remain Engaged to Ensure a Timely Sentencing

Guo's substitution motion was made *ex parte*, and so the Government has limited information about its purported bases. But whether premised on impaired communications with his current counsel, or a purported inability to continue to pay for their services, the Court can and should resolve the motion in a way that avoids further delay of sentencing beyond the three adjournments Guo has already sought and received. If Guo's retained trial counsel is permitted or ordered to withdraw, sentencing would likely need to be delayed for an extended period in order

for Guo's replacement counsel to familiarize themselves with the nearly eight-week trial record memorialized in a transcript that spans more than 6,000 pages as well as a substantial amount of discovery. And that gargantuan task would form only part of the burden of stepping in at this late point, because the sentencing is likely to feature discussion and possibly argument about issues beyond and predating those raised in Guo's criminal trial. Even if the Court finds that Guo may have new counsel, the Court retains broad discretion to fashion a solution that ensures Guo's retained trial counsel remain available to at least assist in the preparation for his sentencing so that the proceeding can be timely scheduled.

There is ample precedent for the Court to deny Guo's motion or grant it in only in part, and thereby avoid a situation where he is represented solely by new counsel who lack experience with the extensive trial and pretrial proceedings in this long-running case.

### D. The Court May Deny Guo's Application in the Interest of a Timely Sentencing

To begin with, the Court may exercise its discretion to deny Guo's motion in full. *First*, it is untimely. Guo's motion came after "[s]entencing had already been adjourned twice," *Barreras*, 494 F. App'x at 119 (affirming denial of substitution motion) and when "appointment of new counsel . . . would substantially and unnecessarily delay sentencing," *Delva*, 2015 WL 756919, at *1 (denying substitution motion). Indeed, Guo's motion was made just two weeks before his twice-adjourned sentencing and nearly a month after issuance of the final PSR—that is, even later than the one denied as untimely in *Kopp*. *See* 2007 WL 1747165, at *3 (denying motion made "33 days before sentencing and after the PSR was prepared"). What is more, "[j]udges must be vigilant that requests for appointment of a new attorney on the eve of trial"—much less on the eve of sentencing—"should not become a vehicle for achieving delay." *United States v. Llanes*, 374 F.2d 712, 717 (2d Cir. 1967). And indeed, one of Guo's victims recently wrote to the Court to describe a scheme in which Guo's followers were reportedly "attempting to manufacture a conflict" between Guo and his retained trial counsel "that could serve as a pretext for Guo to replace his lawyer and further delay the trial [*sic*]." (Jan. 2, 2025 letter submitted by email and under seal.)

*Second*, by holding the December 20, 2024 hearing, the Court gave Guo's motion all of the process it is due—satisfying the second factor for the proper exercise of its discretion. *See Hsu*, 669 F.3d at 123 ("When the defendant's complaints about counsel are fully made to the court, 'the court may rule without more.'" (quoting *Simeonov*, 252 F.3d at 241)).

*Third*, to the extent Guo's motion is premised on a purported breakdown in communications with his retained trial counsel, the Court has discretion to deny the motion unless it finds the conflict "so great that it resulted in a total lack of communication preventing an adequate defense." *United States v. John Doe No. 1*, 272 F.3d 116, 122 (2d Cir. 2001). And, while the Government was not party to the *ex parte* hearing on Guo's motion, there is reason to believe any impairment of communications between Guo and his retained counsel are not a "total lack of communication preventing an adequate defense": on December 31, 2024, one of Guo's retained trial counsel contacted the U.S. Attorney's Office on Guo's behalf and stated, among other things, that she had met with Guo as recently as December 25, 2024 (that is, after the *ex parte* hearing on his substitution motion). A defendant's "certain disagreements" with counsel will typically fall short of this high bar, *United States v. Muhammad*, No. 12 Cr. 337 (ADS) (GRB), 2012 WL

6021458, at *3 (E.D.N.Y. Nov. 19, 2012), and indeed, even an "intense rift" between defendant and counsel is unlikely to constitute a "total lack of communication preventing an adequate defense," *John Doe No. 1*, 272 F.3d at 124. The Government also notes that Ms. Shroff attended co-defendant Yanping Wang's sentencing in person on January 6, 2025, suggesting that she remains engaged in this matter.

*Fourth*, and related to the third factor, is whether Guo "substantially and unjustifiably contributed to the breakdown in communication." *John Doe No. 1*, 272 F.3d at 123. Because of the *ex parte* nature of the prior proceedings on this motion, the Government has less insight than the Court does into application of this factor, but notes again the relevance of the January 2, 2025 victim statement alleging that Guo, through his followers, has organized a campaign to manufacture precisely such a conflict for the purposes of delaying these proceedings. Like the other three criteria discussed above, the defendant's own contribution to a purported communications breakdown "is but one of four factors" and the Court may properly exercise its discretion to deny Guo's motion even if only some of the factors weigh in that direction. *Id.* Indeed, the Court may note that Guo has already substituted counsel once, and in so doing hired a team of attorneys from several different law firms.

### E. The Court May Deny Guo's Motion in Part and Require Retained Counsel to Remain Engaged in the Interest of a Timely Sentencing

If the Court concludes that Guo should be permitted new counsel, the Court may also exercise its discretion to deny Guo's motion in part, and fashion a resolution that requires Guo's retained trial counsel to remain engaged to ensure a timely sentencing. The alternative—relieving Guo's retained counsel in full, and permitting Guo to proceed solely with substitute counsel who will lack familiarity with the extensive trial and pretrial record—would intolerably delay sentencing and prolong the victims' suffering.

If Guo's motion does not claim a communications impasse and instead purports solely to be motivated by an inability to pay his retained counsel's fees, the motion should be resolved by ordering Guo's retained counsel to remain engaged through a CJA appointment. There is ample precedent for such an arrangement. For example, in *United States v. Field*, Judge Pauley denied retained counsel's motion to withdraw for unpaid fees between a mistrial and a scheduled retrial and instead appointed retained counsel through the CJA to serve as the defendant's counsel during the second multi-week trial. No. 09 Cr. 581 (WHP), Dkt. 569 (S.D.N.Y. Oct. 2, 2012). *See also, e.g.*, *United States v. Fisher*, No. 15 Cr. 19 (RJA), 2017 WL 5125549, at *5 (W.D.N.Y. Nov. 2, 2017) (denying retained counsel's motion to withdraw but appointing her via CJA because appointing new counsel "would result in further delay, as well as the additional expenditure of even more public funds so that a new attorney could become familiar with this case"); *United States v. Herbawi*, 913 F. Supp. 170, 173 (W.D.N.Y. 1996) (appointing formerly retained counsel through CJA for "continuity of counsel . . . given the complex nature of this case and the volume of discovery"). Using CJA funds to pay for Guo's present counsel to represent him through sentencing would undoubtably save the public considerable resources as it would take new counsel many publicly funded hours to prepare alone for Guo's sentencing. Such an appointment is permissible. Ms. Shroff is a member of the CJA Panel and the Court could appoint Mr. Kamaraju as CJA counsel for purposes of completing this case. *See* United States District Court, Southern

District of New York, *Revised Plan for Furnishing Representation Pursuant to the Criminal Justice Act* (May 31, 2023 ed.), § VII.D ("Whenever a judge makes a written finding, in a proceeding in which counsel must be assigned pursuant to this Plan, that there is good cause shown which renders it in the interests of justice that counsel who is not employed by the FDNY or a member of the CJA Panel be assigned, the district judge or magistrate judge may appoint that counsel with the consent of the person to be so represented and the approval of the Chief Judge of the District. Such appointment shall constitute a temporary appointment to the CJA Panel for the purpose of that proceeding only.").

If Guo's motion claims a combination of communications and financial issues, a similar arrangement could help limit further sentencing delay. For example, in *United States v. El Bahnasawy*, 813 F. App'x 721 (2d Cir. 2020), the district court denied a motion to withdraw made "about a month" before sentencing and ordered instead that proposed substitute counsel serve alongside existing counsel, considering, among other things, the lengthy and complicated record in the case. *Id.* at 723-24. Indeed, the more appropriate course for a defendant with sophisticated counsel in a complicated case is for retained counsel to cooperate in the engagement and education of substitute counsel to ensure that sentencing is not needlessly delayed. *See, e.g.*, *United States v. Bankman-Fried*, No. 22 Cr. 673 (LAK), Dkt. 404 (declaration from discharged trial counsel attesting that they "assisted [substitute counsel] and facilitate[d] the transition" and have ensured that substitute counsel "is prepared to handle the upcoming submissions according to the current schedule, and that he has undertaken this representation on the understanding that the sentencing date is firm"). Notably, sentencing in that complicated fraud case took place in late March 2024, about five months after the jury verdict and notwithstanding the withdrawal of trial counsel one month before the sentencing.

The Court likely has reasonable concerns about Guo's claim for a publicly financed defense in view of his history of financial deception. The Government shares those concerns, and notes that they can be addressed without undermining the paramount public interest in a swift and just resolution to this criminal case. For instance, in *United States v. Avenatti*—a case that also involved a defendant accused of serious frauds—Judge Furman granted the defendant's application for publicly financed counsel while placing safeguards on the disbursement of those funds. Among other things, the Court ordered that defendant to submit updated financial affidavits every four months and that his public defenders document their hours "to ensure that, if there was a basis to do so, it could order Avenatti to reimburse the taxpayers for legal fees." 550 F. Supp. 3d 36, 43 (S.D.N.Y. 2021) (citing 18 U.S.C. § 3006A(f)).

### F. Conclusion

Consistent with Second Circuit precedent, the Government respectfully urges the Court to order retained trial counsel to remain engaged as either primary or standby sentencing counsel and, if it deems it appropriate, make any CJA appointment with the requirement that Guo submit periodically updated financial affidavits and acknowledge his obligation to reimburse any public expenditures on his behalf that are later deemed to have been unnecessary or illegitimately obtained.

Such a resolution would honor the public's and the victims' interest in a just and timely sentencing following Guo's conviction by a jury. And it would ensure that this defendant's sentencing schedule is at least roughly in line with other defendants convicted of complex fraud schemes in this District. *See, e.g.*, *Bankman-Fried*, No. 22 Cr. 673 (LAK) (sentencing less than five months after jury verdict); *United States v. Madoff*, No. 09 Cr. 213 (DC) (sentencing less than four months after guilty plea); *United States v. Ray*, No. 22 Cr. 228 (AT) (sentencing eight months after guilty plea).

Finally, the Government respectfully requests that it be permitted to publicly file this letter on the docket given that Guo's victims are monitoring updates concerning this case, and are entitled to certain rights under the Crime Victims' Rights Act, 18 U.S.C. § 3771, including the right to be informed as to the reasons for the defendant's delayed sentencing and the Government's opposition to further delays.

Respectfully submitted,

MATTHEW PODOLSKY
Chief Counsel to the Acting United States Attorney
Attorney for the United States,
Acting under Authority Conferred by 28 U.S.C. § 515

by:   /s/

Micah F. Fergenson
Ryan B. Finkel
Justin Horton
Juliana N. Murray
Assistant United States Attorneys
(212) 637-2190 / 6612 / 2276 / 2314

cc:    Counsel of Record (by email)