

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

January 21, 2025

**BY EMAIL**
Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY

Re:   *United States v. Miles Guo*, S3 23 Cr. 188 (AT)

Dear Judge Torres:

The Government writes in response to the Court's January 14, 2025 email. The Government has reviewed Guo's single-page CJA financial affidavit and shares the Court's "skeptic[ism] of Mr. Guo's claimed indigency." Jan. 14 email. As discussed below, there is ample authority for the Court to inquire further into Guo's purported inability to fund his defense. But the Government is seriously concerned that extended litigation of Guo's application would advance his improper goal of further delaying his sentencing. Accordingly, the Government respectfully reiterates its recommendation that the Court swiftly resolve Guo's change-of-counsel motion by requiring his retained trial counsel to remain engaged so that Guo may be timely sentenced and his victims can receive restitution for their losses.

### The Court is Correct to Doubt the Truthfulness of Guo's Financial Affidavit

Like the Court, the Government is "skeptical of Mr. Guo's claimed indigency." Jan. 14 email. Guo is a convicted fraudster with a history of financial deception. His declaration of bankruptcy in 2022 came on the heels of a New York judge holding him in contempt of court for engaging in a "shell game" to obscure his ownership of a nearly $40 million yacht. *See Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan* et al., No. 652077/2017, Dkt. 1181 at 6 (N.Y. Cty. Sup. Ct. Feb. 9, 2022). Testimony in his federal criminal trial established that Guo attempted to obstruct the bankruptcy proceedings he commenced. *See* Trial Tr. 1522:7-1523:19 (Ya Li's testimony that a lawyer working for Guo asked her to sign a false affidavit swearing to lies about Guo's assets). Witness testimony also established that Guo controlled wealth that was nominally held by his children. *See, e.g.*, Trial Tr. 2904:3-2905:11 (describing how Guo's personal lawyer provided documentation purporting to show that Guo's Mahwah Mansion residence was paid for by Guo's daughter).

And indeed, Guo—or people acting on his behalf—has apparently paid for retained counsel in this criminal case for at least several years following his sworn declaration to the Bankruptcy Court in February 2022. *See In re Ho Wan Kwok*, No. 22-50073 (JAM), Dkt. 107 at ¶¶ 17-18

(Bankr. D. Conn. Mar. 20, 2022). In that sworn statement, Guo asserted that he was forced to avoid personal ownership of assets and that "[his] family, and particularly [his] son, provides for [his] needs"—including litigation costs. *See id*.

Guo's CJA-23 financial affidavit is a cursory single-page document in which he claims to have no personal assets. His barebones affidavit sheds no light on his family's ability to continue to finance his legal defense or funds that Guo may have transferred in order to claim indigence. Here, "[i]t is appropriate for the Court, in determining [Guo's] eligibility for appointment of CJA or Federal Defenders counsel, to consider all of [Guo's] resources *as well as the resources of family members*." *United States v. Hadden*, No. 20 Cr. 468 (RMB), 2020 WL 7640672, at *4 (S.D.N.Y. Dec. 23, 2020) (emphasis added). The Court may reject a defendant's claim of indigency when "he puts his own assets into his relatives' names and those assets remain at his disposal." *United States v. Rubinson*, 543 F.2d 951, 964 (2d Cir. 1976)

The Court may also "inquir[e] into whether there is available to defendant funds for his defense from other sources" including "friends, trusts, estates, or defense funds." *United States v. Martinez-Torres*, 556 F. Supp. 1275, 1279 (S.D.N.Y. 1983) (Motley, C.J.). Evidence at trial established that Guo's family and supporters raised money to pay the legal bills of even his peripheral associates, *see* Trial Tr. 5507:11-5509:24 (Scott Barnett's testimony that a Guo lawyer and Guo's supporters raised significant sums for his attorneys' fees), and the Court may appropriately inquire if Guo is able to raise funds before he is awarded scarce public resources.

### The Public and Guo's Victims Are Best Served by a Speedy Sentencing

While further inquiry into Guo's dubious claims for public funding would be appropriate, they would also consume time that would be more justly spent on sentencing Guo and delivering justice and compensation to his victims. The Government shares the Court's concern that Guo is seeking public funds to which he is not entitled, and refers the Court to its January 13, 2025 letter explaining various safeguards that could be imposed to limit Guo's ability to fraudulently obtain a publicly financed legal defense. *See id.* at 6. But the Government is concerned that Guo's primary purpose in seeking to change counsel and apply for public funds is to delay his sentencing proceedings. That is an improper purpose for a motion to change counsel, and "[j]udges must be vigilant that requests for appointment of a new attorney . . . should not become a vehicle for achieving delay." *United States v. Llanes*, 374 F.2d 712, 717 (2d Cir. 1967).

The public—and Guo's victims—have "a significant interest in the finality of the verdict and in getting [Guo] sentenced." *United States v. Sabir*, 628 F. Supp. 2d 414, 417 (S.D.N.Y. 2007). Guo's victims also have a statutory right "to full and timely restitution"—a process that can only commence after imposition of sentence—and the "right to proceedings free from unreasonable delay." 18 U.S.C. § 3771(a)(6)-(7).

Accordingly, the Government respectfully reiterates its recommendation that the Court resolve Guo's motion by requiring his retained trial counsel to remain engaged and by scheduling a timely sentencing proceeding in this case. As described more fully in the Government's January 13 letter, the Court may accomplish this by denying Guo's motion in full, *e.g.*, *United States v. Delva*, No. 12 Cr. 802 (KBF), 2015 WL 756919, at *1 (S.D.N.Y. Feb. 19, 2015) (denying

substitution motion made a week before sentencing where "appointment of new counsel at this point would substantially and unnecessarily delay sentencing"), or by appointing additional counsel to supplement rather than replace Guo's trial counsel, *e.g.*, *United States v. El Bahnasawy*, 813 F. App'x 721, 724 (2d Cir. 2020) (affirming order for trial counsel "to continue representing [defendant] *alongside* substitute counsel" where motion made "about a month" before sentencing and "substitute counsel had, understandably, yet to demonstrate an appreciation of the record").

                      Respectfully submitted,

                      DANIELLE R. SASSOON
                      United States Attorney

by:   /s/
                      Micah F. Fergenson
                      Ryan B. Finkel
                      Justin Horton
                      Juliana N. Murray
                      Assistant United States Attorneys
                      (212) 637-2190 / 6612 / 2276 / 2314

cc:     Counsel of Record (by email)