**U.S. Department**

*United States A*
*Southern Distr*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __3/26/2025__

*The Jacob K. Javits Fe*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

March 18, 2025

**BY ECF**
Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY

    Re:    *United States v. Miles Guo*, S3 23 Cr. 188 (AT)

Dear Judge Torres:

On December 20, 2024, the Court adjourned sentencing in this matter *sine die*, following the defense's filing of an *ex parte* letter and an *ex parte* conference that day relating to the defense's pending request for substitution of counsel. The parties have since submitted multiple letters to the Court by email, and following the Court's March 3, 2025, proceeding, the Government has filed its letters publicly on the docket. (Dkts. 500-502.)

The Government respectfully writes to request that the Court: (i) authorize defense counsel to publicly file their *ex parte* materials regarding the defendant's motion for substitution of counsel as specified below; (ii) unseal the *ex parte* transcripts from the December 20, 2024 and March 3, 2025 conferences, to the extent appropriate; and (iii) if necessary, appoint new counsel to the defendant so that a sentencing date can be promptly scheduled. The defendant was convicted in July 2024 following an eight-week jury trial. Promptly proceeding to sentencing is necessary to serve the interests of justice and specifically to vindicate the rights of victims.

    1.    <u>The Court Should Order Defense Counsel to Make Certain Filings Public</u>

On March 3, 2025, the Court directed the parties to advise as to whether *ex parte* and sealed materials relating to the defendant's substitution of counsel motion may be publicly filed. On March 10, 2025, defense counsel filed a letter stating that the defendant has no objection to the public filing of his "(i) CJA financial affidavit; (ii) two documents filed by Mr. Kwok in connection with his bankruptcy which describe the debt he owes others; (iii) letters from defense counsel dated December 10, 2024 and January 28, 2025." (Dkt. 499.) Based on discussions between the parties, the Government understands that defense counsel is awaiting Court authorization to publicly file these documents. Accordingly, the Government, without defense objection, requests that the Court order the defense to publicly file those *ex parte* and sealed materials relating to the defendant's substitution of counsel motions, which were identified in the defendant's March 10, 2025 letter.

2. <u>Non-Privileged Sections of the December 20, 2024, and March 3, 2025 Transcripts Should be Made Public</u>

Following the defense's December 10, 2024 letter to the Court, the Court held two conferences on December 20, 2024 and March 3, 2025—portions of which were *ex parte* and remain sealed. Only the portions of those *ex parte* conferences that are subject to a valid privilege should remain sealed.

In the context of substitution of counsel proceedings, the right to public access predominates, and generally, "[a]ll motions to withdraw should be served upon the client and (unless excused by the court) upon all other parties." S.D.N.Y. Local Civ. R. 1.4(b) (applicable in criminal cases pursuant to S.D.N.Y. Local Crim. R. 1.1(b)). A court may "permit[] the reasons for withdrawal to be stated in camera and under seal," but only in "an appropriate case." *Id.* Pre-2024 Cmte. Note. Public access "ensure[s] that 'the public may see [a defendant] is fairly dealt with and not unjustly' denied an important substantive right. *United States v. Avenatti*, 550 F. Supp. 3d 36, 47 (S.D.N.Y. 2021) (quoting *Waller v. Georgia*, 467 U.S. 39, 46 (1984))). To be sure, the Second Circuit has recognized various privileges as reason to restrict access to otherwise public materials. *See United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995). Thus, any statements in the sealed transcripts reflecting attorney-client communications or work product may remain sealed absent a showing otherwise. However, those protections apply to only a narrow set of information. "The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). Attorney work-product protects only "materials *containing* mental impressions, conclusions, opinions, or legal theories of an attorney or other representative that were prepared in anticipation of litigation." *United States v. Petit*, 438 F. Supp. 3d 212, 214 (S.D.N.Y. 2020) (quotation omitted). Accordingly, the Court should review the sealed transcripts and limit any continued sealing solely to those portions that may be "necessary to preserve the confidentiality of the attorney-client relationship." *Team Obsolete Ltd. V. A.H.R.M.A. Ltd*, 464 F.Supp.2d 164, 165 (E.D.N.Y. 2006); *see also Ceglia v. Zuckerberg*, No. 10 Cv. 569 (RJA) (LGF), 2013 WL 12234139, at *4-5 (W.D.N.Y. Mar. 20, 2013) (recognizing that "disclosure [of withdrawal motion] would be useful to [the opposing party] primarily to oppose withdrawal," but finding that disclosure request "to be moot" after ruling the "motion should be denied").

Although the Government was not party to the *ex parte* portions of the December 20, 2024 and March 3, 2025 conferences, scrutiny is appropriate to determine what information from those conferences should remain shielded from the Government and the public. The Government is not, at this time, asserting that any privileged attorney-client communications or attorney work-product information that the Court required to be shared during the *ex parte* portions of those proceedings should be subject to public view. However, given that the defendant has made known to third parties (including the Government) his desire to substitute his attorneys due to "conflict . . . . lack of trust in his current counsel based on issues at trial and the resulting breakdown of communication between counsel and Mr. Guo,"[1] it is plausible that much of what was discussed during the *ex parte* portions of those conferences is not confidential, and thus not privileged. *See*

---

[1] Jan. 28, 2025 Ltr. from S. Kamaraju to the Court, copying Government counsel.

*Mejia*, 655 F.3d at 134 (absence of confidentiality defeats claim of privilege). Accordingly, the defendant's statements regarding displeasure (if any) with his current counsel at the conferences are not subject to protection. Nor would the defendant's statements to the Court regarding his impressions of counsel's conduct (if any), as such an opinion is not an attorney-client communication. At this time, all that may be withheld are a recounting, at the Court's direction, of confidential statements between the defendant and his counsel "for the purpose of obtaining or providing legal advice." *Mejia*, 655 F.3d at 132. Similarly, the Government does not presently dispute that counsel's statements in response to Court questions during the *ex parte* portions of those conferences about attorney work-product are protected. But particularly because trial has concluded, and the defense has already provided the Government with its objections to the PSR, counsel's strategies and mental impressions related to sentencing (to the extent they were discussed during the *ex parte* portions of the conferences) may have been disclosed already and thus would not be subject to protection.

Accordingly, the Government requests that the defense provide the Court with proposed redactions to the *ex parte* transcripts by March 24, 2025, and that the unredacted portions be made available on that date, with the redacted portions subject to the Court's review. The defense does not consent to this request.

3. <u>This Matter Should Proceed to Sentencing as Soon as Practicable</u>

As set forth in its prior letters, the Government maintains that the defendant's December 10, 2024 motion for substitution of counsel should be denied. (*See* Dkts. 500-502.)[2]

Nonetheless, under the Crime Victims' Rights Act, 18 U.S.C. § 3771(a), the victims in this case have a statutory right to restitution and to "proceedings free from unreasonable delay." 18 U.S.C. § 3771(a). As it did with respect to Yanping Wang, the Government intends to seek an order authorizing the United States to compensate the thousands of the defendant's victims with finally forfeited assets through a remission process, as restitution would be impracticable in this case. *See* 18 U.S.C. § 3663A(c)(3); Dkt. 495. However, any remission process cannot commence until a final order of forfeiture is entered as to the defendant, which cannot happen until sentencing

---

[2] The Court has discretion to deny the motion unless it finds the conflict "so great that it resulted in a total lack of communication preventing an adequate defense." *United States v. John Doe No. 1*, 272 F.3d 116, 122 (2d Cir. 2001). That condition is not satisfied. The Government previously noted that one of the lawyers seeking to withdraw met with the defendant on December 25, 2024— that is, after the filing and hearing on the *ex parte* substitution motion. *See* Dkt. 500 at 4. More recently, at the parties' last conference with the Court, three of the lawyers seeking to withdraw met privately with the defendant in the Marshals Service's holding area next to the courtroom. The defendant's *ex parte* statements may have asserted "certain disagreements" with counsel, or even an "intense rift"—but neither condition is tantamount to the "total lack of communication" that is required to deprive the Court of discretion to deny a dilatory motion to substitute counsel after several sentencing adjournments and more than eight months after the jury's verdict. *John Doe No. 1*, 272 F.3d at 124; *United States v. Muhammad*, No. 12 Cr. 337 (ADS) (GRB), 2012 WL 6021458, at *3 (E.D.N.Y. Nov. 19, 2012).

is completed.³  The Government has already received dozens of inquiries from victims seeking just compensation, and the Government also has been contacted by counsel purporting to represent a group comprised of thousands of victims.  As the Court knows, many victims lost hundreds of thousands of dollars (or more).  Others lost their retirement funds or substantial amounts of their life savings.  Victims are waiting for closure, accountability, and commencement of the remission process, without visibility into when the defendant will be sentenced.  The Government would like to return the hundreds of millions of dollars it seeks to forfeit to *victims* as soon as reasonably possible and attempt to repair the damage that Guo and his co-conspirators caused.  The Government cannot do so until the defendant is sentenced.  The interests of the victims in this case weigh heavily in favor of scheduling a date certain for the defendant's sentencing.

The need for swift resolution of this matter is therefore acute.  The Government appreciates that the Court is weighing the merits of the defendant's motion to substitute counsel.  The Government respectfully requests that, to the extent the Court intends to grant (or deny) the defendant's substitution request, it do so promptly, and set a sentencing date in short order.  The only remaining work for the defendant's counsel (current or substitute) is to prepare a sentencing submission in consultation with their client, and advocate for their client during a sentencing hearing.  These last remaining activities should happen as soon as possible given the right of victims, and the public, to a timely resolution of this case.  To the extent that the Court grants the defendant's motion, the Government believes that the Federal Defenders—who represented the defendant at his presentment and initial arraignment, and are not conflicted from this matter—could be promptly appointed as substitute counsel with the defendant's current counsel appointed under the Criminal Justice Act as a supplement to new counsel.  *See Morris v. Slappy*, 461 U.S. 1, 13 (1983) (declaring the decision to grant or deny a motion to change counsel "is within the discretion of the trial court").

The Government is available to address any questions the Court may have.

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney

By **March 28, 2025**, counsel to Mr. Guo shall publicly file the *ex parte* and sealed materials related to substitution of counsel identified in the defense's March 10, 2025 letter.

By **March 31, 2025**, counsel for Mr. Guo shall publicly file the *ex parte* portions of the transcripts of the December 20, 2024 and March 3, 2025 conferences with proposed redactions.  By the same date, defense counsel shall submit unredacted copies of the transcripts to chambers for *ex parte*, *in camera* review.  The submission to chambers shall incorporate yellow highlighting indicating the material that defense counsel proposes to redact.

The Federal Defenders are unavailable to represent Mr. Guo.  A substitution-of-counsel hearing shall be scheduled once the Court is prepared to appoint new counsel to represent Mr. Guo.

SO ORDERED.

Dated: March 26, 2025
       New York, New York

_____
ANALISA TORRES
United States District Judge