BY ECF  March 27, 2025
Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY

Re: <u>United States v. Miles Guo, S3 23 Cr. 118 (AT)</u>: Supplemental Response to Government's Letter Filed as ECF No. 511 Submitted by Counsel for Certain Himalaya Exchange (HEX) Members

Your Honor:

The undersigned, on behalf of Members of the Himalaya Exchange (HEX), respectfully submits this supplemental response to the Government's March 25, 2025 letter (ECF No. 511). That letter introduces an anonymous email as purported evidence and uses it to make sweeping assertions that unjustly implicate innocent customers—my clients—in a manner that is both unsubstantiated and deeply concerning.

Once again, the Government appears to be advancing its prosecutorial narrative through vague, anonymous, and unverified allegations. In a prior filing this January, prosecutors invoked concern for the welfare of HEX Members as a reason to accelerate Mr. Guo's sentencing—while simultaneously creating an environment where those same investors now risk being labeled co-conspirators or fools simply for seeking return of their own lawfully invested funds. However this may be characterized, it amounts to coercion by implication, and it is improper.

There appears to be an effort to use the remission process as a pressure mechanism—"rummaging around" among victims whose assets were seized without cause, leveraging their desperation to fill evidentiary gaps in the Government's case against Mr. Guo. That is not justice. It borders on blackmail.

We are reminded of the warning articulated by Judge T.S. Ellis III of the Eastern District of Virginia:

> *"The vernacular is to 'sing,' is what prosecutors use. What you got to be careful of is, they may not only sing, they may compose."*

Where coercion is present, the truth becomes compromised. Demanding that thousands of investors of HEX (not to mention across more than 80 entities) justifies the return of their seized property—under threat of insinuated criminal exposure—inevitably skews whatever information is elicited. That is a structural defect in the current approach.

Sentencing should proceed only after a deliberate, fact-based process free of procedural shortcuts and foreign entanglement. The urgency now claimed by the Government is neither consistent nor justified. If, as prosecutors contend, they have proven Mr. Guo guilty beyond a reasonable doubt, why must they now rely on the coerced assistance of those who were never part of the case? The government had the HEX banking information. Which ones were illegitimate or proceeds from the crimes or conspirators, all which occurred in the British Virgin Islands?

The prosecution's pattern—accusatory claims built on shaky or anonymous foundations—should preclude it from unilateral control over remission. In the unlikely event proper jurisdiction is found to be present over the seizure of HEX accounts, Court supervision over the redemption process under these circumstances is not optional; it is essential. Once the process escapes judicial oversight, there is a very real risk that thousands of innocent investors will be denied access to their own funds based on politics or narrative convenience rather than evidence.

We respectfully reiterate our request that this matter be elevated to Main Justice. In addition, a **counterintelligence review** is clearly warranted. The Court is reminded of **Stipulation 1**, read to the jury on May 29, 2024, and admitted into evidence by agreement of the parties. That stipulation confirms:

- The FBI has investigated individuals working under the direction of the Chinese Communist Party (CCP) as part of "Operation Fox Hunt," an aggressive international campaign to coerce Chinese dissidents back to the PRC;

- Mr. Guo was identified as the CCP's highest-priority target in 2017;

- U.S. law enforcement received credible intelligence that the PRC funded anti-Guo protests, deployed undeclared agents to the United States, and ran cyber operations to deplatform him from U.S. social media;

- Multiple individuals later some with US government ties were convicted of illegal lobbying acted on the PRC's behalf to pressure the Trump administration for Guo's extradition.

These facts are not speculative; they are part of the trial record. Moreover, we also seem to have US government and Chinese government collaboration in censorship of Mr. Guo.[1]

In this context, the alignment between the CCP's objectives and the U.S. Government's prosecutorial conduct is too stark to ignore. Whether intentional or inadvertent, the Government's actions—targeting the same dissident, adopting the same disinformation tactics, and freezing assets associated with his movement—have functionally advanced CCP goals. And the most direct victims of this alignment are the thousands of innocent HEX customers now caught in the crossfire none of whom had any involvement with the charged crimes.

These individuals did nothing wrong. Yet under the Government's current approach, they are being subjected to forfeiture without due process and standing to lose billions in HCN value, and in many cases, implicitly accused of complicity or gullibility simply for maintaining their investments. This framework inverts the presumption of innocence and directly contradicts victim protection principles.

A **neutral counterintelligence review** is essential. It should determine whether the prosecution has been influenced—directly or indirectly—by foreign state actors or adversarial narratives. Such a review is critical to preserving public trust, protecting institutional integrity, and preventing further harm to individuals who have already suffered unjust losses.

In the interim, **remission must not proceed outside court supervision.** The stakes are too high for discretion to be left in the hands of those who have already demonstrated a troubling willingness to politicize forfeiture.

We must also be honest about the financial reality: **every single dollar invested in the Himalaya Exchange was still in trust when the U.S. Government seized those funds.** The rational equation is simple and sobering:

**Total investment loss = 0% stolen by Defendant Guo + 100% seized by the U.S. Government.**

This is not theory—it is fact. Yet now, anyone who seeks restitution must risk being labeled a conspirator or a dupe. This is an entirely manufactured dilemma, and it should be unacceptable in any legal system that claims to value fairness.

My clients have voiced these concerns through proper channels and I am asking for elevation and escalation to Main Justice. They have received not transparency, but hostility. The

---

[1] The Guo interview had been scheduled for three hours but was cut off after an hour and 19 minutes following protests from the Chinese Embassy in Washington to VOA and the State Department. (https://freebeacon.com/national-security/voa-fires-two-more-reporters-for-chinese-dissident-interview/ referenced by the White House on March 15, 2025 https://www.whitehouse.gov/articles/2025/03/the-voice-of-radical-america/).

current prosecutorial approach is clear: **"accept our narrative, or you're the enemy."** This is not prosecution; it is persecution.

More disturbingly, the Government appears to be using customer claims as leverage to influence Mr. Guo's sentencing. This tactic weaponizes the very individuals the Government previously claimed to protect. Their dissenting views are treated not as evidence of legitimate concern, but as threats to be neutralized. This is coercion, plain and simple.

The sudden urgency we see now—after months of delay—raises questions. Meanwhile, my clients continue to push for a rational, lawful process of restitution: one that includes authentication, verification, and procedural safeguards.

To be clear: **there is no credible basis to assert that the 6,700+ HEX Members conspired to defraud themselves.**[2]

The notion that these individuals, many of whom are apolitical or entirely uninvolved with any of the defendants, are part of some global scheme to defraud themselves is, frankly, absurd. Many customers simply viewed HEX as a legitimate cryptocurrency platform. Others supported it due to its pro-democracy mission. Regardless of their reason for investing, **none of them confiscated their own money. The U.S. Government did.**

We respectfully urge the Court to protect these individuals from becoming collateral damage in what increasingly appears to be a foreign-influenced prosecution, and to restore public confidence through transparency, oversight, and accountability.

/s/ Brad Geyer
Bradford L. Geyer, PHV
NJ 022751991
Suite 141 Route 130 S. 303
Cinnaminson, NJ 08077
Brad@FormerFedsGroup.Com
(856) 607-5708
Bradford L. Geyer, PHV

---

[2] As of March 25, 2025, our review indicates approximately 6,700 customers (net of 109 terminations). In ECF 506 n.1, we previously misattributed losses to 5,242 customers, when in fact those figures were based on only 3,539 verified clients. The updated number is expected to increase but will be further refined during authentication. Full accuracy requires restored access to HEX's records, which may have been compromised by Government seizures.