

**Sidhardha Kamaraju**

Direct Tel: 212-326-0895
Direct Fax: 212-326-0806
skamaraju@pryorcashman.com

January 28, 2025

**VIA EMAIL**

Hon. Analisa Torres
United States District Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

      Re:    <u>*United States v. Guo*, Case No. 1:23-cr-00118 (AT)</u>

Dear Judge Torres:

      We write in response to the government's January 21, 2025 letter (the "Govt. Letter"), in which the government asks the Court to find that Mr. Guo's CJA 23 affidavit is insufficient to determine whether he is entitled to court-appointed counsel, and requests that the Court further inquire into whether Mr. Guo's family, friends, or supporters could bear the cost of his legal representation. The government further argues that regardless, because of the public's and the alleged victims' interest in a speedy sentencing, Mr. Guo should not be permitted to change counsel at this point. The government is wrong on both counts.

      *First*, with respect to Mr. Guo's entitlement to CJA counsel,[1] the only relevant question is whether a defendant can "prove by a preponderance of the evidence that he is financially unable to afford counsel." *United States v. Hadden*, No. 20 CR. 468 (RMB), 2020 WL 7640672, at *3 (S.D.N.Y. Dec. 23, 2020) (internal citation omitted). There is only one piece of evidence submitted to the Court that bears on Mr. Guo's financial assets and debts—his sworn CJA 23 affidavit (the "Affidavit"). Mr. Guo's representations in the Affidavit more than make out his eligibility for court-appointed counsel as the Affidavit shows that Mr. Guo has no assets and hundreds of millions of dollars in pre-existing debt. Mr. Guo is plainly "financially unable to afford counsel" based on the representations in the Affidavit.

---

[1] As an initial matter, Mr. Guo requested that the Federal Defenders of New York (the "Defenders") be appointed as new counsel, rather than CJA counsel, as the Defenders represented him at his presentment, and have no conflict.



January 28, 2025
Page 2

The government offers no evidence to contradict Mr. Guo's statements in the Affidavit. That is hardly surprising given the government's own theory and evidence at trial. The government agrees that Mr. Guo is subject to a judgment in excess of $200 million due to the *Pax* litigation. It also agrees that Mr. Guo filed for personal bankruptcy in February 2022, and the government itself coordinated with the bankruptcy trustee (the "Trustee") to marshal assets that purportedly belonged to Mr. Guo for the bankruptcy estate. At trial, the government offered evidence that in 2018, Mr. Guo's assets had been frozen and seized by a Hong Kong court (a part of the Chinese Communist Party (the "CCP")'s attempts to target Mr. Guo), and argued that as a result, Mr. Guo had a motive to steal because he needed money. Given its prior positions and conduct, the government cannot dispute that Mr. Guo personally lacks financial assets to pay for counsel.

Because it cannot present any evidence concerning *Mr. Guo's* personal assets, the government urges the Court to "inquire" whether Mr. Guo's family can pay his legal costs, rather than appoint him CJA counsel. As the government well knows, that fact is irrelevant to the question of whether Mr. Guo is entitled to court-appointed counsel.[2] "[A] defendant should not be denied appointment of counsel solely because other members of his family have assets and income." *United States v. Rubinson*, 543 F.2d 951, 964 (2d Cir. 1976). The government has not cited to a single case in which the court denied a defendant's request to have counsel appointed based solely on the fact that the defendant's family members had assets.

Perhaps realizing the weakness of its position absent such authority, the government instead claims that Mr. Guo's supposed family's assets are relevant because Mr. Guo purportedly held assets in his family members' names. But, as the government is aware, the Trustee has taken the position that assets owned by Mr. Guo's family members actually belong to Mr. Guo, and thus must be included in the bankruptcy estate. *See, e.g., Despins v. Ngok, et. al.*, Adv. Proc. No. 24-05249 (Bankr. D. Conn. Feb. 15, 2024), Doc. 1 ¶¶ 145-87 (allegations in Trustee's adversary complaint that property owned by Mr. Guo's son and daughter belonged, in reality, to Mr. Guo, and thus should be treated as part of Mr. Guo's bankruptcy estate). As a result, even if one of Mr. Guo's family members did have assets, according to the Trustee, those funds could not be spent on Mr. Guo's legal expenses without implicating the bankruptcy proceedings, and civil litigation against the family member. Indeed, that threat is particularly acute, given that the Trustee has sued numerous law firms that were paid legal fees by entities much more distant from Mr. Guo than his family, such as GCLUBS. *See, e.g., Despins v. Zeisler & Zeisler, P.C. et. al.*, Adv. Proc. No. 24-05208 (Bankr. D. Conn. Feb. 13, 2024); *Despins v. Boies Schiller Flexner LLP*, Adv. Proc. No. 24-05313 (Bankr. D. Conn. August 30, 2024). Under those circumstances, all of which the government knows well, it is simply implausible that Mr. Guo's family could pay for legal services on his behalf, or, frankly, that Mr. Guo could find retained counsel willing to accept the engagement under threat by the Trustee.

---

[2] To the extent the payment arrangements for Mr. Guo's current counsel have any bearing on the question before the Court, counsel notes that their fees have not been paid by his family, and that current counsel all have substantial unpaid balances.



January 28, 2025
Page 3

Finally, the government appears to contend that the Court should deny Mr. Guo court-appointed counsel because there was evidence at trial that a member of Mr. Guo's prior security detail had raised their own legal fees through a GoFundMe page in connection with this case. As an initial matter, Mr. Guo's friends and supporters are under no obligation to fund his legal defense, and there are no such individuals at this time that have offered to do so. Moreover, the government's position defies logic for two reasons. First, whatever their willingness to pay in the past, the government has repeatedly indicated to Mr. Guo's fellow movement members that they are victims of a fraud he perpetrated—it makes no sense to say that Mr. Guo can turn to them to help pay his legal fees in connection with his sentencing for that purported fraud. Second, it is similarly illogical to say that Mr. Guo could retain counsel of his choosing using funds from his supporters, whom the government claims he previously victimized, but is voluntarily choosing not to do so in favor of securing a CJA attorney whom he does not know.

*Second*, the government spends considerable effort arguing that the Court should deny Mr. Guo's application based on the interest of the public and the alleged victims in a prompt sentencing. The government's argument is not fact based as the government is simply unaware of the conflict described by Mr. Guo. His lack of trust in his current counsel based on issues at trial and the resulting breakdown of communication between counsel and Mr. Guo[3] go to his core right of representation, which is of a constitutional dimension. On the other hand, while crime victims certainly have an interest in a prompt sentencing, that is a statutory right. A statutory interest should not trump Mr. Guo's constitutional right to counsel.

Moreover, the government's argument ignores two significant facts. First, this is not a situation where Mr. Guo is at liberty pending his sentencing—rather, he remains detained, as he has been since March 2023, at the Metropolitan Detention Center. While an alleged victim may derive some benefit from learning Mr. Guo's specific sentence, that benefit should not outweigh Mr. Guo's interest in counsel that he has confidence in. Second, with respect to victim restitution, appointing Mr. Guo new court-appointed counsel will not delay that process at all because the Court has already sentenced Yvette Wang, Mr. Guo's co-defendant. As a result, the restitution process has already started, and the government can work towards using its forfeiture proceeds to repay the purported victims. Attaching Mr. Guo's name to that restitution obligation does not mean that the alleged victims would receive anything additional in restitution, or even receive it sooner. While crediting the public and alleged victims' interest in a prompt sentencing, that interest does not outweigh his constitutional right to counsel of his choosing.

---

[3] Mr. Guo detailed the specific bases for his concern at the December 20, 2024 *ex parte* conference.

**PRYOR CASHMAN LLP**

January 28, 2025
Page 4

      Accordingly, Mr. Guo reiterates his request that the Court appoint an attorney for him and permit his current counsel to withdraw.

                                                Respectfully submitted,

                                                _____
                                                PRYOR CASHMAN LLP
                                                Sidhardha Kamaraju

                                                Sabrina P. Shroff
                                                80 Broad Street, 19th Floor
                                                New York, NY 10004
                                                (646) 763-1490
                                                sabrinashroff@gmail.com

                                                E. Scott Schirick
                                                ALSTON & BIRD LLP
                                                90 Park Avenue
                                                New York, NY 10016
                                                (212) 210-9400
                                                scott.schirick@alston.com

                                                *Attorneys for Miles Guo*