UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- v. -<br><br>YVETTE WANG<br>a/k/a "Yanping,"<br>a/k/a "Y,"<br><br>Defendant. | **THIRD-PARTY PETITION TO ADJUDICATE PETITIONER'S INTEREST IN FORFEITED PROPERTY AND TO AMEND THE PRELIMINARY ORDER OF FORFEITURE<br>- VERIFIED CLAIM OF ▊▊▊▊**<br><br>S4  23 Cr. 118 (AT) |

Petitioner ▊▊▊ ("Petitioner") files this Third-Party Petition to Adjudicate Petitioner's Interest in Forfeited Property and to Amend the Preliminary Order of Forfeiture, pursuant to 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2(c) (the "Petition"). Petitioner seeks the return of funds in which Petitioner has a legal right, title, and/or interest ("Petitioner's Property") (as more fully defined below) and that the United States Government (the "Government") improperly seized as part of an order of forfeiture entered into with Defendant Yvette Wang ("Defendant Wang"). Specifically, Petitioner's Property was improperly seized by the Government when the Government seized all the funds in bank account number 5090042770 at Silvergate Bank held in the name of Hamilton Opportunity Fund SPC ("Account 2770"). However, any order of forfeiture reaching the funds in Account 2770, including Petitioner's Property, was unlawful and improper as Defendant Wang has no legal right, title, or interest in either Account 2770 or Petitioner's Property. The Forfeiture Order (as more fully defined below) is therefore rendered invalid as to Petitioner's Property because right, title, or interest in Petitioner's Property was vested in the Petitioner rather than Defendant Wang, and was superior

1

to any right, title, or interest of Defendant Wang at the time of the commission of the acts which gave rise to the Forfeiture Order (as defined below). As such, this Court should amend the Forfeiture Order to remove Petitioner's Property from the Forfeiture Order and order that the Government immediately return Petitioner's Property to Petitioner. In support of Petitioner's claim, Petitioner states as follows:

## I.     PRELIMINARY STATEMENT

It appears that the funds in Account 2770, including Petitioner's Property, were purely "collateral damage" in the Government's seizure of assets prior to its prosecution of Defendant Wang and Miles Guo ("Defendant Guo"). It has been over two and a half years since the seizure of Account 2770, and in that time span, there has never been any explanation as to how Account 2770 (including Petitioner's Property) is related to any of the offenses to which Defendant Wang pled guilty, a necessary prerequisite to a valid forfeiture order under the law. There was never any showing that any proceeds of any unlawful activity to which Defendant Wang pled guilty were ever deposited in Account 2770; no showing that any proceeds of such activity were ever commingled with Petitioner's Property; and, indeed, no showing that Defendant Wang ever had anything to do with Account 2770 or even knew of its existence.

As will be shown below, Petitioner is a beneficiary of a constructive trust over Petitioner's Property and Petitioner's Property cannot be seized by the Government in this case. Neither Defendant Wang, nor the Government who now stands in her shoes, have ever demonstrated that they have any interest whatsoever in Petitioner's Property in Account 2770 or in Account 2770 in general. While Defendant Wang consented to the forfeiture of "all her right, title, and interest" in Account 2770 (and thus, Petitioner's Property) in the Forfeiture Order (ECF No. 488 at 2-3), her consent has no legal bearing as to Account 2770 or Petitioner's Property. Defendant Wang never had such "right, title, and interest" in Account 2770 – there is no evidence that she was a signatory

on Account 2770, ever deposited money into Account 2770, or otherwise had any control over Account 2770, and there is no evidence that Defendant Wang ever directed anyone, directly or indirectly, to deposit any money into Account 2770. Defendant Wang cannot forfeit property that she does not own, and in which she has no interest. In fact, it appears that the Court never established that Petitioner's Property is even subject to forfeiture in the first instance, as required by Fed.R.Crim.P. 32.2.(b)(1)(A).

For all the foregoing reasons, and for the reasons demonstrated below, Petitioner respectfully requests that this Court: (1) grant this Petition; (2) amend the Forfeiture Order to exclude Petitioner's Property; (3) order the immediate return of Petitioner's Property to Petitioner; (4) order that Petitioner is entitled to recover Petitioner's attorneys' fees and costs incurred in connection with this Petition and grant Petitioner leave to submit an application for such attorneys' fees and costs; and (5) grant such and other relief that is necessary and just.

**II.     BACKGROUND FACTS**

    **A.  Petitioner's Property**

1.     Hamilton Opportunity Fund SPC ("Hamilton Opportunity Fund"), a Cayman Islands Segregated Portfolio Company, provided Petitioner with an Offering Memorandum (the "Offering Memorandum") dated January 20, 2022. A true and correct copy of the Offering Memorandum is attached hereto as **Exhibit A**.

2.     Hamilton Opportunity Fund is a "fund specializing in equity investments selected by the Investment Manager [as that term is defined in the Offering Memorandum] with a view to long-term capital gains." **Exhibit A**, Offering Memorandum at 33. The Investment Manager (as that term is defined in the Offering Memorandum) had identified an opportunity to invest in a bank (the "Digital Bank") (as more fully described in Offering Memorandum at 33). In connection with this investment, Hamilton Opportunity Fund sought to raise capital by issuing various classes of

3

shares. *Id.* at 34.

3. The Offering Memorandum offered Petitioner an opportunity to acquire Class B Shares attributed to a segregated portfolio of Hamilton Opportunity Fund - Hamilton M&A Fund SP (the "M&A Fund").

4. Defendant Wang was not a director or member of, and otherwise lacked any corporate or equity interest in, the M&A Fund or Hamilton Opportunity Fund. The evidentiary record is devoid of any evidence to the contrary.

5. Defendant Wang did not make any investments in the M&A Fund; again, the evidentiary record is devoid of any evidence to the contrary.

6. On January 23, 2022, Petitioner submitted an application (the "Subscription Agreement") to Hamilton Opportunity Fund for a subscription for $100,100.00 worth of Class B Shares in the M&A Fund. A true and correct copy of the Subscription Agreement is attached hereto as **Exhibit B.**

7. On January 25, 2022, Hamilton Opportunity Fund, on behalf of the M&A Fund, approved and accepted the Subscription Agreement. *See* **Exhibit B**, Subscription Agreement at 15.

8. On February 1, 2022, pursuant to the terms of the Subscription Agreement, Petitioner wired $103,100.00 (the "Petitioner Property") to Account Number 5090042770 at Silvergate Bank. A true and correct copy of the wire confirmation is attached hereto as **Exhibit C**.

9. The account to which Petitioner wired Petitioner Property to is Account 2770.

10. Pursuant to the terms of the Offering Memorandum, Petitioner is entitled to redemption of Petitioner's shares at the Petitioner's option. **Exhibit A**, Offering Memorandum at 17; *see also id.* at 53 (stating that subject to certain limitations, "Class B Shares may be redeemed

at the option of the Shareholder on any Redemption Day").

11. The assets of Hamilton Opportunity Fund are "kept segregated, separate and separately identifiable from those of any other segregated portfolios of the Fund and any general assets of the Fund." **Exhibit A**, Offering Memorandum at 12. In addition, pursuant to the laws of the Cayman Islands, it is the duty of Hamilton Opportunity Fund to "segregate, and keep segregated, portfolio assets of each segregated portfolio separate and separately identifiable from segregated portfolio assets of any other segregated portfolio." **Exhibit A**, Offering Memorandum at 22-23 (citing the Companies Act (Revised) of Cayman Islands, Part XIV, 219(6)(b)).

### B. Seizure of Account 2770

12. On September 18, 2022, the Government seized the entire balance of the funds in Account 2770.

13. To date, there are no documents available publicly as to what probable cause the Government had to seize the funds in Account 2770.

### C. The Criminal Case Against Defendant Wang and Defendant Guo and the Forfeiture Order

14. On March 6, 2023, the Government filed an indictment against Defendant Wang and Defendant Guo, and a third defendant, William Je, who has never been arraigned. ECF No. 2.

15. On May 3, 2024, the Government filed a superseding information (the "Superseding Information") against Defendant Wang. ECF No. 325. The Superseding Information charged Defendant Wang with one count of Conspiracy to Commit Wire Fraud (Count I) (Superseding Information at 1-2) and one count of Conspiracy to Commit Money Laundering (Count II) (Superseding Information at 2-4). The Superseding Information also contained a Forfeiture Allegation (the "Forfeiture Allegation"). Superseding Information at 4.

16. On the same day, May 3, 2024, Defendant Wang pled guilty to Count I and Count

5

II as charged in the Superseding Information.

17. Also on May 3, 2024, this Court entered a Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment ("Original Forfeiture Order"). ECF No. 329.

18. In the Original Forfeiture Order, Defendant Wang consented to forfeit, "all *her* right, title, and interest in" certain assets, including Account 2770, because such property "constitute[d] proceeds of the offenses charged in Count One that the Defendant personally obtained and/or property involved in offense charged in Count Two of the [Superseding] Information." Original Forfeiture Order at 2-6 (emphasis added).

19. Defendant Guo did not plead guilty to any of the offenses charged against him. Accordingly, a jury trial was held between May 22, 2024 and July 16, 2024 (the "Guo Trial"). On July 16, 2024, the jury found Defendant Guo guilty of racketeering conspiracy, conspiracy to commit wire fraud, conspiracy to commit money laundering, conspiracy to commit securities fraud, securities fraud, wire fraud, and money laundering. ECF No. 395. As of the date of this Petition, Defendant Guo has not yet been sentenced.

20. On January 6, 2025, Defendant Wang was sentenced.

21. On January 7, 2025, this Court entered a Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment (the "Forfeiture Order") ECF No. 488. As it pertains to Petitioner, the Forfeiture Order is substantially similar to the Original Forfeiture Order in all material respects. In the Forfeiture Order, Defendant Wang consented to forfeit, "all *her* right, title, and interest in" certain assets, including Account 2770, because such property "constitute[d] proceeds of the offenses charged in Count One that the Defendant personally obtained and/or property involved in offense charged in Count Two of the [Superseding] Information." Forfeiture Order at 2-11 (emphasis added).

22.   The assets in Account 2770 are described in both the Original Forfeiture Order and the Forfeiture Order as follows:

> $89,992,861.75 in United States currency formerly on deposit in account number 5090042770 at Silvergate Bank, held in the name of "Hamilton Opportunity Fund SPC" and seized by the Government on or about September 18, 2022 (23-FBl-000074).

Original Forfeiture Order at 3; Forfeiture Order at 3.

### III.   ARGUMENT

23.   In an ancillary criminal forfeiture proceeding pursuant to 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2(c)(1), this Court must determine, by a preponderance of the evidence, whether a petitioner has a legal right, title, or interest in the property to be forfeited, and whether such right, title, or interest renders the order of forfeiture invalid, in whole or in part, because such interest was vested in the petitioner rather than the defendant, or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property. *See* 21 U.S.C. § 853(n)(6)(A).

24.   Here, Petitioner has a legal right, title, or interest in Petitioner's Property pursuant to 21 U.S.C. §853(n)(6)(A) by virtue of a constructive trust over such property. Moreover, Petitioner's interest in Petitioner's Property was both vested in Petitioner and was superior to any right Defendant Wang had in Petitioner's Property because Defendant Wang had *no* legal right, title or, interest in either Petitioner's Property or Account 2770. In other words, Defendant Wang could not forfeit her interest in Account 2770 because she had no interest that was properly subject to criminal forfeiture. Accordingly, the Forfeiture Order should be modified to remove Petitioner's Property, and Petitioner's Property should be returned to Petitioner.

**A. The Government Failed to Demonstrate that the Funds in Account 2770, Including Petitioner's Property, Were Properly Subject to Forfeiture in the First Instance, Making the Forfeiture Order Improper as to Such Funds**

25. The Government has no legal cause to retain Petitioner's Property because there is no evidence that the Government has ever demonstrated that Petitioner's Property, and Account 2770 in general, is actually forfeitable property, as required by Fed.R.Crim.P. 32.2.(b)(1)(A).

26. "When the government seeks to obtain an order of forfeiture, 'Federal Rule of Criminal Procedure 32.2(b)(1) ... requires the sentencing court to determine what property is subject to forfeiture under the applicable statute.'" *U.S. v. Watts*, 786 F.3d 152, 172 (2d Cir. 2015) (citing *U.S. v. Capoccia*, 503 F.3d 103, 109 (2d Cir.2007)). Pursuant to Fed.R.Crim.P. 32.2, "if the government seeks forfeiture of specific property, the court *must* determine whether the government has established the requisite nexus between the property and the offense." Fed.R.Crim.P. 32.2.(b)(1)(A) (emphasis added); *Watts*, 786 F.3d at 172. "At various points in the proceedings, ***the government bears the burden of proving this legal conclusion*** to varying degrees of certainty: as a matter of probable cause at a post-indictment hearing. . .or by a preponderance of the evidence at a bench trial or before a jury." *Id.* (emphasis added) (internal citations omitted). "Only if the government meets the relevant legal threshold, however, may the property in question be considered 'subject to forfeiture' in any legal sense. Prior to that, while the government has simply announced its intent to seek forfeiture through the indictment, the property is seen merely as 'potentially forfeitable' . . . or 'potentially subject to forfeiture.'" *Id.* (internal citations omitted).

27. This means that before the court reaches the question of whether the petitioner is entitled to the return of the property under §853(n), it is necessary to determine if the property in dispute is actually forfeitable in the first instance. If not, the government had no statutory authority to seize the property. If the property was improperly seized, the government must return the

8

accounts seized regardless of whether the petitioner can meet the criteria set forth in §853(n). *See e.g. United States v. Delco Wire & Cable Co.*, 772 F. Supp. 1511, 1518 (E.D.PA, 1991).

28.  A full and complete Fed. R. Crim. P. 32.2.(b)(1)(A) inquiry is critical to the fair administration of justice. The entire forfeiture system rests upon the supposition that a court has conducted an inquiry and determined that the property is subject to forfeiture. In enacting ancillary proceeding statutes, Congress chose to place the burden of proof on the third-party during an ancillary proceeding, since "the United States will have already proven its forfeiture allegations in the criminal case beyond a reasonable doubt." S. REP. 98-225, 209, 1984 U.S.C.C.A.N. 3182, 3392.

29.  In this matter, there has never been a determination of whether there exists a nexus between Account 2770 and any of the offenses Defendant Wang was charged with (and pled guilty to), and, as a result, Petitioner is forced to file this Petition. Based on all the information contained in the publicly-available documents in both Defendant Wang's and Defendant Guo's criminal case, the Government cannot prevail with respect to Account 2770.

30.  Here, in the Superseding Information, the Government included a Forfeiture Allegation as to both Counts I and Count II and sought forfeiture of specific property. Superseding Information at 4. There is no evidence in the record that the Government even attempted to show, let alone that it met its burden to show, a nexus between Account 2770, and the offenses to which Defendant Wang pled guilty.

31.  As to Count I, the Forfeiture Allegation states that, "[a]s a result of committing the wire fraud offense alleged in Count One of this Superseding Information, YVETTE WANG, a/k/a "Yanping" a/k/a "Y," the defendant, shall forfeit to the United States pursuant to Title 18, United

States Code, Section[] 981(a)(1)(C)[1]. . .and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense." Superseding Information at 4. The Government must prove the elements of forfeiture under 18 U.S.C. § 981(a)(1)(C) by a preponderance of the evidence. 18 U.S.C. § 983(c)(1). Moreover, "if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3).

32.     The record is devoid of any allegations pertaining to how funds in Account 2770 are, or are derived from, proceeds traceable to Defendant Wang's conspiracy to commit wire fraud. The Superseding Information alleges that "[f]rom at least in or about 2018 until at least on or about March 15, 2023, coconspirators made false representations to investors that they would receive stock in exchange for their investments in GTV, the Himalaya Farm Alliance organization, and GClubs, and that they would receive cryptocurrency in exchange for their investments in the Himalaya Exchange [(the "Fraud Scheme")]. Through the [Fraud Scheme], YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendant, and her coconspirators, including Miles Guo, induced investors to invest more than $1 billion into entities Guo controlled." Superseding Information at 2. There are no allegations in the Superseding Information regarding Defendant Wang depositing any proceeds from the Fraud Scheme into Account 2770. Similarly, there are no allegations in the Superseding Information that as a result of the Fraud Scheme, any investors deposited money into

---

[1] 18 U.S.C. § 981(a)(1)(C) provides that "[a]ny property, real or personal, [is subject to forfeiture] which constitutes or is derived from proceeds traceable to a violation of" various specified offenses, including violations of 18 U.S.C. § 1343, wire fraud, as charged against Defendant Wang in Count I.

10

Account 2770. Nor can there be any such allegations, as the only deposits into Account 2770 were from investors who were investing in the Digital Bank – an investment that is not implicated in any way by the "Fraud Scheme" described in the Superseding Information. To be sure, Petitioner affirms that Petitioner was never a victim of any conduct by Defendant Wang alleged in the Superseding Information and does not believe that any of Petitioner's Property was ever used in any unlawful activity.

33.     Finally, there was no relevant testimony during Defendant Guo's trial concerning Account 2770. There was no testimony regarding whether any of the proceeds of the Fraud Scheme were ever deposited into Account 2770, nor, for that matter, whether Defendant Wang ever deposited any money into Account 2770. Simply put, there is nothing in the record that would indicate there is a nexus between Account 2770 and Defendant Wang's wire fraud charge, let alone sufficient evidence to determine that the Government met its burden of showing, and the Court properly adjudicated, that the appropriate nexus exists for forfeiture of Account 2770 to be proper.

34.     As to Count II, the Forfeiture Allegation states that, "[a]s a result of committing the money laundering offense alleged in Count Two of this Information, YVETTE WANG, a/k/a "Yanping" a/k/a "Y," the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1)[2], any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense." Superseding Information at 4. As to Count II, The Government "must prove the elements of forfeiture under 18

---

[2] 18 U.S.C. § 982(a)(1) provides that "[t]he court, imposing sentence on a person convicted of an offense in violation of section 1956 [the money-laundering statute] of this title . . . shall order that the person forfeit to the United States any property, real or personal, *involved in such offense*, or any property *traceable to such property*." 18 U.S.C. § 982(a)(1) (emphasis added).

11

U.S.C. § 982(a)(1) by a preponderance of the evidence." *U.S. v. Beltramea*, 785 F.3d 287, 290 (8th Cir. 2015).

35. The Superseding Information alleges that Defendant Wang committed conspiracy to launder money because Defendant Wang "knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions. . .and which in fact involved the proceeds of specified unlawful activity, to wit, proceeds of the wire fraud scheme alleged in Count One of this Information." Superseding Information at 3.

36. It is unclear how Account 2770 could be forfeited for the money laundering charge in Count II. From the allegations, the charge of money laundering arises from Defendant Wang engaging in financial transactions with the "proceeds of the wire fraud scheme alleged in Count One." Superseding Information at 3. As argued above, there is no evidence that funds in Account 2770 had any relation to the Fraud Scheme alleged in Count I (*see* ¶¶ 31-33, above) – there is no evidence that such funds "constitute[d] or [were] derived from proceeds traceable to the commission of" wire fraud. *See e.g.* 18 U.S.C. § 981(a)(1)(C). Since funds in Account 2770 were not Fraud Scheme proceeds nor were they derived from Fraud Scheme proceeds, such funds could not serve as the basis for the money laundering charge in Count II and cannot be forfeited as part of Defendant Wang's conviction for Count II.

37. The overt acts that the Government alleges to support the money laundering charge further fail to show how the funds in Account 2770 can be forfeitable. In the Superseding Information, the Government sets forth two acts evidencing money laundering. Superseding Information at 3. Although the Government states that these two overt acts were "among others" that Defendant Wang committed in furtherance of the alleged conspiracy to launder money

(Superseding Information at 3), these other acts were never identified.

38.     First, per the Superseding Information, on May 20, 2020, Defendant Wang opened a bank account in the name of GTV, which, notably, Account 2770 was *not*. Superseding Information at 3. On June 2, 2020, Defendant Wang transferred approximately $200 million to that account. *Id.* The funds transferred into the GTV account were from a JP Morgan Chase Bank account held by Saraca Media Group, Inc. ("Saraca") (Guo Trial, 05/31/2024, 953:25-954:4; Guo Trial, 06/26/2024, 4359:1-14), *not* from Account 2770. There was never any testimony that any money from Account 2770 ever went into the Saraca JP Morgan Chase Bank account to then be transferred to the GTV account cited in the Superseding Information. Moreover, Account 2770 did not even exist in 2020.

39.     The second act the Government alleges is that "on or about June 5, 2020," Defendant Wang "authorized a wire transfer of $100 million from GTV's parent company, Saraca, to a high-risk hedge fund, for the benefit of Saraca and its ultimate beneficial owner, Defendant Guo's son." Superseding Information at 3-4. First, this plainly alleges that the money was transferred from a Saraca account, which Account 2770 was demonstrably not. Also, again, there was never any testimony that any money from Account 2770 ever went into a Saraca account. Moreover, once again, Account 2770 did not even exist in 2020.

40.     As seen from the above argument, there are no allegations or testimony regarding Account 2770 whatsoever. The *only* reference in the record to Account 2770 is Defendant Wang's consent to forfeit it. However, "a defendant's consent to forfeiture [does not] abrogate the requirement that a nexus exist between the property sought for forfeiture and the conviction of offense." *Beltramea*, 785 F.3d at 291. As the Eighth Circuit stressed, "[t]he district court had an independent duty to *ensure* that the required nexus exists." *Id.* (emphasis added).

41. Here, there are no factual allegations in the Superseding Information, in the Original Forfeiture Order or the Forfeiture Order as to even an alleged nexus between Account 2770 and the offenses to which Defendant Wang pled guilty.

42. The Government's continued retention of the funds in Account 2770, without showing that there is a nexus, is wrong and inequitable. Should the Government retain the funds in Account 2770, it will be unjustly enriched, since the funds belong to third parties, including Petitioner, who are (1) not Defendant Wang or Defendant Guo; and (2) not involved the Fraud Scheme, let alone victims of such a scheme. *See, e.g., U.S. v. Bajakajian*, 524 U.S. 321, 332 (1998) (explaining that a criminal "forfeiture serves no remedial purpose, is designed to punish the offender, ***and cannot be imposed upon innocent owners***.") (emphasis added).

B. **Petitioner Has Interest in Petitioner's Property Because There Exists a Constructive Trust Over Such Property**

43. Even putting aside the Government's failure to properly demonstrate that the funds in Account 2770 were part of any activity alleged in the Superseding Information, Petitioner's Property should be returned to Petitioner because Petitioner has a greater interest in it than does Defendant Wang, or, now, the Government.

44. Under the doctrine of constructive trusts, Petitioner's Property is protected and remains the property of Petitioner regardless of any other ownership claims, including Defendant

14

Wang's or the Government, standing in her shoes. The Second Circuit[3] has held that "a constructive trust qualifies as a 'legal right, title, or interest in the property' that 'may be a superior interest' to a defendant's interest for the purposes of a forfeiture statute analogous to 21 U.S.C. § 853(n)(6)(A)." *Willis Mgmt. (Vermont), Ltd. v. United States*, 652 F.3d 236, 242 (2d Cir. 2011).

45. "A constructive trust is an equitable remedy, *necessarily flexible to accomplish its purpose.*" *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 361 (2d Cir. 1999) (emphasis added). "Its purpose is to prevent unjust enrichment, although unjust enrichment does not necessarily implicate the performance of a wrongful act. . .What is necessary is that the court identify a party who is holding property *under such circumstances that in equity and good conscience he ought not to retain it.*" *Id.* (internal citations omitted).

46. "Whether a party is unjustly enriched is a legal conclusion reached through the application of principles of equity. . . A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief. . . Unjust enrichment results when a person retains a benefit which, under the circumstances of the transfer and considering the relationship of the parties, it would be inequitable to retain." *Id.* (internal

---

[3] "The federal common law choice-of-law rule is to apply the law of the jurisdiction having the greatest interest in the litigation." *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 350 (2d Cir. 1992), *aff'd in part sub nom. Refco F/X Assocs., Inc. v. Mebco Bank, S.A.*, No. 89 CIV. 3071 (WK), 1992 WL 200748 (S.D.N.Y. July 31, 1992). Here, there are three competing jurisdictions whose laws could apply: New York, California, and Cayman Islands. Petitioner's payment of Petitioner's Property was pursuant to the Subscription Agreement, which is governed by Cayman Islands law. *See* **Exhibit B**, Subscription Agreement at 8, ¶ 2(s). Account 2770 *was* an account in a California bank when Petitioner deposited Petitioner's Property. Since Account 2770 was seized (pursuant to a search and seizure warrant issued by a court in New York state), the funds are now in possession of the Government in New York. New York is the forum state of this case. From these facts, New York has the greatest interest in this litigation, and its laws should apply to an imposition of a constructive trust. However, to the extent that the Government challenges this choice-of-law determination, Petitioner reserves all rights to request that this Court impose a constructive trust over Petitioner's Property under California and/or Cayman Islands law.

citations omitted).

47. The New York Court of Appeals outlined several factors to be considered in determining whether a constructive trust should be imposed in certain circumstances, including "(1) a confidential or fiduciary relation, (2) a promise, (3) a transfer in reliance thereon and (4) unjust enrichment." *Sharp v. Kosmalski*, 40 N.Y.2d 119, 121 (1976). However, New York courts have long held that "these factors are merely useful guides and are not talismanic." *Counihan*, 194 F.3d at 362 (citing to a plethora of New York state cases that have stated this proposition).

48. Here, there is a constructive trust for the benefit of Petitioner over Petitioner's Property as of the date that it was deposited into Account 2770.

49. Petitioner entered into a confidential and/or fiduciary relationship[4] with Hamilton Opportunity Fund when Petitioner executed the Subscription Agreement in order to acquire certain Class B shares in Hamilton M&A Fund SP. Per the Subscription Agreement, Hamilton Opportunity Fund SPC made a promise to Petitioner that Petitioner's Property would be invested in the Digital Bank. In reliance on this promise, the Petitioner wired Petitioner's Property to Account 2770 as instructed in the Subscription Agreement. The Government's improper seizure of Account 2770 forced a breach of Hamilton Opportunity Fund SPC's promise to invest Petitioner's Property into the Digital Bank. Because of Government's seizure, Petitioner is not even able to exercise his Right of Redemption to obtain back Petitioner's Property. This would

---

[4] Even if the Court determines that the relationship was not confidential and/or there was no fiduciary relationship between Hamilton Opportunity Fund and Petitioner, such would not be determinative, as the absence of a fiduciary relationship does not preclude the Court from finding a constructive trust exists. *See Koreag,* 961 F.2d at 353 (stating that "[w]e do not believe, however, that the lack of a fiduciary relationship between [the parties] automatically defeats [a] claim of constructive trust. Although a fiduciary relationship is one of the factors cited by New York courts, the absence of any one factor will not itself defeat the imposition of a constructive trust when otherwise required by equity").

result in unjust enrichment to the benefit of the Government since the Government is now retaining Petitioner's Property without any legal cause to do so. *See, e.g., U.S. v. Coluccio*, 51 F.3d 337, 340 (2nd Cir. 1995) (finding that imposition of a constructive trust was proper where, amongst other reasons, Government's forfeiture caused a breach of an implied promise); *Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154, 1159 (2d Cir. 1994) (finding a constructive trust appropriate where "The government's forfeiture forced a breach of that promise that may result in a potentially unjust enrichment of the government (and commensurate unjust impoverishment of [the plaintiff]).")

50. Accordingly, Petitioner has shown that a constructive trust should be imposed over Petitioner's Property. Such a constructive trust "qualifies as a 'legal right, title, or interest in the property' that 'may be a superior interest' to a defendant's interest for the purposes of a forfeiture statute analogous to 21 U.S.C. § 853(n)(6)(A)." *Willis*, 652 F.3d at 242.

51. The property upon which the constructive trust is sought – Petitioners Property - is easily traceable. *See* **Exhibit C**.

52. Moreover, the imposition of a constructive trust is fully available to Petitioner, even if the Government contends that others are owed restitution from any forfeited property. "When a party can directly trace its assets, without resorting to fictions or presumptions, a constructive trust is available even in cases involving multiple fraud victims." *U.S. v. Ovid,* 2012 WL 2087084, *7 (E.D.N.Y., Jun. 8, 2012). "[C]ourts are not free to disregard the law of constructive trusts when a claimant can directly trace its property, even if this leaves one innocent victim better off than another equally innocent victim." *Id.* The "orthodox approach to multiple-fraud cases" is to "return[] identifiable assets to their owners, turning to pro rata distribution only when specific identification or transactional tracing is impossible." *Id.* at *8 (citing *Restatement (Third) of Restitution & Unjust Enrichment*, § 59 Reporter's Note G, at 437).

17

### C. Petitioner Has a Superior Interest in the Petitioner's Property

53. Petitioner's interest in Petitioner's Property is absolutely superior to any interest that the Government or Defendant Wang may have in Petitioner's Property.

54. 21 U.S.C. § 853(n) is clear that, in addition to Petitioner's interest in the forfeited property, that Petitioner must demonstrate, by a preponderance of the evidence, that Petitioner's interest "renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner *rather than the defendant* or was superior to any right, title, or interest *of the defendant* at the time of the commission of the acts which give rise to the forfeiture of the property under this section." 21 U.S.C. § 853(n)(6)(A) (emphasis added).

55. Here, as set forth above, Defendant Wang never had any interest in Petitioner's Property or Account 2770; indeed, the record is entirely silent as to what the relationship is between Defendant Wang, the Fraud Scheme, and Account 2770.

56. It is axiomatic that neither the Government nor Defendant Wang can argue that they have a superior interest in a property in which they never had an interest. Likewise, Defendant Wang cannot forfeit her interest in a property in which she had no interest.

### D. Petitioner is Entitled to Costs and Attorneys' Fees

57. The Petitioner has been required to retain legal counsel and has incurred costs to file this petition asserting Petitioner's right to Petitioner's Property and to challenge the forfeiture of Petitioner's Property. Upon prevailing in this proceeding, Petitioner reserves all rights to recover attorneys' fees and costs incurred in connection with this Petition and may recover Petitioner's costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Federal courts have consistently held that § 853(n) proceedings are civil for the purposes of allowing a successful claimant to collect attorney's fees under the EAJA. *See United States v. Cox*, 575 F.3d 352, 355 (4th Cir. 2009); *United States v. Douglas*, 55 F.3d 584, 588 (11th

18

Cir. 1995); *U.S. v. Bailey*, 2015 WL 1893610 at *20 (W.D.N.C. Apr. 27, 2015).

## IV.     CONCLUSION

58.     For the reasons stated above, Petitioner has an interest in Petitioner's Property, which renders the Forfeiture Order invalid as to such property. *See e.g.* 21 U.S.C. § 853(n)(6)(A). Defendant Wang does not have any right, title, or interest in Petitioner's Property, and never did. Petitioner has proven, and can prove at any necessary hearing, by preponderance of evidence that the Forfeiture Order needs to be amended to exclude Petitioner's Property.

59.     Therefore, Petitioner respectfully requests that this Court: (1) grant this Petition; (2) amend the Forfeiture Order to exclude Petitioner's Property; (3) order the immediate return of Petitioner's Property to Petitioner; (4) order that Petitioner is entitled to recover Petitioner's attorneys' fees and costs incurred in connection with this Petition and grant Petitioner leave to submit an application for such attorneys' fees and costs; and (5) grant such and other relief that is necessary and just.

Dated: April 2, 2025                                          Respectfully submitted,

/s/ Jeffrey S. Gavenman
Jeffrey S. Gavenman, Esq.
Jeremy W. Schulman, Esq.
SCHULMAN BHATTACHARYA, LLC
6116 Executive Boulevard, Suite 425
North Bethesda, MD 20852
(240) 356-8550
jgavenman@schulmanbh.com
jschulman@schulmanbh.com

/s/ Paul W. Butler
Paul W. Butler, Esq.
BUTLER LEGAL STRATEGIES
1201 Connecticut Avenue, NW, Suite 531
Washington, D.C. 20036
paul@butlerlegalstrategies.com
*Counsel for Petitioner*

## ATTESTATION AND OATH

Pursuant to 21 U.S.C. § 853(n)(3), I, _____, attest and declare under penalty of perjury that my claim to this property is not frivolous and that the information provided in support of this claim is true and correct, to the best of my knowledge and belief.

Executed on this  03  day of April, 2025

Signature