IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Complainant<br><br>-v-<br><br>HO WAN KWOK, a/k/a "Miles Guo," "Miles Kwok," "Guo Wengui," "Brother Seven," or "The Principal,"<br><br>and<br><br>KIN MING JE, a/k/a "William Je,"<br><br>and<br><br>YANPING WANG, a/k/a "Yvette,"<br><br>**Defendants.** | Criminal No.:  23-cr-118 (AT)<br><br>**MOTION FOR ORDER OF PROCEDURES FOR AMENDED AND RENEWED RETURN OF HIMALAYA EXCHANGE DEPOSITORS VICTIMIZED BY THE U.S. GOVERNMENT**<br><br>Assigned to the Honorable U.S. District Court Judge Analisa Torres, Presiding Judge |

**I.    URGENT ACTION REQUESTED BY APRIL 7, 2025**

Claimants, represented by the undersigned Bradford L. Geyer, Esq., of FormerFedsGroup.Com, respectfully demand the return of funds illegally seized by the United States of America ("Government"), as authorized by 18 U.S.C. § 3771; 18 U.S.C. § 983(a)(1)(A)(i), the Bank Robbery Act (18 U.S.C. § 2113), common law larceny by trick and false pretenses, 21 U.S.C. §§ 853(i) and (n), Rule 41(g), 42 U.S.C. § 10607, Fed. R. Crim. P. 32.2(b), and principles of unjust enrichment. These funds were taken from individuals that the U.S. Government itself identifies as victims but instead of treating them as victims the U.S. Government has treated them as "marks" to be mugged by the U.S. Government.

1

## II.    MOTION TO MODIFY PROCESS FOR PETITIONS FOR CLAIMS

On March 20, 2023, in the Government's Motion at ECF 10, the Government set forth in detail the "rights" (more than requirements) of 18 U.S.C. § 3771 but then asked this Court to alter the rights of 18 U.S.C. § 3771 by Order.

This Court responded by Minute Order granting the Government's Motion to alter the statutory requirements of 18 U.S.C. § 3771 in many significant ways.

Therefore, it would appear that the District Court has or believes it has the authority to alter the statutory terms, details, and requirements of the statutes governing victims' rights, forfeiture, remission, and/or ancillary hearings concerning those affected by the Government seizing their funds (termed broadly as property in the statutes).

If the District Court did not have the authority to alter the statutes in response to the Government's March 20, 2023, Motion at ECF 10, then the Government has comprehensively violated the governing statutes and nothing is valid that has been done in relation to the seized funds.

## III.    MOTION TO FILE UNDER SEAL

In support thereof, undersigned counsel respectfully requests that his now roughly 6,505[1] individual clients as individual Members and investors in the Himalaya Exchange (HEX) be permitted to file their identifying information and financial losses under seal in support of their demands under 18 U.S. Code § 3771 and otherwise for the return of their funds.

---

[1] As of 12:00 a.m. on March 4, 2025, undersigned counsel has approximately 6,537 clients under agreement. Of these, approximately 3,539 were authenticated by HEX that also provided deposits, HDO, HCN and redemption information. Removed from the 6,537 total are approximately 117 former clients who terminated the attorney client relationship when rumors whipsawed the community that seemed to require victims to endorse the government's prosecution theory as a prerequisite to receiving funds return. Undersigned counsel is informed that it will take 4-6 weeks from any filing deadline for HEX to authenticate each customer along with victim loss information.

## IV.   ADDITIONAL REQUESTED MODIFICATIONS

Therefore, the undersigned counsel respectfully requests the following alterations to the claims process:

A. Extended Deadline: Claims may be filed as late as May 15, 2025

B. Disclosure Requirements: The Government must necessarily and practically as well as for legal disclosure identify exactly which investment entities it seized money from. If the Bill of Particulars from April 2023 remains the universe of seized accounts, then we can rely on the HEX funds being in appropriate identified accounts and not other entities (Exhibit A – HEX accounts in highlight).  If the Government developed another opinion or seized other accounts, it should be required to disclose it.  HEX records show all transactions going into and coming out of these accounts.  It stands to reason that the banking records the Government seized recount the same transaction history.

Are a HEX investor's funds at issue? In violation of 18 U.S.C. 3771, the Government has not informed affected persons of these details.

Therefore, in spite of the Minute Order of the Court to the Motion at ECF10, the Government must be required to identify each specific transaction of seizing funds with each entity involved by its full legal name. Presumably these transactions of seizure involved far fewer than the original 80 entities of interest. Then investors can analyze what funds they invested are at issue. Again, 18 U.S.C. 3771 and other statutes mandate that disclosure, in spite of the Court making some alterations to the statutes.

C. Co-mingling Theory Disclosure: The disclosure rights of those who have lost funds or property also would require the Government to identify whether it seized or is holding funds under a theory of the proceeds of crime being co-mingled with the entity's legitimate funds (i.e.,

the investors investments) and whether it contends that any crime was committed using the entity. The 6,537 clients invested their own funds, this is all documented in HEX encrypted files, with comprehensive account activity records and they deny any involvement with criminal activity.

      D. Disclosure of Erroneous Seizures: The Government must disclose pursuant to these statutes if there was -- in hindsight -- no reason to seize any funds from a particular entity. If so, the funds should be returned *in toto* forthwith.

      E. Consolidated Filing: Counsel will file a single, umbrella claim for his clients supported by attachments under seal of the individual identities and amounts of funds lost for those clients for whom HEX provided loss calculations. Counsel will not file separate petitions for each separate client, but will provide information for each of them as independent claimants by spreadsheet. The spreadsheet will be filed under seal and will include clients by HID#'s with approximately 6,537.  Of these, 1,433 have filed a consolidated affidavit signed by HID# designed to cover the ancillary petition and the remission process.  The challenge is that no client has yet communicated to undersigned counsel that the Defendants victimized them although we have countless letters where victims express the view that they were victims of the US government (Exhibit B).  There are also countless problems with HEX customers no longer having ready access to HEX customer service with account access capability.  These are just a few examples.  (Exhibit C).

V. **RECOMMENDED PLAN OFFERS ROBUST AUTHENTICATION PROCEDURES**

A. To ensure robust documentation addressing compliance concerns, the process can follow the guidelines below:

1. **Exhibit ECF 207-1**: Contains identity verification records, including full name, date of birth, address, and government-issued identification, establishing a direct relationship between each claimant and their account (Exhibit D).
2. **Exhibit ECF 207-2**: Provides a comprehensive account history, detailing all transactions associated with the claimant's Himalaya account (e.g., deposits, withdrawals, transfers) (Exhibit E).
3. **Exhibit ECF 207-3**: Documents transaction records between the claimant's personal bank account and the Himalaya account, validating transaction consistency and legitimacy (Exhibit E).
4. **Exhibit ECF 208-2 through Exhibit ECF 208-7**: Comprise audit reports, expert accounting summaries, and compliance assessments. Notably, these include:
    - Identity verification documents
    - Transaction logs substantiating each claim.
    - State-of-the-art facial recognition software-backed validation (Exhibit E) (ECF 208-4 pp. 1-44).

B. Additionally, safeguards should be put in in place for:
    - Secure handling of sensitive financial data, with controlled access for review.
    - Valuation and prioritization of HCO and HCN claims in regard to all claims.

**VI. NEED FOR COURT PERMISSION**

Court authorization is essential for:

A. Coordinating and managing thousands of secure communications, which are expected to continue through May 15, 2025, if permitted.

B. Consolidating claims into an aggregated filing detailing a list of HID#s for represented clients along with total claims based on deposits, HCO, HCN and redemptions.

C. Enabling HEX to match HID-based claims with source data (e.g., identification records, banking compliance data, transaction histories) for government clearance.

D. Secure access to relevant data under mutually agreed-upon conditions.

E. Counsel here recommends in the interests of justice reliance upon the business records of HEX as "best evidence," that is more authoritative, comprehensive and admissible as business records. The information required is automatically admissible and reliable as having been received funds from the Members, which was then taken by the U.S. Government.

F. The Government should be required to disclose under the governing statutes, even as modified by the Court around March 20, 2023, why it contends certain transactions were improper. HEX records show all aspects of HEX financial transactions including funding sources backed up by robust KYC procedures.

G. Petitions or claims should not be due prior to the United States of America's (Government's) sentencing of Michael Guo (Kwok).  Although Yvette Wang pled guilty and was sentenced, Wang is clearly a minor participant in this criminal case and Wang has disclaimed any ownership, control, or financial interest in any of the investors' funds

seized by the Government. The Government cannot lawfully base forfeiture, remission, or ancillary proceedings based on the sentencing of Wang who has no interest in the funds seized. Indeed, the Government took this position officially, then flip-flopped its position, and could be seen as being barred by judicial estoppel. The Government first insisted that disposition of the seized funds could not begin until Guo is sentenced, then switching its position, does not make it legal to begin this process before Guo's sentencing is complete. The original and superseding indictments indicate that Kwok (Guo) has and had no managerial or executive control or ownership of the Himalaya Exchange. They make ambiguous references to Je's involvement in entities other than the Exchange.

H.  Need for Additional Time: Counsel must cross cultural, language, and internet access barriers to reach clients with specific requirements to proceed. Although Counsel will relieve the Court of 6,537 individual claims, the process takes more time than might be counted from timelines triggered from Wang's sentencing.

I.  While it is appropriate for additional filing deadlines to commence only after Guo's sentencing—whether viewed as premature beforehand or deferred as a judicial safeguard against humanitarian harm—a cooperative framework for capital return, established in partnership with HEX, offers a compelling alternative. Leveraging HEX's advanced KYC compliance systems and military-grade encryption will not only preserve the value of seized assets but also conserve vast government and judicial resources.

## VII. ADDITIONAL CONSIDERATIONS

A. URGENT TIMING CONSIDERATIONS

Under the most restrictive interpretation of applicable deadlines, Counsel must file applications for his clients on or before April 7, 2025. Accordingly, this Court's Order is urgently requested to provide sufficient time for Counsel and other affected parties to prepare and file sealed submissions.

B. EQUAL TREATMENT FOR ALL CLAIMANTS

Counsel represents approximately 6,537 individual clients of the Himalaya Exchange ("HEX"), some of whom also made separate investments in other entities connected to Michael Guo (Kwok). The counsel can identify no valid basis for treating his clients differently from other HEX claimants or independent pro se applicants. All claimants should be afforded the same procedural rights and protections in seeking the return of their seized funds.

C. LACK OF CLEAR FILING INSTRUCTIONS

The Department of Justice website suggests that applications for return of funds should be directed to the agency that seized the funds. However, the Government has failed to provide clear and comprehensive information regarding:

Which specific agencies conducted the seizures.

The precise funds that were seized.

Which of the approximately 80 business entities under investigation actually had funds seized.

The Government has provided only fragmented, piecemeal information about these critical details. As a result, investors face significant uncertainty regarding where to direct their applications for relief. The only clear options appear to be filing with the U.S. Department of

Justice or with this Court.

### D. DELEGATION CONCERNS AND EXISTING SOLUTIONS

Any delegation of this Court's authority to a special master, magistrate, or administrator would be both prejudicial to claimants and unnecessary. HEX already possesses all the necessary information to facilitate the return of funds, maintained in secure, encrypted form.

### E. PRACTICAL BARRIERS FOR VULNERABLE CLAIMANTS

The guidance provided at www.Forfeiture.gov appears to lack binding legal authority and functions more as informal commentary rather than authoritative instruction. Moreover, this approach is particularly impractical for many victims who face substantial barriers, including:

- Language obstacles;
- Residency within the restrictive environment of the People's Republic of China;
- Limited access to information after the Government disabled HEX's website.

For these vulnerable individuals, complying with the unprotected disclosure requirements outlined on forfeiture.gov entails extraordinary risk and potential exposure, which underscores the urgent need for a safer, court-supervised alternative.

## VIII. PROPOSED APPROACH TO RESOLUTION

Counsel is prepared to proffer relevant information and—assuming proper access is provided by HEX—invites the Department of Justice to review data under secure conditions. This invitation should be considered a proffer that the Government may accept at its election.

Counsel anticipates that HEX will file its own application for the return of reserve funds

9

seized by the U.S. Government. Counsel's clients support either of two potential remedies:

Option A: Return of Funds to HEX

The return of HEX's reserve funds in their entirety would allow all Members (investors) to receive their investments directly from HEX, including those who are not represented by Counsel. This would be the speediest, most secure, and least expensive approach.

Option B: Return of Funds to Individual Members

Alternatively, the return of funds to individual Members would require the Government to articulate with specificity any concerns about particular Member accounts. This approach would dispel vague assertions and force the Government to identify any specific Members about whom it has reliable evidence of wrongdoing.

In the absence of individualized concerns, the innocent and unimpeachable Members should have their seized investments returned promptly. If the Government fails to identify specific persons or circumstances of concern, we must conclude that none exist.

VII. IMPACT OF GOVERNMENT ACTIONS

It is important to note that the U.S. Government not only seized funds but also shut down HEX's website and online operations, which were crucial components of its business model and increased burdens on HEX claimants.

**IX. GOVERNMENT'S STATED INTENTIONS**

In ECF 233, the Government stated: "The government wishes to note that it does not believe the assets that the government has seized and seeks to forfeit should be transferred to the bankruptcy estate. Rather the government intends to forfeit the criminal proceeds of the Kwok enterprise, which the government has seized, and return those assets to the victims of Kwok's

crimes provided it is granted approval from the Department of Justice's remission or restoration process, and of dictating an order of forfeiture from this court. To the extent there is a dispute with the trustee, or any third party, concerning forfeiture of seized assets, the time to adjudicate those disputes will arise after the criminal trial."

This statement affirms the Government's intention to return assets to victims but fails to provide a clear, practical pathway for doing so that addresses the unique circumstances of this case.

X.   BACKGROUND RELEVANT LAW GOVERNING

A. RIGHTS OF VICTIMS

Under the Crime Victim's Reform Act, any redemption process should enable victims to perfect their claims and authenticate under an updated 18 U.S.C. § 983(a)(1)(A)(i) process that complies with 18 U.S. Code § 3771. Section 983 was designed before the emergence of cryptocurrency exchanges and innovations in human rights capital creation systems (bit coin, Himalaya Coin, etc.) this growing gulf under Section 3771 may be trumped by the fact that victims are being forced by the government under court supervision to expose their personal information to foreign governments ("doxxing").

B. STATUTORY COMMAND WITHOUT EXCEPTION TO MAKE RESTITUTION TO THESE VICTIMS

In statutory interpretation, a canon of construction is that the specific controls over the general. see HCSC-- Laundry v. United States, 450 U.S. 1, 6, 101 S.Ct. 836, 67 L.Ed.2d 1 (1981)." Downing v. Globe Direct LLC, 682 F.3d 18 (1st Cir. 2012). A statute that precisely fits the scenario evidences the legislatures intent to regulate exactly that situation rather than generic statutes which do not appear to relate to the situation at hand. This contrast is evidence of the legislature's intent in the substance of the specific statute and the need to enact it. A poorly fitting

11

generic statute or one that is confused as to application must give away to a statute that specifically governs the exact situation being considered.

18 U.S. Code § 3771 - Crime victims' rights includes numerous relevant provisions, including:

The right to full and timely restitution as provided in law.

The right to proceedings free from unreasonable delay.

Requirements that officers and employees of the Department of Justice shall make their best efforts to see that crime victims are notified of, and accorded, their rights.

The crime victim or their lawful representative, and the attorney for the Government may assert these rights.

When there are multiple crime victims, the court shall fashion a reasonable procedure to give effect to this chapter that does not unduly complicate or prolong the proceedings,

42 U.S.C. §10607 further establishes services to victims, including requirements that responsible officials:

Identify the victim or victims of a crime.

Inform a victim of any restitution or other relief to which the victim may be entitled under this or any other law and the manner in which such relief may be obtained.

Assist a victim in contacting the persons who are responsible for providing the services and relief.

## XI. CONCLUSION

For the reasons set forth above, we respectfully request that the Court:

1) Modify the process for filing claims as detailed in this motion;
2) Authorize the presentation of the individual personal and financial information of investors seeking the return of their funds seized by the U.S. Government under seal or the equivalent if the Court directs applications to be made to the seizing department under restated directions that are easy to find and comply with;
3) Recognize the unique challenges presented by this case, including the large number of claimants, cross-cultural and language barriers, and technical nature of cryptocurrency exchange records;
4) Adopt, in the interests of justice, a flexible system in the event remission is required whereby the full authentication of HEX clients can be done under secured information access conditions, allowing the Government to access source documents that constitute best evidence and create certainty regarding authentication of identity while maintaining appropriate confidentiality protections;
5) Direct the USAO to publish clear, easily accessible instructions for filing claims in accordance with any Order the Court may issue; and
6) Grant such other and further relief as the Court deems just and proper.

These modifications will serve the interests of justice by balancing the need for thorough authentication with the privacy concerns of approximately 6,537 investors who seek only to recover funds that were seized by the Government. The flexible authentication system we

propose would allow for efficient processing of claims while ensuring that all necessary verification can be completed securely.

We submit that these requested modifications are reasonable, necessary, and within the Court's authority to grant, particularly in light of the Court's previous willingness when good reasons were shown to modify statutory requirements in response to the Government's Motion at ECF10 on March 20, 2023.

Dated:  April 4, 2025                    RESPECTFULLY SUBMITTED

/s/ Brad Geyer
Bradford L. Geyer, PHV
NJ 022751991
Suite 141 Route 130 S.  303
Cinnaminson, NJ 0807
(856) 607-5708

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2025, a true and accurate copy of the forgoing was electronically filed and served through the ECF system of the U.S. District Court for the Southern District of New York.

/s/ Brad Geyer
Bradford L. Geyer, PHV
NJ 022751991
Suite 141 Route 130 S.  303
Cinnaminson, NJ 08077
(856) 607-5708