IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Complainant<br><br>-v-<br><br>**HO WAN KWOK, a/k/a "Miles Guo," "Miles Kwok," "Guo Wengui," "Brother Seven," or "The Principal,"**<br><br>and<br><br>**KIN MING JE, a/k/a "William Je,"**<br><br>and<br><br>**YANPING WANG, a/k/a "Yvette,"**<br><br>**Defendants.** | Criminal No.:   23-cr-118 (AT)<br><br><br>**ORDER**<br><br><br><br><br>Assigned to the Honorable U.S. District Court Judge Analisa Torres, Presiding Judge |

**[PROPOSED] ORDER ON CONSOLIDATED MOTIONS TO MODIFY PROCESS FOR PETITIONS FOR CLAIMS AND TO FILE UNDER SEAL FINANCIAL AND PERSONAL DATA OF FINANCIAL VICTIMS**

INVESTORS IN THE HIMALAYA EXCHANGE as represented by Counsel Bradford L. Geyer CAME BEFORE THE COURT on their consolidated motions to (1) modify the process for petitions for claims for return of seized property and funds, and (2) file personal and financial information under seal in support of their petitions to recover money seized by the U.S. Government associated with the criminal prosecution of the U.S. Attorney's Office (USAO) of the Southern District of New York (SDNY) against the Defendants named herein.

WHEREAS, petitions for recovery of individuals' funds or property may be due as early as April 7, 2025, as measured by forfeiture filings made after the sentencing of Yvette Wang under a plea of guilty; and

WHEREAS, counsel Geyer represents approximately 6,537 individual clients as Members and investors in the Himalaya Exchange, some of whom also made separate investments in other entities related to the inspiration of Michael Guo (Kwok); and

WHEREAS, counsel Geyer notes that he is unaware of any reason distinguishing his clients from any other Himalaya Exchange claimants who also wish to file their petitions and/or supporting information under seal; and

WHEREAS, governing statutes call upon claimants to identify themselves, the nature of their claim, the amount of their claim, and why their claim in funds or property is superior to any claim of the Government or other parties; and

WHEREAS, the Court has previously demonstrated its willingness to modify statutory requirements in response to the Government's Motion at ECF10 on March 20, 2023 when both sensible and reasonable and in the interests of justice.

NOW THEREFORE, upon review of the pleadings, representations of the United States of America ("Government") and the criminal Defendants and the individuals who claim that their investments were seized by the Government, the court file, the pleadings, and relevant precedents, it is hereby ORDERED and ADJUDGED for the purposes of processing of the seized funds, as follows:

## I. FILING DEADLINE AND PROCESS

1. Any uncertainty about the due date is hereby resolved by amending the deadline so that claims may be filed as late as **May 15, 2025**, by or for any and all persons claiming an interest in the funds seized by the U.S. Government in connection with the criminal prosecution herein. Any petitions or claims relating to the return or recovery of funds related to this prosecution shall be timely if filed by May 15, 2025.

2. As there does not appear to be any reason to craft a different process or date for Geyer's clients as opposed to any or all claimants of the various business entities asserted to be

involved, the same deadline and provisions of this Order shall apply to any claimant seeking funds out of those seized by the Government.

3. Claimants shall file their claims with the Court in this case by paper mail or by electronic filing if registered for electronic filing. The USAO shall, within 7 days of this Order, designate by notice published on the Court's docket where claims should be sent to be noticed by the staff involved.

4. The Court may subsequently consider whether the process and deadline shall run from the sentencing of Yvette Wang or be triggered later upon the sentencing of Ho Wan Kwok (Miles Guo) if additional clarification is provided by the Government as to what seized funds are at issue, why, and therefore whether as Geyer's clients argue Wang had no interest in the seized funds at issue so as to trigger forfeiture, remission, or ancillary proceedings processes by her sentencing.

## II. CONFIDENTIALITY PROVISIONS

5. Any and all persons claiming an interest in the funds seized by the U.S. Government in connection with the criminal prosecution herein may, if they wish, file their petitions and/or supporting information under seal. That is, they may file a petition not under seal with attachment(s) under seal or they may file the petition plus attachments all under seal.

6. Counsel for multiple Himalaya Exchange claimants, including Geyer representing approximately 6,537clients, may file one single, umbrella claim for all clients supported by attachments under seal of the individual identities and amounts of funds lost identified by unique HID# with compliance and KYC information stored in encrypted for by the Himalaya Exchange. Counsel need not file separate petitions for each separate client, but

    shall provide information for each of them as independent claimants in a format such as a spreadsheet identified by their unique Himalaya Exchange Identification Number (HID#).

7. Any document which is marked "FILED UNDER SEAL" shall be under seal. The Clerk of Court shall assist in filing sealed documents under seal. Claimants are advised that for electronic filing there is a separate category on the Court's website for filing documents under seal.

8. The Court reminds all interested persons or parties that filing under seal means that a copy must be provided to the U.S. Government or designated department, but the information is not publicly visible or available in the Court's case file and must be treated confidentially by all recipients including the Government.

9. Any supporting documents or information should be clear as to which claimant or petition they are related to so that they can be properly considered.

## III. GOVERNMENT DISCLOSURE REQUIREMENTS

10. For the aid of claimants and of the District Court or its delegates processing the funds, for the different purpose of analyzing the distribution of seized funds, of the roughly 80 business entities which were originally of interest to the Government, the Government shall identify within 14 days of this Order: a) Which business entities the Government *actually* ended up seizing funds from, using the correct precise legal name of the entities, as compared to those entities the Government was originally investigating; b) The amount seized from each such entity; c) Approximate date(s) of the seizure(s); d) Whether the Government is holding funds under a theory of the proceeds of crime being co-mingled with the entity's legitimate funds (i.e., the investors' investments); e) Whether

the Government contends that any crime was committed using any particular entity; f) Any information that would inform the analysis about how much of the money seized the Government asserts to be funds improperly obtained by the criminal Defendants and under what legal category for forfeiture, so that that can be analyzed separately; g) Any disclosures regarding whether, in hindsight, there was no reason to seize any funds from a particular entity; and h) The basis upon which the Government contends certain transactions were improper, including specific criteria for what constitutes improper loans, compensation, or disbursements.

11. The Government shall propose a method of confidentiality including a proposed protective order concerning any other criminal defendants. That is, if there are persons other than Kwok, Je, and Wang that would affect the analysis of what to do with the seized funds, they should be identified. However, public disclosure may not be desirable.

12. The Court recognizes that the tangible items seized from the ownership, title, or possession of Defendants — possibly not seized from any of the 80 business entities — could have their potential sale price at auction influenced by public discussion. If the Government were to assign an expected sale price, few would bid at auction any more. Nevertheless, the Government shall consider and report a method and timeline for converting into cash the tangible items for the obvious goal of receiving the highest prices. Or the Government might complete the sales of those tangible items first and report the results before beginning with the distribution of funds.

13. The Government shall respond to these requirements no later than **April 15, 2025**.

## IV. BUSINESS RECORDS AND RELIANCE

15. Claimants may rely upon the business records of the Himalaya Exchange as admissible business records. The Membership and Member activity records of HEX maintained in the regular course of business are recognized as self-authenticating and admissible under the Federal Rules of Evidence, to the extent they can be produced.

16. The Court acknowledges that the U.S. Government's seizure and shutdown of HEX's website and on-line operations may have impacted access to business records that would otherwise be available to claimants. The Government shall, to the extent possible, facilitate reasonable access to such records for purposes of substantiating claims.

17. In the event the Government's forfeiture survives jurisdictional challenges and HEX claims for ancillary petition fails, the Government and HEX are hereby instructed to devise an information sharing plan to where the Government can access HEX encrypted data in a secure, compartmentalized facility (SCIF) and where HID#'s can be matched with individuals through HEX's compliance and "Know Your Customer" (KYC) system,

This Order addresses both the modification of the claims process and the filing of financial and personal data under seal that may impact ancillary petitions and/or remission claims. The Court expects all parties to comply with both the letter and spirit of this Order to ensure an efficient and fair process for the resolution of claims.

**SO ORDERED.**

**ENTERED THIS \_\_\_\_ DAY OF APRIL, 2025**

_____
U.S. District Court Judge Analisa Torres