# EXHIBIT E

# Subscription Document

### Class A Shares

## Himalaya Digital Assets Fund SP

### a Segregated Portfolio of

### Hamilton Opportunity Fund SPC

A Segregated Portfolio of the Fund Hamilton Opportunity Fund SPC, A Cayman Islands Segregated Portfolio Company operating as a Fund under Section 4(3) of the Mutual Funds Law (Revised) of the Cayman Islands.

**Investment Manager**

Hamilton Investment Management Ltd

**Investment Adviser**

Ivy Capital Advisors Limited

## INVESTMENT PROCEDURES

1. Please read the Offering Memorandum (the "**Offering Memorandum**") for Hamilton Opportunity Fund SPC (the "**Fund**") and this document in full, prior to subscribing for the Shares (as defined in the Offering Memorandum) of the Fund.
2. Prospective investors are required to complete the two steps as listed below, in order for their subscriptions to be processed by the Fund Administrator:
    o Complete, digitally sign and submit Know-Your-Customer ("**KYC**") application on the Fund's Dashboard, including uploading the required supplemental documentation. The completed "KYC application" will be appended to this Subscription Agreement as an Investor Supplement. The Investor Supplement will include information on the following: Investor profile, eligibility of the investor and an Anti-Money Laundering and Anti-Terrorism Compliance section.
    o Complete, digitally sign and submit this Subscription Agreement.
    o **The Fund Administrator being:**

NAV Fund Administration Group,
NAV Consulting | NAV Cayman | NAV Backoffice,
5th Floor Harbour Place, 103 South Church Street,
George Town, Grand Cayman KY1-1202, CAYMAN ISLANDS,
P: 1.630.954.1919, P: 1.345.946.5006,
F: 1.630.596.8555 F: 1.345.946.5007 F: 1.630.954.2881,
Transfer.agency@navconsulting.net

3. By submitting this document via the Dashboard, you consent to the transmission of all the attached and appended information and documentation being sent to the Administrator.
4. The Administrator accepts no responsibility for any risks associated with and/or incurred with the submission of information, form applications, Subscription Agreement(s) or any form of data uploaded or sent via the Fund's Dashboard, or by email, nor losses caused and/or incurred due to the non-receipt of any associated email(s) or PDF attachments.
5. Payment for the Shares should be made by wire transfer using the payment instructions that will be sent via email after signing of this Subscription Document.
6. The Fund has the right to accept or reject (in whole or part) any Subscription Agreement(s) and/or application(s) for the purchase of Shares.
7. In the event that subscription monies are received in a currency other than Fund's base currency, conversion into the Fund's base currency will be arranged by the Investment Manager at your risk and expense. In addition, any bank charges or fees incurred in association and in connection with the wire transfers will be deducted from subscription and the net amount will be deemed as the amount invested in Shares.
     o   Fiat Subscription

The Subscriber undertakes to remit the subscription monies in full, net of bank charges, by electronic transfer so that cleared funds are received in the bank account of the Fund by no later than 5:00 pm on the last Business Day of the Initial Offer Period or 5:00 pm (London (United Kingdom) time) on the Business Day before the relevant Subscription Day, as applicable.

8. The payment details will be sent to the potential investor after signing this agreement.
9. If you have any queries on the procedure regarding the subscription process and payment, please contact the Fund or the Administrator.
10. The Subscription Agreement, together with any supporting documents, must be received by no later than 5:00 pm (London (United Kingdom) time) on the Business Day which is three (3) Business Days before the last Business Day of the Initial Offer Period or 5:00 pm on the Business Day which is three (3) Business Days before the relevant Subscription Day, as applicable.

## SUBSCRIPTION AGREEMENT

Hamilton Opportunity Fund SPC

McGrath Tonner Corporate Services Limited, Genesis Building, 5th Floor, Genesis Close, PO Box 446 Grand Cayman KY1-1106, Cayman Islands

Re: Application for Shares

Dear Sir:

The undersigned (the "**Prospective Investor**") hereby applies to become a shareholder (a "**Shareholder**") of Hamilton Opportunity Fund SPC, A Segregated Portfolio of the Fund Hamilton Opportunity Fund SPC, A Cayman Islands Segregated Portfolio Company operating as a Fund under Section 4(3) of the Mutual Funds Law (Revised) of the Cayman Islands. and to subscribe for Class A Shares or Participating Shares ("Shares") in the Fund upon the terms and conditions set out in this Subscription Document, in the Offering Memorandum, and in the Memorandum and Articles of Association of the Fund (the "**Articles**"), (collectively, the "**Fund Documents**") as each may be amended from time to time. Capitalised terms used herein but not defined herein shall have the meanings assigned to them in the Articles.

Accordingly, the Prospective Investor agrees as follows:

### 1. SUBSCRIPTION FOR SHARES

| | |
|---|---|
| **Class of Shares :** | _____ |
| | _____ Individual Ownership |
| | _____ Trust |
| | _____ Limited Partnership |
| | _____ Limited Liability Company |
| **Investor Type :** | _____ Corporation |
| | _____ Individual Retirement Account (IRA) |
| | _____ Joint (Tenants in Common) |
| | _____ Joint (with rights of survivorship) |
| | Other (Please specify) _____ |
| **Full Name of Investor:** | _____ |
| **Subscription Amount:** | _____ |
| **Wire Instructions:** | **Bank Name:** The Reserve Trust Company |
| | **Bank Address:** 5600 S. Quebec St. Suite 205D Greenwood Village, CO 80111 |

**Bank ABA/Routing:** ████████

**Recipient Name:** Medici Bank International

**Recipient Address:** 1250 Ponce de Leon AVE. Suite 301 San Juan, PR 00907

**Recipient Number:** ████████████

**Reference/Memo (required):** FFC MBI ████████ Hamilton Opportunity Fund SPC

**Further Credit Instructions:** Wiring Instructions of Record: Please note that redemption payments, in accordance with both the current Anti-Money Laundering regulatory environment and industry best practice, will be paid only to the bank account used for the subscription payment which should be noted below and certified as the bank account of record for the Investor. The titling of the bank account must match the titling of this subscription. If not, the Registrar and Transfer Agent and the Manager must be notified now regarding the discrepancy and its reason. The Registrar and Transfer Agent and/or the Manager may reject any subscription at any time where payment is sourced from a different bank account than the bank account of record or a bank account with different titling than the subscription, regardless of whether such payment was received in advance or accordance with the payment deadline requirements.

- The Prospective Investor agrees to become a Shareholder of the Fund on and subject to the terms and conditions of the Fund Documents and, in connection therewith, subscribes for and agrees to make the investment for the number of Shares (including fractional Shares) which can be acquired for the subscription amount set out below at the subscription price per Share set forth in the Offering Memorandum.
- Payment in cleared funds for Shares must be received prior to the closing date for subscriptions specified in the Offering Memorandum. Subject to any legal or regulatory restrictions, the Prospective Investor's payment (the **"Payment"**) will be held by the Fund (or its delegate) in trust in a segregated non-interest bearing account.
- The minimum initial subscription is USD100,000.00, subject to the discretion of the Board of Directors of the Fund (the **"Board"**) to accept a lower amount.
- The minimum subscription amount for additional shares is USD10,000.00.
- Investors may subscribe for additional Shares by completing the additional Subscription Form via the Dashboard or by completing a digital copy of the additional Subscription Form by hand and email the scanned copy to the Fund or to the Administrator.
- The Prospective Investor understands and agrees that the Fund reserves the right to reject this subscription for Shares for any reason or no reason, in whole or in part, and at any time prior to its acceptance. If the subscription is rejected in full, the Payment will be returned to the Prospective Investor and this Subscription Agreement shall have no force or effect. Acceptance of this subscription by the Fund shall take place by the entry of the Prospective

Investor's name on the Register of Members of the Fund, at which time the Prospective Investor shall become a Shareholder of the Fund and shall be subject to the terms and conditions of the Fund Documents.

**2. Subscriber information:**

**Signature:**  _____

_____

**Subscriber's Primary**  _____
**Physical (Street)**
**Address:**  _____

_____

**Email Address**  _____
**Phone Number:**  _____
**Date of Birth:**  _____
**Country of Birth:**  _____
**Country of**  _____
**Citizenship:**
**Date of Formation:**  _____
**Country of**  _____
**Formation:**

**3. REPRESENTATIONS AND COVENANTS OF THE PROSPECTIVE INVESTOR**

o    The Prospective Investor represents and warrants that (i) it is a person who is able to acquire and hold the Shares without breaching the law or requirements of any country, regulatory body or government authority (an "**Eligible Investor**"); and (ii) it is not acting on behalf of, or for the benefit of, nor does it intend transferring any Shares which it may hold from time to time to, any person who is not an Eligible Investor. The Prospective Investor agrees that it will notify the Fund immediately if it becomes aware that it, or any person for whom it holds the Shares, has ceased to be an Eligible Investor.

o    The Prospective Investor represents and warrants that it is not a U.S. Person for the purposes of the United States Securities Act, 1933 (as amended) and that all offers to acquire the Shares were made to or by the Prospective Investor while the Prospective Investor was outside the United States, and the Prospective Investor's request to acquire the Shares originated while the Prospective Investor was outside of the United States. The Prospective Investor agrees that it will notify the Fund immediately if it becomes a U.S. person or is no longer a Non-United States person or if it becomes aware that any person for whom it holds the Shares has become a U.S. person or is no longer a Non-United States person. The Prospective Investor (i) covenants that it will not resell, reoffer or transfer any Shares or any interest therein, except with the consent of the Fund, to a U.S. Person; (ii) acknowledges that reoffers, resales or any transfer of the Shares may be made only in compliance with applicable securities laws and only with the prior authorisation of the Fund, which may, in its discretion, decline to issue any Shares to, or register Shares

in the name of, any person; and (iii) understands that a transfer of Shares may only be effected on the books of the Fund and acknowledges that the Shares shall be transferable only to investors who are Eligible Investors as described in the Offering Memorandum. The Prospective Investor understands that the Fund may compulsorily redeem or repurchase all or any portion of a Shareholder's Shares in accordance with the Fund Documents.

o   The Prospective Investor has received, carefully read and understands the Fund Documents, including the sections of the Offering Memorandum outlining, among other things, the investment objectives and strategy of the Fund. The Prospective Investor acknowledges that it has made an independent decision to invest in the Fund and that, in making its decision to subscribe for Shares, the Prospective Investor has relied solely upon the Fund Documents and any independent investigations made by the Prospective Investor. The Prospective Investor is not relying on the Fund, the Fund's Board, the Administrator, or any other person or entity with respect to the legal, tax and other economic considerations involved in investment in the Fund other than the Prospective Investor's own advisers.

o   The Prospective Investor confirms that it has not been invited as a member of the public in the Cayman Islands to subscribe for Shares.

o   The Prospective Investor acknowledges that it is not subscribing for Shares as a result of, or pursuant to: (i) any advertisement, article, notice or other communications published in any newspaper, magazine or similar media (including any internet site whose information about the Fund is not password protected) or broadcast over television or radio; or (ii) any seminar or meeting whose attendees, including the Prospective Investor, had been invited as a result of, or pursuant to, any of the foregoing.

o   The Prospective Investor acknowledges that it will receive or have access to confidential proprietary information concerning the Fund, including, without limitation, portfolio positions, valuations, information regarding potential investments, financial information, trade secrets and the like (collectively, "Confidential Information"), which is proprietary in nature and non-public. The Prospective Investor agrees that it shall not disclose or cause to be disclosed any Confidential Information to any person or use any Confidential Information for its own purposes or its own account, except in connection with its investment in the Fund and except as otherwise required by any regulatory authority, law or regulation, or by legal process. The Prospective Investor will notify the Fund of any such disclosure requirement as soon as reasonably practicable (including the basis upon which it believed the information was required to be disclosed) unless such notice is otherwise prohibited by applicable law or the relevant central bank or any governmental, regulatory or taxation authority. Furthermore, the Prospective Investor has not reproduced, duplicated or delivered the Fund Documents or this Subscription Agreement for or to any other person, except professional advisers to the Prospective Investor or as instructed or authorised by the Fund. Notwithstanding the foregoing, the Prospective Investor (and each employee, representative or other agent of the Prospective Investor) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of: (i) the Fund; and (ii) any of its transactions, and all materials of any kind (including opinions or other tax analyses) that are provided to the Prospective Investor relating to such tax treatment and tax structure.

- The Prospective Investor has consulted appropriate professional advisors to the extent it deems necessary concerning the propriety and appropriateness of making an investment in the Fund. The Prospective Investor is fully informed as to the legal, tax and regulatory requirements within the Prospective Investor's own country (or countries) and any other relevant country (or countries) regarding the investment in the Fund.
- The Prospective Investor is acquiring the Shares for its own account, for investment purposes only and not with a view toward distributing or reselling the Shares in whole or in part.
- The Prospective Investor understands that: (i) no governmental agency has passed upon the Shares or made any findings or determination as to the fairness of this investment; and (ii) the representations, warranties, agreements, undertakings and acknowledgments made by the Prospective Investor in this Subscription Agreement will be relied upon by the Fund, the Board, the Administrator and the Investment Manager, in determining the Prospective Investor's suitability as a subscriber for Shares and the Fund's compliance with various securities laws, and shall survive the Prospective Investor's becoming a Shareholder of the Fund.
- The Prospective Investor has all requisite power, authority and capacity to acquire and hold Shares and to execute, deliver and comply with the terms of each of the instruments required to be executed and delivered by the Prospective Investor in connection with the Prospective Investor's subscription for Shares, including this Subscription Agreement, and such execution, delivery and compliance does not conflict with, or constitute a default under, any instruments governing the Prospective Investor, any law, regulation or order, or any agreement to which the Prospective Investor is a party or by which the Prospective Investor may be bound. If the Prospective Investor is an entity, the person executing and delivering each of such instruments on behalf of the Prospective Investor has all requisite power, authority and capacity to execute and deliver such instruments, and, upon request by the Fund, the Administrator or the Investment Manager, will furnish to the Fund a true and correct copy of any instruments governing the Prospective Investor, including all amendments thereto.
- All information which the Prospective Investor has provided to the Fund, the Administrator or the Investment Manager concerning the Prospective Investor, the Prospective Investor's status, financial position and knowledge and experience of financial, tax and business matters, or, in the case of a Prospective Investor that is an entity, the knowledge and experience of financial, tax and business matters of the person making the investment decision on behalf of such entity, is correct and complete as of the date hereof.
- The Prospective Investor understands that the value of its Shares and redemptions thereof, and the performance of the Fund, may be based on unaudited and, in some cases, estimated valuations of the Fund's investments and that valuations provided in an Prospective Investor's account statement may be an unaudited, estimated value.
- The Prospective Investor understands and agrees that, although the Fund, the Investment Manager and the Administrator will use their reasonable efforts to keep the information provided in the answers to this Subscription Agreement strictly confidential, the Fund, the Investment Manager and the Administrator may present this Subscription Agreement and the information provided in

answers to it to such parties (e.g., affiliates, attorneys, auditors, administrators, brokers and regulators) as it deems necessary or advisable to facilitate the acceptance and management of the Prospective Investor's subscription for Shares including, but not limited to, in connection with anti-money laundering and similar laws, if called upon to establish the availability under any applicable law of an exemption from registration of the Shares, the compliance with applicable law and any relevant exemptions thereto by the Fund, the Investment Manager, the Administrator and/or any of their affiliates, or if the contents thereof are relevant to any issue in any action, suit, or proceeding to which the Fund, the Investment Manager, the Administrator and/or any of their affiliates are a party or by which they are or may be bound. The Fund may also release information about the Prospective Investor if directed to do so by the Prospective Investor, if compelled to do so by law, or in connection with any government or self-regulatory organization request or investigation. The Fund seeks to carefully safeguard investor's private information and to that end, the Fund restricts access to non public personal information to those employees and other persons who need to know to enable the Fund to provide services to its investors. The Fund maintains physical, electronic and procedural safeguards to protect investor's non-public information.

o   The Prospective Investor understands and agrees that any redemption proceeds paid to it will be paid to the same account from which the subscription monies for the Prospective Investor's investment in the Fund were originally remitted, unless the Fund agrees otherwise.

o   The Prospective Investor acknowledges and understands that after the relevant lock-up period (if any) its investment in the Fund cannot be withdrawn except by way of redemption of Shares in accordance with the terms of the Memorandum and the Articles and that with effect from the Redemption Day in respect of which a redemption request for any Shares is received, it shall (save as provided below) cease to be entitled to any rights in respect of such Shares and accordingly, its name will be removed from the Register of Members of the Fund with respect thereto. The Prospective Investor understands and agrees that notwithstanding that its name may remain on the Register of Members of the Fund pending determination of the Redemption Price and/or payment of the redemption proceeds, it will (in the event it requests the redemption of all or any part of its Shares on any particular Redemption Day), with effect from that Redemption Day (i) be treated as a creditor of the Fund (rather than as a Shareholder of the Fund) in respect of the Redemption Price and will rank accordingly in the event of a winding up of the Fund; and (ii) have no rights as a Shareholder of the Fund in respect of the Shares being redeemed, save for the right to receive the Redemption Price in accordance with the Articles of Association and the right to receive any dividend which has been declared in respect of such Shares prior to that Redemption Day and, in particular, will not have the right to convene, receive notice of, attend or vote at any meetings of the Fund.

o   The Prospective Investor acknowledges and understands that in the event of a failure or delay by a Shareholder of the Fund seeking to redeem its Shares to produce any information required for verification purposes, payment of the redemption proceeds may be delayed and neither the Fund, the Administrator nor the Investment Manager (or any of their delegates or agents) will be liable

to the Prospective Investor for any loss suffered as a result of the delay of payment of redemption proceeds.

o   The Prospective Investor agrees and covenants that it shall not take any action to present a petition or commence any case, proceeding, proposal or other action under any existing or future law of any jurisdiction, domestic or foreign, relating to bankruptcy, insolvency, reorganization, arrangement in the nature of insolvency proceedings, adjustment, winding-up, liquidation, dissolution, composition or analogous relief with respect to the Fund or the debts of the Fund unless and until a debt is immediately due and payable by the Fund to the Investor.

## 4.  ANTI-MONEY LAUNDERING

o   The Prospective Investor acknowledges that, in order to comply with measures aimed at the prevention of money laundering and terrorism, the Fund and/or any of its delegates or agents may require verification of the identity of the Prospective Investor and the source of the Prospective Investor's subscription monies before this application can be processed. The Prospective Investor undertakes to provide (i) such information and documentation as the Fund and/or any of its delegates or agents may request to verify its identity in compliance with applicable anti-money laundering laws and regulations; and (ii) any further information and documentation as the Fund and/or any of its delegates or agents may request from time to time to ensure ongoing compliance with applicable laws and regulations.

o   The Prospective Investor acknowledges in the event of delay or failure by the Prospective Investor to produce any information required for verification purposes, this application may be refused or there may be a delay in processing this application. The Prospective Investor further acknowledges that neither the Fund nor any of its delegates or agents shall be liable for any loss arising as a result of a failure to process the Prospective Investor's application for Shares if such information and documentation as has been requested has not been provided by the Prospective Investor. The Prospective Investor agrees to indemnify and hold harmless the Fund and its delegates and agents against any loss incurred by them due to such information and documentation as has been requested not being provided by the Prospective Investor.

o   The Prospective Investor represents and warrants that it is not, nor is any person or entity controlling, controlled by or under common control with the Prospective Investor, acting, directly or indirectly (i) in contravention of any applicable laws and regulations, including anti-money laundering regulations or conventions; (ii) on behalf of terrorist or terrorist organisations, including those persons or entities that are included on the List of Specially Designated Nationals and Blocked Persons maintained by the U.S. Treasury Department's Office of Foreign Assets Control (OFAC) or on any lists or resolutions issued by the United Nations (whether through the Security Council or otherwise) pursuant to which dealings with persons specified therein are prohibited, restricted or discouraged, as such lists may be amended from time to time; (iii) for a senior foreign political figure, any member of a senior foreign political figure's immediate family or any close associate of a senior foreign political figure unless the Directors, after being specifically notified by the Prospective Investor in writing that it is such a person, conducts further due diligence and determines that the Prospective Investor shall be permitted to invest in the

Fund; or (iv) as trustee, agent, representative or nominee for a foreign shell bank, (each such person in (i) to (iv), a "**Prohibited Person**").

o   The Prospective Investor represents and warrants that to the extent the Prospective Investor has any beneficial owners it has carried out due diligence to establish the identities of such beneficial owners and, based on the evidence it holds of the identities of such beneficial owners, the Prospective Investor reasonably believes that no such beneficial owner is a Prohibited Person.

o   The Prospective Investor agrees that to the extent the Prospective Investor has any beneficial owners (i) it will maintain evidence of the identities of such beneficial owners for at least five years from the date of the Prospective Investor's complete redemption from the Fund; and (ii) it will make available such evidence and any additional evidence that the Fund may require upon request in accordance with applicable regulations.

o   The Prospective Investor acknowledges that if any of the representations, warranties or agreements in this clause cease to be true or if the Fund no longer reasonably believes that it has satisfactory evidence as to their truth, the Fund may be obligated to take certain actions relating to the Prospective Investor's holding of Shares. Such action may include disclosing the Prospective Investor's identity to OFAC or other authority. The Prospective Investor acknowledges and agrees that if the Fund is required to take any such action, it shall have no claim against the Fund for any form of damages as a result of any of such actions.

o   The Prospective Investor acknowledges that pursuant to the Proceeds of Criminal Conduct Law of the Cayman Islands, if a person who is a resident in the Cayman Islands knows or suspects that a payment to the Fund (by way of subscription or otherwise) represents proceeds of criminal conduct, that person must report his knowledge or suspicion to the reporting authority. The Prospective Investor acknowledges that any such report shall not be treated as a breach of any restriction upon the disclosure of information imposed by law or otherwise.

o   Where this application is made as trustee, custodian, nominee or otherwise on behalf of another person or persons (each such person an "**underlying investor**"), the Prospective Investor (i) represents and warrants that (a) it has carried out reasonable verification checks on, and obtained sufficient evidence as to the identity of, each underlying investor on whose behalf the Prospective Investor will be holding the Shares so as to satisfy itself of the identity of the underlying investor or the ultimate beneficial owners of the underlying investor, as applicable, and of the provenance and legitimacy of the source of funds used to subscribe for the Shares; and (b) it has otherwise complied with the laws and regulations relating to anti-money laundering procedures that are applicable in the jurisdiction where such Shares are offered or distributed and (ii) agrees to disclose to the Fund and/or any of its delegates or agents and/or any competent regulatory authority, all relevant documentation and information held by it in relation to the underlying investor and, if required, agrees to obtain the consent of the underlying investor to such disclosure.

o   For Anti-Money Laundering purposes, please describe specifically:

(Please fill out the section as applicable to the investor)

The source of the money/ wealth/ income used for this investment:

_____

_____

_____

**For Individual Investors:**  The occupation of the Investor:

_____

Purpose of the Investment:

_____

Expected frequency of transactions:

_____

The source of the money/ wealth/ income used for this investment:

_____

_____

_____

**For Entity Investors:**  The nature of the investor's business:

_____

Purpose of the Investment:

_____

Expected frequency of transactions:

_____

- **GENERAL**
  - The Prospective Investor hereby acknowledges that the Investment Manager, the Administrator, and each director and officer of the Fund are entitled to be indemnified (for all indemnities provided in this Subscription Agreement) out of the assets of the Fund as provided in the Fund Documents.
  - This Subscription Agreement (i) shall be binding upon the Prospective Investor and the heirs, legal representatives, successors, and permitted

assigns of the Prospective Investor and shall inure to the benefit of the Fund and its successors and assigns, (ii) shall be governed, construed, and enforced in accordance with the laws of the Cayman Islands, (iii) shall survive the acceptance of the Prospective Investor as a Shareholder of the Fund, and (iv) shall, if the Prospective Investor consists of more than one person, be the joint and several obligation of each such person.

- The Prospective Investor hereby irrevocably agrees that any suit, action or proceeding with respect to this Subscription Agreement or the Fund and any or all transactions relating hereto and thereto may be brought in the courts of the Cayman Islands. The Prospective Investor hereby irrevocably (i) submits to the jurisdiction of such courts with respect to any such suit, action or proceeding and agrees and consents that service of process as provided by Cayman Islands law may be made upon the Prospective Investor in any such suit, action or proceeding brought in any of said courts, and may not claim that any such suit, action or proceeding has been brought in an inconvenient forum and (ii) consents to the service of process out of any of the aforesaid courts, in any such suit, action or proceeding, by the mailing of copies thereof, by certified or registered mail, return receipt requested, addressed to the Prospective Investor at the address of the Prospective Investor then appearing on the records of the Fund. Nothing contained herein shall affect the right of the Fund to commence any action, suit or proceeding or otherwise to proceed against the Prospective Investor in any other jurisdiction or to serve process upon the Prospective Investor in any manner permitted by any applicable law in any relevant jurisdiction.
- If any provision of this Subscription Agreement is invalid or unenforceable under any applicable law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform with such applicable law. Any provision hereof which may be held invalid or unenforceable under any applicable law shall not affect the validity or enforceability of any other provisions hereof, and to this extent the provisions hereof shall be severable.
- If any answers provided or background documentation required under this Subscription Agreement is found to be false, forged or misleading, the Prospective Investor understands that the Fund may compulsorily redeem or repurchase the Shares held by such Prospective Investor in accordance with the Fund Documents.

o **INFORMATION PROVIDED IN THIS SUBSCRIPTION AGREEMENT**
- The Prospective Investor represents and warrants that the information given in this Agreement is true, accurate and complete in all respects and may be relied upon by the Fund and/or any of its delegates and agents.
- The Prospective Investor agrees to notify the Fund promptly of any change with respect to any information given in this Agreement or if any of the warranties, representations or statements in this Agreement are no longer accurate and complete in all respects.

- ▪ The Prospective Investor agrees that it will, if requested to do so, provide such certifications, documents or other evidence as the Fund and/or any of its delegates or agents may reasonably require in connection with the Prospective Investor's holding of Shares, including to substantiate the warranties, representations or statements contained in this Agreement.
- ▪ The Prospective Investor agrees that if it provides information or documentation to the Fund that is in anyway misleading, or fails to provide the Fund, its delegates or agents with any requested information or documentation or otherwise takes any action which directly or indirectly causes the Fund to suffer any liability, cost, expense, tax, withholding or deduction, the Fund may hold back from any redemption proceeds or distributions and retain, an amount sufficient to discharge any such liability, cost, expense, tax, withholding or deduction.
  - o **FATCA/CRS**
    - ▪ For the purpose of this clause, "**FATCA/CRS**" means: (i) sections 1471 to 1474 of the United States Internal Revenue Code of 1986, the Standard for Automatic Exchange of Financial Account Information developed by the Organisation for Economic Co-operation and Development (each as amended from time to time), and any associated legislation, regulations or guidance, or similar legislation, regulations or guidance enacted in any jurisdiction which seeks to implement similar tax reporting and withholding tax regimes and common reporting standards; (ii) any intergovernmental agreement, common reporting standard, treaty, regulation, guidance or any other agreement between the Cayman Islands (or any Cayman Islands government body) and the United States or any other jurisdiction (including any government bodies in such jurisdiction), entered into in order to comply with, facilitate, supplement or implement the legislation, regulations or guidance described in paragraph (i) above (including without limitation (a) the Agreement between the Cayman Islands government and the government of the United States of America to improve tax compliance and to implement FATCA signed on 29 November 2013; and (b) the Multilateral Competent Authority Agreement on Automatic Exchange of Financial Account Information signed by the Cayman Islands government on 29 October 2014, each as amended from time to time); and (iii) any legislation, regulations or guidance in the Cayman Islands giving effect to the matters outlined in paragraphs (i) and (ii) above including without limitation the Tax Information Authority Law (2017 Revision) (as amended), the Tax Information Authority (International Tax Compliance) (United States of America) Regulations, 2014 (as amended), the Tax Information Authority (International Tax Compliance) (Common Reporting Standard) Regulations, 2015 (as amended), and the Guidance Notes on (i) the International Tax Compliance Requirements of the Intergovernmental Agreement between the Cayman Islands and the United States of America, or (ii) the Common Reporting Standard for Automatic Exchange of Financial Account Information in Tax Matters, or other guidance promulgated thereunder.

- **"FATCA/CRS Liabilities"** means any withholding(s) (including without limitation U.S. withholding tax), costs, debts, expenses, penalties, obligations, losses or liabilities (including without limitation all costs, legal fees, professional fees and other costs) incurred by the Fund, the Investment Manager, the Administrator or any agent, delegate, employee, director, officer or affiliate of any of the foregoing persons for or arising out of or in connection with FATCA/CRS.
- In order to comply with FATCA/CRS, the Fund, the Investment Manager, the Administrator or any agent, delegate, employee, director, officer or affiliate of any of the foregoing persons (each, a "Relevant Person") shall be entitled to release and to disclose to the Cayman Islands Government (and any department, ministry, agency and representative thereof, including without limitation the Cayman Islands Tax Information Authority) or any other state or governmental department or taxation or other authority (each, a "Relevant Authority") in relation to FATCA/CRS any information in its or its agents' or delegates' possession regarding a Prospective Investor (which for the purpose of this clause shall include a Shareholder and a person that has ceased to be a Shareholder) including without limitation financial information, information regarding the Prospective Investor's investment in the Fund and any information relating to any shareholders, principals, partners, beneficial owners (direct or indirect) or controlling persons (direct or indirect) of such Prospective Investor.
- By becoming an Investor, the Prospective Investor acknowledges and agrees that:
  - any Relevant Person may disclose the identity of, and information relating to, the Prospective Investor (including without limitation any of the information specified in (b) above) to any Relevant Authority in order to comply with FATCA/CRS and or avoid any FATCA/CRS Liabilities;
  - the Prospective Investor shall take any action and provide any information and documentation that any Relevant Person requires for the Fund to (A) enter into, maintain or otherwise comply with FATCA/CRS or (B) comply with any due diligence, reporting, withholding, or other requirements under FATCA/CRS;
  - the Fund may exercise all available rights and remedies to ensure that all FATCA/CRS Liabilities are borne economically by the relevant Prospective Investor, the status, action or inaction of which results or may result in such withholding or noncompliance (in each case directly or indirectly, including by virtue of the status, action or inaction of any person related or connected to such Prospective Investor, including without limitation the Prospective Investor's direct or indirect shareholders, principals, partners, beneficial owners (direct or indirect) or controlling persons (direct or indirect); and
  - the Prospective Investor shall promptly notify the Fund if there is any change of circumstances that renders the information furnished under this Subscription Agreement or otherwise

provided to any Relevant Person in respect of FATCA/CRS incorrect.

- The Prospective Investor acknowledges and agrees that if (i) it does not provide the requested information or documentation or has not itself complied with the applicable requirements of FATCA/CRS, whether or not that actually leads to compliance failures by the Fund, or (ii) the Board in its sole discretion determines that there is a risk of FATCA/CRS Liabilities, the Board reserves the right to take any action and pursue all remedies at its disposal (including without limitation the immediate compulsory redemption or withdrawal of the Prospective Investor from the Fund for an amount equal to the Net Asset Value of the Prospective Investor's Shares, the compulsory transfer, re-designation or conversion of the Prospective Investor's Shares, the allocation of the relevant FATCA/CRS Liabilities to the Prospective Investor and the deduction of such allocations from any account of, or distribution or other payment due to, the Prospective Investor).

- The Prospective Investor shall indemnify each Relevant Person for any FATCA/CRS Liabilities arising out of any failure on the part of the Prospective Investor (directly or indirectly, including by virtue of the status, action or inaction of any person related or connected to such Prospective Investor, including without limitation direct or indirect shareholders, principals, partners, beneficial owners (direct or indirect) or controlling persons (direct or indirect) of such Prospective Investor) to comply in a timely manner with FATCA/CRS and its obligations under this clause, such indemnity to be the fullest extent permitted by applicable law. The indemnity obligation of the Prospective Investor will survive the closing date and shall continue (i) where the Prospective Investor is a Shareholder and where the Shareholder has redeemed but has not received the proceeds of redemption whether or not the date for Redemption Day has passed, and (ii) where the Prospective Investor has redeemed and received the proceeds of redemption.

- For the purposes of FATCA/CRS, the Prospective Investor shall be required to self-certify and complete the necessary self-certification forms and or provide such other documents as may be required from time to time by any Relevant Person.

- To the extent the Prospective Investor is affected by any action or remedy pursued by or on behalf of the Fund in order to comply with FATCA/CRS, it shall not have any claim against any Relevant Person or any other Prospective Investor or Shareholder or any agent, delegate, employee or director, officer or affiliate of any of the foregoing persons for any form of damages or liability as a result of such action or remedy and the Prospective Investor shall be deemed to have consented to the taking of such action or the exercise of such remedy and to have waived any and all rights or claims in respect thereof, to the fullest extent permitted by applicable law.

- This clause shall survive termination of this Agreement and for the avoidance of doubt shall survive where the Prospective Investor has ceased to be a Shareholder of the Company.

- o **RIGHTS UNDER THE CONTRACTS (RIGHTS OF THIRD PARTIES) LAW, 2014**
  - ▪ In accordance with section 4 of The Contracts (Rights of Third Parties) Law 2014, the indemnified parties specified in clause 4(a) of this Subscription Agreement (save the Fund which is already a party to this Subscription Agreement) shall be entitled to enforce all of the rights and benefits under clauses 4(a) of this Subscription Agreement at all times as if they were a party to this Subscription Agreement.
  - ▪ The indemnified parties in clause 4(a) of this Subscription Agreement (save the Fund which is already a party to this Subscription Agreement) may not bring any action to enforce their rights under this Subscription Agreement without the prior written consent of the Fund, which may be withheld at the sole discretion of the Fund.
  - ▪ The consent of the indemnified parties specified in clause 4(a) of this Subscription Agreement (save the Fund which is already a party to this Subscription Agreement) is not required for any rescission or variation of this agreement agreed to by the Fund and the Prospective Investor, or any termination of this agreement by the Fund and the Prospective Investor.
  - ▪ The indemnified parties specified in clause 4(a) of this Subscription Agreement (save the Fund which is already a party to this Subscription Agreement) may not assign their rights, in whole or in part, under this Subscription Agreement without the prior written consent of the Fund.
- o **DATA PROTECTION**
  - ▪ The Prospective Investor acknowledges and agrees that information supplied on this Agreement and otherwise in connection with the Prospective Investor's application for Shares (collectively "**Personal Information**") may be held by the Fund and/or its delegates and agents and may be used for the purpose of:
  - ▪ processing the Prospective Investor's subscription for Shares and completion of information on the register of Shareholders;
  - ▪ carrying out the Prospective Investor's instructions or responding to any enquiry purporting to be given by the Prospective Investor or on behalf of the Prospective Investor;
  - ▪ dealing in any other matters relating to the Prospective Investor's holding of Shares (including the mailing of reports or notices); or
  - ▪ observing any legal, governmental or regulatory requirements of any relevant jurisdiction (including any disclosure or notification requirements to which any recipient of the data is subject).
  - ▪ The Prospective Investor acknowledges and agrees that, subject to the requirements of applicable law, the Fund and/or its delegates and agents may:
  - ▪ retain Personal Information after the Prospective Investor has redeemed or transferred all of its Shares and after the termination of the Fund;
  - ▪ maintain Personal Information on computer systems based or maintained in such places as the Fund and/or its delegate or agent determines, which may be in countries that have not enacted data protection legislation;

- disclose and transfer Personal Information, by any method including electronically and/or by making available the original or a copy of this Agreement, to:
    - the Fund and/or any delegate or agent of the Fund and/or the professional advisers of any of them and/or any of their employees, officers, directors, agents and/or affiliates; or
    - any third party employed to provide administrative, computer or other services or facilities to any person to whom data is disclosed or transferred as aforesaid; or
- disclose Personal Information where such disclosure is required by any law or order of any court or pursuant to any direction, request or requirement (whether or not having the force of law) of any central bank or governmental or other regulatory or taxation authority.

- **POWER AND AUTHORITY**
    - ✏ If the Prospective Investor is an entity: The person executing this Agreement for the Prospective Investor represents and warrants that he or she is duly authorised to do so and the Prospective Investor has the full power and authority under its governing instruments to acquire the Shares. The Prospective Investor represents and warrants that:
        - it is duly organised, validly existing and in good standing under the laws of its jurisdiction of organisation;
        - the execution and delivery of this Agreement and performance by it of its terms (i) are within its powers and have been duly authorised by all necessary actions on its behalf, (ii) require no action by or in respect of, or filing with, any governmental body, agency or official (except as disclosed in writing to the Fund), and (iii) do not contravene, or constitute a breach of or default under any provision of applicable law or governmental rule, regulation or policy statement or of its certificate of incorporation or other comparable organisational documents or any agreement, judgment, injunction, order, decree or other instrument binding upon it; and
        - this Agreement constitutes a valid and binding agreement of the Prospective Investor and is enforceable against the Prospective Investor in accordance with its terms.
    - ✏ If the Prospective Investor is acting as trustee, agent, representative or nominee for another person or entity (a Beneficial Owner): The Prospective Investor understands and acknowledges that the representations, warranties and agreements made in this Agreement are made by the Prospective Investor (a) with respect to the Prospective Investor, and (b) with respect to the Beneficial Owner. The Prospective Investor represents and warrants that it has all requisite power and authority from the Beneficial Owner to execute and perform the obligations under this Agreement.
    - ✏ If the Prospective Investor is an individual: The Prospective Investor represents and warrants that (a) this Agreement constitutes a valid and binding agreement of the Prospective Investor and is enforceable against the Prospective Investor in accordance with its

terms, and (b) the Prospective Investor has legal competence and capacity to execute this Agreement.

- o **INDEMNITY**

    The Prospective Investor agrees to indemnify and keep indemnified the Fund and its directors, officers and employees, from and against any and all costs, claims, demands, liabilities, expenses, damages or losses including, without limitation, consequential losses and loss of profit and all interest, penalties and legal and other professional costs and expenses due to, or arising out of, breach of any of the representations, warranties, acknowledgements, undertakings or agreements by the Prospective Investor contained in this Agreement.

- o **GOVERNING LAW AND JURISDICTION**

    This Agreement shall be governed by, and shall be construed in accordance with, the laws of the Cayman Islands. Each party irrevocably agrees to submit to the non-exclusive jurisdiction of the courts of the Cayman Islands in respect of any claim or matter arising under or in connection with this Agreement.

- o **COUNTERPARTS**

    This Subscription Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed an original but all such counterparts shall constitute one and the same instrument. Delivery of a counterpart signature page by facsimile transmission or by email transmission of an Adobe Portable Document Format file (or similar electronic record) shall be effective as delivery of an executed counterpart signature page.

# 5. Tax Fund Rules

## 6. Cayman Funds Tax Form Rules

7. For CRS (Common Reporting Standard) in the Cayman Islands, all Investors need to provide a fully completed and signed Cayman Islands Self Certification Form.

## 8. Non-US Funds ID Rules

9. **Individual Subscribers** are required to provide a photocopy of a valid passport along with one additional form of government-issued identification (usually driver's license). If language of document is not in English, please provide explanation of document and appropriate translation of fields and data appearing on the identification into English.

10. **Entity (non-individual) Subscribers** are required to provide copies of their formative documents, a list of authorized signatories with specimen signatures and confirmation of the corporate authority of such signatories. If not in English, please provide explanation of document and appropriate translation of fields and data into English.

11. **Entity (non-individual) Subscribers** are additionally required by the Anti-Money Laundering Regulations, 2017 of the Cayman Islands to provide their beneficial ownership detail and identification of controlling parties.

- "Beneficial owner" means the natural person who ultimately owns or controls the subscriber or on whose behalf this subscription transaction is being conducted.
- For any natural person with beneficial ownership interest in the Subscriber of more than 10%, please provide first and last name, source of wealth, citizenship, date of birth, and a copy of valid passport or other valid photo government identification.
- For any entity or trust with beneficial ownership interest in the Subscriber of more than 10%, please detail list entity's owners and provide for each first and last name, source of wealth, citizenship, date and place of birth, and a copy of valid passport or other valid photo government identification.
- Also for any entity, please provide name of at least one individual with significant responsibility for managing the entity (controlling party). This can include any executive officer or senior manager or any other individual who regularly performs similar functions such as Managing Member, Director, or General Partner. Please provide for such controlling parties their first and last name, citizenship, date and place of birth, and a copy of valid passport or other valid photo government identification.

**Partnerships** are required to provide a copy of the government registration of the Partnership with along with a copy of the signed Partnership Agreement identifying the General Partner and/or the designate empowered to sign this document. Please see items 2-4 above for significant additional beneficial ownership requirements.

**Corporations** are required to provide a copy of the government registration of the Corporation with along with a copy of its articles of incorporation with officer signatures. We additionally request a signed, certified corporate resolution identifying the corporate officer(s) empowered to sign the Subscription Document. Please see items 2-4 above for significant additional beneficial ownership requirements.

**Trusts** are required to provide a full copy of the Trust Agreement. We can alternatively accept copies of pages from the Trust showing the following relevant sections: articles establishing Trust (showing name of the Trust) and naming Trustees, and articles/clauses showing Trustee signatures. A valid passport or other government-issued identification (with photo) will be requested for Trustees of the Trust. If the Subscriber is a trust, please provide for each settlor, grantor, donor, and trustee their first and last name, source of wealth, citizenship, and date and place of birth.

## *FOR INTERNAL USE ONLY*

*To be completed by a Director on behalf of Hamilton Opportunity Fund SPC*

*SUBSCRIPTION ACCEPTED*

*By:*

*Date:*

## SIGNATURE PAGE

The undersigned hereby represents that:

- the undersigned has carefully read and is familiar with this Subscription Agreement and the Fund Documents;
- the information contained herein is complete and accurate and may be relied upon; and
- The undersigned agrees and consents to any proposed variation or abrogation of the special rights that are attached to the Class A Shares being purchased herein, such consent shall be deemed to have been consented to the proposed variation or abrogation if the undersigned does not affirmatively object in writing to such proposed variation or abrogation within twenty (20) days (or such shorter time as may be determined by the Fund's Board of Directors in its sole discretion) after such notice is received or deemed to have been received in accordance with the notice provisions of the Articles.

This agreement has been executed on the 27th of April 2021.