

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza*
*New York, NY 10278*

July 28, 2025

**BY ECF**
The Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl St. New York, NY 10007-1312
New York, New York 10007

  **Re:**   *United States v. Miles Guo*, S3 23 Cr. 118 (AT)

Dear Judge Torres:

  The Government respectfully submits this letter motion to request that the Court enter the proposed preliminary order of forfeiture attached as Exhibit A. The Court should order Guo to forfeit his interest in the G entities that formed part of his racketeering enterprise, the proceeds he obtained during the course of the fraud, and property involved in the laundering of the proceeds.

## I. Applicable Law

### A. Racketeering Forfeiture

  Section 1963 directs that a district court, in imposing sentence, "shall order" a defendant to forfeit the following property:

    (1) any interest the person has acquired or maintained in violation of Section 1962;

    (2) any (A) interest in; (B) security of; (C) claim against; or (D) property or contractual right of any kind affording a source of influence over . . . [the RICO] enterprise . . . and

    (3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

18 U.S.C. § 1963(a).

### B. Fraud Forfeiture

  Section 981(a)(1)(C) subjects to civil forfeiture: "Any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specific unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense." Section 1956(c)(7)(A) of Title 18, United States Code, in turn provides that the term "specified

unlawful activity" includes, among other things, "any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under [31 U.S.C. §§ 5311 et seq.]." The list of offenses identified in 18 U.S.C. § 1961(1) are thus included within "any act or activity constituting an offense listed in section 1961(1) of this title." Among the offenses set forth in 18 U.S.C. § 1961(1) is violations of 18 U.S.C. § 1343, for which Guo was convicted, and fraud in the sale of securities, for which Guo was also convicted. Title 28, United States Code, Section 2461(c) authorizes the use of civil forfeiture in criminal cases as part of a defendant's sentence. *See United States v. Contorinis*, 692 F.3d 136, 145 n.2 (2d Cir. 2012).

## C. Money Laundering Forfeiture

Section 982 directs that a "court, in imposing sentence on a person convicted of an offense in violation of section 1956 . . . shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." 18 U.S.C. § 982(a)(1). As Judge Bianco, sitting by designation on the district court, has observed:

> Courts have consistently held that the term "involved in" should be interpreted broadly to "include any property involved in, used to commit, or used to facilitate the money laundering offense." *United States v. Schlesinger*, 396 F. Supp. 2d 267, 271-72 (E.D.N.Y. 2005) (collecting cases), *aff'd*, 514 F.3d 277 (2d Cir. 2008). Referring to *Schlesinger*, district courts have correctly observed that the Second Circuit has "affirmed forfeiture of property as involved in money laundering transactions when it has served as a conduit for the proceeds of the illegal transactions." *United States v. Prevezon Holdings, Ltd.*, 251 F. Supp. 3d 684, 698 (S.D.N.Y. 2017).

*United States v. Kenner*, 443 F. Supp. 3d 354, 364 (E.D.N.Y. 2020) (footnote omitted).

## D. Money Judgment

Where, as here, forfeiture is sought in the form of a personal money judgment, the district court "must determine the amount of money that the defendant will be ordered to pay." Fed. R. Crim. P. 32.2(b)(1)(A). The court's determination "may be based on evidence already in the record," Fed. R. Crim. P. 32.2(b)(1)(B), "including testimony at the earlier trial." *United States v. Mathieu*, 853 F. App'x 739, 742 (2d Cir. 2021) (internal quotation marks omitted). "The calculation of forfeiture amounts is not an exact science." *United States v. Treacy*, 639 F.3d 32, 48 (2d Cir. 2011). The Court is only required to "make a reasonable estimate," based on "the available information." *Id.* (quotation marks and citation omitted). Courts may use "general points of reference as a starting point" and "make reasonable extrapolations from the evidence." *Id.* As "an aspect of sentencing," *Libretti v. United States*, 516 U.S. 29, 49 (1995), forfeiture amounts are determined by a preponderance of the evidence, *United States v. Capoccia*, 503 F.3d 103, 116 (2d Cir. 2007).

## II. Discussion

The Court should enter the proposed preliminary order of forfeiture, and forfeit Guo's interest in the G Enterprise's criminal proceeds, and property involved in laundering those proceeds.

### A. The Court Should Enter a Money Judgment of $1.3 Billion

First, the Court should enter a money judgment of $1.3 billion. The money judgment amount represents a conservative estimate of the amount of funds sent by individual victims to certain arms of the G Enterprise's frauds: GTV, the Farms, G Clubs, and the Himalaya Exchange. *See* GXZ 26; Trial Tr. 4330-32. While the jury returned acquittals on the GTV fraud counts, the Court may consider at sentencing the GTV-related facts from the trial record. *See United States v. Watts*, 519 U.S. 148, 151 (1997) (per curiam). The trial record established by at least a preponderance that the GTV private placement was part of the RICO enterprise and the fraud and money laundering conspiracies.

As an initial matter, extensive trial evidence established, as alleged in the Indictment, that the RICO enterprise began well prior to the 2020 GTV private placement, with the Rule of Law ("ROL") organizations.[1] Guo then continued to defraud his followers with a series of interconnected schemes, including the GTV private placement in 2020. Multiple investors testified as to how Guo fraudulently induced them into investing in GTV by purporting to guarantee investors against loss, claiming their funds would be used to grow GTV's business, and instead sending $100 million of investor funds to a high-risk hedge fund bet for the benefit of Guo's son. *See* Trial Tr. 209 (Le Zhou); *id.* at 701 (Patrick Chin); *id.* at 2376-77 (Minran Wu); *id.* at 4465-67, 4471-72 (Wei Chen); *id.* at 1350-58, 1365-73 (Ya Li). Further, the GTV private placement was connected with and integral to the other arms of the G Enterprise. Indeed, the Farm loan and G Clubs schemes were ways to conceal issuances of GTV stock—and they were promoted on the GTV platform itself. *See, e.g.*, GXZ 9 (summary chart of Guo videos, including those posted preserved from the GTV website, and including videos where Guo falsely promises GTV stock in exchange for Farm loans and G Clubs memberships). Even the H Coin-related schemes were interconnected with the GTV private placement. *See, e.g.*, Trial Tr. 244 (allocation of H Coin based on prior investment, including in GTV); *id.* at 1358 (Ya Li testifying that the "[r]einvestment rule is once you received the refund from SEC [for the GTV private placement], within 45 days you should invest this money back to the investment project and then you can get five percent of H Coin.").

---

[1] *See, e.g.*, Trial Tr. 424 (Karin Maistrello testimony that "Boss"—*i.e.*, Guo—"was in charge of the Rule of Law organizations"), 473-74 (Maistrello testimony regarding order from co-defendant Yvette Wang to perform sham "internal transfers" during ROL fundraiser), 1404-06 (Ya Li testimony regarding Guo video where Guo falsely claimed he was donating $100 million to the Rule of Law Fund, and "coordinating" a donation of $1 billion); GXVI 192 (video); GXVI 192-T (transcript/translation); Trial Tr. 4086 (Guo admitting in bankruptcy-related testimony that he never made a $100 million donation to the ROL organizations), 4089 (same).

Accordingly, the funds derived from the GTV private placement are forfeitable and should be included in the computation of Guo's money judgment.[2]

**B. The Court Should Forfeit Guo's Interest in the Specific Property**

Second, the Court should forfeit Guo's interest in the specific property listed in the preliminary order of forfeiture. As a general matter, Guo has repeatedly affirmed, under penalty of perjury, that he essentially has no assets. *See* Trial Tr. 4039-46 (testimony regarding Guo's bankruptcy filings under penalty of perjury where he claimed almost no assets); Dkt. 800, Ex. A (Dec. 24, 2024 Tr.) at 13-14 (Guo representing to the Court that he does not "have the financial resources to afford" an attorney), 11 (Guo's counsel representing to the Court that "Mr. Guo has informed us that he has no assets" and his affidavit "would list him as having no property and no cash or bank accounts"). Accordingly, Guo cannot credibly claim any interest in the listed property, having effectively disclaimed such interest in his representations to the Court. In any event, the property constitutes proceeds of the G Enterprise and property involved in money laundering, as set forth below.

**1. Funds from Bank Accounts**

The Government seeks to forfeit cash seized from several bank accounts, which were used in furtherance of the defendant's crimes and his racketeering enterprise. *See* Ex. A ¶¶ a–u, bb. These accounts were used and controlled by members of the G Enterprise: "Hamilton" and related entities; the "Himalaya Exchange" and related entities; G Clubs; G Fashion, and GETTR. Each of the account holders of these bank accounts was named in the Indictment as a member of the RICO enterprise. *See* S3 Indictment ¶ 3(a). As set forth below, the Government has attached hereto the affidavits supporting the seizure of the funds in these bank accounts as forfeitable property.

a. <u>The Funds Seized on September 18, 2022</u>

The funds seized on September 18, 2022, from accounts held in the name of "Hamilton Opportunity Fund SPC," "GETTR USA, Inc.," and "G Fashion," *see* Ex. A ¶¶ a–h, t–u, derived from proceeds of the G Enterprise and property involved in money laundering, as set forth in the attached seizure warrant affidavits of Special Agent Anthony Alecci, attached as Exhibits B and C.

b. <u>The Funds Seized on September 20, 2022</u>

The funds seized on September 20, 2022, from accounts held in the name of "Himalaya International Reserves, Ltd.," "Himalaya International Clearing, Ltd.," and "Himalaya International Financial Group, Ltd.," *see* Ex. A ¶¶ i–j, r, derived from proceeds of the G Enterprise

---

[2] The actual funds derived from the GTV private placement were recovered by the SEC, which established a fair fund for distribution to victims. If the Court were to deduct the GTV private placement funds from the forfeiture amount, approximately $411 million should be deducted. *See* GXZ 26 at 2.

and property involved in money laundering, as set forth in the seizure warrant affidavit of Special Agent Alecci, attached as Exhibit D.

### c. The Funds Seized Between October 16, 2022 and March 10, 2023

The funds seized between October 16, 2022 and March 10, 2023, from accounts held in the name of "G Club International Ltd.," "Himalaya International Clearing Ltd.," "Hamilton Capital Holding Ltd.," "Himalaya International Reserves Ltd.," "Himalaya International Financial Group Ltd.," "Hamilton Investment Management Ltd.," "G Fashion International Limited," "Himalaya Currency Clearing Pty Ltd.," *see* Ex. A ¶¶ k–q, s, derived from proceeds of the G Enterprise and property involved in money laundering, as set forth in the seizure warrant affidavit of Special Agent Alecci, attached as Exhibit E.

### d. The Funds Seized on May 12, 2023

The funds seized on May 12, 2023, from accounts held in the name of "G Club Operations LLC," *see* Ex. A ¶ bb, derived from proceeds of the G Enterprise and property involved in money laundering, as set forth in the seizure warrant affidavit of Special Agent Zachary Effting, attached as Exhibit F.

## 2. The Mahwah Mansion

The property located at 675 Ramapo Valley Road, Mahwah, New Jersey (the "Mahwah Mansion") and its contents derived from proceeds of the G Enterprise and property involved in money laundering. *See* Ex. A ¶ v. The Mahwah Mansion itself was purchased using laundered victim funds. *See* GXZ 12A (tracing funds from Crane Advisory Group LLC, via an attorney's account and Hamilton entities, to pay for Mahwah Mansion); Trial Tr. 1433 (Ya Li testifying that "Crane is a company to receiving the [G Club] card program—receiving the money from the card program"); Tr. 1999-2002 (Haitham Khaled describing the incoming wires to Crane and subsequent outgoing transfers).

The specific property seized from the Mahwah Mansion listed in the preliminary order of forfeiture are likewise proceeds traceable to the G Enterprise and property involved in money laundering. *See* Ex. A ¶¶ aa. Trial witness Amy Buck testified that she facilitated approximately $18 million in expenditures for the Mahwah Mansion, including furniture and art, and the funds came from Hamilton, an arm of the RICO enterprise controlled by co-conspirator William Je that was used to launder proceeds. *See* Trial Tr. 3884, 3892-94; GXBUCK 1292 (Buck's spreadsheet of payments). The FBI also seized from the Mahwah Mansion boxes with a ring and a bracelet, and fiat currencies. *See* Ex. A ¶¶ aa(lxxiv)-(lxxxiii). Special Agent Gabriella Luciano testified at trial about one of the cash seizures. Trial Tr. 3558 ($394,040 seized from safe). The declaration from Special Agent Zachary Effting, attached as Exhibit G, establishes that the FBI seized the other items listed in the preliminary order of forfeiture from the Mahwah Mansion. *See* Ex. G.

### 3. The Piano

While not seized from the Mahwah Mansion,[3] the Bösendorfer 185VC Porsche #49539 piano with custom bench (the "Piano"), *see* Ex. A ¶ z, was also paid for, via Amy Buck, with fraud proceeds and property involved in money laundering. *See* Trial Tr. 3917-18 (Buck testimony regarding the Piano); GXBUCK 69 (invoice for the Piano).

### 4. The Bugatti

The Bugatti Chiron Super Sport, bearing Vehicle Identification Number VF9SW3V3XNM795047 seized by the Government on or about May 11, 2023 (the "Bugatti"), *see* Ex. A ¶ w, derived from proceeds of the G Enterprise and property involved in money laundering. As described in Special Agent Effting's March 14, 2023 affidavit, attached as Exhibit H, the Bugatti was purchased for Guo's son, Mileson, by G Clubs using its members' funds. Trial evidence extensively corroborated the probable cause demonstrated in that affidavit. *See* Trial Tr. 3090:6–14 (testimony of former G Clubs CEO Limarie Reyes that Bugatti was purchased by G Clubs with member payments); Trial Tr. 1793:2–1796:21 (testimony of Lonny Soza, president of Bugatti dealership, describing Bugatti's purchase by a G Club entity but with Mileson Guo as the actual "client" and purchaser); GX 226 (Bugatti purchase contract identifying buyer as "G Club International Ltd.").

### 5. The Lamborghini

The Lamborghini Aventador SVJ Roads, bearing Vehicle Identification Number ZHWUN6ZD2MLA10393 seized by the Government on or about March 15, 2023 (the "Lamborghini"), *see* Ex. A ¶ x, derived from proceeds of the G Enterprise and property involved in money laundering. The Lamborghini was found parked the garage of Guo's Greenwich estate when law enforcement officers executed a search warrant at that premises. *See* Trial Tr. 64:3–23 (testimony of FBI agent who participated in search that found Lamborghini in Guo's Greenwich garage). And, like the Bugatti, the Lamborghini was purchased with G Clubs members' funds but for the actual purpose of the Guo family's personal use. *See, e.g.*, GXGC 276 (G Clubs corporate resolution authorizing purchase of Lamborghini with the same VIN as the one found parked in Guo's personal garage); Trial Tr. 3080:17–20 (testimony of former G Clubs CEO Reyes that she was unaware of the Lamborghini ever being made available to G Clubs members).

### 6. The Rolls Royce Phantom

The Rolls Royce Phantom EWB, bearing Vehicle Identification Number SCATT8C08MU206445, seized by the Government on or about March 20, 2023 (the "Rolls Royce"), *see* Ex. A ¶ y, derived from proceeds of the G Enterprise and property involved in money laundering. As described in the affidavit attached as Exhibit H, the Rolls Royce was purchased

---

[3] The Piano was not shipped to the Mahwah Mansion; rather it was shipped to 3 Columbus Circle, where the G Enterprise maintained office space. *See* Trial Tr. 3917. The Piano was thereafter moved and ultimately seized by the Government on or about May 22, 2025, from 351 Walker Street, Staten Island, New York.

using proceeds from the RICO enterprise and property involved in money laundering.  *See* Ex. H ¶ 34.  The Rolls Royce was found parked in an area of a garage at 800 Fifth Avenue in New York, New York where Guo stored certain of his cars, which garage is located approximately two blocks away from Guo's Sherry-Netherland apartment.  *See* Trial Tr. 5435:9-14 (testimony of Guo's former head security officer Scott Barnett that he had observed a Rolls Royce, among other luxury cars, during his time guarding Guo).

\*   \*   \*

For the above reasons, the Court should enter the proposed preliminary order of forfeiture.

Respectfully submitted,

SEAN S. BUCKLEY
Attorney for the United States, Acting
Under Authority Conferred by 28 U.S.C. §
515
Southern District of New York

By: /s/_____
Micah F. Fergenson
Ryan B. Finkel
Justin Horton
Juliana N. Murray
Assistant United States Attorneys
(212) 637-2190 / 6612 / 2276 / 2314