119TH CONGRESS
1ST SESSION

# S. 1582

———————————

# AN ACT

To provide for the regulation of payment stablecoins, and
for other purposes.

1    *Be it enacted by the Senate and House of Representa-*

2    *tives of the United States of America in Congress assembled,*

2

1 **SECTION 1. SHORT TITLE.**

2     This Act may be cited as the ''Guiding and Estab-

3 lishing National Innovation for U.S. Stablecoins Act'' or

4 the ''GENIUS Act''.

5 **SEC. 2. DEFINITIONS.**

6     In this Act:

7         (1) APPROPRIATE FEDERAL BANKING AGEN-

8     CY.—The term ''appropriate Federal banking agen-

9     cy'' has the meaning given that term in section 3 of

10     the Federal Deposit Insurance Act (12 U.S.C.

11     1813).

12         (2) BANK SECRECY ACT.—The term ''Bank Se-

13     crecy Act'' means—

14             (A) section 21 of the Federal Deposit In-

15         surance Act (12 U.S.C. 1829b);

16             (B) chapter 2 of title I of Public Law 91–

17         508 (12 U.S.C. 1951 et seq.); and

18             (C) subchapter II of chapter 53 of title 31,

19         United States Code.

20         (3) BOARD.—The term ''Board'' means the

21     Board of Governors of the Federal Reserve System.

22         (4) COMPTROLLER.—The term ''Comptroller''

23     means the Office of the Comptroller of the Currency.

24         (5) CORPORATION.—The term ''Corporation''

25     means the Federal Deposit Insurance Corporation.

3

1     (6) DIGITAL ASSET.—The term "digital asset"
2  means any digital representation of value that is re-
3  corded on a cryptographically secured distributed
4  ledger.

5     (7) DIGITAL ASSET SERVICE PROVIDER.—The
6  term "digital asset service provider"—

7          (A) means a person that, for compensation
8       or profit, engages in the business in the United
9       States (including on behalf of customers or
10      users in the United States) of—

11              (i) exchanging digital assets for mone-
12          tary value;

13              (ii) exchanging digital assets for other
14          digital assets;

15              (iii) transferring digital assets to a
16          third party;

17              (iv) acting as a digital asset custo-
18          dian; or

19              (v) participating in financial services
20          relating to digital asset issuance; and

21          (B) does not include—

22              (i) a distributed ledger protocol;

23              (ii) developing, operating, or engaging
24          in the business of developing distributed

4

1              ledger protocols or self-custodial software

2              interfaces;

3                    (iii) an immutable and self-custodial

4              software interface;

5                    (iv) developing, operating, or engaging

6              in the business of validating transactions

7              or operating a distributed ledger; or

8                    (v) participating in a liquidity pool or

9              other similar mechanism for the provi-

10             sioning of liquidity for peer-to-peer trans-

11             actions.

12       (8) DISTRIBUTED LEDGER.—The term "distrib-

13    uted ledger" means technology in which data is

14    shared across a network that creates a public digital

15    ledger of verified transactions or information among

16    network participants and cryptography is used to

17    link the data to maintain the integrity of the public

18    ledger and execute other functions.

19       (9) DISTRIBUTED LEDGER PROTOCOL.—The

20    term "distributed ledger protocol" means publicly

21    available and accessible executable software deployed

22    to a distributed ledger, including smart contracts or

23    networks of smart contracts.

24       (10) FEDERAL BRANCH.—The term "Federal

25    branch" has the meaning given that term in section

5

1    3 of the Federal Deposit Insurance Act (12 U.S.C.

2    1813).

3        (11)    FEDERAL    QUALIFIED    PAYMENT

4    STABLECOIN ISSUER.—The term "Federal qualified

5    payment stablecoin issuer" means—

6            (A) a nonbank entity, other than a State

7        qualified payment stablecoin issuer, approved

8        by the Comptroller, pursuant to section 5, to

9        issue payment stablecoins;

10           (B) an uninsured national bank—

11               (i) that is chartered by the Comp-

12           troller, pursuant to title LXII of the Re-

13           vised Statutes; and

14               (ii) that is approved by the Comp-

15           troller, pursuant to section 5, to issue pay-

16           ment stablecoins; and

17           (C) a Federal branch that is approved by

18        the Comptroller, pursuant to section 5, to issue

19        payment stablecoins.

20       (12)    FOREIGN    PAYMENT    STABLECOIN

21    ISSUER.—The term "foreign payment stablecoin

22    issuer" means an issuer of a payment stablecoin

23    that is—

24           (A) organized under the laws of or domi-

25        ciled in a foreign country, a territory of the

6

1    United States, Puerto Rico, Guam, American

2    Samoa, or the Virgin Islands; and

3        (B) not a permitted payment stablecoin

4        issuer.

5    (13) INSTITUTION-AFFILIATED PARTY.—With

6    respect to a permitted payment stablecoin issuer, the

7    term "institution-affiliated party" means any direc-

8    tor, officer, employee, or controlling stockholder of

9    the permitted payment stablecoin issuer.

10        (14) INSURED CREDIT UNION.—The term "in-

11    sured credit union" has the meaning given that term

12    in section 101 of the Federal Credit Union Act (12

13    U.S.C. 1752).

14        (15) INSURED DEPOSITORY INSTITUTION.—The

15    term "insured depository institution" means—

16        (A) an insured depository institution, as

17        defined in section 3 of the Federal Deposit In-

18        surance Act (12 U.S.C. 1813); and

19        (B) an insured credit union.

20        (16) LAWFUL ORDER.—The term "lawful

21    order" means any final and valid writ, process,

22    order, rule, decree, command, or other requirement

23    issued or promulgated under Federal law, issued by

24    a court of competent jurisdiction or by an authorized

7

1   Federal agency pursuant to its statutory authority,
2   that—

3       (A) requires a person to seize, freeze, burn,
4   or prevent the transfer of payment stablecoins
5   issued by the person;

6       (B) specifies the payment stablecoins or
7   accounts subject to blocking with reasonable
8   particularity; and

9       (C) is subject to judicial or administrative
10  review or appeal as provided by law.

11  (17) MONETARY VALUE.—The term "monetary
12  value" means a national currency or deposit (as de-
13  fined in section 3 of the Federal Deposit Insurance
14  Act (12 U.S.C. 1813)) denominated in a national
15  currency.

16  (18) MONEY.—The term "money"—

17      (A) means a medium of exchange currently
18  authorized or adopted by a domestic or foreign
19  government; and

20      (B) includes a monetary unit of account
21  established by an intergovernmental organiza-
22  tion or by agreement between 2 or more coun-
23  tries.

24  (19) NATIONAL CURRENCY.—The term "na-
25  tional currency" means each of the following:

8

1          (A) A Federal Reserve note (as the term is
2     used in the first undesignated paragraph of sec-
3     tion 16 of the Federal Reserve Act (12 U.S.C.
4     411)).
5          (B) Money standing to the credit of an ac-
6     count with a Federal Reserve Bank.
7          (C) Money issued by a foreign central
8     bank.
9          (D) Money issued by an intergovernmental
10    organization pursuant to an agreement by 2 or
11    more governments.
12    (20) NONBANK ENTITY.—The term "nonbank
13 entity" means a person that is not a depository in-
14 stitution or subsidiary of a depository institution.
15    (21) OFFER.—The term "offer" means to make
16 available for purchase, sale, or exchange.
17    (22) PAYMENT STABLECOIN.—The term "pay-
18 ment stablecoin"—
19          (A) means a digital asset—
20               (i) that is, or is designed to be, used
21          as a means of payment or settlement; and
22               (ii) the issuer of which—
23                    (I) is obligated to convert, re-
24               deem, or repurchase for a fixed
25               amount of monetary value, not includ-

9

1       ing a digital asset denominated in a

2       fixed amount of monetary value; and

3           (II) represents that such issuer

4       will maintain, or create the reasonable

5       expectation that it will maintain, a

6       stable value relative to the value of a

7       fixed amount of monetary value; and

8   (B) does not include a digital asset that—

9       (i) is a national currency;

10      (ii) is a deposit (as defined in section

11      3 of the Federal Deposit Insurance Act

12      (12 U.S.C. 1813)), including a deposit re-

13      corded using distributed ledger technology;

14      or

15          (iii) is a security, as defined in section

16      2 of the Securities Act of 1933 (15 U.S.C.

17      77b), section 3 of the Securities Exchange

18      Act of 1934 (15 U.S.C. 78c), or section 2

19      of the Investment Company Act of 1940

20      (15 U.S.C. 80a–2), except that, for the

21      avoidance of doubt, no bond, note, evidence

22      of indebtedness, or investment contract

23      that was issued by a permitted payment

24      stablecoin issuer shall qualify as a security

25      solely by virtue of its satisfying the condi-

10

1      tions described in subparagraph (A), con-

2      sistent with section 17 of this Act.

3    (23)  PERMITTED  PAYMENT  STABLECOIN

4  ISSUER.—The term "permitted payment stablecoin

5  issuer" means a person formed in the United States

6  that is—

7          (A) a subsidiary of an insured depository

8      institution that has been approved to issue pay-

9      ment stablecoins under section 5;

10         (B) a Federal qualified payment stablecoin

11     issuer; or

12         (C) a State qualified payment stablecoin

13     issuer.

14   (24) PERSON.—The term "person" means an

15  individual, partnership, company, corporation, asso-

16  ciation, trust, estate, cooperative organization, or

17  other  business  entity,  incorporated  or  unincor-

18  porated.

19   (25) PRIMARY FEDERAL PAYMENT STABLECOIN

20  REGULATOR.—The term "primary Federal payment

21  stablecoin regulator" means—

22         (A) with respect to a subsidiary of an in-

23     sured depository institution (other than an in-

24     sured credit union), the appropriate Federal

1    banking agency of such insured depository insti-

2    tution;

3        (B) with respect to an insured credit union

4    or a subsidiary of an insured credit union, the

5    National Credit Union Administration;

6        (C) with respect to a State chartered de-

7    pository institution not specified under subpara-

8    graph (A), the Corporation, the Comptroller, or

9    the Board; and

10        (D) with respect to a Federal qualified

11    payment stablecoin issuer, the Comptroller.

12    (26) REGISTERED PUBLIC ACCOUNTING

13    FIRM.—The term "registered public accounting

14    firm" has the meaning given that term under section

15    2 of the Sarbanes-Oxley Act of 2002 (15 U.S.C.

16    7201).

17    (27) STABLECOIN CERTIFICATION REVIEW COM-

18    MITTEE.—The term "Stablecoin Certification Review

19    Committee" means the committee of that name and

20    having the functions as provided in this Act—

21        (A) of which—

22            (i) the Secretary of the Treasury shall

23        serve as Chair; and

24            (ii) the Chair of the Board (or the

25        Vice Chair for Supervision, as delegated by

12

the Chair of the Board), and the Chair of
the Corporation shall serve as members;
and

(B) which, unless otherwise specified in
this Act, shall act by ⅔ vote of its members at
any meeting called by the Chair or by unani-
mous written consent.

(28) STATE.—The term "State" means each of
the several States of the United States, the District
of Columbia, and each territory of the United
States.

(29) STATE CHARTERED DEPOSITORY INSTITU-
TION.—The term "State chartered depository insti-
tution" has the meaning given the term "State de-
pository institution" in section 3(c) of the Federal
Deposit Insurance Act (12 U.S.C. 1813(c)).

(30) STATE PAYMENT STABLECOIN REGU-
LATOR.—The term "State payment stablecoin regu-
lator" means a State agency that has primary regu-
latory and supervisory authority in such State over
entities that issue payment stablecoins.

(31) STATE QUALIFIED PAYMENT STABLECOIN
ISSUER.—The term "State qualified payment
stablecoin issuer" means an entity that—

13

1          (A) is legally established under the laws of

2      a   State   and   approved   to   issue   payment

3      stablecoins by a State payment stablecoin regu-

4      lator; and

5          (B) is not an uninsured national bank

6      chartered by the Comptroller pursuant to title

7      LXII   of   the   Revised   Statutes,   a   Federal

8      branch, an insured depository institution, or a

9      subsidiary   of   such   national   bank,   Federal

10      branch, or insured depository institution.

11      (32) SUBSIDIARY.—The term ''subsidiary'' has

12  the meaning given that term in section 3 of the Fed-

13  eral Deposit Insurance Act (12 U.S.C. 1813).

14      (33)  SUBSIDIARY  OF  AN  INSURED  CREDIT

15  UNION.—With  respect  to  an  insured  credit  union,

16  the  term  ''subsidiary  of  an  insured  credit  union''

17  means—

18          (A) an organization providing services to

19      the  insured  credit  union  that  are  associated

20      with the routine operations of credit unions, as

21      described  in  section  107(7)(I)  of  the  Federal

22      Credit Union Act (12 U.S.C. 1757(7)(I));

23          (B) a credit union service organization, as

24      such term is used under part 712 of title 12,

25      Code  of  Federal  Regulations,  with  respect  to

14

1  which the insured credit union has an owner-
2  ship interest or to which the insured credit
3  union has extended a loan; and

4      (C) a subsidiary of a State chartered in-
5  sured credit union authorized under State law.

6 SEC. 3. ISSUANCE AND TREATMENT OF PAYMENT
7        STABLECOINS.

8  (a) LIMITATION ON ISSUERS.—It shall be unlawful
9 for any person other than a permitted payment stablecoin
10 issuer to issue a payment stablecoin in the United States.

11  (b) PROHIBITION ON OFFERS OR SALES.—

12      (1) IN GENERAL.—Except as provided in sub-
13  section (c) and section 18, beginning on the date
14  that is 3 years after the date of enactment of this
15  Act, it shall be unlawful for a digital asset service
16  provider to offer or sell a payment stablecoin to a
17  person in the United States, unless the payment
18  stablecoin is issued by a permitted payment
19  stablecoin issuer.

20      (2) FOREIGN PAYMENT STABLECOIN
21  ISSUERS.—It shall be unlawful for any digital asset
22  service provider to offer, sell, or otherwise make
23  available in the United States a payment stablecoin
24  issued by a foreign payment stablecoin issuer unless
25  the foreign payment stablecoin issuer has the tech-

15

1   nological capability to comply, and will comply, with
2   the terms of any lawful order and any reciprocal ar-
3   rangement pursuant to section 18.

4   (c) LIMITED SAFE HARBORS.—

5       (1) IN GENERAL.—The Secretary of the Treas-
6   ury may issue regulations providing safe harbors
7   from subsection (a) that are—

8           (A) consistent with the purposes of the
9       Act;

10          (B) limited in scope; and

11          (C) apply to a de minimis volume of trans-
12      actions, as determined by the Secretary of the
13      Treasury.

14      (2)   UNUSUAL   AND   EXIGENT   CIR-
15  CUMSTANCES.—

16          (A) IN GENERAL.—If the Secretary of the
17      Treasury determines that unusual and exigent
18      circumstances exist, the Secretary may provide
19      limited safe harbors from subsection (a).

20          (B) JUSTIFICATION.—Prior to issuing a
21      limited safe harbor under this paragraph, the
22      Secretary of the Treasury shall submit to the
23      chairs and ranking members of the Committee
24      on Banking, Housing, and Urban Affairs of the
25      Senate and the Committee on Financial Serv-

16

1   ices of the House of Representatives a justifica-
2   tion for the determination of the unusual and
3   exigent circumstances, which may be contained
4   in a classified annex, as applicable.

5   (d) RULEMAKING.—Consistent with section 13, the
6   Secretary of the Treasury shall issue regulations to imple-
7   ment this section, including regulations to define terms.

8   (e) EXTRATERRITORIAL EFFECT.—This section is in-
9   tended to have extraterritorial effect if conduct involves
10  the offer or sale of a payment stablecoin to a person lo-
11  cated in the United States.

12  (f) PENALTY FOR VIOLATION.—

13      (1) IN GENERAL.—Whoever knowingly partici-
14      pates in a violation of subsection (a) shall be fined
15      not more than $1,000,000 for each such violation,
16      imprisoned for not more than 5 years, or both.

17      (2) REFERRAL TO ATTORNEY GENERAL.—If a
18      primary Federal payment stablecoin regulator has
19      reason to believe that any person has knowingly vio-
20      lated subsection (a), the primary Federal payment
21      stablecoin regulator may refer the matter to the At-
22      torney General.

23  (g) TREATMENT.—A payment stablecoin that is not
24  issued by a permitted payment stablecoin issuer shall not
25  be—

17

1    (1) treated as cash or as a cash equivalent for
2    accounting purposes;

3    (2) eligible as cash or as a cash equivalent mar-
4    gin and collateral for futures commission merchants,
5    derivative clearing organizations, broker-dealers, reg-
6    istered clearing agencies, and swap dealers; or

7    (3) acceptable as a settlement asset to facilitate
8    wholesale payments between banking organizations
9    or by a payment infrastructure to facilitate exchange
10    and settlement among banking organizations.

11    (h) RULES OF CONSTRUCTION.—

12    (1) EXEMPT TRANSACTIONS.—This section
13    shall not apply to—

14    (A) the direct transfer of digital assets be-
15    tween 2 individuals acting on their own behalf
16    and for their own lawful purposes, without the
17    involvement of an intermediary;

18    (B) to any transaction involving the receipt
19    of digital assets by an individual between an ac-
20    count owned by the individual in the United
21    States and an account owned by the individual
22    abroad that are offered by the same parent
23    company; or

18

(C) to any transaction by means of a soft-
ware or hardware wallet that facilitates an indi-
vidual's own custody of digital assets.

(2) TREASURY AUTHORITY.—Nothing in this
Act shall alter the existing authority of the Sec-
retary of the Treasury to block, restrict, or limit
transactions involving payment stablecoins that ref-
erence or are denominated in United States dollars
that are subject to the jurisdiction of the United
States.

**SEC. 4. REQUIREMENTS FOR ISSUING PAYMENT
STABLECOINS.**

(a) STANDARDS FOR THE ISSUANCE OF PAYMENT
STABLECOINS.—

(1) IN GENERAL.—A permitted payment
stablecoin issuer shall—

(A) maintain identifiable reserves backing
the outstanding payment stablecoins of the per-
mitted payment stablecoin issuer on an at least
1 to 1 basis, with reserves comprising—

(i) United States coins and currency
(including Federal Reserve notes) or
money standing to the credit of an account
with a Federal Reserve Bank;

19

1          (ii) funds held as demand deposits (or

2          other deposits that may be withdrawn

3          upon request at any time) or insured

4          shares at an insured depository institution

5          (including any foreign branches or agents,

6          including correspondent banks, of an in-

7          sured depository institution), subject to

8          limitations established by the Corporation

9          and the National Credit Union Administra-

10          tion, as applicable, to address safety and

11          soundness risks of such insured depository

12          institution;

13          (iii) Treasury bills, notes, or bonds—

14               (I) with a remaining maturity of

15               93 days or less; or

16               (II) issued with a maturity of 93

17               days or less;

18          (iv) money received under repurchase

19          agreements, with the permitted payment

20          stablecoin issuer acting as a seller of secu-

21          rities and with an overnight maturity, that

22          are backed by Treasury bills with a matu-

23          rity of 93 days or less;

24          (v) reverse repurchase agreements,

25          with the permitted payment stablecoin

20

issuer acting as a purchaser of securities
and with an overnight maturity, that are
collateralized by Treasury notes, bills, or
bonds on an overnight basis, subject to
overcollateralization in line with standard
market terms, that are—

(I) tri-party;

(II) centrally cleared through a
clearing agency registered with the
Securities and Exchange Commission;
or

(III) bilateral with a
counterparty that the issuer has de-
termined to be adequately credit-
worthy even in the event of severe
market stress;

(vi) securities issued by an investment
company registered under section 8(a) of
the Investment Company Act of 1940 (15
U.S.C. 80a–8(a)), or other registered Gov-
ernment money market fund, and that are
invested solely in underlying assets de-
scribed in clauses (i) through (v);

(vii) any other similarly liquid Federal
Government-issued asset approved by the

21

1          primary Federal payment stablecoin regu-
2          lator, in consultation with the State pay-
3          ment stablecoin regulator, if applicable, of
4          the permitted payment stablecoin issuer; or
5              (viii) any reserve described in clause
6          (i) through (iii) or clause (vi) through (vii)
7          in tokenized form, provided that such re-
8          serves comply with all applicable laws and
9          regulations;
10         (B) publicly disclose the issuer's redemp-
11     tion policy, which shall—
12             (i)  establish  clear  and  conspicuous
13         procedures for timely redemption of out-
14         standing  payment  stablecoins,  provided
15         that any discretionary limitations on timely
16         redemptions  can  only  be  imposed  by  a
17         State  qualified  payment  stablecoin  regu-
18         lator, the Corporation, the Comptroller, or
19         the Board, consistent with section 7; and
20             (ii) publicly, clearly, and conspicuously
21         disclose in plain language all fees associ-
22         ated with  purchasing  or  redeeming  the
23         payment  stablecoins,  provided  that  such
24         fees  can  only  be  changed  upon  not  less

22

1 than 7 days' prior notice to consumers;

2 and

3 (C) publish the monthly composition of the

4 issuer's reserves on the website of the issuer,

5 containing—

6 (i) the total number of outstanding

7 payment stablecoins issued by the issuer;

8 and

9 (ii) the amount and composition of

10 the reserves described in subparagraph

11 (A), including the average tenor and geo-

12 graphic location of custody of each cat-

13 egory of reserve instruments.

14 (2) PROHIBITION ON REHYPOTHECATION.—Re-

15 serves required under paragraph (1)(A) may not be

16 pledged, rehypothecated, or reused by the permitted

17 payment stablecoin issuer, either directly or indi-

18 rectly, except for the purpose of—

19 (A) satisfying margin obligations in con-

20 nection with investments in permitted reserves

21 under clauses (iv) and (v) of paragraph (1)(A);

22 (B) satisfying obligations associated with

23 the use, receipt, or provision of standard custo-

24 dial services; or

23

1          (C) creating liquidity to meet reasonable
2      expectations of requests to redeem payment
3      stablecoins, such that reserves in the form of
4      Treasury bills may be sold as purchased securi-
5      ties for repurchase agreements with a maturity
6      of 93 days or less, provided that either—

7              (i) the repurchase agreements are
8          cleared by a clearing agency registered
9          with the Securities and Exchange Commis-
10         sion; or

11             (ii) the permitted payment stablecoin
12         issuer receives the prior approval of its pri-
13         mary Federal payment stablecoin regulator
14         or State payment stablecoin regulator, as
15         applicable.

16     (3) MONTHLY CERTIFICATION; EXAMINATION
17 OF REPORTS BY REGISTERED PUBLIC ACCOUNTING
18 FIRM.—

19         (A) IN GENERAL.—A permitted payment
20     stablecoin issuer shall, each month, have the in-
21     formation disclosed in the previous month-end
22     report required under paragraph (1)(D) exam-
23     ined by a registered public accounting firm.

24         (B) CERTIFICATION.—Each month, the
25     Chief Executive Officer and Chief Financial Of-

24

1       ficer of a permitted payment stablecoin issuer
2       shall submit a certification as to the accuracy
3       of the monthly report to, as applicable—

4           (i)   the   primary   Federal   payment
5           stablecoin regulator of the permitted pay-
6           ment stablecoin issuer; or

7           (ii) the State payment stablecoin reg-
8           ulator of the permitted payment stablecoin
9           issuer.

10      (C) CRIMINAL PENALTY.—Any person who
11      submits a certification required under subpara-
12      graph (B) knowing that such certification is
13      false shall be subject to the same criminal pen-
14      alties as those set forth under section 1350(c)
15      of title 18, United States Code.

16      (4) CAPITAL, LIQUIDITY, AND RISK MANAGE-
17   MENT REQUIREMENTS.—

18      (A) IN GENERAL.—The primary Federal
19      payment stablecoin regulators shall, or in the
20      case of a State qualified payment stablecoin
21      issuer, the State payment stablecoin regulator
22      shall, consistent with section 13, issue regula-
23      tions implementing—

25

1            (i) capital requirements applicable to
2        permitted   payment   stablecoin   issuers
3        that—
4                (I) are tailored to the business
5                model and risk profile of permitted
6                payment stablecoin issuers;
7                (II) do not exceed requirements
8                that are sufficient to ensure the ongo-
9                ing operations of permitted payment
10               stablecoin issuers; and
11               (III) in the case of the primary
12               Federal   payment   stablecoin   regu-
13               lators, if the primary Federal pay-
14               ment stablecoin regulators determine
15               that a capital buffer is necessary to
16               ensure the ongoing operations of per-
17               mitted   payment   stablecoin   issuers,
18               may include capital buffers that are
19               tailored to the business model and
20               risk   profile   of   permitted   payment
21               stablecoin issuers;
22           (ii) the liquidity standard under para-
23       graph (1)(A);
24           (iii) reserve asset diversification, in-
25       cluding deposit concentration at banking

26

institutions, and interest rate risk manage-
ment standards applicable to permitted
payment stablecoin issuers that—

(I) are tailored to the business
model and risk profile of permitted
payment stablecoin issuers; and

(II) do not exceed standards that
are sufficient to ensure the ongoing
operations of permitted payment
stablecoin issuers; and

(iv) appropriate operational, compli-
ance, and information technology risk
management principles-based requirements
and standards, including Bank Secrecy Act
and sanctions compliance standards,
that—

(I) are tailored to the business
model and risk profile of permitted
payment stablecoin issuers; and

(II) are consistent with applicable
law.

(B) RULE OF CONSTRUCTION.—Nothing in
this paragraph shall be construed to limit—

(i) the authority of the primary Fed-
eral payment stablecoin regulators, in pre-

27

1            scribing standards under this paragraph,

2            to tailor or differentiate among issuers on

3            an individual basis or by category, taking

4            into consideration the capital structure,

5            business model risk profile, complexity, fi-

6            nancial activities (including financial activi-

7            ties of subsidiaries), size, and any other

8            risk-related factors of permitted payment

9            stablecoin issuers that a primary Federal

10           payment stablecoin regulator determines

11           appropriate, provided that such tailoring or

12           differentiation occurs without respect to

13           whether a permitted payment stablecoin

14           issuer is regulated by a State payment

15           stablecoin regulator; or

16               (ii) any supervisory, regulatory, or en-

17           forcement authority of a primary Federal

18           payment stablecoin regulator to further the

19           safe and sound operation of an institution

20           for which the primary Federal payment

21           stablecoin regulator is the appropriate reg-

22           ulator.

23           (C) APPLICABILITY OF EXISTING CAPITAL

24       STANDARDS.—

28

1          (i) DEFINITION.—In this subpara-
2      graph, the term "depository institution
3      holding company" has the meaning given
4      that term under section 171(a)(3) of the
5      Financial Stability Act of 2010 (12 U.S.C.
6      5371(a)(3)).

7          (ii) APPLICABILITY OF FINANCIAL
8      STABILITY ACT.—With respect to the pro-
9      mulgation of rules under subparagraph (A)
10     and clauses (iii) and (iv) of this subpara-
11     graph, section 171 of the Financial Sta-
12     bility Act of 2010 (12 U.S.C. 5371) shall
13     not apply.

14         (iii) RULES RELATING TO LEVERAGE
15     CAPITAL REQUIREMENTS OR RISK-BASED
16     CAPITAL REQUIREMENTS.—Any rule issued
17     by an appropriate Federal banking agency
18     that imposes, on a consolidated basis, a le-
19     verage capital requirement or risk-based
20     capital requirement with respect to an in-
21     sured depository institution or depository
22     institution holding company shall provide
23     that, for purposes of such leverage capital
24     requirement or risk-based capital require-
25     ment, any insured depository institution or

29

depository institution holding company
that includes, on a consolidated basis, a
permitted payment stablecoin issuer, shall
not be required to hold, with respect to
such permitted payment stablecoin issuer
and its assets and operations, any amount
of regulatory capital in excess of the cap-
ital that such permitted payment
stablecoin issuer must maintain under the
capital requirements issued pursuant to
subparagraph (A)(i).

(iv) MODIFICATIONS.—Not later than
the earlier of the rulemaking deadline
under section 13 or the date on which the
Federal payment stablecoin regulators
issue regulations to carry out this section,
each appropriate Federal banking agency
shall amend or otherwise modify any regu-
lation of the appropriate Federal banking
agency described in clause (iii) so that
such regulation, as amended or otherwise
modified, complies with clause (iii) of this
subparagraph.

(5) TREATMENT UNDER THE BANK SECRECY
ACT AND SANCTIONS LAWS.—

30

1          (A) IN GENERAL.—A permitted payment
2     stablecoin issuer shall be treated as a financial
3     institution for purposes of the Bank Secrecy
4     Act, and as such, shall be subject to all Federal
5     laws applicable to a financial institution located
6     in the United States relating to economic sanc-
7     tions, prevention of money laundering, customer
8     identification, and due diligence, including—

9               (i) maintenance of an effective anti-
10          money laundering program, which shall in-
11          clude appropriate risk assessments and
12          designation of an officer to supervise the
13          program;

14               (ii) retention of appropriate records;

15               (iii) monitoring and reporting of any
16          suspicious transaction relevant to a pos-
17          sible violation of law or regulation;

18               (iv) technical capabilities, policies, and
19          procedures to block, freeze, and reject spe-
20          cific or impermissible transactions that vio-
21          late Federal or State laws, rules, or regula-
22          tions;

23               (v) maintenance of an effective cus-
24          tomer identification program, including
25          identification and verification of account

31

1          holders with the permitted payment
2          stablecoin issuer, high-value transactions,
3          and appropriate enhanced due diligence;
4          and

5              (vi) maintenance of an effective eco-
6              nomic sanctions compliance program, in-
7              cluding verification of sanctions lists, con-
8              sistent with Federal law.

9          (B) RULEMAKING.—The Secretary of the
10         Treasury shall adopt rules, tailored to the size
11         and complexity of permitted payment stablecoin
12         issuers, to implement subparagraph (A).

13         (C) RESERVATION OF AUTHORITY.—Noth-
14         ing in this Act shall restrict the authority of the
15         Secretary of the Treasury to implement, admin-
16         ister, and enforce the provisions of subchapter
17         II of chapter 53 of title 31, United States Code.

18     (6) COORDINATION WITH PERMITTED PAYMENT
19 STABLECOIN ISSUERS WITH RESPECT TO BLOCKING
20 OF PROPERTY AND TECHNOLOGICAL CAPABILITIES
21 TO COMPLY WITH LAWFUL ORDERS.—

22         (A) IN GENERAL.—The Secretary of the
23         Treasury—

24              (i) shall, to the best of the Secretary's
25              ability, coordinate with a permitted pay-

32

1    ment stablecoin issuer before taking any
2    action to block and prohibit transactions in
3    property and interests in property of a for-
4    eign person to ensure that the permitted
5    payment stablecoin issuer is able to effec-
6    tively block a payment stablecoin of the
7    foreign person upon issuance of the pay-
8    ment stablecoin; and

9        (ii) is not required to notify any per-
10       mitted payment stablecoin issuer of any in-
11       tended action described in clause (i) prior
12       to taking such action.

13    (B) COMPLIANCE WITH LAWFUL OR-
14    DERS.—A permitted payment stablecoin issuer
15    may issue payment stablecoins only if the issuer
16    has the technological capability to comply, and
17    will comply, with the terms of any lawful order.

18    (C) REPORT REQUIRED.—Not later than 1
19    year after the date of enactment of this Act, the
20    Attorney General and the Secretary of the
21    Treasury shall submit to the Committee on
22    Banking, Housing, and Urban Affairs of the
23    Senate and the Committee on Financial Serv-
24    ices of the House of Representatives a report,
25    which may include a classified annex if applica-

33

1       ble, on the coordination with permitted payment
2       stablecoin issuers required under subparagraph
3       (A).

4           (D) RULE OF CONSTRUCTION.—Nothing in
5       this paragraph shall be construed to alter or af-
6       fect the authority of State payment stablecoin
7       regulators with respect to the offer of foreign-
8       issued digital assets that are issued within a
9       foreign jurisdiction.

10      (7) LIMITATION ON PAYMENT STABLECOIN AC-
11      TIVITIES.—

12          (A) IN GENERAL.—A permitted payment
13      stablecoin issuer may only—

14              (i) issue payment stablecoins;

15              (ii) redeem payment stablecoins;

16              (iii) manage related reserves, includ-
17          ing purchasing, selling, and holding reserve
18          assets or providing custodial services for
19          reserve assets, consistent with State and
20          Federal law;

21              (iv) provide custodial or safekeeping
22          services for payment stablecoins, required
23          reserves, or private keys of payment
24          stablecoins, consistent with this Act; and

34

1        (v) undertake other activities that di-
2     rectly support any of the activities de-
3     scribed in clauses (i) through (iv).

4        (B) RULE OF CONSTRUCTION.—Nothing in
5     subparagraph (A) shall limit a permitted pay-
6     ment stablecoin issuer from engaging in pay-
7     ment stablecoin activities or digital asset service
8     provider activities specified by this Act, and ac-
9     tivities incidental thereto, that are authorized
10    by the primary Federal payment stablecoin reg-
11    ulator or the State payment stablecoin regu-
12    lator, as applicable, consistent with all other
13    Federal and State laws, provided that the
14    claims of payment stablecoin holders rank sen-
15    ior to any potential claims of non-stablecoin
16    creditors with respect to the reserve assets, con-
17    sistent with section 11.

18    (8) PROHIBITION ON TYING.—

19        (A) IN GENERAL.—A permitted payment
20    stablecoin issuer may not provide services to a
21    customer on the condition that the customer ob-
22    tain an additional paid product or service from
23    the permitted payment stablecoin issuer, or any
24    of its subsidiaries, or agree to not obtain an ad-
25    ditional product or service from a competitor.

35

1          (B) REGULATIONS.—The Board may issue

2      such regulations as are necessary to carry out

3      this paragraph, and, in consultation with other

4      relevant primary Federal payment stablecoin

5      regulators, may by regulation or order, permit

6      such exceptions to subparagraph (A) as the

7      Board considers will not be contrary to the pur-

8      pose of this Act.

9      (9) PROHIBITION ON THE USE OF DECEPTIVE

10   NAMES.—

11          (A) IN GENERAL.—A permitted payment

12      stablecoin issuer may not—

13              (i) use any combination of terms re-

14          lating to the United States Government,

15          including "United States", "United States

16          Government", and "USG" in the name of

17          a payment stablecoin; or

18              (ii) market a payment stablecoin in

19          such a way that a reasonable person would

20          perceive the payment stablecoin to be—

21                  (I) legal tender, as described in

22              section 5103 of title 31, United States

23              Code;

24                  (II) issued by the United States;

25              or

36

1              (III) guaranteed or approved by
2          the Government of the United States.
3          (B) PEGGED STABLECOINS.—Abbrevia-
4      tions directly relating to the currency to which
5      a payment stablecoin is pegged, such as
6      "USD", are not subject to the prohibitions in
7      subparagraph (A).
8      (10) AUDITS AND REPORTS.—
9          (A) ANNUAL FINANCIAL STATEMENT.—
10              (i) IN GENERAL.—A permitted pay-
11          ment stablecoin issuer with more than
12          $50,000,000,000 in consolidated total out-
13          standing issuance, that is not subject to
14          the reporting requirements under section
15          13(a) or 15(d) of the Securities and Ex-
16          change Act of 1934 (15 U.S.C. 78m,
17          78o(d)), shall prepare, in accordance with
18          generally accepted accounting principles,
19          an annual financial statement, which shall
20          include the disclosure of any related party
21          transactions, as defined by such generally
22          accepted accounting principles.
23              (ii) AUDITOR.—A registered public ac-
24          counting firm shall perform an audit of the

37

1    annual financial statements described in
2    clause (i).

3        (iii) STANDARDS.—An audit described
4        in clause (ii) shall be conducted in accord-
5        ance with all applicable auditing standards
6        established by the Public Company Ac-
7        counting Oversight Board, including those
8        relating to auditor independence, internal
9        controls, and related party transactions.

10        (iv) RULE OF CONSTRUCTION.—Noth-
11        ing in this subparagraph shall be construed
12        to limit, alter, or expand the jurisdiction of
13        the Public Company Accounting Oversight
14        Board over permitted payment stablecoin
15        issuers or registered public accounting
16        firms.

17    (B) PUBLIC DISCLOSURE AND SUBMISSION
18    TO FEDERAL REGULATORS.—Each permitted
19    payment stablecoin issuer required to prepare
20    an audited annual financial statement under
21    subparagraph (A) shall—

22        (i) make such audited financial state-
23        ments publicly available on the website of
24        the permitted payment stablecoin issuer;
25        and

38

1          (ii) submit such audited financial
2              statements annually to their primary Fed-
3              eral payment stablecoin regulator.

4          (C) CONSULTATION.—The primary Fed-
5              eral payment stablecoin regulators may consult
6              with the Public Company Accounting Oversight
7              Board to determine best practices for deter-
8              mining audit oversight and to detect fraud, ma-
9              terial misstatements, and other financial mis-
10             representations that could mislead permitted
11             payment stablecoin holders.

12      (11) PROHIBITION ON INTEREST.—No per-
13  mitted payment stablecoin issuer or foreign payment
14  stablecoin issuer shall pay the holder of any payment
15  stablecoin any form of interest or yield (whether in
16  cash, tokens, or other consideration) solely in con-
17  nection with the holding, use, or retention of such
18  payment stablecoin.

19      (12) NON-FINANCIAL SERVICES PUBLIC COMPA-
20  NIES.—

21          (A) DEFINITIONS.—In this paragraph:

22              (i) FINANCIAL ACTIVITIES.—The term
23                  "financial activities"—

24                  (I) has the meaning given that
25                      term in section 4(k) of the Bank

1    Holding Company Act of 1956 (12

2    U.S.C. 1843(k)); and

3        (II) for the avoidance of doubt,

4        includes those activities described in

5        subparagraphs (A) and (B) of section

6        2(7) and section 4(a)(7)(A) of this

7        Act.

8    (ii) PUBLIC COMPANY.—The term

9    ''public company'' means an issuer that is

10    required to file reports under section 13(a)

11    or 15(d) of the Securities Exchange Act of

12    1934 (15 U.S.C. 78m(a), 78o(d)).

13    (B) PROHIBITION.—

14        (i) IN GENERAL.—A public company

15        that is not predominantly engaged in 1 or

16        more financial activities, and its wholly or

17        majority owned subsidiaries or affiliates,

18        may not issue a payment stablecoin unless

19        the public company obtains a unanimous

20        vote of the Stablecoin Certification Review

21        Committee finding that—

22            (I) it will not pose a material risk

23            to the safety and soundness of the

24            United States banking system, the fi-

40

1          nancial stability of the United States,

2          or the Deposit Insurance Fund;

3             (II) the public company will com-

4             ply with data use limitations providing

5             that, unless the public company re-

6             ceives consent from the consumer,

7             nonpublic personal information ob-

8             tained from stablecoin transaction

9             data may not be—

10                (aa) used to target, person-

11                alize, or rank advertising or other

12                content;

13                (bb) sold to any third party;

14                or

15                (cc) shared with non-affili-

16                ates; and

17             (III) the public company and the

18             affiliates of the public company will

19             comply with the tying prohibitions

20             under paragraph (8).

21          (ii)    EXCEPTION.—The prohibition

22         under clause (i) against the sharing of con-

23         sumer information shall not apply to shar-

24         ing of such information—

41

1        (I) to comply with Federal,
2    State, or local laws, rules, and other
3    applicable legal requirements;

4        (II) to comply with a properly
5    authorized civil, criminal, or regu-
6    latory investigation, subpoena, or
7    summons by a Federal, State, or local
8    authority; or

9        (III) to respond to judicial proc-
10    ess or a government regulatory au-
11    thority having jurisdiction over the
12    public company.

13    (C) EXTENSION OF PROHIBITION.—

14        (i) IN GENERAL.—Any company not
15    domiciled in the United States or its Terri-
16    tories that is not predominantly engaged in
17    1 or more financial activities, may not
18    issue a payment stablecoin unless the pub-
19    lic company obtains a unanimous vote of
20    the Stablecoin Certification Review Com-
21    mittee finding that—

22        (I) it will not pose a material risk
23    to the safety and soundness of the
24    United States banking system, the fi-

42

1                     nancial stability of the United States,

2                     or the Deposit Insurance Fund;

3                     (II) the public company will com-

4                     ply with data use limitations providing

5                     that, unless the public company re-

6                     ceives consent from the consumer,

7                     nonpublic personal information ob-

8                     tained from stablecoin transaction

9                     data may not be—

10                     (aa) used to target, person-

11                     alize, or rank advertising or other

12                     content;

13                     (bb) sold to any third party;

14                     or

15                     (cc) shared with non-affili-

16                     ates; except

17                     (III) the public company and the

18                     affiliates of the public company will

19                     comply with the tying prohibitions

20                     under paragraph (8).

21                 (ii)   EXCEPTION.—The prohibition

22             under clause (i) against the sharing of con-

23             sumer information shall not apply to shar-

24             ing of such information—

43

1          (I) to comply with Federal,
2              State, or local laws, rules, and other
3              applicable legal requirements;
4          (II) to comply with a properly
5              authorized civil, criminal, or regu-
6              latory investigation, subpoena, or
7              summons by a Federal, State, or local
8              authority; or
9          (III) to respond to judicial proc-
10             ess or a government regulatory au-
11             thority having jurisdiction over the
12             public company.
13      (D) RULEMAKING.—Not later than 1 year
14          after the date of enactment of this Act, the
15          Stablecoin Certification Review Committee shall
16          issue an interpretive rule clarifying the applica-
17          tion of this paragraph.
18      (13) ELIGIBILITY.—Nothing in this Act shall
19      be construed as expanding or contracting legal eligi-
20      bility to receive services available from a Federal Re-
21      serve bank or to make deposits with a Federal Re-
22      serve bank, in each case pursuant to the Federal Re-
23      serve Act.
24      (14) RULE OF CONSTRUCTION.—Compliance
25      with this section does not alter or affect any addi-

44

1    tional requirement of a State payment stablecoin
2    regulator that may apply relating to the offering of
3    payment stablecoins.

4    (b) REGULATION BY THE COMPTROLLER.—

5        (1) IN GENERAL.—Notwithstanding section
6    5136C of the Revised Statutes (12 U.S.C. 25b), sec-
7    tion 6 of the Home Owners' Loan Act (12 U.S.C.
8    1465), or any applicable State law relating to licens-
9    ing and supervision, a Federal qualified payment
10   stablecoin issuer approved by the Comptroller pursu-
11   ant to section 5 of this Act shall be licensed, regu-
12   lated, examined, and supervised exclusively by the
13   Comptroller, which shall have authority, in coordina-
14   tion with other relevant primary Federal payment
15   stablecoin regulators and State payment stablecoin
16   regulators, to issue such regulations and orders as
17   necessary to ensure financial stability and implement
18   subsection (a).

19       (2) CONFORMING AMENDMENT.—Section
20   324(b) of the Revised Statutes (12 U.S.C. 1(b)) is
21   amended by adding at the end the following:

22       ''(3) REGULATION OF FEDERAL QUALIFIED
23   PAYMENT STABLECOIN ISSUERS.—The Comptroller
24   of the Currency shall, in coordination with other rel-
25   evant regulators and consistent with section 13 of

45

1    the GENIUS Act, issue such regulations and orders
2    as necessary to ensure financial stability and imple-
3    ment section 4(a) of that Act.''.

4    (c) STATE-LEVEL REGULATORY REGIMES.—

5    (1) OPTION FOR STATE-LEVEL REGULATORY
6    REGIME.—Notwithstanding the Federal regulatory
7    framework established under this Act, a State quali-
8    fied payment stablecoin issuer with a consolidated
9    total outstanding issuance of not more than
10    $10,000,000,000 may opt for regulation under a
11    State-level regulatory regime, provided that the
12    State-level regulatory regime is substantially similar
13    to the Federal regulatory framework under this Act.

14    (2) PRINCIPLES.—The Secretary of the Treas-
15    ury shall, through notice and comment rulemaking,
16    establish broad-based principles for determining
17    whether a State-level regulatory regime is substan-
18    tially similar to the Federal regulatory framework
19    under this Act.

20    (3) REVIEW.—State payment stablecoin regu-
21    lators shall review State-level regulatory regimes ac-
22    cording to the principles established by the Secretary
23    of the Treasury under paragraph (2) and for the
24    purposes of establishing any necessary cooperative
25    agreements to implement section 7(f).

46

1　(4) CERTIFICATION.—

2　　　(A) INITIAL CERTIFICATION.—Subject to

3　subparagraph (B), not later than 1 year after

4　the effective date of this Act, a State payment

5　stablecoin regulator shall submit to the

6　Stablecoin Certification Review Committee an

7　initial certification that the State-level regu-

8　latory regime meets the criteria for substantial

9　similarity established pursuant to paragraph

10　(2).

11　　　(B) FORM OF CERTIFICATION.—The initial

12　certification required under subparagraph (A)

13　shall contain, in a form prescribed by the

14　Stablecoin Certification Review Committee, an

15　attestation that the State-level regulatory re-

16　gime meets the criteria for substantial simi-

17　larity established pursuant to paragraph (2).

18　　　(C) ANNUAL RECERTIFICATION.—Not later

19　than a date to be determined by the Secretary

20　of the Treasury each year, a State payment

21　stablecoin regulator shall submit to the

22　Stablecoin Certification Review Committee an

23　additional certification that confirms the accu-

24　racy of the initial certification submitted under

25　subparagraph (A).

47

1    (5) CERTIFICATION REVIEW.—

2    (A) IN GENERAL.—Not later than 30 days

3    after the date on which a State payment

4    stablecoin regulator submits an initial certifi-

5    cation or a recertification under paragraph (4),

6    the Stablecoin Certification Review Committee

7    shall—

8    (i) approve such certification if the

9    Committee unanimously determines that

10    the State-level regulatory regime meets or

11    exceeds the standards and requirements

12    described in subsection (a); or

13    (ii) deny such certification and pro-

14    vide the State payment stablecoin regu-

15    lator with a written explanation of the de-

16    nial, describing the reasoned basis for the

17    denial with sufficient detail to enable the

18    State payment stablecoin regulator and

19    State-level regulatory regime to make any

20    changes necessary to meet or exceed the

21    standards and requirements described in

22    subsection (a).

23    (B) RECERTIFICATIONS.—With respect to

24    any recertification certification submitted by a

25    State payment stablecoin regulator under para-

48

1    graph (4), the Stablecoin Certification Review

2    Committee shall only deny the recertification

3    if—

4        (i) the State-level regulatory regime

5        has materially changed from the prior cer-

6        tification or there has been a significant

7        change in circumstances; and

8        (ii) the material change in the regime

9        or significant change in circumstances de-

10       scribed in clause (i) is such that the State-

11       level regulatory regime will not promote

12       the safe and sound operation of State

13       qualified payment stablecoin issuers under

14       its supervision.

15    (C) OPPORTUNITY TO CURE.—

16        (i) IN GENERAL.—With respect to a

17       denial described under subparagraph (A)

18       or (B), the Stablecoin Certification Review

19       Committee shall provide the State payment

20       stablecoin regulator with not less than 180

21       days from the date on which the State pay-

22       ment stablecoin regulator is notified of

23       such denial to—

24        (I) make such changes as may be

25       necessary to ensure the State-level

49

1        regulatory regime meets or exceeds
2        the standards described in subsection
3        (a); and

4            (II) resubmit the initial certifi-
5        cation or recertification.

6        (ii) DENIAL.—If, after a State pay-
7        ment stablecoin regulator resubmits an ini-
8        tial certification or recertification under
9        clause (i), the Stablecoin Certification Re-
10       view Committee again determines that the
11       initial certification or recertification shall
12       result in a denial, the Stablecoin Certifi-
13       cation Review Committee shall, not later
14       than 30 days after such determination,
15       provide the State payment stablecoin regu-
16       lator with a written explanation for the de-
17       termination.

18       (D) APPEAL OF DENIAL.—A State pay-
19       ment stablecoin regulator in receipt of a denial
20       under subparagraph (C)(ii) may appeal the de-
21       nial to the United States Court of Appeals for
22       the District of Columbia Circuit.

23       (E) RIGHT TO RESUBMIT.—A State pay-
24       ment stablecoin regulator in receipt of a denial
25       under this paragraph shall not be prohibited

50

1       from resubmitting a new certification under

2       paragraph (4).

3       (6) LIST.—The Secretary of the Treasury shall

4       publish and maintain in the Federal Register and on

5       the website of the Department of the Treasury a list

6       of States that have submitted initial certifications

7       and recertifications under paragraph (4).

8       (7) EXPEDITED CERTIFICATIONS OF EXISTING

9       REGULATORY REGIMES.—The Stablecoin Certifi-

10      cation Review Committee shall take all necessary

11      steps to endeavor that, with respect to a State that,

12      within 180 days of the date of enactment of this

13      Act, has in effect a prudential regulatory regime (in-

14      cluding regulations and guidance) for the super-

15      vision of digital assets or payment stablecoins, the

16      certification process under this paragraph with re-

17      spect to that regime occurs on an expedited timeline

18      after the effective date of this Act.

19   (d) TRANSITION TO FEDERAL OVERSIGHT.—

20      (1) DEPOSITORY INSTITUTION.—A State char-

21      tered depository institution that is a State qualified

22      payment stablecoin issuer with a payment stablecoin

23      with a consolidated total outstanding issuance of

24      more than $10,000,000,000 shall—

51

1            (A) not later than 360 days after the pay-
2        ment stablecoin reaches such threshold, transi-
3        tion to the Federal regulatory framework of the
4        primary Federal payment stablecoin regulator
5        of the State chartered depository institution,
6        which shall be administered by the State pay-
7        ment stablecoin regulator of the State chartered
8        depository institution and the primary Federal
9        payment stablecoin regulator acting jointly; or

10            (B) beginning on the date the payment
11        stablecoin reaches such threshold, cease issuing
12        new payment stablecoins until the payment
13        stablecoin is under the $10,000,000,000 con-
14        solidated total outstanding issuance threshold.

15    (2) OTHER INSTITUTIONS.—A State qualified
16 payment stablecoin issuer not described in para-
17 graph (1) with a payment stablecoin with a consoli-
18 dated total outstanding issuance of more than
19 $10,000,000,000 shall—

20            (A) not later than 360 days after the pay-
21        ment stablecoin reaches such threshold, transi-
22        tion to the Federal regulatory framework under
23        subsection (a) administered by the relevant
24        State payment stablecoin regulator and the
25        Comptroller, acting in coordination; or

52

1          (B) beginning on the date the payment
2     stablecoin reaches such threshold, cease issuing
3     new payment stablecoins until the payment
4     stablecoin is under the $10,000,000,000 con-
5     solidated total outstanding issuance threshold.
6     (3) WAIVER.—
7          (A) IN GENERAL.—Notwithstanding para-
8     graphs (1) and (2), the applicable primary Fed-
9     eral payment stablecoin regulator may permit a
10    State qualified payment stablecoin issuer with a
11    payment stablecoin with a consolidated total
12    outstanding    issuance    of    more    than
13    $10,000,000,000 to remain solely supervised by
14    a State payment stablecoin regulator.
15         (B) CRITERIA FOR WAIVER.—The primary
16    Federal payment stablecoin regulator shall con-
17    sider the following exclusive criteria in deter-
18    mining whether to issue a waiver under this
19    paragraph:
20              (i) The capital maintained by the
21         State qualified payment stablecoin issuer.
22              (ii) The past operations and examina-
23         tion history of the State qualified payment
24         stablecoin issuer.

53

(iii) The experience of the State payment stablecoin regulator in supervising payment stablecoin and digital asset activities.

(iv) The supervisory framework, including regulations and guidance, of the State qualified payment stablecoin issuer with respect to payment stablecoins and digital assets.

(C) RULE OF CONSTRUCTION.—

(i) FEDERAL OVERSIGHT.—A State qualified payment stablecoin issuer subject to Federal oversight under paragraph (1) or (2) of this subsection that does not receive a waiver under this paragraph shall continue to be supervised by the State payment stablecoin regulator of the State qualified payment stablecoin issuer jointly with the primary Federal payment stablecoin regulator. Nothing in this subsection shall require the State qualified payment stablecoin issuer to convert to a Federal charter.

(ii) STATE OVERSIGHT.—A State qualified payment stablecoin issuer super-

54

vised by a State payment stablecoin regu-
lator that has established a prudential reg-
ulatory regime (including regulations and
guidance) for the supervision of digital as-
sets or payment stablecoins before the 90-
day period ending on the date of enact-
ment of this Act that has been certified
pursuant to subsection (c) and has ap-
proved 1 or more issuers to issue payment
stablecoins under the supervision of such
State payment stablecoin regulator, shall
be presumptively approved for a waiver
under this paragraph, unless the Federal
payment stablecoin regulator finds, by
clear and convincing evidence, that the re-
quirements of subparagraph (B) are not
substantially met with respect to that
issuer or that the issuer poses significant
safety and soundness risks to the financial
system of the United States.

(e) MISREPRESENTATION OF INSURED STATUS.—

(1) IN GENERAL.—Payment stablecoins shall
not be backed by the full faith and credit of the
United States, guaranteed by the United States
Government, subject to deposit insurance by the

55

1    Federal Deposit Insurance Corporation, or subject

2    to share insurance by the National Credit Union Ad-

3    ministration.

4        (2) MISREPRESENTATION OF INSURED STA-

5    TUS.—

6            (A) IN GENERAL.—It shall be unlawful to

7        represent that payment stablecoins are backed

8        by the full faith and credit of the United

9        States, guaranteed by the United States Gov-

10       ernment, or subject to Federal deposit insur-

11       ance or Federal share insurance.

12           (B) PENALTY.—A violation of subpara-

13       graph (A) shall be considered a violation of sec-

14       tion 18(a)(4) of the Federal Deposit Insurance

15       Act (12 U.S.C. 1828(a)(4)) or section 709 of

16       title 18, United States Code, as applicable.

17       (3) MARKETING.—

18           (A) IN GENERAL.—It shall be unlawful to

19       market a product in the United States as a

20       payment stablecoin unless the product is issued

21       pursuant to this Act.

22           (B) PENALTY.—Whoever knowingly and

23       willfully participates in a violation of subpara-

24       graph (A) shall be fined by the Department of

56

1    the Treasury not more than $500,000 for each

2    such violation.

3         (C) DETERMINATION OF THE NUMBER OF

4    VIOLATIONS.—For purposes of determining the

5    number of violations for which to impose pen-

6    alties under subparagraph (B), separate acts of

7    noncompliance are a single violation when the

8    acts are the result of—

9              (i) a common or substantially overlap-

10             ping originating cause; or

11             (ii) the same statement or publication.

12        (D) REFERRAL TO SECRETARY OF THE

13   TREASURY.—If a Federal payment stablecoin

14   regulator has reason to believe that any person

15   has knowingly and willfully violated subpara-

16   graph (A), the Federal payment stablecoin reg-

17   ulator shall refer the matter to the Secretary of

18   the Treasury.

19   (f) OFFICERS OR DIRECTORS CONVICTED OF CER-

20   TAIN FELONIES.—

21        (1) IN GENERAL.—No individual who has been

22   convicted of a felony offense involving insider trad-

23   ing, embezzlement, cybercrime, money laundering, fi-

24   nancing of terrorism, or financial fraud may serve

25   as—

57

1             (A) an officer of a payment stablecoin

2        issuer; or

3             (B) a director of a payment stablecoin

4        issuer.

5       (2) PENALTY.—

6             (A) IN GENERAL.—Whoever knowingly

7        participates in a violation of paragraph (1) shall

8        be fined not more than $1,000,000 for each

9        such violation, imprisoned for not more than 5

10       years, or both.

11             (B) REFERRAL TO ATTORNEY GENERAL.—

12        If a Federal payment stablecoin regulator has

13        reason to believe that any person has knowingly

14        violated paragraph (1), the Federal payment

15        stablecoin regulator shall refer the matter to

16        the Attorney General.

17     (g) CLARIFICATION RELATING TO FEDERAL SAVINGS

18 ASSOCIATION RESERVES.—A Federal savings association

19 established under the Home Owners' Loan Act (12 U.S.C.

20 1461 et seq.) that holds a reserve that satisfies the re-

21 quirements of section 4(a)(1) shall not be required to sat-

22 isfy the qualified thrift lender test under section 10(m)

23 of the Home Owners' Loan Act (12 U.S.C. 1467a(m))

24 with respect to such reserve assets.

25     (h) RULEMAKING.—

58

1      (1) IN GENERAL.—Consistent with section 13,

2    the primary Federal payment stablecoin regulators

3    shall, and State payment stablecoin regulators may,

4    issue such regulations relating to permitted payment

5    stablecoin issuers as may be necessary to establish

6    a payment stablecoin regulatory framework nec-

7    essary to administer and carry out the requirements

8    of this section, including to establish conditions, and

9    to prevent evasion thereof.

10      (2) COORDINATED ISSUANCE OF REGULA-

11    TIONS.—All regulations issued to carry out this sec-

12    tion shall be issued in coordination by the primary

13    Federal payment stablecoin regulators, if not issued

14    by a State payment stablecoin regulator.

15    (i) RULES OF CONSTRUCTION.—Nothing in this Act

16  shall be construed—

17      (1) as expanding the authority of the Board

18    with respect to the services the Board can make di-

19    rectly available to the public; or

20      (2) to limit or prevent the continued application

21    of applicable ethics statutes and regulations adminis-

22    tered by the Office of Government Ethics, or the

23    ethics rules of the Senate and the House of Rep-

24    resentatives, including section 208 of title 18,

25    United States Code, and sections 2635.702 and

59

1    2635.802 of title 5, Code of Federal Regulations.

2    For the avoidance of doubt, existing Office of Gov-

3    ernment Ethics laws and the ethics rules of the Sen-

4    ate and the House of Representatives prohibit any

5    member of Congress or senior executive branch offi-

6    cial from issuing a payment stablecoin during their

7    time in public service. For the purposes of this para-

8    graph, an employee described in section 202 of title

9    18, United States Code, shall be deemed an execu-

10    tive branch employee for purposes of complying with

11    section 208 of that title.

12    **SEC. 5. APPROVAL OF SUBSIDIARIES OF INSURED DEPOSI-**

13              **TORY INSTITUTIONS AND FEDERAL QUALI-**

14              **FIED PAYMENT STABLECOIN ISSUERS.**

15    (a) APPLICATION.—

16              (1) IN GENERAL.—Each primary Federal pay-

17        ment stablecoin regulator shall—

18                  (A) receive, review, and consider for ap-

19              proval applications from any insured depository

20              institution that seeks to issue payment

21              stablecoins through a subsidiary and any

22              nonbank entity, Federal branch, or uninsured

23              national bank that is chartered by the Comp-

24              troller pursuant to title LXII of the Revised

25              Statutes, and that seeks to issue payment

60

1    stablecoins as a Federal qualified payment

2    stablecoin issuer; and

3        (B) establish a process and framework for

4    the licensing, regulation, examination, and su-

5    pervision of such entities that prioritizes the

6    safety and soundness of such entities.

7    (2) AUTHORITY TO ISSUE REGULATIONS AND

8    PROCESS APPLICATIONS.—The primary Federal pay-

9    ment stablecoin regulators shall, before the date de-

10   scribed in section 13—

11       (A) issue regulations consistent with that

12   section to carry out this section; and

13       (B) pursuant to the regulations described

14   in subparagraph (A), accept and process appli-

15   cations described in paragraph (1).

16   (3) MANDATORY APPROVAL PROCESS.—A pri-

17   mary Federal payment stablecoin regulator shall,

18   upon receipt of a substantially complete application

19   received under paragraph (1), evaluate and make a

20   determination on each application based on the cri-

21   teria established under this Act.

22   (b) EVALUATION OF APPLICATIONS.—A substantially

23   complete application received under subsection (a) shall be

24   evaluated by the primary Federal payment stablecoin reg-

25   ulator using the factors described in subsection (c).

61

1    (c) FACTORS TO BE CONSIDERED.—The factors de-
2  scribed in this subsection are the following:

3        (1) The ability of the applicant (or, in the case
4    of an applicant that is an insured depository institu-
5    tion, the subsidiary of the applicant), based on fi-
6    nancial condition and resources, to meet the require-
7    ments set forth under section 4.

8        (2) Whether an individual who has been con-
9    victed of a felony offense involving insider trading,
10   embezzlement, cybercrime, money laundering, fi-
11   nancing of terrorism, or financial fraud is serving as
12   an officer or director of the applicant.

13       (3) The competence, experience, and integrity
14   of the officers, directors, and principal shareholders
15   of the applicant, its subsidiaries, and parent com-
16   pany, including—

17           (A) the record of those officers, directors,
18       and principal shareholders of compliance with
19       laws and regulations; and

20           (B) the ability of those officers, directors,
21       and principal shareholders to fulfill any com-
22       mitments to, and any conditions imposed by,
23       their primary Federal payment stablecoin regu-
24       lator in connection with the application at issue
25       and any prior applications.

62

1    (4) Whether the redemption policy of the appli-
2    cant meets the standards under section 4(a)(1)(B).

3    (5) Any other factors established by the pri-
4    mary Federal payment stablecoin regulator that are
5    necessary to ensure the safety and soundness of the
6    permitted payment stablecoin issuer.

7    (d) TIMING FOR DECISION; GROUNDS FOR DE-
8    NIAL.—

9    (1) TIMING FOR DECISIONS ON APPLICA-
10    TIONS.—

11        (A) IN GENERAL.—Not later than 120
12        days after receiving a substantially complete ap-
13        plication under subsection (a), a primary Fed-
14        eral payment stablecoin regulator shall render a
15        decision on the application.

16        (B) SUBSTANTIALLY COMPLETE.—

17            (i) IN GENERAL.—For purposes of
18            subparagraph (A), an application shall be
19            considered substantially complete if the ap-
20            plication contains sufficient information for
21            the primary Federal payment stablecoin
22            regulator to render a decision on whether
23            the applicant satisfies the factors described
24            in subsection (c).

63

(ii) NOTIFICATION.—Not later than 30 days after receiving an application under subsection (a), a primary Federal payment stablecoin regulator shall notify the applicant as to whether the primary Federal payment stablecoin regulator considers the application to be substantially complete and, if the application is not substantially complete, the additional information the applicant shall provide in order for the application to be considered substantially complete.

(iii) MATERIAL CHANGE IN CIRCUMSTANCES.—An application considered substantially complete under this subparagraph remains substantially complete unless there is a material change in circumstances that requires the primary Federal payment stablecoin regulator to treat the application as a new application.

(2) DENIAL OF APPLICATION.—

(A) GROUNDS FOR DENIAL.—

(i) IN GENERAL.—A primary Federal payment stablecoin regulator shall only deny a substantially complete application

64

1    received under subsection (a) if the regu-
2    lator determines that the activities of the
3    applicant would be unsafe or unsound
4    based on the factors described in sub-
5    section (c).

6        (ii) ISSUANCE ON OPEN, PUBLIC, OR
7    DECENTRALIZED NETWORK NOT GROUND
8    FOR DENIAL.—The issuance of a payment
9    stablecoin on an open, public, or decentral-
10   ized network shall not be a valid ground
11   for denial of an application received under
12   subsection (a).

13       (B) EXPLANATION REQUIRED.—If a pri-
14   mary Federal payment stablecoin regulator de-
15   nies a complete application received under sub-
16   section (a), not later than 30 days after the
17   date of such denial, the regulator shall provide
18   the applicant with written notice explaining the
19   denial with specificity, including all findings
20   made by the regulator with respect to all identi-
21   fied material shortcomings in the application,
22   including actionable recommendations on how
23   the applicant could address the identified mate-
24   rial shortcomings.

65

1    (C) OPPORTUNITY FOR HEARING; FINAL

2    DETERMINATION.—

3        (i) IN GENERAL.—Not later than 30

4        days after the date of receipt of any notice

5        of the denial of an application under this

6        section, the applicant may request, in writ-

7        ing, an opportunity for a written or oral

8        hearing before the primary Federal pay-

9        ment stablecoin regulator to appeal the de-

10        nial.

11        (ii) TIMING.—Upon receipt of a timely

12        request under clause (i), the primary Fed-

13        eral payment stablecoin regulator shall no-

14        tice a time (not later than 30 days after

15        the date of receipt of the request) and

16        place at which the applicant may appear,

17        personally or through counsel, to submit

18        written materials or provide oral testimony

19        and oral argument.

20        (iii) FINAL DETERMINATION.—Not

21        later than 60 days after the date of a hear-

22        ing under this subparagraph, the applica-

23        ble primary Federal payment stablecoin

24        regulator shall notify the applicant of a

25        final determination, which shall contain a

66

1　　　　　　statement of the basis for that determina-
2　　　　　　tion, with specific findings.

3　　　　　　　　　(iv) NOTICE IF NO HEARING.—If an
4　　　　　　applicant does not make a timely request
5　　　　　　for a hearing under this subparagraph, the
6　　　　　　primary Federal payment stablecoin regu-
7　　　　　　lator shall notify the applicant, not later
8　　　　　　than 10 days after the date by which the
9　　　　　　applicant may request a hearing under this
10　　　　　　subparagraph, in writing, that the denial
11　　　　　　of the application is a final determination
12　　　　　　of the primary Federal payment stablecoin
13　　　　　　regulator.

14　　　　(3) FAILURE TO RENDER A DECISION.—If a
15　　　primary Federal payment stablecoin regulator fails
16　　　to render a decision on a complete application within
17　　　the time period specified in paragraph (1), the appli-
18　　　cation shall be deemed approved.

19　　　　(4) RIGHT TO REAPPLY.—The denial of an ap-
20　　　plication under this section shall not prohibit the ap-
21　　　plicant from filing a subsequent application.

22　　(e) REPORTS ON PENDING APPLICATIONS.—Each
23　primary Federal payment stablecoin regulator shall—

24　　　　(1) notify Congress upon beginning to process
25　　　applications under this Act; and

67

1          (2) annually report to Congress on the applica-
2     tions that have been pending for 180 days or more
3     since the date the initial application was filed and
4     for which the applicant has been informed that the
5     application remains incomplete, including docu-
6     mentation on the status of such applications and
7     why such applications have not yet been approved.

8     (f) SAFE HARBOR FOR PENDING APPLICATIONS.—
9  The primary Federal payment stablecoin regulators may
10 waive the application of the requirements of this Act for
11 a period not to exceed 12 months beginning on the effec-
12 tive date of this Act, with respect to—

13         (1) a subsidiary of an insured depository insti-
14    tution, if the insured depository institution has an
15    application pending for the subsidiary to become a
16    permitted payment stablecoin issuer on that effective
17    date; or

18         (2) a Federal qualified payment stablecoin
19    issuer with a pending application on that effective
20    date.

21    (g) RULEMAKING.—Consistent with section 13, the
22 primary Federal payment stablecoin regulators shall issue
23 rules necessary for the regulation of the issuance of pay-
24 ment stablecoins, but may not impose requirements in ad-
25 dition to the requirements specified under section 4.

68

1    (h) RELATION TO OTHER LICENSING REQUIRE-
2  MENTS.—The provisions of this section supersede and pre-
3  empt any State requirement for a charter, license, or other
4  authorization to do business with respect to a Federal
5  qualified payment stablecoin issuer or subsidiary of an in-
6  sured depository institution or credit union that is ap-
7  proved under this section to be a permitted payment
8  stablecoin issuer. Nothing in this subsection shall preempt
9  or supersede the authority of a State to charter, license,
10  supervise, or regulate an insured depository institution or
11  credit union chartered in such State or to supervise a sub-
12  sidiary of such insured depository institution or credit
13  union that is approved under this section to be a permitted
14  payment stablecoin issuer.

15    (i) CERTIFICATION REQUIRED.—

16      (1) IN GENERAL.—Not later than 180 days
17      after the approval of an application, and on an an-
18      nual basis thereafter, each permitted payment
19      stablecoin issuer shall submit to its primary Federal
20      payment stablecoin regulator, or in the case of a
21      State qualified payment stablecoin issuer its State
22      payment stablecoin regulator, a certification that the
23      issuer has implemented anti-money laundering and
24      economic sanctions compliance programs that are
25      reasonably designed to prevent the permitted pay-

69

1    ment stablecoin issuer from facilitating money laun-
2    dering, in particular, facilitating money laundering
3    for cartels and organizations designated as foreign
4    terrorist organizations under section 219 of the Im-
5    migration and Nationality Act (8 U.S.C. 1189) and
6    the financing of terrorist activities, consistent with
7    the requirements of this Act.

8        (2) AVAILABILITY OF CERTIFICATIONS.—Fed-
9    eral payment stablecoin regulators and State pay-
10   ment stablecoin regulators shall make certifications
11   described in paragraph (1) available to the Secretary
12   of Treasury upon request.

13       (3) PENALTIES.—

14           (A) APPROVAL REVOCATION.—The pri-
15       mary Federal payment stablecoin regulator or
16       State payment stablecoin regulator of a per-
17       mitted payment stablecoin issuer that does not
18       submit a certification pursuant to paragraph
19       (1) may revoke the approval of the payment
20       stablecoin issuer under this section.

21           (B) CRIMINAL PENALTY.—

22               (i) IN GENERAL.—Any person that
23           knowingly submits a certification pursuant
24           to paragraph (1) that is false shall be sub-
25           ject to the criminal penalties set forth

70

1       under section 1001 of title 18, United
2       States Code.

3                   (ii) REFERRAL TO ATTORNEY GEN-
4             ERAL.—If a Federal payment stablecoin
5             regulator or State payment stablecoin reg-
6             ulator has reason to believe that any per-
7             son has knowingly violated paragraph (1),
8             the applicable regulator may refer the mat-
9             ter to the Attorney General or to the attor-
10            ney general of the payment stablecoin
11            issuer's host State.

12  **SEC. 6. SUPERVISION AND ENFORCEMENT WITH RESPECT**
13           **TO   FEDERAL   QUALIFIED   PAYMENT**
14           **STABLECOIN ISSUERS AND SUBSIDIARIES OF**
15           **INSURED DEPOSITORY INSTITUTIONS.**

16  (a) SUPERVISION.—

17      (1) IN GENERAL.—Each permitted payment
18  stablecoin issuer that is not a State qualified pay-
19  ment stablecoin issuer with a payment stablecoin
20  with a consolidated total outstanding issuance of less
21  than $10,000,000,000 shall be subject to supervision
22  by the appropriate primary Federal payment
23  stablecoin regulator.

24      (2) SUBMISSION OF REPORTS.—Each permitted
25  payment stablecoin issuer described in paragraph (1)

1    shall, upon request, submit to the appropriate pri-

2    mary Federal payment stablecoin regulator a report

3    on—

4          (A) the financial condition of the permitted

5        payment stablecoin issuer;

6          (B) the systems of the permitted payment

7        stablecoin issuer for monitoring and controlling

8        financial and operating risks;

9          (C) compliance by the permitted payment

10        stablecoin issuer (and any subsidiary thereof)

11        with this Act; and

12          (D) the compliance of the Federal qualified

13        nonbank payment stablecoin issuer with the re-

14        quirements of the Bank Secrecy Act and with

15        laws authorizing the imposition of sanctions

16        and implemented by the Secretary of the Treas-

17        ury.

18    (3) EXAMINATIONS.—The appropriate primary

19    Federal payment stablecoin regulator shall examine

20    a permitted payment stablecoin issuer described in

21    paragraph (1) in order to assess—

22          (A) the nature of the operations and finan-

23        cial condition of the permitted payment

24        stablecoin issuer;

1        (B) the financial, operational, techno-
2    logical, and other risks associated within the
3    permitted payment stablecoin issuer that may
4    pose a threat to—

5            (i) the safety and soundness of the
6        permitted payment stablecoin issuer; or

7            (ii) the stability of the financial sys-
8        tem of the United States; and

9        (C) the systems of the permitted payment
10    stablecoin issuer for monitoring and controlling
11    the risks described in subparagraph (B).

12    (4) REQUIREMENTS FOR EFFICIENCY.—

13        (A) USE OF EXISTING REPORTS.—In su-
14    pervising and examining a permitted payment
15    stablecoin issuer under this subsection, a pri-
16    mary Federal payment stablecoin regulator
17    shall, to the fullest extent possible, use existing
18    reports and other supervisory information.

19        (B) AVOIDANCE OF DUPLICATION.—A pri-
20    mary Federal payment stablecoin regulator
21    shall, to the fullest extent possible, avoid dupli-
22    cation of examination activities, reporting re-
23    quirements, and requests for information in
24    carrying out this subsection with respect to a
25    permitted payment stablecoin issuer.

73

1          (C) CONSIDERATION OF BURDEN.—A pri-
2       mary Federal payment stablecoin regulator
3       shall, with respect to any examination or re-
4       quest for the submission of a report under this
5       subsection, only request examinations and re-
6       ports at a cadence and in a format that is simi-
7       lar to that required for similarly situated enti-
8       ties regulated by the primary Federal payment
9       stablecoin regulator.

10  (b) ENFORCEMENT.—

11       (1) SUSPENSION OR REVOCATION OF REGISTRA-
12    TION.—The primary Federal payment stablecoin
13    regulator of a permitted payment stablecoin issuer
14    that is not a State qualified payment stablecoin
15    issuer with a payment stablecoin with a consolidated
16    total     outstanding     issuance     of     less     than
17    $10,000,000,000 may prohibit the permitted pay-
18    ment     stablecoin     issuer     from     issuing     payment
19    stablecoins,     if     the     primary     Federal     payment
20    stablecoin regulator determines that such permitted
21    payment stablecoin issuer, or an institution-affiliated
22    party of the permitted payment stablecoin issuer is
23    willfully or recklessly violating or has willfully or
24    recklessly violated—

74

1     (A) this Act or any regulation or order

2     issued under this Act; or

3     (B) any condition imposed in writing by

4     the primary Federal payment stablecoin regu-

5     lator in connection with a written agreement

6     entered into between the permitted payment

7     stablecoin issuer and the primary Federal pay-

8     ment stablecoin regulator.

9     (2) CEASE-AND-DESIST PROCEEDINGS.—If the

10    primary Federal payment stablecoin regulator of a

11    permitted payment stablecoin issuer that is not a

12    State qualified payment stablecoin issuer with a pay-

13    ment stablecoin with a consolidated total out-

14    standing issuance of less than $10,000,000,000 has

15    reasonable cause to believe that the permitted pay-

16    ment stablecoin issuer or any institution-affiliated

17    party of the permitted payment stablecoin issuer is

18    violating, has violated, or is attempting to violate

19    this Act, any regulation or order issued under this

20    Act, or any written agreement entered into with the

21    primary Federal payment stablecoin regulator or

22    condition imposed in writing by the primary Federal

23    payment stablecoin regulator in connection with any

24    application or other request, the primary Federal

25    payment stablecoin regulator may, by provisions that

75

are mandatory or otherwise, order the permitted
payment stablecoin issuer or institution-affiliated
party of the permitted payment stablecoin issuer
to—

    (A) cease and desist from such violation or
practice; or

    (B) take affirmative action to correct the
conditions resulting from any such violation or
practice.

(3) REMOVAL AND PROHIBITION AUTHORITY.—
The primary Federal payment stablecoin regulator
of a permitted payment stablecoin issuer that is not
a State qualified payment stablecoin issuer may re-
move an institution-affiliated party of the permitted
payment stablecoin issuer from the position or office
of that institution-affiliated party or prohibit further
participation in the affairs of the permitted payment
stablecoin issuer or of all such permitted payment
stablecoin issuers by that institution-affiliated party,
if the primary Federal payment stablecoin regulator
determines that—

    (A) the institution-affiliated party has
knowingly committed a violation or attempted
violation of this Act or any regulation or order
issued under this Act; or

76

1          (B) the institution-affiliated party has
2      knowingly committed a violation of any provi-
3      sion of subchapter II of chapter 53 of title 31,
4      United States Code.
5      (4) PROCEDURES.—
6          (A) IN GENERAL.—If a primary Federal
7      payment stablecoin regulator identifies a viola-
8      tion or attempted violation of this Act or makes
9      a determination under paragraph (1), (2), or
10     (3), the primary Federal payment stablecoin
11     regulator shall comply with the procedures set
12     forth in subsections (b) and (e) of section 8 of
13     the Federal Deposit Insurance Act (12 U.S.C.
14     1818) or subsections (e) and (g) of section 206
15     the Federal Credit Union Act (12 U.S.C.
16     1786(e) and (g)), as applicable.
17         (B) JUDICIAL REVIEW.—A person ag-
18     grieved by a final action under this subsection
19     may obtain judicial review of such action exclu-
20     sively as provided in section 8(h) of the Federal
21     Deposit Insurance Act (12 U.S.C. 1818(h)) or
22     section 206(j) of the Federal Credit Union Act
23     (12 U.S.C. 1786(j)), as applicable.
24         (C) INJUNCTION.—A primary Federal pay-
25     ment stablecoin regulator may, at the discretion

77

1 of the regulator, follow the procedures provided

2 in section 8(i)(1) of the Federal Deposit Insur-

3 ance Act (12 U.S.C. 1818(i)(1)) or section

4 206(k)(1) of the Federal Credit Union Act (12

5 U.S.C. 1786(k)(1)), as applicable, for judicial

6 enforcement of any effective and outstanding

7 notice or order issued under this subsection.

8 (D) TEMPORARY CEASE-AND-DESIST PRO-

9 CEEDINGS.—If a primary Federal payment

10 stablecoin regulator determines that a violation

11 or attempted violation of this Act or an action

12 with respect to which a determination was made

13 under paragraph (1), (2), or (3), or the con-

14 tinuation thereof, is likely to cause insolvency or

15 significant dissipation of assets or earnings of a

16 permitted payment stablecoin issuer, or is likely

17 to weaken the condition of the permitted pay-

18 ment stablecoin issuer or otherwise prejudice

19 the interests of the customers of the permitted

20 payment stablecoin issuer prior to the comple-

21 tion of the proceedings conducted under this

22 paragraph, the primary Federal payment

23 stablecoin regulator may follow the procedures

24 provided in section 8(c) of the Federal Deposit

25 Insurance Act (12 U.S.C. 1818(c)) or section

78

206(f) of the Federal Credit Union Act (12
U.S.C. 1786(f)), as applicable, to issue a tem-
porary cease and desist order.

(5) CIVIL MONEY PENALTIES.—Unless other-
wise specified in this Act, the civil money penalties
for violations of this Act consist of the following:

(A) FAILURE TO BE APPROVED.—Any per-
son that issues a United States dollar-denomi-
nated payment stablecoin in violation of section
3, and any institution-affiliated party of such a
person who knowingly participates in issuing
such a payment stablecoin, shall be liable for a
civil penalty of not more than $100,000 for
each day during which such payment
stablecoins are issued.

(B) FIRST TIER.—Except as provided in
subparagraph (A), a permitted payment
stablecoin issuer or institution-affiliated party
of such permitted payment stablecoin issuer
that materially violates this Act or any regula-
tion or order issued under this Act, or that ma-
terially violates any condition imposed in writ-
ing by the appropriate primary Federal pay-
ment stablecoin regulator in connection with a
written agreement entered into between the per-

79

mitted payment stablecoin issuer and that pri-
mary Federal payment stablecoin regulator,
shall be liable for a civil penalty of not more
than $100,000 for each day during which the
violation continues.

(C) SECOND TIER.—Except as provided in
subparagraph (A), and in addition to the pen-
alties described in subparagraph (B), a per-
mitted payment stablecoin issuer or institution-
affiliated party of such permitted payment
stablecoin issuer who knowingly participates in
a violation of any provision of this Act, or any
regulation or order issued under this Act, shall
be liable for a civil penalty of not more than an
additional $100,000 for each day during which
the violation continues.

(D) PROCEDURE.—Any penalty imposed
under this paragraph may be assessed and col-
lected by the appropriate primary Federal pay-
ment stablecoin regulator pursuant to the pro-
cedures set forth in section 8(i)(2) of the Fed-
eral Deposit Insurance Act (12 U.S.C.
1818(i)(2)) or section 206(k)(2) of the Federal
Credit Union Act (12 U.S.C. 1786(k)(2)), as
applicable.

80

1    (E) NOTICE AND ORDERS AFTER SEPARA-

2    TION FROM SERVICE.—The resignation, termi-

3    nation of employment or participation, or sepa-

4    ration of an institution-affiliated party (includ-

5    ing a separation caused by the closing of a per-

6    mitted payment stablecoin issuer) shall not af-

7    fect the jurisdiction and authority of a primary

8    Federal payment stablecoin regulator to issue

9    any notice or order and proceed under this sub-

10    section against any such party, if such notice or

11    order is served before the end of the 6-year pe-

12    riod beginning on the date on which such party

13    ceased to be an institution-affiliated party with

14    respect to such permitted payment stablecoin

15    issuer.

16    (6) NON-APPLICABILITY TO A STATE QUALI-

17    FIED PAYMENT STABLECOIN ISSUER.—Notwith-

18    standing anything in this subsection to the contrary,

19    this subsection shall not apply to a State qualified

20    payment stablecoin issuer.

21    (c) RULE OF CONSTRUCTION.—Nothing in this Act

22    may be construed to modify or otherwise affect any right

23    or remedy under any Federal consumer financial law, in-

24    cluding 12 U.S.C. 5515 and 15 U.S.C. 41 et seq.

81

1 **SEC. 7. STATE QUALIFIED PAYMENT STABLECOIN ISSUERS.**

2  (a) IN GENERAL.—A State payment stablecoin regu-

3 lator shall have supervisory, examination, and enforcement

4 authority over all State qualified payment stablecoin

5 issuers of such State.

6  (b) AUTHORITY TO ENTER INTO AGREEMENTS

7 WITH THE BOARD.—A State payment stablecoin regu-

8 lator may enter into a memorandum of understanding

9 with the Board, by mutual agreement, under which the

10 Board may participate in the supervision, examination,

11 and enforcement of this Act with respect to the State

12 qualified payment stablecoin issuers of such State.

13  (c) SHARING OF INFORMATION.—A State payment

14 stablecoin regulator and the Board shall share information

15 on an ongoing basis with respect to a State qualified pay-

16 ment stablecoin issuer of such State, including a copy of

17 the initial application and any accompanying documents.

18  (d) RULEMAKING.—A State payment stablecoin regu-

19 lator may issue orders and rules under section 4 applicable

20 to State qualified payment stablecoin issuers to the same

21 extent as the primary Federal payment stablecoin regu-

22 lators issue orders and rules under section 4 applicable

23 to permitted payment stablecoin issuers that are not State

24 qualified payment stablecoin issuers.

25  (e) ENFORCEMENT AUTHORITY IN UNUSUAL AND

26 EXIGENT CIRCUMSTANCES.—

82

1    (1) BOARD.—

2    (A) IN GENERAL.—Subject to subpara-
3    graph (C), under unusual and exigent cir-
4    cumstances that the Board determines to exist,
5    the Board may, after not less than 48 hours'
6    prior written notice to the applicable State pay-
7    ment stablecoin regulator, take an enforcement
8    action against a State qualified payment
9    stablecoin issuer or an institution-affiliated
10   party of such issuer for violations of this Act
11   during such unusual and exigent circumstances.

12   (B) RULEMAKING.—Consistent with sec-
13   tion 13, the Board shall issue rules to set forth
14   the unusual and exigent circumstances in which
15   the Board may act under this paragraph.

16   (C) LIMITATIONS.—If, after unusual and
17   exigent circumstances are determined to exist
18   pursuant to subparagraph (A), the Board deter-
19   mines that there is reasonable cause to believe
20   that the continuation by a State qualified pay-
21   ment stablecoin issuer of any activity con-
22   stitutes a serious risk to the financial safety,
23   soundness, or stability of the State qualified
24   payment stablecoin issuer, the Board may im-
25   pose such restrictions as the Board determines

83

1    to be necessary to address such risk during

2    such unusual and exigent circumstances, which

3    may include limitations on redemptions of pay-

4    ment stablecoins, and which shall be issued in

5    the form of a directive, with the effect of a

6    cease and desist order that has become final, to

7    the State qualified payment stablecoin issuer

8    and any of its affiliates, limiting—

9         (i) transactions between the State

10        qualified payment stablecoin issuer, a hold-

11        ing company, and the subsidiaries or affili-

12        ates of either the State qualified payment

13        stablecoin issuer or the holding company;

14        and

15        (ii) any activities of the State quali-

16        fied payment stablecoin issuer that might

17        create a serious risk that the liabilities of

18        a holding company and the affiliates of the

19        holding company may be imposed on the

20        State qualified payment stablecoin issuer.

21    (D) REVIEW OF DIRECTIVE.—

22        (i) ADMINISTRATIVE REVIEW.—

23            (I) IN GENERAL.—After a direc-

24            tive described in subparagraph (C) is

25            issued, the applicable State qualified

84

payment stablecoin issuer, or any in-
stitution-affiliated party of the State
qualified payment stablecoin issuer
subject to the directive, may object
and present to the Board, in writing,
the reasons why the directive should
be modified or rescinded.

(II) AUTOMATIC LAPSE OF DI-
RECTIVE.—If, after 10 days after the
receipt of a response described in sub-
clause (I), the Board does not affirm,
modify, or rescind the directive, the
directive shall automatically lapse.

(ii) JUDICIAL REVIEW.—

(I) IN GENERAL.—If the Board
affirms or modifies a directive pursu-
ant to clause (i), any affected party
may immediately thereafter petition
the United States district court for
the district in which the main office of
the affected party is located, or in the
United States District Court for the
District of Columbia, to stay, modify,
terminate, or set aside the directive.

85

(II) RELIEF FOR EXTRAOR-
DINARY CAUSE.—Upon a showing of
extraordinary cause, an affected party
may petition for relief under subclause
(I) without first pursuing or exhaust-
ing the administrative remedies under
clause (i).

(2) COMPTROLLER.—

(A) IN GENERAL.—Subject to subpara-
graph (C), under unusual and exigent cir-
cumstances determined to exist by the Comp-
troller, the Comptroller shall, after not less
than 48 hours' prior written notice to the appli-
cable State payment stablecoin regulator, take
an enforcement action against a State qualified
payment stablecoin issuer that is a nonbank en-
tity for violations of this Act.

(B) RULEMAKING.—Consistent with sec-
tion 13, the Comptroller shall issue rules to set
forth the unusual and exigent circumstances in
which the Comptroller may act under this para-
graph.

(C) LIMITATIONS.—If, after unusual and
exigent circumstances are determined to exist
under subparagraph (A), the Comptroller deter-

86

1    mines that there is reasonable cause to believe

2    that the continuation of any activity by a State

3    qualified payment stablecoin issuer that is a

4    nonbank entity constitutes a serious risk to the

5    financial safety, soundness, or stability of the

6    State qualified payment stablecoin issuer that is

7    a nonbank entity, the Comptroller shall impose

8    such restrictions as the Comptroller determines

9    to be necessary to address such risk during

10   such unusual and exigent circumstances, which

11   may include limitations on redemption of pay-

12   ment stablecoins, and which shall be issued in

13   the form of a directive, with the effect of a

14   cease and desist order that has become final, to

15   the State qualified payment stablecoin issuer

16   that is a nonbank entity and any of its affili-

17   ates, limiting—

18            (i)  transactions  between  the  State

19        qualified payment stablecoin issuer, a hold-

20        ing company, and the subsidiaries or affili-

21        ates of either the State qualified payment

22        stablecoin issuer or the holding company;

23        and

24            (ii) any activities of the State quali-

25        fied payment stablecoin issuer that might

87

1    create a serious risk that the liabilities of
2    a holding company and the affiliates of the
3    holding company may be imposed on the
4    State qualified payment stablecoin issuer.
5    (D) REVIEW OF DIRECTIVE.—
6        (i) ADMINISTRATIVE REVIEW.—
7            (I) IN GENERAL.—After a direc-
8            tive described in subparagraph (C) is
9            issued, the applicable Federal quali-
10           fied payment stablecoin issuer, or any
11           institution-affiliated party of the Fed-
12           eral    qualified    payment    stablecoin
13           issuer subject to the directive, may
14           object and present to the Comptroller,
15           in writing, the reasons that the direc-
16           tive should be modified or rescinded.
17           (II) AUTOMATIC LAPSE OF DI-
18           RECTIVE.—If, after 10 days after the
19           receipt of a response described in sub-
20           clause (I), the Comptroller does not
21           affirm, modify, or rescind the direc-
22           tive, the directive shall automatically
23           lapse.
24       (ii) JUDICIAL REVIEW.—

88

1              (I) In general.—If the Comp-
2         troller affirms or modifies a directive
3         pursuant to clause (i), any affected
4         party may immediately thereafter pe-
5         tition the United States district court
6         for the district in which the main of-
7         fice of the affected party is located, or
8         in the United States District Court
9         for the District of Columbia, to stay,
10        modify, terminate, or set aside the di-
11        rective.

12              (II) Relief for extraor-
13        dinary cause.—Upon a showing of
14        extraordinary cause, an affected party
15        may petition for relief under subclause
16        (I) without first pursuing or exhaust-
17        ing the administrative remedies under
18        clause (i).

19    (f) Effect on State Law.—

20        (1) Host state law.—Notwithstanding any

21    other provision of law, the laws of a host State, in-

22    cluding laws relating to consumer protection, shall

23    only apply to the activities conducted in the host

24    State by an out-of-State State qualified payment

25    stablecoin issuer to the same extent as such laws

89

1    apply to the activities conducted in the host State by

2    an out-of-State Federal qualified payment stablecoin

3    issuer.

4    (2) HOME STATE LAW.—If any host State law

5    is determined not to apply under paragraph (1), the

6    laws of the home State of the State qualified pay-

7    ment stablecoin issuer shall govern the activities of

8    the permitted payment stablecoin issuer conducted

9    in the host State.

10    (3) APPLICABILITY.—

11    (A) IN GENERAL.—This subsection shall

12    only apply to an out-of-State State qualified

13    payment stablecoin issuer chartered, licensed,

14    or otherwise authorized to do business by a

15    State that has a certification in place pursuant

16    to section 4(c) of this Act.

17    (B) EXCLUSION.—The laws applicable to

18    an out-of-State qualified payment stablecoin

19    issuer under paragraph (1) exclude host State

20    laws governing the chartering, licensure, or

21    other authorization to do business in the host

22    State as a permitted payment stablecoin issuer

23    pursuant to this Act.

24    (4) RULE OF CONSTRUCTION.—Except for

25    State laws relating to the chartering, licensure, or

90

1     other authorization to do business as a permitted
2     payment stablecoin issuer, nothing in this Act shall
3     preempt State consumer protection laws, including
4     common law, and the remedies available thereunder.

**SEC. 8. ANTI-MONEY LAUNDERING PROTECTIONS.**

6     (a) PAYMENT STABLECOINS ISSUED BY A FOREIGN
7  PAYMENT STABLECOIN ISSUER.—

8          (1) IN GENERAL.—A payment stablecoin that is
9     issued by a foreign payment stablecoin issuer may
10     not be publicly offered, sold, or otherwise made
11     available for trading in the United States by a dig-
12     ital asset service provider unless the foreign payment
13     stablecoin issuer has the technological capability to
14     comply and complies with the terms of any lawful
15     order.

16          (2) ENFORCEMENT.—

17               (A) AUTHORITY.—The Secretary of the
18          Treasury shall have the authority to designate
19          any foreign issuer that publicly offers, sells, or
20          otherwise makes available a payment stablecoin
21          in violation of paragraph (1) as noncompliant.

22               (B) DESIGNATION AS NONCOMPLIANT.—
23          Not later than 30 days after the Department of
24          the Treasury has identified a foreign payment
25          stablecoin issuer of any payment stablecoin

91

1     trading in the United States that is in violation

2     of paragraph (1), the Secretary of the Treas-

3     ury, in coordination with relevant Federal agen-

4     cies, may, pursuant to the authority under sub-

5     paragraph (A), designate the foreign payment

6     stablecoin issuer as noncompliant and notify the

7     foreign payment stablecoin issuer in writing of

8     the designation.

9     (3) APPEAL.—A determination of noncompli-

10    ance under this subsection is subject to judicial re-

11    view in the United States Court of Appeals for the

12    District of Columbia Circuit.

13    (b) PUBLICATION OF DESIGNATION; PROHIBITION

14    ON SECONDARY TRADING.—

15    (1) IN GENERAL.—If a foreign payment

16    stablecoin issuer does not come into compliance with

17    the lawful order within 30 days from the date of

18    issuance of the written notice described in subsection

19    (a), except as provided in subsection (c), the Sec-

20    retary of the Treasury shall—

21        (A) publish the determination of non-

22        compliance in the Federal Register, including a

23        statement on the failure of the foreign payment

24        stablecoin issuer to comply with the lawful

25        order after the written notice; and

(B) issue a notification in the Federal Register prohibiting digital asset service providers from facilitating secondary trading of payment stablecoins issued by the foreign payment stablecoin issuer in the United States.

(2) EFFECTIVE DATE OF PROHIBITION.—The prohibition on facilitation of secondary trading described in paragraph (1) shall become effective on the date that is 30 days after the date of issue of notification of the prohibition in the Federal Register.

(3) EXPIRATION OF PROHIBITION.—

(A) IN GENERAL.—The prohibition on facilitation of secondary trading described in paragraph (1)(B) shall expire upon the Secretary of the Treasury's determination that the foreign payment stablecoin issuer is no longer noncompliant.

(B) RULEMAKING.—Consistent with section 13, the Secretary of the Treasury shall specify the criteria that a noncompliant foreign issuer must meet for the Secretary of the Treasury to determine that the foreign payment stablecoin issuer is no longer noncompliant.

93

1          (C) PUBLICATION.—Upon a determination

2      under subparagraph (A), the Secretary of the

3      Treasury shall publish the determination in the

4      Federal Register, including a statement detail-

5      ing how the foreign payment stablecoin issuer

6      has met the criteria described in subparagraph

7      (B).

8      (4) CIVIL MONETARY PENALTIES.—The Sec-

9   retary of the Treasury may impose a civil monetary

10   penalty as follows:

11          (A) DIGITAL ASSET SERVICE PRO-

12      VIDERS.—Any digital asset service provider that

13      knowingly violates a prohibition under para-

14      graph (1)(B) shall be subject to a civil mone-

15      tary penalty of not more than $100,000 per vio-

16      lation per day.

17          (B) FOREIGN PAYMENT STABLECOIN

18      ISSUERS.—Any foreign payment stablecoin

19      issuer that knowingly continues to publicly offer

20      a payment stablecoin in the United States after

21      publication of the determination of noncompli-

22      ance under paragraph (1)(A) shall be subject to

23      a civil monetary penalty of not more than

24      $1,000,000 per violation per day, and the Sec-

25      retary of the Treasury may seek an injunction

94

1    in a district court of the United States to bar
2    the foreign payment stablecoin issuer from en-
3    gaging in financial transactions in the United
4    States or with United States persons.

5         (C) DETERMINATION OF THE NUMBER OF
6    VIOLATIONS.—For purposes of determining the
7    number of violations for which to impose a pen-
8    alty under subparagraph (A) or (B), separate
9    acts of noncompliance are a single violation
10   when the acts are the result of a common or
11   substantially overlapping originating cause.
12   Notwithstanding the foregoing, the Secretary of
13   Treasury may determine that multiple acts of
14   noncompliance constitute separate violations if
15   such acts were the result of gross negligence, a
16   reckless disregard for, or a pattern of indiffer-
17   ence to, money laundering, financing of ter-
18   rorism, or sanctions evasion requirements.

19        (D) COMMENCEMENT OF CIVIL ACTIONS.—
20   The Secretary of the Treasury may commence
21   a civil action against a foreign payment
22   stablecoin issuer in a district court of the
23   United States to—

24             (i) recover a civil monetary penalty as-
25        sessed under subparagraph (A) or (B);

95

1              (ii) seek an injunction to bar the for-
2         eign payment stablecoin issuer from engag-
3         ing in financial transactions in the United
4         States or with United States persons; or
5              (iii) seek an injunction to stop a dig-
6         ital asset service provider from offering on
7         the platform of the digital asset service
8         provider payment stablecoins issued by the
9         foreign payment stablecoin issuer.
10    (c) WAIVER AND LICENSING AUTHORITY EXEMP-
11 TIONS.—
12         (1) IN GENERAL.—The Secretary of the Treas-
13    ury may offer a waiver, general license, or specific
14    license to any United States person engaging in sec-
15    ondary trading described in subsection (b)(1)(B) on
16    a case-by-case basis if the Secretary determines
17    that—
18              (A) prohibiting secondary trading would
19         adversely affect the financial system of the
20         United States; or
21              (B) the foreign payment stablecoin issuer
22         is taking tangible steps to remedy the failure to
23         comply with the lawful order that resulted in
24         the noncompliance determination under sub-
25         section (a).

96

1        (2) NATIONAL SECURITY WAIVER.—The Sec-
2    retary of the Treasury, in consultation with the Di-
3    rector of National Intelligence and the Secretary of
4    State, may waive the application of the secondary
5    trading restrictions under subsection (b)(1)(B) if the
6    Secretary of the Treasury determines that the waiv-
7    er is in the national security interest of the United
8    States.

9        (3) WAIVER FOR INTELLIGENCE AND LAW EN-
10    FORCEMENT ACTIVITIES.—The head of a depart-
11    ment or agency may waive the application of this
12    section with respect to—

13            (A) activities subject to the reporting re-
14        quirements under title V of the National Secu-
15        rity Act of 1947 (50 U.S.C. 3091 et seq.), or
16        any authorized intelligence activities of the
17        United States; or

18            (B) activities necessary to carry out or as-
19        sist law enforcement activity of the United
20        States.

21        (4) REPORT REQUIRED.—Not later than 7 days
22    after issuing a waiver or a license under paragraph
23    (1), (2), or (3), the Secretary of the Treasury shall
24    submit to the chairs and ranking members of the
25    Committee on Banking, Housing, and Urban Affairs

97

1    of the Senate and the Committee on Financial Serv-
2    ices of the House of Representatives, a report, which
3    may include a classified annex, if applicable, includ-
4    ing the text of the waiver or license, as well as the
5    facts and circumstances justifying the waiver deter-
6    mination, and provide a briefing on the report.

7    (d) RULE OF CONSTRUCTION.—Nothing in this Act
8    shall be construed as altering the existing authority of the
9    Secretary of the Treasury to block, restrict, or limit trans-
10    actions involving payment stablecoins that reference or are
11    denominated in United States dollars that are subject to
12    the jurisdiction of the United States.

**SEC. 9. ANTI-MONEY LAUNDERING INNOVATION.**

14    (a) PUBLIC COMMENT.—Beginning on the date that
15    is 30 days after the date of enactment of this Act, and
16    for a period of 60 days thereafter, the Secretary of the
17    Treasury shall seek public comment to identify innovative
18    or novel methods, techniques, or strategies that regulated
19    financial institutions use, or have the potential to use, to
20    detect illicit activity, such as money laundering, involving
21    digital assets, including comments with respect to—

22            (1) application program interfaces;

23            (2) artificial intelligence;

24            (3) digital identify verification; and

98

1    (4) use of blockchain technology and moni-

2    toring.

3    (b) TREASURY RESEARCH.—

4        (1) IN GENERAL.—Upon completion of the pub-

5    lic comment period described in subsection (a), the

6    Secretary of the Treasury shall conduct research on

7    the innovative or novel methods, techniques, or

8    strategies that regulated financial institutions use,

9    or have the potential to use, to detect illicit activity,

10    such as money laundering, involving digital assets

11    that were identified in such public comment period.

12        (2) RESEARCH FACTORS.—With respect to each

13    innovative or novel method, technique, or strategy

14    described in paragraph (1), the Financial Crimes

15    Enforcement Network shall evaluate and consider

16    the following factors against existing methods, tech-

17    niques, or strategies:

18            (A) Improvements in the ability of finan-

19        cial institutions to detect illicit activity involving

20        digital assets.

21            (B) Costs to regulated financial institu-

22        tions.

23            (C) The amount and sensitivity of informa-

24        tion that is collected or reviewed.

1          (D) Privacy risks associated with the infor-
2      mation that is collected or reviewed.

3          (E) Operational challenges and efficiency
4      considerations.

5          (F) Cybersecurity risks.

6          (G) Effectiveness of methods, techniques,
7      or strategies at mitigating illicit finance.

8    (c) TREASURY RISK ASSESSMENT.—As part of the
9 national strategy for combating terrorist and other illicit
10 financing required under sections 261 and 262 of the
11 Countering America's Adversaries Through Sanctions Act
12 (Public Law 115–44; 131 Stat. 934), the Secretary of the
13 Treasury shall consider—

14         (1) the source of illicit activity, such as money
15     laundering and sanctions evasion involving digital
16     assets;

17         (2) the effectiveness of and gaps in existing
18     methods, techniques, and strategies used by regu-
19     lated financial institutions in detecting illicit activity,
20     such as money laundering, involving digital assets;

21         (3) the impact of existing regulatory frame-
22     works on the use and development of innovative
23     methods, techniques, or strategies by regulated fi-
24     nancial institutions; and

100

(4) any foreign jurisdictions that pose a high risk of facilitating illicit activity through the use of digital assets to obtain fiat currency.

(d) FINCEN GUIDANCE OR RULEMAKING.—Not later than 3 years after the date of enactment of this Act, the Financial Crimes Enforcement Network shall issue public guidance and notice and comment rulemaking, based on the results of the research and risk assessments required under this section, relating to the following:

(1) The implementation of innovative or novel methods, techniques, or strategies by regulated financial institutions to detect illicit activity involving digital assets.

(2) Standards for payment stablecoin issuers to identify and report illicit activity involving the payment stablecoin of a permitted payment stablecoin issuer, including, fraud, cybercrime, money laundering, financing of terrorism, sanctions evasion, or insider trading.

(3) Standards for payment stablecoin issuers' systems and practices to monitor transactions on blockchains, digital asset mixing services, tumblers, or other similar services that mix payment stablecoins in such a way as to make such trans-

101

1   action or the identity of the transaction parties less
2   identifiable.

3       (4) Tailored risk management standards for fi-
4   nancial institutions interacting with decentralized fi-
5   nance protocols.

6   (e) RECOMMENDATIONS AND REPORT TO CON-
7   GRESS.—

8       (1) IN GENERAL.—Not later than 180 days
9       after the date of enactment of this Act, the Sec-
10      retary of the Treasury shall submit to the chairs and
11      ranking members of the Committee on Banking,
12      Housing, and Urban Affairs of the Senate and the
13      Committee on Financial Services of the House of
14      Representatives a report on—

15          (A) legislative and regulatory proposals to
16          allow regulated financial institutions to develop
17          and implement novel and innovative methods,
18          techniques, or strategies to detect illicit activity,
19          such as money laundering and sanctions eva-
20          sion, involving digital assets;

21          (B) the results of the research and risk as-
22          sessments conducted pursuant to this section;

23          (C) efforts to support the ability of finan-
24          cial institutions to implement novel and innova-
25          tive methods, techniques, or strategies to detect

102

1     illicit activity, such as money laundering and

2     sanctions evasion, involving digital assets;

3     (D) the extent to which transactions on

4     distributed ledgers, digital asset mixing serv-

5     ices, tumblers, or other similar services that

6     mix payment stablecoins in such a way as to

7     make such transaction or the identity of the

8     transaction parties less identifiable may facili-

9     tate illicit activity; and

10     (E) legislative recommendations relating to

11     the scope of the term "digital asset service pro-

12     vider" and the application of that term to de-

13     centralized finance.

14     (2) CLASSIFIED ANNEX.—A report under this

15     section may include a classified annex, if applicable.

16     (f) RULE OF CONSTRUCTION.—Nothing in this sec-

17 tion shall be construed to limit the existing authority of

18 the Secretary of the Treasury or the primary Federal pay-

19 ment stablecoin regulators to, prior to the submission of

20 a report required under this section, use existing exemp-

21 tive authorities, the no-action letter process, or rulemaking

22 authorities in a manner that encourages regulated finan-

23 cial institutions to adopt novel or innovative methods,

24 techniques, or strategies to detect illicit activity, such as

25 money laundering, involving digital assets.

103

## SEC. 10. CUSTODY OF PAYMENT STABLECOIN RESERVE AND COLLATERAL.

1    (a) IN GENERAL.—A person may only engage in the
2  business of providing custodial or safekeeping services for
3  the payment stablecoin reserve, the payment stablecoins
4  used as collateral, or the private keys used to issue per-
5  mitted payment stablecoins if the person—

6        (1) is subject to—

7             (A) supervision or regulation by a primary
8        Federal payment stablecoin regulator or a pri-
9        mary financial regulatory agency described
10        under subparagraph (B) or (C) of section 2(12)
11        of the Dodd-Frank Wall Street Reform and
12        Consumer Protection Act (12 U.S.C.
13        5301(12)); or

14            (B) supervision by a State bank super-
15        visor, as defined under section 3 of the Federal
16        Deposit Insurance Act (12 U.S.C. 1813), or a
17        State credit union supervisor, as defined under
18        section 6003 of the Anti-Money Laundering Act
19        of 2020 (31 U.S.C. 5311 note), and such State
20        bank supervisor or State credit union supervisor
21        makes available to the Board such information
22        as the Board determines necessary and relevant
23        to the categories of information under sub-
24        section (d); and

104

1       (2) complies with the requirements under sub-

2     section (b), unless such person holds such property

3     in accordance with similar requirements as required

4     by a primary Federal payment stablecoin regulator,

5     the Securities and Exchange Commission, or the

6     Commodity Futures Trading Commission.

7   (b) CUSTOMER PROPERTY REQUIREMENT.—A per-

8 son described in subsection (a) shall, with respect to other

9 property described in that subsection—

10       (1) treat and deal with the payment stablecoins,

11     private keys, cash, and other property of a person

12     for whom or on whose behalf the person described

13     in that subsection receives, acquires, or holds pay-

14     ment stablecoins, private keys, cash, and other prop-

15     erty (hereinafter referred to in this section as the

16     "customer") as belonging to such customer and not

17     as the property of such person; and

18       (2) take such steps as are appropriate to pro-

19     tect the payment stablecoins, private keys, cash, and

20     other property of a customer from the claims of

21     creditors of the person.

22   (c) COMMINGLING PROHIBITED.—

23       (1) IN GENERAL.—Payment stablecoin reserves,

24     payment stablecoins, cash, and other property of a

25     permitted payment stablecoin issuer or customer

105

1    shall be separately accounted for by a person de-
2    scribed in subsection (a) and shall be segregated
3    from and not be commingled with the assets of the
4    person.

5        (2) EXCEPTIONS.—Notwithstanding paragraph
6    (1) or subsection (b)—

7            (A) the payment stablecoin reserves, pay-
8        ment stablecoins, cash, and other property of a
9        permitted payment stablecoin issuer or cus-
10       tomer may, for convenience, be commingled and
11       deposited in an omnibus account holding the
12       payment    stablecoin    reserves,    payment
13       stablecoins, cash, and other property of more
14       than 1 permitted payment stablecoin issuer or
15       customer at a State chartered depository insti-
16       tution, an insured depository institution, na-
17       tional bank, or trust company, and any pay-
18       ment stablecoin reserves in the form of cash
19       held in the form of a deposit liability at a de-
20       pository institution shall not be subject to any
21       requirement relating to the separation of such
22       cash from the property of the applicable deposi-
23       tory institution;

24           (B) such share of the payment stablecoin
25       reserves, payment stablecoins, cash, and other

106

1       property of the permitted payment stablecoin

2       issuer or customer that shall be necessary to

3       transfer, adjust, or settle a transaction or

4       transfer of assets may be withdrawn and ap-

5       plied to such purposes, including the payment

6       of commissions, taxes, storage, and other

7       charges lawfully accruing in connection with the

8       provision of services by a person described in

9       subsection (a);

10       (C) in accordance with such terms and

11       conditions as a primary Federal payment

12       stablecoin regulator may prescribe by rule, reg-

13       ulation, or order, any payment stablecoin re-

14       serves, payment stablecoins, cash, and other

15       property described in this subsection may be

16       commingled and deposited in permitted pay-

17       ment stablecoin issuer or customer accounts

18       with payment stablecoin reserves, payment

19       stablecoins, cash, and other property received

20       by the person and required by the primary Fed-

21       eral payment stablecoin regulator to be sepa-

22       rately accounted for, treated as, and dealt with

23       as belonging to such permitted payment

24       stablecoin issuers or customers; or

107

(D) an insured depository institution that
provides custodial or safekeeping services for
payment stablecoin reserves shall be permitted
to hold payment stablecoin reserves in the form
of cash on deposit provided such treatment is
consistent with Federal law.

(3) CUSTOMER PRIORITY.—With respect to payment stablecoins held by a person described in subsection (a) for a customer, with or without the segregation required under paragraph (1), the claims of the customer against such person with respect to such payment stablecoins shall have priority over the claims of any person other than the claims of another customer with respect to payment stablecoins held by such person described in subsection (a), unless the customer expressly consents to the priority of such other claim.

(d) REGULATORY INFORMATION.—A person described under subsection (a) shall submit to the applicable primary Federal payment stablecoin regulator information concerning the person's business operations and processes to protect customer assets, in such form and manner as the primary regulator shall determine.

(e) EXCLUSION.—The requirements of this section shall not apply to any person solely on the basis that such

108

1 person engages in the business of providing hardware or
2 software to facilitate a customer's own custody or safe-
3 keeping of the customer's payment stablecoins or private
4 keys.

## SEC. 11. TREATMENT OF PAYMENT STABLECOIN ISSUERS IN INSOLVENCY PROCEEDINGS.

7      (a) IN GENERAL.—Subject to section 507(e) of title
8 11, United States Code, as added by subsection (d), in
9 any insolvency proceeding of a permitted payment
10 stablecoin issuer under Federal or State law, including any
11 proceeding under that title and any insolvency proceeding
12 administered by a State payment stablecoin regulator with
13 respect to a permitted payment stablecoin issuer—

14          (1) the claim of a person holding payment
15      stablecoins issued by the permitted payment
16      stablecoin issuer shall have priority, on a ratable
17      basis with the claims of other persons holding such
18      payment stablecoins, over the claims of the per-
19      mitted payment stablecoin issuer and any other
20      holder of claims against the permitted payment
21      stablecoin issuer, with respect to required payment
22      stablecoin reserves;

23          (2) notwithstanding any other provision of law,
24      including the definition of "claim" under section
25      101(5) of title 11, United States Code, any person

109

1 holding a payment stablecoin issued by the per-
2 mitted payment stablecoin issuer shall be deemed to
3 hold a claim; and

4     (3) the priority under paragraph (1) shall not
5 apply to claims other than those arising directly
6 from the holding of payment stablecoins.

7 (b) DEFINITIONS.—Section 101 of title 11, United
8 States Code, is amended by adding after paragraph (40B)
9 the following:

10     ''(40C) The terms 'payment stablecoin' and
11 'permitted payment stablecoin issuer' have the
12 meanings given those terms in section 2 of the GE-
13 NIUS Act.''.

14 (c) AUTOMATIC STAY.—Section 362 of title 11,
15 United States Code, is amended—

16     (1) in subsection (a)—

17         (A) in paragraph (7), by striking ''and'';

18         (B) in paragraph (8), by striking the pe-
19     riod and inserting ''; and''; and

20         (C) by adding at the end the following:

21     ''(9) the redemption of payment stablecoins
22 issued by the permitted payment stablecoin issuer,
23 from payment stablecoin reserves required to be
24 maintained under section 4 of the GENIUS Act.'';
25 and

110

1          (2) in subsection (d)—

2              (A) in paragraph (3)(B)(ii), by striking

3          "or" at the end;

4              (B) in paragraph (4)(B), by striking the

5          period at the end and inserting "; or"; and

6              (C) by inserting after paragraph (4) the

7          following:

8          "(5) with respect to the redemption of payment

9    stablecoins held by a person, if the court finds, sub-

10   ject to the motion and attestation of the permitted

11   payment stablecoin issuer, which shall be filed on

12   the petition date or as soon as practicable thereafter,

13   there are payment stablecoin reserves available for

14   distribution on a ratable basis to similarly situated

15   payment stablecoin holders, provided that the court

16   shall use best efforts to enter a final order to begin

17   distributions under this paragraph not later than 14

18   days after the date of the required hearing.".

19   (d) PRIORITY IN BANKRUPTCY PROCEEDINGS.—Sec-

20  tion 507 of title 11, United States Code, is amended—

21          (1) in subsection (a), in the matter preceding

22   paragraph (1), by striking "The following" and in-

23   serting "Subject to subsection (e), the following";

24   and

25          (2) by adding at the end the following:

111

1   ''(e) Notwithstanding subsection (a), if a payment
2   stablecoin holder is not able to redeem all outstanding pay-
3   ment stablecoin claims from required payment stablecoin
4   reserves maintained by the permitted payment stablecoin
5   issuer, any such remaining claim arising from a person's
6   holding of a payment stablecoin issued by the permitted
7   payment stablecoin issuer shall be a claim against the es-
8   tate and shall have first priority over any other claim, in-
9   cluding over any expenses and claims that have priority
10  under that subsection, to the extent compliance with sec-
11  tion 4 of the GENIUS Act would have required additional
12  reserves to be maintained by the permitted payment
13  stablecoin issuer for payment stablecoin holders.''.

14      (e) PAYMENT STABLECOIN RESERVES.—Section
15  541(b) of title 11, United States Code, is amended—

16          (1) in paragraph (9), in the matter following
17      subparagraph (B), by striking ''or'' at the end;

18          (2) in paragraph (10)(C), by striking the period
19      and inserting ''; or''; and

20          (3) by inserting after paragraph (10) the fol-
21      lowing:

22          ''(11) required payment stablecoin reserves
23      under section 4 of the GENIUS Act, provided that
24      notwithstanding the exclusion of such reserves from

112

1  the property of the estate, section 362 of this title

2  shall apply to such reserves.''.

3  (f) INTERVENTION.—Section 1109 of title 11, United

4  States Code, is amended by adding at the end the fol-

5  lowing:

6  ''(c) The Comptroller of the Currency or State pay-

7  ment stablecoin regulator (as defined in section 2 of the

8  GENIUS Act) shall raise, and shall appear and be heard

9  on, any issue, including the protection of customers, in

10  a case under this chapter in which the debtor is a per-

11  mitted payment stablecoin issuer.''.

12  (g) APPLICATION OF EXISTING INSOLVENCY LAW.—

13  In accordance with otherwise applicable law, an insolvency

14  proceeding with respect to a permitted payment stablecoin

15  issuer shall occur as follows:

16  (1) A depository institution (as defined in sec-

17  tion 3 of the Federal Deposit Insurance Act (12

18  U.S.C. 1813)) shall be resolved by the Federal De-

19  posit Insurance Corporation, National Credit Union

20  Administration, or State payment stablecoin regu-

21  lator, as applicable.

22  (2) A subsidiary of a depository institution (as

23  defined in section 3 of the Federal Deposit Insur-

24  ance Act (12 U.S.C. 1813)) or a nonbank entity

113

1    may be considered a debtor under title 11, United

2    States Code.

3    (h) STUDY BY PRIMARY FEDERAL PAYMENT

4    STABLECOIN REGULATORS.—

5        (1) STUDY REQUIRED.—The primary Federal

6        payment stablecoin regulators shall perform a study

7        of the potential insolvency proceedings of permitted

8        payment stablecoin issuers, including an examination

9        of—

10            (A) existing gaps in the bankruptcy laws

11            and rules for permitted payment stablecoin

12            issuers;

13            (B) the ability of payment stablecoin hold-

14            ers to be paid out in full in the event a per-

15            mitted payment stablecoin issuer is insolvent;

16            and

17            (C) the utility of orderly insolvency admin-

18            istration regimes and whether any additional

19            authorities are needed to implement such re-

20            gimes.

21        (2) REPORT.—Not later than 3 years after the

22        date of enactment of this Act, the primary Federal

23        payment stablecoin regulators shall submit to the

24        Committee on Banking, Housing, and Urban Affairs

25        of the Senate and the Committee on Financial Serv-

114

1    ices of the House of Representatives a report that

2    contains all findings of the study under paragraph

3    (1), including any legislative recommendations.

**SEC. 12. INTEROPERABILITY STANDARDS.**

5    The primary Federal payment stablecoin regulators,

6    in consultation with the National Institute of Standards

7    and Technology, other relevant standard-setting organiza-

8    tions, and State bank and credit union regulators, shall

9    assess and, if necessary, may, pursuant to section 553 of

10    title 5, United States Code, and in a manner consistent

11    with the National Technology Transfer and Advancement

12    Act of 1995 (Public Law 104–113), prescribe standards

13    for permitted payment stablecoin issuers to promote com-

14    patibility and interoperability with—

15        (1) other permitted payment stablecoin issuers;

16    and

17        (2) the broader digital finance ecosystem, in-

18    cluding accepted communications protocols and

19    blockchains, permissioned or public.

**SEC. 13. RULEMAKING.**

21    (a) IN GENERAL.—Not later than 1 year after the

22    date of enactment of this Act, each primary Federal pay-

23    ment stablecoin regulator, the Secretary of the Treasury,

24    and each State payment stablecoin regulator shall promul-

115

1 gate regulations to carry out this Act through appropriate

2 notice and comment rulemaking.

3     (b) COORDINATION.—Federal payment stablecoin

4 regulators, the Secretary of the Treasury, and State pay-

5 ment stablecoin regulators should coordinate, as appro-

6 priate, on the issuance of any regulations to implement

7 this Act.

8     (c) REPORT REQUIRED.—Not later than 180 days

9 after the effective date of this Act, each Federal banking

10 agency shall submit to the Committee on Banking, Hous-

11 ing, and Urban Affairs of the Senate and the Committee

12 on Financial Services of the House of Representatives a

13 report that confirms and describes the regulations promul-

14 gated to carry out this Act.

15 **SEC. 14. STUDY ON NON-PAYMENT STABLECOINS.**

16     (a) STUDY BY TREASURY.—

17         (1) STUDY.—The Secretary of the Treasury, in

18         consultation with the Board, the Comptroller, the

19         Corporation, the Securities and Exchange Commis-

20         sion, and the Commodity Futures Trading Commis-

21         sion shall carry out a study of non-payment

22         stablecoins, including endogenously collateralized

23         payment stablecoins.

24         (2) REPORT.—Not later than 365 days after

25         the date of the enactment of this Act, the Secretary

116

1    of the Treasury shall provide to the Committee on

2    Banking, Housing, and Urban Affairs of the Senate

3    and the Committee on Financial Services of the

4    House of Representatives a report that contains all

5    findings made in carrying out the study under para-

6    graph (1), including an analysis of—

7        (A) the categories of non-payment

8        stablecoins, including the benefits and risks of

9        technological design features;

10        (B) the participants in non-payment

11        stablecoin arrangements;

12        (C) utilization and potential utilization of

13        non-payment stablecoins;

14        (D) the nature of reserve compositions;

15        (E) types of algorithms being employed;

16        (F) governance structure, including aspects

17        of decentralization;

18        (G) the nature of public promotion and ad-

19        vertising; and

20        (H) the clarity and availability of con-

21        sumer notices disclosures.

22    (3) CLASSIFIED ANNEX.—A report under this

23    section may include a classified annex, if applicable.

24    (b) ENDOGENOUSLY COLLATERALIZED PAYMENT

25    STABLECOIN DEFINED.—In this section, the term

117

1  ''endogenously collateralized payment stablecoin'' means

2  any digital asset—

3      (1) the originator of which has represented will

4      be converted, redeemed, or repurchased for a fixed

5      amount of monetary value; and

6      (2) that relies solely on the value of another

7      digital asset created or maintained by the same

8      originator to maintain the fixed price.

9  **SEC. 15. REPORTS.**

10  (a) ANNUAL REPORTING REQUIREMENT.—Beginning

11  on the date that is 1 year after the date of enactment

12  of this Act, and annually thereafter, the primary Federal

13  payment stablecoin regulators, in consultation with State

14  payment stablecoin regulators, as necessary, shall submit

15  to the Committee on Banking, Housing, and Urban Af-

16  fairs of the Senate, the Committee on Financial Services

17  of the House of Representatives, and the Director of the

18  Office of Financial Research a report, which may include

19  a classified annex, if applicable, on the status of the pay-

20  ment stablecoin industry, including—

21      (1) a summary of trends in payment stablecoin

22      activities;

23      (2) a summary of the number of applications

24      for approval as a permitted payment stablecoin

118

1    issuer under section 5, including aggregate approvals

2    and rejections of applications; and

3        (3) a description of the potential financial sta-

4    bility risks posed to the safety and soundness of the

5    broader financial system by payment stablecoin ac-

6    tivities.

7    (b) FSOC REPORT.—The Financial Stability Over-

8 sight Council shall incorporate the findings in the report

9 under subsection (a) into the annual report of the Council

10 required under section 112(a)(2)(N) of the Financial Sta-

11 bility Act of 2010 (12 U.S.C. 5322(a)(2)(N)).

12 **SEC. 16. AUTHORITY OF BANKING INSTITUTIONS.**

13    (a) RULE OF CONSTRUCTION.—Nothing in this Act

14 may be construed to limit the authority of a depository

15 institution, Federal credit union, State credit union, na-

16 tional bank, or trust company to engage in activities per-

17 missible pursuant to applicable State and Federal law, in-

18 cluding—

19        (1) accepting or receiving deposits or shares (in

20    the case of a credit union), and issuing digital assets

21    that represent those deposits or shares;

22        (2) utilizing a distributed ledger for the books

23    and records of the entity and to effect intrabank

24    transfers; and

119

1       (3) providing custodial services for payment

2       stablecoins, private keys of payment stablecoins, or

3       reserves backing payment stablecoins.

4   (b) REGULATORY REVIEW.—Entities regulated by

5 the primary Federal payment stablecoin regulators are au-

6 thorized to engage in the payment stablecoin activities and

7 investments contemplated by this Act, including acting as

8 a principal or agent with respect to any payment

9 stablecoin and payment of fees to facilitate customer

10 transactions. The primary Federal payment stablecoin

11 regulators shall review all existing guidance and regula-

12 tions, and if necessary, amend or promulgate new regula-

13 tions and guidance, to clarify that regulated entities are

14 authorized to engage in such activities and investments.

15   (c) TREATMENT OF CUSTODY ACTIVITIES.—The ap-

16 propriate Federal banking agency, the National Credit

17 Union Administration (in the case of a credit union), and

18 the Securities and Exchange Commission may not require

19 a depository institution, national bank, Federal credit

20 union, State credit union, or trust company, or any affil-

21 iate thereof—

22       (1) to include digital assets held in custody that

23       are not owned by the entity as a liability on the fi-

24       nancial statement or balance sheet of the entity, in-

120

1    cluding payment stablecoin custody or safekeeping

2    activities; or

3        (2) to hold in custody or safekeeping regulatory

4    capital against digital assets and reserves backing

5    such assets described in section 4(a)(1)(A), except

6    as necessary to mitigate against operational risks in-

7    herent in custody or safekeeping services, as deter-

8    mined by—

9            (A) the appropriate Federal banking agen-

10           cy;

11           (B) the National Credit Union Administra-

12           tion (in the case of a credit union);

13           (C) a State bank supervisor; or

14           (D) a State credit union supervisor.

15    (d) STATE-CHARTERED DEPOSITORY INSTITU-

16    TIONS.—

17        (1) IN GENERAL.—A depository institution

18    chartered under the banking laws of a State, that

19    has a subsidiary that is a permitted payment

20    stablecoin issuer, may engage in the business of

21    money transmission or provide custodial services

22    through the permitted payment stablecoin issuer in

23    any State if such State-chartered depository institu-

24    tion is—

(A) required by the laws or regulations of the home State to establish and maintain adequate liquidity, and such liquidity is regularly reassessed by the home State banking supervisor to take into account any changes in the financial condition and risk profile of the institution, including any uninsured deposits maintained by such institution; and

(B) required by the laws or regulations of the home State to establish and maintain adequate capital, and such capital is regularly reassessed by the home State banking supervisor to take into account any changes in the financial condition and risk profile of the institution, including any uninsured deposits maintained by such institution.

(2) RULE OF CONSTRUCTION.—Nothing in this section shall limit, or be construed to limit, the authority of a host State bank regulator, to perform examinations of a depository institution's subsidiary permitted payment stablecoin issuer or activities conducted through the permitted payment stablecoin issuer to ensure compliance with host State consumer protection laws that the host State bank regulator has specific jurisdiction to enforce, which

122

1    shall apply to such institution consistent with section

2    7(f).

3    (e) DEFINITIONS.—In this section:

4        (1) HOME STATE.—The term "home State"

5    means the State by which the depository institution

6    is chartered.

7        (2) HOST STATE.—The term "host State"

8    means a State in which a depository institution es-

9    tablishes a branch, solicits customers, or otherwise

10    engages in business activities, other than the home

11    State.

**12 SEC. 17. AMENDMENTS TO CLARIFY THAT PAYMENT**

**13        STABLECOINS ARE NOT SECURITIES OR COM-**

**14        MODITIES AND PERMITTED PAYMENT**

**15        STABLECOIN ISSUERS ARE NOT INVESTMENT**

**16        COMPANIES.**

17    (a) INVESTMENT ADVISERS ACT OF 1940.—Section

18    202(a)(18) of the Investment Advisers Act of 1940 (15

19    U.S.C. 80b–2(a)(18)) is amended by adding at the end

20    the following: "The term 'security' does not include a pay-

21    ment stablecoin issued by a permitted payment stablecoin

22    issuer, as such terms are defined in section 2 of the GE-

23    NIUS Act.".

123

1    (b) INVESTMENT COMPANY ACT OF 1940.—The In-

2  vestment Company Act of 1940 (15 U.S.C. 80a–1 et seq.)

3  is amended

4        (1) in section 2(a)(36) of the Act (15 U.S.C.

5      80a–2(a)(36)), by adding at the end the following:

6      ''The term 'security' does not include a payment

7      stablecoin issued by a permitted payment stablecoin

8      issuer, as such terms are defined in section 2 of the

9      GENIUS Act.''; and

10        (2) in section 3(c)(3) of the Act (15 U.S.C.

11      80a–3(c)(3)), by inserting ''any permitted payment

12      stablecoin issuer, as such term is defined in section

13      2 of the GENIUS Act;'' after ''therefor;''.

14    (c) SECURITIES ACT OF 1933.—Section 2(a)(1) of

15  the Securities Act of 1933 (15 U.S.C. 77b(a)(1)) is

16  amended by adding at the end the following: ''The term

17  'security' does not include a payment stablecoin issued by

18  a permitted payment stablecoin issuer, as such terms are

19  defined in section 2 of the GENIUS Act.''.

20    (d) SECURITIES EXCHANGE ACT OF 1934.—Section

21  3(a)(10) of the Securities Exchange Act of 1934 (15

22  U.S.C. 78c(a)(10)) is amended by adding at the end the

23  following: ''The term 'security' does not include a payment

24  stablecoin issued by a permitted payment stablecoin

124

1 issuer, as such terms are defined in section 2 of the GE-

2 NIUS Act.''.

3    (e) SECURITIES INVESTOR PROTECTION ACT OF

4 1970.—Section 16(14) of the Securities Investor Protec-

5 tion Act of 1970 (15 U.S.C. 78lll(14)) is amended by add-

6 ing at the end the following: ''The term 'security' does

7 not include a payment stablecoin issued by a permitted

8 payment stablecoin issuer, as such terms are defined in

9 section 2 of the GENIUS Act.''.

10    (f) COMMODITY EXCHANGE ACT.—Section 1a(9) of

11 the Commodity Exchange Act (7 U.S.C. 1a(9)) is amend-

12 ed by adding at the end the following: ''The term 'com-

13 modity' does not include a payment stablecoin issued by

14 a permitted payment stablecoin issuer, as such terms are

15 defined in section 2 of the GENIUS Act.''.

16 **SEC. 18. EXCEPTION FOR FOREIGN PAYMENT STABLECOIN**

17        **ISSUERS AND RECIPROCITY FOR PAYMENT**

18        **STABLECOINS ISSUED IN OVERSEAS JURIS-**

19        **DICTIONS.**

20    (a) IN GENERAL.—The prohibitions under section 3

21 shall not apply to a foreign payment stablecoin issuer if

22 all of the following apply:

23        (1) The foreign payment stablecoin issuer is

24        subject to regulation and supervision by a foreign

25        payment stablecoin regulator of a foreign country, a

125

territory of the United States, Puerto Rico, Guam, American Samoa, or the Virgin Islands that has a regulatory and supervisory regime with respect to payment stablecoins that the Secretary of the Treasury determines, pursuant to subsection (b), is comparable to the regulatory and supervisory regime established under this Act, including, in particular, the requirements under section 4(a).

(2) The foreign payment stablecoin issuer is registered with the Comptroller pursuant to subsection (c).

(3) The foreign payment stablecoin issuer holds reserves in a United States financial institution sufficient to meet liquidity demands of United States customers, unless otherwise permitted under a reciprocal arrangement established pursuant to subsection (d).

(4) The foreign country in which the foreign payment stablecoin issuer is domiciled and regulated is not subject to comprehensive economic sanctions by the United States or in a jurisdiction that the Secretary of the Treasury has determined to be a jurisdiction of primary money laundering concern.

(b) TREASURY DETERMINATION.—

126

(1) IN GENERAL.—The Secretary of the Treasury may make a determination as to whether a foreign country has a regulatory and supervisory regime that is comparable to the requirements established under this Act, including the requirements under section 4(a). The Secretary of the Treasury may make such a determination only upon a recommendation from each other member of the Stablecoin Certification Review Committee. Prior to such determination taking effect, the Secretary of the Treasury shall publish in the Federal Register a justification for such determination, including how the foreign country's regulatory and supervisory regime is comparable to the requirements established under this Act, including the requirements under section 4(a).

(2) REQUEST.—A foreign payment stablecoin issuer or a foreign payment stablecoin regulator may request from the Secretary of the Treasury a determination under paragraph (1).

(3) TIMING FOR DETERMINATION.—If a foreign payment stablecoin issuer or foreign payment stablecoin regulator requests a determination under paragraph (2), the Secretary of the Treasury shall render a decision on the determination not later

127

1    than 210 days after the receipt of a substantially

2    complete determination request.

3        (4) RESCISSION OF DETERMINATION.—

4            (A) IN GENERAL.—The Secretary of the

5            Treasury may, in consultation with the Federal

6            payment stablecoin regulators, rescind a deter-

7            mination made under paragraph (1), if the Sec-

8            retary determines that the regulatory regime of

9            such foreign country is no longer comparable to

10           the requirements established under this Act.

11           Prior to such rescission taking effect, the Sec-

12           retary of the Treasury shall publish in the Fed-

13           eral Register a justification for the rescission.

14           (B) LIMITED SAFE HARBOR.—If the Sec-

15           retary of the Treasury rescinds a determination

16           pursuant to subparagraph (A), a digital asset

17           service provider shall have 90 days before the

18           offer or sale of a payment stablecoin issued by

19           the foreign payment stablecoin issuer that is

20           the subject of the rescinded determination shall

21           be in violation of section 3.

22       (5) PUBLIC NOTICE.—The Secretary of the

23       Treasury shall keep and make publicly available a

24       current list of foreign countries for which a deter-

25       mination under paragraph (1) has been made.

128

(6) RULEMAKING.—Not later than 1 year after the date of enactment of this Act, the Secretary of the Treasury shall issue such rules as may be required to carry out this section.

(c) REGISTRATION AND ONGOING MONITORING.—

(1) REGISTRATION.—

(A) IN GENERAL.—A foreign payment stablecoin issuer may offer or sell payment stablecoins using a digital asset service provider if the foreign payment stablecoin issuer is registered with the Comptroller.

(B) REGISTRATION APPROVAL.—A registration of a foreign payment stablecoin issuer filed in accordance with this section shall be deemed approved on the date that is 30 days after the date the Comptroller receives the registration, unless the Comptroller notifies the foreign payment stablecoin issuer in writing that such registration has been rejected.

(C) STANDARDS FOR REJECTION.—In determining whether to reject a foreign payment stablecoin issuer's registration, the Comptroller shall consider

(i) the final determination of the Secretary of the Treasury under this section;

129

(ii) the financial and managerial resources of the United States operations of the foreign payment stablecoin issuer;

(iii) whether the foreign payment stablecoin issuer will provide adequate information to the Comptroller as the Comptroller determines is necessary to determine compliance with this Act;

(iv) whether the foreign payment stablecoin presents a risk to the financial stability of the United States; and

(v) whether the foreign payment stablecoin issuer presents illicit finance risks to the United States.

(D) PROCEDURE FOR APPEAL.—If the Comptroller rejects a registration, not later than 30 days after the date of receipt of such rejection, the foreign payment stablecoin issuer may appeal the rejection by notifying the Comptroller of the request to appeal.

(E) RULEMAKING.—Pursuant to section 13 of this Act, the Comptroller shall issue rules relating to the standards for approval of registration requests and the process for appealing denials of such registration requests.

130

1          (F) PUBLIC NOTICE.—The Comptroller
2      shall keep and make publicly available a current
3      list of foreign payment stablecoin issuer reg-
4      istrations that have been approved.
5          (2) ONGOING MONITORING.—A foreign payment
6  stablecoin issuer shall
7          (A) be subject to reporting, supervision,
8      and examination requirements as determined by
9      the Comptroller; and
10         (B) consent to United States jurisdiction
11     relating to the enforcement of this Act.
12         (3) LACK OF COMPLIANCE.—
13         (A) COMPTROLLER ACTION.—The Comp-
14     troller may, in consultation with the Secretary
15     of the Treasury, rescind approval of a registra-
16     tion of a foreign payment stablecoin issuer
17     under this subsection if the Comptroller deter-
18     mines that the foreign payment stablecoin
19     issuer is not in compliance with the require-
20     ments of this Act, including for maintaining in-
21     sufficient reserves or posing an illicit finance
22     risk or financial stability risk. Prior to such re-
23     scission taking effect, the Comptroller shall
24     publish in the Federal Register a justification
25     for the rescission.

131

1          (B) SECRETARY ACTION.—The Secretary
2     of the Treasury, in consultation with the Comp-
3     troller, may revoke a registration of a foreign
4     payment stablecoin issuer under this subsection
5     if the Secretary determines that reasonable
6     grounds exist for concluding that the foreign
7     payment stablecoin issuer presents economic
8     sanctions evasion, money laundering, or other
9     illicit finance risks, or, as applicable, violations,
10    or facilitation thereof.

11    (d) RECIPROCITY.—

12         (1) IN GENERAL.—The Secretary of the Treas-
13    ury may create and implement reciprocal arrange-
14    ments or other bilateral agreements between the
15    United States and jurisdictions with payment
16    stablecoin regulatory regimes that are comparable to
17    the requirements established under this Act. The
18    Secretary of the Treasury shall consider whether the
19    jurisdiction's requirements for payment stablecoin
20    issuers include

21         (A) similar requirements to those under
22    section 4(a);

23         (B) adequate anti-money laundering and
24    counter-financing of terrorism program and
25    sanction compliance standards; and

132

1          (C) adequate supervisory and enforcement
2          capacity to facilitate international transactions
3          and interoperability with United States dollar-
4          denominated payment stablecoins issued over-
5          seas.

6     (2) PUBLICATION.—Not later than 90 days
7     prior to the entry into force of any arrangement or
8     agreement under paragraph (1), the Secretary of the
9     Treasury shall publish the arrangement or agree-
10    ment in the Federal Register.

11    (3) COMPLETION.—The Secretary of the Treas-
12    ury should complete the arrangements under this
13    subsection not later than the date that is 2 years
14    after the date of enactment of this Act.

15  **SEC. 19. DISCLOSURE RELATING TO PAYMENT**
16  **STABLECOINS.**

17    Section 13104(a)(3) of title 5, United States Code,
18  is amended, in the first sentence, by striking ", or any
19  deposits" and inserting ", any payment stablecoins issued
20  by a permitted payment stablecoin issuer aggregating
21  $5,000 or less held, or any deposits".

22  **SEC. 20. EFFECTIVE DATE.**

23    This Act, and the amendments made by this Act,
24  shall take effect on the earlier of

133

1        (1) the date that is 18 months after the date

2   of enactment of this Act; or

3        (2) the date that is 120 days after the date on

4   which the primary Federal payment stablecoin regu-

5   lators issue any final regulations implementing this

6   Act.

Passed the Senate June 17, 2025.

Attest:

*Secretary.*

119TH CONGRESS
1ST SESSION

# S. 1582

# AN ACT

To provide for the regulation of payment stablecoins, and for other purposes.