

**U.S. Department of Justice**

Office of the Deputy Attorney General

---

The Deputy Attorney General                    Washington, D.C. 20530

April 7, 2025

MEMORANDUM FOR ALL DEPARTMENT EMPLOYEES

FROM:   THE DEPUTY ATTORNEY GENERAL

SUBJECT:   Ending Regulation By Prosecution

The digital assets industry is critical to the Nation's economic development and innovation. Thus, as noted in Executive Order 14178, clarity and certainty regarding enforcement policy "are essential to supporting a vibrant and inclusive digital economy and innovation in digital assets." President Trump has also made clear that "[w]e are going to end the regulatory weaponization against digital assets."

The Department of Justice is not a digital assets regulator. However, the prior Administration used the Justice Department to pursue a reckless strategy of regulation by prosecution, which was ill conceived and poorly executed. The Justice Department will no longer pursue litigation or enforcement actions that have the effect of superimposing regulatory frameworks on digital assets while President Trump's actual regulators do this work outside the punitive criminal justice framework. Rather, consistent with President Trump's directives and the Justice Department's priorities, the Department's investigations and prosecutions involving digital assets shall focus on prosecuting individuals who victimize digital asset investors, or those who use digital assets in furtherance of criminal offenses such as terrorism, narcotics and human trafficking, organized crime, hacking, and cartel and gang financing.[1]

### I.   Digital Assets Enforcement Priorities

Executive Order 14178 tasks the Justice Department and others with "protecting and promoting" (1) "the ability of individual citizens and private-sector entities alike to access and use for lawful purposes open public blockchain networks without persecution"; and (2) "fair and open access to banking services for all law-abiding individual citizens and private-sector entities alike." In response to those taskings, the Justice Department will stop participating in regulation by prosecution in this space. Specifically, the Department will no longer target virtual currency exchanges, mixing and tumbling services, and offline wallets for the acts of their end users or unwitting violations of regulations—except to the extent the investigation is consistent with the priorities articulated in the following paragraphs.

---

[1] This guidance is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

The policy outlined in Executive Order 14178 requires the Justice Department to prioritize investigations and prosecutions that involve conduct victimizing investors, including embezzlement and misappropriation of customers' funds on exchanges, digital asset investment scams, fake digital asset development projects such as rug pulls, hacking of exchanges and decentralized autonomous organizations resulting in the theft of funds, and exploiting vulnerabilities in smart contracts. Such enforcement actions are important to restoring stolen funds to customers, building investor confidence in the security of digital asset markets, and the growth of the digital asset industry.

Pursuant to the "total elimination" policy set forth in Executive Order 14157, entitled *Designating Cartels and Other Organizations as Foreign Terrorist Organizations and Specially Designated Global Terrorists*, the Justice Department will also prioritize cases involving use of digital assets in furtherance of unlawful conduct by cartels, Transnational Criminal Organizations, Foreign Terrorist Organizations, and Specially Designated Global Terrorists. For example, cartels and human trafficking and smuggling rings have increasingly turned to digital assets to fund their operations and launder the proceeds of their illicit businesses. The same is true of fentanyl production: increasingly dangerous precursors purchased from China and used in the production of fentanyl in Central and South America are often paid for using digital assets. Terrorist groups, such as Hamas and ISIS, and nation states subject to US sanctions, like North Korea, also continue to transact using digital assets in an attempt to conceal their financing from law enforcement. As part of the Justice Department's ongoing work against fentanyl trafficking, terrorism, cartels, and human trafficking and smuggling, the Department will pursue the illicit financing of these enterprises by the individuals and enterprises themselves, including when it involves digital assets, but will not pursue actions against the platforms that these enterprises utilize to conduct their illegal activities.

Ongoing investigations that are inconsistent with the foregoing should be closed. The Office of the Deputy Attorney General will work with the Criminal Division and EOUSA to review ongoing cases for consistency with this policy. All previously issued policies and directives that are inconsistent with any of the foregoing are rescinded, effective today.

## II.    Digital Assets Charging Considerations

Based on the foregoing priorities—while charging decisions must be based upon the facts and evidence of each particular case—federal prosecutors are directed to consider the following factors when deciding whether to pursue criminal charges involving digital assets:

Prosecutors shall prioritize cases that hold accountable individuals who (a) cause financial harm to digital asset investors and consumers; and/or (b) use digital assets in furtherance of other criminal conduct, such as fentanyl trafficking, terrorism, cartels, organized crime, and human trafficking and smuggling. Seeking accountability from individuals who perpetrate these types of wrongdoing deters future illegal activity, compensates victims, and promotes the public's confidence in the digital asset markets and broader industry. On the other hand, criminal matters premised on regulatory violations resulting from diffuse decisions made at lower levels of digital asset companies often fail to advance the priorities of the Department.

Prosecutors should not charge regulatory violations in cases involving digital assets—including but not limited to unlicensed money transmitting under 18 U.S.C. § 1960(b)(1)(A) and (B), violations of the Bank Secrecy Act, unregistered securities offering violations, unregistered

Memorandum from the Deputy Attorney General                                                                 Page 3
Subject: Ending Regulation By Prosecution

broker-dealer violations, and other violations of registration requirements under the Commodity Exchange Act—unless there is evidence that the defendant knew of the licensing or registration requirement at issue and violated such a requirement willfully. This priority is not required by law, but is being imposed as a matter of discretion, in recognition of the Justice Department's priorities and the fact that the Biden Administration created a particularly uncertain regulatory environment around digital assets.[2]

Prosecutors should not charge violations of the Securities Act of 1933, the Securities Exchange Act of 1934, the Commodity Exchange Act, or the regulations promulgated pursuant to these Acts, in cases where (a) the charge would require the Justice Department to litigate whether a digital asset is a "security" or "commodity," and (b) there is an adequate alternative criminal charge available, such as mail or wire fraud. The following types of positions are permissible under this policy in connection with proposed prosecutions that would otherwise be consistent with the guidance in this memorandum: (i) taking the position that bitcoin or ether is a "commodity" under the Commodity Exchange Act; and (ii) filing securities fraud charges where the "security" at issue is the equity or stock in a digital asset company. Any exceptions to this policy must be approved by the Deputy Attorney General, or his designee(s). Relevant considerations for such an exception include whether the digital asset is widely accepted to be a "security" or "commodity," whether the parties to the litigation have an interest in defending the position that a digital asset is a "security" or "commodity," and whether there is no alternative criminal charge under Title 18.

### III.    Compensating Victims In The Digital Assets Space

Following the prolonged period of price decline in the digital asset market in 2022, multiple companies with custody of investors' digital assets collapsed and entered bankruptcy, including FTX, Voyager Digital, Celsius Network, Genesis Global, BlockFi, and Gemini Trust. In some instances, investor losses have been directly attributable to fraud and theft. In those cases, and others, prosecutors have been able to forfeit proceeds of criminal activity including digital assets that in some instances became worth billions of dollars. However, as a result of regulations, some digital asset investor victims have only been able to recover the value of their digital assets at the time the fraud was perpetrated. *See* 28 C.F.R. § 9.8(c). The effect: digital asset investors' losses may be calculated at a value when the digital asset market was at a lower point, and victims who bore the risk of loss are unable to benefit from corresponding gains that occurred during or after the period in which they were victimized and would otherwise have possessed the asset. Accordingly, the Office of Legal Policy and the Office of Legislative Affairs are directed to evaluate and propose legislative and regulatory changes to address this concern and improve asset-forfeiture efforts in the digital assets space.

---

[2] This guidance does not reflect a view by the Department that the criminal offense set forth in 18 U.S.C. § 1960 requires proof of willfulness in other contexts, and it casts no doubt on existing case law. Moreover, 18 U.S.C. § 1960(b)(1)(C) requires that the transmission of funds "are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity," and is therefore outside the scope of this policy.

### IV. Shifting Resources Relating To Digital Assets

U.S. Attorneys' Offices will use long-recognized criminal justice tools to lead appropriate prosecutions consistent with the foregoing enforcement priorities and charging consideration. Consistent with the narrowing of the enforcement policy relating to digital assets, the Market Integrity and Major Frauds Unit shall cease cryptocurrency enforcement in order to focus on other priorities, such as immigration and procurement frauds. The National Cryptocurrency Enforcement Team (NCET) shall be disbanded effective immediately. The Criminal Division's Computer Crime and Intellectual Property Section (CCIPS) will continue to provide guidance and training to Department personnel and serve as liaisons to the digital asset industry.

### V. The President's Working Group on Digital Asset Markets

The Justice Department will fully participate in President Trump's Working Group on Digital Asset Markets, which was established in Executive Order 14178, via attorneys designated by the Justice Department's senior leadership. As directed by President Trump, the Department's designees will identify and make recommendations regarding regulations, guidance documents, orders, or other items that affect the digital asset sector. Additionally, the Department will participate in the preparation of a report to President Trump recommending regulatory and legislative proposals that advance the policies and priorities set forth in the President's Executive Order. Following the submission of the report, the Justice Department will take all steps necessary to implement the recommendations in the report that President Trump adopts.