# EXHIBIT A

```
P485guoC
```

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,                    New York, N.Y.

          v.                                 23 Cr. 118 (AT)

MILES GUO,

                  Defendant.

------------------------------x
                                             April 8, 2025
                                             10:20 a.m.


Before:

                  HON. ANALISA TORRES,

                                             U.S. District Judge


                       APPEARANCES

MATTHEW R. PODOLSKY
     Acting United States Attorney for the
     Southern District of New York
BY:  RYAN B. FINKEL
     JULIANA MURRAY
     MICAH FERGENSON
     Assistant United States Attorneys

SABRINA P. SHROFF
     Attorney for Defendant (outgoing)


JOSHUA L. DRATEL
JOHN F. KALEY
MELINDA SARAFA
     Attorneys for Defendant (incoming)


ALSO PRESENT:  SHI FENG, Mandarin interpreter
```

1       (Case called)

2       THE COURT: We are here in the matter of the United
3  States v. Miles Guo. Would you make your appearances, please.

4       MR. FINKEL: Good morning, your Honor. Ryan Finkel,
5  Juliana Murray and Micah Fergenson for the United States. We
6  are joined at counsel table by Michael Gartland, who is a
7  paralegal in our office.

8       MR. DRATEL: Good morning, your Honor. Joshual Dratel
9  with John Kaley and Melinda Sarafa for Mr. Guo. At this point
10 obviously we are not officially representing him but we are
11 here at the Court's request to be substituted. And, I think
12 Sabrina Shroff is at the table.

13      MS. SHROFF: Good morning, your Honor. As directed by
14 the Court I am the member of the outgoing defense team that is
15 present for Mr. Miles Guo who is standing to my left and being
16 assisted by Court-certified interpreter.

17      THE COURT: I would like the interpreter, please, to
18 identify herself.

19      INTERPRETER: Good morning, your Honor. My name is
20 Shi Feng. I am the Court Mandarin interpreter.

21      THE COURT: Please be seated.

22      Before we turn to the substitution of counsel issue, I
23 would like to address certain non-party pro se filings and
24 communications the Court has received in recent weeks.

25      By order dated April 3, the Court explained that there

are limited circumstances under which a person who is not a party to a case might be entitled to file something on the docket.  One of those circumstances is when the person has a good faith reason to believe they are entitled to file a petition under 21 U.S.C. Section 853(n) to adjudicate an interest in forfeited property.

Another circumstance is when a person who believes that they are a victim of the defendants' crimes files a motion under the Crime Victims Rights Act.

In recent weeks, the Court has been bombarded by improper electronic submissions on the docket.  In some instances, the filings have included language that could be viewed as threatening or harassing to the prosecution, the Court, or the victims of defendants' crimes.  In other submissions, people have expressed a litany of grievances about the case.  These improper filings, which have been made by people who are not parties to the criminal proceeding, amount to an abuse of the public's right of access.  In my April 3 order, I gave examples of these improper filings and I stated that people who make such filings, in violation of Court rules, may have their right of access restricted.  I also explained that over the last several months my chambers has been inundated with e-mails from individuals around the world concerning this case.  These e-mails are also improper and are prohibited.  No one, other than the lawyers in this case and

1  Court staff, is permitted to contact or communicate with the
2  chambers' e-mail account.
3      So, I want to make myself clear to anyone and everyone
4  who is listening today.  The docket of this criminal proceeding
5  is not a public forum for anyone to air their personal opinion
6  about this case or any other matter.  The same is true of the
7  Chambers e-mail account.  I will not tolerate any harassment of
8  the Court, the prosecution, or the victims in this case.
9      If anyone abuses the right of public access to
10  threaten, intimidate, or harass others, I may alert law
11  enforcement.  I hope I am being heard.
12      I will now address the issue of counsel for Mr. Guo.
13      At our last hearing, on March 3, I summarized the
14  procedural history of defense counsel's motion to withdraw.  I
15  then held an *ex parte* proceeding in which I heard from Mr. Guo
16  and his attorneys regarding defense counsel's motion.
17      When deciding a request for substitution of counsel,
18  the Court should consider the timeliness of the motion, inquire
19  into the reasons for the motion, determine whether the conflict
20  between the defendant and his attorney is so great that it has
21  resulted in a total lack of communication preventing an
22  adequate defense, and consider whether the defendant
23  substantially and unjustifiably contributed to the breakdown in
24  communication.  *United States v. John Doe no. 1*, 272 F.3d 116,
25  122-23 (2d Cir. 2001).  The decision of whether to substitute

1  counsel is committed to the sound discretion of the Court.

2  Based on defense counsel's written submissions and
3  after hearing from Mr. Guo and his attorneys during the
4  *ex parte* proceedings on December 20th and March 3, I find that
5  although timeliness weighs against granting a defense counsel's
6  motion, the conflict between Mr. Guo and his attorneys has
7  resulted in a total lack of communication preventing an
8  adequate defense.  Accordingly, defense counsel's motion to
9  withdraw is granted.

10  I expended significant efforts to locate substitute
11  counsel.  Mr. Kaley, are you willing to accept appointment?

12  MR. KALEY:  I am, your Honor.

13  THE COURT:  Mr. Dratel?

14  MR. DRATEL:  Yes, your Honor.

15  THE COURT:  Ms. Sarafa.

16  MS. SARAFA:  Yes, your Honor.

17  THE COURT:  So, therefore, Mr. Kamaraju, Ms. Shroff
18  and Mr. Schirick are relieved as standby counsel, and
19  Mr. Kaley, Mr. Dratel, and Ms. Sarafa are appointed.

20  I would like to remind you, Mr. Guo, and I want you to
21  listen very carefully, that the purpose of sentencing is to
22  determine the type and extent of punishment after the issue of
23  guilt has been determined.  *Williams v. New York*, 337 U.S. 241,
24  247 (1949).  The issue of guilt has been determined here.  It
25  will not be relitigated at sentencing.  The Second Circuit has

1   emphasized that although defendant has the right to present and
2   contest facts at sentencing that are relevant to the sentence
3   to be imposed, that right does not guarantee the defendant an
4   evidentiary hearing, and sentencing is not the proper forum to
5   relitigate factual issues that were resolved at trial.  *United*
6   *States v. Fullwood*, 86 F.3d 27, 32 (2d Cir. 1996); and *United*
7   *States v. Prescott*, 920 F.2d 139, 144 (2d Cir. 1990).
8            I am directing that outgoing counsel share their files
9   with Mr. Kaley and the others and to stand ready to assist the
10  new attorneys as they get up to speed.  This matter has been
11  delayed long enough.
12           Mr. Kaley, do you have an estimate of how much time
13  the three of you will need to prepare for sentencing?
14           MR. KALEY:  Your Honor, we were hopeful of having
15  sentencing in early to mid-September.
16           We have received from the government the trial record
17  and the exhibits.  As your Honor will recall, the trial was
18  lengthy.  I think the transcript is over 6,000 pages or
19  thereabouts.  The exhibits are quite voluminous and I think,
20  given that Mr. Guo is at the MDC and will be needing the
21  services of the interpreter and meeting him at the MDC, I think
22  that a date early to mid-September would be appropriate and we
23  would submit our papers -- sentencing submission -- three weeks
24  before whenever the Court picked for sentencing.
25           (The Court and law clerk confer)

P485guoC

1           THE COURT:  September 8 at 1:00 p.m.
2           Mr. Guo's submissions are due three weeks before that
3    date.  The prosecution submission has been filed, but to the
4    extent you seek to update it, you can make that decision closer
5    to the sentencing date.
6           MR. FINKEL:  Your Honor, we haven't filed a sentencing
7    submission in Mr. Guo's case.  It was Ms. Wang's.
8           THE COURT:  Oh.  I see.
9           MR. FINKEL:  All we filed that is relevant to
10   Mr. Guo's sentencing is victim statements, which are relevant
11   to both.  The government would request to file the sentencing
12   submission one week prior to sentencing so that we have two
13   weeks to respond.
14          THE COURT:  That is acceptable.
15          Are there any further matters that either party would
16   like to raise?
17          MR. FINKEL:  There are two additional matters, your
18   Honor.
19          First, the government is very mindful of what the
20   Court mentioned today about being bombarded.  So has my office.
21   We have, last count, over a hundred submissions on the docket
22   seeking forfeiture, some compensation as a result of the
23   defendant's crimes.  Outside my office are about seven -- or
24   were about seven bankers' boxes of victim submissions seeking
25   the same.

1          The government would like to move forward the
2   forfeiture process as efficiently and as quickly as possible.
3   We have had some opportunity to discuss with incoming counsel a
4   proposal for that.  We don't have an agreement on that and so
5   we are taking this to your Honor.
6          Given the trial arguments, the defendant largely
7   disclaimed any ownership in G Clubs, the Himalaya Exchange, and
8   various personal property that the government seized pursuant
9   to seizure warrants at and near the time of Mr. Guo's arrest.
10  If Mr. Guo is not going to contest that he has an interest in
11  those bank accounts and personal property, then we can file a
12  notice in Mr. Guo's case, noting for the public that we are
13  forfeiting the assets that were seized, and move forward with a
14  forfeiture and then hopefully, with various approvals in place,
15  a remissions process so that the victims, the thousands of
16  victims who have been deeply harmed financially for years, can
17  start getting their money back.
18          We have provided defense counsel a list of the assets
19  that we want to find out if Mr. Guo is going to contest, which
20  is to say whether he asserts that he has an ownership interest
21  in them that your Honor would need to resolve.  Again, based on
22  the trial, we don't think he is going to do that but that is
23  for him and his counsel to decide.
24          So, we would ask for the defense to get back to us
25  within three weeks, so that would be April 29, to tell us

1   which, if any of the assets, they wish to contest or Mr. Guo
2   thinks he has an ownership interest in.
3             Just to give your Honor a sense of background, there
4   are a lot of assets on that list but they basically fall into
5   three buckets.  The first bucket is bank accounts that were
6   under the control of the Himalaya Exchange.  As your Honor may
7   recall from the trial, the defense arguments were that Guo had
8   nothing to with the Himalaya Exchange.
9             The second bucket are accounts from G Clubs, or assets
10  that were acquired by G Clubs or through the shell of G Clubs
11  such as the Bugatti; the house in Mahwah, New Jersey; the
12  Lamborghini that was found in Mr. Guo's garage, and various
13  bank accounts.  Again, Guo during trial, represented that he
14  was merely a spokesperson and had no ownership interest or
15  control over G Clubs.
16            Then there are a variety of other sort of other bank
17  accounts and smaller personal assets.
18            And so, we would ask that your Honor require the
19  defense to confer with the government and alert the government,
20  by April 29, so three weeks from today, to tell us what, if any
21  of those assets, they intend to contest in a forfeiture
22  proceeding so that we can move forfeiture forward.
23            MR. DRATEL:  Your Honor, we have told the government
24  that we don't think three weeks is reasonable to have a
25  decision on that given that we are just getting into the case

1  and that the trial record -- that there are accounts of
2  acquittal and counts of conviction.  We don't know what impact
3  that has on the forfeitable assets.  We have a process of
4  engaging with our client that requires us to do it in a
5  rational way that, from our experience, works to build that
6  relationship.  And, he is at MDC.  We will need an interpreter.
7  We don't even know if in three weeks we will be able to cover
8  all of that ground.
9           We will get back to them in three weeks but I don't
10 want there to be any, and all of us don't want there to be any,
11 illusion that somehow this is going to be resolved in three
12 weeks.
13          THE COURT:  Do you have a sense of how long you need?
14          MR. DRATEL:  We probably will have a sense within a
15 couple of weeks as to how long, but without first sitting with
16 the client to discuss, essentially, preliminary matters, it is
17 going to be -- I just can't say what the answer will be until
18 we have a more substantive conversation with Mr. Guo on these
19 issues.
20          THE COURT:  So by April 29 I would like a joint letter
21 from the attorneys, hopefully with an agreement as to when,
22 Mr. Dratel, that information will be conveyed to the
23 prosecution.
24          MR. DRATEL:  Thank you, your Honor.
25          MR. FINKEL:  Your Honor, if the purpose of the letter

1   to your Honor is merely for the defense to tell the government
2   when it will tell the government if it is going to contest any
3   of those things, we would ask for two weeks.  Your Honor, the
4   government feels very strongly that the victims need to be
5   addressed here.  I know your Honor feels the same way.  We want
6   to move this process as quickly as we can while being mindful
7   that Mr. Guo is not going to be sentenced until September, so
8   we would ask for two weeks for that.
9            THE COURT:  I do think that three weeks is reasonable
10  so I'm going to grant that application.
11           MR. DRATEL:  Thank you, your Honor.
12           MR. FINKEL:  One other matter, your Honor.
13           At Docket 512 your Honor ordered Mr. Guo's defense
14  team to review the transcripts from December 20th and March 3
15  and file any unprivileged portions on the docket and provide
16  your Honor's chambers with a highlighted version that
17  highlights what, if any materials in those transcripts, need to
18  be redacted for privilege reasons so your Honor can review
19  them.  Mr. Guo's outgoing counsel didn't do that.  We would
20  ask, apparently they don't have the transcripts and didn't seek
21  to get them.  We ask your Honor order incoming counsel to
22  acquire those transcripts and comply with your Honor's order in
23  three weeks.
24           THE COURT:  I think that's a very short amount of time
25  to be able to --

1            MS. SHROFF:  Your Honor, I am sorry to interrupt the
2    Court but I did reach out to the court reporters' office on the
3    matter of the transcripts.  I emailed the court reporters and I
4    followed up.  We are in the process of trying to figure out why
5    the transcription of those transcripts are taking that long.  I
6    was away at ADX last week.  And, as I informed your courtroom
7    staff, after the completion of this proceeding I intend to go
8    down to the court reporters' office so as to resolve the
9    matter.  The moment that the matter is resolved I will be happy
10   to let Mr. Kaley know where matters stand so that either I can
11   finish that project or Mr. Kaley can take it on.  But, the
12   moment the Court ordered us to do so, we reached out to the
13   court reporters' office.
14           THE COURT:  That sounds like an awfully long amount of
15   time for them to take.
16           MS. SHROFF:  And I agree, your Honor, but I also
17   reached out to the individual court reporters and to be honest
18   with the Court, the court reporters' office is extremely
19   responsive every single time I have contacted them so either
20   they are busy because of the time right now with many trials
21   going on or perhaps the person who is the coordinator has been
22   out of her seat.  But I will double-check and I will make sure
23   that it is done.  In fact, I think the court reporter who is in
24   court today is also an individual that I contacted and she also
25   is assisting in the process, Ms. Utter.

1          THE COURT:  So you are including the recommendation
2     for the redactions?
3          MS. SHROFF:  Yes, your Honor.
4          I am happy to make -- because we are the ones who made
5     the application.  I'm happy to complete the task the moment I
6     get the transcripts and provide what it is that we would want
7     redacted, as outgoing counsel.
8          THE COURT:  So you would provide that to incoming
9     counsel?
10          MS. SHROFF:  Absolutely.
11          THE COURT:  And they would review it and make their
12     own determination as to whether those redactions are adequate
13     but we still have the question of the timing.  I just find it
14     very, very surprising that it has taken this long.  I am going
15     to make an inquiry, myself, about the transcript.
16          MS. SHROFF:  I'm happy to tell the Court what date I
17     emailed, if it would help, but I am happy, also as I indicated
18     this morning, to go downstairs to the court reporters' office
19     and find out what the delay is.
20          THE COURT:  Anything further, prosecution on this
21     issue?
22          MR. FINKEL:  May I have just one moment?
23          (Counsel conferring; Court conferring with law clerk)
24          THE COURT:  We have the transcript in chambers, it
25     turns out, so it has been completed so I am being informed by

my law clerk, so you can go ahead and get that transcript and make those recommended redactions and hand it over to the incoming counsel.

MS. SHROFF: We can do that by the end of week, your Honor.

THE COURT: Great.

MR. FINKEL: Great. So by which date shall they be filed and provided to your Honor's chambers?

MR. KALEY: Your Honor, so we are obviously in the dark to all of this. We will get it, we will look at it. We will go see Mr. Guo at the MDC. I am sure that may take more than one visit and it is going to take a little bit of time for us to understand exactly what happened so I'm thinking, and I would like to read some of the transcript beforehand, as well, to have some understanding.

THE COURT: In the joint letter on April 29 you will update me as to when you can get the transcript done.

MR. KALEY: Fine, your Honor. Thank you.

THE COURT: I want to ask the prosecution about the mechanics of these claims. Have special masters been appointed in these cases?

MR. FINKEL: So, your Honor, the government filed a letter motion yesterday asking your Honor to stay the ancillary petitions which is what has generally been filed pending the resolution of Guo's forfeiture proceedings since a lot of the

1    issues are going to be intertwined and it would make sense for
2    your Honor to address them once and for all.
3             What we typically do in a case such as this, which is
4    unique and not typical, is the government will review the
5    petitions, we are in the process of reviewing this now, and
6    bucketize them, categorize them.  A lot of the petitions, from
7    initial review, appear to be petitions from victims seeking
8    money.  The proper forum for them would be through a remission
9    process as opposed to a forfeiture process.  Some of the claims
10   may be from co-conspirators who we don't believe would be
11   entitled to forfeiture.  And some may be -- may be, we have to
12   see -- issues where individuals believe they can identify
13   assets that are theirs, and there may need to be some
14   involvement by your Honor to decide those issues which could be
15   done through fact findings or through issues that are already
16   addressed at trial.
17            Once forfeiture is settled -- and we hope it won't
18   take all that long but there are a lot of petitions here -- at
19   that point, pending MLAR's main justice approval, the
20   government would likely appoint a claims administrator who
21   would intake victim claims, we would treat some of the
22   petitions potentially as remission claims, and then evaluate
23   those various claims and begin to disburse the funds that the
24   government has seized more than $700 million in cash plus
25   property to the victims.

|   |   |
|---|---|
| 1 | So, as I mentioned before, the government wants to |
| 2 | move that process as quickly as practicable.  That is more or |
| 3 | less the overview of what would happen next. |
| 4 | So, from the government's perspective, we are going to |
| 5 | work on categorizing what has already come in and hope to, with |
| 6 | the help of incoming counsel, find a way to address the |
| 7 | defendant's forfeiture claim, if any.  If he doesn't contest |
| 8 | his forfeiture, then we can move to a final order of forfeiture |
| 9 | much sooner and get a claims administrator in place to begin |
| 10 | paying back the victims. |
| 11 | THE COURT:  Is there anything further?  All right, |
| 12 | that brings the proceedings to an end.  The matter is |
| 13 | adjourned. |
| 14 | o0o |