**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| vs. | : No. 1:23-cr-00118 (AT) |
| MILES GUO AND YVETTE WANG, | : |
| Defendants. | : |

_____

**POST OAK MOTORS, LLC'S VERIFIED PETITION**
**FOR DETERMINATION OF THIRD-PARTY INTEREST**
**IN PROPERTY SUBJECT TO PRELIMINARY FORFEITURE ORDER**

Post Oak Motors, LLC d/b/a Post Oak Motor Cars, Ltd. and Bugatti Houston ("Post Oak"), through its attorneys Finn Dixon & Herling LLP, petitions this Court pursuant to 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2(c) and asserts its superior right, title, and interest to specific property subject to this Court's Preliminary Order of Forfeiture as to Specific Property/Money Judgment, ECF 720 (the "Preliminary Forfeiture Order").

**NATURE OF ACTION**

1.      This is a petition to establish Post Oak's ownership of the Bugatti Chiron Super Sport bearing the Vehicle Identification Number VF9SW3V3XNM795047 (the "Bugatti") that the government erroneously seeks to forfeit.

2.      Post Oak is an automotive dealership that specializes in rare and exotic vehicles, and high-value vehicle maintenance. Post Oak is an authorized retailer for Volkswagen Group of America, Inc., d/b/a Bugatti Automobiles of the Americas, and Volkswagen of America, Inc., d/b/a Bugatti Automobiles USA (together, "Bugatti Automobiles"). As an authorized retailer, Post Oak

orders and purchases bespoke vehicles, like the Bugatti, from Bugatti Automobiles for re-sale to Post Oak's customers.

3.  Post Oak entered an agreement with G Club International Limited ("G Club") to sell G Club a Bugatti Chiron Super Sport. Post Oak in turn entered an agreement with Bugatti Automobiles to purchase a Bugatti Chiron Super Sport.

4.  Post Oak paid Bugatti Automobiles in full for the Bugatti and accepted delivery of the Bugatti at its dealership, thereby acquiring title to the vehicle.

5.  However, G Club never took title from Post Oak, as the sale of the Bugatti from Post Oak to G Club was never consummated. While G Club paid Post Oak the amounts due to Post Oak under the agreement, G Club never accepted delivery of the Bugatti (as is required to transfer title under applicable law), never provided necessary information for Post Oak to register the Bugatti in the name of G Club or any individual, and never received a certificate of title to the Bugatti. Post Oak therefore retains title to the Bugatti.

6.  After Post Oak paid Bugatti Automobiles for the vehicle in full and accepted delivery, Post Oak maintained possession, custody, and control of the Bugatti at its dealership until it was seized by the United States Marshals (the "Marshals"). Post Oak fully cooperated with the Marshals in their seizure of the Bugatti. Post Oak also cooperated extensively with the government in its investigation of G Club's attempt to purchase the Bugatti. After the Bugatti was seized, Post Oak has continued to cooperate by providing testimony through its representative at Defendant Miles Guo's criminal trial and by performing regular maintenance on the Bugatti.

7.  Despite its good faith purchase of the Bugatti from Bugatti Automobiles, Post Oak has now been placed in an unjust and untenable position by duplicative claims from the government in this forfeiture matter and from the chapter 11 trustee appointed in Defendant Guo's

bankruptcy proceedings pending in the District of Connecticut (the "Trustee"), both of whom purport to be acting in the interests of Defendant Guo's creditors and victims. The government seeks to forfeit a vehicle Post Oak paid for and to which it retains title under the law, while the Trustee has asserted claims against Post Oak seeking to recover funds paid by G Club toward its purchase of the Bugatti—funds Post Oak no longer has because they were passed in good faith almost immediately to Bugatti Automobiles to satisfy the purchase price Post Oak owed for its purchase of the vehicle. *See Despins as Chapter 11 Trustee v. Post Oak Motors, LLC*, No. 24-05017 (Bankr. D. Conn. Feb. 9, 2024).

8. Because the government seeks to forfeit the vehicle, which Post Oak still owns, while the Trustee seeks the funds paid by G Club, which Post Oak used to purchase the vehicle from Bugatti Automobiles, Post Oak is in an impossible position and has no choice but to petition the Court to confirm its ownership of the Bugatti. Post Oak does not seek any windfall through these proceedings: by establishing its ownership of the Bugatti and obtaining its return, Post Oak seeks only to protect itself against millions of dollars in losses as a result of nothing more than its good faith participation in what it reasonably believed at the time was a routine transaction.

## **PARTIES**

9. Post Oak is a Texas limited liability company with its principal place of business in Texas.

10. Defendant Guo is one of the two defendants in this criminal action. According to the government's allegations, Defendant Guo is affiliated with G Club, ECF 2 ¶ 10, the entity with which Post Oak contracted for the sale of the Bugatti.

11. The United States of America is prosecuting Defendant Guo and has obtained the Preliminary Forfeiture Order, which it seeks to enforce against Post Oak's property.

3

**PROCEDURAL HISTORY**

12. On information and belief, on March 15, 2023, Defendant Guo was arrested pursuant to an indictment filed on March 6, 2023. *See* ECF 2. The indictment charged Defendant Guo with several counts including conspiracy, wire fraud, securities fraud, and money laundering. *Id.* The indictment also contained the following forfeiture allegations:

> [Defendants] shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(l)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses and, and [sic] the following specific property:
>
> …
>
> A Bugatti Chiron Super Sport, bearing Vehicle Identification Number VF9SW3V3XNM795047[.]

*Id.* ¶ 54(w).

13. On July 16, 2024, the jury found Defendant Guo guilty on Counts One (Racketeering Conspiracy), Two (Conspiracy to Commit Wire Fraud or Bank Fraud), Three (Conspiracy to Commit Money Laundering), Four (Conspiracy to Commit Securities Fraud), Seven (Wire Fraud for a Farm Loan Program), Eight (Securities Fraud for a Farm Loan Program), Nine (Wire Fraud related to "G|Clubs"), Ten (Securities Fraud related to "G|Clubs"), and Eleven (Wire Fraud related to the Himalaya Exchange). ECF 395.

14. On August 11, 2025, the Court entered the Preliminary Forfeiture Order against Defendant Guo.[1] The Preliminary Forfeiture Order preliminarily forfeited to the government all of

---

[1] The Bugatti was previously identified in the Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment as against Defendant Yvette Wang. *See* ECF 488, at ¶ aa. The government thereafter requested that the forfeiture matters as to Defendant Wang be stayed pending entry of the Preliminary Forfeiture Order as to Defendant Guo. ECF 671. Post Oak timely secured the government's agreement that any petition with respect to the Bugatti would be filed in connection with the Preliminary Forfeiture Order as to Defendant Guo.

4

the Defendant's right, title, and interest to the Bugatti, subject to the adjudication of third-party interests. ECF 720.

## BACKGROUND

### I.    Post Oak's Business

15.    Post Oak is a luxury automotive dealership that sells exotic vehicles and "hypercars," high-performance cars boasting advanced automotive technology that are generally manufactured in limited production allocations and typically sell for millions of dollars.

16.    Hypercars are often manufactured on a bespoke basis. Instead of purchasing a car from a dealership's inventory, purchasers contact dealerships to order a vehicle configured by the manufacturer to the purchaser's desired specifications. These specifications can include interior and exterior colors, material used in the wheels and trim, accessories, and other details. The car is then manufactured pursuant to the specifications, and purchased by the dealership for re-sale to the customer.

17.    Bugatti manufactures hypercars, including the Chiron model. The Bugatti Chiron was produced in a limited production run of just 500 vehicles across all trim levels. One such trim level of the Bugatti Chiron is the Super Sport, of which fewer than 100 were manufactured.

### II.    Post Oak's Relationship with Bugatti Automobiles

18.    Post Oak is party to a Retailer Agreement with Bugatti Automobiles, which allows Post Oak to act as an authorized dealer of vehicles manufactured by Bugatti Automobiles, including the Bugatti Chiron Super Sport.

19.    The Retailer Agreement incorporates certain Standard Provisions and Retailer Operating Standards, which, among other things, govern Post Oak's dealings with Bugatti Automobiles and certain aspects of its operation of its dealership and the sales of vehicles manufactured by Bugatti Automobiles to Post Oak's customers.

5

20. Under the Retailer Agreement, Post Oak is permitted to purchase vehicles from Bugatti Automobiles for re-sale to Post Oak's customers, pursuant to purchase terms established by Bugatti Automobiles.

21. The Retailer Agreement is governed by Texas law.

22. Vehicles are considered "goods," and therefore transactions involving vehicles are subject to the Texas Business and Commerce Code, the version of the Uniform Commercial Code ("UCC") adopted in Texas. Tex. Bus. & Com. Code § 2.105(a) (defining "Goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Chapter 8) and things in action."); *One Ford Mustang, VIN 1FAFP40471F207859 v. Texas*, 231 S.W.3d 445, 451 (Ct. App. Tex. 2007) ("Motor vehicles necessarily fit within this definition [of 'goods'].") (citing Tex. Bus. & Com. Code § 2.105(a)).

23. Under the Texas Business and Commerce Code, title to a vehicle passes upon physical delivery of the vehicle unless agreed otherwise by the parties. Tex. Bus. & Com. Code § 2.401(a) ("[T]itle to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties."); *id.* at § 2.401(b) ("Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods."); *see also, e.g.*, *First Nat. Bank of El Campo, Tx v. Buss*, 143 S.W.3d 915, 920 (Tex. App. 2004) ("The Code provides, unless otherwise explicitly agreed, that title passes to the buyer at the time and place at which the seller completes performance with reference to the physical delivery of the goods.") (citing Tex. Bus. & Com. Code § 2.401(b)).

24.     Here, Post Oak and Bugatti Automobiles agreed expressly as to when title to the Bugatti purchased by Post Oak would transfer from Bugatti Automobiles to Post Oak.

25.     According to the Retailer Agreement, title to vehicles purchased by Post Oak from Bugatti Automobiles remains with Bugatti Automobiles until Bugatti Automobiles receives the purchase price in full.

26.     Specifically, the Retailer Agreement provides that: (i) in the event a vehicle is delivered to Post Oak prior to receipt of the entire purchase price, Bugatti Automobiles retains a purchase price security interest in the vehicle; (ii) upon delivery of the vehicle to Post Oak, Post Oak assumes, and must insure against, all risks to the vehicle; and (iii) upon payment of the purchase price in full, title transfers to Post Oak.

### III.    G Club Agrees to Purchase the Bugatti from Post Oak

27.     A dealership in the United Kingdom, H.R. Owen, contacted Post Oak because its customer, Mileson Guo, and his company G Club were interested in purchasing a Bugatti Chiron Super Sport configured for use in the United States. H.R. Owen required a U.S. retailer to handle the transaction.

28.     Post Oak had no prior knowledge of or dealings with Defendant Guo or G Club and accepted the referral from H.R. Owen.

29.     At the time of the referral, G Club provided H.R. Owen with a configuration of the Bugatti Chiron Super Sport it sought to purchase, reflected in a Personal Configuration dated October 25, 2021.

30.     On October 28, 2021, Post Oak and G Club (through Limarie Reyes, the Chief Executive Officer of G Club), executed a Supplemental Terms of Purchase for a Bugatti Chiron Super Sport (the "Supplemental Terms"), which, among other things, contemplated a series of deadlines for G Club to make payments to Post Oak toward the purchase price of the Bugatti. The

7

Supplemental Terms also included the final configuration of the Bugatti to be ordered by Post Oak from Bugatti Automobiles.

31. Post Oak received a small commission from Bugatti Automobiles for its work on the transaction, which it split with H.R. Owen.

**IV. Post Oak Orders, Pays For, and Accepts Delivery of the Bugatti**

32. Relying on G Club's agreement to the Supplemental Terms, Post Oak placed an order for the Bugatti with Bugatti Automobiles, and received invoices from Bugatti Automobiles for the amounts due from Post Oak.

33. Following receipt of a series of payments from G Club for the Bugatti, in December 2022 Post Oak made the final payment due to Bugatti Automobiles for Post Oak's purchase of the vehicle.

34. Pursuant to the Retailer Agreement, title passed from Bugatti Automobiles to Post Oak once the vehicle was paid for in full.

35. The transfer of title from Bugatti Automobiles to Post Oak is further evidenced by the issuance on January 5, 2023 of a Manufacturer's Certificate of Origin ("MCO") for the Bugatti, certifying that the Bugatti was transferred to Post Oak Motor Cards, Ltd.

36. The Bugatti was delivered to Post Oak on January 10, 2023. Post Oak accepted the delivery.

37. As title holder and pursuant to the terms of the Retailer Agreement, all risks with respect to the Bugatti were borne by Post Oak upon delivery of the vehicle to its premises. Post Oak maintained insurance for the Bugatti, and was required to perform complex and costly maintenance of the vehicle on a regular basis.

38. Post Oak's facilities include surveilled garages with controlled access points, and Post Oak utilizes a digital lockbox to safeguard the keys to the vehicles in its inventory. In short,

8

Post Oak had possession, custody, and control of the Bugatti in addition to having title to the Bugatti.

## V. Post Oak's Sale of the Bugatti to G Club was Never Consummated

39. Despite Post Oak's receipt of the funds due from G Club under its agreement to purchase the Bugatti, Post Oak's sale of the Bugatti to G Club was never consummated.

40. The Supplemental Terms designate the application of Virginia law. However, the distinction between the Texas and Virgina versions of the UCC is irrelevant here.[2] In both jurisdictions, title to a vehicle passes upon physical delivery, unless the parties explicitly agree otherwise. *Compare* Tex. Bus. & Com. Code § 2.401(b) ("Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods") *with* Va. Code 8.2-401(2) (same).

41. The agreement between Post Oak and G Club does not contain any agreement regarding the passing of title. To the contrary, the Supplemental Terms provide that Post Oak will provide notice to G Club when the vehicle is available for G Club to take possession, and that G Club is required to take possession of the vehicle within a certain time period of receiving such notice. Therefore, the default rule under the UCC controls here: title would pass upon Post Oak's delivery of the Bugatti to G Club.

42. But Post Oak never delivered the Bugatti. Although Post Oak attempted to elicit the necessary information from G Club to finalize the delivery, G Club stopped responding to Post

---

[2] As in Texas, in Virginia motor vehicles qualify as "goods" and are governed by Virgina's version of the UCC. Va. Code § 8.2-105(1) (defining "Goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Title 8.8A) and things in action."); *see also, e.g., Manassas Autocars, Inc. v. Couth*, 274 Va. 82 (2007) (applying the UCC as adopted in Virginia to a dispute over a vehicle).

9

Oak, and the delivery was never completed. Therefore, title to the vehicle never passed from Post Oak to G Club.

43. Post Oak retained possession, custody, and control of the Bugatti until May 11, 2023, when Post Oak cooperated with the government in its seizure of the vehicle.

44. G Club's failure to take delivery was a significant missing step in the contemplated transaction, implicating not only the transfer of title, but various other rights and obligations.

45. The fact that title to the Bugatti was never transferred to G Club is further evidenced by Post Oak's retention and current possession of the MCO.

46. An MCO, also sometimes known as a Manufacturer's Statement of Origin or MSO, is a necessary step in obtaining a title for a vehicle. In order to register a car after a purchase, the relevant state's Departments of Motor Vehicles ("DMV") or analogous state agency requires the MCO to establish the vehicle's origin and the chain of ownership, first from the manufacturer to the dealership, and then in turn from the dealership to the purchaser. Only on receipt of the MCO will a DMV issue a certificate of title and registration to the vehicle's new owner.

47. That did not happen here. Post Oak never provided the MCO to G Club or any affiliated individual, and neither G Club nor anyone affiliated with it ever received title to the Bugatti.

48. Until the government's seizure of the Bugatti, Post Oak continued to insure the vehicle and bear all risks. Indeed, Post Oak has continued to service the Bugatti even after the government seized it.

49. After seizure of the vehicle, Post Oak continued to cooperate with the government in connection with Defendant Guo's trial. Lonny Soza, Post Oak's General Manager based in

Texas, met with prosecutors on two separate occasions and testified at Defendant Guo's trial in New York on June 6, 2024 regarding Post Oak's dealings with G Club.

### VI. The Government's Erroneous Claim to the Bugatti

50. The Preliminary Forfeiture Order includes the Bugatti in the list of assets regarding which the government "seeks the forfeiture of all Defendant's right, title, and interest."

51. But the government has no claim to the Bugatti because Defendant Guo never had any right, title, or interest in the Bugatti that could be forfeited to the government. First, the prospective purchaser of the Bugatti was G Club, not Defendant Guo. G Club is not a defendant in this action, and there is no preliminary forfeiture as to any interests it could have had in the Bugatti. Second, the sale was never completed, and title in the Bugatti never passed to G Club (or Defendant Guo) under applicable law.

52. Accordingly, Post Oak, not Defendant Guo or G Club, had right, title, and interest in the Bugatti at all relevant times, including "at the time of the acts which gave rise to the forfeiture of the property." 21 U.S.C. § 853(n)(6)(A).

53. For the foregoing reasons, the Bugatti is not subject to forfeiture, should be excluded from any final forfeiture order, and should be returned to Post Oak.

### PRAYER FOR RELIEF

WHEREFORE, Post Oak respectfully requests a final judgment:

A. declaring that Post Oak possesses right, title and interest to the Bugatti Chiron Super Sport bearing Vehicle Identification Number VF9SW3V3XNM795047 superior to the government and all other petitioners;

B. excluding the Bugatti Chiron Super Sport bearing Vehicle Identification Number VF9SW3V3XNM795047 from any final order of forfeiture entered in this action;

C. enjoining the government to turn over to Post Oak the Bugatti Chiron Super Sport bearing Vehicle Identification Number VF9SW3V3XNM795047;

D. awarding Post Oak its attorney's fees; and

    E.    providing such other and further relief as the Court deems just and proper.

Dated: September 10, 2025
       Stamford, Connecticut

                                        Respectfully submitted,

                                        FINN DIXON & HERLING LLP

                                        By:   */s/ David R. Allen*
                                                    David R. Allen
                                                    Eli Yampel
                                                    dallen@fdh.com
                                                    eyampel@fdh.com
                                                   Six Landmark Square
                                                   Stamford, Connecticut 06901
                                                   Tel: (203) 325-5000
                                                   Fax: (203) 325-5001

                                                   *Attorneys for Petitioner*
                                                   *Post Oak Motors, LLC*

## VERIFICATION

I, Lonny Soza, General Manager at Post Oak Motors, LLC, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read Post Oak Motors, LLC's Verified Petition for Determination of Third Party Interest in Property Subject to Forfeiture and verify that the statements contained therein are true and accurate to the best of my knowledge.

Dated:        September __8__, 2025

                                                                                                                                 _____
                                                                                                                                 Lonny Soza
                                                                                                                                 General Manager, Post Oak Motors, LLC

**CERTIFICATION**

I hereby certify that on September 10, 2025, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

By: */s/ David R. Allen*
David R. Allen
FINN DIXON & HERLING LLP
Six Landmark Square
Stamford, CT 06901-2704
Tel: (203) 325-5000
Fax: (203) 325-5001
E-mail: dallen@fdh.com