UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA | **SUPPLEMENTAL THIRD-PARTY PETITION TO ADJUDICATE PETITIONER'S INTEREST IN FORFEITED PROPERTY AND TO AMEND THE PRELIMINARY ORDER OF FORFEITURE ENTERED AS TO DEFENDANT MILES GUO** |
| - v. - | |
| MILES GUO, | |
| Defendant. | |

**CLAIM OF HAMILTON OPPORTUNITY FUND SPC WITH REGARD TO FUNDS IN ACCOUNT NUMBER 5090042770 SEIZED FROM SILVERGATE BANK**

S3 23 Cr. 118 (AT)

Petitioner Hamilton Opportunity Fund SPC (the "Petitioner"), by and through its undersigned counsel, submits this Supplemental Third-Party Petition to Adjudicate Petitioner's Interest in Forfeited Property and to Amend the Preliminary Order of Forfeiture Entered as to Defendant Miles Guo, pursuant to 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2(c) (the "Supplemental Petition"), and respectfully states as follows:

## I.    PRELIMINARY STATEMENT

This case presents a unique forfeiture posture which requires Petitioner to file this supplement to the petition it filed on April 7, 2025 (ECF 674) to assert its rights in Petitioner's Property (the "Petitioner's Property") (as more fully described below). The United States Government (the "Government") seeks to forfeit substantially the same property, including Petitioner's Property, in connection with the prosecution of two alleged co-conspirators, Yvette Wang ("Defendant Wang") and Miles Guo ("Defendant Guo"), whose criminal cases have

1

nevertheless proceeded on two separate tracks. Defendant Wang's criminal case concluded first when she pled guilty on May 3, 2024. On January 7, 2025, this Court entered a Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment concerning Defendant Wang (the "Wang Forfeiture Order") (ECF 488), thereby triggering the ancillary proceedings as to Defendant Wang, more than half a year before the Government sought a forfeiture order as to Defendant Guo.[1] As such, in response to the Wang Forfeiture Order, Petitioner filed a verified ancillary petition (the "HOF Wang Ancillary Petition") asserting its vested and superior right, title and interest in Petitioner's Property. *See* ECF 674. Petitioner's Property is comprised of funds formerly deposited in Account No. 5090042770 at Silvergate Bank ("Account 2770") and held in the name of Petitioner (the funds in Account 2770 represent "Petitioner's Property"). Petitioner has a legal right, title, or interest in Petitioner's Property pursuant to 21 U.S.C. §853(n)(6)(A) by virtue of being the named account owner of Accounts 2770 and by virtue of having full dominion and control over the funds therein (i.e. Petitioner's Property). ECF 674 at 15.

As described in the HOF Wang Ancillary Petition (and further expounded herein), Petitioner's Property is comprised solely of lawful funds belonging to the legitimate investors in Class B shares of Petitioner's segregated portfolio, Hamilton M&A Fund SP (the "M&A Fund Investors"). *See, e.g.,* ECF 674 at 2. The majority of the M&A Fund Investors (the "Petitioning Investors") have also filed their individual third-party ancillary petitions with respect to the Wang Forfeiture Order (the "Petitioning Investors' Wang Ancillary Petitions")[2] and now, the Guo

---

[1] This Court entered a preliminary order of forfeiture against Defendant Guo on August 11, 2025 (the "Guo Forfeiture Order"). ECF 720.

[2] *See* ECF 529-535; 538-539; 541-552; 558; 560-567; 570-573; 575; 577-581; 583-594; 598-611; 613-615; 619-621; 623-642; 645; 647; 649-650; 656-657; 659-661; 664-665; 667-670; 675; 677.

Forfeiture Order (the "Petitioning Investors' Guo Ancillary Petition") (ECF 755).

As stated in the HOF Wang Ancillary Petition, Petitioner filed that petition only out of an abundance of caution, in the event the Court does not agree with the Petitioning Investors' arguments regarding a constructive trust and, instead, determines that the Petitioning Investors' money should still be considered the property of Petitioner, as well as to assist any M&A Fund Investors who do not file petitions. ECF 674 at 2. For the same reasons, Petitioner submits this Supplemental Petition. Petitioner reiterates, as stated in the HOF Wang Ancillary Petition, that in the event that this Court determines that the M&A Fund Investors' money is the property of Petitioner, Petitioner will return the M&A Fund Investors' money in accordance with the provisions of the Subscription Agreement (as that term is defined in the HOF Wang Ancillary Petition). *See* ECF 674 at 5.

Notably, immediately following the filing of the HOF Wang Ancillary Petition, the Government moved to stay (the "Motion to Stay") (ECF 671) resolution of all ancillary petitions filed with respect to Defendant Wang's forfeiture proceedings pending entry of a preliminary order of forfeiture against Defendant Guo. In doing so, the Government represented to the Court that it "is prepared to deem [the ancillary petitions filed in connection with Defendant Wang] filed in connection with a Guo ancillary proceeding, once the Court enters a preliminary order of forfeiture against Guo." Motion to Stay, ECF 671 at 3. The Court granted the Motion to Stay on April 15, 2025. ECF 691. On August 21, 2025, the Government likewise published guidance, stating "third parties that have filed Petitions with the United States District Court, Southern District of New York objecting to the Government's forfeiture do not need to submit an additional

Petition following the entry of Guo's preliminary forfeiture order."[3]

Based on these representations from the Government, Petitioner understands that the HOF Wang Ancillary Petition is "deemed filed" in the ancillary proceedings concerning Defendant Guo.[4] As such (and given that the same property is at issue in both forfeiture actions), to promote judicial economy by avoiding duplicative, voluminous filings[5], Petitioner only submits this Supplemental Petition for the purpose of presenting additional authority specific to Defendant Guo and the Guo Forfeiture Order. This Supplemental Petition does not alter or negate any arguments previously advanced in the HOF Wang Ancillary Petition; it simply addresses new issues that arose due to the Guo Forfeiture Order.

As established in the HOF Wang Ancillary Petition, Petitioner has a legal right, title, and interest in Petitioner's Property. ECF 674 at 15. As further established in the HOF Wang Ancillary Petition and additionally demonstrated herein, that interest is both vested in Petitioner and is superior to any right, title, or interest claimed by Defendant Guo, Defendant Wang, or the Government. Petitioner's Property is comprised solely of funds that were lawfully invested by the M&A Fund Investors, has no nexus to the conduct charged in either criminal case, and

---

[3] https://www.justice.gov/usao-sdny/united-states-v-ho-wan-kwok-aka-miles-guo-and-kin-ming-je-aka-william-je (last visited on October 20, 2025).

[4] However, to the extent necessary, Petitioner hereby expressly incorporates by reference the HOF Wang Ancillary Petition, including the individualized verification and the supporting documentation provided in the HOF Wang Ancillary Petition, into the Guo forfeiture proceeding so that it is considered as part of the record in this Guo forfeiture proceeding.

[5] The Government similarly noted that resolving the ancillary petitions as to both Defendant Wang and Defendant Guo in a single proceeding "would promote judicial efficiency by allowing litigation and resolution of all competing petitions to the Subject Properties to occur within a single ancillary proceeding, that is, the ancillary proceeding that would follow entry of a preliminary forfeiture order against Guo; as such, petitioners would avoid any real or perceived obligation to file petitions to the same assets in two separate ancillary proceedings." ECF 671 at 2.

therefore lies wholly outside the scope of property subject to forfeiture in either proceeding.

For all of the reasons set forth in the HOF Wang Ancillary Petition, in the Petitioning Investors' Wang Ancillary Petitions, the Petitioning Investors' Guo Ancillary Petition, and as further supplemented below as to Defendant Guo, Petitioner respectfully requests that this Court: (1) grant this Supplemental Petition and the HOF Wang Ancillary Petition; (2) amend the Guo Forfeiture Order and the Wang Forfeiture Order to exclude Petitioner's Property; (3) order the immediate return of Petitioner's Property to the M&A Fund Investors or, in the alternative, to the Petitioner so that Petitioner can return the funds to the M&A Fund Investors; (4) order that Petitioner is entitled to recover Petitioner's attorneys' fees and costs incurred in connection with this Supplemental Petition (and the HOF Wang Ancillary Petition) and grant Petitioner leave to submit an application for such attorneys' fees and costs; and (5) grant such and other relief that is necessary and just.

## II.    FACTS RELEVANT TO DEFENDANT GUO

1.      On March 6, 2023, this court unsealed an indictment charging Defendant Guo with various fraud and conspiracy-related offenses. ECF 2.

2.      On April 24, 2024, the Government filed the third superseding indictment (the "Third Superseding Indictment"). ECF 307. The Third Superseding Indictment remains the operative charging instrument against Defendant Guo.

3.      Defendant Guo pled not guilty to all the offenses charged against him. Accordingly, a jury trial was held between May 22, 2024 and July 16, 2024 (the "Guo Trial"). On July 16, 2024, the jury found Defendant Guo guilty of Counts One through Four, and Seven through Eleven of the Third Superseding Indictment. Those counts are: Racketeering Conspiracy (Count One); Conspiracy to Commit Wire Fraud or Bank Fraud (Count Two); Conspiracy to Commit Money Laundering (Count Three); Conspiracy to Commit Securities Fraud (Count Four); Wire Fraud –

Farm Loan Program (Count Seven); Securities Fraud – Farm Loan Program (Count Eight); Wire Fraud – G|CLUBS (Count Nine); Securities Fraud - G|CLUBS (Count Ten); Wire Fraud – The Himalaya Exchange (Count Eleven). ECF 395.

4. Defendant Guo was found not guilty on the remaining charges: Wire Fraud – GTV Private Placement (Count Five); Securities Fraud – GTV Private Placement (Count Six); and Unlawful Monetary Transaction (Count Twelve). ECF 395.

5. As of the date of this filing, Defendant Guo has not yet been sentenced.

6. On July 28, 2025, the Government filed a letter motion requesting that the Court enter a preliminary order of forfeiture in Defendant Guo's case (the "Forfeiture Motion"). ECF 716.

7. The Forfeiture Motion sought a Court order ordering "Guo to forfeit his ***interest in the G entities*** that formed part of his racketeering enterprise, the ***proceeds he obtained*** during the course of the fraud, ***and property involved*** in the laundering of the proceeds." Forfeiture Motion, ECF 716 at 1 (emphasis added).

8. On August 11, 2025, the Court entered the Guo Forfeiture Order. ECF 720.

9. In relevant part, the Guo Forfeiture Order forfeited "all of Defendant [Guo's] right, title and interest" in certain Specific Property (as that term is defined in the Guo Forfeiture Order), including Account 2770. ECF 720 at 3-4. According to the Guo Forfeiture Order, this Specific Property (including Account 2770) is forfeitable because it "constitute[es] proceeds of the offenses charged in Counts One, Two, Four and Counts Seven through Eleven and/or property involved in the offense charged in Count Three of the Indictment." ECF 720 at 11.

## III.   ARGUMENT

### A.   Legal Standard

10. In an ancillary criminal forfeiture proceeding pursuant to 21 U.S.C. § 853(n) and

Federal Rule of Criminal Procedure 32.2(c)(1), this Court must determine, by a preponderance of the evidence, whether a petitioner has a legal right, title, or interest in the property to be forfeited, and whether such right, title, or interest renders the order of forfeiture invalid, in whole or in part, because such interest was vested in the petitioner rather than the defendant, or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property. *See* 21 U.S.C. § 853(n)(6)(A).

11.     Here, as argued in the HOF Wang Ancillary Petition, Petitioner has a legal right, title, or interest in Petitioner's Property by virtue of being the named account owner of Account 2770 and by virtue of having full dominion and control over the funds therein (i.e. Petitioner's Property). ECF 674 at 15.

12.     Moreover, Petitioner's interest in Petitioner's Property is both vested in Petitioner and superior to any right that Defendant Guo, Defendant Wang, or the Government could claim in Petitioner's Property, because Defendant Guo, Defendant Wang and/or the Government never possessed a legal or equitable interest in Petitioner's Property. Accordingly, the Guo Forfeiture Order should be modified to remove Petitioner's Property, and Petitioner's Property should be returned to the M&A Fund Investors directly or, in the alternative, to the Petitioner to return to the M&A Fund Investors.

### B.     Petitioner Has a Legal Right, Title and Interest in Petitioner's Property

13.     In its verified HOF Wang Ancillary Petition, Petitioner established its legal right, title, and interest in Petitioner's Property. *See* ECF 674 at 15. The underlying facts demonstrating Petitioner's right, title and interest in Petitioner's Property remain the same regardless of whether the Government is claiming forfeiture is appropriate based on the conduct of Defendant Wang or Defendant Guo. Accordingly, Petitioner incorporates by reference the factual and evidentiary showings set forth in the HOF Wang Ancillary Petition as if fully restated herein and respectfully

refers the Court to the HOF Wang Ancillary Petition, which sets forth the basis for Petitioner's interest in Petitioner's Property. *See, e.g.,* ECF 674.

### C.   Petitioner's Interest Is Vested in Petitioner and Is Superior to Any Interest of Defendant Wang, Defendant Guo or the Government

14.    Petitioner's interest in Petitioner's Property is vested in Petitioner and superior to any right, title, or interest that Defendant Guo, Defendant Wang, or the Government could claim in Petitioner's Property. As set forth in the HOF Wang Ancillary Petition, Defendant Wang never possessed any such interest, and her consent to the entry of the Wang Forfeiture Order as to Petitioner's Property was wholly illusory, as Defendant Wang cannot forfeit an interest she never had. *See e.g.* ECF 674 at 8-16. As discussed below, neither Defendant Guo nor the Government can claim an interest in Petitioner's Property sufficient to justify forfeiture.

### a)   Defendant Guo Does Not Have an Interest in Petitioner's Property

15.    The Government has asserted that Defendant Guo "cannot credibly claim an interest in the listed property." Forfeiture Motion, ECF 716 at 4. And Defendant Guo has elected not to take a position on the matter. *See* ECF 710 at 2 ("In light of the unique circumstances set forth above, Mr. Guo is unable to take a position with respect to issues regarding potential forfeiture and remission of money and property seized by the Government in connection with this case"). Thus, Defendant Guo is certainly not arguing that the right, title and interest in Account 2770 (and the funds therein) was vested in him rather than in Petitioner.

16.    The evidence presented during Defendant Guo's criminal trial supports Petitioner's position that Defendant Guo had no ownership interest in Account 2770 or the funds therein - there was no evidence in the written record or presented at Defendant Guo's trial that Defendant Guo was a signatory on Account 2770, owned Account 2770, or operated Account 2770. In fact, at Defendant Guo's trial, the evidence showed that the M&A Fund Investors deposited money into

Account 2770 as a means of investing in a bank. *See infra* at ¶¶ 24-26. The CEO of that bank, James Robert Collins, testified that in connection with this investment, Petitioner made representations to the Office of the Commissioner of Financial Institutions of Puerto Rico (the "OCIF") that Defendant Guo "was not a UBO, that none of the money involved in the fund that was actually making the investment was part of Miles Guo's money or estate." Guo Trial, 6/17/2024, 2795:15-2796:5.

17.    Similarly, there is no evidence in the record that Defendant Guo ever deposited money into Account 2770, or otherwise had any control over Account 2770, and there is no evidence that Defendant Guo ever directed anyone to deposit any money into Account 2770.

### b)    *The Government Does Not Have an Interest in Petitioner's Property*

18.    Nor does the Government have any right, title, or interest in Petitioner's Property. Here, the Government asserts that it is seeking to forfeit funds in certain bank accounts, including Account 2770, because such funds are "derived from proceeds of the G Enterprise and property involved in money laundering." *See* Forfeiture Motion, ECF 716 at 4-5. However, in order to prove a right to forfeiture, it is not enough for the Government to claim (without proving) that the funds are part of criminal activity. Rather, the Government must demonstrate that the property it claims is forfeited was obtained by, belonged to, or was controlled by, the defendant.

19.    Importantly, the Government's interest with respect to any property it seeks to forfeit can vest only through the relation-back doctrine codified in 21 U.S.C. § 853(c). The relation-back doctrine provides that the Government's rights, if any, relate back to the time of the

acts giving rise to forfeiture only with respect to property described in 21 U.S.C. § 853(a),[6] that is,

(1) property constituting, or derived from, proceeds the defendant obtained directly or indirectly

as the result of the offense,[7] and (2) property used, or intended to be used, to commit or facilitate

the offense.[8] In a criminal forfeiture proceeding, the Government acquires only the **defendant's**

---

[6] 21 U.S.C. § 853(a) has three provisions, but it appears that the Government is not seeking to forfeit Petitioner's Property pursuant to § 853(a)(3) or its functional equivalent, 18 U.S.C. § 1963(a)(2). Both statutes provide for forfeiture of defendant's property that affords a source of control (or source of influence) over the continuing criminal enterprise. There is no indication that the Government seeks forfeiture of Petitioner's Property under these provisions, as the Government is only seeking forfeiture of funds in various bank accounts on the ground that they were "derived from proceeds of the G Enterprise and property involved in money laundering." *See* Forfeiture Motion, ECF 716, at 4-5; *see also* Guo Forfeiture Order, ECF 720 at 3-11 (stating that Government seeks forfeiture of "all Defendant's rights, title, and interests" in certain property, including Petitioner's Property, because the property "constitut[es] proceeds of the offenses charged in Counts One, Two, Four, and Counts Seven through Eleven and/or property involved in the offense charged in Count III"). Even if the Government sought to obtain forfeiture through 21 U.S.C. § 853(a)(3), any such argument would be futile. As demonstrated herein, the Government has never alleged, let alone proved, that Defendant Guo possessed any ownership interest in, or exercised any control over, Account 2770 or the funds held therein. To the contrary, as argued above, in the HOF Wang Ancillary Petition, in the Petitioning Investors' Wang Ancillary Petition, and the Petitioning Investors' Guo Ancillary Petition, the record shows that the funds that comprise Petitioner's Property were lawfully invested by M&A Fund Investors in connection with a legitimate, regulated investment, wholly unrelated to Defendant Guo's or Defendant Wang's conduct alleged in the criminal case. Because Defendant Guo neither owned nor controlled Account 2770, the Government cannot plausibly contend that the account afforded him a "source of control" over any alleged enterprise within the meaning of § 853(a)(3) or 18 U.S.C. § 1963(a)(2).

[7] *See* 21 U.S.C. § 853(a)(1). This statute is the functional equivalent of 18 U.S.C. § 981(a)(1)(C) and 18 U.S.C. § 1963(a)(3) – the statutes pursuant to which the Government is seeking to forfeit property for Counts One, Two, Four, and Five through Eleven. *See e.g.* Guo Forfeiture Order, ECF 720 at 2.

[8] *See* 21 U.S.C. § 853(a)(2). This statute is the functional equivalent of 18 U.S.C. § 982(a)(1), the statute pursuant to which the Government is seeking to forfeit property for Counts Three and Twelve. *See e.g.* Guo Forfeiture Order, ECF 720 at 2.

interest in the property.[9] "Because criminal forfeiture follows the defendant as part of his penalty, the Government may seize any of the ***defendant's*** property that is traceable to the proceeds of criminal conduct." *U.S. v. Bailey*, No. 1:11CR10, 2012 WL 569744, at *14 (W.D.N.C. Feb. 22, 2012) (internal citations omitted and emphasis in original).

20.     For the fraud-based counts (Counts Two, Four, and Five through Eleven of the Third Superseding Indictment) and the RICO count (Count One), the case law is clear that forfeiture can only reach property that was obtained by Defendant Guo *himself* or derived from proceeds that he *personally* acquired. *See e.g. United States v. Elias*, No. 23-6626, 2025 WL 2845482, at *10 (2d Cir. Oct. 8, 2025) (finding that "criminal forfeiture may be imposed only in relation to a *specific defendant's* offenses") (emphasis added); *see also id.* at *9 (stating that forfeiture under 18 U.S.C. § 981(a)(1)(C) reaches only "tainted property acquired or used by ***the defendant***") (*citing Honeycutt v. United States,* 581 U.S. 443, 450 (2017) (emphasis added)); *see also* 18 U.S.C. § 1963(a)(3) (RICO statute forfeiture provision that states that forfeiture extends only to "any property constituting, or derived from, any proceeds which ***the person*** obtained, directly or indirectly, from racketeering activity").

21.     Similarly, for the money laundering count, the case cited by the Government,

---

[9] It is thus unclear what the Government's interest would relate back to. The Government's interest under § 853(c) is purely derivative of the defendant's interest. *See United States v. Huntington Nat. Bank*, 682 F.3d 429, 433 (6th Cir. 2012) (stating that "through the relation-back doctrine, the government steps into the shoes of the defendant acquiring only the rights of the defendant at the time of the criminal acts, and nothing more") (internal citations omitted). Here, the Government affirmatively argues that Defendant Guo has no interest in any of the assets sought to be forfeited (Forfeiture Motion, ECF 716 at 4) and Defendant Guo has apparently disclaimed any interest in any property to be forfeited. *See* ECF 710. Based on both these representations, the Government's interest cannot "relate back" to a right, title or interest Defendant Guo did not and does not have. The Government therefore has no valid basis to claim forfeiture of assets that were never Defendant Guo's to forfeit.

*United States v. Kenner*, 443 F.Supp.3d 354(E.D.N.Y. 2020),[10] reiterates the often-cited principle: "While the mere pooling or commingling of tainted and untainted funds in an account does not, without more, render the entire contents of the account subject to forfeiture, forfeiture of such commingled funds is proper when the government demonstrates that the ***defendant*** pooled the funds to facilitate or disguise his illegal scheme." *Id.* at 365 (cleaned up and emphasis added).

22.      As discussed herein, there is no evidence that any of the funds in Account 2770 belonged to Defendant Guo or were ever commingled with tainted funds, such that the Government can argue that seizing Petitioner's Property satisfies the requirements of 21 U.S.C. §853. *See* ¶¶ 15-17, *supra*. The only filing concerning Account 2770, the Forfeiture Motion, contains insufficient information to tie Defendant Guo to Account 2770 and the funds therein. In the Forfeiture Motion, the Government relied on seizure warrant affidavits of Special Agent Anthony Alecci (the "Affidavits") for an alleged tracing analysis purportedly showing that the funds in Account 2770 were "derived from proceeds of the G Enterprise and property involved in money laundering." *See e.g.*, Forfeiture Motion at 4-5. Yet, the Affidavits offer no competent evidence to support that conclusion. Special Agent Alecci vaguely alleges that "Investment Scheme Funds" were transferred in and out of Account 2770, thus justifying the seizure of all the funds therein. Yet, the Affidavits never explain how the Government determined that any funds deposited into Account 2770 qualified as "Investment Scheme Funds" – there are no facts or analysis showing the source of these funds or tracing these funds to Defendant Guo. This appears to be by design, as it is patently apparent from the record that such a classification is overbroad and erroneous and

---

[10] The Government's reliance on *U.S. v. Kenner* is nevertheless inapposite here. *Kenner* did not address the rights of a third-party petitioner. Nothing in *Kenner* suggests that § 982(a)(1) permits the forfeiture of funds held and controlled by a separate entity absent proof that Defendant Guo himself used or benefitted from those funds.

cannot support any claim the Government has to the funds in Account 2770.

23.     While Agent Alecci alleges that "Investment Scheme Funds" were deposited into Account 2770 (*see* Forfeiture Motion, ECF 716, <u>Exhibit B</u> at 47), his only basis for such classification appears to be his own conclusion that these deposits were allegedly "consistent with money laundering, including layering funds through different entities—for example, directing investor funds into a bank account in the names of an entity other than the intended investment vehicle, which here would be G Club or Himalaya Exchange. I further believe that the incoming transfers are consistent with G Club investors purchasing multiple memberships, and therefore are fraud proceeds." *Id.* However, nothing can be further from the truth. As demonstrated by the ancillary petitions filed by the Petitioning Investors[11]—the very individuals who made the majority of these deposits—and as discussed in HOF Wang Ancillary Petition and herein, these funds were legitimate investor funds deposited for a legitimate investment wholly unrelated to crimes adjudicated in this criminal matter.

24.     Accordingly, the record is devoid of any evidence to defeat Petitioner's claim that it possesses a vested and superior right, title, and interest in Petitioner's Property (except as to the M&A Fund Investors' rights, title, and interest in Petitioner's Property, which Petitioner believes is superior to its own claim) or that Defendant Guo had any interest in Petitioner's Property. To the contrary, the evidence is clear that Petitioner's Property represents the M&A Fund Investors' own lawful funds deposited independently and for legitimate purposes and are wholly unconnected to Defendant Guo's fraudulent schemes as alleged in the Third Superseding Indictment. *See, e.g.,* ECF 755 at 14-15.

---

[11] *See* ECF 529-535; 538-539; 541-552; 558; 560-567; 570-573; 575; 577-581; 583-594; 598-611; 613-615; 619-621; 623-642; 645; 647; 649-650; 656-657; 659-661; 664-665; 667-670; 675; 677.

25.     First, Petitioner's Property was not and could not be property that "constitute[ed], or [is] derived from, any proceeds [Defendant Guo] obtained, directly or indirectly, as the result of [the violations listed in 21 U.S.C. § 853(a)]." *See e.g.* 21 U.S.C. § 853(a)(1). As stated in the Petitioning Investors' Guo Ancillary Petition, the Petitioning Investors deposited their own funds (funds that comprise, in part, Petitioner's Property) into Account 2770 for purposes of an investment that is wholly unrelated to the fraudulent schemes alleged in the Third Superseding Indictment. *See, e.g.,* ECF 755.

26.     Moreover, Petitioner's Property simply cannot be "[Defendant Guo's] property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, [the violations listed in 21 U.S.C. § 853(a)]." 21 U.S.C. § 853(a)(2). Again, Petitioner's Property belonged to Petitioner and to the M&A Fund Investors, not Defendant Guo. Moreover, Petitioner's Property was never used in the commission of any crimes, let alone those for which Defendant Guo was indicted. As set forth more fully in the Petitioning Investors' Wang Ancillary Petitions and Petitioning Investors' Guo Ancillary Petition, Investors wired funds into Account 2770 for the purposes of investment, consistent with the terms of the Offering Memorandum (as that term is defined in Petitioning Investors' Wang Ancillary Petitions). *See* ECF 755 at 13-15; *see also, e.g.,* ECF 630 at 4. More specifically, Investors sought to make an investment that was for "90% ownership of Mercantile Global Holdings, Inc. ("MGH") which owns 100% of Mercantile International Bank Corp [("Mercantile Bank")]." *See* ECF 755 at 14-15; *see also, e.g.,* ECF 630, Exhibit A at 33. According to James Robert Collins, the CEO of MGH, Mercantile Bank is "an international financial entity which is deemed a bank by FinCEN and operates under a license issued in Puerto Rico." Guo Trial, 6/14/2024, 2754:3-6. Pursuant to the terms of the Offering Memorandum, the acquisition of the controlling interest in MGH could proceed only after

completion of satisfactory due diligence and receipt of regulatory approval from the OCIF. *See e.g.* ECF 755 at 14; *see also* ECF 630, Exhibit A at 34. Moreover, as Mr. Collins testified, in connection with this investment, Petitioner made representations to the OCIF that Defendant Guo "was not a UBO, that none of the money involved in the fund that was actually making the investment was part of Miles Guo's money or estate." Guo Trial, 6/17/2024, 2795:15-2796:5. Accordingly, Petitioner's Property was designated for a lawful and highly regulated acquisition process involving a duly licensed international bank, and not for any purpose remotely connected to the conduct alleged in the criminal case. While the transaction did close (Guo Trial, 6/17/2024, 2794:25-2795:4), MGH never received the investment money because "[t]he money was seized in transit by the U.S. Marshals." Guo Trial, 6/17/2024, 2796:14-23.[12] At no point did Petitioner's Property have any connection - directly or indirectly - to Defendant Guo based on the evidence in the trial record or in fact.

27.    In sum, the Petitioning Investors invested their own funds into Account 2770 for the purpose of a lawful transaction with MGH. Those funds were not commingled with tainted funds; rather, they were then wired onward for that transaction and seized by the Government before they could be received. There is no evidence that Defendant Guo ever used, directed, or exercised any control over these funds, nor that the funds were part of, or the proceeds of, any of Defendant Guo's criminal activities. Because Petitioner's Property neither constitutes proceeds of,

---

[12] There can be no dispute that the transaction to purchase an equity stake in MGH was a legitimate transaction. After the closing occurred, but no money was received by Mercantile Bank because of the seizure of Petitioner's Property by the Government, MGH filed an arbitration against the M&A Fund seeking compensation for the M&A Fund's failure to perform on the transaction agreements. The arbitrator entered an award in favor of MGH (the "Arbitration Award"), which is attached as Exhibit A to the document filed at ECF 1 in the case of *Mercantile Global Holdings, Inc. v. Hamilton M&A Fund,* Case No. 23-cv-08446 (S.D.N.Y.). Further confirming the legitimacy of the transaction, the Arbitration Award explains that OCIF, the body that supervised Mercantile Bank, approved this transaction prior to the closing. *See* Arbitration Award, ¶¶ 1, 28.

nor was involved in, any offense charged against Defendant Guo, the Government acquired no forfeitable interest, and Petitioner's ownership remains vested in Petitioner and superior to any other interest under 21 U.S.C. § 853(n)(6)(A), other than the claims made by the M&A Fund Investors.

28.    Petitioner has thus met its burden under 21 U.S.C. § 853(n)(6)(A) to demonstrate a vested and superior interest in Petitioner's Property.

## IV.    <u>CONCLUSION</u>

29.    For the reasons stated above, Petitioner has an interest in Petitioner's Property, which renders the Guo Forfeiture Order invalid as to such property. *See e.g.,* 21 U.S.C. § 853(n)(6)(A). Neither Defendant Guo, nor the Government who has stepped into his shoes, have any right, title, or interest in Petitioner's Property, and never did. Petitioner has proven, and can prove at any necessary hearing, by preponderance of evidence that the Guo Forfeiture Order needs to be amended to exclude Petitioner's Property.

30.    Therefore, Petitioner respectfully requests that this Court: (1) grant this Supplemental Petition; (2) amend the Guo Forfeiture Order and the Wang Forfeiture Order to exclude Petitioner's Property; (3) order the immediate return of Petitioner's Property to the M&A Fund Investors or, in the alternative, to the Petitioner to return to the M&A Fund Investors; (4) order that Petitioner is entitled to recover Petitioner's attorneys' fees and costs incurred in connection with this Petition (and the HOF Wang Ancillary Petition) and grant Petitioner leave to submit an application for such attorneys' fees and costs; and (5) grant such and other relief that is necessary and just.

[SIGNATURE PAGE TO FOLLOW]

16

Dated: October 22, 2025          Respectfully submitted,

/s/ Jeffrey S. Gavenman
Jeffrey S. Gavenman, Esq.
Jeremy W. Schulman, Esq.
SCHULMAN BHATTACHARYA, LLC
6116 Executive Boulevard, Suite 425
North Bethesda, MD 20852
(240) 356-8550
jgavenman@schulmanbh.com
jschulman@schulmanbh.com

*Counsel for Petitioner*