UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- v. -<br><br>MILES GUO,<br><br>　　　　　　Defendant. | **SUPPLEMENTAL THIRD-PARTY PETITION TO ADJUDICATE PETITIONERS' INTEREST IN FORFEITED PROPERTY AND TO AMEND THE PRELIMINARY ORDER OF FORFEITURE ENTERED AS TO DEFENDANT MILES GUO**<br><br>**SUPPLEMENTAL CLAIM OF HIMALAYA INTERNATIONAL FINANCIAL GROUP, LTD., HIMALAYA INTERNATIONAL RESERVES, LTD., HIMALAYA INTERNATIONAL CLEARING, LTD., HIMALAYA CURRENCY CLEARING PTY LTD., HAMILTON CAPITAL HOLDING, LTD., AND HAMILTON OPPORTUNITY FUND SPC**<br><br>S3 23 Cr. 118 (AT) |

Petitioners Himalaya International Financial Group, Ltd., Himalaya International Reserves, Ltd., Himalaya International Clearing, Ltd., Hamilton Capital Holding, Ltd, Himalaya Currency Clearing, Ltd., and Hamilton Opportunity Fund SPC (collectively, the "Petitioners") file this Supplemental Third-Party Petition to Adjudicate Petitioners' Interest in Forfeited Property and to Amend the Preliminary Order of Forfeiture Entered as to Defendant Miles Guo, pursuant to 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2(c) (the "Supplemental Petition"), and respectfully state as follows:

I.   **PRELIMINARY STATEMENT**

This case presents a unique forfeiture posture, which requires Petitioners to file this supplement to the petition they filed on April 7, 2025 (ECF 672) (the "HEX Wang Ancillary

1

Petition") to assert their rights in Petitioners' Property ("Petitioners' Property") (as that term is defined in the HEX Wang Ancillary Petition. *See* ECF 672 at 5-13). The United States Government (the "Government") seeks to forfeit substantially the same property, including Petitioners' Property, in connection with the prosecution of two alleged co-conspirators, Yvette Wang ("Defendant Wang") and Miles Guo ("Defendant Guo"), whose criminal cases have nevertheless proceeded on two separate tracks. Defendant Wang's criminal case concluded first when she pled guilty on May 3, 2024. On January 7, 2025, this Court entered a Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment concerning Defendant Wang (the "Wang Forfeiture Order") (ECF 488), thereby triggering the ancillary proceedings as to Defendant Wang, more than half a year before the Government sought a forfeiture order as to Defendant Guo. As such, in response to the Wang Forfeiture Order, Petitioners filed their verified HEX Wang Ancillary Petition asserting their vested and superior right, title, and interest in Petitioners' Property. *See, e.g.,* ECF 672.

Notably, immediately following the filing of the HEX Wang Ancillary Petition (and hundreds of additional petitions filed by other third-party petitioners), the Government moved to stay (the "Motion to Stay") (ECF 671) resolution of all such ancillary petitions filed with respect to Defendant Wang's forfeiture proceedings pending entry of a preliminary order of forfeiture against Defendant Guo. In doing so, the Government represented to the Court that it "is prepared to deem [the ancillary petitions filed in connection with Defendant Wang] filed in connection with a Guo ancillary proceeding, once the Court enters a preliminary order of forfeiture against Guo." ECF 671 at 3. The Court granted the Motion to Stay on April 15, 2025. ECF 691. On August 21, 2025, the Government likewise published guidance, stating "third parties that have filed Petitions with the United States District Court, Southern District of New York objecting to the

Government's forfeiture do not need to submit an additional Petition following the entry of Guo's preliminary forfeiture order."[1]

Based on these representations from the Government, Petitioners understand that the HEX Wang Ancillary Petition is "deemed filed" in the ancillary proceedings concerning Defendant Guo.[2] As such (and given that the same property is at issue in both forfeiture actions), to promote judicial economy by avoiding duplicative, voluminous filings,[3] Petitioners only submit this Supplemental Petition for the purpose of presenting additional authority specific to Defendant Guo and the Guo Forfeiture Order. This Supplemental Petition does not alter or negate any arguments previously advanced in the HEX Wang Ancillary Petition; it simply addresses new issues that arose due to the Guo Forfeiture Order.

As described in the HEX Wang Ancillary Petition, Petitioners each have a legal right, title, and interest in Petitioners' Property, which is comprised of funds in the Accounts (as that term is defined and described in the HEX Wang Ancillary Petition. *See* ECF 672 at 5-13). As further established in the HEX Wang Ancillary Petition and additionally demonstrated herein, that interest is both vested in Petitioners and is superior to any right, title, or interest claimed by Defendant Guo, Defendant Wang, or the Government. *See e.g.,* ECF 672 at 13-21.

---

[1] https://www.justice.gov/usao-sdny/united-states-v-ho-wan-kwok-aka-miles-guo-and-kin-ming-je-aka-william-je (last visited on October 20, 2025).

[2] However, to the extent necessary, Petitioners hereby expressly incorporate by reference the HEX Wang Ancillary Petition, including the individualized verification, into the Guo forfeiture proceeding so that it is considered as part of the record in this Guo forfeiture proceeding.

[3] The Government similarly noted that resolving the ancillary petitions as to both Defendant Wang and Defendant Guo in a single proceeding "would promote judicial efficiency by allowing litigation and resolution of all competing petitions to the Subject Properties to occur within a single ancillary proceeding, that is, the ancillary proceeding that would follow entry of a preliminary forfeiture order against Guo; as such, petitioners would avoid any real or perceived obligation to file petitions to the same assets in two separate ancillary proceedings." ECF 671 at 2.

For all the foregoing reasons, Petitioners respectfully request that this Court: (1) grant this Supplemental Petition and the HEX Wang Ancillary Petition; (2) amend the Guo Forfeiture Order and the Wang Forfeiture Order to exclude Petitioners' Property; (3) order the immediate return of Petitioners' Property to Petitioners;[4] (4) order that Petitioners are entitled to recover Petitioners' attorneys' fees and costs incurred in connection with this Supplemental Petition (and the HEX Wang Ancillary Petition) and grant Petitioners leave to submit an application for such attorneys' fees and costs; and (5) grant such and other relief that is necessary and just.

## II.    BACKGROUND FACTS

1.    On March 6, 2023, this court unsealed an indictment charging Defendant Guo with various fraud and conspiracy-related offenses. ECF 2.

2.    On April 24, 2024, the Government filed the third superseding indictment (the "Third Superseding Indictment"). ECF 307. The Third Superseding Indictment remains the operative charging instrument against Defendant Guo.

3.    Defendant Guo pled not guilty to all the offenses charged against him. Accordingly, a jury trial was held between May 22, 2024 and July 16, 2024 (the "Guo Trial"). On July 16, 2024, the jury found Defendant Guo guilty of Counts One through Four, and Seven through Eleven of the Third Superseding Indictment. Those counts are: Racketeering Conspiracy (Count One);

---

[4] As stated in the HEX Wang Ancillary Petition, the ultimate goal here is to return any funds properly invested by Petitioners' customers and/or investors in the Himalaya Exchange ("Customers") to the Customers themselves. ECF 672 at 2, n.4. Accordingly, Petitioners continue to reserve the right to request that any part of Petitioners' Property that came from Customers is returned directly to such Customers. Additionally, to the extent any Customers file petitions in this matter or in connection with Defendant Wang's forfeiture proceedings, Petitioners reserve the right to endorse the legal theories in such petitions, and to make the arguments in this Supplemental Petition – or some portion of this Supplemental Petition – in the alternative, solely to be applied in case the Court deems that Petitioners' Property remains the legal property of Petitioners, rather than the Customers.

Conspiracy to Commit Wire Fraud or Bank Fraud (Count Two); Conspiracy to Commit Money Laundering (Count Three); Conspiracy to Commit Securities Fraud (Count Four); Wire Fraud – Farm Loan Program (Count Seven); Securities Fraud – Farm Loan Program (Count Eight); Wire Fraud – G|CLUBS (Count Nine); Securities Fraud - G|CLUBS (Count Ten); Wire Fraud – The Himalaya Exchange (Count Eleven). ECF 395.

4. Defendant Guo was found not guilty on the remaining charges: Wire Fraud – GTV Private Placement (Count Five); Securities Fraud – GTV Private Placement (Count Six); and Unlawful Monetary Transaction (Count Twelve). ECF 395.

5. As of the date of this filing, Defendant Guo has not yet been sentenced.

6. On July 28, 2025, the Government filed a letter motion requesting that the Court enter a preliminary order of forfeiture in Defendant Guo's case (the "Forfeiture Motion"). ECF 716.

7. The Forfeiture Motion sought a Court order ordering "Guo to forfeit his interest in the G entities that formed part of his racketeering enterprise, the proceeds he obtained during the course of the fraud, and property involved in the laundering of the proceeds." Forfeiture Motion, ECF 716 at 1.

8. On August 11, 2025, the Court entered the Guo Forfeiture Order. ECF 720.

9. In relevant part, the Guo Forfeiture Order forfeited "all of Defendant [Guo's] right, title and interest" in certain Specific Property (as that term is defined in the Guo Forfeiture Order), including the Account. ECF 720 at 3-4. According to the Guo Forfeiture Order, this Specific Property (including the Account) is forfeitable because it "constitute[es] proceeds of the offenses charged in Counts One, Two, Four and Counts Seven through Eleven and/or property involved in the offense charged in Count Three of the Indictment." ECF 720 at 11.

5

### III. ARGUMENT

#### A. Legal Standard

10. In an ancillary criminal forfeiture proceeding pursuant to 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2(c)(1), this Court must determine, by a preponderance of the evidence, whether a petitioner has a legal right, title, or interest in the property to be forfeited, and whether such right, title, or interest renders the order of forfeiture invalid, in whole or in part, because such interest was vested in the petitioner rather than the defendant, or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property. *See* 21 U.S.C. § 853(n)(6)(A).

11. Here, as argued in the HEX Wang Ancillary Petition, Petitioners each have a legal right, title, and interest in Petitioners' Property pursuant to 21 U.S.C. §853(n)(6)(A) by virtue of being the named account owners of the Account and by virtue of having full dominion and control over the funds therein. ECF 672 at 20. Petitioners' interest in Petitioners' Property is both vested in Petitioners and superior to any right that Defendant Guo, Defendant Wang, or the Government could claim in Petitioners' Property, because Defendant Guo, Defendant Wang, and/or the Government never possessed a legal or equitable interest in the Accounts or any of the funds therein under the law. Accordingly, the Guo Forfeiture Order should be modified to remove Petitioners' Property, and Petitioners' Property should be returned to Petitioners.

#### B. Petitioners Have a Legal Right, Title and Interest in Petitioners' Property

12. In their verified HEX Wang Ancillary Petition, Petitioners established their legal right, title, and interest in Petitioners' Property. Petitioners are the named owners of the Accounts and have full dominion and control over the Accounts and the funds therein. ECF 672 at 20. The underlying facts demonstrating Petitioners' right, title and interest in Petitioners' Property remain the same regardless of whether the Government is claiming forfeiture is appropriate based on the

6

conduct of Defendant Wang or Defendant Guo. Accordingly, Petitioners incorporate by reference the HEX Wang Ancillary Petition as if fully restated herein and respectfully refer the Court to the HEX Wang Ancillary Petition, which sets forth the basis for Petitioners' ownership of Petitioners' Property. *See* ECF 672.

### C. **Petitioners' Interest in Petitioners' Property Is Vested in Petitioners and Superior to Any Interest of Defendant Wang, Defendant Guo, or the Government**

13. Petitioners' interest in Petitioners' Property is vested in Petitioners and superior to any right, title, or interest that Defendant Guo, Defendant Wang, or the Government could claim. As set forth in the HEX Wang Ancillary Petition, Defendant Wang never possessed any such interest, and her consent to the entry of the Wang Forfeiture Order as to Petitioners' Property was wholly illusory, as Defendant Wang cannot forfeit an interest she never had. *See* ECF 672 at 13-20. Moreover, as discussed below, neither Defendant Guo nor the Government can claim an interest in Petitioners' Property sufficient to justify forfeiture.

#### a) *Defendant Guo Does Not Have an Interest in Petitioners' Property*

14. The Government has asserted that Defendant Guo "cannot credibly claim an interest in the listed property." Forfeiture Motion, ECF 716 at 4. And Defendant Guo has elected not to take a position on the matter. *See* ECF 710 at 2 ("In light of the unique circumstances set forth above, Mr. Guo is unable to take a position with respect to issues regarding potential forfeiture and remission of money and property seized by the Government in connection with this case"). Thus, Defendant Guo is certainly not arguing that the right, title and interest in Petitioners' Property was vested in him rather than in Petitioners. Furthermore, the record developed during the Guo Trial supports Defendant Guo's position with respect to the Accounts and the funds therein - there is no evidence in the written record or presented during the Guo Trial that Defendant Guo was a signatory on the Accounts, owned the Accounts, or operated the Accounts.

7

### *b)* *The Government Does Not Have an Interest in Petitioners' Property*

15. Like Defendant Guo and Defendant Wang, the Government does not have any right, title, or interest in Petitioners' Property. Here, the Government asserts that it is seeking to forfeit funds in certain bank accounts, including the Accounts, because such funds are "derived from proceeds of the G Enterprise and property involved in money laundering." *See* Forfeiture Motion, ECF 716 at 4-5. However, the law is clear that, in order for property to be subject to forfeiture, it is not sufficient for the Government to merely allege that the property was "involved" in some criminal activity. Rather, for the fraud-based counts (Counts Two, Four, and Five through Eleven of the Third Superseding Indictment) and the RICO count (Count One), forfeiture must be limited to property that was obtained by Defendant Guo *himself* or derived from proceeds that he personally acquired. *See, e.g., United States v. Elias*, No. 23-6626, 2025 WL 2845482, at *10 (2d Cir. Oct. 8, 2025) (Finding that "criminal forfeiture may be imposed only in relation to a *specific defendant's* offenses") (emphasis added); *see also id.* at *9 (stating that forfeiture under 18 U.S.C. § 981(a)(1)(C) reaches only "tainted property acquired or used by **the defendant**") (*citing Honeycutt v. United States,* 581 U.S. 443, 450 (2017) (emphasis added)); 18 U.S.C. § 1963(a)(3) (RICO statute forfeiture provision that states that forfeiture extends only to "any property constituting, or derived from, any proceeds which **the person** obtained, directly or indirectly, from racketeering activity").

16. Similarly, for the money laundering count, the case cited by the Government, *United States v. Kenner*, 443 F.Supp.3d 354 (E.D.N.Y. 2020),[5] reiterates the often-cited principle:

---

[5] The Government's reliance on *U.S. v. Kenner* is nevertheless inapposite here. *Kenner* did not address the rights of a third-party petitioner. Nothing in *Kenner* suggests that § 982(a)(1) permits the forfeiture of funds held and controlled by a separate entity absent proof that Defendant Guo himself used or benefitted from those funds.

8

"While the mere pooling or commingling of tainted and untainted funds in an account does not, without more, render the entire contents of the account subject to forfeiture, forfeiture of such commingled funds is proper when the government demonstrates that the ***defendant*** pooled the funds to facilitate or disguise his illegal scheme." *Id*. at 365 (cleaned up and emphasis added).

17.     Importantly, the Government's interest with respect to any property it seeks to forfeit can vest only through the relation-back doctrine codified in 21 U.S.C. § 853(c). The relation back doctrine provides that the Government's rights, if any, relate back to the time of the acts giving rise to forfeiture only with respect to property described in 21 U.S.C. § 853(a)[6], that is, (1) property constituting, or derived from, proceeds the defendant obtained directly or indirectly as the result of the offense,[7] and (2) property used, or intended to be used, to commit or facilitate the

---

[6] 21 U.S.C. § 853(a) has three provisions, but it appears that the Government is not seeking to forfeit Petitioners' Property pursuant to § 853(a)(3) or its functional equivalent, 18 U.S.C. § 1963(a)(2). Both statutes provide for forfeiture of defendant's property that affords a source of control (or source of influence) over the continuing criminal enterprise. There is no indication that the Government seeks forfeiture of Petitioners' Property under these provisions, as the Government is only seeking forfeiture of funds in various bank accounts on the ground that they were "derived from proceeds of the G Enterprise and property involved in money laundering." *See* Forfeiture Motion, ECF 716, at 4-5; *see also* Guo Forfeiture Order, ECF 720 at 3-11 (stating that Government seeks forfeiture of "all Defendant's rights, title, and interests" in certain property, including Petitioners' Property, because the property "constitut[es] proceeds of the offenses charged in Counts One, Two, Four, and Counts Seven through Eleven and/or property involved in the offense charged in Count III"). Even if the Government sought to obtain forfeiture through 21 U.S.C. § 853(a)(3), any such argument would be futile. As demonstrated herein, the Government has never shown that Defendant Guo possessed any ownership interest in or exercised control over the Accounts or the funds held therein. Because Defendant Guo neither owned nor controlled the Accounts, the Government cannot plausibly contend that the Accounts, let alone the funds therein that the Government seeks to forfeit (i.e. Petitioners' Property) afforded him a "source of control" over any alleged enterprise within the meaning of § 853(a)(3) or 18 U.S.C. § 1963(a)(2).

[7] *See* 21 U.S.C. § 853(a)(1). This statute is the functional equivalent of 18 U.S.C. § 981(a)(1)(C) and 18 U.S.C. § 1963(a)(3) – the statutes pursuant to which the Government is seeking to forfeit property for Counts One, Two, Four, and Five through Eleven. *See e.g.,* Guo Forfeiture Order, ECF 720 at 2.

offense.[8] In a criminal forfeiture proceeding, the Government acquires only the ***defendant's*** interest in the property.[9] "Because criminal forfeiture follows the defendant as part of his penalty, the Government may seize any of the ***defendant's*** property that is traceable to the proceeds of criminal conduct." *U.S. v. Bailey*, No. 1:11CR10, 2012 WL 569744, at *14 (W.D.N.C. Feb. 22, 2012) (internal citations omitted and emphasis in original). As discussed herein, the Government has no such interest in Petitioners' Property.

18.  The record is insufficient to defeat Petitioners' claim that they possess a vested and superior right, title, and interest in Petitioners' Property. The only filing concerning the Accounts, the Forfeiture Motion, contains insufficient information to tie Defendant Guo to the Accounts and the funds therein. In the Forfeiture Motion, the Government relied on seizure warrant affidavits of Special Agent Anthony Alecci (the "Affidavits") for an alleged tracing analysis purportedly showing that the funds in the Account were "derived from proceeds of the G Enterprise and property involved in money laundering." *See e.g.*, Forfeiture Motion at 4-5. Yet, the Affidavits offer no competent evidence to support that conclusion. Special Agent Alecci vaguely alleges that "Investment Scheme Funds" were transferred in and out of the Accounts, thus justifying the seizure

---

[8] *See* 21 U.S.C. § 853(a)(2). This statute is the functional equivalent of 18 U.S.C. § 982(a)(1), the statute pursuant to which the Government is seeking to forfeit property for Counts Three and Twelve. *See e.g.,* Guo Forfeiture Order, ECF 720 at 2.

[9] It is thus unclear what the Government's interest would relate back to. The Government's interest under § 853(c) is purely derivative of the defendant's interest. *See United States v. Huntington Nat. Bank*, 682 F.3d 429, 433 (6th Cir. 2012) (stating that "through the relation-back doctrine, the government steps into the shoes of the defendant acquiring only the rights of the defendant at the time of the criminal acts, and nothing more") (internal citations omitted). Here, the Government affirmatively argues that Defendant Guo has no interest in any of the assets sought to be forfeited (Forfeiture Motion, ECF 716 at 4) and Defendant Guo has apparently disclaimed any interest in any property to be forfeited. *See* ECF 710. Based on both these representations, the Government's interest cannot "relate back" to a right, title or interest Defendant Guo did not and does not have. The Government therefore has no valid basis to claim forfeiture of assets that were never Defendant Guo's to forfeit.

of all the funds therein. Yet, the Affidavits never explain how the Government determined that any funds deposited into the Accounts qualified as "Investment Scheme Funds" – there are no facts or analysis showing the source of these funds or tracing these funds to Defendant Guo. This appears to be by design, as it is patently apparent from the record that such a classification is overbroad and erroneous and cannot support any claim the Government has to the funds in the Accounts.

19. Specifically, the term "Investment Scheme Funds" cannot be afforded any probative weight, as this term encompasses legitimate funds that are unrelated to any of the adjudicated criminal conduct in this case. For example, in one of the Affidavits, Agent Alecci alleges that "Investment Scheme Funds" were deposited into Account No. 5090042770 at Silvergate Bank held in the name of Hamilton Opportunity Fund SPC ("HOF") ("Account 2770"). *See* Forfeiture Motion, ECF 716, Exhibit B at 47. These deposits were allegedly "consistent with money laundering, including layering funds through different entities—for example, directing investor funds into a bank account in the names of an entity other than the intended investment vehicle, which here would be G Club or Himalaya Exchange. I further believe that the incoming transfers are consistent with G Club investors purchasing multiple memberships, and therefore are fraud proceeds." *Id.* However, nothing can be further from the truth.

20. As demonstrated by the ancillary petitions filed by the individual investors (the "Petitioning Investors") who made the deposits[10] (and HOF's related petition (ECF 674)) in response to the Wang Forfeiture Order and concurrently herewith in response to the Guo Forfeiture Order (ECF 755; 756), these funds were legitimate investor funds deposited for a legitimate investment wholly unrelated to crimes adjudicated in this criminal matter. As detailed in their

---

[10] *See* ECF 529-535; 538-539; 541-552; 558; 560-567; 570-573; 575; 577-581; 583-594; 598-611; 613-615; 619-621; 623-642; 645; 647; 649-650; 656-657; 659-661; 664-665; 667-670; 675; 677.

ancillary petitions, the Petitioning Investors sought to make an investment that was for "90% ownership of Mercantile Global Holdings, Inc. ("MGH") which owns 100% of Mercantile International Bank Corp [("Mercantile Bank")]." *See, e.g.,* ECF 755 at 13-15. According to James Robert Collins, the CEO of MGH, Mercantile Bank is "an international financial entity which is deemed a bank by FinCEN and operates under a license issued in Puerto Rico." Guo Trial, 6/14/2024, 2754:3-6. Pursuant to the terms of the Offering Memorandum for this investment, the acquisition of the controlling interest in MGH could proceed only after completion of satisfactory due diligence and receipt of regulatory approval from the Office of the Commissioner of Financial Institutions of Puerto Rico ("OCIF"). *See e.g.,* ECF 755 at 14. Moreover, as Mr. Collins testified, in connection with this investment, Hamilton Opportunity Fund made representations to OCIF that Defendant Guo "was not a UBO, that none of the money involved in the fund that was actually making the investment was part of Miles Guo's money or estate." Guo Trial, 6/17/2024, 2795:15-2796:5.

21.     Accordingly, the Petitioning Investors' funds were designated for a lawful and highly regulated acquisition process involving a duly licensed international bank, and not for any purpose remotely connected to the conduct alleged in the criminal case. *See, e.g.,* ECF 755 at 13-15. While the transaction did close (Guo Trial, 6/17/2024, 2794:25-2795:4), MGH never received the investment money because "[t]he money was seized in transit by the U.S. Marshals." Guo Trial, 6/17/2024, 2796:14-23.[11] At no point did Petitioning Investors' funds have any connection

---

[11] There can be no dispute that the transaction to purchase an equity stake in MGH was a legitimate transaction. After the closing occurred, but no money was received by Mercantile Bank because of the seizure of the Petitioning Investors' funds by the Government, MGH filed an arbitration against Hamilton seeking compensation for Hamilton's failure to perform on the transaction agreements. The arbitrator entered an award in favor of MGH (the "Arbitration Award"), which is attached as Exhibit A to the document filed at ECF 1 in the case of *Mercantile Global Holdings, Inc. v. Hamilton M&A Fund,* Case No. 23-cv-08446 (S.D.N.Y.). Further confirming the legitimacy

12

- directly or indirectly - to Defendant Guo based on the evidence in the trial record or in fact. ECF 755 at 15. Thus, these funds were certainly not "Investment Scheme Funds." This example illustrates the speculative nature of the Government's assertions regarding the source of the seized funds, and thus completely undermines the reliability of the Affidavits' purported tracing analysis. As such, the Affidavits' characterization of any funds that were deposited into the Accounts as "Investment Scheme Funds" lacks any credible evidentiary basis and should not be relied upon to establish that the Government has any interest in the Accounts.

22.    Next, as already stated, the Affidavits never explain how the Government determined that any funds deposited into the Account qualified as "Investment Scheme Funds" in the first place. While Special Agent Alecci indicates the dollar amount of the transfers, he does not identify the specific source, origin, or nature of those funds. The affidavits provide no transactional tracing showing that Defendant Guo deposited into or withdrew any money from the Accounts, let alone that he did so using any fraudulent funds or in order to facilitate or disguise his illegal scheme." *U.S. v. Kenner*, 443 F. Supp. at 365. The Affidavits also do not show that Defendant Guo had any control over the Accounts. In fact, the Affidavits explicitly state that all the Accounts were beneficially owned by William Je. *See e.g.* Forfeiture Motion, ECF 716, Exhibit D at 22 (stating that "[William Je] is listed as the founder and Chairman of Himalaya Exchange, a purported cryptocurrency 'ecosystem.' JE is the 100% beneficial owner of various entities that operate Himalaya Exchange, including [Petitioners Himalaya International Clearing, HIFG and Himalaya International Reserves]"). Overall, the Affidavits' narrative about amorphous "Investment Scheme Funds" (a term that is proven to be factually inaccurate), unsupported by any

---

of the transaction, the Arbitration Award explains that OCIF, the body that supervised Mercantile Bank, approved this transaction prior to the closing. *See* Arbitration Award, ¶¶ 1, 28.

facts showing that the funds in the Accounts originated with Defendant Guo or were deposited there by him "to facilitate or disguise his illegal scheme" is insufficient to establish that the Government has any interest in the funds in the Accounts and cannot defeat Petitioners' vested and superior title under 21 U.S.C. § 853(n)(6)(A).

23. Petitioners' interest in Petitioners' Property was vested in Petitioners and superior to any right, title, or interest that Defendant Guo, Defendant Wang, or the Government could claim. Petitioners have thus met their burden under 21 U.S.C. § 853(n)(6)(A) to demonstrate a vested and superior interest in Petitioners' Property.

## IV. CONCLUSION

24. For the reasons stated above, Petitioners have an interest in Petitioners' Property, which renders the Guo Forfeiture Order invalid as to such property. *See e.g.,* 21 U.S.C. § 853(n)(6)(A). Neither Defendant Guo nor the Government have any right, title, or interest in Petitioners' Property, and never did. Petitioners have proven, and can prove at any necessary hearing, by preponderance of evidence that the Guo Forfeiture Order needs to be amended to exclude Petitioners' Property.

25. Therefore, Petitioners respectfully request that this Court: (1) grant this Supplemental Petition and the HEX Wang Ancillary Petition; (2) amend the Guo Forfeiture Order and the Wang Forfeiture Order to exclude Petitioners' Property; (3) order the immediate return of Petitioners' Property to Petitioners;[12] (4) order that Petitioners are entitled to recover Petitioners' attorneys' fees and costs incurred in connection with this Supplemental Petition (and the HEX Wang Ancillary Petition) and grant Petitioners leave to submit an application for such attorneys' fees and costs; and (5) grant such and other relief that is necessary and just.

---

[12] With the caveat stated in Footnote 4, *supra.*

Dated: October 22, 2025        Respectfully submitted,

/s/ Jeffrey S. Gavenman
Jeffrey S. Gavenman, Esq.
Jeremy W. Schulman, Esq.
SCHULMAN BHATTACHARYA, LLC
6116 Executive Boulevard, Suite 425
North Bethesda, MD 20852
(240) 356-8550
jgavenman@schulmanbh.com
jschulman@schulmanbh.com

*Counsel for Petitioners*