UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

MILES GUO, *et al.*

Defendants.

**THIRD-PARTY PETITION TO ADJUDICATE PETITIONER'S INTEREST IN FORFEITED PROPERTY AND TO AMEND THE PRELIMINARY ORDERS OF FORFEITURE**
**- VERIFIED CLAIM OF**
█████████████████

23 Cr. 118 (AT)

Petitioner ███████████████ (the "Petitioner") files this Third-Party Petition to Adjudicate Petitioner's Interest in Forfeited Property and to Amend the Preliminary Orders of Forfeiture entered concerning Defendant Yevette Wang ("Defendant Wang")[1] and Defendant Miles Guo ("Defendant Guo")[2], pursuant to 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2(c) (the "Petition"). Petitioner seeks the return of funds in which Petitioner has a legal right, title, and/or interest ("Petitioner's Property") (as more fully defined below). Specifically, Petitioner's Property is comprised of certain funds traceable to Petitioner and that were formerly on deposit in Account No. 5090042770 at Silvergate Bank ("Account 2770") held in the name of Hamilton Opportunity Fund SPC. That interest is both vested in Petitioner and is

---

[1] This Court entered the consent preliminary order of forfeiture concerning Defendant Wang on January 7, 2025 (the "Wang Forfeiture Order"). ECF 488.

[2] This Court entered a preliminary order of forfeiture against Defendant Guo on August 11, 2025 (the "Guo Forfeiture Order") (ECF 720) (Together with the Wang Forfeiture Order, the "Forfeiture Orders").

superior to any right, title, or interest claimed by Defendant Guo, Defendant Wang, or the Government. Petitioner's Property is Petitioner's own funds that were lawfully invested by Petitioner, has no nexus to the conduct charged in either criminal case, and therefore lies wholly outside the scope of property subject to forfeiture in either proceeding. In support of its Petition, Petitioner states as follows:

## I.    PRELIMINARY STATEMENT

It appears that the funds in Account 2770, including Petitioner's Property, were purely "collateral damage" in the Government's seizure of assets prior to its prosecution of Defendant Wang and Defendant Guo. More than three years have passed since the seizure of Account 2770, yet the Government has never offered a competent explanation[3] as to how Account 2770 (or Petitioner's Property) is related to any of the offenses adjudicated in this case, a necessary prerequisite to a valid forfeiture order under the law.

While Defendant Wang consented to the forfeiture of "all her right, title, and interest" in Account 2770 (and thus, Petitioner's Property) in the Wang Forfeiture Order (ECF No. 488 at 2-3), her consent has no legal bearing as to Account 2770 or Petitioner's Property. Defendant Wang never had such "right, title, and interest" in Account 2770. There has never been any showing that any proceeds of any unlawful activity to which Defendant Wang pled guilty were ever deposited in Account 2770; no showing that any proceeds of such activity were ever commingled with Petitioner's Property; and, indeed, no showing that Defendant Wang ever had anything to do with

---

[3] As argued below, in Defendant Wang's case there was never a determination as to the forfeitability of Petitioner's Property. As to Defendant Guo, in seizure warrant affidavits submitted in support of its letter motion requesting that the Court enter a preliminary order of forfeiture in Defendant Guo's case (the "Forfeiture Motion") (ECF No. 716), the Government brazenly alleged that Petitioner's Property was "Investment Scheme Funds." *See e.g.,* Forfeiture Motion, ECF No. 716, Exhibit B at 47. Yet, Petitioner's Property is Petitioner's own funds that were lawfully invested by Petitioner as part of a legitimate investment, wholly unrelated to any criminal schemes alleged in these proceedings. *See infra* at ¶¶ 72-74.

Account 2770 or even knew of its existence.[4]

Nor has the Government demonstrated that Petitioner's Property was in any way owned or controlled by Defendant Guo. Apart from Defendant Guo's general refusal to assert any claim to property subject to forfeiture,[5] there is no evidence in the written record or presented at Defendant Guo's trial that Defendant Guo was a signatory on Account 2770, owned or operated the account, ever deposited funds into it, or directed any person to do so.

Petitioner, by contrast, deposited its own lawful funds (i.e. Petitioner's Property) into Account 2770 (via Archiwoods, as explained below) for legitimate investment purposes (as more fully explained below), without any involvement by, or relationship to, Defendant Guo, Defendant Wang, or any conduct alleged to give rise to forfeiture in this matter. As demonstrated below, Petitioner is a beneficiary of a constructive trust over Petitioner's Property, which cannot be lawfully seized or forfeited by the Government in these proceedings. Neither Defendant Wang, Defendant Guo, nor the Government which now seeks to stand in their shoes, has ever demonstrated that they have any interest whatsoever in Petitioner's Property or in Account 2770 in general.

For all of the foregoing reasons, Petitioner respectfully requests that this Court: (1) grant this Petition; (2) amend the Forfeiture Orders to exclude Petitioner's Property; (3) order the immediate return of Petitioner's Property to Petitioner; (4) order that Petitioner is entitled to recover Petitioner's attorneys' fees and costs incurred in connection with this Petition and grant

---

[4] Because the Wang Forfeiture Order was entered by consent, it appears that the Court never made the threshold finding required by Fed. R. Crim. P. 32.2(b)(1)(A) that funds in Account 2770 (including Petitioner's Property) were subject to forfeiture in the first instance.

[5] *See* ECF No. 710 at 2 ("In light of the unique circumstances set forth above, Mr. Guo is unable to take a position with respect to issues regarding potential forfeiture and remission of money and property seized by the Government in connection with this case").

Petitioner leave to submit an application for such attorneys' fees and costs; and (5) grant such and other relief that is necessary and just.

## II.    **BACKGROUND FACTS**

### A.    **Petitioner's Property**

1.     Archiwoods Investment Value Fund ("Archiwoods") prepared an Information Option Memorandum (the "Option Memorandum") dated February 14, 2022, which outlined an investment opportunity with the Hamilton Opportunity Fund SPC ("Hamilton Opportunity Fund"), a Cayman Islands Segregated Portfolio Company. Archiwoods gave this Option Memorandum to prospective investors, including Petitioner. A true and correct copy of the Option Memorandum is attached hereto as **Exhibit A.**

2.     The investment opportunity was investing in Class B Shares (the "Class B Shares") in Hamilton M&A Fund SP (the "M&A Fund"), a segregated portfolio of Hamilton Opportunity Fund. **Exhibit A**, at 4. A true and correct copy of the standard Offering Memorandum provided by the Hamilton Opportunity Fund to potential investors in M&A Fund, dated January 20, 2022, is attached hereto as **Exhibit B.**

3.     This investment opportunity was "identified by the investment manager with a view to high value creation and long-term capital gain." **Exhibit A**, at 4. The Investment Manager (defined as "Archiwoods Investment Management Pty Ltd" in the Option Memorandum) had identified an opportunity to invest in a bank (the "Investment Strategy"), **Exhibit A,** at 4, 8, and solicited investments, including from Petitioner, to take advantage of this opportunity.

4.     Upon information and belief, Defendant Wang and Defendant Guo were not directors or members of, and otherwise lacked any corporate or equity interest in, M&A Fund, Hamilton Opportunity Fund, or Archiwoods. The evidentiary record is devoid of any evidence to the contrary.

4

5.      Upon information and belief, Defendant Wang and Defendant Guo did not make any investments in Class B Shares of M&A Fund or Archiwoods; again, the evidentiary record is devoid of any evidence to the contrary.

6.      On or about February 23, 2022, Petitioner submitted an application to invest in Archiwoods and agreed to invest $400,000.00. A true and correct copy of Petitioner's investment application is attached hereto as **Exhibit C.** Petitioner's agreement to invest this sum was on the express condition that the entirety of the investment would be used to purchase Class B shares in M&A Fund.

7.      On February 16, 2022, pursuant to the terms of the Option Memorandum, Petitioner wired $408,050.00 (the "Petitioner's Property") to a bank account belonging to Archiwoods. A true and correct copy of Petitioner's wire confirmation is attached hereto as **Exhibit D**.

8.      On May 31, 2022, Petitioner received confirmation of its investment in Archiwoods. A true and correct copy of the Archiwoods confirmation of Petitioner's investment is attached hereto as **Exhibit E.**

9.      Pursuant to the terms of the Option Memorandum, Archiwoods entered into an agreement with Hamilton Opportunity Fund, acting on behalf of M&A Fund. Upon information and belief, Archiwoods invested a monetary sum (including the entirety of Petitioner's Property) with the Hamilton Opportunity Fund for the acquisition of Class B Shares in M&A Fund.

10.     Upon information and belief, Archiwoods wired its full investment amount (including Petitioner's Property) into Account 2770, which is the only account in which Hamilton Opportunity Fund held funds meant for the acquisition of Class B Shares.

11.      The Offering Agreement that all investors signed and that governs the terms of their investment with Hamilton Opportunity Fund (including M&A Fund), entitles investors to

redeem their shares at the investors' option. **Exhibit B**, at 17; *see also id.* at 53 (stating that subject to certain limitations, "Class B Shares may be redeemed at the option of the Shareholder on any Redemption Day"). In turn, Petitioner had the right to redeem its investment with Archiwoods at the end of the investment term (the "Right of Redemption"). **Exhibit A**, at 4-5.

12.     The assets of each segregated portfolio of the Hamilton Opportunity Fund are "kept segregated, separate and separately identifiable from those of any other segregated portfolios of the Fund and any general assets of the Fund." *See* **Exhibit B**, at 12; *see also* **Exhibit A**, at 4. In addition, pursuant to the laws of the Cayman Islands, it is the duty of Hamilton Opportunity Fund to "segregate, and keep segregated, portfolio assets of each segregated portfolio separate and separately identifiable from segregated portfolio assets of any other segregated portfolio." **Exhibit B**, at 22-23 (citing The Companies Act (Revised) of Cayman Islands, Part XIV, 219(6)(b)).

### B.     Seizure of Account 2770

13.     On September 18, 2022, the Government seized the entire balance of the funds in Account 2770, which included Petitioner's Property.

### C.     The Criminal Case Against Defendant Wang and Defendant Guo and the Forfeiture Orders

14.     On March 6, 2023, the Government unsealed an indictment against Defendant Wang and Defendant Guo. ECF No. 2.

15.     On April 24, 2024, the Government filed the third superseding indictment (the "Third Superseding Indictment"). ECF No. 307. The Third Superseding Indictment remains the operative charging instrument against Defendant Guo.

16.     On May 3, 2024, the Government filed a superseding information (the "Superseding Information") against Defendant Wang. ECF No. 325. The Superseding Information charged Defendant Wang with one count of Conspiracy to Commit Wire Fraud (Count I)

(Superseding Information at 1-2) and one count of Conspiracy to Commit Money Laundering (Count II) (Superseding Information at 2-4). The Superseding Information also contained a Forfeiture Allegation (the "Forfeiture Allegation"). Superseding Information at 4.

17.    On the same day, May 3, 2024, Defendant Wang pled guilty to Count I and Count II as charged in the Superseding Information.

18.    Also on May 3, 2024, this Court entered a Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment (the "Wang Preliminary Forfeiture Order"). ECF No. 329.

19.    In the Wang Preliminary Forfeiture Order, Defendant Wang consented to forfeit, "all *her* right, title, and interest in" certain assets, including Account 2770, because such property purportedly "constitute[ed] proceeds of the offenses charged in Count One that the Defendant personally obtained and/or property involved in offense charged in Count Two of the [Superseding] Information." Wang Preliminary Forfeiture Order at 2-6 (emphasis added).

20.    Defendant Guo pled not guilty to all the offenses charged against him. Accordingly, a jury trial was held between May 22, 2024 and July 16, 2024 (the "Guo Trial"). On July 16, 2024, the jury found Defendant Guo guilty of Counts One through Four, and Seven through Eleven of the Third Superseding Indictment. Those counts are: Racketeering Conspiracy (Count One); Conspiracy to Commit Wire Fraud or Bank Fraud (Count Two); Conspiracy to Commit Money Laundering (Count Three); Conspiracy to Commit Securities Fraud (Count Four); Wire Fraud – Farm Loan Program (Count Seven); Securities Fraud – Farm Loan Program (Count Eight); Wire Fraud – G|CLUBS (Count Nine); Securities Fraud - G|CLUBS (Count Ten); Wire Fraud – The Himalaya Exchange (Count Eleven). ECF No. 395.

21.    Defendant Guo was found not guilty on the remaining charges: Wire Fraud – GTV

Private Placement (Count Five); Securities Fraud – GTV Private Placement (Count Six); and Unlawful Monetary Transaction (Count Twelve). ECF No. 395.

22.    As of the date of this filing, Defendant Guo has not yet been sentenced.

23.    On January 6, 2025, Defendant Wang was sentenced.

24.    On January 7, 2025, this Court entered the Wang Forfeiture Order. ECF No. 488. As it pertains to Petitioner, the Wang Forfeiture Order is substantially similar to the Wang Preliminary Forfeiture Order in all material respects. In the Wang Forfeiture Order, Defendant Wang consented to forfeit, "all *her* right, title, and interest in" certain assets, including Account 2770, because such property "constitute[ed] proceeds of the offenses charged in Count One that the Defendant personally obtained and/or property involved in offense charged in Count Two of the [Superseding] Information." Wang Forfeiture Order at 2-11 (emphasis added).

25.    On July 28, 2025, the Government filed a letter motion requesting that the Court enter a preliminary order of forfeiture in Defendant Guo's case (the "Forfeiture Motion"). ECF No. 716.

26.    The Forfeiture Motion sought a Court order ordering "Guo to forfeit his ***interest in the G entities*** that formed part of his racketeering enterprise, the ***proceeds he obtained*** during the course of the fraud, ***and property involved*** in the laundering of the proceeds." Forfeiture Motion, ECF No. 716 at 1 (emphasis added).

27.    On August 11, 2025, the Court entered the Guo Forfeiture Order. ECF No. 720.

28.    In relevant part, the Guo Forfeiture Order forfeited "all of Defendant [Guo's] right, title and interest" in certain Specific Property (as that term is defined in the Guo Forfeiture Order), including Account 2770. ECF No. 720 at 3-4. According to the Guo Forfeiture Order, this Specific Property (including Account 2770) is forfeitable because it "constitute[es] proceeds of the offenses

charged in Counts One, Two, Four and Counts Seven through Eleven and/or property involved in the offense charged in Count Three of the Indictment." ECF No. 720 at 11.

29.    The assets in Account 2770 are described in the Wang Original Forfeiture Order and the Forfeiture Orders is as follows:

> $89,992,861.75 in United States currency formerly on deposit in account number 5090042770 at Silvergate Bank, held in the name of "Hamilton Opportunity Fund SPC" and seized by the Government on or about September 18, 2022 (23-FBI-000074).

Wang Original Forfeiture Order at 3; Wang Forfeiture Order at 3; Guo Forfeiture Order at 4.

## III.    **ARGUMENT**

30.    In an ancillary criminal forfeiture proceeding pursuant to 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2(c)(1), this Court must determine, by a preponderance of the evidence, whether a petitioner has a legal right, title, or interest in the property to be forfeited, and whether such right, title, or interest renders the order of forfeiture invalid, in whole or in part, because such interest was vested in the petitioner rather than the defendant, or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property. *See* 21 U.S.C. § 853(n)(6)(A).

31.    Here, Petitioner has a legal right, title, or interest in Petitioner's Property pursuant to 21 U.S.C. §853(n)(6)(A) by virtue of a constructive trust over such property. Moreover, Petitioner's interest in Petitioner's Property is both vested in Petitioner and is superior to any right Defendant Wang, Defendant Guo, or the Government could claim in Petitioner's Property, because Defendant Wang, Defendant Guo, and/or the Government never possessed a legal or equitable interest in Petitioner's Property. Accordingly, the Forfeiture Orders should be modified to remove Petitioner's Property, and Petitioner's Property should be returned to Petitioner.

A.    **Petitioner Has Interest in Petitioner's Property Because There Exists a Constructive Trust Over Such Property**

32.    Petitioner's Property should be returned to Petitioner because Petitioner has a greater interest in it than does Defendant Wang, Defendant Guo, or, now, the Government.

33.    Under the doctrine of constructive trusts, Petitioner's Property is protected and remains the property of Petitioner regardless of any other ownership claims, including Defendant Wang's, Defendant Guo's, or the Government, standing in their shoes. The Second Circuit[6] has held that "a constructive trust qualifies as a 'legal right, title, or interest in the property' that 'may be a superior interest' to a defendant's interest for the purposes of a forfeiture statute analogous to 21 U.S.C. § 853(n)(6)(A)." *Willis Mgmt. (Vermont), Ltd. v. United States*, 652 F.3d 236, 242 (2d Cir. 2011).

34.    "A constructive trust is an equitable remedy, *necessarily flexible to accomplish its purpose*." *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 361 (2d Cir. 1999) (emphasis added). "Its purpose is to prevent unjust enrichment, although unjust enrichment does not necessarily implicate

---

[6] "The federal common law choice-of-law rule is to apply the law of the jurisdiction having the greatest interest in the litigation." *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 350 (2d Cir. 1992), *aff'd in part sub nom. Refco F/X Assocs., Inc. v. Mebco Bank, S.A.*, No. 89 CIV. 3071 (WK), 1992 WL 200748 (S.D.N.Y. July 31, 1992). Here, there are four competing jurisdictions whose laws could apply: Australia, New York, California, and Cayman Islands. Petitioner's payment of Petitioner's Property was pursuant to the Option Memorandum. The Option Memorandum makes clear that Archiwoods would then enter into some agreement with the Hamilton Opportunity Fund on Petitioner's behalf. On information and belief, any agreement between Archiwoods and the Hamilton Opportunity Fund is governed by Cayman Islands law. Account 2770 *was* an account in a California bank when Petitioner deposited Petitioner's Property. Since Account 2770 was seized (pursuant to a search and seizure warrant issued by a court in New York state), the funds are now in possession of the Government in New York and the California bank no longer exists. New York is the forum state of this case. From these facts, New York has the greatest interest in this litigation, and its laws should apply to an imposition of a constructive trust. However, to the extent that the Government challenges this choice-of-law determination, Petitioner reserves all rights to request that this Court impose a constructive trust over Petitioner's Property under California, Australia, and/or Cayman Islands law.

the performance of a wrongful act. . .What is necessary is that the court identify a party who is holding property *under such circumstances that in equity and good conscience he ought not to retain it*." *Id.* (internal citations omitted).

35.    "Whether a party is unjustly enriched is a legal conclusion reached through the application of principles of equity. . . A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief. . . Unjust enrichment results when a person retains a benefit which, under the circumstances of the transfer and considering the relationship of the parties, it would be inequitable to retain." *Id.* (internal citations omitted).

36.    The New York Court of Appeals outlined several factors to be considered in determining whether a constructive trust should be imposed in certain circumstances, including "(1) a confidential or fiduciary relation, (2) a promise, (3) a transfer in reliance thereon and (4) unjust enrichment." *Sharp v. Kosmalski*, 40 N.Y.2d 119, 121 (1976). However, New York courts have long held that "these factors are merely useful guides and are not talismanic." *Counihan*, 194 F.3d at 362 (citing to a plethora of New York state cases that have stated this proposition).

37.    Here, there is a constructive trust for the benefit of Petitioner over Petitioner's Property as of the date that it was deposited into Account 2770 by Archiwoods.

38.    Petitioner, through Archiwoods, who acted as Petitioner's agent and/or

intermediary, entered into a confidential and/or fiduciary relationship[7] with Archiwoods and/or Hamilton Opportunity Fund when Petitioner invested in Archiwoods, who then executed an agreement on Petitioner's behalf in order to acquire certain Class B Shares of M&A Fund SP using Petitioner's Property. Per the Option Memorandum, Archiwoods made a promise to Petitioner that Petitioner's Property would be invested pursuant to the Investment Strategy. **Exhibit A**, at 4. In reliance on this promise, Petitioner wired Petitioner's Property to Archiwoods, who then, upon information and belief, wired it to Account 2770. The Government's improper seizure of Account 2770 forced a breach of Archiwoods' promise to invest Petitioner's Property pursuant to the Investment Strategy. Because of Government's seizure, Petitioner is not even able to exercise its Right of Redemption to reobtain Petitioner's Property at the appropriate time. This would result in unjust enrichment to the benefit of the Government since the Government is now retaining Petitioner's Property without any legal cause to do so. *See, e.g., U.S. v. Coluccio*, 51 F.3d 337, 340 (2nd Cir. 1995) (finding that imposition of a constructive trust was proper where, amongst other reasons, Government's forfeiture caused a breach of an implied promise); *Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154, 1159 (2d Cir. 1994) (finding a constructive trust appropriate where "The government's forfeiture forced a breach of that promise that may result in a potentially unjust enrichment of the government (and commensurate unjust impoverishment of [the plaintiff]).")

39.    Accordingly, Petitioner has shown that a constructive trust should be imposed over

---

[7] Even if the Court determines that the relationship was not confidential and/or there was no fiduciary relationship between Archiwoods and/or Hamilton Opportunity Fund and Petitioner, such would not be determinative, as the absence of a fiduciary relationship does not preclude the Court from finding a constructive trust exists. *See Koreag*, 961 F.2d at 353 (stating that "[w]e do not believe, however, that the lack of a fiduciary relationship between [the parties] automatically defeats [a] claim of constructive trust. Although a fiduciary relationship is one of the factors cited by New York courts, the absence of any one factor will not itself defeat the imposition of a constructive trust when otherwise required by equity").

Petitioner's Property. Such a constructive trust "qualifies as a 'legal right, title, or interest in the property' that 'may be a superior interest' to a defendant's interest for the purposes of a forfeiture statute analogous to 21 U.S.C. § 853(n)(6)(A)." *Willis*, 652 F.3d at 242.

40.     The property upon which the constructive trust is sought – Petitioner's Property - is easily traceable. *See* **Exhibit D**.

41.     Moreover, the imposition of a constructive trust is fully available to Petitioner, even if the Government contends that others are owed restitution from any forfeited property. "When a party can directly trace its assets, without resorting to fictions or presumptions, a constructive trust is available even in cases involving multiple fraud victims." *U.S. v. Ovid,* 2012 WL 2087084, *7 (E.D.N.Y., Jun. 8, 2012). "[C]ourts are not free to disregard the law of constructive trusts when a claimant can directly trace its property, even if this leaves one innocent victim better off than another equally innocent victim." *Id.* The "orthodox approach to multiple-fraud cases" is to "return[] identifiable assets to their owners, turning to pro rata distribution only when specific identification or transactional tracing is impossible." *Id.* at *8 (citing *Restatement (Third) of Restitution & Unjust Enrichment*, § 59 Reporter's Note G, at 437).

**B.     Petitioner's Interest Is Vested in Petitioner and Is Superior to Any Interest of Defendant Wang, Defendant Guo or the Government**

42.     Petitioner's interest in Petitioner's Property is absolutely superior to any interest that the Government, Defendant Wang, and/or Defendant Guo may have in Petitioner's Property.

43.     21 U.S.C. § 853(n) is clear that, in addition to demonstrating Petitioner's interest in the forfeited property, that Petitioner must demonstrate, by a preponderance of the evidence, that Petitioner's interest "renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner *rather than the defendant* or was superior to any right, title, or interest *of the defendant* at the time of the commission of the acts which give rise to the

forfeiture of the property under this section." 21 U.S.C. § 853(n)(6)(A) (emphasis added).

44.    As set forth below, Defendant Wang never possessed any such interest, and her consent to the entry of the Wang Forfeiture Order as to Petitioner's Property was wholly illusory, as Defendant Wang cannot forfeit an interest she never had. As also discussed below, neither Defendant Guo nor the Government can claim an interest in Petitioner's Property sufficient to justify forfeiture.

### i)    *The Government Failed to Demonstrate that the Funds in Account 2770, Including Petitioner's Property, Were Properly Subject to Forfeiture in the Wang Forfeiture Order in the First Instance, Making the Wang Forfeiture Order Improper as to Such Funds*

45.    Petitioner has a vested and superior interest in Petitioner's Property, and the Government has never presented any evidence to the contrary. In fact, in Defendant Wang's case, the Government has never demonstrated that Petitioner's Property, and Account 2770 in general, is actually forfeitable property as required by Fed.R.Crim.P. 32.2(b)(1)(A).

46.    "When the government seeks to obtain an order of forfeiture, 'Federal Rule of Criminal Procedure 32.2(b)(1) ... requires the sentencing court to determine what property is subject to forfeiture under the applicable statute.'" *U.S. v. Watts*, 786 F.3d 152, 172 (2d Cir. 2015) (citing *U.S. v. Capoccia*, 503 F.3d 103, 109 (2d Cir.2007)). Pursuant to Fed.R.Crim.P. 32.2, "if the government seeks forfeiture of specific property, the court *must* determine whether the government has established the requisite nexus between the property and the offense." Fed.R.Crim.P. 32.2(b)(1)(A) (emphasis added); *Watts*, 786 F.3d at 172. "At various points in the proceedings, **the government bears the burden of proving this legal conclusion** to varying degrees of certainty: as a matter of probable cause at a post-indictment hearing. . .or by a preponderance of the evidence at a bench trial or before a jury." *Id.* (emphasis added) (internal citations omitted). "Only if the government meets the relevant legal threshold, however, may the

property in question be considered 'subject to forfeiture' in any legal sense. Prior to that, while the government has simply announced its intent to seek forfeiture through the indictment, the property is seen merely as 'potentially forfeitable' . . . or 'potentially subject to forfeiture.'" *Id.* (internal citations omitted).

47.     This means that before the court reaches the question of whether the petitioner is entitled to the return of the property under §853(n), it is necessary to determine if the property in dispute is actually forfeitable in the first instance. If not, the government had no statutory authority to seize the property. If the property was improperly seized, the government must return the accounts seized regardless of whether the petitioner can meet the criteria set forth in §853(n). *See e.g.*, *United States v. Delco Wire & Cable Co*., 772 F. Supp. 1511, 1518 (E.D.PA, 1991).

48.     A full and complete Fed. R. Crim. P. 32.2(b)(1)(A) inquiry is critical to the fair administration of justice. The entire forfeiture system rests upon the supposition that a court has conducted an inquiry and determined that the property is subject to forfeiture. In enacting ancillary proceeding statutes, Congress chose to place the burden of proof on the third-party during an ancillary proceeding, since "the United States will have already proven its forfeiture allegations in the criminal case beyond a reasonable doubt." S. REP. 98-225, 209, 1984 U.S.C.C.A.N. 3182, 3392.

49.     In this matter, there has never been a determination of whether there exists a nexus between funds in Account 2770 and any of the offenses Defendant Wang was charged with (and pled guilty to), and, as a result, Petitioner is forced to file this Petition. Based on all the information contained in the publicly-available documents in Defendant Wang's criminal case, the Government cannot prevail with respect to Account 2770 and Petitioner's Property.

50.     Here, in the Superseding Information, the Government included a Forfeiture

Allegation as to both Counts I and Count II and sought forfeiture of specific property. Superseding Information at 4. There is no evidence in the record that the Government even attempted to show, let alone that it met its burden to show, a nexus between Petitioner's Property and the offenses to which Defendant Wang pled guilty.

51.    As to Count I, the Forfeiture Allegation states that, "[a]s a result of committing the wire fraud offense alleged in Count One of this Superseding Information, YVETTE WANG, a/k/a "Yanping" a/k/a "Y," the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section[] 981(a)(1)(C)[8]. . .and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense." Superseding Information at 4. The Government must prove the elements of forfeiture under 18 U.S.C. § 981(a)(1)(C) by a preponderance of the evidence. 18 U.S.C. § 983(c)(1). Moreover, "if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3).

52.    The record is devoid of any allegations pertaining to how funds in Account 2770 are, or are derived from, proceeds traceable to Defendant Wang's conspiracy to commit wire fraud. The Superseding Information alleges that "[f]rom at least in or about 2018 until at least on or about March 15, 2023, coconspirators made false representations to investors that they would receive stock in exchange for their investments in GTV, the Himalaya Farm Alliance organization, and

---

[8] 18 U.S.C. § 981(a)(1)(C) provides that "[a]ny property, real or personal, [is subject to forfeiture] which constitutes or is derived from proceeds traceable to a violation of" various specified offenses, including violations of 18 U.S.C. § 1343, wire fraud, as charged against Defendant Wang in Count I.

GClubs, and that they would receive cryptocurrency in exchange for their investments in the Himalaya Exchange [(the "Fraud Scheme")]. Through the [Fraud Scheme], YVETTE WANG, a/k/a "Yanping," a/k/a "Y," the defendant, and her coconspirators, including Miles Guo, induced investors to invest more than $1 billion into entities Guo controlled." Superseding Information at 2. There are no allegations in the Superseding Information regarding Defendant Wang depositing any proceeds from the Fraud Scheme into Account 2770. Similarly, there are no allegations in the Superseding Information that as a result of the Fraud Scheme, any investors deposited money into Account 2770. Nor can there be any such allegations, as the only deposits from Archiwoods into Account 2770 were from investors who were investing in M&A Fund Class B Shares pursuant to the Investment Strategy – an investment that is not implicated in any way by the "Fraud Scheme" described in the Superseding Information. To be sure, Petitioner affirms that Petitioner was never a victim of any conduct by Defendant Wang  (or Defendant Guo) alleged in the Superseding Information and does not believe that any of Petitioner's Property was ever used in any unlawful activity.

53.     Finally, there was no relevant testimony during Defendant Guo's trial concerning Account 2770 or the funds therein. There was no testimony regarding whether any of the proceeds of the Fraud Scheme were ever deposited into Account 2770, nor, for that matter, whether Defendant Wang ever deposited any money into Account 2770. Simply put, there is nothing in the record that would indicate there is a nexus between Account 2770 (and Petitioner's Property) and Defendant Wang's wire fraud charge, let alone sufficient evidence to determine that the Government met its burden of showing, and the Court properly adjudicated, that the appropriate nexus exists for forfeiture of Petitioner's Property to be proper.

54.     As to Count II, the Forfeiture Allegation states that, "[a]s a result of committing the

money laundering offense alleged in Count Two of this Information, YVETTE WANG, a/k/a "Yanping" a/k/a "Y," the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1)[9], any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense." Superseding Information at 4. As to Count II, The Government "must prove the elements of forfeiture under 18 U.S.C. § 982(a)(1) by a preponderance of the evidence." *U.S. v. Beltramea*, 785 F.3d 287, 290 (8th Cir. 2015).

55.     The Superseding Information alleges that Defendant Wang committed conspiracy to launder money because Defendant Wang "knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions. . .and which in fact involved the proceeds of specified unlawful activity, to wit, proceeds of the wire fraud scheme alleged in Count One of this Information." Superseding Information at 3.

56.     It is unclear how Petitioner's Property could be forfeited for the money laundering charge in Count II. From the allegations, the charge of money laundering arises from Defendant Wang engaging in financial transactions with the "proceeds of the wire fraud scheme alleged in Count One." Superseding Information at 3. As argued above, there is no evidence that funds in Account 2770 had any relation to the Fraud Scheme alleged in Count I (*see* ¶¶ 51-53, *supra*) – there is no evidence that such funds "constitute[d] or [were] derived from proceeds traceable to

---

[9] 18 U.S.C. § 982(a)(1) provides that "[t]he court, imposing sentence on a person convicted of an offense in violation of section 1956 [the money-laundering statute] of this title . . . shall order that the person forfeit to the United States any property, real or personal, *involved in such offense*, or any property *traceable to such property*." 18 U.S.C. § 982(a)(1) (emphasis added).

the commission of" wire fraud. *See e.g.*, 18 U.S.C. § 981(a)(1)(C). Since funds in Account 2770 were not Fraud Scheme proceeds nor were they derived from Fraud Scheme proceeds, such funds could not serve as the basis for the money laundering charge in Count II and cannot be forfeited as part of Defendant Wang's conviction for Count II.

57.     The overt acts that the Government alleges to support the money laundering charge further fail to show how Petitioner's Property can be forfeitable. In the Superseding Information, the Government sets forth two acts evidencing money laundering. Superseding Information at 3. Although the Government states that these two overt acts were "among others" that Defendant Wang committed in furtherance of the alleged conspiracy to launder money (Superseding Information at 3), these other acts were never identified.

58.     First, per the Superseding Information, on May 20, 2020, Defendant Wang opened a bank account in the name of GTV[10], which, notably, Account 2770 was *not*. On June 2, 2020, Defendant Wang transferred approximately $200 million to that account. *Id.* The funds transferred into the GTV account were from a JP Morgan Chase Bank account held by Saraca Media Group, Inc. ("Saraca") (Guo Trial, 05/31/2024, 953:25-954:4; Guo Trial, 06/26/2024, 4359:1-14), *not* from Account 2770. There was never any testimony that any money from Account 2770 ever went into the Saraca JP Morgan Chase Bank account to then be transferred to the GTV account cited in the Superseding Information. Moreover, Account 2770 did not even exist in 2020.

59.     The second act the Government alleges is that "on or about June 5, 2020," Defendant Wang "authorized a wire transfer of $100 million from GTV's parent company, Saraca, to a high-risk hedge fund, for the benefit of Saraca and its ultimate beneficial owner, Defendant Guo's son." Superseding Information at 3-4. First, this plainly alleges that the money was

---

[10] *See* Superseding Information at 3.

transferred from a Saraca account, which Account 2770 was demonstrably not. Also, again, there was never any testimony that any money from Account 2770 ever went into a Saraca account. Moreover, once again, Account 2770 did not even exist in 2020.

60.     As seen from the above argument, there are no allegations or testimony regarding Account 2770 or Petitioner's Property whatsoever. The *only* reference in the record to Account 2770 with respect to Defendant Wang is her consent to forfeit it. However, "a defendant's consent to forfeiture [does not] abrogate the requirement that a nexus exist between the property sought for forfeiture and the conviction of offense." *Beltramea*, 785 F.3d at 291. As the Eighth Circuit stressed, "[t]he district court had an independent duty to *ensure* that the required nexus exists." *Id.* (emphasis added).

61.     Here, there are no factual allegations in the Superseding Information, in the Wang Original Forfeiture Order or the Wang Forfeiture Order as to even an alleged nexus between Account 2770 and the offenses to which Defendant Wang pled guilty. As such, Defendant Wang cannot claim any interest in Petitioner's Property.

### ii)     *Defendant Guo Does Not Have an Interest in Petitioner's Property*

62.     The Government has asserted that Defendant Guo "cannot credibly claim an interest in the listed property." Forfeiture Motion, ECF No. 716 at 4. And Defendant Guo has elected not to take a position on the matter. *See* ECF No. 710 at 2 ("In light of the unique circumstances set forth above, Mr. Guo is unable to take a position with respect to issues regarding potential forfeiture and remission of money and property seized by the Government in connection with this case"). Thus, Defendant Guo is certainly not arguing that the right, title, and interest in Account 2770 (and the funds therein) was vested in him rather than in Petitioner.

63.     The evidence presented during Defendant Guo's criminal trial supports Petitioner's

position that Defendant Guo had no interest in Account 2770 or the funds therein - there was no evidence in the written record or presented at the Guo Trial that Defendant Guo was a signatory on Account 2770, owned Account 2770, or operated Account 2770. In fact, at the Guo Trial, the evidence showed that individual investors, including Petitioner, deposited money into Account 2770 as a means of investing in a bank. *See infra* at ¶¶ 72-74. The CEO of that bank, James Robert Collins, testified that in connection with this investment, Hamilton Opportunity Fund made representations to the Office of the Commissioner of Financial Institutions of Puerto Rico ("OCIF") that Defendant Guo "was not a UBO, that none of the money involved in the fund that was actually making the investment was part of Miles Guo's money or estate." Guo Trial, 6/17/2024, 2795:15-2796:5.

64.    Similarly, there is no evidence in the record that Defendant Guo ever deposited money into Account 2770, or otherwise had any control over Account 2770, and there is no evidence that Defendant Guo ever directed anyone to deposit any money into Account 2770.

### iii)    *The Government Does Not Have an Interest in Petitioner's Property*

65.    Nor does the Government have any right, title, or interest in Petitioner's Property. Here, the Government asserts that it is seeking to forfeit funds in certain bank accounts, including Account 2770, because such funds are "derived from proceeds of the G Enterprise and property involved in money laundering." *See* Forfeiture Motion, ECF No. 716 at 4-5. However, in order to prove a right to forfeiture, it is not enough for the Government to claim (without proving) that the funds are part of criminal activity. Rather, the Government must demonstrate that the property it seeks to forfeit belonged to, or was controlled by, the defendant.

66.    Importantly, the Government's interest with respect to any property it seeks to forfeit can vest only through the relation-back doctrine codified in 21 U.S.C. § 853(c). The

relation-back doctrine provides that the Government's rights, if any, relate back to the time of the acts giving rise to forfeiture only with respect to property described in 21 U.S.C. § 853(a),[11] that is, (1) property constituting, or derived from, proceeds the defendant obtained directly or indirectly as the result of the offense,[12] and (2) property used, or intended to be used, to commit or facilitate the offense.[13] In a criminal forfeiture proceeding, the Government acquires only the ***defendant's***

---

[11] 21 U.S.C. § 853(a) has three provisions, but it appears that the Government is not seeking to forfeit Petitioner's Property pursuant to § 853(a)(3) or its functional equivalent, 18 U.S.C. § 1963(a)(2). Both statutes provide for forfeiture of defendant's property that affords a source of control (or source of influence) over the continuing criminal enterprise. There is no indication that the Government seeks to forfeit Petitioner's Property under these provisions, as the Government is only seeking forfeiture of funds in various bank accounts on the ground that they were "derived from proceeds of the G Enterprise and property involved in money laundering." *See* Forfeiture Motion, ECF No. 716, at 4-5; *see also* Guo Forfeiture Order, ECF No. 720 at 3-11 (stating that Government seeks forfeiture of "all Defendant's rights, title, and interests" in certain property, including Petitioner's Property, because the property "constitut[es] proceeds of the offenses charged in Counts One, Two, Four, and Counts Seven through Eleven and/or property involved in the offense charged in Count III"). Even if the Government sought to obtain forfeiture through 21 U.S.C. § 853(a)(3), any such argument would be futile. As demonstrated herein, the Government has never alleged, let alone proved, that Defendant Guo possessed any ownership interest in, or exercised control over, Account 2770 or the funds held therein. To the contrary, as argued above, the record shows that Petitioner's Property was lawfully invested by Petitioner (an independent third-party) in connection with a legitimate, regulated investment, wholly unrelated to Defendant Guo's or Defendant Wang's conduct alleged in the criminal case. Because Defendant Guo neither owned nor controlled Account 2770, the Government cannot plausibly contend that the account afforded him a "source of control" over any alleged enterprise within the meaning of § 853(a)(3) or 18 U.S.C. § 1963(a)(2).

[12] *See* 21 U.S.C. § 853(a)(1). This statute is the functional equivalent of 18 U.S.C. § 981(a)(1)(C) and 18 U.S.C. § 1963(a)(3) – the statutes pursuant to which the Government is seeking to forfeit property for Counts One, Two, Four, and Five through Eleven. *See e.g.*, Guo Forfeiture Order, ECF 720 at 2.

[13] *See* 21 U.S.C. § 853(a)(2). This statute is the functional equivalent of 18 U.S.C. § 982(a)(1), the statute pursuant to which the Government is seeking to forfeit property for Counts Three and Twelve. *See e.g.*, Guo Forfeiture Order, ECF 720 at 2.

interest in the property.[14] "Because criminal forfeiture follows the defendant as part of his penalty, the Government may seize any of the ***defendant's*** property that is traceable to the proceeds of criminal conduct." *U.S. v. Bailey*, No. 1:11CR10, 2012 WL 569744, at \*14 (W.D.N.C. Feb. 22, 2012) (internal citations omitted and emphasis in original).

67.     For the fraud-based counts (Counts Two, Four, and Five through Eleven of the Third Superseding Indictment) and the RICO count (Count One), the case law is clear that forfeiture can only reach property that was obtained by Defendant Guo *himself* or derived from proceeds that he *personally* acquired. *See e.g.*, *United States v. Elias*, No. 23-6626, 2025 WL 2845482, at \*10 (2d Cir. Oct. 8, 2025) (Finding that "criminal forfeiture may be imposed only in relation to a *specific defendant's* offenses") (emphasis added); *see also id.* at \*9 (stating that forfeiture under 18 U.S.C. § 981(a)(1)(C) reaches only "tainted property acquired or used by ***the defendant***") (*citing Honeycutt v. United States,* 581 U.S. 443, 450 (2017) (emphasis added)); 18 U.S.C. § 1963(a)(3) (RICO statute forfeiture provision that states that forfeiture extends only to "any property constituting, or derived from, any proceeds which ***the person*** obtained, directly or indirectly, from racketeering activity").

68.     Similarly, for the money laundering count, the case cited by the Government,

---

[14] It is thus unclear what the Government's interest would relate back to. The Government's interest under § 853(c) is purely derivative of the defendant's interest. *See United States v. Huntington Nat. Bank*, 682 F.3d 429, 433 (6th Cir. 2012) (stating that "through the relation-back doctrine, the government steps into the shoes of the defendant acquiring only the rights of the defendant at the time of the criminal acts, and nothing more") (internal citations omitted). Here, the Government affirmatively argues that Defendant Guo has no interest in any of the assets sought to be forfeited (Forfeiture Motion, ECF No. 716 at 4) and Defendant Guo has apparently disclaimed any interest in any property to be forfeited. *See* ECF No. 710. Based on both these representations, the Government's interest cannot "relate back" to a right, title or interest Defendant Guo did not and does not have. The Government therefore has no valid basis to claim forfeiture of assets that were never Defendant Guo's to forfeit.

*United States v. Kenner*, 443 F.Supp. 3d 354 (E.D.N.Y. 2020),[15] reiterates the often-cited principle: "While the mere pooling or commingling of tainted and untainted funds in an account does not, without more, render the entire contents of the account subject to forfeiture, forfeiture of such commingled funds is proper when the government demonstrates that the ***defendant*** pooled the funds to facilitate or disguise his illegal scheme." *Id.* at 365 (cleaned up and emphasis added).

69.     As discussed herein, there is no evidence that any of the funds in Account 2770 belonged to Defendant Guo, or were ever commingled with tainted funds, such that the Government can argue that seizing Petitioner's Property satisfies the requirements of 21 U.S.C. §853. *See* ¶¶ 62-64, *supra*. The only filing concerning Account 2770, the Forfeiture Motion, contains insufficient information to tie Defendant Guo to Account 2770 and the funds therein. In the Forfeiture Motion, the Government relied on seizure warrant affidavits of Special Agent Anthony Alecci (the "Affidavits") for an alleged tracing analysis purportedly showing that the funds in Account 2770 were "derived from proceeds of the G Enterprise and property involved in money laundering." *See e.g.*, Forfeiture Motion at 4-5. Yet, the Affidavits offer no competent evidence to support that conclusion. Special Agent Alecci vaguely alleges that "Investment Scheme Funds" were transferred in and out of Account 2770, thus justifying the seizure of all the funds therein. Yet, the Affidavits never explain how the Government determined that any funds deposited into Account 2770 qualified as "Investment Scheme Funds" – there are no facts or analysis showing the source of these funds or tracing these funds to Defendant Guo. This appears to be by design, as it is patently apparent from the record that such a classification is overbroad

---

[15] The Government's reliance on *U.S. v. Kenner* is nevertheless inapposite here. *Kenner* did not address the rights of a third-party petitioner. Nothing in *Kenner* suggests that § 982(a)(1) permits the forfeiture of funds held and controlled by a separate entity absent proof that Defendant Guo himself used or benefitted from those funds.

and erroneous and cannot support any claim the Government has to the funds in Account 2770.

70.     While Agent Alecci alleges that "Investment Scheme Funds" were deposited into Account 2770 (*see* Forfeiture Motion, ECF 716, <u>Exhibit B</u> at 47), his only basis for such classification appears to be his own conclusion that these deposits were allegedly "consistent with money laundering, including layering funds through different entities—for example, directing investor funds into a bank account in the names of an entity other than the intended investment vehicle, which here would be G Club or Himalaya Exchange. I further believe that the incoming transfers are consistent with G Club investors purchasing multiple memberships, and therefore are fraud proceeds." *Id.* However, nothing can be further from the truth.

71.     As demonstrated by the ancillary petitions filed by other investors in the M&A Fund[16] and the ancillary petition filed by Hamilton Opportunity Fund (ECF 674), and, indeed, by this very Petition, these funds were legitimate investor funds deposited for a legitimate investment wholly unrelated to crimes adjudicated in this criminal matter.

72.     Accordingly, the record is devoid of any evidence to defeat Petitioner's claim that it possesses a vested and superior right, title, and interest in Petitioner's Property or that Defendant Guo had any interest in Petitioner's Property. To the contrary, the evidence is clear that Petitioner's Property represents Petitioner's own lawful funds deposited independently and for legitimate purposes and are wholly unconnected to Defendant Guo's fraudulent schemes as alleged in the Third Superseding Indictment.

73.     First, Petitioner's Property was not and could not be property that "constitute[ed], or [is] derived from, any proceeds [Defendant Guo] obtained, directly or indirectly, as the result

---

[16] *See* ECF 529-535; 538-539; 541-552; 558; 560-567; 570-573; 575; 577-581; 583-594; 598-611; 613-615; 619-621; 623-642; 645; 647; 649-650; 656-657; 659-661; 664-665; 667-670; 675; 677; 755.

of [the violations listed in 21 U.S.C. § 853(a)]." *See e.g.*, 21 U.S.C. § 853(a)(1). Petitioner wired Petitioner's Property – its own funds - to Archiwoods, who then transferred Petitioner's Property into Account 2770 for the purposes of investment, consistent with the terms of the Offering Memorandum and the Option Memorandum, and wholly unrelated to the fraudulent schemes alleged in the Third Superseding Indictment

74.     Moreover, Petitioner's Property simply cannot be "[Defendant Guo's] property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, [the violations listed in 21 U.S.C. § 853(a)]." 21 U.S.C. § 853(a)(2). Again, Petitioner's Property belonged solely to Petitioner, and not Defendant Guo. Moreover, Petitioner's Property was never used in the commission of any crimes, let alone those for which Defendant Guo was indicted. Petitioner wired funds to Archiwoods, who then transferred Petitioner's Property into Account 2770 for the purposes of investment, consistent with the terms of the Offering Memorandum and the Option Memorandum. More specifically, Petitioner sought to make an investment that was for "90% ownership of Mercantile Global Holdings, Inc. ("MGH") which owns 100% of Mercantile International Bank Corp [("Mercantile Bank")]." **Exhibit B** at 33. According to James Robert Collins, the CEO of MGH, Mercantile Bank is "an international financial entity which is deemed a bank by FinCEN and operates under a license issued in Puerto Rico." Guo Trial, 6/14/2024, 2754:3-6. Pursuant to the terms of the Offering Memorandum, the acquisition of the controlling interest in MGH could proceed only after completion of satisfactory due diligence and receipt of regulatory approval from OCIF. *See e.g.*, **Exhibit B** at 34. Moreover, as Mr. Collins testified, in connection with this investment, Hamilton Opportunity Fund made representations to OCIF that Defendant Guo "was not a UBO, that none of the money involved in the fund that was actually making the investment was part of Miles Guo's money or estate." Guo Trial, 6/17/2024, 2795:15-

2796:5. Accordingly, Petitioner's Property was designated for a lawful and highly regulated acquisition process involving a duly licensed international bank, and not for any purpose remotely connected to the conduct alleged in the criminal case. While the transaction did close (Guo Trial, 6/17/2024, 2794:25-2795:4), MGH never received the investment money because "[t]he money was seized in transit by the U.S. Marshals." Guo Trial, 6/17/2024, 2796:14-23.[17] At no point did Petitioner's Property have any connection - directly or indirectly - to Defendant Guo based on the evidence in the trial record or in fact.

75.    In sum, Petitioner invested its own funds that were directly wired by Archiwoods into Account 2770 for the purpose of a lawful transaction with MGH. These funds were not commingled with tainted funds; rather, they were then wired onward for that transaction and seized by the Government before they could be received. There is no evidence that Defendant Guo ever used, directed, or exercised any control over these funds, nor that the funds were part of, or the proceeds of, any of Defendant Guo's criminal activities. Because Petitioner's Property neither constituted proceeds of, nor was involved in, any offenses charged against Defendant Guo, the Government acquired no forfeitable interest, and Petitioner's interest remains vested in Petitioner and superior to any other interest. *See e.g.*, 21 U.S.C. § 853(n)(6)(A).

76.    Petitioner has thus met its burden under 21 U.S.C. § 853(n)(6)(A) to demonstrate a vested and superior interest in Petitioner's Property. The Government's continued retention of

---

[17] There can be no dispute that the transaction to purchase an equity stake in MGH was a legitimate transaction. After the closing occurred, but no money was received by Mercantile Bank because of the seizure of Petitioner's Property by the Government, MGH filed an arbitration against Hamilton seeking compensation for Hamilton's failure to perform on the transaction agreements. The arbitrator entered an award in favor of MGH (the "Arbitration Award"), which is attached as Exhibit A to the document filed at ECF 1 in the case of *Mercantile Global Holdings, Inc. v. Hamilton M&A Fund,* Case No. 23-cv-08446 (S.D.N.Y.). Further confirming the legitimacy of the transaction, the Arbitration Award explains that OCIF, the body that supervised Mercantile Bank, approved this transaction prior to the closing. *See* Arbitration Award, ¶¶ 1, 28.

Petitioner's Property, without showing that there is a nexus, is wrong and inequitable. Should the Government retain Petitioner's Property, it will be unjustly enriched, since it belongs to Petitioner, who is: (1) demonstrably not Defendant Wang or Defendant Guo; and (2) not involved the Fraud Scheme, let alone victim of any such scheme. *See, e.g., U.S. v. Bajakajian*, 524 U.S. 321, 332 (1998) (explaining that a criminal "forfeiture serves no remedial purpose, is designed to punish the offender, ***and cannot be imposed upon innocent owners***.") (emphasis added).

### C.     Petitioner is Entitled to Costs and Attorneys' Fees

77.    Petitioner has been required to retain legal counsel and has incurred costs to file this petition challenging the forfeiture of Petitioner's Property. Upon prevailing in this proceeding, Petitioner reserves all rights to recover attorneys' fees and costs incurred in connection with this Petition and may recover Petitioner's costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Federal courts have consistently held that § 853(n) proceedings are civil for the purposes of allowing a successful claimant to collect attorney's fees under the EAJA. *See United States v. Cox*, 575 F.3d 352, 355 (4th Cir. 2009); *United States v. Douglas*, 55 F.3d 584, 588 (11th Cir. 1995); *U.S. v. Bailey*, 2015 WL 1893610 at *20 (W.D.N.C. Apr. 27, 2015).

### IV.     CONCLUSION

78.    For the reasons stated above, Petitioner has an interest in Petitioner's Property, which renders the Forfeiture Orders invalid as to such property. *See e.g.*, 21 U.S.C. § 853(n)(6)(A). Defendant Wang, Defendant Guo, and the Government do not have any right, title, or interest in Petitioner's Property, and never did. Petitioner has proven, and can prove at any necessary hearing, by preponderance of evidence, that the Forfeiture Orders need to be amended to exclude Petitioner's Property.

79.    Therefore, Petitioner respectfully requests that this Court: (1) grant this Petition;

(2) amend the Forfeiture Orders to exclude Petitioner's Property; (3) order the immediate return of Petitioner's Property to Petitioner; (4) order that Petitioner is entitled to recover Petitioner's attorneys' fees and costs incurred in connection with this Petition and grant Petitioner leave to submit an application for such attorneys' fees and costs; and (5) grant such and other relief that is necessary and just.

Dated: October 22, 2025                                Respectfully submitted,

                                        /s/ Jeffrey S. Gavenman

                                        Jeffrey S. Gavenman, Esq.
                                        Jeremy W. Schulman, Esq.
                                        SCHULMAN BHATTACHARYA, LLC
                                        6116 Executive Boulevard, Suite 425
                                        North Bethesda, MD 20852
                                        (240) 356-8550
                                        jgavenman@schulmanbh.com
                                        jschulman@schulmanbh.com

                                        *Counsel for Petitioner*

**ATTESTATION AND OATH**

Pursuant to 21 U.S.C. § 853(n)(3), I ███████████████, attest and declare under penalty of perjury that my claim to this property is not frivolous and that the information provided in support of this claim is true and correct, to the best of my knowledge and belief.

Executed on this ___22___ day of October, 2025

By:___████████████████

Name:███████████████

30