SARAFA ZELLAN

43 West 43rd Street, Suite 370 | New York, NY 10036
212.785.7577 | 646.868.8266 (fax)
www.sarafazellan.com

December 17, 2025

**By ECF Filing**
Honorable Analisa Torres
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

   Re: *United States v. Ho Wan Kwok, et al.*
      23-CR-118 (AT)

Dear Judge Torres:

  Together with Joshua Dratel and John Kaley, I respectfully submit this letter on behalf of Miles Guo (a/k/a "Ho Wan Kwok") in further support of Mr. Guo's December 3, 2025, request to adjourn sentencing, presently scheduled for January 20, 2026, for approximately three months. ECF No. 768. The Government, in a December 11, 2025, response that neither recognizes, appreciates, nor understands our obligations as counsel for Mr. Guo ("Gov. Resp."), opposes this request. ECF No. 773.

  The present adjournment request is the second such request by Mr. Guo's current defense team and is based on a number of factors: (1) the extraordinary volume of material involved in this case, including material relevant to sentencing that we have not yet been able to obtain; (2) the complexity of the issues for sentencing; (3) the need to ensure that our client is able to review our sentencing materials in his native language and provide meaningful feedback; and (4) the suspension of CJA payments due to the budget shortfall and recent government shutdown. We have made this request because, as the experienced lawyers which the Government claims we are, and which we believe we are, in our professional judgment we need the additional time to provide the representation to our client that the Constitution requires.

  The Government submits that our grounds for seeking a second adjournment of Mr. Guo's sentencing are without merit, that any delay in sentencing is harmful to purported victims, and that Mr. Guo is waging a "campaign of delay," Gov. Resp. at 5, as "leverage[] to further harm his victims." *Id.* at 8. These arguments are groundless and misapprehend the current posture of the case.

  As noted, present counsel has requested one previous sentencing adjournment. At the time we were appointed, on April 8, 2025, knowing little about the case other than the trial transcript was extensive (roughly 6,000 pages) and the exhibits voluminous, we initially sought a sentencing date in

Honorable Analisa Torres
December 17, 2025
Page 2

SARAFA ZELLAN

September. Thereafter, having developed more familiarity with the case and having spent considerable time focused on forfeiture issues – in large part at the Government's request and with the goal of facilitating the process of returning seized assets to investors and customers with valid claims – we recognized that we could not responsibly prepare for sentencing by September and sought an adjournment to December. In the meantime, payment on CJA vouchers ceased in early July and remained suspended until late November. In addition, notwithstanding diligent efforts by counsel to obtain material relevant to sentencing in this case, it has proven extremely challenging and time-consuming to obtain and access not only the approximately 64 terabytes of discovery produced in this case but also other sources of information we reasonably believe to be relevant to sentencing. This latter category includes certain potentially sensitive materials in the Government's possession, as well as information sought via a still-pending subpoena request. At this time, with a better understanding of the true scope of the case and the issues relevant to sentencing – including the exceedingly complex matters of victims, forfeiture, and financial penalties, which were not at issue during trial – counsel has determined that additional time is necessary.

Contrary to the Government's complaints, we do not intend to relitigate issues previously determined at trial. Sentencing presents issues different from the trial concerns of admissibility of evidence, guilt, and innocence. Information contained in the massive amount of discovery not placed in evidence may nevertheless be relevant to sentencing. Obviously, we cannot review all 64 terabytes of discovery in this case, but we do have an obligation to familiarize ourselves with their contents, much as we do for the *in limine* motions. Indeed, we continue to identify material relevant to sentencing in our ongoing review of those 64 terabytes. Our still-pending *ex parte* Rule 17(c) subpoena request, moreover, was based on information developed independent of case discovery, seeks material directly related to sentencing, and was properly made; the defense has no obligation to submit such a request to the Government to, as the Government puts it, "evaluate its merits." Gov. Resp. at 2-3 n.2. Counsel had a good faith basis to seek the subpoena and has an equally good faith basis to seek disclosure of classified material that may have been excludable at trial but nevertheless is relevant to sentencing.[1]

The Government devotes considerable attention to events that took place prior to appointment of the undersigned, holding present counsel accountable for prior counsel's undertakings and suggesting, incorrectly, that the two defense teams function as a seamless entity that should be able to proceed effortlessly to sentencing. In reality, we do not have unfettered access to prior counsel, their materials, or their knowledge about this case, nor do we have the extensive resources they had at their disposal. We are small firm practitioners and the only lawyers whose work on this case has gone uncompensated for months.

The Government's primary objection to a sentencing adjournment appears to be concern about alleged victims remaining "in limbo" because of sentencing delays. Gov. Resp. at 1. More specifically, the Government contends that:

---

[1] Counsel intends to file a motion no later than January 5, 2026, seeking release of classified materials relevant to sentencing.

Honorable Analisa Torres
December 17, 2025
Page 3

SARAFA ZELLAN

> Indeed, the Government's intent to seek a final order of forfeiture and initiate the process of remitting forfeited assets to victims is on pause while the defendant's delays continue unabated. Post-sentencing ancillary proceedings disposing of third-party claims to forfeitable property typically occur after the defendant has been sentenced and his rights to seized assets are extinguished. *See* 21 U.S.C. § 853(n); Fed. R. Crim. P. 32.2(c)(1).

Gov. Resp. at 5. The problem with this argument is simple: entry of a final order of forfeiture is *not* a prerequisite to initiating the process of addressing third-party claims. Under Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, "[t]he entry of a preliminary order of forfeiture authorizes the [Government] . . . to commence proceedings that comply with any statutes governing third-party rights." Fed. R. Crim. P. 32.2(b)(3). The statute governing third-party rights in the criminal forfeiture context, 21 U.S.C. § 853(n), provides that "[f]ollowing the entry of an order of forfeiture under this section, the United States shall publish notice of the order and of its intent to dispose of the property in such manner as the Attorney General may direct." 21 U.S.C. § 853(n)(1). The Second Circuit has expressly held that "the Government [is] *not* required to wait until [defendant's] sentencing to begin notifying potential petitioners of the preliminary order of forfeiture or about the ancillary proceeding." *United States v. Swartz Family Trust*, 67 F.4th 505, 515 (2d Cir. 2023) (emphasis added). "Rule 32.2 and Section 853(n) also permit the Government to begin ancillary proceedings by notifying third parties as soon as the preliminary order of forfeiture is entered." *Id.; see also United States v. Marion*, 562 F.3d 1330, 1339 (11th Cir. 2009) ("[O]nce a preliminary order of forfeiture is entered, whether before or at the time criminal judgment is entered, the government is authorized to commence proceedings governing third-party rights and must publish notice of that order and its intent to dispose of the property."); *United States v. Wittig*, 525 .Supp.2d 1281, 1287 (D. Kan. 2007) ("Once the court or jury finds that the property is subject to forfeiture, and the court enters a preliminary order of forfeiture in accordance with Rule 32.2.(b)(2), the government may publish notice of the forfeiture to third parties and commence an ancillary proceeding.")

This Court entered a preliminary order of forfeiture on August 11, 2025. Yet, according to the Government, its intent to "initiate the process of remitting forfeited assets to victims is on pause" pending sentencing in this case even though the Government has been in a position to initiate that process since August 11th. An abundance of third-party claims already have been filed with the Court, and, given the number of potential claimants in this case, there is undoubtedly a lengthy road ahead to verify claims even before distribution of assets.[2] For his part, Mr. Guo has made clear that he takes no position with respect to any personal interest he may have in the forfeited assets and seeks to facilitate return of such assets to petitioners. ECF Nos. 710, 754. During the April 8, 2025 hearing in this case, the Government stated with respect to the seized assets that "[i]f Mr. Guo is not going to contest that he has an interest in those bank accounts and personal property, then we can file a notice in Mr. Guo's case, noting for the public that we are forfeiting the assets that were seized, and move forward with a forfeiture and then hopefully, with various approvals in place, a remissions process so that the victims . . . can start getting their money back." Gov. Resp., Ex. A at 8. It appears, however, that the Government has yet to file such

---

[2] We note that the SEC already has disbursed more than $350 million in assets to investors in GTV.

Honorable Analisa Torres
December 17, 2025
Page 4

SARAFA ZELLAN

a notice.³ Under these circumstances, the notion that Mr. Guo seeks to delay his sentencing in order to inflict harm on those awaiting distribution of forfeited assets is utterly baseless and misleading. So too, is the notion that Mr. Guo's motion seeking to preserve the value of assets in the custody of the bankruptcy Trustee, see ECF Nos. 724, 754, is anything other than a good faith effort to minimize waste by the Trustee and maximize recovery by claimants. *See* Gov. Resp. at 7.

Undersigned counsel did in good faith communicate with the Government prior to filing the instant request. The Government offered to consent to a 30-day adjournment provided we commit to no further requests. We could not agree to that for two reasons: first, we did not believe that 30 days provided sufficient time to prepare; and second, we could not agree to forego any future request given uncertainties still in play. The Government later agreed to add two weeks to their counteroffer, which we found unacceptable for the same reasons.

As we believe the Court appreciates, we take our responsibility as appointed counsel to provide effective representation quite seriously. We do not make the instant request lightly and we are mindful that people who claim to have been harmed seek return of monies invested. Nonetheless, for the reasons set forth herein and in our letter of December 3, 2025, we respectfully submit that the requested 90-day adjournment is both reasonable and necessary.

We appreciate the Court's attention and consideration of this request.

Respectfully submitted,

*/s/ Melinda Sarafa*

Melinda Sarafa
Joshua Dratel
John Kaley

cc: All counsel via ECF

---

[3] Based on a search of public notices on forfeiture.gov, it appears that the Government has not yet published notice of the preliminary order of forfeiture.