

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

January 9, 2026

**BY ECF**
Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY

      Re:    *United States v. Miles Guo*, S3 23 Cr. 118 (AT)

Dear Judge Torres:

      The Government respectfully writes in response to the Court's Order, which requests the Government's views on "(1) the differences between petitions for remission of forfeited assets and claims submitted under § 853(n), and whether the Government proposes any method for resolving the various claims; and (2) its position on the Court's appointment of a special master to make recommendations related to third-party claims." Dkt. 782 (citations omitted). In addition, the Government respectfully requests that the Court enter an order finding that restitution would be impracticable in this case under the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A.

### A. The Differences Between Petitions for Remission of Forfeited Assets and Claims Submitted Under § 853(n)

      1.  Claims Submitted Under § 853(n)

      Title 21, United States Code, Section 853 sets forth comprehensive procedural rules for the administration of forfeiture, including when a third party, or petitioner, can claim an ownership interest superior to the Government's interest in forfeitable property through an "ancillary proceeding." 21 U.S.C. § 853(n). Third parties have 30 days following notice (absent extension) to file a claim with the district court asserting an interest in specific property that the Government seeks to finally forfeit, which will then be adjudicated as part of an ancillary proceeding. *See* 21 U.S.C. § 853(n)(6). Section 853(n) provides that any third-party petitioner has standing to assert its claim to specific property, where the petitioner demonstrates "an interest in a particular, *specific asset*, as opposed to a general interest in an entire forfeited estate or account." *United States v. Ribadeneira*, 105 F.3d 833, 835-36 (2d Cir. 1997) (emphasis added). Thus, in order to contest the forfeiture of a specific asset, a petitioner must establish that he has standing—*i.e.*, a "legal interest in" that asset. 21 U.S.C. § 853(n)(2). As a result, general creditors have no standing to file a § 853(n) claim, because they have no interest in specific forfeited property. *See Ribadeneira*, 105 F.3d at 835-36; *see also DSI Assocs. LLC v. United States*, 496 F.3d 175, 184 (2d Cir. 2007) ("As

a general creditor of Kings Holdings and Gordon, DSI does not possess a 'legal right, title, or interest in the property' that was forfeited as required for standing under section 853(n)(6)(A)."); *United States v. McCorkle*, 143 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000) ("A general creditor has no 'vested' or 'superior' interest in particular assets forfeited unless he not only has secured a judgment against the debtor, but also has perfected a lien against the particular item.").

Courts have determined that fraud victims are typically general creditors and thus lack standing to assert a § 853(n) claim. *United States v. Lesak*, No. 07 Cr. 0396 (GEL), 2009 WL 1788411, at *4-6 (S.D.N.Y. 2009) ("Crime victims are typically general creditors." (citing *United States v. Eldick*, 223 F. App'x 837 (11th Cir. 2007)); *see also Eldick*, 223 F. App'x at 839-40 ("A fraud victim who voluntarily transfers property to the defendant has a cause of action in tort against the defendant but has no greater interest in the forfeited property than does any other general creditor. Title to the funds in question no longer belongs to the victim; it belongs to the defendant.")[1].

Once a petitioner demonstrates standing, there are two avenues, set forth in § 853(n)(6), by which he or she may prevail in claiming forfeited property, namely, where:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because . . . [it] was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section.

21 U.S.C. § 853(n)(6); *see Pacheco v. Serendensky*, 393 F.3d 348, 353 (2d Cir. 2004) ("Under the statute, one of two conditions must adhere for an intervenor to receive relief."). The burden is on the petitioner to demonstrate his or her claim by a preponderance of the evidence. *See* 21 U.S.C. § 853(n)(6); *Watts*, 786 F.3d at 160.

---

[1] In limited circumstances, where a court has imposed the equitable remedy of creating a constructive trust, a fraud victim may have standing to assert a § 853(n) claim. In general terms, "a constructive trust arises when, in the eyes of equity, a [person] is the true owner of the property at issue due to his right to the underlying assets from which it derives." *United States v. Watts*, 786 F.3d 152, 168 (2d Cir. 2015) (internal quotation marks and alterations omitted). The creation of a constructive trust, however, requires both the absence of an adequate legal remedy and direct tracing of the petitioner's property to the assets subject to forfeiture. *See In re First Central Financial Corp.*, 377 F.3d 209, 215 (2d Cir. 2004). In other words, there would still have to be a greater showing than mere victimhood.

Section 853(n)(6)(A) applies to third parties who had an interest in property before the subject crime was committed (*i.e.*, before the Government's interest vested). This "leads inevitably to the conclusion that § 853(n)(6)(A) is likely never to apply to proceeds of the crime." *United States v. Hooper*, 229 F.3d 818, 821-22 (9th Cir. 2000); *see also United States v. King*, No. 10 Cr. 122 (JGK), 2012 WL 2261117, at *6 (S.D.N.Y. June 18, 2012) ("[W]here a petitioner claims an interest in property purchased with crime proceeds, § 853(n)(6)(A) will likely never apply, because crime proceeds, by definition, do not precede the commission of criminal activity but instead result from that criminal activity.").

Section 853(n)(6)(B) applies to third parties who innocently acquired property *after* the crime. *United States v. Chowaiki*, 369 F. Supp. 3d 565, 572 (S.D.N.Y. 2019) (citing *Watts*, 786 F.3d at 166). In order to state a claim for relief under § 853(n)(6)(B), a claimant must allege facts sufficient to prove three elements: (1) a legal interest in the property; (2) that the interest was acquired by the petitioner as a bona fide purchaser for value; and (3) that the interest was acquired at a time when the claimant was reasonably without cause to believe that the property was subject to forfeiture. *See* 21 U.S.C. § 853(n)(6)(B); *United States v. Allmendinger*, 10 Cr. 248-01, 2012 WL 966615, at *2 (E.D. Va. Mar. 21, 2012).

2. Petitions for Remission

Although victims, as general creditors, are foreclosed from § 853(n) claims, aside from restitution, their remedy is to seek recovery through the remission process of the Money Laundering, Narcotics and Forfeiture Section ("MNF") (formerly the Money Laundering and Asset Recovery Section of the Department of Justice's Criminal Division), as discussed below.

Pursuant to 28 C.F.R. Part 9, victims who do not have standing to pursue § 853(n) claims may be eligible for remission drawn from forfeited funds if they can demonstrate several factors, including (among others): (1) that they have suffered a "pecuniary loss of a specific amount [that] has been directly caused by the criminal offense, or related offense" and "is supported by documentary evidence"; and (2) "[t]he victim did not knowingly contribute to, or participate in, benefit from, or act in a willfully blind manner towards the commission of the offense, or related offense, that was the underlying basis of the forfeiture." 28 C.F.R. § 9.8(b)(1), (3). Generally, MNF will grant remission on a *pro rata* basis where the amount to be distributed is less than the value of the victims' losses. 28 C.F.R. § 9.8(e). Additionally, the regulations permit the use of trustees or other non-government personnel to assist in the processing and determination of remission claims, particularly in cases involving a large number of victims, as if the case here. 28 C.F.R. § 9.8(d).

**B. Resolving the § 853(n) Claims in this Case**

Following the entry of a preliminary order of forfeiture as to Yanping Wang, as well as the preliminary order of forfeiture as to Guo, Dkt. 719,[2] approximately 134 purported § 853(n) claims

---

[2] Prior to January 20, 2026, the Government intends to file a motion for an amended preliminary order of forfeiture to add approximately four additional assets obtained by the Government: two

Page 4

were filed on the docket.³ The Government is reviewing those purported claims, and is in the process of categorizing each to determine whether a purported claim is from (i) a general creditor, such as a victim demonstrating an interest in recovering their loss from crime proceeds; (ii) a party with standing to assert an interest under § 853(n)(6)(A); or (iii) a party with standing to assert an interest under § 853(n)(6)(B).

The Government believes the appointment of a special master to assist the Court in its evaluation of the purported § 853(n) claims is warranted. The special master can review the approximately 134 filed claims in parallel with the Government and recommend to the Court which, if any, of those claims should be dismissed because they are claims made by general creditors. With respect to any remaining claims, the Government will evaluate on a case-by-case basis the appropriate disposition for each and recommend to the Court further proceedings. (The Government would consider whether those dismissed claims should be treated as petitions for remission.) Indeed, the Government is presently reviewing all the purported claims and estimates its review will take additional weeks to complete. As to each claim that is not dismissed upon recommendation of the special master, the Government would either (i) move the Court for its dismissal; or (ii) make a proposal to the Court for further proceedings, whether recognizing a stipulation of settlement between the parties, adjudicating a dismissal motion, or setting a discovery schedule and date for a forfeiture hearing to dispose of the claim. To the extent there is additional litigation between a claimant and the Government, the special master can further assist the Court, as appropriate, in adjudicating the claim.

### C. Restitution Is Impracticable In This Case Under the Mandatory Victim Restitution Act

Under the MVRA, restitution to persons "directly and proximately harmed" by the defendant's counts of conviction is ordinarily mandatory. *See* 18 U.S.C. §§ 3663A(a)(1), (c)(1)(A)(ii). The MVRA, however, recognizes that, in certain cases, restitution cannot be mandatory because its imposition would be impossible, including when "the number of identifiable victims is so large as to make restitution impracticable," or when imposing restitution would require "determining complex issues of fact related to the cause or amount of the victim's losses" which "would complicate or prolong the sentencing process." *Id*. § 3663A(c)(3). In situations where restitution is impracticable, the Government routinely seeks to return money to victims through the remission process, governed by 28 C.F.R. Part 9. When a court makes a finding that a restitution order is impracticable, the Department of Justice regularly uses a forfeiture remission process to compensate victims, and it would do so in this case. *See, e.g., United States v. Madoff*, 09 Cr. 213 (DC), Dkt. 106 & *United States v. Bonventre*, 10 Cr. 228, Dkt. 318 (Madoff

---

checks made payable to G Club entities, and certain funds held in deposit in foreign banks accounts held in the name of co-defendant Kin Ming Je and/or his wife.

³ In addition, the Government has received approximately 238 purported § 853 claims by mail, which will be treated as petitions for remission, given that § 853(n) claimants must "petition the court," not the Government. *See* 21 U.S.C. § 853(n)(2). Should the Court wish to treat these as third-party claims, however, the Government will provide them to the Court for the Court's adjudication.

Ponzi scheme); *United States v. Sharma*, 18 Cr. 340, Dkt. 407 (multi-million-dollar cryptocurrency scheme); *United States v. Dos Santos*, 20 Cr. 398, Dkt. 283 (multi-million-dollar cryptocurrency scheme); *United States v. Samuel Bankman-Fried*, 22 Cr. 673, March 28, 2024 Minute Order; *United States v. Do Kwon*, 23 Cr. 151, Dkt. 64 (forty-billion dollar cryptocurrency scheme).

The forfeiture statutes authorize the Attorney General to "grant petitions for mitigation or remission of forfeiture, restore forfeited property to victims of a violation of this subchapter, or take any other action to protect the rights of innocent persons which is in the interest of justice and which is not inconsistent with the provisions of this section." 21 U.S.C. § 853(i)(1). It is the policy of the Department of Justice, consistent with the Crime Victims' Rights Act, to ensure that crime victims receive "full and timely restitution as provided in law." *See* 18 U.S.C. § 3771(c)(1). Accordingly, when the Government seizes property in connection with a criminal case, the Government's goal is to forfeit the property and then, in remission proceedings administered by the Attorney General through his delegee, the MNF Chief, to distribute funds to victims. Frequently MNF will distribute those assets through a remission program by which victims may petition for portions of forfeited property. *See, e.g. Sharma*, 2022 WL 1910026, at *2. In order to qualify for remission, a crime victim must provide information to the Government to support specific elements, including that they suffered a specific pecuniary loss directly caused by the criminal offense, that the victim did not contribute to the offense, that the victim has not been in compensated for the loss from another means, and that the victim has no other recourse available. *See generally* 28 C.F.R. § 9.8(b).

Because of the complexity of this case and the number of victims involved, awarding restitution to victims in accordance with 18 U.S.C. § 3663A would be extremely costly and administratively impractical. The cost and time associated with calculating each victim's loss, determining whether the victim has already been compensated through the Securities and Exchange Commission ("SEC") or otherwise, and then paying out a percentage of each of the victims' losses would delay payment and diminish the amount of money actually paid to victims. Therefore, consistent with the Government's frequent approach in complex cases with numerous victims, the Government does not seek restitution, and instead moves for entry of an order finding that restitution would be impracticable in this case. 18 U.S.C. § 3663A(c)(3).

Indeed, this Court has ordered compensation through a remission process in lieu of restitution for Yanping Wang, Guo's co-defendant. Dkt. 495. The facts underlying the Court's decision with respect to Wang are largely similar and equally applicable to Guo. Victims' interests will be best served in this case through remission of finally forfeited funds through MNF's remission process. An alternative arrangement whereby restitution is calculated and distributed to victims by the Government and the Court would be nearly impossible administratively, and would come at great expense to victims' recovery. In order to enter an order of restitution, the Court would need to determine and corroborate each victim's losses. That would require determining and corroborating, for each of the thousands of victims, both the amount of funds the victim provided the Guo Enterprise, any partial refunds from the Guo Enterprise, the amount a victim was compensated through the SEC's disgorgement process, and potentially any funds returned to the victim through collateral means. That task is all the more challenging given the global nature of the defendant's fraud. Instead, a process whereby the Government distributes finally forfeited

funds through a contracted claims administrator will promote efficiency, and will not "complicate or prolong the sentencing process" at the expense of the victims. 18 U.S.C. § 3663A(c)(3).

### D. Conclusion

Accordingly, the Government respectfully requests that the Court: (1) appoint a special master to assist the Court in evaluating § 853(n) claims; and (2) enter an order finding that restitution would be impracticable in this case.

Respectfully submitted,

SEAN S. BUCKLEY
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515.

by: ___/s/_____
Micah F. Fergenson
Ryan B. Finkel
Justin Horton
Juliana N. Murray
Assistant United States Attorneys
(212) 637-2190 / 6612 / 2276 / 2314

cc:   Counsel of Record (by ECF)