SARAFA ZELLAN

43 West 43rd Street, Suite 370 | New York, NY 10036
212.785.7577 | 646.868.8266 (fax)
www.sarafazellan.com

February 19, 2026

**By ECF Filing**
Honorable Analisa Torres
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Ho Wan Kwok, et al.*
               23-CR-118 (AT)

Dear Judge Torres:

      Together with Joshua Dratel and John Kaley, on behalf of our client Miles Guo (a/k/a "Ho Wan Kwok"), we respectfully request the Court's permission to submit this brief response to the Government's February 17, 2026, submission (ECF No. 803; "Gov Ltr."), which responded to our February 3, 2026, objections (ECF No. 799; "Def. Obj.") to the Preliminary Order of Forfeiture ("POF").

**I.**     **Mr. Guo Has Not Waived His Right to Object to the POF**

      The Government continues to insist, incorrectly, that Mr. Guo has waived his right to lodge objections to the POF. The Government's argument has no merit; indeed, it is mystifying in the context of the procedural history of the forfeiture litigation in this case.

      The Government first floated the waiver argument in its September 19, 2025, response (ECF No. 750) to Mr. Guo's motion seeking to preserve the value of certain forfeitable assets (ECF No. 724). In his reply in further support of his motion to preserve assets (ECF No. 754), Mr. Guo explained in detail why he had not waived his right to contest multiple aspects of forfeiture, including entry of a personal money judgment, whether certain property is forfeitable at all, whether alleged proceeds attributable to acquitted conduct is forfeitable, whether certain valuations are accurate, and whether certain property, such as disgorgement received by the SEC, should offset any money judgment (ECF No. 754 at 2-3).

      This Court implicitly rejected the Government's waiver argument in its January 8, 2026, Order directing Mr. Guo to file any objections he may have to the POF in a written submission to the Court,

noting that failure to do so by the Court's deadline "may constitute waiver of any objection to the POF." (ECF No. 784) Mr. Guo timely filed his objections as directed by the Court and has not waived any rights in this regard.

The Government's further argument that Mr. Guo has intentionally delayed filing objections to the POF in order to gain some tactical benefit also is without foundation. *See* Gov. Ltr. at 3-4. Mr. Guo gains no tactical benefit by filing his POF objections at this particular time. Further, Mr. Guo has always retained the right to object to the POF prior to sentencing.[1] The timing of his objections reflects nothing more than the learning curve of counsel coming into this extremely complex case after a lengthy trial and being tasked with digesting not only the pretrial and trial record, but also entirely different and in many respects novel issues of forfeiture and their intersection with extremely complex bankruptcy proceedings. Most importantly, as set forth above, the objections were timely filed in accordance with the Court's Order. There has been no waiver.

## II.     There is No Reasonable Basis to Impose a $1.3 Billion Money Judgment Against Mr. Guo

### A.     *The Scope of the Fraud and the Amount to be Forfeited Must be Determined in Calculating an Appropriate Money Judgment*

The Government contends that any funds sent by any investor or customer to an entity named in this case automatically became forfeitable property for which Mr. Guo is responsible, and thereby support the imposition of the enormous forfeiture money judgment the Government seeks. But any forfeiture amount must be based on the evidence at trial and the statements of those who claim to have been defrauded by Mr. Guo. The actual evidence produced at trial consisted only of a handful of investors who testified that certain representations attributed to Mr. Guo, which the Government argued were fraudulent, were material to their decision to send money to the entities involved in this case.

In contrast, as reflected in hundreds of filings with the Court, emails sent to defense counsel, and possibly communications sent directly to the Government, there are many alleged victims who maintain that they were not victims of Mr. Guo at all.

In addition, also as established at trial, the CCP waged an aggressive campaign to discredit Mr. Guo and brand him a liar and cheater, going so far as to pressure individuals to file false claims against him. Under these circumstances, as discussed in Mr. Guo's initial objections, it is not reasonable to extrapolate from the testimony of a handful of victims that all who sent money to the entities involved in this case were defrauded or that those monies are forfeitable. *See* Def. Obj. at 3-9. The Government dismisses out of hand – on the ground that it did not concern forfeiture – the Second Circuit's reversal of the fraud convictions in *United States v. Miller*, 997 F.2d 1010 (2d Cir. 1993), but as discussed in Mr.

---

[1] As the Government well knows, Mr. Guo did not consent to the POF and therefore, pursuant to Rule 32.2(b)(4)(A) of the Federal Rules of Criminal Procedure, the POF does not become final as to Mr. Guo until sentencing.

Guo's initial objections the reasoning of *Miller* directly applies to the facts here because it addressed fraud in the context of a purported victim's expectations and reliance. *See* Def. Obj. at 4-5.

The Government similarly dismisses *United States v. Rainford*, 110 F.4th 455 (2d Cir. 2024), solely on the ground that the case did not proceed to trial, ignoring the Court's reversal in that case based on the Government's overly broad and incomplete assessment of evidence indicating that only some of the transactions in the case were fraudulent. Consequently, the Government's attempts to distinguish those cases present merely cosmetic distinctions without a substantive difference.

Contrary to the Government's arguments, the trial record and the many public filings in this case do not support the broad claim that any and all monies or assets sent to any of the business entities involved in this case constitute criminal proceeds. These facts must be considered in determining any amount of forfeiture.

### B.    *The Government's Reliance on* Fruchter *Is Misplaced*

In assuming that all the property it has seized or identified is forfeitable, and that adjudication of the §853(n) petitions would not affect the forfeiture judgment, the Government plainly puts the cart before the horse. There is a critical distinction, not appreciated by the Government, between forfeitable property in which a third party may have a property interest that can be vindicated through §853(n), and property *that is not forfeitable at all*.

Here, both the Himalaya Exchange petitioners and the Hamilton Opportunity Fund SPC petitioners assert the latter claim: that their property does *not* constitute "proceeds" of any offense conduct and therefore are not subject to forfeiture. That would, as a preliminary matter, exclude those amounts from forfeiture altogether. *See* Def. Obj. at 5-8.

Also, the Government's reliance on *United States v. Fruchter*, 411 F.3d 377 (2d Cir. 2005), is misplaced for multiple reasons. For instance, *Fruchter* predates the Supreme Court's opinion in *Honeycutt v. United States*, 581 U.S. 443 (2017), and the Second Circuit's opinion in *United States v. Elias*, 154 F.4th 56 (2d Cir. 2025), both of which, as discussed in Def. Obj. at 9-10, have dramatically narrowed the scope of *in personam* forfeiture attributable to proceeds *not obtained by the specific defendant being sentenced*.

Moreover, as explained in Def. Obj. at 15-16, other courts, including the Second Circuit, have rejected the very same argument the Government makes here with respect to any categorical forfeiture based simply on a conviction pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *See, e.g., United States v. Morrison*, 656 F. Supp. 2d 338, 345 n.13 (E.D.N.Y. 2009); *Rainford*, 110 F.4th at 489.

### C. *Acquitted Conduct*

The Government argues that irrespective of the jury's acquittal on the counts related to GTV, the conviction on the RICO charge is sufficient to bring within the ambit of forfeiture any monies received in connection with the GTV stock issue. But the mere fact of conviction of the RICO offenses does not mean that the jury found that the GTV monies were part of the racketeering conduct for which the defendant was found guilty. The jury may well have based the RICO conviction on predicate conduct unrelated to GTV, which is the most plausible scenario given the jury's decision to acquit on the GTV counts. *See also Griffin v. United States*, 502 U.S. 46 (1992) (discussed in Def. Obj. at 17).

Moreover, as we set forth in Mr. Guo's initial objections and which the Government does not appear to challenge, the weight of legal authority has moved away from and disfavors basing any aspect of sentencing – of which forfeiture is indisputably a component – on acquitted conduct. *See* Def. Obj. at 11-14.

### D. *The Offset Issues Raised by Mr. Guo are Ripe for Adjudication*

The Government contends that it is too soon to address Mr. Guo's argument that the value of other recoveries by the Government should be offset against any personal money judgment. Gov. Ltr. at 10.[2] To properly analyze this issue, however, the assets in question must be divided into two groups: (1) assets already obtained by the Government and not subject to adjudication of third-party interests; and (2) assets yet to be obtained by the Government and/or the Specific Property already seized and subject to adjudication of third-party interests.

#### 1. *Assets Already Obtained and Not Subject to Ancillary Proceedings*

This category consists of the $486,745,063 disgorged by GTV Media Group, Inc. ("GTV"), Saraca Media Group, Inc. ("Saraca"), and Voice of Guo Media, Inc. ("VOG") to the SEC, *see* Def. Obj. at 17-18, and the $2,700,000 forfeited by Haithem Khaled, *see* Def. Obj. at 19. These funds, all of which fall within the four buckets of funds making up the $1.3 billion figure the Government seeks in a money judgment,[3] have already been collected by the Government and are not subject to further adjudication. To the extent they constitute proceeds of the offenses of conviction in this case, they already have been disgorged; as such, there is no reason (and no authority) to order Mr. Guo to disgorge them a second time, and the amounts are not subject to further litigation. Accordingly, a minimum of $489,445,063 should be offset against any money judgment entered as to Mr. Guo.

---

[2] The Government's "ripeness" argument contradicts entirely its "waiver" argument.
[3] The four bucket are: $411 million to GTV/Voice of Guo; $110 million to the Farms; $240 million to G Clubs; and $517 million to Himalaya Exchange. GXZ 26; *see also* Def. Obj. at 2.

2. *Specific Property Subject to Ancillary Proceedings and/or Assets Yet to be Obtained*

This category consists of the Specific Property already seized by the Government and set forth in the POF, as well as other assets that are potentially forfeitable in this case but have not yet been seized by the Government.

The Specific Property is indeed subject to adjudication of third-party interests that have been asserted (or may yet be asserted) in hundreds of petitions filed pursuant to 21 U.S.C. § 853(n). Mr. Guo has not asserted any personal interest in the Specific Property. The overwhelming majority of the value of the Specific Property – a total of $646,551,016.93 (*see* Def. Obj., Ex. A) – consists of cash held in numerous bank accounts (and already seized by the Government) for the benefit of Himalaya Exchange customers and others.

As discussed in Def. Obj. at 6-8 and in Part II.B above, the Himalaya Exchange petitioners and those we refer to as the Hamilton petitioners assert that they are not victims of fraud and that the funds they claim are not proceeds of fraud. Accordingly, if those petitioners are successful in their § 853(n) claims, then the property is not forfeitable at all. If they are not successful, then the property – the value of which is known because it is in cash accounts – is already in the Government's coffers. Either way, these amounts should be offset against any money judgment entered as to Mr. Guo.

Finally, assets that are potentially forfeitable but have not yet been seized by the Government include the approximately $200 million in assets controlled by the bankruptcy Trustee (*see* ECF No. 724), which are the subject of Mr. Guo's September 4, 2025, motion to preserve the value of assets controlled by the bankruptcy Trustee (ECF Nos. 724, 754), and to compel their turnover to the Government, and is presently *sub judice* before the Court. Mr. Guo reasserts that motion here and requests adjudication and turnover of those assets to the Government for it to be returned to claimants. Many of these assets are the subject of the forfeiture allegations in the indictment and in the POF. They should be turned over to the Government and offset against any monetary forfeiture judgment to be entered against Mr. Guo.

In addition, Mr. Guo maintains that there is an additional approximately $100 million in assets related to this case believed to be under the control of Sara Wei and/or G-Services LLC, Crane and/or Haithem Khaled, Kyle Bass, Qidong Xia and/or Mountains of Spices, Li Ya and/or Wang Xuebin, and Mercantile Bank. These assets, if they have not already been forfeited by the individuals and entities noted, should be pursued by the Government, and any recovery used to further offset any criminal forfeiture judgment against Mr. Guo. To the extent that there has been forfeiture of any of these assets by the parties noted, and which are in the possession of the Government, then Mr. Guo is entitled to an offset for these sums. Accordingly, the approximately $300 million in potentially forfeitable assets which the Government has yet to pursue for reasons unknown to Mr. Guo, or which have been forfeited and obtained by the Government, should be offset against any money judgment entered as to Mr. Guo.

### III. Conclusion

For the reasons set forth in Mr. Guo's initial objections to the POF (ECF No. 799), as well as those discussed herein, we respectfully submit that the Government has not met its evidentiary burden to support entry of the money judgment it requests. Further we respectfully submit that assets already obtained by the Government in connection with this case as well as those it has elected not to seize exceed the $1.3 billion sought by the Government and that any money judgment therefore is inappropriate. To the extent any money judgment is entered in this case, any order imposing such money judgment should provide for it to be offset by the value of the sale of other Specific Property in the POF, and any other assets that the Government obtains in connection with this case.

Respectfully submitted,

*[signature]*

Melinda Sarafa
Joshua Dratel
John Kaley

cc: All counsel via ECF