# Exhibit 5

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ATTORNEY GENERAL OF THE )
UNITED STATES OF AMERICA, )
                            )     Civil Action No. 22-1372
                            )
             Plaintiff, )
                            )
       v.                     )
                            )
STEPHEN A. WYNN, )
                            )
           Defendant. )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

The Attorney General of the United States of America, by and through the undersigned attorneys, brings this civil action for declaratory and injunctive relief, and alleges as follows:

## INTRODUCTION

1.       This statutory injunction action is brought under the Foreign Agents Registration Act of 1938, as amended, 22 U.S.C. §§ 611-621 ("FARA" or "the Act"), to compel the Defendant, Stephen A. Wynn, pursuant to 22 U.S.C. § 618(f), to submit a true and complete registration statement, and supplements thereto, to the Attorney General, as required by 22 U.S.C. § 612(a)-(b). Defendant is obligated to file these materials by virtue of his acting as an agent of two foreign principals: Sun Lijun ("Sun"), the former Vice Minister for Public Security in the People's Republic of China ("PRC"), and the PRC itself.

2.       Specifically, at the request of Sun, and on behalf of the PRC, the Defendant conveyed to former President Donald J. Trump and his Administration ("the Trump Administration") the PRC's request to remove from the country a PRC national who had sought political asylum in the United States. In so doing, from at least June 2017 through at least

August 2017, the Defendant acted as an agent for foreign principals Sun and the PRC and engaged in political activities on their behalf in the United States.

3. The Defendant therefore has an obligation under FARA to register with the Attorney General. 22 U.S.C. § 612(a).

4. Nevertheless, after having been informed by the U.S. Department of Justice of this obligation in letters dated May 16, 2018, October 27, 2021, and April 13, 2022, the Defendant refused to register. Because his failure to file constitutes an ongoing violation of FARA and given the likelihood that this violation will continue in the absence of court action, a permanent injunction is necessary.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter and all parties to this action under 28 U.S.C. §§ 1331 and 1345, and also under 22 U.S.C. § 618(f).

6. Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to this action arose from events occurring within this judicial district.

## THE PARTIES

7. Plaintiff is the Attorney General of the United States. The Attorney General is the nation's chief law enforcement officer and the head of the U.S. Department of Justice, an Executive Agency of the United States, and is entrusted with administering FARA. Pursuant to his statutory authority, *see* 22 U.S.C. § 620, the Attorney General has promulgated regulations delegating the responsibility for administering and enforcing the Act to the Assistant Attorney General for National Security, 28 C.F.R. § 5.1(a).

2

8. The Defendant is a U.S. citizen, real estate developer, and businessperson who owned multiple casinos and resorts. In 2006, the Defendant opened the first of three casino properties located in Macau, which is a special administrative region of the PRC.

## FARA STATUTORY PROVISIONS

9. Among the chief purposes of FARA is to inform the American public of the activities of agents in the United States working for foreign principals to influence U.S. Government officials or the American public with reference to the domestic or foreign policies of the United States, or with reference to the political or public interests, policies, or relations of a foreign country or a foreign political party. U.S. agents of foreign principals must register with the Attorney General and make certain disclosures in the registration filings concerning their agency relationships and activities undertaken within the United States on behalf of their respective foreign principals. 22 U.S.C. § 612(a).

10. Under FARA, the term "foreign principal" includes "a government of a foreign country" and "a person outside of the United States," except in circumstances not applicable here. 22 U.S.C. § 611(b)(1)-(2).

11. FARA's "agency" determination is a two-part inquiry that considers both (1) the relationship between the agent and the foreign principal and (2) the activities that the agent performs in the principal's interests. Agency relationships for purposes of FARA include situations where there is an indirect relationship between an agent and a foreign principal through an intermediary. 22 U.S.C. § 611(c)(1).

12. As relevant here, the term "agent of a foreign principal" under FARA means:

> [A]ny person who acts as an agent, representative, employee, or servant, or any person who acts in any other capacity *at the* order, *request*, or under the direction or control, of a foreign principal or of a person any of whose activities are directly or indirectly supervised,

3

directed, controlled, financed, or subsidized in whole or in major part by a foreign principal, and who directly or through any other person . . . engages within the United States in political activities for or in the interests of such foreign principal [or] within the United States represents the interests of such foreign principal before any agency or official of the Government of the United States.

22 U.S.C. § 611(c)(1)(i), (iv) (emphasis added).

13.     FARA defines the term "political activities" as "any activity that the person engaging in believes will, or that the person intends to, in any way influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting, or changing the domestic or foreign policies of the United States or with reference to the political or public interests, policies, or relations of a government of a foreign country or foreign political party." 22 U.S.C. § 611(o).

14.     FARA does not limit the speech or political activities of its registrants, who are free to advance whatever message they wish, provided that they disclose their relationship to their foreign principal and adhere to the recordkeeping and other requirements of the statute.

15.     Pursuant to FARA, a person or entity who has a registration obligation has a continuing duty to register, even if the FARA-registrable conduct has ceased. 22 U.S.C. §§ 612(a), 618(e). Termination of the agency relationship does not relieve an agent of the obligation to file a registration statement. *Id*. § 612(a).

## FACTUAL ALLEGATIONS

16.     In approximately May 2017, during a meeting coordinated by foreign national Low Taek Jho, Sun asked businessperson and former finance chair of the Republican National Committee ("RNC") Elliot Broidy, hip-hop artist Prakazrel Michel, and businessperson Nickie Lum Davis to lobby then-President Trump and the Trump Administration to convey the PRC's request to cancel the visa of or otherwise remove from the United States a PRC businessperson

4

who left China in 2014, was later charged with corruption by the PRC, and sought political asylum in the United States (hereinafter "the PRC national").

17. In approximately June 2017, Broidy, on behalf of Sun, elicited the Defendant's help in the lobbying effort. Defendant served as the RNC finance chair from January 2017 through January 2018 and met Broidy through that work. Broidy believed that the Defendant's RNC experience, combined with the Defendant's business dealings in the PRC and friendship with then-President Trump, would be helpful in getting access to Trump Administration officials.

18. Broidy told the Defendant that the PRC national was a criminal wanted by the PRC who was hiding in the United States, that the PRC wanted him arrested, and that his visa was due to expire soon. Broidy informed the Defendant that Broidy had received this information from Sun of the PRC's Ministry of Public Security and that Sun requested the Defendant's help in bringing the issue to the attention of the Trump Administration.

19. Broidy provided the Defendant with the PRC national's passport photos, an Interpol red notice, and links to various news articles about the PRC national.

20. In or around June 2017, Sun spoke by telephone with the Defendant and requested the Defendant's assistance with seeking the removal of the PRC national. The Defendant agreed to raise the matter with then-President Trump and Trump Administration officials. Defendant had no prior connection to the PRC national or independent interest in his removal.

21. Also in or around June 2017, Sun, through Broidy, sought the Defendant's assistance in having the PRC national placed on the No Fly List and having his new visa application denied.

    a. By text message dated June 27, 2017 to the Defendant's wife, Broidy noted that the PRC national's visa was due to expire on June 30, 2017, and asserted that "[i]t

5

is critically [*sic*] that his new visa application he [*sic*] immediately denied" and that the PRC national be placed on the No Fly List.

b.  The Defendant's wife received and sent text messages on behalf of the Defendant, including the above text message and others discussed throughout this Complaint. The Defendant's wife informed the Defendant of the contents of messages received and also sent text messages to Broidy and other individuals at the direction of the Defendant.

c.  Broidy sent to the Defendant, through the Defendant's wife, a second message on June 27, 2017, stating that

> President Xi Jinping mentioned to President Trump at Mar-A-Lago that he would like [the PRC national] returned. Vice Minister [Sun] met with me and requested help with regard to [the PRC national]. The Vice Minister told me this is a matter of upmost importance to President Jinping. He promised to return certain US citizens held hostage by China and would accept a very large number of Chinese illegal immigrants for deportation back to China. Finally, he offered new assistance with regard to North Korea.

22.  During a dinner on or about June 27, 2017 with then-President Trump and other Administration officials in Washington, D.C., the Defendant conveyed to then-President Trump the PRC's desire to have the PRC national removed from the United States and provided the PRC national's passport photos to then-President Trump's secretary.

a.  After the dinner, Broidy informed the Defendant by text (through Defendant's wife) that Sun was "extremely pleased and said that President Xi Jinping appreciates [the Defendant's] assistance."

b.  On or about the following day, June 28, 2017, Broidy inquired by text with the Defendant (through Defendant's wife) about the status of the PRC national's visa and whether he had been placed on the No Fly List. Broidy's message added that

6

"[Sun] says they are grateful for your help." In response, the Defendant (through Defendant's wife) texted Broidy that "This is with the highest levels of the state department and defense department. They are working on this."

23. From approximately June 2017 through at least August 2017, the Defendant had several telephone calls with Sun.

    a. On these telephone calls, the Defendant was connected to Sun via Lum Davis, and the discussions were conducted via a translator.

    b. During these telephone calls, the Defendant believed Lum Davis to be Sun's assistant.

    c. The Defendant participated in at least eight of these calls with Sun. The calls varied in length but lasted approximately thirty minutes on average.

    d. In these discussions, Sun described the PRC national and stated that it would be very important to the PRC if the PRC national's visa was not renewed. Sun also stated that he would appreciate the Defendant's help.

    e. The Defendant mentioned his business interests in Macau to Sun on multiple phone calls.

24. On or about July 26, 2017, Defendant's wife sent to Broidy a text message asking Broidy to send to her again the documentation about the PRC national.

25. Between approximately July 2017 and August 2017, the Defendant attempted to organize meetings with senior officials on the National Security Council ("NSC") and at the White House.

a. In or around late July and August 2017, the Defendant had contact with multiple Trump Administration officials, including two former White House chiefs of staff and two senior officials on the NSC, regarding the PRC national.

b. The Defendant contacted the White House Chief of Staff on multiple occasions about the PRC national during June and July 2017 and requested a meeting with then-President Trump to discuss the same.

c. During a late July 2017 meeting with the White House Chief of Staff and two senior NSC officials, the Defendant stated that PRC officials had contacted him and advised him that "they were very interested in having" the PRC national returned to China as soon as possible.

d. In or around August 2017, the Defendant on multiple occasions visited the White House in person to have what appeared to be unscheduled meetings with then-President Trump. Some of these discussions, including a meeting on August 25, 2017, concerned the PRC national.

e. In late August 2017, Broidy took Defendant and Defendant's wife on a trip off the coast of Italy on a yacht belonging to Broidy and his wife. On August 19, 2017, Broidy and the Defendant called then-President Trump from the yacht. During that call, the Defendant asked then-President Trump about the PRC national's status, and then-President Trump responded that he would look into the matter.

26. The efforts to have the PRC national removed ultimately were unsuccessful.

27. Sun continued to contact the Defendant through approximately October 2017, at which point the Defendant informed Sun that he had made U.S. Government officials aware of the request, that the Defendant was not able to provide any more assistance, and that Sun should

stop contacting him.  Defendant wanted to exit the situation gracefully, preserve his business interests in China, and avoid offending anyone.

28.     Defendant's conduct was motivated by his desire to protect his business interests in the PRC.  In an undated text message, the Defendant told Lum Davis to advise a PRC official to have the PRC ambassador in Washington, D.C. contact two senior-level NSC officials directly.  Defendant wrote in the message that he had spoken with both individuals and received assurances "that all parties in the White House were fully sensitive to the timing of this issue and the relevant USA procedural law involved."  Defendant went on to state that

> [a]t this point, as a private citizen, I believe I have exhausted the advantages of my position.  If there is any other aspect of this situation may occur to you going forward, I would of course be anxious to help.  I remain grateful for the privilege of being part of the Macau and PRC business community.

29.     According to public reporting, in 2016, shortly before the conduct described above occurred, the Macau government restricted the number of gaming tables and machines that the Defendant's casino could operate.[1]  Also according to public reporting, Defendant was scheduled to renegotiate his licenses to operate casinos in Macau in 2019, subsequent to the conduct described above.[2]

---

[1] *See* James Detar, "Wynn resorts falls as Macau restricts tables at new casino," Investor's Business Daily (Aug. 12, 2016).

[2] *See* Linette Lopez, "And now it's clear how China will exploit Steve Wynn's moment of weakness," Business Insider (Jan. 29, 2018).

## LEGAL ALLEGATIONS

**I.** **Then-Vice Minister of Public Security Sun Lijun and the PRC are foreign principals under FARA**

30. As a Vice Minister for the PRC during the time period discussed above who is believed to reside in China, Sun is a foreign principal within the meaning of FARA. 22 U.S.C. § 611(b)(2).

31. The PRC is a foreign principal within the meaning of FARA because it constitutes the government of a foreign country. 22 U.S.C. § 611(b)(1).

**II.** **The Defendant acted as an agent of then-Vice Minister of Public Security Sun and the PRC**

32. Sun, on behalf of the PRC, requested that the Defendant assist in the effort to lobby the U.S. Government, including then-President Trump and the Trump Administration, to have the PRC national removed.

33. Broidy, on behalf of Sun, also requested that the Defendant assist in the effort to lobby the U.S. Government, including then-President Trump and the Trump Administration, to have the PRC national removed.

34. Accordingly, the Defendant acted as an agent of Sun and the PRC when he engaged in political activities on their behalf. 22 U.S.C. § 611(c)(1).

**III.** **The Defendant is obligated to register under FARA because he engaged in political activities at the request of then-Vice Minister Sun and the PRC**

35. The Defendant is obligated to register under FARA because, through his communications with and lobbying efforts directed at then-President Trump and the Trump Administration, he engaged in political activities by seeking to influence U.S. Government officials "with reference to formulating, adopting, or changing the domestic or foreign policies of

10

the United States, or with reference to the political or public interests, policies, or relations" of the PRC, for or in the interests of the PRC. 22 U.S.C. § 611(o).

36. The Defendant lobbied multiple people in the Trump Administration, including then-President Trump, on at least three separate occasions, to have the PRC national removed, and he did so at the request of at least one PRC official, Sun. As such, he acted as an agent of a foreign principal under FARA. 22 U.S.C. § 611(c)(1)(i).

**IV.     The Defendant has failed to register under FARA**

37. By letter dated May 16, 2018, the U.S. Department of Justice ("the Department") advised the Defendant of his obligation to register under FARA as an agent of Sun and the PRC and gave him thirty days to effect the registration. The Defendant, through counsel, sent to the Department a letter dated June 8, 2018, disputing the Department's analysis and requesting that the Department reconsider its determination. By letter dated October 27, 2021, the Department advised the Defendant that he remained obligated to register under FARA and that further investigation into the matter had strengthened the Department's determination in this regard. Defendant, through counsel, responded by letter dated December 10, 2021. By letter dated April 13, 2022, the Department reiterated its conclusion that Defendant has an obligation to register and gave the Defendant thirty days to do so.

38. To date, the Defendant has failed to register as required.

11

## COUNT I

### (Violation of 22 U.S.C. § 612(a))

39.  Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40.  By virtue of the acts described above, the Defendant acted as an agent of two foreign principals under 22 U.S.C. § 611(c)(1), that is, he lobbied the U.S. Government for the removal of the PRC national at the request of Sun and on behalf of the PRC.

41.  By virtue of the acts described above, the Defendant has an obligation to register as an agent of foreign principals pursuant to 22 U.S.C. § 612(a).  The Department on multiple occasions has informed the Defendant of this obligation, but he has declined to register.

42.  Plaintiff is entitled to a permanent injunction pursuant to 22 U.S.C. § 618(f) requiring the Defendant to register as an agent of a foreign principal under FARA and, by doing so, to submit a true and complete registration statement, and any supplements thereto, as required by 22 U.S.C. § 612(a)-(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the Attorney General of the United States of America, respectfully requests that this Court enter:

a.  A declaratory judgment stating that Defendant has an obligation to register pursuant to 22 U.S.C. § 612(a) for conduct undertaken on behalf of foreign principals Sun Lijun and the PRC;

b.  A permanent injunction requiring the Defendant to submit a true and complete registration statement, and supplements thereto, as required pursuant to Sections 2(a) and 2(b) of the Foreign Agents Registration Act, 22 U.S.C. § 612(a)-(b);

12

c.   Any and all other relief necessary to effectuate fully the injunction against the

Defendant; and

d.   Such other and further relief as the Court may deem just and proper.

Dated: May 17, 2022

Respectfully submitted,

MATTHEW G. OLSEN
Assistant Attorney General
National Security Division
U.S. Department of Justice

JENNIFER KENNEDY GELLIE
Chief, FARA Unit
National Security Division
U.S. Department of Justice

/s/ Nathan M. Swinton
Nathan M. Swinton
Trial Attorney
U.S. Department of Justice
National Security Division
Counterintelligence and Export Control Section
950 Pennsylvania Ave NW, Room 7700D
Washington, D.C. 20530
Telephone:  (202) 353-0267
Email: Nathan.Swinton@usdoj.gov