# Exhibit 14

## MR. GUO HAS ENDURED 37 MONTHS' CONFINEMENT AT MDC DURING ITS MOST VIOLENT AND CHAOTIC PERIOD

### A. *Mr. Guo's 37-Month Confinement at MDC*

Mr. Guo has been confined at MDC since his March 15, 2023, arrest, spending the first two years in the West Building (with the exception of 26 days he spent in the East Building SHU) until his February 25, 2025, transfer to the East Building. By April 13, 2026, he will have endured 37 months at MDC, including, during the two years he spent in the West Building, the most violent, fatal interval of federal detention in New York City during the past half century.

Notwithstanding the constant chaos and jeopardy existing at MDC, Mr. Guo has not committed any infractions. *See* PSR ¶ 22 (through July 19, 2024, the period reviewed for the PSR; we know of none since). Also, because of the language barrier (Mr. Guo's verbal English is limited, and he does not read or write English at all), he cannot have a work assignment or attend any programming, educational, or vocational classes. *Id*. ¶ 147.

Mr. Guo "spends his free time reading and exercising." *Id*. However, he has been menaced by other inmates, including an attempted poisoning, and MDC has not been a safe environment for him. *See* PSR ¶ 139 ("defendant noted that his life has been threatened several times while housed at MDC Brooklyn, and that his family is constantly worried about his welfare").

### B. *Other Courts' Recognition of the Serious, Systemic Problems at MDC*

Courts have increasingly, in published opinions and/or remarks made during proceedings (and recorded in transcripts thereof) cited MDC's glaring and gross deficiencies. Two court opinions issued in 2024, right in the middle of Mr. Guo's detention – *United States v. Chavez*, 710 F. Supp.3d 227 (S.D.N.Y. 2024), and *United States v. Colucci*, 743 F.Supp.3d 452 (E.D.N.Y. 2024) – address those issues in detail, and with withering criticism of the conditions at MDC.

For example, in *Colucci*, the Court sentenced a defendant to nine months in prison but

provided that it *not* be served at MDC.  In so doing, the Court commenced its discussion by declaring that determining the appropriate sentence was "further complicated by an extrinsic factor that looms large in nearly every bail and sentencing determination made in this judicial district: *the dangerous, barbaric conditions that have existed for some time at the Metropolitan Detention Center ("MDC") in Brooklyn*."  743 F.Supp.3d at 453 (emphasis added).[1]

Earlier, in *Chavez*, the Court pointed out that "[f]or years, the conditions in the federal jails that serve this District (and the Eastern District of New York) have been a major, growing, and widely understood problem."  710 F. Supp.3d at 228.[2]  Indeed, as the Court in *Colucci* stated:

> [w]hile evidence of failures at MDC continues to accumulate, there is no complete public record of the problem, and the available information is contained in judicial opinions from two districts and sporadic media reports. In the pages that follow, the Court has endeavored to highlight some matters that have come to light recently to make determinations in connection with the sentencing in this case.

743 F.Supp.3d at 456.

Other examples during the specific period of Mr. Guo's detention at MDC include:

● *United States v. Santana*, No. 22 Cr. 368 (VM), 2024 WL 2275037, at *2 (S.D.N.Y.

---

[1] Following the negative attention generated by *Colucci*, a veteran criminal justice reporter remarked that "[i]n the nearly 10 years I've covered criminal courts in New York, I've yet to hear a positive statement about the MDC. It's more often likened to hell on earth."  Emily Saul, "The New Federal Sentencing Factor in Downstate New York?  Prison Conditions," *The New York Law Journal*, August 29, 2024 ("*New Federal Sentencing Factor*"), available at https://perma.cc/2ZXH-FEBG.

Ms. Saul elaborated that while "[p]oor or even inhuman custodial conditions are not new or unique to federal facilities – or to New York[,]" the opinion in *Colucci* constituted "the most explicit example so far of the burden felt by federal judges in the Eastern and Southern Districts of New York as they try to fashion appropriate sentences when faced with escalating concerns over conditions at the MDC." *Id*.

[2] In the same specific context as *Chavez* – whether to grant bail even after a guilty plea – in *United States v. Arias*, 22 Cr. 495, (S.D.N.Y. June 7, 2023) (ECF No. 34, at 33), Judge Engelmayer declined to incarcerate the defendant, ruling that "where a defendant is not a risk of flight, is not a danger to the community, and there aren't special reasons for them to be remanded, avoiding putting a defendant in conditions as that [referring to the poor conditions at the MDC] qualifies as an exceptional reason" not to incarcerate the defendant.

May 20, 2024) ("[g]iven the severe prison conditions that prevail at the MDC (conditions that amount to imposing harsher punishments on prisoners), this Court and others have adjusted sentences of defendants in custody there for lengthy periods"); *see also Colucci*, 743 F.Supp.3d at 455;

- *United States v. Nordlicht*, 16 Cr. 640 (BMC) (E.D.N.Y.). In *Colucci*, the Court referenced the *Nordlicht* case thus: "[i]n yet another case, Judge Cogan indicated that he might have sentenced an offender to incarceration 'if not for the length of the sentence landing him in" MDC" (footnote omitted). 743 F.Supp.3d at 455; *see also* Emily Saul, "'Such a Weird Case': US Judge Sentences Platinum Partners Co-Founder to Six Months Home Confinement," *The New York Law Journal*, July 17, 2024, available at https://perma.cc/TX3M-FJK6 ("[s]entences [at MDC] are much longer," the judge sighed. "Things are not right over there right now");

- *United States v. Anatoly Legkodymov*, 23 Cr. 496 (ENV) (E.D.N.Y.). *See* Emily Saul, "'An Entrepreneur and a Visionary': US Judge Sentences Ex-Crypto Exchange Founder to Time Served," *The New York Law Journal*, July 18, 2024, available at https://perma.cc/89K7-G6GC ("[y]ou will get no quibble from me about the MDC," the jurist sighed [at sentencing]. "It has been the bane of this court and our sister court across the bridge for years"; "It's a terrible place and the court does consider that," [the Court] added);

- [i]n February 2024, in *United States v. Zeitlin*, 23 Cr. 419 (LAK) (S.D.N.Y.), during oral argument on a motion for pretrial release, the Court acknowledged the problems plaguing MDC, commenting that "I don't have any illusions about the MDC. . . . The conditions are bad. I know they're bad." Transcript, February 14, 2024, at 7 (ECF No. 100). The Court also noted "the bad conditions during that specific period of time" in which Mr. Zeitlin spent his first few months at MDC, stating "I'm not blind to the problem over there. I'm absolutely not. Nobody on this court is at this point". *Id.* at 12-14. In denying the defendant's application in *Zeitlin* because of the risk of flight (the defendant had failed to disclose certain pertinent information to pre-trial services), the Court noted "obviously, there are systemic problems over [at MDC], there, but many of those that you have raised are just not sufficiently germane to bail to warrant any change, in my view, here." *Id*. at 13.[3]

Indeed, after *Colucci*, in August 2024, the BOP instituted a moratorium on designating

sentenced defendants (who are often designated to serve short sentences at MDC) to the facility –

---

[3] Even prior to the Covid-19 pandemic, courts in this district have noted that, because of the harsh prison conditions at MDC, an inmate was serving harder time every day in prison under those conditions. *See United States v. Cirino*, 19 Cr. 323 (JSR) (S.D.N.Y. 2019) (onerous nature of detention at MDC was a significant factor in imposition of 10-month sentence of imprisonment despite a 57 to 71-month advisory Guidelines range).

even though sentenced defendants are confined in the East Building. *See* Michael R. Sisak and Michael Balsamo, "Inside the Brooklyn federal jail where Sean 'Diddy' Combs is locked up: Violence, squalor and death," *Associated Press*, September 19, 2024, available at https://perma.cc/S2KS-UW5Z ("[i]n response [to *Colucci*], the Bureau of Prisons said it had 'temporarily paused' sending any defendants convicted of crimes to the jail to serve their sentences").

### C.  *The October 28, 2024 "Interagency Operation" Conducted at MDC*

The crises at MDC – and judicial and media attention – grew so problematic that on October 28, 2024, "[i]nvestigators from various federal agencies launched an 'interagency operation'" at MDC. Michael Balsamo and Michael R. Sisak, "Authorities launch 'interagency operation' at federal jail in New York housing Sean 'Diddy' Combs," *AP News*, October 28, 2024, available at https://perma.cc/Z52K-PVF8 ("*Authorities Launch 'Interagency Operation'*") ; *see also* Chelsia Rose Marcius, "U.S. Officials Sweep Troubled Brooklyn Prison Where 2 Were Killed," *The New York Times*, October 28, 2024, available at https://nyti.ms/4bcwp1e .

The October 28, 2024, law enforcement operation at MDC included "investigators from the Bureau of Prisons, the Justice Department's inspector general's office and other law enforcement agencies." *Authorities Launch "Interagency Operation."*  According to a BOP spokesperson, the action was "designed to achieve our shared goal of maintaining a safe environment for both our employees and the incarcerated individuals housed at MDC Brooklyn[.]" *Id*.

### D.  *The Litany of Fatal and Other Violent Assaults at MDC in 2024-2025*

In *Colucci*, the Court expressed alarm that "[e]ach of the five months preceding this opinion was marred by instances of catastrophic violence at MDC, including two apparent homicides, two

gruesome stabbings and an assault so severe that it resulted in a fractured eye socket for the victim."
743 F.Supp.3d at 458.

The Court added that "[o]ne knife attack was captured on a surveillance video producing images that are horrifying beyond words." *Id*. The Court concluded that "[t]aken together, these incidents demonstrate a woeful lack of supervision over the facility, a breakdown of order and an environment of lawlessness within its confines that constitute unacceptable, reprehensible and deadly mismanagement." *Id*., at 460.

Of course, not every instance of violence at MDC is reported outside (or even inside) the facility. As the Court in *Colucci* explained in cataloguing specific instances of MDC's "unchecked violence":

> Through review of sealed documents, official government statements, judicial opinions and news media reports, this Court has identified shocking instances of brutal violence within the facility. This review is necessarily limited, as the Court's access to relevant information was exceptionally narrow. In other words, there were, most certainly, other incidents not collected during this Court's review. Nevertheless, the results are staggering.

*Id*., at 458.

In a September 27, 2024, press release, the United States Attorney's Office for the Eastern District of New York  announced several indictments related to violence that has occurred at MDC during 2024 alone. According to the press release, "[t]hese include charges against inmates for the murder of Uriel Whyte on June 7, 2024, the murder of Edwin Cordero on July 17, 2024, an attempted murder on April 27, 2024 and two violent assaults on August 24 and 27, 2024." Press Release, "Federal Charges Announced Against Inmates for Violent Crimes Committed in the Metropolitan Detention Center in Brooklyn," United States Attorney's Office, Eastern District of New York, September 30, 2024 ("*EDNY Press Release*"), available at https://www.justice.gov/usao-edny/pr/federal-charges-announced-against-inmates-violent-

crimes-committed-metropolitan; *see also* John Annese, "Inmate at Brooklyn's troubled Metropolitan Detention Center is stabbed to death: sources," *New York Daily News*, June 20, 2024, available at https://perma.cc/9NEJ-AA3K ("*Stabbed to Death*"); Courtney Gross, "Inmates Decry Conditions Inside Brooklyn Jail," *Spectrum News NY1*, June 24, 2024, available at https://perma.cc/N2E3-QXEW.

It is unnecessary to recount all the details of the various violent incidents at MDC in 2024-2025, or even to catalogue them all, but some exegesis is important to convey the organized and targeted – yet at the same time wanton – nature of the violence, how exposed inmates are to it in light of understaffing and delayed staff response, and how easy it is to obtain or fashion fatal weapons. That even partial recitation illustrates what a defendant like Mr. Guo confronts every day at MDC.

### 1.  *The June 7, 2024, Homicide of Uriel Whyte*

As the *EDNY Press Release* recounts with respect to the Indictment in *United States v. Andrew Simpson and Devone Thomas*, 24 Cr. 360 (EK), charging the defendants with Mr. Whyte's murder,

> [o]n the morning of June 7, 2024, following a verbal dispute between Simpson and Whyte, cellmates Simpson and Thomas armed themselves with makeshift weapons and proceeded to engage in a series of two-on-one attacks against Whyte. The escalating violent attacks, which took place over a span of approximately 15 minutes, were committed against Whyte inside Simpson and Thomas's shared cell, which served to hide their conduct from guards and surveillance cameras.

*Id*.; *see also* Shayla Colon, "Inmates Are Charged in Killings at Federal Jail in Brooklyn," *The New York Times*, September 30, 2024, available at https://nyti.ms/3Nl6mMf .

### 2.  *The July 17, 2024, Homicide of Edwin Cordero*

Regarding the July 17 ,2024, murder of Edwin Cordero, the *EDNY Press Release* confirmed that the Indictment in *United States v. Jamaul Aziz et al.,* , 24 Cr. 380 (NCM), alleges

that

> following an earlier altercation between Cordero and Santiago – Santiago, Aziz and Bazemore met with each other intermittently over approximately half an hour. Cordero then reengaged with Santiago – both of them armed with makeshift weapons – when shortly after Aziz and Bazemore, also armed, joined in. Aziz, Bazemore and Santiago cornered Cordero while swinging and stabbing at him.

*Id*.; *see also Colucci*, 743 F. Supp.3d at 459-60 (*citing* Lola Fadulu, "Inmate Dies After Fight Breaks Out at Troubled Brooklyn Jail," *The New York Times*, July 17, 2024, available at https://nyti.ms/3P64ve). Mr. Cordero had been confined at MDC since March 2024 for a violation of his terms of supervised release. *Id*.

Despite that commotion, the assault continued without interference from any MDC personnel: "[a]fter Cordero was able to escape, Bazemore continued to attack him, which allowed Santiago to approach Cordero from behind and stab him in the center of his chest, perforating various parts of his heart. Cordero then staggered forward, and Bazemore stabbed him in the back." *Id*. Yet even that did not provoke staff intervention, as "Aziz and Bazemore next cornered the victim again next to a table and repeatedly stabbed, struck and kicked him, including after he fell to the ground and tried to shield himself with the table." *Id*.[4]

---

[4] Even prior to the fatalities in June and July, violence in 2024 was continuous at MDC. According to the Federal Defender's Office, there were two serious attacks in January 2024. One occurred January 2, 2024, and according to a detainee, involved a fight between two detainees in which one was slashed across the face, resulting in a six-inch gash between his temple and jawbone requiring more than 30 stitches, and the other was stabbed in the eye and abdomen, causing serious injury.

The second incident occurred January 16, 2024, during which gangs attacked two men for approximately ten minutes, repeatedly stabbing them in the chest, while the corrections officer on duty was located in another unit. A Federal Defender was present at MDC for a legal visit and heard officers calling "stabbing, stabbing," and saw streams of officers pouring through the doors.

### 3. *The April 27, 2024, Stabbing Captured on MDC Security Camera Video*

A wholly separate serious stabbing occurred at MDC April 27, 2024, but was not publicly known until the Government filed a June 7, 2024, letter in *United States v. Rivas*, 18 Cr. 398 (RPK) (E.D.N.Y.) (ECF No. 363) (from Assistant United States Attorney Nadia E. Moore) ("AUSA Moore Letter") detailing the assault.

The Government described the attack as follows:

[o]n April 27, 2024, at approximately 9:06 a.m., the defendant and two other MS-13 members housed at [MDC], brutally assaulted another inmate. Video of this assault is attached hereto as Exhibit A. In the video, the victim can be seen sitting peacefully on the right side of the screen – relaxing with his feet up. At approximately 0:33 in the video, the defendant approaches the victim, takes something from his waistband, and then stabs the victim with it. Two other MS-13 members then come to the defendant's aid and assist the defendant in punching and stabbing the victim repeatedly.

AUSA Moore Letter at 1.

Following the assault, "the victim of the defendant's attack was taken to MDC's medical unit and then to a hospital to treat the approximately 44 stab wounds to his back, chest, abdomen, right arm and legs." *Id*. Further investigation established that "[a]n approximately 5.5-inch flat metal item that had been sharpened to a point and an approximately 10.5-inch metal object that had been sharpened to a point were recovered from the defendant and one of the other assailants." *Id*.

Six months after the stabbing, and nearly four months after the AUSA Moore Letter – and only after the video of the stabbing was released in conjunction with a media report – formal charges were filed in connection with the stabbing. *See* John Annese, "See it: Video from inside troubled Brooklyn federal jail shows brutal gang stabbing," *New York Daily News*, July 27, 2024 ("*Brutal Gang Stabbing*"), available at https://perma.cc/WQS3-EB62; *see also Colucci*, 743 F.Supp.3d at 459 n.9 (providing a link to the video).

As the Court in *Colucci* describes, the video "displays the lengthy, horrific assault, committed by inmates under no apparent supervision." *Id*. The Court explained that

[v]iewing the security video footage[] reveals many things: the three inmates perpetrated this organized, armed attack in an open area unimpeded by any supervision, the response to the event took an unconscionably long time, and the victim, suffering from 44 knife wounds, was left unaided while a few outnumbered corrections officers eventually attempted to pursue the attackers.

*Id*.; *see also Brutal Gang Stabbing*.

### 4.  *The May 16, 2024, Assault on Christian Griffin*

Another violent assault was recounted in a U.S. District Court for the Eastern District of New York's June 9, 2024, Memorandum and Order in *United States v. Griffin*, 22 Cr. 408 (EK) (E.D.N.Y.) (ECF No. 36), 2024 WL 2891686 (E.D.N.Y. June 10, 2024); *see also Colucci*, 743 F.Supp.3d at 456, 458.

In *Griffin*, the Court released a defendant 15 days before expiration of his sentence because "he assert[ed] that he was seriously injured in a violent attack while incarcerated at the MDC, and that the facility has since afforded inadequate follow-up care." *Id*. at *1 (citation omitted).

The Court added that

Griffin's counsel reports – and the government does not dispute – that in the early morning of May 16, 2024, Griffin was physically beaten by three inmates at the MDC. The beating left him with a fracture of the right orbital bone – a broken eye socket, in layman's terms – as well as a laceration to his right eye and swelling and bruising of the eye and face.

*Id*. at *2.

In addition, the circumstances in *Griffin* illustrate the futility of alerting MDC staff to the danger other inmates pose to a particular detainee. As the Court pointed out, the assault on Mr. Griffin "apparently occurred despite the fact that, prior to the altercation, Mr. Griffin reported to a correctional officer on his unit that he did not feel safe." *Id*., at *3 (citation omitted). Mr. Griffin

even "requested to be moved, but was not, and the assault occurred early the following morning." *Id*. (citation omitted).

Adding insult to actual injury (and reminiscent of Mr. Guo's experience), "[s]ince the attack, Mr. Griffin has been placed in a Special Housing Unit for protection, isolating him from others and restricting him to one social call a month." *Id*. (citation omitted).

**5.   *The August 27, 2024, Stabbing of an MDC Inmate***

The other MDC assault first made public in the *EDNY Press Release* was an August 27, 2024, stabbing charged in *United States v. Bruce Silva and Hassan Elliott*, 24-MJ-556 (MMH). *EDNY Press Release*. The two defendants were charged "for their roles in the August 27, 2024 assault of another inmate at MDC-Brooklyn[,]" which involved them attempting "to attack another inmate in their housing unit." *Id*. As stated in the press release:

> The two defendants took makeshift weapons from their waistbands and tried to stab and slash their intended victim. When a fourth inmate interceded, Silva stabbed the fourth inmate in the spine with a makeshift icepick, leaving the icepick protruding from the inmate's back. Silva and Elliott then continued to try to attack both the stabbing victim and their original intended victim.

*Id*.

**E.   *Violence Has Persisted Even After the October 28, 2024, "Interagency Operation" Was Conducted at MDC***

In November 2024, less than two weeks after the Interagency Operation, an MDC detainee was stabbed in his housing unit by another inmate wielding a self-made weapon. Also, according to the Federal Defender (in a memo to the Criminal Justice Act panel), on November 6, 2024, while detainees were locked in their units without staff nearby – and without functional emergency call buttons – a detainee was raped in their cell by another detainee. The inmate who was raped did not receive attention until the following morning.

Violence again erupted at MDC early in 2025. In a chaotic and harrowing February 22,

2025, attack captured on surveillance camera video (from which chilling still images were published in the media), six inmates were "charged with assault in a federal detention facility[,]" because "[t]hey chased down a fellow inmate, stabbing him 18 times, sparking a brawl that resulted in at least 10 inmates stabbed or slashed."  John Annese, "25 arrested at MDC Brooklyn jail, including for brawl that left Jam Master Jay's killer stabbed," *New York Daily News,* March 6, 2025, available at https://perma.cc/8KWM-2H7R. Five inmates, "including their target, were hospitalized, prosecutors said." *Id*. The "[s]urveillance photos show a scene of chaos, with inmates swarming the unit's floor brandishing shivs, one of which measured 13 inches." *Id*.

Those arrests were among 25 announced by federal prosecutors in early March 2025. The charges "cover a dozen incidents at the notorious lockup, which has long been plagued by violence, grim living conditions and medical mistreatment woes." *Id*. The charges included not only violent assaults, but also smuggling of contraband, and fraud. *Id*. One MDC corrections officer was arrested and charged with smuggling contraband into the facility. *Id*.

Fifteen inmates were arrested in connection with violent incidents, and "five people were charged with conspiring to smuggle marijuana, a scalpel, cigarettes and a phone charger into the MDC by throwing a line out a window that another person would tie to package of contraband to be pulled back up." Jesse Zanger and Tim McNicholas, "25 charged in MDC-Brooklyn assault, contraband crackdown," *CBS News*, March 6, 2025, available at https://perma.cc/DAM4-FKHH. In addition, "[a]nother inmate was accused of pulling out a ball of ceramic scalpels from a bag of Doritos and stuffing them into his shirt while in the MDC's visiting area." *Id*.

F.  *MDC Fails to Provide Adequate Medical Care*

As the Court in *Chavez* lamented in January 2024, "MDC is notoriously and, in some instances, egregiously slow in providing necessary medical and mental health treatment to inmates

– especially where such care requires the attention of outside providers." 710 F. Supp.3d at 234 (citation and footnote omitted).

Eight months later, the *Colucci* Court concurred: "That critical medical care is frequently delayed or denied within the facility seems no longer in doubt." 743 F.Supp.3d at 456 (*citing United States v. Griffin*, 2024 WL 2891686, at *3).

The Court in *Colucci* elaborated that "[a]llegations of inadequate supervision, unbridled assaults and lack of sufficient medical care are supported by an increasing body of evidence, with certain instances that are irrefutable." *Id.* (*citing Griffin*, 2024 WL 2891686, at *3); *see also United States v. Goulbourne*, 22 Cr. 106 (LDH) (E.D.N.Y.), Transcript, May 1, 2024 (ECF No. 336); John Annese, "Brooklyn Judge demands answers from Brooklyn federal jail officials over inmate's medical woes," *New York Daily News*, May 6, 2024 ("*Brooklyn Judge Demands Answers*"), available at https://perma.cc/CGL5-T6XC;   John Annese, "Brooklyn Judge Calls Sunset Park Federal Jail 'an Abomination' After Staff Ignore Order to Send Ailing Inmate to Medical Facility," *New York Daily News*, Dec. 20, 2023, available at https://perma.cc/2PXX-NFRY.

Here, that fundamental deficiency at MDC is reflected in Mr. Guo's personal experience, set forth in sealed Exhibit 16.

### G.  *The Consequences of Staff Shortages and Lockdowns at MDC*

MDC's problems, including critical, longstanding staff shortages, afflict the entire institution. In fact, frequent lockdowns are imposed regularly in both the East and West Buildings due to staff shortages. Even though serious violence is less prevalent within the East Building population – although it, and drug use, do occur regularly – the violence in the West Building generates lockdowns in the East Building because staff there is required to augment security and investigation in the West Building, leaving the East Building with only lockdowns as a solution to

deficient staffing.

The staffing deficits at MDC exert a materially adverse cascading effect across the institution, including lockdowns, safety, MDC's provision of medical care, attorney access, and facility maintenance. Insufficient staffing causes lockdowns generally in both the East and West Buildings, including most weekends (when staffing is notoriously reduced). In addition, staff shortages create opportunities for violence and drug use that makes confinement in the East Building precarious as well.

Lockdowns also have a ripple effect. They impair inmates' ability to shower regularly, or to have hot meals, or get access to commissary (which is habitually short of or devoid of a supply of requested items). Lockdowns are detrimental not only to inmates' emotional and psychological health, but also to their ability to secure timely and continued medical attention for physical conditions. *See, e.g.*, *Griffin*, 2024 WL 2891686, at *3 ("it has been well documented that the MDC has an ongoing issue with frequent lockdowns due to violence and the threat of violence, among other concerns, which has delayed medical care for a number of inmates").

The Court in *Chavez* elaborated by quoting a "memo by Rhonda Barnwell, the president of the union local representing the MDC's correctional officers, [that] helps explain why the MDC's staffing shortage translates directly into its inhumane conditions of confinement." 710 F. Supp.3d at 236 n. 16 (*citing* Memorandum re Unsafe Working Conditions from Rhonda Barnwell, AFGE Local 2005 President, to Bureau of Prisons Regional Director Amy Boncher (June 23, 2023), at 3 ("*Barnwell Memo*"), filed in *United States v. Irizarry*, 23 Cr. 60 (JMF) (S.D.N.Y. Oct. 30, 2023) (ECF No. 47-3)).

According to the *Barnwell Memo*, "'[o]n a daily basis housing units . . . are left . . . unmanned by staff[ ] and locked down, with the expectation . . . that a single [ ] Officer is to make

rounds, feed, and perform additional correctional duties" on three units during a single shift.'" *Id.* (cleaned up).

The staffing issues at MDC are emblematic of the entire facility's deficiencies, and it is respectfully submitted that Mr. Guo's detention there during such a horrific period of violence, disorder, and dysfunction warrants the type of consideration and reduction in sentence other courts have routinely applied.