# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

In re: Mia Yang(real name: ███████████) , Petitioner
SDNY Case: 1:23-CR-118-1 (AT)

## PETITION FOR A WRIT OF MANDAMUS

To the Honorable Judges of the Second Circuit:

### I. Introduction

Petitioner, Mia Yang(real name: ███████), appearing pro se, respectfully petitions this Court for a Writ of Mandamus directed to the United States District Court for the Southern District of New York. Petitioner seeks an order compelling the Clerk of the Court and/or the Presiding Judge to formally docket and adjudicate Petitioner's motions filed pursuant to the **Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771,** and the **Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A.** Despite multiple inquiries and a "Motion to Compel Docketing," the District Court has failed to perform its ministerial duty to docket these filings, thereby violating Petitioner's statutory rights and causing irreparable harm through the potential loss of claims.

### II. Background

On 03/08/2026 and 03/29/2026 , Petitioner submitted motions and corrected motions To the SDNY amend the 4/7/2025 remission filing with the DOJ and to formally assert Petitioner's statutory rights for the restoration of invested funds. Additionally, on October 14, 2025, Petitioner filed a petition pursuant to 21 U.S.C. § 853(n) asserting a legal interest in property subject to forfeiture. As of the date of this filing, the District Court has failed to docket this petition or provide any response, effectively barring Petitioner from asserting ownership rights over the subject assets.

Despite these submissions being delivered via Email and Mail , the Clerk of the Court has failed to enter them into the official Electronic Case Filing (ECF) system.

Petitioner sent inquiries email on 04/06/2026,they responded that THERE DOES NOT APPEAR TO BE ANY SUBMISSIONS ON THE DOCKET FOR THIS DATE , then Petitioner filed a "Motion to Compel Docketing" on 04/08/2026 and , it have been ignored.

The failure to docket these motions prevents the Petitioner from exercising their fundamental rights to notice, restitution, and participation in the judicial process.

### IV. REASONS WHY THE WRIT SHOULD ISSUE

1

**A. The District Court has a Clear Legal Duty to Docket Filings.**

Under the CVRA, the court "shall decide any motion asserting a victim's right" and shall do so "forthwith." 18 U.S.C. § 3771(d)(3). By refusing to even docket the motion, the District Court is effectively denying Petitioner the right to be heard without a record, which is an abuse of discretion and a violation of due process.

**B. Petitioner's CVRA and MVRA Rights are at Risk of Irreparable Loss.**

The CVRA and MVRA grant victims the right to "full and timely restitution." 18 U.S.C. § 3771(a)(6). As the underlying criminal proceedings progress toward [Sentencing/Final Judgment], the failure to docket these motions creates a high risk that Petitioner's rights will be permanently extinguished or "lost" due to the finality of the court's upcoming orders.

**C. No Other Adequate Remedy Exists.**

Petitioner has exhausted all administrative and lower-court avenues, including informal inquiries and a formal motion to compel in the District Court. Mandamus is the only remaining vehicle to ensure the District Court complies with its statutory obligations.

**D. The Failure to Docket the § 853(n) Petition Threatens an Irreparable Deprivation of Property.**

"Under 21 U.S.C. § 853(n), a person asserting a legal interest in forfeited property must be heard in an ancillary proceeding. By refusing to docket the October 14, 2025 filing, the District Court is proceeding toward final forfeiture without adjudicating Petitioner's claims. This inaction constitutes a violation of the mandatory statutory scheme and Petitioner's Fifth Amendment Due Process rights, as it risks the permanent loss of Petitioner's property without a day in court."

**E. The Failure to Docket Compromises the Integrity of the Judicial Record.**

"The Clerk's failure to docket Petitioner's timely filings creates a 'silent record,' effectively shielding the District Court's inaction from appellate oversight. This omission prevents the formation of a complete and accurate record of the proceedings, which is essential for due process. Without a complete docket, Petitioner is stripped of the ability to preserve issues for appeal and faces the imminent risk of a final judgment issued on a fundamentally incomplete record.

**V. PRAYER FOR RELIEF**

Petitioner respectfully requests that this Court:

Issue a Writ of Mandamus directing the SDNY to docket Petitioner's CVRA and MVRA motions immediately;

Order the District Court to adjudicate the motions on their merits within the timeframe required by 18 U.S.C. § 3771(d)(3);

Grant any other relief this Court deems just and proper.


**VI. VERIFICATION**

The undersigned, ███████████ declares under penalty of perjury that the foregoing is true and correct to the best of Petitioner's knowledge and belief. Executed on April 16, 2026, in _United Stase of Aemerica

Pro Se Petitioner

Date: April 16, 2026

## VII.EXHIBITS INDEX

Exhibit A: proof of service/submission of the 21 U.S.C. § 853(n) Petition dated October 14, 2025.

Exhibit B:receipt of mailed to the SDNY Clerk's Office CVRA Petition dated March 08,2026

Exhibit C:Email sent to the SDNY Clerk's Office CVRA Petition dated March 28,2026 / March 29,2026 .

Exhibit D:Email from the Clerk's Office stating that the submission **does not appear** on the docket

Exhibit E:Email correspondence sent to the SDNY Clerk's Office requesting the docketing of the aforementioned filings.

Exhibit F:The Amended Motion submitted to the SDNY on March 29, 2026.

Respectfully submitted,
Dated: 04/16/2026
By: __Mia Yang (Real Name: ███████████ )_

3

**Exhibit A:** proof of service/submission of the 21 U.S.C. § 853(n) Petition dated October 14, 2025.



**Exhibit B:** receipt of mailed to the SDNY Clerk's Office CVRA Petition dated March 08,2026



4

**Exhibit C**: Emails  sent to the SDNY Clerk's Office CVRA Petition dated March 28,2026 / March 29,2026







**Exhibit D:** Email from the Clerk's Office stating that the submission **does not appear** on the docket



**Exhibit E:** Email correspondence sent to the SDNY Clerk's Office requesting the docketing of the aforementioned filings.



Case S4:23-cr-00118-AT

| | |
|---|---|
| UNITED STATES DISTRIC COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>- -————————————————————————-x<br>UNITED STATES OF AMERICA<br>Plaintiff<br><br>- V -<br><br>HO WAN KWOK, a/k/a"Miles Guo, " a/k/a "Miles Kwok, " a/k/a " Guo Wengui, " a/k/a "Brother Seven," a/k/a "The Principal ,"KIN MING JE , a/k/a "William Je, " and YANPING WANG ,a/k/a "Yvette,"<br>Defendants<br>------------------------------------------------x | AMENDED VICTIM SUBMISSION UNDER THE CRIME VICTIMS' RIGHTS ACT (18 U.S.C. § 3771) AND THE MANDATORY VICTIMS RESTITUTION ACT (18 U.S.C. § 3663A) |

Petitioner Mia Yang(real name ▉▉▉▉▉▉ ) , appearing pro se, hereby submits this Amended Filing to correct the prior record and to formally assert Petitioner's statutory rights for the restoration of invested funds.

## I. CORRECTION OF RECORD AND STATEMENT OF LIMITED PURPOSE

1, Procedural Correction: Petitioner previously submitted an Ancillary Petition and a Petition for Remission to this court and DOJ on or about April 7, 2025, As a Chinese national with limited proficiency in the English language and no formal training in United States federal criminal procedure, Petitioner's prior filings contained characterizations based on a fundamental misunderstanding of the complex legal terminology. Petitioner hereby submits this Amended Filing to properly characterize Petitioner's legal status in accordance with the current phase of the proceedings.

2, Limited Purpose of Status: Petitioner now asserts their standing as a victim entitled to restitution under the MVRA 。 Petitioner asserts the status of a "victim" solely for the procedural necessity of establishing standing to seek restitution under the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A. This appearance is strictly for asset recovery and is NOT a request for, or consent to, any sentencing enhancement for the Defendants. Petitioner expressly requests that the Court and the Government refrain from including Petitioner in any "victim count" intended to increase the Defendants' term of imprisonment and include the applicant's investment amount in the total loss.

## II. BASIS FOR RELIEF AND EXPLANATION OF PRIOR FILINGS

1, Reliance on Himalaya Alliance Guidance: Petitioner's prior use of the "Section III – Victim Petition" template was based on legal guidance of the NFSC Alliance. Petitioner was led to believe that, following the conclusion of the criminal trial, the legal classification of an "investor" has been de facto established by the Government as a "victim" for the sole purpose of asset restoration.

To the best of Petitioner's knowledge, the vast majority of G-series investors reside in China, possess limited proficiency in the English language, furthermore, acting under the misleading influence of the 'Himalaya Alliance,' most of investors submitted Petitions for Remission in April 2025.

2, Adoption of Standardized Templates: Petitioner adopted the provided templates—including the declaration of pecuniary loss—as a required means to facilitate the return of Petitioner's frozen investments. Petitioner maintained the belief, based on Himalaya Alliance assurances, that asserting this status for the purpose of a claim would not adversely impact the legal positions of Miles Guo .

3, Assertion of Superior Interest: Consistent with the logic of 21 U.S.C. § 853(n)(6)(A), Petitioner maintains that the $ represents Petitioner's own legitimate funds which should be excluded from final forfeiture and returned as restitution.In the alternative, Petitioner maintains a superior legal interest in the subject funds pursuant to 21 U.S.C. § 853(n)(6)(A).

## III. PROPERTY INTERESTS ASSERTED

*1*

Petitioner claims a total pecuniary loss of $ 961820.49, comprising investments in G-Club, Farm Loans, G-Fashion, along with accrued interests. Pursuant to the Mandatory Victims Restitution Act (MVRA), Petitioner hereby asserts their right to receive full restitution from all identified co-conspirators, including but not limited to Yanping Wang, Xuebing Wang, Qidong Xia, and Jianming Yu, whose concerted actions directly and proximately caused Petitioner's financial injury.who shall be held jointly and severally liable for the Petitioner's losses.

A. G-Club Memberships $ _10,500.00_ - Asserted

B. Farm Loans $ _817,087.00_ — Asserted

C. Gfashion $ _1,654.77_ —- Asserted

D. contracted interests  of above-mentioned principle $_132,578.72_ — Asserted

(Basis: Calculated pursuant to the fixed interest rates stipulated in the respective investment/loan agreements with the G-series entities prior to the government's intervention.)

Total amount is $961820.49

## IV. GROUNDS FOR RELIEF

1. Innocent Owner: The Government's broad seizures have prevented G-series entities from functioning, harming bona fide investors like Petitioner. Petitioner's investments were made lawfully prior to Miles Guo's March 2023 indictment. Petitioner had no knowledge of or participation in the defendants' alleged crimes. Under 18 U.S.C. § 983(d), Petitioner qualifies as an innocent owner, entitled to property return.

2. Entitlement to Contractual Interest: the $132,578.72 claimed as interest is not speculative; rather, it represents the liquidated damages and contractual returns explicitly promised under the terms of the Petitioner's investment agreements. Under the MVRA, restitution should 'make the victim whole,' which includes the time-value of money as defined by the parties' underlying contracts. Petitioner's loss includes the deprivation of these contractually mandated gains.

3. Lack of Notice:
   a) Petitioner received no constitutionally sufficient notice and had no meaningful opportunity to be heard from the Government (DOJ, SEC) and bankruptcy trustee Luc A. Despins of Paul Hastings regarding Petitioner's investments.
   b) CVRA "victim" status imposed by the Government –Petitioner's assertion of victim status is predicated upon the Government's theory of the case and the Court's prior findings, and is made solely to facilitate the mandatory restitution process, the Petitioner's reliance on the CVRA in this filing is a measure of last resort necessitated by the current procedural posture of the asset forfeiture proceedings. Petitioner's express objection to the use of this filing for any sentencing enhancement purposes.
   c) Petitioner was not notified of the bankruptcy proceedings or the inclusion of Petitioner investment in the bankruptcy estate in Case No. 22-50073, bankruptcy trustee Luc A. Despins of Paul Hastings.

4. Improper Prioritization: In Trustee Case No. 22-50073, U.S. Bankruptcy Court, District of CT, the Bankruptcy Court allowed third-party claimants to assert claims over Petitioner assets, ignoring the criminal forfeiture exemption under 11 U.S.C. § 362(b)(4).

5. Lack of Transparency: The bankruptcy trustee, Luc A. Despins of Paul Hastings, has not disclosed full creditor list or asset distribution plan in Case No. 22-50073, hindering Petitioner ability to protect Petitioner investment rights.

## V. PRAYER FOR RELIEF

Petitioner respectfully requests that the Court:

1, Accept this Amended Filing as the operative document, superseding all prior declarations;

Recognize Petitioner's right to mandatory restitution under 18 U.S.C. § 3663A;

Adjudicate the return of $ 961820.49 to Petitioner;

2,   Grant privacy protection under Fed. R. Crim. P. 49.1, permitting Petitioner to file an Unredacted Identity Declaration and to maintain this petition in redacted public form; and

Grant such other and further relief as the Court deems just and proper.

## VI. CERTIFICATE OF SERVICE

Petitioner certifies that on March  28, 2026, Petitioner submitted this filing to the Court's Pro Se Intake for docketing

1,via email ProSe@nysd.uscourts.gov,

2, via email ProSe Julian.murray@usdoj.gov
                 justin.horton@usdoj.gov
                 micah.fergenson@usdoj.gov
                 ryan.finkel@usdoj.gov
3,via email ProSe msarafa@sarafalaw.com
                 jdratel@dratellewis.com
                 jkaley@doarlaw.com

## Ⅶ.. VERIFICATION

The undersigned, <u>Mia Yang(real name</u>  ) declares under penalty of perjury that the foregoing is true and correct to the best of Petitioner's knowledge and belief.
Executed on March 28 , 2026, in <u>United States of Aemerica</u>
Pro Se Petitioner

Date: March 28, 2026

## Ⅷ.EXHIBITS INDEX

    a. Exhibit 1 - Unredacted Identity Declaration (Filed under seal)
    b. Exhibit 2 – Property/Investment/Assets Records (Redacted public set)
    c. Exhibit 3 – Remittance Records for Each Project (Wire Transfer Receipts ),Proof of Investment (Investment Documentation)

## Respectfully submitted,

Signature     _____
Print Name     _____
Address     _____
Telephone     _____
Email     _____
Pro Se Petitioner
Date     <u>March 28,2026</u>

## Exhibit 1 - Unredacted Identity Declaration (Filed under seal)



3

**Exhibit 2 – Property/Investment/Assets Records (Redacted public set)**

**ASSET LIST**

I , All my investment is summarized in the following table for convenience:

| Transaction Type | Wire Number | Total Amount | Payment Method | Recipient | Note |
|---|---|---|---|---|---|
| Gclub Membership | ▮ | $10,000.00 | Wire | G-club | |
| Gclub Annual Fee | ▮ | $500.00 | Check | G-club | |
| Farm loan | ▮ | $416,300.00 | Wire | Maywind Trading LLC | Phoenix farm, transferred to MOS farm after 1 year later |
| Farm loan | ▮ | $125,600.00 | Wire | Maywind Trading LLC | Phoenix farm, transferred to MOS farm after 1 year later |
| Farm loan | ▮ | $153,000.00 | Wire | Mountains of spices LLC | Mountains of Spices farm |
| Farm loan | ▮ | $50,000.00 | Wire | Mountains of spices LLC | Mountains of Spices farm |
| Farm loan | ▮ | $20,357.00 | Wire | Mountains of spices LLC | Mountains of Spices farm |
| Farm loan | ▮ | ¥200,000.00 | Wire | 万淑杰 (Wan Shujie) | Himalaya Korea Farm |
| Farm loan | ▮ | ¥168,000.00 Plus the above ¥ 200,000.00 total ¥368,000.00 Was transferred $51,830.00 | Wire | 万淑杰 (Wan Shujie) | Himalaya Korea Farm |
| Purchased Clothes | ▮ | $324.22 | Card purchase | Gfashion | |
| Purchased Clothes | ▮ | $1,221.88 | Card purchase | Gfashion | |
| Purchased Clothes | ▮ | $108.67 | Card purchase | Gfashion | |
| H-coin | ▮ | $40,869.9 | wire | "Himalaya International Clearing, Ltd." | |
| Farm loan interest | Farm loan 3% Annual Interest Rate Total loan$817,087.00 From they were sent day to 03/07/2026 | $132578.72 | According To the contract | MOS farm Himalaya Korea farm | |

4

Interest Calculation Summary (As of March 7, 2026)
Interest Rate: 3% per annum (Simple Interest)
Calculation Method: Actual days counted / 365
1. Himalaya Korea farm
   Principal: $51,830
   Drawn Date: October 4, 2020
   Days Held: 1,980 days
   Interest: $8,428.01
2. MOS farm
   a. Principal: $20,357
      Drawn Date: August 31, 2020
      Days Held: 2,014 days
      Interest: $3,371.70
   b. Principal: $50,000
      Drawn Date: September 14, 2020
      Days Held: 2,000 days
      Interest: $8,219.18
   c. Principal: $153,000
      Drawn Date: September 30, 2020
      Days Held: 1,984 days
      Interest: $24,944.88
3. Phoenix farm loan transferred to MOS farm
   a.Principal: $416,300
      Drawn Date: October 15, 2020
      Days Held: 1,969 days
      Interest: $67,308.25
   b. Principal: $125,600
      Drawn Date: October 15, 2020
      Days Held: 1,969 days
      Interest: $20,306.70
4. Summary
   Total Principal: $817,087
   Total Interest: $132,578.72
   Total Amount (Principal + Interest): $949,665.72

5

Exhibit 3

1. payment to Gclub ,I don't have remittance vouchers for Gclub Annual Fee  because my  Flushing bank account have been closed and Gclub website was sealed , but I have the Gclub membership number 1000010030000753 ,It showing i've paid another $500 annual fee



2 .payment to Phoenix farm, Phoenix loan transferred to MOS farm contract , On October 14, 2020, I wired $416,300.00 to Maywind Trading LLC, A recipient of the Pheonix farm . for Farm loan project ,  Wire transfer number is : Citibank ▉▉▉▉▉▉ . this loan was transferred to MOS farm after 1 year later . Upon information and belief, these funds were seized by the Government among potentially Forfeited Accounts and assets.



6



4 . payment to Phoenix farm, Phoenix loan transferred to MOS farm contract, On October 15, 2020, I wired $125,600.00 to Maywind Trading LLC , A recipient of the Pheonix farm . For Farm loan project , Wire transfer number is : Citibank ███████. this loan was transferred to MOS farm after 1year later . Upon information and belief, these funds were seized by the Government among potentially Forfeited Accounts and assets.



SPECIAL INSTRUCTIONS

SOURCE ACCOUNT:
AMOUNT OF WIRE:
DATE OF REQUEST:        10/15/20  CITIBANK REF NUM:

BANKER:  P9689855ZENG, JIESHAN

PAGE 2 OF 2

8

## ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Agreement") dated as of **01/05** , 2022 is entered into by and between ██████████ ( "Assignor") and Mountain of Spices, LLC ("Assignee").

### W I T N E S S E T H:

WHEREAS, reference is made to the loan relationship between Assignor, as lender, and Phoenix Farm and/or Maywind Trading LLC, as original borrower on **10/15/2020** ("Loan") in the amount of $ **541900** as loan principal, and to the loan made pursuant thereto (the "Loan"):

WHEREAS, Assignor caused the transfer of $ **541900** amount loan proceeds to the bank account designated by the original borrower on **10/15** 2020:

WHEREAS, Assignor and original borrower did not fully execute the instrument

WHEREAS, pursuant to the terms of this Agreement, Assignor desires to transfer and Assignee desires to assume, the Loan:

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto covenant and agree as follows:

1. Assignment. Assignor hereby assigns and transfers to Assignee all of Assignor's right, title and interest in and to the Loan, including all accrued and unpaid interest on the Loan.

2. Assumption. Assignee hereby assumes the obligations, and agrees to observe and perform all the covenants, applicable to the original borrower of the Loan under the Loan Documents,.

3. Non-Reliance on Assignor. Except as explicitly set forth herein, Assignor makes no representation or warranty in connection with, and shall have no responsibility with respect to, the solvency, financial condition, or financial or other statements of the original borrower, or the validity or enforceability of the obligations of the original borrower in respect of the Loan Agreement or any other Loan Document. Assignee acknowledges that it has, independently and without

Lender/Assignor initials______

1

Doc ID: e5c7cd59604b9b88cd372cbbcb3fc8671594e

9

reliance on Assignor (except as set forth in the representations in <u>Section 4</u> below), made its own credit analysis and decision to enter into this Assignment and Assumption Agreement with full understanding to the financial condition and capability of the original borrower at the time entering into this Agreement.

4.  Representations.

(a)  The assignment provided for herein shall be without representation or warranty by, and without recourse to, Assignor, except that Assignor represents and warrants as follows:

(i)  Assignor had the mental capacity to enter the loan relationship with the original borrower, and was not forced or induced to do so by the external influences. Assignor's acts of negotiating for and entering into the loan relationship with the original borrower were knowing, willing and voluntary.

(ii)  Assignor has the full power, authority and legal right to assign and transfer the Loan and to execute, deliver and perform this Agreement.

(iii)  Assignor has duly authorized, executed and delivered this Agreement and, assuming the due authorization, execution and delivery by the Assignee, this Agreement constitutes the legal, valid and binding agreement of Assignor, enforceable in accordance with its terms, except as such enforcement may be limited by bankruptcy, insolvency, reorganization, liquidation, receivership, moratorium and other laws relating to or affecting the enforcement of creditors' rights generally and by general principles of equity (regardless of whether such enforcement is considered in a proceeding in equity or at law).

(iv)  Assignor is the legal and beneficial owner of the Loan and is transferring the Loan free and clear of any and all liens, pledges, charges or security interests of any nature encumbering the Loan.

(v)  As of the date hereof, the outstanding principal balance of the Loan is $**541900**_____, and the proceeds of the Loan have been fully disbursed and, there are no holdbacks and there is no requirement for future advances thereunder.

(b)  Assignee hereby represents, warrants and covenants as follows:



Lender/Assignor initials ▮▮▮_____

2

Doc ID: e5c7cd59604b9b88cd372cbbcb3fc8671594e

*10*

(i)      Assignee is duly organized, validly existing and in good standing in the jurisdiction of its formation.

(ii)      Assignee has the full power, authority and legal right to assume the Loan, and to execute, deliver and perform this Agreement.

(iii)      Assignee has duly authorized, executed and delivered this Agreement and, assuming the due authorization, execution and delivery by the Assignor, this Agreement constitutes the legal, valid and binding agreement of the Assignee, enforceable in accordance with its terms, except as such enforcement may be limited by bankruptcy, insolvency, reorganization, liquidation, receivership, moratorium and other laws relating to or affecting the enforcement of creditors' rights generally and by general principles of equity (regardless of whether such enforcement is considered in a proceeding in equity or at law).

(c)      Each party hereto represents and warrants to the other that it has dealt with no broker or similar person in connection with entering into this Agreement (other than the other party to this Agreement).

5.      Governing Law. This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York, without regard to conflict of law principles.

6.      Counterparts. This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.

7.      Successors and Assigns. Assignor shall not further assign its right and obligations in this Agreement, Loan Agreement and Addendum unless a written consent is obtained from Assignee. The provisions of this Agreement shall be binding upon the parties and their respective successors and/or assigns.

8.      Entire Agreement. This Agreement constitutes the entire agreement, and supersedes all prior agreements, if any, of Assignor and original borrower hereto with respect to the subject matter hereof.

9.      Defined Terms. Capitalized terms used and not defined herein will have the respective meanings set forth in the Loan Agreement and Addendum.

Lender/Assignor initials                                                   3

Doc ID: e5c7cd59604b9b88cd372cbbcb3fc8671594e:

/ /

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed and delivered by their duly authorized capacity as of the date first above written.

**ASSIGNOR:**



Signature

Name:

Date: **04/05/2022**

**ASSIGNEE: Mountain of Spices LLC**

*Qidong Xia*

Signature

Representative of Mountain of Spices LLC,

Name: Qidong Xia

Title:   President

Date:   April 3 2022

Lender/Assignor initials                                    4

Doc ID: e5c7cd59604b9b88cd372cbbcb3fc8671594e:

12

## Addendum for Phoenix Farm Loan Program

This Addendum is entered by Mountains of Spices LLC located at 1129 Northern Boulevard Suite 404 Manhasset New York 11030 (hereinafter as "Borrower") and ██████████████████ hereinafter as "Lender"), as a modification and supplement to Loan Agreement initially executed by Lender with Phoenix Farm/Maywind Trading LLC ("original borrower") on **10/15/2020**, and assigned to Borrower by Lender on **04/05/2022**. Parties hereby agree to modify Loan Agreement by incorporating the following provisions into Loan Agreement.

1. Provision 1(a) of Loan Agreement shall be modified as to follows: the loan proceeds advanced under this Agreement may be used by the Borrower at its discretion without limitation, including but not limited for working capital, political activities, loaning out to other parties, and /or investment purposes.

2. Provision 1(c) of Loan Agreement shall be modified to as follows: (c) Interest Rate: 3% per annum on the final Loan Amount from the final Effective Date. Final Effective Date is the date of the final receipt of funds in the Borrower's designated account. Interest accrued hereunder shall be due on the Final Maturity Date, as defined below, but may be paid prior to the Final Maturity Date. In all events, interest shall be computed on the basis of the actual number of days in each calendar year and the actual number of days elapsed in each period for which interest is computed.

3. Section 2 of the Loan Agreement shall be modified to include the following after subsection 2(b): (c) Lender represents and certifies that, at all times throughout the term of the Loan, including after giving effect to any transfers permitted pursuant to Loan Agreement, none of the loan funds are derived from any unlawful activity.

4. Parties understand and agree that the entire provision 3 (Representations and Warranties by Borrower) of the Loan Agreement is hereby deleted.

5. The entire provision 12 of Loan Agreement shall be modified to as follows: 12. Arbitration.

   (a) The Parties (including any respective subsidiaries, affiliates, predecessors in interests, successors and assigns) agree to arbitrate any and all controversies, disputes, and claims (including those that are

Lender/Assignor initials 5

Doc ID: e5c7cd59604b9b88cd372cbbcb3fc8671594ea

13

already the subject of litigation), whenever they may have arisen or may hereafter arise, relating to or arising out of Loan Agreement in conformity with rules and procedures as established by the American Arbitration Association ("AAA") and as may be modified by any state arbitration act. Notwithstanding anything to the contrary, either the Lender or Borrower may bring an individual action in small claims court. This Loan Agreement evidences a transaction in interstate commerce, and thus, the Federal Arbitration Act governs the interpretation and enforcement of this Provision.

(b) A Party who intends to seek arbitration must first send to the other, by certified mail or an e-mail with read receipt confirmation, a written notice of intent to arbitrate ("Notice"). The Notice to the Parties should be sent to the address set forth at the beginning of the Loan Agreement ("Arbitration Notice Address"). The Notice must: (a) describe in detail the nature and basis of the controversy, claim, or dispute; and (b) set forth the specific relief sought ("Demand"). If the Parties cannot reach an agreement to resolve the controversy, claim, or dispute within 30 days after the Notice is received, either Party may commence an arbitration proceeding. After the non-initiating Party receives notice at the Arbitration Notice Address that the other Party has commenced arbitration, it will promptly reimburse the other Party for half of the filing fee. **All** issues are for the arbitrator to decide, including the scope of this arbitration clause, but the arbitrator is bound by the terms of this Loan Agreement.

(c) Except as otherwise provided for herein, the Parties will equally split 50-50 all AAA filing, administration, and arbitrator fees for any arbitration initiated in accordance with this Section. If, however, the arbitrator finds that either the substance of any claim or the relief sought by the initiating Party is improper or not warranted, as measured by the standards set forth in Federal Rule of Civil Procedure 11(b), then the initiating Party agrees to reimburse the other Party for all monies previously disbursed by it under the AAA Rules. If and to the extent permitted by law, the initiating Party under such a finding by the arbitrator shall also reimburse any attorneys' fees incurred by the other Party in connection with the arbitration proceeding instituted under this Provision.

(d) **THE PARTIES AGREE THAT, BY ENTERING INTO THIS PROMISSORY NOTE (LOAN AGREEMENT AND**

Lender/Assignor initials ███

6

Doc ID: e5c7cd59604b9b88cd372cbbcb3fc8671594e;

14

ADDENDUM), **EACH PARTY IS WAIVING ITS RIGHT TO A TRIAL BY JURY OR JUDGE.** Unless the Parties agree otherwise, all hearings conducted as part of or related to any arbitration proceeding shall take place in any state or federal court in New York. The arbitrator may award injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide the relief warranted by that party's individual claim.

(e) THE PARTIES AGREE THAT EACH PARTY MAY BRING CLAIMS AGAINST THE OTHER ONLY IN AN INDIVIDUAL CAPACITIES AND NOT AS A PLAINTIFF OR CLASS MEMBER OR REPRESENTATIVE IN ANY PURPORTED CLASS, COLLECTIVE, OR REPRESENTATIVE PROCEEDING. THE PARTIES AGREE THAT THE ARBITRATOR MAY NOT CONSOLIDATE PROCEEDINGS OR MORE THAN ONE PARTY'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER A REPRESENTATIVE, CLASS, OR COLLECTIVE PROCEEDING OF ANY KIND WHATSOEVER, UNDER ANY CIRCUMSTANCE, and that if this provision is found to be unenforceable, then the entirety of this arbitration Section shall be null and void and severed from this Loan Agreement.

(f) The Parties agree that only the arbitrator, and not any federal, state or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability or enforceability of the provisions in this Provision 12 (Arbitration), including without limitation any dispute concerning arbitrability.

(g) Any arbitration proceeding initiated under this provision, together with all materials related to such arbitration (such as pleadings, briefs, transcripts, motions, decisions, evidence etc.) shall be confidential and private in all respects, and to the maximum extent permitted by law, not disclosed or disseminated to others.

(h) Notwithstanding anything to the contrary, the Company will be entitled to apply to a court of law and obtain appropriate injunctive and/or equitable relief to enjoin a breach or threatened breach of this Loan Agreement.

(i) In the event of a conflict or inconsistency between the terms of this Provision 12 (Arbitration) and those in other provisions of the Loan

Lender/Assignor initials                                         7

Doc ID: e5c7cd59604b9b88cd372cbbcb3fc8671594e:

15

10. If any provision of this Addendum is held in whole or in part to be unenforceable for any reason, then the remainder of that provision and this Addendum will severable and remain in full force and effect.

11. This Addendum may be executed by parties in one or more counterparts, via email copy, which shall be deemed an original and all of which, taken together, shall be deemed one and the same agreement.

[Remaining of Page Intentionally Left Blank]

Lender/Assignor initials\_\_\_    9

Doc ID: e5c7cd59604b9b88cd372cbbcb3fc8671594e

*16*

Individual Lender (Print Name):

████████████████████

Signature

████████████████████████

**04/05/2022**

Entity Lender: Name of Entity

_____

_____
Name and Title of Representative:

_____
Signature

_____
Date

Borrower: Mountains of Spices LLC

Name (Print)

___Qidong Xia_____

___President_____
Title

_Qidong Xia_____
Signature

___April 3 2022._____
Date

Lender/Assignor initials ██████_____

10

Doc ID: e5e7cd59604b9b88ed372ebaca3fb86716954e1

████████████████

*17*

Case S4:23-cr-00118-AT

| | |
|---|---|
| UNITED STATES DISTRIC COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>- --------------------------------------------------------x<br>UNITED STATES OF AMERICA<br>Plaintiff<br><br>- V -<br><br>HO WAN KWOK, a/k/a"Miles Guo, " a/k/a "Miles Kwok , " a/k/a " Guo Wengui, " a/k/a "Brother Seven," a/k/a "The Principal ,"KIN MING JE , a/k/a "William Je, " and YANPING WANG ,a/k/a "Yvette,"<br>Defendants<br>- --------------------------------------------------------x | AMENDED VICTIM SUBMISSION UNDER THE CRIME VICTIMS' RIGHTS ACT (18 U.S.C. § 3771) AND THE MANDATORY VICTIMS RESTITUTION ACT (18 U.S.C. § 3663A) |

**5 . payment to MOS farm, contract with MOS farm**



18



BR: 00300                    DOMESTIC MONEY TRANSFER                    BUS: 000

09/30/20                     CITIBANK REFERENCE NUM ██████████

SENDER INFORMATION           ██████████████████

BENEFICIARY INFORMATION      MOUNTAINS OF SPICES LLC

                             ACCOUN █████████████████

BENEFICIARY BANK             ABA#: ██████████
   INFORMATION               BANK OF AMERICA N.A.

                                              NY

                                        PAGE 1 OF 2

19



~ . :28% ⚿ 20:51

| | |
|---|---|
| Transfer Amount | $50,000.00 |
| Wire Transfer Fee | $25.00 |
| **Your Total Amount** | **$50.025.00** |

## Your Information

| | |
|---|---|
| Transfer Request Submitted | September 14, 2020 |
| Pay from | Citi CHECKING·······7332 |

## Payee Information

| | |
|---|---|
| Send to | MOS LLC |
| Payee's Account | ·······8244 |
| Payee's Bank | BANK OF AMERICA N.A. NEW YORK NY UNITED STATES NEW YORK UNITED STATES OF AMERICA |
| Special Instructions (Optional) | None |

## Status

Successfully Sent

*20*



Transfer Amount            $20,357.00

Wire Transfer Fee          $25.00

**Your Total Amount**      $20,382.00

## Your Information

Transfer Request Submitted    August 31, 2020

Pay from                      Citi CHECKING*******7332

## Payee Information

Send to                       MOS LLC

Payee's Account               *******8244

Payee's Bank                  BANK OF AMERICA N.A.
                              NEW YORK NY UNITED STATES
                              NEW YORK UNITED STATES OF
                              AMERICA

Special Instructions (Optional)    None

## Status

Successfully Sent

 

Z1



LOAN AGREEMENT

Borrower:    Momentum of Sperm LLC
             1129 Northern Blvd.,
             Suite 404, Manhasset,
             New York 11030

Lender:      ████████████████

This Loan Agreement dated _____, 2020 __ is made between the Borrower and the Lender in which the Lender agrees to grant a loan to the Borrower on the following terms and conditions. The Lender understands and agrees to take all the commercial, market and if any regulatory risk in relation to granting or extending the loan herein to the Borrower.

1.   Terms

(a) Use of Proceeds:      The loan proceeds advanced under this Agreement is for the general working capital purposes of the Borrower.

(b) Loan Amount:          United States Dollar in the amount of $ _____, which is the actual and net dollar amount credited into the Borrower's designated account pursuant to the Loan Advance.

(c) Interest Rate:        3% per annum on the Loan Amount payable in full on the Final Maturity Date.

(d) Final Maturity Date:  36 months from the Effective Date.

(e) Repayment:            The total Loan Amount and accrued interest from the Loan Amount will be repaid in a lump sum on the Final Maturity Date. The Borrower will have the option to make repayment in one of the two followings:

                          (i)    By cash in United States dollar in the total amount of Loan Amount plus accrued interest; or
                          (ii)   By transferring ownership of the Borrower's Assets at a value determined by the Borrower and is acceptable to the Lender, that is equivalent to the total Loan Amount and accrued interest to the Lender.

(f) Extension Right:      Borrower has the right but not the obligation at any time before the Final Maturity Date to extend the Final Maturity Date for 24 months. Upon the Borrower serving a written loan extension notice to the Lender, the Final Maturity Date will be amended accordingly to the new date.

Lender Initials ████████

22



(g) Loan Advance:    The Loan Amount will be advanced to the Borrower in a lump sum, in a whole number by bank transfer into the Borrower's or other designated account as instructed by the Borrower.

The loan proceeds must be advanced by either the Lender or the designated individual or entity by the Lender. Otherwise, the Borrower shall have the right to unilaterally terminate this Agreement.

The Lender shall have no right to unilaterally terminate this Agreement after it becomes effective.

(h) Effective Date:    This Agreement shall be effective on the date the full Loan Amount proceeds has reached the Borrower's designated account in free and clear fund. The Effective Date and the Final Maturity Date will be declared by the Borrower to the Lender in writing once the Loan Advance proceeds are free and clear in the designated account. This Agreement shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs and expenses or until such time as the parties may agree in writing to terminate this Agreement.

(i) Pledge of Assets:    To secure the prompt and complete repayment of the Loan, Borrower hereby pledges to the Lender and grants to the Lender, a security interest in all of such Borrower's right, title and interest in the Borrower's assets, including its fixed assets, current assets and any assets pledged to the Borrower (the "Assets") for an amount equal to the total indebtedness owed to the Lender.

(j) Perfection of Pledge Interest:    Borrower agrees (i) to deliver to the Lender, or the Lender's nominee, all certificates, instruments or other documents evidencing any of the Assets that are pledged to the Lender at the end of the Final Maturity Date, and (ii) to take such other steps as the Lender may from time to time reasonably request to perfect the Lender's security interest in the Assets pledged to the Lender under applicable law.

(k) Prepayment    The Borrower can, by giving at least 30-day written notice to the Lender, make prepayment of the loan at any time before the Final Maturity Date without paying any penalty or premium.

2

Lender Initial ▮▮▮▮

2. Representations and Warranties by Lender. Lender represents and warrants to Borrower, as of the date of this Agreement, as of the date of any renewal, extension, or modification of any Loan, and at all times any indebtedness exists:

(a)  Lender is sufficiently experienced in financial and business matters to be capable of utilizing such information to evaluate the merits and risks of this loan and make an informed decision relating thereto. Lender is in a financial position to hold the Loan for a period longer than the Final Maturity Date and is able to bear the economic risk and withstand a complete loss of the Loan.

(b)  No litigation, claim, investigation, administration proceeding against Lender is pending. If any, that have been disclosed to and acknowledged by Borrower in writing.

3. Representations and Warranties by Borrower. Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of any renewal, extension, or modification of any Loan, and at all times any indebtedness exists:

(a)  Mountains of Spices LLC is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the United States of America, duly authorized to transact business. Borrower will notify Lender prior to any change in its name or office location, and do all things necessary to preserve and keep in full force and effect its existence, rights and privileges, and shall comply with all requirements, rules, ordinances, statuses, orders and decrees of any government or quasi-governmental authority or court that is applicable.

(b)  Borrower's execution, delivery, and performance of this Agreement has been duly authorized by all necessary action by Borrower and will not conflict with, result in a violation of, or constitute a default under any provision of (i) Borrower's Operating Agreement or (ii) any law, government regulation, court decree, or order applicable to Borrower.

(c)  No litigation, claim, investigation, administration proceeding against Borrower is pending. If any, that have been disclosed to and acknowledged by Lender in writing.

4. Affirmative Covenants. Borrower covenants and agrees with Lender that, as long as this Agreement remains in effect, Borrower will:

(a)  Notice of Claims and Litigation. Promptly inform Lender in writing of all existing and all threatened litigation, claims, investigations, and administrative proceedings affecting Borrower which could materially affect the financial condition of Borrower.

(b)  Loan Proceeds. Use all loan proceeds strictly in accordance with the Use of Proceeds.

Lender Initials ▊▊▊

24

(c) Performance. Perform and comply, in a timely manner with all terms, conditions, and provisions set forth in this Agreement. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

(d) Assets. The Borrower will with its best effort ensure that the value of its assets are at all times sufficient to cover the indebtedness owed to the Lender.

5. Negative Covenants. Borrower covenants and agrees with Lender that, as long as this Agreement remains in effect, Borrower will not, without the prior consent of Lender:

(a) Continuity of Operations. Cease operations, liquidate, merge, transfer, acquire, consolidate with any other entity.

(b) Agreements. Enter into agreement containing any provisions which could be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

(c) Liens. Sell, transfer, assign, lease, or encumber the Assets to any party except the Lender. For the avoidance of doubt, the Borrower is permitted to pledge the Assets to other lenders of the similar nature provided that the value of the Borrower's assets are at all times sufficient to cover all the indebtedness owed by all the lenders.

6. Default. Default will occur if payment in full is not made immediately when due. If Default shall occur, and, at Lender's option, all indebtedness shall become due and payable. In addition, Lender shall have all the rights and remedies available at laws. All of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently.

7. Notices. All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given upon the earlier of actual receipt or (a) personal delivery to the party to be notified, (b) when sent, if sent by electronic mail or facsimile during normal business hours of the recipient, and if not sent during normal business hours, then on the recipient's next business day, (c) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one (1) business day after deposit with a nationally recognized overnight courier, freight prepaid, specifying next business day delivery, with written verification of receipt. All communications shall be sent to the respective parties at their address as set forth in this Agreement or such address as subsequently modified by written notice.

8. Indemnity. Lender agrees to indemnify and hold harmless Borrower, and each of its employees, directors, agents and attorneys, from and against any and all loss, liability, claims, damages and expense (including any expense reasonably incurred in investigation of or defending against any litigation commenced or threatened or any claim whatsoever) related to any misrepresentation or breach of warranty or breach of Agreement by Lender contained herein or in any other document furnished by the Lender to the Borrower in connection with this Agreement.

4

Lender Initial

9. Amendment. This Agreement constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement and supersedes each course of conduct previously pursued or acquiesced in, and each oral agreement and representation previously made by the parties with respect thereto, whether or not relied or acted upon. No alteration or amendment to this Agreement shall be effective unless given in writing and signed by the parties sought to be changed or bound by the alteration or amendment.

10. Assignment. Lender shall not assign its rights under this Agreement or any interest therein, without the prior written consent of the Borrower.

11. Agreement Binding on Borrower's and Lender's Successors. The representations, warranties, covenants and agreements in this Agreement shall be binding on the Lender's and the Borrower's successors, assigns, heirs and legal representatives and shall inure to the benefit of the respective successor and assigns of the Borrower and Lender.

12. Dispute Resolution. The parties hereby submit to any federal or state courts, located in the State of New York, under the jurisdiction to the Nassau County of New York, and agree that all litigation under or relating to this Agreement shall be conducted in such courts.

13. Governing Law. This Agreement shall be construed in all respects in accordance with and governed by the laws of the State of New York.

14. Delays or Omissions. No delay or omission to exercise any right, power or remedy accruing to any party under this Agreement, upon any breach or default of any other party under this Agreement, shall impair any such right, power or remedy of such non-breaching or non-defaulting party nor shall it be construed to be a waiver of any such breach or default, or an acquiescence therein, or of or in any similar breach or default thereafter occurring; nor shall any waiver of any single breach or default be deemed a waiver of any other breach or default theretofore or thereafter occurring. Any waiver, permit, consent or approval of any kind or character on the part of any party or any breach or default under this Agreement, or any waiver on the part of any party of any provisions or conditions of this Agreement, must be in writing and shall be effective only to the extent specifically set forth in such writing. All remedies, either under this Agreement or by law or otherwise afforded to any party, shall be cumulative and not alternative.

15. The invalidity or unenforceability of any provision hereof shall in no way affect the validity or enforceability of any other provisions and the document in its entirety.

16. DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless otherwise specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles and in effect on the date of this Agreement.

"Agreement" or "Loan Agreement" means this agreement signed herewith, and this Loan Agreement may be amended or modified from time to time.

Lender Initials: ▮▮▮



"Borrower" means Mountains of Spices LLC.

"Default" means the Default set forth in this Agreement in the section titled "Default".

"Final Maturity Date" means the date on which all the indebtedness of the loan become due and immediately be repaid.

"Indebtedness" means the indebtedness including all principal and interest together with all other indebtedness and cost and expenses for which Borrower is responsible under this Agreement.

"Lender" means the entity or person set forth in this Agreement in the section titled "Lender"

"Loan" means any and all loans from Lender to Borrower whether now or hereafter existing, and however evidenced.

"Assets" means all the Borrower's assets, including its fixed assets, current assets and any assets pledged to the Borrower.

Lender Initial ███████

27



Signature Page

Individual Lender : Name (Print) ████████

█████████████

_____2/4/2020_____
Date

Entity Lender: Name of Entity:
_____

Name and Title of Representative
_____

_____
Signature

_____
Date

Borrower: Mountains of Spices LLC

Name (Print)

Title:

_____
Signature

_____
Date

Lender Initials ████████

28



Appendix A: Lender's Information

Individual Lender 个人借出人

姓名 Name :

电子邮箱 email address :

申请编号 Application Seri

身份证号或护照号 ID or

电话号码 phone number :

居住地址 residential addr

Entity Lender 机构借出人

公司名称 : Name of the Entity

公司电话 : phone number

公司地址 : address

公司代表姓名及职位   Name and Title of the Representative

公司代表电话 phone number of the representative

电子邮箱 : email address of the Representative

公司编号 : Tax ID Number

Appendix B: Lender's Designated Person Wiring the fund (指定汇款人)

指定汇款人姓名 name

电子邮箱 email address

Lender Initials ___

**Addendum**

This Addendum is entered by Mountains of Spices LLC located at 142? Manhattan Boulevard Suite 40? Manhattan New York 11030 (hereinafter as "Borrower") and ██████████████ . (hereinafter as "Lender") as a modification and supplement to Loan Agreement initially executed by parties on ██████████ , and lastly modified with principal amount by Lender on ██████████ . Parties hereby agree to modify Loan Agreement by incorporating the following provisions into Loan Agreement.

1. Provision 1(a) of Loan Agreement shall be modified as to follows: the loan proceeds advanced under this Agreement may be used by the Borrower at its discretion without limitation, including but not limited for working capital, political activities, loaning on to other parties, and for investment purposes.

2. Provision 1(c) of Loan Agreement shall be modified to as follows: (c) Interest Rate: 3% per annum on the final Loan Amount from the final Effective Date. Final Effective Date is the date of the final receipt of funds in the Borrower's designated account. Interest accrued hereunder shall be due on the Final Maturity Date, as defined below. In all events, interest shall be computed on the basis of the actual number of days in each calendar year and the actual number of days elapsed in each period for which interest is computed.

3. Section 2 of the Loan Agreement shall be modified to include the following after subsection 2(b): (c) Lender represents and certifies that none of the loan funds are derived from any unlawful activity.

4. Parties understand and agree that the entire provision 3 (Representations and Warranties by Borrower) of the Loan Agreement is hereby deleted.

5. The entire provision 12 of Loan Agreement shall be modified to as follows: 12. Arbitration

(a) The Parties (including any respective subsidiaries, affiliates, predecessors in interest, successors and assigns) agree to arbitrate any and all controversies, disputes, and claims (including those that are already the subject of litigation), whenever they may have arisen or may hereafter arise, relating to or arising out of Loan Agreement in conformity with rules and procedures as established by the American Arbitration Association ("AAA") and as may be modified by any state arbitration act. Notwithstanding anything to the contrary, either the Lender or Borrower may bring an individual action in small claims court. This Loan Agreement evidences a transaction in interstate commerce, and thus, the Federal Arbitration Act governs the interpretation and enforcement of this Provision.

(b) A Party who intends to seek arbitration must first send to the other, by certified mail or an e-mail with read receipt confirmation, a written notice of intent to arbitrate ("Notice"). The Notice to the Parties should be sent to the address set

Lender Initials ██████████                                                                 A1

30

(g) Any arbitration proceeding initiated under this provision, together with all materials related to such arbitration (such as pleadings, briefs, transcripts, motions, decisions, evidence etc.) shall be confidential and private in all respects, and to the maximum extent permitted by law, not disclosed or disseminated to others.

(h) Notwithstanding anything to the contrary, the Company will be entitled to apply to a court of law and obtain appropriate injunctive and/or equitable relief to enjoin a breach or threatened breach of this Loan Agreement.

(i) In the event of a conflict or inconsistency between the terms of this Provision 12 (Arbitration) and those in other provisions of the Loan Agreement regarding whether a court or an arbitrator has jurisdiction over a particular dispute, the Parties agree that the terms of this Provision (Arbitration) shall govern and control.

(j) This Provision shall survive the termination of this Loan Agreement, regardless of the reason for or circumstances surrounding such termination.

6. The Borrower shall have the right to unilaterally terminate the Loan Agreement if the Lender has committed or commits the following:

(a) Lender defames, libels, insults, humiliates, abuses, curses verbally or in writing, in public or secrecy, Mr. Wengui Guo, aka Miles Guo;

(b) Lender makes any statements or engages any conducts that are against the missions of the Whistleblower Movement (WM). For the purpose of this Loan Agreement, WM is defined as a combination of campaigns, actions and platforms (including GTV) designated to disclose the criminal activities of Chinese Communist Party (CCP) and spread the truth about CCP's atrocity for the purpose of achieving the total and complete destruction of the CCP; or

(c) Lender makes any statements or engages any activities that are against the missions of the New Federal State of China (NFSC). For the purpose of this Note, NFSC is a semi state sovereignty created and initiated by Mr. Miles Guo and supported by anti-CCP communities on June 4th 2020 at New York, with the mission of establishing a new China without CCP to promote the universal ideas of rule of law, freedom, and democracy to Chinese people.

7. The Lender may not transfer, assign, or delegate any of its rights or obligations hereunder without the prior written consent of the Borrower.

8. This Addendum may be amended, modified, or supplemented by an agreement in writing by both parties.

9. If there is any inconsistencies between this Addendum and the Loan Agreement, terms and provisions and this Addendum shall govern and control.

Lender Initials: ████

10. If any provision of this Addendum is held in whole or in part to be unenforceable for any reason, then the remainder of that provision and this Addendum will severable and remain in full force and effect.

11. This Addendum may be executed by parties in one or more counterparts, via email copy, which shall be deemed an original and all of which, taken together, shall be deemed one and the same agreement.

[Remaining of Page Intentionally Left Blank]

**HEAVEN LAKE CO., is the new entity after the merger of Ex-Grace Farm and Ex-Xihan Farm**

32

Individual Lender (Print Name):

Signature

10/06/2021
Date

Entity Lender: Name of Entity

Name and Title of Representative:

Signature

Date

Borrower: Mountains of Spices LLC

Name (Print)

Xia, Chilong

President
Title

Signature

11/02/2021
Date

Lender Initials

8 . payment to Gfashion

33



## CHASE ○

JPMorgan Chase Bank, N.A.
P.O Box 182051
Columbus, OH 43218-2051

October 12, 2022 through November 08, 2022

Account Number:                   ███ 961

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site | Chase.com |
| Service Center | 1-800-935-9935 |
| Para Espanol | 1-877-312-4273 |
| International Calls | 1-713-262-1679 |

**Review our updated overdraft information at the end of this statement**

We've included our overdraft services and associated fees that are available for your personal checking account(s) at the end of this statement. If you're enrolled in Chase Debit Card Coverage℠, please review the refreshed information on the service. As a reminder, overdraft services are not available for Chase Secure Checking℠ or Chase First Checking℠. Standard Overdraft Practice and Chase Debit Card Coverage are not available for Chase High School Checking℠.

If you have questions, please visit **chase.com/overdraft** or call us at the number on your statement. We accept operator relay calls.

### CHECKING SUMMARY | Chase Total Checking

| | AMOUNT |
|---|---|
| Beginning Balance | $1,876.64 |
| Deposits and Additions | 3,849.24 |
| ATM & Debit Card Withdrawals | -2,861.28 |
| Ending Balance | $2,865.60 |

### TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| | Beginning Balance | | $1,876.64 |
| 10/12 | Card Purchase   10/12 Sc Glasshon, Brashton Dohl NY Card 9877 | $34.22 | 1,881.42 |
| 10/13 | ATM Check Deposit   10/13 7915 University Blvd Water Fork FL Card 9877 | 552.00 | 2,103.42 |
| 10/13 | | 540.00 | 2,843.42 |
| 10/13 | | 300.00 | 3,143.42 |
| 10/13 | | 240.00 | 3,383.42 |
| 10/13 | | 100.00 | 3,383.42 |
| 10/13 | | 55.00 | 5,433.42 |
| 10/13 | | 50.00 | 3,433.42 |
| 10/13 | | 50.00 | 3,513.42 |

Page 1 of 4

34

# CHASE ⬡

October 12, 2022 through November 08, 2022

Account Number: ▮▮▮▮▮▮▮

## TRANSACTION DETAIL (continued)

| DATE | DESCRIPTION | | AMOUNT | BALANCE |
|------|-------------|--|--------|---------|
| 10/13 | ATM Cash Deposit 9877 | 10/13 7315 University Blvd Winter Park FL Card | 10.00 | 3,523.42 |
| 10/13 | ATM Cash Deposit 9877 | 10/13 7315 University Blvd Winter Park FL Card | 5.00 | 3,528.42 |
| 10/13 | Zelle Payment From Rui Inc 15531057149 | | 10.00 | 3,538.42 |
| 10/14 | Card Purchase 9877 | 10/13 Paypal *Brightrayde 402-935-7733 CA Card | -40.00 | 3,498.42 |
| 10/14 | Card Purchase | 10/14 Pp*Amw 402-935-7733 MI Card 9877 | -568.28 | 2,930.14 |
| 10/17 | Card Purchase | 10/17 Sp Gfashion Gfashion.Com NY Card 9877 | -1,221.88 | 1,708.26 |
| 10/24 | ATM Cash Deposit 9877 | 10/24 7315 University Blvd Winter Park FL Card | 900.00 | 2,608.26 |
| 10/24 | ATM Cash Deposit 9877 | 10/24 7315 University Blvd Winter Park FL Card | 600.00 | 3,208.26 |
| 10/24 | ATM Cash Deposit 9877 | 10/24 7315 University Blvd Winter Park FL Card | 250.00 | 3,458.26 |
| 10/24 | ATM Cash Deposit 9877 | 10/24 7315 University Blvd Winter Park FL Card | 100.00 | 3,558.26 |
| 10/24 | ATM Cash Deposit 9877 | 10/24 7315 University Blvd Winter Park FL Card | 10.00 | 3,568.26 |
| 10/28 | Card Purchase | 10/27 Paypal *Temu 402-935-7733 De Card 9877 | -2.24 | 3,566.02 |
| 10/31 | Card Purchase | 10/31 Sp Gfashion Gfashion.Com NY Card 9877 | -108.67 | 3,457.35 |
| 11/04 | Card Purchase 9877 | 11/04 Paypal *Brightrayde 402-935-7733 CA Card | -580.00 | 2,877.35 |
| 11/07 | Card Purchase Return | 11/06 Paypal *Temu 402-935-7733 De Card 9877 | 2.24 | 2,879.59 |
| 11/08 | Card Purchase 9877 | 11/07 Tmobile*Prepaid Web 877-778-2106 WA Card | -15.99 | 2,863.60 |
| | Ending Balance | | | $2,863.60 |

A Monthly Service Fee was **not** charged to your Chase Total Checking account. Here are the three ways you can avoid this fee during any statement period.

- Have electronic deposits made into this account totaling $500.00 or more, such as payments from payroll providers or government benefit providers, by using (i) the ACH network, (ii) the Real Time Payment network, or (iii) third party services that facilitate payments to your debit card using the Visa or Mastercard network. (You did not have an electronic deposit this statement period)

- OR, keep a balance at the beginning of each day of $1,500.00 or more in this account. (Your lowest beginning day balance was $1,551.42)

- OR, keep an average beginning day balance of $5,000.00 or more in qualifying linked deposits and investments. (Your average beginning day balance of qualifying linked deposits and investments was $2,786.53)

**11. payment to Himalaya Korea farm (sent ¥ to 万淑杰), contract with Himalaya Korea farm , The way loan with Himalaya Korea farm was sending to 万淑杰(Wan shujie) is RMB via BoCom wire , totally ¥368,000.00 was transferred as$51,830.00**

35

☑ 隐藏收付款卡号

## 交易成功

交易时间: 2020-10-04 14:04:12

流水号: 2005000420201004050009536788

此电子回执仅供参考，不作为到账成功凭证，请以收款银行实际入账为准。如汇款人账户未收，资金退回原汇款账户。

**万淑杰**　中国建设银行
621700****9216

**付**　杨伟锋　交通银行
622260****7875

转账金额: **200,000.00元** （免手续费）
贰拾万元整

到账时间: 预计实时到账

附　言: 转账

**Sender:** ▮▮▮▮▮ ▮▮

**Recipient: ShujieWan (Korean Farm Payee )**

**Amount: ¥ 200,000.00**

**Date: 10/04/2020**

## 交易成功

交易时间: 2020-10-04 14:06:04

流水号: 2005000420201004050009⬛⬛⬛⬛⬛⬛

此电子回执仅供参考，不作为到账成功凭证，请以收款银行实际入账为准。如汇款人账户未收，资金退回原汇款账户。

**万淑杰**　中国建设银行
621700****9216

**付**　杨伟锋　交通银行
622260****7875

转账金额: **168,000.00元** （免手续费）
壹拾陆万捌仟元整

到账时间: 预计实时到账

附　言: 转账

**Sender:** ▮▮▮▮▮▮▮▮

**Recipient: ShujieWan (Korean Farm Payee )**

**Amount: ¥ 168,000.00**

**Date: 10/04/2020**

36

# LOAN AGREEMENT

**Borrower:** HIMALAYA KOREA FARM CO., LTD

ADD: Room 420, Cangduk evebill  Gwanyang-dong 488, Gwanak-daero, Dongan-gu, Anyang-si, Gyeonggi-do, Republic of Korea

Post#: 13951

**Lender:** ▮▮▮▮▮▮▮▮▮▮▮▮

This Loan Agreement dated **10/04/2020** is made between the Borrower and the Lender in which the Lender agrees to grant a loan to the Borrower on the following terms and conditions. The Lender understands and agrees to take all the commercial, market and if any, regulatory risk in relation to granting or extending the loan herein to the Borrower.

1. Terms

(a) Use of Proceeds: The loan proceeds advanced under this Agreement is for the general working capital purposes of the Borrower.

(b) Loan Amount: United States Dollar in the amount of **$51830** , which is the actual and net dollar amount credited into the Borrower's designated account pursuant to the Loan Advance.

(c) Interest Rate: 3% per annum on the Loan Amount payable in full on the Final Maturity Date

(d) Final Maturity Date: 36 months from the Effective Date.

(e) Repayment: The total Loan Amount and accrued interest from the Loan Amount will be repaid in a lump sum on the Final Maturity Date. The Borrower will have the option to make repayment in one of the two followings:

    (i) By cash in United States dollar in the total amount of Loan Amount plus accrued interest, or

    (ii) By transferring ownership of the Borrower's Assets of a value determined by the Borrower and is acceptable by

Lender Initials ▮▮▮▮▮

37

the Lender, that is equivalent to the total Loan Amount and accrued interest to the Lender.

(f) Extension Right: Borrower has the right but not the obligation at any time before the Final Maturity Date to extend the Final Maturity Date for 24 months. Upon the Borrower serving a written loan extension notice to the Lender, the Final Maturity Date will be amended accordingly to the new date.

(g) Loan Advance: The Loan Amount will be advanced to the Borrower in a lump sum in a whole number by bank transfer into the Borrower's or other designated account as instructed by the Borrower.

The loan proceeds must be advanced by either the Lender or the designated individual or entity by the Lender. Otherwise, the Borrower shall have the right to unilaterally terminate this Agreement.

The Lender shall have no right to unilaterally terminate this Agreement after it becomes effective.

(h) Effective Date: This Agreement shall be effective on the date the full Loan Amount proceeds has reached the Borrower's designated account in free and clear fund. The Effective Date and the Final Maturity Date will be declared by the Borrower to the Lender in writing once the Loan Advance proceeds are free and clear in the designated account. This Agreement shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs and expenses or until such time as the parties may agree in writing to terminate this Agreement.

(i) Pledge of Assets: To secure the prompt and complete repayment of the Loan, Borrower hereby pledges to the Lender and grants to the Lender, a security interest in all of such Borrower's right, title and interest in the Borrower's assets, including its fixed assets, current assets and any assets pledged to the Borrower (the "Assets") for an amount equal to the total indebtedness owed to the Lender.

(j) Perfection of Pledge Interest: Borrower agrees (i) to deliver to the Lender, or the Lender's nominee, all certificates, instruments or other documents evidencing any of the Assets that are pledged to the Lender at the end of the Final Maturity Date, and (ii) to take such other steps as the Lender may from time to time reasonably request to perfect the Lender's security interest in the Assets pledged to the Lender under applicable law.

Lender Initials ████

(k) Prepayment   The Borrower can, by giving at least 30-day written notice to the Lender, make prepayment of the loan at any time before the Final Maturity Date without paying any penalty or premium.

2. Representations and Warranties by Lender. Lender represents and warrants to Borrower, as of the date of this Agreement, as of the date of any renewal, extension, or modification of any Loan, and at all times any indebtedness exists:

(a) Lender is sufficiently experienced in financial and business matters to be capable of utilizing such information to evaluate the merits and risks of this loan and make an informed decision relating thereto. Lender is in a financial position to hold the Loan for a period longer than the Final Maturity Date and is able to bear the economic risk and withstand a complete loss of the Loan.

(b) No litigation, claim, investigation, administration proceeding against Lender is pending. If any, that have been disclosed to and acknowledged by Borrower in writing.

3. Representations and Warranties by Borrower. Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of any renewal, extension, or modification of any Loan, and at all times any indebtedness exists:

(a) **HIMALAYA KOREA FARM CO., LTD** is a company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the **REPUBLIC OF KOREA**, duly authorized to transact business. Borrower will notify Lender prior to any change in its name or office location and do all things necessary to preserve and keep in full force and effect its existence, rights and privileges, and shall comply with all requirements, rules, ordinances, statuses, orders and decrees of any government or quasi-governmental authority or court that is applicable.

(b) Borrower's execution, delivery, and performance of this Agreement has been duly authorized by all necessary action by Borrower and will not conflict with, result in a violation of, or constitute a default under any provision of (i) Borrower's Operating Agreement or (ii) any law, government regulation, court decree, or order applicable to Borrower.

(c) No litigation, claim, investigation, administration proceeding against Borrower is pending. If any, that have been disclosed to and acknowledged by Lender in writing.

4. Affirmative Covenants. Borrower covenants and agrees with Lender that, as long as this Agreement remains in effect, Borrower will:

Lender Initials █████

39

next business day delivery, with written verification of receipt. All communications shall be sent to the respective parties at their address as set forth in this Agreement or such address as subsequently modified by written notice.

8. Indemnity. Lender agrees to indemnify and hold harmless Borrower, and each of its employees, directors, agents and attorneys, from and against any and all loss, liability, claims, damages and expense (including any expense reasonably incurred in investigating, preparing or defending against any litigation commenced or threatened or any claim whatsoever) related to any misrepresentation or breach of warranty or breach of agreement by the Lender contained herein or in any other documents furnished by the Lender to the Borrower in connection with this Agreement.

9. Amendment. This Agreement constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement and supersedes each course of conduct previously pursued or acquiesced in, and each oral agreement and representation previously made by the parties with respect thereto, whether or not relied or acted upon. No alteration or amendment to this Agreement shall be effective unless given in writing and signed by the parties sought to be changed or bound by the alteration or amendment.

10. Assignment. Lender shall not assign its rights under this Agreement or any interest therein, without the prior written consent of the Borrower.

11. Agreement Binding on Borrower's and Lender's Successors. The representations, warranties, covenants, and agreements in this Agreement shall be binding on the Lender's and the Borrower's successors, assigns, heirs and legal representatives and shall inure to the benefit of the respective successor and assigns of the Borrower and Lender.

12. Dispute Resolution. The parties hereby submit to any federal or state courts, located in the **REPUBLIC OF KOREA**, under the jurisdiction to the **SOUTH KOREA**, and agree that all litigation under or relating to this Agreement shall be conducted in such courts.

13. Governing Law. This Agreement shall be construed in all respects in accordance with and governed by the laws of the South Korea.

14. Delays or Omissions. No delay or omission to exercise any right, power or remedy accruing to any party under this Agreement, upon any breach or default of any other party under this

Lender Initials ███

Agreement, shall impair any such right, power or remedy of such non-breaching or non-defaulting party nor shall it be construed to be a waiver of any such breach or default, or an acquiescence therein, or of or in any similar breach or default thereafter occurring; nor shall any waiver of any single breach or default be deemed a waiver of any other breach or default theretofore or thereafter occurring. Any waiver, permit, consent or approval of any kind or character on the part of any party or any breach or default under this Agreement, or any waiver on the part of any party of any provisions or conditions of this Agreement, must be in writing and shall be effective only to the extent specifically set forth in such writing. All remedies, either under this Agreement or by law or otherwise afforded to any party, shall be cumulative and not alternative.

15. The invalidity or unenforceability of any provision hereof shall in no way affect the validity or enforceability of any other provisions and the document in its entirety.

16. DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless otherwise specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles and in effect on the date of this Agreement.

"Agreement" or "Loan Agreement" means this agreement signed herewith, and this Loan Agreement may be amended or modified from time to time.

"Borrower" means HIMALAYA KOREA FARM CO., LTD

"Default" means the Default set forth in this Agreement in the section titled "Default".

"Final Maturity Date" means the date on which all the indebtedness of the loan become due and immediately be repaid

"Indebtedness" means the indebtedness including all principal and interest together with all other indebtedness and cost and expenses for which Borrower is responsible under this Agreement.

"Lender" means the entity or person set forth in this Agreement in the section titled "Lender"

Lender Initials ██████

41

42

"Loan" means any and all loans from Lender to Borrower whether now or hereafter existing, and however evidenced

"Assets" means all the Borrower's assets, including its fixed assets, current assets and any assets pledged to the Borrower.



Lender Initials ▆

42

Signature Page

Individual Lender: Name (Print)

███████  ████████

Signature

███████

Date  10/04/2020

Entity Lender: Name of Entity:

_____

Name and Title of Representative:

_____

Signature

_____

Date

Borrower: HIMALAYA KOREA FARM CO., LTD

Name (Print): PIAO CHANG HAI

Title: REPRESENTATIVE

_____

Signature

_____

Date

Lender Initials ████████

43

Appendix A: Lender's information

Individual Lender 个人借出人

姓名 Name：

电子郵箱 email address

申购编码 Application S

身份证号或护照号 ID

电话号码 phone numbe

居住地址 residential add



Entity Lender 领将借出人

公司名称：Name of the Entity:

公司电话：phone number:

公司地址：address:

公司代表姓名及职位  Name and Title of the Representative:

公司代表电话: phone number of the representative:

电子邮箱 Email address of the Representative

公司税号 Tax ID Number:

Lender Initials

---

**13. Payment to H-Ccoin , I don't have remittances vouchers About the amount  item ,but i have the Himalaya pay transfer  form to confirmed  my H-coin amount number**

**13.1 My H-coin amount number**

44

**HIMALAYA EXCHANGE**

**Himalaya Pay**

转账申请表格

付款人全名：[redacted]

出生日期（日/月/年）[redacted]

Himalaya Exchange 呈 [redacted]

兹授权从本人的 Himalaya Exchange 账户[redacted]以下个人/账户 ·

| 汇款人 | |
|---|---|
| Himalaya Exchange 呈 供电邮电址 | |
| 收款人 Freedom Media Venture Ltd | alesh@hchitech.com |
| 收款用户 ID | |
| 代币/虚币类型 | HCN |
| HCN 金额 | [redacted] |

按照以转账请求一旦提转账 · 绝对绝无不易, 谨致谢 ·

日期：12/01/2021

签署 [redacted]

Office Use Only (仅供职员使用)

| | Name | Initial | Date |
|---|---|---|---|
| Processed by | | | |
| Checked by | | | |

---

**CHASE ⬡**

May 10, 2022 through June 08, 2022

Account Number [redacted]

## TRANSACTION DETAIL (continued)

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| 05/15 | 05/16 Online Domestic Wire Transfer Via: Metcommbk NY/026013356 A/C: Himalaya International Clearing Ltd newyork NY 10016 US Ref: Reference [redacted] Cn11Tpm3 Imad: [redacted] 36E1 | -8,800.00 | 1,867.18 |
| 05/16 | Online Domestic Wire Fee | -25.00 | 1,842.18 |
| 05/17 | ATM Cash Deposit 05/17 180 Canal St New York NY Card 9877 | 600.00 | 2,242.18 |
| 05/17 | ATM Cash Deposit 05/17 180 Canal St New York NY Card 9877 | 580.00 | 2,822.18 |
| 05/17 | ATM Withdrawal 05/17 180 Canal St New York NY Card 9877 | -40.00 | 2,782.18 |
| 05/17 | Zelle Payment To Brightray Dental P.C., Manhasset, NY, 14968420181 | -1,140.00 | 1,642.18 |
| 05/18 | ATM Withdrawal 05/18 214 Broadway New York NY Card 9877 | -60.00 | 1,582.18 |
| 05/18 | Card Purchase With Pin 05/18 Mta*Metrocard Machine New York NY Card 9877 | -20.00 | 1,562.18 |
| 05/20 | ATM Cash Deposit 05/20 2 Journal Sq Jersey City NJ Card 9877 | 200.00 | 1,762.18 |
| 05/20 | Card Purchase 05/19 Pp*Instacart 402-935-7733 CA Card 9877 | -30.09 | 1,732.09 |
| 05/23 | ATM Cash Deposit 05/21 2 Journal Sq Jersey City NJ Card 9877 | 200.00 | 1,932.09 |
| 05/23 | Card Purchase 05/21 Paypal *Alipayusine 402-935-7733 CA Card 9877 | -28.71 | 1,903.38 |
| 05/23 | Card Purchase 05/22 Paypal *Alipayusine 402-935-7733 CA Card 9877 | -179.70 | 1,723.68 |
| 05/25 | ATM Cash Deposit 05/25 214 Broadway New York NY Card 9877 | 100.00 | 1,823.68 |
| 05/25 | Card Purchase 05/25 Pp*Instacart 402-935-7733 CA Card 9877 | -41.14 | 1,782.54 |
| 05/26 | Card Purchase With Pin 05/26 Nj Post 0922 New York NJ Card 9877 | -4.50 | 1,778.04 |
| 05/27 | Card Purchase 05/25 Paypal *Pixbus 30900132300 Card 9877 | -56.95 | 1,721.09 |
| 05/31 | Card Purchase 05/31 Paypal *Iherb LLC 402-935-7733 CA Card 9877 | -28.50 | 1,692.59 |
| 06/03 | Card Purchase 06/03 Paypal *Iherb LLC 402-935-7733 CA Card 9877 | -23.03 | 1,669.56 |
| | Ending Balance | | $1,669.56 |

A Monthly Service Fee was not charged to your Chase Total Checking account. Here are the three ways you can avoid this fee during any statement period.

- Have electronic deposits made into this account totaling $500.00 or more, such as payments from payroll providers or government benefit providers, by using (i) the ACH network, (ii) the Real Time Payment network, or (iii) third party services that facilitate payments to your debit card using the Visa or Mastercard network. (You did not have an electronic deposit this statement period)

- OR, keep a balance at the beginning of each day of $1,500.00 or more in this account. (Your balance at the beginning of each day was $1,562.18)

- OR, keep an average beginning day balance of $5,000.00 or more in qualifying linked deposits and investments. (Your average beginning day balance of qualifying linked deposits and investments was $3,799.72)

45



## CHASE ◯

March 09, 2022 through April 08, 2022

Account Number:

## TRANSACTION DETAIL (continued)

| DATE | DESCRIPTION | | AMOUNT | BALANCE |
|------|-------------|---|--------|---------|
| 03/21 | 03/21 Online Domestic Wire Transfer Via: Malcommbk NY/026013956 A/C Hirostawn International Clearing Ltd New York, NY 10016 US Ref: Reference Co... Cn117pm3 Imad: 032... BOEs | | -1,200.00 | 1,546.86 |
| 03/21 | Online Domestic Wire Fee | | -25.00 | 1,521.86 |
| 03/23 | ATM Cash Deposit   03/23 3901 Main St Flushing NY Card 9877 | | 1,450.00 | 2,971.86 |
| 03/23 | ATM Withdrawal   03/23 3901 Main St Flushing NY Card 9877 | | -40.00 | 2,931.86 |
| 03/24 | ATM Cash Deposit   03/24 3901 Main St Flushing NY Card 9877 | | 2,900.00 | 5,831.86 |
| 03/25 | Card Purchase 9877   03/25 Paypal *Mint Mobile 402-935-7733 CA Card | | -52.61 | 5,779.25 |
| 03/28 | Card Purchase   03/26 Paypal *Twet LLC 402-935-7733 CA Card 9877 | | -29.42 | 5,749.83 |
| 03/29 | Card Purchase 9877   03/28 Hello Mobile Telecom 888-954-3566 FL Card | | -15.00 | 5,734.83 |
| 04/04 | Card Purchase Return   04/02 Paypal *Mint Mobile 402-935-7733 CA Card 9877 | | 52.61 | 5,787.44 |
| | **Ending Balance** | | | **$5,787.44** |

A Monthly Service Fee was not charged to your Chase Total Checking account. Here are the three ways you can avoid this fee during any statement period.

- Have electronic deposits made into this account totaling $500.00 or more, such as payments from payroll providers or government benefit providers, by using (i) the ACH network, (ii) the Real Time Payment network, or (iii) third party services that facilitate payments to your debit card using the Visa or Mastercard network. (You did not have an electronic deposit this statement period)

- OR, keep a balance at the beginning of each day of $1,500.00 or more in this account. (Your balance at the beginning of each day was $1,521.86)

- OR, keep an average beginning day balance of $5,000.00 or more in qualifying linked deposits and investments. (Your average beginning day balance of qualifying linked deposits and investments was $3,603.00)

IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS: Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.
For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly. If we take more than 10 business days for 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS: Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC.

JPMorgan Chase Bank, N.A. Member FDIC

46



# PRIORITY MAIL

## PRESS FIRMLY TO SEAL

### UNITED STATES POSTAL SERVICE®

# PRIORITY® MAIL

RETURN RECEIPT REQUESTED

- Expected delivery date specified for domestic use.
- Domestic shipments include $100 of insurance (restrictions apply).*
- USPS Tracking® service included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at http://pe.usps.com.

** See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

**LAT RATE ENVELOPE**

NE RATE ■ ANY WEIGHT

**RACKED ■ INSURED**



PS00001000014

EP14F October 2023
OD: 12 1/2 x 9 1/2

To schedule free Packa
scan the QR co



USPS.COM/PIC



PAPER POUCH

---

Retail

U.S. POSTAGE PA
PM



APR 17, 2026

10007

$21.65

6A, Nov 2018

United States Postal Service®



### UNITED STATES POSTAL SERVICE® | PRIORITY® MAIL

FROM:

USM4LD

SDNY

TO: Thurgood Marshall United States Courthouse 40 Foley Square. New York, NY 10007
Room 150
Attn: Pro Se Unit

Label 228, December 2023    FOR DOMESTIC AND INTERNATIONAL USE