USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______________
DATE FILED: Aug 25 2026

Lionheart
Pro Se
SDNY Case 1:23-cr-00118-AT

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

| | |
|---|---|
| IN RE: Lionheart<br>Petitioner, | Docket No.<br><br>PETITION FOR A WRIT OF MANDAMUS |

Petitioner, Lionheart, proceeding pro se, respectfully petitions this Honorable Court for a Writ of Mandamus directed to the United States District Court for the Southern District of New York (SDNY), compelling the District Court to docket and judicially address Petitioner’s third-party petition under 21 U.S.C. § 853(n) in Case No. 1:23-cr-00118-AT.

**I. STATEMENT OF THE ISSUES PRESENTED**

1. Whether a Writ of Mandamus should issue compelling the District Court to docket Petitioner’s § 853(n) petition, which has remained undocketed and without judicial consideration since its submission on July 13, 2026.

2. Whether the District Court's ongoing failure to docket the petition deprives Petitioner of the statutory ancillary proceeding mandated by 21 U.S.C. § 853(n) and Fed. R. Crim. P. 32.2(c), creating a substantial risk that the property may be distributed, liquidated, or otherwise disposed of before Petitioner's statutory claim receives judicial consideration.

**II. STATEMENT OF THE RELIEF SOUGHT**

Petitioner does not ask this Court to adjudicate the underlying merits of Petitioner’s property claim or pre-judge factual issues in the first instance. Rather, Petitioner requests that this Court issue a Writ of Mandamus directing the District Court to:

1. Docket Petitioner's July 13, 2026 submission, titled "THIRD-PARTY PETITION AND MOTION FOR ALTERNATIVE RESTITUTIONARY RELIEF PURSUANT TO 21 U.S.C. § 853(n) AND THE CRIME VICTIMS' RIGHTS ACT (CVRA)";

2. Refer the petition to the presiding District Judge for a judicial determination regarding standing, timeliness, and legal sufficiency under 21 U.S.C. § 853(n);

3. Conduct the mandatory ancillary proceeding required by 21 U.S.C. § 853(n) and Fed. R. Crim. P. 32.2(c) if the petition is determined to be sufficient; and

4. Preserve the status quo regarding the disputed corporate equities and assets potentially subject to Petitioner's claim, to the extent necessary to prevent disposition before judicial consideration of the petition.

**III. STATEMENT OF FACTS**

1. Petitioner asserts a legal property interest in property and corporate interests allegedly subject to the forfeiture orders, as described in the underlying petition and its supporting materials..

2. On July 13, 2026, within the applicable statutory period following forfeiture notices, Petitioner submitted a redacted copy of Petitioner's "THIRD-PARTY PETITION AND MOTION FOR ALTERNATIVE RESTITUTIONARY RELIEF" to the SDNY Clerk's Office / Pro Se Intake Unit via electronic mail (attached hereto as Exhibit A).

3. As of the date of this Petition, the filing has remained undocketed for more than thirty days.

4. Without an official docket entry, no judicial officer has reviewed the filing to determine whether it satisfies the procedural requirements of § 853(n)(2) or whether an ancillary proceeding must be formally initiated.

5. Petitioner acknowledges that the July 13, 2026 submission did not contain a separate declaration expressly stating that it was signed under penalty of perjury. Petitioner is prepared to promptly cure that formal defect and to submit a corrected and properly verified petition if permitted by the District Court. Petitioner does not seek mandamus relief requiring the Court of Appeals to adjudicate the merits of the underlying third-party claim; he seeks only to have the District Court receive, docket, and judicially determine the sufficiency and timeliness of Petitioner's claim.

## IV. REASONS WHY THE WRIT SHOULD ISSUE

### A. Petitioner Satisfies the Cheney Prerequisites for Mandamus Relief

Under Cheney v. U.S. Dist. Court for D.C., 542 U.S. 367 (2004), a writ of mandamus is appropriate where: (1) the petitioner has a clear and indisputable right; (2) no other adequate means exist to attain the desired relief; and (3) the writ is appropriate under the circumstances. All three elements are met here.

1. Clear and Indisputable Right: At a minimum, where a person submits a filing expressly invoking 21 U.S.C. § 853(n) and asserting a legal interest in forfeited property, the District Court should provide a judicial determination as to whether the submission satisfies the statutory requirements, rather than leaving the submission without any docket entry or judicial disposition. Section 853(n)(2) grants third parties a statutory right to petition the court, and Rule 32.2(c)(1) provides that, when a third party files a petition asserting an interest in forfeited property as prescribed by statute, the court must conduct an ancillary proceeding. Petitioner has a clear right to judicial consideration of a timely petition asserting a legal interest in forfeited property under § 853(n). At minimum, the petition must be placed before a judicial officer for a determination of its timeliness, sufficiency, and any resulting entitlement to an ancillary proceeding.

2. No Other Adequate Means of Relief: Petitioner has no alternative remedy. Because the Clerk's Office has not docketed the petition, there is no appealable order, no pending motion, and no judicial record from which to seek interlocutory or direct appellate review. Mandamus is the sole mechanism to compel the District Court to open the judicial door.

3. Immediate Threat of Irreparable Harm Under 21 U.S.C. § 853(n)(7): Following the District Court's June 25, 2026 order authorizing administrative remission, the Government may attempt to dispose of or liquidate the subject corporate entities and assets. Section 853(n)(7) provides that the United States obtains clear title only after the court has disposed of all timely petitions filed under § 853(n), or after the statutory period for filing such petitions has expired. Leaving Petitioner's petition undocketed creates a dangerous procedural vacuum where assets may be distributed while Petitioner's filing remains ignored without a judicial ruling. Mandamus is urgently required to force the docketing of the petition so that judicial consideration precedes any administrative disposition or transfer of clear title.

**B. The CVRA Provides an Additional Basis for Relief, To the Extent Applicable**

To the extent Petitioner qualifies as a "crime victim" under 18 U.S.C. § 3771, the CVRA provides an additional statutory basis for appellate review. Under 18 U.S.C. § 3771(d)(3), if the District Court fails to afford a victim these statutory rights, the victim may petition the Court of Appeals for a writ of mandamus. If Petitioner qualifies as a "crime victim" within the meaning of the CVRA, the failure to provide any judicial consideration of Petitioner's asserted rights also implicates the rights protected by 18 U.S.C. § 3771(a), including the right to be reasonably heard at public proceedings and to receive timely notice. Section 3771(d)(3) further provides an express mandamus mechanism for enforcement of those rights.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court grant this Petition and issue a narrow Writ of Mandamus directed to the United States District Court for the Southern District of New York to:

1. Direct the District Court to docket Petitioner's July 13, 2026 petition;

2. Direct the District Court to determine the timeliness, standing, and sufficiency of Petitioner's petition under 21 U.S.C. § 853(n) in the first instance;

3. Direct the District Court, if the petition is judicially determined to be sufficient, to proceed with the ancillary proceeding required by 21 U.S.C. § 853(n) and Fed. R. Crim. P. 32.2(c), including such discovery and evidentiary procedures as the District Court determines necessary and appropriate;

4. Direct the District Court to preserve the status quo, to the extent necessary to prevent final disposition or liquidation of corporate equities potentially subject to Petitioner's claim, pending judicial consideration of the petition; and

5. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Date: August 21, 2026

By: [redacted]

Petitioner Pro Se

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

MILES GUO,
a/k/a/ "Ho Wan Kwok,"
a/k/a "Miles Kwok,"
a/k/a "Guo Wengui,"
a/k/a "Brother Seven,"
a/ka/ "The Principal,"
a/ka/ "The Boss,"

Defendant.

S3 23 Cr. 118 (AT)

**THIRD-PARTY PETITION AND MOTION FOR ALTERNATIVE RESTITUTIONARY RELIEF PURSUANT TO 21 U.S.C. § 853(n) AND THE CRIME VICTIMS' RIGHTS ACT (CVRA)**

I respectfully request that the Court Clerk only docket the redacted version of my document and file Exhibit A under seal.

My name is [redacted]. Due to safety concerns, I would like to use the pseudonym Lionheart in this case.

I am an investor in the G Enterprise. As set forth in Exhibit A, I invested a total of [redacted] in the G Enterprise projects.

The innocent third-party Petitioner (hereinafter, the "Petitioner"), as a legitimate and bona fide investor in the "G Enterprise" projects (including, but not limited to, Himalaya Exchange, G Clubs, and GTV, among other entities), hereby submits this Third-Party Petition and Motion for Alternative Restitutionary Relief. This submission is made pursuant to Title 21, United States

Code, Section 853(n) (21 U.S.C. § 853(n)), Rule 32.2(c) of the Federal Rules of Criminal Procedure, and the Crime Victims' Rights Act (CVRA, 18 U.S.C. § 3771).

The Petitioner respectfully objects the Court's Order of Forfeiture entered against the G Enterprise entities and assets, and respectfully requests that this Court:

Grant the vast community of innocent investors a meaningful opportunity to be heard in an open court through an ancillary evidentiary hearing; and

Modify the forfeiture order to the extent necessary to protect innocent third-party property interests, adopt an alternative restitutionary remedy whereby the corporate equities of the G Enterprise are transferred in-kind in their entirety to the innocent investors.

## I. PROCEDURAL INJUSTICE AND EVIDENTIARY DEFICIENCIES: REQUEST FOR AN ANCILLARY HEARING AND THE SUBPOENA OF CRITICAL WITNESSES

1. The Preponderance of the Evidence Standard Is Insufficient to Justify a Massive Deprivation of Innocent Third-Party Property Rights

The Petitioner notes that, pursuant to the Court's Order (Doc. 858) and related judicial rulings, the Court's determination that the G Enterprise entities constitute the "Alter Ego" of the Defendant—and the subsequent issuance of the forfeiture orders—relied strictly upon the civil "Preponderance of the Evidence" standard.

The Petitioner asserts that the alleged preponderance of evidence used to establish an alter-ego relationship contains substantial factual and legal deficiencies. As a matter of corporate law, the Defendant was never a shareholder, director, or designated legal representative of the G Enterprise entities, nor did he receive salary or compensation therefrom. The forfeiture, based upon

this lower standard of proof, lacks conclusive factual foundation. This constitutes a severe and prejudicial deprivation of the investors' legitimate private property rights.

2. The Complete Deprivation of a Non-Party’s Opportunity to Defend Violates Constitutional Due Process

Previously, because the investors were categorized as non-parties to the underlying criminal trial, the electronic court system blocked them from filing pleadings or defense entries directly onto the main case docket. The Court has effectively severed the mechanism by which investors could speak for their own financial survival, while simultaneously executing an Order of Forfeiture that seizes the very assets tied to the investors' livelihoods. This adjudication model—depriving property without affording a prior, meaningful opportunity to be heard—stands in direct violation of the core protections of the Due Process Clause of the Fifth Amendment to the United States Constitution. Accordingly, the Petitioner urgently demands that the Court convene an open Ancillary Hearing to restore the investors' constitutional right to a meaningful opportunity to be heard..

3. The Evidence Purporting to Show the Defendant's Control Is Factually Deficient and Requires Rigorous Cross-Examination

Petitioner respectfully submits that the evidence cited in Doc. 858 does not establish that the G Enterprise entities were alter egos of the Defendant.

The Rule of Law Organizations: The Court relied on the testimony of Karin Maistrello (Trial Tr. at 424) to conclude that the Defendant controlled the Rule of Law funds. However, as a matter of corporate law, the Rule of Law organizations were governed by an independent Board of Directors who made collective decisions. The Petitioner hereby requests that the Court subpoena the other directors and employees of the Rule of Law organizations to testify regarding their

corporate independence. By extension, the allegations regarding farm loan fraud require the testimony of the respective Farm Owner and key volunteers; similarly, G Clubs and the Himalaya Exchange require the testimony of their respective directors and staff.

The Misleading Nature of the "Top Boss" Label: The Court cited testimonies (Trial Tr. at 1941, 1995, 1996, 2975, 2980, 2999) depicting the Defendant as the "Top Boss." The petitioner does not know how to access the cited evidence and has had no opportunity to challenge its reliability. In fact, the nexus between the Defendant and his vast base of followers was a loose, voluntary online dynamic between a public figure and digital supporters. The New Federal States of China, the Farms, and the Himalaya Farm Alliance legally operated in a manner akin to an expansive fan club. No evidence demonstrates that these organizations possessed any formal, contractual, or legally enforceable authority over their members or individual Farm Owners. Farm members are entirely free to disregard the farm owner's orders. The farm owners are also entirely free to disregard the defendant's orders.

Factual Refutation of Control (The Phoenix Farm Case): Take the "Phoenix Farm," in which the Petitioner personally invested, as a concrete counterexample. When the Phoenix Farm Owner, Lihong Wei (also known as Sara), unlawfully misappropriated the investors' funds and blocked them from being wired to the Himalaya Farm Alliance, the Defendant publicly expressed his intent on a live broadcast that she should be prosecuted and sent to prison. However, the subsequent legal actions were entirely driven by the Secretary-General, Qidong Xia (“长岛伟哥”), who filed suit under his privately controlled entity MOS (Mountains of Spices LLC)(see Mountains of Spices LLC v. Lafrenz (2:21-cv-01497) District Court, D. Arizona). And the final outcome completely bypassed the Defendant's directives. Lihong Wei was never imprisoned. Furthermore, the capital stolen by Lihong Wei was never recovered by the Himalaya Farm Alliance or injected into the G Enterprise; instead, it was privately pocketed by Qidong Xia. This sequence of events

tends to demonstrate that the entities operated through separate corporate decision-makers rather than under the Defendant's unilateral control, thoroughly undermining the prosecution's claim of the Defendant's "absolute control."

4. The Prosecution’s Discretionary Non-Prosecution Agreements Have Inflicted Massive Financial Damage on Innocent Investors

The Petitioner notes with grave concern that the Government has handed out Non-Prosecution Agreements to the very individuals who actively misappropriated investor capital, while failing to claw back the stolen funds. This has caused severe financial losses to the true victims.

Pursuant to Fed. R. Crim. P. 32.2(c), the Petitioner requests that this Court issue subpoenas to compel the presence of critical shareholders, insiders, and farm operators for direct, cross-examination and accounting. These individuals include: William Je, Yvette, Qidong Xia (长岛伟哥), Ya Li (木兰传奇), Xuebing Wang (老班长), Lihong Wei (Sara), Jianfeng Dai (大卫), Cosmos, and Ha En(哈恩). It is procedurally imperative to uncover the truth through these examinations and initiate a formal clawback of the investor capital stolen by these farm operators.

## II. THE GENUINE COMMERCIAL VALUE, SCARCE CREDIT PREMIUM, AND SUBSTANTIAL APPRECIATION OF THE G ENTERPRISE

The prosecution utilized alter-ego doctrines to paint the G Enterprise entities as mere instruments of fraud, did not address whether these businesses possessed genuine commercial viability. To the contrary, entities like the Himalaya Exchange possessed robust technological achievements, an established user base, and irreplaceable market advantages:

An Absolute, Rigid Demand for Offshore Financial Accounts:

Due to the severe capital flight controls imposed by mainland China (restricting individuals to an annual foreign exchange quota of $50,000 USD), coupled with the continuous regulatory crackdowns on regional offshore brokers like Futu Holdings and Tiger Brokers, a diaspora population of over one billion people faces a critical shortage of secure, unmonitored financial sanctuaries to preserve their wealth. Concurrently, major U.S. financial institutions, such as East West Bank and Bank of America (BOA), enforce over-inclusive, hostile screening against Chinese nationals, often resulting in arbitrary account freezes and closures (as experienced firsthand by the Petitioner). The streamlined online KYC and compliance onboarding provided by the Himalaya Exchange solved a massive structural pain point, serving as both the genesis and terminal anchor for Chinese offshore wealth management.

Demonstrable Commercial Assets and Track Record:

Trial evidence confirmed that the Himalaya Exchange maintained anti-money laundering and KYC (Know Your Customer) screening standards that were far more rigorous than those of many mainstream global cryptocurrency exchanges. Its fully constructed database, network infrastructure, high-net-worth client acquisitions, and the functional HPAY real-time payment gateway represent immensely valuable, revenue-generating startup assets.

Sustainable Interest Yield Generation:

The Himalaya Exchange operated under a reserve asset management model analogous to traditional banking logic. The surplus fiat reserves remaining outside of the daily inflow/outflow liquidity requirements could be safely deployed into short-term U.S. Treasury bills, yielding consistent, low-risk interest income. Circle Internet Group Inc., which currently has a market

capitalization of $16 billion, is a company of this type; Himalaya Exchange could become a company similar to Circle.

Institutional Validation by Sovereign Wealth Capital:

Prior to the intervention of the Government, the Abu Dhabi Sovereign Wealth Fund was actively conducting institutional due diligence to execute a major strategic investment into the Himalaya Exchange. This external corporate validation proves that the business plan possessed an exceptionally high probability of commercial success. Unlike purely speculative "meme" or commemorative tokens circulating in the U.S. market—such as those issued by Donald Trump or Melania Trump, which lack underlying operating entities or asset injections yet sustain hundreds of millions in market cap—Himalaya Coin (HCN) was anchored by concrete utility and enterprise infrastructure.

The "Scarce Credit Premium" Derived from Shared Universal Values:

The G Enterprise was built by Chinese dissidents dedicated to the pursuit of freedom and democracy. Navigating relentless transnational repression from a totalitarian regime required an ironclad corporate promise: the absolute refusal to yield to political coercion and the unyielding protection of client privacy. In a financial industry where trust is the supreme currency, this resistance created an extraordinary credit premium. This premium explains why the market price of HCN sustained a steady average above $20 USD during the three months preceding the exchange's forced offline status. This immense valuation and digital asset appreciation belong entirely to the innocent third-party investors—not the Defendant. The Court's mandatory shutdown and liquidation of the exchange do not punish the Defendant; rather, they destroy the legitimate private property of the victims.

## III. THE ALTERNATIVE REMEDY: FORMATION OF AN "INVESTOR MUTUAL FUND" TO RECEIVE AND REHABILITATE THE CORPORATE ASSETS

To maximize the preservation of the innocent investors' capital and avoid the immense value-destruction, delays, and high administrative overhead typical of government-managed remission and civil forfeiture asset sales, the Petitioner formally requests the implementation of the following Alternative Restitutionary Relief:

1. The Structure and Capitalization of a New "Investor Mutual Fund"

Exclusion of Implicated Corporate Intermediaries: Because the "Himalaya Farm Alliance" has been named in the prosecution's RICO conspiracy framework, and because it has entirely lost the confidence of the investors base due to an absolute lack of governance, internal feuds, and arbitrary account terminations (such as the widespread banning of users on Gettr and Discord under the management of Yue Zhou, aka 青藤), it is disqualified from serving as a fiduciary trustee. A new, fully independent "Investor Mutual Fund" must be incorporated.

In-Kind Restitution of Corporate Shares and Physical Assets: The Petitioner requests that the Court order an in-kind restitution of 100% of the frozen and seized corporate equities of the G Enterprise companies, as well as the seized real estate, luxury vehicles, yachts, and high-value furnishings, transferring them directly to this newly formed, investor-owned Mutual Fund.

Severing the Alter-Ego Chain of Control: Upon the complete transfer of all corporate shares and governance rights to this independent, victim-owned fund, the G Enterprise entities will be legally and operationally decoupled from the Defendant. The Defendant will retain zero control, beneficial interest, or residual equity. Consequently, the entities will cease to be his "alter ego" and must be permitted to resume lawful commercial operations under independent regulatory compliance.

2. Implementing Democratic Corporate Governance and Volunteer-Led Ledger Reconstruction

Equity-Proportional Shareholder Democracy: Shareholder equity percentages within the Mutual Fund will be calculated based on a rigorous reconciliation of the existing Himalaya Farm Alliance investment ledgers. All investors, as legitimate shareholders, will exercise voting rights proportional to their capital contributions at general shareholder meetings (which may be transparently hosted within organized pro-se litigant groups, such as the forum established by investor Chunk Chyi, https://discord.com/invite/e3mmxKXXwV). Shareholders will democratically elect or replace the Fund's Board of Directors, and the Board will appoint CEOs to manage Himalaya Exchange and other G Enterprise entities.

The Efficiency of Reconciling the Existing Himalaya Farm Alliance Ledgers:

Standard U.S. receivership accounting and forensic liquidations are prohibitively expensive and logistically slow. This case involves tens of thousands of Chinese investors dispersed worldwide. The investor community possesses an abundance of highly qualified financial, accounting, and legal professionals who are eager to work pro bono as volunteers to audit and cross-reference the Himalaya Farm Alliance ledgers against prosecution data and G Enterprise bank records. The investor collective is fully prepared to adopt and validate these audited Himalaya Farm Alliance ledgers, and they are even willing to absorb existing bad debts through the company's future operating revenues. This level of transactional efficiency is completely unachievable through the government's bureaucratic remission process.

Value Protection Against Forced Judicial Asset Fire Sales:

The Court should consider enjoining the Government from executing rushed, fire-sale auctions of the seized real estate, vehicles, yachts, and furniture. Seized secondary luxury goods

rarely fetch fair market value when liquidated under time-sensitive judicial mandates. To the investor community, these assets carry an immense brand heritage and historical value that far exceeds their raw market appraisal. By transferring these assets to the Mutual Fund, the investors can generate continuous revenue through commercial exhibitions and curated experiential access, or execute strategic, high-value asset liquidations when market conditions maximize returns.

3. The Implementation of a Dual-Track "Cash-Out vs. Equity-Retention" Election Mechanism

To balance the differing desires of the investor base, the Petitioner requests that the Court direct the Government, upon completing its final claims tally, to establish a fixed pro-rata restitution ratio based on the current available cash pool (approximately $634 million USD) against the total valid claims submitted (approximately $889 million USD), yielding an approximate 71% cash recovery baseline.

Investors Electing Cash Restitution: Shall have the right to immediately draw down their cash share at the designated pro-rata percentage and completely exit the liquidation pool.

Investors Electing the Mutual Fund: Shall have their corresponding cash allocation securely preserved within the Fund to serve as operating capital. This capital will be converted into equity shares of the revitalized G Enterprise and the reopened exchange, allowing these investors to retain their upside potential, future dividend distributions, and long-term asset appreciation.

## IV. COMPELLING EQUITABLE AND CONSTITUTIONAL CONSIDERATIONS REGARDING VULNERABLE AND PERSECUTED INVESTORS

The Petitioner explicitly cautions the Court that a rigid, traditional "notice-and-claim, first-come, first-served" administrative remission framework will result in an absolute denial of justice and a massive unconstitutional taking of private property for the following populations:

Innocent Investors Residing in the Mainland China Under Totalitarian Regimes: Clear evidence exists within the record (including documents associated with "Tony") establishing that the Chinese Ministry of State Security and domestic police apparatus have categorized personal capital investments into the G Enterprise as an act of "Endangering National Security." If this Court rigidly mandates that every individual claimant must register their true identity, upload national identification documents, and expose their physical domicile to a public, searchable U.S. judicial database—thereby triggering international mail deliveries—these files will be intercepted. These vulnerable investors will face imminent, severe political persecution, asset confiscation inside China, and prolonged loss of personal liberty. Allowing the Mutual Fund to utilize the existing Himalaya Farm Alliance ledgers to verify investment tranches collectively and anonymously is the one appropriate mechanism to preserve both the physical safety and the property rights of these persecuted victims.

Severe Document Disruption via Informal Foreign Exchange Channels:

Due to China's draconian banking walls, a substantial portion of the investor base was forced to deploy indirect, informal third-party wire transfers, or utilize peer-to-peer USDT cryptocurrency clearing to move their capital out of the mainland. The SEC's prior GTV Fair Fund administration systematically disqualified vast numbers of real, bona fide investors simply because they could not produce a pristine, direct wire receipt matching their legal names. If this Court mechanically demands that individual, unsophisticated foreign claimants provide a perfect banking chain that complies with U.S. institutional standards, it will cause an immediate forfeiture of property for the most vulnerable victims.

Barriers of Language, Lapsed Deadlines, and Deceased Claimants:

A vast percentage of the investor base possesses zero English literacy and lacks any comprehension of complex U.S. federal asset forfeiture timelines. Because these multi-jurisdictional proceedings have dragged on for years, many investors have lost tracking capabilities, and some have passed away entirely, leaving heirs completely unaware of the existence of these offshore accounts. Applying a strict "statute-of-bar" or "first-come, first-served" asset exhaustion rule is fundamentally inequitable and directly violates the substantive purpose of restitution.

For the foregoing reasons, an in-kind transfer of corporate assets to an Investor Mutual Fund represents an equitable and practical alternative to achieve comprehensive equity.

## V. SOLEMN AFFIRMATION AND COMPROMISE CLAUSE

The Petitioner explicitly affirms that the historical development and scale of the G Enterprise are inseparable from the extensive early capital capitalization and execution provided by major shareholder William Je, alongside other large-scale silent shareholders.

However, given the current situation, William Je and other shareholders may choose not to appear in court due to fears of retaliation by the CCP. Their absence has severe negative impact on the fair adjudication of the case.

The Petitioner does not seek to unlawfully expropriate or permanently dilute the legitimate holdings of these shareholders. The temporary, full transfer of corporate equity to a Mutual Fund comprised of fellow fighter investors is an emergency, protective legal mechanism to rescue the company from permanent administrative destruction. Should the defendants and other shareholders

succeed in overturning the case in accordance with the law in the future, the mutual fund will immediately initiate a negotiation mechanism to return the corresponding equity interests.

## CONCLUSION

For the reasons stated above, the Petitioner respectfully requests that this Court:

1. Recognize Petitioner's standing as a bona fide, innocent investor entitled to robust property protection under 21 U.S.C. § 853(n) and the CVRA;

2. Permit Petitioner reasonable access to the materials necessary to litigate this ancillary proceeding, subject to appropriate protective orders.

3. Order, pursuant to Federal Rule of Criminal Procedure 32.2(c)(1)(B), a targeted period of discovery and the issuance of subpoenas to compel the presence and cross-examination of William Je, Yvette Wang, the operating directors of the respective G Enterprise entities, and the primary farm organizers—including Qidong Xia (长岛伟哥), Ya Li (木兰传奇), Xuebing Wang (老班长), Lihong Wei (Sara), Jianfeng Dai (大卫), Cosmos, and Ha En (哈恩)—to definitively map out the corporate financial truth and trace the investor capital misappropriated by individual farm owners; and subsequently schedule an open, ancillary evidentiary hearing on these matters; and

4. Vacate or modify the Order of Forfeiture that mandates the corporate dissolution and bankruptcy of the G Enterprise, and authorize the creation of the investor-governed "Investor Mutual Fund" to receive the corporate equities and assets in-kind, enabling the businesses to safely return to normal commercial operations under independent fiduciary oversight.

Respectfully Submitted,

Case: 26-2382, 08/24/2026, DktEntry: 1.1, (20 of 24)

By: [redacted]

Pro Se

[redacted]

Dated: July 13, 2026

# EXHIBIT B

# THIRD-PARTY PETITION AND MOTION FOR ALTERNATIVE RESTITUTIONARY RELIEF -23_cr_00118 - UNITED STATES OF AMERICA v. MILES GUO

[redacted]ail.com> Jul 13, 2026, 11:22 PM

to ProSe, ryan.finkel, justin.horton, micah.fergenson, nathan.rehn, juliana.murray, msarafa, jdratel, jkaley

to: ProSe@nysd.uscourts.gov
cc: ryan.finkel@usdoj.gov, justin.horton@usdoj.gov, micah.fergenson@usdoj.gov, nathan.rehn@usdoj.gov, juliana.murray@usdoj.gov, msarafa@sarafalaw.com, jdratel@dratellewis.com, jkaley@doarlaw.com
date: Jul 13, 2026, 11:22 PM
subject: THIRD-PARTY PETITION AND MOTION FOR ALTERNATIVE RESTITUTIONARY RELIEF -23_cr_00118 - UNITED STATES OF AMERICA v. MILES GUO
mailed-by: gmail.com

Dear Clerk of the Court,

I am a non-party moving pro se in ... PROCEED UNDER A PSEUDONYM, TO FIL... A REDACTED PETITION.pdf] and an accompany... RESTITUTIONARY RELIEF - unredacted.pdf] for filing

Pursuant to Federal Rule of Civil P... to file the redacted versions publicly and the unredact... y.

I have attached the following four (

[FOR PUBLIC DOCKETING]

File 1: MOTION TO PROCEED ... ND TO PERMIT PUBLIC FILING OF A REDACTED ... eudonym "Lionheart")

File 2: THIRD-PARTY PETITION AND MOTION FOR ALTERNATIVE RESTITUTIONARY RELIEF - redacted.pdf (Public version of the main motion, with true name and dollar amounts redacted)

[REQUESTED TO BE FILED UNDER SEAL]

File 3: THIRD-PARTY PETITION AND MOTION FOR ALTERNATIVE RESTITUTIONARY RELIEF - unredacted.pdf (Contains my true name and financial details. Highlighted text indicates redacted portions)

File 4: Exhibit A investment_evidence.pdf (Contains full Discord screenshots and translations)

Instructions for Docketing:

Reply | Reply all | Forward

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

**Thurgood Marshall U.S. Courthouse 40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

**MOTION INFORMATION STATEMENT**

**Docket Number(s):** ______________________________ ______Caption [use short title]______

**Motion for:** PETITION FOR A WRIT OF MANDAMUS

Set forth below precise, complete statement of relief sought:

An order compelling the U.S. District Court
for the SDNY to docket Petitioner's filings
in Case No. 1:23-cr-00118-AT.

IN RE: Lionheart Petitioner

**MOVING PARTY:** Lionheart, Petitioner **OPPOSING PARTY:** NATHAN REHN, USA SDNY

☐ Plaintiff ☐ Defendant

☑ Appellant/Petitioner ☐ Appellee/Respondent

**MOVING ATTORNEY:** ______________________ **OPPOSING ATTORNEY:** NATHAN REHN

[name of attorney, with firm, address, phone number and e-mail]

Court- Judge/ Agency appealed from: ANALISA TORRES, SDNY DISTRICT COURT

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes ☐ No (explain):______________________

Opposing counsel's position on motion:
☐ Unopposed ☐ Opposed ☑ Don't Know

Does opposing counsel intend to file a response:
☐ Yes ☐ No ☑ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below? ☐ Yes ☐ No

Has this relief been previously sought in this court? ☐ Yes ☐ No

Requested return date and explanation of emergency: ______________

Is oral argument on motion requested? ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set? ☐ Yes ☑ No If yes, enter date:______________________

**Signature of Moving Attorney:**

[redacted] **Date:** 8/21/2026 Service by: ☐ CM/ECF ☐ Other [Attach proof of service]

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

In re Lionheart

v.

## CERTIFICATE OF SERVICE*

Docket Number: ____________

I, Lionheart, hereby certify under penalty of perjury that
(print name)

on August 18, 2026, I served a copy of Form T-1080, Motion to Proceed Under Pseudonym,
(date)

Petition for a Writ of Mandamus, Certificate of Service, Exhibit A, Exhibit B
(list all documents)

by (select all applicable)**

___ Personal Delivery ✓ United States Mail ___ Federal Express or other Overnight Courier

___ Commercial Carrier ___ E-Mail (on consent)

on the following parties:

| Name | Address | City | State | Zip Code |
|---|---|---|---|---|
| Nathan Rehn | 26 Federal Plaza, 37th Floor | New York | NY | 10278 |
| Hon. Analisa Torres | 500 Pearl Street, Room 2110 | New York | NY | 10007 |
| | | | | |
| | | | | |

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

August 21, 2026
Today's Date

[redacted]