**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,
Plaintiff,

-v-

HO WAN KWOK, a/k/a "Miles Guo," "Miles Kwok," "Guo Wengui," "Brother Seven," or "The Principal,"

and

KIN MING JE, a/k/a "William Je,"

and

YANPING WANG, a/k/a "Yvette,"

Defendants.

Restitution of Seized Funds

Criminal No.: 23-cr-118 (AT)

NOTICE CONCERNING THE GOVERNMENT--TRUSTEE PROPOSED AGREEMENT REGARDING FUNDS, AND REQUEST THAT THE SAME BE MADE PART OF THIS CRIMINAL DOCKET FOR DISPOSITION BY THE UPCOMING SPECIAL MASTER

Assigned to the Honorable U.S. District Judge Analisa Torres

**NOTICE CONCERNING THE GOVERNMENT AND CHAPTER 11 TRUSTEE'S PROPOSED AGREEMENT REGARDING FUNDS THAT SHOULD BE RESOLVED ON THIS CRIMINAL DOCKET AND DISPOSED OF BY THE UPCOMING SPECIAL MASTER**

Bradford L. Geyer, Esq., of FormerFedsGroup.Com LLC, counsel for the authenticated Himalaya Exchange ("*HEX*" or the "*Exchange*") customers and third-party claimants previously identified to this Court (collectively, the "*Claimants*"),[1] respectfully files this Notice to place on this criminal docket, and to preserve for adjudication by the Special Master this Court has indicated it will appoint, the proposed settlement between the United States of America (the "*Government*") and Luc A. Despins, Chapter 11 Trustee (the "*Trustee*") of the estate of Ho Wan Kwok in *In re Ho Wan Kwok*, Case No. 22-50073 (JAM) (Bankr. D. Conn.) (the "*Bankruptcy Case*").

The Claimants do not appear here to litigate the Bankruptcy Case. They appear because the proposed Government--Trustee agreement purports to allocate, partition, or otherwise dispose of funds

[1] Counsel represents only those HEX members who retained him and whose identities and balances have been authenticated through HEX records and HID matching, as previously described to the Court. This Notice does not purport to speak for every HEX member, or for the criminal Defendants.

that include, or are traceable to, HEX customer reserves and related accounts seized in connection with *this* criminal proceeding--funds already identified as Specific Property in the Preliminary Order of Forfeiture (ECF No. 720) and, as to other accounts, in the First Supplemental Preliminary Order of Forfeiture (ECF No. 790-1). Those funds are the subject of third-party petitions, Rule 41(g) applications, and related filings on this docket. Any private allocation of those funds between the Government and the Trustee belongs on this criminal docket and should be resolved, in the first instance, by the upcoming Special Master.

## I. The Proposed Government--Trustee Agreement

On or about August 18, 2026, the Trustee filed in the Bankruptcy Case a motion pursuant to 11 U.S.C. § 363 and Federal Rule of Bankruptcy Procedure 9019 seeking approval of a settlement with the United States dated July 30, 2026 (Bankr. ECF No. 5739) (the "*Proposed Agreement*"). The Proposed Agreement does not merely divide cash. It draws a line between so-called "Estate Assets" (Schedule 1: hundreds of adversary proceedings, cash recoveries of approximately $152.7 million, and foreign proceedings) and "Forfeiture Assets" (the property listed in ECF No. 720, ECF No. 790-1, and the Wang forfeiture order). Under the operative terms: the Trustee covenants not to contest forfeiture of the Forfeiture Assets or their distribution to victims (¶ K); the Government covenants not to forfeit the Estate Assets and the Trustee preserves alter-ego and avoidance theories against those assets (¶ L); net proceeds of the Mahwah Property--itself Specific Property at ECF No. 720 item v--are split evenly after deductions that include Trustee legal fees (¶ M); $2,540,087.05 of Mountains of Spices funds is to be transferred to the Trustee as an Estate Asset (¶ O); and unidentified "Non-Scheduled Assets" are allocated to whichever party first commences a proceeding (¶ P). Paragraph S purports to bind any person who later obtains possession or control of either category of assets. Paragraph T disclaims third-party beneficiaries. A hearing on the motion was convened in the Bankruptcy Court on August 25, 2026.

Public reporting describes the split, in substance, as the Trustee retaining more than $170 million recovered for the estate while the Government retains approximately $642 million seized in connection with the indictment. That $642 million figure corresponds to the bank-account Specific Property listed in ECF No. 720, which this Court later treated as forfeitable in connection with an $889 million money judgment. See ECF No. 858. The Proposed Agreement would resolve, as between the Government and the Trustee only, the allocation of Specific Property that is already before this Court under ECF Nos. 720 and 790-1 and that is the subject of pending third-party petitions. That allocation cannot determine the rights of third-party Claimants through a stipulation filed only in the Bankruptcy Case.

The Government and the Trustee may settle their competing claims as between themselves, but they cannot by agreement adjudicate, subordinate, or extinguish superior interests asserted by third parties in property subject to this Court's criminal forfeiture orders. Congress prescribed the mechanism for adjudicating those interests: the ancillary proceeding under 21 U.S.C. § 853(n), implemented through Federal Rule of Criminal Procedure 32.2(c). Section 853(k) channels third-party claims to property subject to criminal forfeiture into that statutory process.

Accordingly, whatever effect the Proposed Agreement may have between the Government and the Trustee, it cannot determine Claimants' title to Specific Property listed on this docket, or defeat their asserted superior interests in that property, outside the § 853(n) ancillary process. The Forfeiture Assets include HEX-related accounts into which Claimants deposited their own funds and maintained HDO reserves represented to be backed 1:1 to the U.S. dollar. Those accounts, seized on warrants issued in this District in 2022 and 2023, are listed as Specific Property in ECF No. 720 as follows:

i. $4,643,744.70, FV Bank Acct. 7801000590, Himalaya International Reserves, Ltd. (Sept. 20, 2022 seizure);

j. $14,599,257.25, FV Bank Acct. 7801000254, Himalaya International Clearing, Ltd. (Sept. 20, 2022 seizure);

l. $10,008,284.04, Mercantile Bank Int'l Acct. MBI10133-0000, Himalaya International Clearing Ltd. (Oct. 16, 2022--Mar. 10, 2023);

n. $272,350,429.22, Mercantile Bank Int'l Acct. MBI10138-0000, Himalaya International Reserves Ltd. (Oct. 16, 2022--Mar. 10, 2023);

o. $310,594.31, Mercantile Bank Int'l Acct. MBI10139-0000, Himalaya International Financial Group Ltd. (Oct. 16, 2022--Mar. 10, 2023);

r. $7,715.00, FV Bank Acct. 7801000589, Himalaya International Financial Group, Ltd. (Sept. 20, 2022 seizure); and

s. $176,983.37, Mercantile Bank Int'l Acct. MBI10183-0000, Himalaya Currency Clearing Pty Ltd. (Oct. 16, 2022 seizure).

ECF No. 790-1 adds other accounts (G Club Operations Banco Popular funds and Barclays accounts in the names of Kin Ming Je and Sin Ting Rong). Claimants do not by this Notice assert those supplemental items as HEX customer reserves. They identify them so the Court and the Special Master can keep HEX customer Specific Property distinct from G Club and Je-related property that the Proposed Agreement also sweeps into the same Estate Asset / Forfeiture Asset bargain.

## II. The $37 Million HIFG--HK USA Loan Is Traceable to Listed HEX Property--and Is Reached by the Order's Catchall Language

The record in this Court and in the Bankruptcy Case establishes a specific outflow from HEX-related entities that the Proposed Agreement would lock onto the estate side of the ledger. On or about April 19, 2022, Himalaya International Financial Group Ltd. ("HIFG")--the account-holder of ECF No. 720 items o and r--made a $37 million loan to HK International Funds Investments (USA) Limited, LLC ("HK USA"), the entity that held nominal title to the yacht Lady May. The funds were sourced from Himalaya International Clearing Ltd. ("HIC")--the account-holder of ECF No. 720 items j and l--and were

wired to HK USA's counsel to be placed into escrow as security for return of the yacht. Indictment ¶ 19(g); Trustee Omnibus Alter Ego Complaint ¶ 120 (HIFG transferred $37 million "sourced from Himalaya International Clearing Limited" to Zeisler & Zeisler for the Lady May escrow).

Neither the $37 million escrow nor the yacht itself is listed as Specific Property in ECF No. 720 or ECF No. 790-1. The Trustee recovered those loan proceeds in *HK Int'l Funds Invs. (USA) Ltd. v. Despins*, Adv. Pro. No. 22-05003 (Bankr. D. Conn.), after rulings that HK USA was Kwok's alter ego and that the escrowed funds were estate property. Those recovered proceeds now sit among the cash recoveries and adversary proceedings that Schedule 1 of the Proposed Agreement labels "Estate Assets."

That labeling does not break the tracing chain for a § 853(n) petition. Claimants' interest is not in the yacht. It is in the HEX customer funds that left HIC, passed through HIFG, and were transferred to HK USA. The listed assets to which that interest attaches on *this* docket are:

(1) the remaining HIFG balances actually seized and listed--ECF No. 720 items *o* ($310,594.31, MBI10139-0000) and *r* ($7,715.00, FV Bank 7801000589), the lender's own accounts;

(2) the remaining HIC balances actually seized and listed--ECF No. 720 items *j* and *l*--as the source accounts from which the $37 million was drawn; and

(3) the HDO reserve account--ECF No. 720 item n ($272,350,429.22, MBI10138-0000, Himalaya International Reserves Ltd.)--as the reserve corpus that was supposed to back customer HDO 1:1 and as to which Claimants assert a constructive trust and superior ownership interest, and from which unauthorized outflows, including the HK USA loan, should never have been made.

A petition under 21 U.S.C. § 853(n)(6)(A) must identify a legal interest in *specific property ordered forfeited*. The $37 million itself cannot be pleaded as a standalone line item of Specific Property because it is not on either order. It *can* and should be pleaded as the tracing fact that (a) proves diversion of HEX customer-sourced funds from listed HIC/HIFG accounts, (b) explains why the residue of those

same accounts remains customer property rather than Kwok proceeds, and (c) shows why the Trustee's recovery of the escrow cannot, by a 9019 stipulation, convert customer-sourced funds into "Estate Assets" free and clear of Claimants. If the Special Master or this Court later treats the recovered $37 million as forfeitable substitute property or as property traceable to items *j*, *l*, *o*, or *r*, Claimants expressly preserve their claim to it as well.

The Preliminary Order itself supplies the catchall. ECF No. 720 recites the indictment forfeiture allegations under 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and 1963, and 28 U.S.C. § 2461(c), reaching "any and all property … involved in the offenses … or any property traceable to such property, including but not limited to" a money sum. The same Order enters a money judgment of approximately $1.3 billion--later reduced to $889 million at ECF No. 858--and finds that proceeds cannot be located upon due diligence except for the listed Specific Property. That finding is the statutory predicate for substitute property under 21 U.S.C. § 853(p). Paragraphs 8 and 9 of ECF No. 720 authorize discovery to identify additional forfeitable property and retain jurisdiction to amend the Order pursuant to Rule 32.2, including Rule 32.2(e). The Supplemental Order, ECF No. 790-1, is the Government's own use of that amendment path for later-added accounts.

Claimants therefore give notice that their interest extends to all property traceable to ECF No. 720 items j, l, n, o, and r, including the approximately $37 million transferred on or about April 19, 2022 from Himalaya International Clearing Ltd. through Himalaya International Financial Group Ltd. to HK International Funds Investments (USA) Limited, LLC, and to any substitute property or later-added Specific Property brought within this Order under 21 U.S.C. § 853(p) or Rule 32.2(e). The Government cannot have it both ways. If the recovered $37 million is property traceable to the HIC/HIFG Specific Property--or property reachable as substitute property--it is property that must be addressed through this Court's forfeiture process--including, if necessary, amendment of the forfeiture order under Rule 32.2(e)--before it can be treated as forfeited property free of Claimants' asserted interests. If it is outside

the forfeiture order, the Government cannot rely upon that order to characterize the same customer-sourced funds as forfeitable Kwok proceeds.

**III. The Proposed Agreement Belongs on This Criminal Docket and Should Be Disposed of by the Upcoming Special Master**

The Trustee's own Rule 9019 papers recognize the statutory forum for third-party claims. He states that any party asserting a superior interest in a Forfeiture Asset "must assert, and litigate, that interest in an ancillary proceeding filing in, and adjudicated by, the District Court," and that "instead of commencing and litigating an ancillary proceeding, the Trustee and the Government have settled their dispute." Bankr. ECF No. 5739 ¶ 20 (citing 21 U.S.C. § 853(n) and Fed. R. Crim. P. 32.2(c)). The Government and the Trustee may resolve their dispute without litigating an ancillary proceeding against one another; they cannot thereby resolve the claims of third parties who did not join their settlement and whose asserted superior interests Congress directed to the § 853(n) ancillary proceeding. See 21 U.S.C. §§ 853(k), (n); Fed. R. Crim. P. 32.2(c); DSI Assocs. LLC v. United States, 496 F.3d 175, 183-84 (2d Cir. 2007); De Almeida v. United States, 459 F.3d 377, 381 (2d Cir. 2006). The Second Circuit has likewise held that due process does not permit a third party to be bound by a determination that property belonged to someone else when that determination was made in a separate proceeding in which the third party was not permitted to participate. United States v. Daugerdas, 892 F.3d 545, 557 (2d Cir. 2018). Thus, Bankruptcy Court approval of the Proposed Agreement may settle the Government's and Trustee's competing positions, but it cannot adjudicate, release, subordinate, extinguish, or otherwise prejudice Claimants' asserted interests in property subject to this Court's forfeiture process. This Court has already found restitution impracticable and authorized remission, while recognizing that third-party claims to specific property are to be assessed under § 853(n) and Rule 32.2(c). ECF No. 858. The Court has indicated that a

Special Master will make preliminary recommendations on those ancillary issues. ECF No. 870 contemplates claims before a Special Master.

The Claimants therefore give notice of the Proposed Agreement and respectfully request that it be made part of this criminal docket--by requiring the Government to file the settlement papers, schedules, and any implementing stipulations here--and that the Special Master, once appointed, be directed to consider:

(a) whether any portion of the funds the Government and the Trustee propose to keep, split, or assign--including ECF No. 720 items i, j, l, n, o, r, and s, and the $37 million HIFG--HK USA loan proceeds, and of any property reached by the Order's "traceable to," § 853(p), and Rule 32.2(e) catchall now parked as Estate Assets--is HEX customer property held in constructive trust, reserve, or otherwise subject to a superior third-party interest;

(b) whether the Proposed Agreement prejudices Claimants by treating customer reserves, or recoveries traceable to those reserves, as estate property or as forfeitable proceeds before those interests are adjudicated;

(c) whether Paragraphs S and T, the Mahwah proceeds even-split, the Mountains of Spices carve-out, and the Non-Scheduled Assets race-to-the-courthouse rule should be stayed, conditioned, or held inapplicable to HEX customer funds;

(d) whether any Bankruptcy Court approval of the Proposed Agreement may be treated as dispositive of title to Specific Property listed on this docket; and

(e) a protocol that returns identifiable HEX customer funds to the persons who deposited them, rather than commingling those funds into a general estate distribution or an undifferentiated remission pool.

The Special Master is the proper first-line decisionmaker on this docket as to Specific Property listed in ECF Nos. 720 and 790-1 and property traceable thereto. HEX customers--overwhelmingly non-U.S. persons contractually barred from using the Exchange if they were U.S., Canadian, or Japanese residents--should not be forced to litigate title in a Connecticut bankruptcy case they did not commence in order to recover money seized from a BVI exchange under warrants issued here. Kwok held no formal office or title at HEX. A personal bankruptcy filing does not convert other people's deposits into estate assets, and a settlement between the Government and the Trustee cannot accomplish by agreement what neither party owned. That is precisely the function of the ancillary proceeding: to provide the statutory forum in the forfeiture case for persons who contend that property swept into the forfeiture belonged to them rather than to the defendant. See 21 U.S.C. § 853(n)(6)(A). The Second Circuit has expressly recognized that a constructive trust may constitute a "legal right, title, or interest" cognizable under § 853(n)(6)(A), because property properly subject to such a trust "was never truly the defendant's property" and therefore is not subject to forfeiture as his property in the first instance. Willis Mgmt. (Vt.), Ltd. v. United States, 652 F.3d 236, 244-45 (2d Cir. 2011); see United States v. Schwimmer, 968 F.2d 1570, 1581-83 (2d Cir. 1992).

Claimants therefore do not proceed merely as general unsecured creditors asserting an undifferentiated claim against HEX or against a defendant's estate. Cf. *United States v. Ribadeneira*, 105 F.3d 833, 836-37 (2d Cir. 1997). They assert an ownership interest in identified reserve property maintained specifically to provide the represented 1:1 backing for authenticated customer HDO balances, together with property traceable to that reserve corpus. Whether Claimants can establish that asserted interest is an issue for the ancillary proceeding; it cannot be resolved against them merely by allocating the disputed property between the Government and Trustee before that adjudication occurs.

## IV. Continuing Objection to the Seizures on Jurisdictional Grounds; Claims Preserved

Separately, and independently of the request that the Proposed Agreement be placed before the Special Master, Claimants continue to object to the seizures themselves on jurisdictional grounds. They have raised these objections with each filing on this docket--beginning with the Rule 41(g) motion of December 6, 2023 (ECF No. 186) and continuing through the replies, renewed motions, notices of supplemental authority, and third-party petitions that followed--and they hereby reassert and preserve any and all claims that arise therefrom. Claimants do not ask the Court through this Notice to re-adjudicate those preserved objections; they identify them to make clear that participation in the ancillary process and opposition to the Proposed Agreement do not waive them.

Those objections include, without limitation, the following. HEX is organized under the laws of the British Virgin Islands. It is not a U.S.-registered exchange or ATS. Its Terms and Conditions and AML/CTF Policy expressly prohibit access or use by U.S. persons and U.S. residents; the United States is an excluded jurisdiction. Claimants are foreign customers who completed KYC/AML onboarding, including identity verification, source-of-funds review, and a declaration that they were not residents of the United States, Canada, or Japan. The Government's extra-territorial reach to seize reserves held for those customers, in accounts of BVI and other foreign entities listed at ECF No. 720 items i, j, l, n, o, r, and s, is challenged as exceeding the jurisdictional and extraterritorial limits applicable to the Exchange's operations and to the customer property seized.

The seizures also inverted the customer-protection rationale the Government advanced. The HDO reserve was maintained and externally audited at a 1:1 backing. Claimants experienced no misappropriation of their balances by the Exchange. What collapsed redemptions, froze reserves, and devalued HCN was the Government's taking of the reserve itself--and, as to the $37 million HIFG--HK USA loan, the prior diversion of HIC-sourced funds into an escrow the Trustee now claims as an Estate Asset. Having seized extra-territorial customer property from a non-U.S. platform that barred U.S. users,

the United States cannot now, by stipulation with a bankruptcy trustee appointed in Kwok's personal case, ratify that asserted jurisdictional overreach or convert disputed title through an estate that Claimants contend never owned the funds.

Claimants therefore continue to object, on jurisdictional and related constitutional and statutory grounds--including due process, the asserted absence of a sufficient jurisdictional nexus to reach HEX customer property and the limits on the extraterritorial application of the forfeiture statutes, 21 U.S.C. § 853(k), 28 U.S.C. § 1355, and the insufficiency of notice to non-English-speaking persons abroad facing retaliation risk--to every seizure, restraint, preliminary forfeiture order, supplemental forfeiture application, and proposed disposition that reaches HEX customer funds, including any implementation of the Proposed Agreement. Those objections have been timely and repeatedly raised. They are not waived. They are preserved for this Court, for the Special Master, for any appellate review, and for any other proceeding in which title to the seized funds is placed in issue.

Nothing in this Notice constitutes consent to the Proposed Agreement, consent to Bankruptcy Court adjudication of HEX customer title, waiver of any Rule 41(g), § 853(n), CVRA, or constitutional claim, or an admission that any HEX customer fund is property of the Defendants, property of the estate, or proceeds of the offenses of conviction.

**V. Request**

For the foregoing reasons, Claimants respectfully request that the Court:

1. Take notice of the Government--Trustee Proposed Agreement filed in *In re Ho Wan Kwok*, Bankr. ECF No. 5739, and of the August 25, 2026 hearing thereon;

2. Direct the Government to file on this criminal docket the Proposed Agreement, Schedule 1, any term sheet, and any implementing stipulation or proposed order, so that the Estate Asset / Forfeiture Asset allocation is of record here;

3. Refer the Proposed Agreement, including its treatment of ECF No. 720 items i, j, l, n, o, r, and s, of the $37 million HIFG-HK USA loan proceeds, and of any property reached by the Order's "traceable to," § 853(p), and Rule 32.2(e) catchall, to the upcoming Special Master for recommendation with the pending ancillary petitions;

4. Hold that any Bankruptcy Court approval of the Proposed Agreement shall not adjudicate, release, subordinate, extinguish, or otherwise prejudice Claimants' asserted interests in HEX customer funds or recoveries traceable thereto pending determination of those interests pursuant to 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2(c); and

5. Note Claimants' continuing jurisdictional objections to the seizures, which have been raised with each filing and are preserved as to all claims arising therefrom.

Dated: August 28, 2026

Respectfully submitted,
/s/ Bradford L. Geyer

Bradford L. Geyer, Esq. PHV
FormerFedsGroup.Com LLC N.J. Attorney No. 022751991
Suite 141, Route 130 South, No. 303
Cinnaminson, New Jersey 08077
Telephone: (856) 607-5708
Email: Brad@FormerFedsGroup.Com

Counsel for Authenticated Himalaya Exchange Claimants

CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2026, I caused a true and correct copy of the foregoing Notice to be filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record registered for electronic service in this action.

Dated: August 28, 2026

/s/ Bradford L. Geyer
Bradford L. Geyer, Esq.